## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SILVER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-247-APM |
| | ) | |
| INTERNAL REVENUE SERVICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT
## OF MOTION TO DISMISS FOR LACK OF JURISDICTION

Plaintiffs, Monte Silver and his business, Monte Silver Ltd., bring suit under the

Regulatory Flexibility Act (RFA) and the Administrative Procedure Act (APA) to challenge

recent Treasury regulations issued to implement "certain complex international tax provisions of

the Tax Cut and Jobs Act."  Amended Complaint at ¶ 1.  Plaintiffs object to the content of the

implementing regulations as too complex and burdensome and also allege several procedural

errors in the promulgation of the regulations.

Plaintiffs lack standing to maintain this action.  The Court should dismiss the Amended

Complaint because the Amended Complaint does not contain plausible allegations of a concrete

injury, causation or redressability.  Moreover, while Plaintiffs steadily disparage the complexity

of those regulations, they concede that the underlying tax statutes, sections 965, 962, and 951 of

the Internal Revenue Code, are themselves highly complex.  Indeed, from the Amended

Complaint, it appears that any burden on the Plaintiffs may be an unavoidable consequence of

the *statutes*.  Accordingly, Plaintiffs fail to show how relief from the *regulations*, if granted,

would lessen the burden of which they complain.

Even if Plaintiffs have standing, the suit is barred by the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act.[1]  Those statutes operate to bar this pre-enforcement challenge to a tax regulation.  Instead, Plaintiffs must wait to raise their challenge once the regulation has been applied to them and has resulted in a tax liability that Plaintiffs dispute.  Then Plaintiffs may challenge the regulation in the context of a Tax Court deficiency proceeding or a refund suit in federal district court or the Court of Federal Claims.

## BACKGROUND

### A.      Statutory framework of section 965.

Internal Revenue Code section 965 was amended in 2017 as part of the Tax Cuts and Jobs Act to provide for the mandatory deemed repatriation of certain earnings and profits of certain foreign corporations.  Pub. L. No. 115-97, 131 Stat. 2054 (2017).  Section 965 applies to shareholders in a specified foreign corporation or United States persons who are interest holders in a domestic pass-through entity that is itself a United States shareholder (U.S. shareholder) of a specified foreign corporation.  Section 965 generally requires U.S. shareholders to pay a transition tax on the untaxed foreign earnings of specified foreign corporations that are "deferred foreign income corporations" (DFICs).  This one-time deemed repatriation occurs with respect to the last taxable year of a DFIC beginning before January 1, 2018, and the amount included in

---

[1] Courts are not constrained to decide multiple jurisdictional issues in any particular order.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 117 (1998) (Stevens, J., concurring) ("Thus, our precedents clearly support the proposition that, given a choice between two jurisdictional questions—one statutory and the other constitutional—the Court has the power to answer the statutory question first.").  As a result, this Court may conclude that Plaintiffs' action is barred by the Anti-Injunction Act without reaching the issue of standing.

income under section 965 is includible in the U.S. shareholder's year in which or with which

such DFIC's year ends.

There are two steps in the transition tax calculation under section 965.  First, under

section 965(a), a DFIC's Subpart F income is increased, and a U.S. shareholder's subpart F

inclusion is correspondingly increased under section 951 (*i.e.*, a gross income inclusion).  The

subpart F income is increased by the greater of the DFIC's accumulated post-1986 deferred

foreign income (which is defined based on earnings and profits[2]) as of November 2, 2017, or its

accumulated post-1986 deferred foreign income as of December 31, 2017.  26 U.S.C. § 965(a).[3]

Second, under IRC § 965(c), there is a deduction that was intended to effectively reduce the tax

rate on a corporate U.S. shareholder's subpart F inclusion attributable to section 965 to 15.5

percent to the extent of earnings attributable to cash and cash equivalents, and 8 percent on the

remainder.

In addition, the statute provides that favorable elections may be made by certain persons

that have included income under section 965.  An election under section 965(h) allows a

---

[2] *See* 26 U.S.C. § 965(d)(2), (3).

[3] Contrary to Plaintiffs' allegation in Paragraph 17 of the Amended Complaint – that many terms in the statute were not well-defined and were left to interpretation in the regulations – the terms specifically mentioned in the Complaint – "deferred foreign income corporation," "accumulated post-1986 deferred foreign income," "8 percent rate equivalent percentage," "aggregate foreign cash position," "15.5 percent rate equivalent percentage," and "specified foreign corporation" – are defined in the statute.  *See* 26 U.S.C. § 965 (d)(1), (d)(2), (c)(2)(A), (c)(3), (c)(2)(B), and (e), respectively.  The regulations under section 965 merely restate those definitions for comprehensiveness and clarity.

taxpayer that has a section 965(h) net tax liability[4] to pay the liability in eight annual installments unless a specified "acceleration" event occurs. Section 965(i) allows a shareholder of an S corporation that is a United States shareholder in a DFIC to elect to defer, potentially indefinitely, its section 965(i) net tax liability[5] with respect to the S corporation until a specified "triggering" event occurs.

Section 965(m) allows real estate investment trusts to elect to defer the inclusion under sections 951 and 965 over eight years. Section 965(n) allows a taxpayer to elect not to take section 965 into account in determining its net operating loss for the year of the inclusion or in determining net operating loss carryovers or carrybacks.

Section 965(o) provides authority for regulations and directs that the Secretary "shall prescribe such regulations or other guidance as may be necessary or appropriate to carry out the provisions of this section," including rules with respect to basis adjustments and anti-abuse rules.

**B.      Regulations under section 965.**

On August 9, 2018, the Treasury Department and the IRS published in the Federal Register a notice of proposed rulemaking under section 965 (as well as related proposed regulations under sections 962 and 986).[6] On February 5, 2019, the Treasury Department and

---

[4] The term "section 965(h) net tax liability" is defined in Treas. Reg. § 1.965-7(g)(4) and refers to the tax liability resulting from the application of section 965 that is deferred through the election under section 965(h). *See* Treas. Reg. § 1.965-7(g)(10).

[5] The term "section 965(i) net tax liability" is defined in Treas. Reg. § 1.965-7(g)(6) and refers to the tax liability resulting from the application of section 965 with respect to an S corporation for which the S corporation shareholder has made a deferral election under section 965(i). *See* Treas. Reg. § 1.965-7(g)(10).

[6] 83 FR 39514. Prior to publishing the notice of proposed rulemaking, the Treasury Department and the IRS issued three notices describing the upcoming regulations and addressing other
(continued...)

the IRS published final regulations in the Federal Register.  *See* TD 9846, 84 FR 1838.  The

regulations clarify how to calculate various amounts used in determining a taxpayer's tax

liability under section 965 and provide anti-abuse rules.

The regulations also provide rules regarding the elections in section 965(h), (i), (m), and

(n).  The statutory language in paragraphs (h), (i), (m), and (n) provides that each election "shall

be made in such manner as the Secretary shall" prescribe.  26 U.S.C. §§ 965(h)(5), (i)(8)(B),

(m)(2)(A), and (n)(3).  Accordingly, the regulations establish the manner for making each of the

statutory elections under paragraphs (h), (i), (m), and (n).  The regulations also establish the

terms and conditions for entering into transfer agreements, which can effectively cure an

acceleration or triggering event, under paragraphs (h) and (i).

The regulations recognize two additional elections.  First, Treas. Reg. § 1.965-7(f) allows

taxpayers to elect to calculate the post-1986 earnings and profits as of October 31, 2017, and

prorate that amount to November 2, 2017, rather than having to determine the amount as of

November 2, 2017, which could have required a potentially burdensome interim closing of

books.  Second, Treas. Reg. § 1.965-2(f)(2) allows taxpayers to elect to make certain basis

---

(… continued)

related issues:  Notice 2018-07, 2018-4 I.R.B. 317; Notice 2018-13, 2018-6 I.R.B. 341, and
Notice 2018-26, 2018-16 I.R.B. 480.  A fourth notice, Notice 2018-78, 2018-42 I.R.B. 604, was
published after the notice of proposed rulemaking.  Prior to the notice of proposed rulemaking,
the Treasury Department and the IRS also published Revenue Procedure 2018-17, 2018-9 I.R.B.
384, which relates to changes in accounting periods potentially relevant to section 965.  In
addition, further guidance regarding filing and payment obligations was provided in a series of
Questions and Answers published by the IRS that can be found at:
https://www.irs.gov/newsroom/questions-and-answers-about-reporting-related-to-section-965-
on-2017-tax-returns.

adjustments with respect to their DFIC stock or applicable property to facilitate future tax-free access to earnings and profits that have been taxed under section 965.

These elections in the regulations provided taxpayer-favorable rules that, to the extent permitted by the statute, ameliorate the potential difficulties (including administrative burden) that taxpayers could have in calculating, reporting, and paying tax resulting from section 965. *See generally* 83 FR 39514 (referring to "taxpayer-favorable rules").

## ARGUMENT

### A.    This Court lacks jurisdiction because Plaintiffs lack standing.

A showing of standing "is an essential and unchanging" predicate to any exercise of a federal court's Article III jurisdiction. *Florida Audubon Society v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (internal citations omitted).  Defects of standing are defects in subject matter jurisdiction. *Abulhawa v. United States Department of the Treasury*, 239 F.Supp.3d 24, 31 (D.D.C. 2017) (citing *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987)).

The "irreducible constitutional minimum of standing contains three elements":  injury in fact, causation, and redressability. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (internal citation omitted).  The plaintiff bears the burden of establishing these elements of standing in the same manner as otherwise required at a given stage of a litigation. *Id.*  Thus, to establish standing at the motion to dismiss stage, as here, Plaintiffs, must make plausible allegations that they have (a) suffered an injury in fact that is (b) "fairly traceable" to the actions of the defendant and (c) likely to be redressed by a favorable decision by the Court. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015); *see also Coalition for Mercury-Free Drugs v. Sibelius*, 671 F.3d 1275, 1279 (D.C. Cir. 2012) (the three elements of standing are: (1) the plaintiff must have suffered an "injury in fact—an invasion of a legally protected interest" that is

"concrete and particularized" and "actual or imminent," not abstract, generalized, remote, or

speculative; (2) there must be a "causal connection" between the injury and the challenged action

of the defendant; and (3) it must be "likely," not merely "speculative," that the relief sought will

redress the injury).  Though well-pleaded factual allegations are to be accepted as true at this

stage, "threadbare recitals of the elements of standing, supported by mere conclusory statements,

do not suffice." *Arpaio*, 797 F.3d at 19 (internal quotation marks and citation omitted).

Plaintiffs hope to challenge a cluster of regulations that "implemented Code Section 965

and amended existing regulations under Code Section 962."  Amended Complaint at ¶ 22.[7]

Plaintiffs object to both the content of the implementing regulations, and the process leading to

their issuance. But none of Plaintiffs' allegations, whether about substance or procedure,

establish standing.

### 1.      *Plaintiffs' allegations about the regulations' content fail to state an injury that this Court can redress.*

Plaintiffs disparage the implementing regulations as "impenetrable,"  "incomprehensible"

and "unreasonably burden[some]" on small businesses.  Am. Compl. at ¶¶ 1, 34.  However, they

fail to allege what "concrete and particularized" *injury* they have suffered from the regulations.

*See Center for Biological Diversity v. U.S. Dept of the Interior*, 563 F.3d 466, 475 (D.C. Cir.

2009) (courts must avoid "premature adjudication . . . and also . . . protect the agencies from

judicial interference until an administrative decision has been formalized and its effects felt in a

---

[7] According to Plaintiffs,  Internal Revenue Code section 965, enacted by the Tax Cut and Jobs Act of 2017, determines the amount of "Transition Tax" on United States persons who own an interest in a "controlled foreign corporation,"  while section 962 "generally allows individual U.S. shareholders to elect to be treated as a U.S. domestic corporation" for certain purposes. Am. Compl. at ¶¶ 1, 15, 18.

concrete way by the challenging parties") (internal citation omitted).  Certainly, freedom from complex regulation is not itself a "legally protected interest."  *See Coalition for Mercury-Free Drugs v. Sibelius*, 671 F.3d at 1279.  And when, as here, "standing is questioned by a court or an opposing party, the litigant invoking the court's jurisdiction must do more than simply allege a nonobvious harm."  *Virginia House of Delegates et al. v. Bethune-Hill et al.*, 587 U.S. ___, 2019 WL 2493922, at \*3 (U.S. June 17, 2019).  Thus, Plaintiffs' challenge to the content of the regulations lacks the first element of standing.

Even if Plaintiffs could further revise their Amended Complaint to squarely allege an injury, they would still face an intractable problem on the other two elements of standing: causation and redressability.  Causation and redressability are, like heads and tails, related but distinct concepts:  causation focuses on the "connection between the assertedly unlawful conduct and the alleged injury" whereas redressability focuses on the "connection between the alleged injury and the judicial relief requested."  *West v. Lynch*, 845 F.3d 1228, 1235-1236 (D.C. Cir. 2017).

While Plaintiffs carp about the complexity of the regulations, they also repeatedly acknowledge that the underlying Internal Revenue Code sections 962 and 965 ("the tax statutes") are themselves "very complex."  *See* Am. Compl. at ¶¶ 1, 15, 17, 34.  In fact, Plaintiffs never separate the burden imposed by the statutes from the alleged burden imposed by the regulations.  Instead they repeatedly comment on both *together*, referring, for example, to the "highly complex restrictions and computations" of the transition tax set forth in section 965, the "many intricate and complex tax issues" involved in making a section 962 election, and "the tremendous hardships that Section 965 *and* the Proposed Regulations were creating for small business entities and their owners."  *See* Am. Compl. at ¶¶ 17, 18, 34 (emphasis added).

To establish redressability at the pleading stage, courts require that the facts alleged be sufficient to demonstrate a *substantial likelihood* that the relief sought will redress the injury to the plaintiff. *Renal Physicians Ass'n v. U.S. Dept. of Health and Human Services*, 489 F.3d 1267, 1275 (D.C. Cir. 2007). However, the Amended Complaint leaves it unclear whether the allegedly improper regulations or the intrinsically complex tax statutes are the cause of Plaintiffs' "injury." [8] And so it is doubtful that the requested relief from the regulations would *likely* redress this injury. *Cf. West v. Lynch*, 845 F.3d at 1235 ("Redressability examines whether the relief sought . . . will likely alleviate the particularized injury alleged by the plaintiff" [and] "The key word is 'likely'.") (internal citation omitted). Rather, given how much Plaintiffs object to the burdens inherent in the *statutes*, it is highly unlikely that requested relief from the regulations alone would redress the burden of which they complain.[9]

### 2.     *Plaintiffs' allegations about procedural errors in issuing the regulations similarly fail to state an injury that this Court can redress.*

Aside from their objection to the regulations' supposedly "impenetrable" content, the Plaintiffs allege that Treasury failed to comply with various procedural requirements in finalizing

---

[8] Again, Plaintiffs fail to allege a concrete injury, but for the sake of argument, we may assume it has to do with the burdens of complying with the transition tax requirements.

[9] Granted, Plaintiffs' prayer for relief extends beyond the regulations to the statutes, and requests that the Court, "[t]o the extend [sic] permissible by law, stay the enforcement of the Final Regulations *and Sections 965 and 962*" (emphasis added). However, the Amended Complaint at no point challenges the statutes, asserts a cause of action related to them (as opposed to the regulations), or offers any basis on which the Court should stay the *statutes'* enforcement. Thus, the mere request for relief from the tax statutes at the end of Plaintiffs' Amended Complaint, being unmoored from the rest of the pleading, cannot help to establish standing. *See Arpaio,* 797 F.3d at 19 (plaintiff must make plausible allegations to support the elements of standing); *Renal Physicians Ass'n*, 489 F.3d at 1278 ("A bald allegation of standing is not enough to survive even a motion to dismiss where neither the factual allegations nor their logic establish redressability.").

and issuing the regulations, including the requirement to provide adequate explanations for

Treasury's decisions. *See, e.g.*, Am. Compl. at ¶¶ 39, 55, 61-64, 69.

Given this allegation of "procedural injury," Plaintiffs need not "show that proper

procedures would have caused the agency to take a different substantive action" in order to

establish standing. *Renal Physicians Ass'n*, 489 F.3d at 443.  Nonetheless, they "must still show

that the agency action was the cause of some redressable injury" to Plaintiffs. *Id.*; *see also West

v. Lynch*, 845 F.3d at 1237.  And here, their procedural injury claim fails for the same reason as

their challenge to the regulations' content:  lack of causation and redressability.[10]

It is, at best, speculation that the regulations impose any burden on the Plaintiffs above

what is necessitated by the underlying tax statutes, "and just as speculation cannot establish

redressability, it cannot establish causation."  *West v. Lynch*, 845 F.3d at 1238.  Assuming the

Plaintiffs properly plead an injury, the Complaint offers no basis to conclude that the

implementing regulations — apart from the tax statutes — are the cause of that injury, or to

conclude, in turn, that relief from the regulations will "likely" address that injury.

---

[10] Plaintiffs' claim of a procedural harm under the RFA may fail for lack of standing for an additional reason.  When an agency promulgates a rule, the RFA, 5 U.S.C. § 601, *et seq.*, requires the agency to either: (a) analyze how the rule will affect small businesses; or (b) certify that the rule will not have a "significant economic impact on a substantial number of small entities."  5 U.S.C. §§ 603-605(b).  As Plaintiffs note, *see* Am. Comp. at ¶ 25, the IRS did the latter with respect to the challenged regulations.  Plaintiffs now challenge whether the certification was procedurally proper.  But judicial review under the RFA is limited to claims brought by "small entities."  5 U.S.C. § 611(a)(1).  The RFA defines "small entities" as having the same meaning as "small business," "small organization," and "small governmental jurisdiction." *Id*. § 601(6).  Each of those phrases is defined in the RFA, and none of them include individuals, like Plaintiff Monte Silver.  *See id*. § 601(3), (4), (5).  It is unclear whether Plaintiff Monte Silver, Ltd. has standing to challenge under the RFA.  Because both Plaintiffs otherwise lack standing and the suit is barred by AIA, we are not addressing the issue at this time, but do not waive it should the Court deny this motion to dismiss.

In other words, granting that plaintiffs need not allege that their preferred variant on the regulations would "likely" have issued but for the procedural errors they contest (*see Renal Physicians Ass'n*, 489 F.3d at 443), the "procedural injury" claim still suffers a fundamental flaw:  Plaintiffs do not, and cannot, plausibly allege *any* lawful tweaks to the regulations that would mitigate the burden on them while also complying with the tax statutes, because — as the Complaint itself repeatedly suggests — the burdens are inherent in the statutes.

The Complaint thus cuts against redressability, and instead supports the conclusion that relief from *only* the regulations, but not the "highly complex" and allegedly burdensome statutes which those regulations implement, is unlikely to make a meaningful difference to the Plaintiffs.

**B.      This Court also lacks jurisdiction because the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act bar this suit.**

The Anti-Injunction Act and the tax exception to the Declaratory Judgment Act preclude the injunctive and declaratory relief that the Plaintiffs seek.  Plaintiffs ask the Court to remand the challenged regulations so that Defendants may correct alleged errors in their promulgation and, in the meantime, to stay the enforcement of the challenged regulations.  Am. Compl. at 19 (Prayer for Relief).

"In a case of actual controversy within its jurisdiction,"[11] the Declaratory Judgment Act permits a court to issue a declaratory judgment "except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code."[12]  28 U.S.C. § 2201(a).  With

---

[11] As described above in Argument part A, Plaintiffs' claim for injunctive and declaratory relief presents no "actual controversy" for this Court to decide.

[12] Internal Revenue Code section 7428 does not apply here.  That section permits certain organizations that have applied for tax-exempt status to obtain a declaratory judgment as to their status when their applications have been denied or have been pending for more than 270 days.  It (continued...)

exceptions not relevant here, the Anti-Injunction Act similarly prohibits lawsuits filed "for the purpose of restraining the assessment or collection of any tax."  26 U.S.C. § 7421(a).  Those Acts are similar in operation, and if the Anti-Injunction Act bars relief, declaratory relief under the Declaratory Judgment Act also is unavailable.  *See Florida Bankers Ass'n v. U.S. Dep't of Treasury,* 799 F.3d 1065, 1067 (D.C. Cir. 2015); *Cohen v. United States*, 650 F.3d 717, 727-31 (D.C. Cir. 2011) (en banc);[13] *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1435 (D.C. Cir. 1995).

The principal purpose of the Anti-Injunction Act is "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'"  *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736-37 (1974) (quoting *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)).  Courts have made clear that the Anti-Injunction Act precludes them from enjoining activities that are related to, or may culminate in, assessment or collection: "'To hold otherwise would enable ingenious counsel to so frame complaints as to frustrate the policy or purpose behind the Anti-Injunction Statute.'"  *Tollerson v. C.I.R.*, No. CIV. A. H-91-2762, 1993 WL 174884, at *5 (S.D. Tex. Mar. 4, 1993) (quoting *Blech v. United States*, 595 F.2d 462, 466 (9th Cir. 1979)); *Abraham v. United States*,

---

(… continued)
also permits a suit when the IRS proposes to revoke tax exempt status.  *See* 26 U.S.C. § 7428(a), (b)(2).

[13] In *Cohen*, unlike the case at bar, the taxes had already been paid and the challenged notice concerned the procedure for obtaining a refund.  *Cohen*, 650 F.3d. at 725.  Thus, the suit was not a restraint on assessment or collection, and therefore the Anti-Injunction Act did not bar a suit seeking post-collection review of the refund procedure.

No. CIV.A. 97-1873 CKK, 1998 WL 422915, at *3 (D.D.C. Mar. 31, 1998) (collecting cases);

*Linn v. Chivatero*, 714 F.2d 1278, 1282 (5th Cir. 1983) (finding that the Anti-Injunction Act "is

applicable not only to the assessment and collection of taxes, but to 'activities which are intended

to or may culminate in the assessment or collection of taxes' as well") (quoting *Kemlon Products*

*Development Co. v. United States*, 638 F.2d 1315, 1320 (5th Cir.), *modified on other grounds*,

646 F.2d 223 (5th Cir. 1981)).[14]

As the D.C. Circuit explained in *Florida Bankers*, when a complaint, such as the

Amended Complaint here, seeks to invalidate a tax-related regulation, "the Anti–Injunction Act

ordinarily applies because the suit, if successful, would invalidate the regulation and thereby

directly prevent collection of the tax." *Id.* at 1067.[15]   Similarly in *Maze*, the D.C. Circuit

---

[14] One district court in Texas recently gave a narrower interpretation of the scope of the
Anti-Injunction Act.  In that case, the court found that the Anti-Injunction Act did not preclude a
pre-enforcement challenge to a Treasury regulation that limited the tax benefits of corporate
inversions because the challenge "does not involve assessment or collection of a tax." *Chamber*
*of Commerce v. IRS*, No. 1:16-CV-944-LY, 2017 WL 4682050, at *3 (W.D. Tex. Oct. 6, 2017),
*appeal voluntarily dismissed*, No. 17-51063, 2018 WL 3946143 (5th Cir. July 26, 2018).  But
that decision is against the weight of long-standing authority that has applied the Anti-Injunction
Act to bar suits enjoining activities that are related to, or may culminate in, assessment or
collection, as opposed to just assessment or collection themselves.

[15] Writing for the majority in *Florida Bankers*, now-Justice Kavanaugh explained that the
decision in *Direct Marketing Ass'n v. Brohl*, 135 S. Ct. 1124 (2015), which held that a challenge
to a Colorado reporting requirement was not barred by the Tax Injunction Act (a prohibition on
suits to restrain the state taxes), was inapposite because the Colorado provisions at issue did not
impose a tax or a penalty which was treated as a tax.  In *Direct Marketing*, the Court considered
the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, which restricts federal courts' ability to
"enjoin, suspend or restrain the assessment, levy or collection of any tax under State law . . . ."  It
held that the TIA did not bar federal court consideration of a suit seeking to ban enforcement of
Colorado's "penalty" on noncollecting out-of-state retailers who did not follow notice-and-
reporting requirements for sales to Colorado residents – requirements designed to help Colorado
collect use taxes from its residents.  The Colorado scheme imposed a $5 penalty (not treated as a
tax by statute) for failure to comply.

(continued...)

explained, "we have recognized our need to engage in 'a careful inquiry into the remedy

sought . . . and *any implication* the remedy may have on assessment and collection.'" *Maze v.

IRS*, 862 F.3d 1087, 1092 (D.C. Cir. 2017) (quoting *Cohen*, 650 F.3d at 724) (emphasis added in

*Maze*).

In this case, the challenge to the regulations, if successful, results in a direct interference

with the assessment and the collection of tax.  The regulations provide guidance on how to

determine the correct tax liability under the Tax Cuts and Jobs Act.  The Amended Complaint

asks the Court to enjoin operation of the regulations, thereby interfering with the ability of the

IRS to determine the correct tax liability of taxpayers who are within the regulations' scope.

Interfering with the ability to determine correct liability directly interferes with the assessment

and the collection of tax.

As described above in Background part B, the regulations at issue clarify how to

calculate various amounts used in determining a taxpayer's tax liability under Internal Revenue

Code section 965.  The regulations also establish the manner for making various elections under

section 965, which impact the timing and/or method of calculating and/or paying the tax.  This

suit challenges the section 965 regulations before Plaintiffs applied the rules to calculate taxes

---

(… continued)

Moreover, the Supreme Court in *Direct Marketing* did not cite, let alone repudiate or overrule, *Bob Jones* or any of the many other cases holding that the Anti-Injunction Act bars suits inhibiting assessment and collection. *Direct Marketing*, 135 S. Ct. at 1136 (Ginsburg, J., concurring) (finding that "[t]his suit does not implicate th[e] congressional objective" of "stop[ping] litigants from using federal courts to circumvent States' 'pay without delay, then sue for a refund' regimes"); *see also CIC Servs., LLC v. IRS*, 925 F.3d 247, 256 (6th Cir. 2019) (adopting *Florida Bankers*' distinction of *Direct Marketing*); *Alabama v. North Carolina*, 560 U.S. 330, 335-36 (2010) (declining to find a case was implicitly overruled by subsequent decisions that did not mention that case and did not directly address the issue it presented). Accordingly, *Bob Jones* and the other cited cases remain valid authority here.

they might owe and thus interfere with the assessment or collection of tax.  Plaintiffs' request

that the Court remand the regulation and stay its enforcement is a request for pre-enforcement

judicial interference with the assessment and collection of taxes.  This is precisely the type of

relief that the AIA and DJA forbid.

As *Florida Bankers* additionally notes, this result does not forever bar Plaintiffs'

regulatory challenge.  *See id.*  If the IRS determines that Plaintiffs have taxable income based on

an application of the regulation and issues a notice of deficiency asserting a tax liability,

Plaintiffs may challenge the IRS determination in the Tax Court before paying the deficiency.

*See* 26 U.S.C. §§ 6212, 6213; *Bob Jones*, 416 U.S. at 730.  Or Plaintiffs may pay the tax

calculated under the regulations, if there is any, and sue for a refund in district court or the Court

of Federal Claims.  *See* 26 U.S.C. § 7422.  These legal remedies are the appropriate vehicles for

Plaintiffs to raise their challenges to the Treasury regulation at issue.  *See SIH Partners LLLP v.*

*Comm'r of Internal Revenue*, 923 F.3d 296, 301 (3d Cir. 2019) (reviewing Tax Court case in

which the plaintiffs challenged long-standing regulations promulgated under Internal Revenue

Code section 956); *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, No. 16-70496,

2019 WL 2400999, at *8 (9th Cir. June 7, 2019) (reviewing Tax Court case in which the

plaintiffs challenged amendments to the cost-sharing regulations promulgated under Internal

Revenue Code section 482).[16]

---

[16] Because Plaintiffs have these alternative legal remedies available, limited judicial exceptions to the Anti-Injunction Act do not apply to them.  Under one exception, a court may grant a pre-enforcement injunction only if there are no circumstances whatsoever under which the government might ultimately prevail *and* if equity jurisdiction otherwise exists.  *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962).  Under another, the plaintiff may proceed where there is no other means of litigating its claims.  *South Carolina v. Regan*, (continued...)

## CONCLUSION

Plaintiffs lack standing and the Anti-Injunction Act bars their regulatory challenge.  As a result, the United States asks the Court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction.

DATED: July 1, 2019

JESSIE K. LIU
United States Attorney

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Nishant Kumar*
JOSEPH A. SERGI (D.C. Bar No. 480837)
Senior Litigation Counsel
LAURA M. CONNER (VA Bar No. 40388)
NISHANT KUMAR (D.C. Bar No. 1019053)
Trial Attorneys
Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, DC 20044
Tel: (202) 514-2986
Fax: (202) 514-6866
Nishant.kumar@usdoj.gov
Joseph.a.sergi@usdoj.gov
Laura.m.conner@usdoj.gov

---

(… continued)

365 U.S. 367 (1984).  Neither of these exceptions apply, given the legal remedies available to Plaintiffs.