# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MONTE SILVER, et al.** | ) | |
| **Plaintiffs,** | ) ) ) | |
| v. | ) ) | Civil No. 19-cv-247 (APM) |
| **INTERNAL REVENUE SERVICE, et al.** | ) ) | |
| **Defendants.** | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

As part of the Tax Cut and Jobs Act of 2017 ("TCJA"), Congress enacted certain "transition tax" provisions applicable to "controlled foreign corporations" owned by "United States persons." *See generally* Pub. L. 115-97, 131 Stat. 2054 (2017). On January 15, 2019, Defendants Internal Revenue Service and United States Department of Treasury published final regulations to effectuate these tax provisions.

Plaintiff Monte Silver is the sole shareholder of Monte Silver, Ltd., a company based in Israel. Plaintiffs assert that they are subject to the TCJA's transition tax provisions. They bring this action to challenge Defendants' alleged failure, in connection with promulgating the TCJA's final regulations, to carry out required small-business impact evaluations under the Regulatory Flexibility Act and the Paperwork Reduction Act. Defendants now move to dismiss Plaintiffs' Complaint. Defendants maintain that the court lacks subject-matter jurisdiction over this action because (1) Plaintiffs lack standing, and (2) the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act prohibit this lawsuit. *See generally* Defs.' Mot. to Dismiss for Lack of Jurisdiction, ECF No. 21 [hereinafter Defs.' Mot.].

For the reasons that follow, Defendants' Motion is denied. Relatedly, Plaintiffs' Motion to Expedite, ECF No. 27, is denied as moot.

I.

A plaintiff in federal court bears the burden of showing that she meets the "irreducible constitutional minimum" of Article III standing: (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). To establish standing, as here, at the motion to dismiss stage, the plaintiff "must state a plausible claim that [she has] suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (quoting *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015)). The court must accept the well-pleaded allegations of the complaint as true and draw all inferences in favor of the plaintiff. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

Here, Plaintiffs allege what is known as a "procedural injury," that is, an injury resulting from the violation of a procedural right created by statute. *See Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005). In such cases, the redressability and imminence requirements of standing are relaxed. *See Wildearth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013). The plaintiff need not show that "but for the alleged procedural deficiency the agency would have reached a different substantive result." *Id.* at 306. Rather, she need only establish that the agency violated a procedural right designed to protect her interests, and that it is plausible "'that the procedural breach will cause the essential injury to the plaintiff's own interest.'" *Ctr. for Law & Educ.*, 396 F.3d at 1159 (quoting *Fl. Audubon Soc. v. Bentsen*, 94 F.3d 658, 664–65 (D.C. Cir. 1996) (en banc)). In other words, "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island*

*Inst.*, 555 U.S. 488, 497 (2009). "A procedural injury claim therefore must be tethered to some concrete interest adversely affected by the procedural deprivation . . . ." *WildEarth Guardians*, 738 F.3d at 305.

Plaintiffs' alleged injury is the cost associated with complying with the TJCA's transition tax regulations, which include certain "collection of information" and "recordkeeping obligations." Am. Compl., ECF No. 5 [hereinafter Am. Compl.], ¶ 54. Plaintiffs complain that the regulations have "imposed significant burdens on Plaintiffs and other small businesses," including "forc[ing] small businesses to spend enormous amounts of time in futile efforts just to try and understand what [the regulations] mean[]," and "forc[ing] small businesses to expend significant funds to try and comply" with the regulations. *Id.* ¶¶ 33–34. Plaintiff Silver declares: "[I]n trying to comply with the statute and regulations . . . I have been forced to spend significant funds. Worse still, I will be forced to expend money on Transition tax-related compliance for years to come, even though I did not report any Transition tax liability." Decl. of Monte Silver, ECF No. 23-2, ¶ 18. These asserted facts plausibly establish a concrete injury to support standing. *See State Nat. Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015) (holding that regulated bank had standing where "monitoring program" devised to comply with regulations "cause[d] it to incur costs"); *Ass'n of Private Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 458 (D.C. Cir. 2012) (finding that regulated schools were "harmed because they will face even greater compliance costs" and thus had standing).

Notwithstanding Plaintiffs' straightforward injury and the relaxed redressability standard, Defendants still dispute standing on the element of causation. They assert that Plaintiffs' quarrel is with the TCJA rather than the regulations, and thus any alleged injury stems from the TCJA itself and not the agencies' newly adopted regulations. Defs.' Mot. at 8–11. But this argument

3

fundamentally misconstrues Plaintiffs' claims. Plaintiffs are not challenging any specific regulation that might or might not be traceable directly to the TCJA. Rather, Plaintiffs allege that the agencies neglected to undertake procedural measures designed to protect small business from the burden of unwieldy and cost-intensive regulations—namely, the publishing of an initial and a final regulatory flexibility analysis, 5 U.S.C. §§ 601, 603(a), and a certification that the regulation has reduced compliance burdens on small businesses, 44 U.S.C. § 3506. Plaintiffs alleged injuries are therefore traceable to Defendants' alleged violation of these separate statutory requirements, not the TCJA. Causation is easily satisfied. *See Fl. Audubon Soc.*, 94 F.3d at 664 (stating that a "plaintiff alleging a procedural violation [must show] a causal connection between the government action that supposedly required the disregarded procedure and some reasonably increased risk of injury to its particularized interest").

Accordingly, the court rejects Defendants' assertion that Plaintiffs lack standing to advance their claims.

II.

Defendants fare no better with their argument that the court lacks subject-matter jurisdiction under the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act. Defendants contend that Plaintiffs' suit is barred because it challenges regulations implementing Sections 965, 962, and 951 of the Internal Revenue Code, and invalidating those regulations would directly prevent the collection of taxes. Defs.' Mot. at 1, 14. Plaintiffs respond that the Anti-Injunction Act prohibits only those suits seeking to restrain the assessment and collection phases of the taxation process—not challenges to the antecedent procedural steps that are the subject of this lawsuit. Moreover, they argue, the Anti-Injunction Act does not apply where, as here,

Plaintiffs have no other avenue to litigate their claims because they do not owe a transition tax liability. Pls.' Opp'n to Mot. to Dismiss, ECF No. 23, at 15–19.

The Anti-Injunction Act bars judicial review of lawsuits filed "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). Similarly, the Declaratory Judgment Act excludes from its purview actions "with respect to Federal taxes." 28 U.S.C. § 2201(a). The D.C. Circuit has explained that the Anti-Injunction Act and the tax provision of the Declaratory Judgment Act are "coterminous." *Cohen v. United States*, 650 F.3d 717, 730–31 (D.C. Cir. 2011) (en banc). Therefore, for simplicity, the court focuses on the Anti-Injunction Act.

The principal purpose of the Anti-Injunction Act is "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736–37 (1974) (quoting *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)). But, as the D.C. Circuit has explained, the Act does not bar any and all lawsuits that might ultimately impact the amount of revenue in the U.S. treasury. *See Cohen*, 650 F.3d at 726 (citing *Hibbs v. Winn*, 542 U.S. 88, 102 (2004)). Although "[t]he IRS envisions a world in which no challenge to its actions is ever outside the closed loop of its taxing authority[,]" the Act's prohibition does not sweep so broadly: "'assessment' is not synonymous with the entire plan of taxation, but rather with the trigger for levy and collection efforts, and 'collection' is the actual imposition of a tax against a plaintiff." *Id*. (cleaned up). Accordingly, the D.C. Circuit has refused to "read[ ] the [Anti-Injunction Act] to reach all disputes tangentially related to taxes." *Id*. at 726–27. Rather, the Circuit has instructed that whether the Anti-Injunction Act prohibits a suit depends on whether the action is

fundamentally a "tax collection claim," *id*. at 727 (quoting *We the People Found., Inc. v. United States,* 485 F.3d 140, 143 (D.C. Cir. 2007)), which the court must determine based upon "a careful inquiry into the remedy sought, the statutory basis for that remedy, and any implication the remedy may have on assessment and collection," *id.*

*Cohen* is illustrative. There, taxpayers challenged a special procedure the IRS had established for refunding an unlawfully collected tax on the ground that the IRS had failed to comply with the Administrative Procedure Act's notice-and-comment requirements. *Id.* at 721. The suit thus "challeng[ed] the adequacy of IRS procedures," not the collection of any tax revenue. *Id.* at 733. Even if the taxpayers won, the court explained, "it does not follow that they are entitled to a tax refund. . . . The IRS may still adopt a new version of the same [procedure] after fixing any substantive and procedural defects." *Id.* at 728. The Anti-Injunction Act therefore presented no bar to the action.

So, too, here. Plaintiffs do not seek a refund or to impede revenue collection. Instead, they challenge the IRS's adopting of regulations without conducting statutorily mandated reviews designed to lessen the regulatory burden on small businesses. As relief, they ask the court simply to compel the agencies to do what the law requires—Regulatory Flexibility Act and Paperwork Reduction Act analyses. Tax revenues and their collection are unaffected by such relief.[1] The Anti-Injunction Act therefore presents no barrier to Plaintiffs' claims. *Cf. Z Street v. Kroskinen*, 791 F.3d 24, 31–32 (D.C. Cir. 2015) (holding that the Anti-Injunction Act did not bar a lawsuit challenging an allegedly unconstitutional delay in processing 501(c)(3) applications because the injury was the delay itself).

---

[1] The court need not decide at this stage whether the greater relief Plaintiffs seek—staying enforcement of the regulations "until such time as Defendants comply with their statutory duties," Am. Compl. at 19—would run afoul of the Anti-Injunction Act. The court need address that issue only if Plaintiffs prevail on the merits.

III.

For the foregoing reasons, Defendants' Motion to Dismiss is denied. So, too, is Plaintiffs' Motion to Expedite.

Dated: December 24, 2019

Amit P. Mehta
United States District Judge