[4830-01-p]

# DEPARTMENT OF THE TREASURY

Internal Revenue Service

26 CFR Part 1

[TD 9846]

RIN 1545-BO51

Regulations Regarding the Transition Tax Under Section 965 and Related Provisions

AGENCY:  Internal Revenue Service (IRS), Treasury.

ACTION:  Final regulations.

SUMMARY:  This document contains final regulations implementing section 965 of the Internal Revenue Code (the "Code").  Section 965 was amended by the Tax Cuts and Jobs Act, which was enacted on December 22, 2017.  This document finalizes the proposed regulations published on August 9, 2018.  The final regulations affect United States persons with direct or indirect ownership interests in certain foreign corporations.

DATES:  <u>Effective Date</u>:  These regulations are effective on **[INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER]**.

<u>Applicability Dates</u>:  For dates of applicability, see §§1.962-2(d), 1.965-9(a), 1.965-9(b), and 1.986(c)-1(d).

FOR FURTHER INFORMATION CONTACT:  Concerning the regulations §§1.962-2, 1.965-1 through 1.965-4, 1.965-7 through 1.965-9, and 1.986(c)-1, Natalie Punchak at (202) 317-6934; concerning the regulations §§1.965-5 and 1.965-6, Karen J. Cate at (202) 317-6926 (not toll-free numbers).

SUPPLEMENTARY INFORMATION:

**Background**

On August 9, 2018, the Department of the Treasury ("Treasury Department") and the IRS published proposed regulations (REG-104226-18) under sections 962, 965, and 986 in the **Federal Register** (83 FR 39514) (the "proposed regulations"). The proposed regulations were issued following guidance announcing and describing regulations intended to be issued under section 965, which was amended by section 14103 of the Tax Cuts and Jobs Act, Pub. L. 115-97 (2017) (the "Act"). See Notice 2018-07, 2018-4 I.R.B. 317; Notice 2018-13, 2018-6 I.R.B. 341; and Notice 2018-26, 2018-16 I.R.B. 480. Additional guidance describing certain provisions included in these regulations (the "final regulations") was published on October 15, 2018. See Notice 2018-78, 2018-42 I.R.B. 604. Terms used but not defined in this preamble have the meaning provided in the final regulations.

A public hearing was held on October 22, 2018. The Treasury Department and the IRS also received written comments with respect to the proposed regulations. Comments received before the final regulations were substantially developed, including all comments received on or before the deadline for comments on October 9, 2018, were carefully considered in developing the final regulations. Several comments were received that do not pertain to the rules in the proposed regulations or that are otherwise outside the scope of this rulemaking. For example, certain comments regarding the payment and reporting of net tax liability under section 965 as addressed in the document containing Questions and Answers about Reporting Related to Section 965 on 2017 Tax Returns (available at https://www.irs.gov/newsroom/questions-and-answers-about-reporting-related-to-section-965-on-2017-tax-returns) are beyond the

2

scope of the final regulations.  Comments that are outside the scope of this rulemaking are generally not addressed in this preamble.  The Treasury Department and the IRS will consider these comments in connection with any future guidance projects addressing the issues discussed in the comments.  All written comments received in response to the proposed regulations are available at www.regulations.gov or upon request.

**Summary of Comments and Explanation of Revisions**

I. Overview

The final regulations retain the basic approach and structure of the proposed regulations, with certain revisions.  This Summary of Comments and Explanation of Revisions section discusses those revisions as well as comments received in response to the solicitation of comments in the notice of proposed rulemaking accompanying the proposed regulations.

II. Comments and Changes to Proposed §1.965-1 – Overview, General Rules, and Definitions

Proposed §1.965-1 provides general rules and definitions under section 965, including general rules concerning section 965(a) inclusion amounts, general rules concerning section 965(c) deduction amounts, and rules concerning the treatment of certain specified foreign corporations as controlled foreign corporations (as defined in section 957) ("CFCs") and certain controlled domestic partnerships as foreign partnerships.  The comments and modifications with respect to these rules are discussed in this Part II.

A. Application of exchange rate for determining section 965(a) inclusion amount

3

The proposed regulations provide that a section 965(a) inclusion amount is determined by translating a section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of a deferred foreign income corporation ("DFIC") into U.S. dollars using the spot rate on December 31, 2017.  Proposed §1.965-1(b)(1).  A comment suggested that the average exchange rate for the section 958(a) U.S. shareholder's 2017 fiscal year should be used under section 989(b)(3) and stated that the approach of the proposed regulations created unnecessary complexity but did not elaborate on how complexity was created.  The Treasury Department and the IRS have determined that while section 989(b)(3) would generally apply the average exchange rate for the inclusion year of the DFIC (not the section 958(a) U.S. shareholder, as the comment suggested) for purposes of translating an amount included in income under section 951(a)(1)(A), like a section 965(a) inclusion amount, it is appropriate to use the grant of regulatory authority in section 989 to instead provide for translation at the spot rate on December 31, 2017.  As explained in Notice 2018-13, a single spot rate on December 31, 2017, is more administrable for the IRS and less burdensome for taxpayers than the yearly average approach of section 989(b)(3) because under the yearly average approach, certain amounts required for the determination of the section 965(a) inclusion amount (for example, a DFIC's allocable share of an aggregate foreign E&P deficit) would not be determinable until the closing of the last year of a specified foreign corporation beginning before January 1, 2018.  Accordingly, the final regulations do not adopt the comment.

B.  Application of controlled domestic partnership rule

ADMIN_03217

Proposed §1.965-1(e) contains a rule treating certain controlled domestic partnerships as foreign partnerships for purposes of determining the section 958(a) U.S. shareholders of a specified foreign corporation owned by the controlled domestic partnership and the section 958(a) stock owned by such shareholders. A comment suggested that because controlled domestic partnership is defined by reference to a specific United States shareholder, the rule could be read to apply only with respect to such shareholder but not with respect to other partners of the controlled domestic partnership, for which it would therefore still be treated as domestic. The definition of controlled domestic partnership is accordingly revised to not be defined only with respect to a United States shareholder, so that a controlled domestic partnership is clearly treated as a foreign partnership for all partners if the rule applies. See §1.965-1(e)(2).

The comment also recommended that a controlled domestic partnership treated as a foreign partnership be treated as such for purposes of the specified basis adjustment rules discussed in Part III.D of this Summary of Comments and Explanation of Revisions. The final regulations adopt this recommendation and provide that a controlled domestic partnership treated as a foreign partnership is treated as a foreign pass-through entity. Section 1.965-2(i)(2).

C. Determination of accumulated post-1986 deferred foreign income

1. Application of Previously Taxed E&P Exception to Non-CFCs

Proposed §1.965-1(f)(7)(i)(B) and (C) exclude from accumulated post-1986 deferred foreign income certain earnings and profits ("E&P") described in section 959(c)(1) or 959(c)(2) ("previously taxed E&P") and amounts that would be treated as

ADMIN_03218

previously taxed E&P in the case of shareholders that are not United States shareholders on an E&P measurement date. These exclusions (consistent with section 965(d)(2)(B)) apply only to E&P of a CFC. A comment requested that the exclusion be expanded to previously taxed E&P and amounts that would be treated as previously taxed E&P of specified foreign corporations that are no longer CFCs as of the relevant E&P measurement date, given that section 959 can apply to distributions by foreign corporations that are no longer CFCs. The Treasury Department and the IRS have determined that the recommendation is inconsistent with the clear statutory language of section 965(d)(2)(B), which applies solely to CFCs. Accordingly, the final regulations do not reflect this recommendation. See Part II.J of this Summary of Comments and Explanation of Revisions for a discussion of the consequences of an actual distribution of previously taxed E&P for purposes of section 965.

2. Expansion of Previously Taxed E&P Exception to Address Distributions

Another comment suggested that the final regulations expand on the rationale of section 965(d)(2)(B) and proposed §1.965-1(f)(7)(i)(B) and (C) to provide that accumulated post-1986 deferred foreign income is reduced by post-1986 earnings and profits described in section 959(c)(3) that have been distributed to an unrelated foreign corporation pursuant to a dividend pro rata to such corporation and a specified foreign corporation, given that the "no diminution rule" discussed in Part II.G.1 of this Summary of Comments and Explanation of Revisions would decrease the post-1986 earnings and profits by the amount distributed to the specified foreign corporation but not the unrelated foreign corporation. As discussed in more detail in Part II.G.1 of this Summary of Comments and Explanation of Revisions, the Treasury Department and the

6

ADMIN_03219

IRS have determined that the application of the statutory "no diminution rule" is clear, and the special rules in section 965(d)(2)(B) for previously taxed E&P have no bearing on the fact pattern highlighted by the comment. Accordingly, the final regulations do not adopt this comment, nor a similar comment suggesting that step 2 of the ordering rule in proposed §1.965-2(b), discussed in Part III.A of this Summary of Comments and Explanation of Revisions, permit such dividends to persons other than specified foreign corporations to be taken into account before the application of section 965 is determined.

3. Expansion of Previously Taxed E&P Exception to Address Section 951(a)(1)(B) Inclusions

A comment suggested that a pre-inclusion year inclusion under sections 951(a)(1)(B) and 956 with respect to a DFIC whose inclusion year ends November 30, 2018, may not be properly accounted for in determining accumulated post-1986 deferred foreign income as of the measurement date on November 2, 2017. The comment notes that a distribution of an amount of E&P that would be described in section 959(c)(1) as a result of an inclusion under sections 951(a)(1)(B) and 956 during a pre-inclusion year taxable year would prevent sections 951(a)(1)(B) and 956 from applying. Accordingly, such E&P would not qualify for the exception from accumulated post-1986 deferred foreign income for previously taxed E&P in §1.965-1(f)(7)(i)(B). The comment suggested that the final regulations provide an additional exception from the definition of accumulated post-1986 deferred foreign income for E&P that would be included in the income of a United States shareholder under sections 951(a)(1)(B) and 956.

7

The Treasury Department and the IRS have determined that the statutory definition of accumulated post-1986 deferred foreign income is clear in not excluding such E&P.  Moreover, modifications to reduce a section 965(a) inclusion amount to the extent of an inclusion under sections 951(a)(1)(B) and 956 in such circumstances are not warranted for the same reasons that modifications to address dividends with comparable results are not warranted, as discussed in Part II.G.1 of this Summary of Comments and Explanation of Revisions.  A new example illustrates the treatment of E&P of a specified foreign corporation as of the E&P measurement date on November 2, 2017, which is described in section 959(c)(1) as a result of an inclusion under section 951(a)(1)(B) with respect to the specified foreign corporation's taxable year ending on November 30, 2017.  See §1.965-2(j)(5).

4.  Application of Previously Taxed E&P Exception in the Case of Section 962 Elections

Under section 962(d), E&P giving rise to inclusions under section 951(a)(1) with respect to which an election under section 962 applies are, notwithstanding section 959(a)(1), includible in the gross income of a United States shareholder when distributed except to the extent of tax paid on the inclusions.  Therefore, those E&P (that is, the non-excludable amount) are included in accumulated post-1986 deferred foreign income in an inclusion year.  See section 965(d)(2)(B) (excluding from accumulated post-1986 deferred foreign income earnings that, if distributed, would be excluded from gross income under section 959).  A comment suggested that accumulated post-1986 deferred foreign income should exclude all previously taxed E&P attributable to a prior year inclusion under section 951(a)(1) by a United States shareholder when a section 962 election applied with respect to the prior year inclusion.  In the alternative, the

8

comment suggested that the final regulations allow foreign income taxes deemed paid

with respect to the original inclusion under section 951(a)(1) to be treated as deemed

paid again with respect to a section 965(a) inclusion with respect to such previously

taxed E&P.  The Treasury Department and the IRS have determined that the statute is

clear that a reduction to accumulated post-1986 deferred income is allowed only for

E&P that would be excluded from income under section 959 upon distribution.  In

addition, there is no authority under the Code to allow the same foreign income taxes to

be credited twice.  Therefore, because there is no statutory authority for such

modifications, the suggested modifications to the statutory definition of accumulated

post-1986 deferred foreign income and operation of the foreign tax credit rules are not

warranted and are not adopted in the final regulations.

D.  Determination of aggregate foreign cash position and cash position

The proposed regulations define "aggregate foreign cash position" to mean the

greater of the aggregate of a section 958(a) U.S. shareholder's pro rata share of the

cash position of each specified foreign corporation determined on the final cash

measurement date or the average of the aggregate of a section 958(a) U.S.

shareholder's pro rata share of the cash position of each specified foreign corporation

determined as of each specified foreign corporation's first and second cash

measurement dates.  Proposed §1.965-1(f)(8).  For purposes of this calculation, a

specified foreign corporation's cash position consists of cash held by the corporation,

the net accounts receivable of the corporation, and the fair market value of the cash-

equivalent assets held by the corporation.  Proposed §1.965-1(f)(16)(i).  Cash-

equivalent assets include (i) personal property which is of a type that is actively traded

9

ADMIN_03222

and for which there is an established financial market; (ii) commercial paper, certificates of deposit, the securities of the Federal government and of any State or foreign government; (iii) any foreign currency; (iv) any obligation with a term of less than one year ("short-term obligation"); and (v) derivative financial instruments, other than bona fide hedging transactions.  Proposed §1.965-1(f)(13).

1. Exclusions from Cash Position

Guidance was requested about the exclusion of certain assets from the cash position of a specified foreign corporation.  Specifically, comments recommended that cash subject to local regulatory restrictions, held in a fiduciary or trust capacity, derived from domestic E&P, earmarked to fund a foreign acquisition pursuant to a legal contract entered into before November 2, 2017, obligated to be paid to a third party, or corresponding to previously taxed E&P not be taken into account in determining a specified foreign corporation's cash position.  Comments also requested that obligations with respect to which there was an inclusion under sections 951(a)(1)(B) and 956 be excluded from a specified foreign corporation's cash position.  In addition, comments requested guidance exempting certain assets that would otherwise be considered personal property which is of a type that is actively traded and for which there is an established financial market.  For example, comments suggested that the stock of a publicly traded company be excluded from a specified foreign corporation's cash position if the stock represents a controlling interest in a corporation, meets an annual trading volume threshold, is the stock of a specified foreign corporation, is held in the ordinary course of a section 958(a) U.S. shareholder's trade or business, or was not reported as a current asset on the audited financial statements of a section 958(a) U.S.

ADMIN_03223

shareholder or its specified foreign corporation.  Similarly, comments requested that certain products or raw materials held as inventory that are a type of property that may be actively traded on, for example, commodities markets, and forward contracts with respect to those items be excluded from a specified foreign corporation's cash position if the items are part of the corporation's ongoing operations or are disposed of in the normal course of business.  One comment requested guidance that actively traded personal property be presumptively treated as cash, subject to the ability of the taxpayer to rebut the presumption by submitting a statement with its tax return that establishes, based on all of the relevant facts and circumstances, that the property is illiquid.  Another comment stated that the proposed regulations struck an appropriate balance and requested that the exceptions from the definition of cash position be limited to those in the proposed regulations and that no additional exceptions be given.

The Treasury Department and the IRS have determined that a narrow exemption from the definition of "cash position" is appropriate for certain assets held by a specified foreign corporation in the ordinary course of its trade or business as well as for certain privately negotiated contracts to buy or sell such assets.  Therefore, in response to comments, the final regulations provide that a commodity that is described in section 1221(a)(1) or 1221(a)(8) in the hands of the specified foreign corporation is excluded from the category of personal property which is of a type that is actively traded and for which there is an established market, except with respect to dealers or traders in commodities.  Section 1.965-1(f)(13)(i)(A) and (ii).  Additionally, the final regulations exclude forward contracts and short positions with respect to such commodities from the definition of derivative financial instrument to the extent that they could have been

11

ADMIN_03224

identified as a hedging transaction with respect to such commodities.  See §1.965-1(f)(18)(iii) and (v).  This exemption does not raise the administrability concerns that are inherent in a liquidity-based test of widespread applicability.

However, the Treasury Department and the IRS decline to adopt the recommendations for additional cash position exceptions.  Congress developed a statutory definition of "cash position" that includes all cash and certain assets held by a specified foreign corporation regardless of whether the cash or assets are illiquid or were transferred from the United States.  See section 965(c)(3)(B).  The legislative history is consistent with the unambiguous language in the statute.  See, e.g., H.R. Rep. No. 115-446, at 609-10 (2017) ("The cash position of an entity consists of all cash, net accounts receivable, and the fair market value of similarly liquid assets, specifically including personal property that is actively traded on an established financial market, government securities, certificates of deposit, commercial paper, foreign currency, and short-term obligations.").  Therefore, the final regulations continue to provide that, for example, the fair market value of publicly traded stock held by a specified foreign corporation is included in a specified foreign corporation's cash position, regardless of the specified foreign corporation's ownership percentage in the publicly traded corporation, because such stock is "of a type" that is actively traded on an established securities market.

Additionally, creating broad regulatory exceptions to the statutory definition would require administratively complex tracing and facts-and-circumstances rules.  For example, an exclusion for cash that originated in the United States and was earmarked to fund a foreign acquisition pursuant to a legal contract entered into before November

ADMIN_03225

2, 2017, would necessarily require difficult-to-administer rules to identify such cash, which may currently be or may have previously been comingled with foreign-derived cash in a single account. Similarly, it would be challenging to administer a presumption or a test that assesses the liquidity of every asset based on the facts and circumstances.

Accordingly, the final regulations generally retain the definitions of "aggregate foreign cash position" and "cash position" set forth in the proposed regulations. See §1.965-1(f)(8) and (16).

2. Accounts Receivable and Accounts Payable

The proposed regulations provide that for purposes of determining net accounts receivable taken into account in determining the cash position of a specified foreign corporation, the term "accounts receivable" means receivables described in section 1221(a)(4), and the term "accounts payable" means payables arising from the purchase of property described in section 1221(a)(1) or 1221(a)(8) or the receipt of services from vendors or suppliers, and only receivables or payables with a term upon issuance that is less than one year are taken into account. Proposed §1.965-1(f)(5) and (6).

Comments requested that the definition of accounts payable for purposes of determining a specified foreign corporation's cash position be expanded. Specifically, comments recommended that accounts payable be defined to include payables to employees in the ordinary course of business, payables arising from the purchase of depreciable property, payables related to the licensing of intellectual property, payables for taxes other than income taxes, payables for debt with a term of less than one year, and payables established under Revenue Procedure 99-32, 1999-2 C.B. 296. Although

13

ADMIN_03226

the statute does not define the term "accounts payable," generally accepted accounting principles define the term to mean amounts owed to vendors and suppliers for the purchase of goods and services on credit, to the exclusion of obligations such as accrued taxes, interest expense, commission or royalty expense, and compensation payable, which are treated as accrued liabilities.  The definition of accounts payable set forth in the proposed regulations therefore reflects the ordinary meaning of the term, and the final regulations do not adopt these recommendations.

3. Short-Term Obligations

The proposed regulations provide that for purposes of determining a specified foreign corporation's cash position, the term "short-term obligation" means any obligation with a term at issuance that is less than one year and any loan that must be repaid at the demand of the lender (or that must be repaid within one year of such demand) but does not include any accounts receivable.  Proposed §1.965-1(f)(43). Comments requested that the definition of short-term obligation be modified to allow netting of short-term notes payable against short-term notes receivable for purposes of computing a specified foreign corporation's cash position.

The Treasury Department and the IRS decline to adopt these comments.  The statute explicitly allows accounts payable to be netted against accounts receivable for purposes of determining the cash position of a specified foreign corporation but does not provide the same treatment with respect to short-term obligations.  See section 965(c)(3)(B)(ii), (c)(3)(B)(iii)(IV), and (c)(3)(C).  The legislative history is consistent with the statute's plain meaning.  See H.R. Rep. No. 115-446, at 615 (2017).  Accordingly,

14

the final regulations retain the definition of "short-term obligation" set forth in the proposed regulations.  See §1.965-1(f)(43).

4.  Cash-Equivalent Asset Hedging Transactions

   For purposes of determining the cash position of a specified foreign corporation, the proposed regulations include special rules regarding the treatment of cash-equivalent asset hedging transactions.  The term "cash-equivalent asset hedging transaction" is defined as a bona fide hedging transaction identified on a specified foreign corporation's books and records as hedging a cash-equivalent asset.  Proposed §1.965-1(f)(14).  A bona fide hedging transaction is defined to mean a hedging transaction that meets (or that would meet if the specified foreign corporation were a CFC) the requirements of a bona fide hedging transaction described in §1.954-2(a)(4)(ii) (without regard to the identification requirements, in the case of a specified foreign corporation that is not a CFC).  Proposed §1.965-1(f)(12).

   The proposed regulations do not address whether, and the extent to which, a bona fide hedging transaction that hedges an aggregate risk (an "aggregate hedging transaction"), including risks with respect to one or more cash-equivalent assets, may be treated as a cash-equivalent asset hedging transaction.  For example, a bona fide hedging transaction may hedge the risk with respect to multiple assets, some of which are cash-equivalent assets and some of which are not cash-equivalent assets.  See generally §1.954-2(a)(4)(ii)(A) (defining a bona fide hedging transaction, in part, by reference to the requirements of §1.1221-2(a) through (d)); §1.1221-2(c)(3) (providing that a hedging transaction may manage aggregate risk).

   The Treasury Department and the IRS have determined that it is appropriate to

ADMIN_03228

permit bona fide hedging transactions that are aggregate hedging transactions to be treated as cash-equivalent asset hedging transactions to the extent that the risks managed by the aggregate hedging transaction relate to cash-equivalent hedging transactions. Accordingly, the final regulations provide that an aggregate hedging transaction may be treated as a cash-equivalent asset hedging transaction and allocate the value of an aggregate hedging transaction between cash-equivalent hedging transactions and other assets, if any, being hedged. See §1.965-1(f)(14)(ii).

One comment requested guidance clarifying that hedging transactions that use cash-equivalent assets that are not derivative financial instruments as hedging instruments, in addition to hedging transactions that use derivative financial instruments as hedging instruments, are eligible to be treated as bona fide hedging transactions. The Treasury Department and the IRS have determined that it is clear that a hedging transaction that uses a cash-equivalent asset as a hedging instrument will qualify as a bona fide hedging transaction if the requirements in proposed §1.965-1(f)(12) are met, and no clarification is necessary.

E. Cash measurement dates

The proposed regulations provide that a specified foreign corporation's final cash measurement date is the close of the last taxable year of the specified foreign corporation that begins before January 1, 2018, and ends on or after November 2, 2017, if any. Proposed §1.965-1(f)(24). The second cash measurement date of a specified foreign corporation is the close of the last taxable year of the specified foreign corporation that ends after November 1, 2016, and before November 2, 2017, if any. Proposed §1.965-1(f)(31). The first cash measurement date of a foreign corporation is

16

ADMIN_03229

the close of the last taxable year of the specified foreign corporation that ends after November 1, 2015, and before November 2, 2016, if any. Proposed §1.965-1(f)(25). Under the proposed regulations, a section 958(a) U.S. shareholder takes into account its pro rata share of the cash position of a specified foreign corporation as of the close of any cash measurement date of the specified foreign corporation on which the section 958(a) U.S. shareholder is a section 958(a) U.S. shareholder of the specified foreign corporation, without regard to whether the section 958(a) U.S. shareholder is a section 958(a) U.S. shareholder as of any other cash measurement date, including the final cash measurement date of the specified foreign corporation. See proposed §1.965-1(f)(30)(iii).

A comment recommended that the proposed regulations be modified such that a section 958(a) U.S. shareholder would not take into account the pro rata share of the cash position of any specified foreign corporation liquidated before November 2, 2017. The comment is premised on the view that the references to "each such specified foreign corporation" in section 965(c)(3)(A)(ii) expressly link the specified foreign corporations whose cash positions are measured on the first and second cash measurement dates to those whose cash positions are measured on the final cash measurement date. Accordingly, the comment reads the statute to provide that if a specified foreign corporation did not exist or was not held by a section 958(a) U.S. shareholder on the final cash measurement date, its cash position may not be taken into account under section 965(c)(3)(A)(ii).

The Treasury Department and the IRS have determined that the comment's reading of section 965(c)(3)(A)(ii) is an inferior reading and have determined that the

17

ADMIN_03230

cash measurement date rules in the proposed regulations are consistent with the text and underlying purposes of the relevant statutory provision and that the legislative history supports this conclusion. The phrase "each such specified foreign corporation" in section 965(c)(3)(A)(ii)(I) and (II) refers only to the phrase "each specified foreign corporation of such United States shareholder" in section 965(c)(3)(A)(i), and not the additional language in section 965(c)(3)(A)(i) referring to the final cash measurement date. Additionally, given that the purpose of the multiple cash measurement dates was to mitigate any incentive for taxpayers to manipulate their cash position as of the final cash measurement date, it is appropriate to ensure that the cash position of a specified foreign corporation in existence on a cash measurement date is taken into account by a United States shareholder on such date. For example, a rule that ignored the cash position of specified foreign corporations that did not exist or were not held by a section 958(a) U.S. shareholder on the final cash measurement date could allow a section 958(a) U.S. shareholder with an aggregate foreign cash position that was determined as of the earlier cash measurement dates described in section 965(c)(3)(A) to retroactively reduce its aggregate foreign cash position by liquidating or otherwise disposing of specified foreign corporations with significant cash positions, even when cash and cash-equivalent assets of the specified foreign corporation continued to be held by one or more other specified foreign corporations of the section 958(a) U.S. shareholder.

Finally, the Joint Committee on Taxation explanation of the Act also indicates that, for purposes of section 965, the cash position of a specified foreign corporation that no longer exists must still be taken into account by a section 958(a) U.S. shareholder in determining its aggregate foreign cash position. See Staff, Joint

18

Committee on Taxation, General Explanation of Public Law 115-97, JCS-1-18, at 359-360 (2018) ("If a specified foreign corporation does not exist on any particular cash measurement date, its cash position would be zero with respect to that date."). Accordingly, the Treasury Department and the IRS do not adopt this recommendation.

Another comment requested confirmation that United States shareholder status, the United States shareholder's pro rata share, and specified foreign corporation status are determined based on the facts and applicable law at the time of each cash measurement date. The Treasury Department and the IRS have determined that that is clear under proposed §1.965-1(f)(8) and (f)(30)(iii), as illustrated by the example in §1.965-1(g)(7). Accordingly, no changes are made in the final regulations in this regard.

F.  Domestic pass-through entities

A comment made a number of suggestions premised on the assumption that aggregate foreign E&P deficits, section 965(a) inclusion amounts, and section 965(c) deductions are not determined at the section 958(a) U.S. shareholder level when the section 958(a) U.S. shareholder is a domestic pass-through entity, and instead that shares of the components of those amounts (such as specified E&P deficits, section 965(a) earnings amounts, and aggregate foreign cash positions) are taken into account separately by the domestic pass-through owners. As discussed in more detail in this Part II.F with respect to the specific suggestions made by the comment, the Treasury Department and the IRS have determined that the statute clearly provides otherwise, and the proposed regulations and final regulations are consistent with the statute.

The comment requested that the final regulations clarify that if a domestic pass-through entity is a United States shareholder of an E&P deficit foreign corporation, a

19

ADMIN_03232

domestic pass-through owner of the domestic pass-through entity can take into account its shares of the domestic pass-through entity's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation to reduce the domestic pass-through owner's pro rata share of a section 965(a) earnings amount of a DFIC.  In support of its recommendation, the comment cited the rule provided in proposed §1.965-1(e) treating a controlled domestic partnership as a foreign partnership, such that its partners could be treated as having a pro rata share of specified E&P deficits of E&P deficit foreign corporations owned by the partnership.  However, that rule is intended to ensure that the accumulated post-1986 deferred foreign income of DFICs of such a partnership is subject to U.S. tax.  The Treasury Department and the IRS have determined that it should not be extended to structures that do not present the same tax-avoidance concerns, such as the one raised by the comment involving a United States person that is a partner in a domestic partnership.  The Treasury Department and the IRS have determined that it is clear under the statute that a domestic pass-through entity's pro rata share of a specified E&P deficit can only be used to reduce the domestic pass-through entity's pro rata share of section 965(a) earnings amounts, and the proposed and final regulations are consistent with the statute.

Similarly, under the statute, a domestic pass-through owner's distributive share of a domestic pass-through entity's section 965(a) inclusion amount cannot be reduced by the domestic pass-through owner's pro rata share of a specified E&P deficit of an E&P deficit foreign corporation of which it is a section 958(a) U.S. shareholder.  The proposed and final regulations are consistent with the statute.  Accordingly, the comment's suggestion is not adopted.

20

ADMIN_03233

The comment also suggested clarifying that if a domestic pass-through entity's aggregate foreign cash position exceeds its aggregate section 965(a) inclusion amounts, the domestic pass-through owners of the domestic pass-through entity need only take into account their share of the excess aggregate foreign cash position, and not their share of the aggregate foreign cash position taken into account in determining the section 965(c) deduction amount of the domestic pass-through entity. The Treasury Department and the IRS have determined that because only a section 958(a) U.S. shareholder can have an aggregate foreign cash position, and there is no mechanism for treating a domestic pass-through owner of a domestic pass-through entity that is a section 958(a) U.S. shareholder as having a share of an aggregate foreign cash position, it is clear under the statute, the proposed regulations, and the final regulations, that domestic pass-through owners do not take into account any amount of a domestic pass-through entity's aggregate foreign cash position. Accordingly, no clarification is needed, and the comment is not adopted.

G. Post-1986 earnings and profits

1. Treatment of Distributions

Under the proposed regulations, a specified foreign corporation's post-1986 earnings and profits are determined without diminution by reason of dividends distributed during the last taxable year of the foreign corporation that begins before January 1, 2018, other than dividends distributed to another specified foreign corporation ("no diminution rule"). Proposed §1.965-1(f)(29)(i)(B). Comments noted that the no diminution rule may result in overinclusion of a specified foreign corporation's post-1986 earnings and profits and suggested that the final regulations

21

ADMIN_03234

limit the rule's application (that is, to allow diminution of a specified foreign corporation's post-1986 earnings and profits) in the case of dividends to a seller before a sale during the inclusion year. The statute explicitly provides that dividend distributions, other than distributions to another specified foreign corporation, must not be taken into account for purposes of computing a specified foreign corporation's post-1986 earnings and profits. Section 965(d)(3)(B). The legislative history supports the plain language of the statute. See H.R. Rep. No. 115-446, at 619 (2017). See Part II.H of this Summary of Comments and Explanation of Revisions for additional discussion of rules affecting the treatment of pre-sale distributions by a DFIC. Therefore, the comments are not adopted.

Similarly, comments have suggested reducing post-1986 earnings and profits by dividends to a United States shareholder between November 2, 2017, and December 1, 2017, by a DFIC with an inclusion year ending November 30, 2018, in order to mitigate double counting of E&P in connection with such dividends. However, the legislative history to section 965(o) makes clear that the Treasury Department and the IRS were expected to provide regulations to address double counting resulting from transactions between specified foreign corporations but is silent with respect to transactions between specified foreign corporations and United States shareholders. Id. Accordingly, the Treasury Department and the IRS have determined that the grant of regulatory authority in section 965 was not intended to address such fact patterns. Further, and as the preamble to the proposed regulations notes, payments by a specified foreign corporation to a United States shareholder can have attendant U.S. tax effects that do not occur with respect to payments between specified foreign corporations. For

22

ADMIN_03235

example, a distribution to a United States shareholder may permit that shareholder to take into account foreign tax credits under section 902 and avoid the limitation under section 965(g)(1) that would apply if the underlying foreign taxes had been deemed paid with respect to the shareholder's section 965(a) inclusion amount. Accordingly, the Treasury Department and the IRS decline to adopt this recommendation. The alternative recommendations in some of the comments, to treat the dividend as out of previously taxed E&P arising in the subsequent taxable year or to allow the same foreign income taxes to be deemed paid with respect to both the dividend and the section 965(a) inclusion, are inconsistent with the statute and the Code at large, and, accordingly, these recommendations are not adopted.

2. Foreign Income Tax Rule

The proposed regulations provide that for purposes of determining a specified foreign corporation's post-1986 earnings and profits as of the E&P measurement date on November 2, 2017, in the case in which foreign income taxes (as defined in section 901(m)(5)) of the specified foreign corporation accrue after November 2, 2017, but on or before December 31, 2017, and during the specified foreign corporation's U.S. taxable year that includes November 2, 2017, the specified foreign corporation's post-1986 earnings and profits as of November 2, 2017, are reduced by the applicable portion of such foreign income taxes. Proposed §1.965-1(f)(29)(ii). Comments requested that the rule be expanded to permit reduction for foreign income taxes accrued after December 31, 2017, for purposes of determining post-1986 earnings and profits on the measurement dates on both November 2, 2017, and December 31, 2017, and regardless of whether the foreign corporation's U.S. taxable year includes November 2,

23

2017. The Treasury Department and the IRS have determined that it would be inappropriate to allow taxes accrued in a U.S. tax year after the one that includes November 2, 2017, to be taken into account in determining post-1986 earnings and profits on November 2, 2017, because such taxes could not have accrued for the first year under the general foreign tax credit rules. Moreover, expanding the rule to take into account taxes accrued after December 31, 2017, would prevent section 965-related amounts from being determined with certainty as of December 31, 2017. As discussed in Part II.A of this Summary of Comments and Explanation of Revisions, the Treasury Department and the IRS have determined that it continues to be important to have certainty about section 965-related amounts as of December 31, 2017, and accordingly decline to adopt the comments.

Another comment recommended modifying how the applicable portion of foreign income taxes taken into account on November 2, 2017, is determined. For ease of implementation, instead of basing the determination on the portion of the income for the foreign taxable period that includes November 2, 2017, as computed under foreign tax law, that had accrued as of such date, this comment recommended basing the determination on the ratio of the E&P for the U.S. taxable year, as computed under U.S. tax principles, as of November 2, 2017, to that as of December 31, 2017. The Treasury Department and the IRS have determined that taxpayers are generally required under §1.904-6 to associate foreign income taxes with taxable income computed under foreign law, such that the rule in §1.965-1(f)(29)(ii) does not create a significant additional burden. Moreover, the suggested approach could result in significant distortions if the

24

foreign corporation's U.S. and foreign taxable years differed.  Accordingly, the recommendation is not adopted.

3.  Other Exclusions from Post-1986 Earnings and Profits

A comment also requested that the definition of post-1986 earnings and profits exclude cashless earnings generated by foreign corporations while they were not controlled by United States shareholders.  In the same vein, it requested that dividends paid out of earnings earned before a foreign corporation became a specified foreign corporation be excluded from the post-1986 earnings and profits of the recipient specified foreign corporation.  Because the term "post-1986 earnings and profits" clearly includes E&P (which is not tied to cash and is often attributable to cashless income) earned while a corporation was a specified foreign corporation, without regard to whether it was controlled by United States shareholders, and because section 965(d)(3)(B) clearly evidences consideration for the impact of dividends between foreign corporations on post-1986 earnings and profits, the Treasury Department and the IRS decline to adopt this comment.

4.  Alternative Measurement Methods

A comment requested guidance permitting taxpayers to determine their specified foreign corporations' post-1986 earnings and profits and cash positions using an alternative measurement method.  The comment noted that before the enactment of section 965, foreign corporations other than CFCs or section 902 corporations (as defined under former section 909(d)(5)) had no reason to track E&P under U.S. tax principles; therefore, requiring a United States shareholder to obtain information from a

25

ADMIN_03238

foreign corporation that the corporation would not have known to maintain is unduly burdensome.

Section 965(d)(3) provides, without exception, that for purposes of determining post-1986 earnings and profits, the E&P of a specified foreign corporation must be "computed in accordance with sections 964(a) and 986." Likewise, section 965(c)(3)(B), which contains rules for determining a specified foreign corporation's cash position, applies to "any specified foreign corporation." Moreover, there is no indication in the legislative history that Congress intended to ease the requirements for computing the post-1986 earnings and profits and the cash position for those specified foreign corporations that may not have previously calculated E&P under U.S. tax principles. Accordingly, the Treasury Department and the IRS do not adopt this comment.

H. Determination of pro rata share of section 965(a) earnings amount

The proposed regulations provide that a section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of a DFIC is the portion of the section 965(a) earnings amount that would be treated as distributed to the section 958(a) U.S. shareholder under section 951(a)(2)(A) and §1.951-1(e), determined as of the last day of the inclusion year of the DFIC. Proposed §1.965-1(f)(30)(i). The Treasury Department and the IRS have determined that this definition is inconsistent with the statutory language of sections 951 and 965 in the case in which a specified foreign corporation, whether it is or is not a CFC, ceases to be a specified foreign corporation during its inclusion year. Under section 951, a section 958(a) U.S. shareholder of such a specified foreign corporation would generally have an inclusion under section 951 with respect to the corporation if it were a DFIC because it would own stock of the specified

26

foreign corporation on the last day of the inclusion year on which the corporation was a specified foreign corporation.

Because a specified foreign corporation is treated as a CFC for purposes of section 951, the Treasury Department and the IRS have determined that the final regulations should be consistent with section 951 in requiring a section 965(a) inclusion by such a section 958(a) U.S. shareholder.  Moreover, the Treasury Department and the IRS have concluded that it would not be appropriate to prorate a section 965(a) earnings amount based on the portion of the inclusion year that the DFIC is a specified foreign corporation, as the reference in proposed §1.965-1(f)(30)(i) to section 965(a)(2)(A) might suggest, given that the limitation of post-1986 earnings and profits to E&P accumulated in periods in which the DFIC was a specified foreign corporation would already prevent E&P accrued after the DFIC ceased to be a specified foreign corporation from being taken into account.  The definitions of "pro rata share" and "section 958(a) U.S. shareholder inclusion year" are revised accordingly in the final regulations.  See §1.965-1(f)(30) and (f)(34).  The definition of pro rata share continues to preclude reduction by distributions to other owners under section 951(a)(2)(B) in order to be consistent with section 965(d)(3)(B) and prevent double non-taxation in the case of certain 2018 dispositions of specified foreign corporations.  Id.; see §1.965-2(j)(6).

I.  Determination of pro rata share of specified E&P deficit

The proposed regulations provide that, for purposes of determining a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit of an E&P deficit foreign corporation, the specified E&P deficit is allocated among the shareholders of the

ADMIN_03240

corporation's common stock in proportion to the value of the common stock held by such shareholders. Proposed §1.965-1(f)(30)(ii). The Treasury Department and the IRS have determined that a specified E&P deficit should be allocated to shareholders of an E&P deficit corporation's preferred stock in cases involving common stock with no liquidation value. The final regulations therefore provide that any amount of a specified E&P deficit that would otherwise be allocated in a hypothetical distribution to a class of common stock that has no liquidation value is instead allocated to the most junior class of equity with a positive liquidation value to the extent of the liquidation value. Section 1.965-1(f)(30)(ii)(A). The final regulations also provide that, in cases in which a corporation's common stock has a liquidation value of zero and there is no class of equity with a liquidation preference relative to the common stock, the specified E&P deficit is allocated among the common stock using any reasonable method consistently applied. Section 1.965-1(f)(30)(ii)(B).

J. Determination of specified E&P deficit

The proposed regulations provide that previously taxed E&P are not excluded in determining the existence and amount of an E&P deficit foreign corporation's specified E&P deficit. See proposed §1.965-1(f)(22)(ii). Comments requested that the final regulations provide to the contrary. The Treasury Department and the IRS have determined that it is clear that previously taxed E&P are not excluded in determining a specified E&P deficit. Section 965(b)(3)(B) and (C) provide that a specified E&P deficit is, with respect to an E&P deficit foreign corporation, a deficit in post-1986 earnings and profits as of November 2, 2017. For purposes of section 965, the term post-1986 earnings and profits is defined in section 965(d)(3) and is computed in accordance with

28

ADMIN_03241

sections 964(a) and 986.  Under section 964(a), E&P are determined according to rules substantially similar to those applicable to domestic corporations.  Previously taxed E&P are a type of E&P.  See section 959(c).  No express exclusion of previously taxed E&P is provided in section 965(d)(3) for purposes of determining post-1986 earnings and profits.  In contrast, the term accumulated post-1986 deferred foreign income, as defined in section 965(d)(2), starts with post-1986 earnings and profits and then explicitly excludes previously taxed E&P.  See section 965(d)(2)(B).  Accordingly, the comments are not adopted.  While previously taxed E&P is not excluded in the statutory definition of post-1986 earnings and profits, there is no double taxation of previously taxed E&P related to the E&P deficit foreign corporations because section 959 continues to apply when the previously taxed E&P are distributed.

A comment also requested that the final regulations confirm that E&P or deficits in E&P attributable to income that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1 ("effectively connected E&P") are taken into account in determining the specified E&P deficit of an E&P deficit foreign corporation.  The Treasury Department and the IRS have determined that section 965 clearly allows deficits in effectively connected E&P to be included in an E&P deficit foreign corporation's specified E&P deficit.  No express exclusion for effectively connected E&P is provided in section 965(d)(3) for purposes of determining post-1986 earnings and profits.  Moreover, the term accumulated post-1986 deferred foreign income, as defined in section 965(d)(2), expressly excludes effectively connected E&P.  Accordingly, no clarification is made to the proposed regulations with respect to effectively connected E&P.

29

ADMIN_03242

A comment also requested confirmation that a distribution of previously taxed E&P in the last taxable year of a CFC beginning before January 1, 2018, can affect an E&P deficit foreign corporation's specified E&P deficit.  Because previously taxed E&P can only be distributed pursuant to a dividend, which, pursuant to section 316, requires positive E&P, the Treasury Department and IRS have determined that a distribution of previously taxed E&P could not affect a specified E&P deficit.  Accordingly, the comment is not adopted.

K.  Application of attribution rules for purposes of determining status of foreign corporation as a specified foreign corporation

To limit the administrative and compliance difficulties associated with determining whether a foreign corporation is a specified foreign corporation solely by reason of downward attribution of its stock under section 318(a)(3)(A) from a partner to a partnership when the partner has only a de minimis interest in the partnership, proposed §1.965-1(f)(45)(ii) provides a special attribution rule for purposes of determining whether a foreign corporation is a specified foreign corporation within the meaning of section 965(e)(1)(B) and proposed §1.965-1(f)(45)(i)(B).  Specifically, the definition of specified foreign corporation provides that, solely for purposes of determining whether a foreign corporation is a specified foreign corporation within the meaning of section 965(e)(1)(B), stock owned, directly or indirectly, by or for a partner ("tested partner") will not be considered as being owned by a partnership under sections 958(b) and 318(a)(3)(A) if the tested partner owns less than five percent of the interests in the partnership's capital and profits.  Proposed §1.965-1(f)(45)(ii).  Similar rules apply with respect to S corporations.  See sections 318(a)(5)(E) and 1373(a).

30

ADMIN_03243

1.  Downward Attribution to Trusts

A comment requested that the final regulations adopt a similar rule for trusts, noting that downward attribution of stock to trusts is also possible when a beneficiary has a de minimis interest in the trust, unless that interest is a remote contingent interest. See section 318(a)(3)(B).  The Treasury Department and the IRS agree that downward attribution of stock to a trust from de minimis beneficiaries of the trust presents similar administrative and compliance difficulties to those addressed in the proposed regulations.  Accordingly, the final regulations extend the special rules concerning downward attribution (as modified per the discussion in Part II.K.2 of this Summary of Comments and Explanation of Revisions) to trusts.  See §1.965-1(f)(45)(ii)(A)(2).

2.  Other Relief from Attribution

A comment indicated that, in determining specified foreign corporation status under section 965(e)(1)(B), the final regulations should take into account domestic corporations that are United States shareholders only if they own (within the meaning of section 958(a)) stock of the specified foreign corporation.  Another comment indicated that the Treasury Department and the IRS should generally consider additional de minimis constructive ownership exceptions in determining specified foreign corporation status without specifically identifying the nature of such relief.  A comment also recommended that the five percent threshold in proposed §1.965-1(f)(45)(ii) be increased to a more significant percentage, such as ten percent.  A similar comment suggested that the five percent threshold apply only to managing and controlling partners, and that a threshold of fifteen percent apply to partners who have no ability to manage or control the partnership.  In response to these comments, the Treasury

31

ADMIN_03244

Department and the IRS have determined that a ten-percent threshold for application of the special attribution rules relating to partnerships and trusts would strike the appropriate balance between mitigating administrative and compliance burdens and accurately identifying which foreign corporations are, in fact, specified foreign corporations.  Accordingly, the final regulations increase the threshold for application of this special attribution rule for partnerships from five percent to ten percent, and similarly use a ten-percent threshold for the newly-added special attribution rule for trusts.

Another comment suggested that a foreign corporation that is a CFC solely by reason of downward attribution not be treated as a CFC for purposes of determining whether it is a specified foreign corporation with respect to a United States shareholder that is not a related person (within the meaning of section 954(d)(3)) with respect to the domestic corporation to which ownership was attributed.  Nothing in the plain statutory language of section 965 or 958(b), as amended by the Act, prevents the application of section 318(a)(3) so as to treat a foreign corporation as a CFC with respect to a United States shareholder as a result of downward attribution of stock from a foreign person to a United States person if the United States person and the United States shareholder are not related persons as defined by section 954(d)(3).  Furthermore, it may benefit taxpayers for a specified foreign corporation with respect to which section 965 would otherwise apply to be respected as a CFC for purposes of section 965, as that could permit deemed paid credits to be claimed with respect to a section 965(a) inclusion with respect to the specified foreign corporation that would not otherwise be permitted.  Consistent with the statutory text, the final regulations therefore do not adopt the

32

exclusion from the definition of specified foreign corporation recommended by the comment.

3. Application of Section 318(a)(5)(A) and (C)

A comment stated that Example 1 and Example 2 in proposed §1.965-1(g), which illustrate the special attribution rule, apply section 318(a)(5)(A) and (a)(5)(C) inconsistently with informal advice issued by the IRS. Because the interpretation of those provisions reflected in the examples is irrelevant to the application of the special attribution rule, the final regulations modify the examples to avoid the issue raised by the comment. See §1.965-1(g)(1) and (2). No inference, however, is intended regarding the proper interpretation of section 318(a)(5)(A) and (a)(5)(C).

III. Comments and Changes to Proposed §1.965-2 – Adjustments to E&P and Basis

Proposed §1.965-2 contains rules relating to adjustments to E&P and basis to determine and account for the application of section 965(a) and (b) and proposed §1.965-1(b), and a rule that limits the amount of gain recognized in connection with the application of section 961(b)(2). The comments and modifications with respect to these rules are discussed in this Part III.

A. Ordering rule

The proposed regulations set forth an ordering rule relating to adjustments to E&P for purposes of determining a section 958(a) U.S. shareholder's inclusions under section 951(a)(1) and the treatment of distributions under section 959. See proposed §1.965-2(b).

1. Application in the Case of E&P Measurement Dates in Two Taxable Years

The Treasury Department and the IRS have determined that the ordering rule's

33

limited application to E&P for a specified foreign corporation's last taxable year beginning before January 1, 2018, is too narrow, given that it is intended to apply for purposes of determining post-1986 earnings and profits and accumulated post-1986 deferred foreign income on the E&P measurement date on November 2, 2017; that measurement date may not fall within a specified foreign corporation's last taxable year beginning before January 1, 2018. The final regulations address this issue by providing that the ordering rule applies for the taxable year of a specified foreign corporation in which an E&P measurement date occurs, as well as for the last taxable year of a specified foreign corporation that begins before January 1, 2018.

2. Section 1248

Comments have also raised questions about the proper point in the sequence at which to determine and take into account inclusions under section 1248. Although one comment suggested that section 965 should be taken into account before section 1248 amounts are determined, the Treasury Department and the IRS have determined that such an approach would not mitigate double taxation in the case of a sale in which the buyer (as opposed to the seller, as in the example provided by the comment) was subject to tax under section 965. However, such double taxation is mitigated by the approach suggested by another comment and taken by the final regulations, which provide that, for purposes of the ordering rules, section 1248 amounts are determined at the same time as the determination of amounts included under section 951(a)(1)(A) other than amounts included by reason of section 965. As a result, section 1248 amounts are determined before, and may reduce, a buyer's section 965(a) inclusion

34

ADMIN_03247

amount with respect to a DFIC. The application of the ordering rule in connection with a sale to which section 1248 applies is illustrated in a new example in §1.965-2(j)(6).

The comment also suggested that the final regulations include an example addressing the interaction of the section 367 gain recognition agreement rules and the determination of section 965(a) inclusions. The Treasury Department and the IRS have determined that those rules are outside of the scope of these regulations and do not adopt the comment.

3. Interaction of Ordering Rule, Foreign Tax Credit Rules, and Disregard Rules

Comments have raised questions concerning the interaction of the ordering rule with the rule disregarding payments in proposed §1.965-4(f) and the determination of the foreign tax credit consequences of inclusions with respect to, and distributions by, a specified foreign corporation.

The final regulations address these issues by providing rules concerning the ordering of the determination of foreign income taxes deemed paid with respect to an inclusion or distribution, after the E&P adjustments are determined in accordance with §1.965-2(b). The final regulations provide that for purposes of determining the consequences under sections 902 and 960 of a dividend or an inclusion under section 951(a)(1), respectively, the ordering rule in §1.960-1(i)(2) applies except that section 902 is applied with respect to any distributions from the specified foreign corporation described in §1.965-2(b)(2) that are not disregarded under §1.965-4 before section 960 is applied with respect to an inclusion or a distribution described in §1.965-2(b)(3), (b)(4), or (b)(5). Section 1.965-2(b). As discussed in more detail in Parts VI.C.3 and 4 of this Summary of Comments and Explanation of Revisions, the final regulations

35

ADMIN_03248

confirm that the other rules of sections 902 and 960 apply.  See §1.965-6(b).  The final regulations also provide that the E&P consequences of a distribution between specified foreign corporations that is disregarded for purposes of section 965 pursuant to §1.965-4 are redetermined after adjustments for section 965(a) inclusions, at the same time that the consequences of other distributions are determined.  See §1.965-2(b)(1) and (4).

Modified and new examples illustrate the determination of the section 902 consequences of a distribution between specified foreign corporations before November 2, 2017, before the determination of the section 960 consequences of a section 965(a) inclusion and the foreign tax credit consequences of a distribution disregarded pursuant to §1.965-4.  See §1.965-2(j)(1) and (4).

A comment recommended that the ordering rule be further modified to allow the foreign tax credit consequences of a distribution to a United States shareholder to be determined before applying section 965.  The Treasury Department and the IRS decline to adopt the recommendation because ordering section 965(a) inclusions before distributions to United States shareholders is required to be consistent with section 965(d)(3)(B), which precludes diminution of post-1986 earnings and profits by distributions during the relevant year other than by dividends distributed to another specified foreign corporation, as well as to be consistent with the general treatment of inclusions under section 951 as being taken into account before distributions, as discussed in this Part III.A.3.

B.  Adjustments to the E&P of DFICs

ADMIN_03249

Under proposed §1.965-2(c), the E&P of a DFIC that are described in section 959(c)(3) (or that would be described in section 959(c)(3) but for the application of section 965(a) and the section 965 regulations) are reduced (or, in the case of a deficit, increased) by an amount equal to the DFIC's section 965(a) previously taxed earnings and profits. A comment requested that the final regulations clarify that earnings described in section 959(c)(3) cannot be reduced below zero by reason of the rule in proposed §1.965-2(c), in order to ensure that the DFIC would be able to make a distribution of the section 965(a) previously taxed earnings and profits. The comment was also concerned that a deficit in E&P described in section 959(c)(3) could prevent foreign income taxes accrued on future subpart F income from being deemed paid with respect to inclusions under section 951(a)(1)(A) with respect to such income and requested that, in the alternative, guidance be provided allowing foreign income taxes to be deemed paid under those circumstances. The sum of a foreign corporation's E&P described in each of the categories in section 959(c) must equal the foreign corporation's total E&P. See Rev. Rul. 86-131, 1986-2 C.B. 135 ("[T]he section 959(c) components are intended to reflect the composition of the CFC's total earnings and profits...."). In order to ensure that a specified foreign corporation's E&P are not distorted by the adjustment to section 959(c)(2) E&P required by the proposed regulations, the Treasury Department and the IRS have determined that it is appropriate for the reduction provided for in proposed §1.965-2(c) to create a deficit in E&P described in section 959(c)(3) if there are insufficient E&P to be reclassified and accordingly do not adopt the comment. The suggestion concerning deemed paid taxes is outside of the scope of this rulemaking.

ADMIN_03250

Under proposed §1.965-2(d)(1), the E&P described in section 959(c)(2) of a DFIC are increased by an amount equal to the reduction to a section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the DFIC under section 959(b), "provided the section 958(a) U.S. shareholder includes the section 965(a) inclusion amount with respect to the deferred foreign income corporation in income." A comment noted that the rule would seem to preclude the creation of section 965(b) previously taxed earnings and profits in a DFIC if its section 965(a) earnings amount was completely offset by section 958(a) U.S. shareholders' aggregate foreign E&P deficits. Because the rule was intended to limit the availability of section 965(b) previously taxed earnings and profits to situations in which a section 965(a) inclusion amount was included only if there was a section 965(a) inclusion amount, the rule is revised to so clarify. See §1.965-2(d)(1).

Comments also requested that the final regulations clarify that section 965(b) previously taxed earnings and profits are treated as E&P attributable to an amount previously included in the income of a person under section 951 for purposes of section 1248(d)(1). The Treasury Department and the IRS have determined that this treatment is appropriate, notwithstanding the fact that, as discussed in Part III.D.2 of this Summary of Comments and Explanation of Revisions, these amounts have not been included in income under section 951, because it is necessary to ensure the ability to take into account section 965(b) previously taxed earnings and profits upon a disposition of specified foreign corporation stock. Accordingly, the final regulations reflect this clarification. See §1.965-2(d)(1).

38

ADMIN_03251

C.  Adjustments to the E&P described in section 959(c)(3) of E&P deficit foreign corporations

Under the proposed regulations, the E&P described in section 959(c)(3) of an E&P deficit foreign corporation are increased by an amount equal to the portion of a section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under section 965(b), translated (if necessary) into the functional currency of the E&P deficit foreign corporation using the spot rate on December 31, 2017.  Proposed §1.965-2(d)(2)(i)(A).  A comment recommended that the proposed regulations be modified such that any increase to the earnings and profits described in section 959(c)(3) of an E&P deficit foreign corporation is allocated only to a section 958(a) U.S. shareholder that takes into account its E&P deficit foreign corporation's specified E&P deficit under section 965(b) and not to any other shareholders of the E&P deficit foreign corporation.  E&P described in section 959(c)(3) are not generally allocated to specific shareholders, and creating a rule that tracks section 959(c)(3) E&P resulting from a section 958(a) U.S. shareholder's use of each E&P deficit foreign corporation's specified E&P deficit in a shareholder-level account would entail considerable complexity.  Accordingly, the final regulations do not adopt the recommended change.  See §1.965-2(d)(2)(i)(A).

D.  Basis election

1.  Requirements for Making and Revoking Basis Election

The proposed regulations clarify that, in general, no adjustments to basis of stock or property are made under section 961 (or any other provision of the Code) to account for the reduction to a section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of a DFIC by a portion of its aggregate foreign E&P deficit.  See

39

ADMIN_03252

proposed §1.965-2(f)(1).  However, consistent with the legislative history, the proposed regulations allow a section 958(a) U.S. shareholder to elect to make certain basis adjustments ("specified basis adjustments") with respect to each DFIC and each E&P deficit foreign corporation.  Proposed §1.965-2(f)(2).  Specifically, an election under the proposed regulations allows a section 958(a) U.S. shareholder's basis in the section 958(a) stock of a DFIC or applicable property with respect to the DFIC to be increased by an amount equal to the section 965(b) previously taxed earnings and profits of the DFIC with respect to the section 958(a) U.S. shareholder.  See proposed §1.965-2(f)(2)(ii)(A).  The basis election also requires that the section 958(a) U.S. shareholder's basis in the section 958(a) stock of an E&P deficit foreign corporation or applicable property with respect to an E&P deficit foreign corporation be reduced by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under the reduction rules.  See proposed §1.965-2(f)(2)(ii)(B).

The proposed regulations provide the general rule that the basis election must be made no later than the due date (taking into account extensions, if any) for the section 958(a) U.S. shareholder's return for the first taxable year that includes the last day of the last taxable year of a DFIC or E&P deficit foreign corporation of the section 958(a) U.S. shareholder that begins before January 1, 2018.  Proposed §1.965-2(f)(2)(iii)(B)(1)(i).  If the relevant return was due before September 10, 2018, the proposed regulations provide that the basis election must be made by October 9, 2018 (the "transition rule").  Proposed §1.965-2(f)(2)(iii)(B)(1)(ii).  The proposed regulations further require that, in order for the basis election to be effective, a section 958(a) U.S.

40

ADMIN_03253

shareholder and each section 958(a) U.S. shareholder that is related to the section 958(a) U.S. shareholder under section 267(b) or 707(b) ("related section 958(a) U.S. shareholder") must make the election.  Proposed §1.965-2(f)(2)(iii)(A).

Section 2 of Notice 2018-78 announced that the Treasury Department and the IRS had determined that requiring taxpayers to make a binding basis election before the finalization of the proposed regulations would be too onerous for taxpayers.  Consistent with that announcement, the final regulations provide that the transition rule will apply with respect to returns due (determined with regard to any extension) before **[INSERT DATE 90 DAYS AFTER PUBLICATION IN THE FEDERAL REGISTER]**, and that in such cases the basis election must be made no later than **[INSERT DATE 90 DAYS AFTER PUBLICATION IN THE FEDERAL REGISTER]**.  Section 1.965-2(f)(2)(iii)(B)(1)(ii).  Additionally, as explained in section 2 of Notice 2018-78, the final regulations provide that if a basis election was made on or before **[INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER]**, the basis election may be revoked by attaching a statement to an amended return filed no later than **[INSERT DATE 90 DAYS AFTER PUBLICATION IN THE FEDERAL REGISTER]**.  Id.

Clarification was requested regarding whether a basis election must be made by a related section 958(a) U.S. shareholder if that shareholder owns a DFIC but does not own an E&P deficit foreign corporation and does not reduce its pro rata share of any section 965(a) earnings amount under section 965(b), proposed §1.965-1(b)(2), or proposed §1.965-8(b).  The Treasury Department and the IRS have concluded that the requirement to make a basis election should not apply to such persons.  Accordingly, the final regulations provide that the basis election must be made by a section 958(a)

41

ADMIN_03254

U.S. shareholder and any related section 958(a) U.S. shareholder of an E&P deficit foreign corporation or of a DFIC with respect to which the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount is reduced under section 965(b), §1.965-1(b)(2), or §1.965-8(b).  Section 1.965-2(f)(2)(iii)(A).  However, the final regulations do not adopt a comment's suggestion that the consistency requirement be eliminated in its entirety because the Treasury Department and the IRS have determined that the requirement is necessary to prevent related taxpayers from applying the rules only where they are advantageous.

Another comment requested that the basis election be considered made by default unless a taxpayer affirmatively elects not to make specified basis adjustments. Given the potentially significant ramifications of the specified basis adjustments, the Treasury Department and the IRS have determined that providing for automatic basis adjustments and putting the onus on taxpayers to affirmatively elect out is not appropriate.  Accordingly, the comment is not adopted.

2.  Level and Consequences of Basis Adjustments

Comments requested that the final regulations provide that positive basis adjustments with respect to section 965(b) previously taxed earnings and profits apply down a chain of foreign corporations under section 961(c) and thus that they apply by default, such that the basis election and its concomitant downward basis adjustments with respect to E&P deficit foreign corporations need not be made.  Comments also suggested that even if downward basis adjustments were required, the final regulations should not require them to be made for the entire amount of a specified E&P deficit taken into account, but instead allow taxpayers to elect an amount of basis that

42

ADMIN_03255

"shifted." The comments were particularly concerned that downward adjustments not offset upward adjustments. Comments also recommended that the final regulations not require gain recognition to the extent that downward basis adjustments would exceed basis, and that, if such gain recognition is required, a special reduced rate of tax be provided for such gain.

The Treasury Department and the IRS have determined that it is clear under proposed §1.965-2(f)(1) that no adjustments are made under section 961 with respect to section 965(b) previously taxed earnings and profits, given that section 965(b) previously taxed earnings and profits do not represent amounts included in income by a section 958(a) U.S. shareholder, as required by section 961, and that adjustments apply only with respect to section 958(a) stock or applicable property owned directly by a section 958(a) U.S. shareholder (or in certain cases, through foreign pass-through entities). Id. Accordingly, the final regulations do not modify the proposed regulations in this regard.

The Treasury Department and the IRS have also determined that it would create economic distortions to provide for upward basis adjustments with respect to section 965(b) previously taxed earnings and profits without providing for corresponding downward basis adjustments with respect to portions of specified E&P deficits taken into account to reduce section 965(a) inclusion amounts and requiring gain recognition to the extent such adjustments exceed basis. Accordingly, it would not be appropriate to provide that section 965(b) previously taxed earnings and profits are treated as included in income under section 951 for purposes of section 961, even though the final regulations provide as much for purposes of section 1248(d), as discussed in Part III.B

43

of this Summary of Comments and Explanation of Revisions. Moreover, the Treasury Department and the IRS have concluded that rules coordinating upward and downward tiered-basis adjustments are not warranted. Additionally, given the electivity of the specified basis adjustments and the ability of taxpayers to take into account factors like the tax rate at which gain is recognized as a result of the basis election, the Treasury Department and the IRS decline to provide rules resulting in the application of a special tax rate to such gain.

However, the Treasury Department and the IRS have determined that it is appropriate to not require downward basis adjustments in excess of basis (in order to avoid gain recognition under §1.965-2(h)(3) to the extent of such excess) if the corresponding upward basis adjustments are correspondingly limited. Accordingly, §1.965-2(f)(2)(ii)(B)(2) provides that downward basis adjustments to the stock of, or applicable property with respect to, an E&P deficit foreign corporation may be limited to the available basis with the result that gain is not recognized (the "to-the-extent rule"). If the to-the-extent rule limits downward basis adjustments, the corresponding upward basis adjustments are correspondingly limited. See §1.965-2(f)(2)(ii)(A)(2)(ii). However, the section 958(a) U.S. shareholder can (subject to certain limitations) designate the stock of, or applicable property with respect to, a DFIC with respect to which the upward adjustments are made. Id. A taxpayer may also choose to make the full amounts of the adjustments that would have been required under the proposed regulations and recognize gain under §1.965-2(h)(3) as necessary. See §1.965-2(f)(2)(ii)(A)(1) and (f)(2)(ii)(B)(1).

3. Timing of Basis Adjustments

44

The proposed regulations provide that the specified basis adjustments are made as of the close of the last day of the last taxable year of the specified foreign corporation that begins before January 1, 2018. Proposed §1.965-2(h)(1). Questions have been raised about the application of the proposed rules in the case of a specified foreign corporation that ceases to be a CFC during its last taxable year of the specified foreign corporation that begins before January 1, 2018, due to a disposition of its stock. As discussed in Part II.H of this Summary of Comments and Explanation of Revisions, under section 951, a section 958(a) U.S. shareholder of such a specified foreign corporation would generally have an inclusion under section 951 with respect to the corporation if it were a DFIC because it would own stock of the specified foreign corporation on the last day on which the corporation was a controlled foreign corporation. Accordingly, under §1.961-1(a), a basis adjustment would generally be allowed as of the last day in the taxable year of such corporation on which it is a controlled foreign corporation.

As discussed in Part II.H of this Summary of Comments and Explanation of Revisions, because a specified foreign corporation is treated as a CFC for purposes of §1.965-1(b) and sections 951 and 961, the Treasury Department and the IRS have determined that income inclusion provisions in the final regulations should be consistent with these rules, and thus the basis adjustment provisions should as well, and the relevant rules in the final regulations are revised accordingly. See §§1.965-1(f)(30)(i) and (f)(34) and 1.965-2(h)(1) (providing that a specified basis adjustment is made as of the last day of the last taxable year of the specified foreign corporation that begins before January 1, 2018, on which it is a specified foreign corporation).

45

ADMIN_03258

4. Share-by-Share Requirement for Basis Adjustments

Proposed §1.965-2(h)(3) requires that the specified basis adjustments be made on a share-by-share basis. A comment suggested that the specified basis adjustments be made in the aggregate to mitigate taxpayer burden in tracking and prevent what it described as inappropriate gain recognition. However, adjustments to basis under section 961 for inclusions under section 951 and distributions of previously taxed E&P are generally required to be made on a share-by-share basis, and it will be necessary to have information concerning basis share-by-share going forward. Furthermore, the to-the-extent rule included in the final regulations will provide relief to taxpayers that have low-basis and high-basis shares. Accordingly, the comment is not adopted.

5. Basis Adjustments with Respect to Foreign Pass-Through Entity

A comment suggested that the final regulations provide that for purposes of the specified basis adjustments with respect to foreign pass-through entities, the principles of section 743(b) apply for associating a specified basis adjustment with a section 958(a) U.S. shareholder with respect to whom it is made. The comment also recommended clarification of the basis consequences of a distribution in a structure with a foreign pass-through entity. The Treasury Department and the IRS will consider these recommendations in connection with future guidance concerning the application of sections 959 and 961 generally.

See Part II.B of this Summary of Comments and Explanation of Revisions for a discussion of the treatment of a controlled domestic partnership treated as a foreign partnership under §1.965-1(e) for purposes of the specified basis adjustment rules relating to foreign pass-through entities.

46

ADMIN_03259

6. Section 962 Elections

The proposed regulations reserve on the issue of basis adjustments with respect to a section 958(a) U.S. shareholder that made a section 962 election. A comment noted that section 961(a)'s limitation on a basis increase to the amount of tax paid under chapter 1 of the Code with respect to amounts required to be included in income under section 951(a) (in the case of a United States shareholder who has made a section 962 election for the taxable year) means that a section 958(a) U.S. shareholder that makes a section 965(h) election may only increase its basis as it pays its section 965(h) net tax liability over time. As suggested by the comment, the final regulations include this rule. See §1.965-2(e)(2) and (h)(1). Consistent with this rule, no adjustments apply for section 965(b) previously taxed earnings and profits and the use of specified E&P deficits. See §1.965-2(f)(2)(ii)(C).

A comment requested that the final regulations provide guidance concerning the consequences if an individual section 958(a) U.S. shareholder that made both a section 962 election and a section 965(h) election that applied to a section 965(a) inclusion with respect to a DFIC disposed of the DFIC stock before all of its section 965(h) net tax liability had been paid, and thus before all corresponding basis adjustments had been made. The comment recommended that the basis adjustments be treated as made immediately before the disposition. The Treasury Department and the IRS have determined that this treatment would not be appropriate, because it would allow the shareholder to obtain the benefits of the basis increase without having paid the corresponding tax, and do not adopt the comment.

47

ADMIN_03260

The comment also requested that the final regulations clarify the basis adjustments to be made in the case of a domestic pass-through owner that has made a section 962 election applicable to its distributive share of a domestic pass-through entity's section 965(a) inclusion amount. The issue raised by the comment is a longstanding issue of general applicability within subpart F that is outside of the scope of regulations concerning section 965. Accordingly, the Treasury Department and the IRS decline to adopt the comment, and the final regulations, like the proposed regulations, address only basis adjustments applicable to section 958(a) U.S. shareholders of DFICs.

E. Gain reduction rule and translation rates

The proposed regulations provide that, for purposes of section 986(c), foreign currency gain or loss with respect to distributions of section 965(a) previously taxed earnings and profits is determined based on movements in the exchange rate between December 31, 2017, and the date on which such E&P are actually distributed. See proposed §1.986(c)-1(a). The proposed regulations also provide that any gain or loss recognized under section 986(c) with respect to distributions of section 965(a) previously taxed earnings and profits is reduced in the same proportion as the reduction by a section 965(c) deduction amount of the section 965(a) inclusion amount that gave rise to such section 965(a) previously taxed earnings and profits. See proposed §1.986(c)-1(b). Moreover, proposed §1.986(c)-1(c) provides that section 986(c) does not apply with respect to distributions of section 965(b) previously taxed earnings and profits.

48

ADMIN_03261

The proposed regulations also provide that if a section 958(a) U.S. shareholder receives a distribution from a DFIC (including through a chain of ownership described under section 958(a)) during the inclusion year of the DFIC that is attributable to section 965 previously taxed earnings and profits of the DFIC, then the amount of gain that otherwise would be recognized under section 961(b)(2) by the section 958(a) U.S. shareholder with respect to the section 958(a) U.S. shareholder's section 958(a) stock of the DFIC or interest in applicable property with respect to the DFIC by reason of the distribution is reduced (but not below zero) by an amount equal to the section 965 previously taxed earnings and profits of the DFIC with respect to the section 958(a) U.S. shareholder.  Proposed §1.965-2(g)(1)(i).

The proposed regulations do not specify the translation rate to be used for purposes of reducing the amount of gain that otherwise would be recognized under section 961(b)(2) when a DFIC that has a functional currency other than the U.S. dollar distributes section 965(b) previously taxed earnings and profits.  In the absence of a rule providing that section 965(b) previously taxed earnings and profits should be translated into U.S. dollars at the spot rate on December 31, 2017, fluctuations in exchange rates would cause distortions in the application of the gain reduction rule to distributions of section 965(b) previously taxed earnings and profits.  For example, distributions of section 965(b) previously taxed earnings and profits denominated in a currency other than the U.S. dollar during an inclusion year could result in gain recognition attributable to fluctuations in exchange rates, notwithstanding the fact that proposed §1.986(c)-1 specifically provides that a taxpayer is not required to recognize foreign currency gain or loss on such distributions.  To prevent recognition of gain under

49

ADMIN_03262

these circumstances, the final regulations provide that the translation rate to be used with respect to section 965(b) previously taxed earnings and profits for purposes of the gain reduction rule is the spot rate on December 31, 2017.

The Treasury Department and the IRS are considering proposing regulations under section 961 to similarly ensure that a taxpayer is not required to recognize gain by reason of fluctuations in exchange rates on distributions of section 965(b) previously taxed earnings and profits in taxable years after the inclusion year. In addition, the Treasury Department and the IRS intend to study the proper amount of gain or loss, including foreign currency gain or loss, to be recognized on distributions of previously taxed E&P, including previously taxed E&P other than section 965(a) previously taxed earnings and profits and section 965(b) previously taxed earnings and profits.

IV. <u>Comments and Changes to Proposed §1.965-3 – Section 965(c) Deductions</u>

Proposed §1.965-3 provides rules regarding the determination of section 965(c) deductions and section 965(c) deduction amounts. The comments and modifications with respect to these rules are discussed in this Part IV.

A. <u>Disregard of certain assets to prevent double counting</u>

The proposed regulations contain rules for disregarding certain assets for purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder. <u>See</u> proposed §1.965-3(b).

1. Disregard of Certain Obligations Between Related Specified Foreign Corporations

One such rule in the proposed regulations provides that, for purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder, accounts receivable, accounts payable, short-term obligations, and derivative financial

50

ADMIN_03263

instruments between related specified foreign corporations are disregarded, if applicable, on a cash measurement date of the specified foreign corporations to the extent of the smallest of the section 958(a) U.S. shareholder's ownership percentages of section 958(a) stock of the specified foreign corporations owned by the section 958(a) U.S. shareholder on the cash measurement date. Proposed §1.965-3(b)(1).

A comment suggested that the rule in proposed §1.965-3(b)(1) be extended to permit the same treatment for third-party accounts payable and third-party accounts receivable held by related specified foreign corporations of a section 958(a) U.S. shareholder. The comment also suggested that all members of a consolidated group that are section 958(a) U.S. shareholders be treated as a single section 958(a) U.S. shareholder for purposes of such a rule. The Treasury Department and the IRS do not adopt this comment for several reasons. First, although the statute explicitly allows third-party accounts payable held by a specified foreign corporation to be netted against the same specified foreign corporation's third-party accounts receivable for purposes of determining its cash position, it does not provide for netting of third-party payables and third-party receivables among a section 958(a) U.S. shareholder's specified foreign corporations for purposes of determining that section 958(a) U.S. shareholder's aggregate foreign cash position. See section 965(c)(3)(B)(ii) and (c)(3)(C). Second, the statutory language and the legislative history direct the Secretary to address the double counting of accounts receivable and accounts payable between related specified foreign corporations of a section 958(a) U.S. shareholder but do not grant authority to issue rules allowing one specified foreign corporation's third-party accounts payable to offset another specified foreign corporation's third-party accounts receivable. See section

51

ADMIN_03264

965(c)(3)(D); H.R. Rep. No. 115-446, at 615 (2017).  Furthermore, allowing third-party payables and third-party receivables of all related specified foreign corporations of a section 958(a) U.S. shareholder to be netted would require administratively onerous allocation rules.  The final regulations therefore do not extend the rule in proposed §1.965-3(b)(1) to cover third-party accounts payable and third-party accounts receivable held by related specified foreign corporations with a common section 958(a) U.S. shareholder.

2.  Disregard of Other Assets upon Demonstration of Double-Counting

Another rule in the proposed regulations intended to prevent double counting provides that, in determining the aggregate foreign cash position of a section 958(a) U.S. shareholder, amounts of net accounts receivable, actively traded property, and short-term obligations of a specified foreign corporation are disregarded to the extent such amounts are attributable to amounts taken into account in determining the section 958(a) U.S. shareholder's pro rata share of the cash position of another specified foreign corporation on the same cash measurement date.  Proposed §1.965-3(b)(2).  In order for the rule in proposed §1.965-3(b)(2) to apply, a section 958(a) U.S. shareholder must explain, in a statement attached to its timely filed return for its inclusion year, why there would otherwise be double-counting.  Id.

a.  Expansion

Comments recommended that the rule in proposed §1.965-3(b)(2) be expanded to cover all assets constituting a specified foreign corporation's cash position, which are enumerated in section 965(c)(3)(B).  Under this formulation, a section 958(a) U.S. shareholder would be able to disregard cash held by its specified foreign corporation (or

52

ADMIN_03265

any other asset described in section 965(c)(3)(B)) on a cash measurement date to the extent attributable to amounts already taken into account in determining the section 958(a) U.S. shareholder's pro rata share of the cash position of another specified foreign corporation on such cash measurement date.

The Treasury Department and the IRS do not adopt this recommendation for a number of reasons. First, extending the rule in proposed §1.965-3(b)(2) to apply to assets other than net accounts receivable, actively traded property, and short-term obligations would be inconsistent with section 965(c)(3)(D), which expressly identifies net accounts receivable, actively traded property, and short-term obligations as assets not to be taken into account by a section 958(a) U.S. shareholder for purposes of determining its aggregate foreign cash position to the extent the shareholder demonstrates to the Secretary's satisfaction that such amount is so taken into account by the shareholder with respect to another specified foreign corporation. The other assets described in section 965(c)(3)(C), including cash, are not mentioned in section 965(c)(3)(D). Second, the Treasury Department and the IRS have determined that expanding the rule in proposed §1.965-3(b)(2) to cover all assets taken into account in determining a specified foreign corporation's cash position would require complex tracing rules to ensure that each asset was already taken into account by a section 958(a) U.S. shareholder with respect to another specified foreign corporation and have determined that such rules would entail significant administrative and compliance challenges. Accordingly, the final regulations do not expand the rule in proposed §1.965-3(b)(2) to allow a section 958(a) U.S. shareholder to disregard assets other than those specifically enumerated in section 965(c)(3)(D).

53

ADMIN_03266

b. Clarification of cash measurement dates

Comments also recommended that the rule in proposed §1.965-3(b)(2) be clarified so that relief from double-counting is available with respect to a specified foreign corporation when an amount is taken into account in determining the section 958(a) U.S. shareholder's pro rata share of the cash position of another specified foreign corporation on such other specified foreign corporation's corresponding cash measurement date even if the cash measurement date is not the same calendar date for both specified foreign corporations.

The Treasury Department and the IRS have concluded that section 965(c)(3)(D) allows relief from double counting whenever a section 958(a) U.S. shareholder can establish that net accounts receivable, actively traded property, or short-term obligations are "taken into account . . . with respect to another specified foreign corporation." The statute does not require that an amount must have been taken into account with respect to another specified foreign corporation on the same day. Therefore, in response to the comments, the final regulations amend the rule in proposed §1.965-3(b)(2) to clarify that double-counting relief with respect to a specified foreign corporation is available when an amount is taken into account in determining the section 958(a) U.S. shareholder's pro rata share of the cash position of another specified foreign corporation on the other specified foreign corporation's corresponding cash measurement date. Section 1.965-3(b)(2). Corresponding clarifications are made for consistency in §1.965-3(b)(1).

3. Notional Cash Pooling Arrangements

Comments requested guidance providing that for purposes of computing a section 958(a) U.S. shareholder's aggregate foreign cash position, notional cash

ADMIN_03267

pooling arrangements are treated as creating intercompany receivables. The facts and circumstances of each notional cash pool, including the underlying contractual rights and obligations of the parties to the arrangement and the role of the unrelated cash pool provider in the arrangement, are varied. Whether a notional cash pooling arrangement is treated as in substance creating a loan between and among participants, rather than between the participant and the unrelated cash pool provider, depends on the application of federal income tax principles to the particular facts and circumstances of the arrangement. Accordingly, the Treasury Department and the IRS do not adopt these comments.

B. Disregard of portion of cash position of noncorporate entities treated as specified foreign corporations

Section 965(c)(3)(E) provides that an entity (other than a corporation) is treated as a specified foreign corporation of a United States shareholder for purposes of determining the United States shareholder's aggregate foreign cash position if any interest in the entity is held by a specified foreign corporation of the United States shareholder (determined after application of the rule in this sentence) and the entity, if it were a foreign corporation, would be a specified foreign corporation of the United States shareholder. A comment requested confirmation that application of section 965(c)(3)(E) to treat a noncorporate entity as a specified foreign corporation could depend on ownership by other owners of the noncorporate entity and on the definition of United States shareholder applicable for the year in which the status of a foreign corporation as a specified foreign corporation is being determined. The Treasury Department and the IRS have determined that this point is clear from the definition of specified foreign corporation. The comment also suggested that the Treasury Department and the IRS

55

ADMIN_03268

consider limitations on attribution for purposes of determining whether a noncorporate entity would be a specified foreign corporation if it were a foreign corporation.  The Treasury Department and the IRS have determined that the special attribution rule described in Part II.K of this Summary of Comments and Explanation of Revisions, as modified to a ten-percent threshold in the final regulations, would apply for purposes of the noncorporate entity rule and that no additional limitations are warranted.  The Treasury Department and the IRS have also determined that it is clear under the statute that section 951(b) as in effect for years of foreign corporations beginning before January 1, 2018, applies for purposes of determining whether a noncorporate entity would be a specified foreign corporation if it were a foreign corporation for purposes of section 965(c)(3)(E), given that the relevant year for application of the rule is the last taxable year of a foreign corporation beginning before January 1, 2018.

A comment also requested guidance clarifying the application of section 965(c)(3)(E) to noncorporate entities only partially owned by a specified foreign corporation.  The legislative history to section 965(c)(3)(E) indicates that it was intended that "the cash position of a U.S. shareholder . . . not generally include the cash attributable to a direct ownership interest in a partnership," and that the Treasury Department and the IRS "provide guidance for taking into account only the specified foreign corporation's share of the partnership's cash position, and not [an] interest directly owned by the U.S. shareholder." H.R. Rep. No. 115-446, at 621 (2017). Accordingly, the final regulations include a rule in §1.965-3(b)(3) providing that if section 965(c)(3)(E) applies to an entity, the section 958(a) U.S. shareholder's pro rata share of the cash position of the entity is reduced by the amount attributable to deemed stock of

56

the entity not owned (within the meaning of section 958(a)) by a specified foreign corporation of the section 958(a) U.S. shareholder. This rule is illustrated in the example in §1.965-3(b)(4)(v).

C. Increase of income by section 965(c) deduction of expatriated entity

Under proposed §1.965-3(d)(1), if a person is allowed a section 965(c) deduction and becomes an expatriated entity, in certain circumstances, the person must pay tax equal to 35 percent of the person's section 965(c) deductions. See also section 965(l)(1). A comment recommended clarifying and limiting the definition of expatriated entity to exclude United States individuals on the theory that the reference to "entity" in section 965(l)(2) was intended to so provide. Section 965(l)(2) defines expatriated entity by cross-reference to the definition provided in section 7874(a)(2), which includes not only entities but certain persons (which could be individuals) related to the entity at issue; therefore, the Treasury Department and the IRS have determined that section 965(l)(2) does not apply only to an entity but potentially to any person that is an expatriated entity, and the final regulations are clarified accordingly. See §1.965-3(d)(2).

D. Treatment of section 965(c) deductions

Under the proposed regulations, a United States person that must pay tax under section 4940 or 1411 on a section 965(a) inclusion cannot take into account a section 965(c) deduction for purposes of determining the amount of such tax. See proposed §1.965-3(f)(3) and (4). A comment recommended that the section 965(c) deduction be allowed for purposes of computing the amount of tax due under section 1411. It suggested that the rule in proposed §1.965-3(f)(3) was inconsistent with the rule in

57

ADMIN_03270

§1.1411-4(f)(3)(ii), which takes into account in determining net investment income itemized deductions that are investment expenses (as defined in section 163(d)(4)(C)). However, §1.1411-4(f)(3)(ii) is inapplicable because §1.965-3(f)(1) provides that a section 965(c) deduction is not an itemized deduction.  The Treasury Department and the IRS have determined that the section 965(c) deduction was only intended to reduce the rate of tax attributable to income taxes contained in chapter 1 of the Code.  See H.R. Rep. No. 115-466, at 620 (2017).  Accordingly, the final regulations continue to provide that for purposes of section 1411 and §1.1411-4(f)(6), a section 965(c) deduction is not treated as a deduction properly allocable to a corresponding section 965(a) inclusion.  Section 1.965-3(f)(3).

Another comment suggested that the final regulations clarify whether a section 965(c) deduction is taken into account for purposes of the tax imposed under section 4968.  Because section 4968(c) provides that net investment income subject to the tax is determined under rules similar to the rules of section 4940(c), and §1.965-3(f)(4) provides that for purposes of section 4940(c)(3)(A), a section 965(c) deduction is not treated as an ordinary and necessary expense paid or incurred for the production or collection of gross investment income, the Treasury Department and the IRS have determined that it is clear that a section 965(c) deduction is not taken into account for purposes of section 4968, and no clarification is necessary.  The comment also requested rules addressing the basis of the stock of a DFIC for purposes of section 4968; however, such rules would be outside of the scope of this rulemaking, and the request for such guidance is declined.

ADMIN_03271

The comment also recommended that the final regulations clarify that a section 965(c) deduction is a deduction taken into account under section 62(a) in determining an individual's adjusted gross income. The Treasury Department and the IRS have determined that such treatment is appropriate and the final regulations are modified to so provide. See §1.965-3(f)(1).

V. Comments and Changes to Proposed §1.965-4 – Disregard of Certain Transactions

Proposed §1.965-4 sets forth rules that disregard certain transactions for purposes of applying section 965. Specifically, proposed §1.965-4 provides rules that disregard (i) transactions undertaken with a principal purpose of changing a section 965 element of a United States shareholder, (ii) certain changes in method of accounting and entity classification elections, and (iii) certain transactions occurring between E&P measurement dates. The comments and modifications with respect to these rules are discussed in this Part V.

A. Scope and consequences of anti-abuse rules generally

The rules under proposed §1.965-4(b) through (e) ("anti-abuse rules") relate to transactions undertaken with a principal purpose of changing a section 965 element of a United States shareholder and certain changes in method of accounting and entity classification elections. They provide that transactions subject to those rules are "disregarded for purposes of determining the amounts of all section 965 elements" of a United States shareholder. Comments questioned the consequences of disregarding a transaction under these rules, including with respect to certain E&P and foreign tax credit calculations. The final regulations retain the approach in the proposed regulations, which do not describe the consequences of disregarding a transaction other

59

ADMIN_03272

than the consequences with respect to the section 965 elements of a United States shareholder. A discussion of, or rules regarding, the consequences of these transactions for other purposes is outside the scope of the final regulations. However, the Treasury Department and the IRS have determined that it is appropriate to mitigate double taxation that could result from the application of the anti-abuse rules to a liquidation. Accordingly, §1.965-4(e)(4) provides that in the case of a liquidation of a specified foreign corporation that is disregarded for purposes of determining the section 965 elements of a United States shareholder pursuant to §1.965-4(b) or (c)(2), for purposes of determining the amounts of the section 965 elements of the United States shareholder, the date of the liquidation generally is treated as the last day of the taxable year of the specified foreign corporation. Special rules apply with respect to liquidations resulting from entity classification elections, including a rule that may defer the date of liquidation for this purpose to the date on which the entity classification election is filed. For example, if a domestic corporation (USP) wholly owns a foreign subsidiary (FS) that has a taxable year ending on November 30, and an entity classification election is filed on November 15, 2017, to treat FS as an entity that is disregarded as an entity separate from its owner for U.S. federal income tax purposes ("disregarded entity") effective on October 1, 2017, then any transactions undertaken by FS through and including November 30, 2017, would be taken into account for purposes of determining the post-1986 earnings and profits and accumulated post-1986 deferred foreign income of FS, and any transactions involving FS after November 30, 2017, would not be taken into account for such purposes. Furthermore, any section 965(a) previously taxed earnings and profits and section 965(b) previously taxed earnings and profits of FS would be

ADMIN_03273

taken into account in determining the all earnings and profits amount under §1.367(b)-3(b) with respect to FS.

Comments also requested various exceptions from the anti-abuse rules for transactions that do not reduce the overall U.S. federal income tax liability of United States persons resulting from the application of section 965. In response to these comments, the final regulations provide an exception from the anti-abuse rules for certain incorporation transactions. Under the exception, the anti-abuse rules do not apply to disregard a transfer of stock of a specified foreign corporation by a United States shareholder to a domestic corporation (for this purpose, including an S corporation), provided that the section 965(a) inclusion amount with respect to the transferred stock of the specified foreign corporation is not reduced and that the aggregate foreign cash position of both the transferor and the transferee is determined as if each had held the transferred stock of the specified foreign corporation owned by the other on each of the cash measurement dates. See §1.965-4(e)(3).

B.  Transactions with a principal purpose of changing a section 965 element

1. General Rules

Comments suggested that the anti-abuse rules be eliminated and that, if retained, the anti-abuse rules in proposed §1.965-4(b) not contain rebuttable presumptions or per se rules. The Treasury Department and the IRS have determined that the rebuttable presumptions and per se rules are appropriate for tax administration reasons. They identify situations in which tax avoidance is highly likely or unlikely in order to minimize the number of circumstances in which more detailed facts and circumstances analyses are required.

ADMIN_03274

A comment also suggested that ordinary course exceptions be provided for all of the anti-abuse rules, so that the rules can never apply to ordinary course transactions. The Treasury Department and the IRS have determined that excluding ordinary course transactions from the presumptions in the anti-abuse rules, rather than the overall application of the rules, while still applying those rules to transactions that were actually undertaken with a principal purpose of changing a section 965 element, strikes the appropriate balance between administrability and taxpayer certainty, and therefore do not adopt the comment.

A comment also suggested that the final regulations omit the requirement in proposed §1.965-4(b)(2) that a taxpayer file a statement indicating that it takes the position that a presumption in proposed §1.965-4(b) is rebutted. The Treasury Department and the IRS have determined that it is important for fair and effective tax administration that the IRS be aware of transactions for which there is a presumption of a principal purpose of changing a section 965 element and do not adopt the suggestion.

2. Cash Reduction Transactions and Specified Distributions

The proposed regulations provide that a cash reduction transaction is presumed to be undertaken with a principal purpose of changing a section 965 element of a United States shareholder unless the cash reduction transaction occurs in the ordinary course of business. Proposed §1.965-4(b)(2)(iii)(A). A cash reduction transaction includes a transfer of cash, accounts receivable, or cash-equivalent assets by a specified foreign corporation to a United States shareholder of the specified foreign corporation or a person related to a United States shareholder of the specified foreign corporation if the transfer or assumption reduces the aggregate foreign cash position of the United States

62

ADMIN_03275

shareholder.  Id.  The presumption may be rebutted only if the facts and circumstances clearly establish that the transaction was not undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder, and a taxpayer taking the position that the presumption is rebutted must attach a statement to its tax return disclosing that it has rebutted the presumption.  Section 1.965-4(b)(2)(i).

The proposed regulations also set forth a "per se" rule providing that a cash reduction transaction will be treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder if it is a specified distribution.  Proposed §1.965-4(b)(2)(iii)(B).  The proposed regulations provide, in part, that a cash reduction transaction that is a distribution by a specified foreign corporation of a United States shareholder will be considered a specified distribution if and to the extent that, at the time of the distribution, there was a plan or intention for the distributee to transfer cash, accounts receivable, or cash-equivalent assets to any specified foreign corporation of the United States shareholder.  Id.  Under the proposed regulations, a cash reduction transaction that is a distribution by a specified foreign corporation to a United States shareholder of the specified foreign corporation, other than a specified distribution, is treated per se as not being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder.  Id.

The Treasury Department and the IRS received requests that the final regulations exempt certain transactions from the definition of cash reduction transaction and specified distribution.  A comment requested that a cash reduction transaction not be treated as a specified distribution if, and to the extent that, the distributee does not,

ADMIN_03276

within 24 months following the distribution, transfer cash, accounts receivable, or cash equivalents to a specified foreign corporation of the United States shareholder. Although the Treasury Department and the IRS have determined that the amount of time between a distribution and a transfer of cash may be relevant in determining whether there was a plan or intent for the distributee to transfer the cash, the Treasury Department and the IRS have determined that a per se rule disregarding transfers outside of a certain window is not warranted, as long-term plans for a transfer could exist, and providing such a rule would facilitate tax avoidance. A comment also suggested that it be clarified that any transferred amount disregarded be limited to the amount of the subsequent transfer. Because a specified distribution is defined as a cash reduction transaction "to the extent that" there is a plan or intent to re-transfer cash, the Treasury Department and the IRS have determined that it is already clear that the amount of a specified distribution is limited to the amount re-transferred, and accordingly no additional clarification is required.

Another comment requested that the per se rule not apply to cash reduction transactions planned before November 2, 2017. The final regulations do not adopt this requested change, as the Treasury Department and the IRS have determined that a rule exempting cash reduction transactions in planning stages before November 2, 2017, from the application of the per se rule would necessarily have to account for the possibility of subsequent plan modification or amendment and would require an inquiry regarding a taxpayer's subjective intent, resulting in a standard that is difficult to administer.

ADMIN_03277

Comments also suggested that a cash reduction transaction should not be considered a specified distribution to a United States shareholder by reason of a transfer of cash to a specified foreign corporation of the United States shareholder in the ordinary course of business. The Treasury Department and the IRS agree that payments pursuant to a legal obligation entered into before the Act's introduction in Congress should not be considered to give rise to a plan or intention for the distributee in a cash reduction transaction to transfer cash, accounts receivable, or cash-equivalent assets to a specified foreign corporation of the distributee. Accordingly, the final regulations provide that in the case of a cash reduction transaction that is a distribution by a specified foreign corporation of a United States shareholder, there is not considered to be a plan or intention for the distributee to transfer cash, accounts receivable, or cash-equivalent assets to any specified foreign corporation of the United States shareholder if the transfer is made by the distributee pursuant to a legal obligation entered into before November 2, 2017. Section 1.965-4(b)(2)(iii)(B). If the taxpayer relies on this rule in determining that a cash reduction transaction is not a specified distribution, it must attach a statement to its return indicating that position. Id.

3. Pro Rata Share Transactions

The proposed regulations provide that a pro rata share transaction is presumed to be undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder and treat certain internal group transactions as per se being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder. Proposed §1.965-4(b)(2)(v). A comment requested that internal group transactions not be treated as per se having a principal

ADMIN_03278

purpose of changing a section 965 element. The Treasury Department and the IRS have determined that the definition of internal group transactions is sufficiently narrowly tailored to apply the per se rule to tax-motivated transactions of the type that Congress intended the Treasury Department and the IRS to address and do not adopt the comment.

4. E&P Reduction Transactions

A comment noted that dividends paid by one specified foreign corporation to another between E&P measurement dates could potentially be subject to the rules in both proposed §1.965-4(f) (disregarding specified payments in order to mitigate double-counting) and proposed §1.965-4(b)(2)(iv) (which can result in disregarding certain transactions that reduce accumulated post-1986 deferred foreign income or post-1986 earnings and profits) and argued that the overlapping rules create a burden on taxpayers that should be ameliorated by exempting dividends between E&P measurement dates from the rules in §1.965-4(b)(2)(iv). The Treasury Department and the IRS have determined that if such a dividend is disregarded pursuant to §1.965-4(f), then it is clear that it is irrelevant whether it would also be disregarded under §1.965-4(b), applying the presumption in §1.965-4(b)(2)(iv), such that there would be no need for a taxpayer to bear the burden of rebutting the presumption. If, however, the dividend is not disregarded pursuant to §1.965-4(f), and the taxpayer takes the position that it is also not disregarded under §1.965-4(b), because it can rebut a presumption that applies under §1.965-4(b)(2)(iv), then it is appropriate that the taxpayer be required to document that rebuttal for the reasons discussed in Part V.B.1 of this Summary of Comments and Explanation of Revisions. Accordingly, the comment is not adopted.

ADMIN_03279

C. Changes of accounting method and entity classification elections

A comment noted that a positive section 481 adjustment resulting from a change of accounting method could increase the section 965(a) inclusion amount and the amount of foreign income taxes deemed paid by a United States shareholder and thus be disregarded for purposes of determining the United States shareholder's section 965(a) inclusion amount, allowing some or all of the adjustment to escape taxation under section 965, even though the increase in foreign income taxes deemed paid was minimal. The Treasury Department and the IRS have determined that this would be inappropriate and modify the rule in proposed §1.965-4(c)(1) to apply only if there is a reduction in a section 965(a) inclusion amount or an aggregate foreign cash position, or an increase in section 960 deemed paid taxes other than by reason of an increase in a section 965(a) inclusion amount. See §1.965-4(c)(1)(i).

Comments suggested that the rule in proposed §1.965-4(c)(1), which applies to changes in methods of accounting, not apply to changes from impermissible methods of accounting to permissible methods of accounting, and that the rule be conditioned on a principal purpose of changing a section 965 element. However, a principal purpose-based rule would be difficult to administer and unwarranted, given that changes after November 2, 2017, relating to specified foreign corporations likely would be tax-motivated. Moreover, the Treasury Department and the IRS have determined that allowing changes from impermissible methods of accounting to permissible methods of accounting to be taken into account will allow similarly situated taxpayers to take different positions in a way that is detrimental to the government, as taxpayers will choose to make currently those changes that result in reductions of tax due under

67

ADMIN_03280

section 965 while deferring such changes that would result in increases of tax due under section 965 until later years. Accordingly, the comments are not adopted.

Another comment requested that the final regulations permit the taxable year of a specified foreign corporation to be changed to a calendar year taxable year. Because neither the proposed regulations nor the final regulations affect the possibility of changing the accounting period of a specified foreign corporation, the final regulations do not adopt this comment. But see Rev. Proc. 2018-17, 2018-9 I.R.B. 384 (limiting certain changes in accounting periods of a specified foreign corporation).

In addition, comments raised questions regarding the scope of the rule in proposed §1.965-4(c)(2), which applies to any entity classification election under §301.7701-3 that is filed on or after November 2, 2017, and whether it is appropriate for that rule to be a per se rule that applies to all entity classification elections filed on or after that date. A comment suggested that the rule would inappropriately apply to a transaction that would have no impact on section 965 elements. Another comment suggested that certain transactions effectuated by entity classification elections, such as conversion of a United States shareholder from a domestic pass-through entity to a C corporation, or vice versa, should be excepted from the application of the rule. However, because an entity classification election is an election made specifically for tax purposes that could be made retroactively in order to be effective before November 2, 2017, and because the rule would only disregard such an election if it had the effect of changing a section 965 element, the final regulations do not change the rule from the proposed regulations. But see §1.965-4(e)(3) (discussed in Part V.A of this Summary of Comments and Explanation of Revisions).

ADMIN_03281

D. Application of specified payment rule

The proposed regulations provide that certain amounts paid or incurred between related specified foreign corporations of a section 958(a) U.S. shareholder between E&P measurement dates that would otherwise reduce the post-1986 earnings and profits as of December 31, 2017, of the specified foreign corporation that paid or incurred such amounts are disregarded for purposes of determining the post-1986 earnings and profits of both of the specified foreign corporations as of the E&P measurement date on December 31, 2017. See proposed §1.965-4(f)(1). Comments indicated that the requirement that the two specified foreign corporations have different tentative measurement dates in order for specified payments to be disregarded resulted in complexity and inappropriate results when there were multiple payments among specified foreign corporations during the period, such as in a series of dividends up a multi-level chain of specified foreign corporations. They also indicated that it was unclear how the tentative measurement date was to be determined in the case of a specified foreign corporation that was neither an E&P deficit foreign corporation nor a DFIC. Moreover, comments indicated that disregarding specified payments that were deductible payments only for purposes of section 965, but not other purposes, could create unintended foreign tax credit results, which results would not be remedied by the changes to the ordering rule in §1.965-2(b) discussed in Part III.A of this Summary of Comments and Explanation of Revisions. One comment suggested that the specified payment rule should be refined to have an anti-abuse function.

The Treasury Department and the IRS have determined that detailed rules to address the fact patterns raised in the comments, such as rules to determine the extent

ADMIN_03282

of double-counting, to except ordinary course payments, or to add ordering rules to determine whether a payment is a specified payment, would introduce more complexity than warranted and would be difficult to administer. However, in response to the comments, the final regulations eliminate the requirement that the specified foreign corporations between which a payment is made have different tentative measurement dates in order for the payment to be a specified payment disregarded under the rule and provide that a section 958(a) U.S. shareholder may choose not to apply the rule in §1.965-4(f)(1), provided that it and all related section 958(a) U.S. shareholders do so with respect to all of their specified foreign corporations. Section 1.965-4(f)(1), (2), and (3).

VI. Comments and Changes to Proposed §1.965-5 and §1.965-6 – Foreign Tax Credits

Proposed §1.965-5 and §1.965-6 provide rules with respect to foreign tax credits. The proposed regulations include, in addition to the foreign tax credit-specific rules of section 965, rules coordinating the provisions of section 965 with the foreign tax credit provisions as in effect before their repeal or amendment by the Act. The comments and modifications with respect to these rules are discussed in this Part VI.

A. Application and determination of the disallowance of the applicable percentage of foreign income taxes

1. Disallowance of the Applicable Percentage of Foreign Income Taxes Attributable to Distributions of Previously Taxed Earnings and Profits

Under the proposed regulations, no deduction (including under section 164) or credit under section 901 is allowed for the applicable percentage (as defined in proposed §1.965-5(d)) of any foreign income taxes "paid or accrued" with respect to any amount for which a section 965(c) deduction is allowed for a section 958(a) U.S.

70

ADMIN_03283

shareholder inclusion year.  Proposed §1.965-5(b).  This includes foreign income taxes directly paid or accrued by a taxpayer attributable to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits.  A similar rule applies to deny the applicable percentage of any foreign income taxes "treated as paid or accrued" with respect to any amount for which a section 965(c) deduction is allowed for a section 958(a) U.S. shareholder inclusion year.  Proposed §1.965-5(c).  For these purposes, foreign income taxes "treated as paid or accrued" include foreign income taxes deemed paid by the taxpayer under section 960 with respect to distributions of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits.

Comments recommended that the proposed regulations be modified to allow a credit for the applicable percentage of foreign income taxes directly paid or accrued under section 901 or treated as paid or accrued under section 960 on a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits.  In general, these comments asserted that the disallowance of taxes attributable to a distribution of previously taxed E&P discourages the distribution of the previously taxed E&P, which the comments assert is inconsistent with the purpose of section 965.  Comments also argued that the rule created administrative complexity and asked for guidance on how to track previously taxed E&P for purposes of applying this rule.  Other comments acknowledged that providing a reduction for the foreign tax credits attributable to a distribution of previously taxed E&P based on the applicable percentage was appropriate.

ADMIN_03284

The final regulations do not adopt the recommended changes. As an initial matter, guidance on tracking previously taxed E&P is outside the scope of this rulemaking. In addition, the Treasury Department and the IRS have determined that the rules under §1.965-5(b) are consistent with the statutory purpose of sections 960 and 965 and do not discourage the repatriation of previously taxed E&P. In any event, the purpose of the foreign tax credit is not to encourage repatriation of E&P to the United States but to relieve double taxation. To the extent the income is subject to a lower effective rate of U.S. tax, it is consistent with the purpose of section 965(g) to reduce the credits allowed as part of relieving double taxation on such income.

Moreover, the statutory language of section 965(g) contemplates that the disallowance for the applicable percentage will apply to distributions of previously taxed E&P. Section 965(g)(1) provides, "[n]o credit shall be allowed under section 901 for the applicable percentage of any foreign income taxes paid or accrued (or treated as paid or accrued). . . ." In addition, section 965(g)(3) provides that no deduction is allowed for any tax for which credit is not allowable under section 901 by reason of section 965(g)(1). A deduction is allowed only for taxes directly paid or accrued by the taxpayer, not taxes deemed paid by the taxpayer. Because a U.S. taxpayer would ordinarily be subject to foreign tax only on a distribution from a foreign corporation, not on an income inclusion under U.S. tax law, "taxes paid or accrued" can only be understood to refer to foreign income taxes directly paid or accrued under section 901 with respect to a distribution to the taxpayer of previously taxed E&P. Allowing a full credit for all such foreign income taxes would render section 965(g)(3) meaningless. Accordingly, in order to give effect to the language of section 965(g)(3), foreign taxes

ADMIN_03285

paid or accrued on distributions of section 965(a) previously taxed earnings and profits and section 965(b) previously taxed earnings and profits are subject to the credit disallowance rules of section 965(g)(1).

Furthermore, there is no policy reason to differentiate between foreign income taxes attributable to a distribution of previously taxed E&P that are paid or accrued directly by the United States shareholder and are creditable under section 901 and those foreign income taxes that are paid or accrued by other CFCs as part of the distribution of the earnings to the United States shareholder and are creditable under section 960(a)(3). Thus, because section 965(g)(3) contemplates the disallowance of foreign tax credits attributable to distributions of previously taxed E&P when the foreign income taxes are directly paid or accrued by the United States shareholder, the final regulations continue to provide that the foreign tax credit is disallowed with respect to the applicable percentage of foreign income taxes deemed paid under section 960(a)(3) with respect to a distribution of previously taxed E&P in the same manner as credits are disallowed for foreign taxes deemed paid under section 960(a)(1) with respect to a section 965(a) inclusion.

Additionally, some comments raised specific objections about the application of these rules to foreign income taxes paid and deemed paid with respect to distributions of section 965(b) previously taxed earnings and profits, asserting that the disallowance is inappropriate because these earnings do not represent an amount for which a section 965(c) deduction is allowed.  One comment also asserted that it was inappropriate to disallow the applicable percentage of foreign income taxes paid and deemed paid with respect to distributions of section 965(b) previously taxed earnings and profits because

73

a distribution of section 965(b) previously taxed earnings and profits results in a dollar-for-dollar reduction to basis (to the extent thereof), followed by gain recognition, because there is no automatic basis increase in the amount of such earnings under section 961.  Additionally, the comment pointed out that the proposed regulations could create inequities between taxpayers because the proposed regulations could be read to imply that a taxpayer that had no section 965(a) inclusion amount because of the operation of section 965(b) had no applicable percentage, and thus no reduction in creditable foreign income taxes paid or deemed paid on distributions of the section 965(b) previously taxed earnings and profits.

As discussed in Part VI.B.1 of this Summary of Comments and Explanation of Revisions, the Treasury Department and the IRS have determined that section 965(b) previously taxed earnings and profits are treated as included in income under section 951(a) for purposes of section 960, and thus are treated similarly to section 965(a) previously taxed earnings and profits for purposes of applying section 965(g). Additionally, with respect to the reduction in basis associated with a distribution of section 965(b) previously taxed earnings and profits, the final regulations provide that a section 958(a) U.S. shareholder may elect to make certain basis adjustments to increase the basis of DFICs with section 965(b) previously taxed earnings and profits. See §1.965-2(f)(2).  Finally, comments concerning the applicable percentage for distributions of section 965(b) previously taxed earnings and profits are addressed in Part VI.A.4 of this Summary of Comments and Explanation of Revisions.

2.  Compatibility of Applicable Percentage Credit Disallowance with U.S. Bilateral Income Tax Treaties

A comment stated that proposed §1.965-5 is incompatible with the provisions of

ADMIN_03287

U.S. bilateral income tax treaties that provide for relief from double taxation. However, the credit against U.S. income tax provided for in these treaties is generally allowed "[i]n accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof)." See, for example, paragraph 1 of Article 24 (Elimination of Double Taxation) of the income tax convention between the United States and Canada, as amended by the protocol signed June 14, 1983. This language provides that foreign tax credits allowed under the treaty are subject to the terms of the U.S. statutory credit, including "provisions such as Code sections 901(c), 904, 905, 907, 908, and 911," but the applicable limitations of U.S. law are not limited to the illustrative listed provisions. See, for example, the U.S. Treasury Department Technical Explanation to the income tax convention between the United States and Canada, concerning Article 24, as amended by the protocol signed June 14, 1983.

The disallowance of the applicable percentage of foreign income taxes under section 965(g)(1) and §1.965-5 is similar to the application of section 904 and other provisions in the Code that limit the allowable foreign tax credit. The disallowance takes into account the section 965(c) deduction and reflects the fact that, because of the section 965(c) deduction, the income included under section 965 is subject to an effective rate of U.S. tax that is significantly lower than the U.S. tax rates ordinarily imposed on corporations or individuals. Absent this disallowance, foreign income tax incurred with respect to the income included under section 965 could inappropriately be used to offset U.S. tax on unrelated foreign source income, rather than to mitigate double taxation incurred with respect to the taxable amount of the section 965(a)

ADMIN_03288

inclusion. Accordingly, the application of section 965(g)(1) and §1.965-5 is consistent with the provisions of U.S. bilateral income tax treaties that provide for relief from double taxation.

3. Applicable Percentage with Respect to Foreign Income Taxes that are Not Net Basis Taxes

The proposed regulations provide that no deduction or credit is allowed for the applicable percentage of net basis taxes imposed on a United States citizen by the citizen's jurisdiction of residence upon receipt of a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits. Proposed §1.965-5(b). A comment recommended that the final regulations define "net basis taxes" and clarify that proposed §1.965-5(b) does not apply to creditable gross basis income taxes.

Section 965(g) and proposed §1.965-5(b) apply to all creditable foreign income taxes. The reference to "net basis taxes" was included in the proposed regulations for illustrative purposes only, and the taxes listed in proposed §1.965-5(b) are not an exhaustive list of the taxes subject to proposed §1.965-5(b). The final regulations clarify this accordingly. See §1.965-5(b).

4. Applicable Percentage with Respect to Distributions of Section 965(b) Previously Taxed Earnings and Profits

The definition of applicable percentage in section 965(g) and proposed §1.965-5(d) is computed based on a taxpayer's section 965(a) inclusion for a section 958(a) U.S. shareholder inclusion year. Comments noted that it was not clear under the proposed regulations how the applicable percentage with respect to section 965(b) previously taxed earnings and profits should be determined when a DFIC has section

76

ADMIN_03289

965(b) previously taxed earnings and profits but the section 958(a) U.S. shareholder does not have an aggregate section 965(a) inclusion amount, because its pro rata shares of accumulated post-1986 deferred foreign income are entirely offset by its pro rata shares of specified E&P deficits. The final regulations provide that if there is no aggregate section 965(a) inclusion amount, the applicable percentage is 55.7 percent (that is, the applicable percentage that would apply if the section 965(b) previously taxed earnings and profits had been included in income and were an amount to which section 965(c)(1)(B) applied). See §1.965-5(d)(2).

The final regulations also clarify how the applicable percentage applies with respect to domestic pass-through owners and with respect to distributions of previously taxed E&P. With respect to domestic pass-through owners, the final regulations provide that the applicable percentage determined under §1.965-5(d)(1) or (2) with respect to a domestic pass-through entity applies with respect to taxes deemed paid by a domestic pass-through owner even if the domestic pass-through entity does not have a section 965(a) inclusion amount. Section 1.965-5(d)(3). With respect to foreign income taxes imposed on distributions of previously taxed E&P, the final regulations provide that the applicable percentage that is applied is the applicable percentage with respect to the section 958(a) U.S. shareholder and the section 958(a) U.S. inclusion year in which the section 958(a) U.S. shareholder had the section 965(a) inclusion as a result of which the section 965(a) previously taxed earnings and profits or the section 965(b) previously taxed earnings and profits first arose. Section 1.965-5(d)(4).

5. Applicable Percentage with Respect to Tax on Gain from Sale of Stock

77

ADMIN_03290

The proposed regulations provide that the disallowance of foreign tax credits under section 965(g)(1) applies with respect to the applicable percentage of foreign income taxes attributable to distributions of section 965(a) previously taxed earnings and profits and section 965(b) previously taxed earnings and profits. Proposed §1.965-5(b). A comment requested guidance on whether the applicable percentage also applies to foreign income taxes imposed on an amount of a shareholder's gain from the sale of the specified foreign corporation's stock taken into account for foreign, but not U.S., income tax purposes, equal to its tax basis increase under section 961(a) or §1.965-2(f)(2) by reason of section 965. The Treasury Department and the IRS have determined that under §1.904-6, foreign tax imposed on a disposition of stock is associated with the gain (or other income) that is (or would be) recognized for U.S. tax purposes upon a taxable disposition, without regard to whether the taxpayer's basis in the stock (and, accordingly, the amount of gain recognized) is a different amount for U.S. and foreign tax purposes. Because no portion of a foreign tax imposed on the sale of a specified foreign corporation's stock is considered imposed with respect to its previously taxed E&P, the final regulations do not expand the scope of the rule in the proposed regulations.

B. Operation of section 960(a)(3)

1. Disallowance of Credits for Foreign Taxes Treated as Deemed Paid Under Section 960(a)(1) with respect to Section 965(b) Previously Taxed Earnings and Profits

The proposed regulations provide that no credit is allowed under section 960(a)(3) or any other section for foreign income taxes that would have been deemed paid under section 960(a)(1) with respect to the section 965(a) earnings amount that is reduced under proposed §1.965-1(b)(2) or proposed §1.965-8(b). Proposed §1.965-

ADMIN_03291

5(c)(1)(ii).  The Treasury Department and the IRS have received comments asserting that this rule should not be included in the final regulations.  The final regulations maintain the rule from the proposed regulations.

Comments stated that allowing a deemed paid credit under section 960(a)(3) is necessary to avoid double taxation; however, there is no double taxation associated with section 965(b) previously taxed earnings and profits.  The section 965(a) earnings amount offset by an aggregate foreign E&P deficit is excluded from U.S. taxable income and thereby effectively exempted from U.S. tax under section 965(b)(4)(A) and proposed §1.965-1(b)(2) or proposed §1.965-8(b).  As a policy matter, this exclusion eliminates the need for a foreign tax credit.  The purpose of the foreign tax credit is to mitigate double taxation by allowing foreign income taxes to reduce the U.S. tax that would otherwise be imposed on foreign source income.  Allowing foreign income taxes imposed on income that is not subject to U.S. tax by reason of section 965(b) to be credited against U.S. tax on unrelated income would confer a windfall double benefit for taxpayers with section 965(b) previously taxed earnings and profits.

As a technical matter, section 965(b)(4)(A) treats section 965(a) earnings amounts offset by an aggregate foreign E&P deficit as previously included in income under section 951(a) "for purposes of applying section 959."  Accordingly, section 965(b) previously taxed earnings and profits are treated as previously taxed E&P resulting from a section 951(a) inclusion, despite never actually having been included in U.S. taxable income.  Under section 960(a)(1), a domestic corporate shareholder that includes an amount in income under section 951(a) is deemed to have paid a ratable portion of the foreign corporation's foreign income taxes at the time of the income

79

ADMIN_03292

inclusion.  Amounts treated as previously taxed E&P resulting from an income inclusion under section 951(a) should similarly be treated as having resulted in foreign taxes deemed paid under section 960(a)(1).

Section 960(a)(3) allows a credit for foreign income taxes paid by CFCs upon a subsequent distribution of the section 965(b) previously taxed earnings and profits through a chain of CFCs to the domestic corporate shareholder, but does not allow a credit for foreign income taxes that were previously deemed paid (or treated as deemed paid) under section 960(a)(1) when the amounts were included (or treated as included) in income under section 951(a).  Because foreign income taxes attributable to a section 965(a) earnings amount that were offset by an aggregate foreign E&P deficit were treated as deemed paid under section 960(a)(1) when those earnings were treated as included in income under section 951(a), those taxes are not available to be deemed paid again under section 960(a)(3) upon a subsequent distribution of the section 965(b) previously taxed earnings and profits.  Consistent with that treatment and with section 960(a)(2), the regulations under section 902 remove from the foreign corporation's pool of post-1986 foreign income taxes the foreign income taxes that are attributable to earnings included in income under section 951(a) or otherwise removed from its post-1986 undistributed earnings.  See §1.902-1(a)(8)(i).

Comments argue that the plain language of section 965(b)(4)(A) means that section 965(a) earnings amounts offset by an aggregate foreign E&P deficit are treated as income previously included under section 951(a) solely for purposes of applying section 959, and not for purposes of applying section 960(a).  However, the application of section 959 is a precondition to the application of section 960(a)(3).  The Treasury

80

Department and the IRS have determined that section 960(a)(3) cannot be applied independently of section 959 and that the Act did not change the relationship between these sections. Indeed, the comments recognize the interaction between sections 959 and 960(a)(3) by recommending that a credit be allowed under section 960(a)(3) upon a distribution of section 965(b) previously taxed earnings and profits, which requires treating such amounts as previously taxed E&P for purposes of section 960(a)(3) as well as for purposes of section 959. If the section 965(b) previously taxed earnings and profits are treated as previously taxed E&P excluded from gross income on distribution under section 959(a) in applying section 960(a)(3), it necessarily follows that in applying that same section those amounts are treated as having been included in income under section 951(a) and resulted in foreign taxes deemed paid under section 960(a)(1) as well.

Some comments raised the concern that U.S. companies would face a higher U.S. tax burden by not being able to claim foreign tax credits under section 960(a)(3) for foreign income tax imposed on E&P that is not subject to tax in the United States by reason of section 965(b). The comments argued that this would reduce the competitive advantage Congress sought to confer through the enactment of the foreign tax credit regime and discourage repatriation of previously taxed E&P. However, the purpose of the foreign tax credit regime is to relieve double taxation of foreign source income by reducing U.S. tax on that income, not to guarantee that U.S. taxpayers will be able to use all foreign income taxes paid to reduce their U.S. tax burden. See section 904. The foreign tax credit regime was never intended to subsidize foreign income taxes that are paid in excess of the U.S. tax burden on the foreign source income. Because these

81

ADMIN_03294

earnings are not subject to U.S. tax, any foreign tax credits related to these earnings would only be used to offset other unrelated foreign source income.

One comment explained that allowing a deemed paid credit under section 960(a)(3) with respect to section 965(b) previously taxed earnings and profits is equivalent to allowing a deemed paid credit for foreign income tax paid in a year in which losses recognized for U.S. (but not foreign) tax purposes reduced post-1986 undistributed earnings.  Pre-Act law, however, associated foreign income taxes paid by a foreign corporation in post-1986 years with its post-1986 undistributed earnings, but did not treat earnings offset by losses as giving rise to previously taxed E&P. Therefore, the statutory scheme allowed a credit for those taxes in connection with dividends or inclusions of those earnings, and not in connection with distributions of previously taxed E&P.

Relatedly, comments also suggested that the premise of section 965(b) is to treat an E&P deficit foreign corporation and a DFIC as a single corporation to the extent that a DFIC's accumulated post-1986 deferred foreign income is offset by an aggregate foreign E&P deficit.  However, Congress did not adopt the single corporation approach, as evidenced by the allocation of the aggregate foreign E&P deficit to the DFICs under section 965(b).  Section 965 as enacted requires a foreign corporation-by-foreign corporation determination, which method extends to the computation of the foreign tax credit.  Congress did not change the computation of the deemed-paid credit to apply other than on a foreign corporation-by-foreign corporation basis.

After consideration of the comments, the Treasury Department and the IRS maintain the rule in the final regulations based upon both the technical analysis of the

ADMIN_03295

relevant sections of the Code and the underlying policy. As a result, no credit is allowed under section 960(a)(3) or any other provision of the Code for taxes attributable to section 965(a) earnings amounts offset by an aggregate foreign E&P deficit that would have been deemed paid under section 960(a)(1) had the amounts actually been included in income under section 951(a).

2. Definition of Upper-Tier Foreign Corporation

The proposed regulations provide that the credit allowed under section 960(a)(3) is only with respect to foreign income taxes imposed on an upper-tier foreign corporation on distributions of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits from a lower-tier foreign corporation. Proposed §1.965-5(c)(1)(ii). A comment requested that the final regulations clarify that references to "upper-tier foreign corporation" includes a disregarded entity or partnership that is legally an owner of the specified foreign corporation in question, and that references to distributions similarly refer to legal distributions not to U.S. tax characterizations.

The final regulations do not broaden the definition of "upper-tier foreign corporation" as requested by the comment. To the extent that there is a distribution of previously taxed E&P from a foreign corporation to a disregarded entity or partnership that is owned by a foreign corporation, the foreign corporate owner would be considered an "upper-tier foreign corporation." See, e.g., section 702(a). Therefore, a credit would be allowed under section 960(a)(3), upon ultimate distribution of the previously taxed E&P to an eligible United States shareholder, for creditable foreign income taxes imposed on the disregarded entity or partnership that are considered paid by the foreign

83

ADMIN_03296

corporate owner for U.S. tax purposes with respect to the distribution of previously taxed E&P from the lower-tier foreign corporation. To the extent that there is a distribution of previously taxed E&P from a foreign corporation to a disregarded entity or partnership that is owned by a domestic corporation, the domestic corporate owner should be entitled to a credit under section 901 for the creditable foreign income taxes imposed on the disregarded entity or partnership that are considered paid by the domestic corporation for U.S. tax purposes. Therefore, there is no need to broaden the definition of "upper-tier foreign corporation" to include disregarded entities and partnerships.

Similar comments requested that the final regulations clarify that a tax imposed on a disregarded payment from a disregarded entity to an upper-tier foreign corporation that owns the disregarded entity is related to a distribution of previously taxed E&P. Another comment stated that the limitation of the credit allowed under section 960(a)(3) to foreign income taxes imposed on an upper-tier foreign corporation impedes the avoidance of double taxation with respect to foreign income taxes imposed on a lower-tier CFC upon distribution of its previously taxed E&P to an upper-tier CFC or foreign income taxes imposed on a first-tier CFC upon distribution of its previously taxed E&P to its United States shareholder. The Treasury Department and the IRS do not address these comments in the final regulations because the characterization of taxes incurred with respect to disregarded payments for purposes of section 960(a)(3) is outside of the scope of this rulemaking.

Finally, clarification was requested on whether the requirement that the previously taxed E&P be distributed by a lower-tier foreign corporation in order for taxes

84

ADMIN_03297

to be deemed paid with respect to the previously taxed E&P under section 960(a)(3) applies to both section 965(a) previously taxed earnings and profits and section 965(b) previously taxed earnings and profits, or just to the latter.  The Treasury Department and the IRS have determined that regulations are clear that the requirement applies to both section 965(a) previously taxed earnings and profits and section 965(b) previously taxed earnings and profits.  See §1.965-5(c)(1)(ii).

C. Deemed paid credit computation

1.  Treatment of Adjustment under Section 965(b)(4)(B)

The proposed regulations provide that, for purposes of section 902(c)(1), the post-1986 undistributed earnings of an E&P deficit foreign corporation are increased under section 965(b)(4)(B) and §1.965-2(d)(2)(i)(A) as of the first day of the foreign corporation's first taxable year following the E&P deficit foreign corporation's last taxable year that begins before January 1, 2018.  Proposed §1.965-6(c)(3).  Comments recommended that the final regulations conform to the language of section 965(b)(4)(B) to provide that these adjustments happen in the last taxable year that begins before January 1, 2018.

Section 965(b)(4)(B) provides that, for purposes of the Code, a United States shareholder's pro rata share of the E&P of any E&P deficit foreign corporation is increased by the amount of the specified E&P deficit of such corporation taken into account by the shareholder by reason of allocation of the deficit to a DFIC.  Under section 902(c)(1), post-1986 undistributed earnings are based on the E&P of the foreign corporation, computed in accordance with sections 964(a) and 986, without diminution for dividends distributed during the taxable year.  Pursuant to section 902(c)(8),

ADMIN_03298

Treasury regulations modify the computation of E&P included in post-1986 undistributed earnings as necessary to carry out the provisions of section 902.  For example, under §1.902-1(a)(9)(i), previously taxed earnings and profits arising in prior post-1986 taxable years are not included in post-1986 undistributed earnings.  Section 965(o) also provides that the Treasury Department and IRS may issue regulations necessary to prevent the avoidance of the purposes of section 965.

Given this background, the Treasury Department and the IRS have determined that post-1986 undistributed earnings should not be increased during the last taxable year of an E&P deficit foreign corporation beginning before January 1, 2018, as a result of section 965(b)(4)(B).  An immediate increase could allow shareholders to claim deemed paid credits with respect to amounts earned after November 2, 2017, by E&P deficit foreign corporations even though such earnings were not in excess of accumulated deficits.  That would result in a windfall to section 958(a) U.S. shareholders of DFICs and E&P deficit foreign corporations because such shareholders are not taxable on accumulated post-1986 deferred foreign income of a DFIC to the extent of the DFIC's allocable share of an aggregate foreign E&P deficit and, with respect to the E&P deficit corporation, they would be entitled to deemed paid taxes that they would not otherwise be eligible to claim because of the accumulated deficit, a result inconsistent with general operation of section 902.  See, e.g., §1.902-1(b)(4).  Additionally, the deemed paid taxes would not be subject to the disallowance for the applicable percentage provided for in section 965(g), even though the foreign income taxes were able to be deemed paid only as a result of the operation of section 965.

86

ADMIN_03299

Accordingly, the Treasury Department and the IRS do not amend this rule in the final regulations.  See §1.965-6(b)(3).

2. Deemed Paid Credits for E&P Deficit Foreign Corporations

The proposed regulations clarify that when the denominator of the section 902 fraction is zero or less than zero, the section 902 fraction is zero, and no foreign taxes are deemed paid.  Proposed §1.965-6(c)(2).  A comment requested that the foreign taxes of an E&P deficit foreign corporation could be deemed paid with respect to a section 965(a) inclusion, for example, by allocation of such taxes pro rata to DFICs.

The Treasury Department and the IRS do not adopt the suggestion to treat the post-1986 foreign income taxes of an E&P deficit foreign corporation as taxes paid or accrued by a DFIC because there is no basis in the statute for modifying the computation of deemed paid credits in this manner.  In addition, neither section 902 nor 960 nor the regulations issued under those sections provide for the allocation of taxes from one foreign corporation to another as suggested by the comment.

3. Application of Section 902 as if Section 965(a) Inclusion Were a Dividend

The proposed regulations provide, in relevant part, that for purposes of determining foreign taxes deemed paid under section 960(a)(1) with respect to a section 965(a) inclusion with respect to a DFIC, section 902 applies as if the section 965(a) inclusion were a dividend paid by the DFIC.  Proposed §1.965-6(b).  Questions have arisen as to the effect of treating a section 965(a) inclusion as a dividend for this purpose.  This language merely incorporates the language of section 960(a)(1) into the regulations, as section 960(a)(1) also provides in relevant part that "section 902 shall be applied as if the amount so included were a dividend paid by such foreign corporation."

87

ADMIN_03300

The language in proposed §1.965-6(b) does not mean that any of the requirements of sections 902 and 960 should be considered inapplicable for purposes of determining deemed paid taxes with respect to section 965(a) inclusions.

Further, the language in proposed §1.965-6(b) does not mean that section 965(a) inclusions should be treated as dividends for purposes of the ordering rule under §1.960-1(i)(2). The final regulations clarify that the ordering rules of §1.960-1(i)(2) continue to apply, subject to the modification described in Part III.A of this Summary of Comments and Explanation of Revisions. See §1.965-2(b).

4. Section 902 Fraction

The proposed regulations provide that the term "section 902 fraction" means, with respect to either a DFIC or an E&P deficit foreign corporation, the fraction that is (i) the dividend paid by, or the inclusion under section 951(a)(1) (including a section 965(a) inclusion) with respect to, the foreign corporation, as applicable, divided by (ii) the foreign corporation's post-1986 undistributed earnings. Proposed §1.965-6(c). A question was raised as to whether dividends and inclusions under section 951(a)(1) are combined for purposes of the section 902 fraction. Another comment concerned whether the definition of "section 902 fraction" implied that the ordering rule in §1.960-1(i)(2) was no longer effective.

The final regulations continue to include a defined term, "section 902 fraction," that is consistent with section 902(a), while tying it to the computation of deemed paid taxes in section 902(a). See §1.965-6(b)(2) and (4). As noted in Part VI.C.3 of this Summary of Comments and Explanation of Revisions, the final regulations also confirm that the ordering rule in §1.960-1(i)(2), as modified by §1.965-2(b), applies in years in

ADMIN_03301

which a taxpayer may have a section 965(a) inclusion; accordingly, the section 902 fraction must be computed separately with respect to dividends and inclusions under section 951(a)(1). As noted in Part III.A.3 of this Summary of Comments and Explanation of Revisions, the examples in §1.965-2(j)(1) and (4) illustrate the determination of deemed paid taxes (including the computation of section 902 fractions) under sections 902 and 960 in fact patterns involving section 965(a) inclusions.

5. Ownership Requirements for Deemed Paid Taxes

The proposed regulations provide that the rule treating members of a consolidated group as a single corporation does not apply for purposes of computing the foreign taxes deemed paid with respect to a section 965(a) inclusion, and that the foreign taxes deemed paid must be computed on a separate member basis. See proposed §1.965-8(e)(2). A comment requested that the final regulations treat all the members of a consolidated group as a single taxpayer for all purposes of section 965, such that members owning less than ten percent of a DFIC would be able to claim deemed paid credits with respect to the DFIC.

Another comment requested relief in the case in which a domestic corporation satisfied the ownership requirements under section 902 with respect to a DFIC when it received a distribution from the DFIC, but did not satisfy the ownership requirements under section 960 on the date of the section 965(a) inclusion.

The final regulations continue to follow the statute under section 960 regarding the ownership requirements for eligibility for a foreign tax credit and, therefore, do not adopt either of these comments. See §1.965-8(e)(2).

6. Hovering Deficits

ADMIN_03302

In response to comments, the preamble to the proposed regulations stated that the regulations would not provide a rule that, to the extent that a hovering deficit is treated as reducing the post-1986 earnings and profits of a DFIC, related taxes would be added to the DFIC's post-1986 foreign income taxes in the inclusion year with respect to the DFIC.  After the issuance of the proposed regulations, the Treasury Department and the IRS received additional comments requesting reconsideration of this issue.  Comments highlighted the following language in the legislative history to section 965:

> [T]he conferees expect the Secretary may issue guidance to provide that, solely for purposes of calculating the amount of foreign income taxes deemed paid by the U.S. shareholder with respect to an inclusion under section 965, a hovering deficit may be absorbed by current year earnings and profits and the foreign income taxes related to the hovering deficit may be added to the specified foreign corporation's post-1986 foreign income taxes in that separate category on a pro rata basis in the year of inclusion.

H.R. Rep. No. 115-466, at 619 (2017).

To effectuate the legislative history, the final regulations provide that to the extent the hovering deficit would have been absorbed by E&P accrued during the taxable year but for a section 965(a) inclusion, taxes that relate to the hovering deficit are taken into account for purposes of determining post-1986 foreign income taxes.  Therefore, §1.965-6(d) provides that in the last taxable year that begins before January 1, 2018, of a DFIC that is also a foreign surviving corporation, for purposes of determining the related taxes that are included in post-1986 foreign income taxes, the post-transaction earnings that can be offset by a hovering deficit include any current year earnings which were included under section 965 by a section 958(a) U.S. shareholder; and the hovering deficit offset is treated as occurring as of the last day of the DFIC's inclusion year.

90

VII.  Comments and Changes to Proposed §1.965-7 – Elections and Payment Rules

Proposed §1.965-7 provides rules regarding the timing and manner of certain elections that may be available to taxpayers under section 965, and payments to be made pursuant to those elections.  The comments and modifications with respect to these rules are discussed in this Part VII.

A.  Election statements

The proposed regulations provide that, in order to make elections with respect to section 965, the person making the election must attach an election statement, signed under penalties of perjury, to its return for the relevant taxable year.  Proposed §§1.965-2(f)(2)(iii)(B)(2), 1.965-7(b)(2)(iii), 1.965-7(c)(2)(iii), 1.965-7(d)(3)(iii), 1.965-7(e)(2)(iii), and 1.965-7(f)(5)(iii).  The proposed regulations do not address whether the election statement attached to or included with the return must be signed or whether the person making the election can attach an unsigned statement and retain the signed copy in its records.  The final regulations provide that the signature requirement is satisfied if the unsigned copy is attached to a timely-filed return of the person making the election, provided that the person retains the signed original in the manner specified in §1.6001-1(e).  See §§1.965-2(f)(2)(iii)(B)(2), 1.965-7(b)(2)(iii), 1.965-7(c)(2)(iii), 1.965-7(d)(3)(iii), 1.965-7(e)(2)(iii), and 1.965-7(f)(5)(iii).  In addition, comments requested clarification regarding whether the election statement could be signed by a return preparer and who must sign the statement in the case of a married filing jointly income tax return.  The final regulations do not specifically address who must sign a statement but indicate that general rules concerning who is authorized to sign tax returns apply.  Id.

B.  Acceleration events and triggering events

91

ADMIN_03304

Section 965(h)(3) provides that an acceleration event occurs when there is an addition to tax for failure to timely pay an installment required under section 965(h), a liquidation or sale of substantially all of the assets of the person who made the section 965(h) election (including in a title 11 or similar case), a cessation of business by the person who made the section 965(h) election, or any similar circumstance. Proposed §1.965-7(b)(3)(ii) clarifies what events are acceleration events and what is considered a similar circumstance. Proposed §1.965-7(b)(3)(ii)(B) provides that a liquidation, sale, exchange, or other disposition of substantially all of the assets of the person making the election (including in a title 11 or similar case or, in the case of an individual, death) is an acceleration event.

Similarly, section 965(i)(2) lists triggering events that end the payment deferral for purposes of the section 965(i) election, including a liquidation or sale of substantially all of the assets of the S corporation (including in a title 11 or similar case), a cessation of business by the S corporation, the S corporation ceasing to exist, or any similar circumstance. Proposed §1.965-7(c)(3)(ii) clarifies the similar circumstances treated as triggering events. Specifically, proposed §1.965-7(c)(3)(ii)(B) provides that a liquidation, sale, exchange, or other disposition of substantially all of the assets of the S corporation (including in a title 11 or similar case) is a triggering event.

In addition, section 965(m)(2)(B)(ii) provides that, with respect to a real estate investment trust ("REIT") that made a section 965(m) election, a liquidation or sale of substantially all of the assets of the REIT (including in a title 11 or similar case), a cessation of business by the REIT, or any similar circumstance will cause any amount not yet included in gross income (due to the section 965(m) election) to be included in

92

ADMIN_03305

gross income as of the day before the date of the event. Proposed §1.965-7(d)(5) clarifies what a similar circumstance is by providing that a liquidation, sale, exchange, or other disposition of substantially all of the assets of the REIT will cause the acceleration of the remaining inclusion.

1. Disposition or Exchange of Substantially All of the Assets

Comments questioned whether a disposition of substantially all of the assets resulting from a downstream tax-free reorganization or an exchange described in section 351 or 721 should constitute an acceleration event or triggering event, particularly when the assets remain under the control of the taxpayer, and whether a reorganization described in section 368(a)(1)(F) should be treated as an acceleration event or triggering event. One comment, relating only to triggering events under section 965(i), proposed multiple alternatives, including removing the "exchange or other disposition" language from proposed §1.965-7(c)(3)(ii)(B) and providing that any nonrecognition transaction is not an exchange.

The Treasury Department and the IRS have determined that any disposition of substantially all of the assets of the person making the section 965(h) election, the S corporation, or the REIT, including in a tax-free reorganization or an exchange described in section 351 or 721, poses a risk to the IRS's ability to collect the full amount of the section 965(h) net tax liability, section 965(i) net tax liability, or total net tax liability under section 965, as the case may be. The Treasury Department and the IRS have determined that it is essential for tax administration purposes for the IRS to be apprised of these dispositions. Providing an exclusion to the general rule that an exchange or other disposition of substantially all of the assets of the person making the

93

section 965(h) election, the S corporation with respect to which a section 965(i) election is in effect, or the REIT with a section 965(m) election in effect for nonrecognition transactions could hamper the IRS's ability to collect the outstanding tax liabilities and could enable certain taxpayers to inappropriately dilute their interests in their assets or change their businesses in a way that is inconsistent with the purposes behind the elections and related triggering and acceleration events.  The final regulations also do not include a special exception for reorganizations under section 368(a)(1)(F) because requiring a transfer agreement, if applicable, in those situations is necessary for tax administration purposes.

A comment also requested clarification of the meaning of "substantially all" for purposes of the acceleration event and triggering event rules.  The phrase "substantially all" is used in various Code provisions and in regulations, and often is determined based on all of the facts and circumstances.  Consistent with this general approach, the Treasury Department and the IRS decline to provide a bright-line definition of "substantially all" in the final regulations.

2. Death of Transferor

Proposed §1.965-7(b)(3)(ii)(B) provides that for a person who made a section 965(h) election, the liquidation, sale, exchange, or other disposition of substantially all of the assets of the person, including, for an individual, by reason of death, is an acceleration event.  Proposed §1.965-7(b)(3)(iii)(A)(1)(ii) specifically excludes death of an individual from the covered acceleration events that allow for a transfer agreement. A comment requested that, because death is specifically mentioned as a triggering event in section 965(i)(2)(A)(iii) but not section 965(h)(3), death not be treated as an

ADMIN_03307

acceleration event for purposes of the section 965(h) election.  In addition, the comment requested that, if death is treated as an acceleration event for purposes of the section 965(h) election, it be treated as a covered acceleration event (as described in proposed §1.965-7(b)(3)(iii)(A)(1)) and thus be eligible for a transfer agreement.  Under section 965(h)(3), an acceleration event includes a liquidation or sale of substantially all of the assets of the taxpayer or any similar circumstance, and proposed §1.965-7(b)(3)(ii)(B) provides that an exchange or other disposition of substantially all of the assets of the taxpayer (outside of the context of the death of an individual) is an acceleration event. The death of an individual taxpayer is similar to any transfer or other disposition of substantially all of the assets of a taxpayer, and, accordingly, is a similar circumstance that should be an acceleration event.  The Treasury Department and the IRS have determined that there are administrative difficulties with transferring liabilities and executing transfer agreements in the event of death.  Moreover, in many cases, there would be multiple beneficiaries in the case of death, and multiple transferees are not permitted for purposes of section 965(h).  For those reasons, and because the section 965(i) rules more clearly contemplate allowing transfers on death (and allowing transfers to multiple transferees or beneficiaries), the Treasury Department and the IRS have determined that it is appropriate not to treat the death of an individual shareholder as a covered acceleration event for purposes of section 965(h), and the comment is not adopted.

C.  Transfer agreements

1.  Inclusion of Form 965-A or 965-B

The proposed regulations provide that transfer agreements for purposes of

ADMIN_03308

section 965(h) and section 965(i) are required to include the eligible section 965(h) transferor's or eligible section 965(i) transferor's most recent Form 965-A or 965-B, as applicable, among other information. Proposed §1.965-7(b)(3)(iii)(B)(4)(v) and (c)(3)(iv)(B)(4)(v). In some cases, no Form 965-A or 965-B will have been required to be filed before the transfer agreement. Accordingly, the final regulations clarify that the Form 965-A or 965-B is only required to be filed with a transfer agreement if the eligible section 965(h) transferor or eligible section 965(i) transferor was required to file the form. Section 1.965-7(b)(3)(iii)(B)(4)(v) and (c)(3)(iv)(B)(4)(v).

2. Due Date for Transfer Agreements

Proposed §1.965-7(b)(3)(iii)(B)(2)(ii) and §1.965-7(c)(3)(iv)(B)(2)(ii) provide that, if an acceleration event or a triggering event occurs before September 10, 2018, a transfer agreement must be filed by October 9, 2018, in order to be considered timely filed. In addition, proposed §1.965-7(b)(3)(iii)(B)(2)(i) and §1.965-7(c)(3)(iv)(B)(2)(i) provide that, if an acceleration event or a triggering event occurs on or after September 10, 2018, a transfer agreement must be filed within thirty days of the acceleration or triggering event in order to be considered timely filed. Proposed §1.965-7(b)(3)(iii)(B)(2)(i) and §1.965-7(c)(3)(iv)(B)(2)(i) provide that transfer agreements must be filed in accordance with the rules provided in publications, forms, instructions, or other guidance. Because additional guidance, including where to file the agreements, was not issued before certain transfer agreements would have been due, the transition rules in §1.965-7(b)(3)(iii)(B)(2)(ii) and §1.965-7(c)(3)(iv)(B)(2)(ii) have been updated to provide that if a triggering event or acceleration event occurs on or before **[INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER]**, the transfer agreement must

96

be filed by [**INSERT DATE 30 DAYS AFTER PUBLICATION IN THE FEDERAL REGISTER**], in order to be considered timely filed.  <u>See also</u> §1.965-7(c)(3)(v)(D)(<u>2</u>)(<u>ii</u>) (similarly extending the deadline for filing agreements to make a section 965(h) election after a triggering event).

3.  Multiple Transferees

With respect to a section 965(h) acceleration event, proposed §1.965-7(b)(3)(iii)(B)(<u>1</u>) defines an eligible section 965(h) transferee as a "single United States person that is not a domestic pass-through entity" that meets additional requirements. With respect to a section 965(i) triggering event, proposed §1.965-7(c)(3)(iv)(B)(<u>1</u>) defines an eligible section 965(i) transferee as a "single United States person that is not a domestic pass-through entity."  A comment requested that multiple transferees be allowed to be eligible transferees for purposes of both section 965(h) and section 965(i). Section 965(h) and proposed §1.965-7(b) do not allow for a partial transfer of the section 965(h) net tax liability.  Allowing multiple transferees would be similar to allowing for partial transfers.  Furthermore, the existence of multiple transferees poses significant administrative challenges for the IRS.  Accordingly, the Treasury Department and the IRS do not adopt the recommendation.  However, section 965(i)(2)(B) specifically contemplates partial transfers of the section 965(i) net tax liability.  As a result, the final regulations clarify in §1.965-7(c)(3)(iv)(B)(<u>1</u>) that if a transfer (including as a result of the death of an eligible section 965(i) transferor) consists of multiple partial transfers (as described in §1.965-7(c)(3)(iii)), then the eligible section 965(i) transferor can enter into multiple transfer agreements, one for each partial transfer, with different eligible section 965(i) transferees.

97

ADMIN_03310

4. Consolidated Groups

Proposed §1.965-7(b)(3)(ii)(F) provides that an acceleration event includes, in the case of a consolidated group, the consolidated group ceasing to exist.  Proposed §1.965-7(b)(3)(iii)(A)(1)(iv) provides that, for purposes of the eligible section 965(h) transferee exception (as defined in proposed §1.965-7(b)(3)(iii)), a covered acceleration event includes, with respect to an acceleration event under proposed §1.965-7(b)(3)(ii)(F), an event resulting from the acquisition of a consolidated group within the meaning of §1.1502-13(j)(6) if the acquired consolidated group members join a different consolidated group as of the day following the acquisition.  The proposed regulations do not provide for covered acceleration events related to other fact patterns in which a consolidated group ceases to exist.  Comments requested that there be an additional covered acceleration event to account for a situation in which the consolidated group ceases to exist by reason of one or more members of the consolidated group transferring all of their assets to other members, with only one member remaining (for example, a consolidated group consisting only of a parent and a subsidiary ceasing to exist by reason of the subsidiary liquidating into the parent).  The Treasury Department and the IRS have determined that it is appropriate to permit the remaining member to enter into a transfer agreement in these circumstances.  Accordingly, §1.965-7(b)(3)(iii)(A)(1)(v) includes this scenario as a covered acceleration event.  In addition, §1.965-7(b)(3)(iii)(B)(1)(v) provides that, with respect to the acceleration event in §1.965-7(b)(3)(iii)(A)(1)(v), the remaining member of the consolidated group to which all of the other members' assets are transferred is an eligible section 965(h) transferee (provided that it meets the remaining requirements of §1.965-7(b)(3)(iii)(B)(1)).

98

ADMIN_03311

Another comment requested that there be an additional covered acceleration event to account for a situation in which a consolidated group is wholly owned by a corporation that is not an includible corporation (within the meaning of section 1504(b)) when a section 965(h) election was made but subsequently becomes an includible corporation even though the situation does not involve the acquisition of stock of the common parent. For example, this situation could arise when the corporation that owns the consolidated group is an S corporation and subsequently revokes its S corporation election. The Treasury Department and the IRS have determined that it is appropriate to permit transfer agreements in these circumstances. Accordingly, §1.965-7(b)(3)(iii)(A)(1)(vi) provides that a covered acceleration event occurs when the group ceases to exist as a result of the termination of the subchapter S election pursuant to section 1362(d) of a shareholder of the common parent of the consolidated group and, for the shareholder's taxable year immediately following the termination, the shareholder joins in the filing a consolidated return as of a consolidated group that includes all of the former members of the former consolidated group. In addition, §1.965-7(b)(3)(iii)(B)(1)(vi) provides that, with respect to the acceleration event in §1.965-7(b)(3)(iii)(A)(1)(vi), the agent (within the meaning of §1.1502-77) of the new consolidated group that includes the shareholder whose subchapter S election was terminated and all of the former members of the former consolidated group is an eligible section 965(h) transferee (provided that it meets the remaining requirements of §1.965-7(b)(3)(iii)(B)(1)).

5. Joint and Several Liability

ADMIN_03312

Proposed §1.965-7(b)(3)(iii)(D)(2) provides that an eligible section 965(h) transferor remains jointly and severally liable for any unpaid installments assumed by the eligible section 965(h) transferee, as well as any penalties, additions to tax, or other additional amounts attributable to the section 965(h) net tax liability that was transferred. A representation to this effect is required in the transfer agreement if the section 965(h) transferor remains in existence after the transfer.  Proposed §1.965-7(b)(3)(iii)(B)(4)(viii).  A comment questioned whether the joint and several liability requirement was necessary, given that the eligible section 965(h) transferee has agreed to assume the liability and has the assets from which the liability would be satisfied, and whether there should be differing treatment between eligible section 965(h) transferors that liquidate immediately after the transfer and those that do not.  The comment also noted that in many cases, the section 965(h) net tax liability would be taken into account in the purchase price of a sale of substantially all of the assets of the eligible section 965(h) transferor.  The final regulations do not adopt this comment.  Requiring the eligible section 965(h) transferor to be jointly and severally liability for the unpaid section 965(h) net tax liability, as well as any penalties, additions to tax, or other additional amounts attributable to the section 965(h) net tax liability, protects the IRS's ability to collect the full amount of the section 965(h) net tax liability and helps guard against abusive transactions.  In addition, as the comment noted, taxpayers are able to account for the joint and several liability in their transactions.

6.  Death of an S Corporation Shareholder

Under section 965(i)(2)(A)(iii) and (i)(2)(C) and proposed §1.965-7(c)(3)(ii)(C) and (c)(3)(iv)(A)(1), the death of an S corporation shareholder who made a section

ADMIN_03313

965(i) election is a triggering event, and the deferred liability can be transferred if a transfer agreement is entered into with an eligible section 965(i) transferee (as defined in proposed §1.965-7(c)(3)(iv)(B)(1)).  Proposed §1.965-7(c)(3)(iv)(B)(2)(i) requires that any transfer agreement with respect to a section 965(i) election be filed within 30 days of the date that the transfer occurred.  The Treasury Department and the IRS have determined that when the triggering event is the death of the eligible section 965(i) transferor, filing a transfer agreement within 30 days may be impractical.  Accordingly, the final regulations provide, in §1.965-7(c)(3)(iv)(B)(2)(iii), that in the case of the death of an eligible section 965(i) transferor, the transfer agreement is required to be filed by the later of the unextended due date for the eligible section 965(i) transferor's final income tax return and **[INSERT DATE 30 DAYS AFTER PUBLICATION IN THE FEDERAL REGISTER]**.

In addition, the final regulations clarify in §1.965-7(c)(3)(iv)(B)(5) what transfer agreements are required following the death of an eligible section 965(i) transferor.  In order to make the transfer agreements more administrable for both taxpayers and the IRS, the final regulations provide that, except in the case of transfers to trusts, in the event of the death of an eligible section 965(i) transferor, if the beneficiary or beneficiaries are known and determined as of the due date for the transfer agreement (that is, generally, the unextended due date for the eligible section 965(i) transferor's final income tax return), then the transfer will be treated as a transfer directly between the eligible section 965(i) transferor and the eligible section 965(i) transferee beneficiary or beneficiaries, and only one transfer agreement for each eligible section 965(i) transferee is required.  If, however, the beneficiary or beneficiaries are not known and

101

determined by the due date for the transfer agreement, then the transfer will be treated as two transfers: first, the transfer on death between the eligible section 965(i) transferor and his or her estate, and, second, a transfer (not on death) between the estate and the eligible section 965(i) transferee beneficiary or beneficiaries, and separate transfer agreements are required for each transfer. The general rule concerning transfers to trusts will continue to apply as discussed in Part VII.E.1 of this Summary of Comments and Explanation of Revisions.

7. Terms of Transfer Agreements

a. Transfer agreements after acceleration events

The proposed regulations provide specific information and representations that a transfer agreement must contain, including a statement that the transferee agrees to assume the transferor's liability for any unpaid installment payments. The final regulations include modifications to certain requirements for the terms of a transfer agreement. First, the final regulations clarify that an eligible section 965(h) transferee must consent to an assessment with respect to the liability that it assumes. Specifically, when an eligible section 965(h) transferor and an eligible section 965(h) transferee enter into a transfer agreement, the amount of the section 965(h) net tax liability will already be assessed against the transferor. For the transfer agreements to be administrable, the final regulations add the requirement that an eligible section 965(h) transferee waive the right to a notice of liability and consent to the immediate assessment of the portion of the eligible section 965(h) transferor's section 965(h) net tax liability remaining unpaid as a term of the transfer agreement. Section 1.965-7(b)(3)(iii)(B)(4)(ix).

102

Second, the final regulations retain the proposed regulations' requirement that an eligible section 965(h) transferee represent that it is able to make the remaining payments with respect to the section 965(h) net tax liability being assumed. Because the transfer of substantially all of the assets of the eligible section 965(h) transferor presents a risk to the IRS's ability to collect the outstanding section 965(h) net tax liability, the final regulations require a transfer agreement to include a statement as to whether the leverage ratio of the eligible section 965(h) transferee exceeds three to one, subject to modification by future guidance. See §1.965-7(b)(3)(iii)(B)(4)(ix) and (b)(3)(iii)(B)(6).

A taxpayer with a leverage ratio in excess of three to one may be an eligible section 965(h) transferee and may file a valid transfer agreement, provided the requirements of §1.965-7(b)(3)(iii)(B) are met. The IRS may, however, use the information provided regarding an eligible section 965(h) transferee's leverage ratio in connection with a subsequent evaluation of the accuracy of an eligible section 965(h) transferee's representation that it has the ability to pay the outstanding section 965(h) net tax liability. The ability of an eligible section 965(h) transferee to pay the outstanding section 965(h) net tax liability depends on all of the relevant facts and circumstances, including its leverage ratio and also including the eligible section 965(h) transferee's revenue, the value of its assets, its access to capital, the volatility of its business, the size of the section 965(h) net tax liability assumed, and other factors. The IRS may request further information when evaluating a transfer agreement in order to assess these aspects of the transferee. Section 1.965-7(b)(3)(iii)(C)(1) and (c)(3)(iv)(C)(1).

103

If the Commissioner determines that this representation (or any of the other information contained in the transfer agreement) is incorrect, then the transfer agreement may be rejected as of the date of the acceleration event or the Commissioner may determine that an acceleration event has occurred with respect to the eligible section 965(h) transferee as of the date of the determination. See §1.965-7(b)(3)(iii)(C)(2).

Third, §1.965-7(b)(3)(iii)(B)(4)(xi) clarifies, consistent with the requirement in proposed §1.965-7(b)(3)(iii)(B)(2)(i) that a transfer agreement be filed consistent with other guidance, that additional terms for transfer agreements may be prescribed pursuant to publications, forms, instructions, or other guidance.

b.  Transfer agreements and consent agreements after triggering events

The final regulations also include changes to the terms of the transfer agreements to be entered into by eligible section 965(i) transferees and the consent agreements to be entered into by certain shareholders after certain triggering events consistent with the changes to the terms of the transfer agreements to be entered into in connection with acceleration events discussed in Part VI.C.7.a of this Summary of Comments and Explanation of Revisions. The final regulations require a transfer agreement or consent agreement to include a statement as to whether the leverage ratio of the eligible section 965(i) transferee or the taxpayer making the section 965(h) election after a triggering events exceeds three to one. See §1.965-7(c)(3)(iv)(B)(4)(ix), (c)(3)(iv)(B)(6), (c)(3)(v)(D)(4)(v), and (c)(3)(v)(D)(6). The final regulations also clarify that additional terms for transfer agreements and consent agreements in connection

ADMIN_03317

with triggering events may be prescribed pursuant to publications, forms, instructions, or other guidance. Section 1.965-7(c)(3)(iv)(B)(4)(x) and (c)(3)(v)(D)(4)(vi).

D. Section 965(h) elections

1. Deficiencies or Additional Liabilities

Section 965(h)(4) provides that if a deficiency is assessed with respect to a person's section 965(h) net tax liability, other than in cases of negligence, intentional disregard of rules and regulations, or fraud with intent to evade tax, the amount of the deficiency will be prorated among the installments, and for any installment the due date of which has already passed, the part of the deficiency prorated to that installment will be due on notice and demand. Proposed §1.965-7(b)(1)(ii) extends this rule to apply in the case of a person that increases the amount of its section 965(h) net tax liability when it files a return after payment of the first installment or files an amended return. Requiring notice and demand before payment of the additional amount when it is not due to a deficiency that has been assessed is administratively difficult and inconsistent with the rule provided in proposed §1.965-7(b)(1)(ii)(C), applicable in the case of negligence, intentional disregard of rules and regulations, or fraud with intent to evade tax. Therefore, the final regulations have been modified to provide that in the case of an additional liability reported on a return or amended return, any amount that is prorated to an installment, the due date of which has already passed, will be due with the return reporting the additional amount. Section 1.965-7(b)(1)(ii)(B). The rule with respect to deficiencies remains the same, and payment for a deficiency prorated to an installment, the due date of which has already passed, is due on notice and demand. Id.

2. Elections in Multiple Years

105

ADMIN_03318

A comment requested clarification regarding whether a person who has section 965(h) net tax liabilities in multiple taxable years due to ownership of DFICs with different inclusion years can make the section 965(h) election for each year individually. Because the section 965(h) election is made with respect to the section 965(h) net tax liability for a taxable year and is made with the person's tax return, it must be made separately for each year that the person has a section 965(h) net tax liability. The Treasury Department and the IRS have determined that no additional clarification is necessary. Section 1.965-7(b)(2) and (g)(4).

E. Section 965(i) elections

1. Trusts and Estates

Comments requested clarification of the application of the rules regarding elections in the case of trusts and estates. These comments can largely be divided into two categories: (a) requests for guidance concerning which persons are treated as S corporation shareholders for purposes of the section 965(i) election and entering into transfer agreements after a triggering event, and (b) requests for guidance concerning what events constitute triggering events.

a. Persons eligible to make section 965(i) elections and eligible section 965(i) transferees

The comments requested that the final regulations clarify the definition of "pass-through entity" in proposed §1.965-1(f)(28) to provide more certainty on the status of grantor trusts and qualified subchapter S trusts ("QSSTs"). Comments further noted that it may be unclear whether grantor trust owners and beneficiaries of QSSTs are eligible to make a section 965(i) election and enter into transfer agreements as eligible section 965(i) transferees because it is not clear whether such persons are treated as

106

ADMIN_03319

shareholders of an S corporation for purposes of section 965. They also requested that the final regulations provide that a person with a section 965(i) net tax liability be permitted to make a section 965(i) election and that a person that would be subject to tax on a section 965(i) net tax liability be permitted to enter into a transfer agreement after a triggering event. Similarly, they requested that when an S corporation is owned by a domestic pass-through entity, the domestic pass-through owners be able to make the section 965(i) election. The comments also requested guidance on who is an eligible section 965(i) transferee when there is a death and a grantor trust becomes a non-grantor trust, given that an eligible section 965(i) transferee does not include a pass-through entity, as defined in proposed §1.965-1(f)(28).

The Treasury Department and the IRS have determined that the proposed regulations are clear that both grantor trusts and QSSTs constitute pass-through entities for purposes of proposed §1.965-1(f)(28). The entire portion of the income attributable to the S corporation stock is taxed to the beneficiary of a QSST. See §1.1361-1(j)(1)(i). The same is true for grantor trusts. See section 671 and §1.1361-1(h)(1)(i). The Treasury Department and the IRS have determined that, because the beneficiary of a QSST or the grantor (or beneficiary) of a grantor trust is treated as an S corporation shareholder for subchapter S purposes, it is appropriate that the beneficiary or grantor makes the section 965(i) election and signs a transfer agreement as the eligible section 965(i) transferee. While the beneficiaries of an electing small business trust ("ESBT") are treated as S corporation shareholders for section 1361 purposes, they are not treated as such for purposes of consenting to an S corporation election or taking into account shares of an S corporation's items of income, loss, or deduction. See

107

§§1.1361-1(h)(3) and 1.1362-6(b)(2).  Thus, the trustee of the S corporation portion of an ESBT should make a section 965(i) election and be the eligible section 965(i) transferee.

In the case of death, in which a grantor trust becomes a non-grantor trust, who can enter the transfer agreement should depend on whether, for example, an election is made to treat the trust as a QSST or an ESBT, whether the trust is treated as a testamentary trust, or whether a section 645 election is made to treat the trust as part of the estate.  Generally, the QSST beneficiary, the trustee of an ESBT, or the executor of an estate should be permitted to enter into the transfer agreement.  Accordingly, in response to these comments, the rules in §1.965-7(c)(1) and (c)(3)(iv)(B)(1) are revised to clarify that persons required to consent with respect to a trust or estate for purposes of section 1362 are eligible to make a section 965(i) election and be an eligible section 965(i) transferee.

The comments also requested clarification concerning whether an ESBT or QSST that is treated as bifurcated under trust rules is also treated as bifurcated for purposes of section 965, including elections, acceleration events, and triggering events.  The comments noted that certain trusts, in particular ESBTs, are divided into different portions when they hold stock of an S corporation.  See §1.641(c)-1(a).  Accordingly, separate section 965(h) elections and section 965(i) elections must be made.  The final regulations do not, however, address the application of the trust bifurcation rules, which are outside of the scope of this rulemaking.

b.  Triggering events

108

ADMIN_03321

Comments requested that certain transactions that occur frequently with respect to S corporation trusts not be treated as triggering events and that guidance be provided concerning how to enter into a transfer agreement if such a transaction is a triggering event. For example, family settlement agreements, disclaimers, and certain decanting transactions result in a legal transfer but are not considered a transfer for either U.S. federal transfer tax or income tax purposes. The comments also noted that certain trust transactions may result in a change in taxpayer for U.S. federal income tax reporting purposes although no legal transfer occurred. These transactions may include a conversion of a grantor trust to a non-grantor trust, a trust making a QSST or ESBT election, a merger of two or more trusts, or a severance of trusts into separate shares. A comment also recommended that a material modification of a trust, such as through an amendment, decanting, or judicial reformation, or a material modification in a trust's beneficiaries, not constitute a triggering event where there is no change in ownership for U.S. federal income tax purposes.

In response to the comments, the final regulations clarify that a transfer of S corporation stock can only be a triggering event if it is a transfer that results in a change in ownership for U.S. federal income tax purposes. Thus, for example, a transfer of S corporation stock between a person and a grantor trust of which the person is an owner, which is disregarded for U.S. federal income tax purposes, is not a transfer that can constitute a triggering event because it does not result in an ownership change for U.S. federal income tax purposes. Cf. Rev. Rul. 85-13, 1985-1 C.B. 184 (providing that no sale occurred upon the transfer of trust assets from a grantor trust to the grantor). Specific guidance concerning what transactions are treated as transfers that result in a

109

ADMIN_03322

change in ownership for U.S. federal income tax purposes is outside the scope of these regulations.

Comments also requested guidance on whether a trust's conversion from grantor status to non-grantor status due to the death of a grantor, regardless of whether the trust is treated as part of the decedent's estate under section 645, is a triggering event. Section 965(i)(2)(iii) and §1.965-7(c)(3)(ii)(C) are clear that a transfer includes a transfer by reason of death, so a trust's conversion to non-grantor status due to a death is a triggering event. Accordingly, no further guidance is warranted.

2. Section 962 Elections

A comment requested guidance concerning the interaction of a section 962 election and a section 965(i) election. The Treasury Department and the IRS have determined that it is clear that an eligible taxpayer may make a section 962 election that applies with respect to a section 965(a) inclusion that results in a section 965(i) net tax liability that the taxpayer defers payment of pursuant to a section 965(i) election, because there are no limitations in the section 962 regulations or the section 965 regulations that would preclude the elections. Accordingly, no change is made to the final regulations in this regard.

The comment also requested guidance concerning whether making both the section 962 election and the section 965(i) election would result in the treatment of distributions from a DFIC owned by the S corporation to which the section 965(i) election relates occurring before a triggering event as dividends not excluded from gross income. The Treasury Department and the IRS have determined that it is clear that amounts attributable to a section 965(a) inclusion with respect to which a section

110

ADMIN_03323

962 election applies that would otherwise be excluded from gross income under section

959 are prevented from being excluded before a triggering event due to the application

of section 962(d), because no tax will have been paid with respect to the section 965(a)

inclusion.  See Part III.D.6 of this Summary of Comments and Explanation of Revisions

for a discussion of the application of section 962(d) to section 965(h) elections, the

concepts of which apply equally for section 965(i) elections.  However, as discussed in

Part III.D.6 of this Summary of Comments and Explanation of Revisions with regard to

the basis adjustments to be made in the similar case of a domestic pass-through owner

that has made a section 962 election applicable to its distributive share of a domestic

pass-through entity's section 965(a) inclusion amount, the issue raised by the comment

is a longstanding issue of general applicability within subpart F that is outside of the

scope of regulations concerning section 965.  Accordingly, the Treasury Department

and the IRS decline to adopt the comment.

F.  Section 965(m) elections

     Section 965(m) allows a real estate investment trust (REIT) to make an election

to include its section 965(a) inclusions (and correspondingly deduct its section 965(c)

deductions) over an eight-year period, rather than all in one taxable year.  The schedule

for inclusions over the eight-year period is similar to the schedule for payments for the

section 965(h) election.  See sections 965(h)(1) and 965(m)(1)(B).  A comment

requested that REITs making section 965(m) elections be treated the same as

taxpayers making section 965(h) elections and be allowed to make adjustments to

previously taxed E&P and basis under sections 959 and 961 as if the REIT had included

the full section 965(a) inclusion (and deducted the full section 965(c) deduction) in the

111

taxable year or years in which its DFICs had subpart F income as a result of section 965(a).  Notwithstanding the similarities in the eight-year schedules for section 965(h) elections and section 965(m) elections, the statute is clear that the section 965(h) election defers payments while the section 965(m) election defers inclusions (and deductions).  Thus, allowing REITs making section 965(m) elections to make adjustments under sections 959 and 961 as if they had not made the section 965(m) election would be inconsistent with the statute; therefore, the final regulations do not adopt the comment.

Another comment requested that if adjustments under sections 959 and 961 were not permitted until the corresponding amounts were included in income, the final regulations provide guidance concerning the consequences if the REIT disposed of DFIC stock before all section 965(a) inclusions with respect to the stock had been included in income, and thus before all corresponding adjustments under sections 959 and 961 had been made.  The comment recommended that the section 959 and 961 adjustments be treated as made immediately before the disposition.  For the reasons discussed in the preceding paragraph, the Treasury Department and the IRS have determined that such treatment would not be appropriate and do not adopt the comment.

G.  Section 965(n) elections

Proposed §1.965-7(e) provides that if a taxpayer makes a section 965(n) election for a taxable year, certain section 965-related amounts are not taken into account in determining the taxpayer's net operating loss under section 172 for the year or in determining the taxpayer's taxable income for such taxable year (computed without

112

ADMIN_03325

regard to the deduction allowable under section 172) that may be reduced by net operating loss carryovers or carrybacks to such taxable year under section 172. A comment requested clarification that the section 965(n) election applies for purposes of the alternative minimum tax ("AMT") and section 1411. The Treasury Department and the IRS have determined that because the section 965(n) election affects the net operating loss deduction and taxable income, which are starting points for determining alternative minimum tax net operating loss deduction and alternative minimum taxable income under sections 56(d) and 55(b)(2), respectively, it is clear that the section 965(n) election applies for purposes of the AMT. Similarly, it is clear that the section 965(n) election affects the computations under §1.1411-4(h) if an election under §1.1411-10(g) has been made, and no clarification is needed.

A comment also requested clarification that a section 965(n) election can be made for every year in which a REIT has a section 965(a) inclusion by reason of a section 965(m) election. Given that §1.965-7(e), like proposed §1.965-7(e), provides that a section 965(n) election can be made for a taxable year in which a person has a section 965(a) inclusion, the Treasury Department and the IRS have determined that no additional clarification is necessary.

H. Election to use alternative method of calculating post-1986 earnings and profits

Proposed §1.965-7(f)(5)(i) provides for an election to use an alternative method for calculating post-1986 earnings and profits and provides that the election is made for each specified foreign corporation by its controlling domestic shareholder (as defined in §1.964-1(c)(5)) pursuant to the rules of §1.964-1(c)(3). A comment requested modifications regarding multiple aspects of this election.

113

ADMIN_03326

First, the comment requested that references to the rules in §1.964-1(c)(3) be deleted because the requirements, particularly with respect to the statement required by §1.964-1(c)(3)(ii) and the notice to minority shareholders required by §1.964-1(c)(3)(iii), are too onerous for this purpose. Second, the comment requested that United States shareholders be allowed to make a blanket election for all of their specified foreign corporations or be allowed to make a single election and specifically provide a schedule of those specified foreign corporations for which they do not want to make the election. Third, the comment requested that the penalties of perjury statement requirement be eliminated.

The Treasury Department and the IRS have determined that requiring a controlling domestic shareholder to file the statement required by §1.964-1(c)(ii) in order to make the election described in proposed §1.965-7(f) is duplicative in light of the requirement to provide an election statement described in proposed §1.965-7(f)(5)(iii). However, the requirement to give notice to minority shareholders is not a duplicative requirement, and it helps ensure that all taxpayers are using the same amounts for post-1986 earnings and profits to calculate their section 965(a) inclusions. Accordingly, §1.965-7(f)(5)(i) retains the reference to §1.964-1(c)(3) but provides that the statement described in §1.964-1(c)(3)(ii) is not required. In addition, proposed §1.965-7(f) provides that the election is made on a specified foreign corporation by specified foreign corporation basis, in part because the ability to use the November 2, 2017, measurement date might differ among specified foreign corporations. While it is important for the IRS to know what method is being used for each specified foreign corporation in order to properly determine the amount of post-1986 earnings and profits,

114

ADMIN_03327

it is not necessary for a separate statement to be filed with respect to each specified

foreign corporation. Therefore, the final regulations permit a single election statement

to be filed that provides the necessary information with respect to each specified foreign

corporation. Finally, the election statement required by proposed §1.965-7(f)(5)(iii)

contains additional information beyond the making of the election, including the name

and taxpayer identification number (if any) of both the person making the election and

the specified foreign corporation, so the request that the penalties of perjury statement

be eliminated is not adopted. See Part VII.A of this Summary of Comments and

Explanation of Revisions for more discussion of the election statements.

I. Total net tax liability under section 965

　　　Section 965(h) elections and section 965(i) elections allow the deferral of

payment of amounts based on a taxpayer's total net tax liability under section 965. See

§1.965-7(b)(1), (c)(1), (g)(4), and (g)(6). Total net tax liability is calculated on the basis

of a taxpayer's net income tax "with" and "without" the application of section 965, which

is intended to isolate the portion of a taxpayer's net income tax attributable to section

965.

1. "Without" prong

　　　The second prong of the definition of total net tax liability under section 965 (the

"without" prong) in the proposed regulations calculates the taxpayer's net income tax

without regard to section 965 but also disregards dividends received directly or through

a chain of ownership described in section 958(a). Proposed §1.965-7(g)(10)(i)(B)(2).

Dividends are disregarded because, absent section 965, they would generally be taxed

in the hands of the taxpayer, but such dividends may instead be distributions of

ADMIN_03328

previously taxed E&P if section 965 applies, and thus not subject to additional tax if section 965 applies.  Therefore, absent this rule, the tax imposed on dividends would be included in the "without" prong but not in the "with" prong, distorting the "with" and "without" calculation so that it no longer isolates the net income tax attributable to section 965.  However, this rule does not disregard investments in United States property that would give rise to inclusions under sections 951(a)(1)(B) and 956, even though these inclusions, like dividends, could result in income inclusions that would be taxable in the "without" prong absent section 965, but may instead be sheltered by previously taxed E&P if section 965 does apply.  Comments recommended that the final regulations disregard inclusions under sections 951(a)(1)(B) and 956 for purposes of the "without" computation in order to ensure that the total net tax liability under section 965 reflects an accurate measure of a taxpayer's tax due to section 965.  The final regulations adopt this recommendation.  See §1.965-7(g)(10)(i)(B)(2).

A comment also suggested that the final regulations clarify whether the "without" prong disregards dividends received by a United States shareholder from a DFIC before the DFIC's inclusion year.  The Treasury Department and the IRS have determined that disregarding such dividends would distort the measurement of the taxpayer's tax due to section 965, as those dividends would not become distributions of previously taxed E&P solely as a result of disregarding section 965 in a year for which there was no section 965(a) inclusion with respect to a DFIC.  Accordingly, consistent with the change discussed in the preceding paragraph and in response to the comment, the final regulations clarify that the dividends disregarded are limited to those paid by a DFIC during the DFIC's inclusion year.  See id.

116

ADMIN_03329

A comment also noted that the "without" prong of the definition of total net tax liability under section 965 under the proposed regulations disregards credits, as well as income or deductions properly attributable to dividends from a DFIC, even though section 965(h)(6)(A)(ii)(II) only specifically disregards income or deductions. The comment suggested that because credits were specifically included in the House version of the rule, but not the Senate version, Congress specifically intended to take into account credits in the "without" prong. However, there is no legislative history explaining the change. A similar comment recommended that the "without" prong of the definition of total net tax liability under section 965 take into account foreign income taxes that the taxpayer would have been able to use as credits in subsequent years had section 965 not been enacted.

The term "net income tax" is defined to mean the regular tax liability reduced by the credits allowed under subparts A, B, and D of part IV of subchapter A of the Code and is not defined as such solely with respect to the "with" prong in section 965(h)(6)(A)(i), but also the "without" prong in section 965(h)(6)(A)(ii). See section 965(h)(6)(B). Subpart B includes section 27, which allows for a foreign tax credit. The disregard of credits clearly follows from the statutory definition of the "without" prong, as there could be no credits attributable to a dividend if income attributable to the dividend were disregarded. Accordingly, the Treasury Department and the IRS have determined that the approach of the proposed regulations is appropriate, and do not adopt the recommendations.

2. Effect on Total Tax Liability

A comment suggested that the rules for determining a total net tax liability under

117

ADMIN_03330

section 965 can result in the total tax liability of a United States person who makes a section 965(i) election being higher than it would have been had a section 965(i) election not been made. However, the Treasury Department and the IRS have determined that because such rules apply only for purposes of the definition of total net tax liability under section 965, and thus for purposes of determining how much can be deferred pursuant to a section 965(h) election or a section 965(i) election, they have no impact on a person's actual total tax liability. Accordingly, no changes are made in response to the comment.

VIII.  Comments and Changes to Proposed §1.965-8 – Affiliated Groups (Including Consolidated Groups)

Proposed §1.965-8 sets forth rules governing the application of section 965 and the section 965 regulations to members of an affiliated group (as defined in section 1504(a)), including members of a consolidated group (as defined in §1.1502-1(h)). The comments and modifications with respect to these rules are discussed in this Part VIII.

A. Treatment of consolidated groups

1. Treatment for Purposes of Determining Aggregate Foreign Cash Position

The proposed regulations provide rules allowing a section 958(a) U.S. shareholder to disregard certain assets for purposes of determining its aggregate foreign cash position. See proposed §1.965-3(b). The proposed regulations further provide that all members of a consolidated group that are section 958(a) U.S. shareholders of a specified foreign corporation are treated as a single section 958(a) U.S. shareholder for certain enumerated purposes that do not include proposed §1.965-3(b). Proposed §1.965-8(e). Section 3 of Notice 2018-78 explained that, to prevent the

ADMIN_03331

overstatement of the aggregate foreign cash position, the final regulations would provide that all members of a consolidated group that are section 958(a) U.S. shareholders of a specified foreign corporation would also be treated as a single section 958(a) U.S. shareholder for purposes of §1.965-3(b).

However, comments have noted that treating all members of a consolidated group that are section 958(a) U.S. shareholders of a specified foreign corporation as a single section 958(a) U.S. shareholder for purposes of §1.965-3(b) but not for all purposes of determining the aggregate foreign cash position could still result in overstatement of the aggregate foreign cash position, if, for example, stock of a specified foreign corporation was transferred between such shareholders between cash measurement dates. Accordingly, the final regulations provide that the consolidated group aggregate foreign cash position is determined as if all members of a consolidated group that are section 958(a) U.S. shareholders of a specified foreign corporation were a single section 958(a) U.S. shareholder. <u>See</u> §1.965-8(e)(1), (e)(3), and (f)(4).

2. Treatment for Other Purposes

Comments also requested that the final regulations treat all members of a consolidated group as a single United States shareholder for all purposes of section 965. One comment highlighted a fact pattern in which it argues that the anti-abuse rule in §1.965-4(b) applies and causes double taxation if the members are treated as separate but would not apply if the members were treated as a single United States shareholder. However, the Treasury Department and the IRS have determined that treatment of members of a consolidated group as a single United States shareholder would not alter the application of the anti-abuse rule in the fact pattern raised. Even if it

119

ADMIN_03332

did, however, broadly changing the consequences of well-established principles concerning the determination of inclusions under section 951 in a consolidated group would not be justified by the application of an anti-abuse rule to a transaction that falls within its parameters. See Part VI.C.5 of this Summary of Comments and Explanation of Revisions for a discussion of why the final regulations do not adopt recommendations to treat all members of a consolidated group that are section 958(a) U.S. shareholders of a specified foreign corporation as a single section 958(a) U.S. shareholder for purposes of determining foreign income taxes deemed paid with respect to section 965(a) inclusions.

B. Treatment of affiliated groups other than consolidated groups

A comment also suggested that section 958(a) U.S. shareholders that are members of an affiliated group that do not file a consolidated U.S. federal income tax return also be treated as a single United States shareholder for purposes of determining the aggregate foreign cash position of each member. It suggested that the statute evidences Congressional intent for such treatment. The Treasury Department and the IRS have determined that the rules in section 965(b)(5) concerning the allocation of an affiliated group member's aggregate unused E&P deficit to certain members of its affiliated group do not evidence an intent to treat all members of an affiliated, but not consolidated, group as a single United States shareholder and decline to adopt the recommendation.

IX. Other Comments

A. Application to individuals

120

Numerous comments recommended that guidance exempt individuals from the application of section 965. A comment also recommended that section 965(c)(3)(E), which provides that the cash position of certain noncorporate entities must be taken into account in determining a United States shareholder's aggregate foreign cash position, not apply with respect to individuals but did not supply any reasoning for the recommendation. The statute applies to increase the subpart F income of all DFICs, with no exception to the extent that a DFIC has one or more United States shareholders that are individuals. See section 965(a). Further, the legislative history expressly provides that all United States shareholders, including individuals, are subject to section 965. See H.R. Rep. No. 115-446, at 606 (2017) ("In contrast to the participation exemption deduction [in section 245A] available only to domestic corporations that are U.S. shareholders under subpart F, the transition rule applies to all U.S. shareholders."). Accordingly, the final regulations do not adopt these recommendations. The final regulations also do not adopt a related recommendation to permit retroactive entity classification elections to treat DFICs as disregarded for U.S. federal income tax purposes, which would be out of scope and contrary to the legislative history indicating that the Treasury Department and the IRS were expected to prevent the avoidance of section 965. See H.R. Rep. No. 115-466, at 619 (2017).

Another comment disputed the description of the clear application of section 965(c) and the proposed regulations thereunder in Part XI.C.2 of the Explanation of Provisions in the proposed regulations but did not suggest any changes to the rules in the proposed regulations. The Treasury Department and the IRS have determined that the proposed regulations are consistent with the statute and that Part XI.C.2 of the

121

ADMIN_03334

Explanation of Provisions in the proposed regulations accurately describes the rules, and thus that no changes are needed in response to the comment.

B. Section 962 elections

A comment requested that the Treasury Department and the IRS consider providing relief for individuals who make a section 962 election and subsequently receive a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits from a DFIC to provide parity with corporations. However, as the comment acknowledges, section 962(d) limits the application of section 959 in the case of an individual that has made a section 962 election, and, as discussed in Part III.D.6 of this Summary of Comments and Explanation of Revisions, section 961 similarly limits the availability of basis for a distribution of previously taxed E&P in the case of a section 962 election. Accordingly, the Treasury Department and the IRS have determined that no relief is appropriate.

Another comment requested guidance concerning the interaction of a section 962 election and a §1.1411-10(g) election; specifically, whether tax is imposed under section 1411 on a distribution of previously taxed E&P that are not excluded from an individual's income as a result of the application of section 959(d) and what the effects are on the section 1411 tax basis in DFIC stock. Because this is an issue of general applicability with respect to previously taxed E&P and not specific to the application of section 965, the final regulations do not address this issue.

C. RICs

122

ADMIN_03335

A comment requested that guidance affirm that section 965(a) inclusions do not affect regulated investment company ("RIC") qualification. The application of the RIC qualification rules is outside of the scope of the final regulations.

D. Extension of limitation on assessment

A comment suggested that the final regulations clarify whether the extension of the limitation on the time period for assessment under section 965(k) applies to domestic pass-through owners. The comment also suggested that the final regulations clarify that the extension does not apply for purposes of the alternative minimum tax, the tax under section 1411, the tax under section 4968, or the tax under section 4940. In addition, the comment recommended clarifying the interaction of the extension of the limitation on the time period for collection in section 965(i)(6) with the extension in section 965(k) and the interaction of section 965(k) with partnership audit rules enacted by the Bipartisan Budget Act of 2015, P.L. 114-74, 129 Stat. 587 ("BBA"). The Treasury Department and the IRS have determined that, because section 965(k) applies to the net tax liability under section 965 (as defined in section 965(h)(6)), and §1.965-7(g)(10) defines total net tax liability under section 965 consistently with the definition under section 965(h)(6), it is clear that section 965(k) applies to any total net tax liability under section 965, including that of a domestic pass-through owner. Moreover, the definitions of net tax liability under section 965 in section 965(h)(6) and total net tax liability under section 965 in §1.965-7(g)(10) are clear that they do not include the taxes mentioned by the comment. The Treasury Department and the IRS have also determined that it is clear that section 965(k) does not limit section 965(i)(6). Accordingly, the comment is

ADMIN_03336

not adopted.  The final regulations do not address the interaction of section 965(k) with the BBA rules, as those are outside of the scope of this rulemaking.

E. Late election relief

Section 965 includes statutory due dates for making section 965(h) elections, section 965(i) elections, section 965(m) elections, and section 965(n) elections.  In addition to furnishing guidance with respect to statutory elections, the proposed regulations provide taxpayers with two additional elections in proposed §§1.965-2(f)(2) and 1.965-7(f) and prescribe due dates for making these regulatory elections.  The proposed regulations indicate that relief under §301.9100-2 or §301.9100-3 is not available with respect to any election under section 965.  A comment recommended that the Treasury Department and the IRS reverse its position in the proposed regulations and grant section 9100 relief for the statutory and regulatory elections with respect to section 965.  The IRS does not have the discretion to provide section 9100 relief with respect to an election whose due date is prescribed by statute.  Furthermore, in addition to providing additional time for the basis election, as discussed in Part III.D.1 of this Summary of Comments and Explanation of Revisions, Notice 2018-78 provided a postponement for taxpayers affected by Hurricane Florence to make and revoke all elections with respect to section 965.  The Treasury Department and the IRS have determined that providing additional election relief would create administrative difficulties and is therefore inappropriate.  Accordingly, the recommendation is not adopted.

ADMIN_03337

X.  Applicability Dates

No comments were received with respect to the applicability dates of the proposed regulations.  The final regulations retain the applicability dates that were in the proposed regulations and, consistent with the applicability date of section 965, generally apply beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, beginning the taxable year in which or with which such taxable year of the foreign corporation ends.  See section 7805(b)(2).

**Effect on Other Documents**

Notice 2018-07 (2018-4 I.R.B. 317) is obsolete as of **[INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER]**.

Sections 1 through 4 and 6 of Notice 2018-13 (2018-6 I.R.B. 341) are obsolete as of **[INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER]**.

Sections 1 through 5 and 7 of Notice 2018-26 (2018-16 I.R.B. 480) are obsolete as of **[INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER]**.

Sections 1 through 3 and 5 of Notice 2018-78 (2018-42 I.R.B. 604) are obsolete as of **[INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER]**.

**Statement of Availability of IRS Documents**

IRS Revenue Procedures, Revenue Rulings, notices, and other guidance cited in this document are published in the Internal Revenue Bulletin or Cumulative Bulletin and are available from the Superintendent of Documents, U.S. Government Printing Office, Washington, DC 20402, or by visiting the IRS website at http://www.irs.gov.

**Special Analyses**

125

ADMIN_03338

I. Regulatory Planning and Review

Executive Orders 13563 and 12866 direct agencies to assess costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic, environmental, public health and safety effects, distributive impacts, and equity).  Executive Order 13563 emphasizes the importance of quantifying both costs and benefits, reducing costs, harmonizing rules, and promoting flexibility.  OIRA has designated this rule as an economically significant regulatory action under section 3(f) of Executive Order 12866 and the Memorandum of Agreement (MOA), *Review of Tax Regulations under Executive Order 12866* (April 11, 2018).  Accordingly, the rule has been reviewed by the Office of Management and Budget.

A.  Need for the final regulations

These final regulations implement section 965 of the Code as amended by the Act.  The final regulations provide rules for determining the section 965(a) inclusion amount of a United States shareholder of a foreign corporation with accumulated post-1986 deferred foreign income.  The final regulations directly implement the statutory requirements.  The Senate Committee on Finance stated with respect to section 965:

> To ensure that all distributions from foreign subsidiaries are treated in the same manner under the participation exemption system, the Committee believes that it is appropriate to tax such earnings as if they had been repatriated under present law, but at a reduced rate.  The Committee believes the tax on accumulated foreign earnings should apply without requiring an actual distribution of earnings, and further believes that the tax rate should take into account the liquidity of the accumulated earnings.

Senate Committee on Finance, Explanation of the Bill, at 358 (November 22, 2017).

126

ADMIN_03339

## B. Background

The international tax system prior to the Act created strong incentives for U.S. companies to keep their earnings and profits overseas, an action known as deferral, in order to avoid paying a sizeable residual U.S. tax. The Act ended deferral and the resulting "lockout effect." It introduced a one-time tax on the stock of any deferred E&P not previously taxed by the United States, regardless of whether those earnings are repatriated. Cash or cash-equivalent assets held by a foreign corporation result in a higher rate of repatriation tax than non-cash assets, such as plant, property, and equipment. The tax applies to the accumulated stock of deferred E&P as of the last taxable year of a foreign corporation beginning before January 1, 2018, and with respect to United States shareholders, for taxable years in which or with which the taxable year of the foreign corporation ends; these details are important for understanding the economic impacts of the final regulations.

The final regulations address open questions regarding the application of section 965 and comments received on the proposed regulations. They provide rules related to section 965 described in the four notices issued since December 22, 2017, with certain modifications, as well as additional guidance related to section 965. Specifically, the guidance provides general rules and definitions, as well as rules related to the determination and treatment of section 965(c) deductions, rules that disregard certain transactions in connection with section 965, rules related to foreign tax credits, rules regarding elections and payments, rules regarding the application of the section 965 regulations to affiliated groups, including consolidated groups, rules on dates of applicability, rules relating to section 962 elections, and rules regarding the application

127

of section 986(c) in connection with section 965. These final regulations are designed to provide clarity and reduce unnecessary burdens on taxpayers, including by providing guidance on how to apply particular mechanical rules.

C. Baseline

The baseline constitutes a world in which no regulations pertaining to section 965 had been promulgated. The following qualitative analysis describes the anticipated impacts of the regulations relative to the baseline.

D. Consideration of alternatives

For a discussion of the alternatives considered in the promulgation of the proposed regulations, see Parts II through IX of the Summary of Comments and Explanation of Revisions. For example, see Part II of the Summary of Comments and Explanation of Revisions for a discussion of the alternatives considered with respect to the determination of, among other things, post-1986 earnings and profits, cash measurement dates, and short-term obligations, and Part III.D of the Summary of Comments and Explanation of Revisions for a discussion of the alternatives considered to the rule permitting elective basis adjustments to the stock of certain DFICs and E&P deficit foreign corporations. For a discussion of additional alternatives considered in the promulgation of the final regulations, see Part G of this Special Analyses.

E. Economic analysis of provisions substantially unchanged from the proposed regulations

The final regulations enhance the performance of the U.S. economy by reducing uncertainty and ambiguity over interpretation of the section 965 requirements. Absent these final regulations, different parties would likely interpret the statute in different ways. Such disparate interpretations could lead similarly situated taxpayers to calculate

ADMIN_03341

their tax liability differently and therefore possibly to make organizational or investment decisions under different signals of economic value, an economically inefficient outcome. The final regulations, following the proposed regulations with primarily only technical modifications, reduce uncertainty and ambiguity by: (1) providing that all members of a consolidated group that are United States shareholders of a specified foreign corporation are treated as a single United States shareholder for certain purposes; (2) introducing definitions of terminology used; (3) coordinating foreign tax credit rules; (4) providing explicit mechanical rules for applying section 965 in a variety of complex scenarios; (5) making explicit the process for making elections and paying the tax; and (6) providing dates of applicability.

In consultation with taxpayers, the Treasury Department and the IRS also determined that there are multiple instances throughout the statute where the transition tax may be artificially inflated because of double counting of cash and E&P due to multiple testing dates and chains of ownership. Double counting, as well as non-counting, is inequitable because similarly situated taxpayers may differ in terms of the amounts of income that fall into the specific categories that may be subject to double counting or non-counting. As a result of this analysis, the final regulations, following the proposed regulations with only technical modifications, reduce double counting and non-counting and produce more equitable tax outcomes across otherwise similarly situated taxpayers by: (1) preventing double counting in computing the aggregate foreign cash position, for example, by disregarding receivables and payables between related specified foreign corporations with a common U.S. shareholder; and (2) preventing double-counting and non-counting in the computation of deferred earnings

129

ADMIN_03342

arising from amounts paid or incurred between related parties between measurement dates.

F. Responses to comments

The Treasury Department and the IRS received comments from the public in response to the proposed regulations. This section discusses significant issues brought up in the comments for which economic reasoning is insightful. For a full discussion of comments received, see the Summary of Comments and Explanation of Revisions section of this preamble.

1. Basis Election Rules

To understand the basis election, it is useful to understand that when a United States shareholder includes an amount in income related to the subpart F income of its CFC, the CFC's earnings that are associated with the income inclusion are considered as previously taxed. Thus, when those previously taxed E&P are distributed to the United States shareholder, the United States shareholder generally does not include them in income. Additionally, in general, the subpart F inclusion also causes an upward basis adjustment in the stock of the CFC equal to the amount of the income inclusion. This also prevents double taxation through capital gain recognized in the event that the CFC is sold. Because this increase in basis is only needed to avoid double taxation until the previously taxed E&P are distributed, once the earnings are distributed, there is a corresponding downward adjustment in basis of the CFC. If there is insufficient basis in the stock to account for the decrease, then the United States shareholder must recognize gain equal to the difference between the amount of the basis and the reduction.

130

ADMIN_03343

When applying the framework laid out above in the context of section 965, there are several places where additional rules were needed. Under section 965(b)(4)(A), earnings of DFICs are treated as previously taxed E&P ("section 965(b) previously taxed earnings and profits") if a deficit is used to offset those earnings for purposes of determining the United States shareholder's inclusion under section 965(a). However, the statute does not provide for a basis increase to the stock of the DFIC, even though other provisions of the Code still require a basis decrease when the section 965(b) previously taxed earnings and profits are distributed. Thus, under the statute, there could be a disincentive to distribute section 965(b) previously taxed earnings and profits because the United States shareholder has to reduce its basis in its CFC, and in some instances, recognize gain, because the initial offsetting basis increase did not occur.

Under section 965(b)(4)(B), the deficit in E&P in an E&P deficit foreign corporation is generally eliminated to the extent that it is used to offset earnings of a DFIC. The increase in E&P without a corresponding decrease in the basis of the E&P deficit foreign corporation introduces a distortion into the system because it preserves a loss in the stock of the entity even though the loss in earnings and profits has been utilized and eliminated.

Consistent with the legislative history, under the proposed regulations, a taxpayer could elect to make certain basis adjustments related to the taxpayer's section 965(b) previously taxed earnings and profits. This election was allowed in order to eliminate the distortions in the basis of the stock of the DFIC and E&P deficit foreign corporations. The proposed regulations allowed the taxpayer to elect to increase the basis of certain stock of its DFICs pro rata by the amount of its section 965(b) previously taxed earnings

131

and profits. However, for consistency, the taxpayer was then also required to reduce the basis of certain stock of its E&P deficit foreign corporations by an equivalent amount, and recognize gain to the extent the reduction exceeded the amount of basis the taxpayer had in the stock. The proposed regulations therefore reduced the disincentive to repatriate section 965(b) previously taxed earnings and profits. However, the forced gain recognition could have discouraged some taxpayers from making the election, which would continue the disincentive to repatriate section 965(b) previously taxed earnings and profits, retaining the distortion in the basis of their E&P deficit foreign corporations and thereby distorting taxpayers' investment and planning decisions.

The final regulations therefore revise this rule slightly to provide an even more flexible election. The final regulations permit a taxpayer to increase its basis in the stock of its DFICs by the lesser of its section 965(b) previously taxed earnings and profits or the amount it can reduce the stock basis of its E&P deficit foreign corporations without recognizing gain. Additionally, subject to certain limitations, the taxpayer is allowed to designate which stock of a DFIC is increased and by how much. This new election further incentivizes taxpayers to make an election to reduce some of the distortions created by the statute, by providing some basis in the DFICs with section 965(b) previously taxed earnings and profits that can be used to repatriate those earnings, and by reducing some of the basis in the E&P deficit foreign corporations to account for the utilization and elimination of the deficit. Additionally, allowing taxpayers the flexibility to assign basis increases to stock in a way which benefits them the most, rather than merely allocating the increases pro rata among the taxpayers' DFICs, further

132

ADMIN_03345

neutralizes any negative impact of the statute on the incentive to repatriate section 965(b) previously taxed earnings and profits.

In developing the final regulations, the Treasury Department and the IRS considered a number of options related to the basis election, including retaining the rule in the proposed regulations, requiring that the taxpayer increase the basis in the stock of its DFICs on a pro rata basis rather than by designation, and a more complex rule that would have permitted additional basis adjustments where an E&P deficit foreign corporation had basis in excess of its deficit. The rules in the final regulation balance administrative and compliance concerns, while still allowing the maximum amount of flexibility for taxpayers in their investment and repatriation planning. This increased flexibility and clarity provided by the final regulations helps to ensure that taxpayers face more uniform incentives regarding section 965(b) previously taxed earnings and profits, and minimizes distortions to taxpayer behavior resulting from the adjustments provided for by the statute. See Part III.D of the Summary of Comments and Explanation of Revisions for additional discussion of the considerations taken into account with respect to this issue.

2.  Cash Position Calculation

In the case of a domestic corporate United States shareholder, section 965 generally taxes foreign earnings at a 15.5% rate if held in cash, but only at 8% otherwise. The cash definition in the statute and the proposed regulations includes both cash and cash equivalents. A number of comments were received requesting that certain assets be excluded from the list of assets counted as cash equivalents, including commodities held as inventories or supplies and stock of publicly traded companies.

133

ADMIN_03346

The final regulations provide a narrow exception from the definition of "cash position" for certain commodities held by a specified foreign corporation in the ordinary course of its trade or business as well as for certain privately negotiated contracts to buy or sell such assets.

The Treasury Department and the IRS have determined that assets that would otherwise constitute cash equivalents should not be treated as such for purposes of section 965 if they constitute inventory or supplies under longstanding tax principles. These types of assets have been defined by statute and decades of case law as property used in the ordinary course of a taxpayer's business, typically for sale to customers or further use via processes such as manufacturing and refinement. In general, these types of assets are not held for investment with the goal of recognizing appreciation over a substantial period of time, but are rather turned over (or used to make property that is turned over) routinely in the ordinary conduct of business.

These well-settled delineations of what constitute inventory or supplies are consistent with the statutory definition of and legislative history explaining cash-equivalent assets in section 965(c)(3)(B)(iii). Moreover, the contours of this category have been carefully defined through common law and are generally well-understood by taxpayers. As a result, an exception from cash-equivalent assets for this type of property is well-defined and understood, consistent with statutory intent, and appropriately narrow. By contrast, other potential exceptions would have required the creation of new terms and concepts, led to potential over- or under-inclusiveness, and created uncertainty. For these reasons, the Treasury Department and the IRS determined that the general approach in the proposed regulations was most consistent

ADMIN_03347

with the statute and legislative history, subject to the narrow exception added to the final regulations for the reasons discussed above. Further, providing broad exceptions could create complexity and increased administrative and compliance burdens. See Part II.D of the Summary of Comments and Explanation of Revisions for a more complete discussion of the considerations taken into account with respect to this issue.

3. Total Net Tax Liability under Section 965

Section 965(h) elections and section 965(i) elections allow a taxpayer to defer payment of its total net tax liability under section 965. (For section 965(h), the election provides deferral over 8 years, whereas for section 965(i) the election provides indefinite deferral until the occurrence of certain triggering events.) Total net tax liability under section 965, which defines the portion of a taxpayer's income tax eligible for deferral, is equal to the difference between a taxpayer's net income tax "with" and "without" the application of section 965; this is intended to isolate the portion of a taxpayer's net income tax attributable solely to section 965. Under the statute, the "without" prong calculates a taxpayer's net income tax without regard to section 965, but also disregards dividends received from a foreign subsidiary. Dividends are disregarded because, absent section 965, the dividends generally would be taxed in the hands of the taxpayer, but such dividends would be distributions of previously taxed E&P if section 965 applies, and thus not subject to additional tax.

Absent the provision in the statute that disregards dividends received from a foreign subsidiary in the "without" prong, the tax imposed on dividends would be included in the "without" prong but not in the "with" prong, distorting the "with" and

ADMIN_03348

"without" calculation so that it no longer isolates the net income tax attributable to section 965, and under-counting income eligible for deferral.

In response to comments, the final regulations also disregard effective repatriations taxed in a manner similar to dividends under section 951(a)(1)(B) resulting from a foreign subsidiary's investments in United States property under section 956 for purposes of calculating the "without" prong. In the year that section 965 applied, taxpayers may have chosen to borrow funds from their CFCs instead of receiving a regular dividend distribution, because such loans would not be subject to tax as effective repatriations of previously taxed E&P and their annual cash distribution policies could not be easily adjusted following passage of the Act. Without the final regulations, taxpayers that received these loans from their CFCs would be required to include the loan amount in the "without" calculation, leading to a distortion in the "with" and "without" calculation so that it no longer isolates the net income tax attributable to section 965, resulting in a reduced net income tax attributable to section 965, and a loss of some of the deferral benefit of section 965(h) and (i).

While the Treasury Department and the IRS considered retaining the proposed rule, the final regulations do not do so because the amounts of inbound loans, like dividends, will generally be non-taxable investments of previously taxed E&P "with" section 965, but taxable as effective repatriations "without" section 965, and thus, as stated previously, including these amounts in the "without" calculation would inappropriately decrease the amount of the taxpayer's net tax liability eligible for the deferral elections and fail to isolate the portion of the taxpayer's net tax liability attributable solely to section 965. See Part VII.I.1 of the Summary of Comments and

ADMIN_03349

Explanation of Revisions for a more complete discussion of the considerations taken into account with respect to this issue.

II. Paperwork Reduction Act

A. Collection of information imposed by the regulations

The collection of information imposed directly by these regulations is contained in §§1.965-2(d)(2)(ii)(B), 1.965-2(f)(2)(iii)(B), 1.965-3(b)(2), 1.965-3(c)(3), 1.965-4(b)(2)(i), 1.965-4(b)(2)(iii)(B), 1.965-7(b)(2), 1.965-7(b)(3)(iii)(B), 1.965-7(c)(2), 1.965-7(c)(3)(iv)(B), 1.965-7(c)(3)(v)(D), 1.965-7(c)(6)(i), 1.965-7(d)(3), 1.965-7(e)(2), 1.965-7(f)(5), and 1.965-8(c). The collection of information provided by these regulations has been reviewed and approved by the Office of Management and Budget under control number 1545-2280. The information is required in order for the IRS to be aware if a taxpayer makes an election, transfers a section 965(h) net tax liability or section 965(i) net tax liability pursuant to a transfer agreement, or takes a position that the anti-abuse rules (described in Part V of the Summary of Comments and Explanation of Revisions section of this preamble) do not apply.

The estimates for the collection of information provided by these final regulations are that 100,000 respondents will require 5 hours per response for a total reporting burden of 500,000 hours. A valuation of the burden hours at $95/hour ($2017) leads to a PRA-based estimate of the reporting costs to taxpayers of $47,500,000. This is a one-time paperwork burden. The Treasury Department and the IRS anticipate substantially all paperwork burdens related to the final regulations to be incurred only with respect to the inclusion year. Any subsequent reporting (such as in connection with a transfer of a section 965(h) net tax liability or section 965(i) net tax liability) would

ADMIN_03350

be negligible burdens that implement elections made and payments calculated in the inclusion year. These burden estimates capture only those burdens imposed by the final regulations and do not include burden estimates for forms associated with the statute.

Comments suggested that the burden reported in connection with the collection of information requirements under the proposed regulations did not appropriately take into account the time necessary for determining net tax liability under section 965 and performing other computations related to the determination of such net tax liability. However, the collections of information under the proposed regulations do not relate to such computations; they relate solely to the making of elections, filing of transfer agreements, and reporting of positions concerning the application of anti-abuse rules. Limited information is required to make such elections, file such transfer agreements, or do such reporting, and accordingly, five hours is an appropriate estimate of the burden imposed by the collections of information in the final regulations.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection of information displays a valid OMB control number.

Books or records relating to a collection of information must be retained as long as their contents may become material in the administration of any internal revenue law. The IRS has posted information for taxpayers on their recordkeeping requirements at https://www.irs.gov/taxtopics/tc305. Generally, tax returns and tax return information are confidential, as required by 26 U.S.C. 6103.

ADMIN_03351

B. Forms created or modified to collect information

In addition to the collection of information requirements in the final regulations, the enactment of section 965 necessitated the creation and modification of certain forms, which are needed to capture changes solely made by the Act and do not reflect a burden imposed by the final regulations.  The Treasury Department and the IRS intend that the collections of information relating to the reporting and payment of tax under section 965 will be conducted by way of the forms and instructions identified thus far in the following table.  As a result, for purposes of the Paperwork Reduction Act (44 U.S.C. 3507(d)), the reporting burden associated with the collection of information in those forms will be reflected in the Form 14029, Paperwork Reduction Act Submission, associated with those forms.

**Related New or Revised Tax Forms**

| | New Forms | Revision of Existing Form | Number of Respondents (Estimated) |
|---|---|---|---|
| Form 965 | X | | 50,000 - 100,000 |
| Form 965-A | X | | 35,000-70,000 |
| Form 965-B | X | | 15,000-30,000 |
| Form 990-PF | | X | <1,000 |
| Form 990-T | | X | <1,000 |
| Form 1040 | | X | 27,000-57,000 |
| Form 1041 | | X | <1,000 |
| Form 1065 | | X | 8,000-10,000 |
| Form 1120 | | X | 12,000-20,000 |
| Form 1120-C | | X | <1,000 |
| Form 1120-L | | X | <1,000 |
| Form 1120-PC | | X | <1,000 |
| Form 1120-REIT | | X | <1,000 |
| Form 1120-RIC | | X | <1,000 |
| Form 1120-S | | X | 3,000-5,000 |

ADMIN_03352

The current status of the Paperwork Reduction Act submissions related to the tax forms that will be created or revised as a result of section 965 is provided in the following table. The burdens associated with the information collections in the forms are included in aggregated burden estimates for the OMB control numbers listed in the following table which, in the case of 1545-0123, represents a total estimated burden time, including all other related forms and schedules for corporations, of 3.157 billion hours and total estimated monetized costs of $58.148 billion ($2017) and, in the case of 1545-0074, a total estimated burden time, including all other related forms and schedules for individuals, of 1.784 billion hours and total estimated monetized costs of $31.764 billion ($2017). The burden estimates provided in the OMB control numbers in the following table are aggregate amounts that relate to the entire package of forms associated with the OMB control number, and will in the future include but not isolate the estimated burden of only those information collections associated with section 965. These numbers are therefore unrelated to the future calculations needed to assess the burden imposed by these regulations. To guard against over-counting the burden that international tax provisions imposed prior to the Act, the Treasury Department and the IRS urge readers to recognize that these burden estimates have also been cited by regulations (such as the foreign tax credit regulations, 83 Fed. Reg. 63200) that rely on the applicable OMB control numbers in order to collect information from the applicable types of filers. With respect to the final regulations, the only relevant burden estimates are those associated with OMB control number 1545-2280. Future estimates would capture both changes made by the Act and those that arise out of discretionary

140

ADMIN_03353

authority exercised in the regulations.  In addition, when available, drafts of IRS forms are posted for comment at https://apps.irs.gov/app/picklist/list/draftTaxForms.htm.

| Form | Type of Filer | OMB Number(s) | Status |
|---|---|---|---|
| Form 965 (including Schedules A-H) | Business (NEW Model) | 1545-0123 | Published in the FRN on 10/11/18. Public Comment period closed on 12/10/18. |
| | | | Link: https://www.federalregister.gov/documents/2018/10/09/2018-21846/proposed-collection-comment-request-for-forms-1065-1065-b-1066-1120-1120-c-1120-f-1120-h-1120-nd |
| Form 965-B | Business (NEW Model) | 1545-0123 | Published in the FRN on 10/11/18. Public Comment period closed on 12/10/18. |
| | | | Link: https://www.federalregister.gov/documents/2018/10/09/2018-21846/proposed-collection-comment-request-for-forms-1065-1065-b-1066-1120-1120-c-1120-f-1120-h-1120-nd |
| Form 965-A | Individual (NEW Model) | 1545-0074 | Limited Scope submission (1040 only) approved on 12/7/18.  Full ICR submission for all forms in 3/2019.  60 Day FRN not published yet for full collection. |
| | | | Link: https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=201808-1545-031 |
| Forms 990-PF, 990-T | Tax exempt entities (NEW Model) | 1545-0047 | Published 60-day FRN on 8/22/18. |
| | | | Link: https://www.federalregister.gov/documents/2018/08/22/2018-18135/proposed-collection-comment-request-for-forms-990-990-ez-sch-b-br-br-990-ez-sch-l-lp-990-ez-990-pf |
| Form 1040 | Individual (NEW Model) | 1545-0074 | Limited Scope submission (1040 only) approved on 12/7/18.  Full ICR submission for all forms in 3/2019.  60 Day FRN not published yet for full collection. |
| | | | Link: https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=201808-1545-031 |
| Form 1041 | Trusts and estates | 1545-0092 | Submitted to OIRA for review on 9/27/18. |
| | | | Link: https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=201806-1545-014 |
| Form 1065 | Business (NEW Model) | 1545-0123 | Published in the FRN on 10/11/18. Public Comment period closed on 12/10/18. |
| | | | Link: https://www.federalregister.gov/documents/2018/10/09/2018-21846/proposed-collection-comment-request-for-forms-1065-1065-b-1066-1120-1120-c-1120-f-1120-h-1120-nd |

141

ADMIN_03354

| Form | Type of Filer | OMB Number(s) | Status |
|---|---|---|---|
| Forms 1120, 1120-C, 1120-L, 1120-PC, 1120-REIT, 1120-RIC, 1120-S | Business (NEW Model) | 1545-0123 | Published in the FRN on 10/11/18. Public Comment period closed on 12/10/18. |
| | Link: https://www.federalregister.gov/documents/2018/10/09/2018-21846/proposed-collection-comment-request-for-forms-1065-1065-b-1066-1120-1120-c-1120-f-1120-h-1120-nd | | |

III. Regulatory Flexibility Act

Pursuant to the Regulatory Flexibility Act (5 U.S.C. chapter 6), it is hereby certified that the final regulations will not have a significant economic impact on a substantial number of small entities within the meaning of section 601(6) of the Regulatory Flexibility Act ("small entities").

Section 965 and the final regulations generally affect U.S. taxpayers who are at least 10-percent shareholders of a foreign corporation. As an initial matter, foreign corporations are not considered small entities. Nor are U.S. taxpayers considered small entities to the extent the taxpayers are natural persons or entities other than small entities. Although the Treasury Department and the IRS received a number of comments asserting that a substantial number of small entities would be affected by the proposed regulations, those comments were principally concerned with U.S. citizens living abroad that owned foreign corporations directly or indirectly through other foreign entities. No small entity is affected in this scenario. Thus, the final regulations generally only affect small entities if a U.S. taxpayer that is a 10-percent shareholder of a foreign corporation is a small entity.

While comprehensive counts of all types of small businesses affected by section 965 and these regulations are not readily available, in-house estimates of section 965

142

ADMIN_03355

suggest that very roughly 20,000 multinational domestic corporations are potentially subject to section 965, and that about half of these corporations have less than $25 million in gross receipts. Therefore, very roughly 10,000 small multinational corporations (defined as corporations with less than $25 million in gross receipts) are potentially subject to section 965. The in-house estimates further suggest that about 25% of these small multinational corporations would not owe any tax under section 965, because they do not have any accumulated E&P to which the tax would be applied.

Regardless of the number of small entities potentially affected by section 965 or the final regulations, the Treasury Department and the IRS have concluded that there is no significant economic impact on such entities as a result of the final regulations. Based on published information from the Conference Report accompanying the Act, H.R. Rep. No. 115-446, at 688 (2017), and Bureau of Economic Analysis aggregate data, which were adjusted to reflect the tax burden and total sales of small businesses, the projected net tax proceeds from section 965 are estimated to be only a small fraction of the total sales of small U.S. parented multinational enterprises projected to 2027.[1] See the table in this Part III. The tax amounts to less than 3 to 5 percent of receipts (as defined in 13 CFR 121.04), an economic impact that is not regarded as significant under the Regulatory Flexibility Act. Moreover, while most affected small entities are likely to pay the tax in (unequal) installments over 8 years, the percentage in any particular year does not exceed 2.2 percent.

---

[1] In-house estimates of section 965 tax liability and total receipts of small businesses are used to scale the published aggregate figures. In this case, a small business is defined as a multinational corporation with less than $25 million in gross receipts. Data on total sales of all U.S. parented companies are drawn from the Bureau of Economic Analysis Interactive Data accessed at this web address in December, 2018: https://apps.bea.gov/iTable/iTable.cfm?ReqID=2&step=1.

ADMIN_03356

| Net Section 965 Tax Revenue as a Fraction of Total Sales for Small Multinational Businesses[1] | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Fiscal Years | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 |
| Net Tax Collected ($ billions) | 1.2 | 0.8 | 0.2 | 0.2 | 0.2 | 0.4 | 0.7 | 1.0 | 0.5 | -0.1 |
| Total Sales ($ billions) | 54.0 | 56.7 | 59.6 | 62.6 | 65.7 | 69.0 | 72.4 | 76.0 | 79.8 | 83.8 |
| Percent | 2.20% | 1.32% | 0.42% | 0.38% | 0.36% | 0.60% | 0.99% | 1.28% | 0.63% | -0.17% |

[1]Small Multinational Businesses are not necessarily small entities as defined by the Regulatory Flexibility Act.

Thus, even if the economic impact of the final regulations is interpreted broadly to include the tax liability due under section 965, which small entities would be required to pay even if the final regulations were not issued, the economic impact should not be regarded as significant under the Regulatory Flexibility Act.

Additionally, the economic impact of the final regulations when considered alone should be minimal. Any economic impact of the final regulations stems from the collection of information requirements imposed by §§1.965-2(d)(2)(ii)(B), 1.965-2(f)(2)(iii)(B), 1.965-3(b)(2), 1.965-3(c)(3), 1.965-4(b)(2)(i), 1.965-4(b)(2)(iii)(B), 1.965-7(b)(2), 1.965-7(b)(3)(iii)(B), 1.965-7(c)(2), 1.965-7(c)(3)(iv)(B), 1.965-7(c)(3)(v)(D), 1.965-7(c)(6)(i), 1.965-7(d)(3), 1.965-7(e)(2), 1.965-7(f)(5), and 1.965-8(c). The Treasury Department and the IRS have determined that the average burden associated with these collection of information requirements is 5 hours, which is minimal, particularly in comparison with other regulatory requirements related to owning stock in a specified foreign corporation. Furthermore, these requirements apply only if a taxpayer chooses to make an election or rely on a favorable rule. The comments received regarding the economic impact of the proposed regulations principally focus on

144

ADMIN_03357

burdens imposed by the statute (i.e., the tax due as a result of section 965) rather than any additional burdens resulting from the proposed regulations.

For the reasons explained above, the Treasury Department and the IRS have determined that the final regulations will not have a significant economic impact on a substantial number of small entities. Accordingly, a regulatory flexibility analysis under the Regulatory Flexibility Act is not required. Pursuant to section 7805(f), the notice of proposed rulemaking preceding these final regulations was submitted to the Chief Counsel for Advocacy of the Small Business Administration for comment on its impact on small business. No comments were received.

## IV. Unfunded Mandates Reform Act

Section 202 of the Unfunded Mandates Reform Act of 1995 (UMRA) requires that agencies assess anticipated costs and benefits and take certain other actions before issuing a final rule that includes any Federal mandate that may result in expenditures in any one year by a state, local, or tribal government, in the aggregate, or by the private sector, of $100 million in 1995 dollars, updated annually for inflation. In 2018, that threshold is approximately $150 million. This rule does not include any Federal mandate that may result in expenditures by state, local, or tribal governments, or by the private sector in excess of that threshold.

## V. Executive Order 13132: Federalism

Executive Order 13132 (entitled "Federalism") prohibits an agency from publishing any rule that has federalism implications if the rule either imposes substantial, direct compliance costs on state and local governments, and is not required by statute, or preempts state law, unless the agency meets the consultation and funding

145

ADMIN_03358

requirements of section 6 of the Executive Order.  This final rule does not have federalism implications and does not impose substantial direct compliance costs on state and local governments or preempt state law within the meaning of the Executive Order.

**Drafting Information**

The principal authors of the final regulations are Leni C. Perkins, Natalie Punchak, and Karen J. Cate of the Office of Associate Chief Counsel (International). However, other personnel from the Treasury Department and the IRS participated in the development of the final regulations.

**List of Subjects in 26 CFR Part 1**

Income taxes, Reporting and recordkeeping requirements.

**Amendments to the Regulations**

Accordingly, 26 CFR part 1 is amended as follows:

PART 1--INCOME TAXES

Paragraph 1.  The authority citation for part 1 is amended by adding new entries in numerical order to read as follows:

Authority:  26 U.S.C. 7805 * * *

* * * * *

Section 1.962-1 also issued under 26 U.S.C. 965(o).

* * * * *

Section 1.965-1 also issued under 26 U.S.C. 965(c)(3)(B)(iii)(V), 965(d)(2), 965(o), 989(c), and 7701(a).

ADMIN_03359

Section 1.965-2 also issued under 26 U.S.C. 965(b)(3)(A)(ii), 965(o), and 961(a) and (b).

Section 1.965-3 also issued under 26 U.S.C. 965(c)(3)(D) and 965(o).

Section 1.965-4 also issued under 26 U.S.C. 965(c)(3)(F) and 965(o).

Sections 1.965-5 through 1.965-6 also issued under 26 U.S.C. 965(o) and 26 U.S.C. 902(c)(8) (as in effect on December 21, 2017).

Section 1.965-7 also issued under 26 U.S.C. 965(h)(3), 965(h)(5), 965(i)(2), 965(i)(8)(B), 965(m)(2)(A), 965(n)(3), and 965(o).

Section 1.965-8 also issued under 26 U.S.C. 965(o).

Section 1.965-9 also issued under 26 U.S.C. 965(o).

* * * * *

Section 1.986(c)-1 also issued under 26 U.S.C. 965(o) and 26 U.S.C. 989(c).

* * * * *

Par. 2.  Section 1.962-1 is amended by:

1.  Revising paragraph (b)(1)(i).

2.  Redesignating paragraphs (b)(2)(iv)(a) and (b) as paragraph (b)(2)(iv)(A) and (B), respectively.

3.  Adding paragraph (d).

The revision and addition read as follows:

§1.962-1 Limitation of tax for individuals on amounts included in gross income under section 951(a).

* * * * *

(b) * * *

(1) * * *

147

ADMIN_03360

(i) <u>Determination of taxable income</u>.  The term <u>taxable income</u> means the excess

of--

(A) The sum of--

(<u>1</u>) All amounts required to be included in his gross income under section 951(a)

for the taxable year with respect to a foreign corporation of which he is a United States

shareholder, including--

(<u>i</u>) His section 965(a) inclusion amounts (as defined in §1.965-1(f)(38)); and

(<u>ii</u>) His domestic pass-through owner shares (as defined in §1.965-1(f)(21)) of

section 965(a) inclusion amounts with respect to deferred foreign income corporations

(as defined in §1.965-1(f)(17)) of which he is a United States shareholder; plus

(<u>2</u>) [Reserved]

(<u>3</u>) All amounts which would be required to be included in his gross income under

section 78 for the taxable year with respect to the amounts referred to in paragraph

(b)(1)(i)(A)(<u>1</u>) and (<u>2</u>) of this section if the shareholder were a domestic corporation;

over

(B) The sum of the following deductions, but no other deductions or amounts--

(<u>1</u>) His section 965(c) deduction amount (as defined in §1.965-1(f)(42)) for the

taxable year;

(<u>2</u>) His domestic pass-through owner shares of section 965(c) deduction

amounts corresponding to the amounts referred to in paragraph (b)(1)(i)(A)(<u>1</u>)(<u>ii</u>) of this

section; and

(<u>3</u>) [Reserved]

* * * * *

ADMIN_03361

(d) <u>Applicability dates</u>. Paragraph (b)(1)(i) of this section applies beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, for the taxable year in which or with which such taxable year of the foreign corporation ends.

Par. 3. Section 1.962-2 is amended by revising paragraph (a) and adding paragraph (d) to read as follows:

§1.962-2 Election of limitation of tax for individuals.

(a) <u>Who may elect</u>. The election under section 962 may be made only by an individual (including a trust or estate) who is a United States shareholder (including an individual who is a United States shareholder because, by reason of section 958(b), he is considered to own stock of a foreign corporation owned (within the meaning of section 958(a)) by a domestic pass-through entity (as defined in §1.965-1(f)(19))).

* * * * *

(d) <u>Applicability dates</u>. Paragraph (a) of this section applies beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, for the taxable year in which or with which such taxable year of the foreign corporation ends.

Par. 4. Sections 1.965-0 through 1.965-9 are added to read as follows:

§1.965-0 Outline of section 965 regulations.

This section lists the headings for §§1.965-1 through 1.965-9.

§1.965-1 Overview, general rules, and definitions.
(a) Overview.
(1) In general.
(2) Scope.
(b) Section 965(a) inclusion amounts.
(1) Inclusion of the pro rata share of the section 965(a) earnings amount.

149

(2) Reduction by the allocable share of the aggregate foreign E&P deficit.
(c) Section 965(c) deduction amounts.
(d) Treatment of specified foreign corporation as a controlled foreign corporation.
(e) Special rule for certain controlled domestic partnerships.
(1) In general.
(2) Definition of a controlled domestic partnership.
(f) Definitions.
(1) 8 percent rate amount.
(2) 8 percent rate equivalent percentage.
(3) 15.5 percent rate amount.
(4) 15.5 percent rate equivalent percentage.
(5) Accounts payable.
(6) Accounts receivable.
(7) Accumulated post-1986 deferred foreign income.
(8) Aggregate foreign cash position.
(9) Aggregate foreign E&P deficit.
(10) Aggregate section 965(a) inclusion amount.
(11) Allocable share.
(12) Bona fide hedging transaction.
(13) Cash-equivalent asset.
(i) In general.
(ii) Specified commodity.
(14) Cash-equivalent asset hedging transaction.
(i) In general.
(ii) Aggregate hedging transactions.
(15) Cash measurement dates.
(16) Cash position.
(i) General rule.
(ii) Fair market value of cash-equivalent assets.
(iii) Measurement of derivative financial instruments.
(iv) Translation of cash position amounts.
(17) Deferred foreign income corporation.
(i) In general.
(ii) Priority rule.
(18) Derivative financial instrument.
(19) Domestic pass-through entity.
(20) Domestic pass-through owner.
(21) Domestic pass-through owner share.
(22) E&P deficit foreign corporation.
(i) In general.
(ii) Determination of deficit in post-1986 earnings and profits.
(23) E&P measurement dates.
(24) Final cash measurement date.
(25) First cash measurement date.
(26) Inclusion year.
(27) Net accounts receivable.

ADMIN_03363

(28) Pass-through entity.
(29) Post-1986 earnings and profits.
(i) General rule.
(ii) Foreign income taxes.
(iii) Deficits in earnings and profits.
(30) Pro rata share.
(31) Second cash measurement date.
(32) Section 958(a) stock.
(33) Section 958(a) U.S. shareholder.
(34) Section 958(a) U.S. shareholder inclusion year.
(35) Section 965 regulations.
(36) Section 965(a) earnings amount.
(37) Section 965(a) inclusion.
(38) Section 965(a) inclusion amount.
(39) Section 965(a) previously taxed earnings and profits.
(40) Section 965(b) previously taxed earnings and profits.
(41) Section 965(c) deduction.
(42) Section 965(c) deduction amount.
(43) Short-term obligation.
(44) Specified E&P deficit.
(45) Specified foreign corporation.
(i) General rule.
(ii) Special attribution rule.
(A) In general.
(B) Attribution for purposes of the ten percent standard.
(iii) Passive foreign investment companies.
(46) Spot rate.
(47) United States shareholder.
(g) Examples.
(1) Example 1.
(i) Facts.
(ii) Analysis.
(2) Example 2.
(i) Facts.
(ii) Analysis.
(3) Example 3.
(i) Facts.
(ii) Analysis.
(4) Example 4.
(i) Facts.
(ii) Analysis.
(5) Example 5.
(i) Facts.
(ii) Analysis.
(A) Determination of status as a deferred foreign income corporation.
(B) Determination of status as an E&P deficit foreign corporation.

ADMIN_03364

(6) Example 6.
(i) Facts.
(ii) Analysis.
(7) Example 7.
(i) Facts.
(ii) Analysis.
(8) Example 8.
(i) Facts.
(ii) Analysis.

§1.965-2 Adjustments to earnings and profits and basis.
(a) Scope.
(b) Determination of and adjustments to earnings and profits of a specified foreign corporation for purposes of applying sections 902, 959, 960, and 965.
(c) Adjustments to earnings and profits by reason of section 965(a).
(d) Adjustments to earnings and profits by reason of section 965(b).
(1) Adjustments to earnings and profits described in section 959(c)(2) and (c)(3) of deferred foreign income corporations.
(2) Adjustments to earnings and profits described in section 959(c)(3) of E&P deficit foreign corporations.
(i) Increase in earnings and profits by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit.
(A) In general.
(B) Reduction of a qualified deficit.
(ii) Determination of portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit taken into account.
(A) In general.
(B) Designation of portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit taken into account.
(e) Adjustments to basis by reason of section 965(a).
(1) General rule.
(2) Section 962 election.
(f) Adjustments to basis by reason of section 965(b).
(1) In general.
(2) Election to make adjustments to basis to account for the application of section 965(b).
(i) In general.
(ii) Basis adjustments.
(A) Increase in basis with respect to a deferred foreign income corporation.
(1) In general.
(2) Limited basis adjustment.
(B) Reduction in basis with respect to an E&P deficit foreign corporation.
(1) In general.
(2) Limited basis adjustment.
(C) Section 962 election.
(iii) Rules regarding the election.

152

ADMIN_03365

(A) Consistency requirement.
(B) Manner of making election.
(1) Timing.
(i) In general.
(ii) Transition rule.
(2) Election statement.
(g) Gain reduction rule.
(1) Reduction in gain recognized under section 961(b)(2) by reason of distributions attributable to section 965 previously taxed earnings and profits in the inclusion year.
(i) In general.
(ii) Definition of section 965 previously taxed earnings and profits.
(2) Reduction in basis by an amount equal to the gain reduction amount.
(h) Rules of application for specified basis adjustments.
(1) Timing of basis adjustments.
(2) Netting of basis adjustments.
(3) Gain recognition for reduction in excess of basis.
(4) Adjustments with respect to each share.
(i) Section 958(a) stock.
(ii) Applicable property.
(5) Stock or property for which adjustments are made.
(i) In general.
(ii) Special rule for an interest in a foreign pass-through entity.
(i) Definitions.
(1) Applicable property.
(2) Foreign pass-through entity.
(3) Property.
(j) Examples.
(1) Example 1.
(i) Facts.
(ii) Analysis.
(A) Adjustments to section 959(c) classification of earnings and profits for inclusion under section 951(a)(1)(A) without regard to section 965.
(B) Distributions between specified foreign corporations before January 1, 2018.
(C) Section 965(a) inclusion amount.
(1) CFC1 section 965(a) earnings amount.
(2) CFC2 section 965(a) earnings amount.
(3) Effect on earnings and profits described in section 959(c)(2) and (3).
(D) Distribution to United States shareholder.
(E) Section 902 and section 960 consequences.
(1) Distribution by and inclusions with respect to CFC2.
(2) Inclusions with respect to CFC1.
(2) Example 2.
(i) Facts.
(ii) Analysis.
(A) Adjustments to section 959(c) classification of earnings and profits for inclusion under section 951(a)(1)(A) without regard to section 965.

ADMIN_03366

(B) Distributions between specified foreign corporations before January 1, 2018.
(C) Section 965(a) inclusion amount.
(1) CFC1 section 965(a) earnings amount.
(2) CFC2 section 965(a) earnings amount.
(3) Effect on earnings and profits described in section 959(c)(2) and (3).
(D) Distribution to United States shareholder.
(3) Example 3.
(i) Facts.
(ii) Analysis.
(A) Adjustments to section 959(c) classification of earnings and profits for inclusion under section 951(a)(1)(A) without regard to section 965.
(B) Distributions between specified foreign corporations before January 1, 2018.
(C) Section 965(a) inclusion amount.
(1) CFC1 section 965(a) earnings amount.
(2) CFC2 section 965(a) earnings amount.
(3) Effect on earnings and profits described in section 959(c)(2) and (3).
(D) Distribution to United States shareholder.
(4) Example 4.
(i) Facts.
(ii) Analysis.
(A) Adjustments to section 959(c) classification of earnings and profits for inclusion under section 951(a)(1)(A) without regard to section 965.
(B) Distributions between specified foreign corporations before January 1, 2018.
(C) Section 965(a) inclusion amount.
(1) CFC1 section 965(a) earnings amount.
(2) CFC2 section 965(a) earnings amount.
(3) Effect on earnings and profits described in section 959(c)(2) and (3).
(D) Distribution to United States shareholder.
(1) Distribution that is a specified payment.
(2) Distribution to United States shareholder.
(E) Section 902 and section 960 consequences.
(5) Example 5.
(A) Section 965(a) inclusion amount.
(1) CFC section 965(a) earnings amount.
(2) Effect on earnings and profits described in section 959(c)(2) and (3).
(6) Example 6.
(i) Facts.
(ii) Analysis.
(A) Adjustments to section 959(c) classification of earnings and profits for section 1248 inclusion.
(B) Section 965(a) inclusion amount.
(C) Distributions to United States shareholders.
(7) Example 7.
(i) Facts.
(ii) Analysis.
(8) Example 8.

ADMIN_03367

(i) Facts.
(ii) Analysis.
(A) Application of the gain reduction rule.
(B) Adjustments to the basis of CFC1.
(9) Example 9.
(i) Facts.
(ii) Analysis.
(A) Application of the gain reduction rule.
(B) Adjustments to the basis of CFC1 and CFC2.

§1.965-3 Section 965(c) deductions.
(a) Scope.
(b) Rules for disregarding certain assets for determining aggregate foreign cash position.
(1) Disregard of certain obligations between related specified foreign corporations.
(2) Disregard of other assets upon demonstration of double-counting.
(3) Disregard of portion of cash position of noncorporate entities treated as specified foreign corporations.
(4) Examples.
(i) Example 1.
(A) Facts.
(B) Analysis.
(1) Loan from CFC1 to CFC2.
(2) Account receivable of CFC1 held by CFC2.
(3) Loan from CFC1 to CFC3.
(ii) Example 2.
(A) Facts.
(B) Analysis.
(iii) Example 3.
(A) Facts.
(B) Analysis.
(iv) Example 4.
(A) Facts.
(B) Analysis.
(v) Example 5.
(A) Facts.
(B) Analysis.
(1) Treatment of PS1.
(2) Treatment of PS2.
(c) Determination of aggregate foreign cash position for a section 958(a) U.S. shareholder inclusion year.
(1) Single section 958(a) U.S. shareholder inclusion year.
(2) Multiple section 958(a) U.S. shareholder inclusion years.
(i) Allocation to first section 958(a) U.S. shareholder inclusion year.
(ii) Allocation to succeeding section 958(a) U.S. shareholder inclusion years.
(3) Estimation of aggregate foreign cash position.

ADMIN_03368

(4) Examples.
(i) Example 1.
(A) Facts.
(B) Analysis.
(ii) Example 2.
(A) Facts.
(B) Analysis.
(d) Increase of income by section 965(c) deduction of an expatriated entity.
(1) In general.
(2) Definition of expatriated entity.
(3) Definition of surrogate foreign corporation.
(e) Section 962 election.
(1) In general.
(2) Example.
(i) Facts.
(ii) Analysis.
(f) Treatment of section 965(c) deduction under certain provisions of the Internal Revenue Code.
(1) Section 63(d).
(2) Sections 705, 1367, and 1368.
(i) Adjustments to basis
(ii) S corporation accumulated adjustments account.
(iii) Example.
(A) Facts.
(B) Analysis.
(3) Section 1411.
(4) Section 4940.
(g) Domestic pass-through entities.

§1.965-4 Disregard of certain transactions.
(a) Scope.
(b) Transactions undertaken with a principal purpose of changing the amount of a section 965 element.
(1) General rule.
(2) Presumptions and exceptions for the application of the general rule.
(ii) Definitions.
(A) Relatedness.
(B) Transfer.
(1) In general.
(2) Indirect transfer.
(iii) Cash reduction transactions.
(A) General rule.
(B) Per se rules for certain distributions.
(iv) E&P reduction transactions.
(A) General rule.
(1) Definition of pro rata share reduction transaction.

ADMIN_03369

(2) Definition of E&P deficit transaction.
(B) Per se rule for internal group transactions.
(C) Example.
(1) Facts.
(2) Analysis.
(c) Disregard of certain changes in method of accounting and entity classification elections.
(1) Changes in method of accounting.
(2) Entity classification elections.
(d) Definition of a section 965 element.
(e) Rules for applying paragraphs (b) and (c) of this section.
(1) Determination of whether there is a change in the amount of a section 965 element.
(2) Treatment of domestic pass-through owners as United States shareholders.
(3) Exception for certain incorporation transactions.
(i) In general.
(ii) Aggregate foreign cash position.
(4) Consequences of liquidation.
(i) In general.
(ii) Specified liquidation date.
(f) Disregard of certain transactions occurring between E&P measurement dates.
(1) Disregard of specified payments.
(2) Definition of specified payment.
(3) Non-application of disregard rule.
(4) Examples.
(i) Example 1.
(A) Facts.
(B) Analysis.
(ii) Example 2.
(A) Facts.
(B) Analysis.
(iii) Example 3.
(A) Facts.
(B) Analysis.
(iv) Example 4.
(A) Facts.
(B) Analysis.
(v) Example 5.
(A) Facts.
(B) Analysis.
(vi) Example 6.
(A) Facts.
(B) Analysis.

§1.965-5 Allowance of credit or deduction for foreign income taxes.
(a) Scope.
(b) Rules for foreign income taxes paid or accrued.

157

ADMIN_03370

(c) Rules for foreign income taxes treated as paid or accrued.
(1) Disallowed credit.
(i) In general.
(ii) Foreign income taxes deemed paid under section 960(a)(3) (as in effect on December 21, 2017).
(iii) [Reserved]
(2) Disallowed deduction.
(3) Coordination with section 78.
(i) In general.
(ii) Domestic corporation that is a domestic pass-through owner.
(d) Applicable percentage.
(1) In general.
(2) No section 965(a) inclusion amount.
(3) Applicable percentage for domestic pass-through owners.
(4) Applicable percentage with respect to certain distributions of previously taxed earnings and profits.

§1.965-6 Computation of foreign income taxes deemed paid and allocation and apportionment of deductions.
(a) Scope.
(b) Computation of foreign income taxes deemed paid.
(1) In general.
(2) Dividend or inclusion in excess of post-1986 undistributed earnings.
(3) Treatment of adjustment under section 965(b)(4)(B).
(4) Section 902 fraction.
(c) Allocation and apportionment of deductions.
(d) Hovering deficits.

§1.965-7 Elections, payment, and other special rules.
(a) Scope.
(b) Section 965(h) election.
(1) In general.
(i) Amount of installments.
(ii) Increased installments due to a deficiency or a timely filed or amended return.
(A) In general.
(B) Timing.
(C) Exception for negligence, intentional disregard, or fraud.
(iii) Due date of installments.
(A) In general.
(B) Extension for specified individuals.
(2) Manner of making election.
(i) Eligibility.
(ii) Timing.
(iii) Election statement.
(3) Acceleration of payment.
(i) Acceleration.

ADMIN_03371

(ii) Acceleration events.
(iii) Eligible section 965(h) transferee exception.
(A) In general.
(1) Requirement to have a covered acceleration event.
(2) Requirement to enter into a transfer agreement.
(B) Transfer agreement.
(1) Eligibility.
(2) Filing requirements.
(i) In general.
(ii) Transition rule.
(3) Signature requirement.
(4) Terms of agreement.
(5) Consolidated groups.
(6) Leverage ratio.
(C) Consent of Commissioner.
(1) In general.
(2) Material misrepresentations and omissions.
(D) Effect of assumption.
(1) In general.
(2) Eligible section 965(h) transferor liability.
(E) Qualifying consolidated group member transaction.
(1) Definition of qualifying consolidated group member transaction.
(2) Definition of qualified successor.
(3) Departure of multiple members of a consolidated group.
(c) Section 965(i) election.
(1) In general.
(2) Manner of making election.
(i) Eligibility.
(ii) Timing.
(iii) Election statement.
(3) Triggering events.
(i) In general.
(ii) Triggering events.
(iii) Partial transfers.
(iv) Eligible section 965(i) transferee exception.
(A) In general.
(1) Requirement to have a covered triggering event.
(2) Requirement to enter into a transfer agreement.
(B) Transfer agreement.
(1) Eligibility.
(2) Filing requirements.
(i) In general.
(ii) Transition rule.
(iii) Death of eligible section 965(i) transferor.
(3) Signature requirement.
(4) Terms of agreement.

159

(<u>5</u>) Special rule in the case of death of eligible section 965(i) transferor.
(<u>6</u>) Leverage ratio.
(C) Consent of Commissioner.
(<u>1</u>) In general.
(<u>2</u>) Material misrepresentations and omissions.
(D) Effect of assumption.
(<u>1</u>) In general.
(<u>2</u>) Eligible section 965(i) transferor liability.
(v) Coordination with section 965(h) election.
(A) In general.
(B) Timing for election.
(C) Due date for installment.
(D) Limitation.
(<u>1</u>) In general.
(<u>2</u>) Manner of obtaining consent.
(<u>i</u>) In general.
(<u>ii</u>) Transition rule.
(<u>3</u>) Signature requirement.
(<u>4</u>) Terms of agreement.
(<u>5</u>) Consent of Commissioner.
(<u>i</u>) In general.
(<u>ii</u>) Material misrepresentations and omissions.
(<u>6</u>) Leverage ratio.
(4) Joint and several liability.
(5) Extension of limitation on collection.
(6) Annual reporting requirement.
(i) In general.
(ii) Failure to report.
(d) Section 965(m) election and special rule for real estate investment trusts.
(1) In general.
(2) Inclusion schedule for section 965(m) election.
(3) Manner of making election.
(i) Eligibility.
(ii) Timing.
(iii) Election statement.
(4) Coordination with section 965(h).
(5) Acceleration of inclusion.
(6) Treatment of section 965(a) inclusions of a real estate investment trust.
(e) Section 965(n) election.
(1) In general.
(i) General rule.
(ii) Applicable amount for section 965(n) election.
(iii) Scope of section 965(n) election.
(iv) [Reserved]
(2) Manner of making election.
(i) Eligibility.

ADMIN_03373

(ii) Timing.
(iii) Election statement.
(f) Election to use alternative method for calculating post-1986 earnings and profits.
(1) Effect of election for specified foreign corporations that do not have a 52-53-week taxable year.
(2) Effect of election for specified foreign corporations that have a 52-53-week taxable year.
(3) Computation of post-1986 earnings and profits using alternative method.
(4) Definitions.
(i) 52-53-week taxable year.
(ii) Annualized earnings and profits amount.
(iii) Daily earnings amount.
(iv) Notional measurement date.
(5) Manner of making election.
(i) Eligibility.
(ii) Timing.
(iii) Election statement.
(6) Examples.
(i) Example 1.
(A) Facts.
(B) Analysis.
(ii) Example 2.
(A) Facts.
(B) Analysis.
(g) Definitions.
(1) Deferred net tax liability.
(2) REIT section 965 amounts.
(3) Section 965(h) election.
(4) Section 965(h) net tax liability.
(5) Section 965(i) election.
(6) Section 965(i) net tax liability.
(7) Section 965(m) election.
(8) Section 965(n) election.
(9) Specified individual.
(10) Total net tax liability under section 965.
(i) General rule.
(ii) Net income tax.
(iii) Foreign tax credits.

§1.965-8 Affiliated groups (including consolidated groups).
(a) Scope.
(b) Reduction of E&P net surplus shareholder's pro rata share of the section 965(a) earnings amount of a deferred foreign income corporation by the allocable share of the applicable share of the aggregate unused E&P deficit.
(1) In general.
(2) Consolidated group as part of an affiliated group.

ADMIN_03374

(c) Designation of portion of excess aggregate foreign E&P deficit taken into account.
(1) In general.
(2) Consolidated group as part of an affiliated group.
(d) [Reserved]
(1) [Reserved]
(2) Consolidated groups.
(e) Treatment of a consolidated group as a single section 958(a) U.S. shareholder or a single person.
(1) In general.
(2) Limitation.
(3) Determination of section 965(c) deduction amount.
(f) Definitions.
(1) Aggregate unused E&P deficit.
(i) In general.
(ii) Reduction with respect to E&P net deficit shareholders that are not wholly owned by the affiliated group.
(2) Allocable share.
(3) Applicable share.
(4) Consolidated group aggregate foreign cash position.
(5) E&P net deficit shareholder.
(6) E&P net surplus shareholder.
(7) Excess aggregate foreign E&P deficit.
(8) Group cash ratio.
(9) Group ownership percentage.
(g) Examples.
(1) Example 1.
(i) Facts.
(A) In general.
(B) Facts relating to section 965.
(ii) Analysis.
(A) Section 965(a) inclusion amounts before application of section 965(b)(5).
(B) Application of section 965(b)(5).
(1) Determination of E&P net surplus shareholders and E&P net deficit shareholders.
(2) Determining section 965(a) inclusion amounts under section 965(b)(5).
(C) Aggregate foreign cash position.
(D) Section 965(c) deduction amount.
(2) Example 2.
(i) Facts.
(ii) Analysis.
(A) Section 965(a) inclusion amount.
(1) Single section 958(a) U.S. shareholder treatment.
(2) Determination of inclusion amount.
(B) Consolidated group aggregate foreign cash position.
(C) Section 965(a) deduction amount.

§1.965-9 Applicability dates.

. 162

ADMIN_03375

(a) In general.
(b) Applicability dates for rules disregarding certain transactions.

§1.965-1 Overview, general rules, and definitions.

(a) Overview--(1) In general.  This section provides general rules and definitions under section 965.  Section 1.965-2 provides rules relating to adjustments to earnings and profits and basis to determine and account for the application of section 965 and a rule that limits the amount of gain recognized under section 961(b)(2) by reason of distributions attributable to section 965 previously taxed earnings and profits (as defined in §1.965-2(g)(1)(ii)) in the inclusion year.  Section 1.965-3 provides rules regarding the determination of section 965(c) deductions.  Section 1.965-4 sets forth rules that disregard certain transactions for purposes of section 965.  Sections 1.965-5 and 1.965-6 provide rules with respect to foreign tax credits. Section 1.965-7 provides rules regarding elections and payments.  Section 1.965-8 provides rules regarding affiliated groups, including consolidated groups.  Section 1.965-9 provides dates of applicability.  See also §§1.962-1 and 1.962-2 (providing rules regarding the application of section 962) and 1.986(c)-1 (providing rules regarding the application of section 986(c)).

(2) Scope.  Paragraph (b) of this section provides the general rules concerning section 965(a) inclusion amounts.  Paragraph (c) of this section provides the general rule concerning section 965(c) deduction amounts.  Paragraph (d) of this section provides a rule for specified foreign corporations that are not controlled foreign corporations.  Paragraph (e) of this section treats certain controlled domestic partnerships as foreign partnerships for purposes of section 965.  Paragraph (f) of this section provides definitions applicable for the section 965 regulations and §§1.962-1,

163

1.962-2, and 1.986(c)-1. Paragraph (g) of this section contains examples illustrating the general rules and definitions set forth in this section.

(b) Section 965(a) inclusion amounts--(1) Inclusion of the pro rata share of the section 965(a) earnings amount. For an inclusion year of a deferred foreign income corporation, the subpart F income of the deferred foreign income corporation (as otherwise determined for the inclusion year under section 952 and §1.952-1) is increased by the section 965(a) earnings amount of the deferred foreign income corporation. See section 965(a). Accordingly, a section 958(a) U.S. shareholder with respect to a deferred foreign income corporation generally includes in gross income under section 951(a)(1) for the section 958(a) U.S. shareholder inclusion year its pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017, and subject to reduction under section 965(b), paragraph (b)(2) of this section, and §1.965-8(b). The amount of the section 958(a) U.S. shareholder's inclusion with respect to a deferred foreign income corporation as a result of section 965(a) and this paragraph (b)(1), as reduced under section 965(b), paragraph (b)(2) of this section, and §1.965-8(b), as applicable, is referred to as the section 965(a) inclusion amount. Neither the section 965(a) earnings amount nor the section 965(a) inclusion amount is subject to the rules or limitations in section 952 or limited by the accumulated earnings and profits of the deferred foreign income corporation on the date of the inclusion.

(2) Reduction by the allocable share of the aggregate foreign E&P deficit. For purposes of determining a section 958(a) U.S. shareholder's section 965(a) inclusion

164

amount with respect to a deferred foreign income corporation, the U.S. dollar amount of the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017, is reduced by the deferred foreign income corporation's allocable share of the section 958(a) U.S. shareholder's aggregate foreign E&P deficit. See section 965(b). If the section 958(a) U.S. shareholder is a member of a consolidated group, under §1.965-8(e), all section 958(a) U.S. shareholders that are members of the consolidated group are treated as a single section 958(a) U.S. shareholder for purposes of this paragraph (b)(2).

(c) Section 965(c) deduction amounts. For a section 958(a) U.S. shareholder inclusion year, a section 958(a) U.S. shareholder is generally allowed a deduction in an amount equal to the section 965(c) deduction amount.

(d) Treatment of specified foreign corporation as a controlled foreign corporation. A specified foreign corporation described in section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section that is not otherwise a controlled foreign corporation is treated as a controlled foreign corporation solely for purposes of paragraph (b) of this section and sections 951, 961, and §1.1411-10. See 965(e)(2).

(e) Special rule for certain controlled domestic partnerships--(1) In general. For purposes of the section 965 regulations, a controlled domestic partnership is treated as a foreign partnership for purposes of determining the section 958(a) U.S. shareholder of a specified foreign corporation and the section 958(a) stock of the specified foreign corporation owned by the section 958(a) U.S. shareholder if the following conditions are satisfied--

165

ADMIN_03378

(i) Without regard to this paragraph (e), the controlled domestic partnership is a section 958(a) U.S. shareholder of the specified foreign corporation and thus owns section 958(a) stock of the specified foreign corporation (tested section 958(a) stock);

(ii) If the controlled domestic partnership (and all other controlled domestic partnerships in the chain of ownership of the specified foreign corporation) were treated as foreign--

(A) The specified foreign corporation would continue to be a specified foreign corporation; and

(B) At least one United States shareholder of the specified foreign corporation--

(1) Would be treated as a section 958(a) U.S. shareholder of the specified foreign corporation; and

(2) Would be treated as owning (within the meaning of section 958(a)) tested section 958(a) stock of the specified foreign corporation through another foreign corporation that is a direct or indirect partner in the controlled domestic partnership.

(2) Definition of a controlled domestic partnership. For purposes of paragraph (e)(1) of this section, the term controlled domestic partnership means a domestic partnership that is controlled by a United States shareholder described in paragraph (e)(1)(ii)(B) of this section and persons related to the United States shareholder.  For purposes of this paragraph (e)(2), control is determined based on all the facts and circumstances, except that a partnership will be deemed to be controlled by a United States shareholder and related persons if those persons, in the aggregate, own (directly or indirectly through one or more partnerships) more than 50 percent of the interests in the partnership capital or profits.  For purposes of this paragraph (e)(2), a related

166

ADMIN_03379

person is, with respect to a United States shareholder, a person that is related (within the meaning of section 267(b) or 707(b)(1)) to the United States shareholder.

(f) Definitions. This paragraph (f) provides definitions that apply for purposes of the section 965 regulations and §§1.962-1, 1.962-2, and 1.986(c)-1. Unless otherwise indicated, all amounts are expressed as positive numbers.

(1) 8 percent rate amount. The term 8 percent rate amount means, with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year, the excess, if any, of the section 958(a) U.S. shareholder's aggregate section 965(a) inclusion amount for the section 958(a) U.S. shareholder inclusion year over the amount of the section 958(a) U.S. shareholder's aggregate foreign cash position for the section 958(a) U.S. shareholder inclusion year as determined under §1.965-3(c).

(2) 8 percent rate equivalent percentage. The term 8 percent rate equivalent percentage means, with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year, the percentage that would result in the 8 percent rate amount being subject to an 8 percent rate of tax determined by only taking into account a deduction equal to such percentage of such amount and the highest rate of tax specified in section 11 for the section 958(a) U.S. shareholder inclusion year. In the case of a section 958(a) U.S. shareholder inclusion year of a section 958(a) U.S. shareholder to which section 15 applies, the highest rate of tax under section 11 before the effective date of the change in rates and the highest rate of tax under section 11 after the effective date of such change will each be taken into account under the preceding sentence in the same proportions as the portion of the section 958(a) U.S. shareholder inclusion year that is before and after such effective date, respectively.

167

ADMIN_03380

(3) 15.5 percent rate amount. The term 15.5 percent rate amount means, with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year, the amount of the section 958(a) U.S. shareholder's aggregate foreign cash position for the section 958(a) U.S. shareholder inclusion year as determined under §1.965-3(c) to the extent it does not exceed the section 958(a) U.S. shareholder's aggregate section 965(a) inclusion amount for the section 958(a) U.S. shareholder inclusion year.

(4) 15.5 percent rate equivalent percentage. The term 15.5 percent rate equivalent percentage, with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year, has the meaning provided for the term "8 percent rate equivalent percentage" applied by substituting "15.5 percent rate amount" for "8 percent rate amount" and "15.5 percent rate of tax" for "8 percent rate of tax."

(5) Accounts payable. The term accounts payable means payables arising from the purchase of property described in section 1221(a)(1) or section 1221(a)(8) or the receipt of services from vendors or suppliers, provided the payables have a term upon issuance of less than one year.

(6) Accounts receivable. The term accounts receivable means receivables described in section 1221(a)(4) that have a term upon issuance of less than one year.

(7) Accumulated post-1986 deferred foreign income—(i) In general. The term accumulated post-1986 deferred foreign income means, with respect to a specified foreign corporation, the post-1986 earnings and profits of the specified foreign corporation except to the extent such earnings and profits--

168

ADMIN_03381

(A) Are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1;

(B) If distributed, would, in the case of a controlled foreign corporation, be excluded from the gross income of a United States shareholder under section 959; or

(C) If distributed, would, in the case of a controlled foreign corporation that has shareholders that are not United States shareholders on an E&P measurement date, be excluded from the gross income of such shareholders under section 959 if such shareholders were United States shareholders, determined by applying the principles of Revenue Ruling 82-16, 1982-1 C.B. 106.

(ii) <u>Earnings and profits attributable to subpart F income in the same taxable year as an E&P measurement date</u>.  For purposes of determining the accumulated post-1986 deferred foreign income of a specified foreign corporation as of an E&P measurement date, earnings and profits of the specified foreign corporation that are or would be, applying the principles of Revenue Ruling 82-16, 1982-1 C.B. 106, described in section 959(c)(2) by reason of subpart F income (as defined in section 952 without regard to section 965(a)) are described in section 965(d)(2)(B) and paragraph (f)(7)(i)(B) or (f)(7)(i)(C) of this section only to the extent that such income has been accrued by the specified foreign corporation as of the E&P measurement date.  For rules regarding the interaction of sections 951, 956, 959, and 965 generally, see §1.965-2(b).

(8) <u>Aggregate foreign cash position</u>--(i) <u>In general</u>.  The term <u>aggregate foreign cash position</u> means, with respect to a section 958(a) U.S. shareholder that is not a member of a consolidated group, the greater of--

ADMIN_03382

(A) The aggregate of the section 958(a) U.S. shareholder's pro rata share of the cash position of each specified foreign corporation determined as of the final cash measurement date of the specified foreign corporation; or

(B) One half of the sum of--

(1) The aggregate described in paragraph (f)(8)(i)(A) of this section determined as of the second cash measurement date of each specified foreign corporation, plus

(2) The aggregate described in paragraph (f)(8)(i)(A) of this section determined as of the first cash measurement date of each specified foreign corporation.

(ii) Other rules. For rules for determining the aggregate foreign cash position for a section 958(a) U.S. shareholder inclusion year of the section 958(a) U.S. shareholder, see §1.965-3(c). For the rule for determining the aggregate foreign cash position of a section 958(a) U.S. shareholder that is a member of a consolidated group, see §1.965-8(e)(3). For rules disregarding certain assets for purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder, see §1.965-3(b).

(9) Aggregate foreign E&P deficit. The term aggregate foreign E&P deficit means, with respect to a section 958(a) U.S. shareholder, the lesser of--

(i) The aggregate of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of each E&P deficit foreign corporation, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017, or

(ii) The aggregate of the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of each deferred foreign income corporation, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017.

170

ADMIN_03383

(10) Aggregate section 965(a) inclusion amount. The term aggregate section 965(a) inclusion amount means, with respect to a section 958(a) U.S. shareholder, the sum of all of the section 958(a) U.S. shareholder's section 965(a) inclusion amounts.

(11) Allocable share. The term allocable share means, with respect to a deferred foreign income corporation and an aggregate foreign E&P deficit of a section 958(a) U.S. shareholder, the product of the aggregate foreign E&P deficit and the ratio determined by dividing--

(i) The section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017, by

(ii) The amount described in paragraph (f)(9)(ii) of this section with respect to the section 958(a) U.S. shareholder.

(12) Bona fide hedging transaction. The term bona fide hedging transaction means a hedging transaction that meets (or that would meet if the specified foreign corporation were a controlled foreign corporation) the requirements of a bona fide hedging transaction described in §1.954-2(a)(4)(ii), except that in the case of a specified foreign corporation that is not a controlled foreign corporation, the identification requirements of §1.954-2(a)(4)(ii)(B) do not apply.

(13) Cash-equivalent asset--(i) In general. The term cash-equivalent asset means any of the following assets--

(A) Personal property which is of a type that is actively traded and for which there is an established financial market, other than a specified commodity;

171

ADMIN_03384

(B) Commercial paper, certificates of deposit, the securities of the Federal government and of any State or foreign government;

(C) Any foreign currency;

(D) A short-term obligation; or

(E) Derivative financial instruments, other than bona fide hedging transactions.

(ii) Specified commodity. The term specified commodity means a commodity held by a specified foreign corporation that, in the hands of the specified foreign corporation, is property described in section 1221(a)(1) or 1221(a)(8). This paragraph (f)(13)(ii) does not apply with respect to a specified foreign corporation that is a dealer or trader in commodities.

(14) Cash-equivalent asset hedging transaction--(i) In general. The term cash-equivalent asset hedging transaction means a bona fide hedging transaction identified on a specified foreign corporation's books and records as hedging a cash-equivalent asset.

(ii) Aggregate hedging transactions. For purposes of paragraph (f)(14)(i) of this section, the amount of a bona fide hedging transaction described in §1.1221-2(c)(3) (an aggregate hedging transaction) that is treated as a cash-equivalent asset hedging transaction is the amount that bears the same proportion to the fair market value of the aggregate hedging transaction as the value of the cash-equivalent assets being hedged by the aggregate hedging transaction bears to the value of all assets being hedged by the aggregate hedging transaction.

(15) Cash measurement dates. The term cash measurement dates means, with respect to a specified foreign corporation, the first cash measurement date, the second

172

ADMIN_03385

cash measurement date, and the final cash measurement date, collectively, and each a cash measurement date.

(16) Cash position--(i) General rule.  The term cash position means, with respect to a specified foreign corporation, the sum of--

(A) Cash held by the corporation;

(B) The net accounts receivable of the corporation; and

(C) The fair market value of the cash-equivalent assets held by the corporation.

(ii) Fair market value of cash-equivalent assets.  For purposes of determining the fair market value of a cash-equivalent asset of a specified foreign corporation, the value of the cash-equivalent asset must be adjusted by the fair market value of any cash-equivalent asset hedging transaction with respect to the cash-equivalent asset, but only to the extent that the cash-equivalent asset hedging transaction does not reduce the fair market value of the cash-equivalent asset below zero.

(iii) Measurement of derivative financial instruments.  The amount of derivative financial instruments taken into account in determining the cash position of a specified foreign corporation is the aggregate fair market value of its derivative financial instruments that constitute cash-equivalent assets, provided such amount is not less than zero.

(iv) Translation of cash position amounts.  The cash position of a specified foreign corporation with respect to a cash measurement date must be expressed in U.S. dollars.  For this purpose, the amounts described in paragraph (f)(16)(i) of this section must be translated (if necessary) into U.S. dollars using the spot rate on the relevant cash measurement date.

173

ADMIN_03386

(17) <u>Deferred foreign income corporation</u>—(i) <u>In general</u>. The term <u>deferred foreign income corporation</u> means a specified foreign corporation that has accumulated post-1986 deferred foreign income greater than zero as of an E&P measurement date.

(ii) <u>Priority rule</u>. If a specified foreign corporation satisfies the definition of a deferred foreign income corporation under section 965(d)(1) and paragraph (f)(17)(i) of this section, it is classified solely as a deferred foreign income corporation and not also as an E&P deficit foreign corporation even if it otherwise satisfies the requirements of section 965(b)(3)(B) and paragraph (f)(22) of this section.

(18) <u>Derivative financial instrument</u>. The term <u>derivative financial instrument</u> includes a financial instrument that is one of the following--

(i) A notional principal contract,

(ii) An option contract,

(iii) A forward contract, other than a forward contract with respect to a specified commodity (as defined in paragraph (f)(13)(ii) of this section), but solely to the extent that the specified foreign corporation identified, or could have identified, the forward contract as a hedging transaction (within the meaning of §1.1221-2(b)) with respect to one or more specified commodities held by the specified foreign corporation,

(iv) A futures contract,

(v) A short position in securities or commodities, other than a forward contract with respect to a specified commodity, but solely to the extent that the specified foreign corporation identified, or could have identified, the forward contract as a hedging transaction (within the meaning of §1.1221-2(b)) with respect to one or more specified commodities held by the specified foreign corporation, or

174

ADMIN_03387

(vi) Any financial instrument similar to one described in paragraphs (f)(18)(i) through (v) of this section.

(19) *Domestic pass-through entity*. The term <u>domestic pass-through entity</u> means a pass-through entity that is a United States person (as defined in section 7701(a)(30)).

(20) *Domestic pass-through owner*. The term <u>domestic pass-through owner</u> means, with respect to a domestic pass-through entity, a United States person (as defined in section 7701(a)(30)) that is a partner, shareholder, beneficiary, grantor, or owner, as the case may be, in the domestic pass-through entity. Notwithstanding the preceding sentence, the term does not include a partner, shareholder, beneficiary, grantor, or owner of the domestic pass-through entity that is itself a domestic pass-through entity but does include any other United States person that is an indirect partner, shareholder, beneficiary, grantor, or owner of the domestic pass-through entity through one or more other pass-through entities.

(21) *Domestic pass-through owner share*. The term <u>domestic pass-through owner share</u> means, with respect to a domestic pass-through owner and a domestic pass-through entity, the domestic pass-through owner's share of the aggregate section 965(a) inclusion amount and the section 965(c) deduction amount, as applicable, of the domestic pass-through entity, including the domestic pass-through owner's share of the aggregate section 965(a) inclusion amount and section 965(c) deduction amount, as applicable, of a domestic pass-through entity owned indirectly by the domestic pass-through owner through one or more other pass-through entities.

175

ADMIN_03388

(22) <u>E&P deficit foreign corporation</u>--(i) <u>In general</u>. The term <u>E&P deficit foreign corporation</u> means, with respect to a section 958(a) U.S. shareholder, a specified foreign corporation, other than a deferred foreign income corporation, if, as of November 2, 2017--

(A) The specified foreign corporation had a deficit in post-1986 earnings and profits,

(B) The corporation was a specified foreign corporation, and

(C) The shareholder was a United States shareholder of the corporation.

(ii) <u>Determination of deficit in post-1986 earnings and profits</u>. In the case of a specified foreign corporation that has post-1986 earnings and profits that include earnings and profits described in section 959(c)(1) or 959(c)(2) (or both) and a deficit in earnings and profits (including hovering deficits, as defined in §1.367(b)-7(d)(2)(i)), the specified foreign corporation has a deficit in post-1986 earnings and profits described in paragraph (f)(22)(i)(A) of this section only to the extent the deficit in post-1986 earnings and profits exceeds the aggregate of its post-1986 earnings and profits described in section 959(c)(1) and 959(c)(2).

(23) <u>E&P measurement dates</u>. The term <u>E&P measurement dates</u> means November 2, 2017, and December 31, 2017, collectively, and each an <u>E&P measurement date</u>.

(24) <u>Final cash measurement date</u>. The term <u>final cash measurement date</u> means, with respect to a specified foreign corporation, the close of the last taxable year of the specified foreign corporation that begins before January 1, 2018, and ends on or after November 2, 2017, if any.

176

ADMIN_03389

(25) First cash measurement date. The term first cash measurement date means, with respect to a specified foreign corporation, the close of the last taxable year of the specified foreign corporation that ends after November 1, 2015, and before November 2, 2016, if any.

(26) Inclusion year. The term inclusion year means, with respect to a deferred foreign income corporation, the last taxable year of the deferred foreign income corporation that begins before January 1, 2018.

(27) Net accounts receivable. The term net accounts receivable means, with respect to a specified foreign corporation, the excess (if any) of--

(i) The corporation's accounts receivable, over

(ii) The corporation's accounts payable (determined consistent with the rules of section 461).

(28) Pass-through entity. The term pass-through entity means a partnership, S corporation, or any other person (whether domestic or foreign) other than a corporation to the extent that the income or deductions of the person are included in the income of one or more direct or indirect owners or beneficiaries of the person. For example, if a domestic trust is subject to federal income tax on a portion of its section 965(a) inclusion amount and its domestic pass-through owners are subject to tax on the remaining portion, the domestic trust is treated as a domestic pass-through entity with respect to such remaining portion.

(29) Post-1986 earnings and profits--(i) General rule. The term post-1986 earnings and profits means, with respect to a specified foreign corporation and an E&P measurement date, the earnings and profits (including earnings and profits described in

177

ADMIN_03390

section 959(c)(1) and 959(c)(2)) of the specified foreign corporation (computed in accordance with sections 964(a) and 986, subject to §1.965-4(f), and by taking into account only periods when the foreign corporation was a specified foreign corporation) accumulated in taxable years beginning after December 31, 1986, and determined--

(A) As of the E&P measurement date, except as provided in paragraph (f)(29)(ii) of this section, and

(B) Without diminution by reason of dividends distributed during the last taxable year of the foreign corporation that begins before January 1, 2018, other than dividends distributed to another specified foreign corporation to the extent the dividends increase the post-1986 earnings and profits of the distributee specified foreign corporation.

(ii) Foreign income taxes.  For purposes of determining a specified foreign corporation's post-1986 earnings and profits as of the E&P measurement date on November 2, 2017, in the case in which foreign income taxes (as defined in section 901(m)(5)) of the specified foreign corporation accrue after November 2, 2017, but on or before December 31, 2017, and during the specified foreign corporation's U.S. taxable year that includes November 2, 2017, the specified foreign corporation's post-1986 earnings and profits as of November 2, 2017, are reduced by the applicable portion of such foreign income taxes.  For purposes of the preceding sentence, the applicable portion of the foreign income taxes is the amount of the taxes that are attributable to the portion of the taxable income (as determined under foreign law) that accrues on or before November 2, 2017.

(iii) Deficits in earnings and profits.  Any deficit related to post-1986 earnings and profits, including a hovering deficit (as defined in §1.367(b)-7(d)(2)(i)), of a specified

178

ADMIN_03391

foreign corporation is taken into account for purposes of determining the post-1986 earnings and profits (including a deficit) of the specified foreign corporation.

(30) Pro rata share. The term pro rata share means, with respect to a section 958(a) U.S. shareholder of a specified foreign corporation, a deferred foreign income corporation, or an E&P deficit foreign corporation, as applicable--

(i) With respect to the section 965(a) earnings amount of a deferred foreign income corporation, the portion of the section 965(a) earnings amount that would be treated as distributed to the section 958(a) U.S. shareholder under §1.951-1(e), determined as of the last day of the inclusion year of the deferred foreign income corporation on which it is a specified foreign corporation;

(ii) With respect to the specified E&P deficit of an E&P deficit foreign corporation, the portion of the specified E&P deficit allocated to the section 958(a) U.S. shareholder, determined by allocating the specified E&P deficit among the shareholders of the corporation's common stock in proportion to the liquidation value of the common stock held by the shareholders, determined as of the last day of the last taxable year of the E&P deficit foreign corporation that begins before January 1, 2018, provided that--

(A) If the corporation's common stock has a liquidation value of zero and there is at least one other class of equity with a liquidation preference relative to the common stock, then the specified E&P deficit is allocated as if it were distributed in a hypothetical distribution described in §1.951-1(e)(1)(i) with respect to the most junior class of equity with a positive liquidation value to the extent of such liquidation value, and then to the next most junior class of equity to the extent of its liquidation value, and so on, applying §1.951-1(e) by substituting "specified E&P deficit" for "subpart F income" each place it

179

ADMIN_03392

appears and treating the amount of current earnings and profits of the corporation for the year as being equal to the specified E&P deficit of the corporation for the year; and

(B) If the corporation's common stock has a liquidation value of zero and there is no other class of equity with a liquidation preference relative to the common stock, the specified E&P deficit is allocated among the common stock using any reasonable method consistently applied; and

(iii) With respect to the cash position of a specified foreign corporation on a cash measurement date, the portion of the cash position that would be treated as distributed to the section 958(a) U.S. shareholder under §1.951-1(e) if the cash position were subpart F income, determined as of the close of the cash measurement date and without regard to whether the section 958(a) U.S. shareholder is a section 958(a) U.S. shareholder of the specified foreign corporation as of any other cash measurement date of the specified foreign corporation, including the final cash measurement date of the specified foreign corporation.

(31) Second cash measurement date. The term second cash measurement date means, with respect to a specified foreign corporation, the close of the last taxable year of the specified foreign corporation that ends after November 1, 2016, and before November 2, 2017, if any.

(32) Section 958(a) stock. The term section 958(a) stock means, with respect to a specified foreign corporation, a deferred foreign income corporation, or an E&P deficit foreign corporation, as applicable, stock of the corporation owned (directly or indirectly) by a United States shareholder within the meaning of section 958(a).

ADMIN_03393

(33) *Section 958(a) U.S. shareholder*. The term <u>section 958(a) U.S. shareholder</u> means, with respect to a specified foreign corporation, a deferred foreign income corporation, or an E&P deficit foreign corporation, as applicable, a United States shareholder of such corporation that owns section 958(a) stock of the corporation.

(34) *Section 958(a) U.S. shareholder inclusion year*. The term <u>section 958(a) U.S. shareholder inclusion year</u> means the taxable year of a section 958(a) U.S. shareholder in which or with which the last day of the inclusion year of a deferred foreign income corporation on which it is a specified foreign corporation occurs.

(35) *Section 965 regulations*. The term <u>section 965 regulations</u> means the regulations under §§1.965-1 through 1.965-9, collectively.

(36) *Section 965(a) earnings amount*. The term <u>section 965(a) earnings amount</u> means, with respect to a deferred foreign income corporation, the greater of the accumulated post-1986 deferred foreign income of the deferred foreign income corporation as of the E&P measurement date on November 2, 2017, or the accumulated post-1986 deferred foreign income of the deferred foreign income corporation as of the E&P measurement date on December 31, 2017, determined in each case in the functional currency of the specified foreign corporation. If the functional currency of a specified foreign corporation changes between the two E&P measurement dates, the comparison must be made in the functional currency of the specified foreign corporation as of December 31, 2017, by translating the specified foreign corporation's accumulated post-1986 deferred foreign income as of November 2, 2017, into the new functional currency using the spot rate on November 2, 2017.

181

ADMIN_03394

(37) Section 965(a) inclusion.  The term section 965(a) inclusion means, with respect to a person and a deferred foreign income corporation, an amount included in income by the person by reason of section 965 with respect to the deferred foreign income corporation, whether because the person is a section 958(a) U.S. shareholder of the deferred foreign income corporation with a section 965(a) inclusion amount with respect to the deferred foreign income corporation or because the person is a domestic pass-through owner with respect to a domestic pass-through entity that is a section 958(a) U.S. shareholder of the deferred foreign income corporation and the person includes in income its domestic pass-through owner share of the section 965(a) inclusion amount of the domestic pass-through entity with respect to the deferred foreign income corporation.

(38) Section 965(a) inclusion amount.  The term section 965(a) inclusion amount has the meaning provided in paragraph (b)(1) of this section.

(39) Section 965(a) previously taxed earnings and profits.  The term section 965(a) previously taxed earnings and profits has the meaning provided in §1.965-2(c).

(40) Section 965(b) previously taxed earnings and profits.  The term section 965(b) previously taxed earnings and profits has the meaning provided in §1.965-2(d).

(41) Section 965(c) deduction.  The term section 965(c) deduction means, with respect to a person, an amount allowed as a deduction to the person by reason of section 965(c), whether because the person is a section 958(a) U.S. shareholder with a section 965(c) deduction amount or because the person is a domestic pass-through owner with respect to a domestic pass-through entity that is a section 958(a) U.S.

ADMIN_03395

shareholder and the person takes into account its domestic pass-through owner share of the section 965(c) deduction amount of the domestic pass-through entity.

(42) Section 965(c) deduction amount. The term section 965(c) deduction amount means an amount equal to the sum of--

(i) A section 958(a) U.S. shareholder's 8 percent rate equivalent percentage of the section 958(a) U.S. shareholder's 8 percent rate amount for the section 958(a) U.S. shareholder inclusion year, plus

(ii) The section 958(a) U.S. shareholder's 15.5 percent rate equivalent percentage of the section 958(a) U.S. shareholder's 15.5 percent rate amount for the section 958(a) U.S. shareholder inclusion year.

(43) Short-term obligation. The term short-term obligation means any obligation with a term upon issuance that is less than one year and any loan that must be repaid at the demand of the lender (or that must be repaid within one year of such demand), but does not include any accounts receivable.

(44) Specified E&P deficit. The term specified E&P deficit means, with respect to an E&P deficit foreign corporation, the amount of the deficit described in paragraph (f)(22)(i)(A) of this section.

(45) Specified foreign corporation--(i) General rule. Except as provided in paragraph (f)(45)(iii) of this section, the term specified foreign corporation means--

(A) A controlled foreign corporation, or

(B) A foreign corporation of which one or more domestic corporations is a United States shareholder.

183

ADMIN_03396

(ii) Special attribution rule--(A) In general.  Solely for purposes of determining whether a foreign corporation is a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section, stock owned, directly or indirectly, by or for--

(1) A partner (tested partner) will not be considered as being owned by a partnership under sections 958(b) and 318(a)(3)(A) and §1.958-2(d)(1)(i) if the tested partner owns less than ten percent of the interests in the partnership's capital and profits; and

(2) A beneficiary (tested beneficiary) will not be considered as being owned by a trust under sections 958(b) and 318(a)(3)(B) and §1.958-2(d)(1)(ii) if the value of the interest of the tested beneficiary, computed actuarially, whether vested or contingent, current or remainder, is less than ten percent of the value of the trust property, assuming the maximum exercise of discretion in favor of the beneficiary.

(B) Attribution for purposes of the ten percent standard.  For purposes of paragraph (f)(45)(ii)(A) of this section, an interest in a partnership or trust owned by a partner or beneficiary other than the tested partner or tested beneficiary will be considered as being owned by the tested partner or tested beneficiary under the principles of sections 958(b) and 318, as modified by this paragraph (f)(45)(ii), as if interests in a partnership or trust were stock.

(iii) Passive foreign investment companies.  A foreign corporation that is a passive foreign investment company (as defined in section 1297) with respect to a United States shareholder and that is not a controlled foreign corporation is not a specified foreign corporation of the United States shareholder.

184

ADMIN_03397

(46) <u>Spot rate</u>.  The term <u>spot rate</u> has the meaning provided in §1.988-1(d).

(47) <u>United States shareholder</u>.  The term <u>United States shareholder</u> has the meaning provided in section 951(b).

(g) <u>Examples</u>.  The following examples illustrate the definitions and general rules set forth in this section.

(1) <u>Example 1</u>.  <u>Definition of specified foreign corporation</u>. (i) <u>Facts</u>.  A, an individual, owns 1% of the interests in a partnership, PS, and 10% by vote and value of the stock of a foreign corporation, FC.  PS owns 100% of the stock of a domestic corporation, DC.  A United States citizen, USI, owns an additional 10% by vote and value of the stock of FC.  The remaining 80% by vote and value of the stock of FC is owned by non-United States persons that are unrelated to A, USI, DC, and PS.

(ii) <u>Analysis</u>.  (A) Absent the application of sections 958(b), 318(a)(3)(A), and 318(a)(3)(C), and §1.958-2(d)(1)(i) and (iii), FC would not be a specified foreign corporation because FC is not a controlled foreign corporation and there would be no domestic corporation that is a United States shareholder of FC.  However, under sections 958(b) and 318(a)(3)(A) and §1.958-2(d)(1)(i), absent the special attribution rule in paragraph (f)(45)(ii) of this section, PS would be treated as owning 10% of the stock of FC.  As a result, under sections 958(b), 318(a)(5)(A), and 318(a)(3)(C), and §1.958-2(f)(1)(i) and (d)(1)(iii), DC would be treated as owning the stock of FC treated as owned by PS, and thus DC would be a United States shareholder with respect to FC, causing FC to be a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section.  The results would be the same whether A or PS or both are domestic or foreign persons.

(B) Under the special attribution rule in paragraph (f)(45)(ii) of this section, solely for purposes of determining whether a foreign corporation is a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section, the stock of FC owned by A is not considered as being owned by PS under sections 958(b) and 318(a)(3)(A) and §1.958-2(d)(1)(i) because A owns less than 10% of the interests in PS's capital and profits.  Accordingly, FC is not a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section.

(2) <u>Example 2</u>.  <u>Definition of specified foreign corporation</u>. (i) <u>Facts</u>.  The facts are the same as in paragraph (g)(1)(i) of this section (the facts in <u>Example 1</u>), except that A is a foreign corporation wholly owned by B, a foreign corporation, and B directly owns 9% of the interests in PS.

(ii) <u>Analysis</u>.  Applying the principles of sections 958(b) and 318, as modified by paragraph (f)(45)(ii) of this section, as if the interest in PS were stock, A is treated as owning the interests in PS owned by B (in addition to the 1% interest in PS that A owns

185

ADMIN_03398

directly), and thus A is not treated as owning less than 10% of the interests in PS's capital and profits. Accordingly, the special attribution rule in paragraph (f)(45)(ii) of this section does not apply, and PS is treated as owning A's stock of FC for purposes of determining whether FC is a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section. Accordingly, under the analysis described in paragraph (ii)(A) of <u>Example 1</u> of paragraph (g)(1) of this section, FC is a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section.

(3) <u>Example 3</u>. <u>Determination of accumulated post-1986 deferred foreign income</u>. (i) <u>Facts</u>. USP, a domestic corporation, and FP, a foreign corporation unrelated to USP, have owned 70% and 30% respectively, by vote and value, of the only class of stock of FS, a foreign corporation, from January 1, 2016, until December 31, 2017. USP and FS both have a calendar year taxable year. FS had no income until its taxable year ending December 31, 2016, in which it had 100u of income, all of which constituted subpart F income, and USP included 70u in income with respect to FS under section 951(a)(1) for such year. FS earned no income in 2017. Therefore, FS's post-1986 earnings and profits are 100u as of both E&P measurement dates.

(ii) <u>Analysis</u>. Because USP included 70u in income with respect to FS under section 951(a)(1), 70u of such post-1986 earnings and profits would, if distributed, be excluded from the gross income of USP under section 959. Thus, FS's accumulated post-1986 deferred foreign income would be reduced by 70u pursuant to section 965(d)(2)(B) and paragraph (f)(7)(i)(B) of this section. Furthermore, under paragraph (f)(7)(i)(C) of this section, the accumulated post-1986 deferred foreign income of FS is reduced by amounts that would be excluded from the gross income of FP if FP were a United States shareholder, consistent with the principles of Revenue Ruling 82-16. Accordingly, FS's accumulated post-1986 deferred foreign income is reduced by the remaining 30u of the 100u of post-1986 earnings and profits to which USP's 70u of section 951(a)(1) income inclusions were attributable. As a result, FS's accumulated post-1986 deferred foreign income is 0u (100u minus 70u minus 30u).

(4) <u>Example 4</u>. <u>Determination of status as a deferred foreign income corporation or an E&P deficit foreign corporation; specified foreign corporation is solely a deferred foreign income corporation</u>. (i) <u>Facts</u>. USP, a domestic corporation, owns all of the stock of FS, a foreign corporation. As of November 2, 2017, FS has a deficit in post-1986 earnings and profits of 150u. As of December 31, 2017, FS has 200u of post-1986 earnings and profits. FS does not have earnings and profits that are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1, or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder.

(ii) <u>Analysis</u>. FS's accumulated post-1986 deferred foreign income is equal to its post-1986 earnings and profits because no adjustment to post-1986 earnings and profits is made under section 965(d)(2) or §1.965-1(f)(7). Under paragraph (f)(17)(i) of

186

this section, FS is a deferred foreign income corporation because FS has accumulated post-1986 deferred foreign income greater than zero as of the E&P measurement date on December 31, 2017. In addition, under paragraph (f)(17)(ii) of this section, because FS is a deferred foreign income corporation, FS is not also an E&P deficit foreign corporation, notwithstanding that FS has a deficit in post-1986 earnings and profits as of the E&P measurement date on November 2, 2017.

(5) Example 5. Determination of status as a deferred foreign income corporation or an E&P deficit foreign corporation; specified foreign corporation is neither a deferred foreign income corporation nor an E&P deficit foreign corporation. (i) Facts. USP, a domestic corporation, owns all of the stock of FS, a foreign corporation. As of both November 2, 2017, and December 31, 2017, FS has 100u of earnings and profits described in section 959(c)(2) and a deficit of 90u in earnings and profits described in section 959(c)(3), all of which were accumulated in taxable years beginning after December 31, 1986, while FS was a specified foreign corporation. Accordingly, as of both November 2, 2017, and December 31, 2017, FS has 10u of post-1986 earnings and profits.

(ii) Analysis. (A) Determination of status as a deferred foreign income corporation. Under paragraph (f)(17) of this section, for purposes of determining whether FS is a deferred foreign income corporation, a determination must be made whether FS has accumulated post-1986 deferred foreign income greater than zero as of either the E&P measurement date on November 2, 2017, or the E&P measurement date on December 31, 2017. Under section 965(d)(2) and paragraph (f)(7) of this section, FS's accumulated post-1986 deferred foreign income is its post-1986 earnings and profits, except to the extent such earnings and profits are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1, or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder. Disregarding FS's 100u of post-1986 earnings and profits described in paragraph (f)(7)(i)(B) of this section, FS has a 90u deficit in accumulated post-1986 deferred foreign income as of both E&P measurement dates. Accordingly, FS does not have accumulated post-1986 deferred foreign income greater than zero as of either E&P measurement date, and, therefore, FS is not a deferred foreign income corporation.

(B) Determination of status as an E&P deficit foreign corporation. Under paragraph (f)(22)(i) of this section, for purposes of determining whether FS is an E&P deficit foreign corporation, a determination must be made whether FS has a deficit in post-1986 earnings and profits as of the E&P measurement date on November 2, 2017. Under paragraph (f)(22)(ii) of this section, because the deficit in the earnings and profits of FS described in section 959(c)(3) of 90u does not exceed the earnings and profits of FS described in section 959(c)(2) of 100u, FS does not have a deficit in post-1986 earnings and profits as of the E&P measurement date on November 2, 2017, and,

ADMIN_03400

therefore, FS is not an E&P deficit foreign corporation. Accordingly, FS is neither a deferred foreign income corporation nor an E&P deficit foreign corporation.

(6) Example 6.  Application of currency translation rules.  (i) Facts.  As of November 2, 2017, and December 31, 2017, USP, a domestic corporation, owns all of the stock of CFC1, an E&P deficit foreign corporation with the "u" as its functional currency; CFC2, an E&P deficit foreign corporation with the "v" as its functional currency; CFC3, a deferred foreign income corporation with the "y" as its functional currency; and CFC4, a deferred foreign income corporation with the "z" as its functional currency.  USP, CFC1, CFC2, CFC3, and CFC4 each have a calendar year taxable year.  As of December 31, 2017, 1u=$1, .75v=$1, .50y=$1, and .25z=$1.  CFC1 has a specified E&P deficit of 100u, CFC2 has a specified E&P deficit of 120v, CFC3 has a section 965(a) earnings amount of 50y, and CFC4 has a section 965(a) earnings amount of 75z.

(ii) Analysis.  (A) Under paragraph (f)(38) of this section, for purposes of determining USP's section 965(a) inclusion amounts with respect to CFC3 and CFC4, the section 965(a) earnings amount of each of CFC3 and CFC4 is translated into U.S. dollars at the spot rate on December 31, 2017, which equals $100 (50y at .50y=$1) and $300 (75z at .25z=$1), respectively.  Furthermore, USP's pro rata share of the section 965(a) earnings amounts, as translated, is $100 and $300, respectively, or 100% of each section 965(a) earnings amount.

(B) Under paragraph (f)(9) of this section, for purposes of determining USP's aggregate foreign E&P deficit, the specified E&P deficit of each of CFC1 and CFC2 is translated into U.S. dollars at the spot rate on December 31, 2017, which equals $100 (100u at 1u=$1) and $160 (120v at .75v=$1), respectively.  Furthermore USP's pro rata share of each specified E&P deficit, as translated, is $100 and $160, respectively, or 100% of each specified E&P deficit.  Therefore, USP's aggregate foreign E&P deficit is $260.

(C) Under section 965(b)(1) and paragraph (b)(2) of this section, for purposes of determining USP's section 965(a) inclusion amount with respect to each of CFC3 and CFC4, the U.S. dollar amount of USP's pro rata share of the section 965(a) earnings amount of each of CFC3 and CFC4 is reduced by each of CFC3 and CFC4's allocable share of USP's aggregate foreign E&P deficit.  Under section 965(b)(2) and paragraph (f)(11) of this section, CFC3's allocable share of USP's aggregate foreign E&P deficit of $260 is $65 ($260 x ($100/$400)) and CFC4's allocable share of USP's aggregate foreign E&P deficit is $195 ($260 x ($300/400)).  After reduction under section 965(b)(1) and paragraph (b)(2) of this section, the section 965(a) inclusion amount of USP with respect to CFC3 is $35 ($100-$65) and the section 965(a) inclusion amount of USP with respect to CFC4 is $105 ($300-$195).  Under §1.965-2(c), the section 965(a) previously taxed earnings and profits of each of CFC3 and CFC4, translated into the respective functional currencies of CFC3 and CFC4 at the spot rate on December 31, 2017, are 17.5y ($35 at .50y=$1) and 26.25z ($105 at .25z=$1), respectively.  Under §1.965-6(b)(1), for purposes of applying section 960(a)(1), the amounts treated as a dividend paid by each of CFC3 and CFC4, translated into the respective functional currencies of

188

CFC3 and CFC4 at the spot rate on December 31, 2017, are 17.5y ($35 at .50y=$1) and 26.25z ($105 at .25z=$1).

(D) For purposes of determining the section 965(b) previously taxed earnings and profits of each of CFC3 and CFC4 under section 965(b)(4)(A) and §1.965-2(d)(1) as a result of the reduction to USP's section 965(a) inclusion amounts with respect to CFC3 and CFC4, the amount of the aggregate foreign E&P deficit of USP allocated to each of CFC3 and CFC4 under section 965(b)(2) and paragraph (f)(11) of this section, translated into the respective functional currencies of CFC3 and CFC4 at the spot rate on December 31, 2017, is 32.5y ($65 at .50y=$1) and 48.75z ($195 at .25z=$1), respectively.

(7) Example 7. Determination of cash measurement dates and pro rata shares of cash positions. (i) Facts. Except as otherwise provided, for all relevant periods, USP, a domestic corporation, has owned directly at least 10% of the stock of CFC1, CFC2, CFC3, and CFC4, each a foreign corporation. CFC1 and CFC2 have calendar year taxable years. CFC3 and CFC4 have taxable years that end on November 30. No entity has a short taxable year, except as a result of the transactions described below.

(A) USP transferred all of its stock of CFC2 to an unrelated person on June 30, 2016, at which point USP ceased to be a United States shareholder with respect to CFC2.

(B) CFC4 dissolved on December 30, 2010, and, as a result, its final taxable year ended on December 30, 2010.

(ii) Analysis. Each of CFC1, CFC2, CFC3, and CFC4 is a specified foreign corporation of USP, subject to the sale of CFC2 on June 30, 2016, and the dissolution of CFC4 on December 30, 2010. Under the definition of aggregate foreign cash position in paragraph (f)(8)(i) of this section, the definition of pro rata share of a cash position in paragraph (f)(30)(iii) of this section, and the definitions of the final cash measurement date, second cash measurement date, and first cash measurement date in paragraphs (f)(24), (25), and (31) of this section, the cash measurement dates of the specified foreign corporations to be taken into account by USP in determining its aggregate foreign cash position are summarized in the following table:

| | Cash Measurement Dates | | |
|---|---|---|---|
| | Final | Second | First |
| CFC1 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
| CFC2 | N/A | N/A | December 31, 2015 |
| CFC3 | November 30, 2018 | November 30, 2016 | November 30, 2015 |
| CFC4 | N/A | N/A | N/A |

ADMIN_03402

(8) Example 8. Determination of section 958(a) U.S. shareholder in case of a controlled domestic partnership. (i) Facts. USP, a domestic corporation, owns all of the stock of CFC1 and CFC2. CFC1 and CFC2 own 60% and 40%, respectively, of the interests in the capital and profits of DPS, a domestic partnership. DPS owns all of the stock of CFC3 and CFC4. This ownership structure has existed since the date of formation of CFC1, CFC2, CFC3, and CFC4. CFC1, CFC2, CFC3, and CFC4 are each a foreign corporation. USP, DPS, CFC1, CFC2, CFC3, and CFC4 have calendar year taxable years. On both E&P measurement dates, CFC3 has 50u of accumulated post-1986 deferred foreign income. On both E&P measurement dates, CFC4 has a deficit in post-1986 earnings and profits of 30u. On all cash measurement dates, CFC1, CFC2, and CFC3 each have a cash position of 0u, and CFC4 has a cash position of 200u.

(ii) Analysis. DPS is a controlled domestic partnership with respect to USP within the meaning of paragraph (e)(2) of this section because more than 50% of the interests in its capital and profits are owned by persons related to USP within the meaning of section 267(b), CFC1 and CFC2, and thus DPS is controlled by USP and related persons. Without regard to paragraph (e) of this section, DPS is a section 958(a) U.S. shareholder of CFC3 and CFC4, each of which is a controlled foreign corporation. If DPS were treated as foreign, CFC3 and CFC4 would each continue to be a controlled foreign corporation, and USP would be treated as a section 958(a) U.S. shareholder of each of CFC3 and CFC4, and would be treated as owning (within the meaning of section 958(a)) tested section 958(a) stock of each of CFC3 and CFC4 through CFC1 and CFC2, which are both partners in DPS. Thus, under paragraph (e)(1) of this section, DPS is treated as a foreign partnership for purposes of determining the section 958(a) U.S. shareholder of both CFC3 and CFC4 and the section 958(a) stock of both CFC3 and CFC4 owned by the section 958(a) U.S. shareholder. Thus, USP's pro rata share of CFC3's section 965(a) earnings amount is 50u, and its pro rata share of CFC4's specified E&P deficit is 30u. USP's aggregate foreign cash position is 200u. DPS is not a section 958(a) U.S. shareholder with respect to either CFC3 or CFC4.

§1.965-2 Adjustments to earnings and profits and basis.

(a) Scope. This section provides rules relating to adjustments to earnings and profits and basis to determine and account for the application of section 965(a) and (b) and §1.965-1(b) and a rule that limits the amount of gain recognized under section 961(b)(2) by reason of distributions attributable to section 965 previously taxed earnings and profits (as defined in paragraph (g)(1)(ii) of this section) in the inclusion year. Paragraph (b) of this section provides rules relating to adjustments to earnings and profits of a specified foreign corporation for purposes of applying sections 902, 959,

ADMIN_03403

960, and 965.  Paragraph (c) of this section provides rules regarding adjustments to earnings and profits by reason of section 965(a).  Paragraph (d) of this section provides rules regarding adjustments to earnings and profits by reason of section 965(b).  Paragraph (e) provides rules regarding adjustments to basis by reason of section 965(a).  Paragraph (f) of this section provides an election to make certain adjustments to basis corresponding to adjustments to earnings and profits by reason of section 965(b).  Paragraph (g) of this section provides rules that limit the amount of gain recognized in connection with the application of section 961(b)(2) and that require related reductions in basis.  Paragraph (h) of this section provides rules regarding basis adjustments.  Paragraph (i) of this section provides definitions that apply for purposes of this section.  Paragraph (j) of this section provides examples illustrating the application of this section.

(b) Determination of and adjustments to earnings and profits of a specified foreign corporation for purposes of applying sections 902, 959, 960, and 965.  For the taxable year of a specified foreign corporation in which an E&P measurement date occurs, and the last taxable year of a specified foreign corporation that begins before January 1, 2018, and the taxable year of a section 958(a) U.S. shareholder in which or with which any such year ends, the adjustments to earnings and profits described in paragraphs (b)(1) through (b)(5) of this section apply in sequence.  For purposes of determining the consequences under sections 902 and 960 of a distribution or an inclusion under section 951(a)(1), after the application of those paragraphs, the ordering rule in §1.960-1(i)(2) applies except that section 902 is applied with respect to any distributions from the specified foreign corporation described in paragraph (b)(2) of this

ADMIN_03404

section that are not disregarded under §1.965-4 before section 960 is applied with respect to an inclusion or distribution described in paragraph (b)(3), (b)(4), or (b)(5) of this section.

(1) Each of the subpart F income of the specified foreign corporation and the amount required to be included in income under section 1248, if any, are determined without regard to section 965(a), but taking into account any relevant distributions, and earnings and profits of the specified foreign corporation that are described in section 959(c)(2) with respect to the section 958(a) U.S. shareholder are increased to the extent of the section 958(a) U.S. shareholder's inclusion under section 951(a)(1)(A) without regard to section 965(a) (including to the extent provided in section 959(e)).

(2) The treatment of a distribution by the specified foreign corporation to another specified foreign corporation that is made before January 1, 2018, is determined under section 959.

(3) Each of the post-1986 earnings and profits (including a deficit) of the specified foreign corporation, the accumulated post-1986 deferred foreign income of the specified foreign corporation, the section 965(a) earnings amount of the specified foreign corporation, and the section 965(a) inclusion amount with respect to the specified foreign corporation, if any, is determined, taking into account the rules of §1.965-4, and the earnings and profits (including a deficit) of the specified foreign corporation are adjusted as provided in paragraphs (c) and (d) of this section. For a rule disregarding subpart F income earned after an E&P measurement date for purposes of calculating accumulated post-1986 deferred foreign income as of the E&P measurement date, see §1.965-1(f)(7)(ii).

192

ADMIN_03405

(4) The treatment of distributions described in paragraph (b)(2) of this section that are disregarded under §1.965-4 is redetermined and the treatment of all distributions from the specified foreign corporation other than those described in paragraph (b)(2) of this section is determined under section 959.

(5) An amount is determined under section 956 with respect to the specified foreign corporation and the section 958(a) U.S. shareholder; earnings and profits of the specified foreign corporation described in section 959(c)(2) with respect to the section 958(a) U.S. shareholder are reclassified as earnings and profits described in section 959(c)(1) with respect to the section 958(a) U.S. shareholder to the extent the amount determined under section 956 would, but for section 959(a)(2), be included by the section 958(a) U.S. shareholder under section 951(a)(1)(B); and earnings and profits described in section 959(c)(1) with respect to the section 958(a) U.S. shareholder are further increased to the extent of the section 958(a) U.S. shareholder's inclusion under section 951(a)(1)(B).

(c) Adjustments to earnings and profits by reason of section 965(a). The earnings and profits of a deferred foreign income corporation described in section 959(c)(2) with respect to a section 958(a) U.S. shareholder are increased by an amount equal to the section 965(a) inclusion amount of the section 958(a) U.S. shareholder with respect to the deferred foreign income corporation, if any, translated (if necessary) into the functional currency of the deferred foreign income corporation using the spot rate on December 31, 2017, provided the section 965(a) inclusion amount is included in income by the section 958(a) U.S. shareholder. For purposes of the section 965 regulations, the earnings and profits described in section 959(c)(2) by reason of this paragraph (c)

193

ADMIN_03406

and the earnings and profits initially described in section 959(c)(2) by reason of this paragraph (c) but subsequently reclassified as earnings and profits described in section 959(c)(1), if any, are referred to as section 965(a) previously taxed earnings and profits. Furthermore, the earnings and profits (including a deficit) of the deferred foreign income corporation that are described in section 959(c)(3) (or that would be described in section 959(c)(3) but for the application of section 965(a) and the section 965 regulations) are reduced (or, in the case of a deficit, increased) by an amount equal to the section 965(a) previously taxed earnings and profits.

(d) Adjustments to earnings and profits by reason of section 965(b)--(1) Adjustments to earnings and profits described in section 959(c)(2) and (c)(3) of deferred foreign income corporations. The earnings and profits of a deferred foreign income corporation described in section 959(c)(2) with respect to a section 958(a) U.S. shareholder are increased by an amount equal to the reduction to the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation under section 965(b), §1.965-1(b)(2), and §1.965-8(b), as applicable, translated (if necessary) into the functional currency of the deferred foreign income corporation using the spot rate on December 31, 2017, provided the section 958(a) U.S. shareholder includes the section 965(a) inclusion amount (if any) with respect to the deferred foreign income corporation in income. For purposes of the section 965 regulations, the earnings and profits described in section 959(c)(2) by reason of this paragraph (d) and the earnings and profits initially described in section 959(c)(2) by reason of this paragraph (d) but subsequently reclassified as earnings and profits described in section 959(c)(1) are referred to as section 965(b) previously taxed

194

ADMIN_03407

earnings and profits, and are treated as having been previously included in the gross income of the section 958(a) U.S. shareholder under section 951 for purposes of section 1248(d)(1). Furthermore, the earnings and profits (including a deficit) described in section 959(c)(3) of the deferred foreign income corporation (or that would be described in section 959(c)(3) but for the application of section 965(b) and the section 965 regulations) are reduced (or, in the case of a deficit, increased) by an amount equal to the section 965(b) previously taxed earnings and profits.

(2) Adjustments to earnings and profits described in section 959(c)(3) of E&P deficit foreign corporations--(i) Increase in earnings and profits by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit taken into account--(A) In general. For an E&P deficit foreign corporation's last taxable year that begins before January 1, 2018, the earnings and profits of the E&P deficit foreign corporation described in section 959(c)(3) are increased by an amount equal to the portion of a section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under section 965(b), §1.965-1(b)(2), and §1.965-8(b), as determined under paragraph (d)(2)(ii) of this section, translated (if necessary) into the functional currency of the E&P deficit foreign corporation using the spot rate on December 31, 2017. For purposes of section 316, the earnings and profits of the E&P deficit foreign corporation attributable to the increase described in the preceding sentence are not treated as earnings and profits of the taxable year described in section 316(a)(2). See also §1.965-6(b)(3) for the timing of this adjustment for purposes of determining foreign taxes deemed paid under sections 902 and 960.

195

ADMIN_03408

(B) Reduction of a qualified deficit. For purposes of section 952, a section 958(a) U.S. shareholder's pro rata share of the earnings and profits of an E&P deficit foreign corporation is increased by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under section 965(b), §1.965-1(b)(2), or §1.965-8(b), as applicable, as determined under paragraph (d)(2)(ii) of this section, translated (if necessary) into the functional currency of the E&P deficit foreign corporation using the spot rate on December 31, 2017, and such increase is attributable to the same activity to which the deficit so taken into account was attributable.

(ii) Determination of portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit taken into account--(A) In general. The portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit of an E&P deficit foreign corporation taken into account under section 965(b), §1.965-1(b)(2), or §1.965-8(b), as applicable, is 100 percent of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit if either of the following conditions is satisfied:

(1) The section 958(a) U.S. shareholder (including a consolidated group of which the section 958(a) U.S. shareholder is a member) does not have an excess aggregate foreign E&P deficit (as defined in §1.965-8(f)(7)(i)), or

(2) If the section 958(a) U.S. shareholder is a member of an affiliated group in which not all members are members of the same consolidated group, the amount described in §1.965-8(f)(1)(i)(B) with respect to the affiliated group is equal to or greater than the amount described §1.965-8(f)(1)(i)(A).

ADMIN_03409

(B) Designation of portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit taken into account. If neither the condition in paragraph (d)(2)(ii)(A)(1) nor the condition in paragraph (d)(2)(ii)(A)(2) is satisfied with respect to a section 958(a) U.S. shareholder, then the section 958(a) U.S. shareholder must designate the portion taken into account by reporting to each E&P deficit foreign corporation of the section 958(a) U.S. shareholder, and maintaining, in its books and records, a statement setting forth the following information--

(1) The portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under section 965(b), §1.965-1(b)(2), or §1.965-8(b), as designated under §1.965-8(c), as applicable, and

(2) In the case of an E&P deficit foreign corporation that has a qualified deficit (as determined under section 952 and §1.952-1), the portion (if any) of the section 958(a) shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under paragraph (d)(2)(ii)(B)(1) of this section that is attributable to a qualified deficit, including the qualified activities to which such portion is attributable.

(e) Adjustments to basis by reason of section 965(a)--(1) General rule. Except as provided in paragraph (e)(2) of this section, a section 958(a) U.S. shareholder's basis in section 958(a) stock of a deferred foreign income corporation, or a section 958(a) U.S. shareholder's basis in applicable property with respect to a deferred foreign income corporation, is increased by the section 958(a) U.S. shareholder's section

197

ADMIN_03410

965(a) inclusion amount with respect to the deferred foreign income corporation included in income by the section 958(a) U.S. shareholder.  See section 961(a).

(2) Section 962 election.  In the case of a section 958(a) U.S. shareholder who has made an election under section 962 for a section 958(a) U.S. shareholder's inclusion year, the increase in basis in the section 958(a) U.S. shareholder's section 958(a) stock of, or applicable property with respect to, a deferred foreign income corporation cannot exceed an amount equal to the amount of tax paid under chapter 1 of the Code with respect to the section 958(a) U.S. shareholder's section 965(a) inclusion amount with respect to the deferred foreign income corporation, taking into account any section 965(h) election made by the section 958(a) U.S. shareholder.

(f) Adjustments to basis by reason of section 965(b)--(1) In general.  Except as provided in paragraph (f)(2) of this section, no adjustments to basis of stock or property are made under section 961 (or any other provision of the Code) to take into account the reduction to a section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of a deferred foreign income corporation under section 965(b), §1.965-1(b)(2), or §1.965-8(b), as applicable.

(2) Election to make adjustments to basis to account for the application of section 965(b)--(i) In general.  If a section 958(a) U.S. shareholder makes the election as provided in this paragraph (f)(2), the adjustments to basis described in paragraph (f)(2)(ii) of this section are made with respect to each deferred foreign income corporation and each E&P deficit foreign corporation in which the section 958(a) U.S. shareholder owns section 958(a) stock.

198

(ii) <u>Basis adjustments</u>--(A) <u>Increase in basis with respect to a deferred foreign income corporation</u>--(<u>1</u>) <u>In general</u>.  Except as provided in paragraphs (f)(2)(ii)(A)(<u>2</u>) and (C) of this section, a section 958(a) U.S. shareholder's basis in section 958(a) stock of a deferred foreign income corporation, or a section 958(a) U.S. shareholder's basis in applicable property with respect to a deferred foreign income corporation, is increased by an amount equal to the section 965(b) previously taxed earnings and profits of the deferred foreign income corporation with respect to the section 958(a) U.S. shareholder, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017.

(<u>2</u>) <u>Limited basis adjustment</u>.  A section 958(a) U.S. shareholder may, in lieu of applying paragraph (f)(2)(ii)(A)(<u>1</u>) of this section, designate the amount by which it increases its basis in section 958(a) stock of, or applicable property with respect to, a deferred foreign income corporation, provided that--

(<u>i</u>) The increase does not exceed the section 965(b) previously taxed earnings and profits of the deferred foreign income corporation with respect to the section 958(a) U.S. shareholder, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017; and

(<u>ii</u>) The aggregate amount of a section 958(a) U.S. shareholder's increases in basis with respect to stock or applicable property pursuant to paragraph (f)(2)(ii)(A)(<u>2</u>) of this section does not exceed the aggregate amount of the section 958(a) U.S. shareholder's reductions in basis pursuant to paragraph (f)(2)(ii)(B) of this section subject to the limitation under paragraph (f)(2)(ii)(B)(<u>2</u>) of this section.

(B) <u>Reduction in basis with respect to an E&P deficit foreign corporation</u>--(<u>1</u>) <u>In general</u>.  Except as provided in paragraphs (f)(2)(ii)(B)(<u>2</u>) and (f)(2)(ii)(C) of this section,

199

ADMIN_03412

a section 958(a) U.S. shareholder's basis in section 958(a) stock of an E&P deficit foreign corporation, or a section 958(a) U.S. shareholder's basis in applicable property with respect to an E&P deficit foreign corporation, is reduced by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under section 965(b), §1.965-1(b)(2), and §1.965-8(b), as applicable, as determined under paragraph (d)(2)(ii) of this section, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017.  For rules requiring gain recognition, see paragraph (h)(3) of this section.

(2) Limited basis adjustment.  If a section 958(a) U.S. shareholder adjusts its basis in section 958(a) stock of, or applicable property with respect to, one or more deferred foreign income corporations under paragraph (f)(2)(ii)(A)(2) of this section, the section 958(a) U.S. shareholder's aggregate reductions in basis in section 958(a) stock of, or applicable property with respect to, an E&P deficit foreign corporation pursuant to paragraph (f)(2)(ii)(B)(1) of this section on a day may not exceed the amount of the section 958(a) U.S. shareholder's basis in the section 958(a) stock of, or applicable property with respect to, such E&P deficit foreign corporation, determined without taking into account specified basis adjustments to the section 958(a) stock of, or applicable property with respect to, such E&P deficit foreign corporation.

(C) Section 962 election.  In the case of a section 958(a) U.S. shareholder who has made an election under section 962 for a section 958(a) U.S. shareholder's inclusion year, the adjustments provided in paragraphs (f)(2)(ii)(A) and (B) of this section do not apply.

ADMIN_03413

(iii) <u>Rules regarding the election</u>--(A) <u>Consistency requirement</u>.  In order for the election described in this paragraph (f)(2) to be effective, a section 958(a) U.S. shareholder and each section 958(a) U.S. shareholder of an E&P deficit foreign corporation or of a deferred foreign income corporation with respect to which the second section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount is reduced under section 965(b), §1.965-1(b)(2), or §1.965-8(b) that is related to the first section 958(a) U.S. shareholder must make the election described in this paragraph (f)(2).  For purposes of this paragraph (f)(2)(iii)(A), a person is treated as related to a section 958(a) U.S. shareholder if the person bears a relationship to the section 958(a) U.S. shareholder described in section 267(b) or 707(b).

(B) <u>Manner of making election</u>--(<u>1</u>) <u>Timing</u>--(<u>i</u>) <u>In general</u>.  Except as provided in paragraph (f)(2)(iii)(B)(<u>1</u>)(<u>ii</u>) of this section, the election provided in this paragraph (f)(2) must be made no later than the due date (taking into account extensions, if any) for the section 958(a) U.S. shareholder's return for the first taxable year that includes the last day of the last taxable year of a deferred foreign income corporation or E&P deficit foreign corporation of the shareholder that begins before January 1, 2018.  Relief is not available under §301.9100-2 or 301.9100-3 to file a late election.  Except as provided in paragraph (f)(2)(iii)(B)(<u>1</u>)(<u>ii</u>) of this section, the election provided in this paragraph (f)(2) is irrevocable.

(<u>ii</u>) <u>Transition rule</u>.  If the due date referred to in paragraph (f)(2)(iii)(B)(<u>1</u>)(<u>i</u>) of this section occurs before **[INSERT DATE 90 DAYS AFTER PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER]**, the election must be made by **[INSERT DATE 90 DAYS AFTER PUBLICATION OF THIS DOCUMENT IN THE FEDERAL**

ADMIN_03414

**REGISTER]**.  In the case of an election made before **[INSERT DATE OF PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER]**, the election may be revoked by attaching a statement, signed under penalties of perjury, to an amended return filed by **[INSERT DATE 90 DAYS AFTER PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER]**.  The statement must contain the section 958(a) U.S. shareholder's name and taxpayer identification number and a statement that the section 958(a) U.S. shareholder and all related persons, as defined in paragraph (f)(2)(iii)(A) of this section, that are section 958(a) U.S. shareholders of E&P deficit foreign corporations or of deferred foreign income corporations with respect to which the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount is reduced under section 965(b), §1.965-1(b)(2), or §1.965-8(b) revoke the election provided in this paragraph (f)(2).

(2) Election statement.  Except as otherwise provided in publications, forms, instructions, or other guidance, to make the election provided in this paragraph (f)(2), a section 958(a) U.S. shareholder must attach a statement, signed under penalties of perjury consistent with the rules for signatures applicable to the section 958(a) U.S. shareholders return, to its return for the first taxable year that includes the last day of the last taxable year of a deferred foreign income corporation or E&P deficit foreign corporation of the shareholder that begins before January 1, 2018.  The statement must include the section 958(a) U.S. shareholder's name, taxpayer identification number, and a statement that the section 958(a) U.S. shareholder and all related persons, as defined in paragraph (f)(2)(iii)(A) of this section, that are section 958(a) U.S. shareholders of E&P deficit foreign corporations or of deferred foreign income corporations with respect

202

ADMIN_03415

to which the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount is reduced under section 965(b), §1.965-1(b)(2), or §1.965-8(b) make the election provided in this paragraph (f)(2).  If the section 958(a) U.S. shareholder increases its basis in stock or applicable property under paragraph (f)(2)(ii)(A)(2) of this section and decreases its basis in stock or applicable property pursuant to paragraph (f)(2)(ii)(B) of this section subject to the limitation under paragraph (f)(2)(ii)(B)(2) of this section, the election statement must so indicate.  The attachment of an unsigned copy of the election statement to the timely-filed return for the relevant taxable year satisfies the signature requirement of this paragraph (f)(2)(iii)(B)(2) if the section 958(a) U.S. shareholder retains the original signed election statement in the manner specified by §1.6001-1(e).

(g) Gain reduction rule--(1) Reduction in gain recognized under section 961(b)(2) by reason of distributions attributable to section 965 previously taxed earnings and profits in the inclusion year--(i) In general.  If a section 958(a) U.S. shareholder receives a distribution from a deferred foreign income corporation (including through a chain of ownership described under section 958(a)) during the inclusion year of the deferred foreign income corporation that is attributable to section 965 previously taxed earnings and profits of the deferred foreign income corporation, then the amount of gain that otherwise would be recognized under section 961(b)(2) by the section 958(a) U.S. shareholder with respect to the section 958(a) U.S. shareholder's section 958(a) stock of the deferred foreign income corporation or interest in applicable property with respect to the deferred foreign income corporation is reduced (but not below zero) by an amount equal to the section 965 previously taxed earnings and profits of the deferred foreign

ADMIN_03416

income corporation with respect to the section 958(a) U.S. shareholder, translated (if necessary) into U.S. dollars at the spot rate on December 31, 2017.

(ii) Definition of section 965 previously taxed earnings and profits. For purposes of paragraph (g)(1)(i) of this section, the term section 965 previously taxed earnings and profits means, with respect to a deferred foreign income corporation and a section 958(a) U.S. shareholder, the sum of the section 965(a) previously taxed earnings and profits of the deferred foreign income corporation with respect to the section 958(a) U.S. shareholder, and, if the section 958(a) U.S. shareholder has made the election described in paragraph (f)(2) of this section, the section 965(b) previously taxed earnings and profits of the deferred foreign income corporation with respect to the section 958(a) U.S. shareholder.

(2) Reduction in basis by an amount equal to the gain reduction amount. If a section 958(a) U.S. shareholder does not recognize gain under section 961(b)(2) by reason of paragraph (g)(1) of this section with respect to a distribution from a deferred foreign income corporation (including through a chain of ownership described under section 958(a)), the section 958(a) U.S. shareholder's basis in the section 958(a) stock of the deferred foreign income corporation, or the section 958(a) U.S. shareholder's basis in the applicable property with respect to the deferred foreign income corporation, is reduced by the amount of gain that would otherwise be recognized by the section 958(a) U.S. shareholder without regard to paragraph (g)(1) of this section.

(h) Rules of application for specified basis adjustments. This paragraph (h) applies for purposes of making any adjustment to the basis of section 958(a) stock or applicable property with respect to a specified foreign corporation described in

204

ADMIN_03417

paragraph (e), (f)(2), or (g)(2) of this section (collectively, <u>specified basis adjustments</u>, and each a <u>specified basis adjustment</u>).

(1) <u>Timing of basis adjustments</u>.  Except as provided in paragraph (e)(2) of this section, a specified basis adjustment to section 958(a) stock or applicable property with respect to a specified foreign corporation is made as of the last day of the last taxable year of the specified foreign corporation that begins before January 1, 2018, on which it is a specified foreign corporation.

(2) <u>Netting of basis adjustments</u>.  If one or more specified basis adjustments occur on the same day with respect to the same section 958(a) stock or applicable property, a single basis adjustment is made as of the close of such day with respect to such stock or applicable property in an amount equal to the net amount, if any, of the increase or reduction, as applicable.

(3) <u>Gain recognition for reduction in excess of basis</u>.  The excess (if any) of a net reduction in basis with respect to section 958(a) stock or applicable property of a section 958(a) U.S. shareholder by reason of one or more specified basis adjustments over the section 958(a) U.S. shareholder's basis in such stock or applicable property without regard to the specified basis adjustments is treated as gain from the sale or exchange of property.

(4) <u>Adjustments with respect to each share</u>--(i) <u>Section 958(a) stock</u>.  If a specified basis adjustment is made with respect to section 958(a) stock, the specified basis adjustment is made with respect to each share of the section 958(a) stock in a manner consistent with the section 958(a) U.S. shareholder's pro rata share of the

205

ADMIN_03418

section 965(a) earnings amount or specified E&P deficit, as applicable, by reason of such share.

(ii) Applicable property. If a specified basis adjustment is made with respect to applicable property, the adjustment is made with respect to the applicable property in a manner consistent with the application of paragraph (h)(4)(i) of this section.

(5) Stock or property for which adjustments are made--(i) In general. Except as provided in paragraph (h)(5)(ii) of this section, a specified basis adjustment is made solely with respect to section 958(a) stock owned by the section 958(a) U.S. shareholder within the meaning of section 958(a)(1)(A) or applicable property owned directly by the section 958(a) U.S. shareholder.

(ii) Special rule for an interest in a foreign pass-through entity. If the applicable property of the section 958(a) U.S. shareholder described in paragraph (h)(5)(i) of this section is an interest in a foreign pass-through entity, then, for purposes of determining the foreign pass-through entity's basis in section 958(a) stock or applicable property, as applicable, with respect to the section 958(a) U.S. shareholder, a specified basis adjustment is made with respect to section 958(a) stock or applicable property of the section 958(a) U.S. shareholder owned through the foreign pass-through entity in the same manner as if the section 958(a) stock or applicable property were owned directly by the section 958(a) U.S. shareholder. In the case of tiered foreign pass-through entities, this paragraph (h)(5)(ii) applies with respect to each foreign pass-through entity.

(i) Definitions. This paragraph (i) provides definitions that apply for purposes of this section.

ADMIN_03419

(1) <u>Applicable property</u>.  The term <u>applicable property</u> means, with respect to a section 958(a) U.S. shareholder and a specified foreign corporation, property owned by the section 958(a) U.S. shareholder (including through one or more foreign pass-through entities) by reason of which the section 958(a) U.S. shareholder is considered under section 958(a)(2) as owning section 958(a) stock of the specified foreign corporation.

(2) <u>Foreign pass-through entity</u>.  The term <u>foreign pass-through entity</u> means a foreign partnership or a foreign estate or trust (as defined in section 7701(a)(31)) (including a controlled domestic partnership treated as a foreign partnership pursuant to §1.965-1(e)).

(3) <u>Property</u>.  The term <u>property</u> has the meaning provided in §1.961-1(b)(1).

(j) <u>Examples</u>.  The following examples illustrate the application of this section.

(1) <u>Example 1</u>.  <u>Determination of accumulated post-1986 deferred foreign income with subpart F income earned before E&P measurement date on November 2, 2017</u>.  (i) <u>Facts</u>.  USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation, which owns all of the stock of CFC2, also a foreign corporation.  USP, CFC1, and CFC2 all have taxable years ending December 31, 2017.  As of January 1, 2017, CFC1 has no earnings and profits, and CFC2 has 100u of earnings and profits described in section 959(c)(3) that were accumulated in taxable years beginning after December 31, 1986, while CFC2 was a specified foreign corporation, and $21x of post-1986 foreign income taxes.  None of CFC2's earnings and profits are attributable to income treated as effectively connected with the conduct of a trade or business within the United States.  On March 1, 2017, CFC1 earns 30u of subpart F income (as defined in section 952), and CFC2 earns 20u of subpart F income.  No foreign income tax is imposed on CFC1's or CFC2's subpart F income.  For purposes of section 904, the post-1986 undistributed earnings, subpart F income, and post-1986 foreign income taxes are in the general category.  On July 1, 2017, CFC2 distributes 40u to CFC1.  On November 1, 2017, CFC1 distributes 60u to USP.  USP does not have an aggregate foreign E&P deficit.  USP includes in gross income all amounts that it is required to include under section 951.  No foreign income tax is imposed or withheld on the distribution by CFC2 to CFC1 or the distribution by CFC1 to USP.

(ii) <u>Analysis</u>.  (A) <u>Adjustments to section 959(c) classification of earnings and profits for inclusion under section 951(a)(1)(A) without regard to section 965</u>.  The

ADMIN_03420

distribution from CFC2 to CFC1 does not give rise to subpart F income to CFC1 due to the application of section 954(c)(6). Accordingly, USP's inclusion under section 951(a)(1)(A) without regard to section 965(a) is 30u with respect to CFC1 and 20u with respect to CFC2 for their taxable years ending December 31, 2017. As a result of the inclusions under section 951(a)(1)(A), CFC1 and CFC2 increase their earnings and profits described in section 959(c)(2) by 30u and 20u, respectively.

(B) Distributions between specified foreign corporations before January 1, 2018. The distribution of 40u from CFC2 to CFC1 is treated as a distribution of 20u out of earnings and profits described in section 959(c)(2) (attributable to inclusions under section 951(a)(1)(A) without regard to section 965(a)) and 20u out of earnings and profits described in section 959(c)(3).

(C) Section 965(a) inclusion amount. USP determines whether CFC1 and CFC2 are deferred foreign income corporations and, if so, determines its section 965(a) inclusion amounts with respect to CFC1 and CFC2. CFC1 and CFC2 are specified foreign corporations, and CFC1 and CFC2 each have accumulated post-1986 deferred foreign income greater than zero as of an E&P measurement date. Accordingly, CFC1 and CFC2 are deferred foreign income corporations. USP's section 965(a) inclusion amount with respect to each of CFC1 and CFC2, respectively, equals the section 965(a) earnings amount of CFC1 and CFC2, respectively.

(1) CFC1 section 965(a) earnings amount. The section 965(a) earnings amount with respect to CFC1 is 20u, the amount of its accumulated post-1986 deferred foreign income as of both November 2, 2017, and December 31, 2017, which is equal to 70u of post-1986 earnings and profits (30u earned and 40u attributable to the CFC2 distribution) reduced by 50u of such post-1986 earnings and profits described in section 959(c)(2) (30u earned and 20u attributable to the CFC2 distribution) under section 965(d)(2)(B) and §1.965-1(f)(7)(i)(B). Under section 965(d)(3)(B) and §1.965-1(f)(29)(i)(B), the post-1986 earnings and profits of CFC1 are not reduced by the 60u distribution to USP.

(2) CFC2 section 965(a) earnings amount. The section 965(a) earnings amount with respect to CFC2 is 80u, the amount of its accumulated post-1986 deferred foreign income as of both November 2, 2017, and December 31, 2017, which is equal to the amount of CFC2's post-1986 earnings and profits of 80u. CFC2's accumulated post-1986 deferred foreign income is equal to its post-1986 earnings and profits because CFC2 does not have earnings and profits that are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1, or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder, and, therefore, no adjustment is made under section 965(d)(2) or §1.965-1(f)(7). CFC2's 80u of post-1986 earnings and profits consists of 120u of earnings and profits that it earned, reduced by the 40u distribution to CFC1 under section 965(d)(3)(B) and §1.965-1(f)(29)(i)(B). The amount of the reduction to the post-1986 earnings and profits of CFC2 for the 40u distribution is not limited by §1.965-

208

1(f)(29)(i)(B) because CFC1's post-1986 earnings and profits are increased by 40u as a result of the distribution. Furthermore, because the 40u distribution was made on July 1, 2017, which is before the E&P measurement date on November 2, 2017, §1.965-4(f) is not relevant.

(3) Effect on earnings and profits described in section 959(c)(2) and (3). CFC1 and CFC2 increase their earnings and profits described in section 959(c)(2) by USP's section 965(a) inclusion amounts with respect to CFC1 and CFC2, 20u and 80u, respectively, and reduce their earnings and profits described in section 959(c)(3) by an equivalent amount.

(D) Distribution to United States shareholder. The distribution from CFC1 to USP is treated as a distribution of 60u out of the earnings and profits of CFC1 described in section 959(c)(2), which include earnings and profits attributable to the section 965(a) inclusion amount taken into account by USP.

(E) Section 902 and section 960 consequences. (1) Distribution by and inclusions with respect to CFC2. Under section 960, USP is deemed to pay \$3.50x (\$21x x (20u/120u)) of CFC2's post-1986 foreign income taxes as a result of its inclusion under section 951(a)(1)(A) without regard to section 965(a) with respect to CFC2. As a result of the distribution from CFC2 to CFC1, CFC2's post-1986 foreign income taxes are reduced, and CFC1's post-1986 foreign income taxes are increased, by the foreign income taxes deemed paid by CFC1 under section 902 of \$3.50x ((\$21x-\$3.50x) x (20u/120u-20u)). Under section 960, USP is deemed to pay \$14x ((\$21x-\$3.50x-\$3.50x) x 80u/(120u-40u)) of CFC2's post-1986 foreign income taxes as a result of its section 965(a) inclusion with respect to CFC2. The taxes deemed paid by USP as a result of its section 965(a) inclusion with respect to CFC2 are subject to the applicable percentage disallowance under section 965(g).

(2) Inclusions with respect to CFC1. As determined in paragraph (j)(1)(ii)(E)(1) of this section (paragraph (E)(1) in the analysis in this Example 1), as a result of the distribution from CFC2 to CFC1, CFC1 is deemed under section 902 to pay \$3.50x of CFC2's post-1986 foreign income taxes. Under section 960, USP is deemed to pay \$2.10x (\$3.50x x (30u/(30u+20u))) of CFC1's post-1986 foreign income taxes as a result of its inclusion under section 951(a)(1)(A) without regard to section 965(a) with respect to CFC1. Under section 960, USP is deemed to pay \$1.40x ((\$3.50x-\$2.10x) x 20u/(30u+20u-30u)) of CFC1's post-1986 foreign income taxes as a result of its section 965(a) inclusion with respect to CFC1. The taxes deemed paid by USP as a result of its section 965(a) inclusion with respect to CFC1 are subject to the applicable percentage disallowance under section 965(g).

(2) Example 2. Determination of accumulated post-1986 deferred foreign income with subpart F income earned after E&P measurement date on November 2, 2017. (i) Facts. The facts are the same as in paragraph (j)(1)(i) of this section (the facts in Example 1), except that on December 1, 2017, CFC1 earns an additional 50u of subpart F income (as defined in section 952), and neither CFC1 nor CFC2 has any post-1986 foreign income taxes.

ADMIN_03422

(ii) <u>Analysis</u>.  (A) <u>Adjustments to section 959(c) classification of earnings and profits for inclusion under section 951(a)(1)(A) without regard to section 965</u>. USP determines its inclusion under section 951(a)(1)(A) without regard to section 965(a), which is 80u with respect to CFC1 and 20u with respect to CFC2 for their taxable years ending December 31, 2017.  As a result of the inclusions under section 951(a)(1)(A), CFC1 and CFC2 increase their earnings and profits described in section 959(c)(2) by 80u and 20u, respectively.

(B) <u>Distributions between specified foreign corporations before January 1, 2018</u>. The analysis is the same as in paragraph (j)(1)(ii)(B) of this section (paragraph (B) in the analysis in <u>Example 1</u>).

(C) <u>Section 965(a) inclusion amount</u>.  USP determines whether CFC1 and CFC2 are deferred foreign income corporations and, if so, determines its section 965(a) inclusion amounts with respect to CFC1 and CFC2.  CFC1 and CFC2 are specified foreign corporations, and CFC1 and CFC2 each have accumulated post-1986 deferred foreign income greater than zero as of an E&P measurement date.  Accordingly, CFC1 and CFC2 are deferred foreign income corporations.  USP's section 965(a) inclusion amount with respect to each of CFC1 and CFC2, respectively, equals the section 965(a) earnings amount of CFC1 and CFC2, respectively.

(1) <u>CFC1 section 965(a) earnings amount</u>.  The section 965(a) earnings amount with respect to CFC1 is 20u, the greater of--

(i) The amount of its accumulated post-1986 deferred foreign income as of November 2, 2017, 20u, which is equal to 70u of post-1986 earnings and profits (30u earned and 40u attributable to the CFC2 distribution) reduced by 50u of such post-1986 earnings and profits described in section 959(c)(2) without regard to the subpart F income earned after November 2, 2017 (30u earned and 20u attributable to the CFC2 distribution) under section 965(d)(2)(B) and §1.965-1(f)(7)(i)(B) and (ii), and

(ii) The amount of its accumulated post-1986 deferred foreign income as of December 31, 2017, 20u, which is equal to 120u of post-1986 earnings and profits (80u earned and 40u attributable to the CFC2 distribution) reduced by 100u of such post-1986 earnings and profits described in section 959(c)(2) with regard to the subpart F income earned on or before December 31, 2017 (80u earned and 20u attributable to the CFC2 distribution) under section 965(d)(2)(B) and §1.965-1(f)(7)(i)(B) and (ii).

(2) <u>CFC2 section 965(a) earnings amount</u>.  The analysis is the same as in paragraph (j)(1)(ii)(C)(2) of this section (paragraph (C)(2) in the analysis in <u>Example 1</u>)).

(3) <u>Effect on earnings and profits described in section 959(c)(2) and (3)</u>.  The analysis is the same as in paragraph (j)(1)(ii)(C)(3) of this section (paragraph (C)(3) in the analysis in <u>Example 1</u>).

(D) <u>Distribution to United States shareholder</u>.  The analysis is the same as in paragraph (j)(1)(ii)(D) of this section (paragraph (D) in the analysis in <u>Example 1</u>).

ADMIN_03423

(3) Example 3.  Determination of accumulated post-1986 deferred foreign income with subpart F income earned after E&P measurement date on November 2, 2017, but previously taxed earnings and profits attributable to the subpart F income distributed before E&P measurement date on November 2, 2017.  (i) Facts.  The facts are the same as in paragraph (j)(1)(i) of this section (the facts in Example 1), except that on December 1, 2017, CFC2 earns an additional 50u of subpart F income (as defined in section 952), and neither CFC1 nor CFC2 has any post-1986 foreign income taxes.

(ii) Analysis.  (A) Adjustments to section 959(c) classification of earnings and profits for inclusion under section 951(a)(1)(A) without regard to section 965.  USP determines its inclusion under section 951(a)(1)(A) without regard to section 965(a), which is 30u with respect to CFC1 and 70u with respect to CFC2 for their taxable years ending December 31, 2017.  As a result of the inclusions under section 951(a)(1)(A), CFC1 and CFC2 increase their earnings and profits described in section 959(c)(2) by 30u and 70u, respectively.

(B) Distributions between specified foreign corporations before January 1, 2018.  The distribution of 40u from CFC2 to CFC1 is treated as a distribution of 40u out of earnings and profits described in section 959(c)(2) (attributable to inclusions under section 951(a)(1)(A) without regard to section 965(a)).

(C) Section 965(a) inclusion amount.  USP determines whether CFC1 and CFC2 are deferred foreign income corporations, and, if so, determines its section 965(a) inclusion amounts with respect to CFC1 and CFC2.  Because USP wholly owns CFC1 and CFC2 under section 958(a) and USP does not have an aggregate foreign E&P deficit, USP's section 965(a) inclusion amount with respect to each of CFC1 and CFC2, respectively, equals the section 965(a) earnings amount, if any, of CFC1 and CFC2, respectively.

(1) CFC1 section 965(a) earnings amount.  CFC1 is not a deferred foreign income corporation and does not have a section 965(a) earnings amount because the amount of its accumulated post-1986 deferred foreign income as of both November 2, 2017, and December 31, 2017, is 0u, which is equal to 70u of post-1986 earnings and profits (30u earned and 40u attributable to the CFC2 distribution) reduced by 70u of such post-1986 earnings and profits described in section 959(c)(2) (30u earned and 40u attributable to the CFC2 distribution) under section 965(d)(2)(B) and §1.965-1(f)(7)(i)(B).

(2) CFC2 section 965(a) earnings amount.  The section 965(a) earnings amount with respect to CFC2 is 100u, the greater of the amounts in paragraph (j)(3)(ii)(C)(2)(i) and (ii) of this section (paragraph (C)(2)(i) and (ii) in the analysis in this Example 3)--

(i) The amount of its accumulated post-1986 deferred foreign income as of November 2, 2017, 80u.  CFC2's 80u of accumulated post-1986 deferred foreign income as of November 2, 2017, is equal to its 80u of post-1986 earnings and profits because no adjustment is made under section 965(d)(2) or §1.965-1(f)(7), as CFC2 does not have earnings and profits that are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business

211

ADMIN_03424

within the United States and subject to tax under chapter 1, or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder, without regard to the subpart F income earned after November 2, 2017. CFC2's 80u of post-1986 earnings and profits consists of 120u of earnings and profits that it earned, reduced by the 40u distribution to CFC1 under section 965(d)(3)(B) and §1.965-1(f)(29)(i)(B). The amount of the reduction to the post-1986 earnings and profits of CFC2 for the 40u distribution is not limited by §1.965-1(f)(29)(i)(B) because CFC1's post-1986 earnings and profits are increased by 40u as a result of the distribution. Furthermore, because the 40u distribution was made on July 1, 2017, which is before any E&P measurement date, §1.965-4(f) is not relevant.

(ii) The amount of its accumulated post-1986 deferred foreign income as of December 31, 2017, 100u, which is equal to 130u of post-1986 earnings and profits reduced by 30u of such post-1986 earnings and profits described in section 959(c)(2) with regard to the subpart F income earned before December 31, 2017, under section 965(d)(2)(B) and §1.965-1(f)(7)(i)(B) and (ii). CFC2's 130u of post-1986 earnings and profits consists of 170u of earnings and profits that it earned, reduced by the 40u distribution to CFC1 under section 965(d)(3)(B) and §1.965-1(f)(29)(i)(B).

(3) Effect on earnings and profits described in section 959(c)(2) and (3). CFC2 increases its earnings and profits described in section 959(c)(2) by USP's section 965(a) inclusion amount with respect to CFC2, 100u, and reduces its earnings and profits described in section 959(c)(3) by an equivalent amount.

(D) Distribution to United States shareholder. The analysis is the same as in paragraph (j)(1)(ii)(D) of this section (paragraph (D) in the analysis in Example 1).

(4) Example 4. Determination of accumulated post-1986 deferred foreign income with distribution made after E&P measurement date on November 2, 2017. (i) Facts. USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation, which owns all of the stock of CFC2, also a foreign corporation. USP, CFC1, and CFC2 all have taxable years ending December 31, 2017. As of January 1, 2017, CFC1 has 10u of earnings and profits described in section 959(c)(3) that were accumulated in taxable years beginning after December 31, 1986, while CFC1 was a specified foreign corporation, and $2x of post-1986 foreign income taxes; and CFC2 has 100u of earnings and profits described in section 959(c)(3) that were accumulated in taxable years beginning after December 31, 1986, while CFC2 was a specified foreign corporation and $10x of post-1986 foreign income taxes. For purposes of section 904, the post-1986 undistributed earnings and post-1986 foreign income taxes are in the general category. None of CFC1's or CFC2's earnings and profits are attributable to income treated as effectively connected with the conduct of a trade or business within the United States. On December 1, 2017, CFC2 distributes 100u to CFC1, and CFC1 distributes 10u to USP. USP does not have an aggregate foreign E&P deficit. USP includes in gross income all amounts that it is required to include under section 951. No foreign income tax is imposed or withheld on the distribution by CFC2 to CFC1 or the

212

ADMIN_03425

distribution by CFC1 to USP.  USP does not apply §1.965-4(f)(3) to determine the post-1986 earnings and profits of CFC1 and CFC2.

(ii) _Analysis_.  (A) Adjustments to section 959(c) classification of earnings and profits for inclusion under section 951(a)(1)(A) without regard to section 965.  The distribution from CFC2 to CFC1 does not give rise to subpart F income to CFC1 due to the application of section 954(c)(6).  Accordingly, USP does not have an inclusion under section 951(a)(1)(A) without regard to section 965(a) with respect to CFC1 or CFC2 for their taxable years ending December 31, 2017.  As a result, neither CFC1 nor CFC2 has earnings and profits described in section 959(c)(2).

(B) Distributions between specified foreign corporations before January 1, 2018. The distribution of 100u from CFC2 to CFC1 is initially treated as a distribution out of earnings and profits described in section 959(c)(3).

(C) Section 965(a) inclusion amount.  USP determines whether CFC1 and CFC2 are deferred foreign income corporations, and, if so, determines its section 965(a) inclusion amounts with respect to CFC1 and CFC2.  CFC1 and CFC2 are specified foreign corporations, and CFC1 and CFC2 each have accumulated post-1986 deferred foreign income greater than zero as of an E&P measurement date.  Accordingly, CFC1 and CFC2 are deferred foreign income corporations.  USP's section 965(a) inclusion amount with respect to each of CFC1 and CFC2, respectively, equals the section 965(a) earnings amount of CFC1 and CFC2, respectively.

(1) CFC1 section 965(a) earnings amount.  The section 965(a) earnings amount with respect to CFC1 is 10u, the amount of its accumulated post-1986 deferred foreign income as of both November 2, 2017, and December 31, 2017, which is equal to the amount of CFC1's post-1986 earnings and profits of 10u.  CFC1's accumulated post-1986 deferred foreign income is equal to its post-1986 earnings and profits because CFC1 does not have earnings and profits that are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1, or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder, and therefore no adjustment is made under section 965(d)(2) or §1.965-1(f)(7).  But for §1.965-4(f), CFC1's post-1986 earnings and profits as of December 31, 2017, would be 110u, but because the distribution from CFC2 is a specified payment, it is disregarded in determining CFC1's post-1986 earnings and profits as of December 31, 2017, under §1.965-4(f).  Under section 965(d)(3)(B) and §1.965-1(f)(29)(i)(B), the post-1986 earnings and profits of CFC1 are not reduced by the 10u distribution to USP.

(2) CFC2 section 965(a) earnings amount.  The section 965(a) earnings amount with respect to CFC2 is 100u, the amount of its accumulated post-1986 deferred foreign income as of both November 2, 2017, and December 31, 2017, which is equal to the amount of CFC2's post-1986 earnings and profits of 100u.  CFC2's accumulated post-1986 deferred foreign income is equal to its post-1986 earnings and profits because CFC2 does not have earnings and profits that are attributable to income of the specified

213

foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1, or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder, and therefore no adjustment is made under section 965(d)(2) or §1.965-1(f)(7).  But for §1.965-4(f), CFC2's post-1986 earnings and profits as of December 31, 2017, would be 0u, but because the distribution to CFC1 is a specified payment, it is disregarded in determining CFC2's post-1986 earnings and profits as of December 31, 2017, under §1.965-4(f).

(3) Effect on earnings and profits described in section 959(c)(2) and (3).  CFC1 and CFC2 increase their earnings and profits described in section 959(c)(2) by USP's section 965(a) inclusion amounts with respect to CFC1 and CFC2, 10u and 100u, respectively, and reduce their earnings and profits described in section 959(c)(3) by an equivalent amount.

(D) Distributions--(1) Distribution that is a specified payment.  The distribution from CFC2 to CFC1 is recharacterized as a distribution of 100u out of the earnings and profits of CFC2 described in section 959(c)(2), which include earnings and profits attributable to the section 965(a) inclusion amount taken into account by USP.

(2) Distribution to United States shareholder.  The distribution from CFC1 to USP is treated as a distribution of 10u out of the earnings and profits of CFC1 described in section 959(c)(2), which include earnings and profits attributable to the section 965(a) inclusion amount taken into account by USP.

(E) Section 902 and section 960 consequences.  Under section 960, USP is deemed to pay $10x ($10x x (100u/100u)) of CFC2's post-1986 foreign income taxes as a result of its section 965(a) inclusion with respect to CFC2 and $2x ($2x x (10u/10u)) of CFC1's post-1986 foreign income taxes as a result of its section 965(a) inclusion with respect to CFC1.  Such taxes are subject to the applicable percentage disallowance under section 965(g).

(5) Example 5.  Determination of accumulated post-1986 deferred foreign income with section 951(a)(1)(B) inclusion after E&P measurement date on November 2, 2017. (i) Facts.  USP, a domestic corporation, owns all of the stock of CFC, a foreign corporation.  USP has a taxable year ending December 31, 2017, and CFC has a taxable year ending November 30, 2017.  As of December 1, 2016, CFC has 110u of earnings and profits described in section 959(c)(3) that were accumulated in taxable years beginning after December 31, 1986, while CFC was a specified foreign corporation.  CFC holds 150u of United States property throughout its taxable year ending November 30, 2017, but disposes of it on December 1, 2017, recognizing no gain or loss on the property.  Between December 1, 2017, and December 31, 2017, CFC earns an additional 10u of income that does not constitute subpart F income or income treated as effectively connected with the conduct of a trade or business within the United States that gives rise to 10u of earnings and profits.  USP includes in income all amounts that it is required to include under section 951.

214

ADMIN_03427

(ii) <u>Analysis</u>. (A) <u>Section 965(a) inclusion amount</u>. USP determines whether CFC is a deferred foreign income corporation, and, if so, determines its section 965(a) inclusion amount with respect to CFC. CFC is a specified foreign corporation, and CFC has accumulated post-1986 deferred foreign income greater than zero as of an E&P measurement date. Accordingly, CFC is a deferred foreign income corporation. USP's section 965(a) inclusion amount with respect to CFC equals the section 965(a) earnings amount of CFC.

(1) <u>CFC section 965(a) earnings amount</u>. The section 965(a) earnings amount with respect to CFC is 110u, the greater of the amount of its accumulated post-1986 deferred foreign income as of November 2, 2017, which is 110u, and the amount of its accumulated post-1986 deferred foreign income as of December 31, 2017, which is 10u. CFC's accumulated post-1986 deferred foreign income as of November 2, 2017, is equal to its 110u of post-1986 earnings and profits, which are not reduced by the 110u of earnings and profits described in section 959(c)(1) as a result of USP's section 951(a)(1)(B) inclusion with respect to CFC as of December 31, 2017, because such amounts would not be excluded from the gross income of a United States shareholder under section 959 under section 965(d)(2) or §1.965-1(f)(7) if distributed on November 2, 2017. CFC's accumulated post-1986 deferred foreign income as of December 31, 2017, is equal to its 120u of post-1986 earnings and profits reduced by the 110u of earnings and profits described in section 959(c)(1) as a result of USP's section 951(a)(1)(B) inclusion with respect to CFC as of December 31, 2017, which would be excluded from the gross income of a United States shareholder under section 959 under section 965(d)(2) or §1.965-1(f)(7) if distributed on December 31, 2017.

(2) <u>Effect on earnings and profits described in section 959(c)(2) and (3)</u>. In USP's taxable year ending December 31, 2018, CFC increases its earnings and profits described in section 959(c)(2) by USP's section 965(a) inclusion amount with respect to CFC, 110u, and reduces its earnings and profits described in section 959(c)(3) by an equivalent amount.

(B) <u>Section 956 inclusion</u>. In USP's taxable year ending December 31, 2017, USP increases its earnings and profits described in section 959(c)(1) by USP's amount included under sections 951(a)(1)(B) and 956 with respect to CFC, 110u, and reduces its earnings and profits described in section 959(c)(3) by an equivalent amount.

(6) <u>Example 6</u>. <u>Section 1248 inclusion</u>. (i) <u>Facts</u>. USP1, a domestic corporation, owns all of the stock of CFC, a foreign corporation, until it sells all of such stock to USP2, a domestic corporation, on December 1, 2017, in a sale on which USP1 recognizes $100x of gain. Throughout 2017, 1u=$1x. USP1, USP2, and CFC all have taxable years ending December 31, 2017. As of January 1, 2017, CFC has 100u of earnings and profits described in section 959(c)(3) that were accumulated in taxable years beginning after December 31, 1986, while CFC was wholly owned by USP1. On March 1, 2017, CFC distributes 20u to USP1. None of CFC's earnings and profits are attributable to income treated as effectively connected with the conduct of a trade or business within the United States. USP2 does not have an aggregate foreign E&P

215

ADMIN_03428

deficit. USP1 and USP2 include in income all amounts that they are required to include under sections 951 and 1248.

(ii) Analysis. (A) Adjustments to section 959(c) classification of earnings and profits for section 1248 inclusion. USP1's inclusion under section 1248 with respect to CFC is $80x ($100x-$20x). As a result of the inclusion under section 1248, under section 959(e), CFC increases its earnings and profits described in section 959(c)(2) by 80u.

(B) Section 965(a) inclusion amount. USP2 determines whether CFC is a deferred foreign income corporation and, if so, determines its section 965(a) inclusion amount with respect to CFC. CFC is a specified foreign corporation, and CFC has accumulated post-1986 deferred foreign income greater than zero as of an E&P measurement date. Accordingly, CFC is a deferred foreign income corporation. USP2's section 965(a) inclusion amount with respect to CFC equals the section 965(a) earnings amount of CFC. The section 965(a) earnings amount with respect to CFC is 20u, the amount of its accumulated post-1986 deferred foreign income as of both November 2, 2017, and December 31, 2017, which is equal to 100u of post-1986 earnings and profits reduced by 80u of such post-1986 earnings and profits described in section 959(c)(2) under section 965(d)(2)(B) and §1.965-1(f)(7)(i)(B). CFC increases its earnings and profits described in section 959(c)(2) by USP2's section 965(a) inclusion amount with respect to CFC, 20u, and reduces its earnings and profits that would be described in section 959(c)(3) but for the application of section 965(a) by an equivalent amount.

(C) Distributions to United States shareholders. The distributions from CFC to USP1 (including the deemed dividend under section 1248) are treated as distributions out of the earnings and profits of CFC described in section 959(c)(3).

(7) Example 7. Distribution attributable to section 965(a) previously taxed earnings and profits. (i) Facts. USP, a domestic corporation, owns all of the stock of CFC1, a specified foreign corporation that has no post-1986 earnings and profits (or deficit in post-1986 earnings and profits), and CFC1 owns all the stock of CFC2, a deferred foreign income corporation. USP is a calendar year taxpayer. CFC1's last taxable year beginning before January 1, 2018, ends on November 30, 2018; CFC2 has an inclusion year that ends on November 30, 2018. The functional currency of CFC1 and CFC2 is the U.S. dollar. USP's adjusted basis in the stock of CFC1 is zero. On January 1, 2018, CFC2 distributes $100x to CFC1, and CFC1 distributes $100x to USP. USP has a section 965(a) inclusion amount of $100x with respect to CFC2 that is taken into account for USP's taxable year ending December 31, 2018. CFC2 has no earnings and profits described in section 959(c)(1) or (2) other than section 965(a) previously taxed earnings and profits.

(ii) Analysis. Under paragraph (c) of this section, CFC2 has $100x of section 965(a) previously taxed earnings and profits with respect to USP. USP receives a distribution from CFC2 through a chain of ownership described in section 958(a) during the inclusion year of CFC2 that is attributable to the $100x of section 965(a) previously

216

ADMIN_03429

taxed earnings and profits of CFC2. Under paragraph (g)(1) of this section, the amount of gain that USP otherwise would recognize with respect to the stock of CFC1 under section 961(b)(2) is reduced (but not below zero) by $100x, the amount of CFC2's section 965(a) previously taxed earnings and profits with respect to USP. As of the close of November 30, 2018, USP's basis in CFC1 is increased under paragraph (e) of this section by USP's section 965(a) inclusion amount with respect to CFC2 ($100x), and is reduced under paragraph (g)(2) of this section by the amount of gain that would have been recognized by USP under section 961(b)(2) but for the application of paragraph (g)(1) of this section ($100x).

(8) Example 8. Distribution attributable to section 965(b) previously taxed earnings and profits; parent-subsidiary. (i) Facts. The facts are the same as in paragraph (j)(7)(i) of this section (the facts in Example 7), except that CFC1 has a specified E&P deficit of $100x. Because of the specified E&P deficit of CFC1, USP's section 965(a) inclusion amount with respect to CFC2 is reduced to zero pursuant to section 965(b)(1) and §1.965-1(b)(2). USP makes the election described in paragraph (f)(2) of this section.

(ii) Analysis. (A) Application of the gain reduction rule. Under paragraph (d)(1) of this section, CFC2 has $100x of section 965(b) previously taxed earnings and profits with respect to USP, and, under paragraph (d)(2) of this section, CFC1's earnings and profits described in section 959(c)(3) are increased by $100x to $0. USP receives a distribution from CFC2 through a chain of ownership described in section 958(a) during the inclusion year of CFC2 that is attributable to the $100x of section 965(b) previously taxed earnings and profits of CFC2. Under paragraph (g)(1) of this section, the amount of gain that USP otherwise would recognize with respect to the stock of CFC1 under section 961(b)(2) is reduced (but not below zero) by $100x, the amount of CFC2's section 965(b) previously taxed earnings and profits with respect to USP under paragraph (d)(1) of this section.

(B) Adjustments to the basis of CFC1. Because USP makes the election described in paragraph (f)(2) of this section, as of the close of November 30, 2018, USP's basis in CFC1 is increased under paragraph (f)(2)(ii)(A) of this section by an amount equal to CFC2's section 965(b) previously taxed earnings and profits with respect to USP under paragraph (d)(1) of this section ($100x), reduced under paragraph (f)(2)(ii)(B) of this section by an amount equal to the portion of the specified E&P deficit of CFC1 taken into account in determining USP's section 965(a) inclusion amount with respect to CFC2 ($100x), and reduced under paragraph (g)(2) of this section by the amount of gain that would have been recognized by USP with respect to the stock of CFC1 under section 961(b)(2) but for the application of paragraph (g)(1) of this section ($100x). Under paragraph (h)(2) and (3) of this section, the excess of the net reduction from the adjustments under paragraphs (f) and (g) of this section over USP's basis in the stock of CFC1 (in this case, $100x) is treated as gain recognized by USP from the sale or exchange of property.

(9) Example 9. Distribution attributable to section 965(b) previously taxed earnings and profits; brother-sister. (i) Facts. The facts are the same as in paragraph

217

ADMIN_03430

(j)(8)(i) of this section (the facts in <u>Example 8</u>), except that USP owns all the stock of CFC2, USP's adjusted basis in the stock of CFC2 is zero, CFC1 made no distributions, and on January 1, 2018, CFC2 distributes $100x to USP.

(ii) <u>Analysis</u>. (A) <u>Application of the gain reduction rule</u>.  Under paragraph (d)(1) of this section, CFC2 has $100x of section 965(b) previously taxed earnings and profits with respect to USP, and, under paragraph (d)(2) of this section, CFC1's earnings and profits described in section 959(c)(3) (deficit of $100x) are increased by $100x to $0. USP receives a distribution from CFC2 during the inclusion year of CFC2 that is attributable to the $100x of section 965(b) previously taxed earnings and profits of CFC2.  Under paragraph (g)(1) of this section, the amount of gain that USP otherwise would recognize with respect to the stock of CFC2 under section 961(b)(2) is reduced (but not below zero) by $100x, the amount of CFC2's section 965(b) previously taxed earnings and profits with respect to USP under paragraph (d)(1) of this section.

(B) <u>Adjustments to the basis of CFC1 and CFC2</u>.  Because USP makes the election described in paragraph (f)(2) of this section, as of the close of November 30, 2018, USP's basis in the stock of CFC2 is increased under paragraph (f)(2)(ii)(A) of this section by the amount of CFC2's section 965(b) previously taxed earnings and profits with respect to USP under paragraph (d)(1) of this section ($100x) and reduced under paragraph (g)(2) of this section by the amount of gain that would have been recognized by USP with respect to the stock of CFC2 under section 961(b)(2) but for the application of paragraph (g)(1) of this section ($100x).  As of the close of November 30, 2018, USP's basis in CFC1 is reduced under paragraph (f)(2)(ii)(B) of this section by an amount equal to the portion of USP's pro rata share of the specified E&P deficit of CFC1 taken into account in determining USP's section 965(a) inclusion amount with respect to CFC2 ($100x).  Under paragraph (h)(3) of this section, the excess of the reduction under paragraph (f) of this section over USP's basis in the stock of CFC1 (in this case, $100x) is treated as gain recognized by USP from the sale or exchange of property.

<u>§1.965-3 Section 965(c) deductions</u>.

(a) <u>Scope</u>.  This section provides rules regarding section 965(c) deductions and section 965(c) deduction amounts.  Paragraph (b) of this section provides rules for disregarding certain assets for purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder.  Paragraph (c) of this section provides rules for determining the aggregate foreign cash position for a section 958(a) U.S. shareholder inclusion year.  Paragraph (d) of this section provides a rule regarding certain expatriated entities.  Paragraph (e) of this section provides a rule for the

ADMIN_03431

treatment of section 965(c) deductions in connection with an election under section 962. Paragraph (f) of this section provides rules regarding the treatment of a section 965(c) deduction under certain provisions of the Internal Revenue Code.  Paragraph (g) of this section provides a rule for domestic pass-through entities.

(b) Rules for disregarding certain assets for determining aggregate foreign cash position--(1) Disregard of certain obligations between related specified foreign corporations.  In determining the aggregate foreign cash position of a section 958(a) U.S. shareholder, any account receivable, account payable, short-term obligation, or derivative financial instrument between a specified foreign corporation with respect to which the section 958(a) U.S. shareholder owns section 958(a) stock and a related specified foreign corporation on corresponding cash measurement dates is disregarded to the extent of the smallest of the product of the amount of the item on such corresponding cash measurement dates of each specified foreign corporation and the section 958(a) U.S. shareholder's ownership percentage of section 958(a) stock of the specified foreign corporation owned by the section 958(a) U.S. shareholder on such dates.  For purposes of this paragraph (b)(1)(i), a specified foreign corporation is treated as a related specified foreign corporation with respect to another specified foreign corporation if, as of the cash measurement date referred to in the preceding sentence of each specified foreign corporation, the specified foreign corporations are related persons within the meaning of section 954(d)(3), substituting the term "specified foreign corporation" for "controlled foreign corporation" in each place that it appears.

(2) Disregard of other assets upon demonstration of double-counting.  For purposes of determining the aggregate foreign cash position of a section 958(a) U.S.

219

ADMIN_03432

shareholder, the section 958(a) U.S. shareholder's pro rata share of the cash position of a specified foreign corporation on a cash measurement date is reduced by amounts of net accounts receivable, actively traded property, and short-term obligations to the extent such amounts are attributable to amounts taken into account in determining the section 958(a) U.S. shareholder's pro rata share of the cash position of another specified foreign corporation on the corresponding cash measurement date of such other specified corporation and to the extent not disregarded pursuant to paragraph (b)(1) of this section. However, the preceding sentence applies only if the section 958(a) U.S. shareholder attaches a statement containing the information outlined in paragraphs (b)(2)(i) through (v) of this section to its timely filed return (taking into account extensions, if any) for the section 958(a) U.S. shareholder inclusion year, or, if the section 958(a) U.S. shareholder has multiple section 958(a) U.S. shareholder inclusion years, the later of such years. Relief is not available under §301.9100-2 or 301.9100-3 to allow late filing of the statement. The statement must contain the following information with respect to each specified foreign corporation for which the cash position is reduced under this paragraph (b)(2)--

(i) A description of the asset that would be taken into account with respect to both specified foreign corporations,

(ii) A statement of the amount by which its pro rata share of the cash position of one specified foreign corporation is reduced,

(iii) A detailed explanation of why there would otherwise be double-counting, including the computation of the amount taken into account with respect to the other specified foreign corporation, and

ADMIN_03433

(iv) An explanation of why paragraph (b)(1) of this section does not apply to disregard such amount.

(3) *Disregard of portion of cash position of noncorporate entities treated as specified foreign corporations*. If an entity is treated as a specified foreign corporation of a section 958(a) U.S. shareholder pursuant to section 965(c)(3)(E), for purposes of determining the aggregate foreign cash position of the section 958(a) U.S. shareholder, the section 958(a) U.S. shareholder's pro rata share of the cash position of the entity (determined taking into account paragraphs (b)(1) and (b)(2) of this section) is reduced by the amount of the pro rata share attributable to deemed stock of the entity not owned (within the meaning of section 958(a), applied by treating domestic pass-through entities as foreign) by a specified foreign corporation of the section 958(a) U.S. shareholder (determined without taking into account section 965(c)(3)(E)).

(4) *Examples*. The following examples illustrate the application of this paragraph (b).

(i) *Example 1*. (A) *Facts*. USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation. CFC1 owns 95% of the only class of stock of CFC2, also a foreign corporation, and 40% of the only class of stock of CFC3, also a foreign corporation. The remaining 5% of the only class of stock of CFC2 is owned by a person unrelated to USP, CFC1, and CFC2; and the remaining 60% of the only class of stock of CFC3 is owned by a person unrelated to USP and CFC1. USP, CFC1, and CFC3 have calendar year taxable years. CFC2 has a taxable year ending on November 30. On November 15, 2015, CFC1 makes a loan of $100x to CFC2, which is required to be and is, in fact, repaid on January 1, 2016. On November 15, 2016, CFC2 sells inventory to CFC1 in exchange for an account receivable of $200x, which is required to be and is, in fact, repaid on December 15, 2016. On August 1, 2017, CFC1 makes a loan of $300x to CFC3, which is required to be and is, in fact, repaid on January 31, 2018.

(B) *Analysis*--(1) *Loan from CFC1 to CFC2*. For purposes of determining the aggregate foreign cash position of USP, a section 958(a) U.S. shareholder of CFC1, under paragraph (b)(1) of this section, because CFC1 and CFC2 are related within the meaning of paragraph (b)(1) of this section, the short-term obligation of CFC2 held by

ADMIN_03434

CFC1 outstanding on the first cash measurement date of each specified foreign corporation, November 30, 2015, and December 31, 2015, respectively, is disregarded to the extent of 95%, the smallest ownership percentage of section 958(a) stock of CFC1 and CFC2 owned by USP on such first cash measurement dates. Accordingly, USP only takes into account $5 ($100 – 95% of $100) of the short-term obligation in determining CFC1's cash position for purposes of determining its aggregate foreign cash position.

(2) Account receivable of CFC1 held by CFC2. Because the account receivable of CFC1 held by CFC2 on its second cash measurement date, November 30, 2016, is not outstanding on CFC1's second cash measurement date, December 31, 2016, paragraph (b)(1) of this section does not apply to disregard any portion of such account receivable.

(3) Loan from CFC1 to CFC3. Because CFC3 is not related to CFC1 within the meaning of paragraph (b)(1) of this section, paragraph (b)(1) of this section does not apply to disregard any portion of such short-term obligation.

(ii) Example 2. (A) Facts. The facts are the same as in paragraph (b)(4)(i)(A) of this section (the facts in Example 1), except that on December 1, 2015, CFC1 sells 5% of the stock of CFC2 to an unrelated person.

(B) Analysis. The analysis is the same as in paragraph (b)(4)(i)(B) of this section (the analysis in Example 1), except that the short-term obligation of CFC2 held by CFC1 outstanding on both of their first cash measurement dates, November 30, 2015, and December 31, 2015, respectively, is disregarded under paragraph (b)(1) of this section to the extent of 90%, the smallest ownership percentage of section 958(a) stock of CFC1 and CFC2 by USP on such first cash measurement dates. Accordingly, USP takes into account $10 ($100 – 90% of $100) of the short-term obligation in determining CFC1's cash position for purposes of determining its aggregate foreign cash position.

(iii) Example 3. (A) Facts. USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation, which owns 45% of the only class of stock of CFC2, also a foreign corporation. The remainder of the CFC2 stock is actively traded on an established financial market but is not owned by any person related to USP or CFC1. USP, CFC1, and CFC2 have calendar year taxable years. The value of the CFC2 stock owned by CFC1 is $500x on each of the cash measurement dates. Also on each of the cash measurement dates, CFC2 has $300x of assets described in section 965(c)(3)(B) and §1.965-1(f)(16) that are taken into account in determining its cash position.

(B) Analysis. For purposes of determining USP's aggregate foreign cash position, USP's pro rata share of the cash position of CFC1 on each cash measurement date may be reduced by the amount of the stock of CFC2 to the extent attributable to amounts taken into account in determining USP's pro rata share of the cash position of CFC2 on such cash measurement date (that is, to the extent of the $135x taken into account with respect to CFC2), provided USP attaches a statement to its timely filed return (taking into account extensions, if any) containing the following: a description of

222

the CFC2 stock and the assets of CFC2 taken into account in determining its cash position; a statement that USP's pro rata share of the cash position of CFC1 is being reduced by $135x; the computation of the $135x taken into account with respect to CFC2; and an explanation of why paragraph (b)(1) of this section does not apply to disregard such amount.

(iv) Example 4. (A) Facts. USP, a domestic corporation, owns all of the stock of CFC1 and CFC2, each a foreign corporation. USP, CFC1, and CFC2 have calendar year taxable years. CFC1 buys goods on credit from a third party for $100x and thus has an account payable of $100x. CFC1 modifies the goods and sells to CFC2 for $105x in exchange for an account receivable of $105x. CFC2 modifies the goods and sells to another third party for $110x in exchange for an account receivable of $110x. All of the accounts payable and accounts receivable are outstanding on the final cash measurement date.

(B) Analysis. For purposes of determining USP's aggregate foreign cash position, on the final cash measurement date, CFC1 has net accounts receivable of $0 because, pursuant to paragraph (b)(1) of this section, CFC1's account receivable from CFC2 is disregarded, and CFC2 has net accounts receivable of $110x because, pursuant to paragraph (b)(1) of this section, CFC2's account payable to CFC1 is disregarded. USP cannot rely on the rule in paragraph (b)(2) of this section because no amounts attributable to CFC2's net accounts receivable are taken into account with respect to another specified foreign corporation.

(v) Example 5. (A) Facts. USP, a domestic corporation, owns all of the stock of CFC1 and CFC2, each a foreign corporation. USP and CFC1 own 60% and 40%, respectively, of the interests in the capital and profits of PS1, a partnership. PS1 and CFC2 own 70% and 30%, respectively, of the interests in the capital and profits of PS2, a partnership. On each cash measurement date, PS1's cash position of $100x consists entirely of cash, and PS2's cash position of $200x includes a $50x short-term obligation of CFC2.

(B) Analysis. (1) Treatment of PS1. Because an interest in PS1 is held by CFC1, a specified foreign corporation of USP, and PS1 would be a specified foreign corporation of USP if it were a foreign corporation, PS1 is treated as a specified foreign corporation of USP for purposes of determining USP's aggregate foreign cash position. Without regard to paragraph (b)(3) of this section, USP must take into account $100x, its pro rata share of PS1's cash position, for purposes of determining its aggregate foreign cash position. However, 60% of that amount is attributable to deemed stock of PS1 that is not owned (within the meaning of section 958(a)) by a specified foreign corporation of USP. Accordingly, pursuant to paragraph (b)(3) of this section, the amount of PS1's cash position that USP must take into account for purposes of determining its aggregate foreign cash position is reduced by $60x (60% of $100x) to $40x ($100x - $60x).

223

ADMIN_03436

(2) Treatment of PS2. Because an interest in PS2 is held by CFC2, a specified foreign corporation of USP, and PS2 would be a specified foreign corporation of USP if it were a foreign corporation, PS2 is treated as a specified foreign corporation of USP for purposes of determining USP's aggregate foreign cash position. USP, CFC1, CFC2, PS1, and PS2 all have calendar year taxable years. For purposes of determining the aggregate foreign cash position of USP, a section 958(a) U.S. shareholder of PS2, under paragraph (b)(1) of this section, the short-term obligation of CFC2 held by PS2 outstanding on each cash measurement date of each specified foreign corporation is disregarded on such cash measurement dates. Accordingly, without regard to paragraph (b)(3) of this section, USP must take into account $150x ($200x – $50x) of PS2's cash position for purposes of determining its aggregate foreign cash position. However, 42% (60% x 70%) of that amount is attributable to deemed stock of PS2 that is not owned (within the meaning of section 958(a), applied by treating PS1 as foreign if it is a domestic pass-through entity) by a specified foreign corporation of USP (determined without taking into account section 965(c)(3)(E)). Accordingly, pursuant to paragraph (b)(3) of this section, the amount of PS2's cash position that USP must take into account for purposes of determining its aggregate foreign cash position is reduced by $63x (42% of $150x) to $87x ($150x - $63x).

(c) Determination of aggregate foreign cash position for a section 958(a) U.S. shareholder inclusion year--(1) Single section 958(a) U.S. shareholder inclusion year. If a section 958(a) U.S. shareholder has a single section 958(a) U.S. shareholder inclusion year, then the section 958(a) U.S. shareholder's aggregate foreign cash position for the section 958(a) U.S. shareholder inclusion year is equal to the aggregate foreign cash position of the section 958(a) U.S. shareholder.

(2) Multiple section 958(a) U.S. shareholder inclusion years. If a section 958(a) U.S. shareholder has multiple section 958(a) U.S. shareholder inclusion years, then the section 958(a) U.S. shareholder's aggregate foreign cash position for each section 958(a) U.S. shareholder inclusion year is determined by allocating the aggregate foreign cash position to a section 958(a) U.S. shareholder inclusion year under paragraphs (c)(2)(i) and (c)(2)(ii) of this section.

(i) Allocation to first section 958(a) U.S. shareholder inclusion year. A portion of the aggregate foreign cash position of the section 958(a) U.S. shareholder is allocated

224

ADMIN_03437

to the first section 958(a) U.S. shareholder inclusion year in an amount equal to the lesser of the section 958(a) U.S. shareholder's aggregate foreign cash position or the section 958(a) U.S. shareholder's aggregate section 965(a) inclusion amount for the section 958(a) U.S. shareholder inclusion year.

(ii) <u>Allocation to succeeding section 958(a) U.S. shareholder inclusion years</u>. The amount of the section 958(a) U.S. shareholder's aggregate foreign cash position allocated to any succeeding section 958(a) U.S. shareholder inclusion year equals the lesser of the excess, if any, of the section 958(a) U.S. shareholder's aggregate foreign cash position over the aggregate amount of its aggregate foreign cash position allocated to preceding section 958(a) U.S. shareholder inclusion years under paragraph (c)(2)(i) of this section and this paragraph (c)(2)(ii) or the section 958(a) U.S. shareholder's aggregate section 965(a) inclusion amount for such succeeding section 958(a) U.S. shareholder inclusion year.

(3) <u>Estimation of aggregate foreign cash position</u>. For purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder, the section 958(a) U.S. shareholder may assume that its pro rata share of the cash position of any specified foreign corporation whose last taxable year beginning before January 1, 2018, ends after the date the return for such section 958(a) U.S. shareholder inclusion year (the <u>estimated section 958(a) U.S. shareholder inclusion year</u>) is timely filed (taking into account extensions, if any) is zero as of the cash measurement date with which the taxable year of such specified foreign corporation ends. If a section 958(a) U.S. shareholder's pro rata share of the cash position of a specified foreign corporation is treated as zero pursuant to the preceding sentence, the amount described in §1.965-

225

1(f)(8)(i)(A) with respect to such section 958(a) U.S. shareholder in fact exceeds the amount described in §1.965-1(f)(8)(i)(B) with respect to such section 958(a) U.S. shareholder, and the aggregate section 965(a) inclusion amount for the estimated section 958(a) U.S. shareholder inclusion year exceeds the amount described in §1.965-1(f)(8)(i)(B) with respect to such section 958(a) U.S. shareholder, interest and penalties will not be imposed if such section 958(a) U.S. shareholder amends the return for the estimated section 958(a) U.S. shareholder inclusion year to account for the correct aggregate foreign cash position for the year.  The amended return must be filed by the due date (taking into account extensions, if any) for the return for the year after the estimated section 958(a) U.S. shareholder inclusion year.

(4) Examples.  The following examples illustrate the application of this paragraph (c).

(i) Example 1.  Estimation of aggregate foreign cash position for a section 958(a) U.S. shareholder inclusion year--(A) Facts.  USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation, which owns all of the stock of CFC2, also a foreign corporation.  USP is a calendar year taxpayer.  CFC1 has a taxable year ending on December 31, and CFC2 has a taxable year ending on November 30.  The cash position of CFC1 on each of December 31, 2015, December 31, 2016, and December 31, 2017, is $100x.  The cash position of CFC2 on each of November 30, 2015, and November 30, 2016, is $200x.  USP has a section 965(a) inclusion amount of $300x with respect to CFC1.

(B) Analysis.  In determining its aggregate foreign cash position for its 2017 taxable year, USP may assume that its pro rata share of the cash position of CFC2 will be zero as of November 30, 2018, for purposes of filing its return due on April 18, 2018 (or due on October 15, 2018, with extension).  Therefore, USP's aggregate foreign cash position is treated as $300x, which is the greater of (a) $300x, 50% of the sum of USP's pro rata shares of the cash position of CFC1 as of December 31, 2015, and December 31, 2016, and of the cash position of CFC2 as of November 30, 2015, and November 30, 2016, and (b) $100x, USP's pro rata share of the cash position of CFC1 as of December 31, 2017.  If USP's pro rata share of the cash position of CFC2 as of November 30, 2018, in fact exceeds $200x, USP must amend its return for its 2017 taxable year to reflect the correct aggregate foreign cash position by the due date for its return for its 2018 taxable year, April 15, 2019 (or October 15, 2019, with extension).

226

ADMIN_03439

(ii) Example 2.  Allocation of aggregate foreign cash position among section 958(a) U.S. shareholder inclusion years--(A) Facts.  The facts are the same as in paragraph (c)(4)(i)(A) of this section (the facts in Example 1), except that the cash position of each of CFC1 and CFC2 on all relevant cash measurement dates is $200x, with the result that USP has an aggregate foreign cash position determined under §1.965-1(f)(8)(i) of $400x.  For its 2017 taxable year, USP has a section 965(a) inclusion amount with respect to CFC1 of $300x, and for its 2018 taxable year, USP has a section 965(a) inclusion amount with respect to CFC2 of $300x.

(B) Analysis.  Under paragraph (c)(2)(i) of this section, USP's aggregate foreign cash position for 2017 is $300x, which is the lesser of USP's aggregate foreign cash position determined under §1.965-1(f)(8)(i) ($400x) or the section 965(a) inclusion amount ($300x) that USP takes into account in 2017.  Under paragraph (c)(2)(ii) of this section, the amount of USP's aggregate foreign cash position for 2018 is $100x, USP's aggregate foreign cash position determined under §1.965-1(f)(8)(i) ($400x) reduced by the amount of its aggregate foreign cash position for 2017 ($300x) under paragraph (c)(2)(i) of this section.

(d) Increase of income by section 965(c) deduction of an expatriated entity--(1) In general.  If a person is allowed a section 965(c) deduction and the person (or a successor) first becomes an expatriated entity, with respect to a surrogate foreign corporation, at any time during the 10-year period beginning on December 22, 2017, then the tax imposed by chapter 1 of the Internal Revenue Code is increased for the first taxable year in which such person becomes an expatriated entity by an amount equal to 35 percent of the person's section 965(c) deductions, and no credits are allowed against such increase in tax.  The preceding sentence applies only if the surrogate foreign corporation first becomes a surrogate foreign corporation on or after December 22, 2017.

(2) Definition of expatriated entity.  For purposes of paragraph (d)(1) of this section, the term expatriated entity has the same meaning given such term under section 7874(a)(2), except that such term does not include an expatriated entity if the

227

surrogate foreign corporation with respect to the expatriated entity is treated as a domestic corporation under section 7874(b).

(3) _Definition of surrogate foreign corporation_. For purposes of paragraph (d)(1) of this section, the term surrogate foreign corporation has the meaning given such term in section 7874(a)(2)(B).

(e) _Section 962 election_--(1) _In general_. In the case of an individual (including a trust or estate) that makes an election under section 962, any section 965(c) deduction taken into account under §1.962-1(b)(1)(i)(B) in determining taxable income as used in section 11 is not taken into account for purposes of determining the individual's taxable income under section 1.

(2) _Example_. The following example illustrates the application of the rule in this paragraph (e).

(i) _Facts_. USI, a United States citizen, owns 10% of the capital and profits of USPRS, a domestic partnership that has a calendar year taxable year, the remainder of which is owned by foreign persons unrelated to USI or USPRS. USPRS owns all of the stock of FS, a foreign corporation that is a controlled foreign corporation with a calendar year taxable year. USPRS has a section 965(a) inclusion amount with respect to FS of $1,000x and has a section 965(c) deduction amount of $700x. FS has no post-1986 foreign income taxes. USI makes a valid election under section 962 for 2017.

(ii) _Analysis_. USI's "taxable income" described in §1.962-1(b)(1)(i) equals $100x (USI's domestic pass-through owner share of USPRS's section 965(a) inclusion amount) minus $70x (USI's domestic pass-through owner share of USPRS's section 965(c) deduction amount), or $30x. No other deductions are allowed in determining this amount. USI's tax on the $30x section 965(a) inclusion will be equal to the tax that would be imposed on such amount under section 11 if USI were a domestic corporation. Under paragraph (e)(1) of this section, USI cannot deduct $70x for purposes of determining USI's taxable income that is subject to tax under section 1.

(f) _Treatment of section 965(c) deduction under certain provisions of the Internal Revenue Code_--(1) _Sections 62(a) and 63(d)_. A section 965(c) deduction is treated as

228

ADMIN_03441

a deduction described in section 62(a) and is not treated as an itemized deduction for any purpose of the Internal Revenue Code.

(2) Sections 705, 1367, and 1368--(i) Adjustments to basis.  In the case of a domestic partnership or S corporation--

(A) The aggregate amount of its section 965(a) inclusions net of the aggregate amount of its section 965(c) deductions is treated as a separately stated item of net income solely for purposes of calculating basis under section 705(a) and §1.705-1(a) and section 1367(a)(1) and §1.1367-1(f), and

(B) The aggregate amount of its section 965(a) inclusions equal to the aggregate amount of its section 965(c) deductions is treated as income exempt from tax solely for purposes of calculating basis under sections 705(a)(1)(B), 1367(a)(1)(A), and §1.1367-1(f).

(ii) S corporation accumulated adjustments account.  In the case of an S corporation, the aggregate amount of its section 965(a) inclusions equal to the aggregate amount of its section 965(c) deductions is treated as income not exempt from tax solely for purposes of determining whether an adjustment is made to an accumulated adjustments account under section 1368(e)(1)(A) and §1.1368-2(a)(2).

(iii) Example.  The following example illustrates the application of this paragraph (f)(2).

(A) Facts.  USI, a United States citizen, owns all of the stock of S Corp, an S corporation, which owns all of the stock of FS, a foreign corporation.  S Corp has a section 965(a) inclusion of $1,000x with respect to FS and has a $700x section 965(c) deduction.

(B) Analysis.  As a result of the application of paragraph (f)(2)(i)(A) of this section, solely for purposes of calculating basis under section 1367(a)(1) and §1.1367-1(f), USI treats as a separately stated item of net income $300x (its pro rata share of the

229

ADMIN_03442

net of S Corp's $1,000x aggregate section 965(a) inclusion and S Corp's $700x aggregate section 965(c) deduction).  Accordingly, USI's basis in S Corp is increased under section 1367(a)(1) by $300x.  As a result of the application of paragraph (f)(2)(i)(B) of this section, an amount of S Corp's aggregate section 965(a) inclusion equal to its aggregate section 965(c) deduction, $700x, is treated as tax exempt income solely for purposes of calculating basis under section 1367(a)(1)(A) and §1.1367-1(f), and accordingly, USI's basis in S Corp is further increased by its pro rata share of such amount, $700x.  S Corp's accumulated adjustments account ("AAA") is increased under section 1368(e)(1)(A) by the $1,000x section 965(a) inclusion taken into account and reduced by the $700x section 965(c) deduction taken into account.  In addition, as a result of the application of paragraph (f)(2)(ii) of this section, S Corp's AAA is further increased by an amount of S Corp's aggregate section 965(a) inclusion equal to its aggregate section 965(c) deduction, $700x, which is not treated as tax-exempt income for purposes of §1.1368-2(a)(2).

(3) Section 1411.  For purposes of section 1411 and §1.1411-4(f)(6), a section 965(c) deduction is not treated as being properly allocable to any section 965(a) inclusion.

(4) Section 4940.  For purposes of section 4940(c)(3)(A), a section 965(c) deduction is not treated as an ordinary and necessary expense paid or incurred for the production or collection of gross investment income.

(g) Domestic pass-through entities.  For purposes of determining a domestic pass-through owner share, a section 965(c) deduction amount of a domestic pass-through entity must be allocated to a domestic pass-through owner in the same proportion as an aggregate section 965(a) inclusion amount of the domestic pass-through entity for a section 958(a) U.S. shareholder inclusion year is allocated to the domestic pass-through owner.

§1.965-4 Disregard of certain transactions.

(a) Scope.  This section provides rules that disregard certain transactions for purposes of applying section 965 to a United States shareholder.  Paragraph (b) of this section provides rules that disregard transactions undertaken with a principal purpose of

ADMIN_03443

changing the amount of a section 965 element of a United States shareholder. Paragraph (c) of this section provides rules that disregard certain changes in method of accounting and entity classification elections that would otherwise change the amount of a section 965 element.  Paragraph (d) of this section defines the term section 965 element.  Paragraph (e) of this section provides rules of application concerning paragraphs (b) and (c) of this section.  Paragraph (f) of this section provides rules that disregard certain transactions occurring between E&P measurement dates.  Paragraph (g) of this section provides examples illustrating the application of this section.

(b) <u>Transactions undertaken with a principal purpose of changing the amount of a section 965 element</u>--(1) <u>General rule</u>.  Except as otherwise provided in paragraph (e)(3) of this section, a transaction is disregarded for purposes of determining the amounts of all section 965 elements of a United States shareholder if each of the following conditions is satisfied with respect to any section 965 element of the United States shareholder--

(i) The transaction occurs, in whole or in part, on or after November 2, 2017 (the <u>specified date</u>);

(ii) The transaction is undertaken with a principal purpose of changing the amount of a section 965 element of the United States shareholder; and

(iii) The transaction would, without regard to this paragraph (b)(1), change the amount of the section 965 element of the United States shareholder.

(2) <u>Presumptions and exceptions for the application of the general rule</u>--(i) <u>Overview</u>.  Under paragraphs (b)(2)(iii) through (v) of this section, certain transactions are presumed to be undertaken with a principal purpose of changing the amount of a

231

section 965 element of a United States shareholder for purposes of paragraph (b)(1) of this section. The presumptions described in paragraphs (b)(2)(iii) through (v) of this section may be rebutted only if facts and circumstances clearly establish that the transaction was not undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder. A taxpayer that takes the position that the presumption is rebutted must attach a statement to its return for its taxable year in which or with which the relevant taxable year of the relevant specified foreign corporation ends disclosing that it has rebutted the presumption. In the case of a transaction described in paragraph (b)(2)(iii) or (iv) of this section, if the presumption does not apply because the transaction occurs in the ordinary course of business, whether the transaction was undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder must be determined under all the facts and circumstances. Under paragraphs (b)(2)(iii) through (v) of this section, certain transactions are treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder, and, therefore, such transactions are disregarded under paragraph (b)(1) of this section if the conditions of paragraphs (b)(1)(i) and (iii) of this section are satisfied. Further, under paragraph (b)(2)(iii) of this section, certain distributions are treated per se as not being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder and therefore are not disregarded under paragraph (b)(1) of this section.

(ii) Definitions--(A) Relatedness. For purposes of paragraphs (b)(2)(iii) through (v) of this section, a person is treated as related to a United States shareholder if, either

ADMIN_03445

immediately before or immediately after the transaction (or series of related transactions), the person bears a relationship to the United States shareholder described in section 267(b) or section 707(b).

(B) _Transfer_--(1) _In general_.  For purposes of paragraphs (b)(2)(iii) and (v) of this section, the term _transfer_ includes any disposition of stock or property, including a sale or exchange, contribution, distribution, issuance, redemption, recapitalization, or loan of stock or property, and includes an indirect transfer of stock or property.

(2) _Indirect transfer_.  For purposes of paragraph (b)(2)(ii)(B)(1) of this section, the term _indirect transfer_ includes a transfer of property or stock owned by an entity through a transfer of an interest in such entity (or an interest in an entity that has a direct or indirect interest in such entity), and a transfer of property or stock to a person through a transfer of property or stock to a pass-through entity of which such person is a direct or indirect owner.

(iii) _Cash reduction transactions_--(A) _General rule_.  For purposes of paragraph (b)(1) of this section, a cash reduction transaction is presumed to be undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder.  For this purpose, the term _cash reduction transaction_ means a transfer of cash, accounts receivable, or cash-equivalent assets by a specified foreign corporation to a United States shareholder of the specified foreign corporation or a person related to a United States shareholder of the specified foreign corporation, or an assumption by a specified foreign corporation of an account payable of a United States shareholder of the specified foreign corporation or a person related to a United States shareholder of the specified foreign corporation, if such transfer or assumption would, without regard to

233

ADMIN_03446

paragraph (b)(1) of this section, reduce the aggregate foreign cash position of the United States shareholder.  The presumption described in this paragraph (b)(2)(iii) does not apply to a cash reduction transaction that occurs in the ordinary course of business.

(B) <u>Per se rules for certain distributions</u>.  Notwithstanding the presumption described in paragraph (b)(2)(iii)(A) of this section, except in the case of a specified distribution, a cash reduction transaction that is a distribution by a specified foreign corporation to a United States shareholder of the specified foreign corporation is treated per se as not being undertaken with a principal purpose of changing the amount of a section 965 element of the United States shareholder for purposes of paragraph (b)(1) of this section.  A specified distribution is treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder for purposes of paragraph (b)(1) of this section.  For purposes of this paragraph (b)(2)(iii)(B), the term <u>specified distribution</u> means a cash reduction transaction that is a distribution by a specified foreign corporation of a United States shareholder if and to the extent that, at the time of the distribution, there was a plan or intention for the distributee to transfer cash, accounts receivable, or cash-equivalent assets to any specified foreign corporation of the United States shareholder or a distribution that is a non pro rata distribution to a foreign person that is related to the United States shareholder.  For purposes of the preceding sentence, there is no plan or intention for the distributee to transfer cash, accounts receivable, or cash-equivalent assets to any specified foreign corporation of the United States shareholder if the transfer is pursuant to a legal obligation entered into before November 2, 2017.  A taxpayer that takes the position that a cash reduction transaction is not a specified

ADMIN_03447

distribution because a transfer of cash, accounts receivable, or cash-equivalent asset is pursuant to a legal obligation entered into before November 2, 2017, must attach a statement to its return for its taxable year in which or with which the relevant taxable year of the relevant specified foreign corporation ends disclosing the position.

(iv) E&P reduction transactions--(A) General rule.  For purposes of paragraph (b)(1) of this section, an E&P reduction transaction is presumed to be undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder.  For purposes of this paragraph (b)(2)(iv), the term E&P reduction transaction means a transaction between a specified foreign corporation and any of a United States shareholder of the specified foreign corporation, another specified foreign corporation of a United States shareholder of the specified foreign corporation, or any person related to a United States shareholder of the specified foreign corporation, if the transaction would, without regard to paragraph (b)(1) of this section, reduce either the accumulated post-1986 deferred foreign income or the post-1986 undistributed earnings (as defined in section 902(c)(1)) of the specified foreign corporation or another specified foreign corporation of any United States shareholder of such specified foreign corporation.  The presumption described in this paragraph (b)(2)(iv)(A) does not apply to an E&P reduction transaction that occurs in the ordinary course of business.

(B) Per se rule for specified transactions.  A specified transaction is treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder for purposes of paragraph (b)(1) of this section.  For purposes of the preceding sentence, the term specified transaction means an E&P reduction transaction that involves one or more of the following:  a complete

235

liquidation of a specified foreign corporation to which section 331 applies; a sale or other disposition of stock by a specified foreign corporation; or a distribution by a specified foreign corporation that reduces the earnings and profits of the specified foreign corporation pursuant to section 312(a)(3).

(v) Pro rata share transactions--(A) General rule. For purposes of paragraph (b)(1) of this section, a pro rata share transaction is presumed to be undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder. For this purpose, the term pro rata share transaction means either a pro rata share reduction transaction or an E&P deficit transaction.

(1) Definition of pro rata share reduction transaction. For purposes of this paragraph (b)(2)(v)(A), the term pro rata share reduction transaction means a transfer of the stock of a specified foreign corporation by either a United States shareholder of the specified foreign corporation or a person related to a United States shareholder of the specified foreign corporation (including by the specified foreign corporation itself) to a person related to the United States shareholder if the transfer would, without regard to paragraph (b)(1) of this section, reduce the United States shareholder's pro rata share of the section 965(a) earnings amount of the specified foreign corporation, reduce the United States shareholder's pro rata share of the cash position of the specified foreign corporation, or both.

(2) Definition of E&P deficit transaction. For purposes of this paragraph (b)(2)(v)(A), the term E&P deficit transaction means a transfer to either a United States shareholder or a person related to the United States shareholder of the stock of an E&P deficit foreign corporation by a person related to the United States shareholder

236

(including by the E&P deficit foreign corporation itself) if the transfer would, without regard to paragraph (b)(1) of this section, increase the United States shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation.

(B) Per se rule for internal group transactions. An internal group transaction is treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder for purposes of paragraph (b)(1) of this section. For purposes of the preceding sentence, the term internal group transaction means a pro rata share transaction if, immediately before or after the transfer, the transferor of the stock of the specified foreign corporation and the transferee of such stock are members of an affiliated group in which the United States shareholder is a member. For this purpose, the term affiliated group has the meaning set forth in section 1504(a), determined without regard to paragraphs (1) through (8) of section 1504(b), and the term members of an affiliated group means entities included in the same affiliated group. For purposes of identifying an affiliated group and the members of such group, each partner in a partnership, as determined without regard to this sentence, is treated as holding its proportionate share of the stock held by the partnership, as determined under the rules and principles of sections 701 through 777, and if one or more members of an affiliated group own, in the aggregate, at least 80 percent of the interests in a partnership's capital or profits, the partnership will be treated as a corporation that is a member of the affiliated group.

(C) Example. The following example illustrates the application of the rules in this paragraph (b)(2)(v).

(1) Facts. FP, a foreign corporation, owns all of the stock of USP, a domestic corporation. USP owns all of the stock of FS, a foreign corporation. USP has a

237

ADMIN_03450

calendar year taxable year; FS's taxable year ends November 30. On January 2, 2018, USP transfers all of the stock of FS to FP in exchange for cash. On January 3, 2018, FS makes a distribution with respect to the stock transferred to FP. USP treats the transaction as a taxable sale of the FS stock and claims a dividends received deduction under section 245A with respect to its deemed dividend under section 1248(j) as a result of the sale. FS has post-1986 earnings and profits as of December 31, 2017, and no post-1986 earnings and profits that are attributable to income effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1 or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959.

(2) Analysis. The transfer of the stock of FS is a pro rata share reduction transaction and thus a pro rata share transaction because such transfer is by USP, a United States shareholder, to FP, a person related to USP, and the transfer would, without regard to the rule in paragraph (b)(1) of this section, reduce USP's pro rata share of the section 965(a) earnings amount of FS. Because USP and FP are also members of an affiliated group within the meaning of paragraph (b)(2)(v)(B) of this section, the transfer of the stock of FS is also an internal group transaction and is treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of USP. Accordingly, because the transfer occurs after the specified date and reduces USP's section 965(a) inclusion amount with respect to FS, the transfer is disregarded for purposes of determining any section 965 element of USP with the result that, among other things, USP's pro rata share of FS's section 965(a) earnings amount is determined as if USP owned (within the meaning of section 958(a)) 100% of the stock of FS on the last day of FS's inclusion year and no other person received a distribution with respect to such stock during such year. See section 951(a)(2)(A) and (B).

(c) Disregard of certain changes in method of accounting and entity classification elections--(1) Changes in method of accounting. Any change in method of accounting made for a taxable year of a specified foreign corporation that ends in 2017 or 2018 is disregarded for purposes of determining the amounts of all section 965 elements with respect to a United States shareholder if the change in method of accounting would, without regard to this paragraph (c)(1), change the amount of any section 965 element described in paragraph (d)(1) or (2) of this section with respect to the United States shareholder, or change the amount of the section 965 element described in paragraph (d)(3) of this section other than by reason of an increase in a section 965(a) inclusion

238

ADMIN_03451

amount with respect to the specified foreign corporation, regardless of whether the change in method of accounting is made with a principal purpose of changing the amount of a section 965 element with respect to the United States shareholder.  The rule described in the preceding sentence applies regardless of whether the change in method of accounting was made in accordance with the procedures described in Rev. Proc. 2015-13, 2015-5 I.R.B. 419 (or successor), and regardless of whether the change in method of accounting was properly made, but it does not apply to a change in method of accounting for which the original and/or duplicate copy of any Form 3115, "Application for Change in Accounting Method," requesting the change was filed before the specified date (as defined in paragraph (b)(1) of this section).

(2) Entity classification elections.  Except as otherwise provided in paragraph (e)(3) of this section, an election under §301.7701-3 to change the classification of an entity that is filed on or after the specified date (as defined in paragraph (b)(1) of this section) is disregarded for purposes of determining the amounts of all section 965 elements of a United States shareholder if the election would, without regard to this paragraph (c)(2), change the amount of any section 965 element of the United States shareholder, regardless of whether the election is made with a principal purpose of changing the amount of a section 965 element of the United States shareholder.  An election filed on or after the specified date is subject to the preceding sentence even if the election was filed with an effective date that is before the specified date.

(d) Definition of a section 965 element.  For purposes of paragraphs (b) and (c) of this section, the term section 965 element means, with respect to a United States shareholder, any of the following amounts (collectively, section 965 elements)--

ADMIN_03452

(1) The United States shareholder's section 965(a) inclusion amount with respect to a specified foreign corporation;

(2) The aggregate foreign cash position of the United States shareholder; or

(3) The amount of foreign income taxes of a specified foreign corporation deemed paid by the United States shareholder under section 960 as a result of a section 965(a) inclusion.

(e) Rules for applying paragraphs (b) and (c) of this section--(1) Determination of whether there is a change in the amount of a section 965 element. For purposes of paragraph (b) and (c) of this section, there is a change in the amount of a section 965 element of a United States shareholder as a result of a transaction, change in accounting method, or election to change an entity's classification, if, without regard to paragraph (b)(1), (c)(1), or (c)(2) of this section, the transaction, change in accounting method, or change in entity classification would--

(i) Reduce the amount described in paragraph (d)(1) of this section,

(ii) Reduce the amount described in paragraph (d)(2) of this section, but only if such amount is less than the United States shareholder's aggregate section 965(a) inclusion amount, or

(iii) Increase the amount described in paragraph (d)(3) of this section.

(2) Treatment of domestic pass-through owners as United States shareholders. For purposes of paragraph (b) and (c) of this section, if a domestic pass-through entity is a United States shareholder, then a domestic pass-through owner with respect to the domestic pass-through entity that is not otherwise a United States shareholder is treated as a United States shareholder.

240

ADMIN_03453

(3) Exception for certain incorporation transactions--(i) In general. Paragraphs (b) and (c)(2) of this section do not apply to disregard a transfer of stock of a specified foreign corporation by a United States shareholder to a domestic corporation (for this purpose, including an S corporation), provided that--

(A) The transferee's section 965(a) inclusion amount with respect to the transferred stock of the specified foreign corporation is no lower than the transferor's section 965(a) inclusion amount with respect to the transferred stock of the specified foreign corporation, determined without regard to the transfer; and

(B) The transferee and the transferor determine their aggregate foreign cash position under paragraph (e)(3)(ii) of this section.

(ii) Aggregate foreign cash position.  In the case of a transfer described in paragraph (e)(3)(i) of this section, in order to rely on the exception in paragraph (e)(3)(i) of this section--

(A) The transferee must treat its pro rata share of the cash position of a specified foreign corporation as of a cash measurement date as of which it did not own the transferred stock of the specified foreign corporation as including the transferor's pro rata share of the cash position of the specified foreign corporation with respect to the transferred stock of the specified foreign corporation as of such cash measurement date for purposes of determining its aggregate foreign cash position; and

(B) The transferor must treat its pro rata share of the cash position of a specified foreign corporation as of a cash measurement date as of which it did not own the transferred stock of the specified foreign corporation as including the transferee's pro rata share of the cash position of the specified foreign corporation with respect to the

241

ADMIN_03454

transferred stock of the specified foreign corporation as of such cash measurement date for purposes of determining its aggregate foreign cash position.

(4) <u>Consequences of liquidation</u>--(i) <u>In general</u>.  In the case of a liquidation of a specified foreign corporation that is disregarded for purposes of determining the section 965 elements of a United States shareholder pursuant to paragraph (b) or (c)(2) of this section, for purposes of determining the amounts of the section 965 elements of the United States shareholder, the date that is treated as the last day of the taxable year of the specified foreign corporation is the later of--

(A) The date of the liquidation; and

(B) The specified liquidation date, if any.

(ii) <u>Specified liquidation date</u>.  The term <u>specified liquidation date</u> means, in the case of a liquidation of a specified foreign corporation pursuant to an entity classification election that is disregarded for purposes of determining the section 965 elements of a United States shareholder--

(A) November 30, 2017, with respect to a United States shareholder that must include in income under §1.367(b)-3 as a deemed dividend the all earnings and profits amount with respect to the United States shareholder's stock of the liquidating specified foreign corporation; or

(B) The date of filing of the entity classification election, with respect to all other United States shareholders.

(f) <u>Disregard of certain transactions occurring between E&P measurement dates</u>--(1) <u>Disregard of specified payments</u>.  Except as provided in paragraph (f)(3) of this section, a specified payment made by a specified foreign corporation (<u>payor specified</u>

ADMIN_03455

foreign corporation) to another specified foreign corporation (<u>payee specified foreign corporation</u>) is disregarded for purposes of determining the post-1986 earnings and profits of each of the payor specified foreign corporation and the payee specified foreign corporation as of the E&P measurement date on December 31, 2017.

(2) <u>Definition of specified payment</u>. For purposes of paragraph (f)(1) of this section, the term <u>specified payment</u> means any amount paid or accrued by the payor specified foreign corporation, including a distribution by the payor specified foreign corporation with respect to its stock, if each of the following conditions are satisfied:

(i) Immediately before or immediately after the payment or accrual of the amount, the payor specified foreign corporation and the payee specified foreign corporation are related within the meaning of section 954(d)(3), substituting the term "specified foreign corporation" for "controlled foreign corporation" in each place that it appears;

(ii) The payment or accrual of the amount occurs after November 2, 2017, and on or before December 31, 2017; and

(iii) The payment or accrual of the amount would, without regard to the application of paragraph (f)(1) of this section, reduce the post-1986 earnings and profits of the payor specified foreign corporation as of the E&P measurement date on December 31, 2017.

(3) <u>Non-application of disregard rule</u>. A section 958(a) U.S. shareholder may determine the post-1986 earnings and profits of a specified foreign corporation without regard to paragraph (f)(1) of this section, provided that it and every section 958(a) U.S. shareholder related to the first section 958(a) U.S. shareholder determines the post-1986 earnings and profits of each of its specified foreign corporations without regard to

243

ADMIN_03456

paragraph (f)(1) of this section. For purposes of this paragraph (f)(3), a person is treated as related to a section 958(a) U.S. shareholder if the person bears a relationship to the section 958(a) U.S. shareholder described in section 267(b) or 707(b).

(4) Examples. The following examples illustrate the application of the rules in this paragraph (f).

(i) Example 1. Deductible payment between wholly owned specified foreign corporations is a specified payment. (A) Facts. USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation, which owns all of the stock of CFC2, also a foreign corporation. USP, CFC1, and CFC2 have calendar year taxable years. On November 2, 2017, each of CFC1 and CFC2 has post-1986 earnings and profits of 100u. Neither CFC1 nor CFC2 has post-1986 earnings and profits that are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1 or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder; therefore, no adjustment is made under section 965(d)(2) or §1.965-1(f)(7), and each of CFC1's and CFC2's accumulated post-1986 deferred foreign income is equal to such corporation's post-1986 earnings and profits. On November 3, 2017, CFC2 makes a deductible payment of 10u to CFC1. The payment does not constitute subpart F income. CFC1 and CFC2 have no other items of income or deduction.

(B) Analysis. The payment from CFC2 to CFC1 is a specified payment because (1) CFC1 and CFC2 are related specified foreign corporations; (2) the payment occurs after November 2, 2017, and on or before December 31, 2017; and (3) the payment would, without regard to the application of the rule in paragraph (f)(1) of this section, reduce the post-1986 earnings and profits of CFC2 as of the E&P measurement date on December 31, 2017. Under paragraph (f)(1) of this section, the payment is disregarded, and CFC1 and CFC2 each have post-1986 earnings and profits of 100u as of December 31, 2017. Accordingly, the section 965(a) earnings amount of each of CFC1 and CFC2 is 100u.

(ii) Example 2. Distribution is a specified payment. (A) Facts. The facts are the same as in paragraph (f)(4)(i)(A) of this section (the facts in Example 1), except instead of a deductible payment to CFC1, CFC2 makes a 10u distribution on November 3, 2017, that, without regard to paragraph (f)(1) of this section would reduce the post-1986 earnings and profits of CFC2 as of the E&P measurement date on December 31, 2017, and increase the post-1986 earnings and profits of CFC1 as of the E&P measurement date on December 31, 2017, by 10u.

244

ADMIN_03457

(B) Analysis. The distribution is a specified payment because (1) CFC1 and CFC2 are related specified foreign corporations; (2) the distribution occurs after November 2, 2017, and on or before December 31, 2017; and (3) the distribution would, without regard to the application of the rule in paragraph (f)(1) of this section, reduce the post-1986 earnings and profits of CFC2 as of the E&P measurement date on December 31, 2017. Under paragraph (f)(1) of this section, the distribution is disregarded with the result that CFC1 and CFC2 each have post-1986 earnings and profits of 100u as of the E&P measurement date on December 31, 2017, and a section 965(a) earnings amount of 100u.

(iii) Example 3. Deductible payment between related (but not wholly owned) specified foreign corporations is a specified payment. (A) Facts. The facts are the same as in paragraph (f)(4)(i)(A) of this section (the facts in Example 1), except that CFC1 owns only 51% of the only class of stock of CFC2, the remainder of which is owned by USI, a United States citizen unrelated to USP, CFC1, and CFC2.

(B) Analysis. The analysis is the same as in paragraph (f)(4)(i)(B) of this section (the analysis in Example 1); thus, the payment is disregarded with the result that CFC1 and CFC2 each have post-1986 earnings and profits of 100u as of the E&P measurement date on December 31, 2017, and a section 965(a) earnings amount of 100u.

(iv) Example 4. Deductible payment between unrelated specified foreign corporations is not a specified payment. (A) Facts. The facts are the same as in paragraph (f)(4)(i)(A) of this section (the facts in Example 1), except that CFC1 owns only 50% of the only class of stock of CFC2, the remainder of which is owned by USI, a United States citizen unrelated to USP, CFC1, and CFC2.

(B) Analysis. Paragraph (f)(1) of this section does not apply because CFC1 and CFC2 are not related. Thus, the payment is taken into account with the result that CFC1 has post-1986 earnings and profits of 110u as of the E&P measurement date on December 31, 2017, and a section 965(a) earnings amount of 110u.

(v) Example 5. Deductible payment and income accrued from unrelated persons are not specified payments. (A) Facts. The facts are the same as in paragraph (f)(4)(i)(A) of this section (the facts in Example 1), except that CFC2 does not make a deductible payment to CFC1, and, between E&P measurement dates, CFC2 accrues gross income of 20u from a person that is not related to CFC2, and CFC1 incurs a deductible expense of 20u to a person that is not related to CFC1.

(B) Analysis. Paragraph (f)(1) of this section does not apply because neither the deductible expense of CFC1 nor the income accrual by CFC2 are attributable to a specified payment.

(vi) Example 6. Deductible payment and income accrued with respect to unrelated persons are not specified payments; deductible payment between wholly specified foreign corporations is a specified payment. (A) Facts. The facts are the

ADMIN_03458

same as in paragraph (f)(4)(v)(A) of this section (the facts in <u>Example 5</u>), except that CFC2 also makes a deductible payment of 10u to CFC1 on November 3, 2017.

(B) <u>Analysis</u>. The deductible payment is a specified payment because (<u>1</u>) CFC1 and CFC2 are related specified foreign corporations; (<u>2</u>) the payment occurs after November 2, 2017, and on or before December 31, 2017; and (<u>3</u>) the deductible payment would, without regard to the application of the rule in paragraph (f)(1) of this section, reduce the post-1986 earnings and profits of CFC2 as of the E&P measurement date on December 31, 2017. Accordingly, under paragraph (f)(1) of this section, the deductible payment is disregarded with the result that CFC1 and CFC2 have 80u and 120u of post-1986 earnings and profits as of the E&P measurement date on December 31, 2017, respectively. Accordingly, CFC1 and CFC2 have section 965(a) earnings amounts of 100u and 120u, respectively.

<u>§1.965-5 Allowance of a credit or deduction for foreign income taxes.</u>

(a) <u>Scope</u>. This section provides rules for the allowance of a credit or deduction for foreign income taxes in connection with the application of section 965. Paragraph (b) of this section provides rules under section 965(g) for the allowance of a credit or deduction for foreign income taxes paid or accrued. Paragraph (c) of this section provides rules for the allowance of a credit or deduction for foreign income taxes treated as paid or accrued in connection with the application of section 965. Paragraph (d) of this section defines the term applicable percentage.

(b) <u>Rules for foreign income taxes paid or accrued</u>. Neither a deduction (including under section 164) nor a credit under section 901 is allowed for the applicable percentage of any foreign income taxes paid or accrued with respect to any amount for which a section 965(c) deduction is allowed for a section 958(a) U.S. shareholder inclusion year. Neither a deduction (including under section 164) nor a credit under section 901 is allowed for the applicable percentage of any foreign income taxes attributable to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits. Accordingly, for example, no

246

ADMIN_03459

deduction or credit is allowed for the applicable percentage of any withholding taxes imposed on a United States shareholder by the jurisdiction of residence of the distributing foreign corporation with respect to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits. Similarly, for example, no deduction or credit is allowed for the applicable percentage of foreign income taxes imposed on a United States citizen by the citizen's jurisdiction of residence upon receipt of a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits.

(c) Rules for foreign income taxes treated as paid or accrued--(1) Disallowed credit--(i) In general. A credit under section 901 is not allowed for the applicable percentage of any foreign income taxes treated as paid or accrued with respect to any amount for which a section 965(c) deduction is allowed for a section 958(a) U.S. shareholder inclusion year. For purposes of the preceding sentence, taxes treated as paid or accrued include foreign income taxes deemed paid under section 960(a)(1) with respect to a section 965(a) inclusion, foreign income taxes deemed paid under section 960(a)(3) (as in effect on December 21, 2017) or section 960(b) (as applicable to taxable years of controlled foreign corporations beginning after December 31, 2017) with respect to distributions of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits, foreign income taxes allocated to an entity under §1.901-2(f)(4), and a distributive share of foreign income taxes paid or accrued by a partnership.

(ii) Foreign income taxes deemed paid under section 960(a)(3) (as in effect on December 21, 2017). Foreign income taxes deemed paid by a domestic corporation

247

ADMIN_03460

under section 960(a)(3) with respect to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits include only the foreign income taxes paid or accrued by an upper-tier foreign corporation with respect to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits from a lower-tier foreign corporation. No credit is allowed under section 960(a)(3) or any other section for foreign income taxes that would have been deemed paid under section 960(a)(1) with respect to the portion of a section 965(a) earnings amount that is reduced under §1.965-1(b)(2) or §1.965-8(b).

(iii) [Reserved]

(2) <u>Disallowed deduction</u>.  No deduction (including under section 164) is allowed for the applicable percentage of any foreign income taxes treated as paid or accrued with respect to any amount for which a section 965(c) deduction is allowed.  Such taxes include foreign income taxes allocated to an entity under §1.901-2(f)(4) and a distributive share of foreign income taxes paid or accrued by a partnership.

(3) <u>Coordination with section 78</u>--(i) <u>In general</u>.  With respect to foreign income taxes deemed paid by a domestic corporation with respect to its section 965(a) inclusion amount for a section 958(a) U.S. shareholder inclusion year, section 78 applies only to so much of such taxes as bears the same proportion to the amount of such taxes as--

(A) The excess of--

(<u>1</u>) The section 965(a) inclusion amount for a section 958(a) U.S. shareholder inclusion year, over

ADMIN_03461

(2) The section 965(c) deduction amount allowable with respect to such section 965(a) inclusion amount, bears to

(B) Such section 965(a) inclusion amount.

(ii) Domestic corporation that is a domestic pass-through owner. With respect to foreign income taxes deemed paid by a domestic corporation attributable to such corporation's domestic pass-through owner share of a section 965(a) inclusion amount of a domestic pass-through entity, section 78 applies only to so much of such taxes as bears the same proportion to the amount of such taxes as the proportion determined under paragraph (c)(3)(i) of this section as applied to the domestic pass-through entity's section 965(a) inclusion amount for a section 958(a) U.S. shareholder inclusion year.

(d) Applicable percentage--(1) In general. For purposes of this section, except as provided in paragraph (d)(2) and (d)(3) of this section, the term applicable percentage means, with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year, the amount (expressed as a percentage) equal to the sum of--

(i) 0.771 multiplied by the ratio of--

(A) The section 958(a) U.S. shareholder's 8 percent rate amount for the section 958(a) U.S. shareholder inclusion year, divided by

(B) The sum of the section 958(a) U.S. shareholder's 8 percent rate amount for the section 958(a) U.S. shareholder inclusion year plus the section 958(a) U.S. shareholder's 15.5 percent rate amount for the section 958(a) U.S. shareholder inclusion year; plus

(ii) 0.557 multiplied by the ratio of--

ADMIN_03462

(A) The section 958(a) U.S. shareholder's 15.5 percent rate amount for the section 958(a) U.S. shareholder inclusion year, divided by

(B) The amount described in paragraph (d)(1)(i)(B) of this section.

(2) <u>No section 965(a) inclusion amount</u>. If a section 958(a) U.S. shareholder does not have an aggregate section 965(a) inclusion amount, the section 958(a) U.S. shareholder's applicable percentage is 55.7 percent.

(3) <u>Applicable percentage for domestic pass-through owners</u>. In the case of a domestic pass-through owner with respect to a domestic pass-through entity, the domestic pass-through owner's applicable percentage that is applied to foreign income taxes attributable to the domestic pass-through owner share of the section 965(a) inclusion amount or of distributions of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits is equal to the applicable percentage determined under paragraph (d)(1) or (2) of this section, as applicable, with respect to the domestic pass-through entity.

(4) <u>Applicable percentage with respect to certain distributions of previously taxed earnings and profits</u>. In the case of a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits (other than with respect to a section 958(a) U.S. shareholder described in paragraph (d)(2) of this section), the applicable percentage that is applied to foreign income taxes attributable to the distribution is the applicable percentage that applied with respect to the section 958(a) U.S. shareholder and the section 958(a) U.S. inclusion year in which, or with which, the inclusion year of the relevant deferred foreign income corporation ends. For this purpose, the relevant deferred foreign income corporation is the deferred foreign

ADMIN_03463

income corporation with respect to which the section 958(a) U.S. shareholder had the section 965(a) inclusion as a result of which the section 965(a) previously taxed earnings and profits first arose (as described in §1.965-2(c)) or the section 965(b) previously taxed earnings and profits first arose (as described in §1.965-2(d)).

§1.965-6 Computation of foreign income taxes deemed paid and allocation and apportionment of deductions.

(a) Scope. This section provides rules for the computation of foreign income taxes deemed paid and the allocation and apportionment of deductions. Paragraph (b) of this section provides the general rules for the computation of foreign income taxes deemed paid under sections 902 and 960. Paragraph (c) of this section provides rules for allocation and apportionment of expenses. Paragraph (d) of this section provides rules for foreign income taxes associated with hovering deficits.

(b) Computation of foreign incomes taxes deemed paid--(1) In general. For purposes of determining foreign income taxes deemed paid under section 960(a)(1) with respect to a section 965(a) inclusion attributable to a deferred foreign income corporation that is a member of a qualified group (as defined in section 902(b)(2)), section 902 applies as if the section 965(a) inclusion, translated (if necessary) into the functional currency of the deferred foreign income corporation using the spot rate on December 31, 2017, were a dividend paid by the deferred foreign income corporation. For purposes of computing the amount of foreign income taxes deemed paid under section 960(a)(1), §§1.965-2(b), 1.965-5, sections 902 and 960, the regulations under those sections, and this section apply.

(2) Dividend or inclusion in excess of post-1986 undistributed earnings. When the denominator of the section 902 fraction is positive but less than the numerator of

251

ADMIN_03464

such fraction, the section 902 fraction is one. When the denominator of the section 902 fraction is zero or less than zero, the section 902 fraction is zero, and no foreign taxes are deemed paid.

(3) Treatment of adjustment under section 965(b)(4)(B). For purposes of section 902(c)(1), the post-1986 undistributed earnings of an E&P deficit foreign corporation are increased under section 965(b)(4)(B) and §1.965-2(d)(2)(i)(A) as of the first day of the foreign corporation's first taxable year following the E&P deficit foreign corporation's last taxable year that begins before January 1, 2018.

(4) Section 902 fraction. The term section 902 fraction means, with respect to either a deferred foreign income corporation or an E&P deficit foreign corporation, the fraction that is--

(i) The dividends paid by, or the inclusion under section 951(a)(1) (including a section 965(a) inclusion) with respect to, the foreign corporation, as applicable (the numerator), divided by

(ii) The foreign corporation's post-1986 undistributed earnings or pre-1987 accumulated profits, as applicable (the denominator).

(c) Allocation and apportionment of deductions. For purposes of allocating and apportioning expenses, a section 965(c) deduction does not result in any gross income, including a section 965(a) inclusion, being treated as exempt, excluded, or eliminated income within the meaning of section 864(e)(3) or §1.861-8T(d). Similarly, a section 965(c) deduction does not result in the treatment of stock as an exempt asset within the meaning of section 864(e)(3) or §1.861-8T(d). In addition, consistent with the general inapplicability of §1.861-8T(d)(2) to earnings and profits described in section 959(c)(1)

252

ADMIN_03465

or 959(c)(2), neither section 965(a) previously taxed earnings and profits nor section 965(b) previously taxed earnings and profits are treated as giving rise to gross income that is exempt, excluded, or eliminated income. Similarly, the asset that gives rise to a section 965(a) inclusion, section 965(a) previously taxed earnings and profits, or section 965(b) previously taxed earnings and profits is not treated as a tax-exempt asset.

(d) <u>Hovering deficits</u>. In the last taxable year that begins before January 1, 2018, of a deferred foreign income corporation that is also a foreign surviving corporation, as defined in §1.367(b)-7(a), solely for purposes of determining the amount of related taxes that are included in post-1986 foreign income taxes under §1.367(b)-7(d)(2)(iii)--

(1) The post-transaction earnings described in §1.367(b)-7(d)(2)(ii) that can be offset by a hovering deficit include any post-transaction earnings earned in that year that were not considered accumulated because they were included in income under section 965 and §1.965-1(b)(1) by a section 958(a) U.S. shareholder; and

(2) Any offset for purposes of §1.367(b)-7(d)(2)(ii) is treated as occurring on the last day of the foreign surviving corporation's inclusion year.

§1.965-7 <u>Elections, payment, and other special rules</u>.

(a) <u>Scope</u>. This section provides rules regarding certain elections and payments. Paragraph (b) of this section provides rules regarding the section 965(h) election. Paragraph (c) of this section provides rules regarding the section 965(i) election. Paragraph (d) of this section provides rules regarding the section 965(m) election and a special rule for real estate investment trusts. Paragraph (e) of this section provides rules regarding the section 965(n) election. Paragraph (f) of this section provides rules regarding the election to use the alternative method for calculating post-1986 earnings

253

ADMIN_03466

and profits.  Paragraph (g) of this section provides definitions that apply for purposes of this section.

(b) Section 965(h) election--(1) In general.  Any person with a section 965(h) net tax liability (that is, a section 958(a) U.S. shareholder or a domestic pass-through owner with respect to a domestic pass-through entity that is a section 958(a) U.S. shareholder, but not a domestic pass-through entity itself) may elect under section 965(h) and this paragraph (b) to pay its section 965(h) net tax liability in eight installments.  This election may be revoked only by paying the full amount of the remaining unpaid section 965(h) net tax liability.

(i) Amount of installments.  Except as provided in paragraph (b)(3) of this section, if a person makes a section 965(h) election, the amounts of the installments are--

(A) Eight percent of the section 965(h) net tax liability in the case of each of the first five installments;

(B) Fifteen percent of the section 965(h) net tax liability in the case of the sixth installment;

(C) Twenty percent of the section 965(h) net tax liability in the case of the seventh installment; and

(D) Twenty-five percent of the section 965(h) net tax liability in the case of the eighth installment.

(ii) Increased installments due to a deficiency or a timely filed or amended return--(A) In general.  If a person makes a section 965(h) election, except as provided in paragraph (b)(1)(ii)(C) of this section, any deficiency or additional liability will be

254

ADMIN_03467

prorated to the installments described under paragraph (b)(1)(i) of this section if any of the following occur:

(1) A deficiency is assessed with respect to the person's section 965(h) net tax liability;

(2) The person files a return by the due date of the return (taking into account extensions, if any) increasing the amount of its section 965(h) net tax liability beyond that taken into account in paying the first installment described under paragraph (b)(1)(i) of this section; or

(3) The person files an amended return that reflects an increase in the amount of its section 965(h) net tax liability.

(B) Timing. If the due date for the payment of an installment to which the deficiency is prorated has passed, the amount prorated to such installment must be paid on notice and demand by the Secretary, or, in the case of an additional liability reported on a return increasing the amount of the section 965(h) net tax liability after payment of the first installment or on an amended return, with the filing of the return. If the due date for the payment of an installment to which the deficiency or additional liability is prorated has not passed, then such amount will be due at the same time as, and as part of, the relevant installment.

(C) Exception for negligence, intentional disregard, or fraud. If a deficiency or additional liability is due to negligence, intentional disregard of rules and regulations, or fraud with intent to evade tax, the proration rule of this paragraph (b)(1)(ii) will not apply, and the deficiency or additional liability (as well as any applicable interest and penalties) must be paid on notice and demand by the Secretary or, in the case of an additional

255

ADMIN_03468

liability reported on a return increasing the amount of the section 965(h) net tax liability after payment of the first installment or on an amended return, with the filing of the return.

(iii) <u>Due date of installments</u>--(A) <u>In general</u>.  If a person makes a section 965(h) election, the first installment payment is due on the due date (without regard to extensions) for the return for the relevant taxable year.  For purposes of this paragraph (b), the term <u>relevant taxable year</u> means, in the case in which the person is a section 958(a) U.S. shareholder, the section 958(a) U.S. shareholder inclusion year, or, in the case in which the person is a domestic pass-through owner, the taxable year in which the person has the section 965(a) inclusion to which the section 965(h) net tax liability is attributable.  Each succeeding installment payment is due on the due date (without regard to extensions) for the return for the taxable year following the taxable year with respect to which the previous installment payment was made.

(B) <u>Extension for specified individuals</u>.  If a person is a specified individual with respect to a taxable year within which an installment payment is due pursuant to paragraph (b)(1)(iii)(A) of this section, then, for purposes of determining the due date of an installment payment under paragraph (b)(1)(iii)(A) of this section, the due date of the return (without regard to extensions) due within the taxable year will be treated as the fifteenth day of the sixth month following the close of the prior taxable year.  This paragraph (b)(1)(iii)(B) is applicable regardless of whether the person is a specified individual with respect to the relevant taxable year.

(2) <u>Manner of making election</u>--(i) <u>Eligibility</u>.  Any person with a section 965(h) net tax liability may make the section 965(h) election, provided that, with respect to the

ADMIN_03469

person, none of the acceleration events described in paragraph (b)(3)(ii) of this section has occurred before the election is made. Notwithstanding the preceding sentence, a person that would be eligible to make the section 965(h) election but for the occurrence of an event described in paragraph (b)(3)(ii) of this section may make the section 965(h) election if the exception described in paragraph (b)(3)(iii)(A) of this section applies.

(ii) <u>Timing</u>. A section 965(h) election must be made no later than the due date (taking into account extensions, if any, or any additional time that would have been granted if the person had made an extension request) for the return for the relevant taxable year. Relief is not available under §301.9100-2 or 301.9100-3 to file a late election.

(iii) <u>Election statement</u>. Except as otherwise provided in publications, forms, instructions, or other guidance, to make a section 965(h) election, a person must attach a statement, signed under penalties of perjury consistent with the rules for signatures applicable to the person's return, to its return for the relevant taxable year. The statement must include the person's name, taxpayer identification number, total net tax liability under section 965, section 965(h) net tax liability, section 965(i) net tax liability with respect to which a section 965(i) election is effective (if applicable), and the anticipated amounts of each installment described under paragraph (b)(1)(i) of this section. The statement must be filed in the manner prescribed in publications, forms, instructions, or other guidance. The attachment of an unsigned copy of the election statement to the timely-filed return for the relevant taxable year satisfies the signature requirement of this paragraph (b)(2)(iii) if the person making the election retains the original signed election statement in the manner specified by §1.6001-1(e).

257

ADMIN_03470

(3) Acceleration of payment--(i) Acceleration.  Notwithstanding paragraph (b)(1)(i) of this section, if a person makes a section 965(h) election and an acceleration event described in paragraph (b)(3)(ii) of this section subsequently occurs, then, except as provided in paragraph (b)(3)(iii) of this section, the unpaid portion of the remaining installments will be due on the date of the acceleration event (or in the case of a title 11 or similar case, the day before the petition is filed).

(ii) Acceleration events.  The following events are acceleration events for purposes of paragraph (b)(3)(i) of this section with respect to a person that has made a section 965(h) election--

(A) An addition to tax is assessed for the failure to timely pay an installment described in paragraph (b)(1)(i) of this section;

(B) A liquidation, sale, exchange, or other disposition of substantially all of the assets of the person (including in a title 11 or similar case, or, in the case of an individual, by reason of death);

(C) In the case of a person that is not an individual, a cessation of business by the person;

(D) Any event that results in the person no longer being a United States person, including a resident alien (as defined in section 7701(b)(1)(A)) becoming a nonresident alien (as defined in section 7701(b)(1)(B));

(E) In the case of a person that was not a member of any consolidated group, the person becoming a member of a consolidated group;

ADMIN_03471

(F) In the case of a consolidated group, the group ceasing to exist (including by reason of the acquisition of a consolidated group within the meaning of §1.1502-13(j)(5)) or the group otherwise discontinuing in the filing of a consolidated return; or

(G) A determination by the Commissioner described in the second sentence of paragraph (b)(3)(iii)(C)(2) of this section.

(iii) Eligible section 965(h) transferee exception--(A) In general.  Paragraph (b)(3)(i) of this section does not apply (such that the unpaid portion of all remaining installments will not be due as of the date of the acceleration event) to a person with respect to which an acceleration event occurs if the requirements described in paragraphs (b)(3)(iii)(A)(1) and (2) of this section are satisfied.  A person with respect to which an acceleration event described in this paragraph (b)(3)(iii)(A) occurs is referred to as an eligible section 965(h) transferor.

(1) Requirement to have a covered acceleration event.  The acceleration event satisfies the requirements of this paragraph (b)(3)(iii)(A)(1) if it is described in--

(i) Paragraph (b)(3)(ii)(B) of this section, and the acceleration event is a qualifying consolidated group member transaction within the meaning of paragraph (b)(3)(iii)(E) of this section;

(ii) Paragraph (b)(3)(ii)(B) of this section (other than, in the case of an individual, an acceleration event caused by reason of death) in a transaction that is not a qualifying consolidated group member transaction;

(iii) Paragraph (b)(3)(ii)(E) of this section;

(iv) Paragraph (b)(3)(ii)(F) of this section, and the acceleration event results from the acquisition of a consolidated group within the meaning of §1.1502-13(j)(5), and the

ADMIN_03472

acquired consolidated group members join a different consolidated group as of the day following the acquisition;

(v) Paragraph (b)(3)(ii)(F) of this section, and the group ceases to exist as a result of the transfer of all of the assets of one or more members of the consolidated group to other members with only one entity remaining (the successor entity); or

(vi) Paragraph (b)(3)(ii)(F) of this section, and the group ceases to exist as a result of the termination of the subchapter S election pursuant to section 1362(d) of a shareholder of the common parent of the consolidated group and, for the shareholder's taxable year immediately following the termination, the shareholder joins in the filing of a consolidated return as a consolidated group that includes all of the former members of the former consolidated group.

(2) Requirement to enter into a transfer agreement. An eligible section 965(h) transferor and an eligible section 965(h) transferee (as defined in paragraph (b)(3)(iii)(B)(1) of this section) must enter into an agreement with the Commissioner that satisfies the requirements of paragraph (b)(3)(iii)(B) of this section.

(B) Transfer agreement--(1) Eligibility. A transfer agreement that satisfies the requirements of this paragraph (b)(3)(iii)(B) must be entered into by an eligible section 965(h) transferor and an eligible section 965(h) transferee. For this purpose, the term eligible section 965(h) transferee refers to a single United States person that is not a domestic pass-through entity and that--

(i) With respect to an acceleration event described in paragraph (b)(3)(iii)(A)(1)(i) of this section, is a departing member (as defined in paragraph (b)(3)(iii)(E)(1)(i) of this

ADMIN_03473

section) or its qualified successor (as defined in paragraph (b)(3)(iii)(E)(2) of this section);

(ii) With respect to an acceleration event described in paragraph (b)(3)(iii)(A)(1)(ii) of this section, acquires substantially all of the assets of an eligible section 965(h) transferor;

(iii) With respect to an acceleration event described in paragraph (b)(3)(iii)(A)(1)(iii) of this section, is the agent (within the meaning of §1.1502-77) of the consolidated group that the eligible section 965(h) transferor joins;

(iv) With respect to an acceleration event described in paragraph (b)(3)(iii)(A)(1)(iv) of this section, is the agent (within the meaning of §1.1502-77) of the surviving consolidated group;

(v) With respect to an acceleration event described in paragraph (b)(3)(iii)(A)(1)(v) of this section, is the successor entity (within the meaning of paragraph (b)(3)(iii)(A)(1)(v) of this section); or

(vi) With respect an acceleration event described in paragraph (b)(3)(iii)(A)(1)(vi) of this section, is the agent (within the meaning of §1.1502-77) of the consolidated group that includes the shareholder whose subchapter S election was terminated and all of the former members of the former consolidated group.

(2) Filing requirements--(i) In general. A transfer agreement must be timely filed. Except as provided in paragraph (b)(3)(iii)(B)(2)(ii) of this section, a transfer agreement is considered timely filed only if the transfer agreement is filed within 30 days of the date that the acceleration event occurs. The transfer agreement must be filed in accordance with the rules provided in publications forms, instructions, or other guidance. In

ADMIN_03474

addition, a duplicate copy of the transfer agreement must be attached to the returns of both the eligible section 965(h) transferee and the eligible section 965(h) transferor for the taxable year during which the acceleration event occurs filed by the due date for such returns (taking into account extensions, if any).  Relief is not available under §301.9100-2 or 301.9100-3 to file a transfer agreement late.

(ii) Transition rule.  If an acceleration event occurs on or before **[INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER]**, the transfer agreement must be filed by **[INSERT DATE 30 DAYS AFTER PUBLICATION IN THE FEDERAL REGISTER]**, to be considered timely filed.

(3) Signature requirement.  The transfer agreement that is filed within 30 days of the acceleration event or by the due date specified in paragraph (b)(3)(iii)(B)(2)(ii) of this section must be signed under penalties of perjury by a person who is authorized to sign a return on behalf of the eligible section 965(h) transferor and a person who is authorized to sign a return on behalf of the eligible section 965(h) transferee.

(4) Terms of agreement.  A transfer agreement under this paragraph (b)(3)(iii)(B) must be entitled "Transfer Agreement Under Section 965(h)(3)" and must contain the following information and representations--

(i) A statement that the document constitutes an agreement by the eligible section 965(h) transferee to assume the liability of the eligible section 965(h) transferor for any unpaid installment payments of the eligible section 965(h) transferor under section 965(h);

(ii) A statement that the eligible section 965(h) transferee (and, if the eligible section 965(h) transferor continues in existence immediately after the acceleration

ADMIN_03475

event, the eligible section 965(h) transferor) agrees to comply with all of the conditions and requirements of section 965(h) and paragraph (b) of this section, as well as any other applicable requirements in the section 965 regulations;

(iii) The name, address, and taxpayer identification number of the eligible section 965(h) transferor and the eligible section 965(h) transferee;

(iv) The amount of the eligible section 965(h) transferor's section 965(h) net tax liability remaining unpaid, as determined by the eligible section 965(h) transferor, which amount is subject to adjustment by the Commissioner;

(v) A copy of the eligible section 965(h) transferor's most recent Form 965-A or Form 965-B, as applicable, if the eligible section 965(h) transferor has been required to file a Form 965-A or Form 965-B;

(vi) A detailed description of the acceleration event that led to the transfer agreement;

(vii) A representation that the eligible section 965(h) transferee is able to make the remaining payments required under section 965(h) and paragraph (b) of this section with respect to the section 965(h) net tax liability being assumed;

(viii) If the eligible section 965(h) transferor continues to exist immediately after the acceleration event, an acknowledgement that the eligible section 965(h) transferor and any successor to the eligible section 965(h) transferor will remain jointly and severally liable for any unpaid installment payments of the eligible section 965(h) transferor under section 965(h), including, if applicable, under §1.1502-6;

(ix) A statement as to whether the leverage ratio of the eligible section 965(h) transferee and all subsidiary members of its affiliated group immediately after the

263

ADMIN_03476

acceleration event exceeds three to one, which ratio may be modified as provided in publications, forms, instructions, or other guidance;

(x) A certification by the eligible section 965(h) transferee stating that the eligible section 965(h) transferee waives the right to a notice of liability and consents to the immediate assessment of the portion of the section 965(h) net tax liability remaining unpaid; and

(xi) Any additional information, representation, or certification required by the Commissioner in publications, forms, instructions, or other guidance.

(5) Consolidated groups. For purposes of this paragraph (b)(3)(iii)(B), in the case of a consolidated group, the terms "eligible section 965(h) transferor" and "eligible section 965(h) transferee" each refer to a consolidated group that is a party to a covered acceleration event described in paragraph (b)(3)(iii)(A)(1) of this section. In such a case, any transfer agreement under this paragraph (b)(3)(iii)(B) must be entered into by the agent (as defined in §1.1502-77) of the relevant consolidated group.

(6) Leverage ratio. For purposes of paragraph (b)(3)(iii)(B)(4)(ix) of this section, and except as otherwise provided in publications, forms, instructions, or other guidance, the term leverage ratio means the ratio that the total indebtedness of the eligible section 965(h) transferee bears to the sum of its money and all other assets reduced (but not below zero) by such total indebtedness. For this purpose, the amount taken into account with respect to any asset is the adjusted basis thereof for purposes of determining gain, and the amount taken into account with respect to any indebtedness with original issue discount is its issue price plus the portion of the original issue

ADMIN_03477

discount previously accrued as determined under the rules of section 1272 (determined without regard to subsection (a)(7) or (b)(4) thereof).

(C) Consent of Commissioner--(1) In general. Except as otherwise provided in publications, forms, instructions, or other guidance, if an eligible section 965(h) transferor and an eligible section 965(h) transferee file a transfer agreement in accordance with the provisions of paragraph (b)(3)(iii)(B) of this section, the eligible section 965(h) transferor and the eligible section 965(h) transferee will be considered to have entered into an agreement described in paragraph (b)(3)(iii)(A)(2) of this section with the Commissioner for purposes of section 965(h)(3) and paragraph (b)(3)(iii) of this section. If the Commissioner determines that additional information is necessary (for example, additional information regarding the ability of the eligible section 965(h) transferee to fully pay the remaining section 965(h) net tax liability), the eligible section 965(h) transferee must provide such information upon request.

(2) Material misrepresentations and omissions. If the Commissioner determines that an agreement filed by an eligible section 965(h) transferor and an eligible section 965(h) transferee contains a material misrepresentation or material omission, or if the eligible section 965(h) transferee does not provide the additional information requested under paragraph (b)(3)(iii)(C)(1) of this section within a reasonable timeframe communicated by the Commissioner to the eligible section 965(h) transferee, then the Commissioner may reject the transfer agreement (effective as of the date of the related acceleration event). In the alternative, on the date that the Commissioner determines that the transfer agreement includes a material misrepresentation or material omission, the Commissioner may determine that an acceleration event has occurred with respect

ADMIN_03478

to the eligible section 965(h) transferee as of the date of the determination, such that any unpaid installment payments of the eligible section 965(h) transferor that were assumed by the eligible section 965(h) transferee become due on the date of the determination.

(D) Effect of assumption--(1) In general. If the exception in this paragraph (b)(3)(iii) applies with respect to an eligible section 965(h) transferor and an eligible section 965(h) transferee, the eligible section 965(h) transferee assumes all of the outstanding obligations and responsibilities of the eligible section 965(h) transferor with respect to the section 965(h) net tax liability as though the eligible section 965(h) transferee had included the section 965(a) inclusion in income. Accordingly, the eligible section 965(h) transferee is responsible for making payments and reporting with respect to any unpaid installment payments. In addition, for example, if an acceleration event described in paragraph (b)(3)(ii) of this section occurs with respect to an eligible section 965(h) transferee, any unpaid installment payments of the eligible section 965(h) transferor that were assumed by the eligible section 965(h) transferee will become due on the date of such event, subject to any applicable exception in paragraph (b)(3)(iii) of this section.

(2) Eligible section 965(h) transferor liability. An eligible section 965(h) transferor (or a successor) remains jointly and severally liable for any unpaid installment payments of the eligible section 965(h) transferor that were assumed by the eligible section 965(h) transferee, as well as any penalties, additions to tax, or other additional amounts attributable to such net tax liability.

ADMIN_03479

(E) Qualifying consolidated group member transaction--(1) Definition of qualifying consolidated group member transaction. For purposes of this paragraph (b)(3), the term qualifying consolidated group member transaction means a transaction in which--

(i) A member of a consolidated group (the departing member) ceases to be a member of the consolidated group (including by reason of the distribution, sale, or exchange of the departing member's stock);

(ii) The transaction results in the consolidated group (which is treated as a single person for this purpose under §1.965-8(e)(1)) being treated as transferring substantially all of its assets for purposes of paragraph (b)(3)(ii)(B) of this section; and

(iii) The departing member either continues to exist immediately after the transaction or has a qualified successor.

(2) Definition of qualified successor. For purposes of this paragraph (b)(3), the term qualified successor means, with respect to a departing member described in this paragraph (b)(3)(iii)(E), another domestic corporation (or consolidated group) that acquires substantially all of the assets of the departing member (including in a transaction described in section 381(a)(2)).

(3) Departure of multiple members of a consolidated group. Multiple members that deconsolidate from the same consolidated group as a result of a single transaction are treated as a single departing member to the extent that, immediately after the transaction, they become members of the same (second) consolidated group, which would be treated as a single person under §1.965-8(e)(1).

(c) Section 965(i) election--(1) In general. Each shareholder of an S corporation (including a person listed in §1.1362-6(b)(2) with respect to a trust or estate, but not a

267

ADMIN_03480

domestic pass-through entity itself) that is a United States shareholder of a deferred foreign income corporation may elect under section 965(i) and this paragraph (c) to defer the payment of the shareholder's section 965(i) net tax liability with respect to the S corporation until the shareholder's taxable year that includes a triggering event described in paragraph (c)(3) of this section. This election may be revoked only by paying the full amount of the unpaid section 965(i) net tax liability.

(2) Manner of making election--(i) Eligibility. Each shareholder with a section 965(i) net tax liability with respect to an S corporation may make the section 965(i) election with respect to such S corporation, provided that, with respect to the shareholder, none of the triggering events described in paragraph (c)(3)(ii) of this section have occurred before the election is made. Notwithstanding the preceding sentence, a shareholder that would be eligible to make the section 965(i) election but for the occurrence of an event described in paragraph (c)(3)(ii) of this section may make the section 965(i) election if an exception described in paragraph (c)(3)(iv) of this section applies.

(ii) Timing. A section 965(i) election must be made no later than the due date (taking into account extensions, if any) for the shareholder's return for each taxable year that includes the last day of the taxable year of the S corporation in which the S corporation has a section 965(a) inclusion to which the shareholder's section 965(i) net tax liability is attributable. Relief is not available under §301.9100-2 or 301.9100-3 to make a late election.

(iii) Election statement. Except as otherwise provided in publications, forms, instructions, or other guidance, to make a section 965(i) election, a shareholder must

268

ADMIN_03481

attach a statement, signed under penalties of perjury consistent with the rules for signatures applicable to the person's return, to its return for the taxable year that includes the last day of a taxable year of the S corporation in which the S corporation has a section 965(a) inclusion to which the shareholder's section 965(i) net tax liability is attributable. The statement must include the shareholder's name, taxpayer identification number, the name and taxpayer identification number of the S corporation with respect to which the election is made, the amount described in paragraph (g)(10)(i)(A) of this section as modified by paragraph (g)(6) of this section for purposes of determining the section 965(i) net tax liability with respect to the S corporation, the amount described in paragraph (g)(10)(i)(B) of this section, and the section 965(i) net tax liability with respect to the S corporation. The statement must be filed in the manner prescribed in publications, forms, instructions, or other guidance. The attachment of an unsigned copy of the election statement to the timely-filed return for the relevant taxable year satisfies the signature requirement of this paragraph (c)(2)(iii) if the shareholder retains the original signed election statement in the manner specified by §1.6001-1(e).

(3) Triggering events--(i) In general. If a shareholder makes a section 965(i) election with respect to an S corporation, the shareholder defers payment of its section 965(i) net tax liability with respect to the S corporation until the shareholder's taxable year that includes the occurrence of a triggering event described in paragraph (c)(3)(ii) of this section with respect to the section 965(i) net tax liability with respect to the S corporation. If a triggering event described in paragraph (c)(3)(ii) of this section with respect to an S corporation occurs, except as provided in paragraph (c)(3)(iv) of this section, the shareholder's section 965(i) net tax liability with respect to the S corporation

ADMIN_03482

will be assessed as an addition to tax for the shareholder's taxable year that includes the triggering event.

(ii) Triggering events. The following events are considered triggering events for purposes of paragraph (c)(3)(i) of this section with respect to a shareholder's section 965(i) net tax liability with respect to an S corporation--

(A) The corporation ceases to be an S corporation (determined as of the first day of the first taxable year that the corporation is not an S corporation);

(B) A liquidation, sale, exchange, or other disposition of substantially all of the assets of the S corporation (including in a title 11 or similar case), a cessation of business by the S corporation, or the S corporation ceasing to exist;

(C) The transfer of any share of stock of the S corporation by the shareholder (including by reason of death or otherwise) that results in a change of ownership for federal income tax purposes; or

(D) A determination by the Commissioner described in the second sentence of paragraph (c)(3)(iv)(C)(2) of this section.

(iii) Partial transfers. If an S corporation shareholder transfers less than all of its shares of stock of the S corporation, the transfer will be a triggering event only with respect to the portion of a shareholder's section 965(i) net tax liability that is properly allocable to the transferred shares.

(iv) Eligible section 965(i) transferee exception--(A) In general. Paragraph (c)(3)(i) of this section will not apply (such that a shareholder's section 965(i) net tax liability with respect to an S corporation will not be assessed as an addition to tax for the shareholder's taxable year that includes the triggering event) if the requirements

ADMIN_03483

described in paragraphs (c)(3)(iv)(A)(<u>1</u>) and (<u>2</u>) of this section are satisfied. A

shareholder with respect to which a triggering event described in this paragraph

(c)(3)(iv)(A) occurs is referred to as an <u>eligible section 965(i) transferor</u>.

(<u>1</u>) <u>Requirement to have a covered triggering event</u>. The triggering event

satisfies the requirements of this paragraph (c)(3)(iv)(A)(<u>1</u>) if it is described in paragraph

(c)(3)(ii)(C) of this section.

(<u>2</u>) <u>Requirement to enter into a transfer agreement</u>. The shareholder with

respect to which a triggering event occurs and an eligible section 965(i) transferee (as

defined in paragraph (c)(3)(v)(B)(<u>1</u>) of this section) must enter into an agreement with

the Commissioner that satisfies the requirements of paragraph (c)(3)(iv)(B) of this

section.

(B) <u>Transfer agreement</u>--(<u>1</u>) <u>Eligibility</u>. A transfer agreement that satisfies the

requirements of this paragraph (c)(3)(iv)(B) may be entered into by an eligible section

965(i) transferor and an eligible section 965(i) transferee. For this purpose, the term

<u>eligible section 965(i) transferee</u> refers to a single United States person that becomes a

shareholder of the S corporation (including a person listed in §1.1362-6(b)(2) with

respect to a trust or estate, but not a domestic pass-through entity itself). In the case of

a transfer that consists of multiple partial transfers (as described in paragraph (c)(3)(iii)

of this section), a transfer agreement that satisfies the requirements of this paragraph

(c)(3)(iv)(B) may be entered into by an eligible section 965(i) transferor and an eligible

section 965(i) transferee for each partial transfer.

(<u>2</u>) <u>Filing requirements</u>--(i) <u>In general</u>. A transfer agreement must be timely filed.

Except as provided in paragraphs (c)(3)(iv)(B)(<u>2</u>)(<u>ii</u>) and (<u>iii</u>) of this section, a transfer

ADMIN_03484

agreement is considered timely filed only if the transfer agreement is filed within 30 days of the date that the triggering event occurs.  The transfer agreement must be filed in accordance with the rules provided in publications, forms, instructions, or other guidance.  In addition, a duplicate copy of the transfer agreement must be attached to the returns of both the eligible section 965(i) transferee and the eligible section 965(i) transferor for the taxable year during which the triggering event occurs filed by the due date (taking into account extensions, if any) for such returns.  Relief is not available under §301.9100-2 or 301.9100-3 to file a transfer agreement late.

(ii) <u>Transition rule</u>.  If a triggering event occurs on or before [**INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER**], the transfer agreement must be filed by [**INSERT DATE 30 DAYS AFTER PUBLICATION IN THE FEDERAL REGISTER**], to be considered timely filed.

(iii) <u>Death of eligible section 965(i) transferor</u>.  If the triggering event is the death of the eligible section 965(i) transferor, the transfer agreement must be filed by the later of the unextended due date for the eligible section 965(i) transferor's final income tax return or [**INSERT DATE 30 DAYS AFTER PUBLICATION IN THE FEDERAL REGISTER**].

(3) <u>Signature requirement</u>.  The transfer agreement that is filed within 30 days of the triggering event or by the due date specified in paragraph (c)(3)(iv)(B)(2)(ii) or (iii) of this section must be signed under penalties of perjury by a person who is authorized to sign a return on behalf of the eligible section 965(i) transferor and a person who is authorized to sign a return on behalf of the eligible section 965(i) transferee.

272

ADMIN_03485

(4) <u>Terms of agreement</u>.  A transfer agreement under this paragraph (c)(3)(iv)(B) must be entitled "Transfer Agreement Under Section 965(i)(2)" and must contain the following information and representations:

(i) A statement that the document constitutes an agreement by the eligible section 965(i) transferee to assume the liability of the eligible section 965(i) transferor for the unpaid portion of the section 965(i) net tax liability, or, in the case of a partial transfer, for the unpaid portion of the section 965(i) net tax liability attributable to the transferred stock;

(ii) A statement that the eligible section 965(i) transferee agrees to comply with all of the conditions and requirements of section 965(i) and paragraph (c) of this section, including the annual reporting requirement, as well as any other applicable requirements in the section 965 regulations;

(iii) The name, address, and taxpayer identification number of the eligible section 965(i) transferor and the eligible section 965(i) transferee;

(iv) The amount of the eligible section 965(i) transferor's unpaid section 965(i) net tax liability or, in the case of a partial transfer, the unpaid portion of the section 965(i) net tax liability attributable to the transferred stock, each as determined by the eligible section 965(i) transferor, which amount is subject to adjustment by the Commissioner;

(v) A copy of the eligible section 965(i) transferor's most recent Form 965-A, if the eligible section 965(i) transferor has been required to file a Form 965-A;

(vi) A detailed description of the triggering event that led to the transfer agreement, including the name and taxpayer identification number of the S corporation with respect to which the section 965(i) election was effective;

ADMIN_03486

(vii) A representation that the eligible section 965(i) transferee is able to pay the section 965(i) net tax liability being assumed;

(viii) An acknowledgement that the eligible section 965(i) transferor and any successor to the eligible section 965(i) transferor will remain jointly and severally liable for the section 965(i) net tax liability being assumed by the eligible section 965(i) transferee

(ix) A statement as to whether the leverage ratio of the eligible section 965(i) transferee immediately after the triggering event exceeds three to one, which ratio may be modified as provided in publications, forms, instructions, or other guidance;

(x) Any additional information, representation, or certification required by the Commissioner in publications, forms, instructions, or other guidance.

(5) Special rule in the case of death of eligible section 965(i) transferor. Except in the case of transfers to trusts, if the triggering event is the death of the eligible section 965(i) transferor, and the identity of the beneficiary or beneficiaries (in the case of multiple partial transfers) is determined as of the due date for the transfer agreement described in paragraph (c)(3)(iv)(B)(2)(iii) of this section, then the transfer may be treated as a transfer directly between the eligible 965(i) transferor and the beneficiary or beneficiaries. If, however, the identity of the beneficiary or beneficiaries is not determined as of the due date for the transfer agreement described in paragraph (c)(3)(iv)(B)(2)(iii) of this section, then the transfer must be treated first as a transfer between the eligible section 965(i) transferor and his or her estate at the time of death and second as a transfer between the estate and the beneficiary or beneficiaries when the shares are actually transferred to the beneficiary or beneficiaries. Separate transfer

274

ADMIN_03487

agreements must be filed for each transfer. The transfer from the eligible section 965(i) transferor to his or her estate is a transfer resulting from a triggering event that is the death of the eligible section 965(i) transferor, and the transfer agreement is subject to the timing rules in paragraph (c)(3)(iv)(B)(2)(iii) of this section. The transfer from the estate to the beneficiary or beneficiaries is not a transfer resulting from a triggering event that is the death of the eligible section 965(i) transferor, and the transfer agreement is subject to the timing rules in paragraph (c)(3)(iv)(B)(2)(i) and (ii) of this section.

(6) Leverage ratio. For purposes of paragraph (c)(3)(iv)(B)(4)(ix) of this section, and except as otherwise provided in publications, forms, instructions, or other guidance, the term leverage ratio means the ratio that the total indebtedness of the eligible section 965(i) transferee bears to the sum of its money and all other assets reduced (but not below zero) by such total indebtedness. For this purpose, the amount taken into account with respect to any asset is the adjusted basis thereof for purposes of determining gain, and the amount taken into account with respect to any indebtedness with original issue discount is its issue price plus the portion of the original issue discount previously accrued as determined under the rules of section 1272 (determined without regard to subsection (a)(7) or (b)(4) thereof).

(C) Consent of Commissioner--(1) In general. Except as otherwise provided in publications, forms, instructions, or other guidance, if an eligible section 965(i) transferor and an eligible section 965(i) transferee file a transfer agreement in accordance with the provisions of paragraph (c)(3)(iv)(B) of this section, the eligible section 965(i) transferor and the eligible section 965(i) transferee will be considered to have entered into an

ADMIN_03488

agreement with the Commissioner for purposes of section 965(i)(2) and paragraph (c)(3)(iv) of this section.  If the Commissioner determines that additional information is necessary (for example, additional information regarding the ability of the eligible section 965(i) transferee to pay the eligible section 965(i) transferor's unpaid section 965(i) net tax liability), the eligible section 965(i) transferee must provide such information upon request.

(2) Material misrepresentations and omissions.  If the Commissioner determines that an agreement filed by an eligible section 965(i) transferor and an eligible section 965(i) transferee contains a material misrepresentation or material omission, or if the eligible section 965(i) transferee does not provide the additional information requested under paragraph (c)(3)(iv)(C)(1) of this section within a reasonable timeframe communicated by the Commissioner to the eligible section 965(i) transferee, then the Commissioner may reject the transfer agreement (effective as of the date of the related triggering event).  In the alternative, on the date that the Commissioner determines that the transfer agreement includes a material misrepresentation or material omission, the Commissioner may determine that a triggering event has occurred with respect to the eligible section 965(i) transferee as of the date of the determination, such that the unpaid section 965(i) net tax liability of the eligible section 965(i) transferor that was assumed by the eligible section 965(i) transferee becomes due on the date of the determination.

(D) Effect of assumption--(1) In general.  When the exception in this paragraph (c)(3)(iv) applies with respect to an eligible section 965(i) transferor and an eligible section 965(i) transferee, the eligible section 965(i) transferee assumes all of the

276

ADMIN_03489

outstanding obligations and responsibilities of the eligible section 965(i) transferor with respect to the section 965(i) net tax liability with respect to the S corporation as though the eligible section 965(i) transferee had included the section 965(a) inclusion in income. Accordingly, the eligible section 965(i) transferee is responsible for making payments and reporting with respect to any unpaid section 965(i) net tax liability with respect to the S corporation. In addition, for example, if a triggering event described in paragraph (c)(3)(ii) of this section occurs with respect to an eligible section 965(i) transferee, any unpaid portion of the section 965(i) net tax liability of the eligible section 965(i) transferor that was assumed by the eligible section 965(i) transferee becomes due on the date of such event, subject to any applicable exception in paragraph (c)(3)(iv) or (v) of this section.

(2) Eligible section 965(i) transferor liability. An eligible section 965(i) transferor remains jointly and severally liable for any unpaid installment payments of the eligible section 965(i) transferor that were assumed by the eligible section 965(i) transferee, as well as any penalties, additions to tax, or other additional amounts attributable to such net tax liability.

(v) Coordination with section 965(h) election--(A) In general. Subject to the limitation described in paragraph (c)(3)(v)(D) of this section, a shareholder that has made a section 965(i) election with respect to an S corporation, upon the occurrence of a triggering event with respect to such S corporation, may make a section 965(h) election with respect to the portion of the shareholder's section 965(i) net tax liability with respect to such S corporation that is assessed as an addition to tax for the

277

ADMIN_03490

shareholder's taxable year that includes the triggering event pursuant to paragraph (c)(3)(i) of this section as if such portion were a section 965(h) net tax liability.

(B) Timing for election.  A section 965(h) election made pursuant to section 965(i)(4) and paragraph (c)(3)(v)(A) of this section must be made no later than the due date (taking into account extensions, if any) for the shareholder's return for the taxable year in which the triggering event with respect to the S corporation occurs.  Relief is not available under §301.9100-2 or 301.9100-3 to make a late election.

(C) Due date for installment.  If a shareholder makes a section 965(h) election pursuant to section 965(i)(4) and paragraph (c)(3)(v)(A) of this section, the payment of the first installment (as described in paragraph (b)(1)(i) of this section) must be made no later than the due date (without regard to extensions) for the shareholder's return of tax for the taxable year in which the triggering event with respect to the S corporation occurs.

(D) Limitation--(1) In general.  Notwithstanding paragraph (c)(3)(v)(A) of this section, if the triggering event with respect to an S corporation is a triggering event described in paragraph (c)(3)(ii)(B) of this section, then the section 965(h) election may only be made with the consent of the Commissioner.

(2) Manner of obtaining consent--(i) In general.  In order to obtain the consent of the Commissioner as required by paragraph (c)(3)(v)(D)(1) of this section, the shareholder intending to make the section 965(h) election must file the agreement described in paragraph (c)(3)(v)(D)(4) of this section within 30 days of the occurrence of the triggering event, except as described in paragraph (c)(3)(v)(D)(2)(ii) of this section. The agreement must be filed in accordance with the rules provided in publications,

278

ADMIN_03491

forms, instructions, or other guidance. In addition, a duplicate copy of the agreement must be filed, with the shareholder's timely-filed return for the taxable year during which the triggering event occurs (taking into account extensions, if any), along with the election statement described in paragraph (b)(2)(iii) of this section. Relief is not available under §301.9100-2 or 301.9100-3 to file an agreement late.

(ii) *Transition rule*. If a triggering event occurs on or before **[INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER]**, the agreement must be filed by **[INSERT DATE 30 DAYS AFTER PUBLICATION IN THE FEDERAL REGISTER]**, in order to be considered timely filed.

(3) *Signature requirement*. The agreement that is filed within 30 days of the triggering event or by the due date specified in paragraph (c)(3)(v)(D)(2)(ii) of this section must be signed under penalties of perjury by the shareholder.

(4) *Terms of agreement*. The agreement under this paragraph (c)(3)(v)(D) must be entitled "Consent Agreement Under Section 965(i)(4)(D)" and must contain the following information and representations--

(i) A statement that the shareholder agrees to comply with all of the conditions and requirements of section 965(h) and paragraph (b) of this section, as well as any other applicable requirements in the section 965 regulations;

(ii) The name, address, and taxpayer identification number of the shareholder;

(iii) The amount of the section 965(i) net tax liability under section 965 remaining unpaid with respect to which the section 965(h) election is made pursuant to section 965(i)(4)(D) and paragraph (c)(3)(v)(A) of this section, as determined by the shareholder, which amount is subject to adjustment by the Commissioner; and

279

ADMIN_03492

(iv) A representation that the shareholder is able to make the payments required under section 965(h) and paragraph (b) of this section with respect to the portion of the total net tax liability under section 965 remaining unpaid described in paragraph (c)(3)(v)(D)(4)(iii) of this section.

(v) A statement as to whether the leverage ratio of the shareholder and all subsidiary members of its affiliated group immediately following the triggering event exceeds three to one; and

(vi) Any additional information, representation, or certification required by the Commissioner in publications, forms, instructions, or other guidance.

(5) Consent of Commissioner--(i) In general. If a shareholder files an agreement in accordance with the provisions of paragraph (c)(3)(v)(D) of this section, the shareholder will be considered to have obtained the consent of the Commissioner for purposes of section 965(i)(4)(D) and paragraph (c)(3)(v)(D)(1) of this section. However, if the Commissioner reviews the agreement and determines that additional information is necessary, the shareholder must provide such information upon request.

(ii) Material misrepresentations and omissions. If the Commissioner determines that an agreement filed by a shareholder in accordance with the provisions of this paragraph (c)(3)(v)(D) contains a material misrepresentation or material omission, or if the shareholder does not provide the additional information requested under paragraph (c)(3)(v)(D)(5)(i) of this section within a reasonable timeframe communicated by the Commissioner to the shareholder, then the Commissioner may reject the agreement (effective as of the date of the related triggering event).

280

ADMIN_03493

(6) <u>Leverage ratio</u>. For purposes of paragraph (c)(3)(v)(D)(4)(<u>v</u>) of this section, and except as otherwise provided in publications, forms, instructions, or other guidance, the term <u>leverage ratio</u> means the ratio that the total indebtedness of the shareholder bears to the sum of its money and all other assets reduced (but not below zero) by such total indebtedness. For this purpose, the amount taken into account with respect to any asset is the adjusted basis thereof for purposes of determining gain, and the amount taken into account with respect to any indebtedness with original issue discount is its issue price plus the portion of the original issue discount previously accrued as determined under the rules of section 1272 (determined without regard to subsection (a)(7) or (b)(4) thereof).

(4) <u>Joint and several liability</u>. If any shareholder of an S corporation makes a section 965(i) election, the S corporation is jointly and severally liable for the payment of the shareholder's section 965(i) net tax liability with respect to the S corporation, as well as any penalties, additions to tax, or other additional amounts attributable to such net tax liability.

(5) <u>Extension of limitation on collection</u>. If an S corporation shareholder makes a section 965(i) election with respect to its section 965(i) net tax liability with respect to an S corporation, any limitation on the time period for the collection of the net tax liability shall not begin before the date of the triggering event with respect to the section 965(i) net tax liability.

(6) <u>Annual reporting requirement</u>--(i) <u>In general</u>. A shareholder that makes a section 965(i) election with respect to its section 965(i) net tax liability with respect to an S corporation is required to report the amount of its deferred net tax liability on its return

281

ADMIN_03494

of tax for the taxable year in which the election is made and on the return of tax for each subsequent taxable year until such net tax liability has been fully assessed.

(ii) Failure to report. If a shareholder fails to report the amount of its deferred net tax liability as required with respect to any taxable year by the due date (taking into account extensions, if any) for the return of tax for that taxable year, five percent of such deferred net tax liability will be assessed as an addition to tax for such taxable year.

(d) Section 965(m) election and special rule for real estate investment trusts--(1) In general. A real estate investment trust may elect under section 965(m) and this paragraph (d) to defer the inclusion in gross income (for purposes of the computation of real estate investment trust taxable income under section 857(b)) of its REIT section 965 amounts and include them in income according to the schedule described in paragraph (d)(2) of this section. This election is revocable only by including in gross income (for purposes of the computation of real estate investment trust taxable income under section 857(b)) the full amount of the REIT section 965 amounts.

(2) Inclusion schedule for section 965(m) election. If a real estate investment trust makes the section 965(m) election, the REIT section 965 amounts will be included in the real estate investment trust's gross income as follows--

(i) Eight percent of the REIT section 965 amounts in each taxable year in the five-taxable year period beginning with the taxable year the amount would otherwise be included;

(ii) Fifteen percent of the REIT section 965 amounts in the first year following the five year period described in paragraph (d)(2)(i) of this section;

282

ADMIN_03495

(iii) Twenty percent of the REIT section 965 amounts in the second year following the five year period described in paragraph (d)(2)(i) of this section; and

(iv) Twenty-five percent of the REIT section 965 amounts in the third year following the five year period described in paragraph (d)(2)(i) of this section.

(3) Manner of making election--(i) Eligibility.  A real estate investment trust with section 965(a) inclusions may make the section 965(m) election.

(ii) Timing.  A section 965(m) election must be made no later than the due date (taking into account extensions, if any) for the return for the first year of the five year period described in paragraph (d)(2)(i) of this section.  Relief is not available under §301.9100-2 or 301.9100-3 to make a late election.

(iii) Election statement.  Except as otherwise provided in publications, forms, instructions, or other guidance, to make a section 965(m) election, a real estate investment trust must attach a statement, signed under penalties of perjury consistent with the rules for signatures applicable to the person's return, to its return for the taxable year in which it would otherwise be required to include the REIT section 965 amounts in gross income.  The statement must include the real estate investment trust's name, taxpayer identification number, REIT section 965 amounts, and the anticipated amounts of each portion of the REIT section 965 amounts described under paragraph (d)(2) of this section, and the statement must be filed in the manner prescribed in publications, forms, instructions, or other guidance.  The attachment of an unsigned copy of the election statement to the timely-filed return for the relevant taxable year satisfies the signature requirement of this paragraph (d)(3)(iii) if the real estate investment trust retains the original signed election statement in the manner specified by §1.6001-1(e).

ADMIN_03496

(4) Coordination with section 965(h). A real estate investment trust that makes the section 965(m) election may not also make a section 965(h) election for any year with respect to which a section 965(m) election is in effect.

(5) Acceleration of inclusion. If a real estate investment trust makes a section 965(m) election and subsequently there is a liquidation, sale, exchange, or other disposition of substantially all of the assets of the real estate investment trust (including in a title 11 or similar case), or a cessation of business by the real estate investment trust, any amount not yet included in gross income (for purposes of the computation of real estate investment trust taxable income under section 857(b)) as a result of the section 965(m) election will be so included as of the day before the date of the event. The unpaid portion of any tax liability with respect to such inclusion will be due on the date of the event (or in the case of a title 11 or similar case, the day before the petition is filed).

(6) Treatment of section 965(a) inclusions of a real estate investment trust. Regardless of whether a real estate investment trust has made a section 965(m) election, and regardless of whether it is a United States shareholder of a deferred foreign income corporation, any section 965(a) inclusions of the real estate investment trust are not taken into account as gross income of the real estate investment trust for purposes of applying paragraphs (2) and (3) of section 856(c) for any taxable year for which the real estate investment trust takes into account a section 965(a) inclusion, including pursuant to paragraph (d)(2) of this section.

(e) Section 965(n) election--(1) In general--(i) General rule. A person may elect to not take into account the amount described in paragraph (e)(1)(ii) of this section in

284

ADMIN_03497

determining its net operating loss under section 172 for the taxable year or in determining the amount of taxable income for such taxable year (computed without regard to the deduction allowable under section 172) that may be reduced by net operating loss carryovers or carrybacks to such taxable year under section 172. The election for each taxable year is irrevocable.

(ii) Applicable amount for section 965(n) election. If a person makes a section 965(n) election, the amount referred to in paragraph (e)(1)(i) of this section is the sum of--

(A) The person's section 965(a) inclusions for the taxable year reduced by the person's section 965(c) deductions for the taxable year, and

(B) In the case of a domestic corporation, the taxes deemed paid under section 960(a)(1) for the taxable year with respect to the person's section 965(a) inclusions that are treated as dividends under section 78.

(iii) Scope of section 965(n) election. If a person makes a section 965(n) election, the election applies to both net operating losses for the taxable year for which the election is made and the net operating loss carryovers or carrybacks to such taxable year, each in their entirety. Any section 965(n) election made by the agent (within the meaning of §1.1502-77) of a consolidated group applies to all net operating losses available to the consolidated group, including all components of the consolidated net operating loss deduction (as defined in §1.1502-21(a)).

(iv) [Reserved]

(2) Manner of making election--(i) Eligibility. A person with a section 965(a) inclusion may make the section 965(n) election.

ADMIN_03498

(ii) <u>Timing</u>.  A section 965(n) election must be made no later than the due date (taking into account extensions, if any) for the person's return for the taxable year to which the election applies.  Relief is not available under §301.9100-2 or 301.9100-3 to make a late election.

(iii) <u>Election statement</u>.  Except as otherwise provided in publications, forms, instructions, or other guidance, to make a section 965(n) election, a person must attach a statement, signed under penalties of perjury consistent with the rules for signatures applicable to the person's return, to its return for the taxable year to which the election applies.  The statement must include the person's name, taxpayer identification number, the amounts described in section 965(n)(2)(A) and paragraph (e)(1)(ii)(A) of this section and section 965(n)(2)(B) and paragraph (e)(1)(ii)(B) of this section, and the sum thereof, and the statement must be filed in the manner prescribed in publications, forms, instructions, or other guidance.  The attachment of an unsigned copy of the election statement to the timely-filed return for the relevant taxable year satisfies the signature requirement of this paragraph (e)(2)(iii) if the person making the election retains the original signed election statement in the manner specified by §1.6001-1(e).

(f) <u>Election to use alternative method for calculating post-1986 earnings and profits</u>--(1) <u>Effect of election for specified foreign corporations that do not have a 52-53-week taxable year</u>.  If an election is made under this paragraph (f) with respect to a specified foreign corporation that does not have a 52-53-week taxable year, the amount of the post-1986 earnings and profits (including a deficit) as of the E&P measurement date on November 2, 2017, is determined under paragraph (f)(3) of this section.  The election described in this paragraph (f) is irrevocable.  A specified foreign corporation

286

ADMIN_03499

that does not have a 52-53-week taxable year may not use the alternative method of determination in paragraph (f)(3) of this section for purposes of determining its post-1986 earnings and profits on the E&P measurement date on December 31, 2017.

(2) Effect of election for specified foreign corporations that have a 52-53-week taxable year. If an election is made under this paragraph (f) with respect to a specified foreign corporation that has a 52-53-week taxable year, the amount of the post-1986 earnings and profits (including a deficit) as of both E&P measurement dates is determined under paragraph (f)(3) of this section. The election described in this paragraph (f) is irrevocable.

(3) Computation of post-1986 earnings and profits using alternative method. With respect to an E&P measurement date, the post-1986 earnings and profits of a specified foreign corporation for which an election is properly made equals the sum of--

(i) The specified foreign corporation's post-1986 earnings and profits (including a deficit) determined as of the notional measurement date, as if it were an E&P measurement date, plus

(ii) The specified foreign corporation's annualized earnings and profits amount with respect to the notional measurement date.

(4) Definitions--(i) 52-53-week taxable year. The term 52-53-week taxable year means a taxable year described in §1.441-2(a)(1).

(ii) Annualized earnings and profits amount. The term annualized earnings and profits amount means, with respect to a specified foreign corporation, an E&P measurement date, and a notional measurement date, the amount equal to the product of the number of days between the notional measurement date and the E&P

287

ADMIN_03500

measurement date (not including the former, but including the latter) multiplied by the daily earnings amount of the specified foreign corporation. The annualized earnings and profits amount is expressed as a negative number if the E&P measurement date precedes the notional measurement date.

(iii) <u>Daily earnings amount</u>. The term <u>daily earnings amount</u> means, with respect to a specified foreign corporation and a notional measurement date, the post-1986 earnings and profits (including a deficit) of the specified foreign corporation determined as of the close of the notional measurement date that were earned (or incurred) during the specified foreign corporation's taxable year that includes the notional measurement date, divided by the number of days that have elapsed in such taxable year as of the close of the notional measurement date.

(iv) <u>Notional measurement date</u>. The term <u>notional measurement date</u> means--

(A) With respect to an E&P measurement date of a specified foreign corporation with a 52-53-week taxable year, the closest end of a fiscal month to such E&P measurement date, and

(B) With respect to the E&P measurement date on November 2, 2017, of all specified foreign corporations not described in paragraph (f)(4)(iv)(A) of this section, October 31, 2017.

(5) <u>Manner of making election</u>--(i) <u>Eligibility</u>. An election with respect to a specified foreign corporation to use the alternative method of calculating post-1986 earnings and profits as of an E&P measurement date pursuant to this paragraph (f) must be made on behalf of the specified foreign corporation by a controlling domestic shareholder (as defined in §1.964-1(c)(5)) pursuant to the rules of §1.964-1(c)(3),

288

ADMIN_03501

except that the controlling domestic shareholder is not required to file the statement described in §1.964-1(c)(3)(ii).

(ii) <u>Timing</u>. An election under this paragraph (f) must be made no later than the due date (taking into account extensions, if any) for the person's return for the first taxable year in which the person has a section 965(a) inclusion amount with respect to the specified foreign corporation or in which the person takes into account a specified E&P deficit with respect to the specified corporation for purposes of computing a section 965(a) inclusion amount with respect to another specified foreign corporation. Relief is not available under §301.9100-2 or 301.9100-3 to make a late election.

(iii) <u>Election statement</u>. Except as otherwise provided in publications, forms, instructions, or other guidance, to make an election under this paragraph (f), a person must attach a statement, signed under penalties of perjury consistent with the rules for signatures applicable to the person's return, to the person's return for the taxable year described in paragraph (f)(5)(ii) of this section. The statement must include the person's name, taxpayer identification number, and the name and taxpayer identification number, if any, of each of the specified foreign corporations with respect to which the election is made, and the statement must be filed in the manner prescribed in instructions or other guidance. The attachment of an unsigned copy of the election statement to the timely-filed return for the relevant taxable year satisfies the signature requirement of this paragraph (f)(5)(iii) if the person making the election retains the original signed election statement in the manner specified by §1.6001-1(e).

(6) <u>Examples</u>. The following examples illustrate the application of this paragraph (f).

289

ADMIN_03502

(i) Example 1. (A) Facts. FS, a foreign corporation, has a calendar year taxable year, and as of October 31, 2017, FS has post-1986 earnings and profits of 10,000u, 3,040u of which were earned during the taxable year that includes October 31, 2017. An election is properly made under paragraph (f)(5) of this section with respect to FS, allowing FS to determine its post-1986 earnings and profits under the alternative method with respect to its E&P measurement date on November 2, 2017.

(B) Analysis. As of the close of October 31, 2017, the notional measurement date with respect to the E&P measurement date on November 2, 2017, 304 days have elapsed in the taxable year of FS that includes October 31, 2017. Therefore, FS's daily earnings amount is 10u (3,040u divided by 304), and FS's annualized earnings and profits amount is 20u (10u multiplied by 2 (the number of days between the notional measurement date on October 31, 2017, and the E&P measurement date on November 2, 2017)). Accordingly, FS's post-1986 earnings and profits as of November 2, 2017, are 10,020u (its post-1986 earnings and profits as of October 31, 2017 (10,000u), plus its annualized earnings and profits amount (20u)).

(ii) Example 2. (A) Facts. The facts are the same as in paragraph (f)(6)(i)(A) of this section (the facts in Example 1), except that a deficit of 3,040u was incurred during the taxable year that includes October 31, 2017.

(B) Analysis. The analysis is the same as in paragraph (f)(6)(i)(B) of this section (the analysis in Example 1), except that FS's daily earnings amount is (10u) ((3,040u) divided by 304), and FS's annualized earnings and profits amount is (20u) ((10u) multiplied by 2 (the number of days between the notional measurement date on October 31, 2017, and the E&P measurement date on November 2, 2017)). Accordingly, FS's post-1986 earnings and profits as of November 2, 2017, are 9,980u (its post-1986 earnings and profits as of October 31, 2017 (10,000u), plus its annualized earnings and profits amount ((20u))).

(g) Definitions. This paragraph (g) provides definitions that apply for purposes of this section.

(1) Deferred net tax liability. The term deferred net tax liability means, with respect to any taxable year of a person, the amount of the section 965(i) net tax liability the payment of which has been deferred under section 965(i) and paragraph (c) of this section.

(2) REIT section 965 amounts. The term REIT section 965 amounts means, with respect to a real estate investment trust and a taxable year of the real estate investment

290

ADMIN_03503

trust, the aggregate amount of section 965(a) inclusions and section 965(c) deductions that would (but for section 965(m)(1)(B) and paragraph (d) of this section) be taken into account in determining the real estate investment trust's income for the taxable year.

(3) Section 965(h) election. The term section 965(h) election means the election described in section 965(h)(1) and paragraph (b)(1) of this section.

(4) Section 965(h) net tax liability. The term section 965(h) net tax liability means, with respect to a person that has made a section 965(h) election, the total net tax liability under section 965 reduced by the aggregate amount of the person's section 965(i) net tax liabilities, if any, with respect to which section 965(i) elections are effective.

(5) Section 965(i) election. The term section 965(i) election means the election described in section 965(i)(1) and paragraph (c)(1) of this section.

(6) Section 965(i) net tax liability. The term section 965(i) net tax liability means, with respect to an S corporation and a shareholder of the S corporation, in the case in which a section 965(i) election is made, the amount determined pursuant to paragraph (g)(10)(i) of this section by adding before the word "over" in (g)(10)(i)(A) of this section "determined as if the only section 965(a) inclusions included in income by the person are domestic pass-through entity shares of section 965(a) inclusions by the S corporation with respect to deferred foreign income corporations of which the S corporation is a United States shareholder."

(7) Section 965(m) election. The term section 965(m) election means the election described in section 965(m)(1)(B) and paragraph (d)(1) of this section.

291

ADMIN_03504

(8) Section 965(n) election. The term section 965(n) election means the election described in section 965(n)(1) and paragraph (e)(1)(i) of this section.

(9) Specified individual. The term specified individual means, with respect to a taxable year, a person described in §1.6081-5(a)(5) or (6) who receives an extension of time to file and pay under §1.6081-5(a) for the taxable year.

(10) Total net tax liability under section 965--(i) General rule. The term total net tax liability under section 965 means, with respect to a person, the excess (if any) of--

(A) The person's net income tax for the taxable year in which the person includes a section 965(a) inclusion in income, over--

(B) The person's net income tax for the taxable year determined--

(1) Without regard to section 965, and

(2) Without regard to any income, deduction, or credit properly attributable to a dividend received (directly or through a chain of ownership described in section 958(a)) by the person (or, in the case of a domestic pass-through owner, by the person's domestic pass-through entity) from, or an inclusion under sections 951(a)(1)(B) and 956 with respect to, a deferred foreign income corporation and paid during, or included with respect to, the deferred foreign income corporation's inclusion year.

(ii) Net income tax. For purposes of this paragraph (g)(10), the term net income tax means the regular tax liability (as defined in section 26(b)) reduced by the credits allowed under subparts A, B, and D of part IV of subchapter A of chapter 1 of subtitle A of the Internal Revenue Code.

(iii) Foreign tax credits. The foreign tax credit disregarded in determining net income tax determined under paragraph (g)(10)(i)(B) of this section includes the credit

292 .

ADMIN_03505

for foreign income taxes deemed paid with respect to section 965(a) inclusions or

foreign income taxes deemed paid with respect to a dividend, including a distribution

that would have been treated as a dividend in the absence of section 965. The foreign

tax credit disregarded under paragraph (g)(10)(i)(B) of this section also includes the

credit for foreign income taxes imposed on distributions of section 965(a) previously

taxed earnings and profits or 965(b) previously taxed earnings and profits made in the

taxable year in which the person includes a section 965(a) inclusion in income.

§1.965-8 Affiliated groups (including consolidated groups).

(a) Scope. This section provides rules for applying section 965 and the section

965 regulations to members of an affiliated group (as defined in section 1504(a)),

including members of a consolidated group (as defined in §1.1502-1(h)). Paragraph (b)

of this section provides guidance regarding the application of section 965(b)(5) to

determine the section 965(a) inclusion amounts of a member of an affiliated group.

Paragraph (c) of this section provides guidance for designating the source of aggregate

unused E&P deficits. Paragraph (d) provides rules regarding earning and profits and

stock basis adjustments. Paragraph (e) of this section provides rules that treat

members of a consolidated group as a single person for certain purposes. Paragraph

(f) of this section provides definitions that apply for purposes of this section. Paragraph

(g) of this section provides examples illustrating the application of this section.

(b) Reduction of E&P net surplus shareholder's pro rata share of the section

965(a) earnings amount of a deferred foreign income corporation by the allocable share

of the applicable share of the aggregate unused E&P deficit--(1) In general. This

paragraph (b) applies after the application of §1.965-1(b)(2) for purposes of determining

ADMIN_03506

the section 965(a) inclusion amount with respect to a deferred foreign income corporation of a section 958(a) U.S. shareholder that is both an E&P net surplus shareholder and a member of an affiliated group in which not all members are members of the same consolidated group. If this paragraph (b) applies, the U.S. dollar amount of the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation is further reduced (but not below zero) by the deferred foreign income corporation's allocable share of the section 958(a) U.S. shareholder's applicable share of the affiliated group's aggregate unused E&P deficit.

(2) Consolidated group as part of an affiliated group.  If some, but not all, members of an affiliated group are members of a consolidated group, then the consolidated group is treated as a single member of the affiliated group for purposes of §1.965-1(b)(2) and paragraph (b)(1) of this section.

(c) Designation of portion of excess aggregate foreign E&P deficit taken into account--(1) In general.  This paragraph (c) provides rules for designating the source of an aggregate unused E&P deficit of an affiliated group that is not also a consolidated group taken into account under section 965(b)(5) and paragraph (b) of this section if the amount described in paragraph (f)(1)(i)(A) of this section with respect to the affiliated group exceeds the amount described in paragraph (f)(1)(i)(B) of this section with respect to the affiliated group.  If this paragraph (c)(1) applies, each member of the affiliated group that is an E&P net deficit shareholder must designate by maintaining in its books and records a statement (identical to the statement maintained by all other such members) setting forth the portion of the excess aggregate foreign E&P deficit of

294

ADMIN_03507

the E&P net deficit shareholder taken into account under section 965(b)(5) and paragraph (b) of this section.  See §1.965-2(d)(2)(ii)(B) for a rule for designating the portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit of an E&P deficit foreign corporation taken into account under section 965(b), §1.965-1(b)(2), and paragraph (b) of this section, as applicable.

(2) Consolidated group as part of an affiliated group.  If some, but not all, members of an affiliated group are properly treated as members of a consolidated group, then the consolidated group is treated as a single member of the affiliated group for purposes of applying paragraph (c)(1) of this section.

(d) [Reserved]

(1) [Reserved]

(2) Consolidated groups.  See §1.1502-33(d)(1) for adjustments to members' earnings and profits and §1.1502-32(b)(3) for adjustments to members' basis.

(e) Treatment of a consolidated group as a single section 958(a) U.S. shareholder or a single person--(1) In general.  All members of a consolidated group that are section 958(a) U.S. shareholders of a specified foreign corporation are treated as a single section 958(a) U.S. shareholder for purposes of section 965(b), §1.965-1(b)(2), and §1.965-3.  Furthermore, all members of a consolidated group are treated as a single person for purposes of paragraphs (h), (k), and (n) of section 965 and §1.965-7.  Thus, for example, any election governed by section 965(h) and §1.965-7(b) must be made by the agent (within the meaning of §1.1502-77) of the group as a single election on behalf of all members of the consolidated group.  Similarly, the determination of whether the transfer of assets by one member to a non-member of the consolidated

295

ADMIN_03508

group would constitute an acceleration event under section §1.965-7(b)(3)(ii)(B) takes into account all of the assets of the consolidated group, which for purposes of this determination, includes all of the assets of each consolidated group member. In analyzing issues relating to the transfer of assets of a consolidated group, appropriate adjustments are made to prevent the duplication of assets or asset value.

(2) Limitation. Paragraph (e)(1) of this section does not apply to treat all members of a consolidated group as a single section 958(a) U.S. shareholder or a single person, as applicable, for purposes of determining the amount of any member's inclusion under section 951 (including a section 965(a) inclusion), the foreign income taxes deemed paid with respect to a section 965(a) inclusion (see sections 960 and 902), or any purpose other than those specifically listed in paragraph (e)(1) of this section or another provision of the section 965 regulations.

(3) Determination of section 965(c) deduction amount. For purposes of determining the section 965(c) deduction amount of any section 958(a) U.S. shareholder that is a member of a consolidated group, the aggregate foreign cash position of the section 958(a) U.S. shareholder is equal to the aggregate section 965(a) inclusion amount of the section 958(a) U.S. shareholder multiplied by the group cash ratio of the consolidated group.

(f) Definitions. This paragraph (f) provides definitions that apply for purposes of applying the section 965 regulations to members of an affiliated group, including members of a consolidated group.

(1) Aggregate unused E&P deficit--(i) General rule. The term aggregate unused E&P deficit means, with respect to an affiliated group, the lesser of—

ADMIN_03509

(A) The sum of the excess aggregate foreign E&P deficit with respect to each E&P net deficit shareholder that is a member of the affiliated group, or

(B) The amount determined under paragraph (f)(3)(ii) of this section.

(ii) Reduction with respect to E&P net deficit shareholders that are not wholly owned by the affiliated group. If the group ownership percentage of an E&P net deficit shareholder is less than 100 percent, the amount of the excess aggregate foreign E&P deficit with respect to the E&P net deficit shareholder that is taken into account under paragraph (f)(1)(i) of this section is the product of the group ownership percentage multiplied by the excess aggregate foreign E&P deficit.

(2) Allocable share. The term allocable share means, with respect to a deferred foreign income corporation and an E&P net surplus shareholder's applicable share of an aggregate unused E&P deficit of an affiliated group, the product of the E&P net surplus shareholder's applicable share of the affiliated group's aggregate unused E&P deficit and the ratio described in §1.965-1(f)(11) with respect to the deferred foreign income corporation.

(3) Applicable share. The term applicable share means, with respect to an E&P net surplus shareholder and an aggregate unused E&P deficit of an affiliated group, the amount that bears the same proportion to the affiliated group's aggregate unused E&P deficit as--

(i) The product of--

(A) The E&P net surplus shareholder's group ownership percentage, multiplied by

297

ADMIN_03510

(B) The amount that would (but for section 965(b)(5) and paragraph (b) of this section) constitute the E&P net surplus shareholder's aggregate section 965(a) inclusion amount, bears to

(ii) The aggregate amount determined under paragraph (f)(3)(i) of this section with respect to all E&P net surplus shareholders that are members of the group.

(4) Consolidated group aggregate foreign cash position. The term consolidated group aggregate foreign cash position means, with respect to a consolidated group, the aggregate foreign cash position (as defined in §1.965-1(f)(8)(i)) determined by treating each member of the consolidated group that is a section 958(a) U.S. shareholder as a single section 958(a) U.S. shareholder pursuant to paragraph (e)(1) of this section.

(5) E&P net deficit shareholder. The term E&P net deficit shareholder means a section 958(a) U.S. shareholder that has an excess aggregate foreign E&P deficit.

(6) E&P net surplus shareholder. The term E&P net surplus shareholder means a section 958(a) U.S. shareholder that would (but for section 965(b)(5) and paragraph (b) of this section) have an aggregate section 965(a) inclusion amount greater than zero.

(7) Excess aggregate foreign E&P deficit. The term excess aggregate foreign E&P deficit means, with respect to a section 958(a) U.S. shareholder, the amount, if any, by which the amount described in §1.965-1(f)(9)(i) with respect to the section 958(a) U.S. shareholder exceeds the amount described in §1.965-1(f)(9)(ii) with respect to the section 958(a) U.S. shareholder.

(8) Group cash ratio. The term group cash ratio means, with respect to a consolidated group, the ratio of--

298

ADMIN_03511

(i) The consolidated group aggregate foreign cash position, to

(ii) The sum of the aggregate section 965(a) inclusion amounts of all members of the consolidated group.

(9) <u>Group ownership percentage</u>. The term <u>group ownership percentage</u> means, with respect to a section 958(a) U.S. shareholder that is a member of an affiliated group, the percentage of the value of the stock of the United States shareholder which is held by other includible corporations in the affiliated group. Notwithstanding the preceding sentence, the group ownership percentage of the common parent of the affiliated group is 100 percent. Any term used in this paragraph (f)(9) that is also used in section 1504 has the same meaning as when used in such section. Additionally, if the term is used in the context of a rule for which all members of a consolidated group are treated as a single section 958(a) U.S. shareholder under paragraph (e)(1) of this section, then the group ownership percentage is determined solely with respect to the value of the stock of the common parent of the consolidated group held by other includible corporations that are not members of the consolidated group.

(g) <u>Examples</u>. The following examples illustrate the application of this section.

(1) <u>Example 1</u>. <u>Application of affiliated group rule</u>. (i) <u>Facts</u>. (A) <u>In general</u>. USP owns all of the stock of USS1, USS2, and USS3. Each of USP, USS1, USS2, and USS3 is a domestic corporation and is a member of an affiliated group of which USP is the common parent (the "USP Group"). The USP Group has not elected to file a consolidated federal income tax return. USS1 owns all of the stock of CFC1 and CFC2, USS2 owns all of the stock of CFC3, and USS3 owns all of the stock of CFC4. Each of CFC1, CFC2, CFC3, and CFC4 is a controlled foreign corporation within the meaning of section 957(a), and, therefore, each is a specified foreign corporation under section 965(e) and §1.965-1(f)(45). Each of USP, USS1, USS2, USS3, CFC1, CFC2, CFC3, and CFC4 has the calendar year as its taxable year.

(B) <u>Facts relating to section 965</u>. CFC1 and CFC3 are deferred foreign income corporations with section 965(a) earnings amounts of $600x and $300x, respectively. CFC1 and CFC3 have cash positions of $0x and $50x, respectively, on each of their

ADMIN_03512

cash measurement dates. CFC2 and CFC4 are E&P deficit foreign corporations with specified E&P deficits of $400x and $100x, respectively. CFC2 and CFC4 have cash positions of $100x and $50x, respectively, on each of their cash measurement dates. The cash positions all consist solely of cash. CFC1, CFC2, CFC3, and CFC4 all use the U.S. dollar as their functional currency.

(ii) Analysis. (A) Section 965(a) inclusion amounts before application of section 965(b)(5). USS1 is a section 958(a) U.S. shareholder with respect to CFC1 and CFC2; USS2 is a section 958(a) U.S. shareholder with respect to CFC3; and USS3 is a section 958(a) U.S. shareholder with respect to CFC4. USS1's pro rata share of CFC1's section 965(a) earnings amount is $600x. Under section 965(b)(3)(A) and §1.965-1(f)(9), USS1's aggregate foreign E&P deficit is $400x, the lesser of the aggregate of USS1's pro rata share of the specified E&P deficit of each E&P deficit foreign corporation ($400x) and the amount described in §1.965-1(f)(9)(ii) with respect to USS1 ($600x). Under section 965(b) and §1.965-1(b)(2), in determining its section 965(a) inclusion amount with respect to CFC1, USS1 reduces its pro rata share of the U.S. dollar amount of section 965(a) earnings amount of CFC1 by CFC1's allocable share of USS1's aggregate foreign E&P deficit. CFC1's allocable share of USS1's aggregate foreign E&P deficit is $400x, which is the product of USS1's aggregate foreign E&P deficit ($400x) and 1, which is the ratio determined by dividing USS1's pro rata share of the section 965(a) earnings amount of CFC1 ($600x), by the amount described in §1.965-1(f)(9)(ii) with respect to USS1 ($600x). Accordingly, under section 965(b) and §1.965-1(b)(2) (before applying section 965(b)(5) and paragraph (b) of this section), USS1's section 965(a) inclusion amount with respect to CFC1 would be $200x (USS1's pro rata share of the section 965(a) earnings amount of CFC1 of $600x reduced by CFC1's allocable share of USS1's aggregate foreign E&P deficit of $400x). Under section 965(b) and §1.965-1(b)(2) (before applying section 965(b)(5) and paragraph (b) of this section), USS2's section 965(a) inclusion amount with respect to CFC3 would be $300x (USS2's pro rata share of the section 965(a) earnings amount of CFC3).

(B) Application of section 965(b)(5)--(1) Determination of E&P net surplus shareholders and E&P net deficit shareholders. USS1 is an E&P net surplus shareholder because it would have an aggregate section 965(a) inclusion amount of $200x but for the application of section 965(b)(5) and paragraph (b) of this section. USS2 is also an E&P net surplus shareholder because it would have an aggregate section 965(a) inclusion amount of $300x but for the application of section 965(b)(5) and paragraph (b) of this section. USS3 is an E&P net deficit shareholder because it has an excess aggregate foreign E&P deficit of $100x.

(2) Determining section 965(a) inclusion amounts under section 965(b)(5). Under section 965(b) and paragraph (b) of this section, for purposes of determining the section 965(a) inclusion amount of a section 958(a) U.S. shareholder with respect to a deferred foreign income corporation, if, after applying §1.965-1(b)(2), the section 958(a) U.S. shareholder is an E&P net surplus shareholder, then the U.S. dollar amount of the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation is further reduced (but not below zero) by the

300

ADMIN_03513

deferred foreign income corporation's allocable share of the section 958(a) U.S. shareholder's applicable share of the affiliated group's aggregate unused E&P deficit. USS3 is the only E&P net deficit shareholder in the USP Group, and, therefore, the aggregate unused E&P deficit of the USP Group is equal to USS3's excess aggregate foreign E&P deficit ($100x). The applicable share of the USP Group's aggregate unused E&P deficit of each of USS1 and USS2, respectively, is an amount that bears the same proportion to the USP Group's aggregate unused E&P deficit as the product of the group ownership percentage of USS1 and USS2, respectively, multiplied by the amount that would (but for section 965(b)(5) and paragraph (b) of this section) constitute the aggregate section 965(a) inclusion amount of USS1 and USS2, respectively, bears to the aggregate of such amounts with respect to both USS1 and USS2. Therefore, USS1's applicable share of the USP Group's aggregate unused E&P deficit is $40 ($100x x ($200x/($200x + $300x))) and USS2's applicable share of the USP Group's aggregate unused E&P deficit is $60x ($100x x ($300x/($200x + $300x))). Because USS1 is a section 958(a) U.S. shareholder with respect to only one deferred foreign income corporation, the entire $60x of USS1's applicable share of the USP Group's aggregate unused E&P deficit is treated as CFC1's allocable share of USS1's applicable share of the USP Group's aggregate unused E&P deficit, and thus USS1's section 965(a) inclusion amount with respect to CFC1 is reduced to $160x ($200x - $40x). Because USS2 is a section 958(a) U.S. shareholder with respect to only one deferred foreign income corporation, the entire $60x of USS2's applicable share of the USP Group's aggregate unused E&P deficit is treated as CFC3's allocable share of USS2's applicable share of the USP Group's aggregate unused E&P deficit, and thus USS2's section 965(a) inclusion amount with respect to CFC3 is reduced to $240x ($300x - $60x).

(C) Aggregate foreign cash position. Under section 965(c) and §1.965-1(c), a section 958(a) U.S. shareholder that includes a section 965(a) inclusion amount in income is allowed a deduction equal to the section 965(c) deduction amount. The section 965(c) deduction amount is computed by taking into account the aggregate foreign cash position of the section 958(a) U.S. shareholder. Under §1.965-1(f)(8)(i), the aggregate foreign cash position of USS1 is $100x, and the aggregate foreign cash position of USS2 is $50x.

(D) Section 965(c) deduction amount. The section 965(c) deduction amount of USS1 is $102x, which is equal to (i) USS1's 8 percent rate equivalent percentage (77.1428571%) of its 8 percent rate amount for USS1's 2017 year ($60x ($160x - $100x)), plus USS1's 15.5 percent rate equivalent percentage (55.7142857%) of its 15.5 percent rate amount for USS1's 2017 year ($100x). The section 965(c) deduction amount of USS2 is $174.43x, which is equal to (i) USS2's 8 percent rate equivalent percentage (77.1428571%) of its 8 percent rate amount for USS2's 2017 year ($190x ($240x - $50x)), plus USS2's 15.5 percent rate equivalent percentage (55.7142857%) of its 15.5 percent rate amount for USS2's 2017 year ($50x). Because USS3 has no section 965(a) inclusion amount, it has no section 965(c) deduction amount and therefore is not allowed a section 965(c) deduction.

301

ADMIN_03514

(2) <u>Example 2</u>. <u>Application to members of a consolidated group</u>. (i) <u>Facts</u>. The facts are the same as in paragraph (g)(1)(i) of this section (the facts in <u>Example 1</u>), except that the USP Group has elected to file a consolidated return.

(ii) <u>Analysis</u>--(A) <u>Section 965(a) inclusion amount</u>--(1) <u>Single section 958(a) U.S. shareholder treatment</u>. Because each of USS1, USS2, and USS3 is a section 958(a) U.S. shareholder of a specified foreign corporation and is a member of a consolidated group, paragraph (e)(1) of this section applies to treat USS1, USS2, and USS3 as a single section 958(a) U.S. shareholder for purposes of section 965(b) and §1.965-1(b)(2).

(2) <u>Determination of inclusion amount</u>. The single section 958(a) U.S. shareholder composed of USS1, USS2, and USS3 is a section 958(a) U.S. shareholder with respect to CFC1, CFC2, CFC3, and CFC4. Under §1.965-1(b)(2), in determining USS1's section 965(a) inclusion amount, the single section 958(a) U.S. shareholder decreases its pro rata share of the U.S. dollar amount of the section 965(a) earnings amount of CFC1 by CFC1's allocable share of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder. CFC1's allocable share of the aggregate foreign E&P deficit is $333.33x, which is the product of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder ($500x ($400x + $100x)) and .67, which is the ratio determined by dividing its pro rata share of the section 965(a) earnings amount of CFC1 ($600x) by the amount described in §1.965-1(f)(9)(ii) with respect to the single section 958(a) U.S. shareholder ($900x ($600x + $300x)). Therefore, USS1's section 965(a) inclusion amount with respect to CFC1 is $266.67 (its pro rata share of the section 965(a) earnings amount of CFC1 ($600) less CFC1's allocable share of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder ($333.33x)). Similarly, under §1.965-1(b)(2), in determining the section 965(a) inclusion amount of USS2, the single section 958(a) U.S. shareholder decreases its pro rata share of the U.S. dollar amount of the section 965(a) earnings amount of CFC3 by CFC3's allocable share of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder. CFC3's allocable share of the aggregate foreign E&P deficit is $166.67x, which is the product of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder ($500x) and .33, which is the ratio determined by dividing its pro rata share of the section 965(a) earnings amount of CFC3 ($300x) by the amount described in §1.965-1(f)(9)(ii) with respect to the single section 958(a) U.S. shareholder ($900x ($600x + $300x)). Therefore, USS2's section 965(a) inclusion amount with respect to CFC3 is $133.33x (its pro rata share of the section 965(a) earnings amount of CFC3 ($300x) less CFC3's allocable share of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder ($166.67x)).

(B) <u>Consolidated group aggregate foreign cash position</u>. Because USS1 and USS2 are members of a consolidated group, the aggregate foreign cash position of each of USS1 and USS2 is determined under paragraph (e)(3) of this section. Under paragraph (e)(3) of this section, the aggregate foreign cash position of each of USS1 and USS2 is equal to the aggregate section 965(a) inclusion amount of USS1 and USS2, respectively, multiplied by the group cash ratio of the USP Group, as determined

ADMIN_03515

pursuant to paragraph (f)(8) of this section. The group cash ratio of the USP Group is .50, which is the ratio of the USP Group's consolidated group aggregate foreign cash position ($200x ($50x + $100x + $50x)) and the sum of the aggregate section 965(a) inclusion amounts of all members of the USP Group ($400x ($266.67x + $133.33x)). Therefore, under paragraph (e)(3) of this section, the aggregate foreign cash positions of USS1 and USS2 are, respectively, $133.34x ($266.67x x ($200x/$400x)) and $66.67 ($133.33x x ($200x/400x)).

(C) Section 965(c) deduction amount. The section 965(c) deduction amount of USS1 is $177.14x, which is equal to (i) USS1's 8 percent rate equivalent percentage (77.1428571%) of its 8 percent rate amount for USS1's 2017 year ($133.33x ($266.67x - $133.34x)), plus USS1's 15.5 percent rate equivalent percentage (55.7142857%) of its 15.5 percent rate amount for USS1's 2017 year ($133.34x). The section 965(c) deduction amount of USS2 is $88.56x, which is equal to (i) USS2's 8 percent rate equivalent percentage (77.1428571%) of its 8 percent rate amount for USS2's 2017 year ($66.66x ($133.33x - $66.67x)), plus USS2's 15.5 percent rate equivalent percentage (55.7142857%) of its 15.5 percent rate amount for USS2's 2017 year ($66.67x). Because USS3 has no section 965(a) inclusion amount, it has no section 965(c) deduction amount and therefore is not allowed a section 965(c) deduction.

§1.965-9 Applicability dates.

(a) In general. Sections 1.965-1 through 1.965-8 apply beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, beginning the taxable year in which or with which such taxable year of the foreign corporation ends.

(b) Applicability dates for rules disregarding certain transactions. Section 1.965-4 applies regardless of whether, with respect to a foreign corporation, the transaction, effective date of a change in method of accounting, effective date of an entity classification election, or specified payment described in §1.965-4 occurred before the first day of the foreign corporation's last taxable year that begins before January 1, 2018, or, with respect to a United States person, the transaction, effective date of a change in method of accounting, effective date of an entity classification election, or specified payment described in §1.965-4 occurred before the first day of the taxable

ADMIN_03516

year of the United States person in which or with which the taxable year of the foreign corporation ends.

Par. 5. Section 1.986(c)-1 is added to read as follows:

§1.986(c)-1 Coordination with section 965.

(a) <u>Amount of foreign currency gain or loss</u>.  Foreign currency gain or loss with respect to distributions of section 965(a) previously taxed earnings and profits (as defined in §1.965-1(f)(39)) is determined based on movements in the exchange rate between December 31, 2017, and the time such distributions are made.

(b) <u>Section 965(a) previously taxed earnings and profits</u>.  Any gain or loss recognized under section 986(c) with respect to distributions of section 965(a) previously taxed earnings and profits is reduced in the same proportion as the reduction by a section 965(c) deduction amount (as defined in §1.965-1(f)(42) of the section 965(a) inclusion amount (as defined in §1.965-1(f)(38)) that gave rise to such section 965(a) previously taxed earnings and profits.

(c) <u>Section 965(b) previously taxed earnings and profits</u>.  Section 986(c) does not apply with respect to distributions of section 965(b) previously taxed earnings and profits (as defined in §1.965-1(f)(40)).

ADMIN_03517

(d) <u>Applicability dates</u>.  The section applies beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, for the taxable year in which or with which such taxable year of the foreign corporation ends.

Kirsten Wielobob

Deputy Commissioner for Services and Enforcement.

Approved:

December 19, 2018.

David J. Kautter

Assistant Secretary of the Treasury (Tax Policy).

Certified to be a true copy of the original document.

# REGULATORY FLEXIBILITY ACT CHECKLIST

**Regulations Project (number and title):** REG-104226-18
Guidance Regarding the Transition Tax Under Section 965 and Related Provisions

1. **Legislative/Interpretative Regulations**

   **Check one of the following, whichever is applicable:**

   a. __  Legislative Regulations (RFA applies; go to 3. below)

   b. ✓  Interpretative Regulations (RFA applies to the extent a collection of
   information is imposed on small entities; go to 2. below)

   c. __  Other; explain

   _____
   _____
   _____
   _____
   _____

2. **Collections of Information (complete for interpretative regulations)**

   a.   Does the regulation contain a collection of information?

   ✓ i. Yes.  (Go to 2.b. below)

   __ ii. No.  The RFA does not apply.  (Go to 4. below.)

   b.   Is any collection of information in 2.a. imposed on "small entities"?

   ✓ i. Yes.  (Go to 3. below.)

   __ ii. No.  The RFA does not apply  (Go to 4. below.)

3. **Regulations Subject to RFA**

   If the regulations are legislative (see 1.a.) or are interpretative and impose a
   collection of information on small entities (see 2.b.i.), complete either a. or b.
   below, whichever applies.

ADMIN_03519

a.   **RegFlex Analysis Prepared**.  Has a regulatory flexibility analysis been prepared?

   __ i. Yes.  (Go to 4. below.)

   ✓ ii. No.  (Go to 3.b. below.)

b.   **Certification**.  Do the regulations contain a certification that the regulations (if legislative) or the collection of information imposed by the regulations (if interpretative) do not impose a significant economic impact on a substantial number of small entities?

   ✓ i. Yes.  (Go to 4. below.)

   __ ii. No.  Explain why the regulations do not contain a regulatory flexibility analysis:
   _____
   _____
   _____
   _____
   _____
   _____

## 4.  Alternative Approaches

a.   Regardless of whether the regulations are subject to the RFA, were other alternative regulatory approaches considered in an attempt to minimize the burden on small entities?

   ✓ i. Yes.  (Checklist is complete.)

   __ ii. No.  (Go to 4.b. below.)

b.   Other alternatives were not considered because:

   __ i. The statute and/or legislative history prevented consideration of other alternatives.

   __ ii. Other.  Explain.
   _____
   _____
   _____
   _____
   _____

-2-

ADMIN_03520

REGULATIONS SIGNATURE  PACKAGE  ROUTING SLIP  AND CLEARANCE SHEET
(CC:INTL)

- Associate Chief Counsel (International)
- Chief Counsel
- Deputy Commissioner
- Assistant Secretary (Tax Policy)

Project Title: Guidance with Respect to Transition Tax Under Section 965 and Related Provisions

Project No.: REG-104226-18                    Code Section: 965

Comments: This document contains final regulations under section 965 of the Internal
Revenue Code, as amended by the Tax Cuts and Jobs Act, Pub. L. 115-97 (2017).  The
final regulations provide rules for determining the section 965(a) inclusion amount of a
United States shareholder of a deferred foreign income corporation.

**PLEASE  CALL Natalie Punchak at 317-5477 FOR  PICKUP.**

Each person identified below has reviewed and approved for publication in the Federal Register this
signature package dated <u>November 20, 2018</u>.

| | | Drafter | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer |
|---|---|---|---|---|---|---|---|
| Symbols : | : | CC:INTL:B02 | CC:INTL:B02 | CC:INTL:FO<br>And on behalf of W. Paul | DCSE | DCSE | ITC |
| Surname/: | : | N. Punchak | R. Jenkins | M. Rollinson | A. Giuliano | K. Wielobob | B. Zent |
| Date : | : | 11/19/18 | 11/19/18 | 11/19/18 | 11/27/18 | 11/29/18 | 12/19/18 |

| | | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer |
|---|---|---|---|---|---|---|---|
| Symbols : | : | ITC | OTP | : | : | : | : |
| Surname/: | : | D. Poms | C. Harter<br>12/19/18 | D. Kautter | : | : | : |
| Date : | : | 12/19/18 | : | 12/19/18: | : | : | : |

(Rev. 7/93)

DEPARTMENT OF THE TREASURY
WASHINGTON, D.C.

MEMORANDUM FOR:     **DAVID J. KAUTTER**
                                          **ASSISTANT SECRETARY (TAX POLICY)**

FROM:                         **BRENDA L. ZENT, SPECIAL ADVISOR**
                                          **LINDSAY KITZINGER, ATTORNEY ADVISOR**
                                          **JAMES S. WANG, ATTORNEY ADVISOR**
                                          **JASON YEN, ATTORNEY ADVISOR**

SUBJECT:                     **Final Regulations on Guidance Regarding the Transition Tax**
                                          **Under Section 965 and Related Provisions**

DATE:                          **December 19, 2018**

Attached for your review prior to transmittal to the *Federal Register* are final regulations under sections 962, 965, and 986 of the Internal Revenue Code (the "final regulations"). The final regulations provide rules to implement section 965, as amended by the Tax Cuts and Jobs Act, P.L. 115-97 (2017) (the "Act") and finalize regulations proposed on August 9, 2018 (the "proposed regulations"), with modifications based on comments received. In general, section 965 imposes a one-time transition tax on certain U.S. persons that own stock of foreign corporations with deferred foreign earnings by deeming those earnings to be repatriated and included in the U.S. person's income. The final regulations include rules relating to the amount and character of the inclusion under section 965, the adjustments to tax attributes needed as a result of its application, the disregard of certain transactions for purposes of section 965, the application of the foreign tax credit rules, the availability of certain elections, and rules relating to affiliated groups. The final regulations also include changes to existing regulations under sections 962 and 986 related to the application of section 965.

I.      **BACKGROUND**

      A.      **Overview of Section 965**

Section 965, as amended by the Act, is intended to act as a transition provision between the international tax rules in place before the Act and those enacted by the Act. Specifically, before the Act, non-passive earnings of foreign subsidiaries of domestic corporations generally were not subject to tax until the earnings were distributed to the domestic corporation. Those rules encouraged domestic corporations to minimize distributions back to the United States and to accumulate substantial earnings offshore. After the Act, domestic corporations are in most circumstances entitled to a 100-percent deduction for any dividends received from their foreign subsidiaries, which eliminates any U.S. tax liability on the dividend. See section 245A. In order to prevent a potential windfall, whereby a domestic corporation could distribute its historical pre-Act earnings tax free to the United States, the Act included section 965 to treat those historical earnings as repatriated to the United States under the pre-Act rules, before the new rules took effect.

The tax under section 965 is imposed on certain United States shareholders of a foreign corporation through an increase to the income of the foreign corporation that is deemed repatriated to its United States shareholders under section 951(a)(1)(A) for the corporation's last taxable year beginning before January 1, 2018 (the "inclusion year").[1]  Section 965(a).  The amount of such income included by the United States shareholder is equal to its pro rata share of the foreign corporation's "accumulated post-1986 deferred foreign income" (defined below) on November 2, 2017, or December 31, 2017 (whichever is greater).  Section 965(a)(1) and (2).  The foreign corporations described in section 965(a) are "deferred foreign income corporations" ("DFICs"), which are defined as any "specified foreign corporations" that have accumulated post-1986 deferred foreign income as of November 2, 2017, or December 31, 2017, in an amount greater than zero.  Section 965(d)(1).  A specified foreign corporation is defined as any foreign corporation that is (i) a controlled foreign corporation ("CFC"),[2] or (ii) any other foreign corporation with at least one domestic corporation as a United States shareholder.  Section 965(e).  If a United States shareholder owns multiple DFICs with different inclusion years, the United States shareholder may have inclusions under section 965 in multiple taxable years.  For example, if a United States shareholder has a calendar taxable year and it owns two DFICs, one with a November 30 fiscal taxable year and one with a calendar taxable year, the United States shareholder will have separate inclusions under section 965(a) for 2017 and 2018.  Section 965(d)(1).

Section 965(d)(2) defines accumulated post-1986 deferred foreign income as the "post-1986 earnings and profits" of a specified foreign corporation, excluding two amounts:  (i) E&P attributable to income effectively connected with the conduct of a U.S. trade or business (such income, "ECI"), and (ii) in the case of a CFC, E&P that would be excluded from gross income as previously taxed E&P under section 959.  More broadly, post-1986 earnings and profits are defined in section 965(d)(3) as "the earnings and profits of the [specified foreign corporation] (computed in accordance with sections 964(a) and 986, and by only taking into account periods when the foreign corporation was a specified foreign corporation) accumulated in taxable years beginning after December 31, 1986," without diminution by reason of certain dividends.  Section 965(d)(3).

To the extent that a United States shareholder owns one or more specified foreign corporation that has a deficit in its post-1986 earnings and profits on November 2, 2017, the United States shareholder can use the deficits of such corporations to offset the section 965(a) inclusion it would have with respect to its DFICs.  See section 965(b).  A specified foreign corporation with such a deficit is referred to as an "E&P deficit foreign corporation" (an "EPDFC").  Section 965(b)(3)(B).  To the extent that a deficit is used to reduce a section 965(a) inclusion with respect to a DFIC, section 965(b)(4)(A) provides that the deficit is eliminated and

---

[1] For the taxable year to which section 965 applies, a United States shareholder of a foreign corporation is defined as any United States person that owns at least 10 percent of the voting power of such corporation.  I.R.C. § 951(b).

[2] A CFC is any foreign corporation that is more than 50-percent owned, by vote or value (including through indirect ownership under section 958(a) and constructive ownership under section 958(b)), by United States shareholders (as defined in section 951(b)).  I.R.C. § 957(a).

ADMIN_03523

the earnings and profits ("E&P") sheltered by the deficit are treated as previously taxed E&P under section 959. Similarly, to the extent that a deficit of an EPDFC is used to reduce a United States shareholder's section 965(a) inclusion, such EPDFC's untaxed E&P is increased by the amount of the deficit so used. Section 965(b)(4)(B). Special rules apply to permit netting between DFICs and EPDFCs of different United States shareholders where the United States shareholders are members of an affiliated group. Section 965(b)(5).

The earnings included in the income of a United States shareholder under section 965(a) are generally subject to tax at two rates—15.5 percent for the portion of earnings that does not exceed the amount of cash and certain cash equivalent assets held by the United States shareholder's specified foreign corporations, and 8 percent for the remaining earnings. These rate reductions are achieved through a deduction at the level of the United States shareholder. See section 965(c)(1). In order to calculate the appropriate deduction and determine the portion of the inclusion that is taxed at the 15.5 percent rate for cash and cash-equivalent assets, a United States shareholder must determine its "aggregate foreign cash position." The statute defines aggregate foreign cash position to include items like cash, net accounts receivable, and the fair market value of actively traded property, commercial paper, government securities, short-term obligations, and foreign currency. Section 965(c)(3)(B). While the statute grants specific authority to the Secretary to identify additional assets that should be considered cash-equivalent assets, see section 965(c)(3)(B)(iii)(V), nothing in the statute directs the Secretary to provide exceptions for items that are specifically described in the statute. A United States shareholder determines its aggregate foreign cash position with respect to its specified foreign corporations based on two different methods (in general, by either measuring on the last day of the inclusion year of each specified foreign corporation, or by using the average of the amounts held by each specified foreign corporation on the last day of each of its last two taxable years ending before November 2, 2017), and must use the greater of the two amounts.

United States shareholders may use foreign tax credits, in accordance with the pre-Act rules, to offset their inclusions under section 965. However, in order to account for the reduced rate of U.S. tax on accumulated post-1986 deferred foreign income, section 965(g) provides that the amount of foreign taxes paid or accrued, or deemed paid as accrued, with respect to the inclusion under section 965(a) is reduced by a percentage intended to mimic the amount of the deduction permitted under section 965(c) to achieve the 15.5 percent and 8 percent transition tax rates.

Recognizing that paying a tax associated with over 30 years of deferred earnings could present a hardship for taxpayers, even at the reduced rates provided in section 965, section 965(h) provides an election for United States shareholders to pay the tax due under section 965 in annual installments over an eight-year period. However, the payment of the liability may be accelerated in certain situations, including a sale of substantially all the assets of the taxpayer (including in a title 11 or similar case), a cessation of business by the taxpayer, or any similar circumstance. Section 965(h)(3). Upon a sale of substantially all the taxpayer's assets, acceleration is avoided if the acquiror enters into a transfer agreement to assume the liability for the remaining installments of the taxpayer's section 965(a) liability. Section 965(h)(3). Special elections are also provided for shareholders of S corporations, real estate investment trusts, and United States shareholders with net operating losses. See section 965(i), (m), and (n). Of note is

3

ADMIN_03524

the election for S corporations provided under section 965(i), which allows their liability under section 965(a) to be deferred indefinitely until the occurrence of a triggering event.  Triggering events generally include sales of the stock of the S corporation (triggering a proportionate amount of the tax), liquidation of the S corporation, a sale of substantially all of the S corporation's assets (including in a title 11 or similar case), a cessation of business by the S corporation, or a cessation of S corporation status.  See section 965(i)(2).  The language of both section 965(h) and (i) makes clear that those provisions only allow the payment of the section 965(a) liability to be deferred; the inclusion itself is fixed as of the United States shareholder's taxable year that includes the end of its specified foreign corporation's inclusion year.  The amount of such liability that is eligible for deferral under section 965(h) or (i) is the United States shareholder's "net tax liability" under section 965, which is calculated on a "with" and "without" basis.  Section 965(h)(6).  Specifically, the net tax liability under section 965 for any year in which a United States shareholder has a section 965(a) inclusion is equal to its net income tax for such year, less the United States shareholder's net income tax for such year without regard to section 965 and any income or deduction arising from any dividends received by the United States shareholder from any DFICs in that year.

Congress provided the Treasury Department and the IRS with authority to issue regulations related to section 965.  Specifically, section 965(o) provides that the Secretary may provide regulations or other guidance as may be necessary or appropriate to carry out the provisions of section 965.  Section 965(o) also states that such regulations may include regulations to provide appropriate basis adjustments and regulations or other guidance to prevent the avoidance of the purposes of section 965.

**B.      Prior Guidance on Section 965**

Prior to issuing the proposed regulations, the Treasury Department and the IRS issued three notices and a revenue procedure that described regulations that the Treasury Department and the IRS intended to issue under section 965.  See Notice 2018-07, Notice 2018-13, Notice 2018-26, and Rev. Proc. 2018-17.  The proposed regulations were subsequently issued on August 9, 2018, followed by a further notice issued on October 1, 2018 to describe certain changes that would be made to the proposed regulations in the final regulations.  See REG-104226-18, 83 Fed. Reg. 39514 (Aug. 9, 2018) and Notice 2018-78.  The final regulations generally incorporate the section 965 regulations described in all four notices.

A number of comment letters were received in response to all of the prior guidance described above.  The majority of these comments were submitted in response to the proposed regulations.  A public hearing was also held on October 22, 2018, at which members of the public orally presented certain comments.  The comments received throughout this process covered a wide variety of topics, including but not limited to (i) requests for exceptions from the definition of cash equivalent assets; (ii) guidance regarding the application of the foreign tax credit rules; (iii) questions and requests regarding the application of rules preventing double-counting of earnings and cash positions; (iv) comments regarding reporting and payment issues, including the ability to obtain refunds of section 965 installment payments and the amount of the section 965(a) liability eligible for deferral under section 965(h) or (i), and (v) the application of section 965 to individuals.  All substantive comments were addressed in the final regulations,

4

ADMIN_03525

either via the preamble or as incorporated into the final regulations themselves. Some of the most significant comments are discussed in the following part of this memorandum.

## II.   THE FINAL REGULATIONS

The final regulations provide rules to implement section 965, including those rules described in prior guidance. As discussed above, the final regulations primarily finalize the proposed regulations, with certain changes based on comments received. The final regulations include nine regulation sections under section 965, which generally provide (i) general rules and definitions under section 965; (ii) rules relating to adjustments to E&P and basis to determine and account for the application of section 965 and a rule that limits the amount of gain recognized in connection with the application of section 961(b)(2); (iii) rules regarding the determination of section 965(c) deductions; (iv) rules that disregard certain transactions for purposes of section 965; (v) and (vi) rules with respect to foreign tax credits; (vii) rules regarding elections and payments; (viii) rules regarding affiliated groups, including consolidated groups; and (ix) dates of applicability. The final regulations also include modifications to the regulations under sections 962 and 986 relating to the application of section 965. This Part II first describes some of the most significant changes made to the proposed regulations in the final regulations, and then provides a brief summary of certain significant comments that were received but not adopted in the final regulations.

### A.   Changes Made in the Final Regulations

#### 1.   Exceptions to Cash Equivalent Assets

For purposes of determining a United States shareholder's aggregate foreign cash position, proposed §1.965-1(f)(13) defined a cash equivalent asset in generally the same manner as section 965(c)(3)(B). Thus, in general, a cash-equivalent asset was defined to include any personal property of a type that is actively traded and for which there is an established financial market. Certain clarifications were made to the statutory definition with respect to derivative financial instruments—consistent with Notice 2018-07, the proposed regulations included the fair market value of certain derivative financial instruments (other than those entered into pursuant to bona fide hedging transactions) as part of a taxpayer's cash position.

Many of the comments received in response to the proposed regulations and other prior guidance focused on the statutory rules relating to cash equivalent assets, which determines which earnings are subject to tax at the 15.5 percent rather than 8 percent rate. In general, these comments argued that the Treasury Department and the IRS should provide that certain types of personal property are not considered cash equivalent assets, even though technically described in the statute as such, because the assets are not cash-like in terms of liquidity, fungibility, or use in the taxpayer's business. For example, under the statute, stock of a CFC may be considered a cash equivalent asset if any portion of the stock of the CFC is publicly traded on a securities market. Some commenters stated that taxpayers may own significant portions (sometimes a majority stake) of the common stock of a CFC with a relatively small public float of such common stock, resulting in treatment of the stock as a cash equivalent asset despite the inability to easily dispose of their significant interest in the business. Taxpayers also made similar arguments regarding the lack of liquidity with respect to property that they owned as inventory in

5

ADMIN_03526

their business, but for which there was an established market where the property could be actively traded. Finally, a number of comments raised fact patterns in which cash was transferred off-shore from the United States for a specific pre-determined purpose, such as the acquisition of a target or to pay creditors.

In finalizing the proposed regulations, the Treasury Department and the IRS determined that a narrow exemption from the definition of cash-equivalent asset would be appropriate for certain assets held by a specified foreign corporation in the ordinary course of its trade or business as well as for certain privately negotiated contracts to buy or sell such assets. Therefore, the final regulations provide that a commodity that is described in section 1221(a)(1) (concerning inventory) or 1221(a)(8) (concerning supplies) in the hands of a specified foreign corporation is excluded from the category of cash equivalent assets for personal property of a type that is actively traded and for which there is an established market, except with respect to dealers or traders in commodities. Reg. §1.965-1(f)(13)(i)(A) and (ii). Additionally, the final regulations exclude forward contracts and short positions with respect to such commodities from the definition of derivative financial instrument to the extent that they could have been identified as a hedging transaction with respect to such commodities. See §1.965-1(f)(18)(iii) and (v).

The types of assets included in this exception (inventory and supplies) have been defined by statute and decades of case law as property used in the ordinary course of a taxpayer's business, typically for sale to customers or further use via processes such as manufacturing and refinement. See generally Burnet v. Harmel, 287 U.S. 103 (1932); Hort v. Comm'r, 313 U.S. 28 (1941); Comm'r v. Gillette Motor Transport Co., 364 U.S. 130 (1960). In general, these types of assets are not held for investment with the goal of recognizing appreciation over a substantial period of time, but are rather turned over (or used to make property that is turned over) routinely in the ordinary conduct of business. These well-settled delineations of what constitute inventory or supplies are consistent with the statutory definition of cash equivalent assets in section 965(c)(3)(B). Moreover, the contours of this category have been carefully defined through common law and are generally well-understood by taxpayers. As a result, an exception from cash equivalent assets for this type of property is well-defined and understood, consistent with statutory intent, and appropriately narrow.

By contrast, other potential exceptions would have required the creation of new terms and concepts, led to potential over- or under-inclusiveness, and created uncertainty. For these reasons, the Treasury Department and the IRS did not adopt requests for any other additional cash position exceptions. Congress developed a statutory definition of "cash position" that includes all cash and certain assets held by a specified foreign corporation regardless of whether the cash or assets are illiquid or were transferred from the United States. See section 965(c)(3)(B). The legislative history is consistent with the unambiguous language in the statute. See, e.g., H.R. Rep. No. 115-446, at 609-10 (2017) ("The cash position of an entity consists of all cash, net accounts receivable, and the fair market value of similarly liquid assets, specifically including personal property that is actively traded on an established financial market, government securities, certificates of deposit, commercial paper, foreign currency, and short-term obligations.").

Additionally, creating broad regulatory exceptions to the statutory definition would require administratively complex tracing and facts-and-circumstances rules. For example, an

6

ADMIN_03527

exclusion for cash that originated in the United States and was earmarked to fund a foreign acquisition pursuant to a legal contract entered into before November 2, 2017, would necessarily require difficult-to-administer rules to identify such cash, which may currently be or may have previously been comingled with foreign-derived cash in a single account.  Similarly, it would be challenging to administer a presumption or a test that assesses the liquidity of every asset based on the facts and circumstances.

## 2.   Clarification to Net Tax Liability Definition

Solely for purposes of calculating the amount of a taxpayer's section 965(a) liability that may be deferred under section 965(h) or (i), the statute requires a taxpayer to determine the amount of its net income tax with section 965 included (the "with" prong of the calculation), and then subtract its net income tax determined without regard to section 965 and any income or deductions attributable to dividends received by the taxpayer from any DFICs (the "without" prong).  See section 965(h)(6).  This "with" and "without" calculation is required because liability under section 965(a) is not a separate tax, but is rather a part of a taxpayer's income tax liability for a taxable year.  Thus, section 965(h)(6) is intended to isolate the portion of a taxpayer's income tax liability specifically attributable to section 965(a).  Dividends are disregarded because, absent section 965, the dividends generally would be taxed in the hands of the taxpayer, but such dividends would be distributions of previously taxed E&P if section 965 applies, and thus not subject to additional tax.  Thus, absent the provision in the statute that disregards dividends received from the "without" prong, the tax imposed on dividends would be included in the "without" prong but not in the "with" prong, distorting the "with" and "without" calculation so that it no longer isolates the net income tax attributable to section 965.

Consistent with Notice 2018-26, the proposed regulations defined a new term, "total net tax liability under section 965," and also clarified the extent to and manner in which dividends are excluded from the "without" prong of the section 965(h)(6) calculation.  See proposed §1.965-7(g)(10).  The final regulations retain these aspects of the proposed regulations.  Additionally, in response to comments, the final regulations also disregard effective repatriations taxed in a manner similar to dividends under section 951(a)(1)(B) resulting from a foreign subsidiary's investments in U.S. property (including through the issuance of loans to U.S. persons) under section 956 for purposes of calculating the "without" prong.  See §1.965-7(g)(10)(i)(B)(2).  In the year that section 965 applied, taxpayers may have chosen to borrow funds from their CFCs instead of receiving a regular dividend distribution, because such loans would not be subject to tax as effective repatriations of previously taxed E&P and their annual cash distribution policies could not be easily adjusted following passage of the Act.  Without the final regulations, taxpayers that received these loans from their CFCs would be required to include the loan amount in the "without" calculation under sections 951(a)(1)(B) and 956 but not in the "with" amount due to previously taxed E&P arising from section 965(a), leading to a distortion in the "with" and "without" calculation so that it no longer isolated the net income tax attributable solely to section 965.

## 3.   Elective Basis Adjustments

To the extent that a deficit is used to reduce the amount of an inclusion with respect to a DFIC, section 965(b)(4) provides that the deficit is eliminated and the E&P sheltered by the

ADMIN_03528

deficit are treated as previously taxed E&P.  In general, when a taxpayer incurs tax under section 951(a), the basis of the taxpayer's stock in the CFC is increased under section 961(a) to account for the fact that a portion of the CFC's earnings have been taxed and may be distributed under section 959 to its United States shareholders without incurring additional tax.  The increased basis in the CFC stock also allows the stock of the CFC to be disposed of without double taxation.  When the previously taxed E&P is distributed, section 961(b) reduces the basis in the CFC stock to reflect the fact that the previously taxed E&P has been repatriated to the United States.  At that time, any basis reduction that would reduce the basis of the CFC stock below zero is treated as gain from the sale or exchange of property.  Section 961(b)(2).

Section 965 is silent with respect to whether any basis adjustments should be made to account for the changes required by section 965(b)(4) to the previously taxed E&P of a DFIC when a deficit is used to reduce the amount of an inclusion under section 965(a).  However, the legislative history and section 965(o) generally delegate authority to the Secretary to determine whether adjustments should be made to increase the basis in the stock of the DFIC's stock and decrease the basis of the EPDFC's stock in an amount equal to the amount of deficit used.

Proposed § 1.965-2(f)(1) provided that, in general, no adjustments to basis of stock or property are made under section 961 (or any other provision of the Code) to take into account the application of section 965(b).  However, proposed §1.965-2(f)(2) contained a rule that allowed taxpayers to elect to make the relevant basis adjustments (both increases and decreases) with respect to its DFICs and EPDFCs to the extent of the deficits of its EPDFCs were used to offset a section 965(a) inclusion with respect to its DFICs under section 965(b).  These proposed regulations required basis adjustments to be made fully to the extent of an EPDFC's deficit utilized under section 965(b), which could have the consequence of triggering gain with respect to one or more EPDFCs pursuant to proposed §1.965-2(h)(3) (in a manner similar to section 961(b)(2)).

In response to comments received in developing the final regulations, the Treasury Department and the IRS have determined that it is appropriate to not require downward basis adjustments in excess of basis (in order to avoid gain recognition to the extent of such excess) if the corresponding upward basis adjustments are correspondingly limited.  Accordingly, §1.965-2(f)(2)(ii)(B)(2) provides that downward basis adjustments to the stock of, or applicable property with respect to, an EPDFC may be limited to the available basis with the result that gain is not recognized.  If this rule limits downward basis adjustments, the corresponding upward basis adjustments are correspondingly limited.  See reg. §1.965-2(f)(2)(ii)(A)(2)(ii).  However, the relevant United States shareholder can (subject to certain limitations) designate the stock of, or applicable property with respect to, a DFIC with respect to which the upward adjustments are made.  A taxpayer may also choose to make the full amounts of the adjustments that would have been required under the proposed regulations and recognize gain under §1.965-2(h)(3) as necessary.  See §§1.965-2(f)(2)(ii)(A)(1) and (f)(2)(ii)(B)(1).

4.        Other Technical Changes

A number of other technical changes were made to the proposed regulations in response to comments received and other mechanical issues identified in developing the final regulations.  Some of these changes are briefly discussed below.

8

ADMIN_03529

Proposed §1.965-2(b) contained ordering rules for taking into account multiple income inclusions, as well as regarded and disregarded transactions, occurring in the inclusion year with respect to a specified foreign corporation. Comments identified certain areas in which the ordering rules could be clarified or revised, particularly when interacting with the foreign tax credit rules and the rule in proposed §1.965-4(f) disregarding certain payments made between specified foreign corporations with different measurement dates. In response to these comments, the final regulations make certain technical modifications to the ordering rules and clarify the application of the foreign tax credit rules in certain situations. The final regulations also expand the double-counting rule in reg. §1.965-4(f) so that it can apply beyond payments between specified foreign corporations with different measurement dates, and also allow taxpayers to elect (on a consistent basis) not to apply the double-counting rule.

Consistent with regulatory authority under section 965(c)(3)(F) and (o), the proposed regulations contained anti-abuse rules that disregarded certain transactions for the purposes of section 965. See proposed §1.965-4(b) through (e). The proposed regulations did not explain the consequences of such disregard, leading to comments from taxpayers asking how the anti-abuse rules would apply in certain cases. The final regulations generally retain the approach in the proposed regulations, but add a rule to mitigate double taxation that could result from the application of the anti-abuse rule to a liquidation. Specifically, reg. §1.965-4(e)(4) provides that in the case of a liquidation of a specified foreign corporation that is disregarded for purposes of section 965 pursuant to reg. §1.965-4(b) or (c)(2), the date of the liquidation generally is treated as the last day of the taxable year of the specified foreign corporation for purposes of applying section 965 to the United States shareholders of the liquidating corporation. Special rules apply with respect to liquidations resulting from entity classification elections, including a rule that treats the date of liquidation as the date on which the entity classification election is filed (if such election would otherwise be retroactive).

One of the anti-abuse rules in the proposed regulations applied to any change in method of accounting that resulted in one of the following: (i) a decrease in section 965(a) inclusion; (ii) a decrease in aggregate foreign cash position; or (iii) an increase in the amount of foreign tax credits that could be used against the section 965(a) inclusion. Proposed §1.965-4(c)(1). A comment noted that a positive section 481 adjustment resulting from a change of accounting method could increase the section 965(a) inclusion amount and the amount of foreign income taxes deemed paid by a United States shareholder, thus causing the accounting method change to be disregarded for purposes of determining the United States shareholder's section 965(a) inclusion amount. This would allow some or all of the adjustment to escape taxation under section 965, even though the increase in foreign income taxes deemed paid was minimal. In response to this comment, the final regulations modify the rule in proposed §1.965-4(c)(1) to apply only if there is a reduction in a section 965(a) inclusion amount or an aggregate foreign cash position, or an increase in section 960 deemed paid taxes other than by reason of an increase in a section 965(a) inclusion amount. See reg. §1.965-4(c)(1)(i).

Reg. §1.367(b)-7(d)(2) generally provides that in the case of certain non-recognition transactions involving foreign entities, any deficit in E&P of the foreign target or acquiror becomes a "hovering" deficit of the resulting corporation. Any taxes related to the hovering deficit cannot be utilized as foreign tax credits until the taxable year after the year in which the hovering deficit is fully absorbed, meaning that post-transaction E&P exceeds the amount of the

9

ADMIN_03530

hovering deficit.  To effectuate the legislative history of section 965 and in response to a comment, the final regulations provide that to the extent a hovering deficit would have been absorbed by E&P accrued during the taxable year but for a section 965(a) inclusion, taxes that relate to the hovering deficit are taken into account for purposes of determining the amount of foreign tax credits that can be used against a taxpayer's section 965(a) inclusion.

### B.    Comments Not Adopted in the Final Regulations

Although many comments were received in response to prior guidance, not all of them were adopted in the final regulations.  This section discusses certain significant comments that the Treasury Department and IRS declined to adopt in the final regulations.

### 1.    Determination of Amount of Deficit

As discussed above, section 965(d)(3) defines post-1986 earnings and profits as E&P accumulated by a specified foreign corporation after December 31, 1986.  More narrowly, section 965(d)(2) defines accumulated post-1986 deferred foreign income as post-1986 earnings and profits other than ECI and previously taxed E&P.  The amount of an EPDFC's deficit that can be used to offset an inclusion under section 965(a) is defined as its deficit in post-1986 earnings and profits.  Section 965(b)(3)(C).  By measuring a deficit using post-1986 earnings and profits, instead of accumulated post-1986 deferred foreign income, the statute makes clear that previously taxed E&P are considered in calculating, and reduce the amount of, an EPDFC's deficit under section 965(b)(3)(C).  Despite this clear instruction from the statute, comments were received both in drafting the proposed regulations and in developing the final regulations requesting that the Treasury Department and the IRS exercise regulatory authority to exclude previously taxed E&P when determining the amount of a deficit under section 965(b).  The comments were not adopted at any stage of this process, and are not adopted in the final regulations, because doing so would be contrary to the plain meaning of section 965.

### 2.    Overpayments

Section 965(h) and (i) provide certain elections to defer the payment of a section 965 liability.  However, those provisions and section 965(a) make clear that the liability under section 965 is properly accrued in the United States shareholder's taxable year that includes the inclusion year of its DFICs.  As a result, a taxpayer's entire section 965(a) liability is owed notwithstanding the ability to defer payment thereof, and any excess payments of tax for the year of the section 965(a) liability must be applied against the entire section 965(a) liability pursuant to sections 6402 and 6403.  See PMTA 2018-16.  This issue is limited to the taxable year in which the section 965(a) inclusion (or a maximum of two inclusions for certain United States shareholders of specified foreign corporations with different taxable years) occurs, because that is the year with which the liability is associated.  Comments were received requesting that the Treasury Department and the IRS exercise discretion under section 965 to allow refunds to be issued as if section 965(h) and (i) deferred the liability under section 965(a), rather than just the payment obligation.  These comments were not adopted because it would be inappropriate to modify longstanding rules contained in other statutory provisions using a regulation under section 965.  Making such a change would also conflict with the plain meaning of the statute,

10

which imposes the entire liability under section 965(a) in the inclusion year and merely defers payment.

### 3.      Exception to Acceleration and Triggering Events

As discussed above, if a taxpayer makes an election under section 965(h) to pay its liability for its inclusion under section 965(a) over eight years, certain events will cause the taxpayer's obligation to pay to accelerate.  One such acceleration event is a disposition of substantially all of the assets of the taxpayer.  However, section 965(h)(3) provides that an acceleration does not occur in a sale of substantially all of the assets of the taxpayer if the taxpayer and buyer enter into an agreement with the Secretary where the buyer assumes the taxpayer's obligation to pay the remainder of its liability associated with section 965.  Similarly, under section 965(i), the ability to defer payment indefinitely is proportionately accelerated upon a complete or partial sale of S corporation stock.  In such cases, section 965(i)(2)(C) allows the taxpayer and buyer to enter into a transfer agreement to prevent triggering the payment obligation.

The proposed regulations generally reflected these statutory rules, and also added certain acceleration and triggering events, including non-recognition transactions involving an exchange of substantially all assets.  Proposed §1.965-7(b)(3)(ii) and (c)(3)(iii).  The proposed regulations also expanded the cases in which a transfer agreement could be filed and provided procedural rules for such agreements.  See proposed §1.965-7(b)(3) and (c)(4).  Under the proposed regulations, no transfer agreement could be filed to prevent a triggering event for a transfer of substantially all of an S corporation's assets, including in an exchange pursuant to a non-recognition transaction.  Additionally, no transfer agreements could be filed by foreign entities or domestic pass-through entities, including partnerships and certain trusts.  See proposed 1.965-7(b)(3)(iii)(B) and (c)(3)(iv)(B).

Comments received with respect to the proposed regulations requested various exceptions to acceleration and triggering events.  One such exception was for restructuring transactions in which substantially all of a taxpayer's assets were exchanged for majority interests in an entity.  Thus, for example, comments requested exceptions where a U.S. corporation transferred substantially all of its assets to a newly-formed U.S. subsidiary in exchange for all of the subsidiary's stock in a section 351 exchange, or where an S corporation transferred all of its assets to a U.S. partnership in exchange for more than 80 percent of the partnership interests under section 721.  The Treasury Department and the IRS declined to adopt these comments in the final regulations, which generally retain the same rules as the proposed regulations with respect to acceleration and triggering events.  This decision was made because acceleration and triggering events under section 965 reflect Congressional intent to protect the IRS's ability to collect amounts owed under section 965.  Allowing taxpayers to transfer their assets to lower-tier entities without entering into transfer agreements (where available) would necessarily erode the IRS's ability to collect because the agency's recourse would be against the parent entity's assets, which would primarily or solely be its interest in the subsidiary, and the subsidiary's own liabilities to creditors would supersede and reduce the value of the IRS's ability to derive value from the subsidiary stock if it obtained such stock to satisfy the liability.  Also with an eye toward preserving collection rights, the final regulations require taxpayers to indicate on their

11

transfer agreements whether the acquiror of the assets or stock, as the case may be, has a leverage ratio in excess of 3:1.  See §1.965-7(b)(3)(iii)(B)(6) and (c)(3)(iv)(B)(6).[3]

## C.     Applicability Dates

The final regulations generally apply beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, beginning the taxable year in which or with which such taxable year of the foreign corporation ends.  Reg. §1.965-9(a).  For the avoidance of doubt, reg. §1.965-9(b) clarifies that the rules described in reg. §1.965-4 (the anti-abuse rules) apply to all foreign corporation and shareholder taxable years described in reg. §1.965-9(b), even if the relevant transaction, the effective date of a change in method of accounting or entity classification election, or the specified payment occurred in a prior taxable year.  The preamble to the proposed regulations provided a limited statement of reliance, permitting taxpayers to choose to apply the rules in proposed §1.965-7 (relating to elections and payment of tax) in their entirety to all open tax years as if they were final regulations.  Such elections remain subject to any additional requests of information required by the Commissioner, including requests to comply with additional requirements of the final regulations.  See proposed §1.965-7(b)(3)(iii)(C) and (c)(3)(iv)(C).

## III.    CONCLUSION

We recommend that you approve the final regulations for publication in the *Federal Register*.  The final regulations are expected to generate coverage by the tax press and could also generate coverage by the general press.  The Secretary was briefed on these regulations on November 2, 2018.  An additional briefing of the Secretary is not necessary.

---

[3] In addition to the comments described above, other comments were reviewed and addressed, but not adopted, in the final regulations.  These included but were not limited to comments requesting (i) an exception from counting E&P distributed by a DFIC to the United States between measurement dates; (ii) rules allowing foreign tax credits associated with the portion of a DFIC's E&P offset by a deficit to be claimed upon a distribution of the associated previously taxed E&P; (iii) changes to limit the anti-abuse rules, including a change so that the anti-abuse rules would not disregard changes from impermissible to permissible methods of accounting for purposes of section 965; (iv) a rule providing that a specified foreign corporation no longer existing on November 2, 2017, has no cash measurement dates; (v) thresholds below which individuals would not be subject to section 965; and (vi) expanded relief from statutory related-party attribution rules.

ADMIN_03533

REGULATIONS SIGNATURE PACKAGE ROUTING SLIP AND CLEARANCE SHEET
(CC:INTL)

- Associate Chief Counsel (International)
- Chief Counsel
- Deputy Commissioner
- Assistant Secretary (Tax Policy)

Project Title: Guidance Regarding the Transition Tax Under Section 965 and Related Provisions

Project No.: REG-104226-18                    Code Section: 965

Comments: This document contains final regulations under section 965 of the Internal Revenue Code, as amended by the Tax Cuts and Jobs Act, Pub. L. 115-97 (2017). The final regulations provide rules for determining the section 965(a) inclusion amount of a United States shareholder of a deferred foreign income corporation.

PLEASE CALL Natalie Punchak at 317-5477 FOR PICKUP.

Each person identified below has reviewed and approved for publication in the Federal Register this signature package dated _____.

| | Drafter | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer |
|---|---|---|---|---|---|---|
| Symbols | CC:INTL:B2 | CC:INTL:B2 | CC:INTL:FO | CC:INTL:FO | | DCSE |
| Surname/ Date | _(signature)_ 11/19/2018 | _(signature)_ 11/19/2018 | D Meline 11/19/18 | _(signature)_ 11/19/18 | _(signature)_ 11/19/18 | Giuliano 11/27/18 |

| | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer |
|---|---|---|---|---|---|---|
| Symbols | DCSE | | | | | |
| Surname/ Date | Wielobob 11.29.18 | | | | | |

(Rev. 7/93)

ADMIN_03534

**Office of Chief Counsel**
**Internal Revenue Service**
# memorandum

date:   November 20, 2018

to:   William M. Paul, Acting Chief Counsel
Mireille T. Khoury, Special Assistant to the Deputy Commissioner for Services and
Enforcement
Amy F. Giuliano, Senior Attorney Advisor to the Deputy Commissioner for Services and
Enforcement

from:   Marjorie Rollinson, Associate Chief Counsel (International)
Daniel M. McCall, Deputy Associate Chief Counsel (International - Technical)
Raymond J. Stahl, Special Counsel
Rose Jenkins, Senior Counsel, CC:INTL:B02
Karen J. Cate, Attorney, CC:INTL:B03
Leni C. Perkins, Attorney, CC:INTL:B02
Natalie Punchak, Attorney, CC:INTL:B02

subject:   <u>Final Regulations</u> – Guidance Regarding Transition Tax Under Section 965 (REG-
104226-18)

Attorneys –   Karen J. Cate, CC:INTL:B03
Leni C. Perkins, CC:INTL:B02
Natalie Punchak, CC:INTL:B02

<u>Guidance description</u>.   The final regulations implement section 965 of the Internal
Revenue Code (the "Code") as amended by Tax Cuts and Jobs Act, Pub. L. 115-97,
which was enacted on December 22, 2017.   Specifically, the final regulations provide
rules for determining the section 965(a) inclusion amount of a United States shareholder
of a deferred foreign income corporation.

<u>Why guidance was initiated</u>.   This guidance addresses open questions regarding the
application of section 965.   Among other things, this guidance implements the proposed
regulations issued on August 9, 2018, and Notice 2018-78, which was published on
October 15, 2018.

CC & Dep. Comm. Exec Summary/Regs
Rev 3/12/2018

2

<u>What taxpayers are impacted by the guidance</u>.  The final regulations would affect United States persons with direct or indirect interests in certain specified foreign corporations.

<u>Coordination</u>.  The final regulations (and the proposed regulations and related notices under section 965) have been coordinated with Treasury, ACC:P&A, ACC:PSI, ACC:IT&A, ACC:FIP, ACC:CORP, ACC:TEGE, LB&I, and TRIO.

<u>Whether the guidance is controversial (both internally and externally)</u>.  The final regulations are generally not expected to be controversial.  However, a provision adopted from the proposed regulations that disallows credits under section 960(a)(3) for foreign income taxes that would have been deemed paid under section 960(a)(1) with respect to the portion of a section 965(a) earnings amount that is reduced by an aggregate foreign E&P deficit has been criticized by taxpayers as being inconsistent with the plain language of the Code, Congressional intent, and the foreign tax credit regime, and may generate litigation.  Criticism has also been received of the application of section 965(g) to limit deemed paid credits for taxes paid on distributions of section 965(b) previously taxed earnings and profits.  Additionally, the definition of aggregate foreign cash position, which requires a United States shareholder to take into account its pro rata share of the cash position of a specified foreign corporation that was held on a cash measurement date but is no longer held as of the end of the shareholder's inclusion year, has been criticized by taxpayers as inconsistent with the statute.  Finally, a high volume of public comments to the proposed regulations requested various regulatory exceptions, many of which concerned the determination of a specified foreign corporation's cash position, that were not adopted in the final regulations.  This aspect of the final regulations may also be controversial.

<u>Critical dates, if any, for publication</u>.  This guidance is scheduled for publication on December 31, 2018.

If you have any questions about this project, please contact Leni Perkins (202) 317-4913, Natalie Punchak (202) 317-5477, or Karen J. Cate (202) 317-4667.

ADMIN footer

**Office of Chief Counsel**
**Internal Revenue Service**
# memorandum

date: October 29, 2018

to: William M. Paul, Acting Chief Counsel
Mireille T. Khoury, Special Assistant to the Deputy Commissioner for Services and Enforcement
Amy F. Giuliano, Senior Attorney Advisor to the Deputy Commissioner for Services and Enforcement

from: Marjorie Rollinson, Associate Chief Counsel (International)
Daniel M. McCall, Deputy Associate Chief Counsel (International - Technical)
Raymond J. Stahl, Special Counsel
Rose Jenkins, Senior Counsel, CC:INTL:B02
Karen J. Cate, Attorney, CC:INTL:B03
Leni C. Perkins, Attorney, CC:INTL:B02
Natalie Punchak, Attorney, CC:INTL:B02

---

subject: Final Regulations – Guidance Regarding Transition Tax Under Section 965 (REG-104226-18)

Attorneys – Karen J. Cate, CC:INTL:B03
Leni C. Perkins, CC:INTL:B02
Natalie Punchak, CC:INTL:B02

Guidance description. The final regulations implement section 965 of the Internal Revenue Code (the "Code") as amended by "An Act to provide for reconciliation pursuant to titles II and V of the concurrent resolution on the budget for fiscal year 2018," P.L. 115-97, which was enacted on December 22, 2017. Specifically, the final regulations provide rules for determining the section 965(a) inclusion amount of a United States shareholder of a deferred foreign income corporation.

Why guidance was initiated. This guidance addresses open questions regarding the application of section 965. Among other things, this guidance implements the proposed regulations issued on August 9, 2018, and the notice published on October 15, 2018.

2

<u>What taxpayers are impacted by the guidance</u>.  The final regulations would affect United States persons with direct or indirect interests in certain specified foreign corporations.

<u>Coordination</u>.  The final regulations (and the proposed regulations and related notices under section 965) have been coordinated with Treasury, ACC: P&A, ACC: PSI, ACC:IT&A, ACC:FIP, ACC:CORP, ACC:TEGE, LBI, and TRIO.

<u>Whether the guidance is controversial (both internally and externally)</u>.  The final regulations are generally not expected to be controversial.  However, a provision adopted from the proposed regulations that disallows credits under section 960(a)(3) for foreign income taxes that would have been deemed paid under section 960(a)(1) with respect to the portion of a section 965(a) earnings amount that is reduced by an aggregate foreign E&P deficit has been criticized by taxpayers as being inconsistent with the plain language of the Code, Congressional intent, and the foreign tax credit regime, and may generate litigation.  Criticism has also been received of the application of section 965(g) to limit deemed paid credits for taxes paid on distributions of section 965(b) previously taxed earnings and profits.

<u>Critical dates, if any, for publication</u>.  This guidance is scheduled for publication on December 31, 2018.

A briefing relating to this project is scheduled for November 7, 2018.  If you have any questions about this project, please contact Leni Perkins (202) 317-4913, Natalie Punchak (202) 317-5477, or Karen J. Cate (202) 317-4667.

ADMIN_03538

| From: | Punchak Natalie |
|---|---|
| To: | &CC INTL Green Circulation |
| Cc: | "counsel.office@tigta.treas.gov"; Stahl Raymond J; Jenkins Rose E; Cate Karen J; Perkins Leni C; Zent Brenda; Kitzinger Lindsay; Yen Jason; Wang James |
| Bcc: | "Punchak Natalie" |
| Subject: | GREEN CIRCULATION -- Section 965 REG-104226-18 Guidance Under Section 965 |
| Date: | Monday, October 29, 2018 6:15:26 PM |
| Attachments: | 965 Final Regulations Green Circulation Draft (10.29.18)(checked).docx |

## GREEN CIRCULATION

-------------------------------------------------------------------------------------

**Please Provide Comments by:  COB November 5, 2018**

-------------------------------------------------------------------------------------

**CASE-MIS Number:   REG-104226-18**

**Target Publication Date:   December 31, 2018**

**Subject**:  **Guidance Under Section 965**

**Comments**:

This document contains final regulations implementing section 965 of the Internal Revenue Code, as amended by "An Act to provide for reconciliation pursuant to titles II and V of the concurrent resolution on the budget for fiscal year 2018," P.L. 115-97, which was enacted on December 22, 2017.  Specifically, the final regulations provide rules for determining the section 965(a) inclusion amount of a United States shareholder of a deferred foreign income corporation.  The final regulations would affect United States persons with direct or indirect interests in certain foreign corporations.

-------------------------------------------------------------------------------------

**Send Comments to**:

For issues relating to proposed regulations under §§1.962-1 and 2, 1.965-1 through 4, 1.965-7 through 9, Leni C. Perkins, Leni.C.Perkins@irscounsel.treas.gov, and Natalie Punchak, Natalie.Punchak@irscounsel.treas.gov
For issues relating to proposed regulations under §1.965-5 through 6, Karen J. Cate, Karen.J.Cate@irscounsel.treas.gov
For issues relating to §1.986(c)-1, Leni C. Perkins, Leni.C.Perkins@irscounsel.treas.gov, and Natalie Punchak, Natalie.Punchak@irscounsel.treas.gov

-------------------------------------------------------------------------------------

To request that names be added or deleted to the list of persons receiving this distribution, please contact
Joseph S. Henderson (CC:INTL:B08) at (202) 317-4967.

ADMIN_03540

Notice of Planned Regulatory Action
Pursuant to Executive Order 12866

DEPARTMENT OF THE TREASURY

Agency:  Internal Revenue Service

Title:  REG-104226-18 Guidance Regarding the Transition Tax Under Section 965 and

Related Provisions

Significance:  Significant

Upcoming Action:  Final Regulations

Planned Publication Date: December 31, 2018

RIN:  1545-BO51

Statutory/Judicial Deadline:  Date Not Applicable

Description:   The planned tax regulatory action is issuance of final regulations under
section 965, a new provision that Congress enacted on December 22, 2017, as part of
the Tax Cuts and Jobs Act (TCJA).  Previously, tax on foreign income earned by a
foreign subsidiary generally was deferred until the earnings associated with the income
were brought into the United States (often referred to as a "repatriation of earnings").
The TCJA established a new "participation exemption system" where foreign income is
taxed in the year the income is earned or not taxed at all.  Section 965 establishes a
mechanism for taxing foreign income deferred under the prior system as part of
transitioning to the new participation exemption system.

Section 965 applies to the last taxable year of a foreign corporation beginning before
January 1, 2018, and for United States shareholders for years beginning the taxable
year in which or with which the taxable year of the foreign corporation ends. Section 965
requires United States shareholders of certain foreign corporations that had deferred
foreign income to pay a transition tax on that deferred foreign income.  Under the
transition tax, the deferred foreign income is taxed as if it had been repatriated to the
United States.  The shareholders are allowed to reduce the amount of the income
subject to the transition tax based on deficits in earnings and profits from other foreign
subsidiaries.

The effective tax rate of the transition tax may be reduced in two ways.  One, a
participation deduction may offset some of the income subject to the transition tax. The
amount of the deduction varies based upon the amount of the foreign subsidiary's cash
or cash-equivalent assets (as opposed to non-cash assets, such as plant, property, and

ADMIN_03541

equipment, et cetera).  Two, a reduced foreign tax credit may be claimed, which offsets the amount of the transition tax.  Additionally, taxpayers may elect to pay the transition tax in installments over an eight-year period.  Certain shareholders of "S corporations" may defer paying the entire transition tax until certain triggering events occur.

On August 9, 2018, Treasury and the IRS published a notice of proposed rulemaking (REG-104226-18) following a series of notices announcing and describing regulations intended to be issued under section 965.  <u>See</u> Notice 2018-07, 2018-4 I.R.B. 317; Notice 2018-13, 2018-16 I.R.B. 341; and Notice 2018-26, 2018-16 I.R.B. 480.  The notice of proposed rulemaking contained the rules in the three notices, with certain modifications and supplementary guidance.  An additional notice describing certain provisions intended to be included in the section 965 final regulations was published on October 15, 2018.  <u>See</u> Notice 2018-78, 2018-42 I.R.B. 604.

The final regulations contain the rules in the notice of proposed rulemaking and Notice 2018-78, with certain modifications and additional guidance.  The final regulations provide the following guidance:

- Rules regarding adjustments to earnings and profits (including previously taxed earnings and profits) and basis in stock to reflect the imposition of transition tax on deferred foreign income and the use of deficits in earnings and profits to reduce the income subject to the transition tax;
- Rules to compute the participation deduction allowed under section 965(c),
- Rules to combat tax avoidance by disregarding certain transactions undertaken with an avoidance purpose;
- Rules disregarding certain transactions to prevent an inappropriate double-counting of earnings in the calculation of the transition tax;
- Rules relating to foreign tax credits that may be claimed as a result of subjecting income to the transition tax;
- Rules relating to elections (including a special election not under section 965 that affects the rate of tax owed by shareholders that are individuals);
- Procedures for how to pay the transition tax;
- Rules addressing the treatment of affiliated groups of corporations for certain purposes, including for purposes of determining the amount by which the income subject to the transition tax can be reduced by deficits in earnings and profits of other foreign corporations and determining the amount of the participation deduction allowed under section 965(c); and
- Rules regarding the amount of tax that may be owed when foreign currency gain or loss arises when a foreign subsidiary actually distributes the earnings taxed under section 965 to its United States shareholder.

The final regulations do not reflect any significant policy changes because section 965 is newly enacted and does not create a serious inconsistency or otherwise interfere with an action taken or planned by another agency.  Additionally, the final regulations are not expected to have an annual non-revenue effect on the economy of $100 million or more, measured against a no-action baseline, because any significant economic cost

ADMIN_03542

stems from the enactment of section 965 and not from these final regulations that assist taxpayers in determining their statutory obligations.

The final regulations raise novel legal or policy issues and are, therefore, a significant regulatory action under E.O. 12866 as modified by the April 11, 2018 Memorandum of Agreement between the Department of Treasury and the Office of Management and Budget.

<u>Agency Contact</u>:  Natalie Punchak, (202) 317-5477

ADMIN_03543

# PAPERWORK REDUCTION ACT SUBMISSION

Please read the Instructions before completing this form.

| **1. Type of IC Review:** | **2. Agency** : Department of Treasury, Internal Revenue Service |
|---|---|
| ☒ New Form *(Attach Supporting Statement)*<br>☐ Revision to Previously Approved IC *(Attach IRS - OMB Review Request Form)*<br>☐ Extension to previously approved IC *(3-yr)*<br>☐ Reinstatement of previously approved IC<br>☐ Existing IC in use that does not contain an OMB control number<br>☐ Deletion of currently approved IC | **3. OMB Control No:**  1  5  4  5  – __ __ __ __ |
| | **4. Type of Review:**<br>☒ Regular   ☐ Emergency * – Date Requested<br>By:  __/__/__ |
| | **5. Small Entities:** Will this ICR have a significant economic impact on a substantial number of small entities?<br>☐ Yes   ☒ No |
| **6. Requested Expiration Date:**<br>☒ Three years from approval date<br>☐ Other - Specify: _____ | **7. Emergency Justification:** Technical Authorization(TA):<br>*(provide reference source)* |

**8**. Emergency Justification Statement:

# IC INFORMATION

**9. Title:**  REG-104226-18 (NPRM) Guidance Regarding the Transition Tax Under Section 965 and Related Provisions

**10. Agency form number(s)** *(if applicable)*:

**11. Authorizing Statute(s) for this IC:**

| | | | |
|---|---|---|---|
| ☒ US Code:  26 | USC:  965 | Name of Law:  Treatment of deferred foreign income upon transition to... | |
| ☒ Public Law: | Public Law:  115-97 | Section:  14103  Name of Law:  Tax Cuts and Jobs Act | |
| ☐ Statute at Large: | Statute: _____ | Name of Law: _____ | |
| ☐ EO: | EO: _____ | Name/Subject of EO: _____ | |

**12. Abstract:**

The proposed regulations implement section 965 of the Internal Revenue Code as amended by the Tax Cuts and Jobs Act, P.L. 115-97, which was enacted on December 22, 2017. Specifically, the proposed regulations provide rules for determining the section 965(a) inclusion amount of a United States shareholder of a deferred foreign income corporation. Information is collected for purposes of determining the amount of the tax liability as well as tracking the payment of the tax liability.

| **13. Affected Public:** (Mark primary with "P" and all others that apply with "X") | **16. Obligation to respond:** (Mark primary with "P" and all others that apply with "X") |
|---|---|
| ☒ Individuals or households   ☐ Farms<br>☐P Business or other for-profit   ☐ Federal Government<br>☐ Not-for-profit institutions   ☐ State, Local, or Tribal Gov't | ☐ Voluntary   ☐P Mandatory<br>☐ ☒ Required to obtain or retain benefits |
| **14. Annual Reporting and Recordkeeping burden hours:** | **17. CFR citations:** (Provide source(s) of change) |
| a.  Number of respondents . . . . . . . . .  100,000<br>b.  Total annual responses . . . . . . . . . .  1<br>     1. Percentage of these responses<br>        collected electronically . . . . . . . . .<br>c.  Total annual hours requested . . . . .  500,000<br>d.  Current OMB inventory . . . . . . . . . .  0<br>e.  Difference . . . . . . . . . . . . . . . . . .  500,000<br>f.  Explanation of difference<br>     1. Program change . . . . . . . . . . . .  500,000<br>     2. Adjustment . . . . . . . . . . . . . . . . | A.  26    CFR  1.965-2, 3, 4, 7, 8<br>B. _____  CFR _____<br>C. _____  CFR _____ |
| | **18. Purpose of IC:** (Mark primary with "P" and all others that apply with "X") |
| | ☒ Application for benefits   ☐ Program planning or management<br>☐ Program evaluation   ☐ Research<br>☐ General Purpose statistics   ☒P Regulatory or compliance<br>☒ Audit |
| **14a. Verification of estimated filers:** (Provide source of estimated filers)<br><br>Extrapolation from number of Forms 5471 filed with respect to CFCs. | **19. Frequency of Recordkeeping or Reporting:** (check all that apply)<br>☒ Recordkeeping   ☐ Third party disclosure<br>☒ Reporting:<br>   ☒ On occasion   ☐ Weekly   ☐ Monthly<br>   ☐ Quarterly   ☐ Semi-annually   ☒ Annually<br>   ☐ Biennially   ☐ Other (describe) _____ |
| **15. Statistical Method:** Does the ICR contain surveys, censuses, or employ statistical methods?<br>☐ Yes   ☒ No | **20. Agency Contact:**<br>Name:  Leni Perkins<br><br>Phone:  (202) 317-4913 |

Form **14029** (Rev. 4-2009)      Catalog Number 51944B      Department of the Treasury–**Internal Revenue Service**

ADMIN_03544

## Instructions for Completing PRA Submission Form

Please answer all questions and have the Senior Official or designee sign the form. These instructions should be used in conjunction with 5 CFR 1320, which provides information on coverage, definitions, and other matters of procedure and interpretation under the Paperwork Reduction Act of 1995.

### 1. Type of information collection (check one)

**Important Definitions:**

➢ *Information collection (IC) – A document or form (including instructions) that solicits information as defined under 5 CFR 1320.3(c).*

➢ Check "New Form" when the collection has not previously been used or sponsored by the agency.

➢ Check "Revision to previously approved IC" when the collection is currently approved by OMB, and the agency request includes a material change to the collection instrument, instructions, its frequency of collection, or the use to which the information is to be put.

➢ Check "Extension to previously approved IC" when the collection is currently approved by OMB, and the agency wishes only to extend the approval past the current expiration date without making any material change in the collection instrument, instructions, frequency of collection, or the use to which the information is to be put.

➢ Check "Reinstatement of previously approved IC" when the collection previously had OMB approval, but the approval has expired or was withdrawn before this submission was made, whether there was change or no change to the collection.

➢ Check "Existing IC in use that does not contain an OMB control number" when the collection is currently in use but does not have a currently valid OMB control number.

➢ Check "Deletion of currently approved IC"

### 2. Agency/Subagency originating request

The agency or subagency originating the request is already filled in.

### 3. OMB control number

➢ If the information collection in this request has previously received or now has an OMB control or comment number, enter the number.

### 4. Type of review requested (check one)

Check "Regular" when the collection is submitted under 5 CFR 1320.10, 1320.11, or 1320.12 with a standard 60 day review schedule.

➢ Check "Emergency" when the agency submitting the request under 5 CFR 1320.13 for emergency processing and provides the required supporting material. Provide the date by which the agency requests approval.

### 5. Small entities

Indicate whether this information collection will have a significant impact on a substantial number of small entities. A small entity may be

(1) a small business which is deemed to be one that is independently owned and operated and that is not dominant in its field of operation; (2) a small organization that is any not-for-profit enterprise that is independently owned and operated and is not dominant in its field; or (3) a small government jurisdiction which is a government of a city, county, town, township, school district, or special district with a population of less than 50,000.

### 6. Requested expiration date

Check "Three years from approval date" if the agency requests a three year approval for the collection.

Check "Other" if the agency requests approval for less than three years. Specify month and year of the requested expiration date.

### 7. Emergency justification

Provide the legal or technical citation(s) that created the need for this new IC and the date of effectiveness.

### 8. Emergency justification statement

If emergency approval is needed, provide justification statement as outlined in 5 CFR 1320.13.

Any such statement must be a written determination that:

1)    The collection of information:

    i)    Is needed prior to the expiration of time periods established under normal processing times; and

    ii)   Is essential to the mission of the agency; and

2)    The agency cannot reasonably comply with the normal clearance procedures because:

    i)    Public harm is reasonably likely to result if normal clearance procedures are followed;

    ii)   An unanticipated event has occurred; or

    iii)  The use of normal clearance procedures is reasonably likely to prevent or disrupt the collection of information or is reasonably likely to cause a statutory or court ordered deadline to be missed.

### 9. Title

Provide the official title of the information collection. If an official title does not exist, provide a description which will distinguish this collection from others.

### 10. Agency form number(s) (if applicable)

Provide any form number the agency has assigned to this collection of information. Separate each form number with a comma.

### 11. Authorizing statute(s) for this IC

Provide the legal authority for this IC.

### 12. Abstract

Provide a statement, limited to five lines of text, covering the agency's need for the information, uses to which it will be put, and a brief description of the respondents.

### 13. Affected public

Mark all categories that apply, denoting the primary public with a "P" and all others that apply with "X".

### 14. Annual reporting and recordkeeping burden hours

a) Enter the number of respondents and/or recordkeepers. If a respondent is also a recordkeeper, report the respondent only once.

b) Enter the number of responses provided annually. For recordkeeping as compared to reporting activity, the number of responses equals the number of recordkeepers.

b1) Enter the estimated percentage of responses that will be submitted/collected electronically using magnetic media (i.e., diskette) electronic mail, or electronic data interchange. Facsimile is not considered an electronic submission.

c) Enter the total annual recordkeeping and reporting hour burden.

d) Enter the burden hours currently approved by OMB for this collection of information. Enter zero (0) for any new submission or for any collection whose OMB approval has expired.

e) Enter the difference by subtracting line d from line c. Record a negative number (d larger than c) within parentheses.

f)  Explain the difference. The difference in line e must be accounted for in lines f.1. and f.2.

f1) "Program change" is the result of deliberate Federal government action. All new collections and any subsequent revision of existing collections (e.g., the addition or deletion of questions) are recorded as program changes.

f2) "Adjustment" is a change that is not the result of a deliberate Federal government action. Changes resulting from new estimates or action not controllable by the Federal government are recorded as adjustments.

ADMIN_03545

**14a. Verification of estimated filers**

Provide method used to obtain estimated number of respondents or responses for this IC. Include name and number of individual or office used in verification. These estimates must be validated with every revision or extension request.

**16. Statistical methods**

Check "Yes" if the information collection uses statistical methods such as sampling or imputation. Generally, check "No" for applications and audits (unless a random auditing scheme is used). Check "Yes" for statistical collections, and program evaluations using scientific methods. For other types of data collection, the use of sampling, imputation, or other statistical estimation techniques should dictate the response for this item. Ensure that supporting documentation is provided in accordance with Section B of the Supporting Statement.

**16. Obligation to respond**

Mark all categories that apply, denoting the primary obligation with a "P" and all others that apply with "X".

➢ Mark "Voluntary" when the response is entirely discretionary and has no direct effect on any benefit or privilege for the respondent.

➢ Mark "Required to obtain or retain benefits" when the response is elective, but is required to obtain or retain a benefit.

➢ Mark "Mandatory" when the respondent must apply or face civil or criminal sanctions.

**17. CFR citations**

Provide the CFR citation(s) affected by the implementation of this IC.

**18. Purpose of information collection**

Mark all categories that apply, denoting the primary purpose with a "P" and all others that apply with "X".

➢ Mark "Application for benefits"' when the purpose is to participate in, receive, or qualify for a grant, financial assistance, etc. from a Federal agency or program.

➢ Mark "Program evaluation" when the purpose is a formal assessment, through objective measures and systematic analysis, of the manner and extent to which Federal programs achieve their objective or produce other significant effects.

➢ Mark "General purpose statistics" when the data is collected chiefly for use by the public or for general government use without primary reference to the policy or program operations of the agency collecting the data.

➢ Mark "Audit" when the purpose is to verify the accuracy of accounts and records.

➢ Mark "Program planning or management" when the purpose relates to progress reporting, financial reporting and grants management, procurement and quality control, or other administrative information that does not fit into any other category.

➢ Mark "Research" when the purpose is to further the course of research, rather than for a specific program purpose.

➢ Mark "Regulatory or compliance" when the purpose is to measure compliance with laws or regulations.

**19. Frequency of recordkeeping or reporting**

➢ Check "Record keeping" if the collection of information explicitly includes a recordkeeping requirement.

➢ Check "Third party disclosure" if a collection of information includes third party disclosure requirements as defined by 1320.3(c).

➢ Check "Reporting" for information collections that involve reporting and check the frequency of reporting that is requested or required of a respondent. If the reporting is on "an event" basis, check "On occasion."

**20. Agency Contact**

Provide the name and telephone number of the agency person best able to answer questions regarding the content of this submission.

---

ADMIN_03546

# SUPPORTING STATEMENT

1. <u>CIRCUMSTANCES NECESSITATING COLLECTION OF INFORMATION</u>

See attached page.

2. <u>USE OF DATA</u>

The information collected by the IRS will be used for audit and examination purposes, and it will be used to allow taxpayers to make elections or file agreements to continue deferring the payment of the section 965 tax liability.  The information collected will enable taxpayers and the IRS to keep track of the deferred payments/liabilities until fully paid.

3. <u>USE OF IMPROVED INFORMATION TECHNOLOGY TO REDUCE BURDEN</u>

We have no plans to offer electronic filing.  IRS publication, regulations, notices and letters are to be electronically enabled on an as practicable basis in accordance with the IRS Reform and Restructing Act of 1998.

4. <u>EFFORTS TO IDENTIFY DUPLICATION</u>

We have attempted to eliminate duplication within the agency wherever possible.

5. <u>METHODS TO MINIMIZE BURDEN ON SMALL BUSINESSES OR OTHER SMALL ENTITIES</u>

We have been unable to reduce the burden on small businesses or other small entities.

6. <u>CONSEQUENCES OF LESS FREQUENT COLLECTION ON FEDERAL PROGRAMS OR POLICY ACTIVITIES</u>

Not applicable.

ADMIN_03547

7. SPECIAL CIRCUMSTANCES REQUIRING DATA COLLECTION TO BE INCONSISTENT WITH GUIDELINES IN 5 CFR 1320.5(d)(2)

Not applicable.

8. CONSULTATION WITH INDIVIDUALS OUTSIDE OF THE AGENCY ON AVAILABILITY OF DATA, FREQUENCY OF COLLECTION, CLARITY OF INSTRUCTIONS AND FORMS, AND DATA ELEMENTS

This notice of proposed rulemaking will be published in the Federal Register to provide the public a 60-day period in which to review and provide public comments relating to any aspect of the proposed regulation.  A public hearing will be held with respect to this NPRM if any person who has submitted written comments requests one.

9. EXPLANATION OF DECISION TO PROVIDE ANY PAYMENT OR GIFT TO RESPONDENTS

Not applicable.

10. ASSURANCE OF CONFIDENTIALITY OF RESPONSES

Generally, tax returns and tax return inforamtion are confidential as required by 26 USC 6103.

11. JUSTIFICATION OF SENSITIVE QUESTIONS

Not applicable.

12. ESTIMATED BURDEN OF INFORMATION COLLECTION

It is anticipated that the annual burden per respondent would be 5 hours, resulting in an annual burden of 500,000 hours based on an estimated 100,000 respondents.

ADMIN_03548

## 13. ESTIMATED TOTAL ANNUAL COST BURDEN TO RESPONDENTS

At an estimated cost of $95 per hour for reporting and recordkeeping, the annualized costs to respondents for the hour burdens discussed would be $47,500,000.  There are no anticipated capital or start-up costs related to the reporting and recordkeeping requirements.

## 14. ESTIMATED ANNUALIZED COST TO THE FEDERAL GOVERNMENT

Not applicable.

## 15. REASONS FOR CHANGE IN BURDEN

Not applicable.

## 16. PLANS FOR TABULATION, STATISTICAL ANALYSIS AND PUBLICATION

Not applicable.

## 17. REASONS WHY DISPLAYING THE OMB EXPIRATION DATE IS INAPPROPRIATE

We believe that displaying the OMB expiration date is inappropriate because it could cause confusion by leading taxpayers to beleive that the regulations sunset as of the expiration date.  Taxpayers are not likely to be aware that the Service intends to request renewal of the OMB approval and obtain a new expiration date before the old one expires.

## 18. EXCEPTIONS TO THE CERTIFICATION STATEMENT ON OMB PRA SUBMISSION FORM

Not applicable.

## 19. REASON FOR EMERGENCY SUBMISSION

Not applicable.

ADMIN_03549

## Supporting Statement for Paperwork Reduction Act Submissions

### General Instructions

A Supporting Statement, including the text of the notice to the public required by 5 CFR 1320.5(a)(i)(iv) and its actual or estimated date of publication in the Federal Register, must accompany each request for approval of a collection of information. The Supporting Statement must be prepared in the format described below, and must contain the information specified in Section A below. If an item is not applicable, provide a brief explanation. When item 15 of the PRA Submission form is checked "Yes", Section B of the Supporting Statement must be completed. OMB reserves the right to require the submission of additional information with respect to any request for approval.

### Specific Instructions

#### A. Justification

1. Explain the circumstances that make the collection of information necessary. Identify any legal or administrative requirements that necessitate the collection. Attach a copy of the appropriate section of each statute and regulation mandating or authorizing the collection of information.

2. Indicate how, by whom, and for what purpose the information is to be used. Except for a new collection, indicate the actual use the agency has made of the information received from the current collection.

3. Describe whether, and to what extent, the collection of information involves the use of automated, electronic, or mechanical, or other technological collection techniques or other forms of information technology, e.g., permitting electronic submission of responses, and the basis for the decision for adopting this means of collection. Also describe any consideration of using information technology to reduce burden.

4. Describe efforts to identify duplication. Show specifically why any similar information already available cannot be used or modified for use for the purposes described in item 2 above.

5. If the collection of information impacts small businesses or other small entities (item 5 of the PRA Submission form), describe any methods used to minimize burden.

6. Describe the consequence to Federal program or policy activities if the collection is not conducted or is conducted less frequently, as well as any technical or legal obstacles to reducing burden.

7. Explain any special circumstances that would cause an information collection to be conducted in a manner:

   • requiring respondents to report information to the agency more often than quarterly;

   • requiring respondents to prepare a written response to a collection;

   • requiring respondents to submit more than an original and two copies of any document;

   • requiring respondents to retain records, other than health, medical, government contract, grant-in-aid, or tax records, for more than three years;

   • in connection with a statistical survey, that is not designed to produce valid and reliable results that can be generalized to the universe of study;

   • requiring the use of a statistical data classification that has not been reviewed and approved by OMB;

   • that includes a pledge of confidentiality that is not supported by authority established in statute or regulation, that is not supported by disclosure and data security policies that are consistent with the pledge, or which unnecessarily impedes sharing of data with other agencies for compatible confidential use; or

   • requiring respondents to submit proprietary trade secrets, or other confidential information unless the agency can demonstrate that it has instituted procedures to protect the information's confidentiality to the extent permitted by law.

8. If applicable, provide a copy and identify the date and page number of publication in the Federal Register of the agency's notice, required by 5 CFR 1320.8(d) soliciting comments on the information collection prior to submission to OMB. Summarize public comments received in response to that notice and describe actions taken by the agency in response to these comments. Specifically address comments received on cost and hour burden.

   Describe efforts to consult with persons outside the agency to obtain their views on the availability of data, frequency of collection, the clarity of instructions and recordkeeping, disclosure, or reporting format (if any), and on the data elements to be recorded, disclosed, or reported.

   Consultation with representatives of those from whom information is to be obtained or those who must compile records should occur at least once every 3 years – even if the collection of information activity is the same as in prior periods. There may be circumstances that may preclude consultation in a specific situation. These circumstances should be explained.

9. Explain any decision to provide any payment or gift to respondents, other than re-enumeration of contractors or grantees.

10. Describe any assurance of confidentiality provided to respondents and the basis for the assurance in statute, regulation, or agency policy.

11. Provide additional justification for any questions of a sensitive nature, such as sexual behavior and attitudes, religious beliefs, and other matters that are commonly considered private. This justification should include the reasons why the agency considers the questions necessary, the specific uses to be made of the information, the explanation to be given to persons from whom the information is requested, and any steps to be taken to obtain their consent.

12. Provide estimates of the hour burden of the collection of information. The statement should:

   • Indicate the number of respondents, frequency of response, annual hour burden, and an explanation of how the burden was estimated. Unless directed to do so, agencies should not conduct special surveys to obtain information on which to base hour burden estimates. Consultation with a sample (fewer than 10) of potential respondents is desirable. If the hour burden on respondents is expected to vary widely because of differences in activity, size, or complexity, show the range of estimated hour burden, and explain the reasons for the variance. Generally, estimates should not include burden hours for customary and usual business practices.

   • If this request for approval covers more than one form, provide separate hour burden estimates for each form and aggregate the hour burdens in item 14 of the PRA Submission form.

   • Provide estimates of annualized cost to respondents for the hour burdens for collections of information, identifying and using appropriate wage rate categories. The cost of contracting out or paying outside parties for information collection activities should not be included here. Instead, this cost should be included in item 13.

13. Provide an estimate for the total annual cost burden to respondents or record-keepers resulting from the collection of information. (Do not include the cost of any hour burden shown in items 12 and 14).

   • The cost estimate should be split into two components: (a) a total capital and start-up cost component (annualized over its expected useful life) and (b) a total operation and maintenance and purchase of services component. The estimates should take into account costs associated with generating, maintaining, and disclosing or providing the information. Include descriptions of methods used to estimate major cost factors including system and technology acquisition, expected useful life of capital equipment, the discount rate(s), and the time period over which costs will be incurred. Capital and start-up costs include, among other items, preparations for collecting information such as purchasing computers and software; monitoring, sampling, drilling and testing equipment; and record storage facilities.

   • If cost estimates are expected to vary widely, agencies should present ranges of cost burdens and explain the reasons for the variance. The cost of purchasing or

ADMIN_03550

contracting out information collections services should be a part of this cost burden estimate. In developing cost burden estimates, agencies may consult with a sample of respondents (fewer than 10), utilize the 60-day pre-OMB submission public comment process and use existing economic or regulatory impact analysis associated with the rulemaking containing the information collection, as appropriate.

• Generally, estimates should not include purchases of equipment or services, or portions thereof, made: (1) prior to October 1, 1995, (2) to achieve regulatory compliance with requirements  not associated with the information collection, (3) for reasons other than to provide information or keep records for the government, or (4) as part of customary and usual business or private practices.

14. Provide estimates of annualized costs to the Federal government. Also, provide a description of the methods used to estimate cost, which should include quantification of hours, operational expenses (such as equipment, overhead, printing, and support staff), and any other expense that would not have been incurred without this collection of information. Agencies may also aggregate cost estimates from Items 12, 13, and 14 in a single table.

15. Explain the reasons for any program changes or adjustments reported in Items 13 or 14 of the PRA Submission Form.

16. For collections of information whose results will be published, outline plans for tabulation and publication. Address any complex analytical techniques that will be used. Provide the time schedule for the entire project, including beginning and ending dates of the collection of information, completion of report, publication dates, and other actions.

17. If seeking approval to not display the expiration date for OMB approval of the information collection, explain the reasons that display would be inappropriate.

18. Explain each exception to the certification statement identified in Item 19, Certification for Paperwork Reduction Act Submissions," of the PRA Submission Form.

**B. Collection of Information Employing Statistical Methods**

The agency should be prepared to justify its decision not to use statistical methods in any case where such methods might reduce burden or improve accuracy of results. When Item 17 on the PRA Submission Form is checked, "Yes," the following documentation should be included in the Supporting Statement to the extent that it applies to the methods proposed:

1. Describe (including a numerical estimate) the potential respondent universe and any sampling or other respondent selection methods to be used. Data on the number of entities (e.g., establishments, State and local government units, households, or persons) in the universe covered by the collection and in the corresponding sample are to be provided in tabular form for the universe as a whole and for each of the strata in the proposed sample. Indicate expected response rates for the collections as a whole. If the collection had been conducted previously, include the actual response rate achieved during the last collection.

2. Describe the procedures for the collection of information including:

• Statistical methodology for stratification and sample selection,
• Estimation procedure,
• Degree of accuracy needed for the purpose described in the justification,
• Unusual problems requiring specialized sampling procedures, and
• Any use of periodic (less frequent than annual) data collection cycles to reduce burden.

3. Describe methods to maximize response rates and to deal with issues of non-response. The accuracy and reliability of information collected must be shown to be adequate for intended uses. For collections based on sampling, a special justification must be provided for any collection that will not yield "reliable" data that can be generalized to the universe studied.

4. Describe any tests of procedures or methods to be undertaken. Testing is encouraged as an effective means of refining collections of information to minimize burden and improve utility. Tests must be approved if they call for answers to identical questions from 10 or more respondents. A proposed test or set of tests may be submitted for approval separately or in combination with the main collection of information.

5. Provide the name and telephone number of individuals consulted on statistical aspects of the design and the name of the agency unit, contractor(s), grantee(s), or other person(s) who will actually collect and/or analyze the information for the agency.

ADMIN_03551

Supporting Statement (Continued)

1. Circumstances Necessitating Collection of Information

Under section 965, United States shareholders of certain specified foreign corporations are required to pay a transition tax on the untaxed foreign earnings of those specified foreign corporations as if the earnings had been repatriated to the United States.  In calculating the section 965 inclusion, the United States shareholder must determine the specified foreign corporation's post-1986 earnings and profits as of two measurement dates, November 2, 2017, and December 31, 2017, and the shareholder may reduce the amount of the inclusion based on deficits in earnings and profits in other specified foreign corporations.  The proposed regulations allow taxpayers to make an election to determine their post-1986 earnings and profits as October 31, 2017, and prorate to November 2, 2017, or, in the case of a 52-53-week taxpayer, as of the closest fiscal month end to either date.  In certain cases, under the proposed regulations, a United States shareholder that takes into account the deficits in earnings and profits in some of its specified foreign corporations must document the portion of the deficit that is taken into account.  United States shareholders are also allowed, under the proposed regulations, to elect to make adjustments to the basis in their specified foreign corporations corresponding to adjustments made to earnings and profits.

Section 965(h), (i), (m), and (n) allow certain taxpayers to make elections to defer payment or inclusion of their section 965 tax liability or to avoid offsetting net operating losses with their section 965 inclusions.  The election under section 965(h) allows a taxpayer to pay its section 965 tax liability in installments over 8 years, unless an acceleration event occurs, in which case the remaining liability becomes due.  However, in the case of certain acceleration events, the remaining liability can be assumed by another taxpayer if the two taxpayers file a transfer agreement.  The election under section 965(i) allows a taxpayer who is a shareholder in an S corporation to defer the inclusion of its liability until a triggering event occurs, in which case the deferred liability becomes due, unless the taxpayer makes an election under section 965(h) to pay the liability in installments or the taxpayer transfers its S corporation shares to another taxpayer, and the second taxpayer assumes the liability when both taxpayers file a transfer agreement.

The collection of information requirements in the proposed regulations correspond to these elections, the allocation of deficits, and the transfer agreements.

ADMIN_03552

# Memorandum for Bulletin Program Coordinator and Internal Revenue Bulletin Submission

**Memorandum for Bulletin Program Coordinator** (SE:W:CAR:MP:P:TP:TP)
DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE, WASHINGTON, D.C. 20224

This form is used for submitting material to the Internal Revenue Bulletin Program Desk in connection with the preparation, review, and approval of materials to be published in the Internal Revenue Bulletin. **Hard copies and scanned forms will not be accepted.**

| 1. Date | 2. From |
|---|---|
| 8/3/2018 | Ray Stahl |

**3. Subject**
Guidance Regarding the Transition Tax under Section 965 and Related Provisions

**4. Document title**
Guidance Regarding the Transition Tax under Section 965 and Related Provisions

| 5. Control/Case MIS number | 6. Originating office symbols |
|---|---|
| REG-104226-18 | CC:INTL:B2 |

| 7. Originator's name (Proof recipient) | 8. Room number | 9. Telephone number |
|---|---|---|
| Leni Perkins | 4708 | (202) 317-4913 |

| 10. Alternative contact's name | 11. Room number | 12. Telephone number |
|---|---|---|
| Rose Jenkins | 4704 | (202) 317-4941 |

The attached item has been approved for publication in the Internal Revenue Bulletin.

## Internal Revenue Bulletin Submission

**13. Type of submission item** (*check only one and provide item number in box 14*)

- [ ] Action on Decision (AOD) Acquiescence or Nonacquiescence
- [ ] Announcement
- [ ] Notice
- [x] Proposed Regulation
- [ ] Revenue Procedure
- [ ] Revenue Ruling
- [ ] Supreme Court Decision
- [ ] Treasury Decision
- [ ] Other (*explain*) _____

| 14. Item number | 15. Internal Revenue Bulletin number | 16. Publication date | 17. Main Code section |
|---|---|---|---|
|  |  |  |  |

**18. Regulation citation** (*for Treasury Decisions only: Example: 26 CFR 1.501(c)(29)-1: Authorization to prescribe application procedures for tax exempt status*)

**19. Does the submission package include cross references**   [ ] Yes   [x] No

If yes, attach a Microsoft Word document with the Code section/title and a short paragraph. For further guidance, refer to the CCDM section on how to prepare and format cross references.

**20. Identify the subject heading(s) the item should be listed under** (*check all that apply*)

- [ ] Administrative
- [ ] Employee Plans
- [ ] Employment Tax
- [ ] Estate Tax
- [ ] Excise Tax
- [ ] Exempt Organizations
- [ ] Gift Tax
- [x] Income Tax
- [ ] Self-Employment Tax
- [ ] Special Announcement
- [ ] Tax Conventions

**21. Summary paragraph: Brief summary of item to be published in the Bulletin**
Theses proposed regulations implement section 965 of the Internal Revenue Code ("Code") as amended by the Tax Cuts and Jobs Act, which was enacted on December 22, 2017.  The proposed regulations would affect United States persons with direct or indirect ownership interests in certain foreign corporations.

**22. Review requested** (*Initiator may request a review of the submission item before sending to the IRB Program Desk*)   [ ] Yes   [ ] No

| | Initiator | Reviewer | Reviewer | Reviewer |
|---|---|---|---|---|
| **Name** | Leni Perkins | Ray Stahl | | |
| **Signature** | Perkins Leni C *(digital signature)* | Raymond J. Stahl *(digital signature)* | | |
| **Office Symbols** | CC:INTL:BO2 | | | |

ADMIN_03553

# DEPARTMENT OF THE TREASURY

## Internal Revenue Service

### 26 CFR Part 1

[REG–104226–18]

RIN 1545–BO51

## Guidance Regarding the Transition Tax Under Section 965 and Related Provisions

**AGENCY:** Internal Revenue Service (IRS), Treasury.

**ACTION:** Notice of proposed rulemaking.

**SUMMARY:** This document contains proposed regulations implementing section 965 of the Internal Revenue Code (''Code'') as amended by the Tax Cuts and Jobs Act, which was enacted on December 22, 2017. The proposed regulations would affect United States persons with direct or indirect ownership interests in certain foreign corporations.

**DATES:** Written or electronic comments and requests for a public hearing must be received by October 9, 2018.

**ADDRESSES:** Send submissions to: CC:PA:LPD:PR (REG–104226–18), Room 5203, Internal Revenue Service, P.O. Box 7604, Ben Franklin Station, Washington, DC 20044. Submissions may be hand-delivered Monday through Friday between the hours of 8 a.m. and 4 p.m. to CC:PA:LPD:PR (REG–104226–18), Courier's Desk, Internal Revenue Service, 1111 Constitution Avenue NW, Washington, DC 20224, or sent electronically via the Federal eRulemaking Portal at *www.regulations.gov* (indicate IRS and REG–104226–18).

**FOR FURTHER INFORMATION CONTACT:** Concerning the proposed regulations under §§ 1.962–1 and 1.962–2, 1.965–1 through 4, 1.965–7 through 9, and 1.986(c)–1, Leni C. Perkins at (202) 317–6934; concerning the proposed regulations under §§ 1.965–5 and 1.965–6, Karen J. Cate at (202) 317–6936; concerning submissions of comments and requests for a public hearing, Regina Johnson at (202) 317–6901 (not toll-free numbers).

**SUPPLEMENTARY INFORMATION:**

## Paperwork Reduction Act

The collections of information contained in this notice of proposed rulemaking have been submitted to the Office of Management and Budget for review in accordance with the Paperwork Reduction Act of 1995 (44 U.S.C. 3507(d)). Comments on the collections of information should be sent to the Office of Management and Budget, Attn: Desk Officer for the Department of the Treasury, Office of Information and Regulatory Affairs, Washington, DC 20503, with copies to the Internal Revenue Service, Attn: IRS Reports Clearance Officer, SE:W:CAR:MP:T:T:SP, Washington, DC 20224. Comments on the collection of information should be received by October 9, 2018.

Comments are specifically requested concerning:

Whether the proposed collection of information is necessary for the proper performance of the duties of the IRS, including whether the information will have practical utility;

The accuracy of the estimated burden associated with the proposed collection of information (including underlying assumptions and methodology);

How the quality, utility, and clarity of the information to be collected may be enhanced;

How the burden of complying with the proposed collection of information may be minimized, including through the application of automated collection techniques or other forms of information technology; and

Estimates of capital or start-up costs and costs of operation, maintenance, and purchases of services to provide information.

The collections of information in these proposed regulations are in proposed §§ 1.965–2(d)(2)(ii)(B), 1.965–2(f)(2)(iii)(B), 1.965–3(b)(2), 1.965–3(c)(3), 1.965–4(b)(2)(i), 1.965–7(b)(2), 1.965–7(b)(3)(iii)(B), 1.965–7(c)(2), 1.965–7(c)(3)(iv)(B), 1.965–7(c)(3)(v)(D), 1.965–7(c)(6)(i), 1.965–7(d)(3), 1.965–7(e)(2), 1.965–7(f)(5), and 1.965–8(c). The information is required to be provided by taxpayers that make an election or rely on taxpayer-favorable rules. The information provided will be used by the IRS for tax compliance purposes.

*Estimated total annual reporting burden:* 500,000 hours.

*Estimated average annual burden hours per respondent:* Five hours.

*Estimated number of respondents:* 100,000.

*Estimated annual frequency of responses:* Once.

The number of respondents estimate is a rough estimate of the number of taxpayers completing the relevant parts of tax forms. The estimate of five hours per response is intended to capture the burden in gathering the required information for the election to determine the post-1986 earnings and profits and allocation of deficits and transfer agreements. In addition, the IRS intends that information collection requirements relating to the reporting and payment of tax under section 965 will be set forth in forms and instructions. For purposes of the Paperwork Reduction Act, the reporting burden associated with that collection of information will be reflected in the OMB Form 83–I, Paperwork Reduction Act Submission, associated with those forms.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid control number assigned by the Office of Management and Budget.

Books or records relating to a collection of information must be retained as long as their contents may become material in the administration of any internal revenue law. Generally, tax returns and tax return information are confidential, as required by 26 U.S.C. 6103.

## Background

### I. In General

This document contains proposed amendments to 26 CFR part 1 under sections 962, 965, and 986 (the ''proposed regulations''). As amended by section 14103 of the Tax Cuts and Jobs Act, Public Law 115–97 (2017) (the ''Act''), section 965 applies in the case of the last taxable year of a deferred foreign income corporation (''DFIC'') that begins before January 1, 2018. The Department of the Treasury (''Treasury Department'') and the IRS have previously issued guidance announcing regulations intended to be issued under section 965. See Notice 2018–07, 2018–4 I.R.B. 317; Notice 2018–13, 2018–6 I.R.B. 341; and Notice 2018–26, 2018–16 I.R.B. 480 (collectively, the ''notices''); see also Rev. Proc. 2018–17, 2018–9 I.R.B. 384. The proposed regulations contain the rules related to section 965 described in the notices, with certain modifications, as well as additional guidance related to section 965.

### II. Section 965

*A. Treatment of Accumulated Post-1986 Deferred Foreign Income as Subpart F Income*

Section 965(a) provides that for the last taxable year of a DFIC (as defined in Part II.F of this Background section) that begins before January 1, 2018 (such year of the DFIC, the ''inclusion year''), the subpart F income of the corporation (as otherwise determined for such taxable year under section 952) shall be increased by the greater of (i) the accumulated post-1986 deferred foreign income (as defined in Part II.F of this

Background section) of such corporation determined as of November 2, 2017, or (ii) the accumulated post-1986 deferred foreign income of such corporation determined as of December 31, 2017 (each such date, an "E&P measurement date"). The greater of those two amounts is the "section 965(a) earnings amount."

### B. Determination of United States Shareholder's Section 965(a) Inclusion

Section 965(b)(1) provides that, if a taxpayer is a United States shareholder with respect to at least one DFIC and at least one E&P deficit foreign corporation (as defined in Part II.C of this Background section), then the portion of the section 965(a) earnings amount which would otherwise be taken into account under section 951(a)(1) by a United States shareholder with respect to each DFIC is reduced by the amount of such United States shareholder's aggregate foreign E&P deficit (as defined in Part II.C of this Background section) that is allocated to such DFIC. The portion of the section 965(a) earnings amount that is taken into account under section 951(a)(1) by a United States shareholder, after the reduction described in the preceding sentence and, as applicable, the reduction described in Part II.D of this Background section, is referred to as the "section 965(a) inclusion amount."

### C. Allocation of Aggregate Foreign E&P Deficit and Definition of E&P Deficit Foreign Corporation

The aggregate foreign E&P deficit of any United States shareholder is allocated to each DFIC of the United States shareholder in an amount that bears the same proportion to such aggregate as (i) the United States shareholder's pro rata share of the section 965(a) earnings amount of the DFIC bears to (ii) the aggregate of the United States shareholder's pro rata shares of the section 965(a) earnings amounts of all DFICs of the United States shareholder. Section 965(b)(2). The term "aggregate foreign E&P deficit" means, with respect to any United States shareholder, the lesser of (A) the aggregate of the shareholder's pro rata shares of the specified E&P deficits of the E&P deficit foreign corporations of the shareholder or (B) the aggregate of the shareholder's pro rata shares of the section 965(a) earnings amounts of all DFICs of the shareholder. Section 965(b)(3)(A)(i).

The term "E&P deficit foreign corporation" means, with respect to any taxpayer, any specified foreign corporation (as defined in Part II.G of this Background section) with respect to which the taxpayer is a United States

shareholder, if, as of November 2, 2017, (i) the specified foreign corporation had a deficit in post-1986 earnings and profits (as defined in Part II.F of this Background section), (ii) the corporation was a specified foreign corporation, and (iii) the taxpayer was a United States shareholder of the corporation. Section 965(b)(3)(B). The term "specified E&P deficit" means, with respect to an E&P deficit foreign corporation, the amount of the E&P deficit foreign corporation's deficit in post-1986 earnings and profits as of November 2, 2017. *See* section 965(b)(3)(C).

For purposes of applying section 959 in any taxable year beginning with the inclusion year, with respect to any United States shareholder of a DFIC, an amount equal to the reduction in the shareholder's pro rata share of the section 965(a) earnings amount of the DFIC by reason of the aggregate foreign E&P deficit allocated to such DFIC is treated as an amount which was included in the gross income of such United States shareholder under section 951(a). Section 965(b)(4)(A). With respect to any taxable year beginning with the inclusion year, a United States shareholder's pro rata share of the earnings and profits ("E&P") of any E&P deficit foreign corporation is increased by the amount of the specified E&P deficit of the E&P deficit foreign corporation taken into account by the shareholder, and, for purposes of section 952, the increase is attributable to the same activity to which the deficit taken into account was attributable. Section 965(b)(4)(B).

### D. Aggregate Unused E&P Deficit

Under section 965(b)(5), in the case of any affiliated group which includes at least one E&P net surplus shareholder and one E&P net deficit shareholder, the amount which would (but for section 965(b)(5)) be taken into account under section 951(a)(1) by reason of section 965(a) by each E&P net surplus shareholder is reduced (but not below zero) by such shareholder's applicable share of the affiliated group's aggregate unused E&P deficit.

The term "affiliated group" has the meaning provided in section 1504. The term "E&P net surplus shareholder" means any United States shareholder which would (but for section 965(b)(5)) take into account a section 965(a) inclusion amount greater than zero. Section 965(b)(5)(B). The term "E&P net deficit shareholder" means any United States shareholder if (i) the aggregate foreign E&P deficit with respect to such shareholder (as defined in section 965(b)(3)(A) without regard to clause (i)(II) thereof, which limits the aggregate

foreign E&P deficit of a United States shareholder to the aggregate of the United States shareholder's pro rata share of the section 965(a) earnings amount of all DFICs of the United States shareholder) exceeds (ii) the amount that would (but for section 965(b)(5)) be taken into account by such shareholder under section 951(a)(1) by reason of section 965(a) (the excess, the "excess aggregate foreign E&P deficit"). Section 965(b)(5)(C). The term "applicable share" means, with respect to any E&P net surplus shareholder in any affiliated group, the amount which bears the same proportion to the group's aggregate unused E&P deficit as (i) the product of (A) the shareholder's group ownership percentage, multiplied by (B) the section 965(a) inclusion amount which would otherwise be taken into account by a United States shareholder, bears to (ii) the aggregate amount determined under clause (i) with respect to all E&P net surplus shareholders in the group. Section 965(b)(5)(E). The term "aggregate unused E&P deficit" means, with respect to any affiliated group, the lesser of (i) the sum of the excess aggregate foreign E&P deficits determined with respect to each E&P net deficit shareholder in such affiliated group, or (ii) with respect to all E&P net surplus shareholders in the group, the aggregate of the product of (A) the shareholder's group ownership percentage, multiplied by (B) the amount which would (but for section 965(b)(5)) be taken into account under section 951(a)(1) by reason of section 965(a) by the shareholder. Section 965(b)(5)(D).

### E. Application of the Participation Exemption

Section 965(c)(1) provides that there shall be allowed as a deduction for the taxable year of a United States shareholder in which a section 965(a) inclusion amount is included in the gross income of the United States shareholder an amount equal to the sum of (i) the United States shareholder's 8 percent rate equivalent percentage (as defined in section 965(c)(2)(A)) of the excess (if any) of (A) the section 965(a) inclusion amount, over (B) the amount of such United States shareholder's aggregate foreign cash position, plus (ii) the United States shareholder's 15.5 percent rate equivalent percentage (as defined in section 965(c)(2)(B)) of so much of the United States shareholder's aggregate foreign cash position as does not exceed the section 965(a) inclusion amount. The amount of the deduction allowed under section 965(c) to a United States shareholder as described in the preceding sentence is referred to

as the "section 965(c) deduction amount."

Section 965(c)(3)(A) provides that the term "aggregate foreign cash position" means, with respect to any United States shareholder, the greater of (i) the aggregate of the United States shareholder's pro rata share of the cash position of each specified foreign corporation of the United States shareholder determined as of the close of the last taxable year of the specified foreign corporation that begins before January 1, 2018, or (ii) one half of the sum of (A) the aggregate described in clause (i) determined as of the close of the last taxable year of each specified foreign corporation that ends before November 2, 2017, plus (B) the aggregate described in clause (i) determined as of the close of the taxable year of each specified foreign corporation which precedes the taxable year referred to in subclause (A). Each date referred to in the preceding sentence is referred to as a "cash measurement date."

The cash position of any specified foreign corporation is the sum of (i) cash held by the corporation, (ii) the net accounts receivable of the corporation, and (iii) the fair market value of the following assets held by the corporation (each asset, a "cash-equivalent asset"): (A) Personal property which is of a type that is actively traded and for which there is an established financial market ("actively traded property"); (B) commercial paper, certificates of deposit, the securities of the Federal government and of any State or foreign government; (C) any foreign currency; (D) any obligation with a term of less than one year ("short-term obligation"); and (E) any asset which the Secretary identifies as being economically equivalent to any asset described in section 965(c)(3)(B). Section 965(c)(3)(B). Also, for purposes of section 965(c), the term "net accounts receivable" means, with respect to any specified foreign corporation, the excess (if any) of (i) the corporation's accounts receivable, over (ii) the corporation's accounts payable (determined consistent with the rules of section 461). Section 965(c)(3)(C).

Section 965(c)(3)(D) provides that net accounts receivable, actively traded property, and short-term obligations shall not be taken into account by a United States shareholder in determining its aggregate foreign cash position to the extent that the United States shareholder demonstrates to the satisfaction of the Secretary that the amount of the net accounts receivable, actively traded property, or short-term obligations is taken into account by the

United States shareholder with respect to another specified foreign corporation.

Section 965(c)(3)(E) provides that an entity (other than a corporation) will be treated as a specified foreign corporation of a United States shareholder for purposes of determining the United States shareholder's aggregate foreign cash position if any interest in the entity is held by a specified foreign corporation of the United States shareholder (determined after application of the rule in this sentence) and the entity, if it were a foreign corporation, would be a specified foreign corporation of the United States shareholder.

Section 965(c)(3)(F) provides that if the Secretary determines that a principal purpose of any transaction was to reduce the aggregate foreign cash position taken into account under section 965(c), the transaction shall be disregarded for purposes of section 965(c).

## F. Definition of DFIC and Accumulated Post-1986 Deferred Foreign Income

For purposes of section 965, a DFIC is, with respect to any United States shareholder, any specified foreign corporation of the United States shareholder that has accumulated post-1986 deferred foreign income greater than zero as of an E&P measurement date. Section 965(d)(1). The term "accumulated post-1986 deferred foreign income" means the post-1986 earnings and profits of the specified foreign corporation except to the extent such E&P (i) are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1, or (ii) in the case of a controlled foreign corporation ("CFC"), if distributed, would be excluded from the gross income of a United States shareholder under section 959 ("previously taxed E&P"). Section 965(d)(2). Section 965(d)(3) provides that the term "post-1986 earnings and profits" means the E&P of the foreign corporation (computed in accordance with sections 964(a) and 986, and by taking into account only periods when the foreign corporation was a specified foreign corporation) accumulated in taxable years beginning after December 31, 1986, and determined (i) as of the E&P measurement date that is applicable with respect to such foreign corporation, and (ii) without diminution by reason of dividends distributed during the last taxable year of the foreign corporation that begins before January 1, 2018, other than dividends

distributed to another specified foreign corporation.

## G. Specified Foreign Corporations and United States Shareholders

Section 965(e)(1) provides that the term "specified foreign corporation" means (i) any CFC (regardless of whether there is a domestic corporate shareholder) and (ii) any foreign corporation with respect to which one or more domestic corporations is a United States shareholder ("10-percent corporation"). However, if a passive foreign investment company (as defined in section 1297) ("PFIC") with respect to the shareholder is not a CFC, then such corporation is not a specified foreign corporation. Section 965(e)(3). An S corporation is treated as a partnership for purposes of sections 951 through 965. *See* section 1373(a). For purposes of sections 951 and 961, a 10-percent corporation is treated as a CFC solely for purposes of taking into account the subpart F income of such corporation under section 965(a) (and for purposes of determining a United States shareholder's pro rata share of any amount with respect to a specified foreign corporation under section 965(f)). Section 965(e)(2).

For taxable years of foreign corporations beginning before January 1, 2018, under section 951(b), a United States shareholder is a United States person (within the meaning of section 957(c)) that owns within the meaning of section 958(a), or is considered as owning by applying the rules of ownership of section 958(b), 10 percent or more of the total combined voting power of all classes of stock entitled to vote of the stock of a foreign corporation. Under section 957(c), a United States person generally has the meaning assigned to it by section 7701(a)(30), which includes a domestic partnership or domestic trust. *But see* Notice 2010–41, 2010–22 I.R.B. 715 (announcing that the Treasury Department and the IRS intend to issue regulations treating certain domestic partnerships as foreign partnerships for purposes of identifying which United States shareholders are required to include amounts in gross income under section 951(a)). Special rules under section 957(c) and § 1.957–3 apply in determining when individuals residing in certain possessions or territories of the United States are considered United States persons for purposes of sections 951 and 965.

## H. Determination of Pro Rata Share

Section 965(f)(1) provides that the determination of any United States shareholder's pro rata share of any

amount with respect to any specified foreign corporation shall be determined under rules similar to the rules of section 951(a)(2) by treating the amount in the same manner as subpart F income (and by treating the specified foreign corporation as a CFC).

## I. Special Rules for Domestic Pass-Through Entities

Section 965(f)(2) provides that the portion that is included in the income of a United States shareholder under section 951(a)(1) by reason of section 965(a) that is equal to the section 965(c) deduction amount by reason of the inclusion is treated as income exempt from tax for purposes of sections 705(a)(1)(B) and 1367(a)(1)(A) but not treated as income exempt from tax for purposes of determining whether an adjustment is made to an accumulated adjustments account ("AAA") of an S corporation under section 1368(e)(1)(A).

## J. Foreign Tax Credit and Deduction

Section 965(g)(1) provides that no credit is allowed under section 901 for the applicable percentage of any taxes paid or accrued (or treated as paid or accrued) with respect to any amount for which a section 965(c) deduction is allowed.

The term "applicable percentage" means the amount (expressed as a percentage) equal to the sum of the following two amounts:

(i) 0.771 multiplied by the ratio of (A) the section 965(a) inclusion amount in excess of the United States shareholder's aggregate foreign cash position divided by (B) the section 965(a) inclusion amount, and

(ii) 0.557 multiplied by the ratio of (A) the amount of the section 965(a) inclusion amount equal to the United States shareholder's aggregate cash position, divided by (B) the section 965(a) inclusion amount.

Further, no deduction is allowed for any tax for which credit is not allowable under section 901 by reason of section 965(g)(1) (determined by treating the taxpayer as having elected the benefits of subpart A of part III of subchapter N).

With respect to the taxes treated as paid or accrued by a domestic corporation with respect to the section 965(a) inclusion amount, section 78 applies only to so much of such taxes as bears the same proportion to the amount of the taxes as (i) the excess of (A) the section 965(a) inclusion amount, over (B) the section 965(c) deduction amount with respect to such amount, bears to (ii) the section 965(a) inclusion amount.

## K. Election Under Section 965(h) Concerning Payment of Net Tax Liability Under Section 965

Section 965(h)(1) provides that in the case of a United States shareholder of a DFIC, the United States shareholder may elect to pay the net tax liability under section 965 in eight installments. Section 965(h)(6) defines the net tax liability under section 965 with respect to any United States shareholder as the excess (if any) of (i) the taxpayer's net income tax for the taxable year in which an amount is included in the gross income of the United States shareholder under section 951(a)(1) by reason of section 965, over (ii) the taxpayer's net income tax for such taxable year determined (A) without regard to section 965, and (B) without regard to any income or deduction properly attributable to a dividend received by the United States shareholder from any DFIC. For this purpose, the term "net income tax" means the regular tax liability reduced by the credits allowed under subparts A, B, and D of part IV of subchapter A. Section 965(h)(6)(B).

Section 965(h)(2) provides that if a taxpayer makes an election under section 965(h), the first installment is due on the due date (without regard to extensions) for the return of tax for the inclusion year. Each successive installment is due on the due date (without regard to extensions) for the return of tax for the taxable year following the taxable year for which the previous installment payment was made.

Section 965(h)(3) provides that if there is an addition to tax for failure to timely pay an installment required under section 965(h), a liquidation or sale of substantially all the assets of the taxpayer (including in a title 11 or similar case), a cessation of business by the taxpayer, or any similar circumstance, the unpaid portion of the remaining installments will be due on the date of such event (or in the case of a title 11 or similar case, the day before the petition is filed). The preceding sentence does not apply in the case of the sale of substantially all the assets of a taxpayer to a buyer if the buyer enters into an agreement with the Secretary under which the buyer is liable for the remaining installments due under section 965(h) in the same manner as if the buyer were the taxpayer.

Section 965(h)(4) provides that if a taxpayer has made an election under section 965(h), and, subsequently, a deficiency is assessed with respect to the taxpayer's net tax liability for purposes of section 965(h), then the amount of the deficiency will be prorated among the installments. The part of the deficiency prorated to any installment the date for payment of which has not arrived will be collected at the same time as, and as part of, such installment. The part of the deficiency prorated to any installment the date for payment of which has arrived must be paid upon notice and demand from the Secretary. However, the proration rule does not apply if the deficiency is due to negligence, intentional disregard of rules and regulations, or fraud with intent to evade tax.

## L. Election Under Section 965(i) Concerning Payment of Net Tax Liability Under Section 965 by an S Corporation Shareholder and Related Reporting Requirements

Section 965(i)(1) provides that in the case of any S corporation that is a United States shareholder of a DFIC, each shareholder of the S corporation may elect to defer payment of the shareholder's net tax liability under section 965 with respect to the S corporation until the shareholder's taxable year which includes the triggering event with respect to such liability.

Under section 965(i)(1), any net tax liability, payment of which is deferred under section 965(i)(1), will be assessed on the return of tax as an addition to tax for the shareholder's taxable year which includes the triggering event with respect to such liability. As defined in section 965(i)(2), in the case of any shareholder's net tax liability under section 965 with respect to any S corporation, the triggering event with respect to such liability is whichever of the following occurs first: (i) The corporation ceases to be an S corporation (determined as of the first day of the first taxable year that the corporation is not an S corporation); (ii) a liquidation or sale of substantially all the assets of the S corporation (including in a title 11 or similar case), a cessation of business by the S corporation, the S corporation ceases to exist, or any similar circumstance; or (iii) a transfer of any share of stock in the S corporation by the taxpayer (including by reason of death, or otherwise). In the case of a transfer of less than all of the taxpayer's shares of stock in the S corporation, the transfer is only a triggering event with respect to the portion of the taxpayer's net tax liability under section 965 with respect to the S corporation as is properly allocable to the transferred stock. Section 965(i)(2)(B). Moreover, a transfer of stock in the S corporation is not a triggering event if the transferee enters into an agreement with the

Secretary under which the transferee is liable for the net tax liability under section 965 with respect to the stock in the same manner as if such transferee were the taxpayer. Section 965(i)(2)(C).

If a triggering event occurs, section 965(i)(4) permits a taxpayer to make an election under section 965(h) with respect to the liability to which the section 965(i) election applied by the due date for the return of tax for the taxable year in which the triggering event occurred, and the first installment under section 965(h) must also be paid by the due date (without regard to extensions) for the return for the taxable year of the triggering event. However, the election may only be made with the consent of the Secretary in the case of a triggering event that is a liquidation or sale of substantially all of the assets of the S corporation. *See* section 965(i)(4)(D).

Section 965(i)(3) defines a shareholder's net tax liability under section 965 with respect to any S corporation as the net tax liability under section 965 which would be determined under section 965(h)(6) if the only amounts taken into account by the shareholder under section 951(a)(1) by reason of section 965 were allocations from the S corporation.

Section 965(i)(5) provides that if any shareholder of an S corporation makes an election under section 965(i) to defer payment of its net tax liability under section 965 with respect to an S corporation, the S corporation is jointly and severally liable for the deferred payment and any penalty, addition to tax, or additional amount attributable thereto.

Section 965(i)(6) provides that any limitation on the time period for the collection of a liability deferred under section 965(i) is not treated as beginning before the date of the triggering event with respect to such liability.

Section 965(i)(7) requires any shareholder of an S corporation that makes an election under section 965(i) to report the amount of the shareholder's deferred net tax liability on the shareholder's return of tax for the taxable year for which the election is made and on the return of tax for each taxable year thereafter until the amount has been fully assessed. "Deferred net tax liability" means the amount of net tax liability under section 965 payment of which has been deferred under section 965(i) and which has not been assessed on a return of tax for any prior taxable year. Section 965(i)(7)(B). In the case of any failure to report any amount required to be reported pursuant to section 965(i)(7) with respect to any taxable year before the due date for the

return of tax for the taxable year, there will be assessed on the return as an addition to tax 5 percent of such amount. Section 965(i)(7)(C).

*M. Election Under Section 965(m) Concerning Inclusions of Amounts Under Section 965 and Related Provisions*

Under section 965(m)(1)(B), a real estate investment trust (REIT) that is a United States shareholder of a DFIC may elect, in lieu of including any amount required to be taken into account under section 951(a)(1) by reason of section 965 in the taxable year in which it would otherwise be included in gross income (for purposes of the computation of REIT taxable income under section 857(b)), to include such amount in gross income in eight installments.

If this election is made, the REIT's aggregate section 965(c) deduction must be determined without regard to the election and allocated to each taxable year for which an installment is included in the same proportion as the amount of the installment included in gross income. *See* section 965(m)(2)(B)(i)(II). Furthermore, the REIT may not make a section 965(h) election for any taxable year for which an installment is included. *See* section 965(m)(2)(B)(i)(III). Under section 965(m)(2)(B)(ii), if there is a liquidation or sale of substantially all the assets of the REIT (including in a title 11 or similar case), a cessation of business by the trust, or any similar circumstance, then any amount not yet included in gross income will be included in gross income as of the day before the date of the event, and the unpaid portion of any tax liability with respect to the inclusion will be due on the date of the event (or in the case of a title 11 or similar case, the day before the petition is filed).

Section 965(m)(1)(A) provides that any amount required to be taken into account under section 951(a)(1) by reason of section 965 by a REIT that is a United States shareholder of a DFIC is not taken into account as gross income of the REIT for purposes of applying paragraphs (2) and (3) of section 856(c) to any taxable year for which the amount is taken into account under section 951(a)(1).

*N. Election Under Section 965(n) Not To Apply Net Operating Loss Deduction*

Under section 965(n)(1), a United States shareholder of a DFIC may make an election pursuant to which the amount described in section 965(n)(2) shall not be taken into account (i) in determining the amount of the

shareholder's net operating loss ("NOL") deduction under section 172 for the taxable year, or (ii) in determining the amount of taxable income for the taxable year which may be reduced by NOL carryovers or carrybacks to the taxable year under section 172. The amount described in section 965(n)(2) is the sum of (i) the amount required to be taken into account under section 951(a)(1) by reason of section 965 (determined after the application of section 965(c)), plus (ii) in the case of a domestic corporation which chooses to have the benefits of subpart A of part III of subchapter N for the taxable year, the taxes deemed to be paid by the corporation under subsections (a) and (b) of section 960 for the taxable year with respect to the amount described in section 965(n)(2)(A) which are treated as a dividend under section 78.

*O. Recapture for Expatriated Entities*

Section 965(l) provides that if a section 965(c) deduction is allowed to a United States shareholder and the shareholder first becomes an expatriated entity (as defined under section 7874(a)(2), except not including an entity if the surrogate foreign corporation with respect to it is treated as a domestic corporation under section 7874(b)) at any time during the 10-year period beginning on the date of the enactment of the Act (with respect to a surrogate foreign corporation (as defined under section 7874(a)(2)(B)) that first becomes a surrogate foreign corporation during such period), the tax imposed under chapter 1 will be increased for the first taxable year in which such taxpayer becomes an expatriated entity by an amount equal to 35 percent of the amount of the section 965(c) deduction, and no credits will be allowed against such increase in tax.

*P. Regulations or Other Guidance*

Section 965(o) provides that the Secretary shall prescribe such regulations or other guidance as may be necessary or appropriate to carry out the provisions of section 965, including regulations or other guidance to provide appropriate basis adjustments and regulations or other guidance to prevent the avoidance of the purposes of section 965, including through a reduction in E&P, changes in entity classification or accounting methods, or otherwise.

### III. Other Provisions

*A. Section 962*

As amended by the Act, section 962 provides that an individual who is a United States shareholder may elect to

have the tax imposed under chapter 1 on amounts that are included in the individual's gross income under section 951(a) be an amount equal to the tax that would be imposed under section 11 if the amounts were received by a domestic corporation. In addition, if an election is made under section 962, the amounts included in the individual's gross income under section 951(a) are treated as if they were received by a domestic corporation for purposes of applying section 960 (relating to foreign tax credits). *See* § 1.962–1(a). However, the taxable income determined for purposes of applying section 11 is not reduced by any deduction of the United States shareholder. *See* § 1.962–1(b)(1)(i). An election under section 962 does not affect tax imposed under other chapters, including under chapter 2A.

*B. Attribution Rules in Sections 958(b) and 318(a)*

Section 958 provides rules for determining direct, indirect, and constructive stock ownership. Under section 958(a)(1), stock is considered owned by a person if it is owned directly or is owned indirectly through certain foreign entities under section 958(a)(2). Under section 958(b), section 318 applies, with certain modifications, to the extent that the effect is to treat any United States person as a United States shareholder within the meaning of section 951(b), to treat a person as a related person within the meaning of section 954(d)(3), to treat the stock of a domestic corporation as owned by a United States shareholder of a CFC for purposes of section 956(c)(2), or to treat a foreign corporation as a CFC under section 957.

Section 318 provides rules that attribute the ownership of stock to certain family members, between certain entities and their owners, and to holders of options to acquire stock. Section 318(a)(1) provides rules attributing stock ownership among members of a family. Section 318(a)(2) provides rules attributing stock ownership "upward" from partnerships, estates, trusts, and corporations to partners, beneficiaries, owners, and shareholders. In addition, section 318(a)(3) provides specific rules that attribute the ownership of stock "downward" from partners, beneficiaries, owners, and shareholders to partnerships, estates, trusts, and corporations. In particular, section 318(a)(3)(A) provides that stock owned, directly or indirectly, by or for a partner in a partnership or a beneficiary of an estate is considered as owned by the partnership or estate. This provision applies to all partners and beneficiaries without regard to the size of their

interest in the partnership or estate. Section 318(a)(3)(B) similarly provides, subject to certain exceptions, that stock owned, directly or indirectly, by or for a beneficiary of a trust (or a person who is considered an owner of a trust) is considered owned by the trust. In comparison, section 318(a)(3)(C) provides that stock owned, directly or indirectly, by or for a shareholder in a corporation is considered owned by the corporation only if 50 percent or more in value of the stock in the corporation is owned, directly or indirectly, by such person.

Effective for the last taxable year of foreign corporations beginning before January 1, 2018, and each subsequent year of the foreign corporations, and for the taxable years of United States shareholders in which or with which such taxable years of the foreign corporations end, the Act repeals section 958(b)(4). As in effect before repeal, section 958(b)(4) provided that subparagraphs (A), (B), and (C) of section 318(a)(3) (providing for "downward" attribution) were not to be applied so as to consider a United States person as owning stock that is owned by a person who is not a United States person.

*C. Miscellaneous Itemized Deductions*

Under section 67(a), miscellaneous itemized deductions are allowed only to the extent that the aggregate of such deductions exceeds 2 percent of adjusted gross income. As amended by the Act, section 67(g) provides that for taxable years beginning after December 31, 2017, and before January 1, 2026, no miscellaneous itemized deductions are allowable under section 67(a). In addition, under section 56(b)(1)(A)(i), an individual subject to the alternative minimum tax in 2017 is not allowed a deduction for any miscellaneous itemized deduction. Under section 63(d), itemized deductions generally mean all allowable deductions except for the deductions allowable in arriving at adjusted gross income pursuant to section 62(a), the deduction provided by section 151, and the deduction provided in section 199A (added by the Act). Miscellaneous itemized deductions include all itemized deductions other than those listed in section 67(b), which does not reference the section 965(c) deduction.

*D. Section 4940*

An inclusion under section 951(a)(1), including a section 965(a) inclusion, generally is included in the calculation of gross investment income of a private foundation for purposes of determining the excise tax imposed under section

4940 (generally 2 percent of net investment income). Gross investment income under section 4940 does not include an inclusion under section 951(a)(1), including a section 965(a) inclusion, to the extent the amount is included in computing the unrelated business income tax imposed by section 511. *See* section 4940(c)(2). Section 4940(c)(3) allows as a deduction all the ordinary and necessary expenses paid or incurred for the production or collection of gross investment income or for the management, conservation, or maintenance of property held for the production of income.

*E. Extensions of Time for Filing Income Tax Returns and Paying Tax for Certain Citizens and Residents Abroad*

In relevant part, regulations under section 6081 provide an extension of time to the fifteenth day of the sixth month following the close of the taxable year for filing returns of income taxes and for paying any tax shown on the return for United States citizens or residents whose tax homes and abodes, in a real and substantial sense, are outside the United States and Puerto Rico, and United States citizens and residents in military or naval service on duty, including non-permanent or short term duty, outside the United States and Puerto Rico ("specified individuals"). *See* § 1.6081–5(a)(5) and (6).

**Explanation of Provisions**

**I. Overview of Proposed Regulations**

Proposed § 1.965–1 provides general rules and definitions under section 965. Proposed § 1.965–2 provides rules relating to adjustments to E&P and basis to determine and account for the application of section 965 and a rule that limits the amount of gain recognized in connection with the application of section 961(b)(2). Proposed § 1.965–3 provides rules regarding the determination of section 965(c) deductions. Proposed § 1.965–4 sets forth rules that disregard certain transactions for purposes of section 965. Proposed §§ 1.965–5 and 1.965–6 provide rules with respect to foreign tax credits. Proposed § 1.965–7 provides rules regarding elections and payments. Proposed § 1.965–8 provides rules regarding affiliated groups, including consolidated groups. Proposed § 1.965–9 provides dates of applicability. Proposed §§ 1.962–1 and 1.962–2 provide rules relating to section 962 elections. Proposed § 1.986(c)–1 provides rules regarding the application of section 986(c) in connection with section 965.

## II. Definitions and General Rules

Section 1.965–1 of the proposed regulations provides general rules and definitions under section 965, including general rules concerning section 965(a) inclusions, general rules concerning section 965(c) deductions, and rules concerning the treatment of certain specified foreign corporations as CFCs and certain controlled domestic partnerships as foreign partnerships.

### A. General Rules

Proposed § 1.965–1 provides the general rules contained in section 965(a), (b), and (c). Proposed § 1.965–1(b)(1) provides that the subpart F income of a DFIC for its inclusion year is increased by the section 965(a) earnings amount. Proposed § 1.965–1(b)(2) provides that the pro rata share of the DFIC's section 965(a) earnings amount of a United States shareholder that owns, within the meaning of section 958(a), stock (the stock, "section 958(a) stock", and the shareholder, a "section 958(a) U.S. shareholder") is reduced by the DFIC's allocable share of the section 958(a) U.S. shareholder's aggregate foreign E&P deficit. If a section 958(a) U.S. shareholder is a member of a consolidated group, all section 958(a) U.S. shareholders that are members of a consolidated group are treated as a single section 958(a) U.S. shareholder for this purpose. *See* Part IX of this Explanation of Provisions section for a discussion of additional rules that apply with respect to a section 958(a) U.S. shareholder that is a member of an affiliated group of which not all members are part of a consolidated group. The amount determined after the reductions referenced in the preceding sentences is defined as the section 965(a) inclusion amount, which is the amount included by a section 958(a) U.S. shareholder of a DFIC for its taxable year in which or with which the DFIC's inclusion year ends (the "section 958(a) U.S. shareholder inclusion year"). *See* proposed § 1.965–1(b)(1); *see also* Part II.B of the Background section of this preamble. The proposed regulations also clarify that because an increase in subpart F income by reason of section 965(a) is generally determined after the subpart F income is otherwise determined under section 952 for the taxable year, neither the section 965(a) earnings amount nor the section 965(a) inclusion amount is subject to the rules or limitations in section 952 or otherwise limited by the accumulated E&P of the DFIC. *Id.*

Proposed § 1.965–1(c) provides that a section 958(a) U.S. shareholder is generally allowed a deduction for a section 965(c) deduction amount for a section 958(a) U.S. shareholder inclusion year. The proposed regulations clarify that a section 958(a) U.S. shareholder's aggregate foreign cash position is applied against the aggregate section 965(a) inclusion amounts for a section 958(a) U.S. shareholder inclusion year. *See* proposed § 1.965–1(f)(1)–(4), (8), (42). In the case of a section 958(a) U.S. shareholder with more than one section 958(a) U.S. shareholder inclusion year, its aggregate foreign cash position is allocated to each year under proposed § 1.965–3(c)(2), and therefore the section 965(c) deduction amount is determined separately for each section 958(a) U.S. shareholder inclusion year.

Consistent with section 965(e)(2), proposed § 1.965–1(d) provides that a 10-percent corporation is treated as a CFC for purposes of sections 951 and 961, as well as for purposes of § 1.1411–10, so that those rules, applicable to CFCs, are also applicable to DFICs that are not CFCs.

Moreover, the proposed regulations provide that for purposes of identifying section 958(a) U.S. shareholders of specified foreign corporations and the section 958(a) stock of such specified foreign corporations owned by section 958(a) U.S. shareholders, a domestic partnership is treated as a foreign partnership if certain conditions are satisfied. *See* proposed § 1.965–1(e)(1). This is an expansion on the reference in section 2.13 of Notice 2018–26 to Notice 2010–41, which referred to CFCs, whereas the expanded rule includes specified foreign corporations generally.

### B. Definitions

Section 1.965–1(f) of the proposed regulations sets forth definitions for terms that apply for all of the proposed regulations under section 965. Except as otherwise described in this Explanation of Provisions section, the definitions set forth in the proposed regulations that are also used in section 965 or one of the notices have the meaning described therein. This Part II.B of the Explanation of Provisions section also describes rules incorporated into certain defined terms that are not described elsewhere in this Explanation of Provisions section.

### 1. Specified Foreign Corporation

The proposed regulations provide that a specified foreign corporation means any CFC or 10-percent corporation, other than a foreign corporation that is a PFIC with respect to a shareholder and not a CFC. *See* proposed § 1.965–1(f)(45)(i) and (iii).

Section 3.01 of Notice 2018–26 noted that as a result of the application of the constructive ownership rule in section 318(a)(3)(A) (providing for "downward" attribution of stock from a partner to a partnership), it may be difficult to determine if a foreign corporation is a specified foreign corporation under certain circumstances. Consistent with that section of the notice, the definition of specified foreign corporation provides that, solely for purposes of determining whether a foreign corporation is a specified foreign corporation within the meaning of section 965(e)(1)(B), stock owned, directly or indirectly, by or for a partner ("tested partner") will not be considered as being owned by a partnership under sections 958(b) and 318(a)(3)(A) if the tested partner owns less than five percent of the interests in the partnership's capital and profits. *See* proposed § 1.965–1(f)(45)(ii). For purposes of the preceding sentence, an interest in the partnership owned by another partner will be considered as being owned by the tested partner under the principles of sections 958(b) and 318, as modified pursuant to the preceding sentence, as if the interest in the partnership were stock.

### 2. Post-1986 Earnings and Profits

Section 3.02(b) of Notice 2018–07 indicated that the reduction of post-1986 earnings and profits of a specified foreign corporation to reflect dividends distributed during the corporation's inclusion year to another specified foreign corporation (the "dividend reduction rule") is intended to address the potential double-counting of the E&P of the distributing specified foreign corporation in calculating the section 965(a) inclusion amounts of a United States shareholder with respect to the distributing specified foreign corporation and the distributee specified foreign corporation. It noted, however, that to the extent that a portion of a distribution reduces the post-1986 earnings and profits of a distributing specified foreign corporation (for example, by reason of a reduction pursuant to section 312(a)(3)) in an amount in excess of the increase in the post-1986 earnings and profits of the distributee specified foreign corporation, the reduction would not relieve double-counting and thus would be inconsistent with the purpose of the rule.

Accordingly, consistent with section 3.02(b) of Notice 2018–07, the definition of "post-1986 earnings and profits" clarifies, in proposed § 1.965–1(f)(29)(i)(B), that the amount by which the post-1986 earnings and profits of a

ADMIN_03560

specified foreign corporation is reduced under section 965(d)(3)(B) as a result of a distribution made to a specified foreign corporation in the last taxable year of the foreign corporation that begins before January 1, 2018, may not exceed the amount by which the post-1986 earnings and profits of the distributee corporation is increased as a result of the distribution. Additionally, similar to section 3.03 of Notice 2018–26, in computing post-1986 earnings and profits on November 2, 2017, in certain cases, a reduction is allowed for a portion of foreign income taxes that accrue after November 2, 2017, and on or before December 31, 2017 ("applicable taxes"). In particular, post-1986 earnings and profits on November 2, 2017, are reduced by the portion of the applicable taxes that are attributable to the portion of the taxable income (as determined under foreign law) that accrues on or before November 2, 2017, and during the specified foreign corporation's U.S. taxable year that includes November 2, 2017. *See* proposed § 1.965–1(f)(29)(ii).

Moreover, consistent with the Conference Report accompanying the Act (the "Conference Report") and section 3.03(b) of Notice 2018–13, proposed § 1.965–1(f)(29)(iii) provides that all deficits related to post-1986 earnings and profits, including hovering deficits, are taken into account for purposes of determining the post-1986 earnings and profits (including a deficit) of a specified foreign corporation. *See* H.R. Rep. No. 115–466, at 619 (2017) (Conf. Rep.). The fact that hovering deficits are taken into account for purposes of determining post-1986 earnings and profits, and ultimately the section 965(a) inclusion amount of a section 958(a) U.S. shareholder, does not mean that hovering deficits are taken into account for any other purpose. For example, this rule does not result in hovering deficits being taken into account for purposes of determining post-1986 undistributed earnings or pre-1987 accumulated profits in computing the taxes deemed paid for the foreign tax credit. The Treasury Department and the IRS request comments on whether additional rules are needed to address the treatment of hovering deficits that reduce post-1986 earnings and profits of a DFIC, for example when the hovering deficit creates a specified E&P deficit.

Comments noted that a specified foreign corporation that is not a CFC does not generally track E&P under U.S. tax principles and requested that taxpayers be allowed to use an alternative measurement method for determining its post-1986 earnings and

profits and cash position, such as audited financial statements. This comment is not adopted in the proposed regulations. Generally, audited financial statements may serve as a starting point in the determination of a specified foreign corporation's E&P. *See* § 1.964–1. The Treasury Department and the IRS appreciate that obtaining accurate information for U.S. federal income tax purposes may present administrative challenges, particularly in the case of United States shareholders that do not have a majority interest in a specified foreign corporation. However, this challenge is not unique to this context; there are numerous longstanding provisions in the Code where minority shareholders of foreign corporations must determine E&P consistent with section 312 where no alternative measurement method is provided. For example, United States persons who own stock in PFICs must, if they make an election to treat the PFIC as a qualified electing fund under section 1293, determine the E&P of the PFIC in accordance with principles of section 312. *See* section 1293(e)(3). Additionally, minority shareholders who are nonetheless United States shareholders of CFCs must know the E&P of the CFC in order to apply the rules under subpart F. Accordingly, the Treasury Department and the IRS have determined that it would not be appropriate for the proposed regulations to provide alternative methods for determining a corporation's E&P or cash position.

### 3. E&P Deficit Foreign Corporation

Consistent with section 3.01 of Notice 2018–13, under the proposed regulations, for purposes of determining the status of a specified foreign corporation as a DFIC or an E&P deficit foreign corporation, it must first be determined whether the specified foreign corporation is a DFIC. Proposed § 1.965–1(f)(17)(ii) provides that, if a specified foreign corporation meets the definition of a DFIC, it is classified solely as a DFIC and not also as an E&P deficit foreign corporation, even if the specified foreign corporation otherwise satisfies the requirements of section 965(b)(3)(B) and proposed § 1.965–1(f)(22). If a specified foreign corporation does not meet the definition of a DFIC, it then must be determined whether it is an E&P deficit foreign corporation. In some cases, a specified foreign corporation may be classified as neither a DFIC nor an E&P deficit foreign corporation, despite having post-1986 earnings and profits greater than zero or a deficit in accumulated post-

1986 deferred foreign income. *See* proposed § 1.965–1(g), *Example 5.*

Comments requested that previously taxed E&P should be disregarded in determining a specified E&P deficit of an E&P deficit foreign corporation. Section 965(b)(3)(B) provides that a specified foreign corporation is an E&P deficit foreign corporation if it has a deficit in post-1986 earnings and profits as of November 2, 2017. For purposes of section 965, the term post-1986 earnings and profits is defined in section 965(d)(3) and is computed in accordance with sections 964(a) and 986. Under section 964(a), earnings and profits are determined according to rules substantially similar to those applicable to domestic corporations.

Previously taxed E&P are a type of E&P. *See* section 959(c). No express exclusion of previously taxed E&P is provided in section 965(d)(3) for purposes of determining post-1986 earnings and profits. In contrast, the term accumulated post-1986 deferred foreign income, as defined in section 965(d)(2), explicitly excludes previously taxed E&P. *See* section 965(d)(2)(B) (citing section 959). Accordingly, the proposed regulations provide that previously taxed E&P is not excluded in determining the existence and amount of a specified E&P deficit, which is defined in reference to post-1986 earnings and profits and not in reference to accumulated post-1986 deferred foreign income. The Treasury Department and the IRS are considering other rules with respect to the definitions of post-1986 earnings and profits, accumulated post-1986 deferred foreign income, and specified E&P deficit in connection with the finalization of these proposed regulations. *See* section 965(o). The Treasury Department and the IRS welcome comments on this subject.

### 4. Accumulated Post-1986 Deferred Foreign Income

Consistent with section 3.02(c) of Notice 2018–07, proposed § 1.965–1(f)(7)(i)(C) provides that in the case of a CFC that has shareholders that are not United States shareholders on an E&P measurement date, the accumulated post-1986 deferred foreign income of the CFC on such E&P measurement date is reduced by amounts that would be described in section 965(d)(2)(B) if those shareholders were United States shareholders. In such cases, the principles of Revenue Ruling 82–16, 1982–1 C.B. 106, apply in order to determine the amounts by which accumulated post-1986 deferred foreign income is reduced.

Proposed § 1.965–1(f)(7)(ii) clarifies that, for purposes of determining the accumulated post-1986 deferred foreign income of a specified foreign corporation as of an E&P measurement date, the E&P of the specified foreign corporation that are described in section 959(c)(2) (or that would be described in section 959(c)(2) applying the principles of Revenue Ruling 82–16, 1982–1 C.B. 106) by reason of subpart F income are treated as described in section 965(d)(2)(B) and proposed § 1.965–1(f)(7)(i)(B) or (f)(7)(i)(C) only to the extent that such income is accrued by the specified foreign corporation as of such E&P measurement date. For rules regarding the interaction of sections 951, 956, 959, and 965 generally, see Part IV.A of this Explanation of Provisions section.

5. Cash Measurement Dates

Consistent with section 3.02 of Notice 2018–26, the definitions of the cash measurement dates, and of pro rata share, provide the following:

(i) The final cash measurement date of a specified foreign corporation is the close of the last taxable year of the specified foreign corporation that begins before January 1, 2018, and ends on or after November 2, 2017, if any;

(ii) The second cash measurement date of a specified foreign corporation is the close of the last taxable year of the specified foreign corporation that ends after November 1, 2016, and before November 2, 2017, if any;

(iii) The first cash measurement date of a specified foreign corporation is the close of the last taxable year of the specified foreign corporation that ends after November 1, 2015, and before November 2, 2016, if any; and

(iv) A United States shareholder takes into account its pro rata share of the cash position of a specified foreign corporation as of any cash measurement date of the specified foreign corporation on which the United States shareholder is a United States shareholder of the specified foreign corporation, regardless of whether the United States shareholder is a United States shareholder of the specified foreign corporation as of any other cash measurement date, including the final cash measurement date of the specified foreign corporation.

*See* proposed § 1.965–1(f)(24), (31), (25), and (30)(iii), respectively. Section 3.02 of Notice 2018–26 also announced that for purposes of applying the rules contained therein, a 52–53-week taxable year is deemed to begin on the first day of the calendar month nearest to the first day of the 52–53-week taxable year and is deemed to end or close on the last day of the calendar month nearest to the last day of the 52–53-week taxable year, as the case may be. *See* § 1.441–2(c). The Treasury Department and the IRS have determined that the rules contained in § 1.441–2(c), which relate to the application of effective dates, are not relevant in determining when a 52–53-week taxable year is considered to begin or end for purposes of the cash measurement dates; instead, the actual dates on which such a year begins and ends should be taken into account in determining cash measurement dates. Therefore, the proposed regulations do not contain the rule in section 3.02 of Notice 2018–26 referring to § 1.441–2(c).

Comments requested guidance on the measurement of cash when a section 381 transaction occurs during the last year of a specified foreign corporation that begins before January 1, 2018. The Treasury Department and the IRS have defined cash measurement date in the notices and largely adopted the definition in the proposed regulations. The Treasury Department and the IRS have determined that these rules provide appropriate guidance, and therefore additional rules are not necessary. See also Part V.A.2 of this Explanation of Provisions section, for a discussion of the rules for disregarding certain assets to prevent double-counting under section 965(c)(3)(D), and Part VI.A of this Explanation of Provisions section, for a discussion of the anti-avoidance rule in proposed § 1.965–4(b), which could apply, for example, to liquidations that reduce a section 958(a) U.S. shareholder's aggregate foreign cash position.

6. Cash Position & Derivative Financial Instruments

Consistent with section 3.01(c) of Notice 2018–07, the proposed regulations address the treatment of derivative financial instruments for purposes of measuring the cash position of a specified foreign corporation. Generally, the cash position of any specified foreign corporation includes, among other things, the fair market value of the cash-equivalent assets held by the corporation. *See* proposed § 1.965–1(f)(16)(i)(C). Consistent with section 3.01(c) of Notice 2018–07, the proposed regulations define the term cash-equivalent asset to include derivative financial instruments held by the specified foreign corporation that is not a bona fide hedging transaction. *See* proposed § 1.965–1(f)(13)(v). Derivative financial instruments include notional principal contracts, options contracts, forward contracts, futures contracts, short positions in securities and commodities, and any similar financial instruments. *See* proposed § 1.965–1(f)(18).

The proposed regulations provide that the value of each derivative financial instrument that must be taken into account in determining the cash position of a specified foreign corporation may be positive or negative, but that the aggregate amount taken into account for all derivative financial instruments (excluding bona fide hedging transactions) of a specified foreign corporation cannot be less than zero. *See* proposed § 1.965–1(f)(16)(iii).

Consistent with section 3.01(c) of Notice 2018–07, the proposed regulations also provide that if a derivative financial transaction is a bona fide hedging transaction that is used to hedge a cash-equivalent asset, the value of the cash-equivalent asset identified on the taxpayer's books and records must be adjusted by the fair market value of the bona fide hedging transaction that is used to hedge such cash-equivalent asset (such hedging transaction, a "cash-equivalent asset hedging transaction"). *See* proposed § 1.965–1(f)(16)(ii). The value of a cash-equivalent asset hedging transaction must be taken into account in determining the cash position of a specified foreign corporation whether the cash-equivalent asset hedging transaction has positive or negative value, but only to the extent that the cash-equivalent asset hedging transaction (or transactions) does not reduce the fair market value of the asset being hedged below zero. *Id.* A bona fide hedging transaction with respect to an asset that is not a cash-equivalent asset or with respect to a liability (as described in § 1.1221–2(b)(2)) is not included in a specified foreign corporation's cash position for purposes of section 965(c)(3)(B).

The proposed regulations define a bona fide hedging transaction as a hedging transaction that meets the requirements of a bona fide hedging transaction described in § 1.954–2(a)(4)(ii) and that is properly identified as such in accordance with the requirements of that subparagraph. Proposed § 1.965–1(f)(12). Consistent with the definition of a bona fide hedging transaction in § 1.954–2(a)(4)(ii), in the case of an asset hedging transaction, the risk being hedged may be with respect to ordinary property, section 1231 property, or a section 988 transaction. Because the identification requirements of § 1.954–2(a)(4)(ii) are generally relevant only to CFCs, whereas section 965 applies to all specified foreign corporations, the proposed regulations provide that the

identification requirements apply only with respect to CFCs. *Id.*

### 7. Accounts Receivable and Accounts Payable

Consistent with section 3.04(a) of Notice 2018–13 as well as the clarification provided in section 3.06 of Notice 2018–26, the definitions of "accounts payable" and "accounts receivable" in proposed § 1.965–1(f)(5) and (6) provide that for purposes of determining net accounts receivable taken into account in determining the cash position of a specified foreign corporation, the term "accounts receivable" means receivables described in section 1221(a)(4), and the term "accounts payable" means payables arising from the purchase of property described in section 1221(a)(1) or 1221(a)(8) or the receipt of services from vendors or suppliers, and only receivables or payables with a term upon issuance that is less than one year are taken into account. In addition, receivables that are treated as accounts receivable within the meaning of section 965(c)(3)(C)(i) and proposed § 1.965–1(f)(6) are not also treated as short-term obligations. *See* proposed § 1.965–1(f)(43).

Comments requested modifications to the definition of accounts payable for purposes of determining a specified foreign corporation's cash position, including that accounts payable be defined to include payables related to the licensing of intellectual property, payables to employees in the ordinary course of business, and payables arising from property described in section 1221(a)(2). The term "accounts payable" is not defined in the statute, and the Treasury Department and the IRS have determined that the definition in the proposed regulations is consistent with the ordinary meaning of accounts payable. Therefore no change is made in the proposed regulations to the definition of accounts payable.

### 8. Short-Term Obligations

Consistent with section 3.04(b) of Notice 2018–13, proposed § 1.965–1(f)(43) provides that, for purposes of determining a specified foreign corporation's cash position, a loan that must be repaid on the demand of the lender (or that must be repaid within one year of such demand) is treated as a short-term obligation, regardless of the stated term of the instrument, and thus is included in the specified foreign corporation's cash position. In response to a comment, proposed § 1.965–1(f)(43) clarifies that an instrument's term upon issuance is used for purposes of

determining whether an obligation is a short-term obligation.

A comment requested that taxpayers be able to prove, based on facts and circumstances, that a demand loan should not be treated as a short-term obligation. The Treasury Department and the IRS have determined that any facts-and-circumstances test would not be administrable, particularly to the extent that the test required a determination of a taxpayer's subjective intent with respect to the payment of the loan. Accordingly, this comment is not adopted.

### 9. Pro Rata Share

Consistent with section 3.03(a) of Notice 2018–13, the proposed regulations provide that, for purposes of determining a United States shareholder's pro rata share of the specified E&P deficit of an E&P deficit foreign corporation that has multiple classes of stock outstanding, the specified E&P deficit is allocated among the shareholders of the corporation's common stock and in proportion to the value of the common stock held by such shareholders. *See* proposed § 1.965–1(f)(30)(ii). Comments are requested regarding whether there are circumstances in which a specified E&P deficit should be allocated to shareholders of an E&P deficit foreign corporation's preferred stock and, if so, how to allocate as between shareholders of common stock and shareholders of preferred stock as well as among shareholders of preferred stock. The proposed regulations also clarify that, for purposes of determining a shareholder's pro rata share of a specified E&P deficit, the value of the common stock is determined as of the last day of the last taxable year of the E&P deficit foreign corporation that begins before January 1, 2018. *Id.*

See Part II.B.5 of this Explanation of Provisions section for a discussion of the definition of pro rata share with respect to the cash position of a specified foreign corporation.

### 10. Domestic Pass-Through Entities

As explained in section 3.05(b) of Notice 2018–26, section 965 increases the amount included in the gross income of a United States shareholder under section 951(a)(1) only if the United States shareholder owns section 958(a) stock of one or more specified foreign corporations. *See* section 951(a)(2)(A). Accordingly, if a domestic pass-through entity is a United States shareholder of a DFIC and owns section 958(a) stock of the DFIC, the section 965(a) inclusion amount with respect to the section 958(a) stock and the section

965(c) deduction amount with respect to the section 965(a) inclusion amount are each determined at the level of the domestic pass-through entity. *See* section 951(a)(1). However, the domestic pass-through owners of the domestic pass-through entity are subject to federal income tax on their share of the aggregate section 965(a) inclusion amount with respect to section 958(a) stock owned by the domestic pass-through entity. Accordingly, in the case of a domestic pass-through entity that is a section 958(a) U.S. shareholder with respect to one or more DFICs, each domestic pass-through owner takes into account its share of the aggregate section 965(a) inclusion amount with respect to section 958(a) stock of one or more DFICs of the domestic pass-through entity and its share of the section 965(c) deduction amount with respect to such amount (each, a "domestic pass-through owner share"), regardless of whether such domestic pass-through owner is also a United States shareholder with respect to such DFIC, giving rise to a "section 965(a) inclusion" and a "section 965(c) deduction" to the domestic pass-through owner. *See* proposed § 1.965–1(f)(21), (37) and (41). For this purpose, a pass-through owner's share is determined under the provisions of subchapter K of the Code.

Proposed § 1.965–3(g) provides that an aggregate section 965(a) inclusion amount for a section 958(a) U.S. shareholder inclusion year and the related section 965(c) deduction amount must be allocated in the same proportion. For example, if a domestic pass-through owner is allocated 50 percent of an aggregate section 965(a) inclusion amount with respect to section 958(a) stock of a domestic pass-through entity, the domestic pass-through owner must be allocated 50 percent of the related section 965(c) deduction amount. If the domestic pass-through owner is also a section 958(a) U.S. shareholder with respect to the DFIC because it owns section 958(a) stock of the DFIC, the section 965(a) inclusion amount with respect to the section 958(a) stock of the domestic pass-through owner and the section 965(c) deduction amount with respect to such amount are determined separately from the domestic pass-through owner's share of the aggregate section 965(a) inclusion amount and section 965(c) deduction amount of the domestic pass-through entity.

Consistent with section 3.05(b) of Notice 2018–26, proposed § 1.965–1(f)(19) defines the term "domestic pass-through entity" to mean a pass-through entity that is a United States person (as defined in section 7701(a)(30)), and

proposed § 1.965–1(f)(28) defines the term "pass-through entity" to mean a partnership, S corporation, or any other person to the extent that the income or deductions of such person are included in the income of one or more direct or indirect owners or beneficiaries of the person. Accordingly, if, for example, a domestic trust owns section 958(a) stock of a single DFIC and is subject to federal income tax on a portion of its section 965(a) inclusion amount and its domestic pass-through owners are subject to tax on the remaining portion, the domestic trust is treated as a domestic pass-through entity with respect to such remaining portion. As defined, a pass-through entity does not include a REIT or a regulated investment company ("RIC"). The term "domestic pass-through owner" means a United States person that is a partner, shareholder, beneficiary, grantor, or owner, as the case may be, in a domestic pass-through entity, except that, in the case of tiered pass-through entities, the term does not include a partner, shareholder, beneficiary, grantor, or owner that is itself a domestic pass-through entity. See proposed § 1.965–1(f)(20). In the case of tiered pass-through entities, a reference to a domestic pass-through owner includes a United States person that is an indirect partner, shareholder, beneficiary, grantor, or owner through one or more other pass-through entities, and a reference to a domestic pass-through owner share of the aggregate section 965(a) inclusion amount and section 965(c) deduction amount of a domestic pass-through entity includes such domestic pass-through owner's share of the aggregate section 965(a) inclusion amount and section 965(c) deduction amount of a domestic pass-through entity owned indirectly by the domestic pass-through owner through one or more other pass-through entities. See proposed § 1.965–1(f)(20) and (21).

*C. Foreign Currency Translation*

Consistent with section 3.05(a) of Notice 2018–13, the proposed regulations provide that, for purposes of determining the section 965(a) earnings amount of a specified foreign corporation, the accumulated post-1986 deferred foreign income of the specified foreign corporation as of each of the E&P measurement dates must be compared in the functional currency of the specified foreign corporation. See proposed § 1.965–1(f)(36). If the functional currency of a specified foreign corporation changes between the two E&P measurement dates, the comparison must be made in the functional currency of the specified

foreign corporation as of December 31, 2017, by translating the specified foreign corporation's E&P as of November 2, 2017, into the new functional currency using the spot rate on November 2, 2017. Id.; see also proposed § 1.965–4(c)(1) (disregarding any such change in functional currency for purposes of applying section 965 to a United States shareholder of the specified foreign corporation under certain circumstances).

Furthermore, the proposed regulations are consistent with section 3.05(b) of Notice 2018–13, which indicates that the spot rate on December 31, 2017, is to be used for translating the section 965(a) earnings amount of a DFIC into U.S. dollars for purposes of determining the section 965(a) inclusion amount of a United States shareholder with respect to the DFIC, as well as for purposes of translating other amounts necessary for the application of section 965(b), including (i) translating a section 965(a) earnings amount into U.S. dollars in computing amounts described in section 965(b)(2)(A) and (B), (ii) translating a specified E&P deficit into U.S. dollars in order to determine a United States shareholder's aggregate foreign E&P deficit under section 965(b)(3)(A), (iii) translating a section 965(a) inclusion amount with respect to a DFIC (if the amount was reduced by an aggregate foreign E&P deficit under section 965(b)(1)) back into the functional currency of the DFIC for purposes of determining the E&P of the DFIC described in section 959(c)(2), and (iv) translating the portion of the U.S. dollar-denominated aggregate foreign E&P deficit allocated to a DFIC under section 965(b)(2) into the functional currency of the DFIC for purposes of determining its E&P described in section 959(c)(2) by reason of section 965(b)(4)(A). See proposed §§ 1.965–1(b)(1), (f)(9) and (11), and 1.965–2(c) and (d). Proposed § 1.965–6(b) also provides that in applying section 902, the section 965(a) inclusion amount must be translated (if necessary) back into the DFIC's functional currency using the spot rate on December 31, 2017.

Section 3.05(c) of Notice 2018–13 describes regulations to ensure that the cash position of a specified foreign corporation with respect to any cash measurement date is expressed in U.S. dollars, so that the amount of a United States shareholder's aggregate foreign cash position is the greater of the aggregate amounts on each cash measurement date. In determining the cash position attributable to net accounts receivable, the amount of accounts receivable and accounts

payable (in each case, if not otherwise denominated in U.S. dollars) must be translated into U.S. dollars at the spot rate on the relevant cash measurement date. The fair market value of assets described in section 965(c)(3)(B)(iii) must also be determined in U.S. dollars on the relevant cash measurement date. For example, in the case of foreign currency, the fair market value equals the currency amount translated at the spot rate on the relevant cash measurement date. Consistent with section 3.05(c) of Notice 2018–13, the proposed regulations provide that amounts taken into account in determining the cash position are translated (if necessary) using the spot rate on the relevant cash measurement date. See proposed § 1.965–1(f)(16)(iv).

**III. Section 962 Elections**

The proposed regulations provide rules consistent with section 5 of Notice 2018–26 related to elections under section 962. Proposed § 1.962–2(a) clarifies that an individual domestic pass-through owner that is a United States shareholder with respect to a DFIC may make an election under section 962 with respect to the individual's share of the section 965(a) inclusion amount of a domestic pass-through entity with respect to the DFIC, and an individual who is not a United States shareholder of a DFIC is not permitted to make an election under section 962 with respect to the individual's share of a section 965(a) inclusion amount of a domestic pass-through entity with respect to the DFIC. See also proposed § 1.962–1(b)(1)(i)(A)(*1*)(*ii*).

In addition, notwithstanding the rule in current § 1.962–1(b)(1)(i) providing that a deduction of a United States shareholder does not reduce the amount included in gross income under section 951(a) for purposes of computing the amount of tax that would be imposed under section 11, the Treasury Department and the IRS have determined that in the case of a taxpayer making an election under section 962, the section 965(c) deduction (which is generally available to United States shareholders of DFICs, including individuals) should be allowed with respect to the tax imposed under section 11 rather than under section 1. See H.R. Rep. No. 115–466, at 620 (2017) (Conf. Rep.). Thus, under proposed § 1.962–1(b)(1)(i)(B), "taxable income" as used in section 11 is reduced by a taxpayer's section 965(c) deduction with respect to a section 965(a) inclusion to which the section 962 election applies. However, the proposed regulations clarify that, subject to future guidance, "taxable

income" as used in section 11 is not reduced by any other amounts, including any other deductions.

To clarify that a section 965(c) deduction taken into account in determining "taxable income" as used in section 11 cannot then be deducted again at the individual level, the proposed regulations provide that any section 965(c) deduction allowed in determining "taxable income" as used in section 11 for purposes of computing the tax due as a result of a section 962 election is not also allowed for purposes of determining an individual's actual taxable income. *See* proposed § 1.965–3(e)(1).

### IV. Adjustments to E&P and Basis

Proposed § 1.965–2 contains rules related to adjustments to E&P and basis to determine and account for the application of section 965(a) and (b) and proposed § 1.965–1(b) and a rule that limits the amount of gain recognized in connection with the application of section 961(b)(2).

*A. Determination of and Adjustments to E&P in the Last Taxable Year of a Specified Foreign Corporation That Begins Before January 1, 2018, for Purposes of Applying Sections 959 and 965*

Consistent with section 3.02(d) of Notice 2018–07, the proposed regulations clarify the interaction between the rules under sections 959 and 965 in the last taxable year of a specified foreign corporation that begins before January 1, 2018, and the taxable year of a section 958(a) U.S. shareholder of the specified foreign corporation in which or with which such year ends. Proposed § 1.965–2(b) provides the following rules relating to adjustments to E&P for determining a section 958(a) U.S. shareholder's inclusion under section 951(a)(1), including by reason of section 965(a) and proposed § 1.965–1(b), and the treatment of distributions under section 959: First, the subpart F income of the specified foreign corporation is determined without regard to section 965(a), and a section 958(a) U.S. shareholder's inclusion under section 951(a)(1)(A) by reason of such amount is taken into account.

Second, the treatment of a distribution from the specified foreign corporation to another specified foreign corporation that is made before January 1, 2018, is determined under section 959.

Third, each of the post-1986 earnings and profits (including a deficit) of the specified foreign corporation, the accumulated post-1986 deferred foreign income of the specified foreign

corporation, the section 965(a) earnings amount of the specified foreign corporation, and the section 965(a) inclusion amount of the section 958(a) U.S. shareholder with respect to the specified foreign corporation, if any, is determined, and the E&P (including a deficit) of the specified foreign corporation are adjusted as provided in proposed § 1.965–2(c) and (d) (as discussed in Part IV.B of this Explanation of Provisions section). For a rule disregarding subpart F income earned after an E&P measurement date for purposes of calculating accumulated post-1986 deferred foreign income as of the E&P measurement date, see Part II.B.4 of this Explanation of Provisions section and proposed § 1.965–2(j), *Example 2* and *Example 3.*

Fourth, the treatment of all distributions from the specified foreign corporation other than those described in step 2 is determined under section 959.

Fifth, an amount is determined under section 956 with respect to the specified foreign corporation and the section 958(a) U.S. shareholder, and the shareholder's inclusion under section 951(a)(1)(B) is taken into account.

*B. Adjustments to E&P by Reason of Section 965(a) and (b)*

1. Adjustments to E&P by Reason of Section 965(a)

Proposed § 1.965–2(c) provides that if a section 958(a) U.S. shareholder has a section 965(a) inclusion with respect to a DFIC, the DFIC will have previously taxed E&P with respect to the section 958(a) U.S. shareholder in an amount equal to the section 965(a) inclusion amount (referred to as "section 965(a) previously taxed earnings and profits"). Because section 965(a) previously taxed earnings and profits must be tracked in functional currency whereas the section 965(a) inclusion amount is in U.S. dollars, as noted in Part II.C of this Explanation of Provisions section, the proposed regulations provide that the section 965(a) inclusion amount must be translated (if necessary) into the functional currency of the DFIC using the spot rate on December 31, 2017, in determining the amount of the section 965(a) previously taxed earnings and profits.

Under proposed § 1.965–2(c), the E&P of a DFIC described in section 959(c)(3) are reduced by an amount equal to the section 965(a) previously taxed earnings and profits of the corporation. In certain cases, the section 965(a) inclusion amount with respect to the DFIC, and therefore the section 965(a) previously taxed earnings and profits of the DFIC

with respect to a section 958(a) U.S. shareholder, may exceed the E&P described in section 959(c)(3) of the DFIC. For example, this will be the case when a DFIC incurs a loss after the E&P measurement date on which it determines its section 965(a) earnings amount and before the end of its inclusion year. In such a case, under the proposed regulations, a deficit in E&P described in section 959(c)(3) will be created or increased.

2. Adjustments to E&P by Reason of Section 965(b)

Proposed § 1.965–2(d) provides rules relating to E&P of DFICs and E&P deficit foreign corporations by reason of a reduction under section 965(b)(1) and proposed § 1.965–1(b)(2) (reduction by the DFIC's allocable share of a section 958(a) U.S. shareholder's aggregate foreign E&P deficit) or section 965(b)(5) and proposed § 1.965–8(b) (reduction by the DFIC's allocable share of a section 958(a) U.S. shareholder's applicable share of an affiliated group's aggregate unused E&P deficit) (collectively, the "reduction rules").

i. Adjustments to E&P of DFICs

Under proposed § 1.965–2(d)(1), if a section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of a DFIC is reduced under the reduction rules, the DFIC will have previously taxed E&P (referred to as "section 965(b) previously taxed earnings and profits") with respect to the section 958(a) U.S. shareholder in an amount equal to the amount of the reduction, if any, translated (if necessary) into the functional currency of the DFIC using the spot rate on December 31, 2017. For purposes of applying section 959, section 965(b) previously taxed earnings and profits are treated as E&P that are included in the gross income of the section 958(a) U.S. shareholder under section 951(a)(1)(A). Furthermore, the E&P (including a deficit) described in section 959(c)(3) of the DFIC are reduced (or, in the case of a deficit, increased) by an amount equal to the section 965(b) previously taxed earnings and profits.

ii. Adjustments to E&P of E&P Deficit Foreign Corporations

Under proposed § 1.965–2(d)(2)(i)(A), the E&P described in section 959(c)(3) of an E&P deficit foreign corporation are increased by an amount equal to the portion of a section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under the reduction rules, translated (if necessary) into the functional currency

ADMIN_03565

of the E&P deficit foreign corporation using the spot rate on December 31, 2017. The proposed regulations clarify that the E&P increased by reason of this provision are not treated as E&P of the taxable year described in section 316(a)(2). See also proposed § 1.965–6(c)(3) for a rule on the timing of this adjustment for purposes of determining a deemed paid credit allowed under sections 902 and 960 with respect to the E&P deficit foreign corporation (which is discussed in Part VII.C.1 of this Explanation of Provisions section).

In addition, proposed § 1.965–2(d)(2)(i)(B) provides that, for purposes of section 952, a section 958(a) U.S. shareholder's pro rata share of the E&P of an E&P deficit foreign corporation is increased by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under the reduction rules, translated (if necessary) into the functional currency of the E&P deficit foreign corporation using the spot rate on December 31, 2017, and such increase is attributable to the same activity to which the deficit so taken into account was attributable.

Proposed § 1.965–2(d)(2)(ii) provides rules for determining the portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit of an E&P deficit foreign corporation taken into account under the reduction rules. Proposed § 1.965–2(d)(2)(ii)(A) details the circumstances in which all of a pro rata share of a specified E&P deficit will be taken into account. Proposed § 1.965–2(d)(2)(ii)(B) provides that if the rule in the preceding sentence does not apply, a section 958(a) U.S. shareholder must designate the portion taken into account.

### C. Adjustments to Basis by Reason of Section 965(a) and (b)

1. Adjustments to Basis by Reason of Section 965(a)

Proposed § 1.965–2(e) provides that, under section 961(a), a section 958(a) U.S. shareholder's basis in section 958(a) stock of a DFIC, or property by reason of which the section 958(a) U.S. shareholder is considered under section 958(a)(2) as owning section 958(a) stock of a DFIC ("applicable property"), is increased by the section 958(a) U.S. shareholder's section 965(a) inclusion amount with respect to the DFIC. However, rules relating to basis adjustments in the case of a section 962 election are reserved. Comments are requested as to the appropriate amount of a basis adjustment with respect to a

DFIC with respect to which a section 962 election is effective.

2. Adjustments to Basis by Reason of Section 965(b)

Proposed § 1.965–2(f)(1) clarifies that, in general, no adjustments to basis of stock or property are made under section 961 (or any other provision of the Code) to take into account the reduction to a section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of a DFIC under the reduction rules. However, section 965(o) provides authority to write regulations concerning basis adjustments in contemplation of the fact that "basis adjustments (increases or decreases) may be necessary with respect to both the stock of the DFIC and the E&P deficit foreign corporation." H.R. Rep. No. 115–466, at 620 (2017) (Conf. Rep.). The Conference Report stated:

> For example, with respect to the stock of the deferred foreign income corporation, the Secretary may determine that a basis increase is appropriate in the taxable year of the section 951A [sic] inclusion or, alternatively, the Secretary may modify the application of section 961(b)(1) with respect to such stock. Moreover, with respect to the stock of the E&P deficit [foreign] corporation, the Secretary may require a reduction in basis for the taxable year in which the U.S. shareholder's pro rata share of the earnings of the E&P deficit [foreign] corporation are increased.

*Id.* at 620–21.

The Treasury Department and the IRS have determined that an increase to the basis of stock of DFICs is appropriate only if there is a corollary reduction to the basis of the stock of E&P deficit foreign corporations. However, the Treasury Department and the IRS recognize that such reduction, which could in certain cases give rise to gain, could be overly burdensome for taxpayers. Accordingly, proposed § 1.965–2(f)(2) allows taxpayers to elect to make the relevant basis adjustments, in which case such adjustments must be consistently made with respect to all section 958(a) stock of specified foreign corporations owned by a section 958(a) U.S. shareholder and related persons. The relevant basis adjustments are (i) an increase in the section 958(a) U.S. shareholder's basis in the section 958(a) stock of a DFIC or applicable property with respect to a DFIC by an amount equal to the section 965(b) previously taxed earnings and profits of the DFIC with respect to the section 958(a) U.S. shareholder, and (ii) a reduction in the section 958(a) U.S. shareholder's basis in the section 958(a) stock of an E&P deficit foreign corporation or applicable

property with respect to an E&P deficit foreign corporation by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under the reduction rules. However, as noted in Part IV.C.1 of this Explanation of Provisions section, rules relating to basis adjustments in the case of a section 962 election are reserved. An election under § 1.965–2(f)(2) is generally made by attaching a statement, signed under penalties of perjury, to the section 958(a) U.S. shareholder's return for the first taxable year that includes the last day of the last taxable year of a DFIC or E&P deficit foreign corporation of the shareholder that begins before January 1, 2018, including the shareholder's name and taxpayer identification number and a statement that the shareholder and all related persons make the election. *See* proposed § 1.965–2(f)(2)(iii)(B).

### D. Gain-Reduction Rule

Consistent with section 3.03 of Notice 2018–07, and with the modification described in section 4 of Notice 2018–13, proposed § 1.965–2(g)(1) provides a gain-reduction rule pursuant to which, if a section 958(a) U.S. shareholder receives distributions through a chain of ownership described under section 958(a) from a DFIC during the inclusion year that are attributable to section 965(a) previously taxed earnings and profits, the amount of gain that would otherwise be recognized under section 961(b)(2) by the section 958(a) U.S. shareholder with respect to the section 958(a) stock of the DFIC, or applicable property with respect to the DFIC, is reduced (but not below zero) by an amount equal to the section 965(a) previously taxed earnings and profits of the DFIC with respect to the section 958(a) U.S. shareholder.

If a taxpayer makes the election described in proposed § 1.965–2(f)(2), the gain-reduction rule will also apply to distributions attributable to section 965(b) previously taxed earnings and profits, and the amount of gain that would otherwise be recognized by the section 958(a) U.S. shareholder is also reduced by the amount of the section 965(b) previously taxed earnings and profits of the DFIC with respect to the section 958(a) U.S. shareholder.

In order to ensure that the amount of gain in the section 958(a) stock or applicable property that would have been recognized under section 961(b)(2) remains reflected in the section 958(a) stock or applicable property, proposed § 1.965–2(g)(2) provides that the basis in the section 958(a) stock or applicable

property must be reduced by the amount that would have been recognized as gain.

### E. Rules of Application for Basis Adjustments

The proposed regulations provide certain rules of application common to all basis adjustments described in proposed § 1.965–2(e), (f)(2), and (g)(2) ("specified basis adjustments"). *See* proposed § 1.965–2(h). The rules address the timing and allocation among shares of the specified basis adjustments. *See* proposed § 1.965–2(h)(1) and (4). They also require netting of the specified basis adjustments and gain recognition to the extent that a net downward adjustment would exceed basis. *See* proposed § 1.965–2(h)(2) and (3). In addition, they make clear that the specified basis adjustments are limited to adjustments to property held by a section 958(a) U.S. shareholder, except in circumstances involving foreign pass-through entities. *See* proposed § 1.965–2(h)(5).

### V. Section 965(c) Deductions

Proposed § 1.965–3 provides rules regarding section 965(c) deductions and section 965(c) deduction amounts.

#### A. Determination of Aggregate Foreign Cash Position

##### 1. Disregard of Certain Obligations Between Related Specified Foreign Corporations

Consistent with section 3.01(b) and (c) of Notice 2018–07, the proposed regulations provide that, for purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder, accounts receivable, accounts payable, short-term obligations, and derivative financial instruments between related specified foreign corporations are disregarded, if applicable, on the corresponding cash measurement dates of the specified foreign corporations to the extent of the smallest of the section 958(a) U.S. shareholder's ownership percentages of section 958(a) stock of the specified foreign corporations owned by the section 958(a) U.S. shareholder on the corresponding cash measurement dates. *See* proposed § 1.965–3(b)(1).

##### 2. Disregard of Certain Assets To Prevent Double Counting

Section 3.05(a) of Notice 2018–26 announced the intent to issue forms, publications, regulations, or other guidance specifying the documentation that a United States shareholder must maintain or provide, and the time and manner for providing any such documentation, in order to make the required demonstration to the Secretary to rely on section 965(c)(3)(D) in excluding net accounts receivable, actively traded property, and short-term obligations in determining its aggregate foreign cash position. To disregard assets under this rule, the proposed regulations provide that a section 958(a) U.S. shareholder must attach a statement to its timely filed return (taking into account extensions, if any) containing a description of the asset that would be taken into account with respect to both specified foreign corporations; a statement of the amount by which its pro rata share of the cash position of one specified foreign corporation is reduced; a detailed explanation of why there would otherwise be double-counting, including the computation of the amount taken into account with respect to the other specified foreign corporation; and an explanation of why the rule described in Part V.A.1 of this Explanation of Provisions section does not apply to disregard such amounts. *See* proposed § 1.965–3(b)(2).

#### B. Determination of Aggregate Foreign Cash Position for Section 958(a) U.S. Shareholder Inclusion Year

Consistent with section 3.05(a) of Notice 2018–07, the proposed regulations provide that in the case of a section 958(a) U.S. shareholder that has a section 965(a) inclusion amount in more than one taxable year, the amount of the aggregate foreign cash position taken into account in the first taxable year will equal the lesser of the section 958(a) U.S. shareholder's aggregate foreign cash position or the aggregate 965(a) inclusion amount taken into account by the section 958(a) U.S. shareholder in that taxable year. Furthermore, the amount of the section 958(a) U.S. shareholder's aggregate foreign cash position taken into account in any succeeding taxable year will be the lesser of the excess, if any, of its aggregate foreign cash position over the amount of its aggregate foreign cash position taken into account in preceding taxable years, or the aggregate section 965(a) inclusion amount taken into account by the section 958(a) U.S. shareholder in such succeeding taxable year. *See* proposed § 1.965–3(c)(2).

In addition, also consistent with section 3.05(a) of Notice 2018–07, the proposed regulations provide that, for purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder for a taxable year in which it takes into account a section 965(a) inclusion amount, a section 958(a) U.S. shareholder can assume that its pro rata share of the cash position of any specified foreign corporation whose last taxable year beginning before January 1, 2018, ends after the date the return for such taxable year of the section 958(a) U.S. shareholder is timely filed (taking into account extensions, if any) will be zero as of the cash measurement date with which the year of the specified foreign corporation ends. If a section 958(a) U.S. shareholder's pro rata share of the cash position of a specified foreign corporation was treated as zero pursuant to the preceding sentence for a section 958(a) U.S. shareholder inclusion year (an "estimated section 958(a) U.S. shareholder inclusion year"), the final cash measurement date amount in fact exceeds the average of the first and second cash measurement date amounts with respect to the section 958(a) shareholder, and the shareholder's aggregate section 965(a) inclusion amount in fact exceeds the final cash measurement date amount, interest and penalties will not be imposed if the section 958(a) U.S. shareholder makes appropriate adjustments by amending the return for the estimated section 958(a) U.S. shareholder inclusion year to reflect the correct aggregate foreign cash position by the due date (taking into account extensions, if any) for the return for the year after the estimated section 958(a) U.S. shareholder inclusion year. *See* proposed § 1.965–3(c)(3).

#### C. Recapture of Section 965(c) Deductions for Expatriated Entities

Proposed § 1.965–3(d) harmonizes the rule provided in section 965(l) requiring the recapture of a section 965(c) deduction by an expatriated entity with the expanded scope of availability of section 965(c) deductions (that is, to a domestic pass-through owner that is not itself a United States shareholder) by requiring recapture of all section 965(c) deductions taken into account by an expatriated entity without regard to whether the expatriated entity was itself a United States shareholder.

#### D. Treatment of Section 965(c) Deductions Under Certain Code Provisions

Consistent with section 3.06 of Notice 2018–26, proposed § 1.965–3(f)(1) provides that a section 965(c) deduction will not be treated as an itemized deduction for any purpose of the Code (including, as described in Notice 2018–26, for purposes of sections 56 and 67).

The Treasury Department and the IRS are aware that the rules of subchapter K and subchapter S may prevent a partner or S corporation shareholder from taking into account its domestic pass-

through owner share of a section 965(c) deduction amount in certain circumstances if allocated by a partnership or S corporation separately from the corresponding section 965(a) inclusion amount, particularly to the extent that a partnership or S corporation makes distributions to one or more partners or shareholders (as the case may be) during the year of its section 965(a) inclusion. *See, e.g.,* section 1366(d). Accordingly, proposed § 1.965–3(f)(2)(i) provides that in the case of a domestic partnership or S corporation, the aggregate amount of its section 965(a) inclusions net of the aggregate amount of its section 965(c) deductions is treated as a separately stated item of net income solely for purposes of calculating basis under section 705(a) and § 1.705–1(a) and section 1367(a)(1) and § 1.1367–1(f). Furthermore, the proposed regulations incorporate the rules concerning basis and AAA adjustments contained in section 965(f)(2) and provide an example illustrating the application of the rules described in this paragraph. *See* proposed § 1.965–3(f)(2)(i)(B), (ii), and (iii).

The proposed regulations clarify whether a United States person that must pay tax under section 1411 on a section 965(a) inclusion is entitled to take into account a section 965(c) deduction for purposes of determining the amount of such tax. Section 965(c) deductions are intended to reduce the rate of income tax to which section 965(a) inclusions are subject. *See* H.R. Rep. No. 115–466, at 620 (2017) (Conf. Rep.). The Treasury Department and the IRS have determined that the section 965(c) deduction was not intended to reduce the rate of tax imposed by non-income tax provisions outside of chapter 1. Accordingly, proposed § 1.965–3(f)(3) provides that for purposes of section 1411 and § 1.1411–4(f)(6), a section 965(c) deduction is not treated as a deduction properly allocable to a corresponding section 965(a) inclusion. Consistent with the rule for section 1411, proposed § 1.965–3(f)(4) provides that a section 965(c) deduction is not treated as an ordinary and necessary expense paid or incurred for the production or collection of gross investment income for purposes of section 4940(c)(3)(A).

## VI. Disregard of Certain Transactions

Proposed § 1.965–4 provides rules that disregard certain transactions for purposes of applying section 965. In particular, proposed § 1.965–4 provides rules that disregard (i) transactions undertaken with a principal purpose of reducing the section 965 tax liability of a United States shareholder, (ii) certain changes in method of accounting and entity classification elections, and (iii) certain transactions occurring between E&P measurement dates.

### A. Anti-Avoidance Rules

The proposed regulations provide rules, consistent with section 3.04 of Notice 2018–26, to prevent the avoidance of section 965, including an anti-avoidance rule disregarding certain transactions and rules disregarding certain changes in accounting methods and entity classification elections. *See* proposed § 1.965–4(b) through (e). The application of the anti-avoidance rule is based on whether there is a "change in the amount of a section 965 element" rather than a change in the section 965 tax liability, as described in the notice. *See* proposed § 1.965–4(b)(1). For this purpose, generally there is a change in the amount of a section 965 element if there is a reduction of a section 958(a) inclusion amount or aggregate foreign cash position or an increase in deemed paid foreign income taxes as a result of a section 965(a) inclusion. *See* proposed § 1.965–4(d) and (e)(1).

Comments requested that the anti-avoidance rule not apply to the extent a reduction in tax liability by reason of section 965 is offset by an equal amount of tax increase pursuant to a different Code provision. This comment is not adopted. The Conference Report reflects an intent for the Treasury Department and the IRS to address all strategies for avoiding a section 965(a) inclusion, without regard to the effect on overall tax liability. *See* H.R. Rep. No. 115–466, at 619 (2017) (Conf. Rep.). Furthermore, it would be difficult for the IRS to determine whether a particular increase in tax liability for non-section 965 reasons is related to the reduction in the taxpayer's section 965(a) inclusion. Finally, the anti-avoidance rule generally does not apply without a principal purpose of changing the amount of a section 965 element. Depending on the facts and circumstances, transactions that do not reduce overall tax liability may not meet the principal purpose test described in proposed § 1.965–4(b)(1).

Comments also requested a de minimis exception for the anti-avoidance rule. This comment is not adopted. The Treasury Department and the IRS have determined that any reduction in tax imposed by reason of section 965 through tax avoidance strategies occurring after November 2, 2017, is inconsistent with congressional intent and should not be respected.

Comments to Notice 2018–26 requested that the rule disregarding

changes to methods of accounting not apply when the change is from an impermissible to a permissible method, and that a principal purpose test should apply. These comments are not adopted. Proposed § 1.965–4(c)(1) does not affect a taxpayer's ability to change its method of accounting, including to change to a permissible method. Instead, the rule disregarding an accounting method change is relevant only for the limited purpose of determining the amount of a taxpayer's section 965 elements.

The choice of a November 2, 2017, measurement date reflects an intent to impose a transition tax on a snapshot of earnings as of a date that coincides with the introduction of the Act in Congress, and reflects a general policy of disregarding taxpayer actions occurring after November 2, 2017, that reduce the taxpayer's liability imposed by reason of section 965, even if such future actions are otherwise respected under the Code. Such actions can include changes in accounting methods, whether to methods that are permissible or impermissible and regardless of the principal purpose for such change. A rule disregarding such changes is also consistent with the Conference Report, which reflects a clear intent for the Treasury Department and the IRS to exercise their authority under section 965(o) to disregard accounting method changes that reduce a taxpayer's tax liability under section 965. *See* H.R. Rep. No. 115–466, at 619 (2017) (Conf. Rep.).

### B. Disregard of Certain Transactions Occurring Between E&P Measurement Dates

In section 3.02(a) of Notice 2018–07, the Treasury Department and the IRS announced the intent to issue regulations to address the possibility of double-counting or double non-counting in the computation of post-1986 earnings and profits arising from amounts paid or incurred (including certain dividends) between related specified foreign corporations of a United States shareholder that occur between E&P measurement dates and that would otherwise reduce the post-1986 earnings and profits as of December 31, 2017, of the specified foreign corporation that paid or incurred such amounts. The notice contained examples illustrating fact patterns involving double-counting or double non-counting to be addressed by the future regulations. The proposed regulations provide, consistent with section 3.02(a) of Notice 2018–07, that amounts paid or incurred between related specified foreign corporations of a section 958(a) U.S. shareholder

between E&P measurement dates that would otherwise reduce the post-1986 earnings and profits as of December 31, 2017, of the specified foreign corporation that paid or incurred such amounts are disregarded for purposes of determining the post-1986 earnings and profits of both of the specified foreign corporations as of the E&P measurement date on December 31, 2017. *See* proposed § 1.965–4(f).

A number of comments requested that these rules be expanded to cover other transactions that could lead to double counting and double non-counting in the computation of post-1986 earnings and profits of a specified foreign corporation, including: (i) Deductible payments by a specified foreign corporation to a United States shareholder or to a partnership owned by the United States shareholder; and (ii) distributions by specified foreign corporations to a United States shareholder. The recommendations in these comments are not adopted. The Treasury Department and the IRS have determined that the concerns regarding issues of double counting and double non-counting in the computation of post-1986 earnings and profits of a specified foreign corporation relate to transactions occurring between specified foreign corporations rather than between a specified foreign corporation and a United States shareholder. *See* H.R. Rep. No. 115–466, at 619 (2017) (Conf. Rep.). Payments by a specified foreign corporation to a United States shareholder only affect the post-1986 earnings and profits of a single specified foreign corporation, and thus do not result in double counting in determining a United States shareholder's section 965(a) inclusion amount. Additionally, payments by a specified foreign corporation to a United States shareholder can have attendant U.S. tax effects that do not occur with respect to payments between specified foreign corporations and that would need to be considered if such payments were disregarded. For example, a distribution from a specified foreign corporation to its United States shareholder may permit the United States shareholder to take into account foreign tax credits under section 902 and avoid the limitation under section 965(g)(1) that would apply if the underlying foreign taxes had been deemed paid with respect to the United States shareholder's section 965(a) inclusion amount.

## VII. Foreign Tax Credits

### A. In General

Section 14301 of the Act repealed section 902 effective for taxable years of foreign corporations beginning after December 31, 2017, and taxable years of United States shareholders in which or with which such taxable years of foreign corporations end. The proposed regulations include, in addition to rules under the foreign tax credit specific rules of section 965, rules coordinating the provisions of section 965 with the foreign tax credit provisions as in effect before their repeal or amendment by the Act.

### B. Allowance of a Credit or Deduction for Foreign Income Taxes

#### 1. Scope

Section 965(g)(1) provides that no credit is allowed under section 901 for the applicable percentage of any taxes paid or accrued (or treated as paid or accrued) with respect to any amount for which a section 965(c) deduction amount is allowed. The Conference Report does not elaborate on the meaning of "taxes paid or accrued" or "taxes treated as paid or accrued." Comments requested clarification of the meaning of these terms and the scope of section 965(g). Under the proposed regulations, "taxes paid or accrued" refers to foreign income taxes paid or accrued directly by the taxpayer under section 901, and "taxes treated as paid or accrued" includes foreign income taxes deemed paid by the taxpayer under section 960, foreign income taxes allocated to an entity under § 1.901–2(f)(4), and a distributive share of taxes paid by a partnership.

#### 2. Applicable Percentage

The proposed regulations clarify that the term "applicable percentage" is determined with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year. As a result, if a section 958(a) U.S. shareholder has more than one section 958(a) U.S. shareholder inclusion year, the shareholder might have more than one applicable percentage as a result of differing aggregate foreign cash positions for those different section 958(a) U.S. shareholder inclusion years. *See* proposed § 1.965–5(d)(1). In addition, if a person is a domestic pass-through owner with respect to more than one domestic pass-through entity, each of which is a section 958(a) U.S. shareholder, the person might have a different applicable percentage with respect to each of those domestic pass-through entities because of differing

aggregate foreign cash positions of those entities, as well as a different applicable percentage with respect to the person's section 958(a) stock, if any. *See* proposed § 1.965–5(d)(2). Therefore, the amount of foreign tax credits disallowed under section 965(g) and proposed § 1.965–5(b) and (c) could differ depending on the section 958(a) U.S. shareholder inclusion year and section 958(a) U.S. shareholder to which the foreign income taxes relate.

#### 3. Foreign Income Taxes Paid or Accrued Directly by Taxpayer

For purposes of section 965(g)(1), foreign income taxes paid or accrued directly by a taxpayer include foreign income taxes imposed on the taxpayer on a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits. Section 965(g)(3) provides that no deduction is allowed for any tax for which a credit is not allowable under section 901 by reason of section 965(g)(1). The proposed regulations provide that neither a deduction (including under section 164) nor a credit under section 901 is allowed for the applicable percentage of any foreign income taxes paid or accrued with respect to any amount for which a section 965(c) deduction is allowed for a section 958(a) U.S. shareholder inclusion year. The proposed regulations also provide that neither a deduction nor a credit under section 901 is allowed for the applicable percentage of any foreign income taxes attributable to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits. *See* proposed § 1.965–5(b).

Accordingly, no deduction or credit is allowed for the applicable percentage of any withholding taxes imposed on a United States shareholder by the jurisdiction of residence of the distributing foreign corporation with respect to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits. Similarly, no deduction or credit is allowed for the applicable percentage of net basis taxes imposed on a United States citizen by the citizen's jurisdiction of residence upon receipt of a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits.

4. Foreign Income Taxes Treated as Paid or Accrued by Taxpayer

i. Section 960(a)(1)

For taxable years of foreign corporations beginning before January 1, 2018, and taxable years of United States shareholders in which or with which such taxable years of foreign corporations end, section 960(a)(1) provides that, if there is included under section 951(a) in the gross income of a domestic corporation any amount attributable to E&P of a foreign corporation which is a member of a qualified group (as defined in section 902(b)) with respect to the domestic corporation, then, except to the extent provided in regulations, section 902 shall be applied as if the amount so included were a dividend paid by such foreign corporation (determined by applying section 902(c) in accordance with section 904(d)(3)(B)). The proposed regulations provide that a credit under section 901 is not allowed for the applicable percentage of any foreign income taxes treated as paid or accrued under section 960(a)(1) (for taxable years of foreign corporations beginning before January 1, 2018, and to taxable years of United States persons in which or with which such taxable years of foreign corporations end) with respect to any amount for which a section 965(c) deduction is allowed for a section 958(a) U.S. shareholder inclusion year.

ii. Section 960(a)(3)

For a taxable year of a foreign corporation beginning before January 1, 2018, section 960(a)(3) provides that any portion of a distribution from such a foreign corporation received by a domestic corporation which is excluded from gross income under section 959(a) is treated by the domestic corporation as a dividend, solely for purposes of taking into account under section 902 any foreign taxes, on or with respect to the accumulated profits of such foreign corporation from which such distribution is made, which were not deemed paid by the domestic corporation for any prior taxable year.

Accordingly, the proposed regulations provide that the credit allowed under section 960(a)(3) is only with respect to foreign income taxes imposed on an upper-tier foreign corporation on distributions of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits from a lower-tier foreign corporation. *See* proposed § 1.965– 5(c)(1)(ii). Furthermore, section 960(a)(3) does not allow a credit for foreign income taxes attributable to the portion of a section 965(a) earnings

amount that was reduced pursuant to section 965(b) since such taxes were not imposed on a distribution of previously taxed E&P. Instead, because section 965(b) previously taxed earnings and profits are treated as having been included in a United States shareholder's income under section 951(a), foreign income taxes that would have been deemed paid with respect to section 965(b) previously taxed earnings and profits under section 960(a)(1) had such amounts actually been included in income are treated as having been deemed paid, with the result that no credit is allowed under section 960(a)(3) or any other provision of the Code for such taxes. *Id.*

The proposed regulations also provide that the disallowance under section 965(g) applies to foreign taxes deemed paid under section 960(a)(3) with respect to distributions of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits with respect to a section 958(a) U.S. shareholder inclusion year. For example, if a lower-tier foreign corporation distributes section 965(a) previously taxed earnings and profits to an upper-tier foreign corporation, and the upper-tier foreign corporation pays a foreign withholding tax with respect to the distribution of the section 965(a) previously taxed earnings and profits, such withholding tax would be creditable under section 960(a)(3) upon a distribution by the upper-tier foreign corporation to an eligible domestic corporation. However, the domestic corporation cannot claim a credit for the applicable percentage of such withholding tax. *See* proposed § 1.965– 5(c)(ii).

The Act replaces section 960(a)(3) with section 960(b). The proposed regulations only address distributions out of section 965(a) previously taxed earnings and profits and section 965(b) previously taxed earnings and profits in years before the effective date of section 960(b) in the Act. The Treasury Department and the IRS anticipate that future regulations will provide similar rules in connection with new section 960(b).

iii. Disallowance of Deduction

The proposed regulations clarify that no deduction, including under section 164, is allowed for the applicable percentage of any foreign income taxes treated as paid or accrued with respect to any amount for which a section 965(c) deduction is allowed. *See* proposed § 1.965–5(c)(2).

*C. Computation of Foreign Income Taxes Deemed Paid*

1. General Rule and Exception

Comments requested clarification regarding the determination of deemed paid taxes under section 960 in connection with section 965. One comment also requested specific changes to the application of sections 902 and 960 that would permit a taxpayer to reduce the post-1986 undistributed earnings of a DFIC by the amount of any deficit from an E&P deficit foreign corporation that reduced the section 965(a) earnings amount of the DFIC. In general, the proposed regulations confirm that sections 902 and 960 apply in the same manner for section 965(a) inclusions as for other inclusions under section 951(a)(1)(A), and therefore a DFIC's post-1986 undistributed earnings is not reduced by specified E&P deficits from an E&P deficit foreign corporation.

A comment noted that in determining the indirect credit with respect to a section 965(a) inclusion, the numerator of the section 902 fraction (as defined in proposed § 1.965–6(c)(1)) may be greater than the denominator given that the section 965(a) inclusion is determined on one of two measurement dates. For example, if the amount of the accumulated post-1986 deferred foreign income of a DFIC is greater on November 2, 2017, than such amount is on December 31, 2017, the section 965(a) earnings amount of the DFIC will be based on E&P as of the November 2, 2017 date. However, the denominator of the section 902 fraction, post-1986 undistributed earnings, is determined as of the close of the taxable year of the foreign corporation and without diminution by reason of earnings distributed or otherwise included in income during the year. Section 902(c)(1). Where the post-1986 undistributed earnings as of the close of the DFIC's U.S. taxable year is positive, but less than the section 965(a) earnings amount, this could result in a section 902 fraction greater than one.

The section 902 fraction cannot exceed one. *See H.H. Robertson Co.* v. *Commissioner of Internal Revenue,* 59 T.C. 53 (1972), *aff'd* 500 F.2d 1399 (3d Cir. 1974). For the avoidance of doubt, the proposed regulations clarify that when the denominator of the section 902 fraction is positive but less than the numerator of such fraction, the section 902 fraction is one. *See* proposed § 1.965–6(c)(2).

Comments also requested that taxpayers be deemed to pay taxes when the denominator of the section 902 fraction is zero or less than zero, either

by treating the DFIC as having post-1986 undistributed earnings equal to the DFIC's post-1986 foreign income taxes, or by determining the DFIC's post-1986 undistributed earnings as of the measurement date used to determine its section 965(a) earnings amount. This comment is not adopted. The Treasury Department and the IRS have determined that the Act was not intended to alter the application of sections 902 and 960 with respect to section 965. Thus, the proposed regulations confirm that when the denominator of the section 902 fraction is zero or less than zero, no taxes are deemed paid with respect to the section 965(a) inclusion. *See* proposed § 1.965–6(c)(2); *cf.* § 1.902–1(b)(4) (providing that no foreign income taxes are deemed paid in the case of a distribution out of current E&P that is treated as a ''nimble'' dividend under section 316(a)(2) when there is a deficit in accumulated E&P).

Section 965(b)(4)(B), which provides that a United States shareholder's pro rata share of the E&P of any E&P deficit foreign corporation is increased by the amount of the specified E&P deficit of such corporation taken into account by such shareholder by reason of allocation of such deficit to a DFIC, does not indicate whether that increase applies for purposes of determining the post-1986 undistributed earnings in the last taxable year of an E&P deficit foreign corporation that begins before January 1, 2018. The Treasury Department and the IRS have determined that section 965(b)(4)(B) should not apply for purposes of section 902 in that year. Therefore, the proposed regulations provide that post-1986 undistributed earnings of an E&P deficit foreign corporation are increased by reason of section 965(b)(4)(B) or proposed § 1.965–2(d)(2)(i) as of the first day of the foreign corporation's first taxable year following the E&P deficit foreign corporation's last taxable year that begins before January 1, 2018.

Comments also recommended that, to the extent that a hovering deficit is treated as reducing the post-1986 earnings and profits of a DFIC, those taxes should be added to the DFIC's post-1986 foreign income taxes in the inclusion year with respect to the DFIC. The Treasury Department and the IRS have determined that the existing rules adequately address this issue and decline to adopt this comment. The proposed regulations do not provide special rules for foreign income taxes that are related to hovering deficits; as a result, the rules in § 1.367(b)–7 continue to apply with respect to such foreign income taxes.

## 2. Taxes Deemed Paid in the Case of Certain Lower-Tier Corporations

A credit is allowable under section 960(a)(1) for taxes paid or accrued by a foreign corporation only if it is a member of a qualified group (as defined in section 902(b)) with respect to the domestic corporation. Section 902(b)(2) states that the term ''qualified group'' does not include any foreign corporation below the third tier in the chain unless the foreign corporation is a CFC and the domestic corporation is a United States shareholder with respect to it. Comments requested clarification as to whether a 10-percent corporation treated as a CFC under section 965(e)(2) for purposes of sections 951 and 961 is treated as a CFC for purposes of section 902(b).

Section 965(e)(2) applies to treat a 10-percent corporation as a CFC solely for purposes of taking into account the subpart F income of such corporation under section 965(a) and for purposes of determining the United States shareholder's pro rata share of the section 965(a) inclusion amount. The proposed regulations also treat a 10-percent corporation as a CFC for other limited purposes. *See* Part I.A of this Explanation of Provisions. However, section 965 does not modify the computation of foreign income taxes deemed paid under sections 902 and 960, or for purposes of any other Code section. Therefore, the proposed regulations clarify that a United States shareholder is not entitled to an indirect credit with respect to a 10-percent corporation that is below the third tier in a chain of foreign corporations of the United States shareholder. *See* proposed § 1.965–1(d).

### D. Allocation and Apportionment of Expenses

The generally applicable rules of sections 861 through 865 and the regulations thereunder for allocating and apportioning deductions to separate categories of income described in section 904(d)(1) and § 1.904–4(m) apply for purposes of determining the foreign tax credits allowed by reason of a section 965(a) inclusion. For purposes of allocating and apportioning any deductible expense, any tax-exempt asset (and any income from such asset) is not taken into account. *See* section 864(e)(3). A similar rule applies in the case of the portion of any dividend (other than a qualifying dividend as defined in section 243(b)) equal to the deduction allowable under section 243 or 245(a) with respect to such dividend and in the case of a like portion of any stock the dividends on which would be

so deductible and would not be qualifying dividends (as so defined). The proposed regulations confirm that the allowance of a deduction under section 965(c) with respect to the section 965(a) inclusion does not result in any portion of the section 965(a) inclusion being treated as exempt income. In addition, the assets to which the section 965(a) inclusion relates are not treated as exempt assets under section 864(e)(3) or § 1.861–8T(d).

The proposed regulations also confirm that section 965(a) previously taxed earnings and profits and 965(b) previously taxed earnings and profits, like all previously taxed E&P, do not give rise to exempt treatment under section 864(e)(3). *See* proposed § 1.965–6(d).

Under section 864(e)(4), for purposes of allocating and apportioning expenses on the basis of assets, the adjusted basis in stock of any nonaffiliated 10-percent owned corporation is increased by the E&P accumulated during the period the taxpayer held the stock, or reduced (but not below zero) by deficits in E&P of the corporation attributable to the stock for such period. The purpose for this adjustment is to better approximate the value of such stock. *See* Joint Committee on Tax'n, General Explanation of the Tax Reform Act of 1986 (Pub. L. 99–514) (May 4, 1987), JCS–10–87, at p.87 (adjustment to E&P ''takes account of some changes in value attributable to taxpayer's equity interests in such corporations'').

In order to avoid double counting of previously taxed E&P and the basis adjustments under section 961, section 864(e)(4)(D) provides that proper adjustments must be made to the E&P of a corporation to account for previously taxed E&P and reflected in the adjusted basis of the stock. *See* Joint Committee on Tax'n, General Explanation of the Tax Reform Act of 1986 (Pub. L. 99–514) (May 4, 1987), JCS–10–87, at p.91. Section 1.861–12T(c)(2)(i)(B) provides that a taxpayer's basis in stock of a CFC shall not include any amount included in basis under section 961. At the same time, all E&P (including previously taxed E&P) generally increase the taxpayer's adjusted basis in stock of a CFC.

As a result of the enactment of section 965, the Treasury Department and the IRS recognize that the application of section 965(b)(4)(A) and (B) may warrant the issuance of special rules for the determination of adjusted basis. Furthermore, a different rule may be needed if a taxpayer has made an election under proposed § 1.965–2(f)(2) to adjust its basis to reflect the use of a specified E&P deficit. The Treasury

Department and the IRS request comments on what rules may be appropriate, including whether the rules under § 1.861–12(c)(2) should be modified.

*E. Application of Section 904*

The proposed regulations do not address the assignment of a section 965(a) inclusion and the related taxes to a separate category of income. The Treasury Department and the IRS have determined that the application of section 904 is clear with respect to section 951(a) inclusions regardless of whether the DFIC is a CFC or a 10-percent corporation. Furthermore, the Treasury Department and the IRS have determined that no clarification is necessary with respect to § 1.904–6 for purposes of relating the creditable portion of the foreign income taxes with respect to a section 965(a) inclusion to a separate category of income. For example, withholding tax imposed on a distribution of section 965(a) previously taxed earnings and profits and section 965(b) previously taxed earnings and profits will be related to the separate category of income to which the original section 965(a) inclusion was assigned. *See* § 1.904–6(b)(2) and (c), *Example 7.*

The Treasury Department and the IRS request comments on whether more guidance is necessary with respect to the assignment of the section 965(a) inclusion and the related taxes to a separate category or categories of income.

In addition, comments are requested on whether additional rules are needed for determining the amount of the increase in the section 904 limitation with respect to distributions of section 965(a) previously taxed earnings and profits and section 965(b) previously taxed earnings and profits, taking into account the section 965(c) deduction and the disallowed foreign taxes under section 965(g). *See* section 960(b) (effective with respect to taxable years of foreign corporations beginning before January 1, 2018, and to taxable years of United States shareholders with or within which such taxable years of those foreign corporations end) and section 960(c) for later years.

## VIII. Election, Payment, and Other Special Rules

*A. In General*

Section 965 provides certain elections that taxpayers can make with respect to the application of section 965. *See* Parts II.K through N of the Background section of this preamble. As discussed in Part II.B.10 of this Explanation of Provisions section and in section 3.05(b)

of Notice 2018–26, if the United States shareholder of a DFIC is a domestic pass-through entity and owns section 958(a) stock of the DFIC, then each domestic pass-through owner of the domestic pass-through entity will take into account its share of the section 965(a) inclusion amount with respect to the section 958(a) stock of the DFIC of the domestic pass-through entity and the section 965(c) deduction amount with respect to such amount, regardless of whether the domestic pass-through owner is itself also a United States shareholder with respect to the DFIC. The elections described in Parts II.K through N of the Background section of this preamble under sections 965(h) (the "section 965(h) election"), 965(m) (the "section 965(m) election"), and section 965(n) (the "section 965(n) election") are available to a United States shareholder of a DFIC under the terms of section 965. However, because a domestic pass-through owner will take into account its share of a section 965(a) inclusion amount (and the related section 965(c) deduction amount) whether or not it is itself a United States shareholder, the proposed regulations provide, consistent with section 3.05(b) of Notice 2018–26, that a domestic pass-through owner may make the section 965(h) election, the section 965(m) election, and the section 965(n) election.

*B. Net Tax Liability Under Section 965*

The proposed regulations define a new term, "total net tax liability under section 965," which reflects the definition of net tax liability under section 965 in section 965(h)(6) with respect to a person as if the person were a United States shareholder of all DFICs with respect to which it has section 965(a) inclusions, consistent with section 3.05(c) of Notice 2018–26. *See* proposed § 1.965–7(g)(10). However, the proposed regulations provide that the dividends excluded pursuant to the second prong of the computation (the "without" prong) include dividends received directly or through a chain of ownership described in section 958(a). *See* proposed § 1.965–7(g)(10)(i)(B)(*2*).

For purposes of determining a person's total net tax liability under section 965, the proposed regulations also clarify the computation of the foreign tax credit for purposes of the amount described in section 965(h)(6)(A)(ii)(II) and proposed § 1.965–7(g)(10)(i)(B) (the net income tax liability determined without regard to section 965 and dividends from DFICs). Specifically, the proposed regulations provide that the foreign tax credits disregarded in determining net income tax determined under section

965(h)(6)(A)(ii)(II) and proposed § 1.965–7(g)(10)(i)(B) includes the credits for foreign income taxes deemed paid with respect to section 965(a) inclusions or foreign income taxes deemed paid with respect to a dividend, including a distribution that would have been treated as a dividend in the absence of section 965, as well as the credits for foreign income taxes imposed on distributions of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits made in the taxable year in which the person includes a section 965(a) inclusion in income.

*C. Section 965(h) Election*

The proposed regulations provide that the section 965(h) election may be made by any person with a section 965(h) net tax liability (which includes a section 958(a) U.S. shareholder or a domestic pass-through owner in a domestic pass-through entity that is a section 958(a) U.S. shareholder, but not a domestic pass-through entity itself). Under the proposed regulations, the section 965(h) election may be revoked only by paying the full amount of the unpaid section 965(h) net tax liability. *See* proposed § 1.965–7(b)(1). The proposed regulations also provide that a section 965(h) election is made with respect to the section 965(h) net tax liability of a person, which is the person's total net tax liability under section 965 reduced by the aggregate amount of the person's section 965(i) net tax liabilities, if any, with respect to which elections under section 965(i) are effective. *See* proposed § 1.965–7(g)(4).

1. Underpayment of an Installment

As noted in Part II.K of the Background section of this preamble, section 965(h)(3) provides that an addition to tax for failure to timely pay an installment required under section 965(h) is an acceleration event with respect to the unpaid portion of the remaining installments. Section 965(h)(4) provides that if a taxpayer has made an election under section 965(h), and subsequently a deficiency is assessed with respect to the taxpayer's net tax liability for purposes of section 965(h), then the amount of the deficiency will be prorated among the installments.

Comments requested clarification regarding whether the underpayment of an installment (including payment of the first installment that reflects a section 965(h) net tax liability lower than what is calculated on a tax return filed by the extended due date) would constitute an acceleration event under section 965(h)(3) or would result in the

proration under section 965(h)(4) of the difference between the section 965(h) net tax liability initially calculated and the subsequently determined section 965(h) net tax liability. The proposed regulations provide that if a person is assessed a deficiency with respect to the person's section 965(h) net tax liability, or the person timely files a return increasing the amount of its section 965(h) net tax liability above the amount taken into account in the payment of the first installment, or the person files an amended return increasing the amount of its section 965(h) net tax liability, the deficiency or additional amount will be prorated among the installments under section 965(h)(4). This proration rule does not apply if the deficiency or additional liability is due to negligence, intentional disregard of rules and regulations, or fraud with intent to evade tax, in which case, the proposed regulations clarify that the deficiency is payable on notice and demand. *See* proposed § 1.965–7(b)(1)(ii)(C).

A comment also requested guidance regarding whether an underpayment of the first installment would prevent a taxpayer from making an election under section 965(h). The proposed regulations provide that if a taxpayer makes a section 965(h) election and does not pay the correct amount for the first installment, and if the rule in the preceding paragraph applies to prorate the additional liability, the remaining installment payments due pursuant to the section 965(h) election will not be accelerated, and the taxpayer's section 965(h) election will not be affected. *See* proposed § 1.965–7(b)(1)(ii).

2. Acceleration Events

The proposed regulations provide that if a taxpayer makes a section 965(h) election, and subsequently an acceleration event described in section 965(h)(3) and proposed § 1.965–7(b)(3)(ii) occurs, the unpaid portion of all remaining installments of the taxpayer's section 965(h) net tax liability generally will be accelerated and due on the date of the event.

Proposed § 1.965–7(b)(3)(ii) lists the events treated as acceleration events for this purpose. As noted in Section II.K of the Background section of this preamble, acceleration events include an addition to tax for failure to timely pay an installment required under section 965(h), a liquidation or sale of substantially all the assets of the taxpayer (including in a title 11 or similar case), a cessation of business by the taxpayer, or any similar circumstance. The proposed regulations identify circumstances similar to those referenced in section 965(h)(3).

Proposed § 1.965–7(b)(3)(ii)(B) provides that, in addition to a liquidation or sale of substantially all of the assets of a taxpayer, any exchange or other disposition of substantially all of the assets of a taxpayer constitutes an acceleration event. In addition, proposed § 1.965–7(b)(3)(ii)(D) provides that any event that results in a person no longer being a United States person (including, for example, a resident alien becoming a nonresident alien) is an acceleration event. Proposed § 1.965–7(b)(3)(ii)(E) provides that a person that was not a member of any consolidated group becoming a member of a consolidated group is treated as an acceleration event with respect to the person. Proposed § 1.965–7(b)(3)(ii)(F) provides that when a consolidated group ceases to exist, or otherwise no longer files a consolidated return, that constitutes an acceleration event.

A comment requested guidance specifying that the liquidation of a member of a consolidated group, other than the consolidated parent, would not constitute an acceleration event for purposes of section 965(h)(3). Because proposed § 1.965–8(e)(1) provides that all of the members of a consolidated group are treated as a single person for purposes of the section 965(h) election, a liquidation of one member of the group would not constitute an acceleration event for purposes of section 965(h)(3) and proposed § 1.965–7(b).

The proposed regulations provide an exception (the "eligible section 965(h) transferee exception") pursuant to which the acceleration provisions of section 965(h)(3) and proposed § 1.965–7(b)(3)(ii) do not apply (such that the unpaid portion of all remaining installments will not be due as of the date specified therein) to a person with respect to which an acceleration event occurs if the requirements described in proposed § 1.965–7(b)(3)(iii)(A)(*1*) (describing the acceleration events eligible for this exception) and (*2*) (setting forth the terms of a required transfer agreement) are satisfied.

Generally, acceleration events eligible for this exception include (i) liquidations, sales, exchanges, or other dispositions of substantially all of the assets of a person (with the exception of, in the case of an individual, by reason of death, and with special rules applying in the case of a consolidated group), (ii) a corporation that was not a member of any consolidated group becoming a member of a consolidated group, and (iii) a consolidated group ceasing to exist by reason of acquisition and immediately joining another consolidated group. In each case, the

exception applies only to the extent that the person with respect to which an acceleration event occurs (an "eligible section 965(h) transferor") and an eligible section 965(h) transferee (generally, a United States person that is not a domestic pass-through entity and that satisfies certain requirements set forth in the proposed regulations) enter into a transfer agreement described in proposed § 1.965–7(b)(3)(iii)(B).

Generally, a transfer agreement must include various acknowledgments, representations, and information, including an agreement by the eligible section 965(h) transferee to assume the liability of the eligible section 965(h) transferor for any unpaid installment payments of the eligible section 965(h) transferor under section 965(h); an agreement that the eligible section 965(h) transferee agrees to comply with all of the conditions and requirements of section 965(h) and proposed § 1.965–7(b), as well as any other applicable requirements in the section 965 regulations; a representation that the eligible section 965(h) transferee is able to make the remaining payments required under section 965(h) and proposed § 1.965–7(b) with respect to the section 965(h) net tax liability being assumed; and, if the eligible section 965(h) transferor continues to exist immediately after the acceleration event, an acknowledgement that the eligible section 965(h) transferor and any successor to the eligible section 965(h) transferor will remain jointly and severally liable for any unpaid installment payments of the eligible section 965(h) transferor under section 965(h), including, if applicable, under § 1.1502–6. *See* proposed § 1.965–7(b)(3)(iii)(B)(*4*). The proposed regulations also provide procedural rules regarding the completion and submission of a transfer agreement, as well as rules relating to the Commissioner's review of such agreements. *See generally* proposed § 1.965–7(b)(3)(iii)(B) and (C).

3. Election Mechanics

Section 965(h)(5) provides that a section 965(h) election must be made no later than the due date (taking into account extensions, if any) for the return for the taxable year in which the taxpayer has the section 965(a) inclusions to which the section 965(h) net tax liability is attributable and must be made in the manner prescribed by the Secretary. A comment requested that taxpayers with section 965(a) inclusions be treated as having made a section 965(h) election by default. The Treasury Department and the IRS decline to adopt this comment because the statute

provides for an affirmative election, and the proposed regulations provide an extended period in which to make it. Under proposed § 1.965–7(b)(2)(ii), a section 965(h) election must be made no later than the due date taking into account extensions, if any, or any additional time that would have been granted if the person had made an extension request, without regard to whether an extension request was made. The election is made by attaching a statement, signed under penalties of perjury, to the taxpayer's return for the relevant taxable year including the taxpayer's name, taxpayer identification number, total net tax liability under section 965, section 965(h) net tax liability, section 965(i) net tax liability with respect to which a section 965(i) election is effective (if applicable), and anticipated amounts of each installment. Proposed § 1.965–7(b)(2)(iii).

### 4. Application to Non-Chapter 1 Taxes

Comments requested that the Treasury Department and the IRS provide that tax imposed under section 1411 on section 965(a) inclusions be payable in installments under section 965(h). However, because the definition of net income tax in section 965(h)(6)(B) refers to credits allowed under subparts A, B, and D of part IV of subchapter A of chapter 1 of subtitle A of the Code, the Treasury Department and the IRS have determined that section 965(h) applies only with respect to tax imposed under subchapter A of chapter 1 of subtitle A of the Code. Accordingly, elections may not be made under section 965(h) to pay tax imposed under other subchapters or chapters (such as, for example, the taxes imposed under sections 1411 and 4940) in eight installments. *See also* sections 55(a)(2) and 26(b)(2) (excluding the minimum tax under section 55 from the definition of regular tax).

### D. Section 965(i) Election

As discussed in Part II.L of the Background section of this preamble, section 965(i) provides that a shareholder of an S corporation that is itself a United States shareholder of a DFIC may elect to defer payment of its net tax liability under section 965 with respect to such S corporation until the shareholder's taxable year which includes a triggering event with respect to such liability. The proposed regulations provide guidance regarding how an S corporation shareholder can make a section 965(i) election and, consistent with section 3.05(b) of Notice 2018–26, provide that any shareholder of an S corporation that is a United

States shareholder of a DFIC, whether it owns section 958(a) stock of such DFIC or not, may make the election. However, if the S corporation is not a United States shareholder with respect to a DFIC, the shareholders of that S corporation may not make a section 965(i) election for their shares of the section 965(a) inclusion or section 965(c) deduction with respect to that DFIC. *See* proposed § 1.965–7(c) and (g)(6).

Furthermore, the proposed regulations implement the statutory reporting requirements in section 965(i)(7) until the section 965(i) net tax liability is fully assessed. *See* proposed § 1.965–7(c)(6).

### 1. Election Mechanics

The proposed regulations provide procedural rules regarding how an S corporation shareholder can make the section 965(i) election. A section 965(i) election must be made no later than the due date (taking into account extensions, if any) for the S corporation shareholder's return for the taxable year that includes the last day of the taxable year of the S corporation in which the S corporation has a section 965(a) inclusion to which the shareholder's section 965(i) net tax liability is attributable by attaching a statement, signed under penalties of perjury, to its return for that year. The statement must include the shareholder's name, taxpayer identification number, the name and taxpayer identification number of the S corporation with respect to which the election is made, the amount described in § 1.965–7(g)(10)(i)(A) as modified by § 1.965–1(f)–7(g)(6) for purposes of determining the section 965(i) net tax liability with respect to the S corporation, the amount described in § 1.965–7(g)(10)(i)(B), and the section 965(i) net tax liability with respect to the S corporation. *See* proposed § 1.965–7(c)(2)(ii) and (iii).

### 2. Triggering Events

The proposed regulations also provide rules concerning triggering events described in section 965(i)(2). An event will not be treated as a triggering event (such that a shareholder's section 965(i) net tax liability with respect to an S corporation will not be assessed as an addition to tax for the shareholder's taxable year that includes the triggering event) if the triggering event is the transfer of any share of stock of the S corporation by the shareholder (including by reason of death or otherwise), and the shareholder (an "eligible section 965(i) transferor") and an eligible section 965(i) transferee (a United States person that is not a

domestic pass-through entity) enter into a transfer agreement. *See generally* proposed § 1.965–7(c)(3)(iv); *see also* § 1.965–7(c)(4)(iv)(B)(4) (setting forth the required terms of a transfer agreement).

### 3. Consent for Section 965(h) Election in the Event of a Triggering Event

The proposed regulations also provide rules for an S corporation shareholder to obtain the consent of the Secretary to make a section 965(h) election in the event of a triggering event that is a liquidation, sale, exchange, or other disposition of substantially all of the assets of the S corporation (including in a title 11 or similar case), a cessation of business by the S corporation, or the S corporation ceasing to exist. *See* proposed § 1.965–7(c)(3)(v)(D). To obtain consent, the shareholder intending to make the section 965(h) election must file the agreement described in proposed § 1.965–7(c)(3)(v)(D)(4) and must provide, with its timely-filed return for the taxable year during which the triggering event occurs (taking into account extensions, if any), the election statement for the section 965(h) election. *See* proposed § 1.965–7(c)(3)(v)(D)(2). For the required terms of the agreement, see generally proposed § 1.965–7(c)(3)(v)(D).

A comment requested guidance specifying that if an S corporation shareholder makes a section 965(i) election, the S corporation's income inclusion is not deferred, and the S corporation's AAA should be increased by the gross amount (and not the net amount after the application of the section 965(c) deduction). Because, by its terms, a section 965(i) election affects only the timing of assessment and payment of an S corporation shareholder's section 965(a) net tax liability and not the timing or amount of the section 965(a) inclusion of either the S corporation or the S corporation shareholder, the Treasury Department and the IRS have determined that it is not necessary that the proposed regulations provide this additional guidance. See Part V.D of this Explanation of Provisions section for a discussion of the consequences of section 965(a) inclusions and section 965(c) deductions for the AAA of an S corporation.

### E. Section 965(m) Election

The proposed regulations provide procedural rules regarding how a REIT can make the section 965(m) election. A REIT makes a section 965(m) election by attaching a statement, signed under penalties of perjury, to its return for the taxable year in which it would

otherwise be required to include REIT section 965 amounts (as defined in proposed § 1.965–7(g)(2)) in gross income. The statement must include the REIT's name, taxpayer identification number, REIT section 965 amounts, and anticipated amounts of each portion of the REIT section 965 amounts to be included in each year. Proposed § 1.965–7(d)(3)(ii) and (iii). With respect to a REIT that has made the section 965(m) election, adjustments described in proposed § 1.965–2 to the E&P of any specified foreign corporations held by the REIT, and the basis of stock of a specified foreign corporation and other applicable property held by a REIT, are made as of the close of each year in which an installment is included in the gross income of the REIT. A comment requested that RICs also be allowed to make a similar election to include any amount required to be taken into account under section 951(a)(1) by reason of section 965 in eight installments. This comment is not adopted because the statute provides the election solely for REITs.

For the reasons discussed in Part VIII.A of this Explanation of Provisions section, the proposed regulations also provide that no section 965(a) inclusions of a REIT are taken into account as gross income for purposes of section 856(c)(2) and (3), regardless of whether the REIT is a United States shareholder with respect to the DFIC with respect to which it has a section 965(a) inclusion. See section 965(m)(1)(A) and proposed § 1.965–7(d)(6).

*F. Section 965(n) Election*

As discussed in Part II.N of the Background section of this preamble, section 965(n) provides that a United States shareholder of a DFIC may elect to exclude the amount described in section 965(n)(2) from the determination of the amount of the NOL deduction under section 172 of such shareholder for such taxable year or the amount of taxable income for such taxable year which may be reduced by NOL carryovers or carrybacks to such taxable year under section 172. The proposed regulations provide procedural rules regarding how a taxpayer may make the section 965(n) election, clarify the effect of the election, and provide that the election is irrevocable.

1. Scope of Election

As discussed in section 3.05(d) of Notice 2018–26, comments have requested clarification regarding the scope of the section 965(n) election as a result of the use of the term "deduction" in section 965(n)(1)(A). An

NOL "deduction" for a taxable year generally refers to the amount of an NOL carried to such taxable year from a prior or subsequent year rather than the NOL arising from such year. *Compare* section 172(a) and (c). However, interpreting "deduction" in section 965(n)(1)(A) to refer to carryovers or carrybacks to the taxable year (and not the NOL for the taxable year) would cause that paragraph to be duplicative of section 965(n)(1)(B), which already provides that amounts described in section 965(n)(2) are disregarded for purposes of applying NOL carryovers or carrybacks to such taxable year under section 172. The Treasury Department and the IRS have determined that section 965(n)(1)(A) was intended to apply to a different set of losses than those to which section 965(n)(1)(B) applies. A comment also requested clarification regarding whether taxpayers could make the section 965(n) election for only a portion of their NOLs. The Treasury Department and the IRS have determined that the election was intended to apply to the NOL amount in its entirety. Accordingly, the proposed regulations provide that if a section 965(n) election is made for a taxable year, the election applies to NOLs for the taxable year for which the election is made as well as the NOL carryovers or carrybacks to such taxable year, each in their entirety. *See* proposed § 1.965–7(e)(1)(iii).

A comment also requested clarification regarding whether consolidated groups could make the section 965(n) election. The proposed regulations clarify that the section 965(n) election also applies to all components of the consolidated NOL deduction (as defined in § 1.1502–21(a)). *Id.*

2. Election Mechanics

A person makes a section 965(n) election by attaching a statement, signed under penalties of perjury, to its return for the taxable year (taking into account extensions, if any) to which the election applies. Proposed § 1.965–7(e)(2)(ii). The statement must include the person's name, taxpayer identification number, the amounts described in section 965(n)(2)(A) and proposed § 1.965–7(e)(1)(ii)(A) and section 965(n)(2)(B) and proposed § 1.965–7(e)(1)(ii)(B), and the sum thereof. Proposed § 1.965–7(e)(2)(iii).

*G. Election To Use Alternative Method for Calculation of Post-1986 Earnings and Profits*

Under section 965(a) and (d)(3), a United States shareholder of a specified

foreign corporation must determine its accumulated post-1986 deferred foreign income as of either of the two E&P measurement dates (November 2, 2017, and December 31, 2017) by determining its post-1986 earnings and profits as of each of those dates. As discussed in section 3.02 of Notice 2018–13, it may be impractical for some taxpayers to determine the post-1986 earnings and profits of a specified foreign corporation as of the November 2, 2017, E&P measurement date because it does not fall on the last day of a month. Therefore, the proposed regulations provide that an election may be made to determine the post-1986 earnings and profits of a specified foreign corporation using the alternative method. *See* proposed § 1.965–7(f).

Under the alternative method, for a specified foreign corporation other than a specified foreign corporation with a 52–53-week taxable year (as described in § 1.441–2(a)(1)), the amount of its post-1986 earnings and profits as of the November 2, 2107, E&P measurement date equals the sum of (1) the specified foreign corporation's post-1986 earnings and profits as of October 31, 2017, and (2) the specified foreign corporation's "annualized earnings and profits amount." For this purpose, the term "annualized earnings and profits amount" means the amount equal to the product of two (the number of days after October 31, 2017, and on or before the measurement date on November 2, 2017) and the "daily earnings amount" of the specified foreign corporation. The "daily earnings amount" of the specified foreign corporation is the post-1986 earnings and profits (including a deficit) of the specified foreign corporation as of the close of October 31, 2017, that were accumulated during the specified foreign corporation's taxable year that includes October 31, 2017, divided by the number of days that have elapsed in that taxable year as of the close of October 31, 2017. A specified foreign corporation that does not have a 52–53-week taxable year may not use the alternative method to determine its post-1986 earnings and profits as of the December 31, 2017, measurement date. *See* proposed § 1.965–7(f)(1), (3), and (4).

For a specified foreign corporation that has a 52–53-week taxable year, an election to use the alternative method applies to both measurement dates, in each case determining the post-1986 earnings and profits consistent with the method described in the previous paragraph as of the closest end of a fiscal month to each measurement date. For example, if the closest end of a fiscal month of a specified foreign

corporation that has a 52–53-week taxable year occurs after a measurement date, the annualized earnings amount is subtracted from (rather than added to) the post-1986 earnings and profits of the specified foreign corporation as of the fiscal month end. *See* proposed § 1.965–7(f)(2), (3), and (4). See proposed § 1.965–7(f)(5) for details on how to make the election.

A comment requested that individuals be permitted to calculate post-1986 earnings and profits by prorating E&P for the November 2, 2017, measurement date based on year-end numbers. This comment is not adopted. Allowing individuals to use year-end numbers and prorate to November 2, 2017, would allow taxpayers to base their post-1986 earnings and profits for both dates on the E&P as of a single date, contrary to the intent of the two E&P measurement dates in the statute.

## IX. Affiliated Groups (Including Consolidated Groups)

Proposed § 1.965–8 provides rules for applying section 965 and the section 965 regulations to members of an affiliated group (as defined in section 1504(a)), including members of a consolidated group (as defined in § 1.1502–1(h)).

### A. Treatment of Consolidated Groups

#### 1. Treated as a Single United States Shareholder

The proposed regulations provide that all members of a consolidated group that are section 958(a) U.S. shareholders of a specified foreign corporation are treated as a single section 958(a) U.S. shareholder for purposes of section 965(b) and proposed § 1.965–1(b)(2), and that all members of a consolidated group are treated as a single person for purposes of paragraphs (h), (k), and (n) of section 965 and proposed § 1.965–7. *See* proposed § 1.965–8(e). Thus, for example, the determination of whether the sale of assets by a member of a consolidated group to a non-member would constitute a sale of substantially all of the assets of the taxpayer for purposes of causing an acceleration event under section 965(h)(3) and proposed § 1.965–7(b)(3) takes into account all of the assets of the consolidated group, which for purposes of this determination, includes all of the assets of each consolidated group member (but generally does not include the stock of another consolidated group member).

This rule does not apply to treat all members of a consolidated group as a single section 958(a) U.S. shareholder or single person, as applicable, for

purposes of determining the amount of any member's inclusion under section 951 (including a section 965(a) inclusion), any member's section 965(c) deduction, or any purpose other than those specifically listed in proposed § 1.965–8(e)(1). The proposed regulations also clarify that for purposes of computing the foreign income taxes deemed paid with respect to a section 965(a) inclusion, the foreign income taxes deemed paid must be computed on a separate member basis. Thus, a domestic corporation is not deemed to pay any foreign income taxes with respect to a section 965(a) inclusion from a foreign corporation that is not a member of a qualified group with respect to the domestic corporation, even if other members of the domestic corporation's consolidated group qualify to compute deemed paid credits with respect to that foreign corporation. Sections 960(a)(3), 902(b).

#### 2. Aggregate Foreign Cash Position of a Member of a Consolidated Group

For purposes of computing a member's section 965(c) deduction, the member's aggregate foreign cash position generally is determined by reference to its pro rata share of the consolidated group's aggregate foreign cash position as a whole. Specifically, the proposed regulations provide that the aggregate foreign cash position with respect to a section 958(a) U.S. shareholder that is a member of a consolidated group equals the aggregate section 965(a) inclusion amount of the section 958(a) U.S. shareholder multiplied by the group cash ratio of the consolidated group. For this purpose, the term "group cash ratio" means the ratio of the consolidated group aggregate foreign cash position (generally, the sum of the aggregate foreign cash positions of the members of a consolidated group) to the sum of the aggregate section 965(a) inclusion amounts of all members of the consolidated group. *See* proposed § 1.965–8(e)(3), (f)(4), and (f)(8).

#### 3. Adjustments to E&P and Stock Basis

As described in section 3.04 of Notice 2018–07, the proposed regulations indicate that the regulations under § 1.1502–32 provide for adjustments to the basis of the stock of each member of the consolidated group. *See* proposed § 1.965–8(d)(2).

### B. Affiliated Groups

The proposed regulations include guidance regarding the application of section 965(b)(5) to determine the section 965(a) inclusion amounts of a member of an affiliated group. Proposed § 1.965–8(b) applies when, after the

application of the rules in proposed § 1.965–1(b)(2) (which generally implements the operative rule of section 965(b)(1)), a section 958(a) U.S. shareholder is both an E&P net surplus shareholder and a member of an affiliated group in which not all members are members of the same consolidated group. When proposed § 1.965–8(b) applies, the U.S. dollar amount of a section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of a DFIC is reduced (but not below zero) by the DFIC's allocable share of the section 958(a) U.S. shareholder's applicable share of the affiliated group's aggregate unused E&P deficit. The proposed regulations include rules and definitions for determining, respectively, a DFIC's allocable share and a section 958(a) U.S. shareholder's applicable share of an affiliated group's aggregate unused E&P deficit. *See* proposed § 1.965–8(f)(2) and (3).

For purposes of this rule, if some but not all members of an affiliated group are properly treated as members of a consolidated group, then the consolidated group is treated as a single member of the affiliated group. Proposed § 1.965–8(b)(2).

### C. Source of Aggregate Unused E&P Deficits

Proposed § 1.965–8(c) provides guidance for designating the source of an aggregate unused E&P deficit of an affiliated group that is not a consolidated group when, generally, the amount of the affiliated group's aggregate unused E&P deficit exceeds the aggregate section 965(a) inclusion amounts of E&P net surplus shareholders of the affiliated group determined without regard to the application of section 965(b)(5) and proposed § 1.965–8(b)). Generally, when proposed § 1.965–8(c) applies, each member of an affiliated group that is an E&P net deficit shareholder must designate by maintaining in its books and records a statement (identical to the statement maintained by all other such members of the affiliated group) setting forth the portion of its excess aggregate foreign E&P deficit that is taken into account by one or more net E&P net surplus shareholders of the affiliated group.

If some but not all members of an affiliated group are properly treated as members of a consolidated group, then the consolidated group is treated as a single member of the affiliated group for purposes of this rule. Proposed § 1.965–8(c)(2).

## X. Application of Section 986(c)

The proposed regulations provide that, for purposes of section 986(c), foreign currency gain or loss with respect to distributions of section 965(a) previously taxed earnings and profits is determined based on movements in the exchange rate between December 31, 2017, and the date on which such E&P are actually distributed. *See* proposed § 1.986(c)–1(a).

Consistent with section 3.05 of Notice 2018–07, the proposed regulations also provide that any gain or loss recognized under section 986(c) with respect to distributions of section 965(a) previously taxed earnings and profits is reduced in the same proportion as the reduction by a section 965(c) deduction amount of the section 965(a) inclusion amount that gave rise to such section 965(a) previously taxed earnings and profits, consistent with the statute and other indicia of congressional intent. *See* H.R. Rep. No. 115–466, at 620 (2017) (Conf. Rep.), and proposed § 1.986(c)–1(b).

Because section 965(b) previously taxed earnings and profits are not included in gross income under section 951(a)(1), the Treasury Department and the IRS have determined it would not be appropriate to apply section 986(c) with respect to distributions of those E&P. Therefore, proposed § 1.986(c)–1(c) provides that section 986(c) does not apply with respect to distributions of section 965(b) previously taxed earnings and profits.

## XI. Other Comments

### A. Repeal of Section 958(b)(4)

Effective for the last taxable year of foreign corporations beginning before January 1, 2018, and each subsequent year, and for the taxable years of United States shareholders in which or with which such taxable years of the foreign corporations end, the Act repealed section 958(b)(4). Before repeal, section 958(b)(4) provided that subparagraphs (A), (B), and (C) of section 318(a)(3) were not to be applied to consider a United States person to own stock which is owned by a person who is not a United States person. As discussed in Part III.B of the Background section of this preamble, the subparagraphs of section 318(a)(3) generally attribute stock owned by a person to a partnership, estate, trust, or corporation in which such person has an interest (so-called "downward" attribution).

Multiple commenters requested guidance be issued addressing the repeal of section 958(b)(4). This issue is beyond the scope of the proposed regulations.

However, consistent with section 5.02 of Notice 2018–13, the instructions to Form 5471 will be amended to provide an exception from certain filing requirements for a United States person that is a United States shareholder with respect to a CFC or other specified foreign corporation if no United States shareholder (including the United States person) owns, within the meaning of section 958(a), stock of the CFC or other specified foreign corporation, and the foreign corporation is a CFC or specified foreign corporation solely because a United States person is considered to own the stock of the CFC or other specified foreign corporation owned by a foreign person under section 318(a)(3). Consistent with section 6 of Notice 2018–13 and section 7 of Notice 2018–26, taxpayers may rely on this exception with respect to the last taxable year of a foreign corporation beginning before January 1, 2018, and each subsequent year of the foreign corporation, and for the taxable years of a United States shareholder in which or with which these taxable years of the foreign corporation end.

### B. Reporting and Filing

#### 1. Section 965 Reporting and Filing Requirements

The proposed regulations provide guidance regarding filing and reporting with respect to section 965(h) elections, section 965(i) elections, section 965(m) elections, and section 965(n) elections, as well as the election to use the alternative method to calculate post–1986 earnings and profits. In addition, the relevant forms and instructions will be updated, as necessary, for taxpayers to properly report amounts under section 965 and the proposed regulations. For the 2017 tax year, instructions for how and when to properly report section 965-related amounts and file returns reporting such amounts, as well as instructions for how and when to make payments with respect to a net tax liability under section 965, were provided in Frequently Asked Questions (FAQs) that are available at the IRS website. The FAQs were posted on March 13, 2018, and updated on April 13, 2018, and June 4, 2018.

#### 2. Extensions

Comments requested an extension of time for reporting and paying section 965-related amounts and an extension of time for making the section 965(h) election. The statute provides for an extended time to file returns reporting section 965-related amounts and to make applicable elections. In addition,

with the section 965(h) election, the statute provides a method for taxpayers to delay payment of the total net tax liability under section 965. Furthermore, as discussed in Part VIII.C.3 of this Explanation of Provisions section, the proposed regulations provide that a taxpayer eligible to make a section 965(h) election may make the election on its timely-filed return taking into account extensions, if any, or any additional time that would have been granted if the person had made an extension request. In addition, as described in section 3.05(e) of Notice 2018–26, the proposed regulations provide that for a person who is a specified individual (as defined in proposed § 1.965–7(g)(9)) for the year within which an installment payment would be required to be made who makes a section 965(h) election and who otherwise receives an extension of time to file and pay under § 1.6081–5(a)(5) or (6), the due date for an installment payment will be the fifteenth day of the sixth month following the close of the prior taxable year, regardless of whether the person was a specified individual for the year of the person's section 965(a) inclusion. *See* proposed § 1.965–7(b)(1)(iii)(B). Moreover, the IRS has announced relief from additions to tax (and related acceleration events under section 965(h)(3)) for certain individual filers that do not timely pay their first installment of tax due with respect to the 2017 tax year under section 965(h). For more information, see "Questions and Answers about Reporting Related to Section 965 on 2017 Tax Returns," Q&A 16, available at *https://www.irs.gov/newsroom/questions-and-answers-about-reporting-related-to-section-965-on-2017-tax-returns.* Thus, comments requesting additional extensions are not adopted.

### C. Individuals

#### 1. In General

Numerous comments were received requesting guidance exempting individuals from the application of section 965. The statute is clear that section 965 applies to all United States shareholders. In addition, the Conference Report makes clear that section 965 applies to individuals as well as corporate shareholders by providing, "In contrast to the participation exemption deduction [in section 245A] available only to domestic corporations that are U.S. shareholders under subpart F, the transition rule applies to all U.S. shareholders." H.R. Rep. No. 115–466, at 606 (2017) (Conf. Rep.). Because the statute and legislative

history are clear that section 965 was intended to apply to all United States shareholders, including individuals, the Treasury Department and the IRS have determined that providing the requested relief is not appropriate.

## 2. Rates of Tax on Section 965(a) Inclusions

Comments also requested that guidance be provided changing the application of the participation exemption to individuals. As discussed in Part II.E of the Background section of this preamble, the amount of the participation exemption depends on the application of the United States shareholder's 8 percent rate equivalent percentage (as defined in section 965(c)(2)(A) and proposed § 1.965–1(f)(2)) and its 15.5 percent rate equivalent percentage (as defined in section 965(c)(2)(B) and proposed § 1.965–1(f)(4)). Both the 8 percent rate equivalent percentage and the 15.5 percent rate equivalent percentage are based off of the highest rate of tax specified in section 11, which is applicable to corporations. As a result, when the participation exemption is calculated for individuals, the applicable rates of tax may not be 8 percent and 15.5 percent.

However, this result was anticipated by Congress. The Conference Report provides, "Individual U.S. shareholders, and the investors in U.S. shareholders that are pass-through entities generally can elect application of corporate rates for the year of inclusion." H.R. Rep. No. 115–466, at 620 (2017) (Conf. Rep.). As discussed in Part III of this Explanation of Provisions section, individuals may make an election under section 962 to have the tax imposed under chapter 1 on amounts that are included in the individual's gross income under section 951(a) with respect to a foreign corporation with respect to which it is a United States shareholder be equal to the tax that would be imposed under section 11 if the amounts were received by a domestic corporation. Accordingly, because of the availability of the section 962 election and Congress's express intent with respect to the rate equivalent percentages, these comments are not adopted.

## D. Determination of Aggregate Foreign Cash Position

### 1. Liquidity-Based Exceptions

A number of comments were received requesting guidance modifying the definition of a specified foreign corporation's cash position or the calculation of a United States shareholder's aggregate foreign cash

position. For example, comments requested guidance excluding certain assets from a specified foreign corporation's cash position, or otherwise providing special rules with respect to those assets, including (i) cash used, or intended to be used, to fund foreign acquisitions; (ii) blocked, restricted, or segregated cash; (iii) cash used, or to be used, to pay third-party payables within a specified period (for example, 12 months after a cash measurement date); (iv) obligations with respect to which there was an inclusion under section 956; (v) cash held in a fiduciary or trust capacity; (vi) cash held or attributable to an entity that is engaged in a regulated industry, such as life insurance; and (vii) cash pledged against defined liabilities as well as potential or contingent liabilities. In addition, comments requested exceptions for commodities representing inventory or supplies and stock of a publicly traded company in which the specified foreign corporation holds at least 10 percent of the stock, each of which is personal property of a type that is actively traded and for which there is an established financial market, and thus included in the cash position of a specified foreign corporation.

In general, these comments are premised on the view that an asset that otherwise would be included in the cash position of a specified foreign corporation should be excluded to the extent that the asset cannot be otherwise employed; that is, if the asset is not sufficiently "liquid." Although the legislative history describing a specified foreign corporation's cash position refers to earnings that are "liquid," neither the legislative history nor the statute indicates that the cash position of a specified foreign corporation should be determined by reference to an analysis of whether any particular asset should be considered a liquid asset. *See, e.g.*, Senate Committee on Finance, Explanation of the Bill, at 360–361 (November 22, 2017) ("The cash position of an entity consists of all cash, net accounts receivables, and the fair market value of similarly liquid assets, specifically including personal property that is actively traded on an established financial market . . . , government securities, certificates of deposit, commercial paper, and short-term obligations."). Instead, as the Conference Report notes, the statute includes a specific list of assets that are included in the cash position of a specified foreign corporation.

The Treasury Department and the IRS have determined that the definition of cash position in section 965(c)(3)(B) is

the best indication of what Congress believed was a liquid asset. Depending on the facts, any particular asset may be required to be used for a specific purpose, or a taxpayer may intend to retain the asset for a lengthy period of time. However, the Treasury Department and the IRS have determined that it would not be administrable to create individual regulatory exceptions to the statute in the absence of a statutory standard for liquidity because it would likely require introducing a facts-and-circumstances test that analyzes the liquidity of every asset, which would be difficult to administer. Furthermore, while some assets that would otherwise be treated as cash-equivalent assets could be excluded from a specified foreign corporation's cash position for being insufficiently liquid, other assets that are not treated as cash-equivalent assets but are liquid would need to be included in a specified foreign corporation's cash position. Accordingly, the proposed regulations do not introduce new regulatory exceptions to the definition of cash position. The Treasury Department and the IRS welcome comments with respect to the definition of cash position of a specified foreign corporation.

### 2. Other Modifications Requested to Statutory Rules

Comments also requested modifications to the rules regarding the calculation of a specified foreign corporation's cash position or a United States shareholder's aggregate foreign cash position, including requests that (i) accounts payable be allowed to offset both accounts receivable and other components of a specified foreign corporation's cash position; (ii) the pro rata share of cash held through a pass-through entity be limited to the amount of cash that a specified foreign corporation would have been entitled to on liquidation of the pass-through entity; (iii) the cash position be reduced by section 301(c) cash distributions by the specified foreign corporation when using the average of the aggregate cash positions on the first two cash measurement dates; and (iv) the cash position be reduced by undistributed previously taxed E&P. The Treasury Department and the IRS have determined that the statute is unambiguous as to how, in each of these circumstances, a specified foreign corporation's cash position or a United States shareholder's aggregate foreign cash position should be determined, such that it is unnecessary to provide guidance or to revise the operation of

the statute by regulation under these circumstances.

### 3. Notional Cash Pooling Arrangements

Comments requested that the proposed regulations provide that notional cash pooling arrangements are treated as creating intercompany receivables for purposes of section 965. The proposed regulations do not adopt this recommendation. The determination of whether transactions in a notional cash pooling arrangement are treated as occurring among participants in the arrangement, or between the participants and a third party, depends on the application of federal income tax principles. *Cf.* Rev. Rul. 87–89, 1987–2 C.B. 195.

### 4. Non-Corporate Entities Under Section 965(c)(3)(E)

A comment requested clarification regarding whether section 965(c)(3)(E), which treats a non-corporate entity held by a specified foreign corporation as a specified foreign corporation (if it would otherwise be a specified foreign corporation if it was a foreign corporation) for purposes of taking into account its cash position, applies to an entity that is disregarded as an entity separate from its owner for U.S. federal income tax purposes ("disregarded entity"). The Treasury Department and the IRS have determined that it is clear under existing law that the assets of a disregarded entity are considered as held directly by the disregarded entity's owner, such that the rule in section 965(c)(3)(E) does not apply with respect to disregarded entities, and no specific rules addressing the application of section 965(c)(3)(E) are necessary. *See generally* § 301.7701–2(a).

### E. Blocked Foreign Income

Comments requested that the proposed regulations provide rules with respect to income subject to certain exchange controls or other foreign legal restrictions. Generally, section 964(b) and § 1.964–2 (the blocked foreign income rules) provide that no part of the E&P of a CFC are included in the CFC's E&P for purposes of sections 952 and 956 if it is established to the satisfaction of the Secretary that the E&P could not have been distributed by the CFC to United States shareholders that own the stock of the CFC due to currency or other foreign legal restrictions. Section 965(a) inclusion amounts are not, however, limited by section 952, such that the blocked foreign income rules do not affect the determination of such amounts. Comments requested that the proposed regulations adopt rules similar to the blocked foreign income rules for

purposes of section 965 by reducing the post-1986 earnings and profits of a specified foreign corporation by an amount equal to any amounts subject to restrictions on distributions by a specified foreign corporation.

The Treasury Department and the IRS have determined that it is not appropriate to provide rules similar to the blocked foreign income rules for purposes of computing post-1986 earnings and profits. Section 965(d)(3) expressly provides that the term post-1986 earnings and profits means E&P "computed in accordance with section 964(a) and 986," giving rise to a clear inference that the principles of section 964(b) should not be given effect in computing post-1986 earnings and profits.

### F. Additional Comments

Several other comments were received that did not pertain to section 965 or were otherwise outside the scope of the section 965 regulations. Some of those comments related to reporting and payment requirements and have been addressed in the FAQs that are available at the IRS website. Other comments that did not relate to the rules described in Notices 2018–07, 2018–17, or 2018–26 or that were outside the scope of this notice of proposed rulemaking are not addressed in this preamble. In addition, other comments were received after the proposed regulations had been substantially developed, such that the Treasury Department and the IRS did not have time to fully consider the comments. The Treasury Department and the IRS will include these comments in the administrative record for the notice of proposed rulemaking on this subject in the Proposed Rules section of this issue of the **Federal Register** and fully consider the comments in connection with finalization of the proposed regulations.

### XII. Applicability Dates

Consistent with the applicability date of section 965, as amended by the Act, under section 7805(b)(2), the proposed regulations generally apply beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, beginning the taxable year in which or with which such taxable year of the foreign corporation ends. Taxpayers may choose to apply the rules in proposed § 1.965–7 in their entirety to all tax years as if they were final regulations.

For the avoidance of doubt, proposed § 1.965–9(b) clarifies that the rules described in proposed §§ 1.965–4 apply to all foreign corporation and

shareholder taxable years described in proposed § 1.965–9(b), even if the relevant transaction, the effective date of a change in method of accounting or entity classification election, or specified payment occurred in a prior taxable year. This is because the proposed regulations affect only the tax consequences in taxable years described in proposed § 1.965–9(b) and do not affect any prior taxable year.

### Special Analyses

### I. Regulatory Planning and Review

Executive Orders 13563 and 12866 direct agencies to assess costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic, environmental, public health and safety effects, distributive impacts, and equity). Executive Order 13563 emphasizes the importance of quantifying both costs and benefits, reducing costs, harmonizing rules, and promoting flexibility. This proposed rule has been designated a "significant regulatory action" under section 3(f) of Executive Order 12866 and the Memorandum of Agreement (MOA), *Review of Tax Regulations under Executive Order 12866* (April 11, 2018). Accordingly, the proposed rule has been reviewed by the Office of Management and Budget. The Treasury Department requests comment on this designation.

### A. Need for the Proposed Regulations

These regulations implement section 965 of the Internal Revenue Code as amended by the Act. The proposed regulations provide rules for determining the section 965(a) inclusion amount of a U.S. shareholder of a foreign corporation with deferred foreign income. The proposed regulations directly implement the statutory requirements. The Senate Committee on Finance stated with respect to section 965 that, "[t]o ensure that all distributions from foreign subsidiaries are treated in the same manner under the participation exemption system, the Committee believes that it is appropriate to tax such earnings as if they had been repatriated under present law, but at a reduced rate. The Committee believes the tax on accumulated foreign earnings should apply without requiring an actual distribution of earnings, and further believes that the tax rate should take into account the liquidity of the accumulated earnings." *See* Senate Committee on Finance, Explanation of the Bill, at 358 (November 22, 2017).

## B. Background

The international tax system prior to the Act created strong incentives for U.S. companies to keep their earnings and profits overseas, an action known as deferral, in order to avoid paying a sizeable residual U.S. tax. The Act ended deferral and the resulting "lockout effect." It introduced a one-time tax on the stock of any deferred earnings and profits not previously taxed by the United States, regardless of whether those earnings are repatriated. Cash or cash-equivalent assets held by a foreign corporation result in a higher rate of repatriation tax than non-cash assets, such as plant, property, and equipment. The tax applies to the accumulated stock of deferred earnings and profits as of the last taxable year of a foreign corporation beginning before January 1, 2018, and with respect to United States shareholders, for taxable years in which or with which the taxable year of the foreign corporation ends; these details are important for understanding the economic impacts of the proposed regulations.

The proposed regulations address open questions regarding the application of section 965. They provide rules related to section 965 described in the three notices issued since December 22, 2017, with certain modifications, as well as additional guidance related to section 965. Specifically, the guidance provides general rules and definitions, as well as rules related to the determination and treatment of section 965(c) deductions, rules that disregard certain transactions in connection with section 965, rules related to foreign tax credits, rules regarding elections and payments, rules regarding the application of the section 965 regulations to affiliated groups, including consolidated groups, rules on dates of applicability, rules relating to section 962 elections, and rules regarding the application of section 986(c) in connection with section 965. These proposed regulations are designed to provide clarity and reduce unnecessary burdens on taxpayers, including by providing guidance on how to apply particular mechanical rules.

## C. Baseline

The baseline constitutes a world in which no regulations pertaining to section 965 had been promulgated, and thus taxpayers would have made decisions relevant to section 965 in the absence of specific guidance. The following qualitative analysis describes the anticipated impacts of the proposed regulations relative to the baseline.

## D. Consideration of Alternatives

For a discussion of the alternatives considered in the promulgation of the proposed regulations, see the Explanation of Provisions section of this preamble. For example, see Part II.B of the Explanation of the Provisions section for a discussion of the alternatives considered with respect to the determination of, among other things, post-1986 earnings and profits (E&P), cash measurement dates, and short-term obligations and Part IV.C.2 of the Explanation of Provisions section for a discussion of the alternatives considered to the rule permitting elective basis adjustments to the stock of certain deferred foreign income corporations and E&P deficit corporations.

## E. Anticipated Benefits

In consultation with taxpayers, the Treasury Department determined that there are multiple instances throughout the statute where the transition tax may be artificially inflated because of double counting of cash and E&P due to multiple testing dates and chains of ownership. Double counting is inequitable because similarly situated taxpayers may differ in terms of the amounts of income that fall into the specific categories that may be subject to double counting. As a result of this analysis, the regulations aim to reduce double counting and produce more equitable tax outcomes across otherwise similarly situated taxpayers by: (1) Preventing double counting in computing the aggregate foreign cash position, for example by disregarding receivables and payables between related specified foreign corporations with a common U.S. shareholder; and (2) preventing double-counting and non-counting in the computation of deferred earnings arising from amounts paid or incurred between related parties between measurement dates.

Inequitable outcomes may also arise in the absence of the proposed regulations due to uncertainty and ambiguity over interpretation of the section 965 requirements. Absent these regulations, different parties would likely interpret the statute in different ways. Such disparate interpretations could lead similarly situated taxpayers to calculate their tax liability differently, an inequitable situation. The proposed regulations aim to reduce uncertainty and ambiguity by: (1) Providing that all members of a consolidated group that are U.S. shareholders of a specified foreign corporation are treated as a single U.S. shareholder; (2) introducing definitions of terminology used; (3)

coordinating foreign tax credit rules; (4) making explicit the process for making elections and paying the tax, and (5) providing dates of applicability.

## F. Anticipated Impacts on Administrative and Compliance Costs

Absent these regulations, different parties would likely interpret the statute in different ways. In addition to the impacts described above, different parties interpreting the statute in different ways implies increased administrative costs for the Internal Revenue Service and increased compliance costs for taxpayers while the inevitable disputes are dealt with through sub-regulatory guidance or resolved through litigation.

For a discussion of the one-time annual reporting burden associated with the statute see the Paperwork Reduction Act (PRA) section of this preamble, which provides further detail regarding the assumptions underlying these estimates. These estimates are that 100,000 respondents will require 5 hours per response for a total reporting burden of 500,000 hours. A valuation of the burden hours at $95/hour leads to a PRA-based estimate of the reporting costs to taxpayers of $47,500,000. This is a one-time paperwork burden associated with a one-time tax, and Treasury anticipates all paperwork burdens to be incurred within the next year. Any subsequent reporting (such as over the eight-year payment period) would be nominal burdens that implement payments calculated in the initial year. This estimate does not disaggregate the cost specifically due to the proposed regulations. The Treasury Department solicits comments on the assumptions and appropriateness of the methodology used to calculate the compliance costs imposed by the proposed regulations relative to the baseline.

## II. Executive Order 13771

This proposed rule is expected to be an Executive Order 13771 regulatory action. Details on the estimated costs of this proposed rule can be found in the rule's economic analysis.

## III. Regulatory Flexibility Analysis

The Regulatory Flexibility Act (5 U.S.C. chapter 6) does not apply because the regulations do not impose a collection of information on small entities. Any burden on small entities in these regulations stems from the collection of information requirements in proposed §§ 1.965–2(d)(2)(i)(B), 1.965–2(f)(2)(iii)(B), 1.965–3(b)(2), 1.965–3(c)(3), 1.965–4(b)(2)(i), 1.965–7(b)(2), 1.965–7(b)(3)(iii)(B), 1.965–

7(c)(2), 1.965–7(c)(3)(iv)(B), 1.965–7(c)(3)(v)(D), 1.965–7(c)(6)(i), 1.965–7(d)(3), 1.965–7(e)(2), 1.965–7(f)(5), and 1.965–8(c). It is hereby certified that these collection of information requirements will not have a significant economic impact on a substantial number of small entities. Accordingly, an initial regulatory flexibility analysis is not required. This certification is based on several facts. First, the average burden is five hours, which is minimal, particularly in comparison to other regulatory requirements related to owning stock in a specified foreign corporation. Second, the requirements apply only if a taxpayer chooses to make an election or rely on a favorable rule. Third, the collections of information apply to the owners of specified foreign corporations. Because it takes significant resources and investment for a foreign business to be operated in corporate form by a United States person, specified foreign corporations will infrequently be small entities. Moreover, because the collection of information requirements apply to the owners of specified foreign corporations rather than the specified foreign corporations themselves, a specified foreign corporation that was a small entity would not be subject to the collections of information. Fourth, the collection of information requirements in this regulation apply primarily to persons that are United States shareholders of specified foreign corporations. The ownership of sufficient stock in specified foreign corporations in order to constitute a United States shareholder generally entails significant resources and investment, such that businesses that are United States shareholders are generally not small businesses. Pursuant to section 7805(f), this notice of proposed rulemaking has been submitted to the Chief Counsel for Advocacy of the Small Business Administration for comment on its impact on small business.

## Comments and Requests for a Public Hearing

Before the proposed regulations are adopted as final regulations, consideration will be given to any comments that are submitted timely to the IRS as prescribed in this preamble under the **ADDRESSES** heading. The Treasury Department and the IRS request comments on all aspects of the proposed rules. All comments will be available at *www.regulations.gov* or upon request. A public hearing will be scheduled if requested in writing by any person that timely submits written comments. If a public hearing is

scheduled, notice of the date, time, and place for the public hearing will be published in the **Federal Register**.

## Drafting Information

The principal authors of the proposed regulations are Leni C. Perkins and Karen J. Cate of the Office of Associate Chief Counsel (International). However, other personnel from the Treasury Department and the IRS participated in the development of the proposed regulations.

## List of Subjects in 26 CFR Part 1

Income taxes, Reporting and recordkeeping requirements.

## Proposed Amendments to the Regulations

Accordingly, 26 CFR part 1 is proposed to be amended as follows:

## PART 1—INCOME TAXES

■ **Paragraph 1.** The authority citation for part 1 is amended by adding entries in numerical order to read as follows:

**Authority:** 26 U.S.C. 7805.

\*      \*      \*      \*      \*

Section 1.962–1 also issued under 26 U.S.C. 965(o).
Section 1.965–1 also issued under 26 U.S.C. 965(c)(3)(B)(iii)(V), 965(d)(2), 965(o), 989(c), and 7701(a).
Section 1.965–2 also issued under 26 U.S.C. 965(b)(3)(A)(ii), 965(o) and 961(a) and (b).
Section 1.965–3 also issued under 26 U.S.C. 965(c)(3)(D) and 965(o).
Section 1.965–4 also issued under 26 U.S.C. 965(c)(3)(F) and 965(o).
Sections 1.965–5 through 1.965–6 also issued under 26 U.S.C. 965(o) and 26 U.S.C. 902(c)(7) (as in effect on December 21, 2017).
Section 1.965–7 also issued under 26 U.S.C. 965(h)(3), 965(h)(5), 965(i)(2), 965(i)(8)(B), 965(m)(2)(A), 965(n)(3), and 965(o).
Section 1.965–8 also issued under 26 U.S.C. 965(o).
Section 1.965–9 also issued under 26 U.S.C. 965(o).

\*      \*      \*      \*      \*

Section 1.986(c)–1 also issued under 26 U.S.C. 965(o) and 26 U.S.C. 989(c).

\*      \*      \*      \*      \*

■ **Par. 2.** Section 1.962–1 is amended by:

■ 1. Revising paragraph (b)(1)(i).

■ 2. Redesignating paragraphs (b)(2)(iv)(*a*) and (*b*) as paragraph (b)(2)(iv)(A) and (B), respectively.

■ 3. Adding paragraph (d).

The revision and addition read as follows:

## § 1.962–1   Limitation of tax for individuals on amounts included in gross income under section 951(a).

\*      \*      \*      \*      \*

(b) \* \* \*

(1) \* \* \*

(i) *Determination of taxable income.* The term *taxable income* means the excess of—

(A) The sum of—

(*1*) All amounts required to be included in his gross income under section 951(a) for the taxable year with respect to a foreign corporation of which he is a United States shareholder, including—

(*i*) His section 965(a) inclusion amounts (as defined in § 1.965–1(f)(38)); and

(*ii*) His domestic pass-through owner shares (as defined in § 1.965–1(f)(21)) of section 965(a) inclusion amounts with respect to deferred foreign income corporations (as defined in § 1.965–1(f)(17)) of which he is a United States shareholder; plus

(*2*) All amounts which would be required to be included in his gross income under section 78 for the taxable year with respect to the amounts referred to in paragraph (b)(1)(i)(A)(*1*) of this section if the shareholder were a domestic corporation; over

(B) The sum of his section 965(c) deduction amount (as defined in § 1.965–1(f)(42)) and his domestic pass-through owner shares of section 965(c) deduction amounts corresponding to the amounts referred to in paragraph (b)(1)(i)(A)(*1*)(*ii*) of this section for the taxable year, but not any other deductions or amounts.

\*      \*      \*      \*      \*

(d) *Applicability dates.* Paragraph (b)(1)(i) of this section applies beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, for the taxable year in which or with which such taxable year of the foreign corporations ends.

■ **Par. 3.** Section 1.962–2 is amended by revising paragraph (a) and adding paragraph (d) to read as follows:

## § 1.962–2   Election of limitation of tax for individuals.

(a) *Who may elect.* The election under section 962 may be made only by an individual (including a trust or estate) who is a United States shareholder (including an individual who is a United States shareholder because, by reason of section 958(b), he is considered to own stock of a foreign corporation owned (within the meaning of section 958(a)) by a domestic pass-

through entity (as defined in § 1.965–1(f)(19))).

\* \* \* \* \*

(d) *Applicability dates.* Paragraph (a) of this section applies beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, for the taxable year in which or with which such taxable year of the foreign corporations ends.

■ **Par. 4.** Section 1.965–0 is added to read as follows:

### § 1.965–0  Outline of section 965 regulations.

This section lists the headings for §§ 1.965–1 through 1.965–9.

*§ 1.965–1   Overview, general rules, and definitions.*
(a) Overview.
(1) In general.
(2) Scope.
(b) Section 965(a) inclusion amounts.
(1) Inclusion of the pro rata share of the section 965(a) earnings amount.
(2) Reduction by the allocable share of the aggregate foreign E&P deficit.
(c) Section 965(c) deduction amounts.
(d) Treatment of specified foreign corporation as a controlled foreign corporation.
(e) Special rule for certain controlled domestic partnerships.
(1) In general.
(2) Definition of a controlled domestic partnership.
(f) Definitions.
(1) 8 percent rate amount.
(2) 8 percent rate equivalent percentage.
(3) 15.5 percent rate amount.
(4) 15.5 percent rate equivalent percentage.
(5) Accounts payable.
(6) Accounts receivable.
(7) Accumulated post-1986 deferred foreign income.
(8) Aggregate foreign cash position.
(9) Aggregate foreign E&P deficit.
(10) Aggregate section 965(a) inclusion amount.
(11) Allocable share.
(12) Bona fide hedging transaction.
(13) Cash-equivalent asset.
(14) Cash-equivalent asset hedging transaction.
(15) Cash measurement dates.
(16) Cash position.
(i) General rule.
(ii) Fair market value of cash-equivalent assets.
(iii) Measurement of derivative financial instruments.
(iv) Translation of cash position amounts.
(17) Deferred foreign income corporation.
(i) In general.
(ii) Priority rule.
(18) Derivative financial instrument.
(19) Domestic pass-through entity.
(20) Domestic pass-through owner.
(21) Domestic pass-through owner share.
(22) E&P deficit foreign corporation.
(i) In general.
(ii) Determination of deficit in post-1986 earnings and profits.

(23) E&P measurement dates.
(24) Final cash measurement date.
(25) First cash measurement date.
(25) Inclusion year.
(26) Net accounts receivable.
(28) Pass-through entity.
(29) Post-1986 earnings and profits.
(i) General rule.
(ii) Foreign income taxes.
(iii) Deficits in earnings and profits.
(30) Pro rata share.
(31) Second cash measurement date.
(32) Section 958(a) stock.
(33) Section 958(a) U.S. shareholder.
(34) Section 958(a) U.S. shareholder inclusion year.
(35) Section 965 regulations.
(36) Section 965(a) earnings amount.
(37) Section 965(a) inclusion.
(38) Section 965(a) inclusion amount.
(39) Section 965(a) previously taxed earnings and profits.
(40) Section 965(b) previously taxed earnings and profits.
(41) Section 965(c) deduction.
(42) Section 965(c) deduction amount.
(43) Short-term obligation.
(44) Specified E&P deficit.
(45) Specified foreign corporation.
(i) General rule.
(ii) Special attribution rule.
(iii) Passive foreign investment companies.
(46) Spot rate.
(47) United States shareholder.
(g) Examples.

*§ 1.965–2   Adjustments to earnings and profits and basis.*
(a) Scope.
(b) Determination of and adjustments to earnings and profits in the last taxable year of a specified foreign corporation that begins before January 1, 2018, for purposes of applying sections 959 and 965.
(c) Adjustments to earnings and profits by reason of section 965(a).
(d) Adjustments to earnings and profits by reason of section 965(b).
(1) Adjustments to earnings and profits described in section 959(c)(2) and (c)(3) of deferred foreign income corporations.
(2) Adjustments to earnings and profits described in section 959(c)(3) of E&P deficit foreign corporations.
(i) Increase in earnings and profits by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit.
(A) In general.
(B) Reduction of a qualified deficit.
(ii) Determination of portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit taken into account.
(A) In general.
(B) Designation of portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit taken into account.
(e) Adjustments to basis by reason of section 965(a).
(1) General rule.
(2) Section 962 election.
(f) Adjustments to basis by reason of section 965(b).
(1) In general.
(2) Election to make adjustments to basis to account for the application of section 965(b).

(i) In general.
(ii) Basis adjustments.
(A) Increase in basis with respect to a deferred foreign income corporation.
(B) Reduction in basis with respect to an E&P deficit foreign corporation.
(C) Section 962 election.
(iii) Rules regarding the election.
(A) Consistency requirement.
(B) Making of making election.
(*1*) Timing.
(*i*) In general.
(*ii*) Transition rule.
(*2*) Election statement.
(g) Gain reduction rule.
(1) Reduction in gain recognized under section 961(b)(2) by reason of distributions attributable to section 965 previously taxed earnings and profits in the inclusion year.
(i) In general.
(ii) Definition of section 965 previously taxed earnings and profits.
(2) Reduction in basis by an amount equal to the gain described in paragraph.
(h) Rules of application for specified basis adjustments.
(1) Timing of basis adjustments.
(2) Netting of basis adjustments.
(3) Gain recognition for reduction in excess of basis.
(4) Adjustments with respect to each share.
(i) Section 958(a) stock.
(ii) Applicable property.
(5) Stock or property for which adjustments are made.
(i) In general.
(ii) Special rule for an interest in a foreign pass-through entity.
(i) Definitions.
(1) Applicable property.
(2) Foreign pass-through entity.
(3) Property.
(j) Examples.

*§ 1.965–3   Section 965(c) deductions.*
(a) Scope.
(b) Rules for disregarding certain assets for determining aggregate foreign cash position.
(1) Disregard of certain obligations between related specified foreign corporations.
(2) Disregard of other assets upon demonstration of double-counting.
(3) Examples.
(c) Determination of aggregate foreign cash position for a section 958(a) U.S. shareholder inclusion year.
(1) Single section 958(a) U.S. shareholder inclusion year.
(2) Multiple section 958(a) U.S. shareholder inclusion years.
(i) Allocation to first section 958(a) U.S. shareholder inclusion year.
(ii) Allocation to succeeding section 958(a) U.S. shareholder inclusion years.
(3) Estimation of aggregate foreign cash position.
(4) Examples.
(d) Increase of income by section 965(c) deduction of an expatriated entity.
(1) In general.
(2) Definition of expatriated entity.
(3) Definition of surrogate foreign corporation.
(e) Section 962 election.
(1) In general.
(2) Example.

(f) Treatment of section 965(c) deduction under certain provisions of the Internal Revenue Code.

(1) Section 63(d).

(2) Sections 705, 1367, and 1368.

(i) Adjustments to basis

(ii) S corporation accumulated adjustments account.

(iii) Example.

(3) Section 1411.

(4) Section 4940.

(g) Domestic pass-through entities.

§ 1.965–4   *Disregard of certain transactions.*

(a) Scope.

(b) Transactions undertaken with a principal purpose of changing the amount of a section 965 element.

(1) General rule.

(2) Presumptions and exceptions for the application of the general rule.

(c) Disregard of certain changes in method of accounting and entity classification elections.

(1) Changes in method of accounting.

(2) Entity classification elections.

(d) Definition of a section 965 element.

(e) Rules for applying paragraphs (b) and (c) of this section.

(1) Determination of whether there is a change in the amount of a section 965 element.

(2) Treatment of domestic pass-through owners as United States shareholders.

(f) Disregard of certain transactions occurring between E&P measurement dates.

(1) Disregard of specified payments.

(2) Definition of specified payment.

(3) Definition of tentative E&P measurement date.

(g) Examples.

§ 1.965–5   *Allowance of credit or deduction for foreign income taxes.*

(a) Scope.

(b) Rules for foreign income taxes paid or accrued.

(c) Rules for foreign income taxes treated as paid or accrued.

(1) Disallowed credit.

(i) In general.

(ii) Foreign income taxes deemed paid under section 960(a)(3) (as in effect on December 21, 2017).

(iii) Foreign income taxes deemed paid under section 960(b) (as applicable to taxable years of foreign corporations beginning after December 31, 2017, and to taxable years of United States persons in which or with which such taxable years of foreign corporations end).

(2) Disallowed deduction.

(3) Coordination with section 78.

(i) In general.

(ii) Domestic corporation that is a domestic pass-through owner.

(d) Applicable percentage.

(1) In general.

(2) Applicable percentage for domestic pass-through owners.

§ 1.965–6   *Computation of foreign income taxes deemed paid and allocation and apportionment of deductions.*

(a) Scope.

(b) Computation of foreign incomes taxes deemed paid.

(c) Section 902 fraction.

(1) In general.

(2) Dividend or inclusion in excess of post-1986 undistributed earnings.

(3) Treatment of adjustment under section 965(b)(4)(B).

(d) Allocation and apportionment of deductions.

§ 1.965–7   *Elections and payment rules.*

(a) Scope.

(b) Section 965(h) election.

(1) In general.

(2) Amount of installments.

(i) In general.

(ii) Increased installments due to a deficiency or a timely filed or amended return.

(A) In general.

(B) Timing.

(C) Exception for negligence, intentional disregard, or fraud.

(iii) Due date of installments.

(A) In general.

(B) Extension for specified individuals.

(2) Manner of making election.

(i) Eligibility.

(ii) Timing.

(3) Election statement.

(3) Acceleration of payment.

(i) Acceleration.

(ii) Acceleration events.

(iii) Eligible section 965(h) transferee exception.

(A) In general.

(1) Requirement to have a covered acceleration event.

(2) Requirement to enter into a transfer agreement.

(B) Transfer agreement.

(1) Eligibility.

(2) Filing requirements.

(i) In general.

(ii) Transition rule.

(3) Signature requirement.

(4) Terms of agreement.

(5) Consolidated groups.

(C) Consent of Commissioner.

(1) In general.

(2) Material misrepresentations and omissions.

(D) Effect of assumption.

(1) In general.

(2) Eligible section 965(h) transferor liability.

(E) Qualifying consolidated group member transaction.

(1) Definition of qualifying consolidated group member transaction.

(2) Definition of qualified successor.

(3) Departure of multiple members of a consolidated group.

(c) Section 965(i) election.

(1) In general.

(2) Manner of making election.

(i) Eligibility.

(ii) Timing.

(iii) Election statement.

(3) Triggering events.

(i) In general.

(ii) Triggering events.

(iii) Partial transfers.

(iv) Eligible section 965(i) transferee exception.

(A) In general.

(1) Requirement to have a covered triggering event.

(2) Requirement to enter into a transfer agreement.

(B) Transfer agreement.

(1) Eligibility.

(2) Filing requirements.

(i) In general.

(ii) Transition rule.

(3) Signature requirement.

(4) Terms of agreement.

(C) Consent of Commissioner.

(1) In general.

(2) Material misrepresentations and omissions.

(D) Effect of assumption.

(1) In general.

(2) Eligible section 965(i) transferor liability.

(v) Coordination with section 965(h) election.

(A) In general.

(B) Timing for election.

(C) Due date for installment.

(D) Limitation.

(1) In general.

(2) Manner of obtaining consent.

(i) In general.

(ii) Transition rule.

(3) Signature requirement.

(4) Terms of agreement.

(5) Consent of Commissioner.

(i) In general.

(ii) Material misrepresentations and omissions.

(4) Joint and several liability.

(5) Extension of limitation on collection.

(6) Annual reporting requirement.

(i) In general.

(ii) Failure to report.

(d) Section 965(m) election and special rule for real estate investment trusts.

(1) In general.

(2) Inclusion schedule for section 965(m) election.

(3) Manner of making election.

(i) Eligibility.

(ii) Timing.

(iii) Election statement.

(4) Coordination with section 965(h).

(5) Acceleration of inclusion.

(6) Treatment of section 965(a) inclusions of a real estate investment trust.

(e) Section 965(n) election.

(1) In general.

(i) General rule.

(ii) Applicable amount for section 965(n) election.

(iii) Scope of section 965(n) election.

(2) Manner of making election.

(i) Eligibility.

(ii) Timing.

(iii) Election statement.

(f) Election to use alternative method for calculating post-1986 earnings and profits.

(1) Effect of election for specified foreign corporations that do not have a 52–53-week taxable year.

(2) Effect of election for specified foreign corporations that have a 52–53 -week taxable year.

(3) Computation of post-1986 earnings and profits using alternative method.

(4) Definitions.

(i) 52–53-week taxable year.

(ii) Annualized earnings and profits amount.

(iii) Daily earnings amount.

(iv) Notional measurement date.

(5) Manner of making election.

(i) Eligibility.
(ii) Timing.
(iii) Election statement.
(6) Examples.
(g) Definitions.
(1) Deferred net tax liability.
(2) REIT section 965 amounts.
(3) Section 965(h) election.
(4) Section 965(h) net tax liability.
(5) Section 965(i) election.
(6) Section 965(i) net tax liability.
(7) Section 965(m) election.
(8) Section 965(n) election.
(9) Specified individual.
(10) Total net tax liability under section 965.
(i) General rule.
(ii) Net income tax.
(iii) Foreign tax credits.
*§ 1.965–8 Affiliated groups (including consolidated groups).*
(a) Scope.
(b) Reduction of E&P net surplus shareholder's pro rata share of the section 965(a) earnings amount of a deferred foreign income corporation by the allocable share of the applicable share of the aggregate unused E&P deficit.
(1) In general.
(2) Consolidated group as part of an affiliated group.
(c) Designation of portion of excess aggregate foreign E&P deficit taken into account.
(1) In general.
(2) Consolidated group as part of an affiliated group.
(d) Adjustments to earnings and profits and stock basis.
(1) Affiliated groups that are not consolidated groups.
(2) Consolidated groups.
(e) Treatment of a consolidated group as a single section 958(a) U.S. shareholder or a single person.
(1) In general.
(2) Limitation.
(3) Determination of section 965(c) deduction amount.
(f) Definitions.
(1) Aggregate unused E&P deficit.
(i) In general.
(ii) Reduction with respect to E&P net deficit shareholders that are not wholly owned by the affiliated group.
(2) Allocable share.
(3) Applicable share.
(4) Consolidated group aggregate foreign cash position.
(5) E&P net deficit shareholder.
(6) E&P net surplus shareholder.
(7) Excess aggregate foreign E&P deficit.
(8) Group cash ratio.
(9) Group ownership percentage.
(g) Examples.
*§ 1.965–9 Applicability dates.*
(a) In general.
(b) Applicability dates for rules disregarding certain transactions.

■ **Par. 5.** Section 1.965–1 is added to read as follows:

**§ 1.965–1   Overview, general rules, and definitions.**

(a) *Overview*—(1) *In general.* The section 965 regulations provide rules under section 965. This section provides general rules and definitions under section 965. Section 1.965–2 provides rules relating to adjustments to earnings and profits and basis to determine and account for the application of section 965 and a rule that limits the amount of gain recognized under section 961(b)(2) by reason of distributions attributable to section 965 previously taxed earnings and profits (as defined in § 1.965–2(g)(1)(ii)) in the inclusion year. Section 1.965–3 provides rules regarding the determination of section 965(c) deductions. Section 1.965–4 sets forth rules that disregard certain transactions for purposes of section 965. Sections 1.965–5 and 1.965–6 provide rules with respect to foreign tax credits. Section 1.965–7 provides rules regarding elections and payments. Section 1.965–8 provides rules regarding affiliated groups, including consolidated groups. Section 1.965–9 provides dates of applicability. *See also* §§ 1.962–1 and 1.962–2 (providing rules regarding the application of section 962) and 1.986(c)–1 (providing rules regarding the application of section 986(c)).

(2) *Scope.* Paragraph (b) of this section provides the general rules concerning section 965(a) inclusion amounts. Paragraph (c) of this section provides the general rule concerning section 965(c) deduction amounts. Paragraph (d) of this section provides a rule for specified foreign corporations that are not controlled foreign corporations. Paragraph (e) of this section treats certain controlled domestic partnerships as a foreign partnership for purposes of section 965. Paragraph (f) of this section provides definitions applicable for the section 965 regulations and §§ 1.962–1, 1.962–2, and 1.986(c)–1. Paragraph (g) of this section contains examples illustrating the general rules and definitions set forth in this section.

(b) *Section 965(a) inclusion amounts*—(1) *Inclusion of the pro rata share of the section 965(a) earnings amount.* For an inclusion year of a deferred foreign income corporation, the subpart F income of the deferred foreign income corporation (as otherwise determined for the inclusion year under section 952 and § 1.952–1) is increased by the section 965(a) earnings amount of the deferred foreign income corporation. *See* section 965(a). Accordingly, a section 958(a) U.S. shareholder with respect to a deferred foreign income corporation generally includes in gross income under section 951(a)(1) for the section 958(a) U.S. shareholder

inclusion year its pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017, and subject to reduction under section 965(b), paragraph (b)(2) of this section, and § 1.965–8(b). The amount of the section 958(a) U.S. shareholder's inclusion with respect to a deferred foreign income corporation as a result of section 965(a) and this paragraph (b)(1), as reduced under section 965(b), paragraph (b)(2) of this section, and § 1.965–8(b), as applicable, is referred to as the *section 965(a) inclusion amount.* Neither the section 965(a) earnings amount nor the section 965(a) inclusion amount is subject to the rules or limitations in section 952 or limited by the accumulated earnings and profits of the deferred foreign income corporation on the date of the inclusion.

(2) *Reduction by the allocable share of the aggregate foreign E&P deficit.* For purposes of determining a section 958(a) U.S. shareholder's section 965(a) inclusion amount with respect to a deferred foreign income corporation, the U.S. dollar amount of the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017, is reduced by the deferred foreign income corporation's allocable share of the section 958(a) U.S. shareholder's aggregate foreign E&P deficit. *See* section 965(b). If the section 958(a) U.S. shareholder is a member of a consolidated group, under § 1.965–8(e), all section 958(a) U.S. shareholders that are members of the consolidated group are treated as a single section 958(a) U.S. shareholder for purposes of this paragraph (b)(2).

(c) *Section 965(c) deduction amounts.* For a section 958(a) U.S. shareholder inclusion year, a section 958(a) U.S. shareholder is generally allowed a deduction in an amount equal to the section 965(c) deduction amount.

(d) *Treatment of specified foreign corporation as a controlled foreign corporation.* A specified foreign corporation described in section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section that is not otherwise a controlled foreign corporation is treated as a controlled foreign corporation solely for purposes of paragraph (b) of this section and sections 951, 961, and § 1.1411–10. *See* 965(e)(2).

(e) *Special rule for certain controlled domestic partnerships*—(1) *In general.* For purposes of the section 965 regulations, a controlled domestic partnership is treated as a foreign

partnership for purposes of determining the section 958(a) U.S. shareholder of a specified foreign corporation and the section 958(a) stock of the specified foreign corporation owned by the section 958(a) U.S. shareholder if the following conditions are satisfied—

(i) Without regard to this paragraph (e), the controlled domestic partnership is a section 958(a) U.S. shareholder of the specified foreign corporation and thus owns section 958(a) stock of the specified foreign corporation (*tested section 958(a) stock*);

(ii) If the controlled domestic partnership (and all other controlled domestic partnerships in the chain of ownership of the specified foreign corporation) were treated as foreign—

(A) The specified foreign corporation would continue to be a specified foreign corporation; and

(B) At least one United States shareholder of the specified foreign corporation—

(*1*) Would be treated as a section 958(a) U.S. shareholder of the specified foreign corporation; and

(*2*) Would be treated as owning (within the meaning of section 958(a)) tested section 958(a) stock of the specified foreign corporation through another foreign corporation that is a direct or indirect partner in the controlled domestic partnership.

(2) *Definition of a controlled domestic partnership.* For purposes of paragraph (e)(1) of this section, the term *controlled domestic partnership* means, with respect to a United States shareholder described in paragraph (e)(1)(ii)(B) of this section, a domestic partnership that is controlled by the United States shareholder and persons related to the United States shareholder. For purposes of this paragraph (e)(2), control is determined based on all the facts and circumstances, except that a partnership will be deemed to be controlled by a United States shareholder and related persons if those persons, in the aggregate, own (directly or indirectly through one or more partnerships) more than 50 percent of the interests in the partnership capital or profits. For purposes of this paragraph (e)(2), a related person is, with respect to a United States shareholder, a person that is related (within the meaning of section 267(b) or 707(b)(1)) to the United States shareholder.

(f) *Definitions.* This paragraph (f) provides definitions that apply for purposes of the section 965 regulations and §§ 1.962–1, 1.962–2, and 1.986(c)–1. Unless otherwise indicated, all amounts are expressed as positive numbers.

(1) *8 percent rate amount.* The term *8 percent rate amount* means, with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year, the excess, if any, of the section 958(a) U.S. shareholder's aggregate section 965(a) inclusion amount for the section 958(a) U.S. shareholder inclusion year over the amount of the section 958(a) U.S. shareholder's aggregate foreign cash position for the section 958(a) U.S. shareholder inclusion year as determined under § 1.965–3(c).

(2) *8 percent rate equivalent percentage.* The term *8 percent rate equivalent percentage* means, with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year, the percentage that would result in the 8 percent rate amount being subject to an 8 percent rate of tax determined by only taking into account a deduction equal to such percentage of such amount and the highest rate of tax specified in section 11 for the section 958(a) U.S. shareholder inclusion year. In the case of a section 958(a) U.S. shareholder inclusion year of a section 958(a) U.S. shareholder to which section 15 applies, the highest rate of tax under section 11 before the effective date of the change in rates and the highest rate of tax under section 11 after the effective date of such change will each be taken into account under the preceding sentence in the same proportions as the portion of the section 958(a) U.S. shareholder inclusion year that is before and after such effective date, respectively.

(3) *15.5 percent rate amount.* The term *15.5 percent rate amount* means, with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year, the amount of the section 958(a) U.S. shareholder's aggregate foreign cash position for the section 958(a) U.S. shareholder inclusion year as determined under § 1.965–3(c) to the extent it does not exceed the section 958(a) U.S. shareholder's aggregate section 965(a) inclusion amount for the section 958(a) U.S. shareholder inclusion year.

(4) *15.5 percent rate equivalent percentage.* The term *15.5 percent rate equivalent percentage,* with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year, has the meaning provided for the term "8 percent rate equivalent percentage" applied by substituting "15.5 percent rate amount" for "8 percent rate amount" and "15.5 percent rate of tax" for "8 percent rate of tax."

(5) *Accounts payable.* The term *accounts payable* means payables arising from the purchase of property described in section 1221(a)(1) or section 1221(a)(8) or the receipt of services from vendors or suppliers, provided the payables have a term upon issuance of less than one year.

(6) *Accounts receivable.* The term *accounts receivable* means receivables described in section 1221(a)(4) that have a term upon issuance of less than one year.

(7) *Accumulated post-1986 deferred foreign income*—(i) *In general.* The term *accumulated post-1986 deferred foreign income* means, with respect to a specified foreign corporation, the post-1986 earnings and profits of the specified foreign corporation except to the extent such earnings and profits—

(A) Are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1;

(B) If distributed, would, in the case of a controlled foreign corporation, be excluded from the gross income of a United States shareholder under section 959; or

(C) If distributed, would, in the case of a controlled foreign corporation that has shareholders that are not United States shareholders on an E&P measurement date, be excluded from the gross income of such shareholders under section 959 if such shareholders were United States shareholders, determined by applying the principles of Revenue Ruling 82–16, 1982–1 C.B. 106.

(ii) *Earnings and profits attributable to subpart F income in the same taxable year as an E&P measurement date.* For purposes of determining the accumulated post-1986 deferred foreign income of a specified foreign corporation as of an E&P measurement date, earnings and profits of the specified foreign corporation that are or would be, applying the principles of Revenue Ruling 82–16, 1982–1 C.B. 106, described in section 959(c)(2) by reason of subpart F income (as defined in section 952 without regard to section 965(a)) are described in section 965(d)(2)(B) and paragraph (f)(7)(i)(B) or (f)(7)(i)(C) of this section only to the extent that such income has been accrued by the specified foreign corporation as of the E&P measurement date. For rules regarding the interaction of sections 951, 956, 959, and 965 generally, see § 1.965–2(b).

(8) *Aggregate foreign cash position*—(i) *In general.* The term *aggregate foreign cash position* means, with respect to a section 958(a) U.S. shareholder that is

not a member of a consolidated group, the greater of—

(A) The aggregate of the section 958(a) U.S. shareholder's pro rata share of the cash position of each specified foreign corporation determined as of the final cash measurement date of the specified foreign corporation.

(B) One half of the sum of—

(*1*) The aggregate described in paragraph (f)(8)(i)(A) of this section determined as of the second cash measurement date of each specified foreign corporation, plus

(*2*) The aggregate described in paragraph (f)(8)(i)(A) of this section determined as of the first cash measurement date of each specified foreign corporation.

(ii) *Other rules.* For rules for determining the aggregate foreign cash position for a section 958(a) U.S. shareholder inclusion year of the section 965(a) U.S. shareholder, see § 1.965–3(c). For the rule for determining the aggregate foreign cash position of a section 958(a) U.S. shareholder that is a member of a consolidated group, see § 1.965–8(e)(3). For rules disregarding certain assets for purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder, see § 1.965–3(b).

(9) *Aggregate foreign E&P deficit.* The term *aggregate foreign E&P deficit* means, with respect to a section 958(a) U.S. shareholder, the lesser of—

(i) The aggregate of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of each E&P deficit foreign corporation, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017, or

(ii) The aggregate of the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of each deferred foreign income corporation, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017.

(10) *Aggregate section 965(a) inclusion amount.* The term *aggregate section 965(a) inclusion amount* means, with respect to a section 958(a) U.S. shareholder, the sum of all of the section 958(a) U.S. shareholder's section 965(a) inclusion amounts.

(11) *Allocable share.* The term *allocable share* means, with respect to a deferred foreign income corporation and an aggregate foreign E&P deficit of a section 958(a) U.S. shareholder, the product of the aggregate foreign E&P deficit and the ratio determined by dividing—

(i) The section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation,

translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017, by

(ii) The amount described in paragraph (f)(9)(ii) of this section with respect to the section 958(a) U.S. shareholder.

(12) *Bona fide hedging transaction.* The term *bona fide hedging transaction* means a hedging transaction that meets (or that would meet if the specified foreign corporation were a controlled foreign corporation) the requirements of a bona fide hedging transaction described in § 1.954–2(a)(4)(ii), except that in the case of a specified foreign corporation that is not a controlled foreign corporation, the identification requirements of § 1.954–2(a)(4)(ii)(B) do not apply.

(13) *Cash-equivalent asset.* The term *cash-equivalent asset* means any of the following assets—

(i) Personal property which is of a type that is actively traded and for which there is an established financial market;

(ii) Commercial paper, certificates of deposit, the securities of the Federal government and of any State or foreign government;

(iii) Any foreign currency;

(iv) A short-term obligation; or

(v) Derivative financial instruments, other than bona fide hedging transactions.

(14) *Cash-equivalent asset hedging transaction.* The term *cash-equivalent asset hedging transaction* means a bona fide hedging transaction identified on a specified foreign corporation's books and records as hedging a cash-equivalent asset.

(15) *Cash measurement dates.* The term *cash measurement dates* means, with respect to a specified foreign corporation, the first cash measurement date, the second cash measurement date, and the final cash measurement date, collectively, and each a *cash measurement date.*

(16) *Cash position*—(i) *General rule.* The term *cash position* means, with respect to a specified foreign corporation, the sum of—

(A) Cash held by the corporation;

(B) The net accounts receivable of the corporation; and

(C) The fair market value of the cash-equivalent assets held by the corporation.

(ii) *Fair market value of cash-equivalent assets.* For purposes of determining the fair market value of a cash-equivalent asset of a specified foreign corporation, the value of the cash-equivalent asset must be adjusted by the fair market value of any cash-equivalent asset hedging transaction

with respect to the cash-equivalent asset, but only to the extent that the cash-equivalent asset hedging transaction does not reduce the fair market value of the cash-equivalent asset below zero.

(iii) *Measurement of derivative financial instruments.* The amount of derivative financial instruments taken into account in determining the cash position of a specified foreign corporation is the aggregate fair market value of its derivative financial instruments that constitute cash-equivalent assets, provided such amount is not less than zero.

(iv) *Translation of cash position amounts.* The cash position of a specified foreign corporation with respect to a cash measurement date must be expressed in U.S. dollars. For this purpose, the amounts described in paragraph (f)(16)(i) must be translated (if necessary) into U.S. dollars using the spot rate on the relevant cash measurement date.

(17) *Deferred foreign income corporation*—(i) *In general.* The term *deferred foreign income corporation* means a specified foreign corporation that has accumulated post-1986 deferred foreign income greater than zero as of an E&P measurement date.

(ii) *Priority rule.* If a specified foreign corporation satisfies the definition of a deferred foreign income corporation under section 965(d)(1) and paragraph (f)(17)(i) of this section, it is classified solely as a deferred foreign income corporation and not also as an E&P deficit foreign corporation even if it otherwise satisfies the requirements of section 965(b)(3)(B) and paragraph (f)(22) of this section.

(18) *Derivative financial instrument.* The term *derivative financial instrument* includes a financial instrument that is one of the following—

(i) A notional principal contract,

(ii) An option contract,

(iii) A forward contract,

(iv) A futures contract,

(v) A short position in securities or commodities, or

(vi) Any financial instrument similar to one described in paragraphs (f)(18)(i) through (v) of this section.

(19) *Domestic pass-through entity.* The term *domestic pass-through entity* means a pass-through entity that is a United States person (as defined in section 7701(a)(30)).

(20) *Domestic pass-through owner.* The term *domestic pass-through owner* means, with respect to a domestic pass-through entity, a United States person (as defined in section 7701(a)(30)) that is a partner, shareholder, beneficiary, grantor, or owner, as the case may be,

in the domestic pass-through entity. Notwithstanding the preceding sentence, the term does not include a partner, shareholder, beneficiary, grantor, or owner of the domestic pass-through entity that is itself a domestic pass-through entity but does include any other United States person that is an indirect partner, shareholder, beneficiary, grantor, or owner of the domestic pass-through entity through one or more other pass-through entities.

(21) *Domestic pass-through owner share.* The term *domestic pass-through owner share*, with respect to a domestic pass-through owner and a domestic pass-through entity, the domestic pass-through owner's share of the aggregate section 965(a) inclusion amount and the section 965(c) deduction amount, as applicable, of the domestic pass-through entity, including the domestic pass-through owner's share of the aggregate section 965(a) inclusion amount and section 965(c) deduction amount, as applicable, of a domestic pass-through entity owned indirectly by the domestic pass-through owner through one or more other pass-through entities.

(22) *E&P deficit foreign corporation*—
(i) *In general.* The term *E&P deficit foreign corporation* means, with respect to a section 958(a) U.S. shareholder, a specified foreign corporation, other than a deferred foreign income corporation, if, as of November 2, 2017—

(A) The specified foreign corporation had a deficit in post-1986 earnings and profits,

(B) The corporation was a specified foreign corporation, and

(C) The shareholder was a United States shareholder of the corporation.

(ii) *Determination of deficit in post-1986 earnings and profits.* In the case of a specified foreign corporation that has post-1986 earnings and profits that include earnings and profits described in section 959(c)(1) or 959(c)(2) (or both) and a deficit in earnings and profits (including hovering deficits, as defined in § 1.367(b)–7(d)(2)(i)), the specified foreign corporation has a deficit in post-1986 earnings and profits described in paragraph (f)(22)(i)(A) of this section only to the extent the deficit in post-1986 earnings and profits exceeds the aggregate of its post-1986 earnings and profits described in section 959(c)(1) and 959(c)(2).

(23) *E&P measurement dates.* The term *E&P measurement dates* means November 2, 2017, and December 31, 2017, collectively, and each an *E&P measurement date.*

(24) *Final cash measurement date.* The term *final cash measurement date* means, with respect to a specified

foreign corporation, the close of the last taxable year of the specified foreign corporation that begins before January 1, 2018, and ends on or after November 2, 2017, if any.

(25) *First cash measurement date.* The term *first cash measurement date* means, with respect to a specified foreign corporation, the close of the last taxable year of the specified foreign corporation that ends after November 1, 2015, and before November 2, 2016, if any.

(26) *Inclusion year.* The term *inclusion year* means, with respect to a deferred foreign income corporation, the last taxable year of the deferred foreign income corporation that begins before January 1, 2018.

(27) *Net accounts receivable.* The term *net accounts receivable* means, with respect to a specified foreign corporation, the excess (if any) of—

(i) The corporation's accounts receivable, over

(ii) The corporation's accounts payable (determined consistent with the rules of section 461).

(28) *Pass-through entity.* The term *pass-through entity* means a partnership, S corporation, or any other person (whether domestic or foreign) other than a corporation to the extent that the income or deductions of the person are included in the income of one or more direct or indirect owners or beneficiaries of the person. For example, if a domestic trust is subject to federal income tax on a portion of its section 965(a) inclusion amount and its domestic pass-through owners are subject to tax on the remaining portion, the domestic trust is treated as a domestic pass-through entity with respect to such remaining portion.

(29) *Post-1986 earnings and profits*—
(i) *General rule.* The term *post-1986 earnings and profits* means, with respect to a specified foreign corporation and an E&P measurement date, the earnings and profits (including earnings and profits described in section 959(c)(1) and 959(c)(2)) of the specified foreign corporation (computed in accordance with sections 964(a) and 986, subject to § 1.965–4(f), and by taking into account only periods when the foreign corporation was a specified foreign corporation) accumulated in taxable years beginning after December 31, 1986, and determined—

(A) As of the E&P measurement date, except as provided in paragraph (f)(29)(ii) of this section, and

(B) Without diminution by reason of dividends distributed during the last taxable year of the foreign corporation that begins before January 1, 2018, other than dividends distributed to another

specified foreign corporation to the extent the dividends increase the post-1986 earnings and profits of the distributee specified foreign corporation.

(ii) *Foreign income taxes.* For purposes of determining a specified foreign corporation's post-1986 earnings and profits as of the E&P measurement date on November 2, 2017, in the case in which foreign income taxes (as defined in section 901(m)(5)) of the specified foreign corporation accrue after November 2, 2017, but on or before December 31, 2017, and during the specified foreign corporation's U.S. taxable year that includes November 2, 2017, the specified foreign corporation's post-1986 earnings and profits as of November 2, 2017, are reduced by the applicable portion of such foreign income taxes. For purposes of the preceding sentence, the applicable portion of the foreign income taxes is the amount of the taxes that are attributable to the portion of the taxable income (as determined under foreign law) that accrues on or before November 2, 2017.

(iii) *Deficits in earnings and profits.* Any deficit related to post-1986 earnings and profits, including a hovering deficit (as defined in § 1.367(b)–7(d)(2)(i)), of a specified foreign corporation is taken into account for purposes of determining the post-1986 earnings and profits (including a deficit) of the specified foreign corporation.

(30) *Pro rata share.* The term *pro rata share* means, with respect to a section 958(a) U.S. shareholder of a specified foreign corporation, a deferred foreign income corporation, or an E&P deficit foreign corporation, as applicable—

(i) With respect to the section 965(a) earnings amount of a deferred foreign income corporation, the portion of the section 965(a) earnings amount that would be treated as distributed to the section 958(a) U.S. shareholder under section 951(a)(2)(A) and § 1.951–1(e), determined as of the last day of the inclusion year of the deferred foreign income corporation;

(ii) With respect to the specified E&P deficit of an E&P deficit foreign corporation, the portion of the specified E&P deficit allocated to the section 958(a) U.S. shareholder by allocating the specified E&P deficit among the shareholders of the corporation's common stock and in proportion to the value of the common stock held by the shareholders, determined as of the last day of the last taxable year of the E&P deficit foreign corporation that begins before January 1, 2018; and

(iii) With respect to the cash position of a specified foreign corporation on a cash measurement date, the portion of the cash position that would be treated as distributed to the section 958(a) U.S. shareholder under section 951(a)(2)(A) and § 1.951–1(e) if the cash position were subpart F income, determined as of the close of the cash measurement date and without regard to whether the section 958(a) U.S. shareholder is a section 958(a) U.S. shareholder of the specified foreign corporation as of any other cash measurement date of the specified foreign corporation, including the final cash measurement date of the specified foreign corporation.

(31) *Second cash measurement date.* The term *second cash measurement date* means, with respect to a specified foreign corporation, the close of the last taxable year of the specified foreign corporation that ends after November 1, 2016, and before November 2, 2017, if any.

(32) *Section 958(a) stock.* The term *section 958(a) stock* means, with respect to a specified foreign corporation, a deferred foreign income corporation, or an E&P deficit foreign corporation, as applicable, stock of the corporation owned (directly or indirectly) by a United States shareholder within the meaning of section 958(a).

(33) *Section 958(a) U.S. shareholder.* The term *section 958(a) U.S. shareholder* means, with respect to a specified foreign corporation, a deferred foreign income corporation, or an E&P deficit foreign corporation, as applicable, a United States shareholder of such corporation that owns section 958(a) stock of the corporation.

(34) *Section 958(a) U.S. shareholder inclusion year.* The term *section 958(a) U.S. shareholder inclusion year* means the taxable year of a section 958(a) U.S. shareholder in which or with which the inclusion year of a deferred foreign income corporation ends.

(35) *Section 965 regulations.* The term *section 965 regulations* means the regulations under §§ 1.965–1 through 1.965–9, collectively.

(36) *Section 965(a) earnings amount.* The term *section 965(a) earnings amount* means, with respect to a deferred foreign income corporation, the greater of the accumulated post-1986 deferred foreign income of the deferred foreign income corporation as of the E&P measurement date on November 2, 2017, or the accumulated post-1986 deferred foreign income of the deferred foreign income corporation as of the E&P measurement date on December 31, 2017, determined in each case in the functional currency of the specified foreign corporation. If the functional currency of a specified foreign corporation changes between the two E&P measurement dates, the comparison must be made in the functional currency of the specified foreign corporation as of December 31, 2017, by translating the specified foreign corporation's accumulated post-1986 deferred foreign income as of November 2, 2017, into the new functional currency using the spot rate on November 2, 2017.

(37) *Section 965(a) inclusion.* The term *section 965(a) inclusion* means, with respect to a person and a deferred foreign income corporation, an amount included in income by the person by reason of section 965 with respect to the deferred foreign income corporation, whether because the person is a section 958(a) U.S. shareholder of the deferred foreign income corporation with a section 965(a) inclusion amount with respect to the deferred foreign income corporation or because the person is a domestic pass-through owner with respect to a domestic pass-through entity that is a section 958(a) U.S. shareholder of the deferred foreign income corporation and the person includes in income its domestic pass-through owner share of the section 965(a) inclusion amount of the domestic pass-through entity with respect to the deferred foreign income corporation.

(38) *Section 965(a) inclusion amount.* The term *section 965(a) inclusion amount* has the meaning provided in paragraph (b)(1) of this section.

(39) *Section 965(a) previously taxed earnings and profits.* The term *section 965(a) previously taxed earnings and profits* has the meaning provided in § 1.965–2(c).

(40) *Section 965(b) previously taxed earnings and profits.* The term *section 965(b) previously taxed earnings and profits* has the meaning provided in § 1.965–2(d).

(41) *Section 965(c) deduction.* The term *section 965(c) deduction* means, with respect to a person, an amount allowed as a deduction to the person by reason of section 965(c), whether because the person is a section 958(a) U.S. shareholder with a section 965(c) deduction amount or because the person is a domestic pass-through owner with respect to a domestic pass-through entity that is a section 958(a) U.S. shareholder and the person takes into account its domestic pass-through owner share of the section 965(c) deduction amount of the domestic pass-through entity.

(42) *Section 965(c) deduction amount.* The term *section 965(c) deduction amount* means an amount equal to the sum of—

(i) A section 958(a) U.S. shareholder's 8 percent rate equivalent percentage of the section 958(a) U.S. shareholder's 8 percent rate amount for the section 958(a) U.S. shareholder inclusion year, plus

(ii) The section 958(a) U.S. shareholder's 15.5 percent rate equivalent percentage of the section 958(a) U.S. shareholder's 15.5 percent rate amount for the section 958(a) U.S. shareholder inclusion year.

(43) *Short-term obligation.* The term *short-term obligation* means any obligation with a term upon issuance that is less than one year and any loan that must be repaid at the demand of the lender (or that must be repaid within one year of such demand), but does not include any accounts receivable.

(44) *Specified E&P deficit.* The term *specified E&P deficit* means, with respect to an E&P deficit foreign corporation, the amount of the deficit described in paragraph (f)(22)(i)(A) of this section.

(45) *Specified foreign corporation*—(i) *General rule.* Except as provided in paragraph (f)(45)(iii) of this section, the term *specified foreign corporation* means—

(A) A controlled foreign corporation, or

(B) A foreign corporation of which one or more domestic corporations is a United States shareholder.

(ii) *Special attribution rule.* Solely for purposes of determining whether a foreign corporation is a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section, stock owned, directly or indirectly, by or for a partner (*tested partner*) will not be considered as being owned by a partnership under sections 958(b) and 318(a)(3)(A) and § 1.958–2(d)(1)(i) if the tested partner owns less than five percent of the interests in the partnership's capital and profits. For purposes of the preceding sentence, an interest in the partnership owned by another partner will be considered as being owned by the tested partner under the principles of sections 958(b) and 318, as modified by this paragraph (f)(45)(ii), as if the interest in the partnership were stock.

(iii) *Passive foreign investment companies.* A foreign corporation that is a passive foreign investment company (as defined in section 1297) with respect to a United States shareholder and that is not a controlled foreign corporation is not a specified foreign corporation with respect to the United States shareholder.

(46) *Spot rate.* The term *spot rate* has the meaning provided in § 1.988–1(d).

(47) *United States shareholder.* The term *United States shareholder* has the meaning provided in section 951(b).

(g) *Examples.* The following examples illustrate the definitions and general rules set forth in this section.

*Example 1. Definition of specified foreign corporation.* (i) *Facts.* A, an individual, owns 100% of the stock of a domestic corporation, DC, and 1% of the interests in a partnership, PS. A United States citizen, USI, owns 10% of the interests in PS and 10% by vote and value of the stock of a foreign corporation, FC. The remaining 90% by vote and value of the stock of FC is owned by non-United States persons that are unrelated to A, USI, DC, and PS.

(ii) *Analysis.* (A) Absent the application of sections 958(b), 318(a)(3)(A), and 318(a)(3)(C), and § 1.958–2(d)(1)(i) and (iii), FC would not be a specified foreign corporation, because FC is not a controlled foreign corporation and there would be no domestic corporation that is a United States shareholder of FC. However, under sections 958(b) and 318(a)(3)(A) and § 1.958– 2(d)(1)(i), absent the special attribution rule in paragraph (f)(45)(ii) of this section, PS would be treated as owning 100% of the stock of DC and 10% of the stock of FC. As a result, under sections 958(b), 318(a)(5)(A), and 318(a)(3)(C), and § 1.958–2(f)(1)(i) and (d)(1)(iii), DC would be treated as owning the stock of FC treated as owned by PS, and thus DC would be a United States shareholder with respect to FC, causing FC to be a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section. The results would be the same whether A or PS or both are domestic or foreign persons.

(B) Under the special attribution rule in paragraph (f)(45)(ii) of this section, solely for purposes of determining whether a foreign corporation is a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section, the stock of DC owned by A is not considered as being owned by PS under sections 958(b) and 318(a)(3)(A) and § 1.958–2(d)(1)(i), because A owns less than 5% of the interests in PS's capital and profits. Accordingly, FC is not a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section.

*Example 2. Definition of specified foreign corporation.* (i) *Facts.* The facts are the same as in paragraph (i) of *Example 1* of this paragraph (g), except that A is a corporation wholly owned by B, and B directly owns 4% of the interests in PS.

(ii) *Analysis.* Applying the principles of sections 958(b) and 318, as modified by paragraph (f)(45)(ii) of this section, as if the interest in PS were stock, A is treated as owning the interests in PS owned by B (in addition to the 1% interest in PS that A owns directly), and thus A is not treated as owning less than 5% of the interests in PS's capital and profits. Accordingly, the special attribution rule in paragraph (f)(45)(ii) of this section does not apply, and PS is treated as owning A's stock of DC for purposes of determining whether FC is a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section. Accordingly, under the analysis described in paragraph (ii)(A) of *Example 1* of this paragraph (g), FC is a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section.

*Example 3. Determination of accumulated post-1986 deferred foreign income.* (i) *Facts.* USP, a domestic corporation, and FP, a foreign corporation unrelated to USP, have owned 70% and 30% respectively, by vote and value, of the only class of stock of FS, a foreign corporation, from January 1, 2016, until December 31, 2017. USP and FS both have a calendar year taxable year. FS had no income until its taxable year ending December 31, 2016, in which it had 100u of income, all of which constituted subpart F income, and USP included 70u in income with respect to FS under section 951(a)(1) for such year. FS earned no income in 2017. Therefore, FS's post-1986 earnings and profits are 100u as of both E&P measurement dates.

(ii) *Analysis.* Because USP included 70u in income with respect to FS under section 951(a)(1), 70u of such post-1986 earnings and profits would, if distributed, be excluded from the gross income of USP under section 959. Thus, FS's accumulated post-1986 deferred foreign income would be reduced by 70u pursuant to section 965(d)(2)(B) and paragraph (f)(7)(i)(B) of this section. Furthermore, under paragraph (f)(7)(i)(C) of this section, the accumulated post-1986 deferred foreign income of FS is reduced by amounts that would be excluded from the gross income of FP if FP were a United States shareholder, consistent with the principles of Revenue Ruling 82–16. Accordingly, FS's accumulated post-1986 deferred foreign income is reduced by the remaining 30u of the 100u of post-1986 earnings and profits to which USP's 70u of section 951(a)(1) income inclusions were attributable. As a result, FS's accumulated post-1986 deferred foreign income is 0u (100u minus 70u minus 30u).

*Example 4. Determination of status as a deferred foreign income corporation or an E&P deficit foreign corporation; specified foreign corporation is solely a deferred foreign income corporation.* (i) *Facts.* USP, a domestic corporation, owns all of the stock of FS, a foreign corporation. As of November 2, 2017, FS has a deficit in post-1986 earnings and profits of 150u. As of December 31, 2017, FS has 200u of post-1986 earnings and profits. FS does not have earnings and profits that are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1, or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder.

(ii) *Analysis.* FS's accumulated post-1986 deferred foreign income is equal to its post-1986 earnings and profits because no adjustment to post-1986 earnings and profits is made under section 965(d)(2) or § 1.965– 1(f)(7). Under paragraph (f)(17)(i) of this section, FS is a deferred foreign income corporation because FS has accumulated post-1986 deferred foreign income greater than zero as of the E&P measurement date on December 31, 2017. In addition, under paragraph (f)(17)(ii) of this section, because FS is a deferred foreign income corporation, FS is not also an E&P deficit foreign corporation, notwithstanding that FS has a deficit in post-1986 earnings and profits as of the E&P measurement date on November 2, 2017.

*Example 5. Determination of status as a deferred foreign income corporation or an E&P deficit foreign corporation; specified foreign corporation is neither a deferred foreign income corporation nor an E&P deficit foreign corporation.* (i) *Facts.* USP, a domestic corporation, owns all of the stock of FS, a foreign corporation. As of both November 2, 2017, and December 31, 2017, FS has 100u of earnings and profits described in section 959(c)(2) and a deficit of 90u in earnings and profits described in section 959(c)(3), all of which were accumulated in taxable years beginning after December 31, 1986, while FS was a specified foreign corporation. Accordingly, as of both November 2, 2017, and December 31, 2017, FS has 10u of post-1986 earnings and profits.

(ii) *Analysis.* (A) *Determination of status as a deferred foreign income corporation.* Under paragraph (f)(17) of this section, for purposes of determining whether FS is a deferred foreign income corporation, a determination must be made whether FS has accumulated post-1986 deferred foreign income greater than zero as of either the E&P measurement date on November 2, 2017, or the E&P measurement date on December 31, 2017. Under section 965(d)(2) and paragraph (f)(7) of this section, FS's accumulated post-1986 deferred foreign income is its post-1986 earnings and profits, except to the extent such earnings and profits are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1, or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder. Disregarding FS's 100u of post-1986 earnings and profits described in paragraph (f)(7)(i)(B) of this section, FS has a 90u deficit in accumulated post-1986 deferred foreign income as of both E&P measurement dates. Accordingly, FS does not have accumulated post-1986 deferred foreign income greater than zero as of either E&P measurement date and therefore FS is not a deferred foreign income corporation.

(B) *Determination of status as an E&P deficit foreign corporation.* Under paragraph (f)(22)(i) of this section, for purposes of determining whether FS is an E&P deficit foreign corporation, a determination must be made whether FS has a deficit in post-1986 earnings and profits as of the E&P measurement date on November 2, 2017. Under paragraph (f)(22)(ii) of this section, because the deficit in the earnings and profits of FS described in section 959(c)(3) of 90u does not exceed the earnings and profits of FS described in section 959(c)(2) of 100u, FS

does not have a deficit in post-1986 earnings and profits as of the E&P measurement date on November 2, 2017, and therefore FS is not an E&P deficit foreign corporation. Accordingly, FS is neither a deferred foreign income corporation nor an E&P deficit foreign corporation.

*Example 6. Application of currency translation rules.* (i) *Facts.* As of November 2, 2017, and December 31, 2017, USP, a domestic corporation, owns all of the stock of CFC1, an E&P deficit foreign corporation with the "u" as its functional currency; CFC2, an E&P deficit foreign corporation with the "v" as its functional currency; CFC3, a deferred foreign income corporation with the "y" as its functional currency; and CFC4, a deferred foreign income corporation with the "z" as its functional currency. USP, CFC1, CFC2, CFC3, and CFC4 each have a calendar year taxable year. As of December 31, 2017, 1u = $1, .75v = $1, .50y = $1, and .25z = $1. CFC1 has a specified E&P deficit of 100u, CFC2 has a specified E&P deficit of 120v, CFC3 has a section 965(a) earnings amount of 50y, and CFC4 has a section 965(a) earnings amount of 75z.

(ii) *Analysis.* (A) Under paragraph (f)(38) of this section, for purposes of determining USP's section 965(a) inclusion amounts with respect to CFC3 and CFC4, the section 965(a) earnings amount of each of CFC3 and CFC4 is translated into U.S. dollars at the spot rate on December 31, 2017, which equals $100 (50y at .50y = $1) and $300 (75z at .25z = $1), respectively. Furthermore, USP's pro rata share of the section 965(a) earnings amounts, as translated, is $100 and $300, respectively, or 100% of each section 965(a) earnings amount.

(B) Under paragraph (f)(9) of this section, for purposes of determining USP's aggregate foreign E&P deficit, the specified E&P deficit of each of CFC1 and CFC2 is translated into U.S. dollars at the spot rate on December 31, 2017, which equals $100 (100u at 1u = $1) and $160 (120v at .75v = $1), respectively.

Furthermore USP's pro rata share of each specified E&P deficit, as translated, is $100 and $160, respectively, or 100% of each specified E&P deficit. Therefore, USP's aggregate foreign E&P deficit is $260.

(C) Under section 965(b)(1) and paragraph (b)(2) of this section, for purposes of determining USP's section 965(a) inclusion amount with respect to each of CFC3 and CFC4, the U.S. dollar amount of USP's pro rata share of the section 965(a) earnings amount of each of CFC3 and CFC4 is reduced by each of CFC3 and CFC4's allocable share of USP's aggregate foreign E&P deficit. Under section 965(b)(2) and paragraph (f)(11) of this section, CFC3's allocable share of USP's aggregate foreign E&P deficit of $260 is $65 ($260 × ($100/$400)) and CFC4's allocable share of USP's aggregate foreign E&P deficit is $195 ($260 × ($300/400)). After reduction under section 965(b)(1) and paragraph (b)(2) of this section, the section 965(a) inclusion amount of USP with respect to CFC3 is $35 ($100 − $65) and the section 965(a) inclusion amount of USP with respect to CFC4 is $105 ($300 − $195). Under § 1.965–2(c), the section 965(a) previously taxed earnings and profits of each of CFC3 and CFC4, translated into the respective functional currencies of CFC3 and CFC4 at the spot rate on December 31, 2017, are 17.5y ($35 at .50y = $1) and 26.25z ($105 at .25z = $1), respectively. Under § 1.965–6(b), for purposes of applying section 960(a)(1), the amounts treated as a dividend paid by each of CFC3 and CFC4, translated into the respective functional currencies of CFC3 and CFC4 at the spot rate on December 31, 2017, are 17.5y ($35 at .50y = $1) and 26.25z ($105 at .25z = $1).

(D) For purposes of determining the section 965(b) previously taxed earnings and profits of each of CFC3 and CFC4 under section 965(b)(4)(A) and § 1.965–2(d)(1) as a result of the reduction to USP's section 965(a) inclusion amounts with respect to CFC3 and CFC4, the amount of the aggregate foreign

E&P deficit of USP allocated to each of CFC3 and CFC4 under section 965(b)(2) and paragraph (f)(11) of this section, translated into the respective functional currencies of CFC3 and CFC4 at the spot rate on December 31, 2017, is 32.5y ($65 at .50y = $1) and 48.75z ($195 at .25z = $1), respectively.

*Example 7. Determination of cash measurement dates and pro rata shares of cash positions.* (i) *Facts.* Except as otherwise provided, for all relevant periods, USP, a domestic corporation, has owned directly at least 10% of the stock of CFC1, CFC2, CFC3, and CFC4, each a foreign corporation. CFC1 and CFC2 have calendar year taxable years. CFC3 and CFC4 have taxable years that end on November 30. No entity has a short taxable year, except as a result of the transactions described below.

(A) USP transferred all of its stock of CFC2 to an unrelated person on June 30, 2016, at which point USP ceased to be a United States shareholder with respect to CFC2.

(B) CFC4 dissolved on December 30, 2010, and, as a result, its final taxable year ended on December 30, 2010.

(ii) *Analysis.* Each of CFC1, CFC2, CFC3, and CFC4 is a specified foreign corporation with respect to USP, subject to the sale of CFC2 on June 30, 2016, and the dissolution of CFC4 on December 30, 2010. Under the definition of aggregate foreign cash position in paragraph (f)(8)(i) of this section, the definition of pro rata share of a cash position in paragraph (f)(30)(iii) of this section, and the definitions of the final cash measurement date, second cash measurement date, and first cash measurement date in paragraphs (f)(24), (25), and (31) of this section, the cash measurement dates of the specified foreign corporations to be taken into account by USP in determining its aggregate foreign cash position are summarized in the following table:

## CASH MEASUREMENT DATES

| | Final | Second | First |
|---|---|---|---|
| CFC1 | December 31, 2017 | December 31, 2016 | December 31, 2015. |
| CFC2 | N/A | N/A | December 31, 2015. |
| CFC3 | November 30, 2018 | November 30, 2016 | November 30, 2015. |
| CFC4 | N/A | N/A | N/A. |

*Example 8. Determination of section 958(a) U.S. shareholder in case of a controlled domestic partnership.* (i) *Facts.* USP, a domestic corporation, owns all of the stock of CFC1 and CFC2. CFC1 and CFC2 own 60% and 40%, respectively, of the interests in the capital and profits of DPS, a domestic partnership. DPS owns all of the stock of CFC3 and CFC4. This ownership structure has existed since the date of formation of CFC1, CFC2, CFC3, and CFC4. CFC1, CFC2, CFC3, and CFC4 are each a foreign corporation. USP, DPS, CFC1, CFC2, CFC3, and CFC4 have calendar year taxable years. On both E&P measurement dates, CFC3 has 50u of accumulated post-1986 deferred foreign income. On both E&P measurement dates, CFC4 has a deficit in post-1986

earnings and profits of 30u. On all cash measurement dates, CFC1, CFC2, and CFC3 each have a cash position of 0u, and CFC4 has a cash position of 200u.

(ii) *Analysis.* DPS is a controlled domestic partnership with respect to USP within the meaning of paragraph (e)(2) of this section, because more than 50% of the interests in its capital and profits are owned by persons related to USP within the meaning of section 267(b), CFC1 and CFC2, and thus DPS is controlled by USP and related persons. Without regard to paragraph (e) of this section, DPS is a section 958(a) U.S. shareholder of CFC3 and CFC4, each of which is a controlled foreign corporation. If DPS were treated as foreign, CFC3 and CFC4 would each continue to be a controlled

foreign corporation, and USP would be treated as a section 958(a) U.S. shareholder of each of CFC3 and CFC4, and would be treated as owning (within the meaning of section 958(a)) tested section 958(a) stock of each of CFC3 and CFC4 through CFC1 and CFC2, which are both partners in DPS. Thus, under paragraph (e)(1) of this section, DPS is treated as a foreign partnership for purposes of determining the section 958(a) U.S. shareholder of both CFC3 and CFC4 and the section 958(a) stock of both CFC3 and CFC4 owned by the section 958(a) U.S. shareholder. Thus, USP's pro rata share of CFC3's section 965(a) earnings amount is 50u, and its pro rata share of CFC4's specified E&P deficit is 30u. USP's aggregate foreign cash position is 200u. DPS is not a

section 958(a) shareholder with respect to either CFC3 or CFC4.

■ **Par. 6.** Section 1.965–2 is added to read as follows:

### § 1.965–2  Adjustments to earnings and profits and basis.

(a) *Scope.* This section provides rules relating to adjustments to earnings and profits and basis to determine and account for the application of section 965(a) and (b) and § 1.965–1(b) and a rule that limits the amount of gain recognized under section 961(b)(2) by reason of distributions attributable to section 965 previously taxed earnings and profits (as defined in paragraph (g)(1)(ii) of this section) in the inclusion year. Paragraph (b) of this section provides rules relating to adjustments to earnings and profits of a specified foreign corporation in its last taxable year that begins before January 1, 2018, for purposes of applying sections 959 and 965. Paragraph (c) of this section provides rules regarding adjustments to earnings and profits by reason of section 965(a). Paragraph (d) of this section provides rules regarding adjustments to earnings and profits by reason of section 965(b). Paragraph (e) provides rules regarding adjustments to basis by reason of section 965(a). Paragraph (f) of this section provides an election to make certain adjustments to basis corresponding to adjustments to earnings and profits by reason of section 965(b). Paragraph (g) of this section provides rules that limit the amount of gain recognized in connection with the application of section 961(b)(2) and that require related reductions in basis. Paragraph (h) of this section provides rules regarding basis adjustments. Paragraph (i) of this section provides definitions that apply for purposes of this section. Paragraph (j) of this section provides examples illustrating the application of this section.

(b) *Determination of and adjustments to earnings and profits in the last taxable year of a specified foreign corporation that begins before January 1, 2018, for purposes of applying sections 959 and 965.* For the last taxable year of a specified foreign corporation that begins before January 1, 2018, and the taxable year of a section 958(a) U.S. shareholder in which or with which such year ends, the adjustments to earnings and profits described in paragraphs (b)(1) through (b)(5) of this section are applied in sequence.

(1) The subpart F income of the specified foreign corporation is determined without regard to section 965(a), and earnings and profits of the specified foreign corporation that are

described in section 959(c)(2) with respect to the section 958(a) U.S. shareholder are increased to the extent of the section 965(a) U.S. shareholder's inclusion under section 951(a)(1)(A) without regard to section 965(a).

(2) The treatment of a distribution by the specified foreign corporation to another specified foreign corporation that is made before January 1, 2018, is determined under section 959.

(3) Each of the post-1986 earnings and profits (including a deficit) of the specified foreign corporation, the accumulated post-1986 deferred foreign income of the specified foreign corporation, the section 965(a) earnings amount of the specified foreign corporation, and the section 965(a) inclusion amount with respect to the specified foreign corporation, if any, is determined, and the earnings and profits (including a deficit) of the specified foreign corporation are adjusted as provided in paragraphs (c) and (d) of this section. For a rule disregarding subpart F income earned after an E&P measurement date for purposes of calculating accumulated post-1986 deferred foreign income as of the E&P measurement date, see § 1.965–1(f)(7)(ii).

(4) The treatment of all distributions from the specified foreign corporation other than those described in paragraph (b)(2) of this section is determined under section 959.

(5) An amount is determined under section 956 with respect to the specified foreign corporation and the section 958(a) U.S. shareholder; earnings and profits of the specified foreign corporation described in sections 959(c)(2) with respect to the section 958(a) U.S. shareholder are reclassified as earnings and profits described in section 959(c)(1) with respect to the section 958(a) U.S. shareholder to the extent the amount determined under section 956 would, but for section 959(a)(2), be included by the section 958(a) U.S. shareholder under section 951(a)(1)(B); and earnings and profits described in section 959(c)(1) with respect to the section 958(a) U.S. shareholder are further increased to the extent of the section 958(a) U.S. shareholder's inclusion under section 951(a)(1)(B).

(c) *Adjustments to earnings and profits by reason of section 965(a).* The earnings and profits of a deferred foreign income corporation described in section 959(c)(2) with respect to a section 958(a) U.S. shareholder are increased by an amount equal to the section 965(a) inclusion amount of the section 958(a) U.S. shareholder with respect to the deferred foreign income

corporation, if any, translated (if necessary) into the functional currency of the deferred foreign income corporation using the spot rate on December 31, 2017, provided the section 965(a) inclusion amount is included in income by the section 958(a) U.S. shareholder. For purposes of the section 965 regulations, the earnings and profits described in section 959(c)(2) by reason of this paragraph (c) and the earnings and profits initially described in section 959(c)(2) by reason of this paragraph (c) but subsequently reclassified as earnings and profits described in section 959(c)(1), if any, are referred to as *section 965(a) previously taxed earnings and profits.* Furthermore, the earnings and profits (including a deficit) of the deferred foreign income corporation that are described in section 959(c)(3) (or that would be described in section 959(c)(3) but for the application of section 965(a) and the section 965 regulations) are reduced (or, in the case of a deficit, increased) by an amount equal to the section 965(a) previously taxed earnings and profits.

(d) *Adjustments to earnings and profits by reason of section 965(b)—*(1) *Adjustments to earnings and profits described in section 959(c)(2) and (c)(3) of deferred foreign income corporations.* The earnings and profits of a deferred foreign income corporation described in section 959(c)(2) with respect to a section 958(a) U.S. shareholder are increased by an amount equal to the reduction to the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation under section 965(b), § 1.965–1(b)(2), and § 1.965–8(b), as applicable, translated (if necessary) into the functional currency of the deferred foreign income corporation using the spot rate on December 31, 2017, provided the section 958(a) U.S. shareholder includes the section 965(a) inclusion amount with respect to the deferred foreign income corporation in income. For purposes of the section 965 regulations, the earnings and profits described in section 959(c)(2) by reason of this paragraph (d) and the earnings and profits initially described in section 959(c)(2) by reason of this paragraph (d) but subsequently reclassified as earnings and profits described in section 959(c)(1) are referred to as *section 965(b) previously taxed earnings and profits.* Furthermore, the earnings and profits (including a deficit) described in section 959(c)(3) of the deferred foreign income corporation (or that would be described in section 959(c)(3) but for the application of section 965(b) and the

section 965 regulations) are reduced (or, in the case of a deficit, increased) by an amount equal to the section 965(b) previously taxed earnings and profits.

(2) *Adjustments to earnings and profits described in section 959(c)(3) of E&P deficit foreign corporations*—(i) *Increase in earnings and profits by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit taken into account*—(A) *In general.* For an E&P deficit foreign corporation's last taxable year that begins before January 1, 2018, the earnings and profits of the E&P deficit foreign corporation described in section 959(c)(3) are increased by an amount equal to the portion of a section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under section 965(b), § 1.965–1(b)(2), and § 1.965–8(b), as determined under paragraph (d)(2)(ii) of this section, translated (if necessary) into the functional currency of the E&P deficit foreign corporation using the spot rate on December 31, 2017. For purposes of section 316, the earnings and profits of the E&P deficit foreign corporation attributable to the increase described in the preceding sentence are not treated as earnings and profits of the taxable year described in section 316(a)(2). See also § 1.965–6(c)(3) for the timing of this adjustment for purposes of determining a deemed paid credit allowed under sections 902 and 960.

(B) *Reduction of a qualified deficit.* For purposes of section 952, a section 958(a) U.S. shareholder's pro rata share of the earnings and profits of an E&P deficit foreign corporation is increased by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under section 965(b), § 1.965–1(b)(2), or § 1.965–8(b), as applicable, as determined under paragraph (d)(2)(ii) of this section, translated (if necessary) into the functional currency of the E&P deficit foreign corporation using the spot rate on December 31, 2017, and such increase is attributable to the same activity to which the deficit so taken into account was attributable.

(ii) *Determination of portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit taken into account*—(A) *In general.* The portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit of an E&P deficit foreign corporation taken into account under section 965(b), § 1.965–1(b)(2), or § 1.965–8(b), as applicable, is 100

percent of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit if either of the following conditions is satisfied:

(*1*) The section 958(a) U.S. shareholder (including a consolidated group of which the section 958(a) U.S. shareholder is a member) does not have an excess aggregate foreign E&P deficit (as defined in § 1.965–8(f)(7)(i)), or

(*2*) If the section 958(a) U.S. shareholder is a member of an affiliated group in which not all members are members of the same consolidated group, the amount described in § 1.965–8(f)(1)(i)(B) with respect to the affiliated group is equal to or greater than the amount described § 1.965–8(f)(1)(i)(A).

(B) *Designation of portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit taken into account.* If neither the condition in paragraph (d)(2)(ii)(A)(*1*) nor the condition in paragraph (d)(2)(ii)(A)(*2*) is satisfied with respect to a section 958(a) U.S. shareholder, then the section 958(a) U.S. shareholder must designate the portion taken into account by reporting to each E&P deficit foreign corporation of the section 958(a) U.S. shareholder, and maintaining in its books and records a statement setting forth, the following information—

(*1*) The portion of the section 958(a) shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under section 965(b), § 1.965–1(b)(2), or § 1.965–8(b), as designated under § 1.965–8(c), as applicable, and

(*2*) In the case of an E&P deficit foreign corporation that has a qualified deficit (as determined under section 952 and § 1.952–1), the portion (if any) of the section 958(a) shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under paragraph (d)(2)(ii)(B)(*1*) of this section that is attributable to a qualified deficit, including the qualified activities to which such portion is attributable.

(e) *Adjustments to basis by reason of section 965(a)*—(1) *General rule.* Except as provided in paragraph (e)(2) of this section, a section 958(a) U.S. shareholder's basis in section 958(a) stock of a deferred foreign income corporation, or a section 958(a) U.S. shareholder's basis in applicable property with respect to a deferred foreign income corporation, is increased by the section 958(a) U.S. shareholder's section 965(a) inclusion amount with respect to the deferred foreign income corporation included in income by the section 958(a) U.S. shareholder. *See section 961(a).*

(2) [Reserved]

(f) *Adjustments to basis by reason of section 965(b)*—(1) *In general.* Except as provided in paragraph (f)(2) of this section, no adjustments to basis of stock or property are made under section 961 (or any other provision of the Code) to take into account the reduction to a section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of a deferred foreign income corporation under section 965(b), § 1.965–1(b)(2), or § 1.965–8(b), as applicable.

(2) *Election to make adjustments to basis to account for the application of section 965(b)*—(i) *In general.* If a section 958(a) U.S. shareholder makes the election as provided in this paragraph (f)(2), the adjustments to basis described in paragraph (f)(2)(ii) of this section are made with respect to each deferred foreign income corporation and each E&P deficit foreign corporation in which the section 958(a) U.S. shareholder owns section 958(a) stock.

(ii) *Basis adjustments*—(A) *Increase in basis with respect to a deferred foreign income corporation.* Except as provided in paragraph (f)(2)(ii)(C) of this section, a section 958(a) U.S. shareholder's basis in section 958(a) stock of a deferred foreign income corporation, or a section 958(a) U.S. shareholder's basis in applicable property with respect to a deferred foreign income corporation, is increased by an amount equal to the section 965(b) previously taxed earnings and profits of the deferred foreign income corporation with respect to the section 958(a) U.S. shareholder, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017.

(B) *Reduction in basis with respect to an E&P deficit foreign corporation.* Except as provided in paragraph (f)(2)(ii)(C) of this section, a section 958(a) U.S. shareholder's basis in section 958(a) stock of an E&P deficit foreign corporation, or a section 958(a) U.S. shareholder's basis in applicable property with respect to an E&P deficit foreign corporation, is reduced by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under section 965(b), § 1.965–1(b)(2), and § 1.965–8(b), as applicable, as determined under paragraph (d)(2)(ii) of this section, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017.

(C) *Section 962 election.* [Reserved]

(iii) *Rules regarding the election*—(A) *Consistency requirement.* In order for the election described in this paragraph (f)(2) to be effective, a section 958(a)

U.S. shareholder and each person that is a section 958(a) U.S. shareholder that is related to the section 958(a) U.S. shareholder must make the election described in this paragraph (f)(2). For purposes of this paragraph (f)(2)(iii)(A), a person is treated as related to a section 958(a) U.S. shareholder if the person bears a relationship to the section 958(a) U.S. shareholder described in section 267(b) or 707(b).

(B) *Manner of making election—(1) Timing—(i) In general.* Except as provided in paragraph (f)(2)(iii)(B)(1)(ii) of this section, the election described in this paragraph (f)(2) must be made no later than the due date (taking into account extensions, if any) for the section 958(a) U.S. shareholder's return for the first taxable year that includes the last day of the last taxable year of a deferred foreign income corporation or E&P deficit foreign corporation of the shareholder that begins before January 1, 2018. Relief is not available under § 301.9100–2 or 301.9100–3 to file a late election.

*(ii) Transition rule.* If the due date referred to in paragraph (f)(2)(iii)(B)(1)(i) of this section occurs before September 10, 2018, the election must be made by October 9, 2018.

(2) *Election statement.* Except as otherwise provided in publications, forms, instructions, or other guidance, to make the election provided in this paragraph (f)(2), a section 958(a) U.S. shareholder must attach a statement, signed under penalties of perjury, to its return for the first taxable year that includes the last day of the last taxable year of a deferred foreign income corporation or E&P deficit foreign corporation of the shareholder that begins before January 1, 2018. The statement must include the section 958(a) U.S. shareholder's name and taxpayer identification number and a statement that the section 958(a) U.S. shareholder and all related persons, as defined in paragraph (f)(2)(iii)(A) of this section, make the election provided in this paragraph (f)(2).

(g) *Gain reduction rule—(1) Reduction in gain recognized under section 961(b)(2) by reason of distributions attributable to section 965 previously taxed earnings and profits in the inclusion year—(i) In general.* If a section 958(a) U.S. shareholder receives a distribution from a deferred foreign income corporation (including through a chain of ownership described under section 958(a)) during the inclusion year of the deferred foreign income corporation that is attributable to section 965 previously taxed earnings and profits of the deferred foreign income corporation, then the amount of

gain that otherwise would be recognized under section 961(b)(2) by the section 958(a) U.S. shareholder with respect to the section 958(a) U.S. shareholder's section 958(a) stock of the deferred foreign income corporation or interest in applicable property with respect to the deferred foreign income corporation is reduced (but not below zero) by an amount equal to the section 965 previously taxed earnings and profits of the deferred foreign income corporation with respect to the section 958(a) U.S. shareholder.

(ii) *Definition of section 965 previously taxed earnings and profits.* For purposes of paragraph (g)(1)(i) of this section, the term *section 965 previously taxed earnings and profits* means, with respect to a deferred foreign income corporation and a section 958(a) U.S. shareholder, the sum of the section 965(a) previously taxed earnings and profits of the deferred foreign income corporation with respect to the section 958(a) U.S. shareholder, and, if the section 958(a) U.S. shareholder has made the election described in paragraph (f)(2) of this section, the section 965(b) previously taxed earnings and profits of the deferred foreign income corporation with respect to the section 958(a) U.S. shareholder.

(2) *Reduction in basis by an amount equal to the gain reduction amount.* If a section 958(a) U.S. shareholder does not recognize gain under section 961(b)(2) by reason of paragraph (g)(1) of this section with respect to a distribution from a deferred foreign income corporation (including through a chain of ownership described under section 958(a)), the section 958(a) U.S. shareholder's basis in the section 958(a) stock of the deferred foreign income corporation, or the section 958(a) U.S. shareholder's basis in the applicable property with respect to the deferred foreign income corporation, is reduced by the amount of gain that would otherwise be recognized by the section 958(a) U.S. shareholder without regard to paragraph (g)(1) of this section.

(h) *Rules of application for specified basis adjustments.* This paragraph (h) applies for purposes of making any adjustment to the basis of section 958(a) stock or applicable property with respect to a specified foreign corporation described in paragraph (e), (f)(2), or (g)(2) of this section (collectively, *specified basis adjustments,* and each a *specified basis adjustment*).

(1) *Timing of basis adjustments.* A specified basis adjustment to section 958(a) stock or applicable property with respect to a specified foreign

corporation is made as of the close of the last day of the last taxable year of the specified foreign corporation that begins before January 1, 2018.

(2) *Netting of basis adjustments.* If one or more specified basis adjustments occur on the same day with respect to the same section 958(a) stock or applicable property, a single basis adjustment is made as of the close of such day with respect to such stock or applicable property in an amount equal to the net amount, if any, of the increase or reduction, as applicable.

(3) *Gain recognition for reduction in excess of basis.* The excess (if any) of a net reduction in basis with respect to section 958(a) stock or applicable property of a section 958(a) U.S. shareholder by reason of one or more specified basis adjustments, over the section 958(a) U.S. shareholder's basis in such stock or applicable property without regard to the specified basis adjustments is treated as gain from the sale or exchange of property.

(4) *Adjustments with respect to each share—(i) Section 958(a) stock.* If a specified basis adjustment is made with respect to section 958(a) stock, the specified basis adjustment is made with respect to each share of the section 958(a) stock in a manner consistent with the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount or specified E&P deficit, as applicable, by reason of such share.

(ii) *Applicable property.* If a specified basis adjustment is made with respect to applicable property, the adjustment is made with respect to the applicable property in a manner consistent with the application of paragraph (h)(4)(i) of this section.

(5) *Stock or property for which adjustments are made—(i) In general.* Except as provided in paragraph (h)(5)(ii) of this section, a specified basis adjustment is made solely with respect to section 958(a) stock owned by the section 958(a) U.S. shareholder within the meaning of section 958(a)(1)(A) or applicable property owned directly by the section 958(a) U.S. shareholder.

(ii) *Special rule for an interest in a foreign pass-through entity.* If the applicable property of the section 958(a) U.S. shareholder described in paragraph (h)(5)(i) of this section is an interest in a foreign pass-through entity, then, for purposes of determining the foreign pass-through entity's basis in section 958(a) stock or applicable property, as applicable, with respect to the section 958(a) U.S. shareholder, a specified basis adjustment is made with respect to section 958(a) stock or applicable property of the section 958(a) U.S. shareholder owned through the foreign

pass-through entity in the same manner as if the section 958(a) stock or applicable property were owned directly by the section 958(a) U.S. shareholder. In the case of tiered foreign pass-through entities, this paragraph (h)(5)(ii) applies with respect to each foreign pass-through entity.

(i) *Definitions.* This paragraph (i) provides definitions that apply for purposes of this section.

(1) *Applicable property.* The term *applicable property* means, with respect to a section 958(a) U.S. shareholder and a specified foreign corporation, property owned by the section 958(a) U.S. shareholder (including through one or more foreign pass-through entities) by reason of which the section 958(a) U.S. shareholder is considered under section 958(a)(2) as owning section 958(a) stock of the specified foreign corporation.

(2) *Foreign pass-through entity.* The term *foreign pass-through entity* means a foreign partnership or a foreign estate or trust (as defined in section 7701(a)(31)).

(3) *Property.* The term *property* has the meaning provided in § 1.961–1(b)(1).

(j) *Examples.* The following examples illustrate the application of this section.

*Example 1. Determination of accumulated post-1986 deferred foreign income with subpart F income earned before E&P measurement date on November 2, 2017.* (i) *Facts.* USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation, which owns all of the stock of CFC2, also a foreign corporation. USP, CFC1, and CFC2 all have taxable years ending December 31, 2017. As of January 1, 2017, CFC1 has no earnings and profits, and CFC2 has 100u of earnings and profits described in section 959(c)(3) that were accumulated in taxable years beginning after December 31, 1986, while CFC2 was a specified foreign corporation. On March 1, 2017, CFC1 earns 30u of subpart F income (as defined in section 952), and CFC2 earns 20u of subpart F income. On July 1, 2017, CFC2 distributes 40u to CFC1. On November 1, 2017, CFC1 distributes 60u to USP. USP does not have an aggregate foreign E&P deficit.

(ii) *Analysis.* (A) *Adjustments to section 959(c) classification of earnings and profits without regard to section 965.* USP determines its inclusion under section 951(a)(1)(A) without regard to section 965(a), which is 30u with respect to CFC1 and 20u with respect to CFC2 for their taxable years ending December 31, 2017. As a result of the inclusions under section 951(a)(1)(A), CFC1 and CFC2 increase their earnings and profits described in section 959(c)(2) by 30u and 20u, respectively.

(B) *Distributions between specified foreign corporations before January 1, 2018.* The distribution of 40u from CFC2 to CFC1 is treated as a distribution of 20u out of earnings and profits described in section 959(c)(2) (attributable to inclusions under section 951(a)(1)(A) without regard to section

965(a)) and 20u out of earnings and profits described in section 959(c)(3).

(C) *Section 965(a) inclusion amount.* USP determines whether CFC1 and CFC2 are deferred foreign income corporations, and, if they are, determines its section 965(a) inclusion amounts with respect to CFC1 and CFC2. Because USP wholly owns CFC1 and CFC2 under section 958(a) and USP does not have an aggregate foreign E&P deficit, USP's section 965(a) inclusion amount with respect to each of CFC1 and CFC2, respectively, equals the section 965(a) earnings amount of CFC1 and CFC2, respectively.

(*1) CFC1 section 965(a) earnings amount.* The section 965(a) earnings amount with respect to CFC1 is 20u, the amount of its accumulated post-1986 deferred foreign income as of both November 2, 2017, and December 31, 2017, which is equal to 70u of post-1986 earnings and profits (30u earned and 40u attributable to the CFC2 distribution) reduced by 50u of such post-1986 earnings and profits described in section 959(c)(2) (30u earned and 20u attributable to the CFC2 distribution) under section 965(d)(2)(B) and § 1.965–1(f)(7)(i)(B). Under section 965(d)(3)(B) and § 1.965–1(f)(29)(i)(B), the post-1986 earnings and profits of CFC1 are not reduced by the 60u distribution to USP.

(*2) CFC2 section 965(a) earnings amount.* The section 965(a) earnings amount with respect to CFC2 is 80u, the amount of its accumulated post-1986 deferred foreign income as of both November 2, 2017, and December 31, 2017, which is equal to the amount of CFC2's post-1986 earnings and profits of 80u. CFC2's accumulated post-1986 deferred foreign income is equal to its post-1986 earnings and profits because CFC2 does not have earnings and profits that are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1, or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder, and therefore no adjustment is made under section 965(d)(2) or § 1.965–1(f)(7). CFC2's 80u of post-1986 earnings and profits consists of 120u of earnings and profits that it earned, reduced by the 40u distribution to CFC1 under section 965(d)(3)(B) and § 1.965–1(f)(29)(i)(B). The amount of the reduction to the post-1986 earnings and profits of CFC2 for the 40u distribution is not limited by § 1.965–1(f)(29)(i)(B) because CFC1's post-1986 earnings and profits are increased by 40u as a result of the distribution. Furthermore, because the 40u distribution was made on July 1, 2017, which is before the E&P measurement date on November 2, 2017, § 1.965–4(f) is not relevant.

(*3) Effect on earnings and profits described in section 959(c)(2) and (3).* CFC1 and CFC2 increase their earnings and profits described in section 959(c)(2) by USP's section 965(a) inclusion amounts with respect to CFC1 and CFC2, 20u and 80u, respectively, and reduce their earnings and profits described in section 959(c)(3) by an equivalent amount.

(D) *Distribution to United States shareholder.* The distribution from CFC1 to

USP is treated as a distribution of 60u of the earnings and profits of CFC1 described in section 959(c)(2), which include earnings and profits attributable to the section 965(a) inclusion amount taken into account by USP.

*Example 2. Determination of accumulated post-1986 deferred foreign income with subpart F income earned after E&P measurement date on November 2, 2017.* (i) *Facts.* The facts are the same as in paragraph (i) of *Example 1* of this paragraph (j), except that on December 1, 2017, CFC1 earns an additional 50u of subpart F income (as defined in section 952).

(ii) *Analysis.* (A) *Adjustments to section 959(c) classification of earnings and profits without regard to section 965.* USP determines its inclusion under section 951(a)(1)(A) without regard to section 965(a), which is 80u with respect to CFC1 and 20u with respect to CFC2 for their taxable years ending December 31, 2017. As a result of the inclusions under section 951(a)(1)(A), CFC1 and CFC2 increase their earnings and profits described in section 959(c)(2) by 80u and 20u, respectively.

(B) *Distributions between specified foreign corporations before January 1, 2018.* The analysis is the same as in paragraph (ii)(B) of *Example 1* of this paragraph (j).

(C) *Section 965(a) inclusion amount.* USP determines whether CFC1 and CFC2 are deferred foreign income corporations, and, if they are, determines its section 965(a) inclusion amounts with respect to CFC1 and CFC2. Because USP wholly owns CFC1 and CFC2 under section 958(a) and USP does not have an aggregate foreign E&P deficit, USP's section 965(a) inclusion amount with respect to each of CFC1 and CFC2, respectively, equals the section 965(a) earnings amount of CFC1 and CFC2, respectively.

(*1) CFC1 section 965(a) earnings amount.* The section 965(a) earnings amount with respect to CFC1 is 20u, the greater of—

(*i)* The amount of its accumulated post-1986 deferred foreign income as of November 2, 2017, 20u, which is equal to 70u of post-1986 earnings and profits (30u earned and 40u attributable to the CFC2 distribution) reduced by 50u of such post-1986 earnings and profits described in section 959(c)(2) without regard to the subpart F income earned after November 2, 2017 (30u earned and 20u attributable to the CFC2 distribution) under section 965(d)(2)(B) and § 1.965–1(f)(7)(i)(B) and (ii), and

(*ii)* The amount of its accumulated post-1986 deferred foreign income as of December 31, 2017, 20u, which is equal to 120u of post-1986 earnings and profits (80u earned and 40u attributable to the CFC2 distribution) reduced by 100u of such post-1986 earnings and profits described in section 959(c)(2) with regard to the subpart F income earned on or before December 31, 2017 (80u earned and 20u attributable to the CFC2 distribution) under section 965(d)(2)(B) and § 1.965–1(f)(7)(i)(B) and (ii).

(*2) CFC2 section 965(a) earnings amount.* The analysis is the same as in paragraph (ii)(C)(*2)* of *Example 1* of this paragraph (j).

(*3) Effect on earnings and profits described in section 959(c)(2) and (3).* The analysis is the same as in paragraph (ii)(C)(*3)* of *Example 1* of this paragraph (j).

(D) *Distribution to United States shareholder.* The analysis is the same as in paragraph (ii)(D) of *Example 1* of this paragraph (j).

*Example 3. Determination of accumulated post-1986 deferred foreign income with subpart F income earned after E&P measurement date on November 2, 2017, but previously taxed earnings and profits attributable to the subpart F income distributed before E&P measurement date on November 2, 2017.* (i) *Facts.* The facts are the same as in paragraph (i) of *Example 1* of this paragraph (j), except that on December 1, 2017, CFC2 earns an additional 50u of subpart F income (as defined in section 952).

(ii) *Analysis.* (A) *Adjustments to section 959(c) classification of earnings and profits without regard to section 965.* USP determines its inclusion under section 951(a)(1)(A) without regard to section 965(a), which is 30u with respect to CFC1 and 70u with respect to CFC2 for their taxable years ending December 31, 2017. As a result of the inclusions under section 951(a)(1)(A), CFC1 and CFC2 increase their earnings and profits described in section 959(c)(2) by 30u and 70u, respectively.

(B) *Distributions between specified foreign corporations before January 1, 2018.* The distribution of 40u from CFC2 to CFC1 is treated as a distribution of 40u out of earnings and profits described in section 959(c)(2) (attributable to inclusions under section 951(a)(1)(A) without regard to section 965(a)).

(C) *Section 965(a) inclusion amount.* USP determines whether CFC1 and CFC2 are deferred foreign income corporations, and, if they are, determines its section 965(a) inclusion amounts with respect to CFC1 and CFC2. Because USP wholly owns CFC1 and CFC2 under section 958(a) and USP does not have an aggregate foreign E&P deficit, USP's section 965(a) inclusion amount with respect to each of CFC1 and CFC2, respectively, equals the section 965(a) earnings amount, if any, of CFC1 and CFC2, respectively.

*(1) CFC1 section 965(a) earnings amount.* CFC1 is not a deferred foreign income corporation and does not have a section 965(a) earnings amount, because the amount of its accumulated post-1986 deferred foreign income as of November 2, 2017, and December 31, 2017, is 0u, which is equal to 70u of post-1986 earnings and profits (30u earned and 40u attributable to the CFC2 distribution) reduced by 70u of such post-1986 earnings and profits described in section 959(c)(2) (30u earned and 40u attributable to the CFC2 distribution) under section 965(d)(2)(B) and § 1.965–1(f)(7)(i)(B).

*(2) CFC2 section 965(a) earnings amount.* The section 965(a) earnings amount with respect to CFC2 is 100u, the greater of—

*(i)* The amount of its accumulated post-1986 deferred foreign income as of November 2, 2017, 80u. CFC2's 80u of accumulated post-1986 deferred foreign income as of November 2, 2017 is equal to its 80u of post-1986 earnings and profits because no adjustment is made under section 965(d)(2) or § 1.965–1(f)(7), as CFC2 does not have earnings and profits that are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1, or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder, without regard to the subpart F income earned after November 2, 2017. CFC2's 80u of post-1986 earnings and profits consists of 120u of earnings and profits that it earned, reduced by the 40u distribution to CFC1 under section 965(d)(3)(B) and § 1.965–1(f)(29)(i)(B). The amount of the reduction to the post-1986 earnings and profits of CFC2 for the 40u distribution is not limited by § 1.965–1(f)(29)(i)(B) because CFC1's post-1986 earnings and profits are increased by 40u as a result of the distribution. Furthermore, because the 40u distribution was made on July 1, 2017, which is before any E&P measurement date, § 1.965–4(f) is not relevant.

*(ii)* The amount of its accumulated post-1986 deferred foreign income as of December 31, 2017, 100u, which is equal to 130u of post-1986 earnings and profits reduced by 30u of such post-1986 earnings and profits described in section 959(c)(2) with regard to the subpart F income earned before December 31, 2017, under section 965(d)(2)(B) and § 1.965–1(f)(7)(i)(B) and (ii). CFC2's 130u of post-1986 earnings and profits consists of 170u of earnings and profits that it earned, reduced by the 40u distribution to CFC1 under section 965(d)(3)(B) and § 1.965–1(f)(29)(i)(B).

*(3) Effect on earnings and profits described in section 959(c)(2) and (3).* CFC2 increases its earnings and profits described in section 959(c)(2) by USP's section 965(a) inclusion amount with respect to CFC2, 100u, and reduces its earnings and profits described in section 959(c)(3) by an equivalent amount.

(D) *Distribution to United States shareholder.* The analysis is the same as in paragraph (ii)(D) of *Example 1* of this paragraph (j).

*Example 4. Distribution attributable to section 965(a) previously taxed earnings and profits.* (i) *Facts.* USP, a domestic corporation, owns all of the stock of CFC1, a specified foreign corporation that has no post-1986 earnings and profits (or deficit in post-1986 earnings and profits), and CFC1 owns all the stock of CFC2, a deferred foreign income corporation. USP is a calendar year taxpayer. CFC1's last taxable year beginning before January 1, 2018, ends on November 30, 2018; CFC2 has an inclusion year that ends on November 30, 2018. The functional currency of CFC1 and CFC2 is the U.S. dollar. USP's adjusted basis in the stock of CFC1 is zero, and CFC1's adjusted basis in the stock of CFC2 is zero. On January 1, 2018, CFC2 distributes $100x to CFC1, and CFC1 distributes $100x to USP. USP has a section 965(a) inclusion amount of $100x with respect to CFC2 that is taken into account for USP's taxable year ending December 31, 2018. CFC2 has no earnings and profits described in section 959(c)(1) or (2) other than section 965(a) previously taxed earnings and profits.

(ii) *Analysis.* Under paragraph (c) of this section, CFC2 has $100x of section 965(a) previously taxed earnings and profits with respect to USP. USP receives a distribution from CFC2 through a chain of ownership described in section 958(a) during the inclusion year of CFC2 that is attributable to the $100x of section 965(a) previously taxed earnings and profits of CFC2. Under paragraph (g)(1) of this section, the amount of gain that USP otherwise would recognize with respect to the stock of CFC1 under section 961(b)(2) is reduced (but not below zero) by $100x, the amount of CFC2's section 965(a) previously taxed earnings and profits with respect to USP. As of the close of November 30, 2018, USP's basis in CFC1 is increased under paragraph (e) of this section by USP's section 965(a) inclusion amount with respect to CFC2 ($100x), and is reduced under paragraph (g)(2) of this section by the amount of gain that would have been recognized by USP under section 961(b)(2) but for the application of paragraph (g)(1) of this section ($100x).

*Example 5. Distribution attributable to section 965(b) previously taxed earnings and profits; parent-subsidiary.* (i) *Facts.* The facts are the same as in paragraph (i) of *Example 4* of this paragraph (j), except that CFC1 has a specified E&P deficit of $100x. Because of the specified E&P deficit of CFC1, USP's section 965(a) inclusion amount with respect to CFC2 is reduced to zero pursuant to section 965(b)(1) and § 1.965–1(b)(2). USP makes the election described in paragraph (f)(2) of this section.

(ii) *Analysis.* (A) *Application of the gain reduction rule.* Under paragraph (d)(1) of this section, CFC2 has $100x of section 965(b) previously taxed earnings and profits with respect to USP, and, under paragraph (d)(2) of this section, CFC1's earnings and profits described in section 959(c)(3) are increased by $100x to $0. USP receives a distribution from CFC2 through a chain of ownership described in section 958(a) during the inclusion year of CFC2 that is attributable to the $100x of section 965(b) previously taxed earnings and profits of CFC2. Under paragraph (g)(1) of this section, the amount of gain that USP otherwise would recognize with respect to the stock of CFC1 under section 961(b)(2) is reduced (but not below zero) by $100x, the amount of CFC2's section 965(b) previously taxed earnings and profits with respect to USP under paragraph (d)(1) of this section.

(B) *Adjustments to the basis of CFC1.* Because USP makes the election described in paragraph (f)(2) of this section, as of the close of November 30, 2018, USP's basis in CFC1 is increased under paragraph (f)(2)(ii)(A) of this section by an amount equal to CFC2's section 965(b) previously taxed earnings and profits with respect to USP under paragraph (d)(1) of this section ($100x), reduced under paragraph (f)(2)(ii)(B) of this section by an amount equal to the portion of the specified E&P deficit of CFC1 taken into account in determining USP's section 965(a) inclusion amount with respect to CFC2 ($100x), and reduced under paragraph (g)(2) of this section by the amount of gain that would have been recognized by USP with respect to the stock of CFC1 under section 961(b)(2) but for the application of paragraph (g)(1) of this section ($100x). Under paragraph (h)(2) and (3) of

this section, the excess of the net reduction from the adjustments under paragraphs (f) and (g) of this section over USP's basis in the stock of CFC1 (in this case, $100x) is treated as gain recognized by USP from the sale or exchange of property.

*Example 6. Distribution attributable to section 965(b) previously taxed earnings and profits; brother-sister.* (i) *Facts.* The facts are the same as in paragraph (i) of *Example 5* of this paragraph (j), except that USP owns all the stock of CFC2, USP's adjusted basis in the stock of CFC2 is zero, CFC1 made no distributions, and on January 1, 2018, CFC2 distributes $100x to USP.

(ii) *Analysis.* (A) *Application of the gain reduction rule.* Under paragraph (d)(1) of this section, CFC2 has $100x of section 965(b) previously taxed earnings and profits with respect to USP, and, under paragraph (d)(2) of this section, CFC1's earnings and profits described in section 959(c)(3) (deficit of $100x) are increased by $100x to $0. USP receives a distribution from CFC2 during the inclusion year of CFC2 that is attributable to the $100x of section 965(b) previously taxed earnings and profits of CFC2. Under paragraph (g)(1) of this section, the amount of gain that USP otherwise would recognize with respect to the stock of CFC2 under section 961(b)(2) is reduced (but not below zero) by $100x, the amount of CFC2's section 965(b) previously taxed earnings and profits with respect to USP under paragraph (d)(1) of this section.

(B) *Adjustments to the basis of CFC1 and CFC2.* Because USP makes the election described in paragraph (f)(2) of this section, as of the close of November 30, 2018, USP's basis in the stock of CFC2 is increased under paragraph (f)(2)(ii)(A) of this section by the amount of CFC2's section 965(b) previously taxed earnings and profits with respect to USP under paragraph (d)(1) of this section ($100x) and reduced under paragraph (g)(2) of this section by the amount of gain that would have been recognized by USP with respect to the stock of CFC2 under section 961(b)(2) but for the application of paragraph (g)(1) of this section ($100x). As of the close of November 30, 2018, USP's basis in CFC1 is reduced under paragraph (f)(2)(ii)(B) of this section by an amount equal to the portion of USP's pro rata share of the specified E&P deficit of CFC1 taken into account in determining USP's section 965(a) inclusion amount with respect to CFC2 ($100x). Under paragraph (h)(3) of this section, the excess of the reduction under paragraph (f) of this section over USP's basis in the stock of CFC1 (in this case, $100x) is treated as gain recognized by USP from the sale or exchange of property.

■ **Par. 7.** Section 1.965–3 is added to read as follows:

### § 1.965–3   Section 965(c) deductions.

(a) *Scope.* This section provides rules regarding section 965(c) deductions and section 965(c) deduction amounts. Paragraph (b) of this section provides rules for disregarding certain assets for purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder. Paragraph (c) of this

section provides rules for determining the aggregate foreign cash position for a section 958(a) U.S. shareholder inclusion year. Paragraph (d) of this section provides a rule regarding certain expatriated entities. Paragraph (e) of this section provides a rule for the treatment of section 965(c) deductions in connection with an election under section 962. Paragraph (f) of this section provides rules regarding the treatment of a section 965(c) deduction under certain provisions of the Internal Revenue Code. Paragraph (g) of this section provides a rule for domestic pass-through entities.

(b) *Rules for disregarding certain assets for determining aggregate foreign cash position*—(1) *Disregard of certain obligations between related specified foreign corporations.* In determining the aggregate foreign cash position of a section 958(a) U.S. shareholder, any account receivable, account payable, short-term obligation, or derivative financial instrument between a specified foreign corporation with respect to which the section 958(a) U.S. shareholder owns section 958(a) stock and a related specified foreign corporation on a cash measurement date is disregarded to the extent of the smallest of the product of the amount of the item on such cash measurement date of each specified foreign corporation and the section 958(a) U.S. shareholder's ownership percentage of section 958(a) stock of the specified foreign corporation owned by the section 958(a) U.S. shareholder on such date. For purposes of this paragraph (b)(1)(i), a specified foreign corporation is treated as a related specified foreign corporation with respect to another specified foreign corporation if, as of the cash measurement date referred to in the preceding sentence of each specified foreign corporation, the specified foreign corporations are related persons within the meaning of section 954(d)(3), substituting the term "specified foreign corporation" for "controlled foreign corporation" in each place that it appears.

(2) *Disregard of other assets upon demonstration of double-counting.* For purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder, the section 958(a) U.S. shareholder's pro rata share of the cash position of a specified foreign corporation on a cash measurement date is reduced by amounts of net accounts receivable, actively traded property, and short-term obligations to the extent such amounts are attributable to amounts taken into account in determining the section 958(a) U.S. shareholder's pro rata share of the cash position of another

specified foreign corporation on such cash measurement date and to the extent not disregarded pursuant to paragraph (b)(1) of this section. However, the preceding sentence applies only if the section 958(a) U.S. shareholder attaches a statement containing the information outlined in paragraphs (b)(2)(i) through (v) of this section to its timely filed return (taking into account extensions, if any) for the section 958(a) U.S. shareholder inclusion year, or, if the section 958(a) U.S. shareholder has multiple section 958(a) U.S. shareholder inclusion years, the later of such years. Relief is not available under § 301.9100–2 or § 301.9100–3 to allow late filing of the statement. The statement must contain the following information with respect to each specified foreign corporation for which the cash position is reduced under this paragraph (b)(2)—

(i) A description of the asset that would be taken into account with respect to both specified foreign corporations,

(ii) A statement of the amount by which its pro rata share of the cash position of one specified foreign corporation is reduced,

(iii) A detailed explanation of why there would otherwise be double-counting, including the computation of the amount taken into account with respect to the other specified foreign corporation, and

(iv) An explanation of why paragraph (b)(1) of this section does not apply to disregard such amount.

(3) *Examples.* The following examples illustrate the application of this paragraph (b).

*Example 1.* (i) *Facts.* USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation. CFC1 owns 95% of the only class of stock of CFC2, also a foreign corporation, and 40% of the only class of stock of CFC3, also a foreign corporation. The remaining 5% of the only class of stock of CFC2 is owned by a person unrelated to USP, CFC1, and CFC2; and the remaining 60% of the only class of stock of CFC3 is owned by a person unrelated to USP and CFC1. USP, CFC1, and CFC3 have calendar year taxable years. CFC2 has a taxable year ending on November 30. On November 15, 2015, CFC1 makes a loan of $100x to CFC2, which is required to be and is, in fact, repaid on January 1, 2016. On November 15, 2016, CFC2 sells inventory to CFC1 in exchange for an account receivable of $200x, which is required to be and is, in fact, repaid on December 15, 2016. On August 1, 2017, CFC1 makes a loan of $300x to CFC3, which is required to be and is, in fact, repaid on January 31, 2018.

(ii) *Analysis*—(A) *Loan from CFC1 to CFC2.* For purposes of determining the aggregate foreign cash position of USP, a section 958(a) U.S. shareholder of CFC1, under paragraph

(b)(1) of this section, because CFC1 and CFC2 are related within the meaning of paragraph (b)(1) of this section, the short-term obligation of CFC2 held by CFC1 outstanding on the first cash measurement date of each specified foreign corporation, November 30, 2015, and December 31, 2015, respectively, is disregarded to the extent of 95%, the smallest ownership percentage of section 958(a) stock of CFC1 and CFC2 owned by USP on such first cash measurement dates. Accordingly, USP only takes into account $5 ($100 − 95% of $100) of the short-term obligation in determining CFC1's cash position for purposes of determining its aggregate foreign cash position.

(B) *Account receivable of CFC1 held by CFC2.* Because the account receivable of CFC1 held by CFC2 on its second cash measurement date, November 30, 2016, is not outstanding on CFC1's second cash measurement date, December 31, 2016, paragraph (b)(1) of this section does not apply to disregard any portion of such account receivable.

(C) *Loan from CFC1 to CFC3.* Because CFC3 is not related to CFC1 within the meaning of paragraph (b)(1) of this section, paragraph (b)(1) of this section does not apply to disregard any portion of such short-term obligation.

*Example 2.* (i) *Facts.* The facts are the same as in *Example 1,* except that on December 1, 2015, CFC1 sells 5% of the stock of CFC2 to an unrelated person.

(ii) *Analysis.* The analysis is the same as in *Example 1,* except that the short-term obligation of CFC2 held by CFC1 outstanding on both of their first cash measurement dates, November 30, 2015, and December 31, 2015, respectively, is disregarded under paragraph (b)(1) of this section to the extent of 90%, the smallest ownership percentage of section 958(a) stock of CFC1 and CFC2 by USP on such first cash measurement dates. Accordingly, USP takes into account $10 ($100 − 90% of $100) of the short-term obligation in determining CFC1's cash position for purposes of determining its aggregate foreign cash position.

*Example 3.* (i) *Facts.* USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation, which owns 45% of the only class of stock of CFC2, also a foreign corporation. The remainder of the CFC2 stock is actively traded on an established financial market but is not owned by any person related to USP or CFC1. USP, CFC1, and CFC2 have calendar year taxable years. The value of the CFC2 stock owned by CFC1 is $500x on each of the cash measurement dates. Also on each of the cash measurement dates, CFC2 has $300x of assets described in section 965(c)(3)(B) and § 1.965–1(f)(16) that are taken into account in determining its cash position.

(ii) *Analysis.* For purposes of determining USP's aggregate foreign cash position, USP's pro rata share of the cash position of CFC1 on each cash measurement date may be reduced by the amount of the stock of CFC2 to the extent attributable to amounts taken into account in determining USP's pro rata share of the cash position of CFC2 on such cash measurement date (that is, to the extent of the $135x taken into account with respect

to CFC2), provided USP attaches a statement to its timely filed return (taking into account extensions, if any) containing the following: A description of the CFC2 stock and the assets of CFC2 taken into account in determining its cash position; a statement that USP's pro rata share of the cash position of CFC1 is being reduced by $135x; the computation of the $135x taken into account with respect to CFC2; and an explanation of why paragraph (b)(1) of this section does not apply to disregard such amount.

*Example 4.* (i) *Facts.* USP, a domestic corporation, owns all of the stock of CFC1 and CFC2, each a foreign corporation. USP, CFC1, and CFC2 have calendar year taxable years. CFC1 buys goods on credit from a third party for $100x and thus has an account payable of $100x. CFC1 modifies the goods and sells to CFC2 for $105x in exchange for an account receivable of $105x. CFC2 modifies the goods and sells to another third party for $110x in exchange for an account receivable of $110x. All of the accounts payable and accounts receivable are outstanding on the final cash measurement date.

(ii) *Analysis.* For purposes of determining USP's aggregate foreign cash position, on the final cash measurement date, CFC1 has net accounts receivable of $0, because, pursuant to paragraph (b)(1) of this section, CFC1's account receivable from CFC2 is disregarded, and CFC2 has net accounts receivable of $110, because, pursuant to paragraph (b)(1) of this section, CFC2's account payable to CFC1 is disregarded. USP cannot rely on the rule in paragraph (b)(2) of this section because no amounts attributable to CFC2's net accounts receivable are taken into account with respect to another specified foreign corporation.

(c) *Determination of aggregate foreign cash position for a section 958(a) U.S. shareholder inclusion year—*(1) *Single section 958(a) U.S. shareholder inclusion year.* If a section 958(a) U.S. shareholder has a single section 958(a) U.S. shareholder inclusion year, then the section 958(a) U.S. shareholder's aggregate foreign cash position for the section 958(a) U.S. shareholder inclusion year is equal to the aggregate foreign cash position of the section 958(a) U.S. shareholder.

(2) *Multiple section 958(a) U.S. shareholder inclusion years.* If a section 958(a) U.S. shareholder has multiple section 958(a) U.S. shareholder inclusion years, then the section 958(a) U.S. shareholder's aggregate foreign cash position for each section 958(a) U.S. shareholder inclusion year is determined by allocating the aggregate foreign cash position to a section 958(a) U.S. shareholder inclusion year under paragraphs (c)(2)(i) and (c)(2)(ii) of this section.

(i) *Allocation to first section 958(a) U.S. shareholder inclusion year.* A portion of the aggregate foreign cash position of the section 958(a) U.S.

shareholder is allocated to the first section 958(a) U.S. shareholder inclusion year in an amount equal to the lesser of the section 958(a) U.S. shareholder's aggregate foreign cash position, or the section 958(a) U.S. shareholder's aggregate section 965(a) inclusion amount for the section 958(a) U.S. shareholder inclusion year.

(ii) *Allocation to succeeding section 958(a) U.S. shareholder inclusion years.* The amount of the section 958(a) U.S. shareholder's aggregate foreign cash position allocated to any succeeding section 958(a) U.S. shareholder inclusion year equals the lesser of the excess, if any, of the section 958(a) U.S. shareholder's aggregate foreign cash position over the aggregate amount of its aggregate foreign cash position allocated to preceding section 958(a) U.S. shareholder inclusion years under paragraph (c)(2)(i) of this section and this paragraph (c)(2)(ii), or the section 958(a) U.S. shareholder's aggregate section 965(a) inclusion amount for such succeeding section 958(a) U.S. shareholder inclusion year.

(3) *Estimation of aggregate foreign cash position.* For purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder, the section 958(a) U.S. shareholder may assume that its pro rata share of the cash position of any specified foreign corporation whose last taxable year beginning before January 1, 2018, ends after the date the return for such section 958(a) U.S. shareholder inclusion year (*the estimated section 958(a) U.S. shareholder inclusion year*) is timely filed (taking into account extensions, if any) is zero as of the cash measurement date with which the taxable year of such specified foreign corporation ends. If a section 958(a) U.S. shareholder's pro rata share of the cash position of a specified foreign corporation is treated as zero pursuant to the preceding sentence, the amount described in § 1.965–1(f)(8)(i)(A) with respect to such section 958(a) U.S. shareholder in fact exceeds the amount described in § 1.965–1(f)(8)(i)(B) with respect to such section 958(a) U.S. shareholder, and the aggregate section 965(a) inclusion amount for the estimated section 958(a) U.S. shareholder inclusion year exceeds the amount described in § 1.965–1(f)(8)(i)(B) with respect to such section 958(a) U.S. shareholder, interest and penalties will not be imposed if such section 958(a) U.S. shareholder amends the return for the estimated section 958(a) U.S. shareholder inclusion year to account for the correct aggregate foreign cash position for the year. The amended return must be filed by the due date

(taking into account extensions, if any) for the return for the year after the estimated section 958(a) U.S. shareholder inclusion year.

(4) *Examples.* The following examples illustrate the application of this paragraph (c).

*Example 1. Estimation of aggregate foreign cash position for a section 958(a) U.S. shareholder inclusion year*—(i) *Facts.* USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation, which owns all of the stock of CFC2, also a foreign corporation. USP is a calendar year taxpayer. CFC1 has a taxable year ending on December 31, and CFC2 has a taxable year ending on November 30. The cash position of CFC1 on each of December 31, 2015, December 31, 2016, and December 31, 2017, is $100x. The cash position of CFC2 on each of November 30, 2015, and November 30, 2016, is $200x. USP has a section 965(a) inclusion amount of $300x with respect to CFC1.

(ii) *Analysis.* In determining its aggregate foreign cash position for its 2017 taxable year, USP may assume that its pro rata share of the cash position of CFC2 will be zero as of November 30, 2018, for purposes of filing its return due on April 18, 2018 (or due on October 15, 2018, with extension). Therefore, USP's aggregate foreign cash position is treated as $300, which is the greater of (a) $300x. 50% of the sum of USP's pro rata shares of the cash position of CFC1 as of December 31, 2015, and December 31, 2016, and of the cash position of CFC2 as of November 30, 2015, and November 30, 2016, and (b) $100x. USP's pro rata share of the cash position of CFC1 as of December 31, 2017. If USP's pro rata share of the cash position of CFC2 as of November 30, 2018, in fact exceeds $200, USP must amend its return for its 2017 taxable year to reflect the correct aggregate foreign cash position by the due date for its return for its 2018 taxable year, April 15, 2019 (or October 15, 2019, with extension).

*Example 2. Allocation of aggregate foreign cash position among section 958(a) U.S. shareholder inclusion years*—(i) *Facts.* The facts are the same as in paragraph (i) of *Example 1* of this paragraph (c)(4), except that the cash position of each of CFC1 and CFC2 on all relevant cash measurement dates is $200, with the result that USP has an aggregate foreign cash position determined under § 1.965–1(f)(8)(i) of $400. For its 2017 taxable year, USP has a section 965(a) inclusion amount with respect to CFC1 of $300, and for its 2018 taxable year, USP has a section 965(a) inclusion amount with respect to CFC2 of $300.

(ii) *Analysis.* Under paragraph (c)(2)(i) of this section, USP's aggregate foreign cash position for 2017 is $300, which is the lesser of USP's aggregate foreign cash position determined under § 1.965–1(f)(8)(i) ($400) or the section 965(a) inclusion amount ($300) that USP takes into account in 2017. Under paragraph (c)(2)(ii) of this section, the amount of USP's aggregate foreign cash position for 2018 is $100, USP's aggregate foreign cash position determined under § 1.965–1(f)(8)(i) ($400) reduced by the amount of its aggregate foreign cash position

for 2017 ($300) under paragraph (c)(2)(i) of this section.

(d) *Increase of income by section 965(c) deduction of an expatriated entity*—(1) *In general.* If a person is allowed a section 965(c) deduction and the person (or a successor) first becomes an expatriated entity, with respect to a surrogate foreign corporation, at any time during the 10-year period beginning on December 22, 2017, then the tax imposed by chapter 1 of the Internal Revenue Code is increased for the first taxable year in which such person becomes an expatriated entity by an amount equal to 35 percent of the person's section 965(c) deductions, and no credits are allowed against such increase in tax. The preceding sentence applies only if the surrogate foreign corporation first becomes a surrogate foreign corporation on or after December 22, 2017.

(2) *Definition of expatriated entity.* For purposes of paragraph (d)(1) of this section, the term *expatriated entity* has the same meaning given such term under section 7874(a)(2), except that such term does not include an entity if the surrogate foreign corporation with respect to the entity is treated as a domestic corporation under section 7874(b).

(3) *Definition of surrogate foreign corporation.* For purposes of paragraph (d)(1) of this section, the term *surrogate foreign corporation* has the meaning given such term in section 7874(a)(2)(B).

(e) *Section 962 election*—(1) *In general.* In the case of an individual (including a trust or estate) that makes an election under section 962, any section 965(c) deduction taken into account under § 1.962–1(b)(1)(i)(B) in determining taxable income as used in section 11 is not taken into account for purposes of determining the individual's taxable income under section 11.

(2) *Example.* The following example illustrates the application of the rule in this paragraph (e).

*Example.* (i) *Facts.* USI, a United States citizen, owns 10% of the capital and profits of USPRS, a domestic partnership that has a calendar year taxable year, the remainder of which is owned by foreign persons unrelated to USI or USPRS. USPRS owns all of the stock of FS, a foreign corporation that is a controlled foreign corporation with a calendar year taxable year. USPRS has a section 965(a) inclusion amount with respect to FS of $1,000 and has a section 965(c) deduction amount of $700. FS has no post-1986 foreign income taxes (as defined in section 902(c)(1) as in effect before December 22, 2017). USI makes a valid election under section 962 for 2017.

(ii) *Analysis.* USI's "taxable income" described in § 1.962–1(b)(1)(i) equals $100

(USI's domestic pass-through owner share of USPRS's section 965(a) inclusion amount) minus $70 (USI's domestic pass-through owner share of USPRS's section 965(c) deduction amount), or $30. No other deductions are allowed in determining this amount. USI's tax on the $30 section 965(a) inclusion will be equal to the tax that would be imposed on such amount under section 11 if USI were a domestic corporation. Under paragraph (e)(1) of this section, USI cannot deduct $70 for purposes of determining USI's taxable income that is subject to tax under section 1.

(f) *Treatment of section 965(c) deduction under certain provisions of the Internal Revenue Code*—(1) *Section 63(d).* A section 965(c) deduction is not treated as an itemized deduction for any purpose of the Internal Revenue Code.

(2) *Sections 705, 1367, and 1368*—(i) *Adjustments to basis.* In the case of a domestic partnership or S corporation—

(A) The aggregate amount of its section 965(a) inclusions net the aggregate amount of its section 965(c) deductions is treated as a separately stated item of net income solely for purposes of calculating basis under section 705(a) and § 1.705–1(a) and section 1367(a)(1) and § 1.1367–1(f), and

(B) The aggregate amount of its section 965(a) inclusions equal to the aggregate amount of its section 965(c) deductions is treated as income exempt from tax solely for purposes of calculating basis under sections 705(a)(1)(B), 1367(a)(1)(A), and § 1.1367–1(f).

(ii) *S corporation accumulated adjustments account.* In the case of an S corporation, the aggregate amount of its section 965(a) inclusions equal to the aggregate amount of its section 965(c) deductions is treated as income not exempt from tax solely for purposes of determining whether an adjustment is made to an accumulated adjustments account under section 1368(e)(1)(A) and § 1.1368–2(a)(2).

(iii) *Example.* The following example illustrates the application of this paragraph (f)(2).

*Example.* (i) *Facts.* USI, a United States citizen, owns all of the stock of S Corp, an S corporation, which owns all of the stock of FS, a foreign corporation. S Corp has a section 965(a) inclusion of $1,000 with respect to FS and has a $700 section 965(c) deduction.

(ii) *Analysis.* As a result of the application of paragraph (f)(2)(i)(A) of this section, solely for purposes of calculating basis under section 1367(a)(1) and § 1.1367–1(f), USI treats as a separately stated item of net income $300 (its pro rata share of the net of S Corp's $1,000 aggregate section 965(a) inclusion and S Corp's $700 aggregate section 965(c) deduction). Accordingly, USI's basis in S Corp is increased under section 1367(a)(1) by $300. As a result of the

application of paragraph (f)(2)(i)(B) of this section, an amount of S Corp's aggregate section 965(a) inclusion equal to its aggregate section 965(c) deduction, $700, is treated as tax exempt income solely for purposes of calculating basis under section 1367(a)(1)(A) and § 1.1367–1(f), and accordingly, USI's basis in S Corp is further increased by its pro rata share of such amount, $700. S Corp's accumulated adjustments account (AAA) is increased under section 1368(e)(1)(A) by the $1,000 section 965(a) inclusion taken into account and reduced by the $700 section 965(c) deduction taken into account. In addition, as a result of the application of paragraph (f)(2)(ii) of this section, S Corp's AAA is further increased by an amount of S Corp's aggregate section 965(a) inclusion equal to its aggregate section 965(c) deduction, $700, which is not treated as tax-exempt income for purposes of § 1.1368–2(a)(2).

(3) *Section 1411.* For purposes of section 1411 and § 1.1411–4(f)(6), a section 965(c) deduction is not treated as being properly allocable to any section 965(a) inclusion.

(4) *Section 4940.* For purposes of section 4940(c)(3)(A), a section 965(c) deduction is not treated as an ordinary and necessary expense paid or incurred for the production or collection of gross investment income.

(g) *Domestic pass-through entities.* For purposes of determining a domestic pass-through owner share, a section 965(c) deduction amount of a domestic pass-through entity must be allocated to a domestic pass-through owner in the same proportion as an aggregate section 965(a) inclusion amount of the domestic pass-through entity for a section 958(a) U.S. shareholder inclusion year is allocated to the domestic pass-through owner.

■ **Par. 8.** Section 1.965–4 is added to read as follows:

### § 1.965–4   Disregard of certain transactions.

(a) *Scope.* This section provides rules that disregard certain transactions for purposes of applying section 965 to a United States shareholder. Paragraph (b) of this section provides rules that disregard transactions undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder. Paragraph (c) of this section provides rules that disregard certain changes in method of accounting and entity classification elections that would otherwise change the amount of a section 965 element. Paragraph (d) of this section defines the term *section 965 element.* Paragraph (e) of this section provides rules of application concerning paragraphs (b) and (c) of this section. Paragraph (f) of this section provides rules that disregard certain transactions occurring

between E&P measurement dates. Paragraph (g) of this section provides examples illustrating the application of this section.

(b) *Transactions undertaken with a principal purpose of changing the amount of a section 965 element*—(1) *General rule.* A transaction is disregarded for purposes of determining the amounts of all section 965 elements of a United States shareholder if each of the following conditions is satisfied with respect to any section 965 element of the United States shareholder—

(i) The transaction occurs, in whole or in part, on or after November 2, 2017 (the *specified date*);

(ii) The transaction is undertaken with a principal purpose of changing the amount of a section 965 element of the United States shareholder; and

(iii) The transaction would, without regard to this paragraph (b)(1), change the amount of the section 965 element of the United States shareholder.

(2) *Presumptions and exceptions for the application of the general rule*—(i) *Overview.* Under paragraphs (b)(2)(iii) through (v) of this section, certain transactions are presumed to be undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder for purposes of paragraph (b)(1) of this section. The presumptions described in paragraphs (b)(2)(iii) through (v) of this section may be rebutted only if facts and circumstances clearly establish that the transaction was not undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder. A taxpayer that takes the position that the presumption is rebutted must attach a statement to its return for its taxable year in which or with which the relevant taxable year of the relevant specified foreign corporation ends disclosing that it has rebutted the presumption. In the case of a transaction described in paragraph (b)(2)(iii) or (iv) of this section, if the presumption does not apply because the transaction occurs in the ordinary course of business, whether the transaction was undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder must be determined under all the facts and circumstances. Under paragraphs (b)(2)(iii) through (v) of this section, certain transactions are treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder and therefore such transactions are disregarded under paragraph (b)(1) of this section if the conditions of paragraphs (b)(1)(i) and

(iii) of this section are satisfied. Further, under paragraph (b)(2)(iii) of this section, certain distributions are treated per se as not being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder and therefore are not disregarded under paragraph (b)(1) of this section.

(ii) *Definitions*—(A) *Relatedness.* For purposes of paragraphs (b)(2)(iii) through (v) of this section, a person is treated as related to a United States shareholder if, either immediately before or immediately after the transaction (or series of related transactions), the person bears a relationship to the United States shareholder described in section 267(b) or section 707(b).

(B) *Transfer*—(1) *In general.* For purposes of paragraphs (b)(2)(iii) and (v) of this section, the term *transfer* includes any disposition of stock or property, including a sale or exchange, contribution, distribution, issuance, redemption, recapitalization, or loan of stock or property, and includes an indirect transfer of stock or property.

(2) *Indirect transfer.* For purposes of paragraph (b)(2)(ii)(B)(1) of this section, the term *indirect transfer* includes a transfer of property or stock owned by an entity through a transfer of an interest in such entity (or an interest in an entity that has a direct or indirect interest in such entity), and a transfer of property or stock to a person through a transfer of property or stock to a pass-through entity of which such person is a direct or indirect owner.

(iii) *Cash reduction transactions*—(A) *General rule.* For purposes of paragraph (b)(1) of this section, a cash reduction transaction is presumed to be undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder. For this purpose, the term *cash reduction transaction* means a transfer of cash, accounts receivable, or cash-equivalent assets by a specified foreign corporation to a United States shareholder of the specified foreign corporation or a person related to the United States shareholder of the specified foreign corporation, or an assumption by a specified foreign corporation of an account payable of a United States shareholder of the specified foreign corporation or a person related to a United States shareholder of the specified foreign corporation, if such transfer or assumption would, without regard to paragraph (b)(1) of this section, reduce the aggregate foreign cash position of the United States shareholder. The presumption described in this paragraph (b)(2)(iii) does not

apply to a cash reduction transaction that occurs in the ordinary course of business.

(B) *Per se rules for certain distributions.* Notwithstanding the presumption described in paragraph (b)(2)(iii)(A) of this section, except in the case of a specified distribution, a cash reduction transaction that is a distribution by a specified foreign corporation of the specified foreign corporation is treated per se as not being undertaken with a principal purpose of changing the amount of a section 965 element of the United States shareholder for purposes of paragraph (b)(1) of this section. A specified distribution is treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder for purposes of paragraph (b)(1) of this section. For purposes of this paragraph (b)(2)(iii)(B), the term *specified distribution* means a cash reduction transaction that is a distribution by a specified foreign corporation of a United States shareholder if and to the extent that, at the time of the distribution, there was a plan or intention for the distributee to transfer cash, accounts receivable, or cash-equivalent assets to any specified foreign corporation of the United States shareholder or the distribution is a non pro rata distribution to a foreign person that is related to the United States shareholder.

(iv) *E&P reduction transactions*—(A) *General rule.* For purposes of paragraph (b)(1) of this section, an E&P reduction transaction is presumed to be undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder. For purposes of this paragraph (b)(2)(iv), the term *E&P reduction transaction* means a transaction between a specified foreign corporation and any of a United States shareholder of the specified foreign corporation, another specified foreign corporation of a United States shareholder of the specified foreign corporation, or any person related to a United States shareholder of the specified foreign corporation, if the transaction would, without regard to paragraph (b)(1) of this section, reduce either the accumulated post-1986 deferred foreign income or the post-1986 undistributed earnings (as defined in section 902(c)(1)) of the specified foreign corporation or another specified foreign corporation of any United States shareholder of such specified foreign corporation. The presumption described in this paragraph (b)(2)(iv)(A) does not apply to an E&P reduction transaction

that occurs in the ordinary course of business.

(B) *Per se rule for specified transactions.* A specified transaction is treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder for purposes of paragraph (b)(1) of this section. For purposes of the preceding sentence, the term *specified transaction* means an E&P reduction transaction that involves one or more of the following: A complete liquidation of a specified foreign corporation to which section 331 applies; a sale or other disposition of stock by a specified foreign corporation; or a distribution by a specified foreign corporation that reduces the earnings and profits of the specified foreign corporation pursuant to section 312(a)(3).

(v) *Pro rata share transactions*—(A) *General rule.* For purposes of paragraph (b)(1) of this section, a pro rata share transaction is presumed to be undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder. For this purpose, the term *pro rata share transaction* means either a pro rata share reduction transaction or an E&P deficit transaction.

(1) *Definition of pro rata share reduction transaction.* For purposes of this paragraph (b)(2)(v)(A), the term *pro rata share reduction transaction* means a transfer of the stock of a specified foreign corporation by either a United States shareholder of the specified foreign corporation or a person related to a United States shareholder of the specified foreign corporation (including by the specified foreign corporation itself) to a person related to the United States shareholder if the transfer would, without regard to paragraph (b)(1) of this section, reduce the United States shareholder's pro rata share of the section 965(a) earnings amount of the specified foreign corporation, reduce the United States shareholder's pro rata share of the cash position of the specified foreign corporation, or both.

(2) *Definition of E&P deficit transaction.* For purposes of this paragraph (b)(2)(v)(A), an *E&P deficit transaction* means a transfer to either a United States shareholder or a person related to the United States shareholder of the stock of an E&P deficit foreign corporation by a person related to the United States shareholder (including by the E&P deficit foreign corporation itself) if the transfer would, without regard to paragraph (b)(1) of this section, increase the United States shareholder's pro rata share of the specified E&P

deficit of the E&P deficit foreign corporation.

(B) *Per se rule for internal group transactions.* An internal group transaction is treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder for purposes of paragraph (b)(1) of this section. For purposes of the preceding sentence, the term *internal group transaction* means a pro rata share transaction if, immediately before or after the transfer, the transferor of the stock of the specified foreign corporation and the transferee of such stock are members of an affiliated group in which the United States shareholder is a member. For this purpose, the term *affiliated group* has the meaning set forth in section 1504(a), determined without regard to paragraphs (1) through (8) of section 1504(b), and the term *members of an affiliated group* means entities included in the same affiliated group. For purposes of identifying an affiliated group and the members of such group, each partner in a partnership, as determined without regard to this sentence, is treated as holding its proportionate share of the stock held by the partnership, as determined under the rules and principles of sections 701 through 777, and if one or more members of an affiliated group own, in the aggregate, at least 80 percent of the interests in a partnership's capital or profits, the partnership will be treated as a corporation that is a member of the affiliated group.

(C) *Example.* The following example illustrates the application of the rules in this paragraph (b)(2)(v).

*Example.* (i) *Facts.* FP, a foreign corporation, owns all of the stock of USP, a domestic corporation. USP owns all of the stock of FS, a foreign corporation. USP has a calendar year taxable year; FS's taxable year ends November 30. On January 2, 2018, USP transfers all of the stock of FS to FP in exchange for cash. On January 3, 2018, FS makes a distribution with respect to the stock transferred to FP. USP treats the transaction as a taxable sale of the FS stock and claims a dividends received deduction under section 245A with respect to its deemed dividend under section 1248(j) as a result of the sale. FS has post-1986 earnings and profits as of December 31, 2017, and no post-1986 earnings and profits that are attributable to income effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1 or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959.

(ii) *Analysis.* The transfer of the stock of FS is a pro rata share reduction transaction and thus a pro rata share transaction because such transfer is by USP, a United States

shareholder, to FP, a person related to USP, and the transfer would, without regard to the rule in paragraph (b)(1) of this section, reduce USP's pro rata share of the section 965(a) earnings amount of FS. Because USP and FP are also members of an affiliated group within the meaning of paragraph (b)(2)(v)(B) of this section, the transfer of the stock of FS is also an internal group transaction and is treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of USP. Accordingly, because the transfer occurs after the specified date and reduces USP's section 965(a) inclusion amount with respect to FS, the transfer is disregarded for purposes of determining any section 965 element of USP with the result that, among other things, USP's pro rata share of FS's section 965(a) earnings amount is determined as if USP owned (within the meaning of section 958(a)) 100% of the stock of FS on the last day of FS's inclusion year and no other person received a distribution with respect to such stock during such year. *See* section 951(a)(2)(A) and (B).

(c) *Disregard of certain changes in method of accounting and entity classification elections*—(1) *Changes in method of accounting.* Any change in method of accounting made for a taxable year of a specified foreign corporation that ends in 2017 or 2018 is disregarded for purposes of determining the amounts of all section 965 elements with respect to a United States shareholder if the change in method of accounting would, without regard to this paragraph (c)(1), change the amount of any section 965 element with respect to the United States shareholder, regardless of whether the change in method of accounting is made with a principal purpose of changing the amount of a section 965 element with respect to the United States shareholder. The rule described in the preceding sentence applies regardless of whether the change in method of accounting was made in accordance with the procedures described in Rev. Proc. 2015–13, 2015–5 I.R.B. 419 (or successor), and regardless of whether the change in method of accounting was properly made, but it does not apply to a change in method of accounting for which the original and/or duplicate copy of any Form 3115, "Application for Change in Accounting Method," requesting the change was filed before the specified date (as defined in paragraph (b)(1) of this section).

(2) *Entity classification elections.* An election under § 301.7701–3 to change the classification of an entity that is filed on or after the specified date (as defined in paragraph (b)(1) of this section) is disregarded for purposes of determining the amounts of all section 965 elements of a United States shareholder if the election would,

without regard to this paragraph (c)(2) of this section, change the amount of any section 965 element of the United States shareholder, regardless of whether the election is made with a principal purpose of changing the amount of a section 965 element of the United States shareholder. An election filed on or after the specified date is subject to the preceding sentence even if the election was filed with an effective date that is before the specified date.

(d) *Definition of a section 965 element.* For purposes of paragraphs (b) and (c) of this section, the term *section 965 element* means, with respect to a United States shareholder, any of the following amounts (collectively, *section 965 elements*)—

(1) The United States shareholder's section 965(a) inclusion amount with respect to a specified foreign corporation;

(2) The aggregate foreign cash position of the United States shareholder; or

(3) The amount of foreign income taxes of a specified foreign corporation deemed paid by the United States shareholder under section 960 as a result of a section 965(a) inclusion.

(e) *Rules for applying paragraphs (b) and (c) of this section*—(1) *Determination of whether there is a change in the amount of a section 965 element.* For purposes of paragraph (b) and (c) of this section, there is a change in the amount of a section 965 element of a United States shareholder as a result of a transaction, change in accounting method, or election to change an entity's classification, if, without regard to paragraph (b)(1), (c)(1), or (c)(2) of this section, the transaction, change in accounting method, or change in entity classification would—

(i) Reduce the amount described in paragraph (d)(1) of this section,

(ii) Reduce the amount described in paragraph (d)(2) of this section, but only if such amount is less than the United States shareholder's aggregate section 965(a) inclusion amount, or

(iii) Increase the amount described in paragraph (d)(3) of this section.

(2) *Treatment of domestic pass-through owners as United States shareholders.* For purposes of paragraph (b) and (c) of this section, if a domestic pass-through entity is a United States shareholder, then a domestic pass-through owner, with respect to the domestic pass-through entity, that is not otherwise a United States shareholder is treated as a United States shareholder.

(f) *Disregard of certain transactions occurring between E&P measurement dates*—(1) *Disregard of specified payments.* A specified payment made by

a specified foreign corporation (*payor specified foreign corporation*) to another specified foreign corporation (*payee specified foreign corporation*) is disregarded for purposes of determining the post-1986 earnings and profits of each of the payor specified foreign corporation and the payee specified foreign corporation as of the E&P measurement date on December 31, 2017.

(2) *Definition of specified payment.* For purposes of paragraph (f)(1) of this section, the term *specified payment* means any amount paid or accrued by the payor specified foreign corporation, including a distribution by the payor specified foreign corporation with respect to its stock, if each of the following conditions are satisfied:

(i) Immediately before or immediately after the payment or accrual of the amount, the payor specified foreign corporation and the payee specified foreign corporation are related within the meaning of section 954(d)(3), substituting the term "specified foreign corporation" for "controlled foreign corporation" in each place that it appears;

(ii) The payor specified foreign corporation and the payee specified foreign corporation do not have the same tentative E&P measurement date;

(iii) The payment or accrual of the amount occurs after November 2, 2017, and on or before December 31, 2017; and

(iv) The payment or accrual of the amount would, without regard to the application of paragraph (f)(1) of this section, reduce the post-1986 earnings and profits of the payor specified foreign corporation as of the E&P measurement date on December 31, 2017.

(3) *Definition of tentative E&P measurement date.* For purposes of paragraph (f)(2) of this section, the term *tentative E&P measurement date* means—

(i) With respect to a specified foreign corporation that is not described in paragraph (f)(3)(ii) of this section, the E&P measurement date of the specified foreign corporation that, without regard to the application of paragraph (f)(1) of this section, would result in the "greater of" amount of accumulated post-1986 deferred foreign income described in section 965(a) and § 1.965–1(f)(36); and

(ii) With respect to a specified foreign corporation that, without regard to the application of paragraph (f)(1) of this section, would be an E&P deficit foreign corporation, the E&P measurement date as of November 2, 2017.

(4) *Examples.* The following examples illustrate the application of the rules in this paragraph (f).

*Example 1. Deductible payment between wholly owned specified foreign corporations is a specified payment.* (i) *Facts.* USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation, which owns all of the stock of CFC2, also a foreign corporation. USP, CFC1, and CFC2 have calendar year taxable years. On November 2, 2017, each of CFC1 and CFC2 has post-1986 earnings and profits of 100u. Neither CFC1 nor CFC2 has post-1986 earnings and profits that are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1 or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder; therefore, no adjustment is made under section 965(d)(2) or § 1.965–1(f)(7) and each of CFC1's and CFC2's accumulated post-1986 deferred foreign income is equal to such corporation's post-1986 earnings and profits. On November 3, 2017, CFC2 makes a deductible payment of 10u to CFC1. The payment does not constitute subpart F income. CFC1 and CFC2 have no other items of income or deduction.

(ii) *Analysis.* (A) *Determination of tentative E&P measurement date.* Without regard to paragraph (f)(1) of this section, as of the E&P measurement date on December 31, 2017, CFC1 has post-1986 earnings and profits of 110u (100u plus 10u income from the payment from CFC2), and CFC2 has post-1986 earnings and profits of 90u (100u minus 10u deduction from the payment to CFC1). Therefore, the tentative E&P measurement date of CFC1 is December 31, 2017 (110u), and the tentative E&P measurement date of CFC2 is November 2, 2017 (100u).

(B) *Application of the requirements for a specified payment.* The payment from CFC2 to CFC1 is a specified payment because (A) CFC1 and CFC2 are related specified foreign corporations; (B) CFC1 and CFC2 do not have the same tentative measurement date; (C) the payment occurs after November 2, 2017, and on or before December 31, 2017; and (D) the payment would, without regard to the application of the rule in paragraph (f)(1) of this section, reduce the post-1986 earnings and profits of CFC2 as of the E&P measurement date on December 31, 2017. Under paragraph (f)(1) of this section, the payment is disregarded and CFC1 and CFC2 each have post-1986 earnings and profits of 100u as of December 31, 2017. Accordingly, the section 965(a) earnings amount of each of CFC1 and CFC2 is 100u.

*Example 2. Distribution is a specified payment.* (i) *Facts.* The facts are the same as in paragraph (i) of *Example 1* of this paragraph (f)(4), except instead of a deductible payment to CFC1, CFC2 makes a 10u distribution on November 3, 2017 that, without regard to paragraph (f)(1) of this section would reduce the post-1986 earnings and profits of CFC2 as of the E&P

measurement date on December 31, 2017, and increase the post-1986 earnings and profits of CFC1 as of the E&P measurement date on December 31, 2017, by 10u.

(ii) *Analysis.* (A) *Determination of tentative E&P measurement date.* The analysis is the same as in paragraph (ii)(A) of *Example 1* of this paragraph (f)(4).

(B) *Application of the requirements for a specified payment.* The distribution is a specified payment because (A) CFC1 and CFC2 are related specified foreign corporations; (B) CFC1 and CFC2 do not have the same tentative measurement date; (C) the distribution occurs after November 2, 2017, and on or before December 31, 2017; and (D) the distribution would, without regard to the application of the rule in paragraph (f)(1) of this section, reduce the post-1986 earnings and profits of CFC2 as of the E&P measurement date on December 31, 2017. Under paragraph (f)(1) of this section, the distribution is disregarded with the result that CFC1 and CFC2 each have post-1986 earnings and profits of 100u as of the E&P measurement date on December 31, 2017 and a section 965(a) earnings amount of 100u.

*Example 3. Deductible payment between related (but not wholly owned) specified foreign corporations is a specified payment.* (i) *Facts.* The facts are the same as in paragraph (i) of *Example 1* of this paragraph (f)(4), except that CFC1 owns only 51% of the only class of stock of CFC2, the remainder of which is owned by USI, a United States citizen unrelated to USP, CFC1, and CFC2.

(ii) *Analysis.* The analysis is the same as in paragraph (ii) of *Example 1* of this paragraph (f)(4); thus the payment is disregarded with the result that CFC1 and CFC2 each have post-1986 earnings and profits of 100u as of the E&P measurement date on December 31, 2017, and a section 965(a) earnings amount of 100u.

*Example 4. Deductible payment between unrelated specified foreign corporations is not a specified payment.* (i) *Facts.* The facts are the same as in paragraph (i) of *Example 1* of this paragraph (f)(4), except that CFC1 owns only 50% of the only class of stock of CFC2, the remainder of which is owned by USI, a United States citizen unrelated to USP, CFC1, and CFC2.

(ii) *Analysis.* Paragraph (f)(1) of this section does not apply because CFC1 and CFC2 are not related. Thus, the payment is taken into account with the result that CFC1 has post-1986 earnings and profits of 110u as of the E&P measurement date on December 31, 2017, and a section 965(a) earnings amount of 110u.

*Example 5. Deductible payment and income accrued from unrelated persons are not specified payments.* (i) *Facts.* The facts are the same as in paragraph (i) of *Example 1* of this paragraph (f)(4), except that CFC2 does not make a deductible payment to CFC1, and, between E&P measurement dates, CFC2 accrues gross income of 20u from a person that is not related to CFC2, and CFC1 incurs a deductible expense of 20u to a person that is not related to CFC1.

(ii) *Analysis.* Paragraph (f)(1) of this section does not apply because neither the deductible expense of CFC1 nor the income accrual by CFC2 are attributable to a specified payment.

*Example 6. Deductible payment and income accrued with respect to unrelated persons are not specified payments; deductible payment between wholly specified foreign corporations is a specified payment.* (i) *Facts.* The facts are the same as in paragraph (i) of *Example 5* of this paragraph (f)(4), except that CFC2 also makes a deductible payment of 10u to CFC1 on November 3, 2017.

(ii) *Analysis.* (A) *Determination of tentative E&P measurement date.* Without regard to paragraph (f)(1) of this section, as of the E&P measurement date on December 31, 2017, CFC1 has post-1986 earnings and profits of 90u (100u minus 20u deductible expense plus 10u income from the payment from CFC2), and CFC2 has post-1986 earnings and profits of 110u (100u plus 20u gross income minus 10u deduction from the deductible payment to CFC1). Therefore, the tentative E&P measurement date of CFC1 is November 2, 2017 (100u) and the tentative E&P measurement date of CFC2 is December 31, 2017 (110u).

(B) *Application of the requirements for a specified payment.* The deductible payment is a specified payment because (A) CFC1 and CFC2 are related specified foreign corporations; (B) CFC1 and CFC2 do not have the same tentative measurement date; (C) the payment occurs after November 2, 2017, and on or before December 31, 2017; and (D) the deductible payment would, without regard to the application of the rule in paragraph (f)(1) of this section, reduce the post-1986 earnings and profits of CFC2 as of the E&P measurement date on December 31, 2017. Accordingly, under paragraph (f)(1) of this section, the deductible payment is disregarded with the result that CFC1 and CFC2 have 80u and 120u of post-1986 earnings and profits as of the E&P measurement date on December 31, 2017, respectively. Accordingly, CFC1 and CFC2 have section 965(a) earnings amounts of 100u and 120u, respectively.

■ **Par. 9.** Section 1.965–5 is added to read as follows:

**§ 1.965–5   Allowance of a credit or deduction for foreign income taxes.**

(a) *Scope.* This section provides rules for the allowance of a credit or deduction for foreign income taxes in connection with the application of section 965. Paragraph (b) of this section provides rules under section 965(g) for the allowance of a credit or deduction for foreign income taxes paid or accrued. Paragraph (c) of this section provides rules for the allowance of a credit or deduction for foreign income taxes treated as paid or accrued in connection with the application of section 965. Paragraph (d) of this section defines the term "applicable percentage."

(b) *Rules for foreign income taxes paid or accrued.* Neither a deduction (including under section 164) nor a credit under section 901 is allowed for the applicable percentage of any foreign

income taxes paid or accrued with respect to any amount for which a section 965(c) deduction is allowed for a section 958(a) U.S. shareholder inclusion year. Neither a deduction (including under section 164) nor a credit under section 901 is allowed for the applicable percentage of any foreign income taxes attributable to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits. Accordingly, no deduction or credit is allowed for the applicable percentage of any withholding taxes imposed on a United States shareholder by the jurisdiction of residence of the distributing foreign corporation with respect to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits. Similarly, no deduction or credit is allowed for the applicable percentage of net basis taxes imposed on a United States citizen by the citizen's jurisdiction of residence upon receipt of a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits.

(c) *Rules for foreign income taxes treated as paid or accrued*—(1) *Disallowed credit*—(i) *In general.* A credit under section 901 is not allowed for the applicable percentage of any foreign income taxes treated as paid or accrued with respect to any amount for which a section 965(c) deduction is allowed for a section 958(a) U.S. shareholder inclusion year. For purposes of the preceding sentence, taxes treated as paid or accrued include foreign income taxes deemed paid under section 960(a)(1) with respect to a section 965(a) inclusion, foreign income taxes deemed paid under section 960(a)(3) with respect to distributions of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits, foreign income taxes allocated to an entity under § 1.901–2(f)(4), and a distributive share of foreign income taxes paid or accrued by a partnership.

(ii) *Foreign income taxes deemed paid under section 960(a)(3) (as in effect on December 21, 2017).* Foreign income taxes deemed paid by a domestic corporation under section 960(a)(3) with respect to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits include only the foreign income taxes paid or accrued by an upper-tier foreign corporation with respect to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously

taxed earnings and profits from a lower-tier foreign corporation. No credit is allowed under section 960(a)(3) or any other section for foreign income taxes that would have been deemed paid under section 960(a)(1) with respect to the portion of a section 965(a) earnings amount that is reduced under § 1.965–1(b)(2) or § 1.965–8(b).

(iii) [Reserved]

(2) *Disallowed deduction.* No deduction (including under section 164) is allowed for the applicable percentage of any foreign income taxes treated as paid or accrued with respect to any amount for which a section 965(c) deduction is allowed. Such taxes include foreign income taxes allocated to an entity under § 1.901–2(f)(4) and a distributive share of foreign income taxes paid or accrued by a partnership.

(3) *Coordination with section 78*—(i) *In general.* With respect to foreign income taxes deemed paid by a domestic corporation with respect to its section 965(a) inclusion amount for a section 958(a) U.S. shareholder inclusion year, section 78 shall apply only to so much of such taxes as bears the same proportion to the amount of such taxes as—

(A) The excess of—

*(1)* The section 965(a) inclusion amount for a section 958(a) U.S. shareholder inclusion year, over

*(2)* The section 965(c) deduction amount allowable with respect to such section 965(a) inclusion amount, bears to

(B) Such section 965(a) inclusion amount.

(ii) *Domestic corporation that is a domestic pass-through owner.* With respect to foreign income taxes deemed paid by a domestic corporation attributable to such corporation's domestic pass-through owner share of a section 965(a) inclusion amount of a domestic pass-through entity, section 78 shall apply only to so much of such taxes as bears the same proportion to the amount of such taxes as the proportion determined under paragraph (c)(3)(i) of this section as applied to the domestic pass-through entity's section 965(a) inclusion amount for a section 958(a) U.S. shareholder inclusion year.

(d) *Applicable percentage*—(1) *In general.* For purposes of this section, the term *applicable percentage* means, with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year, the amount (expressed as a percentage) equal to the sum of—

(i) 0.771 multiplied by the ratio of—

(A) The section 958(a) U.S. shareholder's 8 percent rate amount for

the section 958(a) U.S. shareholder inclusion year, divided by

(B) The sum of the section 958(a) U.S. shareholder's 8 percent rate amount for the section 958(a) U.S. shareholder inclusion year plus the section 958(a) U.S. shareholder's 15.5 percent rate amount for the section 958(a) U.S. shareholder inclusion year; plus

(ii) 0.557 multiplied by the ratio of—

(A) The section 958(a) U.S. shareholder's 15.5 percent rate amount for the section 958(a) U.S. shareholder inclusion year, divided by

(B) The amount described in paragraph (d)(1)(i)(B) of this section.

(2) *Applicable percentage for domestic pass-through owners.* In the case of a domestic pass-through owner that has a domestic pass-through owner share of a domestic pass-through entity's section 965(a) inclusion amount, the domestic pass-through owner's applicable percentage that is applied to foreign income taxes attributable to such section 965(a) inclusion amount is equal to the applicable percentage determined under paragraph (d)(1) of this section with respect to the domestic pass-through entity that is the section 958(a) U.S. shareholder.

■ **Par. 10.** Section 1.965–6 is added to read as follows:

### § 1.965–6   Computation of foreign income taxes deemed paid and allocation and apportionment of deductions.

(a) *Scope.* This section provides rules for the computation of foreign income taxes deemed paid and the allocation and apportionment of deductions. Paragraphs (b) and (c) of this section provide the general rules for the computation of foreign income taxes deemed paid under sections 902 and 960. Paragraph (d) of this section provides rules for allocation and apportionment of expenses.

(b) *Computation of foreign incomes taxes deemed paid.* For purposes of determining foreign income taxes deemed paid under section 960(a)(1) with respect to a section 965(a) inclusion attributable to a deferred foreign income corporation, section 902 applies as if the section 965(a) inclusion, translated (if necessary) into the functional currency of the deferred foreign income corporation using the spot rate on December 31, 2017, were a dividend paid by the deferred foreign income corporation.

(c) *Section 902 fraction*—(1) *In general.* The term *section 902 fraction* means, with respect to a foreign corporation that is either a deferred foreign income corporation or an E&P

ADMIN_03603

deficit foreign corporation, the fraction that is—

(i) The dividend paid by, or the inclusion under section 951(a)(1) (including a section 965(a) inclusion) with respect to, the foreign corporation, as applicable (the *numerator*), divided by

(ii) The foreign corporation's post-1986 undistributed earnings (the *denominator*). *See* section 902(a).

(2) *Dividend or inclusion in excess of post-1986 undistributed earnings.* When the denominator of the section 902 fraction is positive but less than the numerator of such fraction, the section 902 fraction is one. When the denominator of the section 902 fraction is zero or less than zero, the section 902 fraction is zero and no foreign taxes are deemed paid.

(3) *Treatment of adjustment under section 965(b)(4)(B).* For purposes of section 902(c)(1), the post-1986 undistributed earnings of an E&P deficit foreign corporation are increased under section 965(b)(4)(B) and § 1.965–2(d)(2)(i)(A) as of the first day of the foreign corporation's first taxable year following the E&P deficit foreign corporation's last taxable year that begins before January 1, 2018.

(d) *Allocation and apportionment of deductions.* For purposes of allocating and apportioning expenses, a section 965(c) deduction does not result in any gross income, including a section 965(a) inclusion, being treated as exempt, excluded, or eliminated income within the meaning of section 864(e)(3) or § 1.861–8T(d). Similarly, a section 965(c) deduction does not result in the treatment of stock as an exempt asset within the meaning of section 864(e)(3) or § 1.861–8T(d). In addition, consistent with the general inapplicability of § 1.861–8T(d)(2) to earnings and profits described in section 959(c)(1) or 959(c)(2), neither section 965(a) previously taxed earnings and profits nor section 965(b) previously taxed earnings and profits are treated as giving rise to gross income that is exempt, excluded, or eliminated income. Similarly, the asset that gives rise to a section 965(a) inclusion, section 965(a) previously taxed earnings and profits, or section 965(b) previously taxed earnings and profits is not treated as a tax-exempt asset.

■ **Par. 11.** Section 1.965–7 is added to read as follows:

**§ 1.965–7   Elections, payment, and other special rules.**

(a) *Scope.* This section provides rules regarding certain elections and payments. Paragraph (b) of this section provides rules regarding the section

965(h) election. Paragraph (c) of this section provides rules regarding the section 965(i) election. Paragraph (d) of this section provides rules regarding the section 965(m) election and a special rule for real estate investment trusts. Paragraph (e) of this section provides rules regarding the section 965(n) election. Paragraph (f) of this section provides rules regarding the election to use the alternative method for calculating post-1986 earnings and profits. Paragraph (g) of this section provides definitions that apply for purposes of this section. For additional definitions that apply for purposes of the section 965 regulations, see § 1.965–1(f).

(b) *Section 965(h) election*—(1) *In general.* Any person with a section 965(h) net tax liability (that is, a section 958(a) U.S. shareholder or a domestic pass-through owner with respect to a domestic pass-through entity that is a section 958(a) U.S. shareholder, but not a domestic pass-through entity itself) may elect under section 965(h) and this paragraph (b) to pay its section 965(h) net tax liability in eight installments. This election may be revoked only by paying the full amount of the remaining unpaid section 965(h) net tax liability.

(i) *Amount of installments.* Except as provided in paragraph (b)(3) of this section, if a person makes a section 965(h) election, the amounts of the installments are—

(A) Eight percent of the section 965(h) net tax liability in the case of each of the first five installments;

(B) Fifteen percent of the section 965(h) net tax liability in the case of the sixth installment;

(C) Twenty percent of the section 965(h) net tax liability in the case of the seventh installment; and

(D) Twenty-five percent of the section 965(h) net tax liability in the case of the eighth installment.

(ii) *Increased installments due to a deficiency or a timely filed or amended return*—(A) *In general.* If a person makes a section 965(h) election, except as provided in paragraph (b)(1)(ii)(C) of this section, any deficiency or additional liability will be prorated to the installments described under paragraph (b)(1)(i) of this section if any of the following occur:

*(1)* A deficiency is assessed with respect to the person's section 965(h) net tax liability;

*(2)* The person files a return by the due date (taking into account extensions, if any) increasing the amount of its section 965(h) net tax liability beyond that taken into account in paying the first installment described

under paragraph (b)(1)(i) of this section; or

*(3)* The person files an amended return that reflects an increase in the amount of its section 965(h) net tax liability.

(B) *Timing.* If the due date for the payment of an installment to which the deficiency or additional liability is prorated has passed, the amount prorated to such installment must be paid on notice and demand by the Secretary. If the due date for the payment of an installment to which the deficiency or additional liability is prorated has not passed, then such amount will be due at the same time as, and as part of, the relevant installment.

(C) *Exception for negligence, intentional disregard, or fraud.* If a deficiency or additional liability is due to negligence, intentional disregard of rules and regulations, or fraud with intent to evade tax, the proration rule of this paragraph (b)(1)(ii) will not apply and the deficiency or additional liability (as well as any applicable interest and penalties) must be paid on notice and demand by the Secretary or, in the case of an additional liability reported on a return increasing the amount of the section 965(h) net tax liability after payment of the first installment or on an amended return, with the filing of the return.

(iii) *Due date of installments*—(A) *In general.* If a person makes a section 965(h) election, the first installment payment is due on the due date (without regard to extensions) for the return for the relevant taxable year. For purposes of this paragraph (b), the term *relevant taxable year* means, in the case in which the person is a section 958(a) U.S. shareholder, the section 958(a) U.S. shareholder inclusion year, or, in the case in which the person is a domestic pass-through owner, the taxable year in which the person has the section 965(a) inclusion to which the section 965(h) net tax liability is attributable. Each succeeding installment payment is due on the due date (without regard to extensions) for the return for the taxable year following the taxable year with respect to which the previous installment payment was made.

(B) *Extension for specified individuals.* If a person is a specified individual with respect to a taxable year within which an installment payment is due pursuant to paragraph (b)(1)(iii)(A) of this section, then, for purposes of determining the due date of an installment payment under paragraph (b)(1)(iii)(A) of this section, the due date of the return (without regard to extensions) due within the taxable year will be treated as the fifteenth day of the

sixth month following the close of the prior taxable year. This paragraph (b)(1)(iii)(B) is applicable regardless of whether the person is a specified individual with respect to the relevant taxable year.

(2) *Manner of making election*—(i) *Eligibility.* Any person with a section 965(h) net tax liability may make the section 965(h) election, provided that, with respect to the person, none of the acceleration events described in paragraph (b)(3)(ii) of this section have occurred before the election is made. Notwithstanding the preceding sentence, a person that would be eligible to make the section 965(h) election but for the occurrence of an event described in paragraph (b)(3)(ii) of this section may make the section 965(h) election if the exception described in paragraph (b)(3)(iii)(A) of this section applies.

(ii) *Timing.* A section 965(h) election must be made no later than the due date (taking into account extensions, if any, or any additional time that would have been granted if the person had made an extension request) for the return for the relevant taxable year. Relief is not available under § 301.9100–2 or 301.9100–3 to file a late election.

(iii) *Election statement.* Except as otherwise provided in publications, forms, instructions, or other guidance, to make a section 965(h) election, a person must attach a statement, signed under penalties of perjury, to its return for the relevant taxable year. The statement must include the person's name, taxpayer identification number, total net tax liability under section 965, section 965(h) net tax liability, section 965(i) net tax liability with respect to which a section 965(i) election is effective (if applicable), and the anticipated amounts of each installment described under paragraph (b)(1)(i) of this section. The statement must be filed in the manner prescribed in publications, forms, instructions, or other guidance.

(3) *Acceleration of payment*—(i) *Acceleration.* Notwithstanding paragraph (b)(1)(i) of this section, if a person makes a section 965(h) election, and an acceleration event described in paragraph (b)(3)(ii) of this section subsequently occurs, then, except as provided in paragraph (b)(3)(iii) of this section, the unpaid portion of the remaining installments will be due on the date of the acceleration event (or in the case of a title 11 or similar case, the day before the petition is filed).

(ii) *Acceleration events.* The following events are acceleration events for purposes of paragraph (b)(3)(i) of this

section with respect to a person that has made a section 965(h) election:

(A) An addition to tax is assessed for the failure to timely pay an installment described in paragraph (b)(1)(i) of this section;

(B) A liquidation, sale, exchange, or other disposition of substantially all of the assets of the person (including in a title 11 or similar case, or, in the case of an individual, by reason of death);

(C) In the case of a person that is not an individual, a cessation of business by the person;

(D) Any event that results in the person no longer being a United States person, including a resident alien (as defined in section 7701(b)(1)(A)) becoming a nonresident alien (as defined in section 7701(b)(1)(B));

(E) In the case of a person that was not a member of any consolidated group, the person becoming a member of a consolidated group;

(F) In the case of a consolidated group, the group ceasing to exist (including by reason of the acquisition of a consolidated group within the meaning of § 1.1502–13(j)(5)) or the group otherwise discontinuing in the filing of a consolidated return; or

(G) A determination by the Commissioner described in the second sentence of paragraph (b)(3)(iii)(C)(2) of this section.

(iii) *Eligible section 965(h) transferee exception*—(A) *In general.* Paragraph (b)(3)(i) of this section does not apply (such that the unpaid portion of all remaining installments will not be due as of the date of the acceleration event) to a person with respect to which an acceleration event occurs if the requirements described in paragraphs (b)(3)(iii)(A)(1) and (2) of this section are satisfied. A person with respect to which an acceleration event described in this paragraph (b)(3)(iii)(A) occurs is referred to as an *eligible section 965(h) transferor.*

(1) *Requirement to have a covered acceleration event.* The acceleration event satisfies the requirements of this paragraph (b)(3)(iii)(A)(1) if it is described in—

(i) Paragraph (b)(3)(ii)(B) of this section and the acceleration event is a qualifying consolidated group member transaction within the meaning of paragraph (b)(3)(iii)(E) of this section;

(ii) Paragraph (b)(3)(ii)(B) of this section (other than, in the case of an individual, an acceleration event caused by reason of death) in a transaction that is not a qualifying consolidated group member transaction;

(iii) Paragraph (b)(3)(ii)(E) of this section; or

(iv) Paragraph (b)(3)(ii)(F) of this section, and the acceleration event results from the acquisition of a consolidated group within the meaning of § 1.1502–13(j)(5) and the acquired consolidated group members join a different consolidated group as of the day following the acquisition.

(2) *Requirement to enter into a transfer agreement.* An eligible section 965(h) transferor and an eligible section 965(h) transferee (as defined in paragraph (b)(3)(iii)(B) of this section) must enter into an agreement with the Commissioner that satisfies the requirements of paragraph (b)(3)(iii)(B) of this section.

(B) *Transfer agreement*—(1) *Eligibility.* A transfer agreement that satisfies the requirements of this paragraph (b)(3)(iii)(B) must be entered into by an eligible section 965(h) transferor and an eligible section 965(h) transferee. For this purpose, the term *eligible section 965(h) transferee* refers to a single United States person that is not a domestic pass-through entity and that—

(i) With respect to an acceleration event described in paragraph (b)(3)(iii)(A)(1)(i) of this section, is a departing member (as defined in paragraph (b)(3)(iii)(E)(1)(i) of this section) or its qualified successor (as defined in paragraph (b)(3)(iii)(E)(2) of this section);

(ii) With respect to an acceleration event described in paragraph (b)(3)(iii)(A)(1)(ii) of this section, acquires substantially all of the assets of an eligible section 965(h) transferor;

(iii) With respect to an acceleration event described in paragraph (b)(3)(iii)(A)(1)(iii) of this section, is the agent (within the meaning of § 1.1502–77) of the consolidated group that the eligible section 965(h) transferor joins; or

(iv) With respect to an acceleration event described in paragraph (b)(3)(iii)(A)(1)(iv) of this section, is the agent (within the meaning of § 1.1502–77) of the surviving consolidated group.

(2) *Filing requirements*—(i) *In general.* A transfer agreement must be timely filed. Except as provided in paragraph (b)(3)(iii)(B)(2)(ii) of this section, a transfer agreement is considered timely filed only if the transfer agreement is filed within 30 days of the date that the acceleration event occurs. The transfer agreement must be filed in accordance with the rules provided in forms, instructions, or other guidance. In addition, a duplicate copy of the transfer agreement must be attached to the returns of both the eligible section 965(h) transferee and the eligible section 965(h) transferor for the taxable year

during which the acceleration event occurs filed by the due date for such returns (taking into account extensions, if any). Relief is not available under § 301.9100–2 or 301.9100–3 to file a transfer agreement late.

(*ii*) *Transition rule.* If an acceleration event occurs before September 10, 2018, the transfer agreement must be filed by October 9, 2018 in order to be considered timely filed.

(*3*) *Signature requirement.* The transfer agreement that is filed within 30 days of the acceleration event must be signed under penalties of perjury by a person who is authorized to sign a return on behalf of the eligible section 965(h) transferor and a person who is authorized to sign a return on behalf of the eligible section 965(h) transferee.

(*4*) *Terms of agreement.* A transfer agreement under this paragraph (b)(3)(iii)(B) must be entitled "Transfer Agreement Under Section 965(h)(3)" and must contain the following information and representations—

(*i*) A statement that the document constitutes an agreement by the eligible section 965(h) transferee to assume the liability of the eligible section 965(h) transferor for any unpaid installment payments of the eligible section 965(h) transferor under section 965(h);

(*ii*) A statement that the eligible section 965(h) transferee (and, if the eligible section 965(h) transferor continues in existence immediately after the acceleration event, the eligible section 965(h) transferor) agrees to comply with all of the conditions and requirements of section 965(h) and paragraph (b) of this section, as well as any other applicable requirements in the section 965 regulations;

(*iii*) The name, address, and taxpayer identification number of the eligible section 965(h) transferor and the eligible section 965(h) transferee;

(*iv*) The amount of the eligible section 965(h) transferor's section 965(h) net tax liability remaining unpaid, as determined by the eligible section 965(h) transferor, which is subject to adjustment by the Commissioner;

(*v*) A copy of the eligible section 965(h) transferor's most recent Form 965–A or Form 965–B, as applicable;

(*vi*) A detailed description of the acceleration event that led to the transfer agreement;

(*vii*) A representation that the eligible section 965(h) transferee is able to make the remaining payments required under section 965(h) and paragraph (b) of this section with respect to the section 965(h) net tax liability being assumed; and

(*viii*) If the eligible section 965(h) transferor continues to exist

immediately after the acceleration event, an acknowledgement that the eligible section 965(h) transferor and any successor to the eligible section 965(h) transferor will remain jointly and severally liable for any unpaid installment payments of the eligible section 965(h) transferor under section 965(h), including, if applicable, under § 1.1502–6.

(*5*) *Consolidated groups.* For purposes of this paragraph (b)(3)(iii)(B), in the case of a consolidated group, the terms "eligible section 965(h) transferor" and "eligible section 965(h) transferee" each refer to a consolidated group that is a party to a covered acceleration event described in paragraph (b)(3)(iii)(A)(*1*) of this section. In such a case, any transfer agreement under this paragraph (b)(3)(iii)(B) must be entered into by the agent (as defined in § 1.1502–77) of the relevant consolidated group.

(*C*) *Consent of Commissioner*—(*1*) *In general.* Except as otherwise provided in publications, instructions, forms, or other guidance, if an eligible section 965(h) transferor and an eligible section 965(h) transferee file a transfer agreement in accordance with the provisions of paragraph (b)(3)(iii)(B) of this section, the eligible section 965(h) transferor and the eligible section 965(h) transferee will be considered to have entered into an agreement described in paragraph (b)(3)(iii)(A)(*2*) of this section with the Commissioner for purposes of section 965(h)(3) and paragraph (b)(3)(iii) of this section. If the Commissioner determines that additional information is necessary (for example, additional information regarding the ability of the eligible section 965(h) transferee to fully pay the remaining section 965(h) net tax liability), the eligible section 965(h) transferee must provide such information upon request.

(*2*) *Material misrepresentations and omissions.* If the Commissioner determines that an agreement filed by an eligible section 965(h) transferor and an eligible section 965(h) transferee contains a material misrepresentation or material omission, then the Commissioner may reject the transfer agreement (effective as of the date of the related acceleration event). In the alternative, on the date that the Commissioner determines that the transfer agreement includes a material misrepresentation or material omission, the Commissioner may determine that an acceleration event has occurred with respect to the eligible section 965(h) transferee as of the date of the determination, such that any unpaid installment payments of the eligible section 965(h) transferor that were

assumed by the eligible section 965(h) transferee become due on the date of the determination.

(*D*) *Effect of assumption*—(*1*) *In general.* If the exception in this paragraph (b)(3)(iii) applies with respect to an eligible section 965(h) transferor and an eligible section 965(h) transferee, the eligible section 965(h) transferee assumes all of the outstanding obligations and responsibilities of the eligible section 965(h) transferor with respect to the section 965(h) net tax liability as though the eligible section 965(h) transferee had included the section 965(a) inclusion in income. Accordingly, the eligible section 965(h) transferee is responsible for making payments and reporting with respect to any unpaid installment payments. In addition, for example, if an acceleration event described in paragraph (b)(3)(ii) of this section occurs with respect to an eligible section 965(h) transferee, any unpaid installment payments of the eligible section 965(h) transferor that were assumed by the eligible section 965(h) transferee will become due on the date of such event, subject to any applicable exception in paragraph (b)(3)(iii) of this section.

(*2*) *Eligible section 965(h) transferor liability.* An eligible section 965(h) transferor (or a successor) remains jointly and severally liable for any unpaid installment payments of the eligible section 965(h) transferor that were assumed by the eligible section 965(h) transferee, as well as any penalties, additions to tax, or other additional amounts attributable to such net tax liability.

(*E*) *Qualifying consolidated group member transaction*—(*1*) *Definition of qualifying consolidated group member transaction.* For purposes of this paragraph (b)(3), the term *qualifying consolidated group member transaction* means a transaction in which—

(*i*) A member of a consolidated group (the *departing member*) ceases to be a member of the consolidated group (including by reason of the distribution, sale, or exchange of the departing member's stock);

(*ii*) The transaction results in the consolidated group (which is treated as a single person for this purpose under § 1.965–8(e)(1)) being treated as transferring substantially all of its assets for purposes of paragraph (b)(3)(iii)(B) of this section; and

(*iii*) The departing member either continues to exist immediately after the transaction or has a qualified successor.

(*2*) *Definition of qualified successor.* For purposes of this paragraph (b)(3), the term *qualified successor* means, with respect to a departing member

described in this paragraph (b)(3)(iii)(E), another domestic corporation (or consolidated group) that acquires substantially all of the assets of the departing member (including in a transaction described in section 381(a)(2)).

(3) *Departure of multiple members of a consolidated group.* Multiple members that deconsolidate from the same consolidated group as a result of a single transaction are treated as a single departing member to the extent that, immediately after the transaction, they become members of the same (second) consolidated group, which would be treated as a single person under § 1.965–8(e)(1).

(c) *Section 965(i) election*—(1) *In general.* Each shareholder, other than a domestic pass-through entity, of an S corporation that is a United States shareholder of a deferred foreign income corporation may elect under section 965(i) and this paragraph (c) to defer the payment of the shareholder's section 965(i) net tax liability with respect to the S corporation until the shareholder's taxable year that includes a triggering event described in paragraph (c)(3) of this section. This election may be revoked only by paying the full amount of the unpaid section 965(i) net tax liability.

(2) *Manner of making election*—(i) *Eligibility.* Each shareholder with a section 965(i) net tax liability with respect to an S corporation may make the section 965(i) election with respect to such S corporation, provided that, with respect to the shareholder, none of the triggering events described in paragraph (c)(3)(ii) of this section have occurred before the election is made. Notwithstanding the preceding sentence, a shareholder that would be eligible to make the section 965(i) election but for the occurrence of an event described in paragraph (c)(3)(ii) of this section may make the section 965(i) election if an exception described in paragraph (c)(3)(ii) of this section applies.

(ii) *Timing.* A section 965(i) election must be made no later than the due date (taking into account extensions, if any) for the shareholder's return for each taxable year that includes the last day of the taxable year of the S corporation in which the S corporation has a section 965(a) inclusion to which the shareholder's section 965(i) net tax liability is attributable. Relief is not available under § 301.9100–2 or 301.9100–3 to make a late election.

(iii) *Election statement.* Except as otherwise provided in publications, forms, instructions, or other guidance, to make a section 965(i) election, a shareholder must attach a statement, signed under penalties of perjury, to its return for the taxable year that includes the last day of a taxable year of the S corporation in which the S corporation has a section 965(a) inclusion to which the shareholder's section 965(i) net tax liability is attributable. The statement must include the shareholder's name, taxpayer identification number, the name and taxpayer identification number of the S corporation with respect to which the election is made, the amount described in paragraph (g)(10)(i)(A) of this section as modified by paragraph (g)(6) of this section for purposes of determining the section 965(i) net tax liability with respect to the S corporation, the amount described in paragraph (g)(10)(i)(B) of this section, and the section 965(i) net tax liability with respect to the S corporation. The statement must be filed in the manner prescribed in publications, forms, instructions, or other guidance.

(3) *Triggering events*—(i) *In general.* If a shareholder makes a section 965(i) election with respect to an S corporation, the shareholder defers payment of its section 965(i) net tax liability with respect to the S corporation until the shareholder's taxable year that includes the occurrence of a triggering event described in paragraph (c)(3)(ii) of this section with respect to the section 965(i) net tax liability with respect to the S corporation. If a triggering event described in paragraph (c)(3)(ii) of this section with respect to an S corporation occurs, except as provided in paragraph (c)(3)(iv) of this section, the shareholder's section 965(i) net tax liability with respect to the S corporation will be assessed as an addition to tax for the shareholder's taxable year that includes the triggering event.

(ii) *Triggering events.* The following events are considered triggering events for purposes of paragraph (c)(3)(i) of this section with respect to a shareholder's section 965(i) net tax liability with respect to an S corporation—

(A) The corporation ceases to be an S corporation (determined as of the first day of the first taxable year that the corporation is not an S corporation);

(B) A liquidation, sale, exchange, or other disposition of substantially all of the assets of the S corporation (including in a title 11 or similar case), a cessation of business by the S corporation, or the S corporation ceasing to exist; or

(C) The transfer of any share of stock of the S corporation by the shareholder (including by reason of death or otherwise).

(iii) *Partial transfers.* If an S corporation shareholder transfers less than all of its shares of stock of the S corporation, the transfer will be a triggering event only with respect to the portion of a shareholder's section 965(i) net tax liability that is properly allocable to the transferred shares.

(iv) *Eligible section 965(i) transferee exception*—(A) *In general.* Paragraph (c)(3)(i) of this section will not apply (such that a shareholder's section 965(i) net tax liability with respect to an S corporation will not be assessed as an addition to tax for the shareholder's taxable year that includes the triggering event) if the requirements described in paragraphs (c)(3)(iv)(A)(*1*) and (*2*) of this section are satisfied. A shareholder with respect to which a triggering event described in this paragraph (c)(3)(iv)(A) occurs is referred to as an *eligible section 965(i) transferor.*

(*1*) *Requirement to have a covered triggering event.* The triggering event satisfies the requirements of this paragraph (c)(3)(iv)(A)(*1*) if it is described in paragraph (c)(3)(ii)(C) of this section.

(*2*) *Requirement to enter into a transfer agreement.* The shareholder with respect to which a triggering event occurs and an eligible section 965(i) transferee (as defined in paragraph (c)(3)(iv)(B)(*1*) of this section) must enter into an agreement with the Commissioner that satisfies the requirements of paragraph (c)(3)(iv)(B) of this section.

(B) *Transfer agreement*—(*1*) *Eligibility.* A transfer agreement that satisfies the requirements of this paragraph (c)(3)(iv)(B) may be entered into by an eligible section 965(i) transferor and an eligible section 965(i) transferee. For this purpose, the term *eligible section 965(i) transferee* refers to a single United States person that is not a domestic pass-through entity.

(*2*) *Filing requirements*—(i) *In general.* A transfer agreement must be timely filed. Except as provided in paragraph (c)(3)(iv)(B)(*2*)(*ii*) of this section, a transfer agreement is considered timely filed only if the transfer agreement is filed within 30 days of the date that the triggering event occurs. The transfer agreement must be filed in accordance with the rules provided in forms, instructions, or other guidance. In addition, a duplicate copy of the transfer agreement must be attached to the returns of both the eligible section 965(i) transferee and the eligible section 965(i) transferor for the taxable year during which the triggering event occurs filed by the due date (taking into account extensions, if any) for such returns. Relief is not available under

§ 301.9100–2 or 301.9100–3 to file a transfer agreement late.

(*ii*) *Transition rule.* If a triggering event occurs before September 10, 2018, the transfer agreement must be filed by October 9, 2018 in order to be considered timely filed.

(*3*) *Signature requirement.* The transfer agreement that is filed within 30 days of the triggering event must be signed under penalties of perjury by a person who is authorized to sign a return on behalf of the eligible section 965(i) transferor and a person who is authorized to sign a return on behalf of the eligible section 965(i) transferee.

(*4*) *Terms of agreement.* A transfer agreement under this paragraph (c)(3)(iv)(B) must be entitled "Transfer Agreement Under Section 965(i)(2)" and must contain the following information and representations:

(*i*) A statement that the document constitutes an agreement by the eligible section 965(i) transferee to assume the liability of the eligible section 965(i) transferor for the unpaid portion of the section 965(i) net tax liability, or, in the case of a partial transfer, for the unpaid portion of the section 965(i) net tax liability attributable to the transferred stock;

(*ii*) A statement that the eligible section 965(i) transferee agrees to comply with all of the conditions and requirements of section 965(i) and paragraph (c) of this section, including the annual reporting requirement, as well as any other applicable requirements in the section 965 regulations;

(*iii*) The name, address, and taxpayer identification number of the eligible section 965(i) transferor and the eligible section 965(i) transferee;

(*iv*) The amount of the eligible section 965(i) transferor's unpaid section 965(i) net tax liability or, in the case of a partial transfer, the unpaid portion of the section 965(i) net tax liability attributable to the transferred stock, each as determined by the eligible section 965(i) transferor, which is subject to adjustment by the Commissioner;

(*v*) A copy of the eligible section 965(i) transferor's most recent Form 965–A;

(*vi*) A detailed description of the triggering event that led to the transfer agreement, including the name and taxpayer identification number of the S corporation with respect to which the section 965(i) election was effective;

(*vii*) A representation that the eligible section 965(i) transferee is able to pay the section 965(i) net tax liability being assumed; and

(*viii*) An acknowledgement that the eligible section 965(i) transferor and any successor to the eligible section 965(i) transferor will remain jointly and severally liable for the section 965(i) net tax liability being assumed by the eligible section 965(i) transferee.

(C) *Consent of Commissioner*—(*1*) *In general.* Except as otherwise provided in publications, instructions, forms, or other guidance, if an eligible section 965(i) transferor and an eligible section 965(i) transferee file a transfer agreement in accordance with the provisions of paragraph (c)(3)(iv)(B) of this section, the eligible section 965(i) transferor and the eligible section 965(i) transferee will be considered to have entered into an agreement with the Commissioner for purposes of section 965(i)(2) and paragraph (c)(3)(iv) of this section. If the Commissioner determines that additional information is necessary (for example, additional information regarding the ability of the eligible section 965(i) transferee to pay the eligible section 965(i) transferor's unpaid net section 965(i) tax liability), the eligible section 965(i) transferee must provide such information upon request.

(*2*) *Material misrepresentations and omissions.* If the Commissioner determines that an agreement filed by an eligible section 965(i) transferor and an eligible section 965(i) transferee contains a material misrepresentation or material omission, then the Commissioner may reject the transfer agreement (effective as of the date of the related triggering event). In the alternative, on the date that the Commissioner determines that the transfer agreement includes a material misrepresentation or material omission, the Commissioner may determine that a triggering event has occurred with respect to the eligible section 965(i) transferee as of the date of the determination, such that the unpaid section 965(i) net tax liability of the eligible section 965(i) transferor that was assumed by the eligible section 965(i) transferee becomes due on the date of the determination.

(D) *Effect of assumption*—(*1*) *In general.* When the exception in this paragraph (c)(3)(iv) applies with respect to an eligible section 965(i) transferor and an eligible section 965(i) transferee, the eligible section 965(i) transferee assumes all of the outstanding obligations and responsibilities of the eligible section 965(i) transferor with respect to the section 965(i) net tax liability with respect to the S corporation as though the eligible section 965(i) transferee had included the section 965(a) inclusion in income.

Accordingly, the eligible section 965(i) transferee is responsible for making payments and reporting with respect to any unpaid section 965(i) net tax liability with respect to the S corporation. In addition, for example, if a triggering event described in paragraph (c)(3)(ii) of this section occurs with respect to an eligible section 965(i) transferee, any unpaid portion of the section 965(i) net tax liability of the eligible section 965(i) transferor that was assumed by the eligible section 965(i) transferee becomes due on the date of such event, subject to any applicable exception in paragraph (c)(3)(iv) or (v) of this section.

(*2*) *Eligible section 965(i) transferor liability.* An eligible section 965(i) transferor remains jointly and severally liable for any unpaid installment payments of the eligible section 965(i) transferor that were assumed by the eligible section 965(i) transferee, as well as any penalties, additions to tax, or other additional amounts attributable to such net tax liability.

(v) *Coordination with section 965(h) election*—(A) *In general.* Subject to the limitation described in paragraph (c)(3)(v)(D) of this section, a shareholder that has made a section 965(i) election with respect to an S corporation, upon the occurrence of a triggering event with respect to such S corporation, may make a section 965(h) election with respect to the portion of the shareholder's section 965(i) net tax liability with respect to such S corporation that is assessed as an addition to tax for the shareholder's taxable year that includes the triggering event pursuant to paragraph (c)(3)(i) of this section as if such portion were a section 965(h) net tax liability.

(B) *Timing for election.* A section 965(h) election made pursuant to section 965(i)(4) and paragraph (c)(3)(v)(A) of this section must be made no later than the due date (taking into account extensions, if any) for the shareholder's return for the taxable year in which the triggering event with respect to the S corporation occurs. Relief is not available under § 301.9100–2 or 301.9100–3 to make a late election.

(C) *Due date for installment.* If a shareholder has made a section 965(h) election pursuant to section 965(i)(4) and paragraph (c)(3)(v)(A) of this section, the payment of the first installment (as described in paragraph (b)(1)(i) of this section) must be made no later than the due date (without regard to extensions) for the shareholder's return of tax for the taxable year in which the triggering event with respect to the S corporation occurs.

(D) *Limitation*—(*1*) *In general.* Notwithstanding paragraph (c)(3)(v)(A)

of this section, if the triggering event with respect to an S corporation is a triggering event described in paragraph (c)(3)(ii)(B) of this section, then the section 965(h) election may only be made with the consent of the Commissioner.

(2) *Manner of obtaining consent—(i) In general.* In order to obtain the consent of the Commissioner as required by paragraph (c)(3)(v)(D)(*1*) of this section, the shareholder intending to make the section 965(h) election must file the agreement described in paragraph (c)(3)(v)(D)(*4*) of this section within 30 days of the occurrence of the triggering event, except as described in paragraph (c)(3)(v)(D)(*2*)(*ii*) of this section. The agreement must be filed in accordance with the rules provided in forms, instructions, or other guidance. In addition, a duplicate copy of the agreement must be filed, with the shareholder's timely-filed return for the taxable year during which the triggering event occurs (taking into account extensions, if any), along with the election statement described in paragraph (b)(2)(iii) of this section. Relief is not available under § 301.9100–2 or 301.9100–3 to file an agreement late.

(*ii*) *Transition rule.* If a triggering event occurs before September 10, 2018, the agreement must be filed by October 9, 2018 in order to be considered timely filed.

(3) *Signature requirement.* The agreement that is filed within 30 days of the triggering event must be signed under penalties of perjury by the shareholder.

(4) *Terms of agreement.* The agreement under this paragraph (c)(3)(v)(D) must be entitled "Consent Agreement Under Section 965(i)(4)(D)" and must contain the following information and representations—

(*i*) A statement that the shareholder agrees to comply with all of the conditions and requirements of section 965(h) and paragraph (b) of this section, as well as any other applicable requirements in the section 965 regulations;

(*ii*) The name, address, and taxpayer identification number of the shareholder;

(*iii*) The amount of the section 965(i) net tax liability under section 965 remaining unpaid with respect to which the section 965(h) election is made pursuant to section 965(i)(4)(D) and paragraph (c)(3)(v)(A) of this section, as determined by the shareholder, which is subject to adjustment by the Commissioner; and

(*iv*) A representation that the shareholder is able to make the

payments required under section 965(h) and paragraph (b) of this section with respect to the portion of the total net tax liability under section 965 remaining unpaid described in paragraph (c)(3)(v)(D)(*iii*) of this section.

(5) *Consent of Commissioner—(i) In general.* If a shareholder files an agreement in accordance with the provisions of paragraph (c)(3)(v)(D) of this section, the shareholder will be considered to have obtained the consent of the Commissioner for purposes of section 965(i)(4)(D) and paragraph (c)(3)(v)(D)(*1*) of this section. However, if the Commissioner reviews the agreement and determines that additional information is necessary, the shareholder must provide such information upon request.

(*ii*) *Material misrepresentations and omissions.* If the Commissioner determines that an agreement filed by a shareholder in accordance with the provisions of this paragraph (c)(3)(v)(D) contains a material misrepresentation or material omission, then the Commissioner may reject the agreement (effective as of the date of the related triggering event).

(4) *Joint and several liability.* If any shareholder of an S corporation makes a section 965(i) election, the S corporation is jointly and severally liable for the payment of the shareholder's section 965(i) net tax liability with respect to the S corporation, as well as any penalties, additions to tax, or other additional amounts attributable to such net tax liability.

(5) *Extension of limitation on collection.* If an S corporation shareholder makes a section 965(i) election with respect to its section 965(i) net tax liability with respect to an S corporation, any limitation on the time period for the collection of the net tax liability shall not begin before the date of the triggering event with respect to the S corporation.

(6) *Annual reporting requirement—(i) In general.* A shareholder that makes a section 965(i) election with respect to its section 965(i) net tax liability with respect to an S corporation is required to report the amount of its deferred net tax liability on its return of tax for the taxable year in which the election is made and on the return of tax for each subsequent taxable year until such net tax liability has been fully assessed.

(*ii*) *Failure to report.* If a shareholder fails to report the amount of its deferred net tax liability as required with respect to any taxable year by the due date (taking into account extensions, if any) for the return of tax for that taxable year, five percent of such deferred net tax

liability will be assessed as an addition to tax for such taxable year.

(d) *Section 965(m) election and special rule for real estate investment trusts—(1) In general.* A real estate investment trust may elect under section 965(m) and this paragraph (d) to defer the inclusion in gross income (for purposes of the computation of real estate investment trust taxable income under section 857(b)) of its REIT section 965 amounts and include them in income according to the schedule described in paragraph (d)(2) of this section. This election is revocable only by including in gross income (for purposes of the computation of real estate investment trust taxable income under section 857(b)) the full amount of the REIT section 965 amounts.

(2) *Inclusion schedule for section 965(m) election.* If a real estate investment trust makes the section 965(m) election, the REIT section 965 amounts will be included in the real estate investment trust's gross income as follows—

(i) Eight percent of the REIT section 965 amounts in each taxable year in the five-taxable year period beginning with the taxable year the amount would otherwise be included;

(ii) Fifteen percent of the REIT section 965 amounts in the first year following the five year period described in paragraph (d)(2)(i) of this section;

(iii) Twenty percent of the REIT section 965 amounts in the second year following the five year period described in paragraph (d)(2)(i) of this section; and

(iv) Twenty-five percent of the REIT section 965 amounts in the third year following the five year period described in paragraph (d)(2)(i) of this section.

(3) *Manner of making election—(i) Eligibility.* A real estate investment trust with section 965(a) inclusions may make the section 965(m) election.

(ii) *Timing.* A section 965(m) election must be made no later than the due date (taking into account extensions, if any) for the return for the first year of the five year period described in paragraph (d)(2)(i) of this section. Relief is not available under § 301.9100–2 or 301.9100–3 to make a late election.

(iii) *Election statement.* Except as otherwise provided in publications, forms, instructions, or other guidance, to make a section 965(m) election, a real estate investment trust must attach a statement, signed under penalties of perjury, to its return for the taxable year in which it would otherwise be required to include the REIT section 965 amounts in gross income. The statement must include the real estate investment trust's name, taxpayer identification number, REIT section 965 amounts, and the

anticipated amounts of each portion of the REIT section 965 amounts described under paragraph (d)(2) of this section, and the statement must be filed in the manner prescribed in publications, forms, instructions, or other guidance.

(4) *Coordination with section 965(h).* A real estate investment trust that makes the section 965(m) election may not also make a section 965(h) election for any year with respect to which a section 965(m) election is in effect.

(5) *Acceleration of inclusion.* If a real estate investment trust makes a section 965(m) election and subsequently there is a liquidation, sale, exchange, or other disposition of substantially all of the assets of the real estate investment trust (including in a title 11 or similar case), or a cessation of business by the real estate investment trust, any amount not yet included in gross income (for purposes of the computation of real estate investment trust taxable income under section 857(b)) as a result of the section 965(m) election will be so included as of the day before the date of the event. The unpaid portion of any tax liability with respect to such inclusion will be due on the date of the event (or in the case of a title 11 or similar case, the day before the petition is filed).

(6) *Treatment of section 965(a) inclusions of a real estate investment trust.* Regardless of whether a real estate investment trust has made a section 965(m) election, and regardless of whether it is a United States shareholder of a deferred foreign income corporation, any section 965(a) inclusions of the real estate investment trust are not taken into account as gross income of the real estate investment trust for purposes of applying paragraphs (2) and (3) of section 856(c) for any taxable year for which the real estate investment trust takes into account a section 965(a) inclusion, including pursuant to paragraph (d)(2) of this section.

(e) *Section 965(n) election*—(1) *In general*—(i) *General rule.* A person may elect to not take into account the amount described in paragraph (e)(1)(ii) of this section in determining its net operating loss under section 172 for the taxable year or in determining the amount of taxable income for such taxable year (computed without regard to the deduction allowable under section 172) that may be reduced by net operating loss carryovers or carrybacks to such taxable year under section 172. The election for each taxable year is irrevocable.

(ii) *Applicable amount for section 965(n) election.* If a person makes a section 965(n) election, the amount

referred to in paragraph (e)(1)(i) of this section is the sum of—

(A) The person's section 965(a) inclusions for the taxable year reduced by the person's section 965(c) deductions for the taxable year, and

(B) In the case of a domestic corporation, the taxes deemed paid under section 960(a)(1) for the taxable year with respect to the person's section 965(a) inclusions that are treated as dividends under section 78.

(iii) *Scope of section 965(n) election.* If a person makes a section 965(n) election, the election applies to both net operating losses for the taxable year for which the election is made and the net operating loss carryovers or carrybacks to such taxable year, each in their entirety. Any section 965(n) election made by the agent (within the meaning of § 1.1502–77) of a consolidated group applies to all net operating losses available to the consolidated group, including all components of the consolidated net operating loss deduction (as defined in § 1.1502–21(a)).

(2) *Manner of making election*—(i) *Eligibility.* A person with a section 965(a) inclusion may make the section 965(n) election.

(ii) *Timing.* A section 965(n) election must be made no later than the due date (taking into account extensions, if any) for the person's return for the taxable year to which the election applies. Relief is not available under § 301.9100–2 or 301.9100–3 to make a late election.

(iii) *Election statement.* Except as otherwise provided in publications, forms, instructions, or other guidance, to make a section 965(n) election, a person must attach a statement, signed under penalties of perjury, to its return for the taxable year to which the election applies. The statement must include the person's name, taxpayer identification number, the amounts described in section 965(n)(2)(A) and paragraph (e)(1)(ii)(A) of this section and section 965(n)(2)(B) and paragraph (e)(1)(ii)(B) of this section, and the sum thereof, and the statement must be filed in the manner prescribed in instructions or other guidance.

(f) *Election to use alternative method for calculating post-1986 earnings and profits*—(1) *Effect of election for specified foreign corporations that do not have a 52–53-week taxable year.* If an election is made under this paragraph (f) with respect to a specified foreign corporation that does not have a 52–53-week taxable year, the amount of the post-1986 earnings and profits (including a deficit) as of the E&P measurement date on November 2, 2017, is determined under paragraph

(f)(3) of this section. The election described in this paragraph (f) is irrevocable. A specified foreign corporation that does not have a 52–53-week taxable year may not use the alternative method of determination in paragraph (f)(3) of this section for purposes of determining its post-1986 earnings and profits on the E&P measurement date on December 31, 2017.

(2) *Effect of election for specified foreign corporations that have a 52–53-week taxable year.* If an election is made under this paragraph (f) with respect to a specified foreign corporation that has a 52–53-week taxable year, the amount of the post-1986 earnings and profits (including a deficit) as of both E&P measurement dates is determined under paragraph (f)(3) of this section. The election described in this paragraph (f) is irrevocable.

(3) *Computation of post-1986 earnings and profits using alternative method.* With respect to an E&P measurement date, the post-1986 earnings and profits of a specified foreign corporation for which an election is properly made equals the sum of—

(i) The specified foreign corporation's post-1986 earnings and profits (including a deficit) determined as of the notional measurement date, as if it were an E&P measurement date, plus

(ii) The specified foreign corporation's annualized earnings and profits amount with respect to the notional measurement date.

(4) *Definitions*—(i) *52–53-week taxable year.* The term *52–53-week taxable year* means a taxable year described in § 1.441–2(a)(1).

(ii) *Annualized earnings and profits amount.* The term *annualized earnings and profits amount* means, with respect to a specified foreign corporation, an E&P measurement date, and a notional measurement date, the amount equal to the product of the number of days between the notional measurement date and the E&P measurement date (not including the former, but including the latter) multiplied by the daily earnings amount of the specified foreign corporation. The annualized earnings and profits amount is expressed as a negative number if the E&P measurement date precedes the notional measurement date.

(iii) *Daily earnings amount.* The term *daily earnings amount* means, with respect to a specified foreign corporation and a notional measurement date, the post-1986 earnings and profits (including a deficit) of the specified foreign corporation determined as of the close of the notional measurement date that were earned (or incurred) during

ADMIN_03610

the specified foreign corporation's taxable year that includes the notional measurement date, divided by the number of days that have elapsed in such taxable year as of the close of the notional measurement date.

(iv) *Notional measurement date.* The term *notional measurement date* means—

(A) With respect to an E&P measurement date of a specified foreign corporation with a 52–53-week taxable year, the closest end of a fiscal month to such E&P measurement date, and

(B) With respect to the E&P measurement date on November 2, 2017, of all specified foreign corporations not described in paragraph (f)(4)(iv)(A) of this section, October 31, 2017.

(5) *Manner of making election*—(i) *Eligibility.* An election with respect to a specified foreign corporation to use the alternative method of calculating post-1986 earnings and profits as of an E&P measurement date pursuant to this paragraph (f) must be made on behalf of the specified foreign corporation by a controlling domestic shareholder (as defined in § 1.964–1(c)(5)) pursuant to the rules of § 1.964–1(c)(3).

(ii) *Timing.* An election under this paragraph (f) must be made no later than the due date (taking into account extensions, if any) for the person's return for the first taxable year in which the person has a section 965(a) inclusion amount with respect to the specified foreign corporation or in which the person takes into account a specified E&P deficit with respect to the specified corporation for purposes of computing a section 965(a) inclusion amount with respect to another specified foreign corporation. Relief is not available under § 301.9100–2 or 301.9100–3 to make a late election.

(iii) *Election statement.* Except as otherwise provided in publications, forms, instructions, or other guidance, to make an election under this paragraph (f), a person must attach a statement, signed under penalties of perjury, to the person's return for the taxable year described in paragraph (f)(5)(ii) of this section. The statement must include the person's name, taxpayer identification number, and the name and taxpayer identification number, if any, of the specified foreign corporation with respect to which the election is made, and the statement must be filed in the manner prescribed in instructions or other guidance.

(6) *Examples.* The following examples illustrate the application of this paragraph (f).

*Example 1.* (i) *Facts.* FS, a foreign corporation, has a calendar year taxable year,

and as of October 31, 2017, FS has post-1986 earnings and profits of 10,000u, 3,040u of which were earned during the taxable year that includes October 31, 2017. An election is properly made under paragraph (f)(5) of this section with respect to FS, allowing FS to determine its post-1986 earnings and profits under the alternative method with respect to its E&P measurement date on November 2, 2017.

(ii) *Analysis.* As of the close of October 31, 2017, the notional measurement date with respect to the E&P measurement date on November 2, 2017, 304 days have elapsed in the taxable year of FS that includes October 31, 2017. Therefore, FS's daily earnings amount is 10u (3,040u divided by 304), and FS's annualized earnings and profits amount is 20u (10u multiplied by 2 (the number of days between the notional measurement date on October 31, 2017, and the E&P measurement date on November 2, 2017)). Accordingly, FS's post-1986 earnings and profits as of November 2, 2017, are 10,020u (its post-1986 earnings and profits as of October 31, 2017 (10,000u), plus its annualized earnings and profits amount (20u)).

*Example 2.* (i) *Facts.* The facts are the same as in paragraph (i) of *Example 1* of this paragraph (f)(6), except that a deficit of 3,040u was incurred during the taxable year that includes October 31, 2017.

(ii) *Analysis.* The analysis is the same as in paragraph (ii) of *Example 1* of this paragraph (f)(6), except that FS's daily earnings amount is (10u) ((3,040u) divided by 304), and FS's annualized earnings and profits amount is (20u) ((10u) multiplied by 2 (the number of days between the notional measurement date on November 2, 2017)). Accordingly, FS's post-1986 earnings and profits as of November 2, 2017, are 9,980u (its post-1986 earnings and profits as of October 31, 2017 (10,000u), plus its annualized earnings and profits amount ((20u))).

(g) *Definitions.* This paragraph (g) provides definitions that apply for purposes of this section.

(1) *Deferred net tax liability.* The term *deferred net tax liability* means, with respect to any taxable year of a person, the amount of the section 965(i) net tax liability the payment of which has been deferred under section 965(i) and paragraph (c) of this section.

(2) *REIT section 965 amounts.* The term *REIT section 965 amounts* means, with respect to a real estate investment trust and a taxable year of the real estate investment trust, the aggregate amount of section 965(a) inclusions and section 965(c) deductions that would (but for section 965(m)(1)(B) and paragraph (d) of this section) be taken into account in determining the real estate investment trust's income for the taxable year.

(3) *Section 965(h) election.* The term *section 965(h) election* means the election described in section 965(h)(1) and paragraph (b)(1) of this section.

(4) *Section 965(h) net tax liability.* The term *section 965(h) net tax liability* means, with respect to a person that has made a section 965(h) election, the total net tax liability under section 965 reduced by the aggregate amount of the person's section 965(i) net tax liabilities, if any, with respect to which section 965(i) elections are effective.

(5) *Section 965(i) election.* The term *section 965(i) election* means the election described in section 965(i)(1) and paragraph (c)(1) of this section.

(6) *Section 965(i) net tax liability.* The term *section 965(i) net tax liability* means, with respect to an S corporation and a shareholder of the S corporation, in the case in which a section 965(i) election is made, the amount determined pursuant to paragraph (g)(10)(i) of this section by adding before the word "over" in (g)(10)(i)(A) of this section "determined as if the only section 965(a) inclusions included in income by the person are domestic pass-through entity shares of section 965(a) inclusions by the S corporation with respect to deferred foreign income corporations of which the S corporation is a United States shareholder."

(7) *Section 965(m) election.* The term *section 965(m) election* means the election described in section 965(m)(1)(B) and paragraph (d)(1) of this section.

(8) *Section 965(n) election.* The term *section 965(n) election* means the election described in section 965(n)(1) and paragraph (e)(1)(i) of this section.

(9) *Specified individual.* The term *specified individual* means, with respect to a taxable year, a person described in § 1.6081–5(a)(5) or (6) who receives an extension of time to file and pay under § 1.6081–5(a) for the taxable year.

(10) *Total net tax liability under section 965*—(i) *General rule.* The term *total net tax liability under section 965* means, with respect to a person, the excess (if any) of—

(A) The person's net income tax for the taxable year in which the person includes a section 965(a) inclusion in income, over—

(B) The person's net income tax for the taxable year determined—

(1) Without regard to section 965, and

(2) Without regard to any income, deduction, or credit properly attributable to a dividend received (directly or through a chain of ownership described in section 958(a)) by the person (or, in the case of a domestic pass-through owner, by the person's domestic pass-through entity) from a deferred foreign income corporation.

(ii) *Net income tax.* For purposes of this paragraph (g)(10), the term *net*

*income tax* means the regular tax liability (as defined in section 26(b)) reduced by the credits allowed under subparts A, B, and D of part IV of subchapter A of chapter 1 of subtitle A of the Internal Revenue Code.

(iii) *Foreign tax credits.* The foreign tax credit disregarded in determining net income tax determined under paragraph (g)(10)(i)(B) of this section includes the credit for foreign income taxes deemed paid with respect to section 965(a) inclusions or foreign income taxes deemed paid with respect to a dividend, including a distribution that would have been treated as a dividend in the absence of section 965. The foreign tax credit disregarded under paragraph (g)(10)(i)(B) of this section also includes the credit for foreign income taxes imposed on distributions of section 965(a) previously taxed earnings and profits or 965(b) previously taxed earnings and profits made in the taxable year in which the person includes a section 965(a) inclusion in income.

■ **Par. 12.** Section 1.965–8 is added to read as follows:

### §1.965–8    Affiliated groups (including consolidated groups).

(a) *Scope.* This section provides rules for applying section 965 and the section 965 regulations to members of an affiliated group (as defined in section 1504(a)), including members of a consolidated group (as defined in § 1.1502–1(h)). Paragraph (b) of this section provides guidance regarding the application of section 965(b)(5) to determine the section 965(a) inclusion amounts of a member of an affiliated group. Paragraph (c) of this section provides guidance for designating the source of aggregate unused E&P deficits. Paragraph (d) provides rules regarding earning and profits and stock basis adjustments. Paragraph (e) of this section provides rules that treat members of a consolidated group as a single person for certain purposes. Paragraph (f) of this section provides definitions that apply for purposes of this section. Paragraph (g) of this section provides examples illustrating the application of this section. For additional definitions that apply for purposes of the section 965 regulations, see § 1.965–1(f).

(b) *Reduction of E&P net surplus shareholder's pro rata share of the section 965(a) earnings amount of a deferred foreign income corporation by the allocable share of the applicable share of the aggregate unused E&P deficit*—(1) *In general.* This paragraph (b) applies after the application of § 1.965–1(b)(2) for purposes of

determining the section 965(a) inclusion amount with respect to a deferred foreign income corporation of a section 958(a) U.S. shareholder that is both an E&P net surplus shareholder and a member of an affiliated group in which not all members are members of the same consolidated group. If this paragraph (b) applies, the U.S. dollar amount of the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation is further reduced (but not below zero) by the deferred foreign income corporation's allocable share of the section 958(a) U.S. shareholder's applicable share of the affiliated group's aggregate unused E&P deficit.

(2) *Consolidated group as part of an affiliated group.* If some, but not all, members of an affiliated group are members of a consolidated group, then the consolidated group is treated as a single member of the affiliated group for purposes of § 1.965–1(b)(2) and paragraph (b)(1) of this section.

(c) *Designation of portion of excess aggregate foreign E&P deficit taken into account*—(1) *In general.* This paragraph (c) provides rules for designating the source of an aggregate unused E&P deficit of an affiliated group that is not also a consolidated group taken into account under section 965(b)(5) and paragraph (b) of this section if the amount described in paragraph (f)(1)(i)(A) of this section with respect to the affiliated group exceeds the amount described in paragraph (f)(1)(i)(B) of this section with respect to the affiliated group. If this paragraph (c)(1) applies, each member of the affiliated group that is an E&P net deficit shareholder must designate by maintaining in its books and records a statement (identical to the statement maintained by all other such members) setting forth the portion of the excess aggregate foreign E&P deficit of the E&P net deficit shareholder taken into account under section 965(b)(5) and paragraph (b) of this section. See § 1.965–2(d)(2)(ii)(B) for a rule for designating the portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit of an E&P deficit foreign corporation taken into account under section 965(b), § 1.965–1(b)(2), and paragraph (b) of this section, as applicable.

(2) *Consolidated group as part of an affiliated group.* If some, but not all, members of an affiliated group are properly treated as members of a consolidated group, then the consolidated group is treated as a single member of the affiliated group for purposes of applying paragraph (c)(1) of this section.

(d) [Reserved]

(2) *Consolidated groups.* See § 1.1502–33(d)(1) for adjustments to members' earnings and profits and § 1.1502–32(b)(3) for adjustments to members' basis.

(e) *Treatment of a consolidated group as a single section 958(a) U.S. shareholder or a single person*—(1) *In general.* All members of a consolidated group that are section 958(a) U.S. shareholders of a specified foreign corporation are treated as a single section 958(a) U.S. shareholder for purposes of section 965(b) and § 1.965–1(b)(2). Furthermore, all members of a consolidated group are treated as a single person for purposes of paragraphs (h), (k), and (n) of section 965 and § 1.965–7. Thus, for example, any election governed by section 965(h) and § 1.965–7(b) must be made by the agent (within the meaning of § 1.1502–77) of the group as a single election on behalf of all members of the consolidated group. Similarly, the determination of whether the transfer of assets by one member to a non-member of the consolidated group would constitute an acceleration event under section § 1.965–7(b)(3)(ii)(B) takes into account all of the assets of the consolidated group, which for purposes of this determination, includes all of the assets of each consolidated group member. In analyzing issues relating to the transfer of assets of a consolidated group, appropriate adjustments are made to prevent the duplication of assets or asset value.

(2) *Limitation.* Paragraph (e)(1) of this section does not apply to treat all members of a consolidated group as a single section 958(a) U.S. shareholder or a single person, as applicable, for purposes of determining the amount of any member's inclusion under section 951 (including a section 965(a) inclusion), the foreign income taxes deemed paid with respect to a section 965(a) inclusion (see sections 960 and 902), or any purpose other than those specifically listed in paragraph (e)(1) of this section or another provision of the section 965 regulations.

(3) *Determination of section 965(c) deduction amount.* Paragraph (e)(1) of this section does not apply to treat all members of a consolidated group as a single section 958(a) U.S. shareholder for purposes of determining the amount of any member's section 965(c) deduction amount. However, for purposes of determining the section 965(c) deduction amount of any section 958(a) U.S. shareholder that is a member of a consolidated group, the aggregate foreign cash position of the section 958(a) U.S. shareholder is equal to the

aggregate section 965(a) inclusion amount of the section 958(a) U.S. shareholder multiplied by the group cash ratio of the consolidated group.

(f) *Definitions.* This paragraph (f) provides definitions that apply for purposes of applying the section 965 regulations to members of an affiliated group, including members of a consolidated group.

(1) *Aggregate unused E&P deficit*—(i) *General rule.* The term *aggregate unused E&P deficit* means, with respect to an affiliated group, the lesser of—

(A) The sum of the excess aggregate foreign E&P deficit with respect to each E&P net deficit shareholder that is a member of the affiliated group, or

(B) The amount determined under paragraph (f)(3)(ii) of this section.

(ii) *Reduction with respect to E&P net deficit shareholders that are not wholly owned by the affiliated group.* If the group ownership percentage of an E&P net deficit shareholder is less than 100 percent, the amount of the excess aggregate foreign E&P deficit with respect to the E&P net deficit shareholder that is taken into account under paragraph (f)(1)(i) of this section is the product of the group ownership percentage multiplied by the excess aggregate foreign E&P deficit.

(2) *Allocable share.* The term *allocable share* means, with respect to a deferred foreign income corporation and an E&P net surplus shareholder's applicable share of an aggregate unused E&P deficit of an affiliated group, the product of the E&P net surplus shareholder's applicable share of the affiliated group's aggregate unused E&P deficit and the ratio described in § 1.965–1(f)(11) with respect to the deferred foreign income corporation.

(3) *Applicable share.* The term *applicable share* means, with respect to an E&P net surplus shareholder and an aggregate unused E&P deficit of an affiliated group, the amount that bears the same proportion to the affiliated group's aggregate unused E&P deficit as—

(i) The product of—

(A) The E&P net surplus shareholder's group ownership percentage, multiplied by

(B) The amount that would (but for section 965(b)(5) and paragraph (b) of this section) constitute the E&P net surplus shareholder's aggregate section 965(a) inclusion amount, bears to

(ii) The aggregate amount determined under paragraph (f)(3)(i) of this section with respect to all E&P net surplus shareholders that are members of the group.

(4) *Consolidated group aggregate foreign cash position.* The term

*consolidated group aggregate foreign cash position* means, with respect to a consolidated group, the sum of the amount that would be the aggregate foreign cash position (as defined in § 1.965–1(f)(8)(i)) of each member of the consolidated group that is a section 958(a) U.S. shareholder determined as if each such member were not a member of a consolidated group.

(5) *E&P net deficit shareholder.* The term *E&P net deficit shareholder* means a section 958(a) U.S. shareholder that has an excess aggregate foreign E&P deficit.

(6) *E&P net surplus shareholder.* The term *E&P net surplus shareholder* means a section 958(a) U.S. shareholder that would (but for section 965(b)(5) and paragraph (b) of this section) have an aggregate section 965(a) inclusion amount greater than zero.

(7) *Excess aggregate foreign E&P deficit.* The term *excess aggregate foreign E&P deficit* means, with respect to a section 958(a) U.S. shareholder, the amount, if any, by which the amount described in § 1.965–1(f)(9)(i) with respect to the section 958(a) U.S. shareholder exceeds the amount described in § 1.965–1(f)(9)(ii) with respect to the section 958(a) U.S. shareholder.

(8) *Group cash ratio.* The term *group cash ratio* means, with respect to a consolidated group, the ratio of—

(i) The consolidated group aggregate foreign cash position, to

(ii) The sum of the aggregate section 965(a) inclusion amounts of all members of the consolidated group.

(9) *Group ownership percentage.* The term *group ownership percentage* means, with respect to a section 958(a) U.S. shareholder that is a member of an affiliated group, the percentage of the value of the stock of the United States shareholder which is held by other includible corporations in the affiliated group. Notwithstanding the preceding sentence, the group ownership percentage of the common parent of the affiliated group is 100 percent. Any term used in this paragraph (f)(9) that is also used in section 1504 has the same meaning as when used in such section. Additionally, if the term is used in the context of a rule for which all members of a consolidated group are treated as a single section 958(a) U.S. shareholder under paragraph (e)(1) of this section, then the group ownership percentage is determined solely with respect to the value of the stock of the common parent of the consolidated group held by other includible corporations that are not members of the consolidated group.

(g) *Examples.* The following examples illustrate the application of this section.

*Example 1.* Application of affiliated group rule. (i) *Facts.* (A) *In general.* USP owns all of the stock of USS1, USS2, and USS3. Each of USP, USS1, USS2 and USS3 is a domestic corporation and is a member of an affiliated group of which USP is the common parent (the "USP Group"). The USP Group has not elected to file a consolidated federal income tax return. USS1 owns all of the stock of CFC1 and CFC2, USS2 owns all of the stock of CFC3, and USS3 owns all of the stock of CFC4. Each of CFC1, CFC2, CFC3, and CFC4 is a controlled foreign corporation within the meaning of section 957(a) and, therefore, each is a specified foreign corporation under section 965(e) and § 1.965–1(f)(45). Each of USP, USS1, USS2, USS3, CFC1, CFC2, CFC3, and CFC4 has the calendar year as its taxable year.

(B) *Facts relating to section 965.* CFC1 and CFC3 are deferred foreign income corporations with section 965(a) earnings amounts of $600x and $300x, respectively. CFC1 and CFC3 have cash positions of $0x and $50x, respectively, on each of their cash measurement dates. CFC2 and CFC4 are E&P deficit foreign corporations with specified E&P deficits of $400x and $100x, respectively. CFC2 and CFC4 have cash positions of $100x and $50x, respectively, on each of their cash measurement dates. CFC1, CFC2, CFC3, and CFC4 all use the U.S. dollar as their functional currency.

(ii) *Analysis.* (A) *Section 965(a) inclusion amounts before application of section 965(b)(5).* USS1 is a section 958(a) U.S. shareholder with respect to CFC1 and CFC2; USS2 is a section 958(a) U.S. shareholder with respect to CFC3; and USS3 is a section 958(a) U.S. shareholder with respect to CFC4. USS1's pro rata share of CFC1's section 965(a) earnings amount is $600x. Under section 965(b)(3)(A) and § 1.965–1(f)(9), USS1's aggregate foreign E&P deficit is $400x, the lesser of the aggregate of USS1's pro rata share of the specified E&P deficit of each E&P deficit foreign corporation ($400x) and the amount described in § 1.965–1(f)(9)(ii) with respect to USS1 ($600x). Under section 965(b) and § 1.965–1(b)(2), in determining its section 965(a) inclusion amount with respect to CFC1, USS1 reduces its pro rata share of the U.S. dollar amount of section 965(a) earnings amount of CFC1 by CFC1's allocable share of USS1's aggregate foreign E&P deficit. CFC1's allocable share of USS1's aggregate foreign E&P deficit is $400x, which is the product of USS1's aggregate foreign E&P deficit ($400x) and 1, which is the ratio determined by dividing USS1's pro rata share of the section 965(a) earnings amount of CFC1 ($600x), by the amount described in § 1.965–1(f)(9)(ii) with respect to USS1 ($600x). Accordingly, under section 965(b) and § 1.965–1(b)(2) (before applying section 965(b)(5) and paragraph (b) of this section), USS1's section 965(a) inclusion amount with respect to CFC1 would be $200x (USS1's pro rata share of the section 965(a) earnings amount of CFC1 of $600x reduced by CFC1's allocable share of USS1's aggregate foreign E&P deficit of $400x). Under section 965(b) and § 1.965–1(b)(2) (before applying section 965(b)(5) and paragraph (b) of this section), USS2's section 965(a) inclusion amount with respect to

CFC3 would be $300x (USS2's pro rata share of the section 965(a) earnings amount of CFC3).

(B) *Application of section 965(b)(5)—(1) Determination of E&P net surplus shareholders and E&P net deficit shareholders.* USS1 is an E&P net surplus shareholder because it would have an aggregate section 965(a) inclusion amount of $200x but for the application of section 965(b)(5) and paragraph (b) of this section. USS2 is also an E&P net surplus shareholder because it would have an aggregate section 965(a) inclusion amount of $300x but for the application of section 965(b)(5) and paragraph (b) of this section. USS3 is an E&P net deficit shareholder because it has an excess aggregate foreign E&P deficit of $100x.

(2) *Determining section 965(a) inclusion amounts under section 965(b)(5).* Under section 965(b) and paragraph (b) of this section, for purposes of determining the section 965(a) inclusion amount of a section 958(a) U.S. shareholder with respect to a deferred foreign income corporation, if, after applying § 1.965–1(b)(2), the section 958(a) U.S. shareholder is an E&P net surplus shareholder, then the U.S. dollar amount of the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation is further reduced (but not below zero) by the deferred foreign income corporation's allocable share of the section 958(a) U.S. shareholder's applicable share of the affiliated group's aggregate unused E&P deficit. USS3 is the only E&P net deficit shareholder in the USP Group, and therefore the aggregate unused E&P deficit of the USP Group is equal to USS3's excess aggregate foreign E&P deficit ($100x). The applicable share of the USP Group's aggregate unused E&P deficit of each of USS1 and USS2, respectively, is an amount that bears the same proportion to the USP Group's aggregate unused E&P deficit as the product of the group ownership percentage of USS1 and USS2, respectively, multiplied by the amount that would (but for section 965(b)(5) and paragraph (b) of this section) constitute the aggregate section 965(a) inclusion amount of USS1 and USS2, respectively, bears to the aggregate of such amounts with respect to both USS1 and USS2. Therefore, USS1's applicable share of the USP Group's aggregate unused E&P deficit is $40 ($100x × ($200x/($200x + $300x))) and USS2's applicable share of the USP Group's aggregate unused E&P deficit is $60x ($100x × ($300x/($200x + $300x))). Because USS1 is a section 958(a) U.S. shareholder with respect to only one deferred foreign income corporation, the entire $60x of USS1's applicable share of the USP Group's aggregate unused E&P deficit is treated as CFC1's allocable share of USS1's applicable share of the USP Group's aggregate unused E&P deficit, and thus USS1's section 965(a) inclusion amount with respect to CFC1 is reduced to $160x ($200x − $40x). Because USS2 is a section 958(a) U.S. shareholder with respect to only one deferred foreign income corporation, the entire $60x of USS2's applicable share of the USP Group's aggregate unused E&P deficit is treated as CFC3's allocable share of USS2's applicable

share of the USP Group's aggregate unused E&P deficit, and thus USS2's section 965(a) inclusion amount with respect to CFC3 is reduced to $240x ($300x − $60x).

(C) *Aggregate foreign cash position.* Under section 965(c) and § 1.965–1(c), a section 958(a) U.S. shareholder that includes a section 965(a) inclusion amount in income is allowed a deduction equal to the section 965(c) deduction amount. The section 965(c) deduction amount is computed by taking into account the aggregate foreign cash position of the section 958(a) U.S. shareholder. Under § 1.965–1(f)(8)(i), the aggregate foreign cash position of USS1 is $100x, and the aggregate foreign cash position of USS2 is $50x.

(D) *Section 965(c) deduction amount.* The section 965(c) deduction amount of USS1 is $102x, which is equal to (i) USS1's 8 percent rate equivalent percentage (77.1428571%) of its 8 percent rate amount for USS1's 2017 year ($60x ($160x − $100x)), plus USS1's 15.5 percent rate equivalent percentage (55.7142857%) of its 15.5 percent rate amount for USS1's 2017 year ($100x). The section 965(c) deduction amount of USS2 is $174.43x, which is equal to (i) USS2's 8 percent rate equivalent percentage (77.1428571%) of its 8 percent rate amount for USS2's 2017 year ($190x ($240x − $50x)), plus USS2's 15.5 percent rate equivalent percentage (55.7142857%) of its 15.5 percent rate amount for USS2's 2017 year ($50x). Because USS3 has no section 965(a) inclusion amount, it has no section 965(c) deduction amount and therefore is not allowed a section 965(c) deduction.

*Example 2.* Application to members of a consolidated group. (i) *Facts.* The facts are the same as in paragraph (i) of *Example 1* of this paragraph (g), except that the USP Group has elected to file a consolidated return.

(ii) *Analysis—(A) Section 965(a) inclusion amount—(1) Single section 958(a) U.S. shareholder treatment.* Because each of USS1, USS2, and USS3 is a section 958(a) U.S. shareholder of a specified foreign corporation and is a member of a consolidated group, paragraph (e)(1) of this section applies to treat USS1, USS2, and USS3 as a single section 958(a) U.S. shareholder for purposes of section 965(b) and § 1.965–1(b)(2).

(2) *Determination of inclusion amount.* The single section 958(a) U.S. shareholder composed of USS1, USS2, and USS3 is a section 958(a) U.S. shareholder with respect to CFC1, CFC2, CFC3, and CFC4. Under § 1.965–1(b)(2), in determining USS1's section 965(a) inclusion amount, the single section 958(a) U.S. shareholder decreases its pro rata share of the U.S. dollar amount of the section 965(a) earnings amount of CFC1 by CFC1's allocable share of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder. CFC1's allocable share of the aggregate foreign E&P deficit is $333.33x, which is the product of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder ($500x ($400x + $100x)) and .67, which is the ratio determined by dividing its pro rata share of the section 965(a) earnings amount of CFC1 ($600x) by the amount described in § 1.965–1(f)(9)(ii) with respect to the single section 958(a) U.S. shareholder ($900x ($600x +

$300x)). Therefore, USS1's section 965(a) inclusion amount with respect to CFC1 is $266.67 (its pro rata share of the section 965(a) earnings amount of CFC1 ($600) less CFC1's allocable share of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder ($333.33x)). Similarly, under § 1.965–1(b)(2), in determining the section 965(a) inclusion amount of USS2, the single section 958(a) U.S. shareholder decreases its pro rata share of the U.S. dollar amount of the section 965(a) earnings amount of CFC3 by CFC3's allocable share of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder. CFC3's allocable share of the aggregate foreign E&P deficit is $166.67x, which is the product of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder ($500x) and .33, which is the ratio determined by dividing its pro rata share of the section 965(a) earnings amount of CFC3 ($300x) by the amount described in § 1.965–1(f)(9)(ii) with respect to the single section 958(a) U.S. shareholder ($900x ($600x + $300x)). Therefore, USS2's section 965(a) inclusion amount with respect to CFC3 is $133.33x (its pro rata share of the section 965(a) earnings amount of CFC3 ($300x) less CFC3's allocable share of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder ($166.67x)).

(B) *Consolidated group aggregate foreign cash position.* Because USS1 and USS2 are members of a consolidated group, the aggregate foreign cash position of each of USS1 and USS2 is determined under paragraph (e)(3) of this section. Under paragraph (e)(3) of this section, the aggregate foreign cash position of each of USS1 and USS2 is equal to the aggregate section 965(a) inclusion amount of USS1 and USS2, respectively, multiplied by the group cash ratio of the USP Group, as determined pursuant to paragraph (f)(8) of this section. The group cash ratio of the USP Group is .50, which is the ratio of the USP Group's consolidated group aggregate foreign cash position ($200x ($50x + $100x + $50x)) and the sum of the aggregate section 965(a) inclusion amounts of all members of the USP Group ($400x ($266.67x + $133.33x)). Therefore, under paragraph (e)(3) of this section, the aggregate foreign cash positions of USS1 and USS2 are, respectively, $133.34x ($266.67x × ($200x/$400x)) and $66.67 ($133.33x × ($200x/400x)).

(C) *Section 965(c) deduction amount.* The section 965(c) deduction amount of USS1 is $177.14x, which is equal to (i) USS1's 8 percent rate equivalent percentage (77.1428571%) of its 8 percent rate amount for USS1's 2017 year ($133.33x ($266.67x − $133.34x)), plus USS1's 15.5 percent rate equivalent percentage (55.7142857%) of its 15.5 percent rate amount for USS1's 2017 year ($133.34x). The section 965(c) deduction amount of USS2 is $88.56x, which is equal to (i) USS2's 8 percent rate equivalent percentage (77.1428571%) of its 8 percent rate amount for USS2's 2017 year ($66.66x ($133.33x − $66.67x)), plus USS2's 15.5 percent rate equivalent percentage (55.7142857%) of its 15.5 percent rate amount for USS2's 2017 year ($66.67x). Because USS3 has no section 965(a)

inclusion amount, it has no section 965(c) deduction amount and therefore is not allowed a section 965(c) deduction.

■ **Par. 13.** Section 1.965–9 is added to read as follows:

### § 1.965–9   Applicability dates.

(a) *In general.* Sections 1.965–1 through 1.965–8 apply beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, beginning the taxable year in which or with which such taxable year of the foreign corporation ends.

(b) *Applicability dates for rules disregarding certain transactions.* Section 1.965–4 applies regardless of whether, with respect to a foreign corporation, the transaction, effective date of a change in method of accounting, effective date of an entity classification election, or specified payment described in § 1.965–4 occurred before the first day of the foreign corporation's last taxable year that begins before January 1, 2018, or, with respect to a United States person,

the transaction, effective date of a change in method of accounting, effective date of an entity classification election, or specified payment described in § 1.965–4 occurred before the first day of the taxable year of the United States person in which or with which the taxable year of the foreign corporation ends.

■ **Par. 14.** Section 1.986(c)–1 is added to read as follows:

### § 1.986(c)–1   Coordination with section 965.

(a) *Amount of foreign currency gain or loss.* Foreign currency gain or loss with respect to distributions of section 965(a) previously taxed earnings and profits (as defined in § 1.965–1(f)(39)) is determined based on movements in the exchange rate between December 31, 2017, and the time such distributions are made.

(b) *Section 965(a) previously taxed earnings and profits.* Any gain or loss recognized under section 986(c) with respect to distributions of section 965(a) previously taxed earnings and profits is

reduced in the same proportion as the reduction by a section 965(c) deduction amount (as defined in § 1.965–1(f)(42)) of the section 965(a) inclusion amount (as defined in § 1.965–1(f)(38)) that gave rise to such section 965(a) previously taxed earnings and profits.

(c) *Section 965(b) previously taxed earnings and profits.* Section 986(c) does not apply with respect to distributions of section 965(b) previously taxed earnings and profits (as defined in § 1.965–1(f)(40)).

(d) *Applicability dates.* The section applies beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, for the taxable year in which or with which such taxable year of the foreign corporation ends.

**Kirsten Wielobob,**
*Deputy Commissioner for Services and Enforcement.*

[FR Doc. 2018–16476 Filed 8–3–18; 4:15 pm]

**BILLING CODE 4830–01–P**

ADMIN_03615

[4830-01-p]

DEPARTMENT OF THE TREASURY

Internal Revenue Service

26 CFR Part 1

[REG-104226-18]

RIN 1545-BO51

Guidance Regarding the Transition Tax Under Section 965 and Related Provisions

AGENCY:  Internal Revenue Service (IRS), Treasury.

ACTION:  Notice of proposed rulemaking.

SUMMARY:  This document contains proposed regulations implementing section 965 of the Internal Revenue Code ("Code") as amended by the Tax Cuts and Jobs Act, which was enacted on December 22, 2017.  The proposed regulations would affect United States persons with direct or indirect ownership interests in certain foreign corporations.

DATES:  Written or electronic comments and requests for a public hearing must be received by **[INSERT DATE 60 DAYS AFTER PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER]**.

ADDRESSES:  Send submissions to:  CC:PA:LPD:PR (REG-104226-18), room 5203, Internal Revenue Service, P.O. Box 7604, Ben Franklin Station, Washington, DC 20044.  Submissions may be hand-delivered Monday through Friday between the hours of 8 a.m. and 4 p.m. to CC:PA:LPD:PR (REG-104226-18), Courier's Desk, Internal Revenue Service, 1111 Constitution Avenue, NW, Washington, DC 20224, or sent electronically via the Federal eRulemaking Portal at www.regulations.gov (indicate IRS and REG-104226-18).

FOR FURTHER INFORMATION CONTACT:  Concerning the proposed regulations under §§1.962-1 and 1.962-2, 1.965-1 through 4, 1.965-7 through 9, and 1.986(c)-1, Leni C. Perkins at (202) 317-6934; concerning the proposed regulations under §§1.965-5 and 1.965-6, Karen J. Cate at (202) 317-6936; concerning submissions of comments and requests for a public hearing, Regina Johnson at (202) 317-6901 (not toll-free numbers).

SUPPLEMENTARY INFORMATION:

**Paperwork Reduction Act**

The collections of information contained in this notice of proposed rulemaking have been submitted to the Office of Management and Budget for review in accordance with the Paperwork Reduction Act of 1995 (44 U.S.C. 3507(d)).  Comments on the collections of information should be sent to the Office of Management and Budget, Attn: Desk Officer for the Department of the Treasury, Office of Information and Regulatory Affairs, Washington, DC 20503, with copies to the Internal Revenue Service, Attn: IRS Reports Clearance Officer, SE:W:CAR:MP:T:T:SP, Washington, DC 20224.  Comments on the collection of information should be received by **[INSERT DATE 60 DAYS AFTER PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER]**.

Comments are specifically requested concerning:

Whether the proposed collection of information is necessary for the proper performance of the duties of the IRS, including whether the information will have practical utility;

The accuracy of the estimated burden associated with the proposed collection of information (including underlying assumptions and methodology);

2

ADMIN_03617

How the quality, utility, and clarity of the information to be collected may be enhanced;

How the burden of complying with the proposed collection of information may be minimized, including through the application of automated collection techniques or other forms of information technology; and

Estimates of capital or start-up costs and costs of operation, maintenance, and purchases of services to provide information.

The collections of information in these proposed regulations are in proposed §§1.965-2(d)(2)(ii)(B), 1.965-2(f)(2)(iii)(B), 1.965-3(b)(2), 1.965-3(c)(3), 1.965-4(b)(2)(i), 1.965-7(b)(2), 1.965-7(b)(3)(iii)(B), 1.965-7(c)(2), 1.965-7(c)(3)(iv)(B), 1.965-7(c)(3)(v)(D), 1.965-7(c)(6)(i), 1.965-7(d)(3), 1.965-7(e)(2), 1.965-7(f)(5), and 1.965-8(c). The information is required to be provided by taxpayers that make an election or rely on taxpayer-favorable rules.  The information provided will be used by the IRS for tax compliance purposes.

Estimated total annual reporting burden: 500,000 hours.

Estimated average annual burden hours per respondent: five hours.

Estimated number of respondents: 100,000.

Estimated annual frequency of responses: once.

The number of respondents estimate is a rough estimate of the number of taxpayers completing the relevant parts of tax forms. The estimate of five hours per response is intended to capture the burden in gathering the required information for the election to determine the post-1986 earnings and profits and allocation of deficits and transfer agreements.  In addition, the IRS intends that information collection

3

ADMIN_03618

requirements relating to the reporting and payment of tax under section 965 will be set

forth in forms and instructions.  For purposes of the Paperwork Reduction Act, the

reporting burden associated with that collection of information will be reflected in the

OMB Form 83-I, Paperwork Reduction Act Submission, associated with those forms.

An agency may not conduct or sponsor, and a person is not required to respond

to, a collection of information unless it displays a valid control number assigned by the

Office of Management and Budget.

Books or records relating to a collection of information must be retained as long

as their contents may become material in the administration of any internal revenue law.

Generally, tax returns and tax return information are confidential, as required by 26

U.S.C. 6103.

**Background**

I. In General

This document contains proposed amendments to 26 CFR part 1 under sections

962, 965, and 986 (the "proposed regulations").  As amended by section 14103 of the

Tax Cuts and Jobs Act, P.L. 115-97 (2017) (the "Act"), section 965 applies in the case

of the last taxable year of a deferred foreign income corporation ("DFIC") that begins

before January 1, 2018.  The Department of the Treasury ("Treasury Department") and

the IRS have previously issued guidance announcing regulations intended to be issued

under section 965.  See Notice 2018-07, 2018-4 I.R.B. 317; Notice 2018-13, 2018-6

I.R.B. 341; and Notice 2018-26, 2018-16 I.R.B. 480 (collectively, the "notices"); see also

Rev. Proc. 2018-17, 2018-9 I.R.B. 384.  The proposed regulations contain the rules

4

ADMIN_03619

related to section 965 described in the notices, with certain modifications, as well as additional guidance related to section 965.

II. Section 965

A. Treatment of accumulated post-1986 deferred foreign income as subpart F income

Section 965(a) provides that for the last taxable year of a DFIC (as defined in Part II.F of this Background section) that begins before January 1, 2018 (such year of the DFIC, the "inclusion year"), the subpart F income of the corporation (as otherwise determined for such taxable year under section 952) shall be increased by the greater of (i) the accumulated post-1986 deferred foreign income (as defined in Part II.F of this Background section) of such corporation determined as of November 2, 2017, or (ii) the accumulated post-1986 deferred foreign income of such corporation determined as of December 31, 2017 (each such date, an "E&P measurement date"). The greater of those two amounts is the "section 965(a) earnings amount."

B. Determination of United States shareholder's section 965(a) inclusion

Section 965(b)(1) provides that, if a taxpayer is a United States shareholder with respect to at least one DFIC and at least one E&P deficit foreign corporation (as defined in Part II.C of this Background section), then the portion of the section 965(a) earnings amount which would otherwise be taken into account under section 951(a)(1) by a United States shareholder with respect to each DFIC is reduced by the amount of such United States shareholder's aggregate foreign E&P deficit (as defined in Part II.C of this Background section) that is allocated to such DFIC. The portion of the section 965(a) earnings amount that is taken into account under section 951(a)(1) by a United States shareholder, after the reduction described in the preceding sentence and, as applicable,

ADMIN_03620

the reduction described in Part II.D of this Background section, is referred to as the "section 965(a) inclusion amount."

## C. Allocation of aggregate foreign E&P deficit and definition of E&P deficit foreign corporation

The aggregate foreign E&P deficit of any United States shareholder is allocated to each DFIC of the United States shareholder in an amount that bears the same proportion to such aggregate as (i) the United States shareholder's pro rata share of the section 965(a) earnings amount of the DFIC bears to (ii) the aggregate of the United States shareholder's pro rata shares of the section 965(a) earnings amounts of all DFICs of the United States shareholder.  Section 965(b)(2).  The term "aggregate foreign E&P deficit" means, with respect to any United States shareholder, the lesser of (A) the aggregate of the shareholder's pro rata shares of the specified E&P deficits of the E&P deficit foreign corporations of the shareholder or (B) the aggregate of the shareholder's pro rata shares of the section 965(a) earnings amounts of all DFICs of the shareholder.  Section 965(b)(3)(A)(i).

The term "E&P deficit foreign corporation" means, with respect to any taxpayer, any specified foreign corporation (as defined in Part II.G of this Background section) with respect to which the taxpayer is a United States shareholder, if, as of November 2, 2017, (i) the specified foreign corporation had a deficit in post-1986 earnings and profits (as defined in Part II.F of this Background section), (ii) the corporation was a specified foreign corporation, and (iii) the taxpayer was a United States shareholder of the corporation.  Section 965(b)(3)(B).  The term "specified E&P deficit" means, with respect to an E&P deficit foreign corporation, the amount of the E&P deficit foreign corporation's

6

ADMIN_03621

deficit in post-1986 earnings and profits as of November 2, 2017. See section
965(b)(3)(C).

For purposes of applying section 959 in any taxable year beginning with the
inclusion year, with respect to any United States shareholder of a DFIC, an amount
equal to the reduction in the shareholder's pro rata share of the section 965(a) earnings
amount of the DFIC by reason of the aggregate foreign E&P deficit allocated to such
DFIC is treated as an amount which was included in the gross income of such United
States shareholder under section 951(a). Section 965(b)(4)(A). With respect to any
taxable year beginning with the inclusion year, a United States shareholder's pro rata
share of the earnings and profits ("E&P") of any E&P deficit foreign corporation is
increased by the amount of the specified E&P deficit of the E&P deficit foreign
corporation taken into account by the shareholder, and, for purposes of section 952, the
increase is attributable to the same activity to which the deficit taken into account was
attributable. Section 965(b)(4)(B).

D.  Aggregate unused E&P deficit

Under section 965(b)(5), in the case of any affiliated group which includes at
least one E&P net surplus shareholder and one E&P net deficit shareholder, the amount
which would (but for section 965(b)(5)) be taken into account under section 951(a)(1) by
reason of section 965(a) by each E&P net surplus shareholder is reduced (but not
below zero) by such shareholder's applicable share of the affiliated group's aggregate
unused E&P deficit.

The term "affiliated group" has the meaning provided in section 1504. The term
"E&P net surplus shareholder" means any United States shareholder which would (but

for section 965(b)(5)) take into account a section 965(a) inclusion amount greater than zero. Section 965(b)(5)(B). The term "E&P net deficit shareholder" means any United States shareholder if (i) the aggregate foreign E&P deficit with respect to such shareholder (as defined in section 965(b)(3)(A) without regard to clause (i)(II) thereof, which limits the aggregate foreign E&P deficit of a United States shareholder to the aggregate of the United States shareholder's pro rata share of the section 965(a) earnings amount of all DFICs of the United States shareholder) exceeds (ii) the amount that would (but for section 965(b)(5)) be taken into account by such shareholder under section 951(a)(1) by reason of section 965(a) (the excess, the "excess aggregate foreign E&P deficit"). Section 965(b)(5)(C). The term "applicable share" means, with respect to any E&P net surplus shareholder in any affiliated group, the amount which bears the same proportion to the group's aggregate unused E&P deficit as (i) the product of (A) the shareholder's group ownership percentage, multiplied by (B) the section 965(a) inclusion amount which would otherwise be taken into account by a United States shareholder, bears to (ii) the aggregate amount determined under clause (i) with respect to all E&P net surplus shareholders in the group. Section 965(b)(5)(E). The term "aggregate unused E&P deficit" means, with respect to any affiliated group, the lesser of (i) the sum of the excess aggregate foreign E&P deficits determined with respect to each E&P net deficit shareholder in such affiliated group, or (ii) with respect to all E&P net surplus shareholders in the group, the aggregate of the product of (A) the shareholder's group ownership percentage, multiplied by (B) the amount which would (but for section 965(b)(5)) be taken into account under section 951(a)(1) by reason of section 965(a) by the shareholder. Section 965(b)(5)(D).

E. Application of the participation exemption

Section 965(c)(1) provides that there shall be allowed as a deduction for the taxable year of a United States shareholder in which a section 965(a) inclusion amount is included in the gross income of the United States shareholder an amount equal to the sum of (i) the United States shareholder's 8 percent rate equivalent percentage (as defined in section 965(c)(2)(A)) of the excess (if any) of (A) the section 965(a) inclusion amount, over (B) the amount of such United States shareholder's aggregate foreign cash position, plus (ii) the United States shareholder's 15.5 percent rate equivalent percentage (as defined in section 965(c)(2)(B)) of so much of the United States shareholder's aggregate foreign cash position as does not exceed the section 965(a) inclusion amount.  The amount of the deduction allowed under section 965(c) to a United States shareholder as described in the preceding sentence is referred to as the "section 965(c) deduction amount."

Section 965(c)(3)(A) provides that the term "aggregate foreign cash position" means, with respect to any United States shareholder, the greater of (i) the aggregate of the United States shareholder's pro rata share of the cash position of each specified foreign corporation of the United States shareholder determined as of the close of the last taxable year of the specified foreign corporation that begins before January 1, 2018, or (ii) one half of the sum of (A) the aggregate described in clause (i) determined as of the close of the last taxable year of each specified foreign corporation that ends before November 2, 2017, plus (B) the aggregate described in clause (i) determined as of the close of the taxable year of each specified foreign corporation which precedes the

9

ADMIN_03624

taxable year referred to in subclause (A). Each date referred to in the preceding sentence is referred to as a "cash measurement date."

The cash position of any specified foreign corporation is the sum of (i) cash held by the corporation, (ii) the net accounts receivable of the corporation, and (iii) the fair market value of the following assets held by the corporation (each asset, a "cash-equivalent asset"): (A) personal property which is of a type that is actively traded and for which there is an established financial market ("actively traded property"); (B) commercial paper, certificates of deposit, the securities of the Federal government and of any State or foreign government; (C) any foreign currency; (D) any obligation with a term of less than one year ("short-term obligation"); and (E) any asset which the Secretary identifies as being economically equivalent to any asset described in section 965(c)(3)(B). Section 965(c)(3)(B). Also, for purposes of section 965(c), the term "net accounts receivable" means, with respect to any specified foreign corporation, the excess (if any) of (i) the corporation's accounts receivable, over (ii) the corporation's accounts payable (determined consistent with the rules of section 461). Section 965(c)(3)(C).

Section 965(c)(3)(D) provides that net accounts receivable, actively traded property, and short-term obligations shall not be taken into account by a United States shareholder in determining its aggregate foreign cash position to the extent that the United States shareholder demonstrates to the satisfaction of the Secretary that the amount of the net accounts receivable, actively traded property, or short-term obligations is taken into account by the United States shareholder with respect to another specified foreign corporation.

10

ADMIN_03625

Section 965(c)(3)(E) provides that an entity (other than a corporation) will be treated as a specified foreign corporation of a United States shareholder for purposes of determining the United States shareholder's aggregate foreign cash position if any interest in the entity is held by a specified foreign corporation of the United States shareholder (determined after application of the rule in this sentence) and the entity, if it were a foreign corporation, would be a specified foreign corporation of the United States shareholder.

Section 965(c)(3)(F) provides that if the Secretary determines that a principal purpose of any transaction was to reduce the aggregate foreign cash position taken into account under section 965(c), the transaction shall be disregarded for purposes of section 965(c).

F.  Definition of DFIC and accumulated post-1986 deferred foreign income

For purposes of section 965, a DFIC is, with respect to any United States shareholder, any specified foreign corporation of the United States shareholder that has accumulated post-1986 deferred foreign income greater than zero as of an E&P measurement date.  Section 965(d)(1).  The term "accumulated post-1986 deferred foreign income" means the post-1986 earnings and profits of the specified foreign corporation except to the extent such E&P (i) are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1, or (ii) in the case of a controlled foreign corporation ("CFC"), if distributed, would be excluded from the gross income of a United States shareholder under section 959 ("previously taxed E&P").  Section 965(d)(2).  Section 965(d)(3) provides that the term "post-1986 earnings and

11

ADMIN_03626

profits" means the E&P of the foreign corporation (computed in accordance with sections 964(a) and 986, and by taking into account only periods when the foreign corporation was a specified foreign corporation) accumulated in taxable years beginning after December 31, 1986, and determined (i) as of the E&P measurement date that is applicable with respect to such foreign corporation, and (ii) without diminution by reason of dividends distributed during the last taxable year of the foreign corporation that begins before January 1, 2018, other than dividends distributed to another specified foreign corporation.

G. Specified foreign corporations and United States shareholders

Section 965(e)(1) provides that the term "specified foreign corporation" means (i) any CFC (regardless of whether there is a domestic corporate shareholder) and (ii) any foreign corporation with respect to which one or more domestic corporations is a United States shareholder ("10-percent corporation"). However, if a passive foreign investment company (as defined in section 1297) ("PFIC") with respect to the shareholder is not a CFC, then such corporation is not a specified foreign corporation. Section 965(e)(3). An S corporation is treated as a partnership for purposes of sections 951 through 965. See section 1373(a). For purposes of sections 951 and 961, a 10-percent corporation is treated as a CFC solely for purposes of taking into account the subpart F income of such corporation under section 965(a) (and for purposes of determining a United States shareholder's pro rata share of any amount with respect to a specified foreign corporation under section 965(f)). Section 965(e)(2).

For taxable years of foreign corporations beginning before January 1, 2018, under section 951(b), a United States shareholder is a United States person (within the

12

ADMIN_03627

meaning of section 957(c)) that owns within the meaning of section 958(a), or is

considered as owning by applying the rules of ownership of section 958(b), 10 percent

or more of the total combined voting power of all classes of stock entitled to vote of the

stock of a foreign corporation.  Under section 957(c), a United States person generally

has the meaning assigned to it by section 7701(a)(30), which includes a domestic

partnership or domestic trust. But see Notice 2010-41, 2010-22 I.R.B. 715 (announcing

that the Treasury Department and the IRS intend to issue regulations treating certain

domestic partnerships as foreign partnerships for purposes of identifying which United

States shareholders are required to include amounts in gross income under section

951(a)).  Special rules under section 957(c) and §1.957-3 apply in determining when

individuals residing in certain possessions or territories of the United States are

considered United States persons for purposes of sections 951 and 965.

H.  Determination of pro rata share

Section 965(f)(1) provides that the determination of any United States

shareholder's pro rata share of any amount with respect to any specified foreign

corporation shall be determined under rules similar to the rules of section 951(a)(2) by

treating the amount in the same manner as subpart F income (and by treating the

specified foreign corporation as a CFC).

I.  Special rules for domestic pass-through entities

Section 965(f)(2) provides that the portion that is included in the income of a

United States shareholder under section 951(a)(1) by reason of section 965(a) that is

equal to the section 965(c) deduction amount by reason of the inclusion is treated as

income exempt from tax for purposes of sections 705(a)(1)(B) and 1367(a)(1)(A) but not

13

ADMIN_03628

treated as income exempt from tax for purposes of determining whether an adjustment is made to an accumulated adjustments account ("AAA") of an S corporation under section 1368(e)(1)(A).

J. Foreign tax credit and deduction

Section 965(g)(1) provides that no credit is allowed under section 901 for the applicable percentage of any taxes paid or accrued (or treated as paid or accrued) with respect to any amount for which a section 965(c) deduction is allowed.

The term "applicable percentage" means the amount (expressed as a percentage) equal to the sum of the following two amounts:

(i) 0.771 multiplied by the ratio of (A) the section 965(a) inclusion amount in excess of the United States shareholder's aggregate foreign cash position divided by (B) the section 965(a) inclusion amount, and

(ii) 0.557 multiplied by the ratio of (A) the amount of the section 965(a) inclusion amount equal to the United States shareholder's aggregate cash position, divided by (B) the section 965(a) inclusion amount.

Further, no deduction is allowed for any tax for which credit is not allowable under section 901 by reason of section 965(g)(1) (determined by treating the taxpayer as having elected the benefits of subpart A of part III of subchapter N).

With respect to the taxes treated as paid or accrued by a domestic corporation with respect to the section 965(a) inclusion amount, section 78 applies only to so much of such taxes as bears the same proportion to the amount of the taxes as (i) the excess of (A) the section 965(a) inclusion amount, over (B) the section 965(c) deduction amount with respect to such amount, bears to (ii) the section 965(a) inclusion amount.

14

ADMIN_03629

## K. Election under section 965(h) concerning payment of net tax liability under section 965

Section 965(h)(1) provides that in the case of a United States shareholder of a DFIC, the United States shareholder may elect to pay the net tax liability under section 965 in eight installments.  Section 965(h)(6) defines the net tax liability under section 965 with respect to any United States shareholder as the excess (if any) of (i) the taxpayer's net income tax for the taxable year in which an amount is included in the gross income of the United States shareholder under section 951(a)(1) by reason of section 965, over (ii) the taxpayer's net income tax for such taxable year determined (A) without regard to section 965, and (B) without regard to any income or deduction properly attributable to a dividend received by the United States shareholder from any DFIC.  For this purpose, the term "net income tax" means the regular tax liability reduced by the credits allowed under subparts A, B, and D of part IV of subchapter A. Section 965(h)(6)(B).

Section 965(h)(2) provides that if a taxpayer makes an election under section 965(h), the first installment is due on the due date (without regard to extensions) for the return of tax for the inclusion year.  Each successive installment is due on the due date (without regard to extensions) for the return of tax for the taxable year following the taxable year for which the previous installment payment was made.

Section 965(h)(3) provides that if there is an addition to tax for failure to timely pay an installment required under section 965(h), a liquidation or sale of substantially all the assets of the taxpayer (including in a title 11 or similar case), a cessation of business by the taxpayer, or any similar circumstance, the unpaid portion of the

15

ADMIN_03630

remaining installments will be due on the date of such event (or in the case of a title 11 or similar case, the day before the petition is filed). The preceding sentence does not apply in the case of the sale of substantially all the assets of a taxpayer to a buyer if the buyer enters into an agreement with the Secretary under which the buyer is liable for the remaining installments due under section 965(h) in the same manner as if the buyer were the taxpayer.

Section 965(h)(4) provides that if a taxpayer has made an election under section 965(h), and subsequently, a deficiency is assessed with respect to the taxpayer's net tax liability for purposes of section 965(h), then the amount of the deficiency will be prorated among the installments. The part of the deficiency prorated to any installment the date for payment of which has not arrived will be collected at the same time as, and as part of, such installment. The part of the deficiency prorated to any installment the date for payment of which has arrived must be paid upon notice and demand from the Secretary. However, the proration rule does not apply if the deficiency is due to negligence, intentional disregard of rules and regulations, or fraud with intent to evade tax.

L.  Election under section 965(i) concerning payment of net tax liability under section 965 by an S corporation shareholder and related reporting requirements

Section 965(i)(1) provides that in the case of any S corporation that is a United States shareholder of a DFIC, each shareholder of the S corporation may elect to defer payment of the shareholder's net tax liability under section 965 with respect to the S corporation until the shareholder's taxable year which includes the triggering event with respect to such liability.

16

ADMIN_03631

Under section 965(i)(1), any net tax liability, payment of which is deferred under section 965(i)(1), will be assessed on the return of tax as an addition to tax for the shareholder's taxable year which includes the triggering event with respect to such liability. As defined in section 965(i)(2), in the case of any shareholder's net tax liability under section 965 with respect to any S corporation, the triggering event with respect to such liability is whichever of the following occurs first: (i) the corporation ceases to be an S corporation (determined as of the first day of the first taxable year that the corporation is not an S corporation); (ii) a liquidation or sale of substantially all the assets of the S corporation (including in a title 11 or similar case), a cessation of business by the S corporation, the S corporation ceases to exist, or any similar circumstance; or (iii) a transfer of any share of stock in the S corporation by the taxpayer (including by reason of death, or otherwise). In the case of a transfer of less than all of the taxpayer's shares of stock in the S corporation, the transfer is only a triggering event with respect to the portion of the taxpayer's net tax liability under section 965 with respect to the S corporation as is properly allocable to the transferred stock. Section 965(i)(2)(B). Moreover, a transfer of stock in the S corporation is not a triggering event if the transferee enters into an agreement with the Secretary under which the transferee is liable for the net tax liability under section 965 with respect to the stock in the same manner as if such transferee were the taxpayer. Section 965(i)(2)(C).

If a triggering event occurs, section 965(i)(4) permits a taxpayer to make an election under section 965(h) with respect to the liability to which the section 965(i) election applied by the due date for the return of tax for the taxable year in which the triggering event occurred, and the first installment under section 965(h) must also be

17

ADMIN_03632

paid by the due date (without regard to extensions) for the return for the taxable year of the triggering event. However, the election may only be made with the consent of the Secretary in the case of a triggering event that is a liquidation or sale of substantially all of the assets of the S corporation. See section 965(i)(4)(D).

Section 965(i)(3) defines a shareholder's net tax liability under section 965 with respect to any S corporation as the net tax liability under section 965 which would be determined under section 965(h)(6) if the only amounts taken into account by the shareholder under section 951(a)(1) by reason of section 965 were allocations from the S corporation.

Section 965(i)(5) provides that if any shareholder of an S corporation makes an election under section 965(i) to defer payment of its net tax liability under section 965 with respect to an S corporation, the S corporation is jointly and severally liable for the deferred payment and any penalty, addition to tax, or additional amount attributable thereto.

Section 965(i)(6) provides that any limitation on the time period for the collection of a liability deferred under section 965(i) is not treated as beginning before the date of the triggering event with respect to such liability.

Section 965(i)(7) requires any shareholder of an S corporation that makes an election under section 965(i) to report the amount of the shareholder's deferred net tax liability on the shareholder's return of tax for the taxable year for which the election is made and on the return of tax for each taxable year thereafter until the amount has been fully assessed. "Deferred net tax liability" means the amount of net tax liability under section 965 payment of which has been deferred under section 965(i) and which

18

ADMIN_03633

has not been assessed on a return of tax for any prior taxable year. Section

965(i)(7)(B). In the case of any failure to report any amount required to be reported

pursuant to section 965(i)(7) with respect to any taxable year before the due date for the

return of tax for the taxable year, there will be assessed on the return as an addition to

tax 5 percent of such amount. Section 965(i)(7)(C).

M. Election under section 965(m) concerning inclusions of amounts under section 965 and related provisions

Under section 965(m)(1)(B), a real estate investment trust (REIT) that is a United

States shareholder of a DFIC may elect, in lieu of including any amount required to be

taken into account under section 951(a)(1) by reason of section 965 in the taxable year

in which it would otherwise be included in gross income (for purposes of the

computation of REIT taxable income under section 857(b)), to include such amount in

gross income in eight installments.

If this election is made, the REIT's aggregate section 965(c) deduction must be

determined without regard to the election and allocated to each taxable year for which

an installment is included in the same proportion as the amount of the installment

included in gross income. See section 965(m)(2)(B)(i)(II). Furthermore, the REIT may

not make a section 965(h) election for any taxable year for which an installment is

included. See section 965(m)(2)(B)(i)(III). Under section 965(m)(2)(B)(ii), if there is a

liquidation or sale of substantially all the assets of the REIT (including in a title 11 or

similar case), a cessation of business by the trust, or any similar circumstance, then any

amount not yet included in gross income will be included in gross income as of the day

before the date of the event, and the unpaid portion of any tax liability with respect to

19

the inclusion will be due on the date of the event (or in the case of a title 11 or similar case, the day before the petition is filed).

Section 965(m)(1)(A) provides that any amount required to be taken into account under section 951(a)(1) by reason of section 965 by a REIT that is a United States shareholder of a DFIC is not taken into account as gross income of the REIT for purposes of applying paragraphs (2) and (3) of section 856(c) to any taxable year for which the amount is taken into account under section 951(a)(1).

N. Election under section 965(n) not to apply net operating loss deduction

Under section 965(n)(1), a United States shareholder of a DFIC may make an election pursuant to which the amount described in section 965(n)(2) shall not be taken into account (i) in determining the amount of the shareholder's net operating loss ("NOL") deduction under section 172 for the taxable year, or (ii) in determining the amount of taxable income for the taxable year which may be reduced by NOL carryovers or carrybacks to the taxable year under section 172.  The amount described in section 965(n)(2) is the sum of (i) the amount required to be taken into account under section 951(a)(1) by reason of section 965 (determined after the application of section 965(c)), plus (ii) in the case of a domestic corporation which chooses to have the benefits of subpart A of part III of subchapter N for the taxable year, the taxes deemed to be paid by the corporation under subsections (a) and (b) of section 960 for the taxable year with respect to the amount described in section 965(n)(2)(A) which are treated as a dividend under section 78.

O. Recapture for expatriated entities

20

Section 965(l) provides that if a section 965(c) deduction is allowed to a United States shareholder and the shareholder first becomes an expatriated entity (as defined under section 7874(a)(2), except not including an entity if the surrogate foreign corporation with respect to it is treated as a domestic corporation under section 7874(b)) at any time during the 10-year period beginning on the date of the enactment of the Act (with respect to a surrogate foreign corporation (as defined under section 7874(a)(2)(B)) that first becomes a surrogate foreign corporation during such period), the tax imposed under chapter 1 will be increased for the first taxable year in which such taxpayer becomes an expatriated entity by an amount equal to 35 percent of the amount of the section 965(c) deduction, and no credits will be allowed against such increase in tax.

P.  Regulations or other guidance

Section 965(o) provides that the Secretary shall prescribe such regulations or other guidance as may be necessary or appropriate to carry out the provisions of section 965, including regulations or other guidance to provide appropriate basis adjustments and regulations or other guidance to prevent the avoidance of the purposes of section 965, including through a reduction in E&P, changes in entity classification or accounting methods, or otherwise.

III.  Other Provisions

A.  Section 962

As amended by the Act, section 962 provides that an individual who is a United States shareholder may elect to have the tax imposed under chapter 1 on amounts that are included in the individual's gross income under section 951(a) be an amount equal to the tax that would be imposed under section 11 if the amounts were received by a

21

ADMIN_03636

domestic corporation. In addition, if an election is made under section 962, the amounts included in the individual's gross income under section 951(a) are treated as if they were received by a domestic corporation for purposes of applying section 960 (relating to foreign tax credits). See §1.962-1(a). However, the taxable income determined for purposes of applying section 11 is not reduced by any deduction of the United States shareholder. See §1.962-1(b)(1)(i). An election under section 962 does not affect tax imposed under other chapters, including under chapter 2A.

B. Attribution rules in sections 958(b) and 318(a)

Section 958 provides rules for determining direct, indirect, and constructive stock ownership. Under section 958(a)(1), stock is considered owned by a person if it is owned directly or is owned indirectly through certain foreign entities under section 958(a)(2). Under section 958(b), section 318 applies, with certain modifications, to the extent that the effect is to treat any United States person as a United States shareholder within the meaning of section 951(b), to treat a person as a related person within the meaning of section 954(d)(3), to treat the stock of a domestic corporation as owned by a United States shareholder of a CFC for purposes of section 956(c)(2), or to treat a foreign corporation as a CFC under section 957.

Section 318 provides rules that attribute the ownership of stock to certain family members, between certain entities and their owners, and to holders of options to acquire stock. Section 318(a)(1) provides rules attributing stock ownership among members of a family. Section 318(a)(2) provides rules attributing stock ownership "upward" from partnerships, estates, trusts, and corporations to partners, beneficiaries, owners, and shareholders. In addition, section 318(a)(3) provides specific rules that

22

ADMIN_03637

attribute the ownership of stock "downward" from partners, beneficiaries, owners, and shareholders to partnerships, estates, trusts, and corporations. In particular, section 318(a)(3)(A) provides that stock owned, directly or indirectly, by or for a partner in a partnership or a beneficiary of an estate is considered as owned by the partnership or estate. This provision applies to all partners and beneficiaries without regard to the size of their interest in the partnership or estate. Section 318(a)(3)(B) similarly provides, subject to certain exceptions, that stock owned, directly or indirectly, by or for a beneficiary of a trust (or a person who is considered an owner of a trust) is considered owned by the trust. In comparison, section 318(a)(3)(C) provides that stock owned, directly or indirectly, by or for a shareholder in a corporation is considered owned by the corporation only if 50 percent or more in value of the stock in the corporation is owned, directly or indirectly, by such person.

Effective for the last taxable year of foreign corporations beginning before January 1, 2018, and each subsequent year of the foreign corporations, and for the taxable years of United States shareholders in which or with which such taxable years of the foreign corporations end, the Act repeals section 958(b)(4). As in effect before repeal, section 958(b)(4) provided that subparagraphs (A), (B), and (C) of section 318(a)(3) (providing for "downward" attribution) were not to be applied so as to consider a United States person as owning stock that is owned by a person who is not a United States person.

C. Miscellaneous itemized deductions

Under section 67(a), miscellaneous itemized deductions are allowed only to the extent that the aggregate of such deductions exceeds 2 percent of adjusted gross

23

ADMIN_03638

income. As amended by the Act, section 67(g) provides that for taxable years beginning after December 31, 2017, and before January 1, 2026, no miscellaneous itemized deductions are allowable under section 67(a). In addition, under section 56(b)(1)(A)(i), an individual subject to the alternative minimum tax in 2017 is not allowed a deduction for any miscellaneous itemized deduction. Under section 63(d), itemized deductions generally mean all allowable deductions except for the deductions allowable in arriving at adjusted gross income pursuant to section 62(a), the deduction provided by section 151, and the deduction provided in section 199A (added by the Act). Miscellaneous itemized deductions include all itemized deductions other than those listed in section 67(b), which does not reference the section 965(c) deduction.

D. <u>Section 4940</u>

An inclusion under section 951(a)(1), including a section 965(a) inclusion, generally is included in the calculation of gross investment income of a private foundation for purposes of determining the excise tax imposed under section 4940 (generally 2 percent of net investment income). Gross investment income under section 4940 does not include an inclusion under section 951(a)(1), including a section 965(a) inclusion, to the extent the amount is included in computing the unrelated business income tax imposed by section 511. <u>See</u> section 4940(c)(2). Section 4940(c)(3) allows as a deduction all the ordinary and necessary expenses paid or incurred for the production or collection of gross investment income or for the management, conservation, or maintenance of property held for the production of income.

E. <u>Extensions of time for filing income tax returns and paying tax for certain citizens and residents abroad</u>

24

ADMIN_03639

In relevant part, regulations under section 6081 provide an extension of time to the fifteenth day of the sixth month following the close of the taxable year for filing returns of income taxes and for paying any tax shown on the return for United States citizens or residents whose tax homes and abodes, in a real and substantial sense, are outside the United States and Puerto Rico, and United States citizens and residents in military or naval service on duty, including non-permanent or short term duty, outside the United States and Puerto Rico ("specified individuals").  See §1.6081-5(a)(5) and (6).

**Explanation of Provisions**

I.  Overview of Proposed Regulations

Proposed §1.965-1 provides general rules and definitions under section 965. Proposed §1.965-2 provides rules relating to adjustments to E&P and basis to determine and account for the application of section 965 and a rule that limits the amount of gain recognized in connection with the application of section 961(b)(2). Proposed §1.965-3 provides rules regarding the determination of section 965(c) deductions.  Proposed §1.965-4 sets forth rules that disregard certain transactions for purposes of section 965.  Proposed §§1.965-5 and 1.965-6 provide rules with respect to foreign tax credits.  Proposed §1.965-7 provides rules regarding elections and payments.  Proposed §1.965-8 provides rules regarding affiliated groups, including consolidated groups.  Proposed §1.965-9 provides dates of applicability.  Proposed §§1.962-1 and 1.962-2 provide rules relating to section 962 elections.  Proposed §1.986(c)-1 provides rules regarding the application of section 986(c) in connection with section 965.

25

ADMIN_03640

II. Definitions and General Rules

Section 1.965-1 of the proposed regulations provides general rules and definitions under section 965, including general rules concerning section 965(a) inclusions, general rules concerning section 965(c) deductions, and rules concerning the treatment of certain specified foreign corporations as CFCs and certain controlled domestic partnerships as foreign partnerships.

A. General rules

Proposed §1.965-1 provides the general rules contained in section 965(a), (b), and (c). Proposed §1.965-1(b)(1) provides that the subpart F income of a DFIC for its inclusion year is increased by the section 965(a) earnings amount. Proposed §1.965-1(b)(2) provides that the pro rata share of the DFIC's section 965(a) earnings amount of a United States shareholder that owns, within the meaning of section 958(a), stock (the stock, "section 958(a) stock", and the shareholder, a "section 958(a) U.S. shareholder") is reduced by the DFIC's allocable share of the section 958(a) U.S. shareholder's aggregate foreign E&P deficit. If a section 958(a) U.S. shareholder is a member of a consolidated group, all section 958(a) U.S. shareholders that are members of a consolidated group are treated as a single section 958(a) U.S. shareholder for this purpose. See Part IX of this Explanation of Provisions section for a discussion of additional rules that apply with respect to a section 958(a) U.S. shareholder that is a member of an affiliated group of which not all members are part of a consolidated group. The amount determined after the reductions referenced in the preceding sentences is defined as the section 965(a) inclusion amount, which is the amount included by a section 958(a) U.S. shareholder of a DFIC for its taxable year in which or

26

ADMIN_03641

with which the DFIC's inclusion year ends (the "section 958(a) U.S. shareholder inclusion year"). See proposed §1.965-1(b)(1); see also Part II.B of the Background section of this preamble. The proposed regulations also clarify that because an increase in subpart F income by reason of section 965(a) is generally determined after the subpart F income is otherwise determined under section 952 for the taxable year, neither the section 965(a) earnings amount nor the section 965(a) inclusion amount is subject to the rules or limitations in section 952 or otherwise limited by the accumulated E&P of the DFIC. Id.

Proposed §1.965-1(c) provides that a section 958(a) U.S. shareholder is generally allowed a deduction for a section 965(c) deduction amount for a section 958(a) U.S. shareholder inclusion year. The proposed regulations clarify that a section 958(a) U.S. shareholder's aggregate foreign cash position is applied against the aggregate section 965(a) inclusion amounts for a section 958(a) U.S. shareholder inclusion year. See proposed §1.965-1(f)(1)-(4), (8), (42). In the case of a section 958(a) U.S. shareholder with more than one section 958(a) U.S. shareholder inclusion year, its aggregate foreign cash position is allocated to each year under proposed §1.965-3(c)(2), and therefore the section 965(c) deduction amount is determined separately for each section 958(a) U.S. shareholder inclusion year.

Consistent with section 965(e)(2), proposed §1.965-1(d) provides that a 10-percent corporation is treated as a CFC for purposes of sections 951 and 961, as well as for purposes of §1.1411-10, so that those rules, applicable to CFCs, are also applicable to DFICs that are not CFCs.

27

ADMIN_03642

Moreover, the proposed regulations provide that for purposes of identifying section 958(a) U.S. shareholders of specified foreign corporations and the section 958(a) stock of such specified foreign corporations owned by section 958(a) U.S. shareholders, a domestic partnership is treated as a foreign partnership if certain conditions are satisfied. See proposed §1.965-1(e)(1). This is an expansion on the reference in section 2.13 of Notice 2018-26 to Notice 2010-41, which referred to CFCs, whereas the expanded rule includes specified foreign corporations generally.

B. Definitions

Section 1.965-1(f) of the proposed regulations sets forth definitions for terms that apply for all of the proposed regulations under section 965. Except as otherwise described in this Explanation of Provisions section, the definitions set forth in the proposed regulations that are also used in section 965 or one of the notices have the meaning described therein. This Part II.B of the Explanation of Provisions section also describes rules incorporated into certain defined terms that are not described elsewhere in this Explanation of Provisions section.

1. Specified Foreign Corporation

The proposed regulations provide that a specified foreign corporation means any CFC or 10-percent corporation, other than a foreign corporation that is a PFIC with respect to a shareholder and not a CFC. See proposed §1.965-1(f)(45)(i) and (iii).

Section 3.01 of Notice 2018-26 noted that as a result of the application of the constructive ownership rule in section 318(a)(3)(A) (providing for "downward" attribution of stock from a partner to a partnership), it may be difficult to determine if a foreign corporation is a specified foreign corporation under certain circumstances. Consistent

28

ADMIN_03643

with that section of the notice, the definition of specified foreign corporation provides that, solely for purposes of determining whether a foreign corporation is a specified foreign corporation within the meaning of section 965(e)(1)(B), stock owned, directly or indirectly, by or for a partner ("tested partner") will not be considered as being owned by a partnership under sections 958(b) and 318(a)(3)(A) if the tested partner owns less than five percent of the interests in the partnership's capital and profits. See proposed §1.965-1(f)(45)(ii). For purposes of the preceding sentence, an interest in the partnership owned by another partner will be considered as being owned by the tested partner under the principles of sections 958(b) and 318, as modified pursuant to the preceding sentence, as if the interest in the partnership were stock.

2. Post-1986 Earnings and Profits

Section 3.02(b) of Notice 2018-07 indicated that the reduction of post-1986 earnings and profits of a specified foreign corporation to reflect dividends distributed during the corporation's inclusion year to another specified foreign corporation (the "dividend reduction rule") is intended to address the potential double-counting of the E&P of the distributing specified foreign corporation in calculating the section 965(a) inclusion amounts of a United States shareholder with respect to the distributing specified foreign corporation and the distributee specified foreign corporation. It noted, however, that to the extent that a portion of a distribution reduces the post-1986 earnings and profits of a distributing specified foreign corporation (for example, by reason of a reduction pursuant to section 312(a)(3)) in an amount in excess of the increase in the post-1986 earnings and profits of the distributee specified foreign

29

ADMIN_03644

corporation, the reduction would not relieve double-counting and thus would be inconsistent with the purpose of the rule.

Accordingly, consistent with section 3.02(b) of Notice 2018-07, the definition of "post-1986 earnings and profits" clarifies, in proposed §1.965-1(f)(29)(i)(B), that the amount by which the post-1986 earnings and profits of a specified foreign corporation is reduced under section 965(d)(3)(B) as a result of a distribution made to a specified foreign corporation in the last taxable year of the foreign corporation that begins before January 1, 2018, may not exceed the amount by which the post-1986 earnings and profits of the distributee corporation is increased as a result of the distribution. Additionally, similar to section 3.03 of Notice 2018-26, in computing post-1986 earnings and profits on November 2, 2017, in certain cases, a reduction is allowed for a portion of foreign income taxes that accrue after November 2, 2017, and on or before December 31, 2017 ("applicable taxes"). In particular, post-1986 earnings and profits on November 2, 2017, are reduced by the portion of the applicable taxes that are attributable to the portion of the taxable income (as determined under foreign law) that accrues on or before November 2, 2017, and during the specified foreign corporation's U.S. taxable year that includes November 2, 2017. See proposed §1.965-1(f)(29)(ii).

Moreover, consistent with the Conference Report accompanying the Act (the "Conference Report") and section 3.03(b) of Notice 2018-13, proposed §1.965-1(f)(29)(iii) provides that all deficits related to post-1986 earnings and profits, including hovering deficits, are taken into account for purposes of determining the post-1986 earnings and profits (including a deficit) of a specified foreign corporation. See H.R. Rep. No. 115-466, at 619 (2017) (Conf. Rep.). The fact that hovering deficits are taken

30

ADMIN_03645

into account for purposes of determining post-1986 earnings and profits, and ultimately the section 965(a) inclusion amount of a section 958(a) U.S. shareholder, does not mean that hovering deficits are taken into account for any other purpose. For example, this rule does not result in hovering deficits being taken into account for purposes of determining post-1986 undistributed earnings or pre-1987 accumulated profits in computing the taxes deemed paid for the foreign tax credit. The Treasury Department and the IRS request comments on whether additional rules are needed to address the treatment of hovering deficits that reduce post-1986 earnings and profits of a DFIC, for example when the hovering deficit creates a specified E&P deficit.

Comments noted that a specified foreign corporation that is not a CFC does not generally track E&P under U.S. tax principles and requested that taxpayers be allowed to use an alternative measurement method for determining its post-1986 earnings and profits and cash position, such as audited financial statements. This comment is not adopted in the proposed regulations. Generally, audited financial statements may serve as a starting point in the determination of a specified foreign corporation's E&P. See §1.964-1. The Treasury Department and the IRS appreciate that obtaining accurate information for U.S. federal income tax purposes may present administrative challenges, particularly in the case of United States shareholders that do not have a majority interest in a specified foreign corporation. However, this challenge is not unique to this context; there are numerous longstanding provisions in the Code where minority shareholders of foreign corporations must determine E&P consistent with section 312 where no alternative measurement method is provided. For example, United States persons who own stock in PFICs must, if they make an election to treat

31

the PFIC as a qualified electing fund under section 1293, determine the E&P of the PFIC in accordance with principles of section 312.  See section 1293(e)(3). Additionally, minority shareholders who are nonetheless United States shareholders of CFCs must know the E&P of the CFC in order to apply the rules under subpart F. Accordingly, the Treasury Department and the IRS have determined that it would not be appropriate for the proposed regulations to provide alternative methods for determining a corporation's E&P or cash position.

3. E&P Deficit Foreign Corporation

Consistent with section 3.01 of Notice 2018-13, under the proposed regulations, for purposes of determining the status of a specified foreign corporation as a DFIC or an E&P deficit foreign corporation, it must first be determined whether the specified foreign corporation is a DFIC.  Proposed §1.965-1(f)(17)(ii) provides that, if a specified foreign corporation meets the definition of a DFIC, it is classified solely as a DFIC and not also as an E&P deficit foreign corporation, even if the specified foreign corporation otherwise satisfies the requirements of section 965(b)(3)(B) and proposed §1.965-1(f)(22).  If a specified foreign corporation does not meet the definition of a DFIC, it then must be determined whether it is an E&P deficit foreign corporation.  In some cases, a specified foreign corporation may be classified as neither a DFIC nor an E&P deficit foreign corporation, despite having post-1986 earnings and profits greater than zero or a deficit in accumulated post-1986 deferred foreign income.  See proposed §1.965-1(g), Example 5.

Comments requested that previously taxed E&P should be disregarded in determining a specified E&P deficit of an E&P deficit foreign corporation.  Section

32

965(b)(3)(B) provides that a specified foreign corporation is an E&P deficit foreign corporation if it has a deficit in post-1986 earnings and profits as of November 2, 2017. For purposes of section 965, the term post-1986 earnings and profits is defined in section 965(d)(3) and is computed in accordance with sections 964(a) and 986. Under section 964(a), earnings and profits are determined according to rules substantially similar to those applicable to domestic corporations.

Previously taxed E&P are a type of E&P. See section 959(c). No express exclusion of previously taxed E&P is provided in section 965(d)(3) for purposes of determining post-1986 earnings and profits. In contrast, the term accumulated post-1986 deferred foreign income, as defined in section 965(d)(2), explicitly excludes previously taxed E&P. See section 965(d)(2)(B) (citing section 959). Accordingly, the proposed regulations provide that previously taxed E&P is not excluded in determining the existence and amount of a specified E&P deficit, which is defined in reference to post-1986 earnings and profits and not in reference to accumulated post-1986 deferred foreign income. The Treasury Department and the IRS are considering other rules with respect to the definitions of post-1986 earnings and profits, accumulated post-1986 deferred foreign income, and specified E&P deficit in connection with the finalization of these proposed regulations. See section 965(o). The Treasury Department and the IRS welcome comments on this subject.

4. Accumulated Post-1986 Deferred Foreign Income

Consistent with section 3.02(c) of Notice 2018-07, proposed §1.965-1(f)(7)(i)(C) provides that in the case of a CFC that has shareholders that are not United States shareholders on an E&P measurement date, the accumulated post-1986 deferred

33

ADMIN_03648

foreign income of the CFC on such E&P measurement date is reduced by amounts that would be described in section 965(d)(2)(B) if those shareholders were United States shareholders.  In such cases, the principles of Revenue Ruling 82-16, 1982-1 C.B. 106, apply in order to determine the amounts by which accumulated post-1986 deferred foreign income is reduced.

Proposed §1.965-1(f)(7)(ii) clarifies that, for purposes of determining the accumulated post-1986 deferred foreign income of a specified foreign corporation as of an E&P measurement date, the E&P of the specified foreign corporation that are described in section 959(c)(2) (or that would be described in section 959(c)(2) applying the principles of Revenue Ruling 82-16, 1982-1 C.B. 106) by reason of subpart F income are treated as described in section 965(d)(2)(B) and proposed §1.965-1(f)(7)(i)(B) or (f)(7)(i)(C) only to the extent that such income is accrued by the specified foreign corporation as of such E&P measurement date.  For rules regarding the interaction of sections 951, 956, 959, and 965 generally, see Part IV.A of this Explanation of Provisions section.

5.  Cash Measurement Dates

Consistent with section 3.02 of Notice 2018-26, the definitions of the cash measurement dates, and of pro rata share, provide the following:

(i) The final cash measurement date of a specified foreign corporation is the close of the last taxable year of the specified foreign corporation that begins before January 1, 2018, and ends on or after November 2, 2017, if any;

34

ADMIN_03649

(ii) The second cash measurement date of a specified foreign corporation is the close of the last taxable year of the specified foreign corporation that ends after November 1, 2016, and before November 2, 2017, if any;

(iii) The first cash measurement date of a specified foreign corporation is the close of the last taxable year of the specified foreign corporation that ends after November 1, 2015, and before November 2, 2016, if any; and

(iv) A United States shareholder takes into account its pro rata share of the cash position of a specified foreign corporation as of any cash measurement date of the specified foreign corporation on which the United States shareholder is a United States shareholder of the specified foreign corporation, regardless of whether the United States shareholder is a United States shareholder of the specified foreign corporation as of any other cash measurement date, including the final cash measurement date of the specified foreign corporation.

See proposed §1.965-1(f)(24), (31), (25), and (30)(iii), respectively.  Section 3.02 of Notice 2018-26 also announced that for purposes of applying the rules contained therein, a 52-53-week taxable year is deemed to begin on the first day of the calendar month nearest to the first day of the 52-53-week taxable year and is deemed to end or close on the last day of the calendar month nearest to the last day of the 52-53-week taxable year, as the case may be.  See §1.441-2(c).  The Treasury Department and the IRS have determined that the rules contained in §1.441-2(c), which relate to the application of effective dates, are not relevant in determining when a 52-53-week taxable year is considered to begin or end for purposes of the cash measurement dates; instead, the actual dates on which such a year begins and ends should be taken into

35

account in determining cash measurement dates.  Therefore, the proposed regulations do not contain the rule in section 3.02 of Notice 2018-26 referring to §1.441-2(c).

Comments requested guidance on the measurement of cash when a section 381 transaction occurs during the last year of a specified foreign corporation that begins before January 1, 2018.  The Treasury Department and the IRS have defined cash measurement date in the notices and largely adopted the definition in the proposed regulations.  The Treasury Department and the IRS have determined that these rules provide appropriate guidance, and therefore additional rules are not necessary.  See also Part V.A.2 of this Explanation of Provisions section, for a discussion of the rules for disregarding certain assets to prevent double-counting under section 965(c)(3)(D), and Part VI.A of this Explanation of Provisions section, for a discussion of the anti-avoidance rule in proposed §1.965-4(b), which could apply, for example, to liquidations that reduce a section 958(a) U.S. shareholder's aggregate foreign cash position.

6.  Cash Position & Derivative Financial Instruments

Consistent with section 3.01(c) of Notice 2018-07, the proposed regulations address the treatment of derivative financial instruments for purposes of measuring the cash position of a specified foreign corporation.  Generally, the cash position of any specified foreign corporation includes, among other things, the fair market value of the cash-equivalent assets held by the corporation.  See proposed §1.965-1(f)(16)(i)(C).  Consistent with section 3.01(c) of Notice 2018-07, the proposed regulations define the term cash-equivalent asset to include derivative financial instruments held by the specified foreign corporation that is not a bona fide hedging transaction.  See proposed §1.965-1(f)(13)(v).  Derivative financial instruments include notional principal contracts,

36

options contracts, forward contracts, futures contracts, short positions in securities and commodities, and any similar financial instruments. See proposed §1.965-1(f)(18).

The proposed regulations provide that the value of each derivative financial instrument that must be taken into account in determining the cash position of a specified foreign corporation may be positive or negative, but that the aggregate amount taken into account for all derivative financial instruments (excluding bona fide hedging transactions) of a specified foreign corporation cannot be less than zero. See proposed §1.965-1(f)(16)(iii).

Consistent with section 3.01(c) of Notice 2018-07, the proposed regulations also provide that if a derivative financial transaction is a bona fide hedging transaction that is used to hedge a cash-equivalent asset, the value of the cash-equivalent asset identified on the taxpayer's books and records as the asset being hedged must be adjusted by the fair market value of the bona fide hedging transaction that is used to hedge such cash-equivalent asset (such hedging transaction, a "cash-equivalent asset hedging transaction"). See proposed §1.965-1(f)(16)(ii). The value of a cash-equivalent asset hedging transaction must be taken into account in determining the cash position of a specified foreign corporation whether the cash-equivalent asset hedging transaction has positive or negative value, but only to the extent that the cash-equivalent asset hedging transaction (or transactions) does not reduce the fair market value of the asset being hedged below zero. Id. A bona fide hedging transaction with respect to an asset that is not a cash-equivalent asset or with respect to a liability (as described in §1.1221-2(b)(2)) is not included in a specified foreign corporation's cash position for purposes of section 965(c)(3)(B).

ADMIN_03652

The proposed regulations define a bona fide hedging transaction as a hedging transaction that meets the requirements of a bona fide hedging transaction described in §1.954-2(a)(4)(ii) and that is properly identified as such in accordance with the requirements of that subparagraph. Proposed §1.965-1(f)(12). Consistent with the definition of a bona fide hedging transaction in §1.954-2(a)(4)(ii), in the case of an asset hedging transaction, the risk being hedged may be with respect to ordinary property, section 1231 property, or a section 988 transaction. Because the identification requirements of §1.954-2(a)(4)(ii) are generally relevant only to CFCs, whereas section 965 applies to all specified foreign corporations, the proposed regulations provide that the identification requirements apply only with respect to CFCs. Id.

7. Accounts Receivable and Accounts Payable

Consistent with section 3.04(a) of Notice 2018-13 as well as the clarification provided in section 3.06 of Notice 2018-26, the definitions of "accounts payable" and "accounts receivable" in proposed §1.965-1(f)(5) and (6) provide that for purposes of determining net accounts receivable taken into account in determining the cash position of a specified foreign corporation, the term "accounts receivable" means receivables described in section 1221(a)(4), and the term "accounts payable" means payables arising from the purchase of property described in section 1221(a)(1) or 1221(a)(8) or the receipt of services from vendors or suppliers, and only receivables or payables with a term upon issuance that is less than one year are taken into account. In addition, receivables that are treated as accounts receivable within the meaning of section 965(c)(3)(C)(i) and proposed §1.965-1(f)(6) are not also treated as short-term obligations. See proposed §1.965-1(f)(43).

38

Comments requested modifications to the definition of accounts payable for purposes of determining a specified foreign corporation's cash position, including that accounts payable be defined to include payables related to the licensing of intellectual property, payables to employees in the ordinary course of business, and payables arising from property described in section 1221(a)(2).  The term "accounts payable" is not defined in the statute, and the Treasury Department and the IRS have determined that the definition in the proposed regulations is consistent with the ordinary meaning of accounts payable.  Therefore no change is made in the proposed regulations to the definition of accounts payable.

8.  Short-Term Obligations

Consistent with section 3.04(b) of Notice 2018-13, proposed §1.965-1(f)(43) provides that, for purposes of determining a specified foreign corporation's cash position, a loan that must be repaid on the demand of the lender (or that must be repaid within one year of such demand) is treated as a short-term obligation, regardless of the stated term of the instrument, and thus is included in the specified foreign corporation's cash position.  In response to a comment, proposed §1.965-1(f)(43) clarifies that an instrument's term upon issuance is used for purposes of determining whether an obligation is a short-term obligation.

A comment requested that taxpayers be able to prove, based on facts and circumstances, that a demand loan should not be treated as a short-term obligation.  The Treasury Department and the IRS have determined that any facts-and-circumstances test would not be administrable, particularly to the extent that the test

39

ADMIN_03654

required a determination of a taxpayer's subjective intent with respect to the payment of the loan. Accordingly, this comment is not adopted.

9. Pro Rata Share

Consistent with section 3.03(a) of Notice 2018-13, the proposed regulations provide that, for purposes of determining a United States shareholder's pro rata share of the specified E&P deficit of an E&P deficit foreign corporation that has multiple classes of stock outstanding, the specified E&P deficit is allocated among the shareholders of the corporation's common stock and in proportion to the value of the common stock held by such shareholders. See proposed §1.965-1(f)(30)(ii). Comments are requested regarding whether there are circumstances in which a specified E&P deficit should be allocated to shareholders of an E&P deficit foreign corporation's preferred stock and, if so, how to allocate as between shareholders of common stock and shareholders of preferred stock as well as among shareholders of preferred stock. The proposed regulations also clarify that, for purposes of determining a shareholder's pro rata share of a specified E&P deficit, the value of the common stock is determined as of the last day of the last taxable year of the E&P deficit foreign corporation that begins before January 1, 2018. Id.

See Part II.B.5 of this Explanation of Provisions section for a discussion of the definition of pro rata share with respect to the cash position of a specified foreign corporation.

10. Domestic Pass-Through Entities

As explained in section 3.05(b) of Notice 2018-26, section 965 increases the amount included in the gross income of a United States shareholder under section

40

ADMIN_03655

951(a)(1) only if the United States shareholder owns section 958(a) stock of one or more specified foreign corporations. See section 951(a)(2)(A). Accordingly, if a domestic pass-through entity is a United States shareholder of a DFIC and owns section 958(a) stock of the DFIC, the section 965(a) inclusion amount with respect to the section 958(a) stock and the section 965(c) deduction amount with respect to the section 965(a) inclusion amount are each determined at the level of the domestic pass-through entity. See section 951(a)(1). However, the domestic pass-through owners of the domestic pass-through entity are subject to federal income tax on their share of the aggregate section 965(a) inclusion amount with respect to section 958(a) stock owned by the domestic pass-through entity. Accordingly, in the case of a domestic pass-through entity that is a section 958(a) U.S. shareholder with respect to one or more DFICs, each domestic pass-through owner takes into account its share of the aggregate section 965(a) inclusion amount with respect to section 958(a) stock of one or more DFICs of the domestic pass-through entity and its share of the section 965(c) deduction amount with respect to such amount (each, a "domestic pass-through owner share"), regardless of whether such domestic pass-through owner is also a United States shareholder with respect to such DFIC, giving rise to a "section 965(a) inclusion" and a "section 965(c) deduction" to the domestic pass-through owner. See proposed §1.965-1(f)(21), (37) and (41). For this purpose, a pass-through owner's share is determined under the provisions of subchapter K of the Code.

Proposed §1.965-3(g) provides that an aggregate section 965(a) inclusion amount for a section 958(a) U.S. shareholder inclusion year and the related section 965(c) deduction amount must be allocated in the same proportion. For example, if a

41

domestic pass-through owner is allocated 50 percent of an aggregate section 965(a) inclusion amount with respect to section 958(a) stock of a domestic pass-through entity, the domestic pass-through owner must be allocated 50 percent of the related section 965(c) deduction amount.  If the domestic pass-through owner is also a section 958(a) U.S. shareholder with respect to the DFIC because it owns section 958(a) stock of the DFIC, the section 965(a) inclusion amount with respect to the section 958(a) stock of the domestic pass-through owner and the section 965(c) deduction amount with respect to such amount are determined separately from the domestic pass-through owner's share of the aggregate section 965(a) inclusion amount and section 965(c) deduction amount of the domestic pass-through entity.

Consistent with section 3.05(b) of Notice 2018-26, proposed §1.965-1(f)(19) defines the term "domestic pass-through entity" to mean a pass-through entity that is a United States person (as defined in section 7701(a)(30)), and proposed §1.965-1(f)(28) defines the term "pass-through entity" to mean a partnership, S corporation, or any other person to the extent that the income or deductions of such person are included in the income of one or more direct or indirect owners or beneficiaries of the person. Accordingly, if, for example, a domestic trust owns section 958(a) stock of a single DFIC and is subject to federal income tax on a portion of its section 965(a) inclusion amount and its domestic pass-through owners are subject to tax on the remaining portion, the domestic trust is treated as a domestic pass-through entity with respect to such remaining portion.  As defined, a pass-through entity does not include a REIT or a regulated investment company ("RIC").  The term "domestic pass-through owner" means a United States person that is a partner, shareholder, beneficiary, grantor, or

42

ADMIN_03657

owner, as the case may be, in a domestic pass-through entity, except that, in the case of tiered pass-through entities, the term does not include a partner, shareholder, beneficiary, grantor, or owner that is itself a domestic pass-through entity. See proposed §1.965-1(f)(20). In the case of tiered pass-through entities, a reference to a domestic pass-through owner includes a United States person that is an indirect partner, shareholder, beneficiary, grantor, or owner through one or more other pass-through entities, and a reference to a domestic pass-through owner share of the aggregate section 965(a) inclusion amount and section 965(c) deduction amount of a domestic pass-through entity includes such domestic pass-through owner's share of the aggregate section 965(a) inclusion amount and section 965(c) deduction amount of a domestic pass-through entity owned indirectly by the domestic pass-through owner through one or more other pass-through entities. See proposed §1.965-1(f)(20) and (21).

C. Foreign currency translation

Consistent with section 3.05(a) of Notice 2018-13, the proposed regulations provide that, for purposes of determining the section 965(a) earnings amount of a specified foreign corporation, the accumulated post-1986 deferred foreign income of the specified foreign corporation as of each of the E&P measurement dates must be compared in the functional currency of the specified foreign corporation. See proposed §1.965-1(f)(36). If the functional currency of a specified foreign corporation changes between the two E&P measurement dates, the comparison must be made in the functional currency of the specified foreign corporation as of December 31, 2017, by translating the specified foreign corporation's E&P as of November 2, 2017, into the

43

ADMIN_03658

new functional currency using the spot rate on November 2, 2017. Id.; see also proposed §1.965-4(c)(1) (disregarding any such change in functional currency for purposes of applying section 965 to a United States shareholder of the specified foreign corporation under certain circumstances).

Furthermore, the proposed regulations are consistent with section 3.05(b) of Notice 2018-13, which indicates that the spot rate on December 31, 2017, is to be used for translating the section 965(a) earnings amount of a DFIC into U.S. dollars for purposes of determining the section 965(a) inclusion amount of a United States shareholder with respect to the DFIC, as well as for purposes of translating other amounts necessary for the application of section 965(b), including (i) translating a section 965(a) earnings amount into U.S. dollars in computing amounts described in section 965(b)(2)(A) and (B), (ii) translating a specified E&P deficit into U.S. dollars in order to determine a United States shareholder's aggregate foreign E&P deficit under section 965(b)(3)(A), (iii) translating a section 965(a) inclusion amount with respect to a DFIC (if the amount was reduced by an aggregate foreign E&P deficit under section 965(b)(1)) back into the functional currency of the DFIC for purposes of determining the E&P of the DFIC described in section 959(c)(2), and (iv) translating the portion of the U.S. dollar-denominated aggregate foreign E&P deficit allocated to a DFIC under section 965(b)(2) into the functional currency of the DFIC for purposes of determining its E&P described in section 959(c)(2) by reason of section 965(b)(4)(A). See proposed §§1.965-1(b)(1), (f)(9) and (11), and 1.965-2(c) and (d). Proposed §1.965-6(b) also provides that in applying section 902, the section 965(a) inclusion amount must be

44

ADMIN_03659

translated (if necessary) back into the DFIC's functional currency using the spot rate on December 31, 2017.

Section 3.05(c) of Notice 2018-13 describes regulations to ensure that the cash position of a specified foreign corporation with respect to any cash measurement date is expressed in U.S. dollars, so that the amount of a United States shareholder's aggregate foreign cash position is the greater of the aggregate amounts on each cash measurement date. In determining the cash position attributable to net accounts receivable, the amount of accounts receivable and accounts payable (in each case, if not otherwise denominated in U.S. dollars) must be translated into U.S. dollars at the spot rate on the relevant cash measurement date. The fair market value of assets described in section 965(c)(3)(B)(iii) must also be determined in U.S. dollars on the relevant cash measurement date. For example, in the case of foreign currency, the fair market value equals the currency amount translated at the spot rate on the relevant cash measurement date. Consistent with section 3.05(c) of Notice 2018-13, the proposed regulations provide that amounts taken into account in determining the cash position are translated (if necessary) using the spot rate on the relevant cash measurement date. See proposed §1.965-1(f)(16)(iv).

III. Section 962 Elections

The proposed regulations provide rules consistent with section 5 of Notice 2018-26 related to elections under section 962. Proposed §1.962-2(a) clarifies that an individual domestic pass-through owner that is a United States shareholder with respect to a DFIC may make an election under section 962 with respect to the individual's share of the section 965(a) inclusion amount of a domestic pass-through entity with respect to

45

the DFIC, and an individual who is not a United States shareholder of a DFIC is not permitted to make an election under section 962 with respect to the individual's share of a section 965(a) inclusion amount of a domestic pass-through entity with respect to the DFIC.  See also proposed §1.962-1(b)(1)(i)(A)(<u>1</u>)(<u>ii</u>).

In addition, notwithstanding the rule in current §1.962-1(b)(1)(i) providing that a deduction of a United States shareholder does not reduce the amount included in gross income under section 951(a) for purposes of computing the amount of tax that would be imposed under section 11, the Treasury Department and the IRS have determined that in the case of a taxpayer making an election under section 962, the section 965(c) deduction (which is generally available to United States shareholders of DFICs, including individuals) should be allowed with respect to the tax imposed under section 11 rather than under section 1.  <u>See</u> H.R. Rep. No. 115-466, at 620 (2017) (Conf. Rep.).  Thus, under proposed §1.962-1(b)(1)(i)(B), "taxable income" as used in section 11 is reduced by a taxpayer's section 965(c) deduction with respect to a section 965(a) inclusion to which the section 962 election applies.  However, the proposed regulations clarify that, subject to future guidance, "taxable income" as used in section 11 is not reduced by any other amounts, including any other deductions.

To clarify that a section 965(c) deduction taken into account in determining "taxable income" as used in section 11 cannot then be deducted again at the individual level, the proposed regulations provide that any section 965(c) deduction allowed in determining "taxable income" as used in section 11 for purposes of computing the tax due as a result of a section 962 election is not also allowed for purposes of determining an individual's actual taxable income.  <u>See</u> proposed §1.965-3(e)(1).

46

ADMIN_03661

IV. Adjustments to E&P and Basis

Proposed §1.965-2 contains rules related to adjustments to E&P and basis to determine and account for the application of section 965(a) and (b) and proposed §1.965-1(b) and a rule that limits the amount of gain recognized in connection with the application of section 961(b)(2).

A. Determination of and adjustments to E&P in the last taxable year of a specified foreign corporation that begins before January 1, 2018, for purposes of applying sections 959 and 965

Consistent with section 3.02(d) of Notice 2018-07, the proposed regulations clarify the interaction between the rules under sections 959 and 965 in the last taxable year of a specified foreign corporation that begins before January 1, 2018, and the taxable year of a section 958(a) U.S. shareholder of the specified foreign corporation in which or with which such year ends. Proposed §1.965-2(b) provides the following rules relating to adjustments to E&P for determining a section 958(a) U.S. shareholder's inclusion under section 951(a)(1), including by reason of section 965(a) and proposed §1.965-1(b), and the treatment of distributions under section 959: First, the subpart F income of the specified foreign corporation is determined without regard to section 965(a), and a section 958(a) U.S. shareholder's inclusion under section 951(a)(1)(A) by reason of such amount is taken into account.

Second, the treatment of a distribution from the specified foreign corporation to another specified foreign corporation that is made before January 1, 2018, is determined under section 959.

Third, each of the post-1986 earnings and profits (including a deficit) of the specified foreign corporation, the accumulated post-1986 deferred foreign income of the

47

ADMIN_03662

specified foreign corporation, the section 965(a) earnings amount of the specified foreign corporation, and the section 965(a) inclusion amount of the section 958(a) U.S. shareholder with respect to the specified foreign corporation, if any, is determined, and the E&P (including a deficit) of the specified foreign corporation are adjusted as provided in proposed §1.965-2(c) and (d) (as discussed in Part IV.B of this Explanation of Provisions section). For a rule disregarding subpart F income earned after an E&P measurement date for purposes of calculating accumulated post-1986 deferred foreign income as of the E&P measurement date, see Part II.B.4 of this Explanation of Provisions section and proposed §1.965-2(j), Example 2 and Example 3.

Fourth, the treatment of all distributions from the specified foreign corporation other than those described in step 2 is determined under section 959.

Fifth, an amount is determined under section 956 with respect to the specified foreign corporation and the section 958(a) U.S. shareholder, and the shareholder's inclusion under section 951(a)(1)(B) is taken into account.

B.  Adjustments to E&P by reason of section 965(a) and (b)

1.  Adjustments to E&P by Reason of Section 965(a)

Proposed §1.965-2(c) provides that if a section 958(a) U.S. shareholder has a section 965(a) inclusion with respect to a DFIC, the DFIC will have previously taxed E&P with respect to the section 958(a) U.S. shareholder in an amount equal to the section 965(a) inclusion amount (referred to as "section 965(a) previously taxed earnings and profits"). Because section 965(a) previously taxed earnings and profits must be tracked in functional currency whereas the section 965(a) inclusion amount is in U.S. dollars, as noted in Part II.C of this Explanation of Provisions section, the

48

ADMIN_03663

proposed regulations provide that the section 965(a) inclusion amount must be translated (if necessary) into the functional currency of the DFIC using the spot rate on December 31, 2017, in determining the amount of the section 965(a) previously taxed earnings and profits.

Under proposed §1.965-2(c), the E&P of a DFIC described in section 959(c)(3) are reduced by an amount equal to the section 965(a) previously taxed earnings and profits of the corporation.  In certain cases, the section 965(a) inclusion amount with respect to the DFIC, and therefore the section 965(a) previously taxed earnings and profits of the DFIC with respect to a section 958(a) U.S. shareholder, may exceed the E&P described in section 959(c)(3) of the DFIC.  For example, this will be the case when a DFIC incurs a loss after the E&P measurement date on which it determines its section 965(a) earnings amount and before the end of its inclusion year.  In such a case, under the proposed regulations, a deficit in E&P described in section 959(c)(3) will be created or increased.

2.  Adjustments to E&P by Reason of Section 965(b)

Proposed §1.965-2(d) provides rules relating to E&P of DFICs and E&P deficit foreign corporations by reason of a reduction under section 965(b)(1) and proposed §1.965-1(b)(2) (reduction by the DFIC's allocable share of a section 958(a) U.S. shareholder's aggregate foreign E&P deficit) or section 965(b)(5) and proposed §1.965-8(b) (reduction by the DFIC's allocable share of a section 958(a) U.S. shareholder's applicable share of an affiliated group's aggregate unused E&P deficit) (collectively, the "reduction rules").

i.  Adjustments to E&P of DFICs

49

Under proposed §1.965-2(d)(1), if a section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of a DFIC is reduced under the reduction rules, the DFIC will have previously taxed E&P (referred to as "section 965(b) previously taxed earnings and profits") with respect to the section 958(a) U.S. shareholder in an amount equal to the amount of the reduction, if any, translated (if necessary) into the functional currency of the DFIC using the spot rate on December 31, 2017. For purposes of applying section 959, section 965(b) previously taxed earnings and profits are treated as E&P that are included in the gross income of the section 958(a) U.S. shareholder under section 951(a)(1)(A). Furthermore, the E&P (including a deficit) described in section 959(c)(3) of the DFIC are reduced (or, in the case of a deficit, increased) by an amount equal to the section 965(b) previously taxed earnings and profits.

ii. Adjustments to E&P of E&P deficit foreign corporations

Under proposed §1.965-2(d)(2)(i)(A), the E&P described in section 959(c)(3) of an E&P deficit foreign corporation are increased by an amount equal to the portion of a section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under the reduction rules, translated (if necessary) into the functional currency of the E&P deficit foreign corporation using the spot rate on December 31, 2017. The proposed regulations clarify that the E&P increased by reason of this provision are not treated as E&P of the taxable year described in section 316(a)(2). See also proposed §1.965-6(c)(3) for a rule on the timing of this adjustment for purposes of determining a deemed paid credit allowed

50

ADMIN_03665

under sections 902 and 960 with respect to the E&P deficit foreign corporation (which is discussed in Part VII.C.1 of this Explanation of Provisions section).

In addition, proposed §1.965-2(d)(2)(i)(B) provides that, for purposes of section 952, a section 958(a) U.S. shareholder's pro rata share of the E&P of an E&P deficit foreign corporation is increased by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under the reduction rules, translated (if necessary) into the functional currency of the E&P deficit foreign corporation using the spot rate on December 31, 2017, and such increase is attributable to the same activity to which the deficit so taken into account was attributable.

Proposed §1.965-2(d)(2)(ii) provides rules for determining the portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit of an E&P deficit foreign corporation taken into account under the reduction rules. Proposed §1.965-2(d)(2)(ii)(A) details the circumstances in which all of a pro rata share of a specified E&P deficit will be taken into account. Proposed §1.965-2(d)(2)(ii)(B) provides that if the rule in the preceding sentence does not apply, a section 958(a) U.S. shareholder must designate the portion taken into account.

C. Adjustments to basis by reason of section 965(a) and (b)

1. Adjustments to Basis by Reason of Section 965(a)

Proposed §1.965-2(e) provides that, under section 961(a), a section 958(a) U.S. shareholder's basis in section 958(a) stock of a DFIC, or property by reason of which the section 958(a) U.S. shareholder is considered under section 958(a)(2) as owning section 958(a) stock of a DFIC ("applicable property"), is increased by the section

51

ADMIN_03666

958(a) U.S. shareholder's section 965(a) inclusion amount with respect to the DFIC. However, rules relating to basis adjustments in the case of a section 962 election are reserved. Comments are requested as to the appropriate amount of a basis adjustment with respect to a DFIC with respect to which a section 962 election is effective.

2. Adjustments to Basis by Reason of Section 965(b)

Proposed §1.965-2(f)(1) clarifies that, in general, no adjustments to basis of stock or property are made under section 961 (or any other provision of the Code) to take into account the reduction to a section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of a DFIC under the reduction rules. However, section 965(o) provides authority to write regulations concerning basis adjustments in contemplation of the fact that "basis adjustments (increases or decreases) may be necessary with respect to both the stock of the DFIC and the E&P deficit foreign corporation." H.R. Rep. No. 115-466, at 620 (2017) (Conf. Rep.). The Conference Report stated:

> For example, with respect to the stock of the deferred foreign income corporation, the Secretary may determine that a basis increase is appropriate in the taxable year of the section 951A [sic] inclusion or, alternatively, the Secretary may modify the application of section 961(b)(1) with respect to such stock. Moreover, with respect to the stock of the E&P deficit [foreign] corporation, the Secretary may require a reduction in basis for the taxable year in which the U.S. shareholder's pro rata share of the earnings of the E&P deficit [foreign] corporation are increased.

Id. at 620-21.

The Treasury Department and the IRS have determined that an increase to the basis of stock of DFICs is appropriate only if there is a corollary reduction to the basis of the stock of E&P deficit foreign corporations. However, the Treasury Department and

52

ADMIN_03667

the IRS recognize that such reduction, which could in certain cases give rise to gain, could be overly burdensome for taxpayers. Accordingly, proposed §1.965-2(f)(2) allows taxpayers to elect to make the relevant basis adjustments, in which case such adjustments must be consistently made with respect to all section 958(a) stock of specified foreign corporations owned by a section 958(a) U.S. shareholder and related persons. The relevant basis adjustments are (i) an increase in the section 958(a) U.S. shareholder's basis in the section 958(a) stock of a DFIC or applicable property with respect to a DFIC by an amount equal to the section 965(b) previously taxed earnings and profits of the DFIC with respect to the section 958(a) U.S. shareholder, and (ii) a reduction in the section 958(a) U.S. shareholder's basis in the section 958(a) stock of an E&P deficit foreign corporation or applicable property with respect to an E&P deficit foreign corporation by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under the reduction rules. However, as noted in Part IV.C.1 of this Explanation of Provisions section, rules relating to basis adjustments in the case of a section 962 election are reserved. An election under §1.965-2(f)(2) is generally made by attaching a statement, signed under penalties of perjury, to the section 958(a) U.S. shareholder's return for the first taxable year that includes the last day of the last taxable year of a DFIC or E&P deficit foreign corporation of the shareholder that begins before January 1, 2018, including the shareholder's name and taxpayer identification number and a statement that the shareholder and all related persons make the election. See proposed §1.965-2(f)(2)(iii)(B).

D. Gain-reduction rule

53

Consistent with section 3.03 of Notice 2018-07, and with the modification described in section 4 of Notice 2018-13, proposed §1.965-2(g)(1) provides a gain-reduction rule pursuant to which, if a section 958(a) U.S. shareholder receives distributions through a chain of ownership described under section 958(a) from a DFIC during the inclusion year that are attributable to section 965(a) previously taxed earnings and profits, the amount of gain that would otherwise be recognized under section 961(b)(2) by the section 958(a) U.S. shareholder with respect to the section 958(a) stock of the DFIC, or applicable property with respect to the DFIC, is reduced (but not below zero) by an amount equal to the section 965(a) previously taxed earnings and profits of the DFIC with respect to the section 958(a) U.S. shareholder.

If a taxpayer makes the election described in proposed §1.965-2(f)(2), the gain-reduction rule will also apply to distributions attributable to section 965(b) previously taxed earnings and profits, and the amount of gain that would otherwise be recognized by the section 958(a) U.S. shareholder is also reduced by the amount of the section 965(b) previously taxed earnings and profits of the DFIC with respect to the section 958(a) U.S. shareholder.

In order to ensure that the amount of gain in the section 958(a) stock or applicable property that would have been recognized under section 961(b)(2) remains reflected in the section 958(a) stock or applicable property, proposed §1.965-2(g)(2) provides that the basis in the section 958(a) stock or applicable property must be reduced by the amount that would have been recognized as gain.

E. Rules of application for basis adjustments

54

ADMIN_03669

The proposed regulations provide certain rules of application common to all basis adjustments described in proposed §1.965-2(e), (f)(2), and (g)(2) ("specified basis adjustments").  See proposed §1.965-2(h).  The rules address the timing and allocation among shares of the specified basis adjustments.  See proposed §1.965-2(h)(1) and (4).  They also require netting of the specified basis adjustments and gain recognition to the extent that a net downward adjustment would exceed basis.  See proposed §1.965-2(h)(2) and (3).  In addition, they make clear that the specified basis adjustments are limited to adjustments to property held by a section 958(a) U.S. shareholder, except in circumstances involving foreign pass-through entities.  See proposed §1.965-2(h)(5).

V.  Section 965(c) Deductions

Proposed §1.965-3 provides rules regarding section 965(c) deductions and section 965(c) deduction amounts.

A.  Determination of aggregate foreign cash position

1.  Disregard of Certain Obligations Between Related Specified Foreign Corporations

Consistent with section 3.01(b) and (c) of Notice 2018-07. the proposed regulations provide that, for purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder, accounts receivable, accounts payable, short-term obligations, and derivative financial instruments between related specified foreign corporations are disregarded, if applicable, on the corresponding cash measurement dates of the specified foreign corporations to the extent of the smallest of the section 958(a) U.S. shareholder's ownership percentages of section 958(a) stock of the specified foreign corporations owned by the section 958(a) U.S. shareholder on the corresponding cash measurement dates.  See proposed §1.965-3(b)(1).

55

ADMIN_03670

2.  Disregard of Certain Assets to Prevent Double Counting

Section 3.05(a) of Notice 2018-26 announced the intent to issue forms, publications, regulations, or other guidance specifying the documentation that a United States shareholder must maintain or provide, and the time and manner for providing any such documentation, in order to make the required demonstration to the Secretary to rely on section 965(c)(3)(D) in excluding net accounts receivable, actively traded property, and short-term obligations in determining its aggregate foreign cash position. To disregard assets under this rule, the proposed regulations provide that a section 958(a) U.S. shareholder must attach a statement to its timely filed return (taking into account extensions, if any) containing a description of the asset that would be taken into account with respect to both specified foreign corporations; a statement of the amount by which its pro rata share of the cash position of one specified foreign corporation is reduced; a detailed explanation of why there would otherwise be double-counting, including the computation of the amount taken into account with respect to the other specified foreign corporation; and an explanation of why the rule described in Part V.A.1 of this Explanation of Provisions section does not apply to disregard such amounts. See proposed §1.965-3(b)(2).

B.  Determination of aggregate foreign cash position for section 958(a) U.S. shareholder inclusion year

Consistent with section 3.05(a) of Notice 2018-07, the proposed regulations provide that in the case of a section 958(a) U.S. shareholder that has a section 965(a) inclusion amount in more than one taxable year, the amount of the aggregate foreign cash position taken into account in the first taxable year will equal the lesser of the

56

ADMIN_03671

section 958(a) U.S. shareholder's aggregate foreign cash position or the aggregate 965(a) inclusion amount taken into account by the section 958(a) U.S. shareholder in that taxable year. Furthermore, the amount of the section 958(a) U.S. shareholder's aggregate foreign cash position taken into account in any succeeding taxable year will be the lesser of the excess, if any, of its aggregate foreign cash position over the amount of its aggregate foreign cash position taken into account in preceding taxable years, or the aggregate section 965(a) inclusion amount taken into account by the section 958(a) U.S. shareholder in such succeeding taxable year. See proposed §1.965-3(c)(2).

In addition, also consistent with section 3.05(a) of Notice 2018-07, the proposed regulations provide that, for purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder for a taxable year in which it takes into account a section 965(a) inclusion amount, a section 958(a) U.S. shareholder can assume that its pro rata share of the cash position of any specified foreign corporation whose last taxable year beginning before January 1, 2018, ends after the date the return for such taxable year of the section 958(a) U.S. shareholder is timely filed (taking into account extensions, if any) will be zero as of the cash measurement date with which the year of the specified foreign corporation ends. If a section 958(a) U.S. shareholder's pro rata share of the cash position of a specified foreign corporation was treated as zero pursuant to the preceding sentence for a section 958(a) U.S. shareholder inclusion year (an "estimated section 958(a) U.S. shareholder inclusion year"), the final cash measurement date amount in fact exceeds the average of the first and second cash measurement date amounts with respect to the section 958(a)

57

ADMIN_03672

shareholder, and the shareholder's aggregate section 965(a) inclusion amount in fact exceeds the final cash measurement date amount, interest and penalties will not be imposed if the section 958(a) U.S. shareholder makes appropriate adjustments by amending the return for the estimated section 958(a) U.S. shareholder inclusion year to reflect the correct aggregate foreign cash position by the due date (taking into account extensions, if any) for the return for the year after the estimated section 958(a) U.S. shareholder inclusion year.  See proposed §1.965-3(c)(3).

C.  Recapture of section 965(c) deductions for expatriated entities

Proposed §1.965-3(d) harmonizes the rule provided in section 965(l) requiring the recapture of a section 965(c) deduction by an expatriated entity with the expanded scope of availability of section 965(c) deductions (that is, to a domestic pass-through owner that is not itself a United States shareholder) by requiring recapture of all section 965(c) deductions taken into account by an expatriated entity without regard to whether the expatriated entity was itself a United States shareholder.

D.  Treatment of section 965(c) deductions under certain Code provisions

Consistent with section 3.06 of Notice 2018-26, proposed §1.965-3(f)(1) provides that a section 965(c) deduction will not be treated as an itemized deduction for any purpose of the Code (including, as described in Notice 2018-26, for purposes of sections 56 and 67).

The Treasury Department and the IRS are aware that the rules of subchapter K and subchapter S may prevent a partner or S corporation shareholder from taking into account its domestic pass-through owner share of a section 965(c) deduction amount in certain circumstances if allocated by a partnership or S corporation separately from the

58

ADMIN_03673

corresponding section 965(a) inclusion amount, particularly to the extent that a partnership or S corporation makes distributions to one or more partners or shareholders (as the case may be) during the year of its section 965(a) inclusion. See, e.g., section 1366(d). Accordingly, proposed §1.965-3(f)(2)(i) provides that in the case of a domestic partnership or S corporation, the aggregate amount of its section 965(a) inclusions net of the aggregate amount of its section 965(c) deductions is treated as a separately stated item of net income solely for purposes of calculating basis under section 705(a) and §1.705-1(a) and section 1367(a)(1) and §1.1367-1(f). Furthermore, the proposed regulations incorporate the rules concerning basis and AAA adjustments contained in section 965(f)(2) and provide an example illustrating the application of the rules described in this paragraph. See proposed §1.965-3(f)(2)(i)(B), (ii), and (iii).

The proposed regulations clarify whether a United States person that must pay tax under section 1411 on a section 965(a) inclusion is entitled to take into account a section 965(c) deduction for purposes of determining the amount of such tax. Section 965(c) deductions are intended to reduce the rate of income tax to which section 965(a) inclusions are subject. See H.R. Rep. No. 115-466, at 620 (2017) (Conf. Rep.). The Treasury Department and the IRS have determined that the section 965(c) deduction was not intended to reduce the rate of tax imposed by non-income tax provisions outside of chapter 1. Accordingly, proposed §1.965-3(f)(3) provides that for purposes of section 1411 and §1.1411-4(f)(6), a section 965(c) deduction is not treated as a deduction properly allocable to a corresponding section 965(a) inclusion. Consistent with the rule for section 1411, proposed §1.965-3(f)(4) provides that a section 965(c) deduction is not treated as an ordinary and necessary expense paid or incurred for the

59

ADMIN_03674

production or collection of gross investment income for purposes of section 4940(c)(3)(A).

## VI. Disregard of Certain Transactions

Proposed §1.965-4 provides rules that disregard certain transactions for purposes of applying section 965. In particular, proposed §1.965-4 provides rules that disregard (i) transactions undertaken with a principal purpose of reducing the section 965 tax liability of a United States shareholder, (ii) certain changes in method of accounting and entity classification elections, and (iii) certain transactions occurring between E&P measurement dates.

### A. Anti-avoidance rules

The proposed regulations provide rules, consistent with section 3.04 of Notice 2018-26, to prevent the avoidance of section 965, including an anti-avoidance rule disregarding certain transactions and rules disregarding certain changes in accounting methods and entity classification elections. See proposed §1.965-4(b) through (e). The application of the anti-avoidance rule is based on whether there is a "change in the amount of a section 965 element" rather than a change in the section 965 tax liability, as described in the notice. See proposed §1.965-4(b)(1). For this purpose, generally there is a change in the amount of a section 965 element if there is a reduction of a section 958(a) inclusion amount or aggregate foreign cash position or an increase in deemed paid foreign income taxes as a result of a section 965(a) inclusion. See proposed §1.965-4(d) and (e)(1).

Comments requested that the anti-avoidance rule not apply to the extent a reduction in tax liability by reason of section 965 is offset by an equal amount of tax

ADMIN_03675

increase pursuant to a different Code provision. This comment is not adopted. The Conference Report reflects an intent for the Treasury Department and the IRS to address all strategies for avoiding a section 965(a) inclusion, without regard to the effect on overall tax liability. See H.R. Rep. No. 115-466, at 619 (2017) (Conf. Rep.). Furthermore, it would be difficult for the IRS to determine whether a particular increase in tax liability for non-section 965 reasons is related to the reduction in the taxpayer's section 965(a) inclusion. Finally, the anti-avoidance rule generally does not apply without a principal purpose of changing the amount of a section 965 element. Depending on the facts and circumstances, transactions that do not reduce overall tax liability may not meet the principal purpose test described in proposed §1.965-4(b)(1).

Comments also requested a de minimis exception for the anti-avoidance rule. This comment is not adopted. The Treasury Department and the IRS have determined that any reduction in tax imposed by reason of section 965 through tax avoidance strategies occurring after November 2, 2017, is inconsistent with congressional intent and should not be respected.

Comments to Notice 2018-26 requested that the rule disregarding changes to methods of accounting not apply when the change is from an impermissible to a permissible method, and that a principal purpose test should apply. These comments are not adopted. Proposed §1.965-4(c)(1) does not affect a taxpayer's ability to change its method of accounting, including to change to a permissible method. Instead, the rule disregarding an accounting method change is relevant only for the limited purpose of determining the amount of a taxpayer's section 965 elements.

61

ADMIN_03676

The choice of a November 2, 2017, measurement date reflects an intent to impose a transition tax on a snapshot of earnings as of a date that coincides with the introduction of the Act in Congress, and reflects a general policy of disregarding taxpayer actions occurring after November 2, 2017, that reduce the taxpayer's liability imposed by reason of section 965, even if such future actions are otherwise respected under the Code. Such actions can include changes in accounting methods, whether to methods that are permissible or impermissible and regardless of the principal purpose for such change. A rule disregarding such changes is also consistent with the Conference Report, which reflects a clear intent for the Treasury Department and the IRS to exercise their authority under section 965(o) to disregard accounting method changes that reduce a taxpayer's tax liability under section 965. See H.R. Rep. No. 115-466, at 619 (2017) (Conf. Rep.).

B. Disregard of certain transactions occurring between E&P measurement dates

In section 3.02(a) of Notice 2018-07, the Treasury Department and the IRS announced the intent to issue regulations to address the possibility of double-counting or double non-counting in the computation of post-1986 earnings and profits arising from amounts paid or incurred (including certain dividends) between related specified foreign corporations of a United States shareholder that occur between E&P measurement dates and that would otherwise reduce the post-1986 earnings and profits as of December 31, 2017, of the specified foreign corporation that paid or incurred such amounts. The notice contained examples illustrating fact patterns involving double-counting or double non-counting to be addressed by the future regulations. The proposed regulations provide, consistent with section 3.02(a) of Notice 2018-07, that

62

ADMIN_03677

amounts paid or incurred between related specified foreign corporations of a section 958(a) U.S. shareholder between E&P measurement dates that would otherwise reduce the post-1986 earnings and profits as of December 31, 2017, of the specified foreign corporation that paid or incurred such amounts are disregarded for purposes of determining the post-1986 earnings and profits of both of the specified foreign corporations as of the E&P measurement date on December 31, 2017. See proposed §1.965-4(f).

A number of comments requested that these rules be expanded to cover other transactions that could lead to double counting and double non-counting in the computation of post-1986 earnings and profits of a specified foreign corporation, including: (i) deductible payments by a specified foreign corporation to a United States shareholder or to a partnership owned by the United States shareholder; and (ii) distributions by specified foreign corporations to a United States shareholder. The recommendations in these comments are not adopted. The Treasury Department and the IRS have determined that the concerns regarding issues of double counting and double non-counting in the computation of post-1986 earnings and profits of a specified foreign corporation relate to transactions occurring between specified foreign corporations rather than between a specified foreign corporation and a United States shareholder. See H.R. Rep. No. 115-466, at 619 (2017) (Conf. Rep.). Payments by a specified foreign corporation to a United States shareholder only affect the post-1986 earnings and profits of a single specified foreign corporation, and thus do not result in double counting in determining a United States shareholder's section 965(a) inclusion amount. Additionally, payments by a specified foreign corporation to a United States

63

ADMIN_03678

shareholder can have attendant U.S. tax effects that do not occur with respect to payments between specified foreign corporations and that would need to be considered if such payments were disregarded. For example, a distribution from a specified foreign corporation to its United States shareholder may permit the United States shareholder to take into account foreign tax credits under section 902 and avoid the limitation under section 965(g)(1) that would apply if the underlying foreign taxes had been deemed paid with respect to the United States shareholder's section 965(a) inclusion amount.

VII. Foreign Tax Credits

A. In general

Section 14301 of the Act repealed section 902 effective for taxable years of foreign corporations beginning after December 31, 2017, and taxable years of United States shareholders in which or with which such taxable years of foreign corporations end. The proposed regulations include, in addition to rules under the foreign tax credit specific rules of section 965, rules coordinating the provisions of section 965 with the foreign tax credit provisions as in effect before their repeal or amendment by the Act.

B. Allowance of a credit or deduction for foreign income taxes

1. Scope

Section 965(g)(1) provides that no credit is allowed under section 901 for the applicable percentage of any taxes paid or accrued (or treated as paid or accrued) with respect to any amount for which a section 965(c) deduction amount is allowed. The Conference Report does not elaborate on the meaning of "taxes paid or accrued" or "taxes treated as paid or accrued." Comments requested clarification of the meaning of these terms and the scope of section 965(g). Under the proposed regulations, "taxes

64

ADMIN_03679

paid or accrued" refers to foreign income taxes paid or accrued directly by the taxpayer under section 901, and "taxes treated as paid or accrued" includes foreign income taxes deemed paid by the taxpayer under section 960, foreign income taxes allocated to an entity under §1.901-2(f)(4), and a distributive share of taxes paid by a partnership.

2.  Applicable Percentage

The proposed regulations clarify that the term "applicable percentage" is determined with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year.  As a result, if a section 958(a) U.S. shareholder has more than one section 958(a) U.S. shareholder inclusion year, the shareholder might have more than one applicable percentage as a result of differing aggregate foreign cash positions for those different section 958(a) U.S. shareholder inclusion years.  See proposed §1.965-5(d)(1).  In addition, if a person is a domestic pass-through owner with respect to more than one domestic pass-through entity, each of which is a section 958(a) U.S. shareholder, the person might have a different applicable percentage with respect to each of those domestic pass-through entities because of differing aggregate foreign cash positions of those entities, as well as a different applicable percentage with respect to the person's section 958(a) stock, if any.  See proposed §1.965-5(d)(2).  Therefore, the amount of foreign tax credits disallowed under section 965(g) and proposed §1.965-5(b) and (c) could differ depending on the section 958(a) U.S. shareholder inclusion year and section 958(a) U.S. shareholder to which the foreign income taxes relate.

3.  Foreign Income Taxes Paid or Accrued Directly by Taxpayer

ADMIN_03680

For purposes of section 965(g)(1), foreign income taxes paid or accrued directly by a taxpayer include foreign income taxes imposed on the taxpayer on a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits.  Section 965(g)(3) provides that no deduction is allowed for any tax for which a credit is not allowable under section 901 by reason of section 965(g)(1).  The proposed regulations provide that neither a deduction (including under section 164) nor a credit under section 901 is allowed for the applicable percentage of any foreign income taxes paid or accrued with respect to any amount for which a section 965(c) deduction is allowed for a section 958(a) U.S. shareholder inclusion year.  The proposed regulations also provide that neither a deduction nor a credit under section 901 is allowed for the applicable percentage of any foreign income taxes attributable to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits.  See proposed §1.965-5(b).

Accordingly, no deduction or credit is allowed for the applicable percentage of any withholding taxes imposed on a United States shareholder by the jurisdiction of residence of the distributing foreign corporation with respect to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits.  Similarly, no deduction or credit is allowed for the applicable percentage of net basis taxes imposed on a United States citizen by the citizen's jurisdiction of residence upon receipt of a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits.

4.  Foreign Income Taxes Treated as Paid or Accrued by Taxpayer

i.  Section 960(a)(1)

66

ADMIN_03681

For taxable years of foreign corporations beginning before January 1, 2018, and taxable years of United States shareholders in which or with which such taxable years of foreign corporations end, section 960(a)(1) provides that, if there is included under section 951(a) in the gross income of a domestic corporation any amount attributable to E&P of a foreign corporation which is a member of a qualified group (as defined in section 902(b)) with respect to the domestic corporation, then, except to the extent provided in regulations, section 902 shall be applied as if the amount so included were a dividend paid by such foreign corporation (determined by applying section 902(c) in accordance with section 904(d)(3)(B)). The proposed regulations provide that a credit under section 901 is not allowed for the applicable percentage of any foreign income taxes treated as paid or accrued under section 960(a)(1) (for taxable years of foreign corporations beginning before January 1, 2018, and to taxable years of United States persons in which or with which such taxable years of foreign corporations end) with respect to any amount for which a section 965(c) deduction is allowed for a section 958(a) U.S. shareholder inclusion year.

ii. Section 960(a)(3)

For a taxable year of a foreign corporation beginning before January 1, 2018, section 960(a)(3) provides that any portion of a distribution from such a foreign corporation received by a domestic corporation which is excluded from gross income under section 959(a) is treated by the domestic corporation as a dividend, solely for purposes of taking into account under section 902 any foreign taxes, on or with respect to the accumulated profits of such foreign corporation from which such distribution is

67

made, which were not deemed paid by the domestic corporation for any prior taxable year.

Accordingly, the proposed regulations provide that the credit allowed under section 960(a)(3) is only with respect to foreign income taxes imposed on an upper-tier foreign corporation on distributions of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits from a lower-tier foreign corporation. See proposed §1.965-5(c)(1)(ii). Furthermore, section 960(a)(3) does not allow a credit for foreign income taxes attributable to the portion of a section 965(a) earnings amount that was reduced pursuant to section 965(b) since such taxes were not imposed on a distribution of previously taxed E&P. Instead, because section 965(b) previously taxed earnings and profits are treated as having been included in a United States shareholder's income under section 951(a), foreign income taxes that would have been deemed paid with respect to section 965(b) previously taxed earnings and profits under section 960(a)(1) had such amounts actually been included in income are treated as having been deemed paid, with the result that no credit is allowed under section 960(a)(3) or any other provision of the Code for such taxes. Id.

The proposed regulations also provide that the disallowance under section 965(g) applies to foreign taxes deemed paid under section 960(a)(3) with respect to distributions of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits with respect to a section 958(a) U.S. shareholder inclusion year. For example, if a lower-tier foreign corporation distributes section 965(a) previously taxed earnings and profits to an upper-tier foreign corporation, and the upper-tier foreign corporation pays a foreign withholding tax with respect to the

68

ADMIN_03683

distribution of the section 965(a) previously taxed earnings and profits, such withholding tax would be creditable under section 960(a)(3) upon a distribution by the upper-tier foreign corporation to an eligible domestic corporation. However, the domestic corporation cannot claim a credit for the applicable percentage of such withholding tax. See proposed §1.965-5(c)(ii).

The Act replaces section 960(a)(3) with section 960(b). The proposed regulations only address distributions out of section 965(a) previously taxed earnings and profits and section 965(b) previously taxed earnings and profits in years before the effective date of section 960(b) in the Act. The Treasury Department and the IRS anticipate that future regulations will provide similar rules in connection with new section 960(b).

iii. Disallowance of deduction

The proposed regulations clarify that no deduction, including under section 164, is allowed for the applicable percentage of any foreign income taxes treated as paid or accrued with respect to any amount for which a section 965(c) deduction is allowed. See proposed §1.965-5(c)(2).

C. Computation of foreign income taxes deemed paid

1. General Rule and Exception

Comments requested clarification regarding the determination of deemed paid taxes under section 960 in connection with section 965. One comment also requested specific changes to the application of sections 902 and 960 that would permit a taxpayer to reduce the post-1986 undistributed earnings of a DFIC by the amount of any deficit from an E&P deficit foreign corporation that reduced the section 965(a) earnings

69

amount of the DFIC.  In general, the proposed regulations confirm that sections 902 and 960 apply in the same manner for section 965(a) inclusions as for other inclusions under section 951(a)(1)(A), and therefore a DFIC's post-1986 undistributed earnings is not reduced by specified E&P deficits from an E&P deficit foreign corporation.

A comment noted that in determining the indirect credit with respect to a section 965(a) inclusion, the numerator of the section 902 fraction (as defined in proposed §1.965-6(c)(1)) may be greater than the denominator given that the section 965(a) inclusion is determined on one of two measurement dates.  For example, if the amount of the accumulated post-1986 deferred foreign income of a DFIC is greater on November 2, 2017, than such amount is on December 31, 2017, the section 965(a) earnings amount of the DFIC will be based on E&P as of the November 2, 2017 date.  However, the denominator of the section 902 fraction, post-1986 undistributed earnings, is determined as of the close of the taxable year of the foreign corporation and without diminution by reason of earnings distributed or otherwise included in income during the year.  Section 902(c)(1).  Where the post-1986 undistributed earnings as of the close of the DFIC's U.S. taxable year is positive, but less than the section 965(a) earnings amount, this could result in a section 902 fraction greater than one.

The section 902 fraction cannot exceed one.  See H.H. Robertson Co. v. Commissioner of Internal Revenue, 59 T.C. 53 (1972), aff'd 500 F.2d 1399 (3d Cir. 1974).  For the avoidance of doubt, the proposed regulations clarify that when the denominator of the section 902 fraction is positive but less than the numerator of such fraction, the section 902 fraction is one.  See proposed §1.965-6(c)(2).

70

ADMIN_03685

Comments also requested that taxpayers be deemed to pay taxes when the denominator of the section 902 fraction is zero or less than zero, either by treating the DFIC as having post-1986 undistributed earnings equal to the DFIC's post-1986 foreign income taxes, or by determining the DFIC's post-1986 undistributed earnings as of the measurement date used to determine its section 965(a) earnings amount. This comment is not adopted. The Treasury Department and the IRS have determined that the Act was not intended to alter the application of sections 902 and 960 with respect to section 965. Thus, the proposed regulations confirm that when the denominator of the section 902 fraction is zero or less than zero, no taxes are deemed paid with respect to the section 965(a) inclusion. See proposed §1.965-6(c)(2); cf. §1.902-1(b)(4) (providing that no foreign income taxes are deemed paid in the case of a distribution out of current E&P that is treated as a "nimble" dividend under section 316(a)(2) when there is a deficit in accumulated E&P).

Section 965(b)(4)(B), which provides that a United States shareholder's pro rata share of the E&P of any E&P deficit foreign corporation is increased by the amount of the specified E&P deficit of such corporation taken into account by such shareholder by reason of allocation of such deficit to a DFIC, does not indicate whether that increase applies for purposes of determining the post-1986 undistributed earnings in the last taxable year of an E&P deficit foreign corporation that begins before January 1, 2018. The Treasury Department and the IRS have determined that section 965(b)(4)(B) should not apply for purposes of section 902 in that year. Therefore, the proposed regulations provide that post-1986 undistributed earnings of an E&P deficit foreign corporation are increased by reason of section 965(b)(4)(B) or proposed §1.965-

71

ADMIN_03686

2(d)(2)(i) as of the first day of the foreign corporation's first taxable year following the E&P deficit foreign corporation's last taxable year that begins before January 1, 2018.

Comments also recommended that, to the extent that a hovering deficit is treated as reducing the post-1986 earnings and profits of a DFIC, those taxes should be added to the DFIC's post-1986 foreign income taxes in the inclusion year with respect to the DFIC. The Treasury Department and the IRS have determined that the existing rules adequately address this issue and decline to adopt this comment. The proposed regulations do not provide special rules for foreign income taxes that are related to hovering deficits; as a result, the rules in §1.367(b)-7 continue to apply with respect to such foreign income taxes.

2. Taxes Deemed Paid in the Case of Certain Lower-Tier Corporations

A credit is allowable under section 960(a)(1) for taxes paid or accrued by a foreign corporation only if it is a member of a qualified group (as defined in section 902(b)) with respect to the domestic corporation. Section 902(b)(2) states that the term "qualified group" does not include any foreign corporation below the third tier in the chain unless the foreign corporation is a CFC and the domestic corporation is a United States shareholder with respect to it. Comments requested clarification as to whether a 10-percent corporation treated as a CFC under section 965(e)(2) for purposes of sections 951 and 961 is treated as a CFC for purposes of section 902(b).

Section 965(e)(2) applies to treat a 10-percent corporation as a CFC solely for purposes of taking into account the subpart F income of such corporation under section 965(a) and for purposes of determining the United States shareholder's pro rata share of the section 965(a) inclusion amount. The proposed regulations also treat a 10-

72

percent corporation as a CFC for other limited purposes. <u>See</u> Part I.A of this Explanation of Provisions. However, section 965 does not modify the computation of foreign income taxes deemed paid under sections 902 and 960, or for purposes of any other Code section. Therefore, the proposed regulations clarify that a United States shareholder is not entitled to an indirect credit with respect to a 10-percent corporation that is below the third tier in a chain of foreign corporations of the United States shareholder. <u>See</u> proposed §1.965-1(d).

D. <u>Allocation and apportionment of expenses</u>

The generally applicable rules of sections 861 through 865 and the regulations thereunder for allocating and apportioning deductions to separate categories of income described in section 904(d)(1) and §1.904-4(m) apply for purposes of determining the foreign tax credits allowed by reason of a section 965(a) inclusion. For purposes of allocating and apportioning any deductible expense, any tax-exempt asset (and any income from such asset) is not taken into account. <u>See</u> section 864(e)(3). A similar rule applies in the case of the portion of any dividend (other than a qualifying dividend as defined in section 243(b)) equal to the deduction allowable under section 243 or 245(a) with respect to such dividend and in the case of a like portion of any stock the dividends on which would be so deductible and would not be qualifying dividends (as so defined). The proposed regulations confirm that the allowance of a deduction under section 965(c) with respect to the section 965(a) inclusion does not result in any portion of the section 965(a) inclusion being treated as exempt income. In addition, the assets to which the section 965(a) inclusion relates are not treated as exempt assets under section 864(e)(3) or §1.861-8T(d).

73

ADMIN_03688

The proposed regulations also confirm that section 965(a) previously taxed earnings and profits and 965(b) previously taxed earnings and profits, like all previously taxed E&P, do not give rise to exempt treatment under section 864(e)(3). See proposed §1.965-6(d).

Under section 864(e)(4), for purposes of allocating and apportioning expenses on the basis of assets, the adjusted basis in stock of any nonaffiliated 10-percent owned corporation is increased by the E&P accumulated during the period the taxpayer held the stock, or reduced (but not below zero) by deficits in E&P of the corporation attributable to the stock for such period. The purpose for this adjustment is to better approximate the value of such stock. See Joint Committee on Tax'n, General Explanation of the Tax Reform Act of 1986 (P.L. 99-514) (May 4, 1987), JCS-10-87, at p.87 (adjustment to E&P "takes account of some changes in value attributable to taxpayer's equity interests in such corporations").

In order to avoid double counting of previously taxed E&P and the basis adjustments under section 961, section 864(e)(4)(D) provides that proper adjustments must be made to the E&P of a corporation to account for previously taxed E&P and reflected in the adjusted basis of the stock. See Joint Committee on Tax'n, General Explanation of the Tax Reform Act of 1986 (P.L. 99-514) (May 4, 1987), JCS-10-87, at p.91. Section 1.861-12T(c)(2)(i)(B) provides that a taxpayer's basis in stock of a CFC shall not include any amount included in basis under section 961. At the same time, all E&P (including previously taxed E&P) generally increase the taxpayer's adjusted basis in stock of a CFC.

74

ADMIN_03689

As a result of the enactment of section 965, the Treasury Department and the IRS recognize that the application of section 965(b)(4)(A) and (B) may warrant the issuance of special rules for the determination of adjusted basis. Furthermore, a different rule may be needed if a taxpayer has made an election under proposed §1.965-2(f)(2) to adjust its basis to reflect the use of a specified E&P deficit. The Treasury Department and the IRS request comments on what rules may be appropriate, including whether the rules under §1.861-12(c)(2) should be modified.

E. Application of section 904

The proposed regulations do not address the assignment of a section 965(a) inclusion and the related taxes to a separate category of income. The Treasury Department and the IRS have determined that the application of section 904 is clear with respect to section 951(a) inclusions regardless of whether the DFIC is a CFC or a 10-percent corporation. Furthermore, the Treasury Department and the IRS have determined that no clarification is necessary with respect to §1.904-6 for purposes of relating the creditable portion of the foreign income taxes with respect to a section 965(a) inclusion to a separate category of income. For example, withholding tax imposed on a distribution of section 965(a) previously taxed earnings and profits and section 965(b) previously taxed earnings and profits will be related to the separate category of income to which the original section 965(a) inclusion was assigned. See §1.904-6(b)(2) and (c), Example 7.

The Treasury Department and the IRS request comments on whether more guidance is necessary with respect to the assignment of the section 965(a) inclusion and the related taxes to a separate category or categories of income.

ADMIN_03690

In addition, comments are requested on whether additional rules are needed for determining the amount of the increase in the section 904 limitation with respect to distributions of section 965(a) previously taxed earnings and profits and section 965(b) previously taxed earnings and profits, taking into account the section 965(c) deduction and the disallowed foreign taxes under section 965(g).  See section 960(b) (effective with respect to taxable years of foreign corporations beginning before January 1, 2018, and to taxable years of United States shareholders with or within which such taxable years of those foreign corporations end) and section 960(c) for later years.

VIII.  Election, Payment, and Other Special Rules

A.  In general

Section 965 provides certain elections that taxpayers can make with respect to the application of section 965.  See Parts II.K through N of the Background section of this preamble.  As discussed in Part II.B.10 of this Explanation of Provisions section and in section 3.05(b) of Notice 2018-26, if the United States shareholder of a DFIC is a domestic pass-through entity and owns section 958(a) stock of the DFIC, then each domestic pass-through owner of the domestic pass-through entity will take into account its share of the section 965(a) inclusion amount with respect to the section 958(a) stock of the DFIC of the domestic pass-through entity and the section 965(c) deduction amount with respect to such amount, regardless of whether the domestic pass-through owner is itself also a United States shareholder with respect to the DFIC.  The elections described in Parts II.K through N of the Background section of this preamble under sections 965(h) (the "section 965(h) election"), 965(m) (the "section 965(m) election"), and 965(n) (the "section 965(n) election") are available to a United States shareholder

76

ADMIN_03691

of a DFIC under the terms of section 965.  However, because a domestic pass-through owner will take into account its share of a section 965(a) inclusion amount (and the related section 965(c) deduction amount) whether or not it is itself a United States shareholder, the proposed regulations provide, consistent with section 3.05(b) of Notice 2018-26, that a domestic pass-through owner may make the section 965(h) election, the section 965(m) election, and the section 965(n) election.

B.  Net tax liability under section 965

    The proposed regulations define a new term, "total net tax liability under section 965," which reflects the definition of net tax liability under section 965 in section 965(h)(6) with respect to a person as if the person were a United States shareholder of all DFICs with respect to which it has section 965(a) inclusions, consistent with section 3.05(c) of Notice 2018-26.  See proposed §1.965-7(g)(10).  However, the proposed regulations provide that the dividends excluded pursuant to the second prong of the computation (the "without" prong) include dividends received directly or through a chain of ownership described in section 958(a).  See proposed §1.965-7(g)(10)(i)(B)(2).

    For purposes of determining a person's total net tax liability under section 965, the proposed regulations also clarify the computation of the foreign tax credit for purposes of the amount described in section 965(h)(6)(A)(ii)(II) and proposed §1.965-7(g)(10)(i)(B) (the net income tax liability determined without regard to section 965 and dividends from DFICs).  Specifically, the proposed regulations provide that the foreign tax credits disregarded in determining net income tax determined under section 965(h)(6)(A)(ii)(II) and proposed §1.965-7(g)(10)(i)(B) includes the credits for foreign income taxes deemed paid with respect to section 965(a) inclusions or foreign income

77

ADMIN_03692

taxes deemed paid with respect to a dividend, including a distribution that would have been treated as a dividend in the absence of section 965, as well as the credits for foreign income taxes imposed on distributions of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits made in the taxable year in which the person includes a section 965(a) inclusion in income.

C. Section 965(h) election

The proposed regulations provide that the section 965(h) election may be made by any person with a section 965(h) net tax liability (which includes a section 958(a) U.S. shareholder or a domestic pass-through owner in a domestic pass-through entity that is a section 958(a) U.S. shareholder, but not a domestic pass-through entity itself). Under the proposed regulations, the section 965(h) election may be revoked only by paying the full amount of the unpaid section 965(h) net tax liability. See proposed §1.965-7(b)(1). The proposed regulations also provide that a section 965(h) election is made with respect to the section 965(h) net tax liability of a person, which is the person's total net tax liability under section 965 reduced by the aggregate amount of the person's section 965(i) net tax liabilities, if any, with respect to which elections under section 965(i) are effective. See proposed §1.965-7(g)(4).

1. Underpayment of an Installment

As noted in Part II.K of the Background section of this preamble, section 965(h)(3) provides that an addition to tax for failure to timely pay an installment required under section 965(h) is an acceleration event with respect to the unpaid portion of the remaining installments. Section 965(h)(4) provides that if a taxpayer has made an election under section 965(h), and subsequently a deficiency is assessed with respect

78

ADMIN_03693

to the taxpayer's net tax liability for purposes of section 965(h), then the amount of the deficiency will be prorated among the installments.

Comments requested clarification regarding whether the underpayment of an installment (including payment of the first installment that reflects a section 965(h) net tax liability lower than what is calculated on a tax return filed by the extended due date) would constitute an acceleration event under section 965(h)(3) or would result in the proration under section 965(h)(4) of the difference between the section 965(h) net tax liability initially calculated and the subsequently determined section 965(h) net tax liability. The proposed regulations provide that if a person is assessed a deficiency with respect to the person's section 965(h) net tax liability, or the person timely files a return increasing the amount of its section 965(h) net tax liability above the amount taken into account in the payment of the first installment, or the person files an amended return increasing the amount of its section 965(h) net tax liability, the deficiency or additional amount will be prorated among the installments under section 965(h)(4). This proration rule does not apply if the deficiency or additional liability is due to negligence, intentional disregard of rules and regulations, or fraud with intent to evade tax, in which case, the proposed regulations clarify that the deficiency is payable on notice and demand. See proposed §1.965-7(b)(1)(ii)(C).

A comment also requested guidance regarding whether an underpayment of the first installment would prevent a taxpayer from making an election under section 965(h). The proposed regulations provide that if a taxpayer makes a section 965(h) election and does not pay the correct amount for the first installment, and if the rule in the preceding paragraph applies to prorate the additional liability, the remaining installment payments

79

ADMIN_03694

due pursuant to the section 965(h) election will not be accelerated, and the taxpayer's section 965(h) election will not be affected.  See proposed §1.965-7(b)(1)(ii).

2. Acceleration Events

The proposed regulations provide that if a taxpayer makes a section 965(h) election, and subsequently an acceleration event described in section 965(h)(3) and proposed §1.965-7(b)(3)(ii) occurs, the unpaid portion of all remaining installments of the taxpayer's section 965(h) net tax liability generally will be accelerated and due on the date of the event.

Proposed §1.965-7(b)(3)(ii) lists the events treated as acceleration events for this purpose.  As noted in Section II.K of the Background section of this preamble, acceleration events include an addition to tax for failure to timely pay an installment required under section 965(h), a liquidation or sale of substantially all the assets of the taxpayer (including in a title 11 or similar case), a cessation of business by the taxpayer, or any similar circumstance.  The proposed regulations identify circumstances similar to those referenced in section 965(h)(3).  Proposed §1.965-7(b)(3)(ii)(B) provides that, in addition to a liquidation or sale of substantially all of the assets of a taxpayer, any exchange or other disposition of substantially all of the assets of a taxpayer constitutes an acceleration event.  In addition, proposed §1.965-7(b)(3)(ii)(D) provides that any event that results in a person no longer being a United States person (including, for example, a resident alien becoming a nonresident alien) is an acceleration event. Proposed §1.965-7(b)(3)(ii)(E) provides that a person that was not a member of any consolidated group becoming a member of a consolidated group is treated as an acceleration event with respect to the person.  Proposed §1.965-7(b)(3)(ii)(F) provides

80

ADMIN_03695

that when a consolidated group ceases to exist, or otherwise no longer files a consolidated return, that constitutes an acceleration event.

A comment requested guidance specifying that the liquidation of a member of a consolidated group, other than the consolidated parent, would not constitute an acceleration event for purposes of section 965(h)(3).  Because proposed §1.965-8(e)(1) provides that all of the members of a consolidated group are treated as a single person for purposes of the section 965(h) election, a liquidation of one member of the group would not constitute an acceleration event for purposes of section 965(h)(3) and proposed §1.965-7(b).

The proposed regulations provide an exception (the "eligible section 965(h) transferee exception") pursuant to which the acceleration provisions of section 965(h)(3) and proposed §1.965-7(b)(3)(ii) do not apply (such that the unpaid portion of all remaining installments will not be due as of the date specified therein) to a person with respect to which an acceleration event occurs if the requirements described in proposed §1.965-7(b)(3)(iii)(A)(1) (describing the acceleration events eligible for this exception) and (2) (setting forth the terms of a required transfer agreement) are satisfied.

Generally, acceleration events eligible for this exception include (i) liquidations, sales, exchanges, or other dispositions of substantially all of the assets of a person (with the exception of, in the case of an individual, by reason of death, and with special rules applying in the case of a consolidated group), (ii) a corporation that was not a member of any consolidated group becoming a member of a consolidated group, and (iii) a consolidated group ceasing to exist by reason of acquisition and immediately joining another consolidated group.  In each case, the exception applies only to the

81

ADMIN_03696

extent that the person with respect to which an acceleration event occurs (an "eligible section 965(h) transferor") and an eligible section 965(h) transferee (generally, a United states person that is not a domestic pass-through entity and that satisfies certain requirements set forth in the proposed regulations) enter into a transfer agreement described in proposed §1.965-7(b)(3)(iii)(B).

Generally, a transfer agreement must include various acknowledgments, representations, and information, including an agreement by the eligible section 965(h) transferee to assume the liability of the eligible section 965(h) transferor for any unpaid installment payments of the eligible section 965(h) transferor under section 965(h); an agreement that the eligible section 965(h) transferee agrees to comply with all of the conditions and requirements of section 965(h) and proposed §1.965-7(b), as well as any other applicable requirements in the section 965 regulations; a representation that the eligible section 965(h) transferee is able to make the remaining payments required under section 965(h) and proposed §1.965-7(b) with respect to the section 965(h) net tax liability being assumed; and, if the eligible section 965(h) transferor continues to exist immediately after the acceleration event, an acknowledgement that the eligible section 965(h) transferor and any successor to the eligible section 965(h) transferor will remain jointly and severally liable for any unpaid installment payments of the eligible section 965(h) transferor under section 965(h), including, if applicable, under §1.1502-6. See proposed §1.965-7(b)(3)(iii)(B)(4).  The proposed regulations also provide procedural rules regarding the completion and submission of a transfer agreement, as well as rules relating to the Commissioner's review of such agreements. See generally proposed §1.965-7(b)(3)(iii)(B) and (C).

82

ADMIN_03697

3. Election Mechanics

Section 965(h)(5) provides that a section 965(h) election must be made no later than the due date (taking into account extensions, if any) for the return for the taxable year in which the taxpayer has the section 965(a) inclusions to which the section 965(h) net tax liability is attributable and must be made in the manner prescribed by the Secretary.  A comment requested that taxpayers with section 965(a) inclusions be treated as having made a section 965(h) election by default.  The Treasury Department and the IRS decline to adopt this comment because the statute provides for an affirmative election, and the proposed regulations provide an extended period in which to make it.  Under proposed §1.965-7(b)(2)(ii), a section 965(h) election must be made no later than the due date taking into account extensions, if any, or any additional time that would have been granted if the person had made an extension request, without regard to whether an extension request was made.  The election is made by attaching a statement, signed under penalties of perjury, to the taxpayer's return for the relevant taxable year including the taxpayer's name, taxpayer identification number, total net tax liability under section 965, section 965(h) net tax liability, section 965(i) net tax liability with respect to which a section 965(i) election is effective (if applicable), and anticipated amounts of each installment.  Proposed §1.965-7(b)(2)(iii).

4. Application to Non-Chapter 1 Taxes

Comments requested that the Treasury Department and the IRS provide that tax imposed under section 1411 on section 965(a) inclusions be payable in installments under section 965(h).  However, because the definition of net income tax in section 965(h)(6)(B) refers to credits allowed under subparts A, B, and D of part IV of

83

subchapter A of chapter 1 of subtitle A of the Code, the Treasury Department and the IRS have determined that section 965(h) applies only with respect to tax imposed under subchapter A of chapter 1 of subtitle A of the Code.  Accordingly, elections may not be made under section 965(h) to pay tax imposed under other subchapters or chapters (such as, for example, the taxes imposed under sections 1411 and 4940) in eight installments.  See also sections 55(a)(2) and 26(b)(2) (excluding the minimum tax under section 55 from the definition of regular tax).

D.  Section 965(i) election

As discussed in Part II.L of the Background section of this preamble, section 965(i) provides that a shareholder of an S corporation that is itself a United States shareholder of a DFIC may elect to defer payment of its net tax liability under section 965 with respect to such S corporation until the shareholder's taxable year which includes a triggering event with respect to such liability.  The proposed regulations provide guidance regarding how an S corporation shareholder can make a section 965(i) election and, consistent with section 3.05(b) of Notice 2018-26, provide that any shareholder of an S corporation that is a United States shareholder of a DFIC, whether it owns section 958(a) stock of such DFIC or not, may make the election.  However, if the S corporation is not a United States shareholder with respect to a DFIC, the shareholders of that S corporation may not make a section 965(i) election for their shares of the section 965(a) inclusion or section 965(c) deduction with respect to that DFIC.  See proposed §1.965-7(c) and (g)(6).

84

ADMIN_03699

Furthermore, the proposed regulations implement the statutory reporting requirements in section 965(i)(7) until the section 965(i) net tax liability is fully assessed. See proposed §1.965-7(c)(6).

1. Election Mechanics

The proposed regulations provide procedural rules regarding how an S corporation shareholder can make the section 965(i) election. A section 965(i) election must be made no later than the due date (taking into account extensions, if any) for the S corporation shareholder's return for the taxable year that includes the last day of the taxable year of the S corporation in which the S corporation has a section 965(a) inclusion to which the shareholder's section 965(i) net tax liability is attributable by attaching a statement, signed under penalties of perjury, to its return for that year. The statement must include the shareholder's name, taxpayer identification number, the name and taxpayer identification number of the S corporation with respect to which the election is made, the amount described in §1.965-7(g)(10)(i)(A) as modified by §1.965-1(f)-7(g)(6) for purposes of determining the section 965(i) net tax liability with respect to the S corporation, the amount described in §1.965-7(g)(10)(i)(B), and the section 965(i) net tax liability with respect to the S corporation. See proposed §1.965-7(c)(2)(ii) and (iii).

2. Triggering Events

The proposed regulations also provide rules concerning triggering events described in section 965(i)(2). An event will not be treated as a triggering event (such that a shareholder's section 965(i) net tax liability with respect to an S corporation will not be assessed as an addition to tax for the shareholder's taxable year that includes

85

ADMIN_03700

the triggering event) if the triggering event is the transfer of any share of stock of the S corporation by the shareholder (including by reason of death or otherwise), and the shareholder (an "eligible section 965(i) transferor") and an eligible section 965(i) transferee (a United States person that is not a domestic pass-through entity) enter into a transfer agreement. See generally proposed §1.965-7(c)(3)(iv); see also §1.965-7(c)(4)(iv)(B)(4) (setting forth the required terms of a transfer agreement).

3.  Consent for Section 965(h) Election in the Event of A Triggering Event

The proposed regulations also provide rules for an S corporation shareholder to obtain the consent of the Secretary to make a section 965(h) election in the event of a triggering event that is a liquidation, sale, exchange, or other disposition of substantially all of the assets of the S corporation (including in a title 11 or similar case), a cessation of business by the S corporation, or the S corporation ceasing to exist. See proposed §1.965-7(c)(3)(v)(D). To obtain consent, the shareholder intending to make the section 965(h) election must file the agreement described in proposed §1.965-7(c)(3)(v)(D)(4) and must provide, with its timely-filed return for the taxable year during which the triggering event occurs (taking into account extensions, if any), the election statement for the section 965(h) election. See proposed §1.965-7(c)(3)(v)(D)(2). For the required terms of the agreement, see generally proposed §1.965-7(c)(3)(v)(D).

A comment requested guidance specifying that if an S corporation shareholder makes a section 965(i) election, the S corporation's income inclusion is not deferred, and the S corporation's AAA should be increased by the gross amount (and not the net amount after the application of the section 965(c) deduction). Because, by its terms, a section 965(i) election affects only the timing of assessment and payment of an S

86

ADMIN_03701

corporation shareholder's section 965(a) net tax liability and not the timing or amount of the section 965(a) inclusion of either the S corporation or the S corporation shareholder, the Treasury Department and the IRS have determined that it is not necessary that the proposed regulations provide this additional guidance.  See Part V.D of this Explanation of Provisions section for a discussion of the consequences of section 965(a) inclusions and section 965(c) deductions for the AAA of an S corporation.

E.  Section 965(m) election

      The proposed regulations provide procedural rules regarding how a REIT can make the section 965(m) election.  A REIT makes a section 965(m) election by attaching a statement, signed under penalties of perjury, to its return for the taxable year in which it would otherwise be required to include REIT section 965 amounts (as defined in proposed §1.965-7(g)(2)) in gross income.  The statement must include the REIT's name, taxpayer identification number, REIT section 965 amounts, and anticipated amounts of each portion of the REIT section 965 amounts to be included in each year.  Proposed §1.965-7(d)(3)(ii) and (iii).  With respect to a REIT that has made the section 965(m) election, adjustments described in proposed §1.965-2 to the E&P of any specified foreign corporations held by the REIT, and the basis of stock of a specified foreign corporation and other applicable property held by a REIT, are made as of the close of each year in which an installment is included in the gross income of the REIT.  A comment requested that RICs also be allowed to make a similar election to include any amount required to be taken into account under section 951(a)(1) by reason of section 965 in eight installments.  This comment is not adopted because the statute provides the election solely for REITs.

ADMIN_03702

For the reasons discussed in Part VIII.A of this Explanation of Provisions section, the proposed regulations also provide that no section 965(a) inclusions of a REIT are taken into account as gross income for purposes of section 856(c)(2) and (3), regardless of whether the REIT is a United States shareholder with respect to the DFIC with respect to which it has a section 965(a) inclusion.  See section 965(m)(1)(A) and proposed §1.965-7(d)(6).

F.  Section 965(n) election

As discussed in Part II.N of the Background section of this preamble, section 965(n) provides that a United States shareholder of a DFIC may elect to exclude the amount described in section 965(n)(2) from the determination of the amount of the NOL deduction under section 172 of such shareholder for such taxable year or the amount of taxable income for such taxable year which may be reduced by NOL carryovers or carrybacks to such taxable year under section 172.  The proposed regulations provide procedural rules regarding how a taxpayer may make the section 965(n) election, clarify the effect of the election, and provide that the election is irrevocable.

1.  Scope of Election

As discussed in section 3.05(d) of Notice 2018-26, comments have requested clarification regarding the scope of the section 965(n) election as a result of the use of the term "deduction" in section 965(n)(1)(A).  An NOL "deduction" for a taxable year generally refers to the amount of an NOL carried to such taxable year from a prior or subsequent year rather than the NOL arising from such year.  Compare section 172(a) and (c).  However, interpreting "deduction" in section 965(n)(1)(A) to refer to carryovers or carrybacks to the taxable year (and not the NOL for the taxable year) would cause

88

ADMIN_03703

that paragraph to be duplicative of section 965(n)(1)(B), which already provides that amounts described in section 965(n)(2) are disregarded for purposes of applying NOL carryovers or carrybacks to such taxable year under section 172. The Treasury Department and the IRS have determined that section 965(n)(1)(A) was intended to apply to a different set of losses than those to which section 965(n)(1)(B) applies. A comment also requested clarification regarding whether taxpayers could make the section 965(n) election for only a portion of their NOLs. The Treasury Department and the IRS have determined that the election was intended to apply to the NOL amount in its entirety. Accordingly, the proposed regulations provide that if a section 965(n) election is made for a taxable year, the election applies to NOLs for the taxable year for which the election is made as well as the NOL carryovers or carrybacks to such taxable year, each in their entirety. See proposed §1.965-7(e)(1)(iii).

A comment also requested clarification regarding whether consolidated groups could make the section 965(n) election. The proposed regulations clarify that the section 965(n) election also applies to all components of the consolidated NOL deduction (as defined in §1.1502-21(a)). Id.

2. Election Mechanics

A person makes a section 965(n) election by attaching a statement, signed under penalties of perjury, to its return for the taxable year (taking into account extensions, if any) to which the election applies. Proposed §1.965-7(e)(2)(ii). The statement must include the person's name, taxpayer identification number, the amounts described in section 965(n)(2)(A) and proposed §1.965-7(e)(1)(ii)(A) and section 965(n)(2)(B) and proposed §1.965-7(e)(1)(ii)(B), and the sum thereof. Proposed §1.965-7(e)(2)(iii).

89

ADMIN_03704

G. Election to use alternative method for calculation of post-1986 earnings and profits

Under section 965(a) and (d)(3), a United States shareholder of a specified foreign corporation must determine its accumulated post-1986 deferred foreign income as of either of the two E&P measurement dates (November 2, 2017, and December 31, 2017) by determining its post-1986 earnings and profits as of each of those dates. As discussed in section 3.02 of Notice 2018-13, it may be impractical for some taxpayers to determine the post-1986 earnings and profits of a specified foreign corporation as of the November 2, 2017, E&P measurement date because it does not fall on the last day of a month. Therefore, the proposed regulations provide that an election may be made to determine the post-1986 earnings and profits of a specified foreign corporation using the alternative method. See proposed §1.965-7(f).

Under the alternative method, for a specified foreign corporation other than a specified foreign corporation with a 52-53-week taxable year (as described in §1.441-2(a)(1)), the amount of its post-1986 earnings and profits as of the November 2, 2107, E&P measurement date equals the sum of (1) the specified foreign corporation's post-1986 earnings and profits as of October 31, 2017, and (2) the specified foreign corporation's "annualized earnings and profits amount." For this purpose, the term "annualized earnings and profits amount" means the amount equal to the product of two (the number of days after October 31, 2017, and on or before the measurement date on November 2, 2017) and the "daily earnings amount" of the specified foreign corporation. The "daily earnings amount" of the specified foreign corporation is the post-1986 earnings and profits (including a deficit) of the specified foreign corporation as of the close of October 31, 2017, that were accumulated during the specified foreign

90

ADMIN_03705

corporation's taxable year that includes October 31, 2017, divided by the number of days that have elapsed in that taxable year as of the close of October 31, 2017. A specified foreign corporation that does not have a 52-53-week taxable year may not use the alternative method to determine its post-1986 earnings and profits as of the December 31, 2017, measurement date. See proposed §1.965-7(f)(1), (3), and (4).

For a specified foreign corporation that has a 52-53-week taxable year, an election to use the alternative method applies to both measurement dates, in each case determining the post-1986 earnings and profits consistent with the method described in the previous paragraph as of the closest end of a fiscal month to each measurement date. For example, if the closest end of a fiscal month of a specified foreign corporation that has a 52-53-week taxable year occurs after a measurement date, the annualized earnings amount is subtracted from (rather than added to) the post-1986 earnings and profits of the specified foreign corporation as of the fiscal month end. See proposed §1.965-7(f)(2), (3), and (4). See proposed §1.965-7(f)(5) for details on how to make the election.

A comment requested that individuals be permitted to calculate post-1986 earnings and profits by prorating E&P for the November 2, 2017, measurement date based on year-end numbers. This comment is not adopted. Allowing individuals to use year-end numbers and prorate to November 2, 2017, would allow taxpayers to base their post-1986 earnings and profits for both dates on the E&P as of a single date, contrary to the intent of the two E&P measurement dates in the statute.

IX. Affiliated Groups (Including Consolidated Groups)

91

Proposed §1.965-8 provides rules for applying section 965 and the section 965 regulations to members of an affiliated group (as defined in section 1504(a)), including members of a consolidated group (as defined in §1.1502-1(h)).

A. Treatment of consolidated groups

1. Treated as a Single United States Shareholder

The proposed regulations provide that all members of a consolidated group that are section 958(a) U.S. shareholders of a specified foreign corporation are treated as a single section 958(a) U.S. shareholder for purposes of section 965(b) and proposed §1.965-1(b)(2), and that all members of a consolidated group are treated as a single person for purposes of paragraphs (h), (k), and (n) of section 965 and proposed §1.965-7. See proposed §1.965-8(e). Thus, for example, the determination of whether the sale of assets by a member of a consolidated group to a non-member would constitute a sale of substantially all of the assets of the taxpayer for purposes of causing an acceleration event under section 965(h)(3) and proposed §1.965-7(b)(3) takes into account all of the assets of the consolidated group, which for purposes of this determination, includes all of the assets of each consolidated group member (but generally does not include the stock of another consolidated group member).

This rule does not apply to treat all members of a consolidated group as a single section 958(a) U.S. shareholder or single person, as applicable, for purposes of determining the amount of any member's inclusion under section 951 (including a section 965(a) inclusion), any member's section 965(c) deduction, or any purpose other than those specifically listed in proposed §1.965-8(e)(1). The proposed regulations also clarify that for purposes of computing the foreign income taxes deemed paid with

92

ADMIN_03707

respect to a section 965(a) inclusion, the foreign income taxes deemed paid must be computed on a separate member basis. Therefore, a domestic corporation is not deemed to pay any foreign income taxes with respect to a section 965(a) inclusion from a foreign corporation that is not a member of a qualified group with respect to the domestic corporation, even if other members of the domestic corporation's consolidated group qualify to compute deemed paid credits with respect to that foreign corporation. Sections 960(a)(3), 902(b).

2. Aggregate Foreign Cash Position of a Member of a Consolidated Group

For purposes of computing a member's section 965(c) deduction, the member's aggregate foreign cash position generally is determined by reference to its pro rata share of the consolidated group's aggregate foreign cash position as a whole. Specifically, the proposed regulations provide that the aggregate foreign cash position with respect to a section 958(a) U.S. shareholder that is a member of a consolidated group equals the aggregate section 965(a) inclusion amount of the section 958(a) U.S. shareholder multiplied by the group cash ratio of the consolidated group. For this purpose, the term "group cash ratio" means the ratio of the consolidated group aggregate foreign cash position (generally, the sum of the aggregate foreign cash positions of the members of a consolidated group) to the sum of the aggregate section 965(a) inclusion amounts of all members of the consolidated group. See proposed §1.965-8(e)(3), (f)(4), and (f)(8).

3. Adjustments to E&P and Stock Basis

93

As described in section 3.04 of Notice 2018-07, the proposed regulations indicate that the regulations under §1.1502-32 provide for adjustments to the basis of the stock of each member of the consolidated group. See proposed §1.965-8(d)(2).

B. Affiliated groups

The proposed regulations include guidance regarding the application of section 965(b)(5) to determine the section 965(a) inclusion amounts of a member of an affiliated group. Proposed §1.965-8(b) applies when, after the application of the rules in proposed §1.965-1(b)(2) (which generally implements the operative rule of section 965(b)(1)), a section 958(a) U.S. shareholder is both an E&P net surplus shareholder and a member of an affiliated group in which not all members are members of the same consolidated group. When proposed §1.965-8(b) applies, the U.S. dollar amount of a section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of a DFIC is reduced (but not below zero) by the DFIC's allocable share of the section 958(a) U.S. shareholder's applicable share of the affiliated group's aggregate unused E&P deficit. The proposed regulations include rules and definitions for determining, respectively, a DFIC's allocable share and a section 958(a) U.S. shareholder's applicable share of an affiliated group's aggregate unused E&P deficit. See proposed §1.965-8(f)(2) and (3).

For purposes of this rule, if some but not all members of an affiliated group are properly treated as members of a consolidated group, then the consolidated group is treated as a single member of the affiliated group. Proposed §1.965-8(b)(2).

C. Source of aggregate unused E&P deficits

94

ADMIN_03709

Proposed §1.965-8(c) provides guidance for designating the source of an aggregate unused E&P deficit of an affiliated group that is not a consolidated group when, generally, the amount of the affiliated group's aggregate unused E&P deficit exceeds the aggregate section 965(a) inclusion amounts of E&P net surplus shareholders of the affiliated group determined without regard to the application of section 965(b)(5) and proposed §1.965-8(b)).  Generally, when proposed §1.965-8(c) applies, each member of an affiliated group that is an E&P net deficit shareholder must designate by maintaining in its books and records a statement (identical to the statement maintained by all other such members of the affiliated group) setting forth the portion of its excess aggregate foreign E&P deficit that is taken into account by one or more net E&P net surplus shareholders of the affiliated group.

If some but not all members of an affiliated group are properly treated as members of a consolidated group, then the consolidated group is treated as a single member of the affiliated group for purposes of this rule.  Proposed §1.965-8(c)(2).

X.  Application of Section 986(c)

The proposed regulations provide that, for purposes of section 986(c), foreign currency gain or loss with respect to distributions of section 965(a) previously taxed earnings and profits is determined based on movements in the exchange rate between December 31, 2017, and the date on which such E&P are actually distributed. See proposed §1.986(c)-1(a).

Consistent with section 3.05 of Notice 2018-07, the proposed regulations also provide that any gain or loss recognized under section 986(c) with respect to distributions of section 965(a) previously taxed earnings and profits is reduced in the

95

same proportion as the reduction by a section 965(c) deduction amount of the section 965(a) inclusion amount that gave rise to such section 965(a) previously taxed earnings and profits, consistent with the statute and other indicia of congressional intent. See H.R. Rep. No. 115-466, at 620 (2017) (Conf. Rep.), and proposed §1.986(c)-1(b).

Because section 965(b) previously taxed earnings and profits are not included in gross income under section 951(a)(1), the Treasury Department and the IRS have determined it would not be appropriate to apply section 986(c) with respect to distributions of those E&P. Therefore, proposed §1.986(c)-1(c) provides that section 986(c) does not apply with respect to distributions of section 965(b) previously taxed earnings and profits.

XI. Other Comments

A. Repeal of section 958(b)(4)

Effective for the last taxable year of foreign corporations beginning before January 1, 2018, and each subsequent year, and for the taxable years of United States shareholders in which or with which such taxable years of the foreign corporations end, the Act repealed section 958(b)(4). Before repeal, section 958(b)(4) provided that subparagraphs (A), (B), and (C) of section 318(a)(3) were not to be applied to consider a United States person to own stock which is owned by a person who is not a United States person. As discussed in Part III.B of the Background section of this preamble, the subparagraphs of section 318(a)(3) generally attribute stock owned by a person to a partnership, estate, trust, or corporation in which such person has an interest (so-called "downward" attribution).

96

Multiple comments requested guidance be issued addressing the repeal of section 958(b)(4). This issue is beyond the scope of the proposed regulations.

However, consistent with section 5.02 of Notice 2018-13, the instructions to Form 5471 will be amended to provide an exception from certain filing requirements for a United States person that is a United States shareholder with respect to a CFC or other specified foreign corporation if no United States shareholder (including the United States person) owns, within the meaning of section 958(a), stock of the CFC or other specified foreign corporation, and the foreign corporation is a CFC or specified foreign corporation solely because a United States person is considered to own the stock of the CFC or other specified foreign corporation owned by a foreign person under section 318(a)(3). Consistent with section 6 of Notice 2018-13 and section 7 of Notice 2018-26, taxpayers may rely on this exception with respect to the last taxable year of a foreign corporation beginning before January 1, 2018, and each subsequent year of the foreign corporation, and for the taxable years of a United States shareholder in which or with which these taxable years of the foreign corporation end.

B. Reporting and filing

1. Section 965 Reporting and Filing Requirements

The proposed regulations provide guidance regarding filing and reporting with respect to section 965(h) elections, section 965(i) elections, section 965(m) elections, and section 965(n) elections, as well as the election to use the alternative method to calculate post-1986 earnings and profits. In addition, the relevant forms and instructions will be updated, as necessary, for taxpayers to properly report amounts under section 965 and the proposed regulations. For the 2017 tax year, instructions for

97

ADMIN_03712

how and when to properly report section 965-related amounts and file returns reporting such amounts, as well as instructions for how and when to make payments with respect to a net tax liability under section 965, were provided in Frequently Asked Questions (FAQs) that are available at the IRS website.  The FAQs were posted on March 13, 2018, and updated on April 13, 2018, and June 4, 2018.

2. Extensions

Comments requested an extension of time for reporting and paying section 965-related amounts and an extension of time for making the section 965(h) election.  The statute provides for an extended time to file returns reporting section 965-related amounts and to make applicable elections.  In addition, with the section 965(h) election, the statute provides a method for taxpayers to delay payment of the total net tax liability under section 965.  Furthermore, as discussed in Part VIII.C.3 of this Explanation of Provisions section, the proposed regulations provide that a taxpayer eligible to make a section 965(h) election may make the election on its timely-filed return taking into account extensions, if any, or any additional time that would have been granted if the person had made an extension request.  In addition, as described in section 3.05(e) of Notice 2018-26, the proposed regulations provide that for a person who is a specified individual (as defined in proposed §1.965-7(g)(9)) for the year within which an installment payment would be required to be made who makes a section 965(h) election and who otherwise receives an extension of time to file and pay under §1.6081-5(a)(5) or (6), the due date for an installment payment will be the fifteenth day of the sixth month following the close of the prior taxable year, regardless of whether the person was a specified individual for the year of the person's section 965(a) inclusion.  See

ADMIN_03713

proposed §1.965-7(b)(1)(iii)(B). Moreover, the IRS has announced relief from additions to tax (and related acceleration events under section 965(h)(3)) for certain individual filers that do not timely pay their first installment of tax due with respect to the 2017 tax year under section 965(h). For more information, see "Questions and Answers about Reporting Related to Section 965 on 2017 Tax Returns," Q&A 16, available at https://www.irs.gov/newsroom/questions-and-answers-about-reporting-related-to-section-965-on-2017-tax-returns. Thus, comments requesting additional extensions are not adopted.

C. Individuals

1. In General

Numerous comments were received requesting guidance exempting individuals from the application of section 965. The statute is clear that section 965 applies to all United States shareholders. In addition, the Conference Report makes clear that section 965 applies to individuals as well as corporate shareholders by providing, "In contrast to the participation exemption deduction [in section 245A] available only to domestic corporations that are U.S. shareholders under subpart F, the transition rule applies to all U.S. shareholders." H.R. Rep. No. 115-466, at 606 (2017) (Conf. Rep.). Because the statute and legislative history are clear that section 965 was intended to apply to all United States shareholders, including individuals, the Treasury Department and the IRS have determined that providing the requested relief is not appropriate.

2. Rates of Tax on Section 965(a) Inclusions

Comments also requested that guidance be provided changing the application of the participation exemption to individuals. As discussed in Part II.E of the Background

99

ADMIN_03714

section of this preamble, the amount of the participation exemption depends on the application of the United States shareholder's 8 percent rate equivalent percentage (as defined in section 965(c)(2)(A) and proposed §1.965-1(f)(2)) and its 15.5 percent rate equivalent percentage (as defined in section 965(c)(2)(B) and proposed §1.965-1(f)(4)). Both the 8 percent rate equivalent percentage and the 15.5 percent rate equivalent percentage are based off of the highest rate of tax specified in section 11, which is applicable to corporations. As a result, when the participation exemption is calculated for individuals, the applicable rates of tax may not be 8 percent and 15.5 percent.

However, this result was anticipated by Congress. The Conference Report provides, "Individual U.S. shareholders, and the investors in U.S. shareholders that are pass-through entities generally can elect application of corporate rates for the year of inclusion." H.R. Rep. No. 115-466, at 620 (2017) (Conf. Rep.). As discussed in Part III of this Explanation of Provisions section, individuals may make an election under section 962 to have the tax imposed under chapter 1 on amounts that are included in the individual's gross income under section 951(a) with respect to a foreign corporation with respect to which it is a United States shareholder be equal to the tax that would be imposed under section 11 if the amounts were received by a domestic corporation. Accordingly, because of the availability of the section 962 election and Congress's express intent with respect to the rate equivalent percentages, these comments are not adopted.

D. Determination of aggregate foreign cash position

1. Liquidity-Based Exceptions

ADMIN_03715

A number of comments were received requesting guidance modifying the definition of a specified foreign corporation's cash position or the calculation of a United States shareholder's aggregate foreign cash position.  For example, comments requested guidance excluding certain assets from a specified foreign corporation's cash position, or otherwise providing special rules with respect to those assets, including (i) cash used, or intended to be used, to fund foreign acquisitions; (ii) blocked, restricted, or segregated cash; (iii) cash used, or to be used, to pay third-party payables within a specified period (for example, 12 months after a cash measurement date); (iv) obligations with respect to which there was an inclusion under section 956; (v) cash held in a fiduciary or trust capacity; (vi) cash held or attributable to an entity that is engaged in a regulated industry, such as life insurance; and (vii) cash pledged against defined liabilities as well as potential or contingent liabilities.  In addition, comments requested exceptions for commodities representing inventory or supplies and stock of a publicly traded company in which the specified foreign corporation holds at least 10 percent of the stock, each of which is personal property of a type that is actively traded and for which there is an established financial market, and thus included in the cash position of a specified foreign corporation.

In general, these comments are premised on the view that an asset that otherwise would be included in the cash position of a specified foreign corporation should be excluded to the extent that the asset cannot be otherwise employed; that is, if the asset is not sufficiently "liquid."  Although the legislative history describing a specified foreign corporation's cash position refers to earnings that are "liquid," neither the legislative history nor the statute indicates that the cash position of a specified

ADMIN_03716

foreign corporation should be determined by reference to an analysis of whether any particular asset should be considered a liquid asset. See, e.g., Senate Committee on Finance, Explanation of the Bill, at 360-361 (November 22, 2017) ("The cash position of an entity consists of all cash, net accounts receivables, and the fair market value of similarly liquid assets, specifically including personal property that is actively traded on an established financial market ..., government securities, certificates of deposit, commercial paper, and short-term obligations."). Instead, as the Conference Report notes, the statute includes a specific list of assets that are included in the cash position of a specified foreign corporation.

The Treasury Department and the IRS have determined that the definition of cash position in section 965(c)(3)(B) is the best indication of what Congress believed was a liquid asset. Depending on the facts, any particular asset may be required to be used for a specific purpose, or a taxpayer may intend to retain the asset for a lengthy period of time. However, the Treasury Department and the IRS have determined that it would not be administrable to create individual regulatory exceptions to the statute in the absence of a statutory standard for liquidity because it would likely require introducing a facts-and-circumstances test that analyzes the liquidity of every asset, which would be difficult to administer. Furthermore, while some assets that would otherwise be treated as cash-equivalent assets could be excluded from a specified foreign corporation's cash position for being insufficiently liquid, other assets that are not treated as cash-equivalent assets but are liquid would need to be included in a specified foreign corporation's cash position. Accordingly, the proposed regulations do not introduce new regulatory exceptions to the definition of cash position. The Treasury

102

ADMIN_03717

Department and the IRS welcome comments with respect to the definition of cash position of a specified foreign corporation.

2. Other Modifications Requested to Statutory Rules

Comments also requested modifications to the rules regarding the calculation of a specified foreign corporation's cash position or a United States shareholder's aggregate foreign cash position, including requests that (i) accounts payable be allowed to offset both accounts receivable and other components of a specified foreign corporation's cash position; (ii) the pro rata share of cash held through a pass-through entity be limited to the amount of cash that a specified foreign corporation would have been entitled to on liquidation of the pass-through entity; (iii) the cash position be reduced by section 301(c) cash distributions by the specified foreign corporation when using the average of the aggregate cash positions on the first two cash measurement dates; and (iv) the cash position be reduced by undistributed previously taxed E&P. The Treasury Department and the IRS have determined that the statute is unambiguous as to how, in each of these circumstances, a specified foreign corporation's cash position or a United States shareholder's aggregate foreign cash position should be determined, such that it is unnecessary to provide guidance or to revise the operation of the statute by regulation under these circumstances.

3. Notional Cash Pooling Arrangements

Comments requested that the proposed regulations provide that notional cash pooling arrangements are treated as creating intercompany receivables for purposes of section 965. The proposed regulations do not adopt this recommendation. The determination of whether transactions in a notional cash pooling arrangement are

103

ADMIN_03718

treated as occurring among participants in the arrangement, or between the participants and a third party, depends on the application of federal income tax principles. Cf. Rev. Rul. 87-89, 1987-2 C.B. 195.

4. Non-Corporate Entities under Section 965(c)(3)(E)

A comment requested clarification regarding whether section 965(c)(3)(E), which treats a non-corporate entity held by a specified foreign corporation as a specified foreign corporation (if it would otherwise be a specified foreign corporation if it was a foreign corporation) for purposes of taking into account its cash position, applies to an entity that is disregarded as an entity separate from its owner for U.S. federal income tax purposes ("disregarded entity"). The Treasury Department and the IRS have determined that it is clear under existing law that the assets of a disregarded entity are considered as held directly by the disregarded entity's owner, such that the rule in section 965(c)(3)(E) does not apply with respect to disregarded entities, and no specific rules addressing the application of section 965(c)(3)(E) are necessary. See generally §301.7701-2(a).

E. Blocked foreign income

Comments requested that the proposed regulations provide rules with respect to income subject to certain exchange controls or other foreign legal restrictions. Generally, section 964(b) and §1.964-2 (the blocked foreign income rules) provide that no part of the E&P of a CFC are included in the CFC's E&P for purposes of sections 952 and 956 if it is established to the satisfaction of the Secretary that the E&P could not have been distributed by the CFC to United States shareholders that own the stock of the CFC due to currency or other foreign legal restrictions. Section 965(a) inclusion

104

ADMIN_03719

amounts are not, however, limited by section 952, such that the blocked foreign income rules do not affect the determination of such amounts. Comments requested that the proposed regulations adopt rules similar to the blocked foreign income rules for purposes of section 965 by reducing the post-1986 earnings and profits of a specified foreign corporation by an amount equal to any amounts subject to restrictions on distributions by a specified foreign corporation.

The Treasury Department and the IRS have determined that it is not appropriate to provide rules similar to the blocked foreign income rules for purposes of computing post-1986 earnings and profits. Section 965(d)(3) expressly provides that the term post-1986 earnings and profits means E&P "computed in accordance with section 964(a) and 986," giving rise to a clear inference that the principles of section 964(b) should not be given effect in computing post-1986 earnings and profits.

F. Additional comments

Several other comments were received that did not pertain to section 965 or were otherwise outside the scope of the section 965 regulations. Some of those comments related to reporting and payment requirements and have been addressed in the FAQs that are available at the IRS website. Other comments that did not relate to the rules described in Notices 2018-07, 2018-17, or 2018-26 or that were outside the scope of this notice of proposed rulemaking are not addressed in this preamble. In addition, other comments were received after the proposed regulations had been substantially developed, such that the Treasury Department and the IRS did not have time to fully consider the comments. The Treasury Department and the IRS will include these comments in the administrative record for the notice of proposed rulemaking on

ADMIN_03720

this subject in the Proposed Rules section of this issue of the Federal Register and fully consider the comments in connection with finalization of the proposed regulations.

XII. Applicability Dates

Consistent with the applicability date of section 965, as amended by the Act, under section 7805(b)(2), the proposed regulations generally apply beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, beginning the taxable year in which or with which such taxable year of the foreign corporation ends.  Taxpayers may choose to apply the rules in proposed §1.965-7 in their entirety to all tax years as if they were final regulations.

For the avoidance of doubt, proposed §1.965-9(b) clarifies that the rules described in proposed §§1.965-4 apply to all foreign corporation and shareholder taxable years described in proposed §1.965-9(b), even if the relevant transaction, the effective date of a change in method of accounting or entity classification election, or specified payment occurred in a prior taxable year.  This is because the proposed regulations affect only the tax consequences in taxable years described in proposed §1.965-9(b) and do not affect any prior taxable year.

**Special Analyses**

I. Regulatory Planning and Review

Executive Orders 13563 and 12866 direct agencies to assess costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic, environmental, public health and safety effects, distributive impacts, and equity).  Executive Order

106

ADMIN_03721

13563 emphasizes the importance of quantifying both costs and benefits, reducing costs, harmonizing rules, and promoting flexibility. This proposed rule has been designated a "significant regulatory action" under section 3(f) of Executive Order 12866 and the Memorandum of Agreement (MOA), *Review of Tax Regulations under Executive Order 12866* (April 11, 2018). Accordingly, the proposed rule has been reviewed by the Office of Management and Budget. The Treasury Department requests comment on this designation.

A. Need for the proposed regulations

These regulations implement section 965 of the Internal Revenue Code as amended by the Act. The proposed regulations provide rules for determining the section 965(a) inclusion amount of a U.S. shareholder of a foreign corporation with deferred foreign income. The proposed regulations directly implement the statutory requirements. The Senate Committee on Finance stated with respect to section 965 that, "[t]o ensure that all distributions from foreign subsidiaries are treated in the same manner under the participation exemption system, the Committee believes that it is appropriate to tax such earnings as if they had been repatriated under present law, but at a reduced rate. The Committee believes the tax on accumulated foreign earnings should apply without requiring an actual distribution of earnings, and further believes that the tax rate should take into account the liquidity of the accumulated earnings." See Senate Committee on Finance, Explanation of the Bill, at 358 (November 22, 2017).

B. Background

107

The international tax system prior to the Act created strong incentives for U.S. companies to keep their earnings and profits overseas, an action known as deferral, in order to avoid paying a sizeable residual U.S. tax. The Act ended deferral and the resulting "lockout effect." It introduced a one-time tax on the stock of any deferred earnings and profits not previously taxed by the United States, regardless of whether those earnings are repatriated. Cash or cash-equivalent assets held by a foreign corporation result in a higher rate of repatriation tax than non-cash assets, such as plant, property, and equipment. The tax applies to the accumulated stock of deferred earnings and profits as of the last taxable year of a foreign corporation beginning before January 1, 2018, and with respect to United States shareholders, for taxable years in which or with which the taxable year of the foreign corporation ends; these details are important for understanding the economic impacts of the proposed regulations.

The proposed regulations address open questions regarding the application of section 965. They provide rules related to section 965 described in the three notices issued since December 22, 2017, with certain modifications, as well as additional guidance related to section 965. Specifically, the guidance provides general rules and definitions, as well as rules related to the determination and treatment of section 965(c) deductions, rules that disregard certain transactions in connection with section 965, rules related to foreign tax credits, rules regarding elections and payments, rules regarding the application of the section 965 regulations to affiliated groups, including consolidated groups, rules on dates of applicability, rules relating to section 962 elections, and rules regarding the application of section 986(c) in connection with section 965. These proposed regulations are designed to provide clarity and reduce

108

unnecessary burdens on taxpayers, including by providing guidance on how to apply particular mechanical rules.

C. Baseline

The baseline constitutes a world in which no regulations pertaining to section 965 had been promulgated, and thus taxpayers would have made decisions relevant to section 965 in the absence of specific guidance. The following qualitative analysis describes the anticipated impacts of the proposed regulations relative to the baseline.

D. Consideration of alternatives

For a discussion of the alternatives considered in the promulgation of the proposed regulations, see the Explanation of Provisions section of this preamble. For example, see Part II.B of the Explanation of the Provisions section for a discussion of the alternatives considered with respect to the determination of, among other things, post-1986 earnings and profits (E&P), cash measurement dates, and short-term obligations and Part IV.C.2 of the Explanation of Provisions section for a discussion of the alternatives considered to the rule permitting elective basis adjustments to the stock of certain deferred foreign income corporations and E&P deficit foreign corporations.

E. Anticipated benefits

In consultation with taxpayers, the Treasury Department determined that there are multiple instances throughout the statute where the transition tax may be artificially inflated because of double counting of cash and E&P due to multiple testing dates and chains of ownership. Double counting is inequitable because similarly situated taxpayers may differ in terms of the amounts of income that fall into the specific categories that may be subject to double counting. As a result of this analysis, the

109

regulations aim to reduce double counting and produce more equitable tax outcomes across otherwise similarly situated taxpayers by: (1) preventing double counting in computing the aggregate foreign cash position, for example by disregarding receivables and payables between related specified foreign corporations with a common U.S. shareholder; and (2) preventing double-counting and non-counting in the computation of deferred earnings arising from amounts paid or incurred between related parties between measurement dates.

Inequitable outcomes may also arise in the absence of the proposed regulations due to uncertainty and ambiguity over interpretation of the section 965 requirements: Absent these regulations, different parties would likely interpret the statute in different ways.  Such disparate interpretations could lead similarly situated taxpayers to calculate their tax liability differently, an inequitable situation.  The proposed regulations aim to reduce uncertainty and ambiguity by: (1) providing that all members of a consolidated group that are U.S. shareholders of a specified foreign corporation are treated as a single U.S. shareholder; (2) introducing definitions of terminology used; (3) coordinating foreign tax credit rules; (4) making explicit the process for making elections and paying the tax, and (5) providing dates of applicability.

F.  Anticipated impacts on administrative and compliance costs

Absent these regulations, different parties would likely interpret the statute in different ways.  In addition to the impacts described above, different parties interpreting the statute in different ways implies increased administrative costs for the Internal Revenue Service and increased compliance costs for taxpayers while the inevitable disputes are dealt with through sub-regulatory guidance or resolved through litigation.

110

ADMIN_03725

For a discussion of the one-time annual reporting burden associated with the statute see the Paperwork Reduction Act (PRA) section of this preamble, which provides further detail regarding the assumptions underlying these estimates. These estimates are that 100,000 respondents will require 5 hours per response for a total reporting burden of 500,000 hours. A valuation of the burden hours at $95/hour leads to a PRA-based estimate of the reporting costs to taxpayers of $47,500,000. This is a one-time paperwork burden associated with a one-time tax, and Treasury anticipates all paperwork burdens to be incurred within the next year. Any subsequent reporting (such as over the eight-year payment period) would be nominal burdens that implement payments calculated in the initial year. This estimate does not disaggregate the cost specifically due to the proposed regulations. The Treasury Department solicits comments on the assumptions and appropriateness of the methodology used to calculate the compliance costs imposed by the proposed regulations relative to the baseline.

II. Executive Order 13771

This proposed rule is expected to be an Executive Order 13771 regulatory action. Details on the estimated costs of this proposed rule can be found in the rule's economic analysis.

III. Regulatory Flexibility Analysis

The Regulatory Flexibility Act (5 U.S.C. chapter 6) does not apply because the regulations do not impose a collection of information on small entities. Any burden on small entities in these regulations stems from the collection of information requirements in proposed §§1.965-2(d)(2)(ii)(B), 1.965-2(f)(2)(iii)(B), 1.965-3(b)(2), 1.965-3(c)(3),

111

1.965-4(b)(2)(i), 1.965-7(b)(2), 1.965-7(b)(3)(iii)(B), 1.965-7(c)(2), 1.965-7(c)(3)(iv)(B), 1.965-7(c)(3)(v)(D), 1.965-7(c)(6)(i), 1.965-7(d)(3), 1.965-7(e)(2), 1.965-7(f)(5), and 1.965-8(c). It is hereby certified that these collection of information requirements will not have a significant economic impact on a substantial number of small entities. Accordingly, an initial regulatory flexibility analysis is not required. This certification is based on several facts. First, the average burden is five hours, which is minimal, particularly in comparison to other regulatory requirements related to owning stock in a specified foreign corporation. Second, the requirements apply only if a taxpayer chooses to make an election or rely on a favorable rule. Third, the collections of information apply to the owners of specified foreign corporations. Because it takes significant resources and investment for a foreign business to be operated in corporate form by a United States person, specified foreign corporations will infrequently be small entities. Moreover, because the collection of information requirements apply to the owners of specified foreign corporations rather than the specified foreign corporations themselves, a specified foreign corporation that was a small entity would not be subject to the collections of information. Fourth, the collection of information requirements in this regulation apply primarily to persons that are United States shareholders of specified foreign corporations. The ownership of sufficient stock in specified foreign corporations in order to constitute a United States shareholder generally entails significant resources and investment, such that businesses that are United States shareholders are generally not small businesses. Pursuant to section 7805(f), this notice of proposed rulemaking has been submitted to the Chief Counsel for Advocacy of the Small Business Administration for comment on its impact on small business.

112

**Comments and Requests for a Public Hearing**

Before the proposed regulations are adopted as final regulations, consideration will be given to any comments that are submitted timely to the IRS as prescribed in this preamble under the "ADDRESSES" heading.  The Treasury Department and the IRS request comments on all aspects of the proposed rules.  All comments will be available at www.regulations.gov or upon request.  A public hearing will be scheduled if requested in writing by any person that timely submits written comments.  If a public hearing is scheduled, notice of the date, time, and place for the public hearing will be published in the **Federal Register**.

**Drafting Information**

The principal authors of the proposed regulations are Leni C. Perkins and Karen J. Cate of the Office of Associate Chief Counsel (International).  However, other personnel from the Treasury Department and the IRS participated in the development of the proposed regulations.

**List of Subjects in 26 CFR Part 1**

Income taxes, Reporting and recordkeeping requirements.

**Proposed Amendments to the Regulations**

Accordingly, 26 CFR part 1 is proposed to be amended as follows:

PART 1--INCOME TAXES

Paragraph 1.  The authority citation for part 1 is amended by adding new entries in numerical order to read as follows:

Authority:  26 U.S.C. 7805 * * *

Section 1.962-1 also issued under 26 U.S.C. 965(o).

113

ADMIN_03728

Section 1.965-1 also issued under 26 U.S.C. 965(c)(3)(B)(iii)(V), 965(d)(2), 965(o), 989(c), and 7701(a).

Section 1.965-2 also issued under 26 U.S.C. 965(b)(3)(A)(ii), 965(o) and 961(a) and (b).

Section 1.965-3 also issued under 26 U.S.C. 965(c)(3)(D) and 965(o).

Section 1.965-4 also issued under 26 U.S.C. 965(c)(3)(F) and 965(o).

Sections 1.965-5 through 1.965-6 also issued under 26 U.S.C. 965(o) and 26 U.S.C. 902(c)(7) (as in effect on December 21, 2017).

Section 1.965-7 also issued under 26 U.S.C. 965(h)(3), 965(h)(5), 965(i)(2), 965(i)(8)(B), 965(m)(2)(A), 965(n)(3), and 965(o).

Section 1.965-8 also issued under 26 U.S.C. 965(o).

Section 1.965-9 also issued under 26 U.S.C. 965(o). * * *

Section 1.986(c)-1 also issued under 26 U.S.C. 965(o) and 26 U.S.C. 989(c).

Par. 2.  Section 1.962-1 is amended by:

1.  Revising paragraph (b)(1)(i).

2.  Redesignating paragraphs (b)(2)(iv)(a) and (b) as paragraph (b)(2)(iv)(A) and (B), respectively.

3.  Adding paragraph (d).

The revision and addition read as follows:

§1.962-1 Limitation of tax for individuals on amounts included in gross income under section 951(a).

* * * * *

(b) * * *

114

ADMIN_03729

(1) * * *

(i) Determination of taxable income.  The term taxable income means the excess of--

(A) The sum of--

(1) All amounts required to be included in his gross income under section 951(a) for the taxable year with respect to a foreign corporation of which he is a United States shareholder, including--

(i) His section 965(a) inclusion amounts (as defined in §1.965-1(f)(38)); and

(ii) His domestic pass-through owner shares (as defined in §1.965-1(f)(21)) of section 965(a) inclusion amounts with respect to deferred foreign income corporations (as defined in §1.965-1(f)(17)) of which he is a United States shareholder; plus

(2) All amounts which would be required to be included in his gross income under section 78 for the taxable year with respect to the amounts referred to in paragraph (b)(1)(i)(A)(1) of this section if the shareholder were a domestic corporation; over

(B) The sum of his section 965(c) deduction amount (as defined in §1.965-1(f)(42)) and his domestic pass-through owner shares of section 965(c) deduction amounts corresponding to the amounts referred to in paragraph (b)(1)(i)(A)(1)(ii) of this section for the taxable year, but not any other deductions or amounts.

* * * * *

(d) Applicability dates.  Paragraph (b)(1)(i) of this section applies beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, for the taxable year in which or with which such taxable year of the foreign corporations ends.

115

Par. 3.  Section 1.962-2 is amended by revising paragraph (a) and adding paragraph (d) to read as follows:

§1.962-2 Election of limitation of tax for individuals.

(a) Who may elect.  The election under section 962 may be made only by an individual (including a trust or estate) who is a United States shareholder (including an individual who is a United States shareholder because, by reason of section 958(b), he is considered to own stock of a foreign corporation owned (within the meaning of section 958(a)) by a domestic pass-through entity (as defined in §1.965-1(f)(19))).

* * * * *

(d) Applicability dates.  Paragraph (a) of this section applies beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, for the taxable year in which or with which such taxable year of the foreign corporations ends.

Par. 4.  Section 1.965-0 is added to read as follows:

§1.965-0 Outline of section 965 regulations.

This section lists the headings for §§1.965-1 through 1.965-9.

§1.965-1 Overview, general rules, and definitions.
(a) Overview.
(1) In general.
(2) Scope.
(b) Section 965(a) inclusion amounts.
(1) Inclusion of the pro rata share of the section 965(a) earnings amount.
(2) Reduction by the allocable share of the aggregate foreign E&P deficit.
(c) Section 965(c) deduction amounts.
(d) Treatment of specified foreign corporation as a controlled foreign corporation.
(e) Special rule for certain controlled domestic partnerships.
(1) In general.
(2) Definition of a controlled domestic partnership.
(f) Definitions.

116

ADMIN_03731

(1) 8 percent rate amount.
(2) 8 percent rate equivalent percentage.
(3) 15.5 percent rate amount.
(4) 15.5 percent rate equivalent percentage.
(5) Accounts payable.
(6) Accounts receivable.
(7) Accumulated post-1986 deferred foreign income.
(8) Aggregate foreign cash position.
(9) Aggregate foreign E&P deficit.
(10) Aggregate section 965(a) inclusion amount.
(11) Allocable share.
(12) Bona fide hedging transaction.
(13) Cash-equivalent asset.
(14) Cash-equivalent asset hedging transaction.
(15) Cash measurement dates.
(16) Cash position.
(i) General rule.
(ii) Fair market value of cash-equivalent assets.
(iii) Measurement of derivative financial instruments.
(iv) Translation of cash position amounts.
(17) Deferred foreign income corporation.
(i) In general.
(ii) Priority rule.
(18) Derivative financial instrument.
(19) Domestic pass-through entity.
(20) Domestic pass-through owner.
(21) Domestic pass-through owner share.
(22) E&P deficit foreign corporation.
(i) In general.
(ii) Determination of deficit in post-1986 earnings and profits.
(23) E&P measurement dates.
(24) Final cash measurement date.
(25) First cash measurement date.
(25) Inclusion year.
(26) Net accounts receivable.
(28) Pass-through entity.
(29) Post-1986 earnings and profits.
(i) General rule.
(ii) Foreign income taxes.
(iii) Deficits in earnings and profits.
(30) Pro rata share.
(31) Second cash measurement date.
(32) Section 958(a) stock.
(33) Section 958(a) U.S. shareholder.
(34) Section 958(a) U.S. shareholder inclusion year.

117

(35) Section 965 regulations.
(36) Section 965(a) earnings amount.
(37) Section 965(a) inclusion.
(38) Section 965(a) inclusion amount.
(39) Section 965(a) previously taxed earnings and profits.
(40) Section 965(b) previously taxed earnings and profits.
(41) Section 965(c) deduction.
(42) Section 965(c) deduction amount.
(43) Short-term obligation.
(44) Specified E&P deficit.
(45) Specified foreign corporation.
(i) General rule.
(ii) Special attribution rule.
(iii) Passive foreign investment companies.
(46) Spot rate.
(47) United States shareholder.
(g) Examples.

§1.965-2 Adjustments to earnings and profits and basis.
(a) Scope.
(b) Determination of and adjustments to earnings and profits in the last taxable year of a specified foreign corporation that begins before January 1, 2018, for purposes of applying sections 959 and 965.
(c) Adjustments to earnings and profits by reason of section 965(a).
(d) Adjustments to earnings and profits by reason of section 965(b).
(1) Adjustments to earnings and profits described in section 959(c)(2) and (c)(3) of deferred foreign income corporations.
(2) Adjustments to earnings and profits described in section 959(c)(3) of E&P deficit foreign corporations.
(i) Increase in earnings and profits by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit.
(A) In general.
(B) Reduction of a qualified deficit.
(ii) Determination of portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit taken into account.
(A) In general.
(B) Designation of portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit taken into account.
(e) Adjustments to basis by reason of section 965(a).
(1) General rule.
(2) Section 962 election.
(f) Adjustments to basis by reason of section 965(b).
(1) In general.
(2) Election to make adjustments to basis to account for the application of section 965(b).

118

ADMIN_03733

(i) In general.
(ii) Basis adjustments.
(A) Increase in basis with respect to a deferred foreign income corporation.
(B) Reduction in basis with respect to an E&P deficit foreign corporation.
(C) Section 962 election.
(iii) Rules regarding the election.
(A) Consistency requirement.
(B) Making of making election.
(1) Timing.
(i) In general.
(ii) Transition rule.
(2) Election statement.
(g) Gain reduction rule.
(1) Reduction in gain recognized under section 961(b)(2) by reason of distributions attributable to section 965 previously taxed earnings and profits in the inclusion year.
(i) In general.
(ii) Definition of section 965 previously taxed earnings and profits.
(2) Reduction in basis by an amount equal to the gain reduction amount.
(h) Rules of application for specified basis adjustments.
(1) Timing of basis adjustments.
(2) Netting of basis adjustments.
(3) Gain recognition for reduction in excess of basis.
(4) Adjustments with respect to each share.
(i) Section 958(a) stock.
(ii) Applicable property.
(5) Stock or property for which adjustments are made.
(i) In general.
(ii) Special rule for an interest in a foreign pass-through entity.
(i) Definitions.
(1) Applicable property.
(2) Foreign pass-through entity.
(3) Property.
(j) Examples.

§1.965-3 Section 965(c) deductions.
(a) Scope.
(b) Rules for disregarding certain assets for determining aggregate foreign cash position.
(1) Disregard of certain obligations between related specified foreign corporations.
(2) Disregard of other assets upon demonstration of double-counting.
(3) Examples.
(c) Determination of aggregate foreign cash position for a section 958(a) U.S. shareholder inclusion year.
(1) Single section 958(a) U.S. shareholder inclusion year.
(2) Multiple section 958(a) U.S. shareholder inclusion years.

ADMIN_03734

(i) Allocation to first section 958(a) U.S. shareholder inclusion year.
(ii) Allocation to succeeding section 958(a) U.S. shareholder inclusion years.
(3) Estimation of aggregate foreign cash position.
(4) Examples.
(d) Increase of income by section 965(c) deduction of an expatriated entity.
(1) In general.
(2) Definition of expatriated entity.
(3) Definition of surrogate foreign corporation.
(e) Section 962 election.
(1) In general.
(2) Example.
(f) Treatment of section 965(c) deduction under certain provisions of the Internal Revenue Code.
(1) Section 63(d).
(2) Sections 705, 1367, and 1368.
(i) Adjustments to basis
(ii) S corporation accumulated adjustments account.
(iii) Example.
(3) Section 1411.
(4) Section 4940.
(g) Domestic pass-through entities.

§1.965-4 Disregard of certain transactions.
(a) Scope.
(b) Transactions undertaken with a principal purpose of changing the amount of a section 965 element.
(1) General rule.
(2) Presumptions and exceptions for the application of the general rule.
(c) Disregard of certain changes in method of accounting and entity classification elections.
(1) Changes in method of accounting.
(2) Entity classification elections.
(d) Definition of a section 965 element.
(e) Rules for applying paragraphs (b) and (c) of this section.
(1) Determination of whether there is a change in the amount of a section 965 element.
(2) Treatment of domestic pass-through owners as United States shareholders.
(f) Disregard of certain transactions occurring between E&P measurement dates.
(1) Disregard of specified payments.
(2) Definition of specified payment.
(3) Definition of tentative E&P measurement date.
(g) Examples.

§1.965-5 Allowance of credit or deduction for foreign income taxes.
(a) Scope.
(b) Rules for foreign income taxes paid or accrued.

ADMIN_03735

(c) Rules for foreign income taxes treated as paid or accrued.
(1) Disallowed credit.
(i) In general.
(ii) Foreign income taxes deemed paid under section 960(a)(3) (as in effect on December 21, 2017).
(iii) Foreign income taxes deemed paid under section 960(b) (as applicable to taxable years of foreign corporations beginning after December 31, 2017, and to taxable years of United States persons in which or with which such taxable years of foreign corporations end).
(2) Disallowed deduction.
(3) Coordination with section 78.
(i) In general.
(ii) Domestic corporation that is a domestic pass-through owner.
(d) Applicable percentage.
(1) In general.
(2) Applicable percentage for domestic pass-through owners.

§1.965-6 Computation of foreign income taxes deemed paid and allocation and apportionment of deductions.
(a) Scope.
(b) Computation of foreign incomes taxes deemed paid.
(c) Section 902 fraction.
(1) In general.
(2) Dividend or inclusion in excess of post-1986 undistributed earnings.
(3) Treatment of adjustment under section 965(b)(4)(B).
(d) Allocation and apportionment of deductions.

§1.965-7 Elections and payment rules.
(a) Scope.
(b) Section 965(h) election.
(1) In general.
(i) Amount of installments.
(ii) Increased installments due to a deficiency or a timely filed or amended return.
(A) In general.
(B) Timing.
(C) Exception for negligence, intentional disregard, or fraud.
(iii) Due date of installments.
(A) In general.
(B) Extension for specified individuals.
(2) Manner of making election.
(i) Eligibility.
(ii) Timing.
(iii) Election statement.
(3) Acceleration of payment.
(i) Acceleration.

121

ADMIN_03736

(ii) Acceleration events.
(iii) Eligible section 965(h) transferee exception.
(A) In general.
(<u>1</u>) Requirement to have a covered acceleration event.
(<u>2</u>) Requirement to enter into a transfer agreement.
(B) Transfer agreement.
(<u>1</u>) Eligibility.
(<u>2</u>) Filing requirements.
(<u>i</u>) In general.
(<u>ii</u>) Transition rule.
(<u>3</u>) Signature requirement.
(<u>4</u>) Terms of agreement.
(<u>5</u>) Consolidated groups.
(C) Consent of Commissioner.
(<u>1</u>) In general.
(<u>2</u>) Material misrepresentations and omissions.
(D) Effect of assumption.
(<u>1</u>) In general.
(<u>2</u>) Eligible section 965(h) transferor liability.
(E) Qualifying consolidated group member transaction.
(<u>1</u>) Definition of qualifying consolidated group member transaction.
(<u>2</u>) Definition of qualified successor.
(<u>3</u>) Departure of multiple members of a consolidated group.
(c) Section 965(i) election.
(1) In general.
(2) Manner of making election.
(i) Eligibility.
(ii) Timing.
(iii) Election statement.
(3) Triggering events.
(i) In general.
(ii) Triggering events.
(iii) Partial transfers.
(iv) Eligible section 965(i) transferee exception.
(A) In general.
(<u>1</u>) Requirement to have a covered triggering event.
(<u>2</u>) Requirement to enter into a transfer agreement.
(B) Transfer agreement.
(<u>1</u>) Eligibility.
(<u>2</u>) Filing requirements.
(<u>i</u>) In general.
(<u>ii</u>) Transition rule.
(<u>3</u>) Signature requirement.
(<u>4</u>) Terms of agreement.
(C) Consent of Commissioner.

122

ADMIN_03737

(1) In general.
(2) Material misrepresentations and omissions.
(D) Effect of assumption.
(1) In general.
(2) Eligible section 965(i) transferor liability.
(v) Coordination with section 965(h) election.
(A) In general.
(B) Timing for election.
(C) Due date for installment.
(D) Limitation.
(1) In general.
(2) Manner of obtaining consent.
(i) In general.
(ii) Transition rule.
(3) Signature requirement.
(4) Terms of agreement.
(5) Consent of Commissioner.
(i) In general.
(ii) Material misrepresentations and omissions.
(4) Joint and several liability.
(5) Extension of limitation on collection.
(6) Annual reporting requirement.
(i) In general.
(ii) Failure to report.
(d) Section 965(m) election and special rule for real estate investment trusts.
(1) In general.
(2) Inclusion schedule for section 965(m) election.
(3) Manner of making election.
(i) Eligibility.
(ii) Timing.
(iii) Election statement.
(4) Coordination with section 965(h).
(5) Acceleration of inclusion.
(6) Treatment of section 965(a) inclusions of a real estate investment trust.
(e) Section 965(n) election.
(1) In general.
(i) General rule.
(ii) Applicable amount for section 965(n) election.
(iii) Scope of section 965(n) election.
(2) Manner of making election.
(i) Eligibility.
(ii) Timing.
(iii) Election statement.
(f) Election to use alternative method for calculating post-1986 earnings and profits.

123

ADMIN_03738

(1) Effect of election for specified foreign corporations that do not have a 52-53-week taxable year.
(2) Effect of election for specified foreign corporations that have a 52-53 week taxable year.
(3) Computation of post-1986 earnings and profits using alternative method.
(4) Definitions.
(i) 52-53-week taxable year.
(ii) Annualized earnings and profits amount.
(iii) Daily earnings amount.
(iv) Notional measurement date.
(5) Manner of making election.
(i) Eligibility.
(ii) Timing.
(iii) Election statement.
(6) Examples.
(g) Definitions.
(1) Deferred net tax liability.
(2) REIT section 965 amounts.
(3) Section 965(h) election.
(4) Section 965(h) net tax liability.
(5) Section 965(i) election.
(6) Section 965(i) net tax liability.
(7) Section 965(m) election.
(8) Section 965(n) election.
(9) Specified individual.
(10) Total net tax liability under section 965.
(i) General rule.
(ii) Net income tax.
(iii) Foreign tax credits.

§1.965-8 Affiliated groups (including consolidated groups).
(a) Scope.
(b) Reduction of E&P net surplus shareholder's pro rata share of the section 965(a) earnings amount of a deferred foreign income corporation by the allocable share of the applicable share of the aggregate unused E&P deficit.
(1) In general.
(2) Consolidated group as part of an affiliated group.
(c) Designation of portion of excess aggregate foreign E&P deficit taken into account.
(1) In general.
(2) Consolidated group as part of an affiliated group.
(d) Adjustments to earnings and profits and stock basis.
(1) Affiliated groups that are not consolidated groups.
(2) Consolidated groups.
(e) Treatment of a consolidated group as a single section 958(a) U.S. shareholder or a single person.

ADMIN_03739

(1) In general.
(2) Limitation.
(3) Determination of section 965(c) deduction amount.
(f) Definitions.
(1) Aggregate unused E&P deficit.
(i) In general.
(ii) Reduction with respect to E&P net deficit shareholders that are not wholly owned by the affiliated group.
(2) Allocable share.
(3) Applicable share.
(4) Consolidated group aggregate foreign cash position.
(5) E&P net deficit shareholder.
(6) E&P net surplus shareholder.
(7) Excess aggregate foreign E&P deficit.
(8) Group cash ratio.
(9) Group ownership percentage.
(g) Examples.

§1.965-9 Applicability dates.
(a) In general.
(b) Applicability dates for rules disregarding certain transactions.

Par. 5 Section 1.965-1 is added to read as follows:

§1.965-1 Overview, general rules, and definitions.

(a) Overview--(1) In general.  The section 965 regulations provide rules under section 965.  This section provides general rules and definitions under section 965.  Section 1.965-2 provides rules relating to adjustments to earnings and profits and basis to determine and account for the application of section 965 and a rule that limits the amount of gain recognized under section 961(b)(2) by reason of distributions attributable to section 965 previously taxed earnings and profits (as defined in §1.965-2(g)(1)(ii) in the inclusion year.  Section 1.965-3 provides rules regarding the determination of section 965(c) deductions.  Section 1.965-4 sets forth rules that disregard certain transactions for purposes of section 965.  Sections 1.965-5 and 1.965-6 provide rules with respect to foreign tax credits. Section 1.965-7 provides rules

125

ADMIN_03740

regarding elections and payments. Section 1.965-8 provides rules regarding affiliated groups, including consolidated groups. Section 1.965-9 provides dates of applicability. See also §§1.962-1 and 1.962-2 (providing rules regarding the application of section 962) and 1.986(c)-1 (providing rules regarding the application of section 986(c)).

(2) Scope. Paragraph (b) of this section provides the general rules concerning section 965(a) inclusion amounts. Paragraph (c) of this section provides the general rule concerning section 965(c) deduction amounts. Paragraph (d) of this section provides a rule for specified foreign corporations that are not controlled foreign corporations. Paragraph (e) of this section treats certain controlled domestic partnerships as a foreign partnership for purposes of section 965. Paragraph (f) of this section provides definitions applicable for the section 965 regulations and §§1.962-1, 1.962-2, and 1.986(c)-1. Paragraph (g) of this section contains examples illustrating the general rules and definitions set forth in this section.

(b) Section 965(a) inclusion amounts--(1) Inclusion of the pro rata share of the section 965(a) earnings amount. For an inclusion year of a deferred foreign income corporation, the subpart F income of the deferred foreign income corporation (as otherwise determined for the inclusion year under section 952 and §1.952-1) is increased by the section 965(a) earnings amount of the deferred foreign income corporation. See section 965(a). Accordingly, a section 958(a) U.S. shareholder with respect to a deferred foreign income corporation generally includes in gross income under section 951(a)(1) for the section 958(a) U.S. shareholder inclusion year its pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation, translated (if necessary) into U.S. dollars using the spot rate on December

126

ADMIN_03741

31, 2017, and subject to reduction under section 965(b), paragraph (b)(2) of this section, and §1.965-8(b). The amount of the section 958(a) U.S. shareholder's inclusion with respect to a deferred foreign income corporation as a result of section 965(a) and this paragraph (b)(1), as reduced under section 965(b), paragraph (b)(2) of this section, and §1.965-8(b), as applicable, is referred to as the <u>section 965(a) inclusion amount</u>. Neither the section 965(a) earnings amount nor the section 965(a) inclusion amount is subject to the rules or limitations in section 952 or limited by the accumulated earnings and profits of the deferred foreign income corporation on the date of the inclusion.

(2) <u>Reduction by the allocable share of the aggregate foreign E&P deficit</u>. For purposes of determining a section 958(a) U.S. shareholder's section 965(a) inclusion amount with respect to a deferred foreign income corporation, the U.S. dollar amount of the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017, is reduced by the deferred foreign income corporation's allocable share of the section 958(a) U.S. shareholder's aggregate foreign E&P deficit. <u>See</u> section 965(b). If the section 958(a) U.S. shareholder is a member of a consolidated group, under §1.965-8(e), all section 958(a) U.S. shareholders that are members of the consolidated group are treated as a single section 958(a) U.S. shareholder for purposes of this paragraph (b)(2).

(c) <u>Section 965(c) deduction amounts</u>. For a section 958(a) U.S. shareholder inclusion year, a section 958(a) U.S. shareholder is generally allowed a deduction in an amount equal to the section 965(c) deduction amount.

127

ADMIN_03742

(d) <u>Treatment of specified foreign corporation as a controlled foreign corporation</u>. A specified foreign corporation described in section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section that is not otherwise a controlled foreign corporation is treated as a controlled foreign corporation solely for purposes of paragraph (b) of this section and sections 951, 961, and §1.1411-10.  <u>See</u> 965(e)(2).

(e) <u>Special rule for certain controlled domestic partnerships</u>--(1) <u>In general</u>.  For purposes of the section 965 regulations, a controlled domestic partnership is treated as a foreign partnership for purposes of determining the section 958(a) U.S. shareholder of a specified foreign corporation and the section 958(a) stock of the specified foreign corporation owned by the section 958(a) U.S. shareholder if the following conditions are satisfied--

(i) Without regard to this paragraph (e), the controlled domestic partnership is a section 958(a) U.S. shareholder of the specified foreign corporation and thus owns section 958(a) stock of the specified foreign corporation (<u>tested section 958(a) stock</u>);

(ii) If the controlled domestic partnership (and all other controlled domestic partnerships in the chain of ownership of the specified foreign corporation) were treated as foreign--

(A) The specified foreign corporation would continue to be a specified foreign corporation; and

(B) At least one United States shareholder of the specified foreign corporation--

(<u>1</u>) Would be treated as a section 958(a) U.S. shareholder of the specified foreign corporation; and

128

ADMIN_03743

(2) Would be treated as owning (within the meaning of section 958(a)) tested section 958(a) stock of the specified foreign corporation through another foreign corporation that is a direct or indirect partner in the controlled domestic partnership.

(2) _Definition of a controlled domestic partnership._  For purposes of paragraph (e)(1) of this section, the term controlled domestic partnership means, with respect to a United States shareholder described in paragraph (e)(1)(ii)(B) of this section, a domestic partnership that is controlled by the United States shareholder and persons related to the United States shareholder.  For purposes of this paragraph (e)(2), control is determined based on all the facts and circumstances, except that a partnership will be deemed to be controlled by a United States shareholder and related persons if those persons, in the aggregate, own (directly or indirectly through one or more partnerships) more than 50 percent of the interests in the partnership capital or profits.  For purposes of this paragraph (e)(2), a related person is, with respect to a United States shareholder, a person that is related (within the meaning of section 267(b) or 707(b)(1)) to the United States shareholder.

(f) _Definitions._  This paragraph (f) provides definitions that apply for purposes of the section 965 regulations and §§1.962-1, 1.962-2, and 1.986(c)-1.  Unless otherwise indicated, all amounts are expressed as positive numbers.

(1) _8 percent rate amount._  The term 8 percent rate amount means, with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year, the excess, if any, of the section 958(a) U.S. shareholder's aggregate section 965(a) inclusion amount for the section 958(a) U.S. shareholder inclusion year over the

129

ADMIN_03744

amount of the section 958(a) U.S. shareholder's aggregate foreign cash position for the section 958(a) U.S. shareholder inclusion year as determined under §1.965-3(c).

(2) 8 percent rate equivalent percentage. The term 8 percent rate equivalent percentage means, with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year, the percentage that would result in the 8 percent rate amount being subject to an 8 percent rate of tax determined by only taking into account a deduction equal to such percentage of such amount and the highest rate of tax specified in section 11 for the section 958(a) U.S. shareholder inclusion year. In the case of a section 958(a) U.S. shareholder inclusion year of a section 958(a) U.S. shareholder to which section 15 applies, the highest rate of tax under section 11 before the effective date of the change in rates and the highest rate of tax under section 11 after the effective date of such change will each be taken into account under the preceding sentence in the same proportions as the portion of the section 958(a) U.S. shareholder inclusion year that is before and after such effective date, respectively.

(3) 15.5 percent rate amount. The term 15.5 percent rate amount means, with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year, the amount of the section 958(a) U.S. shareholder's aggregate foreign cash position for the section 958(a) U.S. shareholder inclusion year as determined under §1.965-3(c) to the extent it does not exceed the section 958(a) U.S. shareholder's aggregate section 965(a) inclusion amount for the section 958(a) U.S. shareholder inclusion year.

(4) 15.5 percent rate equivalent percentage. The term 15.5 percent rate equivalent percentage, with respect to a section 958(a) U.S. shareholder and a section

130

ADMIN_03745

958(a) U.S. shareholder inclusion year, has the meaning provided for the term "8 percent rate equivalent percentage" applied by substituting "15.5 percent rate amount" for "8 percent rate amount" and "15.5 percent rate of tax" for "8 percent rate of tax."

(5) Accounts payable. The term accounts payable means payables arising from the purchase of property described in section 1221(a)(1) or section 1221(a)(8) or the receipt of services from vendors or suppliers, provided the payables have a term upon issuance of less than one year.

(6) Accounts receivable. The term accounts receivable means receivables described in section 1221(a)(4) that have a term upon issuance of less than one year.

(7) Accumulated post-1986 deferred foreign income--(i) In general. The term accumulated post-1986 deferred foreign income means, with respect to a specified foreign corporation, the post-1986 earnings and profits of the specified foreign corporation except to the extent such earnings and profits--

(A) Are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1;

(B) If distributed, would, in the case of a controlled foreign corporation, be excluded from the gross income of a United States shareholder under section 959; or

(C) If distributed, would, in the case of a controlled foreign corporation that has shareholders that are not United States shareholders on an E&P measurement date, be excluded from the gross income of such shareholders under section 959 if such shareholders were United States shareholders, determined by applying the principles of Revenue Ruling 82-16, 1982-1 C.B. 106.

131

(ii) <u>Earnings and profits attributable to subpart F income in the same taxable year as an E&P measurement date</u>. For purposes of determining the accumulated post-1986 deferred foreign income of a specified foreign corporation as of an E&P measurement date, earnings and profits of the specified foreign corporation that are or would be, applying the principles of Revenue Ruling 82-16, 1982-1 C.B. 106, described in section 959(c)(2) by reason of subpart F income (as defined in section 952 without regard to section 965(a)) are described in section 965(d)(2)(B) and paragraph (f)(7)(i)(B) or (f)(7)(i)(C) of this section only to the extent that such income has been accrued by the specified foreign corporation as of the E&P measurement date. For rules regarding the interaction of sections 951, 956, 959, and 965 generally, see §1.965-2(b).

(8) <u>Aggregate foreign cash position</u>--(i) <u>In general</u>. The term <u>aggregate foreign cash position</u> means, with respect to a section 958(a) U.S. shareholder that is not a member of a consolidated group, the greater of--

(A) The aggregate of the section 958(a) U.S. shareholder's pro rata share of the cash position of each specified foreign corporation determined as of the final cash measurement date of the specified foreign corporation.

(B) One half of the sum of--

(<u>1</u>) The aggregate described in paragraph (f)(8)(i)(A) of this section determined as of the second cash measurement date of each specified foreign corporation, plus

(<u>2</u>) The aggregate described in paragraph (f)(8)(i)(A) of this section determined as of the first cash measurement date of each specified foreign corporation.

(ii) <u>Other rules</u>. For rules for determining the aggregate foreign cash position for a section 958(a) U.S. shareholder inclusion year of the section 958(a) U.S. shareholder,

132

ADMIN_03747

see §1.965-3(c).  For the rule for determining the aggregate foreign cash position of a section 958(a) U.S. shareholder that is a member of a consolidated group, see §1.965-8(e)(3).  For rules disregarding certain assets for purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder, see §1.965-3(b).

(9) Aggregate foreign E&P deficit.  The term aggregate foreign E&P deficit means, with respect to a section 958(a) U.S. shareholder, the lesser of--

(i) The aggregate of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of each E&P deficit foreign corporation, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017, or

(ii) The aggregate of the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of each deferred foreign income corporation, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017.

(10) Aggregate section 965(a) inclusion amount.  The term aggregate section 965(a) inclusion amount means, with respect to a section 958(a) U.S. shareholder, the sum of all of the section 958(a) U.S. shareholder's section 965(a) inclusion amounts.

(11) Allocable share.  The term allocable share means, with respect to a deferred foreign income corporation and an aggregate foreign E&P deficit of a section 958(a) U.S. shareholder, the product of the aggregate foreign E&P deficit and the ratio determined by dividing--

(i) The section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017, by

133

(ii) The amount described in paragraph (f)(9)(ii) of this section with respect to the section 958(a) U.S. shareholder.

(12) Bona fide hedging transaction. The term bona fide hedging transaction means a hedging transaction that meets (or that would meet if the specified foreign corporation were a controlled foreign corporation) the requirements of a bona fide hedging transaction described in §1.954-2(a)(4)(ii), except that in the case of a specified foreign corporation that is not a controlled foreign corporation, the identification requirements of §1.954-2(a)(4)(ii)(B) do not apply.

(13) Cash-equivalent asset. The term cash-equivalent asset means any of the following assets--

(i) Personal property which is of a type that is actively traded and for which there is an established financial market;

(ii) Commercial paper, certificates of deposit, the securities of the Federal government and of any State or foreign government;

(iii) Any foreign currency;

(iv) A short-term obligation; or

(v) Derivative financial instruments, other than bona fide hedging transactions.

(14) Cash-equivalent asset hedging transaction. The term cash-equivalent asset hedging transaction means a bona fide hedging transaction identified on a specified foreign corporation's books and records as hedging a cash-equivalent asset.

(15) Cash measurement dates. The term cash measurement dates means, with respect to a specified foreign corporation, the first cash measurement date, the second

134

cash measurement date, and the final cash measurement date, collectively, and each a cash measurement date.

(16) Cash position--(i) General rule.  The term cash position means, with respect to a specified foreign corporation, the sum of--

(A) Cash held by the corporation;

(B) The net accounts receivable of the corporation; and

(C) The fair market value of the cash-equivalent assets held by the corporation.

(ii) Fair market value of cash-equivalent assets.  For purposes of determining the fair market value of a cash-equivalent asset of a specified foreign corporation, the value of the cash-equivalent asset must be adjusted by the fair market value of any cash-equivalent asset hedging transaction with respect to the cash-equivalent asset, but only to the extent that the cash-equivalent asset hedging transaction does not reduce the fair market value of the cash-equivalent asset below zero.

(iii) Measurement of derivative financial instruments.  The amount of derivative financial instruments taken into account in determining the cash position of a specified foreign corporation is the aggregate fair market value of its derivative financial instruments that constitute cash-equivalent assets, provided such amount is not less than zero.

(iv) Translation of cash position amounts.  The cash position of a specified foreign corporation with respect to a cash measurement date must be expressed in U.S. dollars.  For this purpose, the amounts described in paragraph (f)(16)(i) must be translated (if necessary) into U.S. dollars using the spot rate on the relevant cash measurement date.

135

ADMIN_03750

(17) <u>Deferred foreign income corporation</u>—(i) <u>In general</u>. The term <u>deferred foreign income corporation</u> means a specified foreign corporation that has accumulated post-1986 deferred foreign income greater than zero as of an E&P measurement date.

(ii) <u>Priority rule</u>. If a specified foreign corporation satisfies the definition of a deferred foreign income corporation under section 965(d)(1) and paragraph (f)(17)(i) of this section, it is classified solely as a deferred foreign income corporation and not also as an E&P deficit foreign corporation even if it otherwise satisfies the requirements of section 965(b)(3)(B) and paragraph (f)(22) of this section.

(18) <u>Derivative financial instrument</u>. The term <u>derivative financial instrument</u> includes a financial instrument that is one of the following--

(i) A notional principal contract,

(ii) An option contract,

(iii) A forward contract,

(iv) A futures contract,

(v) A short position in securities or commodities, or

(vi) Any financial instrument similar to one described in paragraphs (f)(18)(i) through (v) of this section.

(19) <u>Domestic pass-through entity</u>. The term <u>domestic pass-through entity</u> means a pass-through entity that is a United States person (as defined in section 7701(a)(30)).

(20) <u>Domestic pass-through owner</u>. The term <u>domestic pass-through owner</u> means, with respect to a domestic pass-through entity, a United States person (as defined in section 7701(a)(30)) that is a partner, shareholder, beneficiary, grantor, or

136

ADMIN_03751

owner, as the case may be, in the domestic pass-through entity. Notwithstanding the preceding sentence, the term does not include a partner, shareholder, beneficiary, grantor, or owner of the domestic pass-through entity that is itself a domestic pass-through entity but does include any other United States person that is an indirect partner, shareholder, beneficiary, grantor, or owner of the domestic pass-through entity through one or more other pass-through entities.

(21) Domestic pass-through owner share. The term domestic pass-through owner share means, with respect to a domestic pass-through owner and a domestic pass-through entity, the domestic pass-through owner's share of the aggregate section 965(a) inclusion amount and the section 965(c) deduction amount, as applicable, of the domestic pass-through entity, including the domestic pass-through owner's share of the aggregate section 965(a) inclusion amount and section 965(c) deduction amount, as applicable, of a domestic pass-through entity owned indirectly by the domestic pass-through owner through one or more other pass-through entities.

(22) E&P deficit foreign corporation--(i) In general. The term E&P deficit foreign corporation means, with respect to a section 958(a) U.S. shareholder, a specified foreign corporation, other than a deferred foreign income corporation, if, as of November 2, 2017—

(A) The specified foreign corporation had a deficit in post-1986 earnings and profits,

(B) The corporation was a specified foreign corporation, and

(C) The shareholder was a United States shareholder of the corporation.

137

ADMIN_03752

(ii) <u>Determination of deficit in post-1986 earnings and profits</u>.  In the case of a specified foreign corporation that has post-1986 earnings and profits that include earnings and profits described in section 959(c)(1) or 959(c)(2) (or both) and a deficit in earnings and profits (including hovering deficits, as defined in §1.367(b)-7(d)(2)(i)), the specified foreign corporation has a deficit in post-1986 earnings and profits described in paragraph (f)(22)(i)(A) of this section only to the extent the deficit in post-1986 earnings and profits exceeds the aggregate of its post-1986 earnings and profits described in section 959(c)(1) and 959(c)(2).

(23) <u>E&P measurement dates</u>.  The term <u>E&P measurement dates</u> means November 2, 2017, and December 31, 2017, collectively, and each an <u>E&P measurement date</u>.

(24) <u>Final cash measurement date</u>.  The term <u>final cash measurement date</u> means, with respect to a specified foreign corporation, the close of the last taxable year of the specified foreign corporation that begins before January 1, 2018, and ends on or after November 2, 2017, if any.

(25) <u>First cash measurement date</u>.  The term <u>first cash measurement date</u> means, with respect to a specified foreign corporation, the close of the last taxable year of the specified foreign corporation that ends after November 1, 2015, and before November 2, 2016, if any.

(26) <u>Inclusion year</u>.  The term <u>inclusion year</u> means, with respect to a deferred foreign income corporation, the last taxable year of the deferred foreign income corporation that begins before January 1, 2018.

138

ADMIN_03753

(27) Net accounts receivable.  The term net accounts receivable means, with respect to a specified foreign corporation, the excess (if any) of--

(i) The corporation's accounts receivable, over

(ii) The corporation's accounts payable (determined consistent with the rules of section 461).

(28) Pass-through entity.  The term pass-through entity means a partnership, S corporation, or any other person (whether domestic or foreign) other than a corporation to the extent that the income or deductions of the person are included in the income of one or more direct or indirect owners or beneficiaries of the person.  For example, if a domestic trust is subject to federal income tax on a portion of its section 965(a) inclusion amount and its domestic pass-through owners are subject to tax on the remaining portion, the domestic trust is treated as a domestic pass-through entity with respect to such remaining portion.

(29) Post-1986 earnings and profits--(i) General rule.  The term post-1986 earnings and profits means, with respect to a specified foreign corporation and an E&P measurement date, the earnings and profits (including earnings and profits described in section 959(c)(1) and 959(c)(2)) of the specified foreign corporation (computed in accordance with sections 964(a) and 986, subject to §1.965-4(f), and by taking into account only periods when the foreign corporation was a specified foreign corporation) accumulated in taxable years beginning after December 31, 1986, and determined--

(A) As of the E&P measurement date, except as provided in paragraph (f)(29)(ii) of this section, and

139

(B) Without diminution by reason of dividends distributed during the last taxable year of the foreign corporation that begins before January 1, 2018, other than dividends distributed to another specified foreign corporation to the extent the dividends increase the post-1986 earnings and profits of the distributee specified foreign corporation.

(ii) Foreign income taxes.  For purposes of determining a specified foreign corporation's post-1986 earnings and profits as of the E&P measurement date on November 2, 2017, in the case in which foreign income taxes (as defined in section 901(m)(5)) of the specified foreign corporation accrue after November 2, 2017, but on or before December 31, 2017, and during the specified foreign corporation's U.S. taxable year that includes November 2, 2017, the specified foreign corporation's post-1986 earnings and profits as of November 2, 2017, are reduced by the applicable portion of such foreign income taxes.  For purposes of the preceding sentence, the applicable portion of the foreign income taxes is the amount of the taxes that are attributable to the portion of the taxable income (as determined under foreign law) that accrues on or before November 2, 2017.

(iii) Deficits in earnings and profits.  Any deficit related to post-1986 earnings and profits, including a hovering deficit (as defined in §1.367(b)-7(d)(2)(i)), of a specified foreign corporation is taken into account for purposes of determining the post-1986 earnings and profits (including a deficit) of the specified foreign corporation.

(30) Pro rata share.  The term pro rata share means, with respect to a section 958(a) U.S. shareholder of a specified foreign corporation, a deferred foreign income corporation, or an E&P deficit foreign corporation, as applicable--

140

ADMIN_03755

(i) With respect to the section 965(a) earnings amount of a deferred foreign income corporation, the portion of the section 965(a) earnings amount that would be treated as distributed to the section 958(a) U.S. shareholder under section 951(a)(2)(A) and §1.951-1(e), determined as of the last day of the inclusion year of the deferred foreign income corporation;

(ii) With respect to the specified E&P deficit of an E&P deficit foreign corporation, the portion of the specified E&P deficit allocated to the section 958(a) U.S. shareholder by allocating the specified E&P deficit among the shareholders of the corporation's common stock and in proportion to the value of the common stock held by the shareholders, determined as of the last day of the last taxable year of the E&P deficit foreign corporation that begins before January 1, 2018; and

(iii) With respect to the cash position of a specified foreign corporation on a cash measurement date, the portion of the cash position that would be treated as distributed to the section 958(a) U.S. shareholder under section 951(a)(2)(A) and §1.951-1(e) if the cash position were subpart F income, determined as of the close of the cash measurement date and without regard to whether the section 958(a) U.S. shareholder is a section 958(a) U.S. shareholder of the specified foreign corporation as of any other cash measurement date of the specified foreign corporation, including the final cash measurement date of the specified foreign corporation.

(31) Second cash measurement date. The term second cash measurement date means, with respect to a specified foreign corporation, the close of the last taxable year of the specified foreign corporation that ends after November 1, 2016, and before November 2, 2017, if any.

141

ADMIN_03756

(32) Section 958(a) stock.  The term section 958(a) stock means, with respect to a specified foreign corporation, a deferred foreign income corporation, or an E&P deficit foreign corporation, as applicable, stock of the corporation owned (directly or indirectly) by a United States shareholder within the meaning of section 958(a).

(33) Section 958(a) U.S. shareholder.  The term section 958(a) U.S. shareholder means, with respect to a specified foreign corporation, a deferred foreign income corporation, or an E&P deficit foreign corporation, as applicable, a United States shareholder of such corporation that owns section 958(a) stock of the corporation.

(34) Section 958(a) U.S. shareholder inclusion year.  The term section 958(a) U.S. shareholder inclusion year means the taxable year of a section 958(a) U.S. shareholder in which or with which the inclusion year of a deferred foreign income corporation ends.

(35) Section 965 regulations.  The term section 965 regulations means the regulations under §§1.965-1 through 1.965-9, collectively.

(36) Section 965(a) earnings amount.  The term section 965(a) earnings amount means, with respect to a deferred foreign income corporation, the greater of the accumulated post-1986 deferred foreign income of the deferred foreign income corporation as of the E&P measurement date on November 2, 2017, or the accumulated post-1986 deferred foreign income of the deferred foreign income corporation as of the E&P measurement date on December 31, 2017, determined in each case in the functional currency of the specified foreign corporation.  If the functional currency of a specified foreign corporation changes between the two E&P measurement dates, the comparison must be made in the functional currency of the specified foreign corporation

142

as of December 31, 2017, by translating the specified foreign corporation's accumulated post-1986 deferred foreign income as of November 2, 2017, into the new functional currency using the spot rate on November 2, 2017.

(37) Section 965(a) inclusion.  The term section 965(a) inclusion means, with respect to a person and a deferred foreign income corporation, an amount included in income by the person by reason of section 965 with respect to the deferred foreign income corporation, whether because the person is a section 958(a) U.S. shareholder of the deferred foreign income corporation with a section 965(a) inclusion amount with respect to the deferred foreign income corporation or because the person is a domestic pass-through owner with respect to a domestic pass-through entity that is a section 958(a) U.S. shareholder of the deferred foreign income corporation and the person includes in income its domestic pass-through owner share of the section 965(a) inclusion amount of the domestic pass-through entity with respect to the deferred foreign income corporation.

(38) Section 965(a) inclusion amount.  The term section 965(a) inclusion amount has the meaning provided in paragraph (b)(1) of this section.

(39) Section 965(a) previously taxed earnings and profits.  The term section 965(a) previously taxed earnings and profits has the meaning provided in §1.965-2(c).

(40) Section 965(b) previously taxed earnings and profits.  The term section 965(b) previously taxed earnings and profits has the meaning provided in §1.965-2(d).

(41) Section 965(c) deduction.  The term section 965(c) deduction means, with respect to a person, an amount allowed as a deduction to the person by reason of section 965(c), whether because the person is a section 958(a) U.S. shareholder with a

143

ADMIN_03758

section 965(c) deduction amount or because the person is a domestic pass-through owner with respect to a domestic pass-through entity that is a section 958(a) U.S. shareholder and the person takes into account its domestic pass-through owner share of the section 965(c) deduction amount of the domestic pass-through entity.

(42) Section 965(c) deduction amount. The term section 965(c) deduction amount means an amount equal to the sum of--

(i) A section 958(a) U.S. shareholder's 8 percent rate equivalent percentage of the section 958(a) U.S. shareholder's 8 percent rate amount for the section 958(a) U.S. shareholder inclusion year, plus

(ii) The section 958(a) U.S. shareholder's 15.5 percent rate equivalent percentage of the section 958(a) U.S. shareholder's 15.5 percent rate amount for the section 958(a) U.S. shareholder inclusion year.

(43) Short-term obligation. The term short-term obligation means any obligation with a term upon issuance that is less than one year and any loan that must be repaid at the demand of the lender (or that must be repaid within one year of such demand), but does not include any accounts receivable.

(44) Specified E&P deficit. The term specified E&P deficit means, with respect to an E&P deficit foreign corporation, the amount of the deficit described in paragraph (f)(22)(i)(A) of this section.

(45) Specified foreign corporation--(i) General rule. Except as provided in paragraph (f)(45)(iii) of this section, the term specified foreign corporation means—

(A) A controlled foreign corporation, or

144

ADMIN_03759

(B) A foreign corporation of which one or more domestic corporations is a United States shareholder.

(ii) Special attribution rule.  Solely for purposes of determining whether a foreign corporation is a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section, stock owned, directly or indirectly, by or for a partner (tested partner) will not be considered as being owned by a partnership under sections 958(b) and 318(a)(3)(A) and §1.958-2(d)(1)(i) if the tested partner owns less than five percent of the interests in the partnership's capital and profits.  For purposes of the preceding sentence, an interest in the partnership owned by another partner will be considered as being owned by the tested partner under the principles of sections 958(b) and 318, as modified by this paragraph (f)(45)(ii), as if the interest in the partnership were stock.

(iii) Passive foreign investment companies.  A foreign corporation that is a passive foreign investment company (as defined in section 1297) with respect to a United States shareholder and that is not a controlled foreign corporation is not a specified foreign corporation with respect to the United States shareholder.

(46) Spot rate.  The term spot rate has the meaning provided in §1.988-1(d).

(47) United States shareholder.  The term United States shareholder has the meaning provided in section 951(b).

(g) Examples.  The following examples illustrate the definitions and general rules set forth in this section.

Example 1.  Definition of specified foreign corporation.  (i) Facts.  A, an individual, owns 100% of the stock of a domestic corporation, DC, and 1% of the interests in a partnership, PS.  A United States citizen, USI, owns 10% of the interests

145

in PS and 10% by vote and value of the stock of a foreign corporation, FC. The remaining 90% by vote and value of the stock of FC is owned by non-United States persons that are unrelated to A, USI, DC, and PS.

(ii) Analysis. (A) Absent the application of sections 958(b), 318(a)(3)(A), and 318(a)(3)(C), and §1.958-2(d)(1)(i) and (iii), FC would not be a specified foreign corporation, because FC is not a controlled foreign corporation and there would be no domestic corporation that is a United States shareholder of FC. However, under sections 958(b) and 318(a)(3)(A) and §1.958-2(d)(1)(i), absent the special attribution rule in paragraph (f)(45)(ii) of this section, PS would be treated as owning 100% of the stock of DC and 10% of the stock of FC. As a result, under sections 958(b), 318(a)(5)(A), and 318(a)(3)(C), and §1.958-2(f)(1)(i) and (d)(1)(iii), DC would be treated as owning the stock of FC treated as owned by PS, and thus DC would be a United States shareholder with respect to FC, causing FC to be a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section. The results would the same whether A or PS or both are domestic or foreign persons.

(B) Under the special attribution rule in paragraph (f)(45)(ii) of this section, solely for purposes of determining whether a foreign corporation is a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section, the stock of DC owned by A is not considered as being owned by PS under sections 958(b) and 318(a)(3)(A) and §1.958-2(d)(1)(i), because A owns less than 5% of the interests in PS's capital and profits. Accordingly, FC is not a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section.

Example 2. Definition of specified foreign corporation. (i) Facts. The facts are the same as in paragraph (i) of Example 1 of this paragraph (g), except that A is a corporation wholly owned by B, and B directly owns 4% of the interests in PS.

(ii) Analysis. Applying the principles of sections 958(b) and 318, as modified by paragraph (f)(45)(ii) of this section, as if the interest in PS were stock, A is treated as owning the interests in PS owned by B (in addition to the 1% interest in PS that A owns directly), and thus A is not treated as owning less than 5% of the interests in PS's capital and profits. Accordingly, the special attribution rule in paragraph (f)(45)(ii) of this section does not apply, and PS is treated as owning A's stock of DC for purposes of determining whether FC is a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section. Accordingly, under the analysis described in paragraph (ii)(A) of Example 1 of this paragraph (g), FC is a specified foreign corporation within the meaning of section 965(e)(1)(B) and paragraph (f)(45)(i)(B) of this section.

Example 3. Determination of accumulated post-1986 deferred foreign income. (i) Facts. USP, a domestic corporation, and FP, a foreign corporation unrelated to USP, have owned 70% and 30% respectively, by vote and value, of the only class of stock of FS, a foreign corporation, from January 1, 2016, until December 31, 2017. USP and FS

146

ADMIN_03761

both have a calendar year taxable year. FS had no income until its taxable year ending December 31, 2016, in which it had 100u of income, all of which constituted subpart F income, and USP included 70u in income with respect to FS under section 951(a)(1) for such year. FS earned no income in 2017. Therefore, FS's post-1986 earnings and profits are 100u as of both E&P measurement dates.

(ii) <u>Analysis</u>. Because USP included 70u in income with respect to FS under section 951(a)(1), 70u of such post-1986 earnings and profits would, if distributed, be excluded from the gross income of USP under section 959. Thus, FS's accumulated post-1986 deferred foreign income would be reduced by 70u pursuant to section 965(d)(2)(B) and paragraph (f)(7)(i)(B) of this section. Furthermore, under paragraph (f)(7)(i)(C) of this section, the accumulated post-1986 deferred foreign income of FS is reduced by amounts that would be excluded from the gross income of FP if FP were a United States shareholder, consistent with the principles of Revenue Ruling 82-16. Accordingly, FS's accumulated post-1986 deferred foreign income is reduced by the remaining 30u of the 100u of post-1986 earnings and profits to which USP's 70u of section 951(a)(1) income inclusions were attributable. As a result, FS's accumulated post-1986 deferred foreign income is 0u (100u minus 70u minus 30u).

<u>Example 4</u>. <u>Determination of status as a deferred foreign income corporation or an E&P deficit foreign corporation; specified foreign corporation is solely a deferred foreign income corporation</u>. (i) <u>Facts</u>. USP, a domestic corporation, owns all of the stock of FS, a foreign corporation. As of November 2, 2017, FS has a deficit in post-1986 earnings and profits of 150u. As of December 31, 2017, FS has 200u of post-1986 earnings and profits. FS does not have earnings and profits that are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1, or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder.

(ii) <u>Analysis</u>. FS's accumulated post-1986 deferred foreign income is equal to its post-1986 earnings and profits because no adjustment to post-1986 earnings and profits is made under section 965(d)(2) or §1.965-1(f)(7). Under paragraph (f)(17)(i) of this section, FS is a deferred foreign income corporation because FS has accumulated post-1986 deferred foreign income greater than zero as of the E&P measurement date on December 31, 2017. In addition, under paragraph (f)(17)(ii) of this section, because FS is a deferred foreign income corporation, FS is not also an E&P deficit foreign corporation, notwithstanding that FS has a deficit in post-1986 earnings and profits as of the E&P measurement date on November 2, 2017.

<u>Example 5</u>. <u>Determination of status as a deferred foreign income corporation or an E&P deficit foreign corporation; specified foreign corporation is neither a deferred foreign income corporation nor an E&P deficit foreign corporation</u>. (i) <u>Facts</u>. USP, a domestic corporation, owns all of the stock of FS, a foreign corporation. As of both November 2, 2017, and December 31, 2017, FS has 100u of earnings and profits

147

ADMIN_03762

described in section 959(c)(2) and a deficit of 90u in earnings and profits described in section 959(c)(3), all of which were accumulated in taxable years beginning after December 31, 1986, while FS was a specified foreign corporation. Accordingly, as of both November 2, 2017, and December 31, 2017, FS has 10u of post-1986 earnings and profits.

(ii) Analysis. (A) Determination of status as a deferred foreign income corporation. Under paragraph (f)(17) of this section, for purposes of determining whether FS is a deferred foreign income corporation, a determination must be made whether FS has accumulated post-1986 deferred foreign income greater than zero as of either the E&P measurement date on November 2, 2017, or the E&P measurement date on December 31, 2017. Under section 965(d)(2) and paragraph (f)(7) of this section, FS's accumulated post-1986 deferred foreign income is its post-1986 earnings and profits, except to the extent such earnings and profits are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1, or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder. Disregarding FS's 100u of post-1986 earnings and profits described in paragraph (f)(7)(i)(B) of this section, FS has a 90u deficit in accumulated post-1986 deferred foreign income as of both E&P measurement dates. Accordingly, FS does not have accumulated post-1986 deferred foreign income greater than zero as of either E&P measurement date and therefore FS is not a deferred foreign income corporation.

(B) Determination of status as an E&P deficit foreign corporation. Under paragraph (f)(22)(i) of this section, for purposes of determining whether FS is an E&P deficit foreign corporation, a determination must be made whether FS has a deficit in post-1986 earnings and profits as of the E&P measurement date on November 2, 2017. Under paragraph (f)(22)(ii) of this section, because the deficit in the earnings and profits of FS described in section 959(c)(3) of 90u does not exceed the earnings and profits of FS described in section 959(c)(2) of 100u, FS does not have a deficit in post-1986 earnings and profits as of the E&P measurement date on November 2, 2017, and therefore FS is not an E&P deficit foreign corporation. Accordingly, FS is neither a deferred foreign income corporation nor an E&P deficit foreign corporation.

Example 6. Application of currency translation rules. (i) Facts. As of November 2, 2017, and December 31, 2017, USP, a domestic corporation, owns all of the stock of CFC1, an E&P deficit foreign corporation with the "u" as its functional currency; CFC2, an E&P deficit foreign corporation with the "v" as its functional currency; CFC3, a deferred foreign income corporation with the "y" as its functional currency; and CFC4, a deferred foreign income corporation with the "z" as its functional currency. USP, CFC1, CFC2, CFC3, and CFC4 each have a calendar year taxable year. As of December 31, 2017, 1u=$1, .75v=$1, .50y=$1, and .25z=$1. CFC1 has a specified E&P deficit of 100u, CFC2 has a specified E&P deficit of 120v, CFC3 has a section 965(a) earnings amount of 50y, and CFC4 has a section 965(a) earnings amount of 75z.

148

(ii) Analysis. (A) Under paragraph (f)(38) of this section, for purposes of determining USP's section 965(a) inclusion amounts with respect to CFC3 and CFC4, the section 965(a) earnings amount of each of CFC3 and CFC4 is translated into U.S. dollars at the spot rate on December 31, 2017, which equals $100 (50y at .50y=$1) and $300 (75z at .25z=$1), respectively. Furthermore, USP's pro rata share of the section 965(a) earnings amounts, as translated, is $100 and $300, respectively, or 100% of each section 965(a) earnings amount.

(B) Under paragraph (f)(9) of this section, for purposes of determining USP's aggregate foreign E&P deficit, the specified E&P deficit of each of CFC1 and CFC2 is translated into U.S. dollars at the spot rate on December 31, 2017, which equals $100 (100u at 1u=$1) and $160 (120v at .75v=$1), respectively. Furthermore USP's pro rata share of each specified E&P deficit, as translated, is $100 and $160, respectively, or 100% of each specified E&P deficit. Therefore, USP's aggregate foreign E&P deficit is $260.

(C) Under section 965(b)(1) and paragraph (b)(2) of this section, for purposes of determining USP's section 965(a) inclusion amount with respect to each of CFC3 and CFC4, the U.S. dollar amount of USP's pro rata share of the section 965(a) earnings amount of each of CFC3 and CFC4 is reduced by each of CFC3 and CFC4's allocable share of USP's aggregate foreign E&P deficit. Under section 965(b)(2) and paragraph (f)(11) of this section, CFC3's allocable share of USP's aggregate foreign E&P deficit of $260 is $65 ($260 x ($100/$400)) and CFC4's allocable share of USP's aggregate foreign E&P deficit is $195 ($260 x ($300/400)). After reduction under section 965(b)(1) and paragraph (b)(2) of this section, the section 965(a) inclusion amount of USP with respect to CFC3 is $35 ($100-$65) and the section 965(a) inclusion amount of USP with respect to CFC4 is $105 ($300-$195). Under §1.965-2(c), the section 965(a) previously taxed earnings and profits of each of CFC3 and CFC4, translated into the respective functional currencies of CFC3 and CFC4 at the spot rate on December 31, 2017, are 17.5y ($35 at .50y=$1) and 26.25z ($105 at .25z=$1), respectively. Under §1.965-6(b), for purposes of applying section 960(a)(1), the amounts treated as a dividend paid by each of CFC3 and CFC4, translated into the respective functional currencies of CFC3 and CFC4 at the spot rate on December 31, 2017, are 17.5y ($35 at .50y=$1) and 26.25z ($105 at .25z=$1).

(D) For purposes of determining the section 965(b) previously taxed earnings and profits of each of CFC3 and CFC4 under section 965(b)(4)(A) and §1.965-2(d)(1) as a result of the reduction to USP's section 965(a) inclusion amounts with respect to CFC3 and CFC4, the amount of the aggregate foreign E&P deficit of USP allocated to each of CFC3 and CFC4 under section 965(b)(2) and paragraph (f)(11) of this section, translated into the respective functional currencies of CFC3 and CFC4 at the spot rate on December 31, 2017, is 32.5y ($65 at .50y=$1) and 48.75z ($195 at .25z=$1), respectively.

Example 7. Determination of cash measurement dates and pro rata shares of cash positions. (i) Facts. Except as otherwise provided, for all relevant periods, USP, a

149

ADMIN_03764

domestic corporation, has owned directly at least 10% of the stock of CFC1, CFC2, CFC3, and CFC4, each a foreign corporation. CFC1 and CFC2 have calendar year taxable years. CFC3 and CFC4 have taxable years that end on November 30. No entity has a short taxable year, except as a result of the transactions described below.

(A) USP transferred all of its stock of CFC2 to an unrelated person on June 30, 2016, at which point USP ceased to be a United States shareholder with respect to CFC2.

(B) CFC4 dissolved on December 30, 2010, and, as a result, its final taxable year ended on December 30, 2010.

(ii) _Analysis_. Each of CFC1, CFC2, CFC3, and CFC4 is a specified foreign corporation with respect to USP, subject to the sale of CFC2 on June 30, 2016, and the dissolution of CFC4 on December 30, 2010. Under the definition of aggregate foreign cash position in paragraph (f)(8)(i) of this section, the definition of pro rata share of a cash position in paragraph (f)(30)(iii) of this section, and the definitions of the final cash measurement date, second cash measurement date, and first cash measurement date in paragraphs (f)(24), (25), and (31) of this section, the cash measurement dates of the specified foreign corporations to be taken into account by USP in determining its aggregate foreign cash position are summarized in the following table:

| | Cash Measurement Dates | | |
|------|-------------------|-------------------|-------------------|
| | Final | Second | First |
| CFC1 | December 31, 2017 | December 31, 2016 | December 31, 2015 |
| CFC2 | N/A | N/A | December 31, 2015 |
| CFC3 | November 30, 2018 | November 30, 2016 | November 30, 2015 |
| CFC4 | N/A | N/A | N/A |

_Example 8_. _Determination of section 958(a) U.S. shareholder in case of a controlled domestic partnership_. (i) _Facts_. USP, a domestic corporation, owns all of the stock of CFC1 and CFC2. CFC1 and CFC2 own 60% and 40%, respectively, of the interests in the capital and profits of DPS, a domestic partnership. DPS owns all of the stock of CFC3 and CFC4. This ownership structure has existed since the date of formation of CFC1, CFC2, CFC3, and CFC4. CFC1, CFC2, CFC3, and CFC4 are each a foreign corporation. USP, DPS, CFC1, CFC2, CFC3, and CFC4 have calendar year taxable years. On both E&P measurement dates, CFC3 has 50u of accumulated post-1986 deferred foreign income. On both E&P measurement dates, CFC4 has a deficit in post-1986 earnings and profits of 30u. On all cash measurement dates, CFC1, CFC2, and CFC3 each have a cash position of 0u, and CFC4 has a cash position of 200u.

150

(ii) <u>Analysis</u>. DPS is a controlled domestic partnership with respect to USP within the meaning of paragraph (e)(2) of this section, because more than 50% of the interests in its capital and profits are owned by persons related to USP within the meaning of section 267(b), CFC1 and CFC2, and thus DPS is controlled by USP and related persons. Without regard to paragraph (e) of this section, DPS is a section 958(a) U.S. shareholder of CFC3 and CFC4, each of which is a controlled foreign corporation. If DPS were treated as foreign, CFC3 and CFC4 would each continue to be a controlled foreign corporation, and USP would be treated as a section 958(a) U.S. shareholder of each of CFC3 and CFC4, and would be treated as owning (within the meaning of section 958(a)) tested section 958(a) stock of each of CFC3 and CFC4 through CFC1 and CFC2, which are both partners in DPS. Thus, under paragraph (e)(1) of this section, DPS is treated as a foreign partnership for purposes of determining the section 958(a) U.S. shareholder of both CFC3 and CFC4 and the section 958(a) stock of both CFC3 and CFC4 owned by the section 958(a) U.S. shareholder. Thus, USP's pro rata share of CFC3's section 965(a) earnings amount is 50u, and its pro rata share of CFC4's specified E&P deficit is 30u. USP's aggregate foreign cash position is 200u. DPS is not a section 958(a) shareholder with respect to either CFC3 or CFC4.

Par. 6. Section 1.965-2 is added to read as follows:

§1.965-2 Adjustments to earnings and profits and basis.

(a) <u>Scope</u>. This section provides rules relating to adjustments to earnings and profits and basis to determine and account for the application of section 965(a) and (b) and §1.965-1(b) and a rule that limits the amount of gain recognized under section 961(b)(2) by reason of distributions attributable to section 965 previously taxed earnings and profits (as defined in paragraph (g)(1)(ii) of this section) in the inclusion year. Paragraph (b) of this section provides rules relating to adjustments to earnings and profits of a specified foreign corporation in its last taxable year that begins before January 1, 2018, for purposes of applying sections 959 and 965. Paragraph (c) of this section provides rules regarding adjustments to earnings and profits by reason of section 965(a). Paragraph (d) of this section provides rules regarding adjustments to earnings and profits by reason of section 965(b). Paragraph (e) provides rules regarding adjustments to basis by reason of section 965(a). Paragraph (f) of this

151

ADMIN_03766

section provides an election to make certain adjustments to basis corresponding to adjustments to earnings and profits by reason of section 965(b). Paragraph (g) of this section provides rules that limit the amount of gain recognized in connection with the application of section 961(b)(2) and that require related reductions in basis. Paragraph (h) of this section provides rules regarding basis adjustments. Paragraph (i) of this section provides definitions that apply for purposes of this section. Paragraph (j) of this section provides examples illustrating the application of this section.

(b) <u>Determination of and adjustments to earnings and profits in the last taxable year of a specified foreign corporation that begins before January 1, 2018, for purposes of applying sections 959 and 965</u>. For the last taxable year of a specified foreign corporation that begins before January 1, 2018, and the taxable year of a section 958(a) U.S. shareholder in which or with which such year ends, the adjustments to earnings and profits described in paragraphs (b)(1) through (b)(5) of this section are applied in sequence.

(1) The subpart F income of the specified foreign corporation is determined without regard to section 965(a), and earnings and profits of the specified foreign corporation that are described in section 959(c)(2) with respect to the section 958(a) U.S. shareholder are increased to the extent of the section 958(a) U.S. shareholder's inclusion under section 951(a)(1)(A) without regard to section 965(a).

(2) The treatment of a distribution by the specified foreign corporation to another specified foreign corporation that is made before January 1, 2018, is determined under section 959.

152

(3) Each of the post-1986 earnings and profits (including a deficit) of the specified foreign corporation, the accumulated post-1986 deferred foreign income of the specified foreign corporation, the section 965(a) earnings amount of the specified foreign corporation, and the section 965(a) inclusion amount with respect to the specified foreign corporation, if any, is determined, and the earnings and profits (including a deficit) of the specified foreign corporation are adjusted as provided in paragraphs (c) and (d) of this section.  For a rule disregarding subpart F income earned after an E&P measurement date for purposes of calculating accumulated post-1986 deferred foreign income as of the E&P measurement date, see §1.965-1(f)(7)(ii).

(4) The treatment of all distributions from the specified foreign corporation other than those described in paragraph (b)(2) of this section is determined under section 959.

(5) An amount is determined under section 956 with respect to the specified foreign corporation and the section 958(a) U.S. shareholder; earnings and profits of the specified foreign corporation described in sections 959(c)(2) with respect to the section 958(a) U.S. shareholder are reclassified as earnings and profits described in section 959(c)(1) with respect to the section 958(a) U.S. shareholder to the extent the amount determined under section 956 would, but for section 959(a)(2), be included by the section 958(a) U.S. shareholder under section 951(a)(1)(B); and earnings and profits described in section 959(c)(1) with respect to the section 958(a) U.S. shareholder are further increased to the extent of the section 958(a) U.S. shareholder's inclusion under section 951(a)(1)(B).

153

ADMIN_03768

(c) Adjustments to earnings and profits by reason of section 965(a). The earnings and profits of a deferred foreign income corporation described in section 959(c)(2) with respect to a section 958(a) U.S. shareholder are increased by an amount equal to the section 965(a) inclusion amount of the section 958(a) U.S. shareholder with respect to the deferred foreign income corporation, if any, translated (if necessary) into the functional currency of the deferred foreign income corporation using the spot rate on December 31, 2017, provided the section 965(a) inclusion amount is included in income by the section 958(a) U.S. shareholder. For purposes of the section 965 regulations, the earnings and profits described in section 959(c)(2) by reason of this paragraph (c) and the earnings and profits initially described in section 959(c)(2) by reason of this paragraph (c) but subsequently reclassified as earnings and profits described in section 959(c)(1), if any, are referred to as section 965(a) previously taxed earnings and profits. Furthermore, the earnings and profits (including a deficit) of the deferred foreign income corporation that are described in section 959(c)(3) (or that would be described in section 959(c)(3) but for the application of section 965(a) and the section 965 regulations) are reduced (or, in the case of a deficit, increased) by an amount equal to the section 965(a) previously taxed earnings and profits.

(d) Adjustments to earnings and profits by reason of section 965(b)--(1) Adjustments to earnings and profits described in section 959(c)(2) and (c)(3) of deferred foreign income corporations. The earnings and profits of a deferred foreign income corporation described in section 959(c)(2) with respect to a section 958(a) U.S. shareholder are increased by an amount equal to the reduction to the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the deferred

154

foreign income corporation under section 965(b), §1.965-1(b)(2), and §1.965-8(b), as applicable, translated (if necessary) into the functional currency of the deferred foreign income corporation using the spot rate on December 31, 2017, provided the section 958(a) U.S. shareholder includes the section 965(a) inclusion amount with respect to the deferred foreign income corporation in income. For purposes of the section 965 regulations, the earnings and profits described in section 959(c)(2) by reason of this paragraph (d) and the earnings and profits initially described in section 959(c)(2) by reason of this paragraph (d) but subsequently reclassified as earnings and profits described in section 959(c)(1) are referred to as <u>section 965(b) previously taxed earnings and profits</u>. Furthermore, the earnings and profits (including a deficit) described in section 959(c)(3) of the deferred foreign income corporation (or that would be described in section 959(c)(3) but for the application of section 965(b) and the section 965 regulations) are reduced (or, in the case of a deficit, increased) by an amount equal to the section 965(b) previously taxed earnings and profits.

(2) <u>Adjustments to earnings and profits described in section 959(c)(3) of E&P deficit foreign corporations</u>--(i) <u>Increase in earnings and profits by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit taken into account</u>--(A) <u>In general</u>. For an E&P deficit foreign corporation's last taxable year that begins before January 1, 2018, the earnings and profits of the E&P deficit foreign corporation described in section 959(c)(3) are increased by an amount equal to the portion of a section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under section 965(b), §1.965-1(b)(2), and §1.965-8(b), as determined under paragraph

155

ADMIN_03770

(d)(2)(ii) of this section, translated (if necessary) into the functional currency of the E&P deficit foreign corporation using the spot rate on December 31, 2017. For purposes of section 316, the earnings and profits of the E&P deficit foreign corporation attributable to the increase described in the preceding sentence are not treated as earnings and profits of the taxable year described in section 316(a)(2). See also §1.965-6(c)(3) for the timing of this adjustment for purposes of determining a deemed paid credit allowed under sections 902 and 960.

(B) Reduction of a qualified deficit. For purposes of section 952, a section 958(a) U.S. shareholder's pro rata share of the earnings and profits of an E&P deficit foreign corporation is increased by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under section 965(b), §1.965-1(b)(2), or §1.965-8(b), as applicable, as determined under paragraph (d)(2)(ii) of this section, translated (if necessary) into the functional currency of the E&P deficit foreign corporation using the spot rate on December 31, 2017, and such increase is attributable to the same activity to which the deficit so taken into account was attributable.

(ii) Determination of portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit taken into account--(A) In general. The portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit of an E&P deficit foreign corporation taken into account under section 965(b), §1.965-1(b)(2), or §1.965-8(b), as applicable, is 100 percent of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit if either of the following conditions is satisfied:

156

ADMIN_03771

(1) The section 958(a) U.S. shareholder (including a consolidated group of which the section 958(a) U.S. shareholder is a member) does not have an excess aggregate foreign E&P deficit (as defined in §1.965-8(f)(7)(i)), or

(2) If the section 958(a) U.S. shareholder is a member of an affiliated group in which not all members are members of the same consolidated group, the amount described in §1.965-8(f)(1)(i)(B) with respect to the affiliated group is equal to or greater than the amount described §1.965-8(f)(1)(i)(A).

(B) Designation of portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit taken into account.  If neither the condition in paragraph (d)(2)(ii)(A)(1) nor the condition in paragraph (d)(2)(ii)(A)(2) is satisfied with respect to a section 958(a) U.S. shareholder, then the section 958(a) U.S. shareholder must designate the portion taken into account by reporting to each E&P deficit foreign corporation of the section 958(a) U.S. shareholder, and maintaining in its books and records a statement setting forth, the following information--

(1) The portion of the section 958(a) shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under section 965(b), §1.965-1(b)(2), or §1.965-8(b), as designated under §1.965-8(c), as applicable, and

(2) In the case of an E&P deficit foreign corporation that has a qualified deficit (as determined under section 952 and §1.952-1), the portion (if any) of the section 958(a) shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under paragraph (d)(2)(ii)(B)(1) of this section that is

157

attributable to a qualified deficit, including the qualified activities to which such portion is attributable.

(e) Adjustments to basis by reason of section 965(a)--(1) General rule. Except as provided in paragraph (e)(2) of this section, a section 958(a) U.S. shareholder's basis in section 958(a) stock of a deferred foreign income corporation, or a section 958(a) U.S. shareholder's basis in applicable property with respect to a deferred foreign income corporation, is increased by the section 958(a) U.S. shareholder's section 965(a) inclusion amount with respect to the deferred foreign income corporation included in income by the section 958(a) U.S. shareholder. See section 961(a).

(2) Section 962 election. [Reserved]

(f) Adjustments to basis by reason of section 965(b)--(1) In general. Except as provided in paragraph (f)(2) of this section, no adjustments to basis of stock or property are made under section 961 (or any other provision of the Code) to take into account the reduction to a section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of a deferred foreign income corporation under section 965(b), §1.965-1(b)(2), or §1.965-8(b), as applicable.

(2) Election to make adjustments to basis to account for the application of section 965(b)--(i) In general. If a section 958(a) U.S. shareholder makes the election as provided in this paragraph (f)(2), the adjustments to basis described in paragraph (f)(2)(ii) of this section are made with respect to each deferred foreign income corporation and each E&P deficit foreign corporation in which the section 958(a) U.S. shareholder owns section 958(a) stock.

158

ADMIN_03773

(ii) <u>Basis adjustments</u>--(A) <u>Increase in basis with respect to a deferred foreign income corporation</u>. Except as provided in paragraph (f)(2)(ii)(C) of this section, a section 958(a) U.S. shareholder's basis in section 958(a) stock of a deferred foreign income corporation, or a section 958(a) U.S. shareholder's basis in applicable property with respect to a deferred foreign income corporation, is increased by an amount equal to the section 965(b) previously taxed earnings and profits of the deferred foreign income corporation with respect to the section 958(a) U.S. shareholder, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017.

(B) <u>Reduction in basis with respect to an E&P deficit foreign corporation</u>. Except as provided in paragraph (f)(2)(ii)(C) of this section, a section 958(a) U.S. shareholder's basis in section 958(a) stock of an E&P deficit foreign corporation, or a section 958(a) U.S. shareholder's basis in applicable property with respect to an E&P deficit foreign corporation, is reduced by an amount equal to the portion of the section 958(a) U.S. shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation taken into account under section 965(b), §1.965-1(b)(2), and §1.965-8(b), as applicable, as determined under paragraph (d)(2)(ii) of this section, translated (if necessary) into U.S. dollars using the spot rate on December 31, 2017.

(C) <u>Section 962 election</u>. [Reserved]

(iii) <u>Rules regarding the election</u>--(A) <u>Consistency requirement</u>. In order for the election described in this paragraph (f)(2) to be effective, a section 958(a) U.S. shareholder and each person that is a section 958(a) U.S. shareholder that is related to the section 958(a) U.S. shareholder must make the election described in this paragraph (f)(2). For purposes of this paragraph (f)(2)(iii)(A), a person is treated as related to a

159

ADMIN_03774

section 958(a) U.S. shareholder if the person bears a relationship to the section 958(a) U.S. shareholder described in section 267(b) or 707(b).

(B) Manner of making election--(1) Timing--(i) In general. Except as provided in paragraph (f)(2)(iii)(B)(1)(ii) of this section, the election provided in this paragraph (f)(2) must be made no later than the due date (taking into account extensions, if any) for the section 958(a) U.S. shareholder's return for the first taxable year that includes the last day of the last taxable year of a deferred foreign income corporation or E&P deficit foreign corporation of the shareholder that begins before January 1, 2018. Relief is not available under §301.9100-2 or 301.9100-3 to file a late election.

(ii) Transition rule. If the due date referred to in paragraph (f)(2)(iii)(B)(1)(i) of this section occurs before **[INSERT DATE 30 DAYS AFTER PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER]**, the election must be made by **[INSERT DATE 60 DAYS AFTER PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER]**.

(2) Election statement. Except as otherwise provided in publications, forms, instructions, or other guidance, to make the election provided in this paragraph (f)(2), a section 958(a) U.S. shareholder must attach a statement, signed under penalties of perjury, to its return for the first taxable year that includes the last day of the last taxable year of a deferred foreign income corporation or E&P deficit foreign corporation of the shareholder that begins before January 1, 2018. The statement must include the section 958(a) U.S. shareholder's name and taxpayer identification number and a statement that the section 958(a) U.S. shareholder and all related persons, as defined

160

ADMIN_03775

in paragraph (f)(2)(iii)(A) of this section, make the election provided in this paragraph (f)(2).

(g) Gain reduction rule--(1) Reduction in gain recognized under section 961(b)(2) by reason of distributions attributable to section 965 previously taxed earnings and profits in the inclusion year--(i) In general. If a section 958(a) U.S. shareholder receives a distribution from a deferred foreign income corporation (including through a chain of ownership described under section 958(a)) during the inclusion year of the deferred foreign income corporation that is attributable to section 965 previously taxed earnings and profits of the deferred foreign income corporation, then the amount of gain that otherwise would be recognized under section 961(b)(2) by the section 958(a) U.S. shareholder with respect to the section 958(a) U.S. shareholder's section 958(a) stock of the deferred foreign income corporation or interest in applicable property with respect to the deferred foreign income corporation is reduced (but not below zero) by an amount equal to the section 965 previously taxed earnings and profits of the deferred foreign income corporation with respect to the section 958(a) U.S. shareholder.

(ii) Definition of section 965 previously taxed earnings and profits. For purposes of paragraph (g)(1)(i) of this section, the term section 965 previously taxed earnings and profits means, with respect to a deferred foreign income corporation and a section 958(a) U.S. shareholder, the sum of the section 965(a) previously taxed earnings and profits of the deferred foreign income corporation with respect to the section 958(a) U.S. shareholder, and, if the section 958(a) U.S. shareholder has made the election described in paragraph (f)(2) of this section, the section 965(b) previously taxed

ADMIN_03776

earnings and profits of the deferred foreign income corporation with respect to the section 958(a) U.S. shareholder.

(2) *Reduction in basis by an amount equal to the gain reduction amount*. If a section 958(a) U.S. shareholder does not recognize gain under section 961(b)(2) by reason of paragraph (g)(1) of this section with respect to a distribution from a deferred foreign income corporation (including through a chain of ownership described under section 958(a)), the section 958(a) U.S. shareholder's basis in the section 958(a) stock of the deferred foreign income corporation, or the section 958(a) U.S. shareholder's basis in the applicable property with respect to the deferred foreign income corporation, is reduced by the amount of gain that would otherwise be recognized by the section 958(a) U.S. shareholder without regard to paragraph (g)(1) of this section.

(h) *Rules of application for specified basis adjustments*. This paragraph (h) applies for purposes of making any adjustment to the basis of section 958(a) stock or applicable property with respect to a specified foreign corporation described in paragraph (e), (f)(2), or (g)(2) of this section (collectively, *specified basis adjustments*, and each a *specified basis adjustment*).

(1) *Timing of basis adjustments*. A specified basis adjustment to section 958(a) stock or applicable property with respect to a specified foreign corporation is made as of the close of the last day of the last taxable year of the specified foreign corporation that begins before January 1, 2018.

(2) *Netting of basis adjustments*. If one or more specified basis adjustments occur on the same day with respect to the same section 958(a) stock or applicable property, a single basis adjustment is made as of the close of such day with respect to

162

ADMIN_03777

such stock or applicable property in an amount equal to the net amount, if any, of the increase or reduction, as applicable.

(3) Gain recognition for reduction in excess of basis. The excess (if any) of a net reduction in basis with respect to section 958(a) stock or applicable property of a section 958(a) U.S. shareholder by reason of one or more specified basis adjustments, over the section 958(a) U.S. shareholder's basis in such stock or applicable property without regard to the specified basis adjustments is treated as gain from the sale or exchange of property.

(4) Adjustments with respect to each share--(i) Section 958(a) stock. If a specified basis adjustment is made with respect to section 958(a) stock, the specified basis adjustment is made with respect to each share of the section 958(a) stock in a manner consistent with the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount or specified E&P deficit, as applicable, by reason of such share.

(ii) Applicable property. If a specified basis adjustment is made with respect to applicable property, the adjustment is made with respect to the applicable property in a manner consistent with the application of paragraph (h)(4)(i) of this section.

(5) Stock or property for which adjustments are made--(i) In general. Except as provided in paragraph (h)(5)(ii) of this section, a specified basis adjustment is made solely with respect to section 958(a) stock owned by the section 958(a) U.S. shareholder within the meaning of section 958(a)(1)(A) or applicable property owned directly by the section 958(a) U.S. shareholder.

163

ADMIN_03778

(ii) Special rule for an interest in a foreign pass-through entity.  If the applicable property of the section 958(a) U.S. shareholder described in paragraph (h)(5)(i) of this section is an interest in a foreign pass-through entity, then, for purposes of determining the foreign pass-through entity's basis in section 958(a) stock or applicable property, as applicable, with respect to the section 958(a) U.S. shareholder, a specified basis adjustment is made with respect to section 958(a) stock or applicable property of the section 958(a) U.S. shareholder owned through the foreign pass-through entity in the same manner as if the section 958(a) stock or applicable property were owned directly by the section 958(a) U.S. shareholder.  In the case of tiered foreign pass-through entities, this paragraph (h)(5)(ii) applies with respect to each foreign pass-through entity.

(i) Definitions.  This paragraph (i) provides definitions that apply for purposes of this section.

(1) Applicable property.  The term applicable property means, with respect to a section 958(a) U.S. shareholder and a specified foreign corporation, property owned by the section 958(a) U.S. shareholder (including through one or more foreign pass-through entities) by reason of which the section 958(a) U.S. shareholder is considered under section 958(a)(2) as owning section 958(a) stock of the specified foreign corporation.

(2) Foreign pass-through entity.  The term foreign pass-through entity means a foreign partnership or a foreign estate or trust (as defined in section 7701(a)(31)).

(3) Property.  The term property has the meaning provided in §1.961-1(b)(1).

(j) Examples.  The following examples illustrate the application of this section.

164

ADMIN_03779

Example 1.  Determination of accumulated post-1986 deferred foreign income with subpart F income earned before E&P measurement date on November 2, 2017. (i) Facts. USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation, which owns all of the stock of CFC2, also a foreign corporation. USP, CFC1, and CFC2 all have taxable years ending December 31, 2017. As of January 1, 2017, CFC1 has no earnings and profits, and CFC2 has 100u of earnings and profits described in section 959(c)(3) that were accumulated in taxable years beginning after December 31, 1986, while CFC2 was a specified foreign corporation. On March 1, 2017, CFC1 earns 30u of subpart F income (as defined in section 952), and CFC2 earns 20u of subpart F income. On July 1, 2017, CFC2 distributes 40u to CFC1. On November 1, 2017, CFC1 distributes 60u to USP. USP does not have an aggregate foreign E&P deficit.

(ii) Analysis.  (A) Adjustments to section 959(c) classification of earnings and profits without regard to section 965. USP determines its inclusion under section 951(a)(1)(A) without regard to section 965(a), which is 30u with respect to CFC1 and 20u with respect to CFC2 for their taxable years ending December 31, 2017. As a result of the inclusions under section 951(a)(1)(A), CFC1 and CFC2 increase their earnings and profits described in section 959(c)(2) by 30u and 20u, respectively.

(B) Distributions between specified foreign corporations before January 1, 2018. The distribution of 40u from CFC2 to CFC1 is treated as a distribution of 20u out of earnings and profits described in section 959(c)(2) (attributable to inclusions under section 951(a)(1)(A) without regard to section 965(a)) and 20u out of earnings and profits described in section 959(c)(3).

(C) Section 965(a) inclusion amount.  USP determines whether CFC1 and CFC2 are deferred foreign income corporations, and, if they are, determines its section 965(a) inclusion amounts with respect to CFC1 and CFC2. Because USP wholly owns CFC1 and CFC2 under section 958(a) and USP does not have an aggregate foreign E&P deficit, USP's section 965(a) inclusion amount with respect to each of CFC1 and CFC2, respectively, equals the section 965(a) earnings amount of CFC1 and CFC2, respectively.

(1) CFC1 section 965(a) earnings amount.  The section 965(a) earnings amount with respect to CFC1 is 20u, the amount of its accumulated post-1986 deferred foreign income as of both November 2, 2017, and December 31, 2017, which is equal to 70u of post-1986 earnings and profits (30u earned and 40u attributable to the CFC2 distribution) reduced by 50u of such post-1986 earnings and profits described in section 959(c)(2) (30u earned and 20u attributable to the CFC2 distribution) under section 965(d)(2)(B) and §1.965-1(f)(7)(i)(B). Under section 965(d)(3)(B) and §1.965-1(f)(29)(i)(B), the post-1986 earnings and profits of CFC1 are not reduced by the 60u distribution to USP.

(2) CFC2 section 965(a) earnings amount.  The section 965(a) earnings amount with respect to CFC2 is 80u, the amount of its accumulated post-1986 deferred foreign

165

income as of both November 2, 2017, and December 31, 2017, which is equal to the amount of CFC2's post-1986 earnings and profits of 80u. CFC2's accumulated post-1986 deferred foreign income is equal to its post-1986 earnings and profits because CFC2 does not have earnings and profits that are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1, or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder, and therefore no adjustment is made under section 965(d)(2) or §1.965-1(f)(7). CFC2's 80u of post-1986 earnings and profits consists of 120u of earnings and profits that it earned, reduced by the 40u distribution to CFC1 under section 965(d)(3)(B) and §1.965-1(f)(29)(i)(B). The amount of the reduction to the post-1986 earnings and profits of CFC2 for the 40u distribution is not limited by §1.965-1(f)(29)(i)(B) because CFC1's post-1986 earnings and profits are increased by 40u as a result of the distribution. Furthermore, because the 40u distribution was made on July 1, 2017, which is before the E&P measurement date on November 2, 2017, §1.965-4(f) is not relevant.

(3) Effect on earnings and profits described in section 959(c)(2) and (3). CFC1 and CFC2 increase their earnings and profits described in section 959(c)(2) by USP's section 965(a) inclusion amounts with respect to CFC1 and CFC2, 20u and 80u, respectively, and reduce their earnings and profits described in section 959(c)(3) by an equivalent amount.

(D) Distribution to United States shareholder. The distribution from CFC1 to USP is treated as a distribution of 60u out of the earnings and profits of CFC1 described in section 959(c)(2), which include earnings and profits attributable to the section 965(a) inclusion amount taken into account by USP.

Example 2. Determination of accumulated post-1986 deferred foreign income with subpart F income earned after E&P measurement date on November 2, 2017. (i) Facts. The facts are the same as in paragraph (i) of Example 1 of this paragraph (j), except that on December 1, 2017, CFC1 earns an additional 50u of subpart F income (as defined in section 952).

(ii) Analysis. (A) Adjustments to section 959(c) classification of earnings and profits without regard to section 965. USP determines its inclusion under section 951(a)(1)(A) without regard to section 965(a), which is 80u with respect to CFC1 and 20u with respect to CFC2 for their taxable years ending December 31, 2017. As a result of the inclusions under section 951(a)(1)(A), CFC1 and CFC2 increase their earnings and profits described in section 959(c)(2) by 80u and 20u, respectively.

(B) Distributions between specified foreign corporations before January 1, 2018. The analysis is the same as in paragraph (ii)(B) of Example 1 of this paragraph (j).

166

(C) Section 965(a) inclusion amount. USP determines whether CFC1 and CFC2 are deferred foreign income corporations, and, if they are, determines its section 965(a) inclusion amounts with respect to CFC1 and CFC2. Because USP wholly owns CFC1 and CFC2 under section 958(a) and USP does not have an aggregate foreign E&P deficit, USP's section 965(a) inclusion amount with respect to each of CFC1 and CFC2, respectively, equals the section 965(a) earnings amount of CFC1 and CFC2, respectively.

(1) CFC1 section 965(a) earnings amount. The section 965(a) earnings amount with respect to CFC1 is 20u, the greater of--

(i) The amount of its accumulated post-1986 deferred foreign income as of November 2, 2017, 20u, which is equal to 70u of post-1986 earnings and profits (30u earned and 40u attributable to the CFC2 distribution) reduced by 50u of such post-1986 earnings and profits described in section 959(c)(2) without regard to the subpart F income earned after November 2, 2017 (30u earned and 20u attributable to the CFC2 distribution) under section 965(d)(2)(B) and §1.965-1(f)(7)(i)(B) and (ii), and

(ii) The amount of its accumulated post-1986 deferred foreign income as of December 31, 2017, 20u, which is equal to 120u of post-1986 earnings and profits (80u earned and 40u attributable to the CFC2 distribution) reduced by 100u of such post-1986 earnings and profits described in section 959(c)(2) with regard to the subpart F income earned on or before December 31, 2017 (80u earned and 20u attributable to the CFC2 distribution) under section 965(d)(2)(B) and §1.965-1(f)(7)(i)(B) and (ii).

(2) CFC2 section 965(a) earnings amount. The analysis is the same as in paragraph (ii)(C)(2) of Example 1 of this paragraph (j).

(3) Effect on earnings and profits described in section 959(c)(2) and (3). The analysis is the same as in paragraph (ii)(C)(3) of Example 1 of this paragraph (j).

(D) Distribution to United States shareholder. The analysis is the same as in paragraph (ii)(D) of Example 1 of this paragraph (j).

Example 3. Determination of accumulated post-1986 deferred foreign income with subpart F income earned after E&P measurement date on November 2, 2017, but previously taxed earnings and profits attributable to the subpart F income distributed before E&P measurement date on November 2, 2017. (i) Facts. The facts are the same as in paragraph (i) of Example 1 of this paragraph (j), except that on December 1, 2017, CFC2 earns an additional 50u of subpart F income (as defined in section 952).

(ii) Analysis. (A) Adjustments to section 959(c) classification of earnings and profits without regard to section 965. USP determines its inclusion under section 951(a)(1)(A) without regard to section 965(a), which is 30u with respect to CFC1 and 70u with respect to CFC2 for their taxable years ending December 31, 2017. As a

ADMIN_03782

result of the inclusions under section 951(a)(1)(A), CFC1 and CFC2 increase their earnings and profits described in section 959(c)(2) by 30u and 70u, respectively.

(B) Distributions between specified foreign corporations before January 1, 2018. The distribution of 40u from CFC2 to CFC1 is treated as a distribution of 40u out of earnings and profits described in section 959(c)(2) (attributable to inclusions under section 951(a)(1)(A) without regard to section 965(a)).

(C) Section 965(a) inclusion amount. USP determines whether CFC1 and CFC2 are deferred foreign income corporations, and, if they are, determines its section 965(a) inclusion amounts with respect to CFC1 and CFC2. Because USP wholly owns CFC1 and CFC2 under section 958(a) and USP does not have an aggregate foreign E&P deficit, USP's section 965(a) inclusion amount with respect to each of CFC1 and CFC2, respectively, equals the section 965(a) earnings amount, if any, of CFC1 and CFC2, respectively.

(1) CFC1 section 965(a) earnings amount. CFC1 is not a deferred foreign income corporation and does not have a section 965(a) earnings amount, because the amount of its accumulated post-1986 deferred foreign income as of both November 2, 2017, and December 31, 2017, is 0u, which is equal to 70u of post-1986 earnings and profits (30u earned and 40u attributable to the CFC2 distribution) reduced by 70u of such post-1986 earnings and profits described in section 959(c)(2) (30u earned and 40u attributable to the CFC2 distribution) under section 965(d)(2)(B) and §1.965-1(f)(7)(i)(B).

(2) CFC2 section 965(a) earnings amount. The section 965(a) earnings amount with respect to CFC2 is 100u, the greater of—

(i) The amount of its accumulated post-1986 deferred foreign income as of November 2, 2017, 80u. CFC2's 80u of accumulated post-1986 deferred foreign income as of November 2, 2017 is equal to its 80u of post-1986 earnings and profits because no adjustment is made under section 965(d)(2) or §1.965-1(f)(7), as CFC2 does not have earnings and profits that are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1, or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder, without regard to the subpart F income earned after November 2, 2017. CFC2's 80u of post-1986 earnings and profits consists of 120u of earnings and profits that it earned, reduced by the 40u distribution to CFC1 under section 965(d)(3)(B) and §1.965-1(f)(29)(i)(B). The amount of the reduction to the post-1986 earnings and profits of CFC2 for the 40u distribution is not limited by §1.965-1(f)(29)(i)(B) because CFC1's post-1986 earnings and profits are increased by 40u as a result of the distribution. Furthermore, because the 40u distribution was made on July 1, 2017, which is before any E&P measurement date, §1.965-4(f) is not relevant.

168

ADMIN_03783

(ii) The amount of its accumulated post-1986 deferred foreign income as of December 31, 2017, 100u, which is equal to 130u of post-1986 earnings and profits reduced by 30u of such post-1986 earnings and profits described in section 959(c)(2) with regard to the subpart F income earned before December 31, 2017, under section 965(d)(2)(B) and §1.965-1(f)(7)(i)(B) and (ii). CFC2's 130u of post-1986 earnings and profits consists of 170u of earnings and profits that it earned, reduced by the 40u distribution to CFC1 under section 965(d)(3)(B) and §1.965-1(f)(29)(i)(B).

(3) Effect on earnings and profits described in section 959(c)(2) and (3). CFC2 increases its earnings and profits described in section 959(c)(2) by USP's section 965(a) inclusion amount with respect to CFC2, 100u, and reduces its earnings and profits described in section 959(c)(3) by an equivalent amount.

(D) Distribution to United States shareholder. The analysis is the same as in paragraph (ii)(D) of Example 1 of this paragraph (j).

Example 4. Distribution attributable to section 965(a) previously taxed earnings and profits. (i) Facts. USP, a domestic corporation, owns all of the stock of CFC1, a specified foreign corporation that has no post-1986 earnings and profits (or deficit in post-1986 earnings and profits), and CFC1 owns all the stock of CFC2, a deferred foreign income corporation. USP is a calendar year taxpayer. CFC1's last taxable year beginning before January 1, 2018, ends on November 30, 2018; CFC2 has an inclusion year that ends on November 30, 2018. The functional currency of CFC1 and CFC2 is the U.S. dollar. USP's adjusted basis in the stock of CFC1 is zero, and CFC1's adjusted basis in the stock of CFC2 is zero. On January 1, 2018, CFC2 distributes $100x to CFC1, and CFC1 distributes $100x to USP. USP has a section 965(a) inclusion amount of $100x with respect to CFC2 that is taken into account for USP's taxable year ending December 31, 2018. CFC2 has no earnings and profits described in section 959(c)(1) or (2) other than section 965(a) previously taxed earnings and profits.

(ii) Analysis. Under paragraph (c) of this section, CFC2 has $100x of section 965(a) previously taxed earnings and profits with respect to USP. USP receives a distribution from CFC2 through a chain of ownership described in section 958(a) during the inclusion year of CFC2 that is attributable to the $100x of section 965(a) previously taxed earnings and profits of CFC2. Under paragraph (g)(1) of this section, the amount of gain that USP otherwise would recognize with respect to the stock of CFC1 under section 961(b)(2) is reduced (but not below zero) by $100x, the amount of CFC2's section 965(a) previously taxed earnings and profits with respect to USP. As of the close of November 30, 2018, USP's basis in CFC1 is increased under paragraph (e) of this section by USP's section 965(a) inclusion amount with respect to CFC2 ($100x), and is reduced under paragraph (g)(2) of this section by the amount of gain that would have been recognized by USP under section 961(b)(2) but for the application of paragraph (g)(1) of this section ($100x).

169

ADMIN_03784

Example 5. Distribution attributable to section 965(b) previously taxed earnings and profits; parent-subsidiary. (i) Facts. The facts are the same as in paragraph (i) of Example 4 of this paragraph (j), except that CFC1 has a specified E&P deficit of $100x. Because of the specified E&P deficit of CFC1, USP's section 965(a) inclusion amount with respect to CFC2 is reduced to zero pursuant to section 965(b)(1) and §1.965-1(b)(2). USP makes the election described in paragraph (f)(2) of this section.

(ii) Analysis. (A) Application of the gain reduction rule. Under paragraph (d)(1) of this section, CFC2 has $100x of section 965(b) previously taxed earnings and profits with respect to USP, and, under paragraph (d)(2) of this section, CFC1's earnings and profits described in section 959(c)(3) are increased by $100x to $0. USP receives a distribution from CFC2 through a chain of ownership described in section 958(a) during the inclusion year of CFC2 that is attributable to the $100x of section 965(b) previously taxed earnings and profits of CFC2. Under paragraph (g)(1) of this section, the amount of gain that USP otherwise would recognize with respect to the stock of CFC1 under section 961(b)(2) is reduced (but not below zero) by $100x, the amount of CFC2's section 965(b) previously taxed earnings and profits with respect to USP under paragraph (d)(1) of this section.

(B) Adjustments to the basis of CFC1. Because USP makes the election described in paragraph (f)(2) of this section, as of the close of November 30, 2018, USP's basis in CFC1 is increased under paragraph (f)(2)(ii)(A) of this section by an amount equal to CFC2's section 965(b) previously taxed earnings and profits with respect to USP under paragraph (d)(1) of this section ($100x), reduced under paragraph (f)(2)(ii)(B) of this section by an amount equal to the portion of the specified E&P deficit of CFC1 taken into account in determining USP's section 965(a) inclusion amount with respect to CFC2 ($100x), and reduced under paragraph (g)(2) of this section by the amount of gain that would have been recognized by USP with respect to the stock of CFC1 under section 961(b)(2) but for the application of paragraph (g)(1) of this section ($100x). Under paragraph (h)(2) and (3) of this section, the excess of the net reduction from the adjustments under paragraphs (f) and (g) of this section over USP's basis in the stock of CFC1 (in this case, $100x) is treated as gain recognized by USP from the sale or exchange of property.

Example 6. Distribution attributable to section 965(b) previously taxed earnings and profits; brother-sister. (i) Facts. The facts are the same as in paragraph (i) of Example 5 of this paragraph (j), except that USP owns all the stock of CFC2, USP's adjusted basis in the stock of CFC2 is zero, CFC1 made no distributions, and on January 1, 2018, CFC2 distributes $100x to USP.

(ii) Analysis. (A) Application of the gain reduction rule. Under paragraph (d)(1) of this section, CFC2 has $100x of section 965(b) previously taxed earnings and profits with respect to USP, and, under paragraph (d)(2) of this section, CFC1's earnings and profits described in section 959(c)(3) (deficit of $100x) are increased by $100x to $0. USP receives a distribution from CFC2 during the inclusion year of CFC2 that is attributable to the $100x of section 965(b) previously taxed earnings and profits of

ADMIN_03785

CFC2. Under paragraph (g)(1) of this section, the amount of gain that USP otherwise would recognize with respect to the stock of CFC2 under section 961(b)(2) is reduced (but not below zero) by $100x, the amount of CFC2's section 965(b) previously taxed earnings and profits with respect to USP under paragraph (d)(1) of this section.

(B) _Adjustments to the basis of CFC1 and CFC2_. Because USP makes the election described in paragraph (f)(2) of this section, as of the close of November 30, 2018, USP's basis in the stock of CFC2 is increased under paragraph (f)(2)(ii)(A) of this section by the amount of CFC2's section 965(b) previously taxed earnings and profits with respect to USP under paragraph (d)(1) of this section ($100x) and reduced under paragraph (g)(2) of this section by the amount of gain that would have been recognized by USP with respect to the stock of CFC2 under section 961(b)(2) but for the application of paragraph (g)(1) of this section ($100x).  As of the close of November 30, 2018, USP's basis in CFC1 is reduced under paragraph (f)(2)(ii)(B) of this section by an amount equal to the portion of USP's pro rata share of the specified E&P deficit of CFC1 taken into account in determining USP's section 965(a) inclusion amount with respect to CFC2 ($100x).  Under paragraph (h)(3) of this section, the excess of the reduction under paragraph (f) of this section over USP's basis in the stock of CFC1 (in this case, $100x) is treated as gain recognized by USP from the sale or exchange of property.

Par. 7.  Section 1.965-3 is added to read as follows:

§1.965-3 Section 965(c) deductions.

(a) _Scope_.  This section provides rules regarding section 965(c) deductions and section 965(c) deduction amounts.  Paragraph (b) of this section provides rules for disregarding certain assets for purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder.  Paragraph (c) of this section provides rules for determining the aggregate foreign cash position for a section 958(a) U.S. shareholder inclusion year.  Paragraph (d) of this section provides a rule regarding certain expatriated entities.  Paragraph (e) of this section provides a rule for the treatment of section 965(c) deductions in connection with an election under section 962.  Paragraph (f) of this section provides rules regarding the treatment of a section 965(c) deduction under certain provisions of the Internal Revenue Code.  Paragraph (g) of this section provides a rule for domestic pass-through entities.

171

ADMIN_03786

(b) <u>Rules for disregarding certain assets for determining aggregate foreign cash position</u>--(1) <u>Disregard of certain obligations between related specified foreign corporations</u>.  In determining the aggregate foreign cash position of a section 958(a) U.S. shareholder, any account receivable, account payable, short-term obligation, or derivative financial instrument between a specified foreign corporation with respect to which the section 958(a) U.S. shareholder owns section 958(a) stock and a related specified foreign corporation on a cash measurement date is disregarded to the extent of the smallest of the product of the amount of the item on such cash measurement date of each specified foreign corporation and the section 958(a) U.S. shareholder's ownership percentage of section 958(a) stock of the specified foreign corporation owned by the section 958(a) U.S. shareholder on such date.  For purposes of this paragraph (b)(1)(i), a specified foreign corporation is treated as a related specified foreign corporation with respect to another specified foreign corporation if, as of the cash measurement date referred to in the preceding sentence of each specified foreign corporation, the specified foreign corporations are related persons within the meaning of section 954(d)(3), substituting the term "specified foreign corporation" for "controlled foreign corporation" in each place that it appears.

(2) <u>Disregard of other assets upon demonstration of double-counting</u>.  For purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder, the section 958(a) U.S. shareholder's pro rata share of the cash position of a specified foreign corporation on a cash measurement date is reduced by amounts of net accounts receivable, actively traded property, and short-term obligations to the extent such amounts are attributable to amounts taken into account in determining the

172

ADMIN_03787

section 958(a) U.S. shareholder's pro rata share of the cash position of another specified foreign corporation on such cash measurement date and to the extent not disregarded pursuant to paragraph (b)(1) of this section. However, the preceding sentence applies only if the section 958(a) U.S. shareholder attaches a statement containing the information outlined in paragraphs (b)(2)(i) through (v) of this section to its timely filed return (taking into account extensions, if any) for the section 958(a) U.S. shareholder inclusion year, or, if the section 958(a) U.S. shareholder has multiple section 958(a) U.S. shareholder inclusion years, the later of such years. Relief is not available under §301.9100-2 or 301.9100-3 to allow late filing of the statement. The statement must contain the following information with respect to each specified foreign corporation for which the cash position is reduced under this paragraph (b)(2)--

(i) A description of the asset that would be taken into account with respect to both specified foreign corporations,

(ii) A statement of the amount by which its pro rata share of the cash position of one specified foreign corporation is reduced,

(iii) A detailed explanation of why there would otherwise be double-counting, including the computation of the amount taken into account with respect to the other specified foreign corporation, and

(iv) An explanation of why paragraph (b)(1) of this section does not apply to disregard such amount.

(3) Examples. The following examples illustrate the application of this paragraph (b).

173

ADMIN_03788

Example 1. (i) Facts. USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation. CFC1 owns 95% of the only class of stock of CFC2, also a foreign corporation, and 40% of the only class of stock of CFC3, also a foreign corporation. The remaining 5% of the only class of stock of CFC2 is owned by a person unrelated to USP, CFC1, and CFC2; and the remaining 60% of the only class of stock of CFC3 is owned by a person unrelated to USP and CFC1. USP, CFC1, and CFC3 have calendar year taxable years. CFC2 has a taxable year ending on November 30. On November 15, 2015, CFC1 makes a loan of $100x to CFC2, which is required to be and is, in fact, repaid on January 1, 2016. On November 15, 2016, CFC2 sells inventory to CFC1 in exchange for an account receivable of $200x, which is required to be and is, in fact, repaid on December 15, 2016. On August 1, 2017, CFC1 makes a loan of $300x to CFC3, which is required to be and is, in fact, repaid on January 31, 2018.

(ii) Analysis--(A) Loan from CFC1 to CFC2. For purposes of determining the aggregate foreign cash position of USP, a section 958(a) U.S. shareholder of CFC1, under paragraph (b)(1) of this section, because CFC1 and CFC2 are related within the meaning of paragraph (b)(1) of this section, the short-term obligation of CFC2 held by CFC1 outstanding on the first cash measurement date of each specified foreign corporation, November 30, 2015, and December 31, 2015, respectively, is disregarded to the extent of 95%, the smallest ownership percentage of section 958(a) stock of CFC1 and CFC2 owned by USP on such first cash measurement dates. Accordingly, USP only takes into account $5 ($100 – 95% of $100) of the short-term obligation in determining CFC1's cash position for purposes of determining its aggregate foreign cash position.

(B) Account receivable of CFC1 held by CFC2. Because the account receivable of CFC1 held by CFC2 on its second cash measurement date, November 30, 2016, is not outstanding on CFC1's second cash measurement date, December 31, 2016, paragraph (b)(1) of this section does not apply to disregard any portion of such account receivable.

(C) Loan from CFC1 to CFC3. Because CFC3 is not related to CFC1 within the meaning of paragraph (b)(1) of this section, paragraph (b)(1) of this section does not apply to disregard any portion of such short-term obligation.

Example 2. (i) Facts. The facts are the same as in Example 1, except that on December 1, 2015, CFC1 sells 5% of the stock of CFC2 to an unrelated person.

(ii) Analysis. The analysis is the same as in Example 1, except that the short-term obligation of CFC2 held by CFC1 outstanding on both of their first cash measurement dates, November 30, 2015, and December 31, 2015, respectively, is disregarded under paragraph (b)(1) of this section to the extent of 90%, the smallest ownership percentage of section 958(a) stock of CFC1 and CFC2 by USP on such first cash measurement dates. Accordingly, USP takes into account $10 ($100 – 90% of

174

ADMIN_03789

$100) of the short-term obligation in determining CFC1's cash position for purposes of determining its aggregate foreign cash position.

Example 3. (i) Facts. USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation, which owns 45% of the only class of stock of CFC2, also a foreign corporation. The remainder of the CFC2 stock is actively traded on an established financial market but is not owned by any person related to USP or CFC1. USP, CFC1, and CFC2 have calendar year taxable years. The value of the CFC2 stock owned by CFC1 is $500x on each of the cash measurement dates. Also on each of the cash measurement dates, CFC2 has $300x of assets described in section 965(c)(3)(B) and §1.965-1(f)(16) that are taken into account in determining its cash position.

(ii) Analysis. For purposes of determining USP's aggregate foreign cash position, USP's pro rata share of the cash position of CFC1 on each cash measurement date may be reduced by the amount of the stock of CFC2 to the extent attributable to amounts taken into account in determining USP's pro rata share of the cash position of CFC2 on such cash measurement date (that is, to the extent of the $135x taken into account with respect to CFC2), provided USP attaches a statement to its timely filed return (taking into account extensions, if any) containing the following: a description of the CFC2 stock and the assets of CFC2 taken into account in determining its cash position; a statement that USP's pro rata share of the cash position of CFC1 is being reduced by $135x; the computation of the $135x taken into account with respect to CFC2; and an explanation of why paragraph (b)(1) of this section does not apply to disregard such amount.

Example 4. (i) Facts. USP, a domestic corporation, owns all of the stock of CFC1 and CFC2, each a foreign corporation. USP, CFC1, and CFC2 have calendar year taxable years. CFC1 buys goods on credit from a third party for $100x and thus has an account payable of $100x. CFC1 modifies the goods and sells to CFC2 for $105x in exchange for an account receivable of $105x. CFC2 modifies the goods and sells to another third party for $110x in exchange for an account receivable of $110x. All of the accounts payable and accounts receivable are outstanding on the final cash measurement date.

(ii) Analysis. For purposes of determining USP's aggregate foreign cash position, on the final cash measurement date, CFC1 has net accounts receivable of $0, because, pursuant to paragraph (b)(1) of this section, CFC1's account receivable from CFC2 is disregarded, and CFC2 has net accounts receivable of $110, because, pursuant to paragraph (b)(1) of this section, CFC2's account payable to CFC1 is disregarded. USP cannot rely on the rule in paragraph (b)(2) of this section because no amounts attributable to CFC2's net accounts receivable are taken into account with respect to another specified foreign corporation.

(c) Determination of aggregate foreign cash position for a section 958(a) U.S. shareholder inclusion year--(1) Single section 958(a) U.S. shareholder inclusion year.

175

If a section 958(a) U.S. shareholder has a single section 958(a) U.S. shareholder inclusion year, then the section 958(a) U.S. shareholder's aggregate foreign cash position for the section 958(a) U.S. shareholder inclusion year is equal to the aggregate foreign cash position of the section 958(a) U.S. shareholder.

(2) Multiple section 958(a) U.S. shareholder inclusion years. If a section 958(a) U.S. shareholder has multiple section 958(a) U.S. shareholder inclusion years, then the section 958(a) U.S. shareholder's aggregate foreign cash position for each section 958(a) U.S. shareholder inclusion year is determined by allocating the aggregate foreign cash position to a section 958(a) U.S. shareholder inclusion year under paragraphs (c)(2)(i) and (c)(2)(ii) of this section.

(i) Allocation to first section 958(a) U.S. shareholder inclusion year. A portion of the aggregate foreign cash position of the section 958(a) U.S. shareholder is allocated to the first section 958(a) U.S. shareholder inclusion year in an amount equal to the lesser of the section 958(a) U.S. shareholder's aggregate foreign cash position, or the section 958(a) U.S. shareholder's aggregate section 965(a) inclusion amount for the section 958(a) U.S. shareholder inclusion year.

(ii) Allocation to succeeding section 958(a) U.S. shareholder inclusion years. The amount of the section 958(a) U.S. shareholder's aggregate foreign cash position allocated to any succeeding section 958(a) U.S. shareholder inclusion year equals the lesser of the excess, if any, of the section 958(a) U.S. shareholder's aggregate foreign cash position over the aggregate amount of its aggregate foreign cash position allocated to preceding section 958(a) U.S. shareholder inclusion years under paragraph (c)(2)(i) of this section and this paragraph (c)(2)(ii), or the section 958(a) U.S.

176

ADMIN_03791

shareholder's aggregate section 965(a) inclusion amount for such succeeding section 958(a) U.S. shareholder inclusion year.

(3) Estimation of aggregate foreign cash position.  For purposes of determining the aggregate foreign cash position of a section 958(a) U.S. shareholder, the section 958(a) U.S. shareholder may assume that its pro rata share of the cash position of any specified foreign corporation whose last taxable year beginning before January 1, 2018, ends after the date the return for such section 958(a) U.S. shareholder inclusion year (the estimated section 958(a) U.S. shareholder inclusion year) is timely filed (taking into account extensions, if any) is zero as of the cash measurement date with which the taxable year of such specified foreign corporation ends.  If a section 958(a) U.S. shareholder's pro rata share of the cash position of a specified foreign corporation is treated as zero pursuant to the preceding sentence, the amount described in §1.965-1(f)(8)(i)(A) with respect to such section 958(a) U.S. shareholder in fact exceeds the amount described in §1.965-1(f)(8)(i)(B) with respect to such section 958(a) U.S. shareholder, and the aggregate section 965(a) inclusion amount for the estimated section 958(a) U.S. shareholder inclusion year exceeds the amount described in §1.965-1(f)(8)(i)(B) with respect to such section 958(a) U.S. shareholder, interest and penalties will not be imposed if such section 958(a) U.S. shareholder amends the return for the estimated section 958(a) U.S. shareholder inclusion year to account for the correct aggregate foreign cash position for the year.  The amended return must be filed by the due date (taking into account extensions, if any) for the return for the year after the estimated section 958(a) U.S. shareholder inclusion year.

177

ADMIN_03792

(4) Examples. The following examples illustrate the application of this paragraph (c).

Example 1. Estimation of aggregate foreign cash position for a section 958(a) U.S. shareholder inclusion year--(i) Facts. USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation, which owns all of the stock of CFC2, also a foreign corporation. USP is a calendar year taxpayer. CFC1 has a taxable year ending on December 31, and CFC2 has a taxable year ending on November 30. The cash position of CFC1 on each of December 31, 2015, December 31, 2016, and December 31, 2017, is $100x. The cash position of CFC2 on each of November 30, 2015, and November 30, 2016, is $200x. USP has a section 965(a) inclusion amount of $300x with respect to CFC1.

(ii) Analysis. In determining its aggregate foreign cash position for its 2017 taxable year, USP may assume that its pro rata share of the cash position of CFC2 will be zero as of November 30, 2018, for purposes of filing its return due on April 18, 2018 (or due on October 15, 2018, with extension). Therefore, USP's aggregate foreign cash position is treated as $300, which is the greater of (a) $300x, 50% of the sum of USP's pro rata shares of the cash position of CFC1 as of December 31, 2015, and December 31, 2016, and of the cash position of CFC2 as of November 30, 2015, and November 30, 2016, and (b) $100x, USP's pro rata share of the cash position of CFC1 as of December 31, 2017. If USP's pro rata share of the cash position of CFC2 as of November 30, 2018, in fact exceeds $200, USP must amend its return for its 2017 taxable year to reflect the correct aggregate foreign cash position by the due date for its return for its 2018 taxable year, April 15, 2019 (or October 15, 2019, with extension).

Example 2. Allocation of aggregate foreign cash position among section 958(a) U.S. shareholder inclusion years--(i) Facts. The facts are the same as in paragraph (i) of Example 1 of this paragraph (c)(4), except that the cash position of each of CFC1 and CFC2 on all relevant cash measurement dates is $200, with the result that USP has an aggregate foreign cash position determined under §1.965-1(f)(8)(i) of $400. For its 2017 taxable year, USP has a section 965(a) inclusion amount with respect to CFC1 of $300, and for its 2018 taxable year, USP has a section 965(a) inclusion amount with respect to CFC2 of $300.

(ii) Analysis. Under paragraph (c)(2)(i) of this section, USP's aggregate foreign cash position for 2017 is $300, which is the lesser of USP's aggregate foreign cash position determined under §1.965-1(f)(8)(i) ($400) or the section 965(a) inclusion amount ($300) that USP takes into account in 2017. Under paragraph (c)(2)(ii) of this section, the amount of USP's aggregate foreign cash position for 2018 is $100, USP's aggregate foreign cash position determined under §1.965-1(f)(8)(i) ($400) reduced by the amount of its aggregate foreign cash position for 2017 ($300) under paragraph (c)(2)(i) of this section.

178

ADMIN_03793

(d) <u>Increase of income by section 965(c) deduction of an expatriated entity</u>--(1) <u>In general</u>. If a person is allowed a section 965(c) deduction and the person (or a successor) first becomes an expatriated entity, with respect to a surrogate foreign corporation, at any time during the 10-year period beginning on December 22, 2017, then the tax imposed by chapter 1 of the Internal Revenue Code is increased for the first taxable year in which such person becomes an expatriated entity by an amount equal to 35 percent of the person's section 965(c) deductions, and no credits are allowed against such increase in tax. The preceding sentence applies only if the surrogate foreign corporation first becomes a surrogate foreign corporation on or after December 22, 2017.

(2) <u>Definition of expatriated entity</u>. For purposes of paragraph (d)(1) of this section, the term <u>expatriated entity</u> has the same meaning given such term under section 7874(a)(2), except that such term does not include an entity if the surrogate foreign corporation with respect to the entity is treated as a domestic corporation under section 7874(b).

(3) <u>Definition of surrogate foreign corporation</u>. For purposes of paragraph (d)(1) of this section, the term <u>surrogate foreign corporation</u> has the meaning given such term in section 7874(a)(2)(B).

(e) <u>Section 962 election</u>--(1) <u>In general</u>. In the case of an individual (including a trust or estate) that makes an election under section 962, any section 965(c) deduction taken into account under §1.962-1(b)(1)(i)(B) in determining taxable income as used in section 11 is not taken into account for purposes of determining the individual's taxable income under section 1.

179

ADMIN_03794

(2) *Example*.  The following example illustrates the application of the rule in this paragraph (e).

*Example*. (i) *Facts*.  USI, a United States citizen, owns 10% of the capital and profits of USPRS, a domestic partnership that has a calendar year taxable year, the remainder of which is owned by foreign persons unrelated to USI or USPRS.  USPRS owns all of the stock of FS, a foreign corporation that is a controlled foreign corporation with a calendar year taxable year.  USPRS has a section 965(a) inclusion amount with respect to FS of $1,000 and has a section 965(c) deduction amount of $700.  FS has no post-1986 foreign income taxes (as defined in section 902(c)(1) as in effect before December 22, 2017).  USI makes a valid election under section 962 for 2017.

(ii) *Analysis*.  USI's "taxable income" described in §1.962-1(b)(1)(i) equals $100 (USI's domestic pass-through owner share of USPRS's section 965(a) inclusion amount) minus $70 (USI's domestic pass-through owner share of USPRS's section 965(c) deduction amount), or $30.  No other deductions are allowed in determining this amount.  USI's tax on the $30 section 965(a) inclusion will be equal to the tax that would be imposed on such amount under section 11 if USI were a domestic corporation.  Under paragraph (e)(1) of this section, USI cannot deduct $70 for purposes of determining USI's taxable income that is subject to tax under section 1.

(f) Treatment of section 965(c) deduction under certain provisions of the Internal Revenue Code--(1) Section 63(d).  A section 965(c) deduction is not treated as an itemized deduction for any purpose of the Internal Revenue Code.

(2) Sections 705, 1367, and 1368--(i) Adjustments to basis.  In the case of a domestic partnership or S corporation--

(A) The aggregate amount of its section 965(a) inclusions net the aggregate amount of its section 965(c) deductions is treated as a separately stated item of net income solely for purposes of calculating basis under section 705(a) and §1.705-1(a) and section 1367(a)(1) and §1.1367-1(f), and

(B) The aggregate amount of its section 965(a) inclusions equal to the aggregate amount of its section 965(c) deductions is treated as income exempt from tax solely for

180

ADMIN_03795

purposes of calculating basis under sections 705(a)(1)(B), 1367(a)(1)(A), and §1.1367-1(f).

(ii) S corporation accumulated adjustments account. In the case of an S corporation, the aggregate amount of its section 965(a) inclusions equal to the aggregate amount of its section 965(c) deductions is treated as income not exempt from tax solely for purposes of determining whether an adjustment is made to an accumulated adjustments account under section 1368(e)(1)(A) and §1.1368-2(a)(2).

(iii) Example. The following example illustrates the application of this paragraph (f)(2).

Example. (i) Facts. USI, a United States citizen, owns all of the stock of S Corp, an S corporation, which owns all of the stock of FS, a foreign corporation. S Corp has a section 965(a) inclusion of $1,000 with respect to FS and has a $700 section 965(c) deduction.

(ii) Analysis. As a result of the application of paragraph (f)(2)(i)(A) of this section, solely for purposes of calculating basis under section 1367(a)(1) and §1.1367-1(f), USI treats as a separately stated item of net income $300 (its pro rata share of the net of S Corp's $1,000 aggregate section 965(a) inclusion and S Corp's $700 aggregate section 965(c) deduction). Accordingly, USI's basis in S Corp is increased under section 1367(a)(1) by $300. As a result of the application of paragraph (f)(2)(i)(B) of this section, an amount of S Corp's aggregate section 965(a) inclusion equal to its aggregate section 965(c) deduction, $700, is treated as tax exempt income solely for purposes of calculating basis under section 1367(a)(1)(A) and §1.1367-1(f), and accordingly, USI's basis in S Corp is further increased by its pro rata share of such amount, $700. S Corp's accumulated adjustments account (AAA) is increased under section 1368(e)(1)(A) by the $1,000 section 965(a) inclusion taken into account and reduced by the $700 section 965(c) deduction taken into account. In addition, as a result of the application of paragraph (f)(2)(ii) of this section, S Corp's AAA is further increased by an amount of S Corp's aggregate section 965(a) inclusion equal to its aggregate section 965(c) deduction, $700, which is not treated as tax-exempt income for purposes of §1.1368-2(a)(2).

(3) Section 1411. For purposes of section 1411 and §1.1411-4(f)(6), a section 965(c) deduction is not treated as being properly allocable to any section 965(a) inclusion.

181

ADMIN_03796

(4) <u>Section 4940</u>. For purposes of section 4940(c)(3)(A), a section 965(c) deduction is not treated as an ordinary and necessary expense paid or incurred for the production or collection of gross investment income.

(g) <u>Domestic pass-through entities</u>.  For purposes of determining a domestic pass-through owner share, a section 965(c) deduction amount of a domestic pass-through entity must be allocated to a domestic pass-through owner in the same proportion as an aggregate section 965(a) inclusion amount of the domestic pass-through entity for a section 958(a) U.S. shareholder inclusion year is allocated to the domestic pass-through owner.

Par. 8.  Section 1.965-4 is added to read as follows:

<u>§1.965-4 Disregard of certain transactions</u>.

(a) <u>Scope</u>.  This section provides rules that disregard certain transactions for purposes of applying section 965 to a United States shareholder.  Paragraph (b) of this section provides rules that disregard transactions undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder. Paragraph (c) of this section provides rules that disregard certain changes in method of accounting and entity classification elections that would otherwise change the amount of a section 965 element.  Paragraph (d) of this section defines the term <u>section 965 element</u>.  Paragraph (e) of this section provides rules of application concerning paragraphs (b) and (c) of this section.  Paragraph (f) of this section provides rules that disregard certain transactions occurring between E&P measurement dates.  Paragraph (g) of this section provides examples illustrating the application of this section.

182

ADMIN_03797

(b) <u>Transactions undertaken with a principal purpose of changing the amount of a section 965 element</u>--(1) <u>General rule</u>.  A transaction is disregarded for purposes of determining the amounts of all section 965 elements of a United States shareholder if each of the following conditions is satisfied with respect to any section 965 element of the United States shareholder--

(i) The transaction occurs, in whole or in part, on or after November 2, 2017 (the <u>specified date</u>);

(ii) The transaction is undertaken with a principal purpose of changing the amount of a section 965 element of the United States shareholder; and

(iii) The transaction would, without regard to this paragraph (b)(1), change the amount of the section 965 element of the United States shareholder.

(2) <u>Presumptions and exceptions for the application of the general rule</u>--(i) <u>Overview</u>.  Under paragraphs (b)(2)(iii) through (v) of this section, certain transactions are presumed to be undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder for purposes of paragraph (b)(1) of this section.  The presumptions described in paragraphs (b)(2)(iii) through (v) of this section may be rebutted only if facts and circumstances clearly establish that the transaction was not undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder.  A taxpayer that takes the position that the presumption is rebutted must attach a statement to its return for its taxable year in which or with which the relevant taxable year of the relevant specified foreign corporation ends disclosing that it has rebutted the presumption.  In the case of a transaction described in paragraph (b)(2)(iii) or (iv) of this section, if the presumption

183

ADMIN_03798

does not apply because the transaction occurs in the ordinary course of business, whether the transaction was undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder must be determined under all the facts and circumstances.  Under paragraphs (b)(2)(iii) through (v) of this section, certain transactions are treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder and therefore such transactions are disregarded under paragraph (b)(1) of this section if the conditions of paragraphs (b)(1)(i) and (iii) of this section are satisfied. Further, under paragraph (b)(2)(iii) of this section, certain distributions are treated per se as not being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder and therefore are not disregarded under paragraph (b)(1) of this section.

(ii) Definitions--(A) Relatedness.  For purposes of paragraphs (b)(2)(iii) through (v) of this section, a person is treated as related to a United States shareholder if, either immediately before or immediately after the transaction (or series of related transactions), the person bears a relationship to the United States shareholder described in section 267(b) or section 707(b).

(B) Transfer--(1) In general.  For purposes of paragraphs (b)(2)(iii) and (v) of this section, the term transfer includes any disposition of stock or property, including a sale or exchange, contribution, distribution, issuance, redemption, recapitalization, or loan of stock or property, and includes an indirect transfer of stock or property.

(2) Indirect transfer.  For purposes of paragraph (b)(2)(ii)(B)(1) of this section, the term indirect transfer includes a transfer of property or stock owned by an entity through

184

a transfer of an interest in such entity (or an interest in an entity that has a direct or indirect interest in such entity), and a transfer of property or stock to a person through a transfer of property or stock to a pass-through entity of which such person is a direct or indirect owner.

(iii) Cash reduction transactions--(A) General rule.  For purposes of paragraph (b)(1) of this section, a cash reduction transaction is presumed to be undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder.  For this purpose, the term cash reduction transaction means a transfer of cash, accounts receivable, or cash-equivalent assets by a specified foreign corporation to a United States shareholder of the specified foreign corporation or a person related to a United States shareholder of the specified foreign corporation, or an assumption by a specified foreign corporation of an account payable of a United States shareholder of the specified foreign corporation or a person related to a United States shareholder of the specified foreign corporation, if such transfer or assumption would, without regard to paragraph (b)(1) of this section, reduce the aggregate foreign cash position of the United States shareholder.  The presumption described in this paragraph (b)(2)(iii) does not apply to a cash reduction transaction that occurs in the ordinary course of business.

(B) Per se rules for certain distributions.  Notwithstanding the presumption described in paragraph (b)(2)(iii)(A) of this section, except in the case of a specified distribution, a cash reduction transaction that is a distribution by a specified foreign corporation to a United States shareholder of the specified foreign corporation is treated per se as not being undertaken with a principal purpose of changing the amount of a section 965 element of the United States shareholder for purposes of paragraph (b)(1)

185

ADMIN_03800

of this section.  A specified distribution is treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder for purposes of paragraph (b)(1) of this section.  For purposes of this paragraph (b)(2)(iii)(B), the term specified distribution means a cash reduction transaction that is a distribution by a specified foreign corporation of a United States shareholder if and to the extent that, at the time of the distribution, there was a plan or intention for the distributee to transfer cash, accounts receivable, or cash-equivalent assets to any specified foreign corporation of the United States shareholder or the distribution is a non pro rata distribution to a foreign person that is related to the United States shareholder.

(iv) E&P reduction transactions--(A) General rule.  For purposes of paragraph (b)(1) of this section, an E&P reduction transaction is presumed to be undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder.  For purposes of this paragraph (b)(2)(iv), the term E&P reduction transaction means a transaction between a specified foreign corporation and any of a United States shareholder of the specified foreign corporation, another specified foreign corporation of a United States shareholder of the specified foreign corporation, or any person related to a United States shareholder of the specified foreign corporation, if the transaction would, without regard to paragraph (b)(1) of this section, reduce either the accumulated post-1986 deferred foreign income or the post-1986 undistributed earnings (as defined in section 902(c)(1)) of the specified foreign corporation or another specified foreign corporation of any United States shareholder of such specified foreign

186

ADMIN_03801

corporation. The presumption described in this paragraph (b)(2)(iv)(A) does not apply to an E&P reduction transaction that occurs in the ordinary course of business.

(B) Per se rule for specified transactions. A specified transaction is treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder for purposes of paragraph (b)(1) of this section. For purposes of the preceding sentence, the term specified transaction means an E&P reduction transaction that involves one or more of the following: a complete liquidation of a specified foreign corporation to which section 331 applies; a sale or other disposition of stock by a specified foreign corporation; or a distribution by a specified foreign corporation that reduces the earnings and profits of the specified foreign corporation pursuant to section 312(a)(3).

(v) Pro rata share transactions--(A) General rule. For purposes of paragraph (b)(1) of this section, a pro rata share transaction is presumed to be undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder. For this purpose, the term pro rata share transaction means either a pro rata share reduction transaction or an E&P deficit transaction.

(1) Definition of pro rata share reduction transaction. For purposes of this paragraph (b)(2)(v)(A), the term pro rata share reduction transaction means a transfer of the stock of a specified foreign corporation by either a United States shareholder of the specified foreign corporation or a person related to a United States shareholder of the specified foreign corporation (including by the specified foreign corporation itself) to a person related to the United States shareholder if the transfer would, without regard to paragraph (b)(1) of this section, reduce the United States shareholder's pro rata share

187

ADMIN_03802

of the section 965(a) earnings amount of the specified foreign corporation, reduce the United States shareholder's pro rata share of the cash position of the specified foreign corporation, or both.

(2) Definition of E&P deficit transaction. For purposes of this paragraph (b)(2)(v)(A), an E&P deficit transaction means a transfer to either a United States shareholder or a person related to the United States shareholder of the stock of an E&P deficit foreign corporation by a person related to the United States shareholder (including by the E&P deficit foreign corporation itself) if the transfer would, without regard to paragraph (b)(1) of this section, increase the United States shareholder's pro rata share of the specified E&P deficit of the E&P deficit foreign corporation.

(B) Per se rule for internal group transactions. An internal group transaction is treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of a United States shareholder for purposes of paragraph (b)(1) of this section. For purposes of the preceding sentence, the term internal group transaction means a pro rata share transaction if, immediately before or after the transfer, the transferor of the stock of the specified foreign corporation and the transferee of such stock are members of an affiliated group in which the United States shareholder is a member. For this purpose, the term affiliated group has the meaning set forth in section 1504(a), determined without regard to paragraphs (1) through (8) of section 1504(b), and the term members of an affiliated group means entities included in the same affiliated group. For purposes of identifying an affiliated group and the members of such group, each partner in a partnership, as determined without regard to this sentence, is treated as holding its proportionate share of the stock held by the

188

ADMIN_03803

partnership, as determined under the rules and principles of sections 701 through 777, and if one or more members of an affiliated group own, in the aggregate, at least 80 percent of the interests in a partnership's capital or profits, the partnership will be treated as a corporation that is a member of the affiliated group.

(C) Example. The following example illustrates the application of the rules in this paragraph (b)(2)(v).

Example. (i) Facts. FP, a foreign corporation, owns all of the stock of USP, a domestic corporation. USP owns all of the stock of FS, a foreign corporation. USP has a calendar year taxable year; FS's taxable year ends November 30. On January 2, 2018, USP transfers all of the stock of FS to FP in exchange for cash. On January 3, 2018, FS makes a distribution with respect to the stock transferred to FP. USP treats the transaction as a taxable sale of the FS stock and claims a dividends received deduction under section 245A with respect to its deemed dividend under section 1248(j) as a result of the sale. FS has post-1986 earnings and profits as of December 31, 2017, and no post-1986 earnings and profits that are attributable to income effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1 or that, if distributed, would be excluded from the gross income of a United States shareholder under section 959.

(ii) Analysis. The transfer of the stock of FS is a pro rata share reduction transaction and thus a pro rata share transaction because such transfer is by USP, a United States shareholder, to FP, a person related to USP, and the transfer would, without regard to the rule in paragraph (b)(1) of this section, reduce USP's pro rata share of the section 965(a) earnings amount of FS. Because USP and FP are also members of an affiliated group within the meaning of paragraph (b)(2)(v)(B) of this section, the transfer of the stock of FS is also an internal group transaction and is treated per se as being undertaken with a principal purpose of changing the amount of a section 965 element of USP. Accordingly, because the transfer occurs after the specified date and reduces USP's section 965(a) inclusion amount with respect to FS, the transfer is disregarded for purposes of determining any section 965 element of USP with the result that, among other things, USP's pro rata share of FS's section 965(a) earnings amount is determined as if USP owned (within the meaning of section 958(a)) 100% of the stock of FS on the last day of FS's inclusion year and no other person received a distribution with respect to such stock during such year. See section 951(a)(2)(A) and (B).

(c) Disregard of certain changes in method of accounting and entity classification elections--(1) Changes in method of accounting. Any change in method of accounting

ADMIN_03804

made for a taxable year of a specified foreign corporation that ends in 2017 or 2018 is disregarded for purposes of determining the amounts of all section 965 elements with respect to a United States shareholder if the change in method of accounting would, without regard to this paragraph (c)(1), change the amount of any section 965 element with respect to the United States shareholder, regardless of whether the change in method of accounting is made with a principal purpose of changing the amount of a section 965 element with respect to the United States shareholder. The rule described in the preceding sentence applies regardless of whether the change in method of accounting was made in accordance with the procedures described in Rev. Proc. 2015-13, 2015-5 I.R.B. 419 (or successor), and regardless of whether the change in method of accounting was properly made, but it does not apply to a change in method of accounting for which the original and/or duplicate copy of any Form 3115, "Application for Change in Accounting Method," requesting the change was filed before the specified date (as defined in paragraph (b)(1) of this section).

(2) <u>Entity classification elections</u>. An election under §301.7701-3 to change the classification of an entity that is filed on or after the specified date (as defined in paragraph (b)(1) of this section) is disregarded for purposes of determining the amounts of all section 965 elements of a United States shareholder if the election would, without regard to this paragraph (c)(2) of this section, change the amount of any section 965 element of the United States shareholder, regardless of whether the election is made with a principal purpose of changing the amount of a section 965 element of the United States shareholder. An election filed on or after the specified date is subject to the

190

ADMIN_03805

preceding sentence even if the election was filed with an effective date that is before the specified date.

(d) _Definition of a section 965 element_.  For purposes of paragraphs (b) and (c) of this section, the term section 965 element means, with respect to a United States shareholder, any of the following amounts (collectively, section 965 elements)—

(1) The United States shareholder's section 965(a) inclusion amount with respect to a specified foreign corporation;

(2) The aggregate foreign cash position of the United States shareholder; or

(3) The amount of foreign income taxes of a specified foreign corporation deemed paid by the United States shareholder under section 960 as a result of a section 965(a) inclusion.

(e) _Rules for applying paragraphs (b) and (c) of this section_--(1) _Determination of whether there is a change in the amount of a section 965 element_.  For purposes of paragraph (b) and (c) of this section, there is a change in the amount of a section 965 element of a United States shareholder as a result of a transaction, change in accounting method, or election to change an entity's classification, if, without regard to paragraph (b)(1), (c)(1), or (c)(2) of this section, the transaction, change in accounting method, or change in entity classification would—

(i) Reduce the amount described in paragraph (d)(1) of this section,

(ii) Reduce the amount described in paragraph (d)(2) of this section, but only if such amount is less than the United States shareholder's aggregate section 965(a) inclusion amount, or

(iii) Increase the amount described in paragraph (d)(3) of this section.

191

ADMIN_03806

(2) <u>Treatment of domestic pass-through owners as United States shareholders</u>.
For purposes of paragraph (b) and (c) of this section, if a domestic pass-through entity
is a United States shareholder, then a domestic pass-through owner, with respect to the
domestic pass-through entity, that is not otherwise a United States shareholder is
treated as a United States shareholder.

(f) <u>Disregard of certain transactions occurring between E&P measurement dates-</u>
-(1) <u>Disregard of specified payments</u>.  A specified payment made by a specified foreign
corporation (<u>payor specified foreign corporation</u>) to another specified foreign corporation
(<u>payee specified foreign corporation</u>) is disregarded for purposes of determining the
post-1986 earnings and profits of each of the payor specified foreign corporation and
the payee specified foreign corporation as of the E&P measurement date on December
31, 2017.

(2) <u>Definition of specified payment</u>.  For purposes of paragraph (f)(1) of this
section, the term <u>specified payment</u> means any amount paid or accrued by the payor
specified foreign corporation, including a distribution by the payor specified foreign
corporation with respect to its stock, if each of the following conditions are satisfied:

(i) Immediately before or immediately after the payment or accrual of the amount,
the payor specified foreign corporation and the payee specified foreign corporation are
related within the meaning of section 954(d)(3), substituting the term "specified foreign
corporation" for "controlled foreign corporation" in each place that it appears;

(ii) The payor specified foreign corporation and the payee specified foreign
corporation do not have the same tentative E&P measurement date;

192

ADMIN_03807

(iii) The payment or accrual of the amount occurs after November 2, 2017, and on or before December 31, 2017; and

(iv) The payment or accrual of the amount would, without regard to the application of paragraph (f)(1) of this section, reduce the post-1986 earnings and profits of the payor specified foreign corporation as of the E&P measurement date on December 31, 2017.

(3) Definition of tentative E&P measurement date.  For purposes of paragraph (f)(2) of this section, the term tentative E&P measurement date means--

(i) With respect to a specified foreign corporation that is not described in paragraph (f)(3)(ii) of this section, the E&P measurement date of the specified foreign corporation that, without regard to the application of paragraph (f)(1) of this section, would result in the "greater of" amount of accumulated post-1986 deferred foreign income described in section 965(a) and §1.965-1(f)(36); and

(ii) With respect to a specified foreign corporation that, without regard to the application of paragraph (f)(1) of this section, would be an E&P deficit foreign corporation, the E&P measurement date as of November 2, 2017.

(4) Examples.  The following examples illustrate the application of the rules in this paragraph (f).

Example 1.  Deductible payment between wholly owned specified foreign corporations is a specified payment. (i) Facts.  USP, a domestic corporation, owns all of the stock of CFC1, a foreign corporation, which owns all of the stock of CFC2, also a foreign corporation.  USP, CFC1, and CFC2 have calendar year taxable years.  On November 2, 2017, each of CFC1 and CFC2 has post-1986 earnings and profits of 100u.  Neither CFC1 nor CFC2 has post-1986 earnings and profits that are attributable to income of the specified foreign corporation that is effectively connected with the conduct of a trade or business within the United States and subject to tax under chapter 1 or that, if distributed, would be excluded from the gross income of a United States

ADMIN_03808

shareholder under section 959 or from the gross income of another shareholder if such shareholder were a United States shareholder; therefore, no adjustment is made under section 965(d)(2) or §1.965-1(f)(7) and each of CFC1's and CFC2's accumulated post-1986 deferred foreign income is equal to such corporation's post-1986 earnings and profits. On November 3, 2017, CFC2 makes a deductible payment of 10u to CFC1. The payment does not constitute subpart F income. CFC1 and CFC2 have no other items of income or deduction.

(ii) Analysis. (A) Determination of tentative E&P measurement date. Without regard to paragraph (f)(1) of this section, as of the E&P measurement date on December 31, 2017, CFC1 has post-1986 earnings and profits of 110u (100u plus 10u income from the payment from CFC2), and CFC2 has post-1986 earnings and profits of 90u (100u minus 10u deduction from the payment to CFC1). Therefore, the tentative E&P measurement date of CFC1 is December 31, 2017 (110u), and the tentative E&P measurement date of CFC2 is November 2, 2017 (100u).

(B) Application of the requirements for a specified payment. The payment from CFC2 to CFC1 is a specified payment because (A) CFC1 and CFC2 are related specified foreign corporations; (B) CFC1 and CFC2 do not have the same tentative measurement date; (C) the payment occurs after November 2, 2017, and on or before December 31, 2017; and (D) the payment would, without regard to the application of the rule in paragraph (f)(1) of this section, reduce the post-1986 earnings and profits of CFC2 as of the E&P measurement date on December 31, 2017. Under paragraph (f)(1) of this section, the payment is disregarded and CFC1 and CFC2 each have post-1986 earnings and profits of 100u as of December 31, 2017. Accordingly, the section 965(a) earnings amount of each of CFC1 and CFC2 is 100u.

Example 2. Distribution is a specified payment. (i) Facts. The facts are the same as in paragraph (i) of Example 1 of this paragraph (f)(4), except instead of a deductible payment to CFC1, CFC2 makes a 10u distribution on November 3, 2017, that, without regard to paragraph (f)(1) of this section would reduce the post-1986 earnings and profits of CFC2 as of the E&P measurement date on December 31, 2017, and increase the post-1986 earnings and profits of CFC1 as of the E&P measurement date on December 31, 2017, by 10u.

(ii) Analysis. (A) Determination of tentative E&P measurement date. The analysis is the same as in paragraph (ii)(A) of Example 1 of this paragraph (f)(4).

(B) Application of the requirements for a specified payment. The distribution is a specified payment because (A) CFC1 and CFC2 are related specified foreign corporations; (B) CFC1 and CFC2 do not have the same tentative measurement date; (C) the distribution occurs after November 2, 2017, and on or before December 31, 2017; and (D) the distribution would, without regard to the application of the rule in paragraph (f)(1) of this section, reduce the post-1986 earnings and profits of CFC2 as of the E&P measurement date on December 31, 2017. Under paragraph (f)(1) of this section, the distribution is disregarded with the result that CFC1 and CFC2 each have

194

post-1986 earnings and profits of 100u as of the E&P measurement date on December 31, 2017 and a section 965(a) earnings amount of 100u.

Example 3. Deductible payment between related (but not wholly owned) specified foreign corporations is a specified payment. (i) Facts. The facts are the same as in paragraph (i) of Example 1 of this paragraph (f)(4), except that CFC1 owns only 51% of the only class of stock of CFC2, the remainder of which is owned by USI, a United States citizen unrelated to USP, CFC1, and CFC2.

(ii) Analysis. The analysis is the same as in paragraph (ii) of Example 1 of this paragraph (f)(4); thus the payment is disregarded with the result that CFC1 and CFC2 each have post-1986 earnings and profits of 100u as of the E&P measurement date on December 31, 2017, and a section 965(a) earnings amount of 100u.

Example 4. Deductible payment between unrelated specified foreign corporations is not a specified payment. (i) Facts. The facts are the same as in paragraph (i) of Example 1 of this paragraph (f)(4), except that CFC1 owns only 50% of the only class of stock of CFC2, the remainder of which is owned by USI, a United States citizen unrelated to USP, CFC1, and CFC2.

(ii) Analysis. Paragraph (f)(1) of this section does not apply because CFC1 and CFC2 are not related. Thus, the payment is taken into account with the result that CFC1 has post-1986 earnings and profits of 110u as of the E&P measurement date on December 31, 2017, and a section 965(a) earnings amount of 110u.

Example 5. Deductible payment and income accrued from unrelated persons are not specified payments. (i) Facts. The facts are the same as in paragraph (i) of Example 1 of this paragraph (f)(4), except that CFC2 does not make a deductible payment to CFC1, and, between E&P measurement dates, CFC2 accrues gross income of 20u from a person that is not related to CFC2, and CFC1 incurs a deductible expense of 20u to a person that is not related to CFC1.

(ii) Analysis. Paragraph (f)(1) of this section does not apply because neither the deductible expense of CFC1 nor the income accrual by CFC2 are attributable to a specified payment.

Example 6. Deductible payment and income accrued with respect to unrelated persons are not specified payments; deductible payment between wholly specified foreign corporations is a specified payment. (i) Facts. The facts are the same as in paragraph (i) of Example 5 of this paragraph (f)(4), except that CFC2 also makes a deductible payment of 10u to CFC1 on November 3, 2017.

(ii) Analysis. (A) Determination of tentative E&P measurement date. Without regard to paragraph (f)(1) of this section, as of the E&P measurement date on December 31, 2017, CFC1 has post-1986 earnings and profits of 90u (100u minus 20u deductible expense plus 10u income from the payment from CFC2), and CFC2 has

195

post-1986 earnings and profits of 110u (100u plus 20u gross income minus 10u deduction from the deductible payment to CFC1). Therefore, the tentative E&P measurement date of CFC1 is November 2, 2017 (100u) and the tentative E&P measurement date of CFC2 is December 31, 2017 (110u).

(B) Application of the requirements for a specified payment. The deductible payment is a specified payment because (A) CFC1 and CFC2 are related specified foreign corporations; (B) CFC1 and CFC2 do not have the same tentative measurement date; (C) the payment occurs after November 2, 2017, and on or before December 31, 2017; and (D) the deductible payment would, without regard to the application of the rule in paragraph (f)(1) of this section, reduce the post-1986 earnings and profits of CFC2 as of the E&P measurement date on December 31, 2017. Accordingly, under paragraph (f)(1) of this section, the deductible payment is disregarded with the result that CFC1 and CFC2 have 80u and 120u of post-1986 earnings and profits as of the E&P measurement date on December 31, 2017, respectively. Accordingly, CFC1 and CFC2 have section 965(a) earnings amounts of 100u and 120u, respectively.

Par. 9. Section 1.965-5 is added to read as follows:

§1.965-5 Allowance of a credit or deduction for foreign income taxes.

(a) Scope. This section provides rules for the allowance of a credit or deduction for foreign income taxes in connection with the application of section 965. Paragraph (b) of this section provides rules under section 965(g) for the allowance of a credit or deduction for foreign income taxes paid or accrued. Paragraph (c) of this section provides rules for the allowance of a credit or deduction for foreign income taxes treated as paid or accrued in connection with the application of section 965. Paragraph (d) of this section defines the term "applicable percentage."

(b) Rules for foreign income taxes paid or accrued. Neither a deduction (including under section 164) nor a credit under section 901 is allowed for the applicable percentage of any foreign income taxes paid or accrued with respect to any amount for which a section 965(c) deduction is allowed for a section 958(a) U.S. shareholder inclusion year. Neither a deduction (including under section 164) nor a credit under section 901 is allowed for the applicable percentage of any foreign income taxes

196

ADMIN_03811

attributable to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits. Accordingly, no deduction or credit is allowed for the applicable percentage of any withholding taxes imposed on a United States shareholder by the jurisdiction of residence of the distributing foreign corporation with respect to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits. Similarly, no deduction or credit is allowed for the applicable percentage of net basis taxes imposed on a United States citizen by the citizen's jurisdiction of residence upon receipt of a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits.

(c) Rules for foreign income taxes treated as paid or accrued--(1) Disallowed credit--(i) In general. A credit under section 901 is not allowed for the applicable percentage of any foreign income taxes treated as paid or accrued with respect to any amount for which a section 965(c) deduction is allowed for a section 958(a) U.S. shareholder inclusion year. For purposes of the preceding sentence, taxes treated as paid or accrued include foreign income taxes deemed paid under section 960(a)(1) with respect to a section 965(a) inclusion, foreign income taxes deemed paid under section 960(a)(3) with respect to distributions of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits, foreign income taxes allocated to an entity under §1.901-2(f)(4), and a distributive share of foreign income taxes paid or accrued by a partnership.

(ii) Foreign income taxes deemed paid under section 960(a)(3) (as in effect on December 21, 2017). Foreign income taxes deemed paid by a domestic corporation

197

under section 960(a)(3) with respect to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits include only the foreign income taxes paid or accrued by an upper-tier foreign corporation with respect to a distribution of section 965(a) previously taxed earnings and profits or section 965(b) previously taxed earnings and profits from a lower-tier foreign corporation.  No credit is allowed under section 960(a)(3) or any other section for foreign income taxes that would have been deemed paid under section 960(a)(1) with respect to the portion of a section 965(a) earnings amount that is reduced under §1.965-1(b)(2) or §1.965-8(b).

(iii) <u>Foreign income taxes deemed paid under section 960(b) (as applicable to taxable years of foreign corporations beginning after December 31, 2017, and to taxable years of United States persons in which or with which such taxable years of foreign corporations end)</u>.  [Reserved]

(2) <u>Disallowed deduction</u>.  No deduction (including under section 164) is allowed for the applicable percentage of any foreign income taxes treated as paid or accrued with respect to any amount for which a section 965(c) deduction is allowed.  Such taxes include foreign income taxes allocated to an entity under §1.901-2(f)(4) and a distributive share of foreign income taxes paid or accrued by a partnership.

(3) <u>Coordination with section 78</u>--(i) <u>In general</u>.  With respect to foreign income taxes deemed paid by a domestic corporation with respect to its section 965(a) inclusion amount for a section 958(a) U.S. shareholder inclusion year, section 78 shall apply only to so much of such taxes as bears the same proportion to the amount of such taxes as--

(A) The excess of--

198

ADMIN_03813

(1) The section 965(a) inclusion amount for a section 958(a) U.S. shareholder inclusion year, over

(2) The section 965(c) deduction amount allowable with respect to such section 965(a) inclusion amount, bears to

(B) Such section 965(a) inclusion amount.

(ii) Domestic corporation that is a domestic pass-through owner.  With respect to foreign income taxes deemed paid by a domestic corporation attributable to such corporation's domestic pass-through owner share of a section 965(a) inclusion amount of a domestic pass-through entity, section 78 shall apply only to so much of such taxes as bears the same proportion to the amount of such taxes as the proportion determined under paragraph (c)(3)(i) of this section as applied to the domestic pass-through entity's section 965(a) inclusion amount for a section 958(a) U.S. shareholder inclusion year.

(d) Applicable percentage--(1) In general.  For purposes of this section, the term applicable percentage means, with respect to a section 958(a) U.S. shareholder and a section 958(a) U.S. shareholder inclusion year, the amount (expressed as a percentage) equal to the sum of--

(i) 0.771 multiplied by the ratio of--

(A) The section 958(a) U.S. shareholder's 8 percent rate amount for the section 958(a) U.S. shareholder inclusion year, divided by

(B) The sum of the section 958(a) U.S. shareholder's 8 percent rate amount for the section 958(a) U.S. shareholder inclusion year plus the section 958(a) U.S. shareholder's 15.5 percent rate amount for the section 958(a) U.S. shareholder inclusion year; plus

199

ADMIN_03814

(ii) 0.557 multiplied by the ratio of--

(A) The section 958(a) U.S. shareholder's 15.5 percent rate amount for the section 958(a) U.S. shareholder inclusion year, divided by

(B) The amount described in paragraph (d)(1)(i)(B) of this section.

(2) Applicable percentage for domestic pass-through owners.  In the case of a domestic pass-through owner that has a domestic pass-through owner share of a domestic pass-through entity's section 965(a) inclusion amount, the domestic pass-through owner's applicable percentage that is applied to foreign income taxes attributable to such section 965(a) inclusion amount is equal to the applicable percentage determined under paragraph (d)(1) of this section with respect to the domestic pass-through entity that is the section 958(a) U.S. shareholder.

Par. 10.  Section 1.965-6 is added to read as follows:

§1.965-6 Computation of foreign income taxes deemed paid and allocation and apportionment of deductions.

(a) Scope.  This section provides rules for the computation of foreign income taxes deemed paid and the allocation and apportionment of deductions.  Paragraphs (b) and (c) of this section provide the general rules for the computation of foreign income taxes deemed paid under sections 902 and 960.  Paragraph (d) of this section provides rules for allocation and apportionment of expenses.

(b) Computation of foreign incomes taxes deemed paid.  For purposes of determining foreign income taxes deemed paid under section 960(a)(1) with respect to a section 965(a) inclusion attributable to a deferred foreign income corporation, section 902 applies as if the section 965(a) inclusion, translated (if necessary) into the

200

functional currency of the deferred foreign income corporation using the spot rate on December 31, 2017, were a dividend paid by the deferred foreign income corporation.

(c) Section 902 fraction--(1) In general.  The term section 902 fraction means, with respect to a foreign corporation that is either a deferred foreign income corporation or an E&P deficit foreign corporation, the fraction that is--

(i) The dividend paid by, or the inclusion under section 951(a)(1) (including a section 965(a) inclusion) with respect to, the foreign corporation, as applicable (the numerator), divided by

(ii) The foreign corporation's post-1986 undistributed earnings (the denominator). See section 902(a).

(2) Dividend or inclusion in excess of post-1986 undistributed earnings.  When the denominator of the section 902 fraction is positive but less than the numerator of such fraction, the section 902 fraction is one.  When the denominator of the section 902 fraction is zero or less than zero, the section 902 fraction is zero and no foreign taxes are deemed paid.

(3) Treatment of adjustment under section 965(b)(4)(B).  For purposes of section 902(c)(1), the post-1986 undistributed earnings of an E&P deficit foreign corporation are increased under section 965(b)(4)(B) and §1.965-2(d)(2)(i)(A) as of the first day of the foreign corporation's first taxable year following the E&P deficit foreign corporation's last taxable year that begins before January 1, 2018.

(d) Allocation and apportionment of deductions.  For purposes of allocating and apportioning expenses, a section 965(c) deduction does not result in any gross income, including a section 965(a) inclusion, being treated as exempt, excluded, or eliminated

201

ADMIN_03816

income within the meaning of section 864(e)(3) or §1.861-8T(d).  Similarly, a section

965(c) deduction does not result in the treatment of stock as an exempt asset within the

meaning of section 864(e)(3) or §1.861-8T(d).  In addition, consistent with the general

inapplicability of §1.861-8T(d)(2)  to earnings and profits described in section 959(c)(1)

or 959(c)(2), neither section 965(a) previously taxed earnings and profits nor section

965(b) previously taxed earnings and profits are treated as giving rise to gross income

that is exempt, excluded, or eliminated income.  Similarly, the asset that gives rise to a

section 965(a) inclusion, section 965(a) previously taxed earnings and profits, or section

965(b) previously taxed earnings and profits is not treated as a tax-exempt asset.

Par. 11.  Section 1.965-7 is added to read as follows:

§1.965-7 Elections, payment, and other special rules.

(a) Scope.  This section provides rules regarding certain elections and payments.

Paragraph (b) of this section provides rules regarding the section 965(h) election.

Paragraph (c) of this section provides rules regarding the section 965(i) election.

Paragraph (d) of this section provides rules regarding the section 965(m) election and a

special rule for real estate investment trusts.  Paragraph (e) of this section provides

rules regarding the section 965(n) election.  Paragraph (f) of this section provides rules

regarding the election to use the alternative method for calculating post-1986 earnings

and profits.  Paragraph (g) of this section provides definitions that apply for purposes of

this section.  For additional definitions that apply for purposes of the section 965

regulations, see §1.965-1(f).

(b) Section 965(h) election--(1) In general.  Any person with a section 965(h) net

tax liability (that is, a section 958(a) U.S. shareholder or a domestic pass-through owner

202

ADMIN_03817

with respect to a domestic pass-through entity that is a section 958(a) U.S. shareholder, but not a domestic pass-through entity itself) may elect under section 965(h) and this paragraph (b) to pay its section 965(h) net tax liability in eight installments. This election may be revoked only by paying the full amount of the remaining unpaid section 965(h) net tax liability.

(i) <u>Amount of installments</u>.  Except as provided in paragraph (b)(3) of this section, if a person makes a section 965(h) election, the amounts of the installments are--

(A) Eight percent of the section 965(h) net tax liability in the case of each of the first five installments;

(B) Fifteen percent of the section 965(h) net tax liability in the case of the sixth installment;

(C) Twenty percent of the section 965(h) net tax liability in the case of the seventh installment; and

(D) Twenty-five percent of the section 965(h) net tax liability in the case of the eighth installment.

(ii) <u>Increased installments due to a deficiency or a timely filed or amended return</u>-
-(A) <u>In general</u>.  If a person makes a section 965(h) election, except as provided in paragraph (b)(1)(ii)(C) of this section, any deficiency or additional liability will be prorated to the installments described under paragraph (b)(1)(i) of this section if any of the following occur:

(<u>1</u>) A deficiency is assessed with respect to the person's section 965(h) net tax liability;

203

ADMIN_03818

(2) The person files a return by the due date (taking into account extensions, if any) increasing the amount of its section 965(h) net tax liability beyond that taken into account in paying the first installment described under paragraph (b)(1)(i) of this section; or

(3) The person files an amended return that reflects an increase in the amount of its section 965(h) net tax liability.

(B) Timing. If the due date for the payment of an installment to which the deficiency or additional liability is prorated has passed, the amount prorated to such installment must be paid on notice and demand by the Secretary. If the due date for the payment of an installment to which the deficiency or additional liability is prorated has not passed, then such amount will be due at the same time as, and as part of, the relevant installment.

(C) Exception for negligence, intentional disregard, or fraud. If a deficiency or additional liability is due to negligence, intentional disregard of rules and regulations, or fraud with intent to evade tax, the proration rule of this paragraph (b)(1)(ii) will not apply and the deficiency or additional liability (as well as any applicable interest and penalties) must be paid on notice and demand by the Secretary or, in the case of an additional liability reported on a return increasing the amount of the section 965(h) net tax liability after payment of the first installment or on an amended return, with the filing of the return.

(iii) Due date of installments--(A) In general. If a person makes a section 965(h) election, the first installment payment is due on the due date (without regard to extensions) for the return for the relevant taxable year. For purposes of this paragraph

204

ADMIN_03819

(b), the term <u>relevant taxable year</u> means, in the case in which the person is a section 958(a) U.S. shareholder, the section 958(a) U.S. shareholder inclusion year, or, in the case in which the person is a domestic pass-through owner, the taxable year in which the person has the section 965(a) inclusion to which the section 965(h) net tax liability is attributable. Each succeeding installment payment is due on the due date (without regard to extensions) for the return for the taxable year following the taxable year with respect to which the previous installment payment was made.

(B) <u>Extension for specified individuals</u>. If a person is a specified individual with respect to a taxable year within which an installment payment is due pursuant to paragraph (b)(1)(iii)(A) of this section, then, for purposes of determining the due date of an installment payment under paragraph (b)(1)(iii)(A) of this section, the due date of the return (without regard to extensions) due within the taxable year will be treated as the fifteenth day of the sixth month following the close of the prior taxable year. This paragraph (b)(1)(iii)(B) is applicable regardless of whether the person is a specified individual with respect to the relevant taxable year.

(2) <u>Manner of making election</u>--(i) <u>Eligibility</u>. Any person with a section 965(h) net tax liability may make the section 965(h) election, provided that, with respect to the person, none of the acceleration events described in paragraph (b)(3)(ii) of this section have occurred before the election is made. Notwithstanding the preceding sentence, a person that would be eligible to make the section 965(h) election but for the occurrence of an event described in paragraph (b)(3)(ii) of this section may make the section 965(h) election if the exception described in paragraph (b)(3)(iii)(A) of this section applies.

205

ADMIN_03820

(ii) <u>Timing</u>. A section 965(h) election must be made no later than the due date (taking into account extensions, if any, or any additional time that would have been granted if the person had made an extension request) for the return for the relevant taxable year. Relief is not available under §301.9100-2 or 301.9100-3 to file a late election.

(iii) <u>Election statement</u>. Except as otherwise provided in publications, forms, instructions, or other guidance, to make a section 965(h) election, a person must attach a statement, signed under penalties of perjury, to its return for the relevant taxable year. The statement must include the person's name, taxpayer identification number, total net tax liability under section 965, section 965(h) net tax liability, section 965(i) net tax liability with respect to which a section 965(i) election is effective (if applicable), and the anticipated amounts of each installment described under paragraph (b)(1)(i) of this section. The statement must be filed in the manner prescribed in publications, forms, instructions, or other guidance.

(3) <u>Acceleration of payment</u>--(i) <u>Acceleration</u>. Notwithstanding paragraph (b)(1)(i) of this section, if a person makes a section 965(h) election, and an acceleration event described in paragraph (b)(3)(ii) of this section subsequently occurs, then, except as provided in paragraph (b)(3)(iii) of this section, the unpaid portion of the remaining installments will be due on the date of the acceleration event (or in the case of a title 11 or similar case, the day before the petition is filed).

(ii) <u>Acceleration events</u>. The following events are acceleration events for purposes of paragraph (b)(3)(i) of this section with respect to a person that has made a section 965(h) election:

206

ADMIN_03821

(A) An addition to tax is assessed for the failure to timely pay an installment described in paragraph (b)(1)(i) of this section;

(B) A liquidation, sale, exchange, or other disposition of substantially all of the assets of the person (including in a title 11 or similar case, or, in the case of an individual, by reason of death);

(C) In the case of a person that is not an individual, a cessation of business by the person;

(D) Any event that results in the person no longer being a United States person, including a resident alien (as defined in section 7701(b)(1)(A)) becoming a nonresident alien (as defined in section 7701(b)(1)(B));

(E) In the case of a person that was not a member of any consolidated group, the person becoming a member of a consolidated group;

(F) In the case of a consolidated group, the group ceasing to exist (including by reason of the acquisition of a consolidated group within the meaning of §1.1502-13(j)(5)) or the group otherwise discontinuing in the filing of a consolidated return; or

(G) A determination by the Commissioner described in the second sentence of paragraph (b)(3)(iii)(C)(2) of this section.

(iii) Eligible section 965(h) transferee exception--(A) In general.  Paragraph (b)(3)(i) of this section does not apply (such that the unpaid portion of all remaining installments will not be due as of the date of the acceleration event) to a person with respect to which an acceleration event occurs if the requirements described in paragraphs (b)(3)(iii)(A)(1) and (2) of this section are satisfied.  A person with respect to

207

which an acceleration event described in this paragraph (b)(3)(iii)(A) occurs is referred to as an eligible section 965(h) transferor.

(1) Requirement to have a covered acceleration event. The acceleration event satisfies the requirements of this paragraph (b)(3)(iii)(A)(1) if it is described in--

(i) Paragraph (b)(3)(ii)(B) of this section and the acceleration event is a qualifying consolidated group member transaction within the meaning of paragraph (b)(3)(iii)(E) of this section;

(ii) Paragraph (b)(3)(ii)(B) of this section (other than, in the case of an individual, an acceleration event caused by reason of death) in a transaction that is not a qualifying consolidated group member transaction;

(iii) Paragraph (b)(3)(ii)(E) of this section; or

(iv) Paragraph (b)(3)(ii)(F) of this section, and the acceleration event results from the acquisition of a consolidated group within the meaning of §1.1502-13(j)(5) and the acquired consolidated group members join a different consolidated group as of the day following the acquisition.

(2) Requirement to enter into a transfer agreement. An eligible section 965(h) transferor and an eligible section 965(h) transferee (as defined in paragraph (b)(3)(iii)(B) of this section) must enter into an agreement with the Commissioner that satisfies the requirements of paragraph (b)(3)(iii)(B) of this section.

(B) Transfer agreement--(1) Eligibility. A transfer agreement that satisfies the requirements of this paragraph (b)(3)(iii)(B) must be entered into by an eligible section 965(h) transferor and an eligible section 965(h) transferee. For this purpose, the term

208

ADMIN_03823

eligible section 965(h) transferee refers to a single United States person that is not a domestic pass-through entity and that--

(i) With respect to an acceleration event described in paragraph (b)(3)(iii)(A)(1)(i) of this section, is a departing member (as defined in paragraph (b)(3)(iii)(E)(1)(i) of this section) or its qualified successor (as defined in paragraph (b)(3)(iii)(E)(2) of this section);

(ii) With respect to an acceleration event described in paragraph (b)(3)(iii)(A)(1)(ii) of this section, acquires substantially all of the assets of an eligible section 965(h) transferor;

(iii) With respect to an acceleration event described in paragraph (b)(3)(iii)(A)(1)(iii) of this section, is the agent (within the meaning of §1.1502-77) of the consolidated group that the eligible section 965(h) transferor joins; or

(iv) With respect to an acceleration event described in paragraph (b)(3)(iii)(A)(1)(iv) of this section, is the agent (within the meaning of §1.1502-77) of the surviving consolidated group.

(2) Filing requirements--(i) In general. A transfer agreement must be timely filed. Except as provided in paragraph (b)(3)(iii)(B)(2)(ii) of this section, a transfer agreement is considered timely filed only if the transfer agreement is filed within 30 days of the date that the acceleration event occurs. The transfer agreement must be filed in accordance with the rules provided in forms, instructions, or other guidance. In addition, a duplicate copy of the transfer agreement must be attached to the returns of both the eligible section 965(h) transferee and the eligible section 965(h) transferor for the taxable year during which the acceleration event occurs filed by the due date for such returns (taking

209

ADMIN_03824

into account extensions, if any).  Relief is not available under §301.9100-2 or 301.9100-3 to file a transfer agreement late.

(ii) Transition rule.  If an acceleration event occurs before [INSERT DATE 30 DAYS AFTER PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER], the transfer agreement must be filed by [INSERT DATE 60 DAYS AFTER PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER] in order to be considered timely filed.

(3) Signature requirement.  The transfer agreement that is filed within 30 days of the acceleration event must be signed under penalties of perjury by a person who is authorized to sign a return on behalf of the eligible section 965(h) transferor and a person who is authorized to sign a return on behalf of the eligible section 965(h) transferee.

(4) Terms of agreement.  A transfer agreement under this paragraph (b)(3)(iii)(B) must be entitled "Transfer Agreement Under Section 965(h)(3)" and must contain the following information and representations--

(i) A statement that the document constitutes an agreement by the eligible section 965(h) transferee to assume the liability of the eligible section 965(h) transferor for any unpaid installment payments of the eligible section 965(h) transferor under section 965(h);

(ii) A statement that the eligible section 965(h) transferee (and, if the eligible section 965(h) transferor continues in existence immediately after the acceleration event, the eligible section 965(h) transferor) agrees to comply with all of the conditions

210

ADMIN_03825

and requirements of section 965(h) and paragraph (b) of this section, as well as any other applicable requirements in the section 965 regulations;

(iii) The name, address, and taxpayer identification number of the eligible section 965(h) transferor and the eligible section 965(h) transferee;

(iv) The amount of the eligible section 965(h) transferor's section 965(h) net tax liability remaining unpaid, as determined by the eligible section 965(h) transferor, which is subject to adjustment by the Commissioner;

(v) A copy of the eligible section 965(h) transferor's most recent Form 965-A or Form 965-B, as applicable;

(vi) A detailed description of the acceleration event that led to the transfer agreement;

(vii) A representation that the eligible section 965(h) transferee is able to make the remaining payments required under section 965(h) and paragraph (b) of this section with respect to the section 965(h) net tax liability being assumed; and

(viii) If the eligible section 965(h) transferor continues to exist immediately after the acceleration event, an acknowledgement that the eligible section 965(h) transferor and any successor to the eligible section 965(h) transferor will remain jointly and severally liable for any unpaid installment payments of the eligible section 965(h) transferor under section 965(h), including, if applicable, under §1.1502-6.

(5) Consolidated groups. For purposes of this paragraph (b)(3)(iii)(B), in the case of a consolidated group, the terms "eligible section 965(h) transferor" and "eligible section 965(h) transferee" each refer to a consolidated group that is a party to a covered acceleration event described in paragraph (b)(3)(iii)(A)(1) of this section. In such a

211

case, any transfer agreement under this paragraph (b)(3)(iii)(B) must be entered into by the agent (as defined in §1.1502-77) of the relevant consolidated group.

(C) Consent of Commissioner--(1) In general. Except as otherwise provided in publications, instructions, forms, or other guidance, if an eligible section 965(h) transferor and an eligible section 965(h) transferee file a transfer agreement in accordance with the provisions of paragraph (b)(3)(iii)(B) of this section, the eligible section 965(h) transferor and the eligible section 965(h) transferee will be considered to have entered into an agreement described in paragraph (b)(3)(iii)(A)(2) of this section with the Commissioner for purposes of section 965(h)(3) and paragraph (b)(3)(iii) of this section. If the Commissioner determines that additional information is necessary (for example, additional information regarding the ability of the eligible section 965(h) transferee to fully pay the remaining section 965(h) net tax liability), the eligible section 965(h) transferee must provide such information upon request.

(2) Material misrepresentations and omissions. If the Commissioner determines that an agreement filed by an eligible section 965(h) transferor and an eligible section 965(h) transferee contains a material misrepresentation or material omission, then the Commissioner may reject the transfer agreement (effective as of the date of the related acceleration event). In the alternative, on the date that the Commissioner determines that the transfer agreement includes a material misrepresentation or material omission, the Commissioner may determine that an acceleration event has occurred with respect to the eligible section 965(h) transferee as of the date of the determination, such that any unpaid installment payments of the eligible section 965(h) transferor that were

212

ADMIN_03827

assumed by the eligible section 965(h) transferee become due on the date of the determination.

(D) Effect of assumption--(1) In general. If the exception in this paragraph (b)(3)(iii) applies with respect to an eligible section 965(h) transferor and an eligible section 965(h) transferee, the eligible section 965(h) transferee assumes all of the outstanding obligations and responsibilities of the eligible section 965(h) transferor with respect to the section 965(h) net tax liability as though the eligible section 965(h) transferee had included the section 965(a) inclusion in income. Accordingly, the eligible section 965(h) transferee is responsible for making payments and reporting with respect to any unpaid installment payments. In addition, for example, if an acceleration event described in paragraph (b)(3)(ii) of this section occurs with respect to an eligible section 965(h) transferee, any unpaid installment payments of the eligible section 965(h) transferor that were assumed by the eligible section 965(h) transferee will become due on the date of such event, subject to any applicable exception in paragraph (b)(3)(iii) of this section.

(2) Eligible section 965(h) transferor liability. An eligible section 965(h) transferor (or a successor) remains jointly and severally liable for any unpaid installment payments of the eligible section 965(h) transferor that were assumed by the eligible section 965(h) transferee, as well as any penalties, additions to tax, or other additional amounts attributable to such net tax liability.

(E) Qualifying consolidated group member transaction--(1) Definition of qualifying consolidated group member transaction. For purposes of this paragraph (b)(3), the term qualifying consolidated group member transaction means a transaction in which--

213

(i) A member of a consolidated group (the departing member) ceases to be a member of the consolidated group (including by reason of the distribution, sale, or exchange of the departing member's stock);

(ii) The transaction results in the consolidated group (which is treated as a single person for this purpose under §1.965-8(e)(1)) being treated as transferring substantially all of its assets for purposes of paragraph (b)(3)(ii)(B) of this section; and

(iii) The departing member either continues to exist immediately after the transaction or has a qualified successor.

(2) Definition of qualified successor. For purposes of this paragraph (b)(3), the term qualified successor means, with respect to a departing member described in this paragraph (b)(3)(iii)(E), another domestic corporation (or consolidated group) that acquires substantially all of the assets of the departing member (including in a transaction described in section 381(a)(2)).

(3) Departure of multiple members of a consolidated group. Multiple members that deconsolidate from the same consolidated group as a result of a single transaction are treated as a single departing member to the extent that, immediately after the transaction, they become members of the same (second) consolidated group, which would be treated as a single person under §1.965-8(e)(1).

(c) Section 965(i) election--(1) In general. Each shareholder, other than a domestic pass-through entity, of an S corporation that is a United States shareholder of a deferred foreign income corporation may elect under section 965(i) and this paragraph (c) to defer the payment of the shareholder's section 965(i) net tax liability with respect to the S corporation until the shareholder's taxable year that includes a triggering event

214

ADMIN_03829

described in paragraph (c)(3) of this section.  This election may be revoked only by paying the full amount of the unpaid section 965(i) net tax liability.

(2) Manner of making election--(i) Eligibility.  Each shareholder with a section 965(i) net tax liability with respect to an S corporation may make the section 965(i) election with respect to such S corporation, provided that, with respect to the shareholder, none of the triggering events described in paragraph (c)(3)(ii) of this section have occurred before the election is made.  Notwithstanding the preceding sentence, a shareholder that would be eligible to make the section 965(i) election but for the occurrence of an event described in paragraph (c)(3)(ii) of this section may make the section 965(i) election if an exception described in paragraph (c)(3)(ii) of this section applies.

(ii) Timing.  A section 965(i) election must be made no later than the due date (taking into account extensions, if any) for the shareholder's return for each taxable year that includes the last day of the taxable year of the S corporation in which the S corporation has a section 965(a) inclusion to which the shareholder's section 965(i) net tax liability is attributable.  Relief is not available under §301.9100-2 or 301.9100-3 to make a late election.

(iii) Election statement.  Except as otherwise provided in publications, forms, instructions, or other guidance, to make a section 965(i) election, a shareholder must attach a statement, signed under penalties of perjury, to its return for the taxable year that includes the last day of a taxable year of the S corporation in which the S corporation has a section 965(a) inclusion to which the shareholder's section 965(i) net tax liability is attributable.  The statement must include the shareholder's name,

215

ADMIN_03830

taxpayer identification number, the name and taxpayer identification number of the S corporation with respect to which the election is made, the amount described in paragraph (g)(10)(i)(A) of this section as modified by paragraph (g)(6) of this section for purposes of determining the section 965(i) net tax liability with respect to the S corporation, the amount described in paragraph (g)(10)(i)(B) of this section, and the section 965(i) net tax liability with respect to the S corporation.  The statement must be filed in the manner prescribed in publications, forms, instructions, or other guidance.

(3) Triggering events--(i) In general.  If a shareholder makes a section 965(i) election with respect to an S corporation, the shareholder defers payment of its section 965(i) net tax liability with respect to the S corporation until the shareholder's taxable year that includes the occurrence of a triggering event described in paragraph (c)(3)(ii) of this section with respect to the section 965(i) net tax liability with respect to the S corporation.  If a triggering event described in paragraph (c)(3)(ii) of this section with respect to an S corporation occurs, except as provided in paragraph (c)(3)(iv) of this section, the shareholder's section 965(i) net tax liability with respect to the S corporation will be assessed as an addition to tax for the shareholder's taxable year that includes the triggering event.

(ii) Triggering events.  The following events are considered triggering events for purposes of paragraph (c)(3)(i) of this section with respect to a shareholder's section 965(i) net tax liability with respect to an S corporation--

(A) The corporation ceases to be an S corporation (determined as of the first day of the first taxable year that the corporation is not an S corporation);

216

ADMIN_03831

(B) A liquidation, sale, exchange, or other disposition of substantially all of the assets of the S corporation (including in a title 11 or similar case), a cessation of business by the S corporation, or the S corporation ceasing to exist; or

(C) The transfer of any share of stock of the S corporation by the shareholder (including by reason of death or otherwise).

(iii) _Partial transfers_. If an S corporation shareholder transfers less than all of its shares of stock of the S corporation, the transfer will be a triggering event only with respect to the portion of a shareholder's section 965(i) net tax liability that is properly allocable to the transferred shares.

(iv) _Eligible section 965(i) transferee exception_--(A) _In general_. Paragraph (c)(3)(i) of this section will not apply (such that a shareholder's section 965(i) net tax liability with respect to an S corporation will not be assessed as an addition to tax for the shareholder's taxable year that includes the triggering event) if the requirements described in paragraphs (c)(3)(iv)(A)(1) and (2) of this section are satisfied. A shareholder with respect to which a triggering event described in this paragraph (c)(3)(iv)(A) occurs is referred to as an _eligible section 965(i) transferor_.

(1) _Requirement to have a covered triggering event_. The triggering event satisfies the requirements of this paragraph (c)(3)(iv)(A)(1) if it is described in paragraph (c)(3)(ii)(C) of this section.

(2) _Requirement to enter into a transfer agreement_. The shareholder with respect to which a triggering event occurs and an eligible section 965(i) transferee (as defined in paragraph (c)(3)(iv)(B)(1) of this section) must enter into an agreement with

ADMIN_03832

the Commissioner that satisfies the requirements of paragraph (c)(3)(iv)(B) of this section.

(B) Transfer agreement--(1) Eligibility.  A transfer agreement that satisfies the requirements of this paragraph (c)(3)(iv)(B) may be entered into by an eligible section 965(i) transferor and an eligible section 965(i) transferee.  For this purpose, the term eligible section 965(i) transferee refers to a single United States person that is not a domestic pass-through entity.

(2) Filing requirements--(i) In general.  A transfer agreement must be timely filed. Except as provided in paragraph (c)(3)(iv)(B)(2)(ii) of this section, a transfer agreement is considered timely filed only if the transfer agreement is filed within 30 days of the date that the triggering event occurs.  The transfer agreement must be filed in accordance with the rules provided in forms, instructions, or other guidance.  In addition, a duplicate copy of the transfer agreement must be attached to the returns of both the eligible section 965(i) transferee and the eligible section 965(i) transferor for the taxable year during which the triggering event occurs filed by the due date (taking into account extensions, if any) for such returns.  Relief is not available under §301.9100-2 or 301.9100-3 to file a transfer agreement late.

(ii) Transition rule.  If a triggering event occurs before **[INSERT DATE 30 DAYS AFTER PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER]**, the transfer agreement must be filed by **[INSERT DATE 60 DAYS AFTER PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER]** in order to be considered timely filed.

218

ADMIN_03833

(3) <u>Signature requirement</u>. The transfer agreement that is filed within 30 days of the triggering event must be signed under penalties of perjury by a person who is authorized to sign a return on behalf of the eligible section 965(i) transferor and a person who is authorized to sign a return on behalf of the eligible section 965(i) transferee.

(4) <u>Terms of agreement</u>. A transfer agreement under this paragraph (c)(3)(iv)(B) must be entitled "Transfer Agreement Under Section 965(i)(2)" and must contain the following information and representations:

(i) A statement that the document constitutes an agreement by the eligible section 965(i) transferee to assume the liability of the eligible section 965(i) transferor for the unpaid portion of the section 965(i) net tax liability, or, in the case of a partial transfer, for the unpaid portion of the section 965(i) net tax liability attributable to the transferred stock;

(ii) A statement that the eligible section 965(i) transferee agrees to comply with all of the conditions and requirements of section 965(i) and paragraph (c) of this section, including the annual reporting requirement, as well as any other applicable requirements in the section 965 regulations;

(iii) The name, address, and taxpayer identification number of the eligible section 965(i) transferor and the eligible section 965(i) transferee;

(iv) The amount of the eligible section 965(i) transferor's unpaid section 965(i) net tax liability or, in the case of a partial transfer, the unpaid portion of the section 965(i) net tax liability attributable to the transferred stock, each as determined by the eligible section 965(i) transferor, which is subject to adjustment by the Commissioner;

219

ADMIN_03834

(v) A copy of the eligible section 965(i) transferor's most recent Form 965-A;

(vi) A detailed description of the triggering event that led to the transfer agreement, including the name and taxpayer identification number of the S corporation with respect to which the section 965(i) election was effective;

(vii) A representation that the eligible section 965(i) transferee is able to pay the section 965(i) net tax liability being assumed; and

(viii) An acknowledgement that the eligible section 965(i) transferor and any successor to the eligible section 965(i) transferor will remain jointly and severally liable for the section 965(i) net tax liability being assumed by the eligible section 965(i) transferee.

(C) Consent of Commissioner--(1) In general.  Except as otherwise provided in publications, instructions, forms, or other guidance, if an eligible section 965(i) transferor and an eligible section 965(i) transferee file a transfer agreement in accordance with the provisions of paragraph (c)(3)(iv)(B) of this section, the eligible section 965(i) transferor and the eligible section 965(i) transferee will be considered to have entered into an agreement with the Commissioner for purposes of section 965(i)(2) and paragraph (c)(3)(iv) of this section.  If the Commissioner determines that additional information is necessary (for example, additional information regarding the ability of the eligible section 965(i) transferee to pay the eligible section 965(i) transferor's unpaid net section 965(i) tax liability), the eligible section 965(i) transferee must provide such information upon request.

(2) Material misrepresentations and omissions.  If the Commissioner determines that an agreement filed by an eligible section 965(i) transferor and an eligible section

220

965(i) transferee contains a material misrepresentation or material omission, then the Commissioner may reject the transfer agreement (effective as of the date of the related triggering event). In the alternative, on the date that the Commissioner determines that the transfer agreement includes a material misrepresentation or material omission, the Commissioner may determine that a triggering event has occurred with respect to the eligible section 965(i) transferee as of the date of the determination, such that the unpaid section 965(i) net tax liability of the eligible section 965(i) transferor that was assumed by the eligible section 965(i) transferee becomes due on the date of the determination.

(D) Effect of assumption--(1) In general. When the exception in this paragraph (c)(3)(iv) applies with respect to an eligible section 965(i) transferor and an eligible section 965(i) transferee, the eligible section 965(i) transferee assumes all of the outstanding obligations and responsibilities of the eligible section 965(i) transferor with respect to the section 965(i) net tax liability with respect to the S corporation as though the eligible section 965(i) transferee had included the section 965(a) inclusion in income. Accordingly, the eligible section 965(i) transferee is responsible for making payments and reporting with respect to any unpaid section 965(i) net tax liability with respect to the S corporation. In addition, for example, if a triggering event described in paragraph (c)(3)(ii) of this section occurs with respect to an eligible section 965(i) transferee, any unpaid portion of the section 965(i) net tax liability of the eligible section 965(i) transferor that was assumed by the eligible section 965(i) transferee becomes due on the date of such event, subject to any applicable exception in paragraph (c)(3)(iv) or (c)(3)(v) of this section.

221

ADMIN_03836

(2) Eligible section 965(i) transferor liability.  An eligible section 965(i) transferor remains jointly and severally liable for any unpaid installment payments of the eligible section 965(i) transferor that were assumed by the eligible section 965(i) transferee, as well as any penalties, additions to tax, or other additional amounts attributable to such net tax liability.

(v) Coordination with section 965(h) election--(A) In general.  Subject to the limitation described in paragraph (c)(3)(v)(D) of this section, a shareholder that has made a section 965(i) election with respect to an S corporation, upon the occurrence of a triggering event with respect to such S corporation, may make a section 965(h) election with respect to the portion of the shareholder's section 965(i) net tax liability with respect to such S corporation that is assessed as an addition to tax for the shareholder's taxable year that includes the triggering event pursuant to paragraph (c)(3)(i) of this section as if such portion were a section 965(h) net tax liability.

(B) Timing for election.  A section 965(h) election made pursuant to section 965(i)(4) and paragraph (c)(3)(v)(A) of this section must be made no later than the due date (taking into account extensions, if any) for the shareholder's return for the taxable year in which the triggering event with respect to the S corporation occurs.  Relief is not available under §301.9100-2 or 301.9100-3 to make a late election.

(C) Due date for installment.  If a shareholder has made a section 965(h) election pursuant to section 965(i)(4) and paragraph (c)(3)(v)(A) of this section, the payment of the first installment (as described in paragraph (b)(1)(i) of this section) must be made no later than the due date (without regard to extensions) for the shareholder's return of tax

222

ADMIN_03837

for the taxable year in which the triggering event with respect to the S corporation occurs.

(D) Limitation--(1) In general.  Notwithstanding paragraph (c)(3)(v)(A) of this section, if the triggering event with respect to an S corporation is a triggering event described in paragraph (c)(3)(ii)(B) of this section, then the section 965(h) election may only be made with the consent of the Commissioner.

(2) Manner of obtaining consent--(i) In general.  In order to obtain the consent of the Commissioner as required by paragraph (c)(3)(v)(D)(1) of this section, the shareholder intending to make the section 965(h) election must file the agreement described in paragraph (c)(3)(v)(D)(4) of this section within 30 days of the occurrence of the triggering event, except as described in paragraph (c)(3)(v)(D)(2)(ii) of this section. The agreement must be filed in accordance with the rules provided in forms, instructions, or other guidance.  In addition, a duplicate copy of the agreement must be filed, with the shareholder's timely-filed return for the taxable year during which the triggering event occurs (taking into account extensions, if any), along with the election statement described in paragraph (b)(2)(iii) of this section.  Relief is not available under §301.9100-2 or 301.9100-3 to file an agreement late.

(ii) Transition rule.  If a triggering event occurs before **[INSERT DATE 30 DAYS AFTER PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER]**, the agreement must be filed by **[INSERT DATE 60 DAYS AFTER PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER]** in order to be considered timely filed.

(3) Signature requirement.  The agreement that is filed within 30 days of the triggering event must be signed under penalties of perjury by the shareholder.

223

ADMIN_03838

(4) <u>Terms of agreement</u>. The agreement under this paragraph (c)(3)(v)(D) must be entitled "Consent Agreement Under Section 965(i)(4)(D)" and must contain the following information and representations--

(i) A statement that the shareholder agrees to comply with all of the conditions and requirements of section 965(h) and paragraph (b) of this section, as well as any other applicable requirements in the section 965 regulations;

(ii) The name, address, and taxpayer identification number of the shareholder;

(iii) The amount of the section 965(i) net tax liability under section 965 remaining unpaid with respect to which the section 965(h) election is made pursuant to section 965(i)(4)(D) and paragraph (c)(3)(v)(A) of this section, as determined by the shareholder, which is subject to adjustment by the Commissioner; and

(iv) A representation that the shareholder is able to make the payments required under section 965(h) and paragraph (b) of this section with respect to the portion of the total net tax liability under section 965 remaining unpaid described in paragraph (c)(3)(v)(D)(iii) of this section.

(5) <u>Consent of Commissioner</u>--(i) <u>In general</u>. If a shareholder files an agreement in accordance with the provisions of paragraph (c)(3)(v)(D) of this section, the shareholder will be considered to have obtained the consent of the Commissioner for purposes of section 965(i)(4)(D) and paragraph (c)(3)(v)(D)(1) of this section. However, if the Commissioner reviews the agreement and determines that additional information is necessary, the shareholder must provide such information upon request.

(ii) <u>Material misrepresentations and omissions</u>. If the Commissioner determines that an agreement filed by a shareholder in accordance with the provisions of this

224

ADMIN_03839

paragraph (c)(3)(v)(D) contains a material misrepresentation or material omission, then the Commissioner may reject the agreement (effective as of the date of the related triggering event).

(4) Joint and several liability.  If any shareholder of an S corporation makes a section 965(i) election, the S corporation is jointly and severally liability for the payment of the shareholder's section 965(i) net tax liability with respect to the S corporation, as well as any penalties, additions to tax, or other additional amounts attributable to such net tax liability.

(5) Extension of limitation on collection.  If an S corporation shareholder makes a section 965(i) election with respect to its section 965(i) net tax liability with respect to an S corporation, any limitation on the time period for the collection of the net tax liability shall not begin before the date of the triggering event with respect to the S corporation.

(6) Annual reporting requirement--(i) In general.  A shareholder that makes a section 965(i) election with respect to its section 965(i) net tax liability with respect to an S corporation is required to report the amount of its deferred net tax liability on its return of tax for the taxable year in which the election is made and on the return of tax for each subsequent taxable year until such net tax liability has been fully assessed.

(ii) Failure to report.  If a shareholder fails to report the amount of its deferred net tax liability as required with respect to any taxable year by the due date (taking into account extensions, if any) for the return of tax for that taxable year, five percent of such deferred net tax liability will be assessed as an addition to tax for such taxable year.

(d) Section 965(m) election and special rule for real estate investment trusts--(1) In general.  A real estate investment trust may elect under section 965(m) and this

225

paragraph (d) to defer the inclusion in gross income (for purposes of the computation of real estate investment trust taxable income under section 857(b)) of its REIT section 965 amounts and include them in income according to the schedule described in paragraph (d)(2) of this section. This election is revocable only by including in gross income (for purposes of the computation of real estate investment trust taxable income under section 857(b)) the full amount of the REIT section 965 amounts.

(2) Inclusion schedule for section 965(m) election. If a real estate investment trust makes the section 965(m) election, the REIT section 965 amounts will be included in the real estate investment trust's gross income as follows--

(i) Eight percent of the REIT section 965 amounts in each taxable year in the five-taxable year period beginning with the taxable year the amount would otherwise be included;

(ii) Fifteen percent of the REIT section 965 amounts in the first year following the five year period described in paragraph (d)(2)(i) of this section;

(iii) Twenty percent of the REIT section 965 amounts in the second year following the five year period described in paragraph (d)(2)(i) of this section; and

(iv) Twenty-five percent of the REIT section 965 amounts in the third year following the five year period described in paragraph (d)(2)(i) of this section.

(3) Manner of making election--(i) Eligibility. A real estate investment trust with section 965(a) inclusions may make the section 965(m) election.

(ii) Timing. A section 965(m) election must be made no later than the due date (taking into account extensions, if any) for the return for the first year of the five year

226

ADMIN_03841

period described in paragraph (d)(2)(i) of this section.  Relief is not available under §301.9100-2 or 301.9100-3 to make a late election.

(iii) <u>Election statement</u>.  Except as otherwise provided in publications, forms, instructions, or other guidance, to make a section 965(m) election, a real estate investment trust must attach a statement, signed under penalties of perjury, to its return for the taxable year in which it would otherwise be required to include the REIT section 965 amounts in gross income.  The statement must include the real estate investment trust's name, taxpayer identification number, REIT section 965 amounts, and the anticipated amounts of each portion of the REIT section 965 amounts described under paragraph (d)(2) of this section, and the statement must be filed in the manner prescribed in publications, forms, instructions, or other guidance.

(4) <u>Coordination with section 965(h)</u>.  A real estate investment trust that makes the section 965(m) election may not also make a section 965(h) election for any year with respect to which a section 965(m) election is in effect.

(5) <u>Acceleration of inclusion</u>.  If a real estate investment trust makes a section 965(m) election and subsequently there is a liquidation, sale, exchange, or other disposition of substantially all of the assets of the real estate investment trust (including in a title 11 or similar case), or a cessation of business by the real estate investment trust, any amount not yet included in gross income (for purposes of the computation of real estate investment trust taxable income under section 857(b)) as a result of the section 965(m) election will be so included as of the day before the date of the event.  The unpaid portion of any tax liability with respect to such inclusion will be due on the

ADMIN_03842

date of the event (or in the case of a title 11 or similar case, the day before the petition is filed).

(6) Treatment of section 965(a) inclusions of a real estate investment trust. Regardless of whether a real estate investment trust has made a section 965(m) election, and regardless of whether it is a United States shareholder of a deferred foreign income corporation, any section 965(a) inclusions of the real estate investment trust are not taken into account as gross income of the real estate investment trust for purposes of applying paragraphs (2) and (3) of section 856(c) for any taxable year for which the real estate investment trust takes into account a section 965(a) inclusion, including pursuant to paragraph (d)(2) of this section.

(e) Section 965(n) election--(1) In general--(i) General rule. A person may elect to not take into account the amount described in paragraph (e)(1)(ii) of this section in determining its net operating loss under section 172 for the taxable year or in determining the amount of taxable income for such taxable year (computed without regard to the deduction allowable under section 172) that may be reduced by net operating loss carryovers or carrybacks to such taxable year under section 172. The election for each taxable year is irrevocable.

(ii) Applicable amount for section 965(n) election. If a person makes a section 965(n) election, the amount referred to in paragraph (e)(1)(i) of this section is the sum of--

(A) The person's section 965(a) inclusions for the taxable year reduced by the person's section 965(c) deductions for the taxable year, and

228

ADMIN_03843

(B) In the case of a domestic corporation, the taxes deemed paid under section 960(a)(1) for the taxable year with respect to the person's section 965(a) inclusions that are treated as dividends under section 78.

(iii) Scope of section 965(n) election. If a person makes a section 965(n) election, the election applies to both net operating losses for the taxable year for which the election is made and the net operating loss carryovers or carrybacks to such taxable year, each in their entirety. Any section 965(n) election made by the agent (within the meaning of §1.1502-77) of a consolidated group applies to all net operating losses available to the consolidated group, including all components of the consolidated net operating loss deduction (as defined in §1.1502-21(a)).

(2) Manner of making election--(i) Eligibility. A person with a section 965(a) inclusion may make the section 965(n) election.

(ii) Timing. A section 965(n) election must be made no later than the due date (taking into account extensions, if any) for the person's return for the taxable year to which the election applies. Relief is not available under §301.9100-2 or 301.9100-3 to make a late election.

(iii) Election statement. Except as otherwise provided in publications, forms, instructions, or other guidance, to make a section 965(n) election, a person must attach a statement, signed under penalties of perjury, to its return for the taxable year to which the election applies. The statement must include the person's name, taxpayer identification number, the amounts described in section 965(n)(2)(A) and paragraph (e)(1)(ii)(A) of this section and section 965(n)(2)(B) and paragraph (e)(1)(ii)(B) of this

229

ADMIN_03844

section, and the sum thereof, and the statement must be filed in the manner prescribed in instructions or other guidance.

(f) Election to use alternative method for calculating post-1986 earnings and profits--(1) Effect of election for specified foreign corporations that do not have a 52-53-week taxable year. If an election is made under this paragraph (f) with respect to a specified foreign corporation that does not have a 52-53-week taxable year, the amount of the post-1986 earnings and profits (including a deficit) as of the E&P measurement date on November 2, 2017, is determined under paragraph (f)(3) of this section. The election described in this paragraph (f) is irrevocable. A specified foreign corporation that does not have a 52-53-week taxable year may not use the alternative method of determination in paragraph (f)(3) of this section for purposes of determining its post-1986 earnings and profits on the E&P measurement date on December 31, 2017.

(2) Effect of election for specified foreign corporations that have a 52-53-week taxable year. If an election is made under this paragraph (f) with respect to a specified foreign corporation that has a 52-53-week taxable year, the amount of the post-1986 earnings and profits (including a deficit) as of both E&P measurement dates is determined under paragraph (f)(3) of this section. The election described in this paragraph (f) is irrevocable.

(3) Computation of post-1986 earnings and profits using alternative method. With respect to an E&P measurement date, the post-1986 earnings and profits of a specified foreign corporation for which an election is properly made equals the sum of--

230

ADMIN_03845

(i) The specified foreign corporation's post-1986 earnings and profits (including a deficit) determined as of the notional measurement date, as if it were an E&P measurement date, plus

(ii) The specified foreign corporation's annualized earnings and profits amount with respect to the notional measurement date.

(4) Definitions--(i) 52-53-week taxable year.  The term 52-53-week taxable year means a taxable year described in §1.441-2(a)(1).

(ii) Annualized earnings and profits amount.  The term annualized earnings and profits amount means, with respect to a specified foreign corporation, an E&P measurement date, and a notional measurement date, the amount equal to the product of the number of days between the notional measurement date and the E&P measurement date (not including the former, but including the latter) multiplied by the daily earnings amount of the specified foreign corporation.  The annualized earnings and profits amount is expressed as a negative number if the E&P measurement date precedes the notional measurement date.

(iii) Daily earnings amount.  The term daily earnings amount means, with respect to a specified foreign corporation and a notional measurement date, the post-1986 earnings and profits (including a deficit) of the specified foreign corporation determined as of the close of the notional measurement date that were earned (or incurred) during the specified foreign corporation's taxable year that includes the notional measurement date, divided by the number of days that have elapsed in such taxable year as of the close of the notional measurement date.

(iv) Notional measurement date.  The term notional measurement date means--

231

ADMIN_03846

(A) With respect to an E&P measurement date of a specified foreign corporation with a 52-53-week taxable year, the closest end of a fiscal month to such E&P measurement date, and

(B) With respect to the E&P measurement date on November 2, 2017, of all specified foreign corporations not described in paragraph (f)(4)(iv)(A) of this section, October 31, 2017.

(5) Manner of making election--(i) Eligibility.  An election with respect to a specified foreign corporation to use the alternative method of calculating post-1986 earnings and profits as of an E&P measurement date pursuant to this paragraph (f) must be made on behalf of the specified foreign corporation by a controlling domestic shareholder (as defined in §1.964-1(c)(5)) pursuant to the rules of §1.964-1(c)(3).

(ii) Timing.  An election under this paragraph (f) must be made no later than the due date (taking into account extensions, if any) for the person's return for the first taxable year in which the person has a section 965(a) inclusion amount with respect to the specified foreign corporation or in which the person takes into account a specified E&P deficit with respect to the specified corporation for purposes of computing a section 965(a) inclusion amount with respect to another specified foreign corporation.  Relief is not available under §301.9100-2 or 301.9100-3 to make a late election.

(iii) Election statement.  Except as otherwise provided in publications, forms, instructions, or other guidance, to make an election under this paragraph (f), a person must attach a statement, signed under penalties of perjury, to the person's return for the taxable year described in paragraph (f)(5)(ii) of this section.  The statement must include the person's name, taxpayer identification number, and the name and taxpayer

232

ADMIN_03847

identification number, if any, of the specified foreign corporation with respect to which the election is made, and the statement must be filed in the manner prescribed in instructions or other guidance.

(6) Examples. The following examples illustrate the application of this paragraph (f).

Example 1. (i) Facts. FS, a foreign corporation, has a calendar year taxable year, and as of October 31, 2017, FS has post-1986 earnings and profits of 10,000u, 3,040u of which were earned during the taxable year that includes October 31, 2017. An election is properly made under paragraph (f)(5) of this section with respect to FS, allowing FS to determine its post-1986 earnings and profits under the alternative method with respect to its E&P measurement date on November 2, 2017.

(ii) Analysis. As of the close of October 31, 2017, the notional measurement date with respect to the E&P measurement date on November 2, 2017, 304 days have elapsed in the taxable year of FS that includes October 31, 2017. Therefore, FS's daily earnings amount is 10u (3,040u divided by 304), and FS's annualized earnings and profits amount is 20u (10u multiplied by 2 (the number of days between the notional measurement date on October 31, 2017, and the E&P measurement date on November 2, 2017)). Accordingly, FS's post-1986 earnings and profits as of November 2, 2017, are 10,020u (its post-1986 earnings and profits as of October 31, 2017 (10,000u), plus its annualized earnings and profits amount (20u)).

Example 2. (i) Facts. The facts are the same as in paragraph (i) of Example 1 of this paragraph (f)(6), except that a deficit of 3,040u was incurred during the taxable year that includes October 31, 2017.

(ii) Analysis. The analysis is the same as in paragraph (ii) of Example 1 of this paragraph (f)(6), except that FS's daily earnings amount is (10u) ((3,040u) divided by 304), and FS's annualized earnings and profits amount is (20u) ((10u) multiplied by 2 (the number of days between the notional measurement date on October 31, 2017, and the E&P measurement date on November 2, 2017)). Accordingly, FS's post-1986 earnings and profits as of November 2, 2017, are 9,980u (its post-1986 earnings and profits as of October 31, 2017 (10,000u), plus its annualized earnings and profits amount ((20u))).

(g) Definitions. This paragraph (g) provides definitions that apply for purposes of this section.

233

ADMIN_03848

(1) Deferred net tax liability. The term deferred net tax liability means, with respect to any taxable year of a person, the amount of the section 965(i) net tax liability the payment of which has been deferred under section 965(i) and paragraph (c) of this section.

(2) REIT section 965 amounts. The term REIT section 965 amounts means, with respect to a real estate investment trust and a taxable year of the real estate investment trust, the aggregate amount of section 965(a) inclusions and section 965(c) deductions that would (but for section 965(m)(1)(B) and paragraph (d) of this section) be taken into account in determining the real estate investment trust's income for the taxable year.

(3) Section 965(h) election. The term section 965(h) election means the election described in section 965(h)(1) and paragraph (b)(1) of this section.

(4) Section 965(h) net tax liability. The term section 965(h) net tax liability means, with respect to a person that has made a section 965(h) election, the total net tax liability under section 965 reduced by the aggregate amount of the person's section 965(i) net tax liabilities, if any, with respect to which section 965(i) elections are effective.

(5) Section 965(i) election. The term section 965(i) election means the election described in section 965(i)(1) and paragraph (c)(1) of this section.

(6) Section 965(i) net tax liability. The term section 965(i) net tax liability means, with respect to an S corporation and a shareholder of the S corporation, in the case in which a section 965(i) election is made, the amount determined pursuant to paragraph (g)(10)(i) of this section by adding before the word "over" in (g)(10)(i)(A) of this section "determined as if the only section 965(a) inclusions included in income by the person

234

are domestic pass-through entity shares of section 965(a) inclusions by the S

corporation with respect to deferred foreign income corporations of which the S

corporation is a United States shareholder."

(7) Section 965(m) election.  The term section 965(m) election means the

election described in section 965(m)(1)(B) and paragraph (d)(1) of this section.

(8) Section 965(n) election.  The term section 965(n) election means the election

described in section 965(n)(1) and paragraph (e)(1)(i) of this section.

(9) Specified individual.  The term specified individual means, with respect to a

taxable year, a person described in §1.6081-5(a)(5) or (6) who receives an extension of

time to file and pay under §1.6081-5(a) for the taxable year.

(10) Total net tax liability under section 965--(i) General rule.  The term total net

tax liability under section 965 means, with respect to a person, the excess (if any) of--

(A) The person's net income tax for the taxable year in which the person includes

a section 965(a) inclusion in income, over--

(B) The person's net income tax for the taxable year determined--

(1) Without regard to section 965, and

(2) Without regard to any income, deduction, or credit properly attributable to a

dividend received (directly or through a chain of ownership described in section 958(a))

by the person (or, in the case of a domestic pass-through owner, by the person's

domestic pass-through entity) from a deferred foreign income corporation.

(ii) Net income tax.  For purposes of this paragraph (g)(10), the term net income

tax means the regular tax liability (as defined in section 26(b)) reduced by the credits

235

ADMIN_03850

allowed under subparts A, B, and D of part IV of subchapter A of chapter 1 of subtitle A of the Internal Revenue Code.

(iii) <u>Foreign tax credits</u>. The foreign tax credit disregarded in determining net income tax determined under paragraph (g)(10)(i)(B) of this section includes the credit for foreign income taxes deemed paid with respect to section 965(a) inclusions or foreign income taxes deemed paid with respect to a dividend, including a distribution that would have been treated as a dividend in the absence of section 965. The foreign tax credit disregarded under paragraph (g)(10)(i)(B) of this section also includes the credit for foreign income taxes imposed on distributions of section 965(a) previously taxed earnings and profits or 965(b) previously taxed earnings and profits made in the taxable year in which the person includes a section 965(a) inclusion in income.

Par. 12. Section 1.965-8 is added to read as follows:

§1.965-8 Affiliated groups (including consolidated groups).

(a) <u>Scope</u>. This section provides rules for applying section 965 and the section 965 regulations to members of an affiliated group (as defined in section 1504(a)), including members of a consolidated group (as defined in §1.1502-1(h)). Paragraph (b) of this section provides guidance regarding the application of section 965(b)(5) to determine the section 965(a) inclusion amounts of a member of an affiliated group. Paragraph (c) of this section provides guidance for designating the source of aggregate unused E&P deficits. Paragraph (d) provides rules regarding earning and profits and stock basis adjustments. Paragraph (e) of this section provides rules that treat members of a consolidated group as a single person for certain purposes. Paragraph (f) of this section provides definitions that apply for purposes of this section. Paragraph

236

ADMIN_03851

(g) of this section provides examples illustrating the application of this section. For additional definitions that apply for purposes of the section 965 regulations, see §1.965-1(f).

(b) <u>Reduction of E&P net surplus shareholder's pro rata share of the section 965(a) earnings amount of a deferred foreign income corporation by the allocable share of the applicable share of the aggregate unused E&P deficit</u>--(1) <u>In general</u>. This paragraph (b) applies after the application of §1.965-1(b)(2) for purposes of determining the section 965(a) inclusion amount with respect to a deferred foreign income corporation of a section 958(a) U.S. shareholder that is both an E&P net surplus shareholder and a member of an affiliated group in which not all members are members of the same consolidated group. If this paragraph (b) applies, the U.S. dollar amount of the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation is further reduced (but not below zero) by the deferred foreign income corporation's allocable share of the section 958(a) U.S. shareholder's applicable share of the affiliated group's aggregate unused E&P deficit.

(2) <u>Consolidated group as part of an affiliated group</u>. If some, but not all, members of an affiliated group are members of a consolidated group, then the consolidated group is treated as a single member of the affiliated group for purposes of §1.965-1(b)(2) and paragraph (b)(1) of this section.

(c) <u>Designation of portion of excess aggregate foreign E&P deficit taken into account</u>--(1) <u>In general</u>. This paragraph (c) provides rules for designating the source of an aggregate unused E&P deficit of an affiliated group that is not also a consolidated

237

ADMIN_03852

group taken into account under section 965(b)(5) and paragraph (b) of this section if the amount described in paragraph (f)(1)(i)(A) of this section with respect to the affiliated group exceeds the amount described in paragraph (f)(1)(i)(B) of this section with respect to the affiliated group. If this paragraph (c)(1) applies, each member of the affiliated group that is an E&P net deficit shareholder must designate by maintaining in its books and records a statement (identical to the statement maintained by all other such members) setting forth the portion of the excess aggregate foreign E&P deficit of the E&P net deficit shareholder taken into account under section 965(b)(5) and paragraph (b) of this section. See §1.965-2(d)(2)(ii)(B) for a rule for designating the portion of a section 958(a) U.S. shareholder's pro rata share of a specified E&P deficit of an E&P deficit foreign corporation taken into account under section 965(b), §1.965-1(b)(2), and paragraph (b) of this section, as applicable.

(2) <u>Consolidated group as part of an affiliated group</u>. If some, but not all, members of an affiliated group are properly treated as members of a consolidated group, then the consolidated group is treated as a single member of the affiliated group for purposes of applying paragraph (c)(1) of this section.

(d) <u>Adjustments to earnings and profits and stock basis</u>--(1) <u>Affiliated groups that are not consolidated groups</u>. [Reserved]

(2) <u>Consolidated groups</u>. See §1.1502-33(d)(1) for adjustments to members' earnings and profits and §1.1502-32(b)(3) for adjustments to members' basis.

(e) <u>Treatment of a consolidated group as a single section 958(a) U.S. shareholder or a single person</u>--(1) <u>In general</u>. All members of a consolidated group that are section 958(a) U.S. shareholders of a specified foreign corporation are treated

238

ADMIN_03853

as a single section 958(a) U.S. shareholder for purposes of section 965(b) and §1.965-1(b)(2).  Furthermore, all members of a consolidated group are treated as a single person for purposes of paragraphs (h), (k), and (n) of section 965 and §1.965-7.  Thus, for example, any election governed by section 965(h) and §1.965-7(b) must be made by the agent (within the meaning of §1.1502-77) of the group as a single election on behalf of all members of the consolidated group.  Similarly, the determination of whether the transfer of assets by one member to a non-member of the consolidated group would constitute an acceleration event under section §1.965-7(b)(3)(ii)(B) takes into account all of the assets of the consolidated group, which for purposes of this determination, includes all of the assets of each consolidated group member.  In analyzing issues relating to the transfer of assets of a consolidated group, appropriate adjustments are made to prevent the duplication of assets or asset value.

(2) <u>Limitation</u>.  Paragraph (e)(1) of this section does not apply to treat all members of a consolidated group as a single section 958(a) U.S. shareholder or a single person, as applicable, for purposes of determining the amount of any member's inclusion under section 951 (including a section 965(a) inclusion), the foreign income taxes deemed paid with respect to a section 965(a) inclusion (see sections 960 and 902), or any purpose other than those specifically listed in paragraph (e)(1) of this section or another provision of the section 965 regulations.

(3) <u>Determination of section 965(c) deduction amount</u>.  Paragraph (e)(1) of this section does not apply to treat all members of a consolidated group as a single section 958(a) U.S. shareholder for purposes of determining the amount of any member's section 965(c) deduction amount.  However, for purposes of determining the section

ADMIN_03854

965(c) deduction amount of any section 958(a) U.S. shareholder that is a member of a consolidated group, the aggregate foreign cash position of the section 958(a) U.S. shareholder is equal to the aggregate section 965(a) inclusion amount of the section 958(a) U.S. shareholder multiplied by the group cash ratio of the consolidated group.

(f) Definitions.  This paragraph (f) provides definitions that apply for purposes of applying the section 965 regulations to members of an affiliated group, including members of a consolidated group.

(1) Aggregate unused E&P deficit--(i) General rule.  The term aggregate unused E&P deficit means, with respect to an affiliated group, the lesser of—

(A) The sum of the excess aggregate foreign E&P deficit with respect to each E&P net deficit shareholder that is a member of the affiliated group, or

(B) The amount determined under paragraph (f)(3)(ii) of this section.

(ii) Reduction with respect to E&P net deficit shareholders that are not wholly owned by the affiliated group.  If the group ownership percentage of an E&P net deficit shareholder is less than 100 percent, the amount of the excess aggregate foreign E&P deficit with respect to the E&P net deficit shareholder that is taken into account under paragraph (f)(1)(i) of this section is the product of the group ownership percentage multiplied by the excess aggregate foreign E&P deficit.

(2) Allocable share.  The term allocable share means, with respect to a deferred foreign income corporation and an E&P net surplus shareholder's applicable share of an aggregate unused E&P deficit of an affiliated group, the product of the E&P net surplus shareholder's applicable share of the affiliated group's aggregate unused E&P deficit

240

ADMIN_03855

and the ratio described in §1.965-1(f)(11) with respect to the deferred foreign income corporation.

(3) Applicable share. The term applicable share means, with respect to an E&P net surplus shareholder and an aggregate unused E&P deficit of an affiliated group, the amount that bears the same proportion to the affiliated group's aggregate unused E&P deficit as--

(i) The product of--

(A) The E&P net surplus shareholder's group ownership percentage, multiplied by

(B) The amount that would (but for section 965(b)(5) and paragraph (b) of this section) constitute the E&P net surplus shareholder's aggregate section 965(a) inclusion amount, bears to

(ii) The aggregate amount determined under paragraph (f)(3)(i) of this section with respect to all E&P net surplus shareholders that are members of the group.

(4) Consolidated group aggregate foreign cash position. The term consolidated group aggregate foreign cash position means, with respect to a consolidated group, the sum of the amount that would be the aggregate foreign cash position (as defined in §1.965-1(f)(8)(i)) of each member of the consolidated group that is a section 958(a) U.S. shareholder determined as if each such member were not a member of a consolidated group.

(5) E&P net deficit shareholder. The term E&P net deficit shareholder means a section 958(a) U.S. shareholder that has an excess aggregate foreign E&P deficit.

241

(6) E&P net surplus shareholder.  The term E&P net surplus shareholder means a section 958(a) U.S. shareholder that would (but for section 965(b)(5) and paragraph (b) of this section) have an aggregate section 965(a) inclusion amount greater than zero.

(7) Excess aggregate foreign E&P deficit.  The term excess aggregate foreign E&P deficit means, with respect to a section 958(a) U.S. shareholder, the amount, if any, by which the amount described in §1.965-1(f)(9)(i) with respect to the section 958(a) U.S. shareholder exceeds the amount described in §1.965-1(f)(9)(ii) with respect to the section 958(a) U.S. shareholder.

(8) Group cash ratio.  The term group cash ratio means, with respect to a consolidated group, the ratio of--

(i) The consolidated group aggregate foreign cash position, to

(ii) The sum of the aggregate section 965(a) inclusion amounts of all members of the consolidated group.

(9) Group ownership percentage.  The term group ownership percentage means, with respect to a section 958(a) U.S. shareholder that is a member of an affiliated group, the percentage of the value of the stock of the United States shareholder which is held by other includible corporations in the affiliated group.  Notwithstanding the preceding sentence, the group ownership percentage of the common parent of the affiliated group is 100 percent.  Any term used in this paragraph (f)(9) that is also used in section 1504 has the same meaning as when used in such section.  Additionally, if the term is used in the context of a rule for which all members of a consolidated group are treated as a single section 958(a) U.S. shareholder under paragraph (e)(1) of this

242

ADMIN_03857

section, then the group ownership percentage is determined solely with respect to the value of the stock of the common parent of the consolidated group held by other includible corporations that are not members of the consolidated group.

(g) Examples. The following examples illustrate the application of this section.

Example 1. Application of affiliated group rule. (i) Facts. (A) In general. USP owns all of the stock of USS1, USS2, and USS3. Each of USP, USS1, USS2 and USS3 is a domestic corporation and is a member of an affiliated group of which USP is the common parent (the "USP Group"). The USP Group has not elected to file a consolidated federal income tax return. USS1 owns all of the stock of CFC1 and CFC2, USS2 owns all of the stock of CFC3, and USS3 owns all of the stock of CFC4. Each of CFC1, CFC2, CFC3, and CFC4 is a controlled foreign corporation within the meaning of section 957(a) and, therefore, each is a specified foreign corporation under section 965(e) and §1.965-1(f)(45). Each of USP, USS1, USS2, USS3, CFC1, CFC2, CFC3, and CFC4 has the calendar year as its taxable year.

(B) Facts relating to section 965. CFC1 and CFC3 are deferred foreign income corporations with section 965(a) earnings amounts of $600x and $300x, respectively. CFC1 and CFC3 have cash positions of $0x and $50x, respectively, on each of their cash measurement dates. CFC2 and CFC4 are E&P deficit foreign corporations with specified E&P deficits of $400x and $100x, respectively. CFC2 and CFC4 have cash positions of $100x and $50x, respectively, on each of their cash measurement dates. CFC1, CFC2, CFC3, and CFC4 all use the U.S. dollar as their functional currency.

(ii) Analysis. (A) Section 965(a) inclusion amounts before application of section 965(b)(5). USS1 is a section 958(a) U.S. shareholder with respect to CFC1 and CFC2; USS2 is a section 958(a) U.S. shareholder with respect to CFC3; and USS3 is a section 958(a) U.S. shareholder with respect to CFC4. USS1's pro rata share of CFC1's section 965(a) earnings amount is $600x. Under section 965(b)(3)(A) and §1.965-1(f)(9), USS1's aggregate foreign E&P deficit is $400x, the lesser of the aggregate of USS1's pro rata share of the specified E&P deficit of each E&P deficit foreign corporation ($400x) and the amount described in §1.965-1(f)(9)(ii) with respect to USS1 ($600x). Under section 965(b) and §1.965-1(b)(2), in determining its section 965(a) inclusion amount with respect to CFC1, USS1 reduces its pro rata share of the U.S. dollar amount of section 965(a) earnings amount of CFC1 by CFC1's allocable share of USS1's aggregate foreign E&P deficit. CFC1's allocable share of USS1's aggregate foreign E&P deficit is $400x, which is the product of USS1's aggregate foreign E&P deficit ($400x) and 1, which is the ratio determined by dividing USS1's pro rata share of the section 965(a) earnings amount of CFC1 ($600x), by the amount described in §1.965-1(f)(9)(ii) with respect to USS1 ($600x). Accordingly, under section 965(b) and §1.965-1(b)(2) (before applying section 965(b)(5) and paragraph (b) of this section), USS1's section 965(a) inclusion amount with respect to CFC1 would be $200x (USS1's pro rata share of the section 965(a) earnings amount of CFC1 of $600x reduced by

243

ADMIN_03858

CFC1's allocable share of USS1's aggregate foreign E&P deficit of $400x.  Under section 965(b) and §1.965-1(b)(2) (before applying section 965(b)(5) and paragraph (b) of this section), USS2's section 965(a) inclusion amount with respect to CFC3 would be $300x (USS2's pro rata share of the section 965(a) earnings amount of CFC3).

(B) Application of section 965(b)(5)--(1) Determination of E&P net surplus shareholders and E&P net deficit shareholders.  USS1 is an E&P net surplus shareholder because it would have an aggregate section 965(a) inclusion amount of $200x but for the application of section 965(b)(5) and paragraph (b) of this section. USS2 is also an E&P net surplus shareholder because it would have an aggregate section 965(a) inclusion amount of $300x but for the application of section 965(b)(5) and paragraph (b) of this section.  USS3 is an E&P net deficit shareholder because it has an excess aggregate foreign E&P deficit of $100x.

(2) Determining section 965(a) inclusion amounts under section 965(b)(5).  Under section 965(b) and paragraph (b) of this section, for purposes of determining the section 965(a) inclusion amount of a section 958(a) U.S. shareholder with respect to a deferred foreign income corporation, if, after applying §1.965-1(b)(2), the section 958(a) U.S. shareholder is an E&P net surplus shareholder, then the U.S. dollar amount of the section 958(a) U.S. shareholder's pro rata share of the section 965(a) earnings amount of the deferred foreign income corporation is further reduced (but not below zero) by the deferred foreign income corporation's allocable share of the section 958(a) U.S. shareholder's applicable share of the affiliated group's aggregate unused E&P deficit. USS3 is the only E&P net deficit shareholder in the USP Group, and therefore the aggregate unused E&P deficit of the USP Group is equal to USS3's excess aggregate foreign E&P deficit ($100x).  The applicable share of the USP Group's aggregate unused E&P deficit of each of USS1 and USS2, respectively, is an amount that bears the same proportion to the USP Group's aggregate unused E&P deficit as the product of the group ownership percentage of USS1 and USS2, respectively, multiplied by the amount that would (but for section 965(b)(5) and paragraph (b) of this section) constitute the aggregate section 965(a) inclusion amount of USS1 and USS2, respectively, bears to the aggregate of such amounts with respect to both USS1 and USS2.  Therefore, USS1's applicable share of the USP Group's aggregate unused E&P deficit is $40 ($100x x ($200x/($200x + $300x))) and USS2's applicable share of the USP Group's aggregate unused E&P deficit is $60x ($100x x ($300x/($200x + $300x))). Because USS1 is a section 958(a) U.S. shareholder with respect to only one deferred foreign income corporation, the entire $60x of USS1's applicable share of the USP Group's aggregate unused E&P deficit is treated as CFC1's allocable share of USS1's applicable share of the USP Group's aggregate unused E&P deficit, and thus USS1's section 965(a) inclusion amount with respect to CFC1 is reduced to $160x ($200x - $40x).  Because USS2 is a section 958(a) U.S. shareholder with respect to only one deferred foreign income corporation, the entire $60x of USS2's applicable share of the USP Group's aggregate unused E&P deficit is treated as CFC3's allocable share of USS2's applicable share of the USP Group's aggregate unused E&P deficit, and thus USS2's section 965(a) inclusion amount with respect to CFC3 is reduced to $240x ($300x - $60x).

244

ADMIN_03859

(C) <u>Aggregate foreign cash position</u>. Under section 965(c) and §1.965-1(c), a section 958(a) U.S. shareholder that includes a section 965(a) inclusion amount in income is allowed a deduction equal to the section 965(c) deduction amount. The section 965(c) deduction amount is computed by taking into account the aggregate foreign cash position of the section 958(a) U.S. shareholder. Under §1.965-1(f)(8)(i), the aggregate foreign cash position of USS1 is $100x, and the aggregate foreign cash position of USS2 is $50x.

(D) <u>Section 965(c) deduction amount</u>. The section 965(c) deduction amount of USS1 is $102x, which is equal to (i) USS1's 8 percent rate equivalent percentage (77.1428571%) of its 8 percent rate amount for USS1's 2017 year ($60x ($160x - $100x)), plus USS1's 15.5 percent rate equivalent percentage (55.7142857%) of its 15.5 percent rate amount for USS1's 2017 year ($100x). The section 965(c) deduction amount of USS2 is $174.43x, which is equal to (i) USS2's 8 percent rate equivalent percentage (77.1428571%) of its 8 percent rate amount for USS2's 2017 year ($190x ($240x - $50x)), plus USS2's 15.5 percent rate equivalent percentage (55.7142857%) of its 15.5 percent rate amount for USS2's 2017 year ($50x). Because USS3 has no section 965(a) inclusion amount, it has no section 965(c) deduction amount and therefore is not allowed a section 965(c) deduction.

<u>Example 2</u>. <u>Application to members of a consolidated group</u>. (i) <u>Facts</u>. The facts are the same as in paragraph (i) of <u>Example 1</u> of this paragraph (g), except that the USP Group has elected to file a consolidated return.

(ii) <u>Analysis</u>--(A) <u>Section 965(a) inclusion amount</u>--(1) <u>Single section 958(a) U.S. shareholder treatment</u>. Because each of USS1, USS2, and USS3 is a section 958(a) U.S. shareholder of a specified foreign corporation and is a member of a consolidated group, paragraph (e)(1) of this section applies to treat USS1, USS2, and USS3 as a single section 958(a) U.S. shareholder for purposes of section 965(b) and §1.965-1(b)(2).

(2) <u>Determination of inclusion amount</u>. The single section 958(a) U.S. shareholder composed of USS1, USS2, and USS3 is a section 958(a) U.S. shareholder with respect to CFC1, CFC2, CFC3, and CFC4. Under §1.965-1(b)(2), in determining USS1's section 965(a) inclusion amount, the single section 958(a) U.S. shareholder decreases its pro rata share of the U.S. dollar amount of the section 965(a) earnings amount of CFC1 by CFC1's allocable share of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder. CFC1's allocable share of the aggregate foreign E&P deficit is $333.33x, which is the product of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder ($500x ($400x + $100x)) and .67, which is the ratio determined by dividing its pro rata share of the section 965(a) earnings amount of CFC1 ($600x) by the amount described in §1.965-1(f)(9)(ii) with respect to the single section 958(a) U.S. shareholder ($900x ($600x + $300x)). Therefore, USS1's section 965(a) inclusion amount with respect to CFC1 is $266.67 (its pro rata share of the section 965(a) earnings amount of CFC1 ($600) less CFC1's allocable share of the aggregate foreign E&P deficit of the single section 958(a) U.S.

245

ADMIN_03860

shareholder ($333.33x)). Similarly, under §1.965-1(b)(2), in determining the section 965(a) inclusion amount of USS2, the single section 958(a) U.S. shareholder decreases its pro rata share of the U.S. dollar amount of the section 965(a) earnings amount of CFC3 by CFC3's allocable share of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder. CFC3's allocable share of the aggregate foreign E&P deficit is $166.67x, which is the product of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder ($500x) and .33, which is the ratio determined by dividing its pro rata share of the section 965(a) earnings amount of CFC3 ($300x) by the amount described in §1.965-1(f)(9)(ii) with respect to the single section 958(a) U.S. shareholder ($900x ($600x + $300x)). Therefore, USS2's section 965(a) inclusion amount with respect to CFC3 is $133.33x (its pro rata share of the section 965(a) earnings amount of CFC3 ($300x) less CFC3's allocable share of the aggregate foreign E&P deficit of the single section 958(a) U.S. shareholder ($166.67x)).

(B) Consolidated group aggregate foreign cash position. Because USS1 and USS2 are members of a consolidated group, the aggregate foreign cash position of each of USS1 and USS2 is determined under paragraph (e)(3) of this section. Under paragraph (e)(3) of this section, the aggregate foreign cash position of each of USS1 and USS2 is equal to the aggregate section 965(a) inclusion amount of USS1 and USS2, respectively, multiplied by the group cash ratio of the USP Group, as determined pursuant to paragraph (f)(8) of this section. The group cash ratio of the USP Group is .50, which is the ratio of the USP Group's consolidated group aggregate foreign cash position ($200x ($50x + $100x + $50x)) and the sum of the aggregate section 965(a) inclusion amounts of all members of the USP Group ($400x ($266.67x + $133.33x)). Therefore, under paragraph (e)(3) of this section, the aggregate foreign cash positions of USS1 and USS2 are, respectively, $133.34x ($266.67x x ($200x/$400x)) and $66.67 ($133.33x x ($200x/400x)).

(C) Section 965(c) deduction amount. The section 965(c) deduction amount of USS1 is $177.14x, which is equal to (i) USS1's 8 percent rate equivalent percentage (77.1428571%) of its 8 percent rate amount for USS1's 2017 year ($133.33x ($266.67x - $133.34x)), plus USS1's 15.5 percent rate equivalent percentage (55.7142857%) of its 15.5 percent rate amount for USS1's 2017 year ($133.34x). The section 965(c) deduction amount of USS2 is $88.56x, which is equal to (i) USS2's 8 percent rate equivalent percentage (77.1428571%) of its 8 percent rate amount for USS2's 2017 year ($66.66x ($133.33x - $66.67x)), plus USS2's 15.5 percent rate equivalent percentage (55.7142857%) of its 15.5 percent rate amount for USS2's 2017 year ($66.67x). Because USS3 has no section 965(a) inclusion amount, it has no section 965(c) deduction amount and therefore is not allowed a section 965(c) deduction.

Par. 13.  Section 1.965-9 is added to read as follows:

§1.965-9 Applicability dates.

246

ADMIN_03861

(a) In general.  Sections 1.965-1 through 1.965-8 apply beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, beginning the taxable year in which or with which such taxable year of the foreign corporation ends.

(b) Applicability dates for rules disregarding certain transactions.  Section 1.965-4 applies regardless of whether, with respect to a foreign corporation, the transaction, effective date of a change in method of accounting, effective date of an entity classification election, or specified payment described in §1.965-4 occurred before the first day of the foreign corporation's last taxable year that begins before January 1, 2018, or, with respect to a United States person, the transaction, effective date of a change in method of accounting, effective date of an entity classification election, or specified payment described in §1.965-4 occurred before the first day of the taxable year of the United States person in which or with which the taxable year of the foreign corporation ends.

Par. 14.  Section 1.986(c)-1 is added to read as follows:

§1.986(c)-1 Coordination with section 965.

(a) Amount of foreign currency gain or loss.  Foreign currency gain or loss with respect to distributions of section 965(a) previously taxed earnings and profits (as defined in §1.965-1(f)(39)) is determined based on movements in the exchange rate between December 31, 2017, and the time such distributions are made.

(b) Section 965(a) previously taxed earnings and profits.  Any gain or loss recognized under section 986(c) with respect to distributions of section 965(a) previously taxed earnings and profits is reduced in the same proportion as the reduction

247

by a section 965(c) deduction amount (as defined in §1.965-1(f)(42)) of the section 965(a) inclusion amount (as defined in §1.965-1(f)(38)) that gave rise to such section 965(a) previously taxed earnings and profits.

(c) Section 965(b) previously taxed earnings and profits.  Section 986(c) does not apply with respect to distributions of section 965(b) previously taxed earnings and profits (as defined in §1.965-1(f)(40)).

248

(d) <u>Applicability dates</u>.  The section applies beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, for the taxable year in which or with which such taxable year of the foreign corporation ends.

Kirsten Wielobob

Deputy Commissioner for Services and Enforcement.

Certified to be a true copy of the original document.

# REGULATORY FLEXIBILITY ACT CHECKLIST

**Regulations Project (number and title):** REG-104226-18

Guidance with Respect to Transition Tax Under Section 965

## 1. Legislative/Interpretative Regulations

**Check one of the following, whichever is applicable:**

a. __  Legislative Regulations (RFA applies; go to 3. below)

b. ✓  Interpretative Regulations (RFA applies to the extent a collection of
information is imposed on small entities; go to 2. below)

c. __  Other; explain

_____
_____
_____
_____
_____

## 2. Collections of Information (complete for interpretative regulations)

a.  Does the regulation contain a collection of information?

✓ i. Yes.  (Go to 2.b. below)

__ ii. No.  The RFA does not apply.  (Go to 4. below.)

b.  Is any collection of information in 2.a. imposed on "small entities"?

✓ i. Yes.  (Go to 3. below.)

__ ii. No.  The RFA does not apply  (Go to 4. below.)

## 3. Regulations Subject to RFA

If the regulations are legislative (see 1.a.) or are interpretative and impose a
collection of information on small entities (see 2.b.i.), complete either a. or b.
below, whichever applies.

a.   **RegFlex Analysis Prepared**.  Has a regulatory flexibility analysis been prepared?

__ i. Yes.  (Go to 4. below.)

✓ ii. No.  (Go to 3.b. below.)

b.   **Certification**.  Do the regulations contain a certification that the regulations (if legislative) or the collection of information imposed by the regulations (if interpretative) do not impose a significant economic impact on a substantial number of small entities?

✓ i. Yes.  (Go to 4. below.)

__ ii. No.  Explain why the regulations do not contain a regulatory flexibility analysis:

_____
_____
_____
_____
_____
_____

**4.  Alternative Approaches**

a.   Regardless of whether the regulations are subject to the RFA, were other alternative regulatory approaches considered in an attempt to minimize the burden on small entities?

✓ i. Yes.  (Checklist is complete.)

__ ii. No.  (Go to 4.b. below.)

b.   Other alternatives were not considered because:

__ i. The statute and/or legislative history prevented consideration of other alternatives.

__ ii. Other.  Explain.

_____
_____
_____
_____

ADMIN_03866

# REGULATIONS SIGNATURE PACKAGE ROUTING SLIP AND CLEARANCE SHEET (CC:INTL)

- Associate Chief Counsel (International)
- Chief Counsel
- Deputy Commissioner
- Assistant Secretary (Tax Policy)

Project Title: Guidance with Respect to Transition Tax Under Section 965

Project No.: REG-104226-18                    Code Section: 965

Comments: The proposed regulations implement section 965 of the Internal Revenue Code as amended by "An Act to provide for reconciliation pursuant to titles II and V of the concurrent resolution on the budget for fiscal year 2018," P.L. 115-97, which was enacted on December 22, 2017. Specifically, the proposed regulations provide rules for determining the section 965(a) inclusion amount of a United States shareholder of a deferred foreign income corporation.

PLEASE CALL Leni Perkins                    at 317-4193  FOR PICKUP.

Each person identified below has reviewed and approved for publication in the Federal Register this signature package dated June 19, 2018.

| | Drafter | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer |
|---|---|---|---|---|---|---|
| Symbols : | CC:INTL:B02 | CC:INTL:B02 | CC:INTL:FO | CC:INTL:FO | CC:INTL:FO | |
| | | | | | And cc: behalf of W. Paul | |
| Surname/ Date : | L. Perkins 6/19/18 | R. Jenkins 6/19/18 | R. Stahl 6/19/18 | D. McCall 6/19/18 | M. Rollinson 6/19/18 | |

| | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer |
|---|---|---|---|---|---|---|
| Symbols : | DCSE | DCSE | OTP: | OTP: | OTP: | |
| Surname/ Date : | A. Giuliano 7/2/18 | K. Wielobob 7/5/18 | L. Kitzinger 7/13/18 | B. Zent 7/13/18 | B. Zent 7/13/18 | |

| Symbols: | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer |
|---|---|---|---|---|---|---|
| | | OTP | OTP: | | | |
| Surname/ Date | D. Peons 7/13/18 | C. Harter 7/13/18 | 7/13/18: | D. Kautter: | | |

(Rev. 7/93)

ADMIN_03868

**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C.

| | |
|---|---|
| **MEMORANDUM FOR:** | **DAVID J. KAUTTER** |
| | **ASSISTANT SECRETARY (TAX POLICY)** |
| | |
| **FROM:** | **BRENDA L. ZENT, SPECIAL ADVISOR** |
| | **LINDSAY KITZINGER, ATTORNEY ADVISOR** |
| | **GARY SCANLON, ATTORNEY ADVISOR** |
| | **JASON YEN, ATTORNEY ADVISOR** |
| | **JAMES S. WANG, ATTORNEY ADVISOR** |
| | |
| **SUBJECT:** | **Proposed Regulations on Guidance Regarding the Transition Tax Under Section 965 and Related Provisions (REG-104226-18)** |
| | |
| **DATE:** | **July 11, 2018** |

Attached for your review prior to transmittal to the *Federal Register* are proposed regulations under sections 962, 965, and 986 of the Internal Revenue Code (the "proposed regulations"). The proposed regulations provide rules to implement section 965, as amended by the Tax Cuts and Jobs Act, P.L. 155-97 (2017) (the "Act"). In general, section 965 imposes a one-time transition tax on certain U.S. persons that own stock of foreign corporations with deferred foreign earnings by deeming those earnings to be repatriated and included in the U.S. person's income. The proposed regulations include rules relating to the amount and character of the inclusion under section 965, the adjustments to tax attributes needed as a result of its application, the disregard of certain transactions for purposes of section 965, the application of the foreign tax credits rules, the availability of certain elections, and rules relating to affiliated groups. The proposed regulations also include changes to existing regulations under sections 962 and 986 related to the application of section 965.

## I.    BACKGROUND

### A.    Overview of Section 965

Section 965, as amended by the Act, is intended to act as a transition provision between the international tax rules in place before the Act and those enacted by the Act. Specifically, before the Act, non-passive earnings of foreign subsidiaries of domestic corporations were not subject to tax until the earnings were distributed to the domestic corporation. Those rules encouraged domestic corporations to minimize distributions back to the United States and to accumulate substantial earnings offshore. After the Act, domestic corporations, in most circumstances, will be entitled to a 100-percent deduction for any dividends received from their foreign subsidiaries, which will eliminate any U.S. tax liability on the dividend. See section 245A. In order to prevent a potential windfall, whereby a domestic corporation could distribute its historic earnings tax free to the United States, the Act included section 965 to treat those historic earnings as repatriated to the United States under the pre-Act rules, before the new rules take effect. This has the effect of generally causing new section 245A to apply only to foreign

earnings accumulated after 2018, thereby preventing taxpayers with significant accumulated offshore earnings from benefitting disproportionately from the Act.

Accordingly, section 965(a) generally requires that, for the last taxable year beginning before January 1, 2018 (the "inclusion year"), a U.S. shareholder owning at least 10 percent of the vote (directly, indirectly, or through attribution) of any controlled foreign corporation (such corporation, a "CFC," and such shareholder, a "United States shareholder") or other foreign corporation that is at least 10-percent owned by a U.S. corporation (other than a passive foreign investment company) (a "specified foreign corporation") must include in income its pro rata share of the accumulated post-1986 deferred foreign income of the specified foreign corporation which was not previously taxed. This is accomplished by increasing the subpart F income of the specified foreign corporation for its inclusion year by the greater of (i) the accumulated post-1986 deferred foreign income of the corporation determined as of November 2, 2017, or (ii) the accumulated post-1986 deferred foreign income of the corporation determined as of December 31, 2017 (each such date, an "E&P measurement date"). Section 965(a). A specified foreign corporation that has an increase in its subpart F income for its inclusion year under section 965(a) is referred to as a deferred foreign income corporation or DFIC. If a Unites States shareholder owns multiple DFICs with different inclusion years, the United States shareholder may have inclusions under section 965 in multiple taxable years. For example, if a United States shareholder has a calendar year taxable year and it owns two DFICs with different U.S. taxable years, one with a November 30 fiscal year and one with a calendar year, the United States shareholder will have separate inclusions for 2017 and 2018. Section 965(d)(1). The accumulated post-1986 deferred foreign income of a DFIC is its post-1986 earnings and profits less any earnings attributable to income effectively connected with a trade or business in the United States ("ECI") or previously taxed earnings. Section 965(d)(2).

To the extent that a United States shareholder owns at least one specified foreign corporation that would be subject to section 965(a) but for the fact that the foreign corporation has a deficit in its post-1986 earnings and profits on November 2, 2017, the United States shareholder can use the deficits of such corporations to offset the amount of the inclusion it would have with respect to its DFICs. See section 965(b). A specified foreign corporation with such a deficit is referred to as an E&P deficit foreign corporation. Section 965(b)(3)(B). To the extent that a deficit is used to reduce the amount of an inclusion of a DFIC, section 965(b)(4) provides that the deficit is eliminated and the earnings sheltered by the deficit are treated as previously taxed earnings. Special rules apply to permit netting between DFICs and E&P deficit foreign corporations of different United States shareholders where the United States shareholders are members of an affiliated group. Section 965(b)(5).

The earnings included in the income of the United States shareholder under section 965(a) are generally subject to tax at one of two rates – 15.5 percent for the portion of earnings that does not exceed the amount of cash and certain cash equivalent assets and 8 percent for the remaining earnings. These rate reductions are accomplished through a deduction. See section 965(c)(1). In order to calculate the appropriate deduction and determine the portion of the inclusion that is taxed at the 15.5 percent rate for cash and cash equivalent assets, a United States shareholder must determine its aggregate foreign cash position. The statute defines aggregate foreign cash position to include items like cash, net accounts receivable, and the fair market value of actively traded property, commercial paper, government securities, short-term

2

ADMIN_03870

obligations, and foreign currency. Section 965(c)(3)(B). While the statute grants specific authority to the Secretary to identify additional assets that should be considered cash equivalent assets, see section 965(c)(3)(B)(iii)(V), nothing in the statute directs the Secretary to provide exceptions for items that are specifically described in the statute. The taxpayer determines its aggregate foreign cash position based on two different methods (in general, by measuring on the last day of the inclusion year, or the average of the last days of the last two taxable years ending before November 2, 2017) and must use the greater of those two amounts.

United States shareholders may use U.S. foreign tax credits, in accordance with the pre-Act rules, to offset their inclusion under section 965. However, in order to account for the reduced rate of tax on the earnings, section 965(g) provides that the amount of taxes paid or accrued, or deemed paid as accrued, with respect to the inclusion under section 965 is reduced by a percentage intended to mimic the amount of the deduction permitted under section 965(c) to achieve the 15.5 percent and 8 percent transition tax rates.

Recognizing that paying a tax associated with over 30 years of deferred earnings could present a hardship for taxpayers, even at the reduced rates provided in section 965, section 965(h) provides an election to United States shareholders to pay the tax due under section 965 over an eight-year period. However, the payment of the liability may be accelerated in certain situations, including certain dispositions by the taxpayer. Section 965(h)(3). Special elections are also provided for shareholders of S corporations, real estate investment trusts, and United States shareholders with net operating losses. See section 965(i), (m), and (n).

Congress provided the Treasury Department and the IRS broad authority to issue regulations related to section 965. Specifically, section 965(o) provides that the Secretary may provide regulations or other guidance as may be necessary or appropriate to carry out the provisions of section 965. Section 965(o) also states that such regulations may include regulations to provide appropriate basis adjustments and regulations or other guidance to prevent the avoidance of the purposes of section 965.

## B.    Prior Guidance on Section 965

The Treasury Department and the IRS have previously issued three notices and a revenue procedure that (i) described regulations that the Treasury Department and the IRS intend to issue, (ii) provided other guidance on section 965, and (iii) requested comments (the "prior guidance"). This prior guidance is summarized below.

### 1.    Notice 2018-07

On December 29, 2017, the Treasury Department and the IRS issued Notice 2018-07, which provided initial guidance on the application of section 965 (the "first notice"). The first notice announced the following rules that the Treasury Department and the IRS intend to issue as regulations: (i) rules for determining the amount of cash and cash equivalents for purposes of applying the 15.5 percent rate (including the treatment of derivatives and intercompany loans), (ii) rules for determining the amount of foreign earnings subject to the transition tax, (iii) rules permitting the distribution of earnings without the recognition of gain under section 961 in the year of a section 965 inclusion, and rules providing relief where payments or distributions

3

between specified foreign corporations between the E&P measurement dates would lead to double counting of earnings for purposes of calculating a U.S. shareholder's inclusion under section 965. The first notice also states that the Treasury Department and the IRS intend to issue regulations providing that, for purposes of section 965, all of the members of a consolidated group that are United States shareholders of one or more specified foreign corporations will be treated as a single United States shareholder.

### 2.    Notice 2018-13

On January 19, 2018, the Treasury Department and the IRS issued Notice 2018-13, which provided additional guidance on the application of section 965 (the "second notice"). The second notice announced that the Treasury Department and the IRS intend to issue as regulations addressing ordering rules for determining whether a foreign corporation is a DFIC or an E&P deficit foreign corporation, as well as rules for the calculation of earnings under the transition tax and how to translate certain amounts. The second notice also provides taxpayers targeted relief from certain unintended regulatory and reporting consequences arising from a change to existing stock attribution rules in the recent tax legislation, and makes a modification to the first notice regarding the repatriation of earnings subject to the transition tax.

### 3.    Revenue Procedure 2018-17

On February 13, 2018, the Treasury Department and the IRS issued Revenue Procedure 2018-17, which announced modifications to the procedures for changing the accounting period of foreign corporations owned by U.S. shareholders that are subject to the transition tax under section 965 (the "revenue procedure"). The revenue procedure provides that foreign corporations that are subject to section 965 are not permitted to make changes to their annual accounting period, by any method. This was intended to prevent taxpayers from making such changes in an effort to avoid, reduce, or delay the payment of the transition tax.

### 4.    Notice 2018-26

On April 2, 2018, the Treasury Department and the IRS issued Notice 2018-26, which announced that the Treasury Department and the IRS intend to issue regulations containing rules relating to the determination of ownership, cash measurement dates, and foreign taxes for purposes of section 965, rules intended to prevent the avoidance of section 965, rules and procedures relating to certain special elections under section 965, guidance on the reporting and payment of the transition tax, and a rule providing that a taxpayer that makes an election under section 962 for the inclusion year will be permitted to take the deduction under section 965(c) notwithstanding any existing regulations (the "third notice"). The third notice also provides relief to taxpayers from certain estimated tax requirements and penalties arising from the enactment of the transition tax and the change to existing stock attribution rules in the Act, and modifies a rule described in the second notice regarding the definitions of accounts receivable and accounts payable.

### 5.    Comments Received

A number of comment letters were received in response to the prior guidance. The comments covered a wide variety of topics, including but not limited to (1) requests for

ADMIN_03872

exceptions for certain items to be treated not as cash equivalent assets; (2) guidance regarding the application of the foreign tax credit; (3) application of rules preventing double-counting of earnings and cash positions to transactions between specified foreign corporations and their United States shareholders; (4) reporting and payment issues, and (5) the application of section 965 to individuals.  Many of the comments are addressed in the preamble to the proposed regulations, and any comments not addressed will be considered when the proposed regulations are finalized.

## II.     THE PROPOSED REGULATIONS

The proposed regulations provide rules to implement section 965, including those rules described in the prior guidance.  The proposed regulations include nine regulation sections under section 965, which generally provide (1) general rules and definitions under section 965; (2) rules relating to adjustments to earnings and profits and basis to determine and account for the application of section 965 and a rule that limits the amount of gain recognized in connection with the application of section 961(b)(2); (3) rules regarding the determination of section 965(c) deductions; (4) rules that disregard certain transactions for purposes of section 965; (5) and (6) rules with respect to foreign tax credits; (7) rules regarding elections and payments; (8) rules regarding affiliated groups, including consolidated groups; and (9) dates of applicability.  The proposed regulations also include modifications to the regulations under sections 962 and 986 relating to the application of section 965.  This Part II first describes the most significant issues addressed in the proposed regulations, and then provides a brief summary of other new issues addressed in the proposed regulations that were not addressed in the prior guidance.

### A.      Rules Related to Aggregate Foreign Cash Position

Proposed §1.965-1(f)(13) defines cash equivalent asset for purposes of determining a United States shareholder's aggregate foreign cash position.  In general, the definition is the same as provided in section 965(c)(3)(B), but it makes certain clarifications with respect to derivative financial instruments (consistent with rules described in the first notice).

As noted above, many of the comments received in response to the prior guidance focused on the statutory rules relating to cash equivalent assets, which determines which earnings are subject to tax at the 15.5 percent rate rather than 8 percent rate.  In general, these comments argued that the Treasury Department and the IRS should provide that certain types of assets should not be considered cash equivalent assets, even though technically described in the statute as such, because the assets were not sufficiently liquid to be converted into cash.  For example, under the statute, stock of a CFC may be considered a cash equivalent asset if any portion of the stock of the CFC is publicly traded on a securities market.  A number of taxpayers that own significant portions of the stock of a CFC (sometimes in excess of 50 percent of the outstanding stock) argued that the stock should not be considered a cash-equivalent asset, even though a small portion of the stock of the CFC was publicly traded, because they could not easily dispose of their interests in the business, and in fact had no plans to dispose of the entity.  Taxpayers also made similar arguments regarding the lack of liquidity with respect to property that they owned as inventory in their business, but for which there was an established market where the property could be actively traded.

5

ADMIN_03873

However, nothing in the statute or legislative history indicates that Congress intended for there to be exceptions to what constitutes a cash equivalent asset. In fact, as noted above, while the statute specifically provides regulatory authority for the Secretary to determine that certain additional assets should be treated as cash equivalent assets, the statute is silent with respect to whether the Secretary should or could exercise authority to create exceptions. Additionally, there are significant administrability issues in crafting any exception to the statutory provisions governing cash equivalent assets, as any exception premised on illiquidity could potentially be read broadly to eliminate most property from the definition of cash equivalent asset. Accordingly, the proposed regulations do not adopt any of the exceptions requested by taxpayers with respect to the types of assets that are considered cash equivalent assets for purposes of calculating a United States shareholder's aggregate foreign cash position.

## B.    Determination of DFIC and E&P Deficit Foreign Corporation

The second notice provides an ordering rule for determining whether a specified foreign corporation is a DFIC or E&P deficit foreign corporation. The rule states that if a specified foreign corporation has accumulated post-1986 deferred foreign income on either E&P measurement date, then the corporation is a DFIC even if is an E&P deficit foreign corporation on the other E&P measurement date. The rule also provides, consistent with the statute, that for purposes of determining whether a specified foreign corporation is an E&P deficit foreign corporation, the corporation must have a deficit in post-1986 earnings and profits without removing any previously taxed earnings. For example, assume a specified foreign corporation has $10 of post-1986 earnings and profits that consist of $100 of previously taxed earnings and profits and a deficit of $90 in its untaxed earnings and profits on both E&P measurement dates. The specified foreign corporation is not an E&P deficit foreign corporation because it has no deficit in its post-1986 earnings and profits on November 2, 2017. However, the specified foreign corporation is also not a DFIC because the $100 of previously taxed earnings are eliminated for purposes of determining its accumulated post-1986 deferred foreign income. These rules are included in proposed §1.965-1(f)(22) and illustrated in proposed §1.965-1(g) (Examples 3-5).

Comments requested that this rule be revised to permit a specified foreign corporation to be treated as an E&P deficit foreign corporation as long as it had a deficit in its untaxed earnings as of November 2, 2017. That is, the comments requested that any previously taxed earnings be eliminated for purposes of determining whether a specified foreign corporation had a deficit in post-1986 earnings and profits. The proposed regulations do not adopt these comments. See proposed §1.965-1(f)(22) and (g) (Example 5). Section 965(d)(2) and (3) provide separate definitions for accumulated post-1986 deferred foreign income (which excludes previously taxed earnings) and post-1986 earnings and profits (which does not). The definition of E&P deficit foreign corporation cross-references the definition of post-1986 earnings and profits, rather than the definition of accumulated post-1986 deferred foreign income, for purposes of determining whether the foreign corporation has a deficit. This supports the conclusion that Congress intended for the determination of whether a foreign corporation is an E&P deficit foreign corporation to be made with respect to all of its earnings and profits, including previously taxed earnings and profits.

6

ADMIN_03874

### C.    Double Counting Rules

The first notice provides relief where payments or distributions between specified foreign corporations between the E&P measurement dates would lead to double counting (or, in some cases, non-counting) of earnings for purposes of calculating a United States shareholder's inclusion under section 965. These rules are incorporated into the proposed regulations. Proposed §1.965-4(f) provides that certain payments made between related specified foreign corporations between the E&P measurement dates are disregarded for purposes of determining the post-1986 earnings and profits of the specified foreign corporation that made the payment. This is intended to ensure that, consistent with the legislative history, the earnings associated with those payments are not included twice (or not at all) for purposes of determining a United States shareholder's inclusion under section 965(a).

Some comments requested these rules be expanded to cover other transactions that could lead to double counting and double non-counting in the computation of post-1986 earnings and profits of a specified foreign corporation, including (i) deductible payments by a specified foreign corporation to a United States shareholder or to a partnership owned by the United States shareholder; and (ii) distributions by a specified foreign corporation to a United States shareholder.

The proposed regulations do not adopt these comments. Among other reasons, the Treasury Department and the IRS determined that the concerns regarding issues of double counting and double non-counting in the computation of post-1986 earnings and profits of a specified foreign corporation relate to transactions occurring between specified foreign corporations rather than between a specified foreign corporation and a United States shareholder. Payments by a specified foreign corporation to a United States shareholder only affect the post-1986 earnings and profits of a single specified foreign corporation, and thus do not result in double counting in determining a United States shareholder's section 965(a) inclusion amount. Additionally, disregarding payments between a specified foreign corporation and its United States shareholder could result in unintended benefits.

### D.    Foreign Tax Credit Rules

The proposed regulations in §§1.965-5 and -6 provide rules implementing the foreign tax credit specific rules of section 965 and rules coordinating the provisions of section 965 with the foreign tax credit provisions as in effect before their repeal or amendment by the Act. As noted above, section 965(g) generally provides that the amount of taxes paid or accrued, or deemed paid as accrued, with respect to the inclusion under section 965 are reduced by a percentage intended to mimic the amount of the deduction permitted under section 965(c).

Proposed §1.965-5 implements these specific rules under section 965. Proposed §1.965-5(b) and (c) provide that the haircut to U.S. foreign tax credits in section 965(g) applies both to taxes deemed paid as a result of the inclusion under section 965, as well as to any foreign tax credits allowed as a result of a subsequent distribution of the previously taxed earnings associated with that inclusion. This haircut applies both to earnings that are treated as previously taxed because the earnings were actually included in the income of the U.S. shareholder, and to earnings that are treated as previously taxed because such earnings were sheltered by a deficit

ADMIN_03875

under section 965(b).  Proposed §1.965-5(c) also provides that the taxes associated with the inclusion that were not creditable because of the haircut under section 965(g)(1) or because they were sheltered by a deficit may not be credited under other provisions of the Code.

Proposed §1.965-5(d)(1) clarifies how to apply the applicable percentage when a U.S. shareholder has multiple inclusion years, because, for example, its DFICs have different taxable years, and proposed §1.965-5(d)(2) provides rules that apply where a person owns an interest in DFIC through a domestic pass-through entity.

Proposed §1.965-6 principally confirms the application of rules in effect before the Act under sections 902 and 960 to any foreign tax credits associated with the inclusion under section 965, including with respect to the calculation of the appropriate fraction under section 902 and the allocation and apportionment of expenses for purposes of section 904.  See proposed §1.965-6(b), (c), and (d).  While comments requested special rules in certain situations, the Treasury Department and the IRS generally determined that, given the lack of instruction in the statute or legislative history to do otherwise, the appropriate course of action was to apply the pre-existing rules as provided in the statute.  Proposed §1.965-6(d) also includes a rule providing that the elimination of a deficit under section 965(b)(4)(B) is taken into account only after applying section 902 to determine the foreign taxes deemed paid with respect to any distributions from an E&P deficit foreign corporation in the relevant year.  This is intended to prevent taxpayers from inappropriately claiming deemed paid credits that they would not be permitted to claim in the absence of the rule in section 965(b)(4)(B) that eliminates the deficit going forward.

### E.    Application of Section 962

Section 962 generally provides that a United States shareholder that is an individual may elect to have the tax imposed under chapter 1 on amounts that are included in the individual's gross income under section 951(a) be an amount equal to the tax that would be imposed under section 11 if the amounts were received by a domestic corporation.  In addition, if an election is made under section 962, the amounts included in the individual's gross income under section 951(a) are treated as if they were received by a domestic corporation for purposes of applying section 960 (relating to foreign tax credits).  See §1.962-1(a).  Because an inclusion under section 965 increases the amount of subpart F income of a United States shareholder that is included under section 951(a), a United States shareholder that is an individual that elects the benefits of section 962 will be entitled to pay tax at the corporate tax rate and claim foreign tax credits with respect to their inclusion under section 965.  However, under the existing regulations, the taxpayer would not be allowed to offset the inclusion with any deductions, including the deduction under section 965(c).  See §1.962-1(b)(1)(i).

Consistent with the third notice, proposed §1.962-1(b)(1)(i)(B) provides that a taxpayer may reduce her subpart F income by the deduction under section 965(c) if the taxpayer makes the election under section 962.  However, the proposed regulations clarify that, subject to future guidance, "taxable income" as used in section 11 is not reduced by any other amounts, including any other deductions.  The language in the preamble of the proposed regulations acknowledging the potential for future guidance is intended to minimize any implications that taxpayers may read into the fact that the proposed regulations allow the deduction under section 965(c) for

8

ADMIN_03876

purposes of section 965 but do not address anything with respect to the deduction allowed under section 250.

### F.      Other New Issues

This section addresses other new issues addressed in the proposed regulations that were not addressed in the prior guidance.

### 1.      Treatment of Non-Chapter 1 Taxes

Under section 1411, an individual taxpayer must pay a tax of 3.8 percent on the lesser of its net investment income or its modified adjusted gross income over a set threshold amount. Estates and trusts must also pay a similar amount. Net investment income includes amounts that were included in the taxpayer's income under section 951(a) when those amounts are distributed, or a taxpayer may elect to instead treat the amount included under section 951(a) as net investment income in the year of the inclusion. See §1.1411-10. Under section 4940, a private foundation must pay an excise tax, generally equal to two percent of its net investment income. An inclusion under section 951(a)(1), including a section 965(a) inclusion, generally is included in the calculation of the gross investment income of a private foundation for purposes of section 4940.

The proposed regulations clarify whether a U.S. person that must pay tax under section 1411 on a section 965(a) inclusion is entitled to take into account a section 965(c) deduction for purposes of determining the amount of such tax. The Treasury Department and the IRS determined that the section 965(c) deduction was not intended to reduce the rate of tax imposed by non-income tax provisions outside of chapter 1. Accordingly, proposed §1.965-3(f)(3) provides that for purposes of section 1411 and §1.1411-4(f)(6), a section 965(c) deduction is not treated as a deduction properly allocable to a corresponding section 965(a) inclusion. Consistent with the rule for section 1411, proposed §1.965-3(f)(4) provides that a section 965(c) deduction is not treated as an ordinary and necessary expense paid or incurred for the production or collection of gross investment income for purposes of section 4940(c)(3)(A).

Additionally, consistent with this determination, because the definition of net income tax in section 965(h)(6)(B) refers to credits allowed under subparts A, B, and D of part IV of subchapter A of chapter 1 of subtitle A of the Code, the Treasury Department and the IRS determined that section 965(h) applies only with respect to tax imposed under subchapter A of chapter 1 of subtitle A of the Code. Accordingly, the preamble to the proposed regulations states that elections may not be made under section 965(h) to pay tax imposed under other chapters or subchapters (such as the taxes imposed under sections 1411 and 4940) in eight installments.

### 2.      Elective Basis Adjustments

To the extent that a deficit is used to reduce the amount of an inclusion of a DFIC, section 965(b)(4) provides that the deficit is eliminated and the earnings sheltered by the deficit are treated as previously taxed earnings. In general, when a taxpayer incurs tax under section 951(a), basis adjustments are made to the taxpayer's stock in the CFC under section 961 to account for the fact that a portion of the CFC's earnings have been taxed and may be distributed under section 959 to the United States without incurring additional tax.

9

Section 965 is silent with respect to whether any basis adjustments should be made to account for the changes required by section 965(b)(4) to the earnings and profits of a DFIC and E&P deficit foreign corporation when a deficit is used to reduce the amount of an inclusion under section 965.  However, the legislative history and section 965(o) generally delegate authority to the Secretary to determine whether adjustments should be made to increase the basis in the stock of the DFIC's stock and decrease the basis of the E&P deficit foreign corporation's stock in an amount equal to the amount of deficit used.

In general, a taxpayer will want the basis increase with respect to the stock of the DFIC, because absent the basis increase, the taxpayer may recognize gain under section 961(b)(2) if it distributes the previously taxed earnings that it has due to the use of a deficit of an E&P deficit foreign corporation.  However, if the taxpayer does not have basis in the stock of the E&P deficit foreign corporation that is at least equal to the amount of the deficit used, then a downward basis adjustment will cause it to recognize gain in the year of the inclusion under section 961(b)(2).

The Treasury Department and the IRS determined that it was inappropriate to allow taxpayers to take into account the basis increase without taking into account the corresponding basis decrease.  In order to account for the fact that some taxpayers may prefer not to have the downward basis adjustment, proposed §1.965-2(f)(2) allows taxpayers to elect to make the relevant basis adjustments on a consistent basis across all its specified foreign corporations. Proposed §1.965-2(f)(2)(iii)(B) provides the mechanism for making the election.

### 3.    Acceleration Events

If a taxpayer makes an election under section 965(h) to pay its liability for its inclusion under section 965 over eight years, certain events will cause the taxpayer's obligation to pay to accelerate.  Specifically, section 965(h)(3) provides that if there is an addition to tax for failure to timely pay an installment required under section 965(h), a liquidation or sale of substantially all the assets of the taxpayer (including in a title 11 or similar case), a cessation of business by the taxpayer, or any similar circumstance, the unpaid portion of the remaining installments will be due on the date of such event (or in the case of a title 11 or similar case, the day before the petition is filed).  However, section 965(h)(3) also provides that the acceleration does not occur in a sale of substantially all of the assets of the taxpayer if the taxpayer and buyer enter into an agreement with the Secretary where the buyer assumes the taxpayer's obligation to pay the remainder of its liability associated with section 965.

Proposed §1.965-7(b)(3)(ii) lists the events treated as acceleration events for this purpose, which includes all the items listed in the statutory language.  In addition, proposed §1.965-7(b)(3)(ii)(D) provides that any event that results in a person no longer being a United States person (including, for example, a resident alien becoming a nonresident alien) is an acceleration event.  Proposed §1.965-7(b)(3)(ii)(E) provides that a person that was not a member of any consolidated group becoming a member of a consolidated group is treated as an acceleration event with respect to the person, and proposed §1.965-7(b)(3)(ii)(F) provides that when a consolidated group ceases to exist, or otherwise no longer files a consolidated return, that constitutes an acceleration event.

10

ADMIN_03878

The proposed regulations also expand on the exception provided in the statute to the acceleration events if certain requirements are met. Generally, acceleration events eligible for this exception include (i) liquidations, sales, exchanges, or other dispositions of substantially all of the assets of a person (with the exception of, in the case of an individual, by reason of death, and with special rules applying in the case of a consolidated group), (ii) a corporation that was not a member of any consolidated group becoming a member of a consolidated group, and (iii) a consolidated group ceasing to exist by reason of acquisition and immediately joining another consolidated group.  In each case, the exception applies if the parties to the acceleration event enter into a transfer agreement described in proposed §1.965-7(b)(3)(iii)(B), including agreement by the transferor and transferee to remain jointly and severally liable for the taxes assumed.  The proposed regulations also provide procedural rules regarding the completion and submission of a transfer agreement, as well as rules relating to the Commissioner's review of such agreements.  See generally proposed §1.965-7(b)(3)(iii)(B) and (C).

### 4.     Clarifications to Net Tax Liability Definition

For purposes of determining the amount of a taxpayer's liability that may be spread over the eight year period, the statute requires the taxpayer to determine the amount of its tax liability with section 965 included, and then subtract its liability determined without section 965 and without any income or dividends from the CFC.  This is intended to account for the fact that section 965 can cause dividends during the inclusion year to be treated as distributions that are not subject to tax.

The proposed regulations define a new term, "total net tax liability under section 965," which reflects the definition of net tax liability in section 965(h)(6) with respect to a person as if the person were a United States shareholder of all DFICs with respect to which it has section 965(a) inclusions, consistent with the third notice.  See proposed §1.965-7(g)(10).  However, the proposed regulations provide that the dividends excluded pursuant to the second prong of the computation (the "without" prong) include dividends received directly or through a chain of ownership described in section 958(a).  See proposed §1.965-7(g)(10)(i)(B)(2).  The proposed regulations also clarify that foreign tax credits associated with dividends are disregarded in determining the taxpayer's tax liability without section 965.  Proposed §1.965-7(g)(10)(i)(B).

### G.     Applicability Dates

The proposed regulations generally apply beginning the last taxable year of a foreign corporation that begins before January 1, 2018, and with respect to a United States person, beginning the taxable year in which or with which such taxable year of the foreign corporation ends.  Proposed §1.965-9(a).  For the avoidance of doubt, proposed §1.965-9(b) clarifies that the rules described in proposed §1.965-4 (concerning anti-avoidance rules) apply to all foreign corporation and shareholder taxable years described in proposed §1.965-9(b), even if the relevant transaction, the effective date of a change in method of accounting or entity classification election, or the specified payment occurred in a prior taxable year.

Additionally, the preamble to the proposed regulations provides a limited statement of reliance, permitting taxpayers to choose to apply the rules in proposed §1.965-7 (relating to

11

elections and payment of tax) in their entirety to all open tax years as if they were final regulations.

## III.   CONCLUSION

We recommend that you approve the proposed regulations for publication in the *Federal Register*.  The proposed regulations are expected to generate coverage by the tax press and could also generate coverage by the general press.  The Secretary was briefed on these regulations on July 9, 2018.  An additional briefing of the Secretary is not necessary.

ADMIN_03880

REGULATIONS SIGNATURE PACKAGE ROUTING SLIP AND CLEARANCE SHEET
(CC:INTL)

- Associate Chief Counsel (International)
- Chief Counsel
- Deputy Commissioner
- Assistant Secretary (Tax Policy)

Project Title: Guidance with Respect to Transition Tax Under Section 965

Project No.: REG-104226-18                     Code Section: 965

Comments: The proposed regulations implement section 965 of the Internal Revenue
Code as amended by "An Act to provide for reconciliation pursuant to titles II and V of
the concurrent resolution on the budget for fiscal year 2018," P.L. 115-97, which was
enacted on December 22, 2017.  Specifically, the proposed regulations provide rules for
determining the section 965(a) inclusion amount of a United States shareholder of a
deferred foreign income corporation.

PLEASE CALL Leni Perkins            at 317-4193 FOR PICKUP.

Each person identified below has reviewed and approved for publication in the Federal Register this
signature package dated June 19, 2018.

| | Drafter | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer |
|---|---|---|---|---|---|---|
| Symbols: | CC:INTL | CC:INTL:B02 | CC:INTL:FO | CC:INTL:FO | CC:INTL:FO | |
| Surname/Date: | L. PERKINS 6/19/18 | R. Jenkins 6/19/18 | K. Stowe 6/19/18 | D. McCall 6/19/18 | M. Gibson 6/19/18 | |

| | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer |
|---|---|---|---|---|---|---|
| Symbols: | DCSE | DCSE | | | | |
| Surname/Date: | Giuliano 7/2/18 | Wielobob 7.3.18 | | | | |

(Rev. 7/93)

ADMIN_03881

**Office of Chief Counsel**
**Internal Revenue Service**
# memorandum

date:   June 19, 2018

to:   William M. Paul, Acting Chief Counsel
Mireille T. Khoury, Special Assistant to the Deputy Commissioner for Services and
Enforcement
Amy F. Giuliano, Senior Attorney Advisor to the Deputy Commissioner for Services and
Enforcement

from:   Marjorie Rollinson, Associate Chief Counsel (International)
Daniel M. McCall, Deputy Associate Chief Counsel (International - Technical)
Raymond J. Stahl, Special Counsel
Rose Jenkins, Senior Counsel, CC:INTL:B02
Karen J. Cate, Attorney, CC:INTL:B03
Leni C. Perkins, Attorney, CC:INTL:B02

---

subject:   <u>Proposed Notice of Proposed Rulemaking</u> – Guidance with Respect to Transition Tax
Under Section 965
REG-104226-18
Attorneys – Rose Jenkins, CC:INTL:B02
Karen J. Cate, CC:INTL:B03
Leni C. Perkins, CC:INTL:B02

<u>Guidance description</u>.  The proposed regulations implement section 965 of the Internal
Revenue Code as amended by "An Act to provide for reconciliation pursuant to titles II
and V of the concurrent resolution on the budget for fiscal year 2018," P.L. 115-97,
which was enacted on December 22, 2017.  Specifically, the proposed regulations
provide rules for determining the section 965(a) inclusion amount of a United States
shareholder of a deferred foreign income corporation.

<u>Why guidance was initiated</u>.  This guidance addresses open questions regarding the
application of section 965.  Among other things, this guidance implements the three
notices issued since December 22, 2017, which announced regulations addressing
open issues under section 965.

<u>What taxpayers are impacted by the guidance</u>.  The proposed regulations would affect

ADMIN_03882

2

United States persons with direct or indirect interests in certain specified foreign corporations.

Coordination.  The proposed regulations (and related notices, which the proposed regulations implement) have been coordinated with Treasury, ACC: P&A, ACC: PSI, ACC:IT&A, ACC:FIP, ACC:CORP, ACC:TEGE, LBI, and TRIO.

Whether the guidance is controversial (both internally and externally).  The proposed regulations are generally not expected to be controversial, in part because they largely implement the guidance that has already been announced in notices.

Critical dates, if any, for publication.  This guidance is scheduled for publication on July 31, 2018.

A briefing relating to this project is scheduled for June 11.  If you have any questions about this project, please contact Leni Perkins (202) 317-4913 or Karen J. Cate (202) 317-4667.

ADMIN_03883

**Office of Chief Counsel**
**Internal Revenue Service**
# memorandum

date: May 29, 2018

to: William M. Paul, Acting Chief Counsel
Mireille T. Khoury, Special Assistant to the Deputy Commissioner for Services and Enforcement
Amy F. Giuliano, Senior Attorney Advisor to the Deputy Commissioner for Services and Enforcement

from: Marjorie Rollinson, Associate Chief Counsel (International)
Daniel M. McCall, Deputy Associate Chief Counsel (International - Technical)
Raymond J. Stahl, Special Counsel
Rose Jenkins, Senior Counsel, CC:INTL:B02
Karen J. Cate, Attorney, CC:INTL:B03
Leni J. Perkins, Attorney, CC:INTL:B02

subject: <u>Proposed Notice of Proposed Rulemaking</u> – Guidance Under Section 965
REG-104226-18
Attorneys – Rose Jenkins, CC:INTL:B02
Karen J. Cate, CC:INTL:B03
Leni C. Perkins, CC:INTL:B02

<u>Guidance description</u>.  The proposed regulations implement section 965 of the Internal Revenue Code as amended by "An Act to provide for reconciliation pursuant to titles II and V of the concurrent resolution on the budget for fiscal year 2018," P.L. 115-97, which was enacted on December 22, 2017.  Specifically, the proposed regulations provide rules for determining the section 965(a) inclusion amount of a United States shareholder of a deferred foreign income corporation.

<u>Why guidance was initiated</u>.  This guidance addresses open questions regarding the application of section 965.  Among other things, this guidance implements the three notices issued since December 22, 2017, which announced regulations addressing open issues under section 965.

<u>What taxpayers are impacted by the guidance</u>.  The proposed regulations would affect United States persons with direct or indirect interests in certain specified foreign

CC & Dep. Comm. Exec Summary/Regs
Rev 3/12/2018

corporations.

<u>Coordination</u>.  The proposed regulations (and related notices, which the proposed regulations implement) have been coordinated with Treasury, ACC: P&A, ACC: PSI, ACC:IT&A, ACC:FIP, ACC:CORP, LBI, and TRIO.

<u>Whether the guidance is controversial (both internally and externally)</u>.  The proposed regulations are generally not expected to be controversial, in part because they largely implement the guidance that has already been announced in notices.

<u>Critical dates, if any, for publication</u>.  This guidance is scheduled for publication on July 31, 2018.

A briefing relating to this project is scheduled for June 11.  If you have any questions about this project, please contact Leni Perkins (202) 317-4913 or Karen J. Cate (202) 317-4667.

## Jenkins Rose E

| | |
|---|---|
| **From:** | Stahl Raymond J |
| **Sent:** | Tuesday, May 29, 2018 8:08 PM |
| **To:** | &CC INTL Green Circulation |
| **Cc:** | counsel.office@tigta.treas.gov; Lindsay.Kitzinger@treasury.gov; Scanlon Gary; Yen Jason; York Brett; Zent Brenda; Hinding John E; Ferrise Anthony J; Barbosa Isabel A; Nachman David; Newton Theresa A; Jenkins Rose E; Felker Barbara A; Mitchell Jeffery G; Perkins Leni C; Cate Karen J; Lisecki Cleve; Erwin Mark E; Griffin Adrienne E; Fuller Pamela W; Curteman Thomas W; Hay Caroline; Burke Deane M; Babitz Kevin I; Milnes-Vasquez Marie C; Glyer Grid R; Massey Susan E; Jacobs Kevin M; Diamond-Jones Austin M; Wang Julie T; Franks Martin; Johnson Regina L |
| **Subject:** | GREEN CIRCULATION -- Section 965 REG-104226-18 Guidance Under Section 965 |
| **Attachments:** | REG-104226-18(checked).docx |

GREEN CIRCULATION

---------------------------------------------------------------------------------------------------

**Please Provide Comments by:** <u>COB JUNE 12, 2018</u>

---------------------------------------------------------------------------------------------------

**CASE-MIS Number:** REG-104226-18

**Target Publication Date:** JULY 31, 2018

**Subject:** Guidance Under Section 965

**Comments**:

This document contains proposed regulations implementing section 965 of the Internal Revenue Code, as amended by "An Act to provide for reconciliation pursuant to titles II and V of the concurrent resolution on the budget for fiscal year 2018," P.L. 115-97, which was enacted on December 22, 2017.  Specifically, the proposed regulations provide rules for determining the section 965(a) inclusion amount of a United States shareholder of a deferred foreign income corporation.  The proposed regulations would affect United States persons with direct or indirect interests in certain foreign corporations.

---------------------------------------------------------------------------------------------------

**Send Comments to**:

For issues relating to proposed regulations under §§1.962-1 and 2, 1.965-1 through 4, 1.965-7 and 9, Leni C. Perkins, <u>Leni.C.Perkins@irscounsel.treas.gov</u>
For issues relating to proposed regulations under §1.965-5 through 6, Karen J. Cate, <u>Karen.J.Cate@irscounsel.treas.gov</u>
For issues relating to §1.956-8, Leni C. Perkins, <u>Leni.C.Perkins@irscounsel.treas.gov</u>, and Grid R. Glyer, <u>Grid.R.Glyer@irscounsel.treas.gov</u>

---------------------------------------------------------------------------------------------------

To request that names be added or deleted to the list of persons receiving this distribution, please contact <u>Joseph S. Henderson</u> (CC:INTL:B08) at (202) 317-4967.

ADMIN_03886

Notice of Planned Regulatory Action
Pursuant to Executive Order 12866

DEPARTMENT OF THE TREASURY

Agency:  Internal Revenue Service

Title: REG-104226-18 Guidance Regarding the Transition Tax Under Section 965 and

Related Provisions

Significance:  Significant

Upcoming Action:  NPRM

Planned Publication Date: July 31, 2018

RIN  1545-BO51

Statutory/Judicial Deadline:  Date Not Applicable

Description:   The planned tax regulatory action is a notice of proposed rulemaking under section 965, a new provision that Congress enacted on December 22, 2017 as part of the Tax Cuts and Jobs Act (TCJA). Previously, tax on foreign income earned by a foreign subsidiary generally was deferred until the earnings associated with the income were brought into the United States (often referred to as a "repatriation of earnings").  The TCJA established a new "participation exemption system" where foreign income is taxed in the year the income is earned or not taxed at all.  Section 965 establishes a mechanism for taxing foreign income deferred under the prior system as part of transitioning to the new participation exemption system.

Section 965 applies to the last taxable year of a foreign corporation beginning before January 1, 2018, and for United States shareholders for years beginning the taxable year in which or with which the taxable year of the foreign corporation ends. Section 965 requires United States shareholders of certain foreign corporations that had deferred foreign income to pay a transition tax on that deferred foreign income.  Under the transition tax, the deferred foreign income is taxed as if it had been repatriated to the United States.  The shareholders are allowed to reduce the amount of the income subject to the transition tax based on deficits in earnings and profits from other foreign subsidiaries.

The effective tax rate of the transition tax may be reduced in two ways. One, a participation deduction may offset some of the income subject to the transition tax. The amount of the deduction varies based upon the amount of the foreign subsidiary's cash or cash-equivalent assets (as opposed to non-cash assets, such as plant, property, and

equipment, et cetera). Two, a reduced foreign tax credit may be claimed, which offsets the amount of the transition tax. Additionally, taxpayers may elect to pay the transition tax in installments over an eight-year period. Certain shareholders of "S corporations" may defer paying the entire transition tax until certain triggering events occur.

In late 2017 and early 2018, Treasury issued a series of three notices in the Internal Revenue Bulletin providing that Treasury and the IRS intended to issue regulations proposing rules under section 965. See Notice 2018-07, 2018-4 I.R.B. 317; Notice 2018-13, 2018-16 I.R.B. 341; and Notice 2018-26, 2018-16 I.R.B. 480. This notice of proposed rulemaking contains the rules in the three notices with certain modifications and additional guidance. The notice of proposed rulemaking contains the following proposed guidance:

- Rules regarding adjustments to earnings and profits (including previously taxed earnings and profits) and basis in stock to reflect the imposition of transition tax on deferred foreign income and the use of deficits in earnings and profits to reduce the income subject to the transition tax,
- Rules to compute the participation deduction allowed under section 965(c),
- Rules to combat tax avoidance by disregarding certain transactions undertaken with an avoidance purpose
- Rules disregarding certain transactions to prevent an inappropriate double-counting of earnings in the calculation of the transition tax,
- Rules relating to the application foreign tax credits that may be claimed as a result of subjecting income to the transition tax,
- Rules relating to elections (including a special election not under section 965 that affects the rate of tax owed by shareholders that are individuals),
- Procedures for how to pay the transition tax,
- Rules addressing the treatment of affiliated groups of corporations for certain purposes, including for purposes of determining the amount by which the income subject to the transition tax can be reduced by deficits in earnings and profits of other foreign corporations and determining the amount of the participation deduction allowed under section 965(c), and
- Rules regarding the amount of tax that may be owed when foreign currency gain or loss arises when a foreign subsidiary actually distributes the earnings taxed under section 965 to its United States shareholder.

The notice of proposed rulemaking does not reflect any significant policy changes because section 965 is newly enacted and does not create a serious inconsistency or otherwise interfere with an action taken or planned by another agency. Additionally, this notice of proposed rulemaking is not expected to have an annual non-revenue effect on the economy of $100 million or more, measured against a no-action baseline because any significant economic cost stems from the enactment of section 965 and not from these proposed regulations that assist taxpayers in determining their statutory obligations.

The notice of proposed rulemaking raises novel legal or policy issues and is, therefore, a significant regulatory action under E.O. 12866 as modified by the April 11, 2018

ADMIN_03888

Memorandum of Agreement between the Department of Treasury and the Office of Management and Budget.

Agency Contact: Leni C. Perkins (202) 317-6934

**Spring 2018 EDITION**
*(Replaces previous editions)*

# REGULATORY INFORMATION SERVICE CENTER
## Regulatory Information Data Form

You may print additional copies of this form from the RISC/OIRA Consolidated Information System (ROCIS) website, http://www.rocis.gov

| DEPARTMENT/AGENCY AND BUREAU/OFFICE ISSUING REGULATION<br><br>**IRS/Treasury** | REGULATION IDENTIFIER NUMBER (RIN), IF KNOWN.   (OTHERWISE ENTER AGENCY CODE.)<br><br>_ _ _ _ - _ _ _ _ | REGULATORY FLEXIBILITY ACT SECTION 610 REVIEW *(Check appropriate box if applicable.)*<br>☐ Section 610 Review  *(Planned or Current)*<br>☐ Completion of a Section 610 Review<br>☐ Rulemaking Resulting From a Section 610 Review |
|---|---|---|

TITLE OF REGULATION Rules relating to section 965 transition tax

**REGULATORY PLAN**

Include in the Regulatory Plan: ☒ Yes  ☐ No

**PRIORITY**

Priority Category:  *(Please select one.)*

☐ Economically Significant          ☒ Substantive, Nonsignificant          ☐ Informational/Administrative/Other

☐ Other Significant          ☐ Routine and Frequent

**UNFUNDED MANDATES**

Subject to section 202 of the Unfunded Mandates Reform Act (PL 104-4):     ☐ Yes   ☒ No     ☐ Undetermined

*(If Yes, check all affected categories.)*     ☐ State, local, or tribal governments     ☐ Private sector

**MAJOR**

Major under 5 USC 801 (PL 104-121):          ☐ Yes   ☒ No     ☐ Undetermined

EO 13771 Designation: As described in Attachment 3 of the August 18, 2017, data call memorandum

☐ Deregulatory   ☐ Regulatory   ☐ Exempt   ☐ Waived   ☒ Other

| LEGAL AUTHORITY | ☐ Not Yet Determined | ☐ Check here if there are additional legal authorities not listed below |
|---|---|---|
| 26 U.S.C. 7805 | | |
| 26 U.S.C. 965 | | |
| | | |
| | | |
| | | |

| CFR CITATION | ☐ None | ☒ Not Yet Determined | ☐ Check here if there are additional CFR citations not listed below |
|---|---|---|---|
| CFR | | | |
| CFR | | | |
| CFR | | | |
| CFR | | | |
| CFR | | | |
| CFR | | | |
| CFR | | | |

| LEGAL DEADLINE | | ☒ None | | |
|---|---|---|---|---|
| ACTION | SOURCE | DEADLINE DATE | DESCRIPTION | |
| ☐ NPRM  ☐ Final  ☐ Other | ☐ Statutory  ☐ Judicial | /     / | | |
| ☐ NPRM  ☐ Final  ☐ Other | ☐ Statutory  ☐ Judicial | /     / | | |
| ☐ NPRM  ☐ Final  ☐ Other | ☐ Statutory  ☐ Judicial | /     / | | |
| ☐ NPRM  ☐ Final  ☐ Other | ☐ Statutory  ☐ Judicial | /     / | | |
| ☐ NPRM  ☐ Final  ☐ Other | ☐ Statutory  ☐ Judicial | /     / | | |

OVERALL DESCRIPTION OF DEADLINE

ABSTRACT   *(Attach additional sheet if necessary.  For Regulatory Plan entries in fall editions, attach additional sheets to report Statement of Need, Summary of Legal Basis, Alternatives, Anticipated Costs and Benefits, and Risks.)*

These regulations provide guidance regarding the section 965 transition tax that was implemented as part of the TCJA.

ADMIN_03890

TIMETABLE    ☐ Next Action Undetermined    *(Attach additional sheet if necessary.)*

If the "Next Action" is not one of the standard actions printed on this form, please indicate the stage: ☐ Prerule    ☒ Proposed    ☐ Final

*(If the "Next Action" is more than 1 year after publication of the Agenda, the stage will automatically be "Long-Term." If the Agenda entry is completed, please indicate by a check in the completion column which action has completed the rulemaking. Check only one line.)*

| ACTION | DATE | FR CITATION | COMPLETION |
|---|---|---|---|
| ANPRM | / / | FR | |
| ANPRM Comment Period End | / / | FR | |
| NPRM | / / | FR | |
| NPRM Comment Period End | / / | FR | |
| Interim Final Rule | / / | FR | |
| Interim Final Rule Comment Period End | / / | FR | |
| Interim Final Rule Effective | / / | FR | |
| Final Action | / / | FR | |
| Final Action Effective | / / | FR | |
| Begin Review of Current Regulation | / / | FR | |
| End Review of Current Regulation | / / | FR | |
| | / / | FR | |

REGULATORY FLEXIBILITY ANALYSIS REQUIRED

*(If your answer to this question is "No" or "Undetermined," you may wish to complete the optional question "SMALL ENTITIES AFFECTED" to indicate some impact on small entities.)*

Is an analysis required by the Regulatory Flexibility Act because this rulemaking is likely to have a significant economic impact on a substantial number of small entities?

☐ Yes    ☒ No    ☐ Undetermined

If Yes, check affected small entities *(Check all that apply.)*    ☐ Businesses    ☐ Governmental jurisdictions    ☐ Organizations

SMALL ENTITIES AFFECTED    *(Optional question)*   Is this rulemaking likely to have some impact on small entities?    ☐ Yes    ☒ No

If Yes, check affected small entities *(Check all that apply.)*    ☐ Businesses    ☐ Governmental jurisdictions    ☐ Organizations

GOVERNMENT LEVELS AFFECTED

Effects on levels of government:    ☐ Yes    ☒ No    ☐ Undetermined

If Yes, check affected governments *(Check all that apply.)*    ☐ State    ☐ Local    ☐ Tribal    ☐ Federal

FEDERALISM IMPLICATIONS

Is this rulemaking likely to have "federalism implications" as defined in Executive Order 13132?    ☐ Yes    ☒ No    ☐ Undetermined

ENERGY EFFECTS    *(Optional)*

Agency has prepared or plans to prepare Statement of Energy Effects.    ☐ Yes    ☐ No    ☐ Undetermined

INTERNATIONAL IMPACTS

Will this regulatory action be likely to have international trade and investment effects, or otherwise be of international interest?    ☐ Yes    ☒ No

AGENCY CONTACT    *(If more than 1 contact, attach additional sheet.)*

| First Name: Leni | Middle Name: C. | Last Name: Perkins | Prefix: *(COL, Dr., etc.)* | Suffix: *(Jr., Sr., etc.)* |
|---|---|---|---|---|

Title: General Attorney (Tax)

Contact Agency Code: *(Fill in only if contact person's address is at an agency other than the agency issuing the regulation.)*

Address: *(Put room number or mail stop, if any, on first line of address.)*
1111 Constitution Avenue NW, Rm 4708; Washington, DC 20224

| Telephone: (202) 317-4913 | FAX: (855) 584-5146 | TDD: |
|---|---|---|

E-Mail:
Leni.C.Perkins@irscounsel.treas.gov

URLs    *(Optional)*
For more information about this RIN (Usually link to program office): http://

For public comments on this RIN: http://

ADDITIONAL INFORMATION    *(Optional)*

AGENCY SORT CODES    *(Optional)*

  1.                                             2.

COMPLIANCE COST TO THE PUBLIC    *(Optional)*      *(Do not enter dollar signs, commas, or decimal points. Negative numbers are OK.)*

Initial (Administrative Startup and/or Capital) Cost: $      Yearly Recurring (Annual Operating) Cost: $      Base Year of Your Dollar Estimates:

AFFECTED SECTORS    *(Optional)*      *(List one or more NAICS codes.)*

RELATED RINS      *(Optional)*      *(List one or more related RINs.)*

_ _ _ _ - _ _ _ _    ☐ Merged    ☐ Split    ☐ New Activity    ☐ Duplicate    ☐ Related Activity

_ _ _ _ - _ _ _ _    ☐ Merged    ☐ Split    ☐ New Activity    ☐ Duplicate    ☐ Related Activity

RELATED AGENCIES    *(Optional)*      *(List one or more related Agencies.)*

Agency:      ☐ Joint Rule    ☐ Common Rule

ADMIN_03891