# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MONTE SILVER** and<br>**MONTE SILVER, LTD.**,<br>an Israel corporation<br><br>    *Plaintiffs*<br><br>*v.*<br><br>**INTERNAL REVENUE SERVICE;**<br>**UNITED STATES DEPARTMENT**<br>**OF THE TREASURY; CHARLES RETTIG**,<br>in his official capacity as Commissioner of the<br>Internal Revenue; and **STEVEN MNUCHIN**, in<br>his official capacity as United States Secretary<br>of the Treasury<br><br>    *Defendants* | Civil Action No. 19-cv-0247-APM<br><br>Judge Amit P. Mehta |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

  In accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7(a), (e) and (h), Plaintiffs Monte Silver and Monte Silver Ltd. respectfully submit this Memorandum of Points and Authorities in support of their Motion for Summary Judgment which is being filed concomitantly with this Memorandum. The Court is also referred to the Declaration of Monte Silver ("Silver Decl."), the Administrative Record ("AR") provided by the Defendants (ECF 38), the Supplemental Record ("PR") attached to this this Memorandum as the **Appendix** and the Proposed Order attached hereto.

## TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................ iii

I.         INTRODUCTION ............................................................................................. 1

II.       STATEMENT OF MATERIAL FACTS ...................................................... 2

   A.   Statutory and Legal Background .................................................................. 2

      1. The TCJA and the Transition Tax ........................................................ 2

      2.   The RFA, PRA and APA: Statutes Protecting Small Business During the Rulemaking Process. ...................................................................................................... 3

   B.   Factual Background ...................................................................................... 6

   C.   Procedural History ...................................................................................... 10

III.     STANDARD OF REVIEW ........................................................................... 11

IV.    ARGUMENT .................................................................................................. 12

   A.   Plaintiffs are small businesses under the RFA .......................................... 12

   B.   Defendants' certifications under the RFA/PRA ......................................... 13

   C.   Plaintiffs are adversely affected and aggrieved by Defendants' Failure to Comply with the Procedural Safeguards of the RFA and PRA ..................... 17

   D.   Summary Judgment is Proper ..................................................................... 18

V.       PLAINTIFFS ARE ENTITLED TO EFFECTIVE RELIEF ......................... 19

VI.     CONCLUSION .............................................................................................. 21

CERTIFICATE OF SERVICE ............................................................................................ 23

APPENDIX TO THE MEMORANDUM OF POINTS AND AUTHORITIES ........................... 24

## TABLE OF AUTHORITIES

**Cases**

*Alfa Int'l Seafood v. Ross*,
264 F. Supp. 3d. 23 (D.D.C. 2017) ............................................... 12

*Am. Biosci., Inc. v. Thompson*,
269 F.3d 1077 (D.C. Cir. 2001) ................................................... 12

*Anderson v. Liberty Lobby, Inc*.,
477 U.S. 242 (1986) .................................................................... 12

*Ardmore Consulting Grp., Inc. v. Contreras – Sweet*,
118 F.Supp.3d 388 (D.D.C. 2015) ............................................... 14

*BellSouth Corp. v. FCC*,
162 F.3d 1215 (D.C. Cir. 1999) ................................................... 13

*Butte Cnty., Cal. v. Hogen*,
613 F.3d 190 (D.C. Cir. 2010) ..................................................... 14

*Cablevision Sys. Corp. v. Fed. Commc'ns Comm'n* ,
649 F.3d 695 (D.C. Cir. 2011) ..................................................... 13

*Charleston Area Medical Center v. Burwell*,
216 F.Supp.3d 18 (D.D.C. 2016) ................................................. 11

*CIC Services LLC v. Internal Revenue Service*,
925 F.3d 247, 258 (6th Cir. 2019), *cert. granted*,
2020 WL 2105208 (May 4, 2020) ................................................ 18

*City. of Los Angeles v. Shalala*,
192 F.3d 1005 (D.C. Cir.1999) *cert. denied*,
530 U.S. 1204 (2000)……………………………………………..……………………13

*Department of Commerce v. New York*,
139 S. Ct. 2551 (2019) ................................................................ 13

*DIRECTV, Inc. v. F.C.C.*,
110 F.3d 816 (D.C. Cir. 1997) ..................................................... 13

*Enochs v. Williams Packing & Navigation Co.*,
370 U.S. 1 (1962) ....................................................................... 23

*Farrell v. Tillerson,*
315 F.Supp.3d 47 (D.D.C. 2018) ................................................................................ 17

*GTE Serv. Corp. v. F.C.C.,*
205 F.3d 416 (D.C. Cir. 2000) ................................................................................... 13

*Hispanic Affairs Project v. Acosta,*
263 F.Supp. 3d 160 (D.D.C. 2017),
*affirming in part and reversing in part on other grounds,*
901 F.3d 378 (2018)................................................................................................... 13

*Lee Mem'l Health Sys. v. Burwell,*
206 F.Supp. 3d 307 (D.D.C. 2016),
*aff'd sub nom. Billings Clinic v. Azar*, 901 F.3d 301 (D.C.Cir. 2018) ...................... 12

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) .................................................................................................... 13

*Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys.,*
516 F.2d 1229 (D.C. Cir. 1975) ................................................................................ 11

*National Truck Equipment Ass'n v. National Highway Traffic Safety Admin.,*
919 F.2d 1148 (6th Cir. 1990),
*reh. denied*, 928 F.2d. 739 (6th Cir. 1991) ................................................................ 21

*North Carolina Fisheries Ass'n v. Daley,*
27 F.Supp. 2d 650 (E.D. Va. 1998) ..................................................................... 17, 21

*Orion Reserves Ltd. P'ship v. Salazar,*
553 F.3d 697 (D.C. Cir.),
*cert. denied*, 558 U.S. 822 (2009) ............................................................................. 14

*Safe Extensions, Inc. v. FAA,*
509 F.3d 593 (D.C. Cir. 2007) .................................................................................. 14

*Seeger v. U.S. Dep't of Defense,*
2019 WL 2058721 (D.D.C., May 9, 2019) ............................................................... 11

*South Carolina v. Regan,*
465 U.S. 367 (1984). ................................................................................................. 23

*Southern Offshore Fishing Ass'n v. Daley,*
995 F.Supp. 1411 (M.D. Fla. 1998) .......................................................................... 17

*U.S. Cellular Corp. v. FCC,*
254 F.3d 78 (D.C. Cir. 2001) ...................................................................................... 4

*United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service*
  *Workers International Union, et. al. v. Federal Highway Administration, et. al.*,
151 F.Supp.3d 76 (D.D.C. 2015) ........................................................................................ 7

## Statutes

15 U.S.C. §632(a)(1) ........................................................................................... 13
28 U.S.C. §2412(d) ............................................................................................. 22
44 U.S.C. §3501(1) .............................................................................................. 5
44 U.S.C. §3506(c) ............................................................................................. 19
44 U.S.C. §3506(c)(3)(C)(i) ................................................................................. 6
44 U.S.C. §3506(c)(3)(D) ..................................................................................... 6
5 U.S.C. §601 ...................................................................................................... 3
5 U.S.C. §601(3) ................................................................................................. 13
5 U.S.C. §603 ............................................................................................... 3, 8, 19
5 U.S.C. §604 ....................................................................................................... 4
5 U.S.C. §604(a)(2) ............................................................................................... 4
5 U.S.C. §604(a)(4) ............................................................................................... 4
5 U.S.C. §604(a)(5) ............................................................................................... 4
5 U.S.C. §604(a)(6) ............................................................................................... 4
5 U.S.C. §605(b) ........................................................................................ 4, 9, 13, 14
5 U.S.C. §609(a) ................................................................................................. 19
5 U.S.C. §611 ..................................................................................................... 22
5 U.S.C. §611(a) ................................................................................................... 5
5 U.S.C. §611(a)(2) ........................................................................................... 5, 11
5 U.S.C. §611(a)(4) ............................................................................................. 19
5 U.S.C. §611(a)(4)(A) .......................................................................................... 5
5 U.S.C. §632(a)(2)(A) ........................................................................................ 13
5 U.S.C. §706(2)(A) ......................................................................................... 6, 18
5 U.S.C. §706(2)(D) ......................................................................................... 6, 18

## Rules

Fed. R. Civ. P. 56(a) ........................................................................................... 11

## Regulations

13 C.F.R. § 121.201 ............................................................................................ 13

## Legislative History

Regulatory Flexibility Act Amendments, Committee on Small Business,
H.R. REPT. No. 104-49 (Feb. 23, 1995) ............................................................... 14

Small Business Regulatory Enforcement Fairness Act,
142 CONG. REC. SENATE, No. 46 (daily ed., Mar. 29, 1996) ...................................... 14, 20

Small Business Regulatory Enforcement Fairness Act--Joint Managers Statement of Legislative
   History and Congressional Intent,
142 Cong. Rec. S3245 (daily ed. Mar. 29, 1996) ................................................................................ 4

## Law Reviews

Kristin E. Hickman, *Restoring the Lost Anti-Injunction Act*,
103 Va. L. Rev. 1683 (2017) .......................................................................................................... 15

Thomas O. Sargentich, *The Small Business Regulatory Enforcement Fairness Act*,
49 Admin. L. Rev. 123 (1997) ........................................................................................................ 5

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

This case centers around Defendants' violation of three federal statutes—the Administrative Procedure Act (APA), the Regulatory Flexibility Act (RFA) and the Paperwork Reduction Act (PRA) - establishing procedural safeguards to protect small businesses which federal agencies must follow when they promulgate regulations.  Defendants violated these statutes when they issued proposed and final regulations implementing and interpreting Code Section 965, enacted as part of the Tax Cuts and Jobs Act ("TCJA") in December 2017.[1]   Those proposed and final regulations are the subject of this litigation.

The RFA is the primary statutory safeguard designed to protect small businesses from the overwhelming burdens imposed upon such businesses created by statutes and regulations designed for

---

[1]     The following acronyms and short titles are employed throughout this brief:

| | |
|---|---|
| APA | Administrative Procedure Act, 5 U.S.C. §551 *et seq.* |
| AIA | Anti-Injunction Act, 26 U.S. C. §7421 |
| Code | Internal Revenue Code, 26 U.S.C. |
| CFC | Controlled Foreign Corporation, as described in Code, Section 957 |
| Decision Document | As issued on January 15, 2019, and published in the Federal Register on February 5, 2019, 84 Fed. Reg. 1838 |
| Final Regulations | As issued on January 15, 2019, and published in the Federal Register on February 5, 2019, 84 Fed. Reg. 1838 |
| Proposed Regulations | Notice of Proposed Rulemaking for regulations for the Proposed Regulations for Guidance Regarding the Transition Tax Under Section 965 and Related Provisions, 83 Fed. Reg. 39514 (Aug. 9, 2018) |
| PRA | Paperwork Reduction Act, 44 U.S.C. §3501 *et seq.* |
| RFA | Regulatory Flexibility Act, 5 U.S.C. §601 *et seq.* |
| Section 212 | Title II, Section 212 (Small Business Regulatory Enforcement Fairness Act of 1996) of Public L. 104-121 (Contract with America Advancement Act of 1996), codified as a Note to 5 U.S.C.A. §601 |
| TCJA | Tax Cut and Jobs Act, Pub. L. 115-97 (2017) |

large companies.[2] Amongst other provisions, the RFA required Defendants to publish a regulatory flexibility analysis containing an in-depth analysis and description of any possible alternatives and exemptions that regulations could employ to reduce the burdens upon small businesses.  Where an agency issues proposed or final regulations without complying with the RFA, the reviewing court is required to remand the regulation to the agency and provide other equitable relief as it deems appropriate.

As we shall demonstrate in this Memorandum, when issuing the proposed and final regulations, the Defendants violated the letter and spirit of the RFA and PRA. In doing so, Defendants have breached their duties under the APA.

## II.   STATEMENT OF MATERIAL FACTS

### A.  Statutory and Legal Background

#### 1.  *The TCJA and the Transition Tax*

Historically, large U.S. multinational corporations such as Google and Apple were not subject to U.S. taxation on profits earned by their subsidiaries.  Rather, these U.S. multinational corporations paid U.S. tax only when the profits were received from their "controlled foreign corporations", or "CFCs" by way of dividends.  Thus, prior law incentivized these corporations to shift profits from the United States to subsidiaries in low tax jurisdictions overseas.

In order to get U.S. corporations to repatriate their foreign profits to the United States, the TCJA adopted the Transition Tax, the principal focus of which was to impose U.S. tax on the more than $2 trillion in profits that were held in these CFCs.  The mechanism to accomplish this was relatively simple:   subject the CFC's U.S. shareholders themselves to a one-time tax on the

---

[2] The PRA also contains provisions designed to protect the interests of small business during the rulemaking process.  This lawsuit does not state a cause of action under the PRA.

accumulated profits held by their CFCs.  However, the statutory language employed in Section 965 did not distinguish between CFCs owned by conglomerates like Google and Apple and CFCs of individual U.S. citizens conducting even the smallest business through a foreign company, like Plaintiff Monte Silver, Ltd.

2. *The RFA, PRA and APA: Statutes Protecting Small Business During the Rulemaking Process.*

Three statutes govern the procedures agencies must follow to protect the interests of small business in promulgating regulations: the RFA, the PRA, and the APA. As explained below, Defendants violated all three statutes in issuing the proposed and final regulations.

**(a) The Regulatory Flexibility Act (RFA)**

The RFA, 5 U.S.C. §601 *et seq.,* is the principal statute providing protection for small business during development of regulations.  In enacting the RFA in 1980, Congress codified its purpose of protecting small business from unduly burdensome regulations, stating that:

(i)    regulations designed for large entities get applied uniformly to small businesses even if the problems that gave rise to government action are not caused by smaller entities;

(ii)   uniform regulatory and reporting requirements impose unnecessary and disproportionately burdens on small businesses;

(iii)  the practice of treating all businesses as equivalent may lead to inefficient use of regulatory resources; and

(iv)   alternative approaches may be available which minimize the significant economic impact on small businesses.

5 U.S.C. §601.

To accomplish these goals, the RFA requires an agency to prepare both an initial and final regulatory flexibility analysis when it issues proposed and final regulations (an "RFA Analysis"). 5 U.S.C. §§603-604; *U.S. Cellular Corp. v. FCC*, 254 F.3d 78, 88 (D.C. Cir. 2001) (the RFA "obliges federal agencies to assess the impact of their regulations on small businesses.").  Among other things, the RFA requires agencies to accompany each final rule with a "final regulatory flexibility analysis"

3

which must address certain subject matter areas prescribed by 5 U.S.C. §604, including[3]:

(a) a statement of the significant issues raised by the public comments in response to the initial regulatory flexibility analysis, [and] a statement of the assessment of the agency of such issues [...]. 5 U.S.C. §604(a)(2);

(b) a description of and an estimate of the number of small entities to which the rule will apply or an explanation of why no such estimate is available. 5 U.S.C. §604(a)(4);

(c) a description of the projected reporting, recordkeeping and other compliance requirements of the rule, including an estimate of the classes of small entities which would be subject to the requirement and the type of professional skills necessary for preparation of the report or record; [...]. 5 U.S.C. §604(a)(5);

(d) a description of the steps the agency has taken to minimize the significant economic impact on small entities consistent with the stated objectives of applicable statutes, including a statement of the factual, policy, and legal reasons for selecting the alternative adopted in the final rule and why each one of the other significant alternatives to the rule considered by the agency which affect the impact on small entities was rejected. 5 U.S.C. §604(a)(6).

The RFA creates one exception to the requirement of preparing an initial or final RFA Analysis. An analysis is not required if the "head of the agency […] certifies that the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities." 5 U.S.C. §605(b). If the agency head so certifies, it must publish the certification, "along with a statement providing the factual basis for such certification." *Id.*

Notably, the RFA "requires agencies to publish their factual, policy and legal reasons when making a certification under Section 605." Small Business Regulatory Enforcement Fairness Act-- Joint Managers Statement of Legislative History and Congressional Intent, 142 CONG. REC. S3245 (daily ed. Mar. 29, 1996). One of the primary purposes of the RFA is to reduce the compliance burdens on small entities whenever possible under the statute. To accomplish this purpose, "the IRS should take an expansive approach […] when considering whether to conduct a regulatory flexibility analysis." *Id. See also,* Thomas O. Sargentich, *The Small Business Regulatory Enforcement Fairness*

---

[3] See generally, Small Business Administration, *How to Comply with the Regulatory Flexibility Act*, https://cdn.advocacy.sba.gov/wp-content/uploads/2019/06/21110349/How-to-Comply-with-the-RFA.(detailed publication describing steps agencies are required to undertake), pp. 11-30.

*Act*, 49 ADMIN. L. REV. 123, 124 (1997) ("the underlying premise of the RFA was to require that agencies conducting notice-and-comment rulemaking consider fully the effects of such rulemaking on 'small entities'").

The 1996 amendments significantly bolstered the policies of the 1980 legislation by also authorizing judicial review of agency compliance with these requirements.  Any "small entity that is adversely affected or aggrieved by final agency action is entitled to judicial review of agency compliance with the requirements […]".  5 U.S.C. §611(a).  An agency's factual certification under 5 U.S.C. §605(b) is specifically identified as an issue subject to judicial review under 5 U.S.C. §611.  Review of a Section 605(b) certification is to be conducted "in accordance with" the APA.   5 U.S.C. §611(a)(2).

Finally, where a reviewing court concludes that an agency has violated the RFA, "the court shall order the agency to take corrective action […], including, but not limited to: (a) remanding the rule to the agency, and (b) deferring the enforcement of the rule against small entities […]"  5 U.S.C. §611(a)(4)(A) and (B).

**(b) The Paperwork Reduction Act ("PRA")**

The PRA imposes additional requirements upon agencies issuing regulations to protect the concerns of small business. The purpose of the PRA is to "minimize the paperwork burden for individuals, small businesses, educational and nonprofit institutions, Federal contractors, State, local and tribal governments, and other persons resulting from the collection of information by or for the Federal Government."  44 U.S.C. §3501(1).

The PRA requires that agencies certify with a supporting factual record that the proposed regulations reduce the compliance burdens on small business and reduce to the extent practicable and appropriate the burden on persons who shall provide information to or for the agency, including with respect to small entities, as defined under section 601(6) of title 5, the use of such techniques as—

(i)     establishing differing compliance or reporting requirements or timetables that take into account the resources available to those who are to respond;

(ii)    the clarification, consolidation, or simplification of compliance and reporting requirements; or

(iii)   an exemption from coverage of the collection of information, or any part thereof;

44 U.S.C. §3506(c)(3)(C)(i)-(iii).

An agency must also certify that the regulation is written using plain, coherent, and unambiguous terminology and is understandable to those who are to respond. 44 U.S.C. §3506(c)(3)(D).

**(c)  Administrative Procedure Act (APA)**

As noted above, courts review the compliance of an agency with the RFA and PRA under the APA, which empowers the court to "hold unlawful and set aside agency action, findings, and conclusions found to be [...] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A). In addition, a reviewing court shall hold an agency action unlawful if it was "without observance of procedure required by law." 5 U.S.C. §706(2)(D). *See United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, et. al. v. Federal Highway Administration, et. al.*, 151 F.Supp.3d 76, 92-93 (D.D.C. 2015) [*per* Mehta, J.].

*See also discussion below re* Part III Standard of Review.

**B.  Factual Background**

Monte Silver ("Silver") is a United States citizen residing in Israel.  He studied, lived and practiced law in the United States before moving to Israel in 1997.  Silver Decl., ¶2.  He is a member of the California and Israel bars.  Silver Decl., ¶2.  Monte Silver, Ltd. ("Limited") is an Israeli corporation through which Silver practices law.  Silver Decl., ¶2.  Silver has always been the sole shareholder and sole employee of Limited. ECF 5, ¶3; Silver Decl., ¶2.  For U.S. tax purposes, Silver

has reported Limited as a CFC on Form 5471 "Information Return of U.S. Persons with Respect to Certain Foreign Corporations".   ECF 5, ¶6; Silver Decl., ¶2. Accordingly, Limited and Silver are both subject to Code Section 965 and the Final Regulations.

Silver has individually invested in U.S. commercial real estate since 2009.   He reports this business activity on his individual tax return.   Silver Decl., ¶3.

Plaintiffs filed their respective 2017 tax returns to the best of their ability, given the complexity of the statute and the utter impenetrability of the proposed and final regulations.  Silver Decl., ¶18.  In addition, since 2017, Plaintiffs have amended their tax returns twice as their understanding of the statute and regulations grew following hours of painstaking study and analysis of the otherwise inscrutable rules.  Silver Decl., ¶18.  At no time did Plaintiffs owe any Transition Tax, nor do they have any reason to believe they ever will.  Silver Decl., ¶18.  However, the compliance costs and time the Plaintiffs have spent and will continue to spend in the coming years merely to comply with the statute and Final Regulations have been and will continue to be significant.   Silver Decl., ¶18. Defendants do not dispute that these compliance obligations extend for years into the future.  ECF 34, ¶58.   Plaintiffs are not the subject of any audit, enforcement, or collection effort by the Defendants regarding the Transition Tax or any other matter relating to the 2017 tax year. Silver Decl., ¶19.

On December 22, 2017, President Donald Trump signed the TCJA into law.  Shortly thereafter Silver realized that the Transition Tax impacted him, and others similarly situated.  Silver Decl., ¶15. On or about March 8, 2018, Silver organized a small-business email campaign aimed at advising Defendants of the significant impact that the Transition Tax imposed on small businesses.  Silver Decl., ¶7.  From mid-March 2018 and throughout that year, a significant number of small business owners began emailing Defendants to advise Defendants of the harm that the Transition Tax was causing small businesspersons like themselves.  AR 1690-2226, AR 2227-2277; *see also* PR 86.  Defendants admit this. ECF 34, ¶35.

On March 20, 2018, Silver met with Assistant Secretary of the Treasury (International) Lafayette "Chip" Harter in Washington D.C. PR 91. At the meeting, various forms of relief were discussed and Chip agreed to provide the first form of relief within days. PR 90-91. The relief ("First Relief") was issued April 2, 2018 and provided for an extension of the filing date to June 15. *Id*.

After two more months of work, on June 4, 2018, Defendants issued small businesses a second and more significant relief ("Second Relief"). AR 682, item QA15; PR 87; ECF 34, ¶21. The Second Relief was "signed off" by Secretary Mnuchin himself. PR 87.

On August 9, 2018, the Treasury published proposed regulations for the first time, Notice of Proposed Rulemaking, *Guidance Regarding the Transition Tax under Section 965 and Related Provisions*, 83 FED. REG. 39514 (Aug. 9, 2018) (the "NPRM"). AR 3554-3615. The NPRM was massive, consisting of the proposed regulations and a lengthy preamble explaining many of the concepts, rules, and determinations employed in the proposed regulations.

The NPRM did not contain an initial RFA Analysis (an "IFRA") as required under 5 U.S.C. §603. ECF 34, ¶24. Instead, the NPRM contained a certification that the proposed regulations would not have "a significant economic impact on a substantial number of small entities." AR 3580-81. The certification did not include a single substantiating fact – an issue that Silver raised with Defendants on numerous occasions. PR 94, 103, 113. The NPRM estimated that 100,000 taxpayers would be subject to the proposed regulations and that the average taxpayer would require five hours each year to comply with the Proposed Regulations. AR 3554.

Following the publication of the NPRM, Silver and approximately 400 similarly situated small business owners all emailed Defendants and submitted formal comments to the proposed regulations advising Defendants of the tremendous harm that the statute and proposed regulations had caused and would continue to cause them, AR 1690-2226, AR 2227-2277, comprising of dozens of formal comments. AR 982-2985. In fact, more than half of all the formal comments received during the

comment phase came from small business owners in which they described the huge burden that the statute and regulations had placed upon them.  ECF 34, ¶34.

In addition, following the issuance of the proposed regulations, Silver repeatedly sent emails to Defendants detailing alleged violations of the RFA and PRA.  ECF 34, ¶32; PR 86-135; AR 2459-2492.

These concerns were reiterated at a public hearing on the NPRM held on October 22, 2018. AR 958-961, 971.  At the hearing, a representative of American Citizens Abroad, Inc. (https://www.americansabroad.org),  spoke at length about Defendants' failure to comply with the RFA, the compliance burdens faced by small businesses, and the need for a *de minimis* exception.  The impact of the Transition Tax on individual shareholders was covered by tax experts as well.  AR 2990-2999.

Early in 2019, the Treasury issued the Final Regulations. AR 3136-3213.   The Final Regulations were even more voluminous than the NPRM, covering nearly 100 pages of very fine print in the Federal Register.  84 FED. REG. 1838.  The Final Regulations did not contain a Final Regulatory Flexibility Analysis.  ECF 34, ¶39.   Instead, they included a putative certification under 5 U.S.C. §605(b):

> Pursuant to the Regulatory Flexibility Act (5 U.S.C. chapter 6), it is hereby certified that the final regulations will not have a significant economic impact on a substantial number of small entities within the meaning of section 601(6) of the Regulatory Flexibility Act ("small entities") […] Regardless of the number of small entities potentially affected by section 965 or the final regulations, the Treasury Department and the IRS have concluded that there is no significant economic impact on such entities as a result of the final regulations.   AR 3355-3356

On many occasions, Silver attempted to resolve this matter amicably and propose simple solutions to achieve this.  PR 93-122.   All these efforts were totally ignored by the Defendants.

9

C. **Procedural History**

In the wake of Defendants' failure to respond to the entreaties of Silver and other small business owners, on January 30, 2019, Plaintiffs commenced this lawsuit. ECF 1.  On March 26, 2019, Plaintiffs filed their first amended complaint ("FAC").  ECF 5.  On July 1, 2019, Defendants filed a motion to dismiss for lack of jurisdiction, contending, among other things, that Plaintiffs lacked Article III standing and that subject matter jurisdiction was barred under the Anti-Injunction Act ("AIA").  ECF 21.  On December 24, 2019, the Court denied Defendants' motion to dismiss holding specifically that Plaintiffs had Article III standing.  The Court also rejected Defendants' AIA challenge, ruling that the present litigation does not seek a refund or impede collection of taxes, but is simply an attempt to get the Defendants "to do what the law requires – Regulatory Flexibility Act and Paperwork Reduction Act analyses." ECF 29, at 6.

Subsequently, on February 7, 2020, Defendants filed their Answer to the FAC. ECF 34.  On April 2, 2020, Defendants submitted the administrative record.   ECF 38.   On April 27, 2020, Defendants certified the administrative record.   ECF 41.   On April 22, 2020, Plaintiffs moved to complete the administrative record by adding supplemental items not included by Defendants.  ECF 39.  By Minute Order dated April 24, 2020, the Court reserved ruling on Plaintiffs' request to add to the administrative record pending the parties' summary judgment briefing. Defendants filed their opposition to Plaintiffs' motion to complete the administrative record on May 6, 2020[4].  ECF 42.

---

[4] The supplemental record, "PR", is included in this Memorandum as the Appendix. In light of the Court's April 24, 2020 Minute Order, Plaintiffs refer to and rely upon the PR in this Memorandum in accordance with the authorities cited in their Motion to Complete the Administrative Record, ECF 39, at 4 – 5.  *And see* _Charleston Area Medical Center v. Burwell,_ 216 F.Supp.3d 18, 23 (D.D.C. 2016) ("As part of the record, the Court may consider 'any document that might have influenced the agency's decision' and not merely those documents the agency expressly relied upon in reaching its final determination," citing _Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys._, 516 F.2d 1229, 1241 (D.C. Cir. 1975)); *accord,* _Seeger v. U.S. Dep't of Defense,_ 2019 WL 2058721 at *2 and *5 - *6 (D.D.C., May 9, 2019)

## III.  <u>STANDARD OF REVIEW</u>

A motion for summary judgment, in general, must be granted when there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The non-moving party may not rely solely on allegations or conclusory statements and to defeat a summary judgment motion.  It must establish more than 'the mere existence of a scintilla of evidence' in support of its position." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252  (1986).

In cases involving judicial review of agency action – such as this case – the summary judgment rules operate somewhat differently.  "[T]he district judge sits as an appellate tribunal" and "[t]he entire case on review is a question of law." *Am. Biosci., Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotation marks omitted).  In this posture, the court must decide "whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Alfa Int'l Seafood v. Ross*, 264 F. Supp. 3d. 23, 30 (D.D.C. 2017) [*per* Mehta, J.].

RFA-related challenges are reviewed in accordance with the APA. 5 U.S.C. §611(a)(2).  An agency decision is arbitrary and capricious if it entirely failed to consider an important aspect of the problem, "offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view." *Lee Mem'l Health Sys. v. Burwell*, 206 F. Supp. 3d 307 (D.D.C. 2016) *aff'd sub nom. Billings Clinic v. Azar*, 901 F.3d 301 (D.C.Cir. 2018), citing *Cablevision Sys. Corp. v. Fed. Commc'ns Comm'n* , 649 F.3d 695, 714 (D.C. Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).  An agency's decision must be based on the relevant data and must be accompanied by a satisfactory explanation for the decision which demonstrates a "rational connection between the facts found and the choice made." *Department of Commerce v. New York,* 139 S. Ct. 2551, 2569 (2019). No such rational basis can exist where the agency has failed to consider factors relevant to its inquiry

11

or has relied on impermissible factors or where the agency has committed a "clear error of judgment." In such a case the court must undo the agency action. *GTE Serv. Corp. v. F.C.C.*, 205 F.3d 416, 421–22 (D.C. Cir. 2000); *DIRECTV, Inc. v. F.C.C.*, 110 F.3d 816, 826 (D.C. Cir. 1997). When an agency fails to provide a reasoned explanation, or where the record belies the agency's conclusion, the court must undo its action. *Hispanic Affairs Project v. Acosta,* 263 F. Supp. 3d 160 (D.D.C. 2017), *affirming in part and reversing in part on other grounds*, 901 F.3d 378 (2018); *City. of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999), *cert. denied*, 530 U.S. 1204 (2000) (*quoting BellSouth Corp. v. FCC*, 162 F.3d 1215, 1222 (D.C. Cir. 1999).

The record must be supported by substantial evidence—otherwise it would be arbitrary and capricious. *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 604 (D.C. Cir. 2007); *Ardmore Consulting Grp., Inc. v. Contreras – Sweet,* 118 F.Supp.3d 388, 394 (D.D.C. 2015). An agency's factual findings should be set aside when no reasonable factfinder could have reached the agency's conclusion, or when the agency has ignored evidence contradicting its position. *Ardmore* at 394, citing *Orion Reserves Ltd. P'ship v. Salazar*, 553 F.3d 697, 704 (D.C. Cir.) *cert. denied*, 558 U.S. 822 (2009) and *Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).

## IV.   <u>ARGUMENT</u>

The issues that need to be addressed for summary judgment are as follows (A) are Plaintiffs "small entities" under the RFA?; (B) were the Defendants' certifications issued under the RFA (i) arbitrary, capricious, an abuse of discretion, (ii) issued  without observance of procedure required by law, or (iii) unsupported by substantial evidence?; and (C) were Plaintiffs adversely affected and aggrieved by Defendants' failure to comply with the procedural safeguards afforded under the RFA.

As we shall now demonstrate, the answers to the above questions are all in the affirmative.

### A. <u>Plaintiffs are small businesses under the RFA</u>

Under the RFA, the term "small business" shall have the same meaning as the term is defined

under section 3 of the Small Business Act ("SBA"). 5 U.S.C. §601(3).  The PRA also incorporates this definition.  PRA, §3506(c).

According to the SBA, a "small business" is "one which is independently owned and operated and which is not dominant in its field of operation." 15 U.S.C. §632(a)(1).  The Administrator of the Small Business Administration may specify detailed definitions or standards by which a business concern may be determined to be a small business concern. 15 U.S.C. §632(a)(2)(A).

The Small Business Administration has established size standards based on the North American Industry Classification System (NAICS), a publication of the Office of Management and Budget. 13 C.F.R. §121.201. A law firm is a "small business concern" if it has annual receipts of less than $12,000,000. A real estate business is a "small business concern" if it has annual rental receipts of less than $30,000,000[5].

As set forth in the Silver Decl., both Plaintiffs operate small businesses that are independent, not dominant in their field, and within the above numerical parameters. Silver Decl., ¶¶2-3. Accordingly, Plaintiffs are each a small business under the SBA and hence under the RFA.

**B.**  **Defendants' certifications under the RFA/PRA**

As set forth above, no initial or final RFA Analysis was conducted with respect to the proposed or final regulations.  ECF 34, ¶¶24, 39.  Defendants avoided these requirements by certifying "that the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities." 5 U.S.C. §605(b). If the agency head so certifies, the agency must publish the certification, "along with a statement providing the factual basis for such certification."

The RFA "requires agencies to publish their factual, policy and legal reasons when making a

---

[5] The SBA's "size standards" are set forth in 13 C.F.R. § 121.201. *See* Electronic Code of Federal Regulations, *Part 121-Small Business Size Regulations*, (August 19, 2019). https://www.sba.gov/document/support--table-size-standards

certification under Section 605." Small Business Regulatory Enforcement Fairness Act, 142 CONG. REC. SENATE, No. 46   at S3245 (daily ed., Mar. 29, 1996). To accomplish this purpose, the IRS should take an "expansive approach […] when considering whether to conduct a regulatory flexibility analysis." *Id.* "Simple boilerplate statements that the rule will not have such an effect are patently inadequate under the RFA. Rather, sufficient analysis must be performed to apprise the regulated community of the reasons for the certification. Moreover, any doubt as to whether a regulatory flexibility analysis should be performed must be resolved in favor of performing the analysis." Regulatory Flexibility Act Amendments, Committee on Small Business, H.R. REPT. NO. 104-49, Part 1, at 7 (Feb. 23, 1995).

1. *RFA certification issued as part of the Proposed and Final Regulations*

(a) Certification issued under the proposed regulations.

A simple review of the brief certification issued as part of the proposed regulations quickly reveals that it contains not a single fact, rather is made up of a few unclear and expressly contradictory statements.  AR 3580-81.  On numerous occasions, Silver advised Defendants that the certification was devoid of any facts.  PR 94, 103, 113.  By failing to set forth any factual basis, this certification fails to meet the threshold requirements of 5 U.S.C. §605(b).

(b) Both certifications of the proposed and final regulations are arbitrary and capricious.

There is not an iota of evidence in the administrative record, <u>not a single document or email,</u> which supports the certification that the rule would not, if promulgated, have a significant economic impact on a substantial number of small entities. The very opposite is true. The administrative record is replete with evidence showing that the proposed and final regulations would have a severe impact on a large number of small businesses. PR 86-138; AR 682, 958-961, 971, 1690-2226, 2227-2277; dozens of formal comments AR 982-2985, 2990-2999.  *See also* ECF 34, ¶¶21, 32, 34-35. Accordingly, the lack of any factual basis in the Certification exacerbates the underlying issue, to wit:

Defendants' assumption that the proposed and final regulations would not severely impact small businesses is simply wrong and arbitrary. *Southern Offshore Fishing Ass'n v. Daley*, 995 F. Supp. 1411 (M.D. Fla. 1998) (finding certification to be against the evidence in the administrative record); *see also North Carolina Fisheries Ass'n v. Daley*, 27 F. Supp. 2d 650 (E.D. Va. 1998) (same).

Therefore, not only was the Defendants' disregard of the RFA "not in accordance with the law" and "without observance of procedure required by law" – *see Farrell v. Tillerson*, 315 F.Supp.3d 47, 65 (D.D.C. 2018) – their actions were also "arbitrary and capricious" for being in blatant disregard of the factual record before them.

The actions, or rather inaction, of Defendants in the present case fall squarely within the classic description of arbitrary and capricious agency conduct. As Defendants' certification is based on no evidence whatsoever, no reasonable factfinder could have reached Defendants' conclusion.[6]

In sum, Defendants have run afoul of the RFA, and hence the APA, in the following ways:

➢ Defendants utterly failed to consider the most central issue at the core of the RFA: whether the proposed and final rules would have a significant economic impact on a substantial number of small entities.

➢ Defendants' certification ran counter the evidence before the agency. The record contained a vast amount of evidence that the proposed and final rules would have a significant economic impact on a substantial number of small entities number. And there was not one iota of evidence to suggest otherwise.

➢ Defendants fail to provide a reasoned explanation for their conclusion that the proposed and

---

[6] As set forth in footnote 9 below, the real explanation for Defendants' conduct is clear. According to the 2015 GAO report, Defendants circumvent the RFA in 99.5% of the cases. The IRS does "not have a great history of complying with APA procedures, having claimed for several decades that their rules and regulations are exempt from those requirements." Kristin E. Hickman, *Restoring the Lost Anti-Injunction Act*, 103 VA. L. REV. 1683, 1712-13 (2017), *quoted in CIC Services LLC v. Internal Revenue Service*, 925 F.3d 247, 258 (6th Cir. 2019), *cert. granted*, 2020 WL 2105208 (May 4, 2020).

final rules would not have a significant economic impact on a substantial number of small entities number. In fact, the record belies Defendants' conclusion.

2. *The PRA-Certification does not exist or is invalid.*

The PRA is quite clear: any proposed rule must contain a certification, backed by a record supporting such certification, that attests to various issues. PRA 3506(c).  The administrative record here contains no certification at all.   The only evidence that Defendants even considered PRA procedural safeguards is a single checklist entitled "Paperwork Reduction Act Submission". AR 3125-3130 and AR 3544-3552.  Nothing in this document qualifies as a certification.

Even if this checklist were deemed to include certifications, such certifications would be arbitrary and capricious for lack of any supporting documentation or other evidence.   The PRA required Defendants to address the following issues.

1. <u>Reduce to the extent practicable and appropriate the burden on small businesses.</u>  The PRA checklist states that "we have been unable to reduce the burden on small businesses or other small entities." AR 3128, 3547.   However, there is no document or factual analysis whatsoever to support this statement.

2. <u>Grant small businesses exemption from coverage of the rule</u>.   Defendants specifically stated that they would not consider exemptions as they did not have the authority to do so. PR 97.  Defendants, however, found the authority to grant significant exemptions for big business in the absence of any express statutory authorization.  AR 3089.

3. <u>The regulation is written using plain, coherent, and unambiguous terminology and is understandable to those who are to respond.</u>  As clearly established in the record, the statute, proposed and final regulations were totally incomprehensible to Silver, a U.S. tax attorney,

and a vast number of small business owners.  Silver Decl., ¶18.  ECF 5, ¶34.

4. <u>The rules will be implemented to the maximum extent practicable, with the existing reporting and recordkeeping practices of those who are to respond.</u>  This is directly counter to any evidence in the record.  Many small businesses expressly stated that their tax professionals were simply unable to understand or comply with the statute and proposed and final regulations.

**C.  Plaintiffs are adversely affected and aggrieved by Defendants' Failure to Comply with the Procedural Safeguards of the RFA and PRA**

Both Plaintiffs have been and will continue to be adversely affected and aggrieved by the Defendants' failures to comply with the RFA, PRA and APA.

(a) Plaintiff Limited.

Plaintiff Limited has been, and will continue to be, directly affected and aggrieved by Defendants' failure to comply with the procedural safeguards of the RFA and PRA.  This fact is supported by the Court's denial of Defendants' motion to dismiss (ECF 29, at 3-4), and further established by the Silver Decl. This injury consists of compliance costs directly related to the Transition Tax and the final regulations that Limited has incurred and will continue to incur for years to come. Silver Decl., ¶18 Defendants indeed concede that taxpayers subject to the statute and regulations will incur such compliance costs for years to come. ECF 34, ¶58.

(b) Plaintiff Silver

Silver, individually, is a small business under the RFA on account of his investing in U.S. commercial estate real estate since 2009.  He reports this business activity annually on his U.S. tax return, unrelated to the business of Silver Ltd.  Silver Decl., ¶3.  As established above, Silver qualifies as a "small business" under the SBA and RFA.

In addition, Silver is the sole employee and shareholder of Limited.  Thus, every marginal

17

dollar that Limited has paid and will pay in compliance costs that are directly attributable to the Transition Tax and the Final Regulations is a dollar less available to Silver from the company in the form of dividends, salary or bonuses.

Accordingly, Plaintiffs, who have standing, and, as shown, have been adversely affected by the final regulations, are entitled to relief under the RFA, PRA, APA, and Section 212 (as defined in fn. 1 above) which requires Defendants to  publish one or more guides to assist small entities in complying with the rule.

**D.  <u>Summary Judgment is Proper</u>**

For all the reasons set forth above, Plaintiffs' motion for summary judgment must be granted. The record demonstrates that Defendants opted to issue an RFA-certification instead of conducting and issuing an initial and final RFA Analysis. The certification issued with the proposed regulations was devoid of any factual basis that could serve to support the certification. In addition, the record also clearly indicates that there was no room for issuing any certification, as it is obvious that the proposed and final regulations had, in fact, a significant economic impact on a substantial number of small entities.  Defendants violations under the RFA and PRA, thus, constitute a breach of their duties under the APA because their actions were arbitrary, capricious and not in accordance with the law – 5 U.S.C. §706(2)(A) – and "without observance of procedure of law." 5 U.S.C. §706(2)(D).

As such, summary judgment against the Defendants is proper. *See North Carolina Fisheries Ass'n v. Daley*, *supra* (awarding summary judgment when the RFA-certification was devoid of any factual basis); *National Truck Equipment Ass'n v. National Highway Traffic Safety Admin*., 919 F.2d 1148 (6th Cir. 1990), *reh. denied*, 928 F.2d. 739 (6th Cir. 1991) (held that the administration's conclusory statement that the standard would not have a great impact on small business, with no evidentiary support in the record, did not prove compliance with the RFA).

## V.  PLAINTIFFS ARE ENTITLED TO EFFECTIVE RELIEF

In granting relief under the RFA, a court "shall order" the agency to "take corrective action consistent with" the RFA and the APA.  5 U.S.C. §611(a)(4). This relief includes, but is not limited to (a) remanding the rule to the agency for compliance; and (b) deferring enforcement of the rule against small entities, unless the court finds that continued enforcement of the rule is in the public interest." In addition, the RFA does not limit the authority of a court to stay the effective date of any rule or provision thereof under any other provision of law or to grant any other relief in addition to the requirements of this section. *Id.*

Plaintiffs seek the following relief in this action:

1.  Remand the final regulations to the Department of Treasury and the Internal Revenue Service and order Defendants to comply fully with the requirements of (a) RFA, including 5 U.S.C. §§ 603, 604, 609(a) (requiring defendants to engage the small business community in the process) and 605(b), and Section 212 (requiring them to publish guides to assist small entities in complying with the rule).

2.  Require Defendants to comply with PRA, 44 U.S.C. §3506(c), as it pertains to small business concerns.

3.  Delay enforcement of the final regulations against small entities like Plaintiffs until the Court finds that Defendants have fully complied with their procedural obligations.

As to the interplay between the AIA and Plaintiffs' request to delay the enforcement of the final regulations, the legislative intent is clear: Courts have "broad discretion to formulate appropriate remedies under the facts and circumstances of each case." 142 CONG. REC. SENATE, *supra* at S3244-3245  "The rights of judicial review and remedial authority of the courts provided in the Act as to IRS interpretive rules should be applied in a manner consistent with the *purposes of the AIA* which *may* limit remedies available *in particular instances*." *Id.* (emphasis supplied).

The RFA "also directs the court to consider the public interest in determining whether or not to delay the enforcement of the rule against small entities pending agency compliance with the court's findings.  This language should be read to require the court to give *appropriate* deference to the *legitimate public interest* in the assessment and collection of taxes reflected by the Anti -Injunction Act." *Id*. (emphasis supplied).

The purpose of the AIA is well established. The Supreme Court has repeatedly held that the AIA was intended to protect tax revenues from judicial interference and to require that the legal right to the disputed sums be determined in a suit for refund.  *Enochs v. Williams Packing & Navigation Co.*, 370 U. S. 1,7 (1962); *see also South Carolina v. Regan,* 465 U.S. 367, 386 (1984).

In this case, delaying the enforcement of the rule against Plaintiffs and small business will in no way impact the ability of Defendants to collect Transition Tax for two reasons:

(i)     All small businesses, including Plaintiffs, are independently liable for the Transition Tax under the statute.  As Defendants concede, "[a]fter all, even if the regulations are struck Plaintiffs remain subject to the transition tax."   Defendants' Reply Brief to Plaintiffs' Opposition to Motion to Dismiss, ECF 26, at 9. [7] AR 3357.  Therefore, Defendants may proceed to assess and collect taxes from Plaintiffs and/or any small business in any case.

(ii)    The vast majority of small businesses do not owe any Transition Taxes, a fact that the Defendants do not dispute.  In fact, according to Defendants' own published data, only 3,231 large companies had any Transition Tax liability, out of the 100,000 companies that

---

[7] Plaintiffs do not seek to "strike" any regulations. Rather they seek merely to remand them to Defendants for compliance with the RFA and PRA.

Defendants estimated would be impacted by the law[8].  Of these, 528 companies, each with assets over $2.5B, accounted for 95% of the total Transition Tax generated. **Exhibit "A"** to the Silver Decl.

Finally, as to *legitimate* public interest, Defendants' conduct in this case is not an isolated incident.  Rather, it is an example of the Defendants' pattern of ignoring the requirements of the RFA and the interests of small business.  In 2015, a General Accountability Office Report found that the IRS complied with the Regulatory Flexibility Act with respect to only two of the over 200 tax regulations issued between 2013 and 2015[9]. Thus, allowing Defendants to avoid scrutiny of their blemished record of willful disregard of small business rights by invoking the AIA would only serve to reward the Defendants' apparent disdain for the law.

If Plaintiffs are deemed to be a prevailing party, they are also entitled to attorney's fees and costs pursuant to 5 U.S.C. §611(a)(5) and 28 U.S.C. §2412(d).  Silver qualifies as a "party" as defined in the Equal Access to Justice Act, 28 U.S.C. §2412(d)(2)(B). Silver Decl. ¶2.

In addition, Plaintiffs request any other relief the court finds fair and equitable.

## VI.   **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request the Court to grant Plaintiffs' Motion for Summary Judgment and enter an order:

(1) Remanding the proposed rule and final rule to the Defendants for full compliance with the RPA, PRA and Section 212.

---

[8] Plaintiffs estimate that there are 150,000 small businesses outside the US, not counted in this statistic. (Silver Decl., ¶20). An in-depth survey conducted by independent third parties put the number of Americans abroad impacted by the Transition Tax at 1,000,000.  (Silver Decl., ¶20 and AR 2464).

[9] Government Accountability Office.  REGULATORY GUIDANCE PROCESSES: TREASURY AND OMB NEED TO REEVALUATE LONG-STANDING EXEMPTIONS OF TAX REGULATIONS AND GUIDANCE, pages 22-23.  (September 2016).  *See also fn. 6 supra.*

(2) Deferring enforcement of the final rule against Plaintiffs and all other small entities until such time as the Court finds that Defendants have fully complied with the procedural requirements of the RFA, PRA, APA and Section 212.

(3) Directing Defendants to pay Plaintiffs attorney fees and costs under 5 U.S.C. §611 and/or 28 U.S.C. §2412(d); and

(4) Granting such other relief as the Court finds fair and equitable.

<u>Date</u>: May 15, 2020.

Respectfully submitted,

/s/ *Lawrence Marc Zell*

_____
Lawrence Marc Zell (DC Bar # 959437)
Noam Schreiber, *of counsel*
**ZELL & ASSOCIATES INTERNATIONAL ADVOCATES LLC**
14 Penn Plaza
225 West 34th Street, 9th Floor
New York, New York 10122
E-mail: mzell@fandz.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2020, a copy of the foregoing document, including the following Appendix, was served electronically through the Court's ECF system on all counsel of record.


/s/ *Lawrence Marc Zell*

_____
Lawrence Marc Zell (DC Bar # 959437)
**ZELL & ASSOCIATES INTERNATIONAL ADVOCATES LLC**
14 Penn Plaza
225 West 34th Street, 9th Floor
New York, New York 10122
E-mail: mzell@fandz.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MONTE SILVER** and<br>**MONTE SILVER, LTD**.,<br>an Israel corporation<br><br>*Plaintiffs*<br><br>*v.*<br><br>**INTERNAL REVENUE SERVICE;**<br>**UNITED STATES DEPARTMENT**<br>**OF THE TREASURY; CHARLES RETTIG**,<br>in his official capacity as Commissioner of the<br>Internal Revenue; and **STEVEN MNUCHIN**, in<br>his official capacity as United States Secretary<br>of the Treasury<br><br>*Defendants* | Civil Action No. 19-cv-0247-APM<br><br>Judge Amit P. Mehta |

## APPENDIX TO THE MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

2/13/2020                               Gmail - Repatriation tax and GILTI petitions - 42 additional signed petitions

 Gmail                                    **Monte Silver <americansabroadfortaxfairness@gmail.com>**

## Repatriation tax and GILTI petitions - 42 additional signed petitions
1 message

**Monte Silver** <MonteS@ems-legal.com>                                    Fri, Mar 9, 2018 at 4:52 PM
To: "lafayettechip.harter@treasury.gov" <lafayettechip.harter@treasury.gov>, "david.kautter@treasury.gov"
<david.kautter@treasury.gov>, "william.m.paul@irscounsel.treas.gov" <william.m.paul@irscounsel.treas.gov>,
"arlene.preston@irscounsel.treas.gov" <arlene.preston@irscounsel.treas.gov>, "Leni.c.perkins@irscounsel.treas.gov"
<Leni.c.perkins@irscounsel.treas.gov>, "Barbara.angus@mail.house.gov" <Barbara.angus@mail.house.gov>,
"aaron.junge@mail.house.gov" <aaron.junge@mail.house.gov>, "Kara.getz@mail.house.gov"
<Kara.getz@mail.house.gov>, "Notice.comments@irscounsel.treas.gov" <Notice.comments@irscounsel.treas.gov>,
"americansabroadfortaxfairness@gmail.com" <americansabroadfortaxfairness@gmail.com>

Dear Mr. Kautter, Mr. Harter, Mr. Paul, Ms. Perkins, Ms. Angus, Ms. Getz and Mr. Junge:

I attach 42 more signed petitions.   And we have yet to even begin.  As to the America-Israel of
Chamber, see attached.  We launched a subcommittee on the subject and within 3 days, the
heads of the US tax departments of BDO, EY, Deloitte, KMPG Israel and many others joined.  In
attached, also see email from Oded, Amcham CEO who is taking this to Amcham global.  And of
course, the people from the Israeli branches of the big accounting firms will sign up their local
clients and export the movement to their firms outside Israel.  The same is happening, locally
and globally with the Republicans Overseas and Democrats Overseas, American Citizens
Abroad, and AARO


So in the days and weeks ahead, you will see many more petitions come in, plus formal letters
from the above organizations.  This movement will be a Tsunami.

What are we seeking?  As the petition says, that the Treasury/IRS issue:

1. An immediate notice stating that for Americans Abroad, the first payment under IRC 965 is
due October, 2018.
2. After that, a notice in line with the IRC 911/Individual proposal set forth in the petition

I will be in Washington DC March 19-20 and would be happy to meet with the relevant people
to explain the real crisis Americans abroad are experiencing.

Yours, Monte



Monte Silver, Adv. (California & Israel)

Senior Counsel


https://www.linkedin.com/in/AmericanTaxSolutions/

PR 0086

## Monte @ Silver Law

**From:**           Monte @ Silver Law
**Sent:**           יום שני 04 יוני 2018 17:32
**To:**             LafayetteChip.Harter@treasury.gov
**Subject:**        RE: Status of signature by Secretary Mnuchin  on fix for expats

Great news, Chip

Here:, on the FAQ site?
www.irs.gov/newsroom/questions-and-answers-about-reporting-related-to-section-965-on-2017-tax-returns


www.linkedin.com/in/americantaxsolutions

Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069
Herzelia Pituach 46733 Israel

Tel:  +972-9-9603799
Fax:  +972-9-9603798
Mob: +972-544-232-683
email:  ms@silvercolaw.com

**From:** LafayetteChip.Harter@treasury.gov <LafayetteChip.Harter@treasury.gov>
**Sent:** ב יוני04 2018 17:16
**To:** Monte @ Silver Law <ms@silvercolaw.com>
**Subject:** RE: Status of signature by Secretary Mnuchin on fix for expats

The Secretary signed off this morning.  It will be coming out today.  Log onto the IRS website in a couple of hours.

Chip

**From:** Monte @ Silver Law <ms@silvercolaw.com>
**Sent:** Monday, June 4, 2018 1:14 AM
**To:** Harter, Chip <LafayetteChip.Harter@treasury.gov>
**Cc:** Kautter, David <David.Kautter@treasury.gov>
**Subject:** RE: Status of signature by Secretary Mnuchin on fix for expats
**Importance:** High


Hi Chip

Its Monday now.  I understand that the Secretary was in Canada and has other things on his agenda.

But for almost a million Americans abroad  - including those with CFC interests and their family members -  we are getting very close to the wire.

You and your team side have tons of work into this. Now lets bring things to a close.  I ask that a full court press be implemented to may sure it is signed today.  I will be doing the same on my end.

1

PR 0087

Thx Monte


https://hyperlink.services.treasury.gov/agency.do?origin=www.linkedin.com/in/americantaxsolutions

Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069
Herzelia Pituach 46733  Israel

Tel:  +972-9-9603799
Fax: +972-9-9603798
Mob: +972-544-232-683
email:  ms@silvercolaw.com

**From:** Monte @ Silver Law
**Sent:** Friday, June 1, 2018 2:43 PM
**To:** LafayetteChip.Harter@treasury.gov
**Subject:** Status of signature

Hi Chip

Is there anything that can be done to avoid having to wait till sometime next week for the signature?  Can
someone senior from his team do it?

Thx
Monte


Get Outlook for iOS

PR  0088

**Monte @ Silver Law**

| | |
|---|---|
| **From:** | Monte @ Silver Law |
| **Sent:** | יום שלישי 08 מאי 2018 09:52 |
| **To:** | LafayetteChip.Harter@treasury.gov |
| **Subject:** | Re: Hi Chip, Monte here. I'll use the subject only to be brief. Does it look like it will happen? If so, is there any timeline for notice? Thx |

Chip

I am keeping my mouth shut as to the fix, but people are very nervous given the deadline. The sooner the better ... obviously.

I will ping you once a week to see where we stand. If you see things about to go public, can you give me advance notice?

Thx

**From:** LafayetteChip.Harter@treasury.gov <LafayetteChip.Harter@treasury.gov>
**Sent:** Monday, May 7, 2018 5:52 PM
**To:** Monte @ Silver Law
**Subject:** RE: Hi Chip, Monte here. I'll use the subject only to be brief. Does it look like it will happen? If so, is there any timeline for notice? Thx

It is morphing a bit. I am modestly optimistic that we will get out relief for a late payment of the first installment of the transition tax for any individual with a total section 964 inclusion of no more than $5,000,000. Would have to be timely paid with interest by the due date for the 2nd installment. Hoping to get out this month.

Chip

**From:** Monte @ Silver Law [mailto:ms@silvercolaw.com]
**Sent:** Monday, May 07, 2018 9:16 AM
**To:** Harter, Chip <LafayetteChip.Harter@treasury.gov>
**Subject:** Hi Chip, Monte here. I'll use the subject only to be brief. Does it look like it will happen? If so, is there any timeline for notice? Thx
**Importance:** High

https://hyperlink.services.treasury.gov/agency.do?origin=www.linkedin.com/in/americantaxsolutions

Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor
Herzelia Pituach 46120 Israel

1

PR 0089

Tel:  +972-9-9603799
Fax: +972-9-9603798
Mob: +972-544-232-683
email:  ms@silvercolaw.com

**From:** LafayetteChip.Harter@treasury.gov <LafayetteChip.Harter@treasury.gov>
**Sent:** Monday, April 2, 2018 5:48 PM
**To:** Monte @ Silver Law
**Subject:** RE: First payment of the Transition tax

That's right.  They need to make the first payment on that date, even if they apply for an extension to file their returns in October.

Chip

**From:** Monte @ Silver Law [mailto:ms@silvercolaw.com]
**Sent:** Friday, March 30, 2018 9:41 AM
**To:** Harter, Chip <LafayetteChip.Harter@treasury.gov>
**Subject:** Re: First payment of the Transition tax


Chip

Thx.  Just to make sure, we are talking about the payment date being June 15, not the filing date.  Correct?

Thx

Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
10 Abba Eban Blvd., P.O. Box 2018
Building C, 7th Floor
Herzelia 4612002 Israel

Tel:  +972-9-972-6085
Mob: +972-544-232-683
email:  ms@silvercolaw.com

**From:** LafayetteChip.Harter@treasury.gov <LafayetteChip.Harter@treasury.gov>
**Sent:** Friday, March 30, 2018 3:58 PM
**To:** MonteS@ems-legal.com
**Subject:** RE: First payment of the Transition tax

2

Yes, as discussed by phone, we will release a IRS Notice on Monday stating that the filing date is June 15th for expatriates and military serving abroad.  You should see it posted on the IRS website on Monday.

Best regards,

Chip

**From:** Monte Silver [mailto:MonteS@ems-legal.com]
**Sent:** Thursday, March 29, 2018 1:56 PM
**To:** Harter, Chip <LafayetteChip.Harter@treasury.gov>
**Subject:** Re: First payment of the Transition tax

Hi Chip

In the spirit of Passover and the transition from slavery to freedom, I thought I'd follow up to see if there was any progress on the June 15th matter and the 2 proposals I sent you.

I know that a lot of expats would be very thankful if the Easter bunny were to help them on a different kind of transition...

I know - a bit overdone - but the symbolism made me smile

Thx
Monte

**From:** LafayetteChip.Harter@treasury.gov <LafayetteChip.Harter@treasury.gov>
**Sent:** Wednesday, March 21, 2018 11:11 PM
**To:** Monte Silver
**Subject:** RE: First payment of the Transition tax

Monte,

Good meeting with you yesterday.  I am working to get the confirmation of the June 15, 2008 first payment date in the notice we will be getting out soon.

Chip

**From:** Monte Silver [mailto:MonteS@ems-legal.com]
**Sent:** Wednesday, March 21, 2018 4:24 PM
**To:** Harter, Chip <LafayetteChip.Harter@treasury.gov>
**Subject:** First payment of the Transition tax

Hi Chip

I made it back to Israel.  Working on the proposals relating to the GILTI and Transition taxes we discussed and will send you hopefully by tomorrow

In addition, if you could, it would be appreciated if you could confirm that the first payment of the Transition tax is June 15 2018, not April 15, 2018 for individual Americans living abroad.

As I believe you mentioned,  the Treasury/IRS will issue a notice to this effect within two weeks.

3

PR 0091

 Gmail

**Monte Silver <americansabroadfortaxfairness@gmail.com>**

## Apology

**LafayetteChip.Harter@treasury.gov** <LafayetteChip.Harter@treasury.gov>   Mon, Aug 6, 2018 at 4:12 PM
To: americansabroadfortaxfairness@gmail.com

Monte,

Thank you for the note and thank you for the heads up.  A couple of thoughts.  First, this type of regulatory impact analysis is part of the procedural requirements for getting out final regulations.  Your proper forum is probably OMB / OIRA, which will be reviewing the final regulations on these regulatory impact issues later this year.  OIRA has been inviting public comments.

The second thought is that there is an issue as to what the proper base line for measurement is.  The tax liability itself and the need to make reports and filings arises from the act of Congress.  The proposed regulations themselves merely implement and simplify.   That is the case that the Treasury will be making to OIRA.

Best regards,

Chip

[Quoted text hidden]

PR 0092

**LafayetteChip.Harter@treasury.gov** <LafayetteChip.Harter@treasury.gov>          Wed, Aug 8, 2018 at 4:00 PM
To: americansabroadfortaxfairness@gmail.com

Monte,

I have a meeting scheduled later this afternoon with my advisors on administrative law and regulatory burdens to get their assessment of the situation.

I'll touch base with you after I've spoken with them.

Chip

[Quoted text hidden]

---

**Monte Silver** <americansabroadfortaxfairness@gmail.com>          Wed, Aug 8, 2018 at 6:01 PM
To: "LafayetteChip.Harter@treasury.gov" <LafayetteChip.Harter@treasury.gov>

Very good to hear Chip

Having looked at this I see three options:

1. Leave certificate as is and continue ordinary. Why not?  This would result in litigation then proper process

2. Amend certificate.Why not?  Time consuming. May impact main process. May establish dangerous FRA precedence. Your FRA conclusion would conclude that my dollar limit is reasonable

   3.  Leave certificate as is but crave out small business 2.5m exception by way of notice on faq website. Looks best. Also, would exclude need to address this issue in final assessment report.

I would be happy to be of service to help Treasury with expat data as Treasury sees fit

Monte
[Quoted text hidden]

---

**Monte Silver** <americansabroadfortaxfairness@gmail.com>          Thu, Aug 9, 2018 at 3:24 PM
To: "LafayetteChip.Harter@treasury.gov" <LafayetteChip.Harter@treasury.gov>

Chip

The reg was published today.  That means that the 60 days starts to run.

I believe that the best option is a carve out where Treasury announces that until such time as small business owners with 965 liability under $2.5M are specifically addressed in a 965 reg, they are excluded from the current proposed reg.  This will make the certification ok, and allow Treasury to avoid the issue in the final version. I see no other option.  I have lots of data and I will be happy help Treasury build the record to substantiate this reasonable position.

In balancing between giving Treasury time, to protecting small business owners, I believe that is fair to ask that Treasury produce a concrete proposal within 14 days from today (Thursday Aug 23). Absent this, small business owners will have to voice their strong opposition to the faulty process by email campaigns, articles about the unreasonable statutory certification, Freedom of Information requests, etc. I will be truthful by saying that WSJ, Bloomberg and FT  are hungry on the expat story.

Lets find a way to do the right thing

Thx Monte

**Monte @ Silver Law**

| | |
|---|---|
| **From:** | Monte @ Silver Law |
| **Sent:** | יום חמישי 09 אוגוסט 2018 22:48 |
| **To:** | LafayetteChip.Harter@treasury.gov; Major.Clark@sba.gov |
| **Cc:** | Heidi.Cohen@treasury.gov; Neviana.Petkova@treasury.gov; Brenda.Zent@treasury.gov; Claudia.Rodgers@sba.gov; steven.mnuchin@treasury.gov; eli.miller@treasury.gov; McCall Daniel M; william.m.paul@irscounsel.gov; Leni.c.perkins@irscounsel.gov; KarenJ.Cate@irscounsel.treas.gov; nina.olson@irs.com |
| **Subject:** | Secretary Mnuchin's bad faith certification under the Regulatory Flexibility Act regarding the proposed 965 rule |
| **Importance:** | High |

Mr. Harter (Treasury) and Mr. Clark (Small Business Administration)

I write this email following Mr. Harter's email below in which the Treasury seeks to avoid the required process under the Regulatory Flexibility Act (RFA) with regard to the proposed rules of IRC 965. As set forth below, Mr. Harter's positions will clearly not survive judicial review. In addition, such judicial review will expose the Treasury to other FRA challenges. Finally, Mr. Harter's response triggers SBA involvement, as set forth below.

This communication analyzes the Treasury and SBA statutory obligations in light of Mr. Harter's email.

### Treasury

#### A.    The certificate is defective on its face.

1.     The Secretary, who granted small businesses 965 relief on June 4, was well aware that 965 would significantly harm a substantial number of small businesses. But he chose to ignore the facts and issued the certificate in bad faith.

The certificate must set forth a factual analysis. RFA 605(b). See Southern Offshore Fishing Association v. Daley. "Pursuant to § 603, an IRFA would have required [the agency] to engage in a careful and meaningful study of the problem from the beginning. With notice of [agency's] position, the public could have engaged the agency in the sort of informed and detailed discussion that has characterized this litigation. Instead, [agency] chose an insular approach designed to block further investigation and public scrutiny. Agency compounded this error by preparing a FRFA that constitutes an attempt to agreeably decorate a stubborn conclusion."

"Congress has not intended for administrative agencies to circumvent the fundamental purposes of the RFA by invocation of the certification provision." North Carolina Fisheries Association v. Daley.

Bare certification is not sufficient. Theiss v. Principi.

In our case, there are a huge number of small businesses who are hit by this law.  Knowing this, Treasury granted relief four months ago and the Secretary signed the second relief two months ago.  Yet the Certification states that the law does not cause significant harm to a substantial number of businesses.  What facts is the certification based on?  Not one!! It includes only high-level conclusions, no facts whatsoever. It also completely ignores the unique situation of American small business owners abroad.

1

PR 0094

2.     Mr. Harter states that argues "Our understanding is that the Regulatory Flexibility Act <u>does not apply to individuals</u>. As stated in the regulatory flexibility analysis section of the preamble, the regulations <u>would not impose collection of information requirements on small entities</u>. In this regard, the analysis section explains that the collection of information requirements in the proposed regulations would <u>apply to the owners of the specified foreign corporations</u>."

This argument should have been laid out in the Certificate in a factual analysis based on reasonable inquiry. Did the certificate include facts from a single small business to allow the Secretary to substantiate this contention? No. Was any inquiry made as to whether the line that the Certification made between efforts/expenses of an individual shareholder and those of the entity made any sense in the context of a small business? We do not know as the Certification is wholly silent on any analysis the Secretary carried out.

3.   Mr. Harter states that it is our understanding that a "small entity" does not include a foreign entity.

What is this contention based on? We do not know as the Certification does not even raise this point.   Is it true even if the small business devastated by these laws is owned by an American subject to these taxes?   What if the business has offices and contributes to the US economy?   We do not know.

## B.     <u>The process is defective as a matter of law</u>

Mr. Harter states that we are "welcome to comment on all aspects of the proposed regulations, including the regulatory flexibility analysis, and those comments will be considered as part of the finalization of the regulations."

Under the RFA, the burden is on the agency to follow due process, not the small business to prove its case. Case law holds that whether or not small businesses participate is irrelevant. The process is faulty as a matter of law. Second, Treasury does not even intend to conduct a final assessment, basically robbing small businesses of any ability to participate in the process.

## C.     <u>The RFA has granted Treasury explicit authority to act</u>

Mr. Harter states that "the Treasury simply does not have authority to create exceptions not provided by Congress ... Broader relief would need to come from Congress."

This is patently wrong,. Section 603 is very explicit and reads"

"Consistent with the stated objectives of applicable statutes, the analysis shall discuss significant alternatives such as<u>... an exemption from coverage of the rule, or any part thereof, for such small entities.</u> As to judicial review, "In granting any relief in an action under this section, the court shall order the agency to take corrective action consistent with this including, but not limited to— deferring the enforcement of the <u>rule</u> against small entities.

Can Treasury even make this argument with a straight face? Read the preamble to the RFA  law below.

### Preamble to FRA
**Congressional Findings and Declaration of Purpose**
(a) The Congress finds and declares that —
(1) when adopting regulations to protect the health, safety and economic welfare of the Nation, Federal agencies should seek to **achieve statutory goals** as effectively and efficiently as possible without imposing unnecessary burdens on the public;
(2) **laws** and regulations designed for application to **large scale entities have been applied uniformly to small businesses,** small organizations, and small governmental jurisdictions even though the problems that gave rise to government action may not have been caused by those smaller entities;

2

(4) **the failure to recognize differences in the scale and resources of regulated entities** has in numerous instances adversely affected competition in the marketplace, discouraged innovation and restricted improvements in productivity;

(b) It is the purpose of this Act to establish as a principle of regulatory issuance that agencies shall endeavor, **consistent with the objectives of the rule and of applicable statutes, to fit regulatory and informational requirements to the scale of the businesses**, organizations, and governmental jurisdictions subject to regulation.

Note the Treasury August 1 2018 press release:  "The United States Department of the Treasury today announced the release of proposed regulations relating to the section 965 transition tax**, on U.S. multinational companies' overseas income**, which is being repatriated under section 965 of the Tax Cuts and Jobs Act." https://home.treasury.gov/news/press-releases/sm452

This is an open and closed case!

**D.  Treasury's action will give rise to multiple RFA actions.**

4. Bad precedence. It is my belief that Treasury is setting itself and other agencies up for many RFA actions. Not a smart move. I note the same type of Certification under the proposed regs for Section 199A. I see potential for mass challenges based on RFA.

### SBA

Under Section 612 of the RFA, the Chief Counsel for Advocacy of the Small Business Administration shall monitor agency compliance with this chapter

Accordingly, formal request is made that the Small Business Agency carry out its statutory duties on behalf of small businesses based in the U.S. and abroad. For your information, I, like many other American small businesses abroad have business presence in the United States and contribute to the United States in many ways.

To summarize, Treasury's current position as set forth in Mr. Harter's email is grossly unreasonable.  We small business owners cannot and will not sit quietly as our businesses and our livelihoods are devastated by the Transition and GILTI taxes.

On behalf of countless small business owners impacted by this proposed rule, I ask Treasury and the SBA to act reasonably and compassionately.  We will wait until close of business Monday August 13, 2018 to hear if the Treasury is willing to reconsider its position.  At which time we, hopefully with the assistance of the SBA, will commence an all-out struggle against Treasury's unreasonable position.

Monte

Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069
Herzelia Pituach 46733  Israel

Tel:  +972-9-9603799
Fax:  +972-9-9603798

PR 0096

Mob: +972-544-232-683
email: ms@silvercolaw.com

---------- Forwarded message ----------
From: <LafayetteChip.Harter@treasury.gov>
Date: Thu, Aug 9, 2018 at 4:22 PM
Subject: Proposed regulations under IRS 965 as applied to Americans abroad
To: americansabroadfortaxfairness@gmail.com
Cc: Heidi.Cohen@treasury.gov, Neviana.Petkova@treasury.gov, Brenda.Zent@treasury.gov

Monte,

I met yesterday with our experts on the regulatory flexibility requirements. They believe that the regulatory flexibility analysis in the preamble to the recently issued proposed regulations under section 965 is correct. Our understanding is that the Regulatory Flexibility Act does not apply to individuals. As stated in the regulatory flexibility analysis section of the preamble, the regulations would not impose collection of information requirements on small entities. In this regard, the analysis section explains that the collection of information requirements in the proposed regulations would apply to the owners of the specified foreign corporations. Furthermore, it is our understanding that a "small entity" does not include a foreign entity. Although the proposed section 965 regulations would impose certain information gathering responsibilities on individual expatriates who own small foreign corporations, we believe that those information gathering responsibilities imposed on such individuals are not considered in the regulatory flexibility analysis.

You are welcome to comment on all aspects of the proposed regulations, including the regulatory flexibility analysis, and those comments will be considered as part of the finalization of the regulations.

More fundamentally, and as we have discussed in the past, the Treasury simply does not have authority to create exceptions not provided by Congress to prevent the application of section 965 to individuals living abroad. We have exercised the authority that we believe we have to extend the time for payment of the first installment of tax without penalty for one year. Broader relief would need to come from Congress.

Best regards,

Chip

From: Monte Silver <americansabroadfortaxfairness@gmail.com>
Sent: Thursday, August 9, 2018 8:24 AM
To: Harter, Chip <LafayetteChip.Harter@treasury.gov>
Subject: Re: Apology + Proposed regulations under IRS 965 as applied to Americans abroad

Chip

The reg was published today. That means that the 60 days starts to run.

I believe that the best option is a carve out where Treasury announces that until such time as small business owners with 965 liability under $2.5M are specifically addressed in a 965 reg, they are excluded from the current proposed reg. This will make the certification ok, and allow Treasury to avoid the issue in the final version. I see no other option. I have lots of data and I will be happy help Treasury build the record to substantiate this reasonable position.

In balancing between giving Treasury time, to protecting small business owners, I believe that is fair to ask that Treasury produce a concrete proposal within 14 days from today (Thursday Aug 23). Absent this, small business owners will have to voice their strong opposition to the faulty process by email campaigns, articles about the

4

PR 0097

unreasonable statutory certification, Freedom of Information requests, etc. I will be truthful by saying that WSJ, Bloomberg and FT are hungry on the expat story.

Lets find a way to do the right thing

Thx Monte

PR 0098

## Monte @ Silver Law

| | |
|---|---|
| **From:** | Monte @ Silver Law |
| **Sent:** | יום שלישי 14 אוגוסט 2018 17:03 |
| **To:** | Leni.c.perkins@irscounsel.treas.gov |
| **Cc:** | eli.miller@treasury.gov; david.kautter@treasury.gov; Major.Clark@sba.gov; Claudia.Rodgers@sba.gov; LafayetteChip.Harter@treasury.gov; Heidi.Cohen@treasury.gov; Neviana.Petkova@treasury.gov; Brenda.Zent@treasury.gov; LafayetteChip.Harter@treasury.gov |
| **Subject:** | Request of email of Regina Johnson to request a hearing on the 965 regs |

Hi Leni

I decided to try and see what it is like for a small business to ask for a hearing. Of course, I am not the average small business. I am among the the most knowledge small business persons there are in the world on the subject. I am also a tax lawyer who really enjoys this stuff. Not many small business owners like me out there.

1. So lets assume that I am an average small business person who actually has heard something about a proposed rule. Not very likely.
2. Then lets assume that is would even dawn on me that I might try to see that this is all about. Again, I am a very busy business owner, but lets just say.
3. Then lets assume that I have the time and some degree of creativity and google the right words – proposed rule 965 treasury. Now, a small business owner may not know what 965 it. But lets assume. After going through a few links, I personally got to https://www.irs.gov/pub/irs-drop/reg-104226-18.pdf. I see a document with 250 pages. I immediately close this document and give up
4. But lets assume that I flip through this and try to read a few lines. Pure Chinese. I give up
5. But lets assume that I really want to invest lots of time in this to see if there is anything I can do. So I call a few friends. Most of them know nothing of this as they are not small business owners. I call my CPA - a one person shop. The CPA tells me that this is a document that is probably made public for comment and so I should look for a hearing opportunity. So I go back to the internet and to the document.
6. Now, assume that my eyes do roll over but I do see something about a hearing.
7. Now assume that I, being a small business, would even think about spending the time and money to even be remotely thinking about going to a hearing and leaving my business
8. Now assume that I find the part about the hearing. It says this: "Written or electronic comments and requests for a public hearing must be received by [INSERT DATE 60 DAYS AFTER PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER]." As I have not idea when the publication was, I give up.
9. I have no idea what a hearing is, or what I could possibly say at a hearing. I am just the owner of a coffee show in Frankfurt. But at least in theory I want my "day in court". I want to vent and tell the world how damaging this law is to me.
10. So lets assume that I go to the Federal Register....

Anyways, that is enough for now. I will continue this at a later time. Now we know why RFA 603 states that the initial assessment must include "the clarification, consolidation, or simplification of compliance and reporting requirements under the rule for such small entities"

Can I please ask you to send me the email of Regina Johnson? I called the listed number to get her email, as I prefer having things documented. But after being transferred to a voicemail I gave up

Thx
Monte

PR 0099

**Monte @ Silver Law**

| | |
|---|---|
| **From:** | Monte @ Silver Law |
| **Sent:** | יום שלישי 14 אוגוסט 2018 12:09 |
| **To:** | Major.Clark@sba.gov; Claudia.Rodgers@sba.gov |
| **Subject:** | Request call regarding the substantial impact on a significant number of small businesses arising from the proposed 965/962 regulations |
| **Importance:** | High |

Dear Mr. Clark and Ms. Rodgers

My name is Monte Silver and I am a US tax attorney living in Israel. I have a one-man firm. Like an estimated 200,000 other tiny/small business owners, I am an individual US shareholder with interests in a controlled foreign corporations. Having communicated with over a thousand small business owners like me, I know for a fact that the Transition and GILTI taxes will simply drive many of us out of business or force us to become tax avoiders.

I have an office in the US for which I generate significant revenues, that results in (1) the employment of US-based people, and (2) US tax revenue. In this regard I am similar to many others in my situation.

I would like to schedule a call with you to discuss the recent proposed 965 regulations with regard to (i) their impact on small businesses, (ii) their compliance with section 605© of the Regulatory Flexibility Act, and (iii) SBA duties under FRA 612.

I look forward to hearing from you.

Thanks very much

Monte

Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069
Herzelia Pituach 46733 Israel

Tel:  +972-9-9603799
Fax:  +972-9-9603798
Mob:  +972-544-232-683
email:  ms@silvercolaw.com

www.linkedin.com/in/americantaxsolutions

U.S. tax law articles and advocacy updates

**From:** Monte @ Silver Law
**Sent:** יום ב 13 אוגוסט 2018 19:25
**To:** LafayetteChip.Harter@treasury.gov

1

**Monte @ Silver Law**

| | |
|---|---|
| **From:** | Monte @ Silver Law |
| **Sent:** | יום רביעי 22 אוגוסט 2018 12:32 |
| **To:** | david.kautter@treasury.gov; neomi_rao@omb.eop.gov |
| **Cc:** | LafayetteChip.Harter@treasury.gov; Aaron_L_Szabo@omb.eop.gov |
| **Subject:** | Request for release of documents relating to OMB/OIRA obligations under Executive Order 13789 with regard to the proposed 965 rule |
| **Importance:** | High |

Dear Ms. Rao and Mr. Kautter

I am writing to bring your attention to the requirements of EO 13789 as applicable to the above proposed 965 rule.  Given the analysis below, very clear EO 12866 requirements apply.   Ordinarily I would not be occupied with these matters, but the proposed rules (and those to come under GILTI) do (and will) impose a devastating impact on a tremendous number of small businesses.

As I have found what I believe to be numerous material statutory violations under the Regulatory Flexibility Act and Paperwork Reduction Act with regard to the proposed 965 regulations, I bring this matter to your attention.   Accordingly, request is hereby made that Treasury/OMB make public all EO 13789/12866-related documents.  I note that under EO 12866, the OMB <u>must</u> make available to the public the documents exchanged between them during the review.

Your attention to this request is appreciated.

Respectfully,

Monte Silver

## **Executive order 13789**

IDENTIFYING AND REDUCING TAX REGULATORY BURDENS

Section 1.  Policy.  The Federal tax system should be simple, fair, efficient, and pro-growth.  The purposes of tax regulations should be to bring clarity to the already complex Internal Revenue Code (title 26, United States Code) and to provide useful guidance to taxpayers.  Contrary to these purposes, numerous tax regulations issued over the last several years have effectively increased tax burdens, impeded economic growth, and saddled American businesses with onerous fines, complicated forms, and

1

frustration.  Immediate action is necessary to reduce the burden existing tax regulations impose on American taxpayers and thereby to provide tax relief and useful, simplified tax guidance.


## Memorandum of Agreement between Treasury and OMB - Review of Tax Regulations under Executive Order 12866 – Dated April 11, 2018

Execute order 13789 directed the Treasury and OMB to review and if approrporiate reconsider the scope and implememation of the existing exemption for certain tax regulations from the review process under Executive Order 12866.  "Treasury and OMB share a commitment to reducing regulatory burdens and providing timely guidance to taxpayers."

1. A tax regulatory action WILL be subject to review under EO 12866 if it is likely to result in a rule that may ... (b) raise a novel legal or policy issue, such as by prescribing a rule of conduct backed by an assessable payment.
2. Such action WILL be subject to the analytical requirements of a significant regulatory action under section 6(a)(3)(B) of EO 12866
5.  Treasury WILL NOT publish in the Federal Register or otherwise release any tax regulatory action unless OIRA notified Treasury that is has waived or completed its review

Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069
Herzelia Pituach 46733  Israel

Tel:  +972-9-9603799
Fax: +972-9-9603798
Mob: +972-544-232-683
email: ms@silvercolaw.com

www.linkedin.com/in/americantaxsolutions

U.S. tax law articles and advocacy updates

PR  0102

**Monte @ Silver Law**

| | |
|---|---|
| **From:** | Monte @ Silver Law |
| **Sent:** | יום חמישי 23 אוגוסט 2018 10:36 |
| **To:** | Heidi.Cohen@treasury.gov; Neviana.Petkova@treasury.gov; Brenda.Zent@treasury.gov; Claudia.Rodgers@sba.gov; steven.mnuchin@treasury.gov; eli.miller@treasury.gov; McCall Daniel M; Karen.J.Cate@irscounsel.treas.gov; nina.olson@irs.com; william.m.paul@irscounsel.treas.gov; Leni.c.perkins@irscounsel.treas.gov; Major.Clark@sba.gov; LafayetteChip.Harter@treasury.gov; neomi_rao@omb.eop.gov; linda.mcmahon@sba.gov; Aaron_L_Szabo@omb.eop.gov; John.M.Mulvaney@omb.eop.gov; david.kautter@treasury.gov |
| **Subject:** | Secretary Mnuchin's bad faith RFA 605(b) certification in the Proposed 965 regulations and its impact on Treasury, IRS, OMB, OIRA, SBA and other agencies that have issued regulations in the past year or will do so in the future |
| **Attachments:** | GAO report relevant parts.pdf; Analysis of certification.pdf; House legislative history.pdf; Senate legislative history.pdf; Law firm analysis.pdf |

To the Treasury, IRS, SBA, OMB and OIRA:

After additional analysis by a prominent US law firm who is assisting on this matter, I wish to share with you the following:

1. <u>Senate and House legislative history to the RFA – regarding Treasury/IRS rules</u>

As set forth explicitly in the Senate legislative history attached, RFA applies to proposed rules of Treasury/IRS once there is a collection of information impact on small businesses. Period. In addition, in order to accomplish the goal of the RFA, "the IRS should take an expansive view in interpreting the phase "collection of information" when considering whether to conduct a regulatory flexibility analysis".

As to certification, both the House and Senate legislative history clearly require the certification to include in "depth factual, policy and legal reasoning". (Senate) "Simple boilerplate statements [in a certification] that a rule will not have such an effect are patently inadequate under the RFA. Rather sufficient analysis must be performed to apprise the regulated community of the reason for the certification. Moreover, any doubt as to whether a regulatory flexibility analysis should be performed must be resolved in factor of performing the analysis." (House)

Here, as seen in the attached, the certification, which includes not a single fact or any analysis at all (i) is self-contradictory, (ii) raises a one-sentence meaningless argument, and (iii) actually states that having an interest in a CFC requires huge amounts of resources and thus will not involve small businesses – a fact that Secretary Mnuchin knew was untrue when he certified.

There are other issues of RFA 609 and 612 that appear in the legislative history that have been violated by Treasury/IRS and SBA. There are also Paperwork Reduction Act violations which I have pointed out to the OMB and OIRA directors in detailed separate emails. However, these are not the main thrust of this email.

2. <u>GAO report states that between 2013-2105, less than 1% of IRS/Treasury regulations included any RFA analysis!</u> See attached. I believe you can well imagine the magnitude of the implications of what I am raising here.

3. <u>Tier 1 US law firm client alert. Attached.</u>   "The GAO concluded that Treasury and the IRS routinely do not comply with fundamental rulemaking requirements. As a result, this report may help

PR 0103

taxpayers challenge the validity of regulations in future proceedings." (This document was downloaded off the internet without knowledge of the author firm. The author firm is not presently involved in this matter – i.e. is not the above mentioned cooperating cooperating firm, thought I do have a strong longstanding relationship with the author firm.

To summarize, I believe that the proposed regulations put Treasury, the IRS, the Secretary personally, the SBA, OMB, OIRA and any other agency issuing regulations, or that has issued regulations in the last year in a vulnerable position.   I am in touch with 3 reporters from the very largest publications who are conducting due diligence on this matter.

I have offered a quiet way out of this mess.  How your agencies wish to move forward is your decision.

Monte

Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069
Herzelia Pituach 46733  Israel

Tel:  +972-9-9603799
Fax: +972-9-9603798
Mob: +972-544-232-683
email:  ms@silvercolaw.com

www.linkedin.com/in/americantaxsolutions

U.S. tax law articles and advocacy updates

PR  0104

## Monte @ Silver Law

**From:**     Monte @ Silver Law
**Sent:**     ‎17:46 ‎2018 ‏אוגוסט‏ 23 ‏חמישי‏ יום‏
**To:**       LafayetteChip.Harter@treasury.gov
**Subject:**  Solution to the situation

**Importance:**  High

Hi Chip

I most want to solve this quietly and quickly.

Why not simply amend FAQ 16 to state that until as shall be addressed specifically in separate regulations, US individuals with less than $2.5M in personal/962 965 tax liability are exempt from payment or filing obligations.

That would be acceptable, no?

Thx Monte

Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069
Herzelia Pituach 46733  Israel

Tel:  +972-9-9603799
Fax:  +972-9-9603798
Mob: +972-544-232-683
email:  ms@silvercolaw.com

www.linkedin.com/in/americantaxsolutions

U.S. tax law articles and advocacy updates

**Monte @ Silver Law**

| | |
|---|---|
| **From:** | Monte @ Silver Law |
| **Sent:** | יום רביעי 05 ספטמבר 2018 10:59 |
| **To:** | Heidi.Cohen@treasury.gov; Neviana.Petkova@treasury.gov; Brenda.Zent@treasury.gov; Claudia.Rodgers@sba.gov; steven.mnuchin@treasury.gov; eli.miller@treasury.gov; McCall Daniel M; Karen.J.Cate@irscounsel.treas.gov; nina.olson@irs.com; william.m.paul@irscounsel.treas.gov; Leni.c.perkins@irscounsel.treas.gov; Major.Clark@sba.gov; LafayetteChip.Harter@treasury.gov; neomi_rao@omb.eop.gov; linda.mcmahon@sba.gov; Aaron_L_Szabo@omb.eop.gov; John.M.Mulvaney@omb.eop.gov; david.kautter@treasury.gov |
| **Subject:** | Treasury and OMA/OIRA violations of the Paperwork Reduction Act (PRA) with regard to the proposed 965/962 regulations. |
| **Attachments:** | Secretary Mnuchin & Treasury press release.jpg |

Dear Treasury, IRS, OMB and OIRA Officials

After review of the Paper Reduction Act statute (PRA), it appears that the PRA-related procedural corner-cutting of your respective agencies is similar to that I outlined in my previous RFA analysis.

## Treasury & the Paperwork Reduction Act

A core goal of the PRA is to minimize the paperwork burden for individuals, small businesses ... and other persons resulting from the collection of information by or for the Federal Government.  PRA 3501.

According to section 3506(a)(1), Secretary Mnuchin is responsible for Treasury's compliance with PRA.  According to Section 3506 (c), Treasury must:

> (i) establish an independent process to fairly evaluate whether proposed collections of information includes a specific, objectively supported estimate of burden,

> (ii) certify that the collection of information (i) reduces the burden on small business, and (ii) is written using plain, coherent, and unambiguous terminology and is understandable to those who are to respond;

> (iv) make efforts to further reduce the information collection burden for small businesses with less than 25 employees.

As to (i), it is factually impossible to conduct (i) any fair evaluation of the proposed collection of information, coupled with (ii) a specific, objectively supported estimate of burden, and reach a conclusion that compliance will take 5 hours.

As stated in the Paperwork Reduction Act part of the proposed 965 rules, the collections of information in these proposed regulations are in proposed §§ 1.965-2(d)(2)(ii)(B), 1.965-2(f)(2)(iii)(B), 1.965-3(b)(2), 1.965-3(c)(3), 1.965-4(b)(2)(i), 1.965-7(b)(2), 1.965-7(b)(3)(iii)(B), 1.965-7(c)(2), 1.965-7(c)(3)(iv)(B), 1.965-7(c)(3)(v)(D), 1.965-7(c)(6)(i), 1.965-7(d)(3), 1.965-7(e)(2), 1.965-7(f)(5), and 1.965-8(c).  I know from my own experience and from experience of countless small businesses that compliance with this proposed collection of information involves months of time & work, often entails switching of accounting firms or retaining additional firms, great financial expense, and serious mental distress.  How could the Treasury reach a 5 hour estimate in good faith?  It could not.

1

PR 0106

As to (ii), how can the Treasury certify that the proposed rules: (A) reduce the burden on small businesses, or (B) that the 250 page document is written using plain terminology and is understandable to those who are to respond?   I am a tax attorney, have read a few parts of this document and cannot understand it.  And of course this is no surprise.  The document is geared toward multinational corporations.  See Treasury's own press release, attached.

As to (iii), what efforts did Treasury make so that the collection of information would not impact businesses with less than 25 people?  I am a one man business and I am impacted.


## OMB/OIRA & the PRA

PRA 3507(a) states that the Director must approve the proposed collection of information before it takes effect.  Based on the above and prior emails, it is unreasonable for the Director to approve the proposed collection of information, especially with regard to small businesses.

In fact, PRA section 3504(c) states that with respect to the collection of information, the OMB Director (or its designee at OIRA) shall:

(i)    minimize the Federal information collection burden, with particular emphasis on those individuals and entities most adversely affected;

(ii)   establish and oversee standards and guidelines by which agencies are to estimate the burden to comply with a proposed collection of information;

What actions did or will the OMB and or OIRA take to fulfill the above duties with regard to the 965 proposed rules?

Finally, PRA Section 3507(g) states that the Director may not approve a collection of information for a period in excess of 3 years.  In our case, a small business which makes the IRC 965(h) election must pay the tax over 8 years.  In addition, with regard to the 962 election, a small business distributing dividends from pre-2018 accumulated earnings in 50 years will have collection of information obligations in 50 years.  What inquiry did or will OMA/OIRA engage in to determine whether or not a small business would be required to spend time on the collection of information in the future?

In summary, I know that the PRA does not grant judicial review.  I would, however, assume that judicial review is not the litmus test by which your agencies conduct their affairs.  In any case, if small businesses with less than $2.5M in 965 liability are not exempted from the proposed regs, in a simple RFA action, your agency's actions under PRA will probably be quite probative and relevant.

Monte


Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069
Herzelia Pituach 46733 Israel

Tel:  +972-9-9603799
Fax: +972-9-9603798

2

PR 0107

**Monte @ Silver Law**

| | |
|---|---|
| **From:** | Monte @ Silver Law |
| **Sent:** | יום רביעי 12 ספטמבר 2018 17:28 |
| **To:** | Heidi.Cohen@treasury.gov; Neviana.Petkova@treasury.gov; Brenda.Zent@treasury.gov; Claudia.Rodgers@sba.gov; steven.mnuchin@treasury.gov; eli.miller@treasury.gov; McCall Daniel M; Karen.J.Cate@irscounsel.treas.gov; nina.olson@irs.com; william.m.paul@irscounsel.treas.gov; Leni.c.perkins@irscounsel.treas.gov; Major.Clark@sba.gov; LafayetteChip.Harter@treasury.gov; neomi_rao@omb.eop.gov; linda.mcmahon@sba.gov; Aaron_L_Szabo@omb.eop.gov; John.M.Mulvaney@omb.eop.gov; david.kautter@treasury.gov; Regina.L.Johnson@IRSCOUNSEL.TREAS.GOV |
| **Subject:** | Comment to the proposed rules and accompanying exhibits. |
| **Attachments:** | Comment for Proposed Rules 965.pdf; Exhibits for proposed rule.pdf |

Dear Treasury, IRS, OMB, OIRA & SBA Officials:

It is September 12, after a somber day which I feel must be recognized.  As we too often do in Israel – we remember.

I know that we all try our best to do what is right, especially those devoted to public service.  Mr. Harter, Dan McCall and others have done lots to help our Movement to date.  Independent surveys estimate that there are one million Americans impacted by 965/962.  They e have no voice and I just trying to do what I can to help them.

Attached is analysis and accompanying exhibits I just submitted via the portal earlier today.  Ironically, over the last few days I realized that even if one million Americans submit a comment stating that the business they rely on for survival will go bankrupt as a result of the proposed rules, Treasury has no choice but to certify that the rules do not have a significant impact on a substantial number of small businesses.  Why?  Treasury chose to go the route of certification and is thus committed.

As I have said before there are two options.  As to judicial review, a Silver et al. vs. Treasury lawsuit with one simple cause of action appeals to many in the Movement as can be seen in numerous online communities & forums.   Like the pending 2017 RFA case of California Cattlemen vs. U.S. Fish & Wildlife, we too would seek resolution by summary judgement.  Unlike California Cattlemen, however, our facts are far more compelling, our case is as black and white as one could hope for, and we are dealing with a major legislative/regulatory action, not the limiting of access to grazing land which marginally effects a few ranchers. And here, the Administration's stakes are much higher.  One could quite well see our matter becoming a watershed case.

I sincerely hope we can work this out by way of a $2.5M 965/962 carve out.   But the other option is fine as well.

I do not request a hearing, the burden of which would be too significant for my small business.

Respectfully, Monte

PR 0108

**From:** Monte @ Silver Law
**Sent:** 11:59 2018 ספטמבר 14 ו יום
**To:** Heidi.Cohen@treasury.gov; Neviana.Petkova@treasury.gov; Brenda.Zent@treasury.gov; Claudia.Rodgers@sba.gov; steven.mnuchin@treasury.gov; eli.miller@treasury.gov; McCall Daniel M <Daniel.M.McCall@irscounsel.treas.gov>; nina.olson@irs.com; william.m.paul@irscounsel.treas.gov; Major.Clark@sba.gov; LafayetteChip.Harter@treasury.gov; neomi_rao@omb.eop.gov; linda.mcmahon@sba.gov; Aaron_L_Szabo@omb.eop.gov; John.M.Mulvaney@omb.eop.gov; david.kautter@treasury.gov
**Subject:** GILTI regulations

Dear Secretary Mnuchin, Mr. Kautter, Mr. Paul, Mr. Mulvaney, Ms. Rao and Ms. Mcmahon:

I have reviewed the RFA and PDA portions of the proposed GILTI regulations. The same extensive discussion and arguments I made in my comment to the proposed Repatriation regulations apply even more severely to the GILTI regulations. This was I pointed this out in the August 14 email below.

Despite this knowledge, and in line with the GAO report that identified this troubling trend, the Treasury/IRS (and possibly the other agencies) have again participated in the wrongful circumvention of RFA and PDA obligations. And to make matters worse, information I provided was misused it to "fine-tune" the 951A certification. And on the flimsiest of grounds – which I predicted and neutralized in my comment. To tell the truth, I am quite shocked that I am even having this dialogue with the U.S. Federal Government. I can see small resource-constrained businesses or individuals cutting a few corners to obtain a beneficial outcome. But the Federal Government!!?

The facts are objective and your agencies could have identified them by basic due diligence. The law is clear. I can only hope that your agencies use their power and authority to avoid this mess. I hate using what ifs, but if this does not happen, I guaranty that many organizations will start challenging non-trivial regulations of Treasury & other federal agencies under the RFA - including those (i) in process, (ii) adopted within the last year, and (iii) older rules utilizing RFA 610.

I really hope that your agencies do the right and lawful thing.


Monte




**From:** Monte @ Silver Law
**Sent:** Tuesday, August 14, 2018 9:01 AM
**To:** steven.mnuchin@treasury.gov
**Cc:** eli.miller@treasury.gov; LafayetteChip.Harter@treasury.gov; david.kautter@treasury.gov
**Subject:** Notice that Regulations under IRC 951A will have a significant economic impact on a substantial number of small entities
**Importance:** High

Dear Secretary Mnuchin

This is to serve as notice that any regulations under 951A will have a significant impact on a very large number of small businesses. This impact will be FAR greater than the impact of the regulations under 965, for reasons a few of them are detailed below:

1.  951A is an on-going annual obligation
2.  951A appears to apply from the first dollar of income each year
3.  951A involves so many different definitions and categories that gathering information in attempt to comply with the 951A provisions, and complying with them, will impose an unreasonable demand on the small businesses AND their owners

2

4.  The often one-person tax professionals (many times enrolled agents) of the small businesses are simply not capable of helping their clients comply. Thus this will result in one of three situations (1) becoming tax-noncompliant, (2) closing the business, or (3) going to Big 4 accounting firms and spending huge amounts of money each year.
5.  The tax rates for GILTI tax liability can be 37% (zero for Google and Apple in most cases)
6.  Individual US Shareholders, unlike Google and Apple, are unable to claim the benefits of IRC 250/960

The above is not only my opinion.  There are many published articles on the subject.  See below.

I assume that the Treasury will govern itself accordingly. We will be following this closely

Thanks Monte

3

**Monte @ Silver Law**

| | |
|---|---|
| **From:** | Monte @ Silver Law |
| **Sent:** | יום שלישי 25 ספטמבר 2018 12:15 |
| **To:** | steven.mnuchin@treasury.gov; eli.miller@treasury.gov; McCall Daniel M; nina.olson@irs.com; william.m.paul@irscounsel.treas.gov; Major.Clark@sba.gov; LafayetteChip.Harter@treasury.gov; linda.mcmahon@sba.gov |
| **Subject:** | Treasury/IRS creates de minimis exceptions to laws when it wants to |

Dear Secretary Mnuchin, Mr. Kautter & Mr. Paul:

In the last few weeks I have developed an interest in reviewing prior regulations adopted by Treasury.  I am no longer surprised by the creative ways in which Treasury/IRS have gotten around the RFA for years, as the 2016 GAO report indeed concluded.

What I did find interesting is the way that Treasury does create exemptions and de-minimis carveouts when it wants to – possibly in a way to address comments of taxpayers and avoid RFA challenges.  For example, while I know little about complex corporate taxation it appears to me that IRC 337 has no such exemptions or carveouts.   Yet in 1992 Treasury issued what is known as the "May Company Regulations".  Since then, Treasury has revised the 337 regulations many times, each time keeping the exemptions/carveouts.   And these exemptions and carveouts are very details and elaborate.  See 4. Deminimis and Inadvertence Exceptions at www.federalregister.gov/documents/2015/06/12/2015-14405/partnership-transactions-involving-equity-interests-of-a-partner

I can point to many other examples of Treasury basically doing what it wants when faced with a problematic law – from not enforcing 2801, to adding the IRC 911 condition to 1.6038D-2.

I trust that in our case, you will find a way to do the right thing.

Monte


Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069
Herzelia Pituach 46733  Israel

Tel:  +972-9-9603799
Fax: +972-9-9603798
Mob: +972-544-232-683
email: ms@silvercolaw.com

www.linkedin.com/in/americantaxsolutions

U.S. tax law articles and advocacy updates

PR 0111

## Monte @ Silver Law

| | |
|---|---|
| **From:** | Monte @ Silver Law |
| **Sent:** | יום רביעי 26 ספטמבר 2018 16:51 |
| **To:** | Brent.McIntosh@treasury.gov; brent.j.mcintosh@treasury.gov |
| **Subject:** | Secretary Mnuchin's bad faith RFA 605(b) certification in the Proposed 965 regulations and its impact on Treasury, IRS, OMB, OIRA, SBA and other agencies that have issued regulations in the past year or will do so in the future |
| **Attachments:** | GAO report relevant parts.pdf; Analysis of certification.pdf; House legislative history.pdf; Senate legislative history.pdf; Law firm analysis.pdf |

| | |
|---|---|
| **Importance:** | High |

Hi Mr. McIntosh

My name is Monte Silver and I am a US tax attorney living in Israel. I received your name from someone quite senior in Congress who advised me to contact you.

It may very well be that you have heard of the issue above. In any case, as the email below states, I believe that the Treasury/IRS are in a delicate legal position with regard to the 962/962/951A proposed regulations.  And the risk extends to many more regulations and agencies.  One can only imagine how politically motived groups could quite easily really make Treasury and all other Federal agencies expend tremendous resources on RFA process.

The RFA case we have is iron clad.  I was told that you are an important person to speak to as you assess the issue legally.

I would be happy to discuss this matter with you or with someone from your team.

Yours, Monte

Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069
Herzelia Pituach 46733  Israel

Tel:  +972-9-9603799
Fax: +972-9-9603798
Mob: +972-544-232-683
email:  ms@silvercolaw.com

www.linkedin.com/in/americantaxsolutions

U.S. tax law articles and advocacy updates


**From:** Monte @ Silver Law
**Sent:** יום ה 23 אוגוסט 2018 10:36
**To:** Heidi.Cohen@treasury.gov; Neviana.Petkova@treasury.gov; Brenda.Zent@treasury.gov; Claudia.Rodgers@sba.gov; steven.mnuchin@treasury.gov; eli.miller@treasury.gov; McCall Daniel M <Daniel.M.McCall@irscounsel.treas.gov>; Karen.J.Cate@irscounsel.treas.gov; nina.olson@irs.com; william.m.paul@irscounsel.treas.gov; Leni.c.perkins@irscounsel.treas.gov; Major.Clark@sba.gov; LafayetteChip.Harter@treasury.gov; neomi_rao@omb.eop.gov; linda.mcmahon@sba.gov;

PR  0112

Aaron_L_Szabo@omb.eop.gov; John.M.Mulvaney@omb.eop.gov; david.kautter@treasury.gov
**Subject:** *Secretary Mnuchin's bad faith RFA 605(b) certification in the Proposed 965 regulations and its impact on Treasury, IRS, OMB, OIRA, SBA and other agencies that have issued regulations in the past year or will do so in the future*

To the Treasury, IRS, SBA, OMB and OIRA:

After additional analysis by a prominent US law firm who is assisting on this matter, I wish to share with you the following:

1. <u>Senate and House legislative history to the RFA – regarding Treasury/IRS rules</u>

As set forth explicitly in the Senate legislative history attached, RFA applies to proposed rules of Treasury/IRS once there is a collection of information impact on small businesses.  Period.  In addition, in order to accomplish the goal of the RFA, "the IRS should take an expansive view in interpreting the phase "collection of information" when considering whether to conduct a regulatory flexibility analysis".

As to certification, both the House and Senate legislative history clearly require the certification to include in "depth factual, policy and legal reasoning". (Senate) "Simple boilerplate statements [in a certification] that a rule will not have such an effect are patently inadequate under the RFA. Rather sufficient analysis must be performed to apprise the regulated community of the reason for the certification. Moreover, any doubt as to whether a regulatory flexibility analysis should be performed must be resolved in factor of performing the analysis." (House)

Here, as seen in the attached, the certification, which includes not a single fact or any analysis at all  (i) is self-contradictory, (ii) raises a one-sentence meaningless argument, and (iii) actually states that having an interest in a CFC requires huge amounts of resources and thus will not involve small businesses – a fact that Secretary Mnuchin knew was untrue when he certified.

There are other issues of RFA 609 and 612 that appear in the legislative history that have been violated by Treasury/IRS and SBA.  There are also Paperwork Reduction Act violations which I have pointed out to the OMB and OIRA directors in detailed separate emails. However, these are not the main thrust of this email.

2.  <u>GAO report states that between 2013-2105, less than 1% of IRS/Treasury regulations included any RFA analysis!</u>  See attached.  I believe you can well imagine the magnitude of the implications of what I am raising here.

3. <u>Tier 1 US law firm client alert. Attached.</u>   "The GAO concluded that Treasury and the IRS routinely do not comply with fundamental rulemaking requirements.  As a result, this report may help taxpayers challenge the validity of regulations in future proceedings." (This document was downloaded off the internet without knowledge of the author firm. The author firm is not presently involved in this matter – i.e. is not the above mentioned cooperating cooperating firm, thought I do have a strong longstanding relationship with the author firm.

To summarize, I believe that the proposed regulations put Treasury, the IRS, the Secretary personally, the SBA, OMB, OIRA and any other agency issuing regulations, or that has issued regulations in the last year in a vulnerable position.   I am in touch with 3 reporters from the very largest publications who are conducting due diligence on this matter.

I have offered a quiet way out of this mess.  How your agencies wish to move forward is your decision.

Monte

PR 0113

**Monte @ Silver Law**

| | |
|---|---|
| From: | Monte @ Silver Law |
| Sent: | יום חמישי 11 אוקטובר 2018 09:48 |
| To: | Brent.McIntosh@treasury.gov; steven.mnuchin@treasury.gov |
| Cc: | Heidi.Cohen@treasury.gov; Neviana.Petkova@treasury.gov; Brenda.Zent@treasury.gov; Claudia.Rodgers@sba.gov; steven.mnuchin@treasury.gov; eli.miller@treasury.gov; McCall Daniel M; nina.olson@irs.com; william.m.paul@irscounsel.treas.gov; Major.Clark@sba.gov; LafayetteChip.Harter@treasury.gov; neomi_rao@omb.eop.gov; linda.mcmahon@sba.gov; Aaron_L_Szabo@omb.eop.gov; John.M.Mulvaney@omb.eop.gov; david.kautter@treasury.gov |
| Subject: | 965/962 regs and Federal Government legal exposure under the Regulatory Flexibility Act |
| Importance: | High |

Dear Steve and Brent

The comment period has ended and we await the final regs.  Hopefully, they will include a carve out for small businesses and a very important IRC 250 inclusion in the 962 proposed regs.

Otherwise, I assume that Treasury is carefully calculating its legal exposure to a Silver et al vs. Mnuchin RFA action which I guarantee will be filed immediately.  The facts of our case are most compelling.  In addition, Government exposure could spread to past, present, and future regs of Treasury and other agencies.  In fact, relying on the GAO report, one can see various political/business entities filing RFA lawsuits to block or delay key Executive-branch initiatives that violate the RFA.  A few of these entities filed comments to the proposed 965/962 regulations. They and countless others are simply an email, Facebook/Linkedin post or phone-call away.  And I am exceptionally good at reaching out and building alliances.  Finally, I am sure you can imagine how becoming a national champion for small business rights under the RFA would be most beneficial to me personally.

As I told Mr. McCall back in March 2018 in our first call when he told me that temporary relief was not possible – "I am glad as I relish a good fight."  Nothing has changed, only now I have a Movement and money behind me.   And to make sure there are no surprises, between now and the publishing of the final rule I will display to you both how broad the legal exposure to President Trump's agenda will be.

The RFA mandates a carveout. Treasury has the authority to create one, and it has exercised this authority in the past.  I sincerely hope that things end with the final 965/962 rules.

I trust that you will do the right thing.

Monte

Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069
Herzelia Pituach 46733  Israel

1

## Monte @ Silver Law

| | |
|---|---|
| **From:** | Monte @ Silver Law |
| **Sent:** | יום שלישי 16 אוקטובר 2018 12:02 |
| **To:** | LafayetteChip.Harter@treasury.gov; McCall Daniel M |
| **Cc:** | eli.miller@treasury.gov; nina.olson@irs.com; william.m.paul@irscounsel.treas.gov; david.kautter@treasury.gov; Brent.McIntosh@treasury.gov |
| **Subject:** | New and simple solution to the 965 - Regulatory Flexibility Act issue |
| | |
| **Importance:** | High |

Dear Chip and Dan

Recently I have spoken to with members of the Movement who are US-based shareholders of S corps which in turn are US Shareholders of CFCs. Many are very small ecommerce businesses and they are quite upset by the whole 965 issue. I have also spoken to a few of their US-based tax professionals who know little about 965/962, and nothing substantive about the proposed regs. As a result of these conversations, I became aware of 965(i) that deals with S corps. How we missed this as a way to resolve the matter I don't know. I propose an easy solution:

1. A $500,000 net tax liability de-minimis exemption (including shareholders electing 962), rather than the previously $2.5M limit I previously proposed.
2. The 965(i) deferral shall apply to any other (1), individual U.S. Shareholder or (2) individual U.S. Shareholder making an election under IRC 962, who own an interest in a Specified foreign corporation

Under the 965(i) solution:
   a. Renouncing a citizenship would remain a trigger for 965(h) and 965(i).
   b. Joint liability under 965(i)(5) may be an issue for a CFC
   c. Timing. Individual shareholders would need time to make the deferral election.

Good for Treasury and good tax policy
- Allows piggy back on 965(i)
- Provides incentive for higher wealth individual US shareholders not to give up US citizenship as they can defer 965 tax for years. This leads to increased income/estate tax and capital gains taxes from higher wealth individual US shareholders over the years
- Allows the smallest of small businesses to avoid the grueling compliance costs of 965/regs.

Good to Taxpayers
Grants exemption for the smallest businesses which are the mass majority of them
Grants deferral for higher wealth individual US shareholders

Good for Compliance industry
Higher wealth individual U.S. shareholders will require on-going services related to 965(i)

The deminimis exemption is much lower but still a mandatory component. I think this is a great solution. I will call you both to discuss this later this week.

Monte

1

PR 0115

email: ms@silvercolaw.com

www.linkedin.com/in/americantaxsolutions

Updates on US tax law and tax advocacy

**From:** Monte @ Silver Law
**Sent:** Monday, October 22, 2018 12:54 PM
**To:** LafayetteChip.Harter@treasury.gov
**Cc:** william.m.paul@irscounsel.treas.gov; david.kautter@treasury.gov; McCall Daniel M
<Daniel.M.McCall@irscounsel.treas.gov>; Leni.c.perkins@irscounsel.treas.gov
**Subject:** Memo analyzing Treasury's regulatory authority to provide (a) relief under 965(i) to individual U.S.
Shareholders, and (b) IRC 250 deductions to taxpayers electing under 1.962-2.
**Importance:** High

Hi Chip

Per our call last week, below and attached is the memo you asked for.  I believe it accurately
reflects the law and facts and concludes that Treasury has the requisite regulatory authority to
grant the narrow relief we seek.   In March 2018, following a broad email campaign of small
businesses, we met in DC and this resulted in a resolution.   At this point I believe the former is
not needed, but that a face to face meeting is important.  This is especially so as (i) you and
your team are very busy with bigger things, (i) the issue is of paramount and timely importance
to many many people impacted, and (iii) time is short.

I have to be on the east coast for a family event starting Saturday November 3 and would be
very much to meet with you at your convenience on either Thursday or Friday November 1-2.

Yours, Monte

1.     **Treasury has authority to grant IRC 965(i) treatment to individual U.S.**
**shareholders.**

Being a vital engine of the American economy, small businesses <u>and their individual owners</u>
were deemed a priority under the Tax Cuts and Jobs Act ("TCJA") and they received
preferential treatment.   For example, IRC 199A provided tax breaks to <u>individual owners</u> of
sole proprietorships and pass-through entities.

Another priority goal of the TCJA was to create a territorial system of taxation for <u>U.S.</u>
<u>corporations</u>, with IRC 965 serving as a transition between the old and new regime.   As part of
its attempt to assist small businesses <u>and their individual owners</u> (who did not even receive the
benefit of the new territorial regime), Congress enacted IRC 965(e).  IRC 965(e) struck a
balance between these two priority goals.

PR 0116

Much like 199A, in enacting 965(e) Congress looked beyond the entity formalities and sought to assist <u>individual owners</u> of transparent small businesses. Specifically, and explicitly, Congress permitted "deferral of the transition net tax liability for shareholders of a U.S. shareholder that is a flow through entity…" Any such shareholder "may elect to defer his portion of the net tax liability to the participation exemption system until the shareholder's taxable year in which a triggering event occurs." Conference Report to Accompany H.R. 1, December 15, 2017. Clearly, in both laws Congress intended to protect individual shareholders of small businesses, and the transparent small businesses themselves.

## The Proposed 965/962 Regulations ("Regs")

It is fundamental administrative law that in interpreting statutes and issuing regulations, the Federal agency is "given controlling weight unless they arbitrary, capricious or manifestly contrary to the statute." *Chevron U.S.A. v. NRDC*, 467 U.S. 837 (1984).  This is especially so where the statute provides the agency with authority to prescribe regulations necessary or appropriate to carry out the provisions of the statute, as is the case with IRC 965. *Chevron* at 844.

Unless the law is unambiguously expressed as to the issue at hand, the administrative agency is required to make rules and fill gaps left implicitly or expressly open by Congress. *Morton v. Ruiz*, 415 U.S. 1999 (1974).

Given the scope of TCJA and the somewhat rapid manner in which parts of it may have been drafted, certain problems and ambiguities arose.  In addressing them, and absent acting arbitrarily, Treasury has full legitimacy to use its discretion to solve these problems, under *Chevron* and under IRC 965(o).

And in the case of the Regs, Treasury has applied it discretion.  For example, IRC 962 specifically allows 962 elections to be made only by U.S. Shareholders **who are individuals**. However, in the Regs, Treasury expanded the definition to include include pass-through entities such as domestic partnerships, corporations, trusts and estates.  Putting economic reality before form, Treasury equated individuals with a wide variety of pass-throughs to avoid a severe impact on small businesses.

And with the issue at hand, the need for a solution is more compelling than *Chevron* and 962 elections. First, in *Chevron* and all other such cases before courts, the factual record before the Federal agency is rich and has been fully analyzed by expert opinions and otherwise (see *Southern Offshore Fishing Association v. Daley; North Carolina Fisheries Association v. Daley, California Cattlemen vs. U.S. Fish & Wildlife*). Here, very little was known to Congress or is known to Treasury about the impact 965/962/951A has on small businesses. Thus, extra caution is warranted.  Second, the small businesses owned directly by individual U.S. shareholders tend to be much smaller than those run though small business corporations. Third, small businesses inherently lack the ability to unite and obtain effective advocacy assistance.

In summary, the clear intent of TCJA was to assist small businesses <u>and their owners</u>, as seen in IRC 199A and 965(e).  While IRC 199A confers a benefit, IRC 965 imposes a draconian cost on small businesses.  Given the extreme fact pattern in our case, Treasury has unquestionable

lawful discretion to address the problem.  In the proposed 1.962-2, Treasury did so, looking at economic reality and substance over entity formalities.  Accordingly, Treasury has similar authority to grant IRC 965(e) treatment to individual U.S. shareholders.

### 2.    Treasury has authority to allow IR 250 deductions to taxpayers electing under 1.962-2

For all the reasons get forth above, and for those set forth below, the proposed regulations under 1.962-2 should allow the electing taxpayer to enjoy the deductions under IRC 250.

GILTI is a tremendously complex tax. Unlike the Transition tax, GILTI is annual, imposing on U.S. Shareholders of small businesses a very painful on-going burden. To make matters worse, unlike Google, Apple and other huge corporations, all U.S. Shareholders making the 962 election are not entitled to the benefits of IRC 250 as they are not U.S. corporations.  This is clear, and has recently been reinforced by the U.S. tax court in *Smith vs. IRC.* 151 T.C. 5 (2018).

In *Smith,* the taxpayer made the IRC 962 election and sought to enjoy various benefits as a domestic corporation.  The tax court ruled against the taxpayer saying that the IRC 962 "provisions do not create hypothetical corporations...They simply provide a mechanism that enables an individual U.S. taxpayer to elect what he or she may deem more desirable tax treatment." *Smith* at 21.  "There is nothing in the statutory text to suggest that Congress intended [IRC 962] to apply for any other purposes under the Code, least of all for purposes of section 1(h)(11), which was not enacted until 41 years later."

In our case, there is significant justification to allow the 962 taxpayer to benefit from IRC 250.  First, IRC 250 was enacted in 2017, decades after IRC 962 became law.  Congress could not have foreseen IRC 250.

Second, IRC 951A(f)(1)(A) specifically states that:

> "any global intangible low-taxed income included in gross income shall be treated in the same manner as an amount included under section 951(a)(1)(A) for purposes of applying sections ...962."

Moreover, 951A(a)(1)(B) gives Treasury complete authority to provide relief.

> "The Secretary **shall** provide rules for the application of subparagraph (A) to other provisions of this title in any case in which the determination of subpart F income is required to be made at the level of the controlled foreign corporation."

PR 0118

In the case of IRC 951A, GILTI income is determined at the CFC level, with the amount includable as GILTI income.

Given (1) the clear intent of Congress to promote small businesses, (ii) the overwhelming impact GILTI will have on small businesses on an annual basis, (iii) the fact that small businesses receive worse treatment than do massive corporations, and (iv) the clear language of the statute granting Treasury with authority, Treasury has complete authority to allow taxpayers electing under IRC 962 to enjoy the benefits of IRC 250.

Monte Silver, Adv. (Israel & CA)

Silver & Co. Attorneys at Law

Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069

Herzelia Pituach 46733  Israel

Tel:  +972-9-9603799

Fax: +972-9-9603798

Mob: +972-544-232-683

email:  ms@silvercolaw.com

www.linkedin.com/in/americantaxsolutions

U.S. tax law articles and advocacy updates

**From:** Monte @ Silver Law
**Sent:** ‏יום ג 16אוקטובר2018 12:02
**To:** 'LafayetteChip.Harter@treasury.gov' <LafayetteChip.Harter@treasury.gov>; 'McCall Daniel M' <Daniel.M.McCall@irscounsel.treas.gov>
**Cc:** 'eli.miller@treasury.gov' <eli.miller@treasury.gov>; 'nina.olson@irs.com' <nina.olson@irs.com>; 'william.m.paul@irscounsel.treas.gov' <william.m.paul@irscounsel.treas.gov>; 'david.kautter@treasury.gov' <david.kautter@treasury.gov>; 'Brent.McIntosh@treasury.gov' <Brent.McIntosh@treasury.gov>
**Subject:** New and simple solution to the 965 - Regulatory Flexibility Act issue
**Importance:** High

Dear Chip and Dan

PR 0119

Recently I have spoken to with members of the Movement who are US-based shareholders of S corps which in turn are US Shareholders of CFCs. Many are very small ecommerce businesses and they are quite upset by the whole 965 issue. I have also spoken to a few of their US-based tax professionals who know little about 965/962, and nothing substantive about the proposed regs. As a result of these conversations, I became aware of 965(i) that deals with S corps. How we missed this as a way to resolve the matter I don't know.    I propose an easy solution:

1. A $500,000 net tax liability de-minimis exemption (including shareholders electing 962), rather than the previously $2.5M limit I previously proposed.
2. The 965(i) deferral shall apply to any other (1), individual U.S. Shareholder or (2) individual U.S. Shareholder making an election under IRC 962, who own an interest in a Specified foreign corporation

Under the 965(i) solution:

a. Renouncing a citizenship would remain a trigger for 965(h) and 965(i).
b. Joint liability under 965(i)(5) may be an issue for a CFC
c. Timing. Individual shareholders would need time to make the deferral election.

Good for Treasury and good tax policy

- Allows piggy back on 965(i)
- Provides incentive for higher wealth individual US shareholders not to give up US citizenship as they can defer 965 tax for years.   This leads to increased income/estate tax and capital gains taxes from higher wealth individual US shareholders over the years
- Allows the smallest of small businesses to avoid the grueling compliance costs of 965/regs.

-

Good to Taxpayers

Grants exemption for the smallest businesses which are the mass majority of them

Grants deferral for higher wealth individual US shareholders

Good for Compliance industry

Higher wealth individual U.S. shareholders will require on-going services related to 965(i)

The deminimis exemption is much lower but still a mandatory component. I think this is a great solution. I will call you both to discuss this later this week.

Monte

Monte Silver, Adv. (Israel & CA)

PR 0120

 Gmail                                    Monte Silver <monte.silver@gmail.com>

## Next steps regarding Treasury's violations of RFA/APA/PRA with regard to 965/962 proposed regulations

**Monte** <monte.silver@gmail.com>                                    Sat, Nov 17, 2018 at 9:54 AM
To: steven.mnuchin@treasury.gov, eli.miller@treasury.gov, McCall Daniel M <Daniel.M.McCall@irscounsel.treas.gov>,
nina.olson@irs.com, william.m.paul@irscounsel.treas.gov, Major.Clark@sba.gov, LafayetteChip.Harter@treasury.gov,
neomi_rao@omb.eop.gov, linda.mcmahon@sba.gov, John.M.Mulvaney@omb.eop.gov, david.kautter@treasury.gov,
Brent.McIntosh@treasury.gov

Despite having offered Chip a very digestible solution to the issue (965i), as set forth below, his response was "take it
to congress." That is indeed a good suggestion. In fact, with the elections over, many people and a few organizations
indeed plan to take the matter of Treasury's longstanding abuses as detailed in the 2016 GAO report to Congress.
Specifically to  Congressman Cummings of the House oversight committee.

In addition, as you can easily see on the web, the movements is actively raising funds to take this matter to court.

Your agencies were offered a way to avoid this.  But your agencies rebuffed each attempt, thus exposing your
agencies to consequences far beyond this specifc proposed regulation.  There is still time to do the right thing.

Like all past communications, I write this email as a private person who happens to know his rights, not as an
attorney for myself or anyone else.  When the time is right, the movement and I will retain legal counsel.


Monte Silver
+972-544-232-683
monte.silver@gmail.com


---------- Forwarded message ----------
From: **Monte @ Silver Law** <ms@silvercolaw.com>
Date: Sat, Nov 17, 2018 at 9:25 AM
Subject: FW: Memo analyzing Treasury's regulatory authority to provide (a) relief under 965(i) to individual U.S.
Shareholders, and (b) IRC 250 deductions to taxpayers electing under 1.962-2.
To: monte.silver@gmail.com <monte.silver@gmail.com>




Monte Silver, Adv. (Israel & CA)

Silver & Co. Attorneys at Law

Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069

Herzelia Pituach 46733  Israel


Tel:  +972-9-9603799

Fax:  +972-9-9603798

Mob: +972-544-232-683

PR 0121

Gmail - Additional offer to resolve 965/962/951A issues of Small Businesses amicably

 Gmail

Monte Silver <monte.silver@gmail.com>

## Additional offer to resolve 965/962/951A issues of Small Businesses amicably
1 message

**Monte** <monte.silver@gmail.com>                                    Wed, Dec 5, 2018 at 12:08 PM
To: steven.mnuchin@treasury.gov, eli.miller@treasury.gov, McCall Daniel M <Daniel.M.McCall@irscounsel.treas.gov>,
nina.olson@irs.com, william.m.paul@irscounsel.treas.gov, Major.Clark@sba.gov, LafayetteChip.Harter@treasury.gov,
neomi_rao@omb.eop.gov, linda.mcmahon@sba.gov, John.M.Mulvaney@omb.eop.gov, david.kautter@treasury.gov,
Brent.McIntosh@treasury.gov

I once again offer to resolve the matter amicably. I am a marathon runner and our movement is and will continue to
go all the way on various fronts. Is this the way you wish to spend your time and resources?

As always I remain open to dialogue.

PR 0122



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, DC 20224

PRIVACY, GOVERNMENTAL
LIAISON AND DISCLOSURE

October 5, 2018

Tal Solomon
2 Shibolet Street
Ramat Hasharon 47240
Israel

Dear Tal Solomon:

This is our final response to your Freedom of Information Act (FOIA) request dated August 27, 2018, that we received on August 27, 2018.

You asked for documents which were relied on in support of Secretary Mnuchin's July 2018 certification under section 305(b) of the Regulatory Flexibility Act that the proposed regulations titled "Guidance Regarding the Transition Tax Under Section 965 and Related Provisions" ("Proposed Regulations") would not:
1. impose a collection of information on small entities.
2. have a significant economic impact on a substantial number of small entities.

Of the 1,104 pages located in response to your request, I am enclosing 3 pages. I am withholding 2 pages in part and 1,101 pages in full under FOIA exemptions (b)(3) and (b)(5).

- The withheld portions are the return information of other taxpayers. FOIA exemption (b)(3) requires us to withhold information that is specifically exempted from disclosure by another law. The law supporting this exemption is Internal Revenue Code (IRC) section 6103(a).

- FOIA exemption (b)(5) exempts from disclosure inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. The deliberative process privilege protects documents that reflect the pre-decisional opinions and deliberations that play a direct part in the process of making recommendations on legal or policy matters.

The redacted portions of each page are marked by the applicable FOIA exemptions.

This constitutes a partial denial of your request.

PR 0123

2

**FOIA FEES**

We charged no fees for processing this request.

**APPEAL RIGHTS**

You have the right to file an administrative appeal within 90 days of the date of this letter. By filing an appeal, you preserve your rights under FOIA and give the agency a chance to review and reconsider your request and the agency's decision. I have enclosed Notice 393, *Information on an IRS Determination to Withhold Records Exempt From the Freedom of Information Act - 5 U.S.C. 552,* to explain your appeal rights.

If you would like to discuss our response before filing an appeal to attempt to resolve your dispute without going through the appeals process, you may contact me, the FOIA Public Liaison, for assistance at:

David Nimmo
Internal Revenue Service
Disclosure Office 13
24000 Avila Road, M/S 2201
Laguna Niguel, CA 92677
949-575-6328

The FOIA Public Liaison responds to FOIA and Privacy Act requests for copies of documents maintained by the IRS.  There is no provision in either Act to resolve tax, collection, or processing issues and our staff is not trained to answer questions regarding those issues. If you need assistance with tax related issues you may call the IRS toll free number at 1-800-829-1040.

If you are unable to resolve your FOIA dispute through our FOIA Public Liaison, the Office of Government Information Services (OGIS), the Federal FOIA Ombudsman's office, offers mediation services to help resolve disputes between FOIA requesters and Federal agencies. The contact information for OGIS is:

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road--OGIS
College Park, MD 20740-6001
202-741-5770
877-684-6448
ogis@nara.gov
ogis.archives.gov

If you have any questions please call Tax Law Specialist, Michael C. Young, ID # 1000436696, at 949-575-6406 or write to: Internal Revenue Service, HQ FOIA – Stop 211, PO Box 621506, Atlanta, GA  30362.  Please refer to case number F18239-0035.

3

Sincerely,

David Nimmo
Disclosure Manager
Disclosure Office 13

Enclosures:  Responsive Pages (3) and Notice 393

**Perkins Leni C**

| | |
|---|---|
| **From:** | Jenkins Rose E <Rose.E.Jenkins@irscounsel.treas.gov> |
| **Sent:** | Wednesday, June 20, 2018 3:55 PM |
| **To:** | Stahl Raymond J; Perkins Leni C |
| **Subject:** | RE: Section 965 NPRM Pink Circulation Draft (6-19-18)(checked) (2) PRA RFA |
| **Attachments:** | Section 965 NPRM Pink Circulation Draft (6-19-18)(checked) (2) PRA RFA (REJ Comments 6-20-18).docx |

Attached is my stab at responding to her comments. _____ (b)(5)

**From:** Stahl Raymond J [mailto:Raymond.J.Stahl@irscounsel.treas.gov ]
**Sent:** Wednesday, June 20, 2018 12:27 PM
**To:** Jenkins Rose E; Perkins Leni C
**Subject:** FW: Section 965 NPRM Pink Circulation Draft (6-19-18)(checked) (2) PRA RFA

Sigh.

**From:** Lesniak Emily M [mailto:Emily.M.Lesniak@irscounsel.treas.gov ]
**Sent:** Wednesday, June 20, 2018 12:22 PM
**To:** Stahl Raymond J
**Subject:** Section 965 NPRM Pink Circulation Draft (6-19-18)(checked) (2) PRA RFA

Some thoughts are attached.

1

**Perkins Leni C**

| | |
|---|---|
| **From:** | Stahl Raymond J <Raymond.J.St ahl@irscounsel.treas.gov> |
| **Sent:** | Tuesday, June 19, 2018 5:49 PM |
| **To:** | Lesniak Emily M |
| **Cc:** | Jenkins Rose E; Perkins Leni C |
| **Subject:** | Section 965 NPRM Pink Circulation Draft (6-19-18)(checked) (2) PRA RFA |
| **Attachments:** | Section 965 NPRM Pink Circulation Draft (6-19-18)(checked) (2) PRA RFA.docx |

Hi Emily,

Thanks again for talking through my RFA and PFA questions this afternoon.  In track changes, please find attached a working draft of the PRA and RFA language that we discussed.  I'd appreciate your thoughts.  After we get your input, I'll share this with our Treasury counterparts.  They are Robust Editors, but I'll ask them to work with Heidi on any edits.

Best wishes,
Ray

1

**Perkins Leni C**

| | |
|---|---|
| From: | McCall Daniel M <Daniel.M.McCall@irscounsel.treas.gov> |
| Sent: | Tuesday, June 19, 2018 1:26 PM |
| To: | Jenkins Rose E; Stahl Raymond J; Perkins Leni C |
| Subject: | |
| Attachments: | |

(b)(5

You may have this already,                                                                          (b)(5)

                                                                      (This may or may not be on point, so please let me know if you want    (b)(5)
to discuss!)

1



**Monte @ Silver Law**

| | |
|---|---|
| **From:** | McCall Daniel M <Daniel.M.McCall@irscounsel.treas.gov> |
| **Sent:** | יום שלישי 21 אוגוסט 2018 17:31   *Avgst 21* |
| **To:** | Monte @ Silver Law |
| **Subject:** | 965 reg hearing |

Hello Monte,

I understand you sent a message regarding the above. We have submitted this message to www.regulations.gov, and it will be posted as a public comment to the REG-104226-18 docket. Further, we will schedule a hearing on the proposed regulations. Information on the hearing will be available at www.regulations.gov in the REG-104226018 docket folder.

Comments to the regulations may be sent to CC:PA:LPD:PR (REG-104226-18), room 5203, Internal Revenue Service, P.O. Box 7604, Ben Franklin Station, Washington, DC 20044. Submissions may be hand-delivered Monday through Friday between the hours of 8 a.m. and 4 p.m. to CC:PA:LPD:PR (REG-104226-18), Courier's Desk, Internal Revenue Service, 1111 Constitution Avenue, NW, Washington, DC 20224, or sent electronically via the Federal eRulemaking Portal at www.regulations.gov (indicate IRS and REG-104226-18).

For questions concerning submissions of comments and the public hearing, please contact Regina Johnson at (202) 317-6901 (not toll-free numbers).

Please let me know if you have any questions.

Sincerely,
Dan

PR 0129

## Monte @ Silver Law

| | |
|---|---|
| **From:** | Monte @ Silver Law |
| **Sent:** | יום שלישי 21 אוגוסט 2018 17:42 *August 21* |
| **To:** | McCall Daniel M |
| **Subject:** | RE: 965 reg hearing |

Hi Dan

How are you?  Thx for the update re the hearing. Very good news even if not RFA compliant.

As to posting my comment, pls do not.  I have not yet completed the review of the proposed regs to see what the scope of the comment is and am presently pre-occupied with other things.  I will definitely draft and post a comment asap.

Thx Monte

Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069
Herzelia Pituach 46733  Israel

Tel:  +972-9-9603799
Fax: +972-9-9603798
Mob: +972-544-232-683
email:  ms@silvercolaw.com

www.linkedin.com/in/americantaxsolutions

U.S. tax law articles and advocacy updates

**From:** McCall Daniel M <Daniel.M.McCall@irscounsel.treas.gov>
**Sent:** אוגוסט21 יום ג2018 17:31
**To:** Monte @ Silver Law <ms@silvercolaw.com>
**Subject:** 965 reg hearing

Hello Monte,

I understand you sent a message regarding the above. We have submitted this message to www.regulations.gov, and it will be posted as a public comment to the REG-104226-18 docket.  Further, we will schedule a hearing on the proposed regulations.  Information on the hearing will be available at www.regulations.gov in the REG-104226018 docket folder.

Comments to the regulations may be sent to CC:PA:LPD:PR (REG-104226-18), room 5203, Internal Revenue Service, P.O. Box 7604, Ben Franklin Station, Washington, DC 20044.  Submissions may be hand-delivered Monday through Friday between the hours of 8 a.m. and 4 p.m. to CC:PA:LPD:PR (REG-104226-18), Courier's Desk, Internal Revenue Service, 1111 Constitution Avenue, NW, Washington, DC 20224, or sent electronically via the Federal eRulemaking Portal at www.regulations.gov (indicate IRS and REG-104226-18).

PR  0130

**Monte @ Silver Law**

| | |
|---|---|
| **From:** | Johnson Regina L <Regina.L.Johnson@IRSCOUNSEL.TREAS.GOV> |
| **Sent:** | 19:30 2018 אוגוסט 28 יום שלישי |
| **To:** | Monte @ Silver Law |
| **Subject:** | Public Comment REG-104226-18 |

| | |
|---|---|
| **Importance:** | High |

Can you provide a more direct public comment that addresses the issues of the regulation and the request of a public hearing?

Thank you, I would appreciate it.

Regina Johnson

**From:** Monte @ Silver Law [mailto:ms@silvercolaw.com]
**Sent:** Tuesday, August 14, 2018 10:03 AM
**To:** Perkins Leni C
**Cc:** eli.miller@treasury.gov; david.kautter@treasury.gov; Major.Clark@sba.gov; Claudia.Rodgers@sba.gov; LafayetteChip.Harter@treasury.gov; Heidi.Cohen@treasury.gov; Neviana.Petkova@treasury.gov; Zent Brenda; LafayetteChip.Harter@treasury.gov
**Subject:** Request of email of Regina Johnson to request a hearing on the 965 regs

Hi Leni

I decided to try and see what it is like for a small business to ask for a hearing.  Of course, I am not the average small business.  I am among the the most knowledge small business persons there are in the world on the subject.  I am also a tax lawyer who really enjoys this stuff.  Not many small business owners like me out there.

1. So lets assume that I am an average small business person who actually has heard something about a proposed rule.  Not very likely.
2. Then lets assume that is would even dawn on me that I might try to see that this is all about.  Again, I am a very busy business owner, but lets just say.
3. Then lets assume that I have the time and some degree of creativity and google the right words – proposed rule 965 treasury.  Now, a small business owner may not know what 965 it. But lets assume.  After going through a few links, I personally got to https://www.irs.gov/pub/irs-drop/reg-104226-18.pdf.  I see a document with 250 pages.  I immediately close this document and give up
4. But lets assume that I flip through this and try to read a few lines.  Pure Chinese.  I give up
5. But lets assume that I really want to invest lots of time in this to see if there is anything I can do.  So I call a few friends.  Most of them know nothing of this as they are not small business owners.  I call my CPA  - a one person shop.  The CPA tells me that this is a document that is probably made public for comment and so I should look for a hearing opportunity.  So I go back to the internet and to the document.
6. Now, assume that my eyes do roll over but I do see something about a hearing.
7. Now assume that I, being a small business, would even think about spending the time and money to even be remotely thinking about going to a hearing and leaving my business
8. Now assume that I find the part about the hearing.  It says this: "Written or electronic comments and requests for a public hearing must be received by [INSERT DATE 60 DAYS AFTER PUBLICATION OF THIS DOCUMENT IN THE FEDERAL REGISTER]."  As I have not idea when the publication was, I give up.
9. I have no idea what a hearing is, or what I could possibly say at a hearing. I am just the owner of a coffee show in Frankfurt.  But at least in theory I want my "day in court".  I want to vent and tell the world how damaging this law is to me.
10. So lets assume that I go to the Federal Register….

PR 0131

**Monte @ Silver Law**

| | |
|---|---|
| **From:** | Monte @ Silver Law |
| **Sent:** | יום רביעי 12 ספטמבר 2018 17:32 |
| **To:** | Regina.L.Johnson@IRSCOUNSEL.TREAS.GOV |
| **Cc:** | McCall Daniel M |
| **Subject:** | Removal of supporting documents from the www.regulations.gov site |
| **Attachments:** | Supporting docs.jpg |

Hi Regina

Can you pls have the five documents listed as supporting documents on the www.regulations.gov site removed?  I provided Treasury/IRS these docs in emails, not as a comment.  And in any case these docs are included in my formal submission.

See attached

Thx


Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069
Herzelia Pituach 46733  Israel

Tel:  +972-9-9603799
Fax: +972-9-9603798
Mob: +972-544-232-683
email:  ms@silvercolaw.com

www.linkedin.com/in/americantaxsolutions

U.S. tax law articles and advocacy updates

1

PR 0132

Export   Sign up

Sort By:   Comments Due

Comments

Comments

Comments

Comments

Comments

## Filter Results By...

### Document Type

Final Rule

Notice

Proposed Rule

Rule

Supporting & Related Material

Other

Public Submission (2)

### Posted

Search All

### Comments Due

Search All

### Document SubType

View All

Notice, Rule, Supporting Material, SubType

## 5 results

Results per page   25 ▾

**Guidance Regarding Transition Tax under Section 965 and Related Provisions**
Supporting & Related Material   Posted: 09/10/2018   ID: IRS-2018-0031-0001

**Analysis of certification**
Supporting & Related Material   Posted: 09/10/2018   ID: IRS-2018-0031-0011

**Guidance Regarding Transition Tax under Section 965 and Related Provisions**
Supporting & Related Material   Posted: 09/10/2018   ID: IRS-2018-0031-0015

**Guidance Regarding Transition Tax under Section 965 and Related Provisions**
Supporting & Related Material   Posted: 09/10/2018   ID: IRS-2018-0031-0013

**Guidance Regarding Transition Tax under Section 965 and Related Provisions**
Supporting & Related Material   Posted: 09/10/2018   ID: IRS-2018-0031-0014

## Monte @ Silver Law

| | |
|---|---|
| **From:** | McCall Daniel M <Daniel.M.McCall@irscounsel.treas.gov> |
| **Sent:** | יום שישי 07 ספטמבר 2018 00:16   *Sept 7.* |
| **To:** | Monte @ Silver Law |
| **Subject:** | RE: 965 reg hearing |

Hi Monte,

I'm told that it would help things along if you would kindly go to the following link, which goes directly to the comment portal: https://www.regulations.gov/comment?D=IRS-2018-0019-0001). You would then submit a comment to simply request a hearing (for example: "I would like to request a hearing on REG-104226-18."). That's all that's needed to advance the hearing process.

Then, once the hearing is scheduled, potential speakers are required to submit a written outline of their topics to be discussed ahead of the hearing. The submissions must be sent to CC:PA:LPD:PR (REG-104226-18), Room 5205, Internal Revenue Service; PO Box 7604; Ben Franklin Station; Washington, DC 20044. Additional information about the hearing and the speaker's outline will be available in the notice of hearing when it is published. If no one requests to speak and no speaker outlines are received, the hearing will be cancelled.

For questions concerning submissions of comments and the public hearing, please contact Regina Johnson at (202) 317-6901 (not a toll-free number).

Thank you very much,
Dan

**From:** Monte @ Silver Law [mailto:ms@silvercolaw.com]
**Sent:** Tuesday, August 21, 2018 10:42 AM
**To:** McCall Daniel M
**Subject:** RE: 965 reg hearing

Hi Dan

How are you? Thx for the update re the hearing. Very good news even if not RFA compliant.

As to posting my comment, pls do not. I have not yet completed the review of the proposed regs to see what the scope of the comment is and am presently pre-occupied with other things. I will definitely draft and post a comment asap.

Thx Monte


Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069
Herzelia Pituach 46733 Israel

Tel: +972-9-9603799
Fax: +972-9-9603798
Mob: +972-544-232-683
email: ms@silvercolaw.com

www.linkedin.com/in/americantaxsolutions

PR 0134



## Monte @ Silver Law

| | |
|---|---|
| **From:** | McCall Daniel M <Daniel.M.McCall@irscounsel.treas.gov> |
| **Sent:** | יום שני 10 ספטמבר 2018 17:50  *Sept 10* |
| **To:** | Monte @ Silver Law |
| **Subject:** | RE: 965 reg hearing + comment |

Monte,

Feel free to try me between 12p and 5:30p ET this afternoon if that works for you.

Dan
202-317-4976

**From:** Monte @ Silver Law [mailto:ms@silvercolaw.com]
**Sent:** Sunday, September 09, 2018 2:30 AM
**To:** McCall Daniel M
**Subject:** RE: 965 reg hearing + comment

Hi Daniel

It has dawned on me over the weekend that even if one million Americans submit a comment stating that their businesses will go bankrupt as a result of the proposed rules, Secretary Mnuchin has no choice but to certify that the rules do not have a significant impact on a substantial number of small businesses.  Why?  Treasury failed to issue an Initial Regulatory Flexibility Analysis so it is stuck with the certification route.

So despite having easily spent over 100 hours on trying to understand the proposed rules and draft a comment (which is pretty much complete), I ask myself what is the point in submitting it?  And how do I know that anything I or anyone else comments on will not be used against the Movement?  Why not just trash the comment, not ask for a hearing (which is costly to attend time and money wise), wait out the comment period, and if Treasury does not give us an exemption, then file a simple RFA lawsuit?

I am happy to submit the comment if it helps the Movement, but to address my concerns, I would like to speak to you this week if you have time.  I give you my word that anything we discuss will not be referenced beyond the call.

Monte


Monte Silver, Adv. (Israel & CA)
Silver & Co. Attorneys at Law
Hahoshlim 6, Building C, 7th Floor, P.O.Box 12069
Herzelia Pituach 46733  Israel

Tel:  +972-9-9603799
Fax:  +972-9-9603798
Mob: +972-544-232-683
email:  ms@silvercolaw.com


www.linkedin.com/in/americantaxsolutions


Updates on US tax law and tax advocacy

1

PR 0135

# Small sample of emails from small business owners to Defendants



PR  0136

# Additional sample of emails from small business owners to Defendants



PR  0137

Repatriation/GILTI Tax Relief for American businesses (owners abroad)

**Barton Friedland** <bjf@acm.org>                                                      Fri, May 4, 2018, 12:49 PM     

to william.m.paul, lafayettechip.harter, david.kautter, arlene.preston, Leni.c.perkins, Barbara.angus, aaron.junge, Kara.getz, Notice.comments, me, Tiffany_Smith, mark_prater ▾

My name is Barton Friedland. I am an American living in London, United Kingdom and I vote in California.

As you may be aware, the Repatriation Tax and GILTI Tax regime have trulycreated chaos in the lives of people like me – American professionals andbusiness owners living abroad. Unlike corporate giants such as Google and Applewho are hoarding billions of profits in overseas subsidiaries, I am probablyjust like you: an ordinary, law-abiding person seeking to live my life andraise a family in the community I call home.

For years I have quietly suffered, being collateral damage in tax battlesbetween the U.S. Government on the one hand and wealthy U.S. based companiesand persons that may have been abusing the tax system on the other. But theRepatriation Tax and GILTI regimes have forced me to speak out, explain mysituation and demand relief. Not only am I being viewed in the same way as alarge, aggressively tax-structured multinational corporation, but I am beingtreated much worse. First, I cannot access the tax credits and deductions thatthese companies are entitled to, thus I am unable to minimize or avoid thesetaxes like they do. Second, I am now obligated to deal with exceedingly complextax and filing requirements which neither I nor my tax adviser can understandbecause of incomplete IRS guidance. These new rules have come completely out ofthe blue and I am terrified to think of what they might cost me.

A common sense solution is at hand. Americans overseas with interests inforeign corporations should be exempt from the Repatriation Tax and from theGILTI regime for any given year so long as: (1) we meet the conditions requiredfor exemption under IRC Section 911, and (2) we are individual U.S.Shareholders. This solution both achieves the U.S. government's goal ofcapturing corporate tax it has been long-denied, and recognizes that theprofits our businesses generate were always meant to remain in the place wherewe have made our lives.

We understand that Congress will struggle to enact a remedy as soon as werequire. Therefore, we urge the Treasury and IRS to take the following actions:

1. Issue an immediate notice stating that for Americans abroad, the firstpayment under IRC Section 965 is due the earlier of October 15, 2018, orthe issuance of further guidance.
2. Issue a further notice in line with our proposal.

There is precedence to the Treasury/IRS taking both such actions:

• In issuing regulation 1.6038D-2, the Treasury added both the IRC Section 911and dollar conditions that did not appear in the law in order to clarify theimplementation of FATCA.
• Congress passed IRC Section 2801 (dealing with the taxation of Americansgiving up citizenship) in 2008. However, realizing that problems existed withthe law, in October 2009 the Treasury/IRS froze its implementation pendingfurther evaluation. To date the Treasury/IRS have yet to implement thelaw.

The Repatriation Tax and GILTI Tax regime are far more damaging to me thaneither of the above examples. They drastically (and unintentionally) hurt meand millions of law abiding Americans overseas just like me. And unlikethe Section 2801 provision, I am not someone who is giving up my citizenship toavoid estate and gift tax. I am just an ordinary person who is being seriouslyharmed by an accidental policy flaw.

Thank you for your attention and I sincerely hope that the Treasury/IRS canaddress this matter until such time as Congress acts.

Respectfully,

PR  0138