# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SILVER, *et al.*, )<br>)<br>    Plaintiffs, )<br>)<br>    v. )<br>)<br>INTERNAL REVENUE SERVICE, *et al.*, )<br>)<br>    Defendants. )<br>_____ ) | No. 1:19-cv-247-APM |

## REPLY IN SUPPORT OF DEFENDANTS' CROSS-MOTION
## FOR SUMMARY JUDGMENT

INTRODUCTION………………………………………………………………………...1

    A.     Plaintiffs' discourse on section 962 does not alter the conclusion that they owe no transition tax and the section 965 regulations do not impose any future reporting obligation on them…………………………………………………………………...2

    B.     Plaintiffs do not meet their burden to show that the Court has jurisdiction to entertain their RFA and PRA claims…………………………………………...4

    C.     Plaintiffs' conclusory rhetoric does not negate the deference owed to Treasury, and Plaintiffs still point to no "foundational error" that undermines the agency's analysis under the Regulatory Flexibility Act…………………………….…10

    D.     This Court need not and should not wait until any "remedies stage" to reach the inevitable conclusion that the Anti-Injunction Act bars Plaintiffs' request to enjoin the regulations…………………………………………………………………15

    E.     If the Court finds that it has jurisdiction to entertain Plaintiffs' PRA and RFA claims and that Treasury committed some procedural error under either of those statutes, then the Court should limit its remedy to remanding to the agency to address the deficiency that is found……………………………………………...15

CONCLUSION………………………………………………………………………...19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aeronautical Repair Station Ass'n, Inc. v. F.A.A.,*
   201 F.3d 608 (5th Cir.  2000) ................................................17

*Alenco Commc'n, Inc, v. F.C.C.,*
   494 F.3d 161 (D.C. Cir. 2007) ..............................................11

*Arizona Cattle Growers' Ass'n v. Salazar,*
   606 F.3d 1160 (9th Cir. 2010) ..............................................12

*Bennett v. Spear,*
   520 U.S. 154 (1997)...............................................................10

*Cape Hatteras Access Preservation Alliance v. U.S. Dep't of Interior,*
   344 F.Supp.2d 108 (D.D.C. 2004) ........................................12

*Carpenter, Chartered v. Secretary of Veterans Affairs,*
   343 F.3d 1347 (Fed. Cir. 2003)..............................................13

*Chamber of Commerce of U.S. v. Napolitano,*
   648 F. Supp. 2d 726 (D. Md. 2009) .......................................17

*Colorado v. U.S. Fish and Wildlife Service,*
   362 F.Supp.3d 951 (D. Colo. 2018)........................................13

*Harlan Land Co. v. U.S. Dep't of Agr.,*
   186 F. Supp. 2d 1076 (E.D. Cal. 2001)............................17, 18

*Owner-Operator Indep. Drivers Ass'n, Inc. v. United States Dep't of Transportation,*
   879 F.3d 339 (D.C. Cir. 2018) .................................................3

*S. Offshore Fishing Ass'n v. Daley,*
   995 F. Supp. 1411 (M.D. Fla. 1998)......................................16

*Swanson Grp. Mfg. LLC v. Jewell,*
   790 F.3d 235 (D.C. Cir. 2015)..................................................3

*U.S. Cellular Corp. v. F.C.C.,*
   254 F.3d 78 (D.D.C. 2001) ....................................................11

**Statutes**

5 U.S.C. § 601(3) ........................................................................5

5 U.S.C. § 611(a)(4)................................................................................................15

5 U.S.C. § 704......................................................................................................10

15 U.S.C. § 632(a) ..........................................................................................5, 6, 9

26 U.S.C. § 962......................................................................................................4

26 U.S.C. §§ 959......................................................................................................4

26 U.S.C. §§ 965(h)(5), (i)(8)(B), (m)(2)(A), and (n)(3)........................................16

44 U.S.C. § 3507(d)..............................................................................................10

44 U.S.C. § 3507(d)(1) ........................................................................................12

**Other Authorities**

Section 212 of the Contract with America Advancement Act of 1996, Pub. L.
    104–121.................................................................................................18, 19

13 C.F.R. § 121.105......................................................................................4, 5, 6, 8, 9

## INTRODUCTION

Plaintiffs' response fails to adequately address any of the threshold problems with their suit that Defendants present in their opening brief.

First, Plaintiffs lack standing to seek an injunction of the section 965 regulations.  They are not suffering imminent or ongoing harm, because they owe no transition tax and thus face no ongoing "compliance burden."  Plaintiffs try to obscure this straightforward conclusion with an explanation of another law, section 962, that is outside the scope of their challenge to the section 965 regulations.  This is a red herring.

Second, Silver's tax filings demonstrate that neither Plaintiff qualifies as a "small entity" that can bring suit under the Regulatory Flexibility Act (because, for example Limited has no U.S. place of business and pays no U.S. taxes) though Plaintiffs strain to now walk back the statements in those filings.  Relatedly, Plaintiffs argue against importing standards from the Small Business Act, but then cite to the same standards for the same point (what counts as a "small entity") elsewhere in their filing.

Third, Plaintiffs concede they do not make a claim under the Paperwork Reduction Act ("PRA") because such claims are not subject to judicial review, but they provide no support for their extraordinary fallback position that they can obtain PRA-based relief, anyway.

Moving to the merits, Plaintiffs also fail to demonstrate any violation of the RFA or the PRA, even if the Court were to press past the jurisdictional barriers to reach the substance of those claims.  As to the RFA claim, Defendants have explained why Treasury's certification concerning economic impact relies on reasonable assumptions, contains no "foundational error," and is owed deference.  Plaintiffs respond with simple say-so, asserting (in the face of contrary evidence) that the certification was without "an iota" of support, that the certification's

1

foundational error was simply that it *is* arbitrary, and that no deference is owed because the certification was arbitrary.  This unsupported and circular argument does not work.  As to the PRA claim, Treasury complied with the PRA through submitting the proposed regulations to the Office of Management and Budget.

And if lack of jurisdiction and failure on the merits were not enough, there are still other problems with the injunctive relief that Plaintiffs seek.  Defendants point them out, and Plaintiffs prefer to defer discussion.  In any event, the Court should never reach that stage.  For the reasons below, as well as those set forth in Defendants' opening brief, the Court should dismiss this suit or else rule in favor of the Defendants.

### A.   Plaintiffs' discourse on section 962 does not alter the conclusion that they owe no transition tax and the section 965 regulations do not impose any future reporting obligation on them.

As the Defendants explained in their opening brief, Plaintiffs must produce concrete evidence of ongoing or imminent injury — here, the alleged costs of complying with the transition tax regulations — to support their request to enjoin the regulations.  *See* dkt. no. 57-1 (hereinafter "Opening Br.") at 11-13.  But the only compliance costs imposed on Plaintiffs by the transition tax regulations lie, if anywhere, in the past.[1]  *Id.*  Because Plaintiffs report owing no transition tax, they face no ongoing or future compliance costs under the transition tax regulations, and so they lack standing to seek injunctive relief.

Plaintiffs try to rebut this straightforward conclusion in a number of ways, all unsuccessful.  First, they assert incorrectly that, per this Court's earlier ruling, Plaintiffs need not

---

[1] Contrary to what Plaintiffs claim, *see* dkt. no. 61 at 3, Defendants *also* dispute whether Silver incurred significant compliance costs from section 965 in the *past*.  Defendants pointed the Court to documents that expressly contradict Silver's assertions about what caused him to amend his 2017 return twice.  *See* Opening Br. at 12 fn. 4.  But in any event, the relevant "compliance costs" are those that are ongoing or in the future, for which there is no evidence here.

present an ongoing or future injury to establish standing to seek injunctive relief.  They provide

no citation to the Court's ruling on this point.  That is because this Court never suggested such a

thing, and would have run squarely into D.C. Circuit precedent if it had.  *See, e.g. Swanson Grp.*

*Mfg. LLC v. Jewell*, 790 F.3d 235, 239–40 (D.C. Cir. 2015) (to seek injunctive relief, plaintiff at

summary judgment stage must demonstrate imminent future injury); *Owner-Operator Indep.*

*Drivers Ass'n, Inc. v. United States Dep't of Transportation*, 879 F.3d 339, 346 (D.C. Cir. 2018)

(same).

Second, Plaintiffs argue that the transition tax regulations still impose ongoing

compliance costs on them, even though they do not report owing the one-time transition tax.  To

suggest an ongoing burden, Plaintiffs enter into a lengthy explanation of a "section 962 election"

that "could be used in the context of the Transition Tax" by individual U.S. shareholders to

"automatically offset their Transition Tax liability."  Dkt. no. 61 at 4-5.  It is unclear from their

2017 returns whether Plaintiffs used the section 962 election to access foreign tax credits to

reduce to zero what would have otherwise been a transition tax liability.  *See* dkt. no. 57-3

("Exhibits") at 46, at line 5 (reporting no amount as owed).  But assume this was the case, and it

still makes no difference because ongoing or future compliance with section 962 has nothing to

do with the transition tax regulations issued under section 965 that Plaintiffs challenge or any

compliance burden Silver faces under *those* regulations.

Even if a taxpayer chooses to "offset" a transition tax liability through foreign tax credits

by making a section 962 election, and as a result must comply with "a wide variety of the most

complex tax laws in the [Internal Revenue Code]," that "compliance burden" is not attributable

to the *transition tax regulations*.  The full suite of section 962 rules, and the "wide variety" of

complex international tax laws within the Internal Revenue Code, are not the subject of the

3

transition tax regulations at issue.[2]  And Plaintiffs cannot now turn this suit into a wide-ranging request for simplification of *all* foreign-income-related tax laws that could be implicated in calculating a taxpayer's transition tax liability.

In sum, whatever compliance burden section 962 imposes is not the result of the section 965 regulations, and does not alter the fact that Plaintiffs face no ongoing compliance burden from those regulations.  Thus, Plaintiffs lack standing.

**B.      Plaintiffs do not meet their burden to show that the Court has jurisdiction to entertain their RFA and PRA claims.**

Plaintiffs do not meet their burden to show that the Court has jurisdiction to entertain their RFA and PRA claims.  First, 13 C.F.R. § 121.105, entitled "How does the SBA define 'business concerns or concern,'" applies to determine whether either Plaintiff qualifies as a "small business" allowed to bring a suit for judicial review under the RFA.  Second, Plaintiffs have not established facts sufficient to establish that they meet those qualifications and, as a result, to demonstrate that the Court has jurisdiction to hear their RFA claims.  Plaintiff Silver

---

[2] Silver also leaves unexplained the ongoing burdens he faces because of his section 962 election.  Defendants assume that he is referring to his obligation under 26 U.S.C. §§ 959 and 962 to track earnings of his CFC that have been subject to the transition tax and the section 962 election, as well as earnings not subject to the transition tax, so that when the CFC's earnings are distributed to him in the future, those earnings that were subject to the transition tax for which a section 962 election were made are distributed in the correct order and offset by any taxes previously paid on those earnings.  Here, because Silver paid *zero* in transition tax on the accumulated post-1986 earnings and profits of the CFC he controls, pursuant to section 962(d), there *is* no offset to apply when those future earnings are distributed and included in his income. He still has to track the earnings subject to the transition tax and the section 962 election separately (unless he has no other previously taxed earnings and profits from prior years or in future years) because distribution rules under section 959 direct that the transition tax earnings are considered to come out "first" when a taxpayer receives a distribution of current or accumulated earnings and profits of a CFC.  However, these distribution "layering" rules and any tracking requirements that stem from them are imposed by 26 U.S.C. § 959 and the regulations and guidance thereunder as well as the section 962 regulations, *not* the transition tax regulations at issue.

also does not qualify as a "small business" under the terms of the relevant *statute*.  Finally, Plaintiffs give no explanation for their extraordinary position that they are entitled to relief under the PRA when they admit they state no claim under it.

First, 13 C.F.R. § 121.105 applies here.  The RFA provides that "the term 'small business' has the same meaning as the term 'small business concern' under section 3 of the Small Business Act."  5 U.S.C. § 601(3).  In turn, section 3 of the Small Business Act clarifies that such a concern is "one which is independently owned and operated and which is not dominant in its field of operation."  15 U.S.C. § 632(a)(1).  That statute further provides that the Small Business Administration "may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of this chapter or any other Act."  15 U.S.C. § 632(a)(2).

Section 121.105 of the SBA regulations, entitled "How does the SBA define 'business concerns or concern,'" gives relevant details and standards for determining whether an entity will qualify as a small business concern.  Plaintiffs point to prefatory language that they allege precludes application of the regulation in the context of determining jurisdiction under the RFA.  But even though the regulation speaks in terms of a business concern eligible for assistance from the SBA, the *statute* that authorizes the SBA regulations provides that the SBA "may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for purposes of this chapter *or any other Act*."  15 U.S.C. § 632(a)(2)(A) (emphasis added).  As described above, the RFA specifically adopts SBA standards for determining what qualifies as a "small business," and the RFA is an "other Act" as contemplated in 15 U.S.C. § 632(a)(2)(A).

Although Plaintiffs point to the subheading to section 632(a)(2), which refers to "size standards," the text of the statute authorizes the creation of "detailed definitions or standards" to determine whether a business qualifies as a "small business concern."  15 U.S.C. § 632(a)(2)(A). Plaintiffs complain that the regulation in question cannot be considered sufficiently "detailed" to meet the statute's requirements because the relevant portion "is one sentence long," dkt. no. 61 at 11, but length does not necessarily correlate to detail.  The standards announced in the relevant regulation may be succinct, but they provide the necessary detail:  to qualify as a "small business concern" under the applicable SBA regulation, the business entity must (1) be organized for profit; (2) have a place of business located in the United States; **and** (3) operate primarily within the United States **or** make a significant contribution to the U.S. economy through payment of taxes or use of American products, materials or labor.  *See* 13 C.F.R. § 121.105(a).

Last, but not least, Plaintiffs undercut their own argument that section 121.105 does not apply.  In their amended complaint, Plaintiffs include allegations (ultimately not borne out by the facts) to try to qualify under the factors set out in section 121.105.  *See* dkt. no. 5 at ¶¶ 3-4.  On top of that, Plaintiffs cite 13 C.F.R. § 121.105(b) in Exhibit D of their response brief (dkt. no. 61-5) to argue as to what constitute "small entities" under the RFA.  They cannot *also* argue with a straight face the very opposite:  that the factors in 13 C.F.R. § 121.105(a) do not matter in defining a "small entity."

Section 121.105 applies here, but Plaintiffs have not established that either Silver Limited or Silver as an individual qualifies as a "small business concern" under that rule.

### Silver Limited

Plaintiffs have failed to establish that Limited has a place of business in the United States. On an official tax form — the Form 5471— that specifically asked for Limited's place of

business in the United States, if any, Silver listed no U.S. address.  Dkt. no. 57-3 at 3.  Plaintiffs attempt to blame the supposedly "very complex" form, dkt. no. 61 at 18.  This defies belief.  The form in plain, direct language makes a straightforward request for the "[n]ame, address, and identifying number of branch office or agent [of the foreign corporation] (*if any*) in the United States."  Dkt. no. 57-3 at 3 (emphasis added).

Now that Limited needs to try to establish a place of business in the United States to be able to maintain a claim for judicial review under the RFA, Plaintiffs point to an alleged "cooperation agreement"[3] with the California-based Wasserman Law Group, dkt. no. 61 at 14, and business cards that include a U.S. telephone number for Silver at the Wasserman Law Group, along with an attorney profile for Silver under a listing of Wasserman Law Group attorneys, dkt. no. 61-3 at 1, 3.  Plaintiffs do not show how Monte Silver's personal work with the Wasserman Law Group gives Limited, Silver's own independent law firm, a place of business in the United States.  And while Silver claims to visit the United States extensively to conduct Limited's business, he reported on Form 2555, Foreign Earned Income, which was filed with his 2017 income tax return, that he spent no time in the United States that year and earned no income in the U.S. on business that year, either.  Ex. 1, Form 2555 at line 14.  Plaintiffs can hardly claim a U.S. place of business for Limited given these facts.  And Plaintiffs do not dispute that Limited is not registered with the California Secretary of State to conduct business there.

Even assuming Plaintiffs could meet their burden to show a U.S. place of business for Limited based on scant allegations that fly in the face of their contrary reports on official U.S. tax forms, Limited still does not qualify as a small business because Plaintiffs have not shown that Limited either operates primarily within the United States, or makes a significant

---

[3] But Plaintiffs do not include a copy of the alleged agreement nor explain exactly what it entails.

7

contribution to the U.S. economy through payment of taxes or use of American products, materials or labor.  Indeed, the above facts from Silver's Form 2555 (no time in the U.S., no income earned in the U.S.) preclude either finding.  And even though Plaintiffs now point to an EIN for Limited (although they listed only "FOREIGNUS" when asked to supply that information on Silver's Form 5471 for 2017, dkt. no. 57-3 at 3), they do not show any U.S. income tax returns filed by Limited or any U.S. income tax paid by Limited.  Indeed, on the Form 5471 that Silver prepared and filed with his individual income tax return for 2017, Silver revealed that Limited paid no U.S. tax.  Dkt. no. 57-3 at 3, 6. [4]

The portion of 13 C.F.R. § 121.105 that Plaintiffs cite also does not support their claim that Limited, a completely foreign business, can qualify as a small business under the SBA (and thus the RFA).  Indeed, the portion cited by Plaintiffs shows the opposite.  It provides that a joint venture *cannot* qualify as a business concern under the SBA if there is "more than 49 percent

---

[4] On the issue of the EIN, Plaintiffs imply that the EIN relates to the business of Silver's law firm. Dkt. no. 61 at 17.  But an examination of the document that Plaintiffs attach as Exhibit C to their response brief shows that it also refers to "Yazam IP Com."  It appears that this EIN is not for the law firm per se, but instead is for, at best, participation in a company called "Yazam IP Com".  From 2013 to 2016, Plaintiff Silver operated a website along with several non-lawyers called YAZAMIP.Com., which described itself as a "closely-knit network of world-class entities specializing in patent monetization."  *See* Second Sergi Declaration (attached to this reply brief) at ¶ 2.  It appears, however, that YAZAMIP.com was defunct long before the issuance of the proposed regulations in this case.  *See id.* at ¶ 3.  Further indication that this EIN is for an entity other than Silver's current law practice is that Silver lists the EIN for Monte Silver, LTD as "FOREIGNUS" on his Form 5471, dkt. no. 57-3 at 3.  As a tax practitioner, Silver would understand that, if the EIN truly referred to his law practice, he should put the proper EIN on line 1.b(1) of Form 5471 instead of choosing to enter "FOREIGNUS," which is a common short hand for a foreign U.S. corporation without an EIN.  *See, e.g.,* See, e.g., IRS Publication 4162, *Modernized e-File (MeF) Test Package* (Rev. 12-2012), https://www.irs.gov/pub/irs-pdf/p4162.pdf (https://perma.cc/W7SM-CJCW) at 140 (Test Form 5471).  More importantly, even if Plaintiffs were correct and the EIN for Limited is XX-XXX6635, this would not advance their argument because the records of the IRS do not show any business tax return filing or the payment of any tax under that EIN.  Second Sergi Decl. at ¶ 4.  And, as already noted, Silver reported on Form 5471 no U.S. income tax paid by Limited.  Dkt. 57-3 at 6.

participation by foreign business entities."  13 C.F.R. § 121.105(b).  Limited is not a joint

venture with minority foreign participation.  It is a 100 percent Israeli-incorporated business.

### Silver individually

Silver, as an individual, does not qualify as a "small business concern" under the

applicable SBA regulation because he is not "a business entity organized for profit," 13 C.F.R.

§ 121.105(a).  But even if that regulation did not apply, Silver does not qualify as a "small

business concern" under the governing *statute* because he is not a small business concern that "is

independently owned and operated," *see* 15 U.S.C. § 632(a)(1).  Silver, as an individual, is not a

business.  Although a sole proprietorship could be a business, Silver does not allege that he is a

sole proprietorship.  Indeed, he acknowledges that his law practice is a corporation organized

under the laws of Israel.  He attempts to sidestep that problem by pointing to his personal

investments in U.S. real estate, to no avail.  Even assuming Silver's personal real estate

investments could qualify him as a small business, Silver would have no standing as a *U.S.* real

estate business – small or otherwise – to challenge regulations that govern the inclusion of

income from *foreign* businesses in a U.S. shareholder's overall income.  Also, Silver *individually*

is the sole shareholder in his foreign law practice.  He never alleges that his "real estate business"

is a shareholder in Limited.  Because Silver's alleged U.S. real estate "business" neither

generates nor earns income that is subject to section 965, the challenged regulation — and

whether its RFA certification is proper — can have no impact on it.  Silver is mixing apples and

oranges and thus fails to establish the Court has jurisdiction to consider his RFA claim.

Finally, as for Plaintiffs' claims for relief under the PRA, Plaintiffs give no explanation

for their extraordinary position that they are entitled to relief under that statute when they admit

they state no claim under it, dkt. no. 61 at 18.  And Plaintiffs cannot skirt the PRA's

jurisdictional bar just because they have not named the Director of the Office of Management and Budget ("OMB") as a defendant in this action.  An agency's compliance with the PRA culminates in the OMB approving the collection of information request by conferring an OMB number that is published with the information request.  So it is no surprise that a statute barring judicial review speaks in terms of the culminating event under the PRA, that is, the OMB's decision to approve (or disapprove) an agency's collection of information request.  *See* 44 U.S.C. § 3507(d) ("The decision by the Director to approve or not act upon a collection of information contained in an agency rule shall not be subject to judicial review.").  To the extent that Plaintiffs purport to challenge something short of the final determination approving the information collection request contained in the challenged regulation, the Administrative Procedure Act bars challenges to agency action that are not final.  *See* 5 U.S.C. § 704; *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

C.  **Plaintiffs' conclusory rhetoric does not negate the deference owed to Treasury, and Plaintiffs still point to no "foundational error" that undermines the agency's analysis under the Regulatory Flexibility Act.**

As Defendants have explained, the Court must take a "highly deferential" view of the agency's analysis leading to the certification under the RFA that the regulations would not have a "significant impact on a substantial number of small entities."  Opening Br. at 22, 23.

Plaintiffs argue that the agency is owed no deference because its certification was "arbitrary and capricious," "lacked substantial evidence," and "entirely failed" to consider relevant factors.  *See* dkt. no. 61 at 2.  But these are just recitations of legal conclusions, begging the very question to be answered under the "highly deferential" review.  Unsurprisingly, Plaintiffs provide no case law or other authority for the notion that merely asserting that an

agency has violated the RFA thereby strips the agency of the deference owed in determining *if* there has been a violation.

Plaintiffs also assert that "there is not a single document or iota of evidence in the administrative record" to support the agency's certification. Not true. As Defendants have already demonstrated, Treasury's certification was based on several facts, including estimates of the number of RFA-covered "small entities" potentially subject to the regulations and estimated burdens on those entities (both with and without the "economic impact" of owing a transition tax). *See* Opening Br. at 6, 23, 25; ADMIN_03171, 3172. This shows that Treasury made a reasonable, good faith effort to carry out the RFA's mandate, which is all that is needed. *See U.S. Cellular Corp. v. FCC*, 254 F.3d 78, 88 (D.D.C. 2001) (quoting *Alenco Commc'n, Inc. v. FCC*, 201 F. 3d 608, 625 (5th Cir. 2000)). Plaintiffs question some of these conclusions, and characterize one agency estimate as "self-contradicting guesswork,"[5] but point to nothing that changes the high degree of deference owed the agency action.

Plaintiffs also repeatedly fault the agency for failing to (somehow) eliminate the threshold compliance costs associated with determining whether one has a net transition tax liability, costs that are incurred even if a taxpayer like Silver eventually concludes he does not owe any transition tax. However, the agency has already considered this very complaint and concluded that this threshold burden inheres in the statute, should not be attributed to the

---

[5] Plaintiffs refer the Court to Exhibit D to their reply brief for a more granular explanation of what they dispute within the RFA certification. *See* Plaintiffs' Exhibit D at dkt. no. 61. Accordingly, Defendants annotated this exhibit and provide a point-by-point rebuttal to Plaintiffs' claims. *See* accompanying "Response to Plaintiffs' Exhibit D," attached as Exhibit 2 to this reply memorandum. Without going into detail here, it suffices to say that Plaintiffs' assertions of agency error dissolve on inspection.

11

regulations, and is not part of the paperwork burden to be considered in a PRA analysis[6] nor part

of the "economic impact" to be considered in an RFA analysis.  *See* ADMIN _03169, 3172; *see*

*also* Ex. 2 (Defs.' Response to Plaintiffs' Ex. D).  In doing so, Treasury applied a "baseline"

approach to gauge the burden of the regulation, where, as Treasury explained "[t]he baseline

constitutes a world in which no regulations pertaining to section 965 had been promulgated,"

though the transition tax statute is still in force.  ADMIN _03167.

Plaintiffs might disagree, but point to nothing to challenge Treasury's disaggregation of

the burden from the statute versus the burden from the regulations.  In any event, case law

establishes that Treasury's "baseline" approach is the correct one.  *See Cape Hatteras Access*

*Preservation Alliance v. U.S. Dep't of Interior*, 344 F.Supp.2d 108, 127-130 (D.D.C. 2004) (in

realm of environmental regulation, determining "true costs" imposed by a particular agency

action requires a "but for" comparison to the "baseline" existing without the regulation);

*Arizona Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160, 1172-73 (9th Cir. 2010) (adopting

"baseline" approach and criticizing alternative approach to gauge the costs of agency action that

would factor in economic burdens "already imposed by," or attributable to, other governmental

---

[6] On the merits of the PRA, Plaintiffs' bald claim that the administrative record does not contain
an "iota of evidence" of PRA compliance is absurd.  As Treasury explained in the preambles to
both the notice of proposed rulemaking and the final regulation, the regulation required the
collection of information regarding certain limited topics, namely elections that a taxpayer who
owed transition tax might choose to make, certain transfer agreements, and positions that a
taxpayer might take with respect to the regulation's anti-abuse rules.  ADMIN_03554, _03169.
As required by the PRA, *see* 44 U.S.C. § 3507(d)(1), Treasury forwarded its notice of proposed
rulemaking, ADMIN_03554-03615, to OMB, along with its required submission form,
ADMIN_03544-_03552.  In response, OMB issued a control number for the information
collection request, ADMIN_03169, _03133, thus approving the request.  Plaintiffs fault the
location in which Treasury addressed the PRA requirements, complaining that they only appear
in the notice of proposed rulemaking and in the final regulation.  But there is no requirement
about where the discussion of the PRA requirements must be placed.

action); *Colorado v. U.S. Fish and Wildlife Service*, 362 F.Supp.3d 951, 988 (D. Colo. 2018) (adopting the baseline approach, also called the "incremental impacts" approach, and calling the Tenth Circuit's earlier rejection of it "outdated");  *see also Carpenter, Chartered v. Secretary of Veterans Affairs*, 343 F.3d 1347, 1357 (Fed. Cir. 2003) (concluding no RFA analysis was needed "because the effect of the [regulation] would be to prevent fee arrangements that were already unlawful under current statutory standards," and thus the regulation "would not have a substantial effect on the legitimate activities of any small entities").[7]

The remainder of Plaintiffs' response also fails to call into question the adequacy of the agency's RFA certification.

Defendants, arguing in support of the certification, point the Court to other RFA certifications similar in scope, depth or support that courts have approved.  *See* Opening Br. at 27.  Plaintiffs make no response to this showing.

---

[7] Plaintiffs' apparent — though never squarely articulated — disagreement with the "baseline approach" likely derives from their mistaken notion that Treasury could have, but did not, exempt small business owners from the transition tax altogether.  In the course of issuing the regulations, Treasury already considered this very proposal and rejected it for being inconsistent with the statute.  ADMIN _03165.

Plaintiffs do not argue for any contrary interpretation of the statute.  However, Exhibit A to their response brief, *see* dkt. no. 61, appears to be an oblique challenge to Treasury's assertion.  The exhibit is not mentioned in the brief but is cited in the declaration of Monte Silver.  To the extent that Exhibit A is proffered to show that Treasury could have exempted small business owners from the tax, it fails.  The "commodities exception" mentioned in Exhibit A simply affects the *rate* at which certain taxpayers are taxed. *See* ADMIN _03138 (granting "narrow exception" from the definition of "cash position" for specified foreign corporations that use, but do not trade in, commodities).  And this "commodities exception" is in no way limited to "big oil" companies, as Plaintiffs insinuate.  For example, a t-shirt company that uses cotton in its manufacturing could benefit from this rule.  More importantly, this "exception" does not come close to what Silver asked Treasury for, that is, full exemption from section 965 for a broad swath of potential taxpayers, that is, all "small businesses."

Defendants then explain that, given the highly deferential review, courts have generally found RFA certifications deficient only when the record discloses a "foundational error" committed by the agency.  *Id.* at 28-29.  Rather than pointing to any concrete "foundational error" here, Plaintiffs simply repeat their conclusory assertions that the "foundational error" is that the certifications were "arbitrary and capricious" and "directly contradicted" by a "vast amount of evidence in the administrative record" which they fail to identify.  Dkt. no. 61 at 17.

Plaintiffs' begging of the question does not come close to identifying a "foundational error" or some other evidence that undercuts the facts or reasoning of the agency.  Thus, if the Court reaches the question, it should find that the agency made a "reasonable, good faith effort to comply" with the RFA, which is all that is needed for the agency to prevail on this claim.  *See* Opening Br. at 23.[8]

> **D.**    **This Court need not and should not wait until any "remedies stage" to reach the inevitable conclusion that the Anti-Injunction Act bars Plaintiffs' request to enjoin the regulations.**

The Defendants have explained that enjoining the regulations — as Plaintiffs repeatedly request (*see* dkt. no. 61 at 19 "deferring enforcement of the regulations . . . is in the public interest") — would clearly contravene the Anti-Injunction Act, because the regulations guide the self-reporting of tax, the activity that is the foundation of tax "assessment" in our system of

---

[8] As Defendants point out, the adequacy of Treasury's RFA certification is further supported by the fact that the proposed regulations and the RFA certification were submitted to the Small Business Administration (the "RFA watch-dog") for "comment on its impact on small business," and the SBA had no public comments expressing concern.  Opening Br. at 28 n. 14.  Plaintiffs question whether the submission to the SBA ever truly took place, citing to an email from the SBA returning a "no records" in response to a Freedom of Information Act request.  Defendants cannot speak to the SBA's record-keeping or protocol in responding to FOIA requests or whether the request as formulated would capture Treasury's submission to the SBA, but the fact of submission is established by the Treasury's statements in both the proposed and final regulations. ADMIN_03581, ADMIN_03172.

taxation.  Opening Br. at 29-31.  In response, the Plaintiffs point to the Court's pronouncement about determining if any remedies "run afoul of the Anti-Injunction Act" only if Plaintiffs first prevail on the merits.  Dkt. no. 61 at 17 (citing dkt. no. 29 at 6 n. 1).  There is no need to delay the inevitable, though, and Defendants have explained why even waiting until a decision on the merits *already* "runs afoul" of the Act and is a proscribed exercise of "hypothetical jurisdiction." Opening Br. at 29-31.  Plaintiffs offer no opposition on this point.

> **E.      If the Court finds that it has jurisdiction to entertain Plaintiffs' PRA and RFA claims and that Treasury committed some procedural error under either of those statutes, then the Court should limit its remedy to remanding to the agency to address the deficiency that is found.**

Remand alone would give Plaintiffs a sufficient remedy — in the event the Court determines that a remedy is appropriate in the first place — and Plaintiffs offer no compelling argument otherwise.

Contrary to Plaintiffs' suggestion that deferring enforcement of the regulation against small entities is required to correct a procedural violation under the RFA, *see* dkt. no. 61 at 22, the language of the governing statute shows that a court is not compelled to extend that remedy. "In granting any relief in an action under" section 611 for judicial review of an agency's RFA compliance, Congress has directed that "the court shall order the agency to take *corrective action* consistent with this chapter and chapter 7, *including, but not limited to*—(A) remanding the rule to the agency, and (B) deferring the enforcement of the rule against small entities *unless the court finds that continued enforcement of the rule is in the public interest*."  5 U.S.C. § 611(a)(4) (emphases added).  Under those terms, deferring enforcement of the rule is *not* available when "continued enforcement of the rule is in the public interest."  5 U.S.C. § 611(a)(4)(B).  That is the situation here.

15

If application of the regulations were deferred as to any taxpayers, those taxpayers would face uncertainty in meeting their obligations under Internal Revenue Code section 965.  Absent the regulations, taxpayers' obligation to pay the transition tax would still exist, but they would have to proceed without the guidance and assistance of the regulations.  As described in the Defendants Opening Brief (at 34), the regulations at issue clarify how to calculate various amounts used in determining a taxpayer's tax liability under Internal Revenue Code section 965.  The regulations also establish the manner for making various elections under section 965, which impact the timing and/or method of calculating and/or paying the tax.  Because the statute allows the taxpayer to make certain favorable elections in the manner prescribed by the Secretary, the regulations establish the manner for making each election.  26 U.S.C. §§ 965(h)(5), (i)(8)(B), (m)(2)(A), and (n)(3); ADMIN_03158 to _03164 and _03200 to _03210.  Defendants have already described many of the deleterious impacts of deferring enforcement of the regulations, both on taxpayers and on tax administration.  *See* Opening Br. at 42-44.

Plaintiffs have neither challenged those impacts nor offered any considerations to try to outweigh them.  Instead, they state that they do not understand the regulations.  Plaintiffs' professed lack of understanding of the regulations is no reason to deny other taxpayers or the agency the opportunity to rely on them, even if the Court were to find a procedural violation.  Indeed, courts have recognized that "[t]he RFA affords considerable discretion in formulating an appropriate remedy for [an agency's] failure to comply with the statute."  *S. Offshore Fishing Ass'n v. Daley*, 995 F. Supp. 1411, 1437 (M.D. Fla. 1998) (remanding to agency to conduct economic analysis, but leaving the regulation in force in the meantime because it served the public interest).

16

Plaintiffs are wrong when they suggest that certain cases cited in Defendants' opening brief do not support the Defendants' position.  Pls.' Resp. Br. at 18-19.  To start, those cases — *Harlan Land Co. v. U.S. Dep't of Agr.*, 186 F. Supp. 2d 1076 (E.D. Cal. 2001); *Aeronautical Repair Station Ass'n, Inc. v. F.A.A.*, 494 F.3d 161 (D.C. Cir. 2007); and *Chamber of Commerce of U.S. v. Napolitano*, 648 F. Supp. 2d 726 (D. Md. 2009) — reinforce the proposition that remand alone can be an appropriate remedy for a violation of the RFA.  Plaintiffs argue that those cases support a different *scope* of remand than Defendants have argued would be appropriate.  In the event the Court finds Treasury's certification inadequate, Defendants have argued that remand to correct that particular deficiency would be the appropriate "corrective action" authorized under the RFA.  Plaintiffs, however, argue that the cited cases suggest that the Court should remand the regulation and order Treasury to conduct a regulatory flexibility analysis.  But those cases do not undermine the conclusion that remand to allow Treasury to support its certification is appropriate in this case, in the event the Court finds that the certification here is deficient.  It is no surprise that the courts in *Aeronautical Repair Station* and *Chamber of Commerce* granted relief different from what would be appropriate here.  In those cases, the alleged RFA violation was a deficient regulatory flexibility analysis, not a deficient certification.

The point is to remand to the agency to correct whatever error is identified.  Here, Plaintiffs argue that Treasury did not offer sufficient factual support for its conclusion that the regulations at issue would not have a significant economic impact on a substantial number of small entities.  If the Court finds that the certification was not adequately supported, then the appropriate remedy is to remand to the agency to give it the chance to correct that error, if it can. Only if the agency finds that it cannot correct that error (by pointing to evidence and/or engaging

in analysis different from the evidence and analysis offered to support the original certification) should the agency proceed to conduct an RFA analysis.  The result in *Harlan Land Co.* does not change that conclusion for the case at hand.  In *Harlan Land Co.*, the court found the agency's certification deficient because it found a specific factual assumption of the agency to be incorrect.  Remand on that issue would have been pointless because the court already had found the particular fact to be incorrect.  But the alleged deficiency that Plaintiffs assert here — broad-based lack of factual and analytical support — has the potential to be corrected on remand.

To be clear, Treasury contends that it adequately supported its certification with facts and analysis.  But in the event the Court finds otherwise, the appropriate remedy would be to remand to Treasury to give it the opportunity to support its certification.  Only if Treasury finds that it cannot do so, should it proceed to conduct a regulatory flexibility analysis.

And only if Treasury finds that it cannot offer additional factual and/or analytical support for its certification, and thus must conduct a regulatory flexibility analysis, should it also be required to comply with section 212 of the Contract with America Advancement Act Of 1996, Pub. L. 104–121, March 29, 1996, 110 Stat 847.  Section 212 requires an "agency [to] publish one or more guides to assist small entities in complying with [a] rule" the agency publishes, but only when the "agency is required to prepare a final regulatory flexibility analysis under section 604 of title 5, United States Code."  Plaintiffs are wrong when they suggest that refraining from ordering Treasury to publish guides under section 212, before it is known whether a final regulatory flexibility analysis is necessary, would unfairly "reward" Treasury.  Publication under section 212 is not a punishment and avoiding it is not a reward.  According to the terms of the law, it does not apply when an agency has certified that its regulations do not have a significant economic impact on a substantial number of small entities.  As described above, even if the

18

Court finds that Treasury's certification is insufficient, that does not necessarily mean Treasury should be required to engage in a regulatory flexibility analysis.  Any present order to comply with section 212 is thus premature.

## CONCLUSION

For the foregoing reasons, and those set forth in the opening brief, this Court should dismiss the suit for lack of standing or lack of jurisdiction.  If the Court finds the claims justiciable, it should rule in favor of the Defendants.  And if, notwithstanding everything above, the Court finds Plaintiffs' claims justiciable and meritorious, then the only appropriate remedy would be to remand to Treasury to address any procedural violations it made in the process of certifying that its regulations do not have a significant economic impact on a substantial number of small entities.


DATED: September 18, 2020        RICHARD E. ZUCKERMAN
                                 Principal Deputy Assistant Attorney General

                                 */s/ Nishant Kumar*

                                 JOSEPH A. SERGI (D.C. Bar No. 480837)
                                 Senior Litigation Counsel
                                 LAURA M. CONNER (VA Bar No. 40388)
                                 NISHANT KUMAR (D.C. Bar No. 1019053)
                                 Trial Attorneys
                                 Tax Division
                                 U.S. Department of Justice
                                 Post Office Box 227
                                 Washington, DC 20044
                                 Tel: (202) 514-2986
                                 Fax: (202) 514-6866
                                 Nishant.kumar@usdoj.gov
                                 Joseph.a.sergi@usdoj.gov
                                 Laura.m.conner@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I certify that on September 18, 2020, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF System.

_/s/ Nishant Kumar_____
Nishant Kumar
Trial Attorney, Tax Division
U.S. Department of Justice