# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:19−cv−00247−APM</u>

SILVER et al v. INTERNAL REVENUE SERVICE et al

Assigned to: Judge Amit P. Mehta

Demand: $1,000

Cause: 28:1331 Fed. Question

Date Filed: 01/30/2019

Jury Demand: None

Nature of Suit: 870 Taxes

Jurisdiction: U.S. Government Defendant

**Plaintiff**

**MONTE SILVER**                  represented by  **Lawrence Marc Zell**
ZELL, ARON & CO.
34 Ben Yehuda Street
15th Floor
Jerusalem 9423001
Israel
(212) 971−1349
Fax: (212) 253−4030
Email: mzell@fandz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stuart J. Bassin**
THE BASSIN LAW FIRM
1629 K Street, NW
Suite 300
Washington, DC 20006
(202) 895−0969
Email: sjb@bassinlawfirm.com
*TERMINATED: 05/15/2020*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MONTE SILVER, LTD.**           represented by  **Lawrence Marc Zell**
*an Israeli corporation*                          (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stuart J. Bassin**
(See above for address)
*TERMINATED: 05/15/2020*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**INTERNAL REVENUE SERVICE**      represented by  **Joseph A. Sergi**
U.S. DEPARTMENT OF JUSTICE

Tax Division
555 4th Street, NW
Suite 7207
Washington, DC 20001
(202) 305−0868
Fax: 202−331−2032
Email: joseph.a.sergi@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nishant Kumar**
U.S. DEPARTMENT OF JUSTICE
Tax Division
P.O. Box 227
Ben Franklin Station
Washington, DC 20044
(202) 514−2986
Fax: (202) 514−6886
Email: nishant.kumar@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **UNITED STATES DEPARTMENT OF TREASURY** | represented by | **Joseph A. Sergi**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Nishant Kumar**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **CHARLES RETTIG**<br>*in his official capacity as Commissioner of Internal Revenue* | represented by | **Joseph A. Sergi**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Nishant Kumar**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **STEVEN T. MNUCHIN**<br>*in his official capacity as Secretary of Treasury* | represented by | **Joseph A. Sergi**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Nishant Kumar** |

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ATTORNEY GENERAL OF THE UNITED STATES**            represented by    **Joseph A. Sergi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nishant Kumar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**Tal Solomon**

**Amicus**

**CENTER FOR TAXPAYER RIGHTS**            represented by    **Dana Montalto**
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
(617) 390−2737
Fax: (617) 522−0715
Email: dmontalto@law.harvard.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**REPUBLICANS OVERSEAS, INC.**            represented by    **Alexander Richard Green**
Clark Hill PLC
1001 Pennsylvania Avenue, NW
Suite 1300 South
Washington, DC 20004
(202) 552−2373
Fax: (202) 640−6691
Email: agreen@clarkhill.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph William Eshelman , III**
CLARK HILL PLC
1001 Pennsylvania Avenue, NW
Suite 1300 South
Washington, DC 20004−2505
(202) 552−2374
Fax: (202) 572−8692
Email: weshelman@clarkhill.com

**Amicus**

**REPUBLICANS OVERSEAS ALBANIA**

represented by **Alexander Richard Green**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph William Eshelman , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**ASSOCIATION REPUBLICANS OVERSEAS FRANCE**

represented by **Alexander Richard Green**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph William Eshelman , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**REPUBLICANS OVERSEAS HELLENIC REPUBLIC**

represented by **Alexander Richard Green**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph William Eshelman , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**REPUBLICANS OVERSEAS ISRAEL, A.R.**

represented by **Alexander Richard Green**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph William Eshelman , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**REPUBLICANS OVERSEAS NORTH MACEDONIA**

represented by **Alexander Richard Green**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph William Eshelman , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**REPUBLICANS OVERSEAS
SWEDEN**

represented by **Alexander Richard Green**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph William Eshelman , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**REPUBLICANS OVERSEAS
SWITZERLAND**

represented by **Alexander Richard Green**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph William Eshelman , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**REPUBLICANS OVERSEAS UK**

represented by **Alexander Richard Green**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph William Eshelman , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 01/30/2019 | 1 | | COMPLAINT against All Defendants (Fee Status:Filing Fee Waived) filed by Silver Ltd., Monte Silver. (Attachments: # 1 Civil Cover Sheet, # 2 Summons)(Bassin, Stuart) (Entered: 01/30/2019) |
| 01/30/2019 | | | Payment for 1 Complaint. ($400; Receipt number 0090−5916675). (Bassin, Stuart) (Entered: 01/30/2019) |
| 01/31/2019 | 2 | | |

| | | | |
|---|---|---|---|
| | | | ERRATA *and Civil Cover Sheet* by MONTE SILVER, LTD., MONTE SILVER 1 Complaint filed by MONTE SILVER, MONTE SILVER, LTD.. (Attachments: # 1 Errata Summons, # 2 Errata First page of complaint)(Bassin, Stuart) (Entered: 01/31/2019) |
| 01/31/2019 | | | Case Assigned to Judge Amit P. Mehta. (zef, ) (Entered: 01/31/2019) |
| 02/01/2019 | 3 | | ERRATA by MONTE SILVER 1 Complaint filed by MONTE SILVER, MONTE SILVER, LTD.. (Attachments: # 1 Errata Summons Rettig, # 2 Errata Summons Treasury, # 3 Errata Summons Mnuchin)(Bassin, Stuart) (Entered: 02/01/2019) |
| 02/04/2019 | 4 | | SUMMONS (4) Issued Electronically as to STEVEN MNUCHIN, CHARLES RETTIG, and United States Attorney for DC. (Attachments: # 1 Notice and Consent)(zef, ) Modified on 4/30/2019 to correct summons issued (jf). (Entered: 02/04/2019) |
| 03/26/2019 | 5 | | AMENDED COMPLAINT against All Defendants filed by MONTE SILVER, LTD., MONTE SILVER.(Bassin, Stuart) (Entered: 03/26/2019) |
| 04/23/2019 | 6 | | ENTERED IN ERROR.....RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. All Defendants (Bassin, Stuart) Modified on 4/24/2019 (zjf). (Entered: 04/23/2019) |
| 04/24/2019 | | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 6 Summons Returned Executed as to Federal Defendant was entered in error and counsel was instructed to refile said pleading with proof of service. (jf) (Entered: 04/24/2019) |
| 04/25/2019 | 7 | | ENTERED IN ERROR.....RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. All Defendants (Attachments: # 1 Certificate of Service Return of Service on Treasury and Mnuchin, # 2 Certificate of Service Return of Service on IRS and Rettig)(Bassin, Stuart) Modified on 4/30/2019 (zjf). (Entered: 04/25/2019) |
| 04/30/2019 | | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 7 Summons Returned Executed as to Federal Defendant, was entered in error and counsel was instructed to refile said pleading using the correct event. (jf) (Entered: 04/30/2019) |
| 04/30/2019 | 8 | | ENTERED IN ERROR.....RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. (Bassin, Stuart) Modified on 4/30/2019 (jf). (Entered: 04/30/2019) |
| 04/30/2019 | 9 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. CHARLES RETTIG served on 4/09/2019. (Bassin, Stuart) Modified on 4/30/2019 to add service date (jf). (Entered: 04/30/2019) |
| 04/30/2019 | 10 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. STEVEN MNUCHIN served on 4/01/2019 (Bassin, Stuart) Modified on 4/30/2019 to add service date (jf). (Entered: 04/30/2019) |
| 04/30/2019 | | | NOTICE OF CORRECTED DOCKET ENTRY: Document Nos. re 9 Summons Returned Executed as to Federal Defendant, 8 Summons Returned Executed as to Federal Defendant, 10 Summons Returned Executed as to Federal Defendant was entered in error and counsel was instructed to refile said pleading. (jf) |

| | | | |
|---|---|---|---|
| | | | (Entered: 04/30/2019) |
| 04/30/2019 | 11 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 4/1/2019. Answer due for ALL FEDERAL DEFENDANTS by 5/31/2019. (jf) (Entered: 04/30/2019) |
| 05/01/2019 | 12 | | REQUEST FOR SUMMONS TO ISSUE *to Internal Revenue Service* re 1 Complaint, 5 Amended Complaint filed by MONTE SILVER, LTD., MONTE SILVER. Related document: 1 Complaint filed by MONTE SILVER, MONTE SILVER, LTD., 5 Amended Complaint filed by MONTE SILVER, MONTE SILVER, LTD..(Bassin, Stuart) (Entered: 05/01/2019) |
| 05/01/2019 | 13 | | REQUEST FOR SUMMONS TO ISSUE *to Atty General of the United States* re 1 Complaint, 5 Amended Complaint filed by MONTE SILVER, LTD., MONTE SILVER. Related document: 1 Complaint filed by MONTE SILVER, MONTE SILVER, LTD., 5 Amended Complaint filed by MONTE SILVER, MONTE SILVER, LTD..(Bassin, Stuart) (Entered: 05/01/2019) |
| 05/01/2019 | 14 | | REQUEST FOR SUMMONS TO ISSUE *to Dept. of Treasury* filed by MONTE SILVER, LTD., MONTE SILVER.(Bassin, Stuart) (Entered: 05/01/2019) |
| 05/06/2019 | 15 | | SUMMONS (3) Issued Electronically as to ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, UNITED STATES DEPARTMENT OF TREASURY. (jf) (Entered: 05/06/2019) |
| 05/13/2019 | 16 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General May 13, 2019. (Bassin, Stuart) (Entered: 05/13/2019) |
| 05/13/2019 | 17 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. INTERNAL REVENUE SERVICE served on 5/10/2019 (Bassin, Stuart) Modified on 5/14/2019 to correct serve date (jf). (Entered: 05/13/2019) |
| 05/13/2019 | 18 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES DEPARTMENT OF TREASURY served on 5/13/2019 (Bassin, Stuart) (Entered: 05/13/2019) |
| 05/14/2019 | 19 | | ERRATA *Clarifying status of service of summonses* by MONTE SILVER, LTD., MONTE SILVER. (Bassin, Stuart) (Entered: 05/14/2019) |
| 05/29/2019 | 20 | | Unopposed MOTION for Extension of Time to *Respond to Amended Complaint* by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY (Attachments: # 1 Text of Proposed Order)(Kumar, Nishant) (Entered: 05/29/2019) |
| 05/30/2019 | | | MINUTE ORDER granting 20 Defendant's Unopposed Motion to Extend Defendants' Response Time. Defendant shall respond to Plaintiff's Amended Complaint on or before July 1, 2019. Signed by Judge Amit P. Mehta on 05/30/2019. (lcapm1) (Entered: 05/30/2019) |
| 05/30/2019 | | | Set/Reset Deadlines: Defendants' Response due by 7/1/2019. (zjd) (Entered: 05/31/2019) |
| 07/01/2019 | 21 | | |

| | | | MOTION to Dismiss for Lack of Jurisdiction by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Kumar, Nishant) (Entered: 07/01/2019) |
|---|---|---|---|
| 07/01/2019 | 22 | | NOTICE *of Certified List of Contents of Administrative Record* by INTERNAL REVENUE SERVICE (Attachments: # 1 Exhibit A−1, # 2 Exhibit A−2)(Kumar, Nishant) (Entered: 07/01/2019) |
| 07/15/2019 | 23 | | Memorandum in opposition to re 21 MOTION to Dismiss for Lack of Jurisdiction filed by MONTE SILVER, LTD., MONTE SILVER. (Attachments: # 1 Text of Proposed Order, # 2 Declaration Declaration of Monte Silver)(Bassin, Stuart) (Entered: 07/15/2019) |
| 07/16/2019 | 24 | | ERRATA by MONTE SILVER, LTD., MONTE SILVER 21 MOTION to Dismiss for Lack of Jurisdiction filed by ATTORNEY GENERAL OF THE UNITED STATES, UNITED STATES DEPARTMENT OF TREASURY, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG. (Attachments: # 1 Exhibit Exhibits A−C, # 2 Exhibit Exhibits D−F)(Bassin, Stuart) (Entered: 07/16/2019) |
| 07/19/2019 | 25 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 21 MOTION to Dismiss for Lack of Jurisdiction by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY (Attachments: # 1 Text of Proposed Order)(Sergi, Joseph) (Entered: 07/19/2019) |
| 07/22/2019 | | | MINUTE ORDER granting 25 Defendants' Unopposed Motion to Extend Defendants' Time to File Reply in Support of Motion to Dismiss. Defendants shall file their Reply on or before August 1, 2019. Signed by Judge Amit P. Mehta on 07/22/2019. (lcapm1) (Entered: 07/22/2019) |
| 07/22/2019 | | | Set/Reset Deadlines: Defendants' Reply due by 8/1/2019. (zjd) (Entered: 07/22/2019) |
| 08/01/2019 | 26 | | REPLY to opposition to motion re 21 MOTION to Dismiss for Lack of Jurisdiction filed by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY. (Kumar, Nishant) (Entered: 08/01/2019) |
| 12/14/2019 | 27 | | MOTION to Expedite re 21 MOTION to Dismiss for Lack of Jurisdiction by MONTE SILVER, LTD. (Bassin, Stuart) Modified on 12/16/2019 to add docket link (jf). (Entered: 12/14/2019) |
| 12/18/2019 | 28 | | Memorandum in opposition to re 27 MOTION to Expedite filed by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY. (Kumar, Nishant) (Entered: 12/18/2019) |
| 12/24/2019 | 29 | | MEMORANDUM OPINION AND ORDER denying Defendants' 21 Motion to Dismiss and denying as moot Plaintiffs' 27 Motion to Expedite. See the attached |

| | | | |
|---|---|---|---|
| | | | Memorandum Opinion and Order for additional details. Signed by Judge Amit P. Mehta on 12/24/2019. (lcapm1) (Entered: 12/24/2019) |
| 01/07/2020 | 30 | | MOTION for Extension of Time to *Respond to Amended Complaint* by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY (Attachments: # 1 Text of Proposed Order)(Kumar, Nishant) (Entered: 01/07/2020) |
| 01/09/2020 | 31 | | RESPONSE re 30 MOTION for Extension of Time to *Respond to Amended Complaint* filed by MONTE SILVER, LTD., MONTE SILVER. (Attachments: # 1 Text of Proposed Order)(Bassin, Stuart) (Entered: 01/09/2020) |
| 01/09/2020 | | | MINUTE ORDER granting in part and denying in part Defendants' 30 Motion for Extension of Time to Respond to Amended Complaint. Defendants have not shown good cause for their required 62−day extension. Defendants shall file their answer to the Amended Complaint by February 7, 2020. Thereafter, the court will issue an order requiring the parties to meet and confer and propose a summary judgment briefing schedule. Signed by Judge Amit P. Mehta on 1/9/2020. (lcapm1) (Entered: 01/09/2020) |
| 01/09/2020 | | | Set/Reset Deadlines: Answer due by 2/7/2020. (zjd) (Entered: 01/09/2020) |
| 02/03/2020 | 32 | | MOTION to Compel *and for other relief* by MONTE SILVER, LTD., MONTE SILVER (Attachments: # 1 Text of Proposed Order, # 2 Exhibit)(Bassin, Stuart) (Entered: 02/03/2020) |
| 02/07/2020 | 33 | | Memorandum in opposition to re 32 MOTION to Compel *and for other relief* filed by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY. (Attachments: # 1 Text of Proposed Order)(Kumar, Nishant) (Entered: 02/07/2020) |
| 02/07/2020 | 34 | | ANSWER to 5 Amended Complaint by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY.(Kumar, Nishant) (Entered: 02/07/2020) |
| 02/07/2020 | 35 | | ENTERED IN ERROR.....ORDER setting Initial Scheduling Conference for March 16, 2020, at 10:45 a.m. in Courtroom 10 before Judge Amit P. Mehta. See attached Order for additional details. Signed by Judge Amit P. Mehta on 02/07/2020. (lcapm2) Modified on 2/10/2020 (zjd). (Entered: 02/07/2020) |
| 02/10/2020 | | | NOTICE OF CORRECTED DOCKET ENTRY: 35 Order has been entered in error. (zjd) (Entered: 02/10/2020) |
| 02/10/2020 | 36 | | ORDER denying 32 Plaintiff's Motion to Compel. Plaintiff's Motion to Compel is premature, as the court has not yet entered a schedule for producing the administrative record. Furthermore, the parties are directed to meet and confer and file a Joint Status Report on or before March 2, 2020, as set forth in the attached Order. Signed by Judge Amit P. Mehta on 02/10/2020. (lcapm2) Modified document type on 2/10/2020 (zjd). (Entered: 02/10/2020) |
| 02/10/2020 | | | Set/Reset Deadlines: Joint Status Report due by 3/2/2020. (zjd) (Entered: 02/10/2020) |

| 02/27/2020 | 37 | | Joint STATUS REPORT by MONTE SILVER, LTD., MONTE SILVER. (Bassin, Stuart) (Entered: 02/27/2020) |
|---|---|---|---|
| 02/28/2020 | | | MINUTE ORDER. In view of 37 the Joint Status Report, the court enters the following schedule governing further proceedings in this matter: (1) Defendants shall file the administrative record on or before April 2, 2020, and the administrative record shall be provided in electronic form with each page bates−numbered sequentially; (2) Plaintiffs shall file their motion for summary judgment on or before May 19, 2020; (3) Defendants shall file their response, including, if necessary, any cross−motion for summary judgment, on or before July 20, 2020; (4) Plaintiffs shall file their reply (if any) by August 19, 2020; (5) Defendants shall file their reply (if any) by Sept. 18, 2020; and (6) Plaintiffs shall file the required appendix containing excerpts from the administrative record on or before October 9, 2020. Signed by Judge Amit P. Mehta on 02/28/2020. (lcapm2) (Entered: 02/28/2020) |
| 02/28/2020 | | | Set/Reset Deadlines: Administrative Record due by 4/2/2020. Summary Judgment motions due by 5/19/2020. Response and any Cross−Motion due by 7/20/2020. Reply and Response due by 8/19/2020. Reply due by 9/18/2020. Appendix due by 10/9/2020. (zjd) (Entered: 03/10/2020) |
| 04/02/2020 | 38 | | ADMINISTRATIVE RECORD by INTERNAL REVENUE SERVICE, UNITED STATES DEPARTMENT OF TREASURY. (Attachments: # 1 Part 1, # 2 Part 2, # 3 Part 3, # 4 Part 4, # 5 Part 5, # 6 Part 6, # 7 Part 8, # 8 Part 9, # 9 Part 10, # 10 Part 11, # 11 Part 12, # 12 Part 13, # 13 Part 7)(Kumar, Nishant) (Entered: 04/02/2020) |
| 04/22/2020 | 39 | | MOTION for Order *to Complete the Administrative Record* by MONTE SILVER, LTD., MONTE SILVER (Attachments: # 1 Exhibit A−Plaintiffs' letter, # 2 Exhibit B−Defendants' letter, # 3 Exhibit Additions to the Administrative Record, # 4 Text of Proposed Order)(Bassin, Stuart) (Entered: 04/22/2020) |
| 04/23/2020 | 40 | | MOTION to Expedite *Briefing Schedule on motion to complete recordsummary judgment motions* by MONTE SILVER, LTD., MONTE SILVER (Attachments: # 1 Text of Proposed Order)(Bassin, Stuart) (Entered: 04/23/2020) |
| 04/24/2020 | | | MINUTE ORDER denying Plaintiffs' 40 Motion to Expedite. Plaintiffs fail to offer good cause to expedite consideration of their motion to complete the administrative record, ECF No. 39. The court will rule on Plaintiffs' request to add to the administrative record in conjunction with the parties' summary judgment briefing. Signed by Judge Amit P. Mehta on 4/24/2020. (lcapm1) (Entered: 04/24/2020) |
| 04/27/2020 | 41 | | ADMINISTRATIVE RECORD *CERTIFICATION* by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY. (Sergi, Joseph) (Entered: 04/27/2020) |
| 05/06/2020 | 42 | | Memorandum in opposition to re 39 MOTION for Order *to Complete the Administrative Record* filed by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed |

| | | | |
|---|---|---|---|
| | | | Order)(Sergi, Joseph) (Entered: 05/06/2020) |
| 05/08/2020 | 43 | | MOTION for Leave to File *Memorandum of Law of Amicus Curiae* by Center for Taxpayer Rights (Montalto, Dana) (Entered: 05/08/2020) |
| 05/10/2020 | 44 | | NOTICE of Appearance by Lawrence Marc Zell on behalf of All Plaintiffs (Zell, Lawrence) (Entered: 05/10/2020) |
| 05/11/2020 | | | MINUTE ORDER denying without prejudice Motion for Leave to File Memorandum of Law of Amicus Curiae, ECF No. 43 . Local Civil Rule 7(o)(2) requires that a motion for leave to file an amicus brief state, among other things, "the position of each party as to the filing of such brief." Proposed amicus curiae fails to comply with this requirement. For that reason, its motion is denied without prejudice. Signed by Judge Amit P. Mehta on 05/11/2020. (lcapm2) (Entered: 05/11/2020) |
| 05/11/2020 | 45 | | MOTION for Leave to File *Memorandum of Law of Amicus Curiae* by Center for Taxpayer Rights (Montalto, Dana) (Entered: 05/11/2020) |
| 05/11/2020 | 46 | | NOTICE of Appearance by Dana Montalto on behalf of Center for Taxpayer Rights (Montalto, Dana) (Entered: 05/11/2020) |
| 05/11/2020 | | | MINUTE ORDER granting 45 Motion for Leave to File Amicus Curiae Brief. Signed by Judge Amit P. Mehta on 05/11/2020. (lcapm2) (Entered: 05/11/2020) |
| 05/15/2020 | 47 | | MOTION for Summary Judgment by MONTE SILVER, LTD., MONTE SILVER (Attachments: # 1 Memorandum in Support Memorandum of Points and Authorities and Appendix, # 2 Declaration, # 3 Text of Proposed Order)(Zell, Lawrence) (Entered: 05/15/2020) |
| 05/15/2020 | 48 | | NOTICE OF WITHDRAWAL OF APPEARANCE as to MONTE SILVER, LTD., MONTE SILVER. Attorney Stuart J. Bassin terminated. (Bassin, Stuart) (Entered: 05/15/2020) |
| 05/18/2020 | 49 | | AMICUS BRIEF by CENTER FOR TAXPAYER RIGHTS. (Montalto, Dana) Modified event title on 5/22/2020 (znmw). (Entered: 05/18/2020) |
| 05/19/2020 | 50 | | MOTION for Leave to File *Memorandum of Law of Amici Curiae* by REPUBLICANS OVERSEAS, INC., REPUBLICANS OVERSEAS ALBANIA, ASSOCIATION REPUBLICANS OVERSEAS FRANCE, REPUBLICANS OVERSEAS HELLENIC REPUBLIC, REPUBLICANS OVERSEAS ISRAEL, A.R., REPUBLICANS OVERSEAS NORTH MACEDONIA, REPUBLICANS OVERSEAS SWEDEN, REPUBLICANS OVERSEAS SWITZERLAND, REPUBLICANS OVERSEAS UK (Attachments: # 1 Text of Proposed Order)(Green, Alexander) (Entered: 05/19/2020) |
| 05/19/2020 | 51 | | NOTICE of Appearance by Alexander Richard Green on behalf of ASSOCIATION REPUBLICANS OVERSEAS FRANCE, REPUBLICANS OVERSEAS ALBANIA, REPUBLICANS OVERSEAS HELLENIC REPUBLIC, REPUBLICANS OVERSEAS ISRAEL, A.R., REPUBLICANS OVERSEAS NORTH MACEDONIA, REPUBLICANS OVERSEAS SWEDEN, REPUBLICANS OVERSEAS SWITZERLAND, REPUBLICANS OVERSEAS UK, REPUBLICANS OVERSEAS, INC. (Green, Alexander) (Entered: 05/19/2020) |

| | | | |
|---|---|---|---|
| 05/26/2020 | 52 | | Memorandum in opposition re 50 MOTION for Leave to File *Memorandum of Law of Amici Curiae* filed by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY. (Attachments: # 1 Exhibit A)(Kumar, Nishant) Modified docket event/text on 5/26/2020 (eg). (Entered: 05/26/2020) |
| 05/26/2020 | | | NOTICE OF ERROR re 51 Notice of Appearance; emailed to agreen@clarkhill.com, cc'd 10 associated attorneys –– The PDF file you docketed contained errors: 1. Attorney J. William Eshelman has to file his/her own notice of appearance using their own Login/Password. (zeg, ) (Entered: 05/26/2020) |
| 05/27/2020 | 53 | | NOTICE of Appearance by Joseph William Eshelman, III on behalf of ASSOCIATION REPUBLICANS OVERSEAS FRANCE, REPUBLICANS OVERSEAS ALBANIA, REPUBLICANS OVERSEAS HELLENIC REPUBLIC, REPUBLICANS OVERSEAS ISRAEL, A.R., REPUBLICANS OVERSEAS NORTH MACEDONIA, REPUBLICANS OVERSEAS SWEDEN, REPUBLICANS OVERSEAS SWITZERLAND, REPUBLICANS OVERSEAS UK, REPUBLICANS OVERSEAS, INC. (Eshelman, Joseph) (Entered: 05/27/2020) |
| 06/01/2020 | 54 | | MOTION for Leave to File *Reply in Further Support of Permitting the RO Amici Curiae to FIle Amicus Brief* by ASSOCIATION REPUBLICANS OVERSEAS FRANCE, REPUBLICANS OVERSEAS ALBANIA, REPUBLICANS OVERSEAS HELLENIC REPUBLIC, REPUBLICANS OVERSEAS ISRAEL, A.R., REPUBLICANS OVERSEAS NORTH MACEDONIA, REPUBLICANS OVERSEAS SWEDEN, REPUBLICANS OVERSEAS SWITZERLAND, REPUBLICANS OVERSEAS UK, REPUBLICANS OVERSEAS, INC. (Attachments: # 1 Exhibit A (Proposed Reply Brief))(Green, Alexander) (Entered: 06/01/2020) |
| 06/02/2020 | 55 | | ORDER granting 50 Motion for Leave to File Amici Curiae Brief. See the attached Order for further details. Signed by Judge Amit P. Mehta on 06/02/2020. (lcapm2) (Entered: 06/02/2020) |
| 06/09/2020 | 56 | | AMICUS BRIEF re 47 MOTION for Summary Judgment filed by ASSOCIATION REPUBLICANS OVERSEAS FRANCE, REPUBLICANS OVERSEAS ALBANIA, REPUBLICANS OVERSEAS HELLENIC REPUBLIC, REPUBLICANS OVERSEAS ISRAEL, A.R., REPUBLICANS OVERSEAS NORTH MACEDONIA, REPUBLICANS OVERSEAS SWEDEN, REPUBLICANS OVERSEAS SWITZERLAND, REPUBLICANS OVERSEAS UK, REPUBLICANS OVERSEAS, INC.. (Green, Alexander) Modified event title on 6/22/2020 (znmw). (Entered: 06/09/2020) |
| 07/20/2020 | 57 | | Cross MOTION for Summary Judgment *and Response to Plaintiffs' Motion for Summary Judgment* by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY (Attachments: # 1 Memorandum in Support, # 2 Declaration of J Sergi, # 3 Appendix of Exhibits, # 4 Statement of Facts in support of Motion for Summary Judgment, # 5 Response to Plaintiffs' Statement of Facts, # 6 Proposed Order)(Kumar, Nishant) (Entered: 07/20/2020) |

| 07/20/2020 | 58 | | RESPONSE re 47 MOTION for Summary Judgment filed by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY. (View Docket Entry 57 to view document). (eg) (Entered: 07/21/2020) |
|---|---|---|---|
| 08/03/2020 | 59 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by MONTE SILVER, LTD., MONTE SILVER, Tal Solomon (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Zell, Lawrence) (Entered: 08/03/2020) |
| 08/17/2020 | 60 | | SEALED OPPOSITION filed by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY. re 59 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by MONTE SILVER, LTD., MONTE SILVER, Tal Solomon (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order)(Kumar, Nishant) (Entered: 08/17/2020) |
| 08/19/2020 | 61 | | Memorandum in opposition to re 57 Cross MOTION for Summary Judgment *and Response to Plaintiffs' Motion for Summary Judgment* filed by MONTE SILVER, LTD., MONTE SILVER. (Attachments: # 1 Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G)(Zell, Lawrence) Modified docket event/text on 8/19/2020 (eg). (Entered: 08/19/2020) |
| 08/19/2020 | 62 | | REPLY to opposition to motion re 47 MOTION for Summary Judgment filed by MONTE SILVER, LTD., MONTE SILVER. (View Docket Entry 61 to view document). (eg) (Entered: 08/19/2020) |
| 08/21/2020 | 63 | | ENTERED IN ERROR.....SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by MONTE SILVER, LTD., MONTE SILVER (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A)(Zell, Lawrence) Modified on 8/24/2020 (zeg). (Entered: 08/21/2020) |
| 08/24/2020 | | | NOTICE OF CORRECTED DOCKET ENTRY: re 63 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by MONTE SILVER, LTD., MONTE SILVER (This document is SEALED and only available to authorized persons.) was entered in error and counsel was instructed to refile said pleading using correct event.. (zeg) (Entered: 08/24/2020) |
| 08/26/2020 | 64 | | SEALED REPLY TO OPPOSITION filed by MONTE SILVER, LTD., MONTE SILVER, Tal Solomon re 59 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by MONTE SILVER, LTD., MONTE SILVER, Tal Solomon (This document is SEALED and only available to authorized persons.), 63 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by MONTE SILVER, LTD., MONTE SILVER (This document is SEALED and only available to authorized persons.) (This document is SEALED and only available to authorized persons.)(Zell, Lawrence) (Entered: 08/26/2020) |

| 09/18/2020 | 65 | | REPLY to opposition to motion re 57 Cross MOTION for Summary Judgment *and Response to Plaintiffs' Motion for Summary Judgment* filed by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2 (Reply to Plaintiffs' Ex. D), # 3 Declaration)(Kumar, Nishant) (Entered: 09/18/2020) |
|---|---|---|---|
| 10/03/2020 | 66 | | JOINT APPENDIX by MONTE SILVER, LTD., MONTE SILVER. (Attachments: # 1 Appendix Part 1, # 2 Appendix Part 2, # 3 Appendix Part 3, # 4 Appendix Part 4)(Zell, Lawrence) (Entered: 10/03/2020) |
| 02/24/2021 | | | MINUTE ORDER provisionally sealing the Exhibit at issue in Plaintiff's Motion for Leave to File Document Under Seal, ECF No. 59 . The court will decide whether the Exhibit shall remain under seal when it decides the motion. Signed by Judge Amit P. Mehta on 2/24/2021. (lcapm2) Modified on 3/1/2021 (lcapm2). (Entered: 02/24/2021) |
| 03/03/2021 | | | NOTICE of Hearing: Oral Argument set for 3/15/2021 at 1:00 PM via video conference before Judge Amit P. Mehta. The courtroom deputy will circulate connection information to counsel. Members of the public may access the hearing by dialing the court's toll−free public access line: (877) 848−7030, access code 321−8747. (lcapm2) (Entered: 03/03/2021) |
| 03/15/2021 | | | Minute Entry for proceedings held before Judge Amit P. Mehta: Oral Argument held on 3/15/2021 via video conference. Arguments heard and taken under advisement. (Court Reporter: William Zaremba) (zjd) (Entered: 03/15/2021) |
| 03/28/2021 | 67 | | MEMORANDUM OPINION re: 47 Plaintiffs' Motion for Summary Judgment, 57 Defendants' Cross−Motion for Summary Judgment, and 39 Plaintiffs' Motion to Complete the Administrative Record. See the attached Memorandum Opinion for additional details. Signed by Judge Amit P. Mehta on 3/28/2021. (lcapm2) (Entered: 03/28/2021) |
| 03/28/2021 | 68 | | ORDER: For the reasons stated in the 67 Memorandum Opinion, the court grants Defendants' Cross−Motion for Summary Judgment, ECF No. 57 , and denies Plaintiffs' Motion for Summary Judgment, ECF No. 47 . Plaintiffs' Motion to Complete the Administrative Record, ECF No. 39 , is denied as moot. See the attached Order for further details. Signed by Judge Amit P. Mehta on 3/28/2021. (lcapm2) (Entered: 03/28/2021) |
| 03/28/2021 | 69 | | MEMORANDUM OPINION AND ORDER granting in part and denying in part 59 Plaintiffs' Motion for Relief Under Fed. R. Civ. P. 5.2. See the attached Memorandum Opinion and Order for additional details. Signed by Judge Amit P. Mehta on 3/28/2021. (lcapm2) (Entered: 03/28/2021) |
| 04/23/2021 | 70 | | MEMORANDUM re 71 MOTION for Reconsideration , MOTION to Amend/Correct 5 Amended Complaint by MONTE SILVER, LTD., MONTE SILVER. (Attachments: # 1 Exhibit A, # 2 Declaration)(Zell, Lawrence) Modified event title on 4/27/2021 (znmw). (Entered: 04/23/2021) |
| 04/23/2021 | 71 | | MOTION to Amend/Correct 5 Amended Complaint , MOTION for Reconsideration re 67 Memorandum & Opinion, 68 Order, by MONTE SILVER, LTD., MONTE SILVER. (Attachments: # 1 Memorandum in Support, # 2 Exhibit, # 3 Declaration)(Zell, Lawrence) (Entered: 04/23/2021) |

| | | | |
|---|---|---|---|
| 04/23/2021 | 72 | | TRANSCRIPT OF ORAL ARGUMENT VIA ZOOM PROCEEDINGS before Judge Amit P. Mehta held on March 15, 2021; Page Numbers: 1−95. Date of Issuance: April 23, 2021. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354−3249. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, PDF or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 5/14/2021. Redacted Transcript Deadline set for 5/24/2021. Release of Transcript Restriction set for 7/22/2021.(wz) (Entered: 04/23/2021) |
| 04/29/2021 | 73 | | Consent MOTION for Extension of Time to File by MONTE SILVER, LTD., MONTE SILVER. (Zell, Lawrence) (Entered: 04/29/2021) |
| 04/30/2021 | | | MINUTE ORDER granting 73 Joint Motion for Extension of Time. The parties shall have until and including May 7, 2021 to file agreed−upon redactions to ECF No. 57−3 and related court filings, or if necessary, memoranda of no more than ten pages describing their disputes and the support for their respective positions. Signed by Judge Amit P. Mehta on 4/30/2021. (lcapm2) (Entered: 04/30/2021) |
| 05/04/2021 | 74 | | RESPONSE re 71 MOTION to Amend/Correct 5 Amended Complaint MOTION for Reconsideration re 67 Memorandum & Opinion, 68 Order, filed by ATTORNEY GENERAL OF THE UNITED STATES, INTERNAL REVENUE SERVICE, STEVEN T. MNUCHIN, CHARLES RETTIG, UNITED STATES DEPARTMENT OF TREASURY. (Kumar, Nishant) (Entered: 05/04/2021) |
| 05/07/2021 | 75 | | SEALED DOCUMENT filed by MONTE SILVER, LTD., MONTE SILVER re 69 Memorandum & Opinion, (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Zell, Lawrence) (Entered: 05/07/2021) |
| 05/07/2021 | 76 | | SEALED DOCUMENT filed by ATTORNEY GENERAL OF THE UNITED STATES re 69 Memorandum & Opinion, (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Sergi, Joseph) (Entered: 05/07/2021) |
| 05/11/2021 | 77 | | REPLY to opposition to motion re 70 MOTION for Reconsideration re 67 Memorandum & Opinion, 68 Order, MOTION to Amend/Correct 5 Amended Complaint , 71 MOTION to Amend/Correct 5 Amended Complaint MOTION for Reconsideration re 67 Memorandum & Opinion, 68 Order, filed by MONTE |

| | | | |
|---|---|---|---|
| | | | SILVER, LTD., MONTE SILVER. (Zell, Lawrence) (Entered: 05/11/2021) |
| 05/25/2021 | 78 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 67 Memorandum & Opinion, 68 Order, 69 Memorandum & Opinion, by MONTE SILVER, LTD., MONTE SILVER. Filing fee $ 505, receipt number ADCDC−8477408. Fee Status: Fee Paid. Parties have been notified. (Zell, Lawrence) (Entered: 05/25/2021) |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MONTE SILVER** and **MONTE SILVER, LTD**., an Israel corporation<br><br>*Plaintiffs*<br><br>*v.*<br><br>**INTERNAL REVENUE SERVICE; UNITED STATES DEPARTMENT OF THE TREASURY; CHARLES RETTIG**, in his official capacity as Commissioner of the Internal Revenue; and **JANET YELLEN**, in her official capacity as United States Secretary of the Treasury<br><br>*Defendants* | Civil Action No. 19-cv-0247-APM<br><br>Judge Amit P. Mehta<br><br><u>NOTICE OF APPEAL</u> |

**<u>NOTICE OF APPEAL</u>**

Notice is hereby given that Plaintiffs Monte Silver and Monte Silver, Ltd. hereby appeal to the United States Court of Appeals for the D.C. Circuit from the Orders entered in this action on March 28, 2021 (ECF 67, 68 and 69). Appellants note that they have filed a motion under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure with regards to ECF 67 and 68. This motion is currently pending.


Respectfully submitted,

<u>Date</u>: May 25, 2021.

/s/ *Lawrence Marc Zell*

_____

Lawrence Marc Zell (DC Bar # 959437)
Noam Schreiber, *of counsel*
**ZELL & ASSOCIATES INTERNATIONAL ADVOCATES LLC**
1345 Ave. of the Americas,
2nd Floor,
New York, NY 10105
e-mail: mzell@fandz.com
*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
                                          )
MONTE SILVER, et al.,                     )
                                          )
          Plaintiffs,                     )
                                          )
              v.                          )        Civil No. 19-cv-247 (APM)
                                          )
INTERNAL REVENUE SERVICE, et al.,         )
                                          )
          Defendants.                     )
                                          )
```

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' Motion for Relief Under Fed. R. Civ. P. 5.2, ECF No. 59 [hereinafter Pls.' Mot.]. Plaintiffs seek an order from the court that Appendix 3 to Defendants' Cross-Motion for Summary Judgment, ECF No. 57-3—an appendix of exhibits containing Plaintiff Monte Silver's tax return information—be placed under seal, and for associated relief. *See* Pls.' Mot., P. & A. in Supp. of Pls.' Mot. for Relief Under FRCP 5.2, ECF No. 59-1 [hereinafter Pls.' Br.], at 10. Plaintiffs contend that Defendants' disclosure of Silver's tax information was an "abusive tactic[]" done in violation of the Internal Revenue Code ("IRC"), Pls.' Br. at 3–8, and that Silver and his wife have suffered significant damage as a result of their financial and tax information being "exposed to the world," *id.* at 9. For their part, Defendants maintain that publicly filing Silver's tax return information was both lawful under the IRC and necessary for resolving key legal issues in dispute, and that Plaintiffs have failed to overcome the strong presumption against sealing court records. *See* Defs.' Opp'n to Pls.' Mot. to Seal or Compel Redactions, ECF No. 60 [hereinafter Defs.' Opp'n.], at 2–11. The court agrees with Defendants in large part.

Section 6103 of the IRC authorizes the disclosure of confidential tax return information in certain circumstances. *See* 26 U.S.C. § 6103. Two provisions are relevant here: (1) subsection (h)(2) governs disclosure to the Department of Justice ("DOJ"), and (2) subsection (h)(4) governs disclosure in judicial and administrative tax proceedings. Plaintiffs argue that Defendants violated the law at both junctures. *See* Pls.' Br. at 3–6. The parties agree that the standards under the latter provision are the narrower of the two, *see* Defs.' Opp'n. at 7; Pls.' Br. 5, such that if disclosure to the court is proper, so too was disclosure to DOJ. The court thus need only address whether disclosure of Silver's tax information to the court was proper.

Section 6103(h)(4) provides that "[a] return . . . may be disclosed in a Federal or State judicial . . . proceeding pertaining to tax administration," if, among other things, "the taxpayer is a party to the proceeding" *or* "the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding." 26 U.S.C. §§ 6103(h)(4)(A)–(B). There is no question that Silver is a "taxpayer . . . party to [this] proceeding," so that condition is satisfied. The disclosure of Silver's tax return information also "is directly related to the resolution of an issue in the proceeding": whether the court has jurisdiction over the matter and other key issues in dispute. *Id.* § 6103(h)(4)(B). The parties' briefing on their cross-motions for summary judgment, *see* ECF Nos. 47-1, 57-1, 61, and 65, make clear the direct relevance of, among other things, whether Silver owed any transition tax under IRC section 965 and how he elected to pay it, and his relationship with Silver Limited.

The parties disagree on the antecedent question of whether this is a proceeding "pertaining to tax administration," 26 U.S.C. § 6103(h)(4)(A). *See* Pls.' Br. at 4–5; Defs.' Opp'n. at 3–5. The D.C. Circuit has explained that the IRC "defines 'tax administration' fairly broadly, to include 'the administration, management, conduct, direction, and supervision of the execution and application

2

of the internal revenue laws or related statutes.'" *Gardner v. United States*, 213 F.3d 735, 738 (D.C. Cir. 2000) (quoting 26 U.S.C. § 6104(b)(4)(A)(i)). This case easily satisfies that definition. Plaintiffs filed this lawsuit to challenge the process by which Defendants issued regulations governing the calculation, reporting, and payment of the so-called "transition tax" under section 965 of the IRC. *See* First Am. Compl., ECF No. 5 [hereinafter First Am. Compl.]; 84 Fed. Reg. 1,838 (Feb. 5, 2019) (the final regulations implementing section 965); *see also* 26 U.S.C. § 965(o) (mandating promulgation of the regulations). Plaintiffs' challenge, at a minimum, "pertains to" the "administration . . . of the execution and application" of the tax laws.

Plaintiffs contend that because their challenge is specific to the process, and not the substance of "internal revenue laws or federal tax policy," this is not a "tax administration" case. Pls.' Br. at 5; *see id.* at 4–5. But such a narrow interpretation of the definition is contrary to case law, *see Gardner*, 213 F.3d at 738; *see also United States v. Mangan*, 575 F.2d 32, 40 (2d Cir. 1978) ("[T]he definition of 'tax administration' in s[ection] 6103(b)(4) is so sweeping as to compel rejection of a restrictive interpretation."), and would read the term "pertaining to" out of the statute. To "pertain" to something means "to have reference" to it,[1] or to be connected to it in some way. *See Am. Civil Liberties Union v. CIA*, 109 F. Supp. 3d 220, 236 (D.D.C. 2015) (defining "pertain"). One need look no further than the relief Plaintiffs seek—a "stay [of] the enforcement of the Final Regulations" and the tax law itself, sections 965 and 962, "against Plaintiffs and other small businesses," *see* First Am. Compl. at 19—to see that this case "pertains to" the "administration" of tax law.

Section 6103 does not mandate disclosure, so the court still must address whether Plaintiffs' sealing request is appropriate. The court operates from the starting point that there is

---

[1] *See Pertain*, MERRIAM-WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/pertain (last visited Mar. 25, 2021).

"a 'strong presumption in favor of public access to judicial proceedings.'" *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996). And "'[i]n cases where the government is a party . . . [t]he appropriateness of making court files accessible' is enhanced." *Friedman v. Sebelius*, 672 F. Supp. 2d 54, 58 (D.D.C. 2009) (quoting *Nat'l Children's Ctr.*, 98 F.3d at 1409)). The D.C. Circuit has identified six factors for courts to consider in determining whether the strong presumption against sealing has been overcome: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents at issue; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. *Nat'l Children's Ctr.*, 98 F.3d at 1409 (citing *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980)).

Plaintiffs make no attempt to show that sealing is warranted under the *Hubbard* factors. *See* Pls.' Reply at 5 (declining to engage in *Hubbard* analysis). That fact alone requires denial of Plaintiffs' motion, as they have the "burden of showing that [their] privacy interests outweigh the public's presumptive and substantial interest in knowing the details of judicial litigation." *John Doe Co. v. CFPB*, 321 F.R.D. 31, 34 (D.D.C. 2017). The court nevertheless has considered the parties' submissions in light of the relevant factors, and finds that sealing Silver's tax return information in its entirety is not warranted.

To be sure, these are records to which the public would not otherwise have access. But the weight of that factor, and any accompanying privacy interest Silver has in them, is diminished greatly by the fact that Silver voluntarily filed this lawsuit and the IRC sanctions public disclosure. That Defendants produced Silver's tax return to demonstrate lack of jurisdiction and to rebut other

of Plaintiffs' arguments was not an "abusive tactic[]," but basic lawyering. The court must give substantial weight to the fact that Silver's tax return information is directly related to resolving disputed issues in this case. *See Hubbard*, 650 F.2d at 321 (explaining that the "single most important element" for consideration is the purpose for which the documents were introduced); *see also United States ex rel. Grover v. Related Companies, LP*, 4 F. Supp. 3d 21, 28 (D.D.C. 2013) ("The more relevant a pleading is to the central claims of the litigation, the stronger the presumption of unsealing the pleading becomes."). And the harm alleged by Plaintiffs does not change the outcome. As noted by Defendants, Plaintiffs primarily allege reputational harm, *see* Defs.' Opp'n at 12; Pls.' Br. at 9, and such harm "is not the sort of property or privacy interest that courts have found compelling when analyzing the *Hubbard* factors," *Related Companies, LP*, 4 F. Supp. 3d at 27; *see also Gilliard v. McWilliams*, 2019 WL 3304707, at *4 (D.D.C. July 23, 2019) ("Reputational harm alone is insufficient.").

Although the court concludes that the *Hubbard* factors weigh against sealing the records in their entirety, it is sensitive to Silver's privacy interest in those record portions that are not relevant to a disputed issue. For that reason, the court does not deny Plaintiffs' motion in its entirety. The court orders as follows. It denies Plaintiffs' motion in so far as it seeks a complete sealing of Appendix 3. The parties shall meet and confer and file on or before April 30, 2021, proposed redactions to the tax records, as well as agreed-upon public versions of their filings at ECF Nos. 59, 60, and 64. If the parties cannot reach agreement, they shall file memoranda of no more than ten pages describing their disputes and the support for their respective positions.

Dated: March 28, 2021

Amit P. Mehta
United States District Court Judge

5

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MONTE SILVER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 19-cv-247 (APM)** |
| | ) | |
| **INTERNAL REVENUE SERVICE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

For the reasons set forth in the court's Memorandum Opinion, ECF No. 67, the court grants Defendants' Cross-Motion for Summary Judgment, ECF No. 57, and denies Plaintiffs' Motion for Summary Judgment, ECF No. 47. Plaintiffs' Motion to Complete the Administrative Record, ECF No. 39, is denied as moot.

This is a final, appealable order.

Dated: March 28, 2021

_____
Amit P. Mehta
United States District Court Judge

|  |  |  |
|---|---|---|
| _____ | ) | |
| **MONTE SILVER, et al.,** | ) | |
| | ) | |
|     **Plaintiffs,** | ) | |
| | ) | |
|        **v.** | ) | **Civil No. 19-cv-247 (APM)** |
| | ) | |
| **INTERNAL REVENUE SERVICE, et al.,** | ) | |
| | ) | |
|     **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

As part of the Tax Cut and Jobs Act of 2017, Congress amended Internal Revenue Code ("IRC") section 965 to impose a one-time "transition tax" on U.S. shareholders of certain specified foreign corporations based on the earnings accumulated by those entities since 1986. This case involves a challenge to the procedures by which Defendants Internal Revenue Service ("IRS") and the U.S. Department of Treasury ("Treasury") promulgated the regulations implementing section 965. Plaintiffs Monte Silver and his business Monte Silver, Limited, a company based in Israel, claim to be small entities unduly burdened by the final regulations. They bring this action to challenge Defendants' alleged failure to assess the economic impact the regulation would have on small businesses, as required by the Regulatory Flexibility Act ("RFA"), 5 U.S.C. §§ 601–612.

Now pending before the court are the parties' cross-motions for summary judgment. After a thorough review of the parties' submissions and applicable case law and statutory authority, the court finds that Plaintiffs lack constitutional standing to pursue their claims. And even if Plaintiffs had standing, neither Plaintiff has a cause of action under the RFA. Accordingly, for the reasons

discussed in greater detail below, the court grants Defendants' cross-motion for summary judgment.

## II.    BACKGROUND

### A.    Statutory and Regulatory Framework

#### 1.    The Regulatory Flexibility Act

Enacted in 1980, the RFA is a "[p]urely procedural" statute that "obliges federal agencies to assess the impact of their regulations on small businesses." *U.S. Cellular Corp. v. FCC*, 254 F.3d 78, 88 (D.C. Cir. 2001). It "arose from the concern that small businesses may be forced to bear an unnecessary or disproportionate burden when the federal government issues regulations." *Nat'l Ass'n for Home Care v. Shalala*, 135 F. Supp. 2d 161, 163 (D.D.C. 2001). *See generally* Doris S. Freedman et al., *The Regulatory Flexibility Act: Orienting Federal Regulation to Small Business*, 93 Dick. L. Rev. 439, 440 (1989); Paul R. Verkuil, *A Critical Guide to the Regulatory Flexibility Act*, 1982 Duke L.J. 213, 215–26 (1982).

The RFA "'does not alter the substantive mission of the agencies under their own statutes.'" *N.C. Fisheries Ass'n, Inc. v. Gutierrez*, 518 F. Supp. 2d 62, 72 (D.D.C. 2007) (quoting *Little Bay Lobster Co. v. Evans*, 352 F.3d 462, 470 (1st Cir. 2003)); *see also* 5 U.S.C. § 606 ("The requirements of [5 U.S.C. §§ 603–604] do not alter in any manner standards otherwise applicable by law to agency actions."). Rather, the Act "is a procedural statute setting out precise, specific steps the agency must take[,]" *Aeronautical Repair Station Ass'n, Inc. v. FAA*, 494 F.3d 161, 178 (D.C. Cir. 2007), to "ensur[e] that agency rules . . . tak[e] into account the size and nature of the regulated businesses," *Mid-Tex Elec. Coop., Inc. v. FERC*, 773 F.2d 327, 342 (D.C. Cir. 1985) (citing S. Rep. No. 878, 96th Cong., 2d Sess. 3, *reprinted in* 1980 U.S.C.C. A.N. 2788, 2790). Specifically, the RFA provides that whenever an agency is required to publish a notice of proposed

2

rulemaking, it must first determine whether the regulation under consideration would "have a significant economic impact on a substantial number of small entities." 5 U.S.C. § 605(b). "Only if the proposed regulation would have such an impact do the statute's two primary procedural obligations attach." *N.C. Fisheries Ass'n, Inc.*, 518 F. Supp. 2d at 73. "Those obligations are the preparation first of an initial and then of a final regulatory flexibility analysis, commonly referred to as an IRFA and a FRFA." *Id.* (citing 5 U.S.C. §§ 603–604); *see Nat'l Ass'n for Home Care*, 135 F. Supp. 2d at 163. Sections 603 and 604 set forth the explanations and considerations that IRFAs and FRFAs, respectively, "shall contain." 5 U.S.C. §§ 603(b), 604(a). Both forms of analysis generally "describe[] the effect of the proposed rule on small businesses and discuss[] alternatives that might minimize adverse economic consequences." *Nat'l Women, Infants, & Child. Grocers Ass'n v. Food & Nutrition Serv.,* 416 F. Supp. 2d 92, 108 (D.D.C. 2006). The FRFA, specifically, must provide, among other components, "a description of the steps the agency has taken to minimize the significant economic impact on small entities," including "a statement of the factual, policy, and legal reasons for selecting the alternative adopted in the final rule and why each one of the other significant alternatives to the rule considered by the agency . . . was rejected." 5 U.S.C. § 604(a)(6). But, as is relevant to this case, the agency does not need to prepare a FRFA if the head of the agency certifies that the rule "will not . . . have a significant economic impact on a substantial number of small entities." *Id.* § 605(b).

"The RFA authorizes judicial review of an agency's compliance with many but not all of the statutory requirements." *N.C. Fisheries Ass'n, Inc.*, 518 F. Supp. 2d at 73 (citing 5 U.S.C. § 611(a)). Courts can, for instance, determine an agency's compliance with the FRFA requirements set forth in section 604, but cannot adjudicate whether an agency violated the statute by failing to prepare an IRFA under section 603. *See Allied Local & Reg'l Mfrs. Caucus v.*

3

*EPA*, 215 F.3d 61, 79 (D.C. Cir. 2000). And even when an agency's action is subject to judicial review, all that is required of the agency is "a 'reasonable, good-faith effort to carry out [the RFA's] mandate.'" *U.S. Cellular Corp.*, 254 F.3d at 88 (quoting *Alenco Commc'n, Inc. v. FCC*, 201 F.3d 608, 625 (5th Cir. 2000)). Failure to comply with one or more of the statutory requirements, moreover, does not necessarily mean that the regulation must be invalidated. To the contrary, the D.C. Circuit has held that such an omission "may be, but does not have to be, grounds for overturning a rule." *Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 868 (D.C. Cir. 2001) (citation and internal quotation marks omitted); *see also* 5 U.S.C. § 611(a)(4) (authorizing courts to take "corrective action consistent with" the RFA, "including, but not limited to (A) remanding the rule to the agency, and (B) deferring the enforcement of the rule against small entities").

### 2. *Section 965 and the "Transition Tax"*

The RFA dispute in this case arises from the 2017 enactment of the Tax Cuts and Jobs Act, Pub. L. No. 115-97, 131 Stat. 2054 (2017) ("TCJA" or the "Act"). According to the IRS, the TCJA was "the most sweeping tax law change in more than 30 years."[1] Included in that change were international tax rules. "Section 965, as amended by the Act, is intended to act as a transition provision between the international tax rules in place before the Act and those enacted by the Act." A.R. at 3522.[2] Prior to the TCJA, a U.S. corporation could defer foreign income from taxation by retaining earnings indefinitely through a foreign subsidiary. *See* Pls.' Mot. for Summ. J., ECF No. 47 [hereinafter Pls.' Mot.], Mem. of P. & A. in Supp. of Pls.' Mot. for Summ. J., ECF No. 47-1 [hereinafter Pls.' Mem.], at 2. The corporation paid U.S. tax only when the foreign "earnings were

---

[1] IRS, *Be Tax Ready – Understanding Tax Reform Changes Affecting Individuals and Families* (Feb. 2019) https://www.irs.gov/newsroom/be-tax-ready-understanding-tax-reform-changes-affecting-individuals-and-families.
[2] Citations to the Administrative Record ("A.R.") can be found in the four-volume Joint Appendix, *see* ECF Nos. 66–66-4.

4

distributed to the domestic corporation." A.R. at 3522. The prior rules "encouraged domestic corporations to minimize distributions back to the United States and to accumulate substantial earnings offshore." *Id.* Under the rules enacted by the TCJA, to encourage repatriation of foreign income, "domestic corporations are in most circumstances entitled to a 100-percent deduction for any dividends received from their foreign subsidiaries, which eliminates any U.S. tax liability on the dividend." *Id.* (citing section 245A). To prevent a windfall, "whereby a domestic corporation could distribute its historical pre-Act earnings tax free to the United States, the Act included section 965 to treat those historical earnings as repatriated to the United States under the pre-Act rules, before the new rules took effect." *Id.*

Thus aptly referred to as a "transition tax" or "repatriation tax," section 965 imposes a one-time tax on U.S. shareholders[3] of certain "specified foreign corporations" with "deferred foreign earnings[,] by deeming those earnings to be repatriated and included in the U.S. person's income" for the 2017 tax year. A.R. at 3522; 26 U.S.C. § 965(a). A specified foreign corporation is defined as "(A) any controlled foreign corporation,[4] and (B) any foreign corporation with respect to which one or more domestic corporations is a United States shareholder." 26 U.S.C. § 965(e)(1).

The tax scheme created by section 965 is complicated, to say the least. The court here touches only on the relevant portions. The earnings included in the income of a U.S. shareholder under section 965(a) are generally subject to tax at two rates: "15.5 percent for the portion of earnings that does not exceed the amount of cash and certain cash equivalent assets held by the U.S. shareholder's specified foreign corporation, and 8 percent for the remaining earnings." A.R.

---

[3] "For the taxable year to which section 965 applies, a United States shareholder of a foreign corporation is defined as any United States person that owns at least 10 percent of the voting power of such corporation." A.R. at 3523 n.1 (citing 26 U.S.C. § 951(b)).
[4] "A [controlled foreign corporation] is any foreign corporation that is more than 50 percent owned, by vote or value . . ., by United States shareholders (as defined in section 951(b))." A.R. at 3523 n.2 (citing 26 U.S.C. § 957(a)).

5

at 3524; 26 U.S.C. § 965(c)(1).  "These rate reductions are achieved through a deduction at the level of the United States shareholder."  A.R. at 3524 (citing 26 U.S.C. § 965(c)(1)).  "[T]o calculate the appropriate deduction and determine the portion of the inclusion that is taxed at the 15.5 percent rate . . ., a [U.S.] shareholder must determine its 'aggregate foreign cash position.'"  *Id.* (quoting 26 U.S.C. § 965(c)(1)(A)(ii)).  "The statute defines 'aggregate foreign cash position' to include items like cash, net accounts receivable, and the fair market value of actively traded property, commercial paper, government securities, short-term obligations, and foreign currency."  *Id.* (citing 26 U.S.C. § 965(c)(3)(B)).  Importantly, for purposes of this case, U.S. "shareholders may use foreign tax credits, in accordance with the pre-Act rules, to offset their inclusions under section 965."  *Id.*

Recognizing the potential hardship associated with paying taxes on 30 years' worth of deferred earnings, "even at the reduced rates," *id.*, section 965 provides various elections that qualifying taxpayers may use to defer payment of the tax, *see* Defs.' Cross-Mot. for Summ J., ECF No. 57 [hereinafter Defs.' Cross-Mot.], Mem. in Supp. of Defs.' Cross-Mot. for Summ. J. & Resp. to Pls.' Mot., ECF No. 57-1 [hereinafter Defs.' Mem.], at 3 (citing 26 U.S.C. §§ 965(h), (i), (m), (n)).  For example, "[a]n election under subsection 965(h) allows a taxpayer that has a transition tax liability to pay it, interest free, in eight annual installments unless a specified 'acceleration' event occurs."  *Id.* (citing A.R. at 3524).

Finally, subsection 965(o) directs the Secretary of the Treasury to "prescribe such regulations or other guidance as may be necessary or appropriate to carry out the provisions of th[e] section."  26 U.S.C. § 965(o).  Those regulations are the subject of this lawsuit.

### 3. *Promulgation of Regulations Implementing the Transition Tax*

On August 9, 2018, Treasury published in the Federal Register a Notice of Proposed Rulemaking under section 965, as well as related proposed regulations under sections 962 and 986. A.R. at 3554–615; Guidance Regarding the Transition Tax Under Section 965 and Related Provisions, 83 Fed. Reg. 39,514 (Aug. 9, 2018) (to be codified at 26 C.F.R. pt. 1). Pursuant to the RFA, the Notice of Proposed Rulemaking contained a certification by the Secretary of the Treasury that the proposed regulations would not "have a significant economic impact on a substantial number of small entities," and thus "an initial regulatory flexibility analysis" was not performed. A.R. at 3581; 83 Fed. Reg. 39,514, 39,540–41. The RFA certification was based on several factors. First, Treasury and the IRS estimated the average burden of compliance with the regulations to be five hours, which was "minimal . . . in comparison to other regulatory requirements related to owning stock in a specified foreign corporation." A.R. at 3581. Second, "the [information collection] requirements appl[ied] only if a taxpayer cho[se] to make an election or [to] rely on a favorable rule." *Id.* Third, "the collections of information appl[ied] to the owners of specified foreign corporations," not "the specified foreign corporations themselves," and thus "a small entity would not be subject to the collections of information." *Id.* And fourth, "the collection of information requirements in th[e] regulation appl[ied] primarily to persons that are United States shareholders of foreign corporations," and, Treasury reasoned, "[t]he ownership of sufficient stock in specified foreign corporations . . . generally entails significant resources and investment, such that businesses that are United States shareholders are generally not small businesses." *Id.* The certification also noted that, "[p]ursuant to section 7805(f), th[e] notice of proposed rulemaking ha[d] been submitted to the Chief Counsel of Advocacy of the Small Business Administration for comment on its impact on small business." *Id.*; *id.* at 3172; 26 U.S.C. § 7805(f).

Treasury received a number of comment letters in response to the proposed regulations and various published guidances, including from Plaintiff Monte Silver. *See* A.R. at 2459–74, 3525–26; Pls.' Mot., Decl. of Monte Silver, ECF No. 47-2 [hereinafter Silver Decl.], ¶ 14. "The majority of comments," Defendants explain, "complained [not of the regulations but] of the transition tax [itself]." Defs.' Mem. at 5. "Only three comments addressed the Regulatory Flexibility Act analysis." *Id.* (citing A.R. at 1187–193, 2445–58, 2459–92). Although given notice of the proposed regulations by the IRS, the Small Business Administration ("SBA") did not issue any public comments. *See id*. at 7.

On February 5, 2019, Treasury published the final regulations in the Federal Register. *See* Regulations Regarding the Transition Tax Under Section 965 and Related Provisions, 84 Fed. Reg. 1,838 (Feb. 5, 2019); A.R. at 3136–213. The final regulations primarily finalized the proposed regulations, with certain changes based on comments received. *See* A.R. at 3526. Like the proposed regulations, the Final Regulations do not contain a Regulatory Flexibility Analysis. After reviewing the comments, Treasury determined and certified that the final regulations would not have a significant economic impact on a substantial number of small entities within the meaning of section 601(6) of the RFA. *See id.* at 3171. As explained in the proposed regulations, Treasury determined that the economic impact of the final regulations themselves would be minimal, because "[a]ny economic impact of the final regulations stems from the collection of information requirements" they established, and those would not be extensive. *Id.* at 3172. Treasury again estimated that "the average burden associated with these collection of information requirements [would be] 5 hours, which is minimal, particularly in comparison with other regulatory requirements related to owning stock in a specified foreign corporation," and only applicable "if a taxpayer cho[se] to make an election or rely on a favorable rule." *Id.*

8

The final regulations also addressed comments received in response to the Notice of Proposed Rulemaking. *See* A.R. at 3136–164 (addressing comments throughout). With regard to comments from Plaintiff and like-minded individuals about the economic impact of the regulations on small businesses, Treasury wrote: "The comments received regarding the economic impact of the proposed regulations principally focus on burdens imposed by the statute (i.e., the tax due as a result of section 965) rather than any additional burdens resulting from the proposed regulations." *Id.* at 3172. Therefore, the certification explained, "the Treasury Department and the IRS [] determined that the final regulations w[ould] not have a significant economic impact on a substantial number of small entities." *Id.*

### B. Plaintiffs Monte Silver and Silver, Ltd.

Plaintiff Monte Silver is a U.S. citizen residing in Israel. Defs.' Resp. to Pls.' Assertions of Fact in Supp. of Pls.' Mot. for Summ. J., ECF No. 57-5 [hereinafter Defs.' Resp. to Facts], ¶ 1. Plaintiff Silver, Ltd. ("Silver Limited") is an Israeli corporation through which Silver practices law. *Id.* ¶ 4 (citing Silver Decl. ¶ 2). Silver has always been the sole shareholder and sole employee of Silver Limited. *Id.* ¶ 5 (citing Silver Decl. ¶ 2). For U.S. tax purposes, Silver has reported Silver Limited as a controlled foreign corporation on Form 5471, "Information Return of U.S. Persons with Respect to Certain Foreign Corporations." *Id.* ¶ 6 (citing Silver Decl. ¶ 2). Unrelated to his work through Silver Limited, Silver also has individually invested in U.S. commercial real estate since 2009, and he reports the earnings from that business on his individual tax return. *See* Defs.' Resp. to Facts ¶ 8 (citing Silver Decl. ¶ 3).

In early January 2018, Silver says he learned that the recently passed TCJA and transition tax applied to him. *See* Silver Decl. ¶ 5. Over the following month, he spoke to owners of other small businesses abroad as well as tax professionals about the complexities and implications of the

transition tax.  *Id.* ¶ 6.  In early March 2018, Silver launched a "campaign through which small business owners could email senior officials of the [Treasury and IRS] to advise [the agencies] of their problems and [] seek [] relief."  *Id.* ¶ 7.  Around the same time, Silver himself reached out to senior Treasury officials including Lafayette ("Chip") Harter, then Deputy Assistant Secretary of the Treasury for International Tax Affairs.  *Id.* ¶ 8.  The two met in Washington, D.C., and discussed potential forms of relief for small businesses facing the transition tax.  *Id.*  One form of relief they discussed was a 60-day extension for small businesses to make the first of the eight annual transition tax payments under the Act, *see* 26 U.S.C. § 965(h).  *See* Silver Decl. ¶ 8.  Treasury granted that relief, extending the deadline to June 15, 2018.  *Id.*  On June 4, 2018, Treasury further extended the deadline, granting small business owners with less than $1,000,000 in transition tax liability a one-year extension to make the first transition tax payment.  *Id.* ¶ 9.

After the proposed regulations implementing section 965 were released for public comment in August 2018, Silver noticed the language in the regulations concerning the RFA.  *Id.* ¶ 10.  Through his continued dialogue with Harter and other senior officials at Treasury and the IRS, as well as in the official comment he filed on the proposed regulations, Silver shared his belief that Treasury had not complied with the RFA.  *Id.* ¶¶ 10–11; A.R. at 2459–74.  Silver says that "after extensive time trying to understand the Transition tax and regulations," he and Silver Limited "filed [their] 2017 tax returns, including the Transition tax parts."  Silver Decl.  ¶ 18.

Critically, he did not end up owing any transition tax.  *Id.*  Silver says he made a section "962 election"—involving use of foreign tax credits—with his 2017 tax return, which may explain why his transition tax zeroed out (though the record is less than clear on this point).  *See* Pls.' Mem. in Opp'n to Defs.' Cross-Mot. for Summ J. & in Reply to Defs.' Opp'n to Pls.' Mot. for Summ. J., ECF No. 61 [hereinafter Pls.' Opp'n], Decl. of Monte Silver in Supp. of Pls.' Reply,

ECF No. 61-1, ¶ 5.  Silver subsequently twice amended his tax return, including once to correct the section 962 election after noticing he had made an error.  *Id.*  He attributes his need to make the amendments to the complexity of the TCJA and the section 965 regulations.  Silver Decl. ¶ 18.  Silver claims the act of trying to decipher and comply with the statute and regulations "forced him to expend significant funds" in filing his 2017 tax return.  *Id.*  Silver also claims future burdens.  He asserts that "[he] will be forced to expend additional money on Transition tax-related compliance for years to come, even though [he and Silver Limited] did not have any Transition tax liability."  *Id.*

### C.    Procedural Background

On January 30, 2019, Plaintiffs filed this action alleging that Defendants violated the RFA, the Paperwork Reduction Act ("PRA"), and the Administrative Procedure Act ("APA"), in promulgating the final regulations implementing section 965.  *See* Compl., ECF No. 1.  In their initial Complaint, Plaintiffs asked the court to declare Treasury's section 605(b) certifications invalid and to remand the proposed and final regulations to Defendants for compliance with the RFA and PRA.  *See id.* at 18.  On March 26, 2019, Plaintiffs amended their Complaint, removing the cause of action under the PRA and adding to the relief sought, "[t]o the exten[t] permissible by law, [a] stay [of] enforcement of the Final Regulations and Sections 965 and 962 against Plaintiffs and other small businesses until such time as Defendants comply with their statutory duties," as well as a request for attorney fees and any other relief the court may find just and proper.  *See* First Am. Compl., ECF No. 5 [hereinafter First Am. Compl.], at 19.

On July 1, 2019, Defendants moved to dismiss for lack of jurisdiction, *see* Mot. to Dismiss, ECF No. 21, which the court denied on December 24, 2019, *see Silver v. IRS* (*Silver I*), No. 19-cv-247 (APM), 2019 WL 7168625 (D.D.C. Dec. 24, 2019).  In denying Defendants' motion, the

11

court found that Plaintiffs had made out a plausible basis for Article III standing. *See id.* at \*2. The court also held and that the Anti-Injunction Act did not divest the court of subject matter jurisdiction, given that Plaintiffs sought, in part, declaratory relief and a remand to perform an RFA analysis. *See id.* \*3. Defendants thereafter filed an Answer to the First Amended Complaint, *see* ECF No. 34, and produced the administrative record, *see* ECF No. 38.

On April 22, 2020, Plaintiffs filed a motion to complete the administrative record, seeking an order authorizing inclusion of certain additional documents in the record. *See* Pls.' Mot. to Complete the A.R. & for Other Appropriate Relief, ECF No. 39. Defendants opposed Plaintiffs' request on the grounds that much of the material Plaintiffs seek to include in the record is already present in it, and that Plaintiffs have not shown that the administrative record is incomplete. *See* Defs.' Opp'n to Pls.' Mot. to Complete the A.R. & for Other Relief, ECF No. 42, at 2–3. The court deferred ruling on Plaintiffs' motion to complete the record until summary judgment. Minute Order, Apr. 24, 2020. The parties have now cross-moved for summary judgment, *see* Pls.' Mot.; Defs.' Cross-Mot, and this court heard oral argument on the parties' cross-motions on March 15, 2021, *see* Minute Order, Mar. 15, 2021.

## III. DISCUSSION

Defendants make two threshold arguments as to why summary judgment should be granted in their favor. First, they argue Plaintiffs lack standing to bring this suit because Plaintiffs did not—nor will they ever—owe any transition tax, and therefore Plaintiffs have no future reporting obligations under section 965 or the associated regulations. *See* Defs.' Mem. at 11–14. Defendants next argue that the court lacks "jurisdiction" to entertain Plaintiffs claims under the RFA because "neither Plaintiff qualifies as a 'small entity' afforded protection under the RFA." *Id.* at 14–18. As the court discusses below, the latter argument is not jurisdictional, but rather a matter of whether

12

Plaintiffs have stated a claim under the RFA. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014) (explaining that although this inquiry, sometimes known as "statutory standing," has been treated as jurisdictional in the past, it really "ask[s] whether [plaintiff] has a cause of action under the statute").

The court begins its discussion where it must, with consideration of its jurisdiction over Plaintiffs' claims. *See, e.g.*, *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1362 (D.C. Cir. 2012) ("[E]very federal court has a 'special obligation to satisfy itself' of its own jurisdiction before addressing the merits of any dispute."). Because the court concludes that Plaintiffs lack standing to assert their claims, it does not address the bulk of the parties' arguments on the merits of their cross-motions for summary judgment. It does, however, decide the non-jurisdictional but still-threshold issue of whether Plaintiffs have a cause of action under the RFA as an alternative holding for purposes of appellate review, if any.

### A.    Article III Standing

"Because Article III limits the constitutional role of the federal judiciary to resolving cases and controversies, . . . a showing of standing 'is an essential and unchanging' predicate to any exercise of [a court's] jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). In order to satisfy the "irreducible constitutional minimum of standing," a litigant must demonstrate that (1) they have suffered an injury in fact—the invasion of a legally protected interest; (2) the injury is fairly traceable to the defendants' challenged conduct (a causal connection); and (3) a favorable decision on the merits likely will redress the injury. *See Lujan*, 504 U.S. at 560–61. The alleged injury must be concrete and particularized and actual or imminent, not conjectural, hypothetical or speculative. *See Spokeo, Inc. v. Robins*, 578 U.S. ___, ___, 136 S. Ct. 1540, 1548 (2016). "This

13

set of criteria implements Article III by limiting judicial intervention to only those disputes between adverse parties that are 'in a form . . . capable of judicial resolution.'" *Fla. Audubon Soc'y*, 94 F.3d at 663 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 2018 (1974)).

In denying Defendants' motion to dismiss, the court recognized Plaintiffs' asserted harm to be a procedural injury, that is, "an injury resulting from the violation of a procedural right created by statute." *Silver I*, 2019 WL 7168625, at *1. Neither Plaintiffs nor Defendants on summary judgment argue otherwise. In procedural injury cases, the standing "requirements are modified somewhat." *Nat'l Wildlife Fed. v. U.S. Army Corps of Eng'rs*, 170 F. Supp. 3d 6, 11 (D.D.C. 2016) (citing *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005)). In order to establish standing, plaintiffs must show "some concrete interest" that is "adversely affected by the procedural deprivation." *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013); *see Ctr. for Law & Educ.*, 396 F.3d at 1159 ("Appellants must show *both* (1) that their procedural right has been violated, *and* (2) that the violation of that right has resulted in an invasion of their concrete and particularized interest."). Additionally, the redressability and imminence requirements are relaxed. What "a more relaxed redressability requirement for procedural rights claims mean[s] is that, instead of needing to establish that compelling the agency to follow the correct procedure *would* lead to a substantive result that favors the [plaintiff's] concrete interests, the [plaintiff] need only show that its concrete interests could be better protected." *Narragansett Indian Tribal Historic Pres. Office v. Fed. Energy Regul. Comm'n*, 949 F.3d 8, 13 (D.C. Cir. 2020). "In other words, the relaxed redressability requirement is met when correcting the alleged procedural violation *could* still change the substantive outcome in the [plaintiff's] favor; the [plaintiff] need not go further and show that it *would* effect such a change."

14

*Id.* "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

In ruling on Defendants' motion to dismiss, this court held that Plaintiffs had standing to advance their claims. *See Silver I*, 2019 WL 7168625, at *2. That ruling was based on the court's finding that Plaintiffs had stated facts sufficient to plausibly show that they had suffered an injury in fact fairly traceable to the actions of Defendants that was likely to be redressed by a favorable decision on the merits. *Id.* at *1–2. "Plaintiffs' alleged injury," the court explained, "is the cost associated with complying with the TCJA's transition tax regulations, which include certain 'collection of information' and 'recordkeeping obligations.'" *Id.* at *2 (quoting First Am. Compl. ¶ 54). Plaintiff Silver averred that he "had been forced to spend significant funds" and would "be forced to expend money on Transition tax-related compliance for years to come, even though [he] did not report any Transition tax liability." Pls.' Opp'n to Mot. to Dismiss, ECF No. 23, Decl. of Monte Silver, ECF No. 23-2 [hereinafter Silver MTD Decl.], ¶ 18. Finding Plaintiffs' alleged injury to be causally connected to Defendants' alleged failure to undertake an RFA analysis, the court concluded Plaintiffs had standing to advance their claims. *Silver I*, 2019 WL 7168625, at *2. The court did not address the element of redressability. *See id.*

Now that the case is at summary judgment, Plaintiffs attempt to hang their hat on the court's prior ruling. *See* Pls.' Opp'n at 2–3 ("As the Court has previously ruled . . . Plaintiffs have established procedural standing."). That is a losing proposition, however, because Plaintiffs bear the burden of establishing standing "at the outset of *each* phase" of litigation. *Scenic Am., Inc. v. U.S. Dep't of Trans.*, 836 F.3d 42, 48 (D.C. Cir. 2016). A "court's determination that a plaintiff has established standing at the motion to dismiss stage by *alleging* sufficient facts in her pleadings is only the first step." *Id.* Such a "finding does not obviate the court's responsibility to ensure that

15

the plaintiff can actually *prove* those allegations when one or both parties seek summary judgment." *Id.* For that reason, "[a] plaintiff's burden to demonstrate standing grows heavier at each stage of the litigation." *Osborn v. Visa Inc.*, 797 F.3d 1057, 1063 (D.C. Cir. 2015). At the summary judgment stage, a plaintiff "can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (citation and internal quotation marks omitted). "If . . . the court determines that the plaintiff has not introduced sufficient evidence into the record to at least raise a disputed issue of fact as to each element of standing, the court has no power to proceed and must dismiss the case." *Scenic Am., Inc.*, 836 F.3d at 48–49.

With that legal framework in mind, the court turns to Defendants' standing challenge. In the main, Defendants argue that Plaintiffs lack standing because they have not "produce[d] concrete evidence of ongoing or imminent future injury to support their claim for injunctive relief." Defs.' Mem. at 11. That argument is flawed, however, because Plaintiffs do not seek only injunctive relief. To be sure, Plaintiffs request, as a statutory remedy under the RFA, that the court "stay [] enforcement of the Final Regulations and Sections 965 and 962 against Plaintiffs and other small businesses until such time as Defendants comply with their statutory duties." First Am. Compl. at 19; 5 U.S.C. § 611(a)(4)(B) (authorizing a court to order "deferring the enforcement of the rule against small entities unless the court finds that continued enforcement of the rule is in the public interest"). This is a demand for prospective relief. But Plaintiffs also seek retrospective relief. Specifically, they ask for a declaration "that Treasury's RFA Section 605(b) certifications are invalid," and a "[r]emand [of] the Proposed Regulations and Final Regulations to Defendants to comply with their statutory obligations." First Am. Compl. at 19. This distinction is an important one because the Supreme Court has made clear that the "injury in fact" requirement of

16

standing varies depending on whether the plaintiff seeks prospective or retrospective relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 105 (1983). And the party invoking standing "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Thus, the court must give individual consideration to each form of requested relief on the question of standing in this case. It turns now to that task, starting with Plaintiffs' claim for retrospective relief.

### 1. *Retrospective Relief*

A plaintiff seeking retrospective relief satisfies the injury-in-fact requirement if he has suffered a past injury that is concrete and particularized. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210–11 (1995). Here, Defendants do not dispute that Plaintiffs have established an injury in fact in the form of past compliance costs associated with the transition tax regulations. *See* Defs.' Mem. at 11–14; Reply in Supp. of Defs.' Cross-Mot. for Summ. J., ECF No. 65 [hereinafter Defs.' Reply], at 2–4. Plaintiffs take that concession as evidence that the court's prior ruling on standing endures. *See* Pls.' Opp'n. at 2–4. They explain, because "Plaintiffs have established that they have been adversely affected by Defendants' failure to comply with the RFA and have incurred a concrete and particular injury in the form of the compliance costs they have expended[,] . . . [they] have Article III standing to challenge the regulations [] under the RFA." Pls.' Opp'n at 4. The court disagrees.

Both parties overlook an essential element of standing: redressability. The court did so, too, at the motion to dismiss stage. *See Silver I*, 2019 WL 7168625, at *2. As discussed, courts have held that the redressability requirement for standing is "relaxed" in procedural rights cases. *See WildEarth Guardians*, 738 F.3d at 305; *see also, e.g.*, *Lujan*, 504 U.S. at 572 n.7; *Ctr. for Law & Educ.*, 396 F.3d at 1159. But "relaxed" does not mean "eliminated." *See Ctr. for Law & Educ.*,

396 F.3d at 1157 ("Where plaintiffs allege injury resulting from violation of a *procedural* right afforded to them by statute and designed to protect their threatened concrete interest, the courts relax—*while not wholly eliminating*—the issues of imminence and redressability." (second emphasis added)). "Rather, the 'relaxation' of the redressability requirement recognizes the difficulty plaintiffs [typically] face in showing that the righting of a procedural wrong will *necessarily* lead to a different substantive outcome." *Nat'l Wildlife Fed.*, 170 F. Supp. 3d at 15. In such cases, a plaintiff has standing to bring a claim so long as "they have a procedural right that, if exercised, *could* protect their concrete interests." *Defs. of Wildlife v. U.S. EPA*, 420 F.3d 946, 957 (9th Cir. 2005) (emphasis in original), *overruled on other grounds by Nat'l Ass'n of Home Builders v. Defs. of Wildlife,* 551 U.S. 644 (2007). For example, the "archetypal procedural injury" case involves "an agency's failure to prepare a statutorily required environmental impact statement before taking action with potential adverse consequences to the environment." *Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1, 5 (D.C. Cir. 2005). The Supreme Court provides such an example in footnote 7 of *Lujan*, explaining that

> [a person] living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years.

*Lujan*, 504 U.S. at 572 n.7. While the plaintiff in that hypothetical case cannot establish with any certainty that preparation of the environmental impact statement—that is, the righting of the procedural wrong—will remedy her concrete interest by preventing the construction of the dam, such a result is at least *possible*.

18

This is not the archetypal procedural injury case, however. "Decisions in this Circuit and others confirm that a court must look at the underlying concrete interest when assessing redressability of a procedural injury." *Nat'l Wildlife Fed'n*, 170 F. Supp. 3d at 15; *see In re Idaho Conservation League*, 811 F.3d 502, 511–12 (D.C. Cir. 2016) (assessing redressability of procedural injuries by looking at whether promulgating a different rule would limit plaintiffs' exposure to hazardous waste); *Ass'n of Am. Physicians & Surgeons v. Sebelius*, 746 F.3d 468, 472 (D.C. Cir. 2014) (assessing redressability of a procedural injury by looking at "whether compliance with the procedural requirement would lead to 'redress' of the party's substantive injury (i.e., lead to a less injurious outcome)"); *Black v. LaHood*, 882 F. Supp. 2d 98, 106–07 (D.D.C. 2012) (holding that plaintiffs could not show redressability because the alleged "concrete injuries" caused by the road closure would remain even if the court declared the approval of the project unlawful); *cf. Sierra Club v. U.S. Army Corps of Eng'rs*, 277 F. App'x 170, 173 (3d Cir. 2008) (finding that redressing procedural harms under the CWA, NEPA, and APA would not redress alleged injuries to plaintiffs' recreational and aesthetic interests because the wetlands they enjoyed were gone and plaintiffs did not ask that the existing structures be removed).

For example, in *Salmon Spawning & Recovery Alliance v. Gutierrez*, the Ninth Circuit held that several conservation groups lacked standing to bring a suit challenging federal agencies' decision to enter, and remain a party to, the Pacific Salmon Treaty with Canada on behalf of the United States because the Treaty itself was final. 545 F.3d 1220, 1227 (9th Cir. 2008). The groups alleged that the federal agencies violated consultation procedures required by regulation prior to entering the Treaty and that the agencies' procedural failure threatened various concrete interests of the group. *Id.* at 1225. In considering its jurisdiction over the matter, the court stressed that "the redressability requirement is not toothless in procedural injury cases." *Id.* at 1227. The court

19

observed that if it were to "give the groups the remedy [] they seek—that [the federal agencies] follow the proper procedures during [the] consultation process—the ultimate agency decision of whether to enter into the Treaty with Canada"—made nine years earlier—"could never be influenced." *Id.* "In effect," the court concluded, "if [it] rule[d] against the groups' claim of procedural injury they w[ould] continue to suffer injury; and if [it] rule[d] in their favor, they w[ould] still suffer injury because [the court] cannot undo the Treaty." *Id.*

A similar result obtains here. If the court were to grant the retrospective relief Plaintiffs seek—declaring unlawful the agency's failure to perform an RFA analysis and remanding to conduct the analysis—such relief would do nothing to redress Plaintiffs' claimed concrete injury. Plaintiffs have already incurred the compliance costs associated with the one-time transition tax, and Silver declares that "neither [he] nor Limited ended up owing any Transition tax at all." Silver Decl. ¶ 18. Granting the requested retrospective relief therefore would do nothing to undo the compliance costs Plaintiffs already have incurred. Thus, the only way Plaintiffs can satisfy the redressability prong of the standing analysis, even for retrospective relief, is if they have some *future* injury from the transition tax regulations that the agency could possibly alleviate on remand. In this way, the redressability inquiry for *retrospective* relief, in this case, dovetails with the injury-in-fact requirement for *prospective* relief. At oral argument, Plaintiffs agreed the two inquiries merge in this case. Hr'g Tr. (draft), Mar. 15, 2021 [hereinafter Hr'g Tr.], at 45–46.

The court now turns to whether Plaintiffs have met their burden of establishing a future injury.

### 2. *Prospective Relief*

To seek injunctive relief, a plaintiff must show that he is suffering a continuing injury or that he is under a real and immediate threat of being injured in the future. *See Lyons*, 461 U.S. at

101–02; *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011); *see also Summers*, 555 U.S. at 493 ("To seek injunctive relief, . . . the threat must be actual and imminent, not conjectural or hypothetical."). Here, Plaintiffs dispute that a showing of future injury is required, *see supra* p. 15, which is incorrect;[5] they nevertheless assert that they have established future injury. *See* Pls.' Opp'n at 3–6. For the following reasons, the court disagrees.

Recall that at the summary judgment stage of proceedings, plaintiffs "can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence *specific facts*" demonstrating standing. *Lujan*, 504 U.S. at 561 (cleaned up) (emphasis added). The "[s]tatements of fact must be sufficiently specific to rise above the level of 'conclusory allegations.'" *Swanson Group Mfg. LLC*, 790 F.3d at 240 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). While "general factual allegations of injury resulting from the defendant's conduct may suffice" to show standing at the motion to dismiss stage, *Lujan*, 504 U.S. at 561, "at summary judgment a court will not presume the missing facts necessary to establish an element of standing," *Swanson Grp. Mfg. LLC*, 790 F.3d at 240 (cleaned up).

Here, Defendants contest that Silver will incur future compliance costs as a result of the section 965 regulations. *See* Defs.' Mem. at 11–14; Defs.' Resp. to Facts ¶ 12. Defendants state:

> [It is] [d]isputed that Plaintiffs will incur any 'compliance costs and time' to comply with the statute or the Final Regulations, given that they owe no Transition Tax based on their own tax reporting. The reporting required under the regulations is a "one-time paperwork burden." ADMIN_03169 ("The Treasury Department and the IRS anticipate substantially all paperwork burdens related to the final regulations to be incurred only with respect to the inclusion year.").

---

[5] For the first time at oral argument, Plaintiffs argued that "they need not establish standing in order to raise [their] RFA claim" because the "unconventional" injunction they seek is a statutorily mandated form of relief for violations of the RFA. *See* Hr'g Tr. at 41–42 (discussing 5 U.S.C. § 611(a)(4)(B)). Plaintiffs provide absolutely no authority for such a proposition, and because that issue has not been briefed, the court need not, and does not, consider it. *See Physicians for Social Resp. v. Wheeler*, 956 F.3d 634, 647 (D.C. Cir. 2020) ("[G]enerally, arguments raised for the first time at oral argument are forfeited.").

There is the possibility of further minimal reporting required for those that have a transition tax liability and elect to defer or pay it in installments. *See id*. ("Any subsequent reporting (such as in connection with a transfer of a section 965(h) net tax liability or a section 965(i) net tax liability) would be negligible burdens that implement elections made and payments calculated in the inclusion year."); [] ADMIN_03544 ("Information is collected for the purposes of determining the amount of the tax liability as well as tracking the payment of the tax liability."); ADMIN_03549 ("The information collected . . . will be used to allow taxpayers to make elections or file agreements to continue deferring the payment of the section 965 tax liability. The information collected will enable taxpayers and the IRS to keep track of the deferred payments/liabilities until fully paid."). *But there is no ongoing paperwork burden where Plaintiffs have no transition tax liability.*

Defs.' Resp. to Facts ¶ 12  (emphasis added).  So, with no future transition tax liability to speak of, Defendants say, Plaintiffs will incur no future compliance costs.  Having come forward with evidence showing that Plaintiffs have no future injury, the burden shifts to Plaintiffs to introduce "sufficient evidence into the record to at least raise a disputed issue of fact as to" injury.  *Scenic Am., Inc.*, 836 F.3d at 48–49.  They fail to do so.

Plaintiffs rely on three declarations submitted by Plaintiff Silver over the course of the litigation to demonstrate standing.  None "rise above the level of 'conclusory allegations'" on the topic of injury.  *Swanson Group Mfg. LLC*, 790 F.3d at 240 (quoting *Nat'l Wildlife Fed'n*, 497 at 888).  Silver's declaration in support of Plaintiffs' motion for summary judgment includes only one line regarding future injury.  After discussing the time and resources that Silver *in the past* put into compliance, Silver baldly declares as a final point:  "I will be forced to expend additional money on Transition tax-related compliance for years to come, even though we did not have any Transition tax liability."  Silver Decl. ¶ 18.  That is nearly verbatim the language that appeared in the declaration Silver filed in support of Plaintiffs' opposition to Defendants' motion to dismiss.

*See* Silver MTD Decl. ¶ 18. Such an unadorned statement of future injury is insufficient to carry Plaintiffs' burden at this stage of the case. *See Nat'l Wildlife Fed'n*, 497 U.S. at 888.

Plaintiffs attempt to salvage their position on future injury in their reply brief by launching into a lengthy and, frankly, impenetrable explanation of the purported future reporting obligations and compliance costs Silver will incur by virtue of a so-called "section 962" election he made in conjunction with his transition tax filing. *See* Pls.' Opp'n at 4–6. From what the court can discern from the parties' briefs and the discussion at oral argument, the transition tax regulations contain a provision that allows U.S. shareholders subject to the tax to elect to apply foreign tax credits to offset their transition tax liability. *See* Pls.' Opp'n at 4. The statute giving rise to that ability resides in a separate portion of the tax code, section 962, which pre-dates the TCJA by decades and allows a natural person to be treated as a corporation for purposes of certain foreign earnings taxation. 5 U.S.C. § 962; *see* Pls.' Opp'n at 4–5; Hr'g Tr. at 24–25; A.R. at 3524 ("[S]hareholders may use foreign tax credits, *in accordance with the pre-Act rules*, to offset their inclusions under section 965." (emphasis added)). Although previously rarely invoked, section 962 was given attention anew by the transition tax regulations. *See* Pls.' Opp'n at 4 n.3 ("The IRC 962 election is an archaic provision that was rarely used before the introduction of the Transition tax.").

Plaintiffs explain that Silver opted to make use of the election because it was "[t]he only way that [he] (an <u>individual shareholder</u>) could have enjoyed the same benefit of 10 years credits for Israeli corporate taxes paid by Silver Ltd was by making an IRC 962 election." Pls.' Opp'n at 4. "As a result" of the election, Plaintiffs claim,

> each time that Silver receives a dividend from Silver Ltd., Silver must comply with a wide variety of the most complex tax laws in the IRC, such as foreign tax credit accounting, allocation between

23

> dividends tainted and not tainted by the 962 election, a bilateral tax
> treaty, qualified/non-qualified dividends, etc.

Pls.' Opp'n at 5.

But these are the *arguments* of counsel, not factual averments, which the court cannot rely upon at this stage to establish standing. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 235 (1990). And, even if the court were to treat these arguments as facts, they make out an insufficient case of future harm. For one, future injury must be "actual and imminent" to establish standing. *See Summers*, 555 U.S. at 493. Plaintiffs, however, say nothing about *when* Silver Limited might issue a dividend to Silver that would trigger the claimed compliance obligations. Additionally, it is far from evident that the section 965 regulations would be the cause of such costs. The quoted text above identifies some of the "most complex tax laws in the IRC" as the source of future compliance costs—including section 962 and an unidentified bilateral tax treaty—but notably absent from the list are the challenged regulations themselves. Plaintiffs say not a word about how the section 965 regulations will impose future recordkeeping or reporting burdens. This omission likewise negates any showing as to redressability. Plaintiffs fail to explain how conducting an RFA analysis in connection with the 965 regulations could help him avoid costs imposed by other provisions of the tax code or a tax treaty.

Accordingly, because Plaintiffs have failed to provide facts sufficiently specific to rise above the level of 'conclusory allegations'" to show that they face ongoing or imminent future injury, Plaintiffs lack standing to seek injunctive relief. *See Lujan*, 497 U.S. at 888 (1990); *Summers*, 555 U.S. at 493. And because Plaintiffs also must show ongoing or imminent future injury to satisfy the redressability requirement for retrospective relief, *see supra* p. 20, they

24

similarly lack standing to assert their claim for declaratory relief and a remand. The court thus concludes that it lacks jurisdiction over Plaintiffs' claims in their entirety.

### B. "Statutory Standing"

Defendants next argue that the court lacks "jurisdiction" as to Plaintiffs' claims because neither qualifies as a "small entity" within the meaning of the RFA. *See* Defs.' Mem. at 15–18. But as previewed above, this is a "statutory standing" argument, which the Supreme Court has clarified is not jurisdictional but rather a question of whether Plaintiffs have a cause of action under the statute. *See Lexmark Int'l Inc.*, 572 U.S. at 128 & n.4. Because this is a threshold question, the court considers the issue, and finds that Plaintiffs fail to state a claim under the RFA.

The court begins with the language of the RFA. In section 611, the statute makes clear the zone of interests it protects and the cause of action it provides. *See* 5 U.S.C. § 611(c) ("Compliance or noncompliance with the provisions of this chapter shall be subject to judicial review only in accordance with this section."); *Permapost Prods., Inc. v. McHugh*, 55 F. Supp. 3d 14, 30 (D.D.C. 2014). Judicial review under the RFA is available only for "a *small entity* that is adversely affected or aggrieved by final agency action." 5 U.S.C. § 611(a)(1) (emphasis added). The D.C. Circuit has consistently interpreted that language to "limit[] its application to the 'small entities *which will be subject to the proposed regulation*'—that is, those 'small entities *to which the proposed rule will apply*.'" *Aeronautical Repair Station Ass'n*, 494 F.3d at 176 (quoting *Mid-Tex Elec. Coop., Inc.*, 773 F.2d at 342); *see also Cement Kiln Recycling Coal.*, 255 F.3d at 869 (same).

There are thus two questions the court must answer to determine whether Plaintiffs have a cause of action under the RFA: 1) whether they are "subject to" the transition tax regulations, and

2) whether they qualify as "small entities" under the RFA. Neither Plaintiff satisfies both requirements.

### 1. Whether Plaintiffs are "Subject to" the Transition Tax Regulations

To reiterate what should be clear by now, section 965 imposes a one-time transition tax on U.S. taxpayers who are shareholders of certain foreign corporations. *See* A.R. at 3522; *see, e.g.*, 26 U.S.C. § 965(b) (directing requirements on "a taxpayer which is a United States shareholder with respect to at least one deferred foreign income corporation"). To that end, the final regulations implementing section 965 explain, in summary, that they "affect *United States persons* with direct or indirect ownership interests in certain foreign corporations." 84 Fed. Reg. 1,838 (emphasis added); A.R. at 3134 (emphasis added). For purposes of section 965, a "United States person" is a citizen or resident of the United States, a domestic partnership or corporation, and certain estates and trusts. *See* 26 U.S.C. § 951(b) (definition of "United States shareholder" cross references definition of "United States person" in 26 U.S.C. § 957(c)); 26 U.S.C. § 957(c) (cross-referencing definition of "United States person" in 26 U.S.C. § 7701(a)(30)); 26 U.S.C. § 7701(a)(30). There is no disputing that Monte Silver, as a U.S. person and sole shareholder of a controlled foreign corporation, is "subject to" the transition tax regulations. *See* Defs.' Resp. to Facts ¶¶ 1, 5. The parties disagree, however, as to whether Silver Limited is.

As a corporation located in and organized under the laws of Israel, Silver Limited is not a citizen or resident of the United States, a domestic partnership or corporation, or a qualifying trust or estate. *See* Defs.' Mem. at 9; Silver Decl. ¶ 2 (identifying Silver Limited as a controlled foreign corporation); *see also* Hr'g Tr. at 6 (admitting that Silver Limited is not a U.S. taxpayer). That would seem to categorically disqualify the company from being subject to the transition tax

regulations, but Plaintiffs contend otherwise. At oral argument, they made two arguments as to why Silver Limited is nevertheless subject to the transition tax regulations. Neither is persuasive.

*First*, Plaintiffs argue that Defendants conceded that Silver Limited is "subject to" section 965 in their response to Plaintiffs' assertions of fact, *see* Defs.' Resp. to Facts ¶ 7 (noting that it is "[n]ot disputed" that "Limited and Silver are both subject to Code Section 965 and the Final Regulations"). *See* Hr'g Tr. at 4–5. While the court was also perplexed by that apparent concession, Defendants assert that it was done in error. *See id.* at 18. At oral argument, Defendants explained that they drafted and filed the document containing their responses to Plaintiffs' statements of facts under the mistaken impression that the local rules required it and that Plaintiffs had themselves failed to file a separate statement of facts. *Id.* According to counsel for Defendants, the statement in Paragraph 7, that Defendants did "[n]ot dispute[]" that Silver Limited was subject to the transition tax, was an "inadvertent admission," and Defendants request that the court disregard it all together. *Id.*

One need look no further than the memorandum of law accompanying Defendants' response to Plaintiffs' statement of facts to see that their apparent concession was inadvertent. On page 13, Defendants assert: "Silver Limited is a foreign corporation and *is not itself subject to the transition tax.* After all, that tax applies only to United States Shareholders . . ., and Silver Limited is not a U.S. shareholder at all." Defs.' Mem. at 13 (emphasis added); *see also id.* at 17 ("Silver Limited does not file U.S. tax returns and does not even have a U.S. employer identification number."). Moreover, Defendants' inadvertent admission does not foreclose the court from addressing whether Silver Limited is subject to the transition tax regulations because that is a question of law, not fact. *See Aeronautical Repair Station Ass'n, Inc.*, 494 F.3d at 176 (assessing as a matter of law whether an entity is subject to an underlying regulation). It is therefore not

susceptible to judicial admission, as "'[i]t is well established that judicial admissions on questions of law have no legal effect.'" *McNamara v. Picken*, 950 F. Supp. 2d 125, 129 (D.D.C. 2013) (quoting *Dabertin v. HCR Manor Care, Inc.,* 68 F. Supp. 2d 998, 1000 (N.D. Ill. 1999)); *see also U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, No. 95-cv-1231 (RCL), 2007 WL 851871, at *1 (D.D.C. Mar. 14, 2007) ("A judicial admission is usually treated as absolutely binding, but such admissions go to matters of fact which, otherwise, would require evidentiary proof." (quoting *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963))*.* Accordingly, the court disregards Defendants' inadvertent admission.

*Second*, Plaintiffs argue that Silver Limited is "subject to" the regulations because it is Silver Limited from which Silver must collect information to comply with the transition tax regulations and the two should be viewed as a "package" deal. *See* Hr'g Tr. at 5–7. Such an argument—that a shareholder and a corporation should be viewed as one and the same—flies in the face of the longstanding principle that "[a] corporation is ordinarily to be viewed as a distinct entity, even when it is wholly owned by a single individual." *Quinn v. Butz*, 510 F.2d 743, 757 & n.90 (D.C. Cir. 1975) (citations omitted) (citing cases); *see also Moline Properties v. Cmm'r*, 319 U.S. 436, 438–39 (1943) (explaining the various purposes of "[t]he doctrine of corporate entity," and finding that "so long as that purpose is the equivalent of business activity . . . the corporation remains a separate taxable entity"). As the court admonished at oral argument, surely Silver would take a different position as to his relationship with Silver Limited in a scenario in which he was being held individually liable for the acts of the company. Silver cannot pick and choose when to benefit from the corporate form.

Nothing within the transition tax regulations directs a foreign company to take any action. In *Aeronautical Repair Station Association, Inc.*, the D.C. Circuit made clear that an entity is not

"subject to" a regulation unless the regulation "imposes responsibilities directly on" the entity. *See* 494 F.3d at 177; *see also Mid-Tex Elec. Coop., Inc.*, 773 F.2d at 342 (holding that the RFA's requirements apply only to "small entities that would be directly regulated" by a challenged rule). At oral argument, Plaintiffs identified for the first time a group of provisions within the section 965 regulations that they contend apply to Silver Limited. *See* Hr'g Tr. at 10–11 (citing A.R. at 3172). But none of those provisions apply "directly" to the controlled foreign corporation; each applies "directly" to the U.S. taxpayer.[6] That a U.S. taxpayer has to look to the books and records of the foreign company of which it is a shareholder to comply with the regulations does not make the company itself "subject to" the regulations.

Accordingly, the court concludes that only Silver is "subject to" the transition tax regulations.

### 2. Whether Silver Qualifies as a "Small Entity"

That leaves the court with one final question to answer: whether Silver qualifies as a "small entity" under the RFA. He does not. The RFA defines "small entities" as having the same meaning as the terms "small business," "small organization," and "small governmental jurisdiction," as defined in the RFA. 5 U.S.C. § 601(6). Of those defined terms, Silver could conceivably fall only under the term "small business." That term "has the same meaning as the term 'small business concern' under section 3 of the Small Business Act." *Id.* § 601(3). Section 3 of the Small Business Act states that such a concern is "one which is independently owned and operated and which is not dominant in its field of operation." 15 U.S.C. § 632(a)(1). Silver, as an individual, is not "independently owned and operated."

---

[6] *See* A.R. 3171–72 (citing 26 C.F.R. §§ 1.965-2(d)(2)(ii)(B), 1.965-2(f)(2)(iii)(B), 1.965-3(b)(2), 1.965-3(c)(3), 1.965-4(b)(2)(i), 1.965-4(b)(2)(iii)(B), 1.965-7(b)(2), 1.965-7(b)(3)(iii)(B), 1.965-7(c)(2), 1.965-7(c)(3)(iv)(B), 1.965-7(c)(3)(v)(D), 1.965-7(c)(6)(i), 1.965-7(d)(3), 1.965-7(e)(2), 1.965-7(f)(5), and 1.965-8(c)).

Plaintiffs nevertheless attempt to shoehorn Silver into meeting the "small business concern" definition by virtue of his status as the sole proprietor of his real estate investing business. *See* Pls.' Opp'n at 10; Hr'g Tr. at 56–57. But whatever status Silver may hold in relation to his real estate business is irrelevant to whether he qualifies as a small entity under the RFA for the purposes of this case. As stated, to state a cause of action, Silver must be a "small entit[y] . . . subject to the proposed regulation," *Aeronautical Repair Station Ass'n*, 494 F.3d at 176—in this case, the transition tax regulations. Silver is not subject to the transition tax in his capacity as a real estate investor. By his own admission, his real estate investments are made in his individual capacity "unrelated to [Silver] Limited." Silver Decl. ¶ 3. Accordingly, Silver is not a small entity for the purposes of the RFA and therefore has no cause of action under the statute.

## IV. CONCLUSION

For the foregoing reasons, the court grants Defendants' Cross-Motion for Summary Judgment, ECF No. 57, and denies Plaintiffs' Motion for Summary Judgment, ECF No. 47. Relatedly, Plaintiffs' Motion to Complete the Administrative Record, ECF No. 39, is denied as moot.

A separate final Order accompanies this Memorandum Opinion.

Dated: March 28, 2021

Amit P. Mehta
United States District Court Judge