UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MONTE SILVER, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil No. 19-cv-247 (APM) |
| INTERNAL REVENUE SERVICE, et al., | ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

**I.**

In this action, Plaintiffs Monte Silver ("Silver") and Silver, Ltd. ("Silver Limited") challenged the Internal Revenue Service's ("IRS") alleged failure to conduct a small business impact analysis under the Regulatory Flexibility Act ("RFA") when it promulgated a set of rules known as the "Transition Tax Regulations." *See Silver v. IRS*, No. 19-cv-247 (APM), 2021 WL 1180081, at *1 (D.D.C. Mar. 28, 2021). Plaintiffs "asked the court to declare [the IRS's RFA certifications] invalid and to remand the proposed and final regulations to Defendants for compliance with the RFA." *Id.* at *5. They also demanded an order staying enforcement of the Regulations against small businesses until the IRS conducted an acceptable RFA analysis. *See id.* at *8. The court, however, entered judgment in favor of Defendants on two grounds: (1) Plaintiffs failed to establish Article III standing as they had not demonstrated an ongoing injury or an imminent threat of one, *see id.* at *11–12, and (2) Plaintiffs lacked "statutory standing" to bring a claim under the RFA because neither Plaintiff qualified as a "small entity that is adversely affected or aggrieved by final agency action," 5 U.S.C. § 611(a)(1); *see Silver*, 2021 WL 1180081, at

\*12–15.  Plaintiffs now seek reconsideration of the court's decision.  Pls.' Mem. of P. & A. in Supp. of Their Mot. for Recons. and for Leave to Amend the Compl., ECF No. 70 [hereinafter Pls.' Mem.].  They also ask for leave to amend their complaint.  *See id.*

For the reasons explained below, Plaintiffs' motion for post-judgment relief is denied.

## II.

The court begins with Plaintiffs' motion for reconsideration.  Although Plaintiffs move for reconsideration under both Federal Rules of Civil Procedure 59(e) and 60(b), *see* Pls.' Mem. at 1, because Plaintiffs filed their motion within 28 days of entry of judgment, the court considers the motion under Rule 59(e), *see Slate v. Am. Broadcasting Cos., Inc.*, 12 F. Supp. 3d 30, 37 (D.D.C. 2013).  And, because the Rule 60(b) standard is "somewhat more restrictive" than that governing Rule 59(e), the court need only consider Plaintiffs' arguments under the latter standard.  *See Slate*, 12 F. Supp. 3d at 37 (quoting 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2817 n.15 (3d ed. 1980)).

"A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks omitted).  Importantly, a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (quoting *Exxon Shipping v. Baker*, 554 U.S. 471, 486 n.5 (2008)).  It is also "not a vehicle to present a new legal theory that was available prior to judgment."  *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012).

As will be seen, Plaintiffs' arguments and presentation of new evidence fail to satisfy the rigorous Rule 59(e) standard.

### A.

Plaintiffs first criticize the court's threshold determination, as part of its standing inquiry, that Plaintiffs sought both retrospective and prospective relief under the RFA. Pls.' Mem. at 5. According to Plaintiffs, they "never made any requests for retrospective or prospective/injunctive relief. Plaintiffs simply are asking for the relief provided under the RFA, Section 611." *Id.* Plaintiffs' argument is difficult to understand. Plaintiffs cite no case for the proposition that relief under RFA is *sui generis* and defies traditional categorization as either retrospective or prospective. Admittedly, the words "retrospective" or "prospective" do not appear in the RFA. *See id.* at 7 (asserting that "[n]othing in the language of the statute suggests that Congress wished to treat Section 611 as equivalent to 'prospective' relief equivalent to an injunction"). But that does not mean the court is not required to determine the type of relief requested to evaluate standing. To the contrary, as this court observed, "the Supreme Court has made clear that the 'injury in fact' requirement of standing varies depending on whether the plaintiff seeks prospective or retrospective relief." *Silver*, 2021 WL 1180081, at *8 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 105 (1983)). Plaintiffs do not seriously suggest, nor could they, that the remedial provisions of the RFA are not subject to this basic principle of Article III standing.

Plaintiffs wrongly criticize the court for having demanded that they show ongoing or imminent future injury to establish standing. Plaintiffs sought relief under Section 611 of the RFA, which permits a court to "defer[ ] the enforcement of the rule against small entities unless the court finds that continued enforcement of the rule is in the public interest," 5 U.S.C. § 611(a)(4)(B). *See* First Am. Compl., ECF No. 5, at 19 (seeking to "stay the enforcement of the Final Regulations

and Sections 965 and 962 against Plaintiffs and other small businesses until such time as Defendants comply with their statutory duties"). Such relief is properly categorized as "prospective." *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 293 (1994) (Scalia, J., concurring in the judgment) (mem.) (observing that "the purpose of prospective relief is to affect the future rather than remedy the past"); *cf. Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (finding that a request to restrain state officials from enforcing an order violating federal law met the "straightforward inquiry" into whether relief sought is "properly characterized as prospective"). It is also fairly considered "injunctive." *See Injunction*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A court order commanding or preventing an action."); *Injunctive*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("That has the quality of directing or ordering; of, relating to, or involving an injunction."). The court therefore was *required* to determine whether Plaintiffs had established ongoing or imminent future injury as part of its standing inquiry. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (stating where a plaintiff "seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is 'certainly impending'; he may not rest on past injury" (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013))).

To be fair, with the benefit of hindsight, the court's treatment of the relief sought by Plaintiffs as both prospective *and* retrospective arguably caused unnecessary confusion. *See Silver*, 2021 WL 1180081, at *8–10. The court's characterization of Plaintiffs' request for declaratory relief as "retrospective" probably was incorrect. *See id.* Plaintiffs asked the court to declare "that Treasury's RFA Section 605(b) certifications are invalid" and remand to the agency to conduct an RFA analysis. *Id.* at *8. Such a declaration, if granted, would have deemed invalid the *future* effectiveness of the agency's RFA certification, thus making such relief prospective. *See Verizon*, 535 U.S. at 646 (describing declaratory relief seeking the invalidation of a state order

as violative of federal law as relief having "*future*" effect and "add[ing] nothing to the prayer for injunction"). Thus, even Plaintiffs' demand for declaratory relief required them to show an ongoing or future injury to have standing. *See Arpaio*, 797 F.3d at 19.

**B.**

In any event, the court ultimately conducted an inquiry into Plaintiffs' claimed future injury and found that they had failed to carry their burden at the summary judgment stage. *See Silver*, 2021 WL 1180081, at *10–12. Plaintiffs say that determination was wrong. *See* Pls.' Mem. at 9–14. The arguments they now make, however, do not satisfy the Rule 59(e) standard.

Plaintiffs insist that they successfully showed that they would incur future compliance costs, but in so doing Plaintiffs simply repackage the arguments made on summary judgment that the court found to be unsuccessful. *See id.* at 10 (arguing that "the interplay between Sections 965 and 962 leads to the conclusion that Plaintiffs will incur future injuries as a result of the Transition Tax Final Regulations"). That is not proper on a Rule 59(e) motion.

Nor does Plaintiffs' attempt to shore up the record warrant reconsideration. *See id.* at 10–11. Silver's new declaration attempts to challenge the court's ruling on standing that "Plaintiffs . . . [had said] nothing about *when* Silver Limited might issue a dividend to Silver that would trigger the claimed compliance obligations." *Silver*, 2021 WL 1180081, at *12; *see* Pls.' Mem. at 10–11. Silver now declares: "In 2021 due to certain education and housing commitments related to my children, I am forced to draw a dividend from Silver Limited." Pls.' Mem., Decl. of Monte Silver, ECF No. 71-3 [hereinafter Silver Suppl. Decl.], ¶ 3. This dividend, Silver claims, will result in future compliance costs under the Transition Tax Regulations. *See id.* ¶¶ 6–11.

But Plaintiffs' new evidence does not warrant reconsideration for two reasons. First, Silver's emerging financial circumstances did not exist at the time of the dispositive proceedings

and therefore is not the type of "new evidence" that justifies reconsideration. *See* 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2808 (3d ed. 1980) ("Newly discovered evidence must be of facts existing at the time of trial."); *cf. id.* (observing that the "same standard" applies for granting a new trial based on newly discovered evidence, "whether the motion is under Rule 59 or 60(b)(2)"); *see also Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Priv. Sector Surv. on Cost Control*, 711 F.2d 1071, 1075 n.3 (D.C. Cir. 1983) (stating that, under Rule 60(b)(2), evidence falls within the rule "as long as it pertains to facts in existence at the time of the trial, and not to facts that have occurred subsequently" (alteration and internal quotation marks omitted)); *Duckworth v. United States ex rel. Locke*, 808 F. Supp. 2d 210, 216 (D.D.C. 2011) (stating that, under Rule 60(b)(2), "the newly discovered evidence is of facts that existed at the time of trial or other dispositive proceeding"). Second, the new evidence only underscores Plaintiffs' failure at summary judgment to establish that their claimed injury was "certainly impending." *Clapper*, 568 U.S. at 416. Silver now declares that he "did not state the 2021 dividend earlier" because "(i) I did not know what future injury was relevant, (ii) the family-related financial commitments did not exist, and (iii) I do not believe I have an obligation to report my personal issues to the court for the world to read." Silver Suppl. Decl. ¶ 12. Whatever the reasons for Silver's nondisclosure, he now admits that he did not bring forward concrete facts to "show an imminent future injury." *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015). Rule 59(e) is not a vehicle to cure evidentiary shortcomings resulting in an adverse ruling. *See Ciralsky v. CIA*, 355 F.3d 661, 665 (D.C. Cir. 2004) (stating that "manifest injustice" for purposes of Rule 59(e) "does not exist where . . . a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered").

Nor can Plaintiffs re-litigate the court's finding that they failed to show that the challenged Regulations "would be the cause of [their claimed future compliance] costs." *Silver*, 2021 WL 1180081, at *12. Plaintiffs now try to make clear what they did not on summary judgment. Recall, Plaintiffs had argued that, because Silver had elected to offset the transition tax with foreign tax credits, as permitted by the Transition Tax Regulations, any future dividend that he received from Silver Limited would require him to "comply with a wide variety of the most complex tax laws in the [Internal Revenue Code], such as foreign tax credit accounting, allocation between dividends tainted and not tainted by the 962 election, a bilateral tax treaty, qualified/non-qualified dividends, etc." Pls.' Mem. in Opp'n to Defs.' Cross-Mot. for Summ. J. and in Reply to Defs.' Opp'n to Pls.' Mot. for Summ. J., ECF No. 61, at 5. The court concluded that such a general statement shed no light on "how the [Transition Tax] regulations will impose future recordkeeping or reporting burdens. This omission likewise negates any showing as to redressability." *Silver*, 2021 WL 1180081, at *12. In their current papers, including Silver's new declaration, Plaintiffs *still* have not identified any provision within the challenged Regulations that will trigger compliance costs when Silver receives a dividend. *See* Pls.' Mem. at 11–14. Instead, they refer back to the government's acknowledgment on summary judgment that Silver's 962 election will require him to "track the [future] earnings subject to the transition tax and the section 962 election separately." *Id.* at 13 (quoting Defs.' Reply in Supp. of Defs.' Cross-Mot. for Summ. J., ECF No. 65 [hereinafter Defs.' Reply], at 4 n.2). But Plaintiffs pull that quotation out of context, conveniently leaving out the key part of Defendants' argument: "However, these distribution 'layering' rules and any tracking requirements that stem from them are imposed by 26 U.S.C. § 959 and the regulations and guidance thereunder as well as the section 962 regulations, not the transition tax regulations." Defs.' Reply at 4 n.2. Plaintiffs did not meaningfully rebut this contention then, and

7

they do not do so now. In the end, it seems that Plaintiffs would have the court take on faith that they will incur future compliance costs that is "fairly traceable" to the Transition Tax Regulations. *Clapper*, 568 U.S. at 402. That, of course, is not enough at summary judgment, let alone on a Rule 59(e) motion.

### C.

Plaintiffs offer a fallback option if the court declines, as it has, to reconsider its ruling on the absence of evidence supporting future injury: amendment of their pleading to assert a demand for nominal damages. Relying on the Supreme Court's recent decision in *Uzuegbunam v. Preczewksi*, 141 S. Ct. 792 (2021), Plaintiffs contend that "[b]ecause nominal damages is an appropriate remedy for a violation of a legal right such as that created by the RFA, such damages can serve as Art. III standing purposes." Pls.' Mem. at 16.

But this argument goes nowhere. The RFA expressly states that "[i]n granting any relief in an action under this section, the court shall order the agency to take corrective action consistent with this chapter and chapter 7." 5 U.S.C. § 611(a)(4). "[T]his chapter"—that is, Chapter 6 of Title V, Part I, which contains the RFA—includes no provision for money damages. Chapter 7 of that Title contains the judicial review and remedial provisions of the Administrative Procedure Act, which likewise does not provide for money damages. 5 U.S.C. §§ 702, 706. The RFA therefore does not permit an award of damages. Accordingly, allowing Plaintiffs to amend their complaint to assert nominal damages would be futile and would not establish standing.

### D.

Plaintiffs also seek reconsideration of the court's ruling that they lacked "statutory standing" to bring claims under the RFA. *See* Pls.' Mem. at 19–25. Plaintiffs contend that the court misapplied the "zone of interests" test in reaching this conclusion. *See id.* at 19. Upon

8

further reflection, the court agrees that it misapplied the "zone of interests" test to Silver Limited but not to Silver himself. The court therefore modifies its March 28, 2021 Memorandum Opinion in part.

"Whether a plaintiff comes within the 'zone of interests' is an issue that requires [courts] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). Congress clearly defined who could bring suit under the RFA: "For any rule subject to this chapter, a small entity that is adversely affected or aggrieved by final agency action is entitled to judicial review of agency compliance" with statutory requirements. 5 U.S.C. § 611(a)(1). The RFA in turn provides that "small entity" "shall have the same meaning as the terms 'small business', 'small organization' and 'small governmental jurisdiction' defined in paragraphs (3), (4) and (5) of this section." 5 U.S.C. § 601(6). Plaintiffs conceivably can qualify only as "small business." "Small business" in turn "has the same meaning as the term 'small business concern' under section 3 of the Small Business Act." *Id.* § 601(3). Section 3 of the Small Business Act states that a "small business concern" is "one which is independently owned and operated and which is not dominant in its field of operation." 15 U.S.C. § 632(a)(1). So, for present purposes, a "small entity" that can bring suit under the RFA is "one which is independently owned and operated and which is not dominant in its field of operation."

The court now agrees that Silver Limited meets the definition of a "small entity" for purposes of the RFA. Silver Limited is plainly a business that "is independently owned and operated and which is not dominant in its field of operations," and Defendants have never contended otherwise. The mistake the court made was in conflating the definition of "small entity" for purposes of bringing a cause of action under 5 U.S.C. § 611(a)(1) with the types of "small

9

entities" that an agency must consider when undertaking an RFA analysis. The court erroneously wrote that the "D.C. Circuit has consistently interpreted [the] language [of 5 U.S.C. § 611(a)(1)] to 'limit[] its application to the "small entities *which will be subject to the proposed regulation*"— that is, those "small entities to *which the proposed rule will apply*."'" *Silver*, 2021 WL 1180081, at *12 (third alteration in original) (quoting *Aeronautical Repair Station Ass'n, Inc. v. FAA*, 494 F.3d 161, 176 (D.C. Cir. 2007)). But that was wrong. The D.C. Circuit has not "consistently interpreted" section 611(a)(1), the judicial review provision, to apply only to "small entities to which the proposed rule will apply"; rather, it has applied that standard to limit the substantive reach of the statute. *See Aeronautical Repair Station Ass'n*, 494 F.3d at 176 (explaining that "the RFA is satisfied if the agency determines that the rule will not have a significant economic impact on a substantial number of small entities that are *subject to the requirements of the rule*" (internal quotation marks omitted)). The court therefore erred when it found that Silver Limited lacked statutory standing on the ground that the Regulations did not apply to it, when it is "a small entity that [was] adversely affected or aggrieved by final agency action." *See id.* at *14–15; 5 U.S.C. § 611(a)(1).[1]

On their cross-motion for summary judgment, Defendants argued that Silver Limited is not a "small business" because SBA regulations disqualified it as such. *See* Defs.' Cross-Mot. for Summ. J., ECF No. 57, Defs.' Mem. in Supp. of Cross-Mot. for Summ. J., ECF No. 57-1 [hereinafter Defs.' Cross-Mot. Mem.], at 15–18. The court never reached this argument. Specifically, Defendants pointed out that section 3 of the Small Business Act states that, "[i]n addition to the criteria specified in" section 632(a)(1), "the Administrator may specify detailed

---

[1] Defendants never argued, and the court did not hold, that Silver Limited was not "adversely affected or aggrieved by final agency action," as required to qualify as a "small entity" under 5 U.S.C. § 611(a)(1). There was no dispute that Silver Limited had suffered some *past* harm arising from the Transition Tax Regulations.

10

definitions or standards by which a business concern may be determined to be a small business concern for purposes of this chapter or any other Act." 15 U.S.C. § 632(a)(2)(A). The Small Business Administration's (SBA) regulations in turn provide that

> a business concern eligible for assistance from SBA as a small business is a business entity organized for profit, with a place of business located in the United States, and which operates primarily within the United States or which makes a significant contribution to the U.S. economy through payment of taxes or use of American products, materials or labor.

13 C.F.R. § 121.105(a)(1). Defendants argued that because Silver Limited did not have a place of business in the United States and did not make any showing as to the economic effects of the business in the United States, it had failed to establish itself as a "small business concern" under the Small Business Act and thus was not a "small entity" under the RFA. Defs.' Cross-Mot. Mem. at 16–17.

To complete the record, the court now rejects that argument. The court is unconvinced that the supplemental definition contained in 13 C.F.R. § 121.105 applies to the definition of "small entities" for purposes of the RFA. The Small Business Act allows the SBA Administrator to supplement the Act's statutory definition with criteria "by which a business concern may be determined to be a small business concern for purposes of this chapter *or any other Act*." 15 U.S.C. § 632(a)(2)(A) (emphasis added). The regulation on which Defendants rely, 13 C.F.R. § 121.105, on its face only provides a further definition of "small business concern" for purposes of "eligib[ility] for assistance from SBA"—which is not at issue here. Section 121.105 does not purport to supply additional definitional terms for "any other Act," including the RFA. So, the court cannot conclude that because Silver Limited does not meet the supplemental defining terms contained in section 121.105 it does not qualify as a "small entity" for purposes of filing suit under the RFA.

Finally, nothing Plaintiffs argue in their motion convinces the court to change its mind that Silver—a natural person—does not qualify as a "small entity" for purposes of the RFA. *See* Pls.' Mem. at 22–23.

## III.

For the foregoing reasons, the court denies Plaintiffs' motion to alter or amend its judgment under Rule 59(e). The court maintains the judgment that it entered in favor of Defendants because Plaintiffs failed to carry their burden to establish Article III standing. The court does, however, modify its Memorandum Opinion insofar as it concluded that Silver Limited lacks statutory standing. It does have statutory standing, but Silver does not.

Plaintiffs' "Motion for Expedited Consideration of Defendants' Motion to Dismiss," ECF No. 81,[2] is denied as moot.

Dated: November 1, 2021

Amit P. Mehta
United States District Court Judge

---

[2] This motion appears to be misnamed. The court long ago denied Defendants' Motion to Dismiss. *See Silver v. IRS*, No. 19-cv-247 (APM), 2019 WL 7168625, at *1 (D.D.C. Dec. 24, 2019).